## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al*,[1] | Case No. 24-11967 (JKS) |
| Debtors. | (Jointly Administered) |
| | <u>Objection Deadline</u>:  Feb. 4, 2025 at 4:00 p.m. ET<br><u>Hearing Date</u>:  Feb. 26, 2025 at 10:30 a.m. ET |

## ALMAR SALES CO., INC.'S MOTION FOR ALLOWANCE AND
## PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

Almar Sales Co., Inc. (the "<u>Claimant</u>"), a creditor in the above-captioned, jointly administered bankruptcy cases, by and through its undersigned attorneys, files this *Motion for Allowance and Payment of Administrative Expense Claim* (the "<u>Motion</u>").  Claimant requests entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>**, (i) allowing its administrative expense claim as set forth herein pursuant to 11 U.S.C. § 503(b), (ii) ordering payment thereof within seven days of entry of the order, and (iii) granting any other relief that the Court finds just and proper.  In support of the Motion, Claimant respectfully sets forth the following:

### JURISDICTION AND VENUE

1.     The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware,

---

[1] The debtors and debtors in possession in these chapter 11 cases (hereafter, "<u>Debtors</u>") are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots  Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores -  PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182);  CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400);  GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC  (9612); and Big Lots F&S, LLC (3277).

1

dated as of February 29, 2012.

2.        Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3.        The statutory bases for the relief requested herein are Sections 105, 503(a), 503(b)(1), and 507(a)(2) of title 11 of the United States Code (the "Bankruptcy Code").

4.        This is a core proceeding under 28 U.S.C. § 157(b).  Pursuant to Rule 9013-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Claimant consents to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## FACTUAL BACKGROUND

5.        The Debtors commenced the above-captioned, jointly administered cases by filing voluntary petitions under chapter 11 of the Bankruptcy Code on September 9, 2024 (the "Petition Date").

6.        The Debtors are operating their businesses as debtors in possession.  No trustee or examiner has been appointed at this time.  On September 23, 2024, the U.S. Trustee filed a notice of appointment of a committee of unsecured creditors [D.I. 248].

7.        On the Petition Date, the Debtors filed a Motion to Approve Debtor in Possession Financing [D.I. 19] (the "DIP Financing Motion") which, *inter alia*, sought approval to pay over $970 million of operating disbursements between September 1, 2024 and November 30, 2024.  *See* DIP Financing Motion, Budget.  The Debtors explained that such financing was necessary to "satisfy an immediate cash need to maintain business relationships with vendors, suppliers, operators and managers, to make capital expenditures and to satisfy other working capital and operational needs and otherwise finance the Debtors' operations."  DIP Financing

2

Motion, ¶4.  The Debtors further explained that they "require[]uninterrupted access to their cash and an immediate capital infusion in order to, among other things, (a) satisfy payroll, pay vendors and suppliers, and meet overhead expenses, … (c) pay for goods and services critical to necessary operations …" DIP Financing Motion, ¶6.

8.      Additionally, according to the Debtors, the "DIP Facilities are necessary to the successful resolution of these cases, which is important to reassure customers and vendors, protect operations, and maximize value for creditors."  DIP Financing Motion, ¶32.  Failing to pay such creditors is not reassurance.

9.      On September 10, 2024, the Court entered the Interim DIP Order [D.I. 114], and on October 22, 2024, the Court entered the Final DIP Order [D.I. 584].

10.     Following entry of the Interim DIP Order and Final DIP Order, the Debtors ordered products from the Claimant, a pre-petition vendor of the Debtors.[2]  Specifically, Claimant received and fulfilled post-petition purchase orders from the Debtors in the ordinary course of business, but the Debtors breached their obligations and have not paid for such goods as summarized below:

---

[2] The Claimant is a manufacturer and seller of hair accessories, including hairbrushes, elastics, and combs. The Claimant has sold goods to Big Lots since 1978.

BIG LOTS - DIP# 24-11967
4900 E. DUBLIN GRANVILLE
COLUMBUS, OH  43081

| STATEMENT DATE | PAGE NO |
|---|---|
| 01/14/2025 | 1 |
| ACCOUNT NUMBER | AMOUNT REMITTED |
| 01455-1000 | $ |

*TO INSURE PROPER CREDIT, PLEASE DETACH UPPER PORTION OF STATEMENT ALONG DOTTED LINE AND RETURN WITH YOUR REMITTANCE*

| INVOICE NO. | CUST PO NO. | INV DATE | DUE DATE | CODE | CHARGES | PAYMENTS / CREDITS | BALANCE |
|---|---|---|---|---|---|---|---|
| 958389 | 0095649678 | 11/04/24 | 12/04/24 | INV | 12358.80 | .00 | 12358.80 |
| 958390 | 0095649679 | 11/04/24 | 12/04/24 | INV | 7983.60 | .00 | 7983.60 |
| 958409 | 0095642617 | 11/05/24 | 12/05/24 | INV | 100712.25 | .00 | 100712.25 |
| CB-956771A | | 11/12/24 | 11/12/24 | INV | | 236.88- | 236.88 |
| CB-956771B | | 11/12/24 | 11/12/24 | INV | | 489.60- | 489.60 |
| CB-958386 | | 12/06/24 | 12/06/24 | INV | | 483.84- | 483.84 |
| CB-958386A | | 12/06/24 | 12/06/24 | INV | | 316.80- | 316.80 |
| CB-958407 | | 12/06/24 | 12/06/24 | INV | | 384.00- | 384.00 |
| CB-958407A | | 12/06/24 | 12/06/24 | INV | | 192.00- | 192.00 |
| CB-958466 | | 12/06/24 | 12/06/24 | INV | | 132.81- | 132.81 |

| .00 | .00 | 122564.10 | 726.48 | .00 | TOTAL BALANCE DUE |
|---|---|---|---|---|---|
| CURRENT | 1 - 30 | 31 - 60 | 61 - 90 | 91+ | 123290.58 |

CODES:  INV - INVOICE   PAY - PAYMENT   CR - CREDIT   ADJ - ADJUSTMENT

11.     Copies of the Debtors' post-petition purchase orders (the "Post-Petition Purchase Orders"), corresponding invoices for the Post-Petition Purchase Orders, and copies of the bills of lading for goods delivered pursuant to the Post-Petition Purchase Orders are attached hereto as **Exhibit B**.

12.     Claimant delivered goods with a purchase price and value of no less than $123,290.58 to the Debtors in the normal course of business post-petition, for which payment is

now overdue and remains outstanding (in sum, the "<u>Administrative Expense Claim</u>"). A summary of account for the Administrative Expense Claim owed by the Debtors to Claimant is attached hereto as **<u>Exhibit C</u>**.

13.      Claimant seeks allowance and immediate payment of its Administrative Expense Claim in the total amount of $123,290.58.

### **RELIEF REQUESTED**

*i.      Claimant is Entitled to Payment of Its Administrative Expense Claim for Goods Ordered by, and Delivered to, the Debtors Post-Petition.*

14.      Section 503(b) of the Bankruptcy Code mandates the allowance of an administrative expense for ". . . the actual, necessary costs and expenses of preserving the estate . . ." 11 U.S.C. 503(b)(1)(A). To qualify as an administrative expense, an expense "must arise from a [post-petition] transaction with the debtor-in-possession" and "must be beneficial to the debtor-in-possession in the operation of the business." *In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 314-15 (3rd Cir. 2011); *see also Calpine Corp. v. O'Brien Env't Energy, Inc. (In re O'Brien Env't Energy, Inc.)*, 181 F.3d 527, 532–33 (3d Cir. 1999) (noting that, to establish a priority claim under section 503(b)(1)(A) of the Bankruptcy Code, the debt must arise post-petition and benefit the estate) (citations omitted).

15.      "[W]hen third parties are induced to supply goods or services to the debtor-in-possession pursuant to a contract that has not been rejected, the purposes of [administrative claims] plainly require that their claims be afforded priority." *In re Goody's Family Clothing, Inc.*, 610 F.3d 812, 818 (3d Cir. 2010) (internal citations omitted, second modification in original); *see also In re Bethlehem Steel Corp.*, 291 B.R. 260, 264 (Bankr. S.D. N.Y. 2003) (cited with approval in *In re Smurfit-Stone Container Corp.*, 425 B.R. 735, 741 (Bankr. D. Del. 2010) ("There is an initial assumption that, where a contract exists, the contractual rate is the reasonable

5

value of the goods or services provided to the estate.").

16.     The Debtors have admitted that:

> The Debtors strongly believe that the uninterrupted supply of
> Goods and Services, on Customary Trade Terms, and the
> continuing support of their customers are imperative to the
> Debtors' ongoing businesses and operations and the preservation
> and maximization of the value of the Debtors' estates. The
> continued availability of trade credit, in amounts and on terms
> consistent with those that the Debtors have worked hard to obtain
> over time, is also clearly advantageous to the Debtors, as it allows
> the Debtors to maintain and enhance necessary liquidity and to
> focus on returning to profitability and preserving and maximizing
> the value of the Debtors' estates.

D.I. 11, Critical Vendor Motion, ¶ 34.  Furthermore, in the DIP Financing Motion, the Debtors

stated that "DIP Facilities are necessary … to reassure customers and vendors, protect operations,

and maximize value for creditors."  DIP Financing Motion, ¶32.

17.     Therefore, the Claimant's Administrative Expense Claim for post-petition

deliveries should be allowed as an actual and necessary cost to preserve the Debtors' estates,

using the logic of the Debtors' own prior representations and arguments.

18.     Since the Petition Date, the Debtors have stocked their stores with no less than

$123,290.58 in inventory purchased from Claimant.  The goods provided by Claimant to the

Debtors have been vital and necessary for maintaining the value of the Debtors' estates.

Claimant's uninterrupted shipment of goods to the Debtors has been critical to the Debtors'

businesses during this bankruptcy, providing direct and substantial benefits to the estates.

Claimant is therefore entitled to administrative expense priority for its Administrative Expense

Claim for the value of the goods delivered post-petition.

### ii.     *The Court Should Compel Payment of Claimant's Administrative Expense Claim Within Seven Days.*

19.     The Court has discretion to require that Claimant's Administrative Expense Claim

WBD (US) 4911-8928-1297v1

be paid immediately. *See In re Garden Ridge Corp.*, 323 B. R. 136, 143 (Bankr. D. Del. 2005). The "requirement of paying administrative claims 'on the effective date of the plan' has been interpreted [by courts] as setting an outside limit, with nothing preventing a court from authorizing the payment of an administrative-expense claim earlier than the effective date of the debtor's plan of reorganization." *In re Arts Dairy, LLC*, 414 B.R. 219, 221 (Bankr. N.D. Ohio 2009) (citing *In Re Plastech Engineered Prods.*, 394 B.R. 147, 152 (Bankr. E.D. Mich. 2008) (holding that the timing for payment of an administrative expense is left to the sound discretion of the court)).  In fact, "in the instance of administrative claims arising from ordinary course of business payments, such as that made for wages and trade debt, it is generally accepted that such expenses be paid when due, and not when the debtor's plan becomes effective." *Id.*

20.     "In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." *Garden Ridge Corp.*, 323 B.R. 143. "In making this determination, one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets." *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) (internal citations omitted).  "Courts will also consider the particular needs of each administrative claimant and the length and expense of the case's administration." *In re NE OPCO, Inc.*, 501 B.R. 233, 259 (Bankr. D. Del. 2013) (internal citations omitted). "To qualify for exceptional immediate payment, a creditor must show that 'there is a necessity to pay and not merely that the Debtor has the ability to pay.'" *In re Global Home Products*, 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (citing *In re Continental Airlines*, 146 B.R. 520, 531 (Bankr. D. Del. 1992) (quoting *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 179–79 (Bankr.S.D.N.Y.1989))). !

21.     There is no prejudice to the Debtors in requiring immediate payment of Claimant's

Administrative Expense Claim. The Debtors have Court authority—and a DIP and cash collateral budget—permitting them to pay more than $50 million in operating disbursements per week, which amount includes post-petition delivery claims. *See* D.I. 114 (Interim DIP Order); D.I. 584 (Final DIP Order).

22.    The Debtors have thus already decided that, in their business judgment, the prejudice to the Debtors and other creditors arising from immediate payment of post-petition delivery claims is outweighed by the necessity of business continuity. The Debtors, however, have failed to timely pay Claimant for its post-petition deliveries and have provided no explanation for the delay. The Debtors have also budgeted sufficient funds to pay post-petition delivery claims without impairing their ability to operate or restructure during the pendency of these cases. *See generally*, DIP Orders.  Therefore, the Debtors have the capacity, ability, and authority to pay Claimant's Administrative Expense Claim, and payment of such post-petition delivery claims is a proper exercise of the Debtors' business judgment.

23.    Claimant will suffer severe hardship if its Administrative Expense Claim is not paid immediately.  As a manufacturer and wholesaler of hair accessories, Claimant has high overhead costs, including payroll, warehousing, and logistics expenses. If forced to wait indefinitely for payment of the administrative expense amounts, Claimant will be harmed and may experience disruptions in its ability to accept and fulfill future orders for its customers. In reliance on the Debtors' representations that they had the ability, authority, and intent to timely pay Claimant for post-petition deliveries, Claimant agreed to, and delivered, in excess of $123,290.58 in goods to the Debtors. These receivables, constituting the Administrative Expense Claim, are significant to Claimant's business.

24.    Claimant further submits that there would be no meaningful prejudice to other

8

creditors if Claimant's Administrative Expense Claim is paid immediately. As the holder of an allowed administrative expense claim, Claimant is entitled to payment in full on its Administrative Expense Claim in any potential plan or liquidation; therefore, immediate payment will not disadvantage any other creditors, particularly because the Debtors have paid other administrative expense creditors and the DIP Financing was obtained to "reassure" vendors.

25.     The totality of the circumstances supports compelling the Debtors to pay Claimant's Administrative Expense Claim immediately because further delay in payment will only prejudice Claimant.  Accordingly, Claimant requests that its Administrative Expense Claim be allowed and paid within seven days after the entry of an order granting the Motion.

<u>**RESERVATION OF RIGHTS**</u>

26.     By filing this Motion and asserting its Administrative Expense Claim, Claimant does not waive any rights related to the matters herein, including the right to submit this claim to insurance or assert additional claims or administrative expense claims against the Debtors.

<u>**CONCLUSION**</u>

Claimant respectfully requests that the Court enter an order, substantially in the form attached hereto as <u>**Exhibit A**</u>, (i) allowing Claimant's Administrative Expense Claim against the Debtors in an amount no less than $123,290.58, (ii) ordering the Debtors to pay such Administrative Expense Claim within seven days of entry of the order, and (iii) granting such other relief as is just and proper.

Dated: January 21, 2025
Wilmington, DE

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Marcy J. McLaughlin Smith*
Marcy J. McLaughlin Smith (DE Bar # 6184)
1313 North Market Street, Suite 1200
Wilmington, DE 19801

9

WBD (US) 4911-8928-1297v1

Telephone: (302) 2552-4320
Fax: (302) 252-4330
Email: marcy.smith@wbd-us.com

Edward L. Schnitzer
**WOMBLE BOND DICKINSON (US) LLP**
950 Third Avenue, Suite 2400
New York, NY 10022
Telephone: (332) 258-8400
Fax: (332) 258-8949
Email: edward.schnitzer@wbd-us.com

*Counsel for Almar Sales Co., Inc.*