# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: | Chapter 11 |
| BIG LOTS, INC., *et al.,* | Case No.: 24-11967 (JKS) |
| Debtors[1]. | (Jointly Administered) |
| | **Objection Deadline: February 3, 2025 at 4:00 pm (EST)** |
| | **Hearing Date: February 26, 2025 at 10:30 am (EST)** |

**DECLARATION OF YUAN HUANG IN SUPPORT OF HOME CREATIONS INC.'S MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM**

I, Yuan Huang, am over the age of 18 and have personal knowledge of all facts stated herein and in support of Home Creation Inc.'s Motion for Allowance and Payment of Administrative Claim.

1.    I am Yuan Huang at Home Creation Inc. ("HCI"), a creditor of the above-captioned Debtors.

2.    The following facts are within my personal knowledge unless I otherwise state, and if called as a witness in this matter, I can and will competently testify to them.

3.    HCI has been working with Big Lots since at least 2021.

4.    From August 2024 to October 2024, the Debtors placed post-petition orders for goods through a series of Purchase Orders (together with all amendments, exhibits, schedules, attachments and other integrated documents, the "Agreement").

5.    HCI has delivered the goods but has not been paid for pursuant to the terms of the Agreement.

6.    HCI delivered goods with an aggregate purchase price and value of no less than

---

[1] The debtors and debtors in possession in these chapter 11 cases (hereafter, "Debtors") are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).

US$1,474,964 to the Debtors in the normal course of business post-petition for which payment is now

US$1,474,964 overdue and remains outstanding. A summary of account for post-petition

amounts owed by the Debtors to HCI is attached hereto as **Exhibit A** .

I declare under penalty of perjury under the laws of the United States that the foregoing is true

and correct. Executed on this 23rd day of January, 2025 at Shanghai, China.

Yuan Huang

# EXHIBIT A

# EXHIBIT A

**EXHIBIT A**
**SUMMARY OF OUTSTANDING POST-PETITION INVOICES OWED BY BIG LOTS TO HOME CREATIONS INC.**

| Invoice Number | Customer Name | Supplier Reference | Invoice Date | Invoice Value | Payment Due Date | PO NO |
|---|---|---|---|---|---|---|
| S202410230015 | Big Lots Stores LLC | 5005944 | 2024-11-18 | $11,277.00 | 2024-12-20 | 95642972 |
| S202410230013 | Big Lots Stores LLC | 5005944 | 2024-11-18 | $11,277.00 | 2024-12-20 | 95602143 |
| S202410230014 | Big Lots Stores LLC | 5005944 | 2024-11-18 | $22,554.00 | 2024-12-20 | 95642973 |
| S202410280005 | Big Lots Stores LLC | 5005944 | 2024-11-18 | $25,735.50 | 2024-12-20 | 95602142 |
| S202410250011 | Big Lots Stores LLC | 5005944 | 2024-11-18 | $12,883.50 | 2024-12-20 | 95602141 |
| S202410230012 | Big Lots Stores LLC | 5005944 | 2024-11-18 | $24,223.50 | 2024-12-20 | 95602142 |
| S202411120001 | Big Lots Stores LLC | 5005944 | 2024-11-19 | $12,883.50 | 2024-12-20 | 95602141 |
| S202410230022 | Big Lots Stores LLC | 5005944 | 2024-11-21 | $22,554.00 | 2024-12-20 | 95602151 |
| S202410230021 | Big Lots Stores LLC | 5005944 | 2024-11-21 | $38,745.00 | 2024-12-20 | 95602150 |
| S202410280001 | Big Lots Stores LLC | 5005944 | 2024-11-22 | $36,981.00 | 2024-12-20 | 95602150 |
| S202410230009 | Big Lots Stores LLC | 5005944 | 2024-11-18 | $33,374.00 | 2024-12-20 | 95588248 |
| S202410230011 | Big Lots Stores LLC | 5005944 | 2024-11-22 | $12,883.50 | 2024-12-20 | 95602141 |
| S202410230020 | Big Lots Stores LLC | 5005944 | 2024-11-21 | $51,502.50 | 2024-12-20 | 95602149 |
| S202410230025 | Big Lots Stores LLC | 5005944 | 2024-11-22 | $62,775.00 | 2024-12-20 | 95573222 |
| S202410230010 | Big Lots Stores LLC | 5005944 | 2024-11-26 | $44,366.00 | 2024-12-27 | 95578601 |
| S202410230023 | Big Lots Stores LLC | 5005944 | 2024-11-26 | $20,734.00 | 2024-12-27 | 95642947 |
| S202411060017-01 | Big Lots Stores LLC | 5005944 | 2024-11-28 | $3,080.00 | 2024-12-27 | 95575145 |
| S202411060017-02 | Big Lots Stores LLC | 5005944 | 2024-11-28 | $12,816.00 | 2024-12-27 | 95637664 |
| S202410230029 | Big Lots Stores LLC | 5005944 | 2024-11-27 | $34,380.00 | 2024-12-27 | 95647144 |
| S202410230027 | Big Lots Stores LLC | 5005944 | 2024-11-27 | $41,850.00 | 2024-12-27 | 95573224 |
| S202410230028 | Big Lots Stores LLC | 5005944 | 2024-11-27 | $20,925.00 | 2024-12-27 | 95642943 |
| S202410230024 | Big Lots Stores LLC | 5005944 | 2024-11-27 | $55,632.00 | 2024-12-27 | 95578600 |
| S202411060015 | Big Lots Stores LLC | 5005944 | 2024-11-26 | $18,480.00 | 2024-12-27 | 95575145 |
| S202411060016 | Big Lots Stores LLC | 5005944 | 2024-11-26 | $18,480.00 | 2024-12-27 | 95575145 |
| S202411060013 | Big Lots Stores LLC | 5005944 | 2024-11-26 | $18,480.00 | 2024-12-27 | 95575146 |
| S202410230017 | Big Lots Stores LLC | 5005944 | 2024-11-26 | $55,440.00 | 2024-12-27 | 95575146 |
| S202410230008 | Big Lots Stores LLC | 5005944 | 2024-11-26 | $66,102.00 | 2024-12-27 | 95578599 |
| S202410230026 | Big Lots Stores LLC | 5005944 | 2024-12-5 | $125,550.00 | 2025-1-3 | 95573223 |
| S202411150001 | Big Lots Stores LLC | 5005944 | 2024-12-10 | $89,320.00 | 2025-1-10 | 95575145 |
| S202410230016 | Big Lots Stores LLC | 5005944 | 2024-12-10 | $36,960.00 | 2025-1-10 | 95575145 |
| S202410230019 | Big Lots Stores LLC | 5005944 | 2024-12-10 | $107,360.00 | 2025-1-10 | 95642946 |
| S202410230018 | Big Lots Stores LLC | 5005944 | 2024-12-10 | $110,880.00 | 2025-1-10 | 95575147 |
| S202411150004 | Big Lots Stores LLC | 5005944 | 2024-12-10 | $73,920.00 | 2025-1-10 | 95575146 |
| S202411150003 | Big Lots Stores LLC | 5005944 | 2024-12-10 | $55,440.00 | 2025-1-10 | 95575146 |
| S202410250010 | Big Lots Stores LLC | 5005944 | 2024-12-10 | $34,048.00 | 2025-1-10 | 95578611 |
| S202410250008 | Big Lots Stores LLC | 5005944 | 2024-12-10 | $51,072.00 | 2025-1-10 | 95578605 |
| | | | Total Amount | $1,474,964.00 | | |

4

**HOME CREATIONS INC**

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410230008

**Invoice Date.:** November 19, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** AIN SNAN EXPRESS / 034E

**Port of Loading:** SHANGHAI

**Ship on or about:** November 24, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** FANU1735233, TCLU6422378, TCNU4656754

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| P/O No.: 95578599 | | 1,100 | EA | 18.500/EA | 20,350.000 |
| SKU No.: 810775880 | | 275 | CTNS | | |
| 24IN SQUARE STEEL SLAT FOLDING TABLE | No. of Pallet: | | | | |
| HTS Code.: 9403200050 | | | | | |
| P/O No.: 95578599 | | 301 | EA | 42.000/EA | 12,642.000 |
| SKU No.: 810776668 | | 301 | CTNS | | |
| HELENA SQUARE LAMINATED DINING TABLE | No. of Pallet: | | | | |
| HTS Code.: 9403200050 | | | | | |
| P/O No.: 95578599 | | 301 | EA | 110.000/EA | 33,110.000 |
| SKU No.: 810776681 | | 301 | CTNS | | |
| HELENA 4PK CUSHION DINING CHAIRS | No. of Pallet: | | | | |
| HTS Code.: 9401790011 | | | | | |
| **Manufacturer Name & Address** | | | | | |
| JIANGSU HONGBO HOME GOODS CO. LTD NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN NANTONG,, JIANGSU 226600, CHINA | | | | | |
| Total: | (877 CTNS) | | 1,702 | | 66,102.000 |
| TOTAL (USD) DOLLARS : SIXTY-SIX THOUSAND ONE HUNDRED TWO ONLY. | | | | | |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
FANU1735233/HLK0972182/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
FANU1735233/HLK0972182/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95578599
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410230008

**Invoice Date:** November 19, 2024

**Sold To:**    CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:**    2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** AIN SNAN EXPRESS / 034E

**Port of Loading:** SHANGHAI

**Ship on or about:** November 24, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** FANU1735233, TCLU6422378, TCNU4656754

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95578599 | | 1,100 EA | 6,957.50 | 7,755.00 | 40.000 |
| SKU No.: 810775880 | | 275 CTNS | | | |
| 24IN SQUARE STEEL SLAT FOLDING TABLE | No. of Pallet: | | | | |
| HTS Code.: 9403200050 | | | | | |
| P/O No.: 95578599 | | 301 EA | 6,381.20 | 7,675.50 | 30.000 |
| SKU No.: 810776668 | | 301 CTNS | | | |
| HELENA SQUARE LAMINATED DINING TABLE | No. of Pallet: | | | | |
| HTS Code.: 9403200050 | | | | | |
| P/O No.: 95578599 | | 301 EA | 8,668.80 | 10,715.60 | 126.000 |
| SKU No.: 810776681 | | 301 CTNS | | | |
| HELENA 4PK CUSHION DINING CHAIRS | No. of Pallet: | | | | |
| HTS Code.: 9401790011 | | | | | |
| Total: | (877 CTNS) | 1,702 | 22,007.50 | 26,146.10 | 196.000 |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
FANU1735233/HLK0972182/40H
TCLU6422378/HLK0972221/40H
TCNU4656754/HLK0972246/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
FANU1735233/HLK0972182/40H
TCLU6422378/HLK0972221/40H
TCNU4656754/HLK0972246/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

PO#95578599
SKU#
DEPT#210
MADE IN CHINA

Yusen Logistics - Yusen Logistics

# Yusen Logistics

Yusen Logistics - Yusen Logistics

---

FORWARDER'S CARGO RECEIPT No.    **CNS-SHA-2402599**

| | |
|---|---|
| Maker/Supplier : **HOME CREATIONS INC** | Maker/Supplier's INVOICE No.<br>**S202410230008** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC**<br>**2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **November 19, 2024** |
| Shipment From : **SHANGHAI**       To : **MONTGOMERY, AL** | Date of Receipt of Cargo<br>**November 19, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                  NOTIFY PARTY: GEODIS
STORES                                 5101 S. BROAD STREET
                                       PHILADELPHIA, PA 19112-1404, U.S.A.
PO#95578599                            ATTN: ALENA LAMINA
SKU#                      ALSO NOTIFY: EDRAY 2020 LLC.
DEPT#210                               1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                          CHARLOTTE NC 28203 USA
                                       TEL: 704-593-6329
                                       EMAIL: DATAQUALITY@EDRAYCPL.COM

                          CY-CY

                          SHIPPER'S LOAD, COUNT AND SEAL
                          SAID TO CONTAIN
                          FANU1735233        SEAL# HLK0972182      40H  DRY
                          TCLU6422378        SEAL# HLK0972221      40H  DRY
                          TCNU4656754        SEAL# HLK0972246      40H  DRY


                          OUTDOOR FURNITURE AS PER PO#95578599

                          SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL
                          SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                          MATERIAL




                          877 CARTONS                  196.000 CBM    26,146.10 KGS
                          ===================================================================
                          TOTAL : EIGHT HUNDRED SEVENTY-SEVEN (877) CARTONS ONLY

                              "FREIGHT COLLECT"
SHIPMENT PER S.S. "AIN SNAN EXPRESS" VOY NO. 034E    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT November 29, 2024. CARGO RECEIVED ON November 19, 2024.
```

---

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                    **November 26, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br><br><br>As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)       V1 |



**PO #**      **95578599**

| | |
|---|---|
| Date Created | 08/19/2024 |
| Version: | 3 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/18/2024 |
| Cancel if not Shipped by: | 11/25/2024 |
| Must be Routed by: | 10/28/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | SHANGHAI    , CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633      Fax:  334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800      Fax:  614-278-6871

**Purchase From Vendor:**  5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:  HELEN HUANG
Telephone:  86-13817575231     Fax
E-Mail:  sales@hcicreations.com

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 1,702 | 216,474.99 | 66,102.00 | 65.216 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1. Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2. Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3. Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4. Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5. Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6. Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7. Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8. Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9. Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,
without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:   95578599

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 210 | 810776681 | HELENA 4PK CUSHION | 0.00 | CN | 1 | | 301 | 110.00 | 53,195.73 | 01/06/2025 |
| 21012 | H24S0346K | PTIOSETTBL | | | 1 | | 301 | 66.73 | 105,350.00 | |
| 21012001 | NA | CLOSEOUT | | | | | | 350.00 | 49.506 | 479.90 |
| 1 | 481077668100 | | GRM | 14.884 | E1 | | | | | |
| 210 | 810776668 | HELENA SQUARE LAMIN | 0.00 | CN | 1 | | 301 | 42.00 | 18,743.27 | 01/06/2025 |
| 21012 | H24S7408P | PTIOSETTBL | | | 1 | | 301 | 20.27 | 45,146.99 | |
| 21012001 | NA | CLOSEOUT | | | | | | 149.99 | 58.484 | 246.99 |
| 2 | 481077666809 | | GRM | 3.456 | E1 | | | | | |
| 210 | 810775880 | 24IN SQUARE STEEL S | 0.00 | CN | 4 | | 1,100 | 18.50 | 29,546.00 | 01/06/2025 |
| 21012 | HTMS24BF | FOLDNGFURNITURE | | | 4 | | 275 | 8.36 | 65,978.00 | |
| 21012016 | Real Living | | 045 | | | | | 59.98 | 55.218 | 129.95 |
| 3 | 481077588002 | | GRM | 5.114 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410230009

**Invoice Date.:** November 12, 2024

**Sold To:** CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:** 50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** WAN HAI A13 / E004

**Port of Loading:** SHANGHAI

**Ship on or about:** November 15, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** HAMU1257580

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95588248 | 1,804   EA | 18.500/EA | 33,374.000 |
| **SKU No.:** 810775880 | 451   CTNS | | |
| 24IN SQUARE STEEL SLAT FOLDING TABLE      No. of Pallet: | | | |
| **HTS Code.:** 9403200050 | | | |
| **Manufacturer Name & Address**<br><br>JIANGSU HONGBO HOME GOODS CO. LTD<br>NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN<br>NANTONG,, JIANGSU<br>226600, CHINA | | | |
| Total:      (451 CTNS) | 1,804 | | 33,374.000 |
| TOTAL (USD) DOLLARS : THIRTY-THREE THOUSAND THREE HUNDRED SEVENTY-FOUR ONLY. | | | |
| | | | |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
HAMU1257580/HLK0833601/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
HAMU1257580/HLK0833601/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95588248
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

---

# PACKING LIST

---

**Invoice No.:** S202410230009

**Invoice Date.:** November 12, 2024

**Sold To:**    CLOSEOUT DISTRIBUTION, LLC
              50 RAUSCH CREEK RD
              TREMONT, PA 17981
              USA

**Delivery To:**    50 RAUSCH CREEK RD
                 TREMONT, PA 17981
                 USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** WAN HAI A13 / E004

**Port of Loading:** SHANGHAI

**Ship on or about:** November 15, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** HAMU1257580

| Cargo Description | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|
| **P/O No.:** 95588248 | 1,804  EA | 11,410.30 | 12,718.20 | 65.000 |
| **SKU No.:** 810775880 | 451  CTNS | | | |
| 24IN SQUARE STEEL SLAT FOLDING TABLE | **No. of Pallet:** | | | |
| **HTS Code.:** 9403200050 | | | | |
| **Total:**      **(451 CTNS)** | **1,804** | **11,410.30** | **12,718.20** | **65.000** |

---

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
HAMU1257580/HLK0833601/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
HAMU1257580/HLK0833601/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95588248
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics        Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.        **CNS-SHA-2402545**

| | |
|---|---|
| Maker/Supplier: **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202410230009** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC**<br>**50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated: **November 12, 2024** |
| Shipment From : **SHANGHAI**        To : **TREMONT, PA** | Date of Receipt of Cargo<br>**November 11, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95588248<br>SKU#<br>DEPT#210<br>MADE IN CHINA | NOTIFY PARTY: GEODIS<br>           5101 S. BROAD STREET<br>           PHILADELPHIA, PA 19112-1404, U.S.A.<br>           ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>           1300 SOUTH MINT STREET SUITE 200<br>           CHARLOTTE NC 28203 USA<br>           TEL: 704-593-6329<br>           EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CY-CY<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>HAMU1257580        SEAL# HLK0833601        40H  DRY<br><br><br>OUTDOOR FURNITURE AS PER PO#95588248<br><br>SHIP TO CODE & LOCATION : 00874-TREMONT, PA<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| 451 CARTONS | | 65.000 CBM | 12,718.20 KGS |

===========================================================
TOTAL : FOUR HUNDRED FIFTY-ONE (451) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "WAN HAI A17" VOY NO. E002    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT November 23, 2024. CARGO RECEIVED ON November 11, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**        **November 18, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.<br>No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br><br><br>As Agent<br>(Authorized Signature)        V1 |



**PO #**      **95588248**

| | |
|---|---|
| Date Created | 08/26/2024 |
| Version: | 5 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/04/2024 |
| Cancel if not Shipped by: | 11/11/2024 |
| Must be Routed by: | 10/14/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | SHANGHAI    ,  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:   570-695-2862

---

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

---

Purchase From Vendor:   5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:     HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:       sales@hcicreations.com

---

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

---

| | Units | Retail | Vendor Cost | IMU |
|---|---|---|---|---|
| | 1,804 | 108,203.92 | 33,374.00 | 55.218 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.    Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.    Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.    Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.    Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.    Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.    Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.    Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.    Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.    Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



## IMPORTANT Terms and Conditions

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 210 | 810775880 | 24IN SQUARE STEEL S | 0.00 | CN | 4 | | 1,804 | 18.50 | 48,455.44 | 12/16/2024 |
| 21012 | HTMS24BF | FOLDNGFURNITURE | | | 4 | | 451 | 8.36 | 108,203.92 | |
| 21012016 | Real Living | | 045 | | | | | 59.98 | 55.218 | 129.95 |
| 1 | 481077588002 | | GRM | 5.114 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410230010

**Invoice Date.:** November 22, 2024

**Sold To:**　DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:**　2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO SHIPPING ALPS / 040E

**Port of Loading:** SHANGHAI

**Ship on or about:** November 26, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** CAAU6125067, OOLU8777252

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95578601 | | 796 | EA | 18.500/EA | 14,726.000 |
| **SKU No.:** 810775880 | | 199 | CTNS | | |
| 24IN SQUARE STEEL SLAT FOLDING TABLE | No. of Pallet: | | | | |
| **HTS Code.:** 9403200050 | | | | | |
| **P/O No.:** 95578601 | | 195 | EA | 42.000/EA | 8,190.000 |
| **SKU No.:** 810776668 | | 195 | CTNS | | |
| HELENA SQUARE LAMINATED DINING TABLE | No. of Pallet: | | | | |
| **HTS Code.:** 9403200050 | | | | | |
| **P/O No.:** 95578601 | | 195 | EA | 110.000/EA | 21,450.000 |
| **SKU No.:** 810776681 | | 195 | CTNS | | |
| HELENA 4PK CUSHION DINING CHAIRS | No. of Pallet: | | | | |
| **HTS Code.:** 9401790011 | | | | | |
| **Manufacturer Name & Address** | | | | | |
| JIANGSU HONGBO HOME GOODS CO. LTD NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN NANTONG,, JIANGSU 226600, CHINA | | | | | |
| **Total:** **(589 CTNS)** | | **1,186** | | | **44,366.000** |
| **TOTAL (USD) DOLLARS : FORTY-FOUR THOUSAND THREE HUNDRED SIXTY-SIX ONLY.** | | | | | |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
CAAU6125067/OOLJWG9922/40H
OOLU8777252/OOLJWG9826/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
CAAU6125067/OOLJWG9922/40H
OOLU8777252/OOLJWG9826/40H

We certify that there is no wood packing material in the shipment

**Carton Marks And Number**

BIG LOTS
STORES

PO#95578601
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410230010

**Sold To:**     DURANT DC, LLC
               2306 ENTERPRISE DR
               DURANT, OK 74701
               USA

**Shipment Terms:** FOB SHANGHAI

**Country of Origin:** CHINA

**Vessel / Voyage:** COSCO SHIPPING ALPS / 040E

**Ship on or about:** November 26, 2024

**Invoice Date.:** November 22, 2024

**Delivery To:**    2306 ENTERPRISE DR
                   DURANT, OK 74701
                   USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** SHANGHAI

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** CAAU6125067, OOLU8777252

| Cargo Description | | Quantity (Unit) | | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|---|
| P/O No.: 95578601 | | 796 | EA | 5,034.70 | 5,611.80 | 29.000 |
| SKU No.: 810775880 | | 199 | CTNS | | | |
| 24IN SQUARE STEEL SLAT FOLDING TABLE | No. of Pallet: | | | | | |
| HTS Code.: 9403200050 | | | | | | |
| P/O No.: 95578601 | | 195 | EA | 4,134.00 | 4,972.50 | 19.000 |
| SKU No.: 810776668 | | 195 | CTNS | | | |
| HELENA SQUARE LAMINATED DINING TABLE | No. of Pallet: | | | | | |
| HTS Code.: 9403200050 | | | | | | |
| P/O No.: 95578601 | | 195 | EA | 5,616.00 | 6,942.00 | 82.000 |
| SKU No.: 810776681 | | 195 | CTNS | | | |
| HELENA 4PK CUSHION DINING CHAIRS | No. of Pallet: | | | | | |
| HTS Code.: 9401790011 | | | | | | |
| Total: | (589 CTNS) | 1,186 | | 14,784.70 | 17,526.30 | 130.000 |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
CAAU6125067/OOLJWG9922/40H
OOLU8777252/OOLJWG9826/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
CAAU6125067/OOLJWG9922/40H
OOLU8777252/OOLJWG9826/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95578601
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SHA-2402620**

| | |
|---|---|
| Maker/Supplier : **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202410230010** |
| Buyer/Consignee : **DURANT DC, LLC** <br> **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **November 22, 2024** |
| Shipment From : **SHANGHAI**    To : **DURANT, OK** | Date of Receipt of Cargo <br> **November 21, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS <br> STORES <br><br> PO#95578601 <br> SKU# <br> DEPT#210 <br> MADE IN CHINA | | NOTIFY PARTY: GEODIS <br> 5101 S. BROAD STREET <br> PHILADELPHIA, PA 19112-1404, U.S.A. <br> ATTN: ALENA LAMINA <br> ALSO NOTIFY: EDRAY 2020 LLC. <br> 1300 SOUTH MINT STREET SUITE 200 <br> CHARLOTTE NC 28203 USA <br> TEL: 704-593-6329 <br> EMAIL: DATAQUALITY@EDRAYCPL.COM <br><br> CY-CY <br><br> SHIPPER'S LOAD, COUNT AND SEAL <br> SAID TO CONTAIN <br> CAAU6125067    SEAL# OOLJWG9922    40H  DRY <br> OOLU8777252    SEAL# OOLJWG9826    40H  DRY <br><br><br> OUTDOOR FURNITURE AS PER PO#95578601 <br><br> SHIP TO CODE & LOCATION : 00879-DURANT, OK <br> SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |

```
                589 CARTONS                130.000 CBM    17,526.30 KGS
                ==========================================================
                TOTAL : FIVE HUNDRED EIGHTY-NINE (589) CARTONS ONLY

                    "FREIGHT COLLECT"
SHIPMENT PER S.S. "COSCO SHIPPING ALPS" VOY NO. 040E    DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT November 25, 2024. CARGO RECEIVED ON November 21, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                        **November 26, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. <br> No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** <br> (Terms and conditions are to be continued to the reverse side hereof.) | (Place and date of issue.) <br> **YUSEN LOGISTICS** <br><br>  <br> As Agent <br> (Authorized Signature)        V1 |



| PO # | 95578601 |
|---|---|

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created: | 08/19/2024 |
| Version: | 3 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/18/2024 |
| Cancel if not Shipped by: | 11/25/2024 |
| Must be Routed by: | 10/28/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | SHANGHAI    ,  CN |

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100       Fax:   580-931-2197

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800       Fax: 614-278-6871

Purchase From Vendor:   5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:  86-13817575231    Fax
E-Mail:    sales@hcicreations.com

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 1,186 | 145,242.13 | 44,366.00 | 64.872 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:    95578601

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC").  A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#: 95578601

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|---|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 210 | 810776681 | HELENA 4PK CUSHION | 0.00 | CN | 1 | | 195 | 110.00 | 34,462.35 | 01/06/2025 |
| 21012 | H24S0346K | PTIOSETTBL | | | 1 | | 195 | 66.73 | 68,250.00 | |
| 21012001 | NA | CLOSEOUT | | | | | | 350.00 | 49.506 | 479.90 |
| 1 | 481077668100 | | GRM | 14.884 | E1 | | | | | |
| 210 | 810776668 | HELENA SQUARE LAMIN | 0.00 | CN | 1 | | 195 | 42.00 | 12,142.65 | 01/06/2025 |
| 21012 | H24S7408P | PTIOSETTBL | | | 1 | | 195 | 20.27 | 29,248.05 | |
| 21012001 | NA | CLOSEOUT | | | | | | 149.99 | 58.484 | 246.99 |
| 2 | 481077666809 | | GRM | 3.456 | E1 | | | | | |
| 210 | 810775880 | 24IN SQUARE STEEL S | 0.00 | CN | 4 | | 796 | 18.50 | 21,380.56 | 01/06/2025 |
| 21012 | HTMS24BF | FOLDNGFURNITURE | | | 4 | | 199 | 8.36 | 47,744.08 | |
| 21012016 | Real Living | | 045 | | | | | 59.98 | 55.218 | 129.95 |
| 3 | 481077588002 | | GRM | 5.114 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410230011

**Invoice Date.:** November 22, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB NINGBO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** ZIM MOUNT BLANC / 007E

**Port of Loading:** NINGBO

**Ship on or about:** November 26, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** MRSU3737003

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95602141 | | 818    EA | 15.750/EA | 12,883.500 |
| **SKU No.:** 810775687 | | 409  CTNS | | |
| SLING GRAVITY LOUNGER | No. of Pallet: | | | |
| **HTS Code.:** 9401790011 | | | | |
| | **Manufacturer Name & Address** | | | |
| | YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD NO.77 YUGUI ROAD WEST CITY,YONGKANG JINHUA, ZHEJIANG 321300, CHINA | | | |
| **Total:** | **(409 CTNS)** | **818** | | **12,883.500** |
| TOTAL (USD) DOLLARS : TWELVE THOUSAND EIGHT HUNDRED EIGHTY-THREE AND CENTS FIFTY ONLY. | | | | |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
MRSU3737003/CN7886057/40H

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
MRSU3737003/CN7886057/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95602141
SKU#
DEPT#210
MADE IN CHINA

**HOME CREATIONS INC**

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410230011

**Sold To:**    CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB NINGBO

**Country of Origin:** CHINA

**Vessel / Voyage:** ZIM MOUNT BLANC / 007E

**Ship on or about:** November 26, 2024

**Invoice Date.:** November 22, 2024

**Delivery To:**    2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** NINGBO

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** MRSU3737003

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95602141 | | 818  EA | 6,053.20 | 7,198.40 | 66.000 |
| **SKU No.:** 810775687 | | 409  CTNS | | | |
| SLING GRAVITY LOUNGER | No. of Pallet: | | | | |
| **HTS Code.:** 9401790011 | | | | | |
| **Total:** | **(409 CTNS)** | **818** | **6,053.20** | **7,198.40** | **66.000** |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
MRSU3737003/CN7886057/40H

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
MRSU3737003/CN7886057/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95602141
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics   Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NBO-2400522**

| | |
|---|---|
| | Maker/Supplier's INVOICE No. **S202410230011** |
| Maker/Supplier : **HOME CREATIONS INC** | |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC** **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **November 22, 2024** |
| Shipment From : **NINGBO**    To : **MONTGOMERY, AL** | Date of Receipt of Cargo **November 22, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **BIG LOTS STORES** **PO#95602141** **SKU#** **DEPT#210** **MADE IN CHINA** | | NOTIFY PARTY: GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA ALSO NOTIFY: EDRAY 2020 LLC. 1300 SOUTH MINT STREET SUITE 200 CHARLOTTE NC 28203 USA TEL: 704-593-6329 EMAIL: DATAQUALITY@EDRAYCPL.COM CY-CY SHIPPER'S LOAD, COUNT AND SEAL SAID TO CONTAIN MRSU3737003        SEAL# CN7886057        40H  DRY OUTDOOR FURNITURE AS PER PO#95602141 SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 409 CARTONS | | 66.000 CBM | 7,198.40 KGS |

===========================================================
TOTAL : FOUR HUNDRED NINE (409) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "ZIM MOUNT BLANC" VOY NO. 007E    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT November 26, 2024. CARGO RECEIVED ON November 22, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **NINGBO**                                    **November 22, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. **No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: 1** (Terms and conditions are to be continued to the reverse side hereof.) | (Place and date of issue.) **YUSEN LOGISTICS**  As Agent (Authorized Signature)    V1 |



**PO #**     **95602141**

| | |
|---|---|
| Date Created | 09/06/2024 |
| Version: | 3 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/04/2024 |
| Cancel if not Shipped by: | 11/11/2024 |
| Must be Routed by: | 10/14/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | NINGBO        , CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633        Fax:  334-286-7024

---

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

Purchase From Vendor:  5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:     sales@hcicreations.com

---

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

---

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 2,454 | 122,675.46 | 38,650.50 | 45.969 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95602141

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|-----------|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 210 | 810775687 | SLING GRAVITY LOUNG | 0.00 | CN | 2 | | 2,454 | 15.75 | 66,282.54 | 12/23/2024 |
|-----|-----------|---------------------|------|----|----|--|-------|-------|-----------|------------|
| 21012 | HFTS695J | QUADCHAIRS | | | 2 | | 1,227 | 11.26 | 122,675.46 | |
| 21012018 | Real Living | | | | | | | 49.99 | 45.969 | 89.99 |
| 1 | 481077568707 | | GRM | 5.723 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410230012

**Invoice Date.:** November 13, 2024

**Sold To:** CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:** 50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB NINGBO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** WAN HAI A13 / E004

**Port of Loading:** NINGBO

**Ship on or about:** November 17, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** TGCU5181791, UACU6041180

| Cargo Description | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95602142 | 1,538 | EA | 15.750/EA | 24,223.500 |
| **SKU No.:** 810775687 | 769 | CTNS | | |
| SLING GRAVITY LOUNGER | **No. of Pallet:** | | | |
| **HTS Code.:** 9401790011 | | | | |
| **Manufacturer Name & Address** | | | | |
| YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD NO.77 YUGUI ROAD WEST CITY,YONGKANG JINHUA, ZHEJIANG 321300, CHINA | | | | |
| Total: (769 CTNS) | 1,538 | | | 24,223.500 |

**TOTAL (USD) DOLLARS : TWENTY-FOUR THOUSAND TWO HUNDRED TWENTY-THREE AND CENTS FIFTY ONLY.**

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
TGCU5181791/HLK0664284/40H
UACU6041180/HLK0629663/40H

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
TGCU5181791/HLK0664284/40H
UACU6041180/HLK0629663/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95602142
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410230012

**Sold To:**   CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB NINGBO

**Country of Origin:** CHINA

**Vessel / Voyage:** WAN HAI A13 / E004

**Ship on or about:** November 17, 2024

**Invoice Date.:** November 13, 2024

**Delivery To:**   50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** NINGBO

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** TGCU5181791, UACU6041180

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95602142 | | 1,538   EA | 11,381.20 | 13,534.40 | 124.000 |
| **SKU No.:** 810775687 | | 769   CTNS | | | |
| SLING GRAVITY LOUNGER | **No. of Pallet:** | | | | |
| **HTS Code.:** 9401790011 | | | | | |
| **Total:** | **(769 CTNS)** | **1,538** | **11,381.20** | **13,534.40** | **124.000** |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
TGCU5181791/HLK0664284/40H
UACU6041180/HLK0629663/40H

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
TGCU5181791/HLK0664284/40H
UACU6041180/HLK0629663/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95602142
SKU#
DEPT#210
MADE IN CHINA

Yusen Logistics - Yusen Logistics

# Yusen Logistics

Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NBO-2400514**

| | |
|---|---|
| Maker/Supplier: **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202410230012** |
| Buyer/Consignee: **CLOSEOUT DISTRIBUTION, LLC** **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated: **November 13, 2024** |
| Shipment From: **NINGBO**    To: **TREMONT, PA** | Date of Receipt of Cargo **November 13, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES | | NOTIFY PARTY: GEODIS | | |

```
BIG LOTS                      NOTIFY PARTY: GEODIS
STORES                                     5101 S. BROAD STREET
                                           PHILADELPHIA, PA 19112-1404, U.S.A.
PO#95602142                                ATTN: ALENA LAMINA
SKU#                          ALSO NOTIFY: EDRAY 2020 LLC.
DEPT#210                                   1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                              CHARLOTTE NC 28203 USA
                                           TEL: 704-593-6329
                                           EMAIL: DATAQUALITY@EDRAYCPL.COM
                              CY-CY

                              SHIPPER'S LOAD, COUNT AND SEAL
                              SAID TO CONTAIN
                              TGCU5181791          SEAL# HLK0664284      40H  DRY
                              UACU6041180          SEAL# HLK0629663      40H  DRY


                              OUTDOOR FURNITURE AS PER PO#95602142

                              SHIP TO CODE & LOCATION : 00874-TREMONT, PA
                              SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                              MATERIAL



                              769 CARTONS                124.000 CBM    13,534.40 KGS
                              ======================================================
                              TOTAL : SEVEN HUNDRED SIXTY-NINE (769) CARTONS ONLY

                                    "FREIGHT COLLECT"
SHIPMENT PER S.S. "WAN HAI A13" VOY NO. E004   DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT November 17, 2024. CARGO RECEIVED ON November 13, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **NINGBO** | **November 18, 2024** |
|---|---|---|

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company has not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.)

(Place and date of issue.)
**YUSEN LOGISTICS**



As Agent

(Authorized Signature)    V1

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics



**PO #**        **95602142**

| | |
|---|---|
| Date Created | 09/06/2024 |
| Version: | 3 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/04/2024 |
| Cancel if not Shipped by: | 11/11/2024 |
| Must be Routed by: | 10/14/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | NINGBO        , CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:  570-695-2862

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

Purchase From Vendor:   5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:     HELEN HUANG
Telephone:  86-13817575231        Fax
E-Mail:      sales@hcicreations.com

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 3,172 | 158,568.28 | 49,959.00 | 45.969 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 210 | 810775687 | SLING GRAVITY LOUNG | 0.00 | CN | 2 | | 3,172 | 15.75 | 85,675.72 | 12/16/2024 |
| 21012 | HFTS695J | QUADCHAIRS | | | 2 | | 1,586 | 11.26 | 158,568.28 | |
| 21012018 | Real Living | | | | | | | 49.99 | 45.969 | 89.99 |
| 1 | 481077568707 | | GRM | 5.723 | E1 | | | | | |

**HOME CREATIONS INC**                                                                      Seller reference

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410230013

**Invoice Date.:** November 13, 2024

**Sold To:**  DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:**  2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB NINGBO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** OOCL EGYPT / 064E

**Port of Loading:** NINGBO

**Ship on or about:** November 17, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** CSNU4018060

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95602143 | | 716   EA | 15.750/EA | 11,277.000 |
| **SKU No.:** 810775687 | | 358   CTNS | | |
| SLING GRAVITY LOUNGER | No. of Pallet: | | | |
| **HTS Code.:** 9401790011 | | | | |
| | **Manufacturer Name & Address** | | | |
| | YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD NO.77 YUGUI ROAD WEST CITY,YONGKANG JINHUA, ZHEJIANG 321300, CHINA | | | |
| Total: | (358 CTNS) | 716 | | 11,277.000 |
| **TOTAL (USD) DOLLARS : ELEVEN THOUSAND TWO HUNDRED SEVENTY-SEVEN ONLY.** | | | | |
| | | | | |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
CSNU4018060/OOLJGK6327/40'

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
CSNU4018060/OOLJGK6327/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95602143
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410230013

**Invoice Date.:** November 13, 2024

**Sold To:**  DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:**  2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB NINGBO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** OOCL EGYPT / 064E

**Port of Loading:** NINGBO

**Ship on or about:** November 17, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** CSNU4018060

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95602143 | | 716 EA | 5,298.40 | 6,300.80 | 58.000 |
| SKU No.: 810775687 | | 358 CTNS | | | |
| SLING GRAVITY LOUNGER | No. of Pallet: | | | | |
| HTS Code.: 9401790011 | | | | | |
| Total: | (358 CTNS) | 716 | 5,298.40 | 6,300.80 | 58.000 |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
CSNU4018060/OOLJGK6327/40'

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
CSNU4018060/OOLJGK6327/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95602143
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.   **CNS-NBO-2400513**

| | |
|---|---|
| Maker/Supplier : **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202410230013** |
| Buyer/Consignee : **DURANT DC, LLC** **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **November 13, 2024** |
| Shipment From : **NINGBO**          To : **DURANT, OK** | Date of Receipt of Cargo **November 13, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                  NOTIFY PARTY: GEODIS
STORES                                 5101 S. BROAD STREET
                                       PHILADELPHIA, PA 19112-1404, U.S.A.
PO#95602143                            ATTN: ALENA LAMINA
SKU#                      ALSO NOTIFY: EDRAY 2020 LLC.
DEPT#210                               1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                          CHARLOTTE NC 28203 USA
                                       TEL: 704-593-6329
                                       EMAIL: DATAQUALITY@EDRAYCPL.COM

                          CY-CY

                          SHIPPER'S LOAD, COUNT AND SEAL
                          SAID TO CONTAIN
                          CSNU4018060          SEAL# OOLJGK6327          40'  DRY


                          OUTDOOR FURNITURE AS PER PO#95602143

                          SHIP TO CODE & LOCATION : 00879-DURANT, OK
                          SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                          MATERIAL




                          358 CARTONS                 58.000 CBM    6,300.80 KGS
                          ===========================================================
                          TOTAL : THREE HUNDRED FIFTY-EIGHT (358) CARTONS ONLY

                              "FREIGHT COLLECT"
SHIPMENT PER S.S. "OOCL EGYPT" VOY NO. 064E    DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT November 17, 2024. CARGO RECEIVED ON November 13, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **NINGBO**                                    **November 18, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS**  As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                              V1 |



| PO # | **95602143** |
|---|---|

| | |
|---|---|
| Date Created: | 09/06/2024 |
| Version: | 3 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/04/2024 |
| Cancel if not Shipped by: | 11/11/2024 |
| Must be Routed by: | 10/14/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | NINGBO          ,  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:  580-931-2197

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

Purchase From Vendor:   5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:      sales@hcicreations.com

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 716 | 35,792.84 | 11,277.00 | 45.969 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.  Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.  Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.  Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.  Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.  Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.  Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.  Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.  Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.  Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95602143

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|--------------------|------|-------------------|--------|---|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 210 | 810775687 | SLING GRAVITY LOUNG | 0.00 | CN | 2 | | 716 | 15.75 | 19,339.16 | 12/23/2024 |
| 21012 | HFTS695J | QUADCHAIRS | | | 2 | | 358 | 11.26 | 35,792.84 | |
| 21012018 | Real Living | | | | | | | 49.99 | 45.969 | 89.99 |
| 1 | 481077568707 | | GRM | 5.723 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

---

# INVOICE

---

**Invoice No.:** S202410230014

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB NINGBO

**Country of Origin:** CHINA

**Vessel / Voyage:** OOCL EGYPT / 064E

**Ship on or about:** November 17, 2024

**Invoice Date.:** November 13, 2024

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** NINGBO

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** CSNU4031864, OOLU4528204

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95642973 | 1,432  EA | 15.750/EA | 22,554.000 |
| **SKU No.:** 810775687 | 716  CTNS | | |
| SLING GRAVITY LOUNG | No. of Pallet: | | |
| **HTS Code.:** 9401790011 | | | |
| | | | |
| **Manufacturer Name & Address** | | | |
| YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD<br>NO.77 YUGUI ROAD WEST CITY,YONGKANG<br>JINHUA, ZHEJIANG<br>321300, CHINA | | | |
| Total:          (716 CTNS) | 1,432 | | 22,554.000 |
| TOTAL (USD) DOLLARS : TWENTY-TWO THOUSAND FIVE HUNDRED FIFTY-FOUR ONLY. | | | |
| | | | |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
CSNU4031864/OOLJGK6329/40'
OOLU4528204/OOLJGK6328/40'

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
CSNU4031864/OOLJGK6329/40'
OOLU4528204/OOLJGK6328/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES
PO#95642973
SKU#
DEPT#210
MADE IN CHINA

**HOME CREATIONS INC**

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410230014

**Invoice Date.:** November 13, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB NINGBO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** OOCL EGYPT / 064E

**Port of Loading:** NINGBO

**Ship on or about:** November 17, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** CSNU4031864, OOLU4528204

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95642973 | | 1,432  EA | 10,596.80 | 12,601.60 | 116.000 |
| SKU No.: 810775687 | | 716  CTNS | | | |
| SLING GRAVITY LOUNG | No. of Pallet: | | | | |
| HTS Code.: 9401790011 | | | | | |
| **Total:** | **(716 CTNS)** | **1,432** | **10,596.80** | **12,601.60** | **116.000** |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
CSNU4031864/OOLJGK6329/40'
OOLU4528204/OOLJGK6328/40'

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
CSNU4031864/OOLJGK6329/40'
OOLU4528204/OOLJGK6328/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES
PO#95642973
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.   **CNS-NBO-2400512**

| | |
|---|---|
| Maker/Supplier : **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202410230014** |
| Buyer/Consignee : **DURANT DC, LLC** **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **November 13, 2024** |
| Shipment From : **NINGBO**      To : **DURANT, OK** | Date of Receipt of Cargo **November 13, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **BIG LOTS**<br>**STORES**<br>**PO#95642973**<br>**SKU#**<br>**DEPT#210**<br>**MADE IN CHINA** | | **NOTIFY PARTY: GEODIS**<br>          **5101 S. BROAD STREET**<br>          **PHILADELPHIA, PA 19112-1404, U.S.A.**<br>          **ATTN: ALENA LAMINA**<br>**ALSO NOTIFY: EDRAY 2020 LLC.**<br>          **1300 SOUTH MINT STREET SUITE 200**<br>          **CHARLOTTE NC 28203 USA**<br>          **TEL: 704-593-6329**<br>          **EMAIL: DATAQUALITY@EDRAYCPL.COM**<br>     **CY-CY**<br><br>     **SHIPPER'S LOAD, COUNT AND SEAL**<br>     **SAID TO CONTAIN**<br>     **CSNU4031864      SEAL# OOLJGK6329      40'  DRY**<br>     **OOLU4528204      SEAL# OOLJGK6328      40'  DRY**<br><br><br>     **OUTDOOR FURNITURE AS PER PO#95642973**<br><br>     **SHIP TO CODE & LOCATION : 00879-DURANT, OK**<br>     **SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING**<br>     **MATERIAL** | | |
| | **716 CARTONS** | | **116.000 CBM** | **12,601.60 KGS** |

**TOTAL : SEVEN HUNDRED SIXTEEN (716) CARTONS ONLY**

**"FREIGHT COLLECT"**
**SHIPMENT PER S.S. "OOCL EGYPT" VOY NO. 064E   DISCHARGED AT LONG BEACH, CA**
**SAILING ON / ABOUT November 17, 2024. CARGO RECEIVED ON November 13, 2024.**

| THIS IS NOT A DOCUMENT OF TITLE | **NINGBO**                    **November 18, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br><br>                                             As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                  V1 |



**PO #**          **95642973**

| | |
|---|---|
| Date Created: | 10/15/2024 |
| Version: | 1 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/04/2024 |
| Cancel if not Shipped by: | 11/11/2024 |
| Must be Routed by: | 10/14/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | NINGBO          , CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:  580-931-2197

---

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

Purchase From Vendor:  5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:  86-13817575231    Fax
E-Mail:    sales@hcicreations.com

---

**ADDITIONAL COMMENTS**

PO replaces :0095602148; Ship only these quantities under the new PO.

TT 30 DAYS FROM THE FCR

---

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 1,432 | 71,585.68 | 22,554.00 | 45.969 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|--------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 210 | 810775687 | SLING GRAVITY LOUNG | 0.00 | CN | 2 | | 1,432 | 15.75 | 38,678.32 | 12/23/2024 |
| 21012 | HFTS695J | QUADCHAIRS | | | 2 | | 716 | 11.26 | 71,585.68 | |
| 21012018 | Real Living | | | | | | | 49.99 | 45.969 | 89.99 |
| 1 | 481077568707 | | GRM | 5.723 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410230015

**Invoice Date.:** November 07, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB NINGBO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** OOCL MALAYSIA / 060E

**Port of Loading:** NINGBO

**Ship on or about:** November 10, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** OOCU4937715

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95642972 | | 716 EA | 15.750/EA | 11,277.000 |
| **SKU No.:** 810775687 | | 358 CTNS | | |
| SLING GRAVITY LOUNG | No. of Pallet: | | | |
| **HTS Code.:** 9401790011 | | | | |
| | **Manufacturer Name & Address** | | | |
| | YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD NO.77 YUGUI ROAD WEST CITY,YONGKANG JINHUA, ZHEJIANG 321300, CHINA | | | |
| Total: | (358 CTNS) | 716 | | 11,277.000 |

**TOTAL (USD) DOLLARS : ELEVEN THOUSAND TWO HUNDRED SEVENTY-SEVEN ONLY.**

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
OOCU4937715/OOLJGR3685/40'

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
OOCU4937715/OOLJGR3685/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES
PO#95642972
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410230015

**Invoice Date.:** November 07, 2024

**Sold To:**  DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:**  2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB NINGBO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** OOCL MALAYSIA / 060E

**Port of Loading:** NINGBO

**Ship on or about:** November 10, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** OOCU4937715

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95642972 | | 716  EA | 5,298.40 | 6,300.80 | 58.000 |
| **SKU No.:** 810775687 | | 358  CTNS | | | |
| SLING GRAVITY LOUNG | No. of Pallet: | | | | |
| **HTS Code.:** 9401790011 | | | | | |
| **Total:** | **(358 CTNS)** | **716** | **5,298.40** | **6,300.80** | **58.000** |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
OOCU4937715/OOLJGR3685/40'

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
OOCU4937715/OOLJGR3685/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES
PO#95642972
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics                    Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NBO-2400509**

| | |
|---|---|
| Maker/Supplier : **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202410230015** |
| Buyer/Consignee : **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **November 07, 2024** |
| Shipment From : **NINGBO**        To : **DURANT, OK** | Date of Receipt of Cargo<br>**November 06, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **BIG LOTS**<br>**STORES**<br>**PO#95642972**<br>**SKU#**<br>**DEPT#210**<br>**MADE IN CHINA** | | **NOTIFY PARTY: GEODIS**<br>    **5101 S. BROAD STREET**<br>    **PHILADELPHIA, PA 19112-1404, U.S.A.**<br>    **ATTN: ALENA LAMINA**<br>**ALSO NOTIFY: EDRAY 2020 LLC.**<br>    **1300 SOUTH MINT STREET SUITE 200**<br>    **CHARLOTTE NC 28203 USA**<br>    **TEL: 704-593-6329**<br>    **EMAIL: DATAQUALITY@EDRAYCPL.COM**<br><br>**CY-CY**<br><br>**SHIPPER'S LOAD, COUNT AND SEAL**<br>**SAID TO CONTAIN**<br>**OOCU4937715        SEAL# OOLJGR3685        40'  DRY**<br><br><br>**OUTDOOR FURNITURE AS PER PO#95642972**<br><br>**SHIP TO CODE & LOCATION : 00879-DURANT, OK**<br>**SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING MATERIAL** | | |
| | **358 CARTONS** | | **58.000 CBM** | **6,300.80 KGS** |

**TOTAL : THREE HUNDRED FIFTY-EIGHT (358) CARTONS ONLY**

**"FREIGHT COLLECT"**
**SHIPMENT PER S.S. "OOCL MALAYSIA" VOY NO. 060E    DISCHARGED AT LONG BEACH, CA**
**SAILING ON / ABOUT November 9, 2024. CARGO RECEIVED ON November 6, 2024.**

| THIS IS NOT A DOCUMENT OF TITLE | **NINGBO**                    **November 18, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.<br><br>No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br><br><br>                                        As Agent<br>(Authorized Signature)        V1 |



**PO #**     **95642972**

| | |
|---|---|
| Date Created | 10/15/2024 |
| Version: | 1 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/04/2024 |
| Cancel if not Shipped by: | 11/11/2024 |
| Must be Routed by: | 10/14/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | NINGBO          ,  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:  580-931-2197

---

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

Purchase From Vendor:  5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:      sales@hcicreations.com

---

**ADDITIONAL COMMENTS**

PO replaces :0095602140; Ship only these quantities under the new PO.

TT 30 DAYS FROM THE FCR

---

| | Units | Retail | Vendor Cost | IMU |
|---|---|---|---|---|
| | 716 | 35,792.84 | 11,277.00 | 45.969 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.     Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.     Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.     Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.     Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.     Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.     Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.     Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.     Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.     Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 210 | 810775687 | SLING GRAVITY LOUNG | 0.00 | CN | 2 | | 716 | 15.75 | 19,339.16 | 12/23/2024 |
|---|---|---|---|---|---|---|---|---|---|---|
| 21012 | HFTS695J | QUADCHAIRS | | | 2 | | 358 | 11.26 | 35,792.84 | |
| 21012018 | Real Living | | | | | | | 49.99 | 45.969 | 89.99 |
| 1 | 481077568707 | | GRM | 5.723 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410230016

**Sold To:**  CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB QINGDAO

**Country of Origin:** CHINA

**Vessel / Voyage:** UNAYZAH EXPRESS / 034E

**Ship on or about:** December 04, 2024

**Invoice Date:** December 02, 2024

**Delivery To:**  2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** QINGDAO

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** NYKU4902039, TCLU6758357

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95575145 | | 168 | EA | 220.000/EA | 36,960.000 |
| **SKU No.:** 810776600 | | 168 | CTNS | | |
| MATARA CORNER SOFA DINING SET | No. of Pallet: | | | | |
| **HTS Code.:** 9401790050 | | | | | |
| | | | | | |
| **Manufacturer Name & Address** | | | | | |
| JIANGSU HONGBO HOME GOODS CO., LTD JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY HEZE, SHANDONG 274601, CHINA | | | | | |
| **Total:** | **(168 CTNS)** | **168** | | | **36,960.000** |
| **TOTAL (USD) DOLLARS : THIRTY-SIX THOUSAND NINE HUNDRED SIXTY ONLY.** | | | | | |
| | | | | | |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
NYKU4902039/CN39351AR/40H
TCLU6758357/CN39360AR/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
NYKU4902039/CN39351AR/40H
TCLU6758357/CN39360AR/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95575145
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410230016

**Invoice Date.:** December 02, 2024

**Sold To:**  CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:**  2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB QINGDAO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** UNAYZAH EXPRESS / 034E

**Port of Loading:** QINGDAO

**Ship on or about:** December 04, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** NYKU4902039, TCLU6758357

| Cargo Description | Quantity (Unit) | | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95575145 | 168 | EA | 10,416.00 | 12,012.00 | 134.000 |
| SKU No.: 810776600 | 168 | CTNS | | | |
| MATARA CORNER SOFA DINING SET | No. of Pallet: | | | | |
| HTS Code.: 9401790050 | | | | | |
| **Total:**            (168 CTNS) | 168 | | 10,416.00 | 12,012.00 | 134.000 |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
NYKU4902039/CN39351AR/40H
TCLU6758357/CN39360AR/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
NYKU4902039/CN39351AR/40H
TCLU6758357/CN39360AR/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95575145
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-TAO-2400578**

| | |
|---|---|
| Maker/Supplier: **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202410230016** |
| Buyer/Consignee: **CSC DISTRIBUTION, LLC** **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **December 02, 2024** |
| Shipment From: **QINGDAO**    To: **MONTGOMERY, AL** | Date of Receipt of Cargo **November 29, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                    NOTIFY PARTY: GEODIS
STORES                                    5101 S. BROAD STREET
                                          PHILADELPHIA, PA 19112-1404, U.S.A.
PO#95575145                               ATTN: ALENA LAMINA
SKU#                        ALSO NOTIFY: EDRAY 2020 LLC.
DEPT#210                                  1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                             CHARLOTTE NC 28203 USA
                                          TEL: 704-593-6329
                                          EMAIL: DATAQUALITY@EDRAYCPL.COM
                            CY-CY

                            SHIPPER'S LOAD, COUNT AND SEAL
                            SAID TO CONTAIN
                            NYKU4902039         SEAL# CN39351AR      40H  DRY
                            TCLU6758357         SEAL# CN39360AR      40H  DRY


                            OUTDOOR FURNITURE AS PER PO#95575145

                            SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL
                            SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                            MATERIAL




                            168 CARTONS              134.000 CBM   12,012.00 KGS
                            =====================================================
                            TOTAL : ONE HUNDRED SIXTY-EIGHT (168) CARTONS ONLY

                                 "FREIGHT COLLECT"
SHIPMENT PER S.S. "UNAYZAH EXPRESS" VOY NO. 034E    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT December 8, 2024. CARGO RECEIVED ON November 29, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **QINGDAO**    **December 2, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS** |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) |  As Agent |
| | (Authorized Signature)    V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics



**PO #**  **95575145**

| | |
|---|---|
| Date Created | 08/16/2024 |
| Version: | 4 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 12/02/2024 |
| Cancel if not Shipped by: | 12/09/2024 |
| Must be Routed by: | 11/11/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | QINGDAO        ,  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633        Fax:  334-286-7024

---

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

**Purchase From Vendor:   5005944**

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:     sales@hcicreations.com

---

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

---

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 756 | 529,192.44 | 166,320.00 | 49.906 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO.  The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer.  A BOL in duplicate must accompany all Vendor invoices.  A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR.  Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual.  Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period").  After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods.  Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms.  For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law.  As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet.  Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10.  Records, Audit and Certification.  Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records").  Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative.  Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit.  In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice.  Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof.  Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs.  Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11.  Recalls.  A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations.  In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate.  Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above.  When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date.  Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law.  Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods.  Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12.  Confidentiality.  Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information").  "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods.  Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13.  Warranties.  Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry.  Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13.  Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods.  Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected.  The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14.  Anti-corruption.  Vendor shall comply with all applicable laws.  Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws").  Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor.  Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



# IMPORTANT Terms and Conditions

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95575145

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|---|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 210 | 810776600 | MATARA CORNER SOFA | 0.00 | CN | 1 | | 756 | 220.00 | 265,091.40 | 01/20/2025 |
| 21012 | SH24S4930X | Resin Wick | | | 1 | | 756 | 130.65 | 529,192.44 | |
| 21012005 | NA | CLOSEOUT | | 0.000 | | | | 699.99 | 49.906 | 997.49 |
| 1 | 481077660005 | | GRM | 28.570 | E1 | | | | | |

**HOME CREATIONS INC**

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410230017

**Invoice Date.:** November 12, 2024

**Sold To:**   CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:**   50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB QINGDAO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** EVER LEGEND / 1188E

**Port of Loading:** QINGDAO

**Ship on or about:** November 16, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** CAIU4509425, FFAU3586388, TRHU8831458

| Cargo Description | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95575146 | 252 | EA | 220.000/EA | 55,440.000 |
| **SKU No.:** 810776600 | 252 | CTNS | | |
| MATARA CORNER SOFA | No. of Pallet: | | | |
| **HTS Code.:** 9401790050 | | | | |
| | | | | |
| **Manufacturer Name & Address** | | | | |
| JIANGSU HONGBO HOME GOODS CO., LTD JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY HEZE, SHANDONG 274601, CHINA | | | | |
| Total: (252 CTNS) | 252 | | | 55,440.000 |
| TOTAL (USD) DOLLARS : FIFTY-FIVE THOUSAND FOUR HUNDRED FORTY ONLY. | | | | |
| | | | | |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
CAIU4509425/OOLJVY8381/40H
FFAU3586388/OOLJVY6087/40H
TRHU8831458/OOLJVZ9333/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
CAIU4509425/OOLJVY8381/40H
FFAU3586388/OOLJVY6087/40H
TRHU8831458/OOLJVZ9333/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95575146
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

---

# PACKING LIST

---

**Invoice No.:** S202410230017

**Invoice Date.:** November 12, 2024

**Sold To:** CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:** 50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB QINGDAO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** EVER LEGEND / 1188E

**Port of Loading:** QINGDAO

**Ship on or about:** November 16, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** CAIU4509425, FFAU3586388, TRHU8831458

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95575146 | | 252  EA | 15,624.00 | 18,018.00 | 201.000 |
| **SKU No.:** 810776600 | | 252  CTNS | | | |
| MATARA CORNER SOFA | **No. of Pallet:** | | | | |
| **HTS Code.:** 9401790050 | | | | | |
| Total: | (252 CTNS) | 252 | 15,624.00 | 18,018.00 | 201.000 |

---

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
CAIU4509425/OOLJVY8381/40H
FFAU3586388/OOLJVY6087/40H
TRHU8831458/OOLJVZ9333/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
CAIU4509425/OOLJVY8381/40H
FFAU3586388/OOLJVY6087/40H
TRHU8831458/OOLJVZ9333/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95575146
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-TAO-2400542**

| | |
|---|---|
| Maker/Supplier: **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202410230017** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC** **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated: **November 12, 2024** |
| Shipment From : **QINGDAO**      To : **TREMONT, PA** | Date of Receipt of Cargo **November 11, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES PO#95575146 SKU# DEPT#210 MADE IN CHINA | | NOTIFY PARTY: GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA ALSO NOTIFY: EDRAY 2020 LLC. 1300 SOUTH MINT STREET SUITE 200 CHARLOTTE NC 28203 USA TEL: 704-593-6329 EMAIL: DATAQUALITY@EDRAYCPL.COM CY-CY SHIPPER'S LOAD, COUNT AND SEAL SAID TO CONTAIN CAIU4509425       SEAL# OOLJVY8381    40H  DRY FFAU3586388       SEAL# OOLJVY6087    40H  DRY TRHU8831458       SEAL# OOLJVZ9333    40H  DRY OUTDOOR FURNITURE AS PER PO#95575146 SHIP TO CODE & LOCATION : 00874-TREMONT, PA SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 252 CARTONS | | 201.000 CBM | 18,018.00 KGS |

================================================================
TOTAL : TWO HUNDRED FIFTY-TWO (252) CARTONS ONLY

                    "FREIGHT COLLECT"
SHIPMENT PER S.S. "EVER LEGEND" VOY NO. 1188E    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT November 16, 2024. CARGO RECEIVED ON November 11, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | QINGDAO                    November 26, 2024 |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS**  As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                    V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics



**PO #**       **95575146**

| | |
|---|---|
| Date Created | 08/16/2024 |
| Version: | 5 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 12/09/2024 |
| Cancel if not Shipped by: | 12/16/2024 |
| Must be Routed by: | 11/18/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | QINGDAO    ,  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848       Fax:   570-695-2862

---

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800       Fax: 614-278-6871

---

Purchase From Vendor:   5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:     sales@hcicreations.com

---

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

---

| | Units | Retail | Vendor Cost | IMU |
|---|---|---|---|---|
| | 924 | 646,790.76 | 203,280.00 | 49.906 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:    95575146

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.    Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.    Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.    Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.    Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.    Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.    Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.    Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.    Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.    Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any public party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses'), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI') signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner, without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



Case 24-11967-JKS   Doc 1850-1   Filed 03/25/25   Page 5 of 6

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 210 | 810776600 | MATARA CORNER SOFA | 0.00 | CN | 1 | | 924 | 220.00 | 324,000.60 | 01/20/2025 |
|---|---|---|---|---|---|---|---|---|---|---|
| 21012 | SH24S4930X | Resin Wick | | | 1 | | 924 | 130.65 | 646,790.76 | |
| 21012005 | NA | CLOSEOUT | | 0.000 | | | | 699.99 | 49.906 | 997.49 |
| 1 | 481077660005 | | GRM | 28.570 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410230018

**Invoice Date.:** December 05, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB QINGDAO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** YM TRAVEL / 020E

**Port of Loading:** QINGDAO

**Ship on or about:** December 11, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** FSCU9940216, KKFU7920098, KKFU7926630, NYKU0847519, TCNU5086131, TEMU8848082

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95575147 | | 252 | EA | 220.000/EA | 55,440.000 |
| **SKU No.:** 810776600 | | 252 | CTNS | | |
| MATARA CORNER SOFA | No. of Pallet: | | | | |
| **HTS Code.:** 9401790050 | | | | | |
| | | | | | |
| **P/O No.:** 95575147 | | 252 | EA | 220.000/EA | 55,440.000 |
| **SKU No.:** 810776600 | | 252 | CTNS | | |
| MATARA CORNER SOFA | No. of Pallet: | | | | |
| **HTS Code.:** 9401790050 | | | | | |
| | **Manufacturer Name & Address** | | | | |
| | JIANGSU HONGBO HOME GOODS CO., LTD JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY HEZE, SHANDONG 274601, CHINA | | | | |
| **Total:** | **(504 CTNS)** | **504** | | | **110,880.000** |
| **TOTAL (USD) DOLLARS : ONE HUNDRED TEN THOUSAND EIGHT HUNDRED EIGHTY ONLY.** | | | | | |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
FSCU9940216/CN32852AR/40H
KKFU7920098/CN32859AR/40H
KKFU7926630/CN39355AR/40H
NYKU0847519/CN32889AR/40H
TCNU5086131/CN32912AR/40H
TEMU8848082/CN39356AR/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
FSCU9940216/CN32852AR/40H
KKFU7920098/CN32859AR/40H
KKFU7926630/CN39355AR/40H
NYKU0847519/CN32889AR/40H
TCNU5086131/CN32912AR/40H
TEMU8848082/CN39356AR/40H

We certify that there is no wood packing material in the shipment.

BIG LOTS
STORES

PO#95575147
SKU#
DEPT#210
MADE IN CHINA
BIG LOTS
STORES

PO#95575147
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

---

# PACKING LIST

---

**Invoice No.:** S202410230018

**Sold To:**   DURANT DC, LLC
         2306 ENTERPRISE DR
         DURANT, OK 74701
         USA

**Shipment Terms:** FOB QINGDAO

**Country of Origin:** CHINA

**Vessel / Voyage:** YM TRAVEL / 020E

**Ship on or about:** December 11, 2024

**Invoice Date.:** December 05, 2024

**Delivery To:**   2306 ENTERPRISE DR
         DURANT, OK 74701
         USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** QINGDAO

**Port of Entry:** LOS ANGELES, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** FSCU9940216, KKFU7920098, KKFU7926630, NYKU0847519, TCNU5086131, TEMU8848082

| Cargo Description | | Quantity (Unit) | | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|---|
| **P/O No.:** 95575147 | | 252 | EA | 15,624.00 | 18,018.00 | 201.000 |
| **SKU No.:** 810776600 | | 252 | CTNS | | | |
| MATARA CORNER SOFA | No. of Pallet: | | | | | |
| **HTS Code.:** 9401790050 | | | | | | |
| | | | | | | |
| **P/O No.:** 95575147 | | 252 | EA | 15,624.00 | 18,018.00 | 201.000 |
| **SKU No.:** 810776600 | | 252 | CTNS | | | |
| MATARA CORNER SOFA | No. of Pallet: | | | | | |
| **HTS Code.:** 9401790050 | | | | | | |
| Total: | (504 CTNS) | 504 | | 31,248.00 | 36,036.00 | 402.000 |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
FSCU9940216/CN32852AR/40H
KKFU7920098/CN32859AR/40H
KKFU7926630/CN39355AR/40H
NYKU0847519/CN32889AR/40H
TCNU5086131/CN32912AR/40H
TEMU8848082/CN39356AR/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
FSCU9940216/CN32852AR/40H
KKFU7920098/CN32859AR/40H
KKFU7926630/CN39355AR/40H
NYKU0847519/CN32889AR/40H
TCNU5086131/CN32912AR/40H
TEMU8848082/CN39356AR/40H

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES

PO#95575147

SKU#
DEPT#210
MADE IN CHINA
BIG LOTS
STORES

PO#95575147
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-TAO-2400585**

| | |
|---|---|
| Maker/Supplier: **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202410230018** |
| Buyer/Consignee: **DURANT DC, LLC** **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **December 05, 2024** |
| Shipment From: **QINGDAO**    To: **DURANT, OK** | Date of Receipt of Cargo **November 30, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                  NOTIFY PARTY: GEODIS
STORES                                  5101 S. BROAD STREET
                                        PHILADELPHIA, PA 19112-1404, U.S.A.
PO#95575147                             ATTN: ALENA LAMINA
SKU#                      ALSO NOTIFY: EDRAY 2020 LLC.
DEPT#210                                1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                           CHARLOTTE NC 28203 USA
                                        TEL: 704-593-6329
                                        EMAIL: DATAQUALITY@EDRAYCPL.COM

                         CY-CY

                         SHIPPER'S LOAD, COUNT AND SEAL
                         SAID TO CONTAIN
                         FSCU9940216        SEAL# CN32852AR       40H  DRY
                         KKFU7920098        SEAL# CN32859AR       40H  DRY
                         KKFU7926630        SEAL# CN39355AR       40H  DRY
                         NYKU0847519        SEAL# CN32889AR       40H  DRY
                         TCNU5086131        SEAL# CN32912AR       40H  DRY
                         TEMU8848082        SEAL# CN39356AR       40H  DRY


                         OUTDOOR FURNITURE AS PER PO#95575147

                         SHIP TO CODE & LOCATION : 00879-DURANT, OK
                         SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                         MATERIAL

                         504 CARTONS               402.000 CBM    36,036.00 KGS
                         ===================================================
                         TOTAL : FIVE HUNDRED FOUR (504) CARTONS ONLY

                              "FREIGHT COLLECT"
SHIPMENT PER S.S. "YM TRAVEL" VOY NO. 020E    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT December 11, 2024. CARGO RECEIVED ON November 30, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | QINGDAO    December 5, 2024 |
|---|---|

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Place and date of issue.)
**YUSEN LOGISTICS**



As Agent

(Authorized Signature)    V1

ORIGINAL



**PO #**        **95575147**

| | |
|---|---|
| Date Created: | 08/16/2024 |
| Version: | 4 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 12/02/2024 |
| Cancel if not Shipped by: | 12/09/2024 |
| Must be Routed by: | 11/11/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | QINGDAO        ,  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:  580-931-2197

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

**Purchase From Vendor:**   5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:     HELEN HUANG
Telephone:  86-13817575231        Fax
E-Mail:      sales@hcicreations.com

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

| Vendor Signature | _____ |
|---|---|
| Signee's Name | _____ |
| Title | _____ |
| Date | _____ |

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 504 | 352,794.96 | 110,880.00 | 49.906 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

PO#:   95575147

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95575147

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 210 | 810776600 | MATARA CORNER SOFA | 0.00 | CN | 1 | | 504 | 220.00 | 176,727.60 | 01/20/2025 |
|---|---|---|---|---|---|---|---|---|---|---|
| 21012 | SH24S4930X | Resin Wick | | | 1 | | 504 | 130.65 | 352,794.96 | |
| 21012005 | NA | CLOSEOUT | | 0.000 | | | | 699.99 | 49.906 | 997.49 |
| 1 | 481077660005 | | GRM | 28.570 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

---

# INVOICE

---

**Invoice No.:** S202410230019

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB QINGDAO

**Country of Origin:** CHINA

**Vessel / Voyage:** YM TRAVEL / 020E

**Ship on or about:** December 11, 2024

**Invoice Date.:** December 05, 2024

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** QINGDAO

**Port of Entry:** LOS ANGELES, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** DRYU4287524, FFAU3640386, GCXU5282091, ONEU1014936, ONEU1324762, TEMU8675080

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95642946 | | 252 | EA | 220.000/EA | 55,440.000 |
| **SKU No.:** 810776600 | | 252 | CTNS | | |
| MATARA CORNER SOFA | No. of Pallet: | | | | |
| **HTS Code.:** 9401790050 | | | | | |
| | | | | | |
| **P/O No.:** 95642946 | | 236 | EA | 220.000/EA | 51,920.000 |
| **SKU No.:** 810776600 | | 236 | CTNS | | |
| MATARA CORNER SOFA | No. of Pallet: | | | | |
| **HTS Code.:** 9401790050 | | | | | |
| | **Manufacturer Name & Address** | | | | |
| | JIANGSU HONGBO HOME GOODS CO., LTD JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY HEZE, SHANDONG 274601, CHINA | | | | |
| **Total:** | **(488 CTNS)** | **488** | | | **107,360.000** |
| TOTAL (USD) DOLLARS : ONE HUNDRED SEVEN THOUSAND THREE HUNDRED SIXTY ONLY. | | | | | |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
DRYU4287524/CN39422AR/40'
FFAU3640386/CN32860AR/40H
GCXU5282091/CN32926AR/40H
ONEU1014936/CN32856AR/40H
ONEU1324762/CN32861AR/40H
TEMU8675080/CN32922AR/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
DRYU4287524/CN39422AR/40'
FFAU3640386/CN32860AR/40H
GCXU5282091/CN32926AR/40H
ONEU1014936/CN32856AR/40H
ONEU1324762/CN32861AR/40H
TEMU8675080/CN32922AR/40H

We certify that there is no wood packing material in the shipment.

BIG LOTS
STORES

PO#95642946
SKU#
DEPT#210
MADE IN CHINA
BIG LOTS
STORES

PO#95642946
SKU#
DEPT#210
MADE IN CHINA

**HOME CREATIONS INC**

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410230019

**Invoice Date.:** December 05, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB QINGDAO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** YM TRAVEL / 020E

**Port of Loading:** QINGDAO

**Ship on or about:** December 11, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** DRYU4287524, FFAU3640386, GCXU5282091, ONEU1014936, ONEU1324762, TEMU8675080

| Cargo Description | | Quantity (Unit) | | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|---|
| **P/O No.:** 95642946 | | 252 | EA | 15,624.00 | 18,018.00 | 201.000 |
| **SKU No.:** 810776600 | | 252 | CTNS | | | |
| MATARA CORNER SOFA | No. of Pallet: | | | | | |
| **HTS Code.:** 9401790050 | | | | | | |
| **P/O No.:** 95642946 | | 236 | EA | 14,632.00 | 16,874.00 | 189.000 |
| **SKU No.:** 810776600 | | 236 | CTNS | | | |
| MATARA CORNER SOFA | No. of Pallet: | | | | | |
| **HTS Code.:** 9401790050 | | | | | | |
| **Total:** | **(488 CTNS)** | **488** | | **30,256.00** | **34,892.00** | **390.000** |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
DRYU4287524/CN39422AR/40'
FFAU3640386/CN32860AR/40H
GCXU5282091/CN32926AR/40H
ONEU1014936/CN32856AR/40H
ONEU1324762/CN32861AR/40H
TEMU8675080/CN32922AR/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
DRYU4287524/CN39422AR/40'
FFAU3640386/CN32860AR/40H
GCXU5282091/CN32926AR/40H
ONEU1014936/CN32856AR/40H
ONEU1324762/CN32861AR/40H
TEMU8675080/CN32922AR/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95642946

SKU#
DEPT#210
MADE IN CHINA
BIG LOTS
STORES

PO#95642946
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-TAO-2400584**

| | |
|---|---|
| Maker/Supplier: **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202410230019** |
| Buyer/Consignee : **DURANT DC, LLC** **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **December 05, 2024** |
| Shipment From : **QINGDAO**     To : **DURANT, OK** | Date of Receipt of Cargo **November 29, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                NOTIFY PARTY: GEODIS
STORES                               5101 S. BROAD STREET
                                     PHILADELPHIA, PA 19112-1404, U.S.A.
PO#95642946                          ATTN: ALENA LAMINA
SKU#                    ALSO NOTIFY: EDRAY 2020 LLC.
DEPT#210                             1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                        CHARLOTTE NC 28203 USA
                                     TEL: 704-593-6329
                                     EMAIL: DATAQUALITY@EDRAYCPL.COM

                        CY-CY

                        SHIPPER'S LOAD, COUNT AND SEAL
                        SAID TO CONTAIN
                        DRYU4287524        SEAL# CN39422AR        40'  DRY
                        FFAU3640386        SEAL# CN32860AR        40H  DRY
                        GCXU5282091        SEAL# CN32926AR        40H  DRY
                        ONEU1014936        SEAL# CN32856AR        40H  DRY
                        ONEU1324762        SEAL# CN32861AR        40H  DRY
                        TEMU8675080        SEAL# CN32922AR        40H  DRY


                        OUTDOOR FURNITURE AS PER PO#95642946

                        SHIP TO CODE & LOCATION : 00879-DURANT, OK
                        SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                        MATERIAL


                        488 CARTONS             390.000 CBM    34,892.00 KGS
                        ========================================================
                        TOTAL : FOUR HUNDRED EIGHTY-EIGHT (488) CARTONS ONLY

                        "FREIGHT COLLECT"
SHIPMENT PER S.S. "YM TRAVEL" VOY NO. 020E    DISCHARGED AT LOS ANGELES, CA
SAILING ON / ABOUT December 11, 2024. CARGO RECEIVED ON November 29, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **QINGDAO**     **December 5, 2024** |
|---|---|

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Place and date of issue.)
**YUSEN LOGISTICS**



As Agent

(Authorized Signature)     V1



**PO #**  **95642946**

| | |
|---|---|
| Date Created | 10/15/2024 |
| Version: | 2 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 12/02/2024 |
| Cancel if not Shipped by: | 12/09/2024 |
| Must be Routed by: | 11/11/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | QINGDAO      ,  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100      Fax:  580-931-2197

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800      Fax: 614-278-6871

Purchase From Vendor:   5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:     sales@hcicreations.com

**ADDITIONAL COMMENTS**

PO replaces :0095575144; Ship only these quantities under the new PO.

TT 30 DAYS FROM THE FCR

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 488 | 341,595.12 | 107,360.00 | 49.906 |

OFFICE-COPY



These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.          Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.          Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.          Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.          Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.          Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.          Buyer Remedies.  If:  (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.          Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.          Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.          Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95642946

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 210 | 810776600 | MATARA CORNER SOFA | 0.00 | CN | 1 | | 488 | 220.00 | 171,117.20 | 01/20/2025 |
|---|---|---|---|---|---|---|---|---|---|---|
| 21012 | SH24S4930X | Resin Wick | | | 1 | | 488 | 130.65 | 341,595.12 | |
| 21012005 | NA | CLOSEOUT | | 0.000 | | | | 699.99 | 49.906 | 997.49 |
| 1 | 481077660005 | | GRM | 28.570 | E1 | | | | | |

**HOME CREATIONS INC**    Seller reference

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410230020

**Invoice Date.:** November 21, 2024

**Sold To:**  CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:**  2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB NINGBO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** ZIM WILMINGTON / 019E

**Port of Loading:** NINGBO

**Ship on or about:** November 25, 2024

**Port of Entry:** MOBILE, AL

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** MRKU3731403, MRKU4132740, MRKU4930689, MRKU5410320

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95602149 | 3,270   EA | 15.750/EA | 51,502.500 |
| **SKU No.:** 810775687 | 1,635   CTNS | | |
| SLING GRAVITY LOUNGER    No. of Pallet: | | | |
| **HTS Code.:** 9401790011 | | | |
| Manufacturer Name & Address | | | |
| YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD NO.77 YUGUI ROAD WEST CITY,YONGKANG JINHUA, ZHEJIANG 321300, CHINA | | | |
| Total:    (1,635 CTNS) | 3,270 | | 51,502.500 |
| TOTAL (USD) DOLLARS : FIFTY-ONE THOUSAND FIVE HUNDRED TWO AND CENTS FIFTY ONLY. | | | |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
MRKU3731403/CN7883356/40H
MRKU4132740/CN7883357/40H
MRKU4930689/CN7883358/40H
MRKU5410320/CN7883359/40H

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
MRKU3731403/CN7883356/40H
MRKU4132740/CN7883357/40H
MRKU4930689/CN7883358/40H
MRKU5410320/CN7883359/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95602149
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410230020

**Invoice Date.:** November 21, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB NINGBO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** ZIM WILMINGTON / 019E

**Port of Loading:** NINGBO

**Ship on or about:** November 25, 2024

**Port of Entry:** MOBILE, AL

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** MRKU3731403, MRKU4132740, MRKU4930689, MRKU5410320

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95602149 | | 3,270 EA | 24,198.00 | 28,776.00 | 264.000 |
| SKU No.: 810775687 | | 1,635 CTNS | | | |
| SLING GRAVITY LOUNGER | No. of Pallet: | | | | |
| HTS Code.: 9401790011 | | | | | |
| **Total:** (1,635 CTNS) | | 3,270 | 24,198.00 | 28,776.00 | 264.000 |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
MRKU3731403/CN7883356/40H
MRKU4132740/CN7883357/40H
MRKU4930689/CN7883358/40H
MRKU5410320/CN7883359/40H

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
MRKU3731403/CN7883356/40H
MRKU4132740/CN7883357/40H
MRKU4930689/CN7883358/40H
MRKU5410320/CN7883359/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95602149
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NBO-2400520**

| | |
|---|---|
| | Maker/Supplier's INVOICE No.<br>**S202410230020** |
| Maker/Supplier: **HOME CREATIONS INC** | |
| Buyer/Consignee: **CSC DISTRIBUTION, LLC**<br>**2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **November 21, 2024** |
| Shipment From: **NINGBO**    To: **MONTGOMERY, AL** | Date of Receipt of Cargo<br>**November 20, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95602149<br>SKU#<br>DEPT#210<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>5101 S. BROAD STREET<br>PHILADELPHIA, PA 19112-1404, U.S.A.<br>ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>1300 SOUTH MINT STREET SUITE 200<br>CHARLOTTE NC 28203 USA<br>TEL: 704-593-6329<br>EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CY-CY<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>MRKU3731403        SEAL# CN7883356        40H  DRY<br>MRKU4132740        SEAL# CN7883357        40H  DRY<br>MRKU4930689        SEAL# CN7883358        40H  DRY<br>MRKU5410320        SEAL# CN7883359        40H  DRY<br><br><br>OUTDOOR FURNITURE AS PER PO#95602149<br><br>SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL<br><br><br>1,635 CARTONS | | 264.000 CBM | 28,776.00 KGS |

===============================================================
TOTAL : ONE THOUSAND SIX HUNDRED THIRTY-FIVE (1,635) CARTONS
ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "ZIM WILMINGTON" VOY NO. 019E   DISCHARGED AT MOBILE, AL
SAILING ON / ABOUT November 25, 2024. CARGO RECEIVED ON November 20, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | NINGBO                              November 21, 2024 |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br><br><br>As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                              V1 |



**PO #**    **95602149**

| | |
|---|---|
| Date Created | 09/06/2024 |
| Version: | 3 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/11/2024 |
| Cancel if not Shipped by: | 11/18/2024 |
| Must be Routed by: | 10/21/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | NINGBO          , CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633    Fax:  334-286-7024

---

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800    Fax:  614-278-6871

---

Purchase From Vendor:   5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:  86-13817575231       Fax
E-Mail:     sales@hcicreations.com

---

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

---

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 3,270 | 163,467.30 | 51,502.50 | 45.969 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|--------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 210 | 810775687 | SLING GRAVITY LOUNG | 0.00 | CN | 2 | | 3,270 | 15.75 | 88,322.70 | 12/30/2024 |
| 21012 | HFTS695J | QUADCHAIRS | | | 2 | | 1,635 | 11.26 | 163,467.30 | |
| 21012018 | Real Living | | | | | | | 49.99 | 45.969 | 89.99 |
| 1 | 481077568707 | | GRM | 5.723 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410230021

**Invoice Date.:** November 21, 2024

**Sold To:** CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:** 50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB NINGBO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** WAN HAI A17 / E002

**Port of Loading:** NINGBO

**Ship on or about:** November 25, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** HAMU3101750, HAMU3104718, TCLU9700148

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95602150 | | 2,460 EA | 15.750/EA | 38,745.000 |
| **SKU No.:** 810775687 | | 1,230 CTNS | | |
| SLING GRAVITY LOUNGER | **No. of Pallet:** | | | |
| **HTS Code.:** 9401790011 | | | | |
| | **Manufacturer Name & Address** | | | |
| | YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD NO.77 YUGUI ROAD WEST CITY,YONGKANG JINHUA, ZHEJIANG 321300, CHINA | | | |
| **Total:** | **(1,230 CTNS)** | **2,460** | | **38,745.000** |
| TOTAL (USD) DOLLARS : THIRTY-EIGHT THOUSAND SEVEN HUNDRED FORTY-FIVE ONLY. | | | | |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
HAMU3101750/HLK0725879/40H
HAMU3104718/HLK0725876/40H
TCLU9700148/HLK0725877/40H

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
HAMU3101750/HLK0725879/40H
HAMU3104718/HLK0725876/40H
TCLU9700148/HLK0725877/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95602150
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410230021

**Invoice Date.:** November 21, 2024

**Sold To:**  CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:**  50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB NINGBO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** WAN HAI A17 / E002

**Port of Loading:** NINGBO

**Ship on or about:** November 25, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** HAMU3101750, HAMU3104718, TCLU9700148

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95602150 | | 2,460  EA | 18,204.00 | 21,648.00 | 198.000 |
| **SKU No.:** 810775687 | | 1,230  CTNS | | | |
| SLING GRAVITY LOUNGER | No. of Pallet: | | | | |
| **HTS Code.:** 9401790011 | | | | | |
| **Total:** | **(1,230 CTNS)** | **2,460** | **18,204.00** | **21,648.00** | **198.000** |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
HAMU3101750/HLK0725879/40H
HAMU3104718/HLK0725876/40H
TCLU9700148/HLK0725877/40H

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
HAMU3101750/HLK0725879/40H
HAMU3104718/HLK0725876/40H
TCLU9700148/HLK0725877/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95602150
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics    Yusen Logistics - Yusen Logistics

**FORWARDER'S CARGO RECEIPT No.    CNS-NBO-2400519**

| | |
|---|---|
| Maker/Supplier : **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202410230021** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC** **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated: **November 21, 2024** |
| Shipment From : **NINGBO**          To : **TREMONT, PA** | Date of Receipt of Cargo **November 19, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES | NOTIFY PARTY: GEODIS | | | |

```
BIG LOTS                 NOTIFY PARTY: GEODIS
STORES                                5101 S. BROAD STREET
                                      PHILADELPHIA, PA 19112-1404, U.S.A.
PO#95602150                           ATTN: ALENA LAMINA
SKU#                     ALSO NOTIFY: EDRAY 2020 LLC.
DEPT#210                              1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                         CHARLOTTE NC 28203 USA
                                      TEL: 704-593-6329
                                      EMAIL: DATAQUALITY@EDRAYCPL.COM

                         CY-CY

                         SHIPPER'S LOAD, COUNT AND SEAL
                         SAID TO CONTAIN
                         HAMU3101750          SEAL# HLK0725879      40H  DRY
                         HAMU3104718          SEAL# HLK0725876      40H  DRY
                         TCLU9700148          SEAL# HLK0725877      40H  DRY


                         OUTDOOR FURNITURE AS PER PO#95602150

                         SHIP TO CODE & LOCATION : 00874-TREMONT, PA
                         SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                         MATERIAL



                         1,230 CARTONS              198.000 CBM    21,648.00 KGS
                         =========================================================
                         TOTAL : ONE THOUSAND TWO HUNDRED THIRTY (1,230) CARTONS ONLY

                                   "FREIGHT COLLECT"
SHIPMENT PER S.S. "WAN HAI A17" VOY NO. E002    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT November 25, 2024. CARGO RECEIVED ON November 19, 2024.
```

---

| THIS IS NOT A DOCUMENT OF TITLE | **NINGBO** | **November 21, 2024** |
|---|---|---|

The Goods and instructions are accepted and dealt with subject to the
**YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard
Trading Conditions printed reverse side. Forwarding instructions can only
be cancelled or altered if the original of this document is surrendered to the
Company and then only provided the Company is still in a position to
comply with such cancellation or alteration. Instructions authorizing
disposal by a third party can only be cancelled or altered if the original of
this document is surrendered to the Company, and then only provided the
Company have not yet received instructions under the original authority.
The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Place and date of issue.)
**YUSEN LOGISTICS**



As Agent

(Authorized Signature)    V1



**PO #**            **95602150**

| | |
|---|---|
| Date Created | 09/06/2024 |
| Version: | 3 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/11/2024 |
| Cancel if not Shipped by: | 11/18/2024 |
| Must be Routed by: | 10/21/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | NINGBO        ,  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:   570-695-2862

---

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax: 614-278-6871

---

Purchase From Vendor:   5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:     sales@hcicreations.com

---

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

---

Vendor Signature _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 4,808 | 240,351.92 | 75,726.00 | 45.969 |

OFFICE-COPY



These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1. Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2. Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3. Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4. Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5. Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6. Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7. Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8. Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9. Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 210 | 810775687 | SLING GRAVITY LOUNG | 0.00 | CN | 2 | | 4,808 | 15.75 | 129,864.08 | 12/23/2024 |
|---|---|---|---|---|---|---|---|---|---|---|
| 21012 | HFTS695J | QUADCHAIRS | | | 2 | | 2,404 | 11.26 | 240,351.92 | |
| 21012018 | Real Living | | | | | | | 49.99 | 45.969 | 89.99 |
| 1 | 481077568707 | | GRM | 5.723 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

---

# INVOICE

---

**Invoice No.:** S202410230022

**Invoice Date.:** November 21, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB NINGBO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO SHIPPING ALPS / 040E

**Port of Loading:** NINGBO

**Ship on or about:** November 24, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** CSNU4075728, OOLU7905301

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95602151 | | 1,432    EA | 15.750/EA | 22,554.000 |
| **SKU No.:** 810775687 | | 716   CTNS | | |
| SLING GRAVITY LOUNGER | No. of Pallet: | | | |
| **HTS Code.:** 9401790011 | | | | |
| | **Manufacturer Name & Address** | | | |
| | YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD NO.77 YUGUI ROAD WEST CITY,YONGKANG JINHUA, ZHEJIANG 321300, CHINA | | | |
| **Total:** | (716 CTNS) | 1,432 | | 22,554.000 |
| **TOTAL (USD) DOLLARS : TWENTY-TWO THOUSAND FIVE HUNDRED FIFTY-FOUR ONLY.** | | | | |
| | | | | |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
CSNU4075728/OOLJGM3752/40'
OOLU7905301/OOLJGK6397/40'

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
CSNU4075728/OOLJGM3752/40'
OOLU7905301/OOLJGK6397/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95602151
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410230022

**Invoice Date.:** November 21, 2024

**Sold To:**  DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:**  2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB NINGBO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO SHIPPING ALPS / 040E

**Port of Loading:** NINGBO

**Ship on or about:** November 24, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** CSNU4075728, OOLU7905301

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95602151 | | 1,432  EA | 10,596.80 | 12,601.60 | 116.000 |
| **SKU No.:** 810775687 | | 716  CTNS | | | |
| SLING GRAVITY LOUNGER | **No. of Pallet:** | | | | |
| **HTS Code.:** 9401790011 | | | | | |
| **Total:** | **(716 CTNS)** | **1,432** | **10,596.80** | **12,601.60** | **116.000** |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
CSNU4075728/OOLJGM3752/40'
OOLU7905301/OOLJGK6397/40'

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
CSNU4075728/OOLJGM3752/40'
OOLU7905301/OOLJGK6397/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95602151
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.   **CNS-NBO-2400518**

| | |
|---|---|
| Maker/Supplier : **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202410230022** |
| Buyer/Consignee : **DURANT DC, LLC** **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **November 21, 2024** |
| Shipment From : **NINGBO**          To : **DURANT, OK** | Date of Receipt of Cargo **November 20, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES | | NOTIFY PARTY: GEODIS | | |

```
BIG LOTS                  NOTIFY PARTY: GEODIS
STORES                                  5101 S. BROAD STREET
PO#95602151                             PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#                                    ATTN: ALENA LAMINA
DEPT#210                   ALSO NOTIFY: EDRAY 2020 LLC.
MADE IN CHINA                           1300 SOUTH MINT STREET SUITE 200
                                        CHARLOTTE NC 28203 USA
                                        TEL: 704-593-6329
                                        EMAIL: DATAQUALITY@EDRAYCPL.COM
                           CY-CY

                           SHIPPER'S LOAD, COUNT AND SEAL
                           SAID TO CONTAIN
                           CSNU4075728         SEAL# OOLJGM3752      40'  DRY
                           OOLU7905301         SEAL# OOLJGK6397      40'  DRY


                           OUTDOOR FURNITURE AS PER PO#95602151

                           SHIP TO CODE & LOCATION : 00879-DURANT, OK
                           SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                           MATERIAL




                           716 CARTONS               116.000 CBM    12,601.60 KGS
                           ==========================================================
                           TOTAL : SEVEN HUNDRED SIXTEEN (716) CARTONS ONLY

                               "FREIGHT COLLECT"
SHIPMENT PER S.S. "COSCO SHIPPING ALPS" VOY NO. 040E   DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT November 24, 2024. CARGO RECEIVED ON November 20, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **NINGBO**          **November 21, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS**  As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)          V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics



**PO #**  **95602151**

| | |
|---|---|
| Date Created | 09/06/2024 |
| Version: | 3 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/11/2024 |
| Cancel if not Shipped by: | 11/18/2024 |
| Must be Routed by: | 10/21/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | NINGBO          ,  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:   580-931-2197

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

**Purchase From Vendor:   5005944**

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:  86-13817575231        Fax
E-Mail:      sales@hcicreations.com

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 1,432 | 71,585.68 | 22,554.00 | 45.969 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:    95602151

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner, without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 210 | 810775687 | SLING GRAVITY LOUNG | 0.00 | CN | 2 | | 1,432 | 15.75 | 38,678.32 | 12/30/2024 |
| 21012 | HFTS695J | QUADCHAIRS | | | 2 | | 716 | 11.26 | 71,585.68 | |
| 21012018 | Real Living | | | | | | | 49.99 | 45.969 | 89.99 |
| 1 | 481077568707 | | GRM | 5.723 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410230023

**Invoice Date.:** November 22, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO SHIPPING ALPS / 040E

**Port of Loading:** SHANGHAI

**Ship on or about:** November 26, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** TGBU5899086

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95642947 | | 332 | EA | 18.500/EA | 6,142.000 |
| **SKU No.:** 810775880 | | 83 | CTNS | | |
| 24IN SQUARE STEEL SLAT FOLDING TABLE | No. of Pallet: | | | | |
| **HTS Code.:** 9403200050 | | | | | |
| **P/O No.:** 95642947 | | 96 | EA | 42.000/EA | 4,032.000 |
| **SKU No.:** 810776668 | | 96 | CTNS | | |
| HELENA SQUARE LAMINATED DINING TABLE | No. of Pallet: | | | | |
| **HTS Code.:** 9403200050 | | | | | |
| **P/O No.:** 95642947 | | 96 | EA | 110.000/EA | 10,560.000 |
| **SKU No.:** 810776681 | | 96 | CTNS | | |
| HELENA 4PK CUSHION DINING CHAIRS | No. of Pallet: | | | | |
| **HTS Code.:** 9401790011 | | | | | |
| | **Manufacturer Name & Address** | | | | |
| | JIANGSU HONGBO HOME GOODS CO. LTD NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN NANTONG,, JIANGSU 226600, CHINA | | | | |
| Total: | (275 CTNS) | 524 | | | 20,734.000 |
| TOTAL (USD) DOLLARS : TWENTY THOUSAND SEVEN HUNDRED THIRTY-FOUR ONLY. | | | | | |
| | | | | | |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
TGBU5899086/OOLJWG9929/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
TGBU5899086/OOLJWG9929/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95642947
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410230023

**Invoice Date.:** November 22, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO SHIPPING ALPS / 040E

**Port of Loading:** SHANGHAI

**Ship on or about:** November 26, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** TGBU5899086

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95642947 | | 332 EA | 2,099.90 | 2,340.60 | 13.000 |
| **SKU No.:** 810775880 | | 83 CTNS | | | |
| 24IN SQUARE STEEL SLAT FOLDING TABLE | No. of Pallet: | | | | |
| **HTS Code.:** 9403200050 | | | | | |
| | | | | | |
| **P/O No.:** 95642947 | | 96 EA | 2,035.20 | 2,448.00 | 10.000 |
| **SKU No.:** 810776668 | | 96 CTNS | | | |
| HELENA SQUARE LAMINATED DINING TABLE | No. of Pallet: | | | | |
| **HTS Code.:** 9403200050 | | | | | |
| | | | | | |
| **P/O No.:** 95642947 | | 96 EA | 2,764.80 | 3,417.60 | 42.000 |
| **SKU No.:** 810776681 | | 96 CTNS | | | |
| HELENA 4PK CUSHION DINING CHAIRS | No. of Pallet: | | | | |
| **HTS Code.:** 9401790011 | | | | | |
| **Total:** | **(275 CTNS)** | 524 | 6,899.90 | 8,206.20 | 65.000 |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
TGBU5899086/OOLJWG9929/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
TGBU5899086/OOLJWG9929/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95642947
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics

Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SHA-2402619**

| | |
|---|---|
| Maker/Supplier : **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202410230023** |
| Buyer/Consignee : **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **November 22, 2024** |
| Shipment From : **SHANGHAI**    To : **DURANT, OK** | Date of Receipt of Cargo<br>**November 21, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95642947<br>SKU#<br>DEPT#210<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>5101 S. BROAD STREET<br>PHILADELPHIA, PA 19112-1404, U.S.A.<br>ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>1300 SOUTH MINT STREET SUITE 200<br>CHARLOTTE NC 28203 USA<br>TEL: 704-593-6329<br>EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CY-CY<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>TGBU5899086       SEAL# OOLJWG9929       40H  DRY<br><br><br>OUTDOOR FURNITURE AS PER PO#95642947<br><br>SHIP TO CODE & LOCATION : 00879-DURANT, OK<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | **275 CARTONS** | | **65.000 CBM** | **8,206.20 KGS** |

==============================================================
TOTAL : TWO HUNDRED SEVENTY-FIVE (275) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "COSCO SHIPPING ALPS" VOY NO. 040E    DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT November 25, 2024. CARGO RECEIVED ON November 21, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                    **November 26, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br><br><br>As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                    V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics



| PO # | **95642947** |
|---|---|

Date Created: 10/15/2024
Version: 1
Buyer: INMAN, ANNE
Do Not Ship Before: 11/18/2024
Cancel if not Shipped by: 11/25/2024
Must be Routed by: 10/28/2024
Payment Terms: Wire Transfer + 30 days
Freight Terms: Collect
FOB: SHANGHAI    , CN

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:  580-931-2197

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:  5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA
Contact:    HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:    sales@hcicreations.com

**ADDITIONAL COMMENTS**

PO replaces :0095578598; Ship only these quantities under the new PO.

TT 30 DAYS FROM THE FCR

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 524 | 67,912.40 | 20,734.00 | 65.383 |

OFFICE-COPY



These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.     Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.     Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.     Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.     Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.     Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.     Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.     Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.     Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.     Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.
27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95642947

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 210 | 810776681 | HELENA 4PK CUSHION | 0.00 | CN | 1 | | 96 | 110.00 | 16,966.08 | 01/06/2025 |
| 21012 | H24S0346K | PTIOSETTBL | | | 1 | | 96 | 66.73 | 33,600.00 | |
| 21012001 | NA | CLOSEOUT | | | | | | 350.00 | 49.506 | 479.90 |
| 1 | 481077668100 | | GRM | 14.884 | E1 | | | | | |
| 210 | 810776668 | HELENA SQUARE LAMIN | 0.00 | CN | 1 | | 96 | 42.00 | 5,977.92 | 01/06/2025 |
| 21012 | H24S7408P | PTIOSETTBL | | | 1 | | 96 | 20.27 | 14,399.04 | |
| 21012001 | NA | CLOSEOUT | | | | | | 149.99 | 58.484 | 246.99 |
| 2 | 481077666809 | | GRM | 3.456 | E1 | | | | | |
| 210 | 810775880 | 24IN SQUARE STEEL S | 0.00 | CN | 4 | | 332 | 18.50 | 8,917.52 | 01/06/2025 |
| 21012 | HTMS24BF | FOLDNGFURNITURE | | | 4 | | 83 | 8.36 | 19,913.36 | |
| 21012016 | Real Living | | 045 | | | | | 59.98 | 55.218 | 129.95 |
| 3 | 481077588002 | | GRM | 5.114 | E1 | | | | | |

**HOME CREATIONS INC**                                                    Seller reference

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410230024                           **Invoice Date.:** November 27, 2024

**Sold To:**   CLOSEOUT DISTRIBUTION, LLC              **Delivery To:**   50 RAUSCH CREEK RD
               50 RAUSCH CREEK RD                                        TREMONT, PA 17981
               TREMONT, PA 17981                                        USA
               USA

**Shipment Terms:** FOB SHANGHAI                         **Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA                             **L/C Number:** TT

**Vessel / Voyage:** WAN HAI A10 / E008                  **Port of Loading:** SHANGHAI

**Ship on or about:** November 29, 2024                  **Port of Entry:** NEW YORK, NY

                                                        **Destination:** TREMONT, PA

**Container Number (Factory Load) :** FANU3035985, HAMU1939451, HLBU3278005

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| P/O No.: 95578600 | | 366  EA | 42.000/EA | 15,372.000 |
| SKU No.: 810776668 | | 366  CTNS | | |
| HELENA SQUARE LAMINATED DINING TABLE | No. of Pallet: | | | |
| HTS Code.: 9403200050 | | | | |
| | | | | |
| P/O No.: 95578600 | | 366  EA | 110.000/EA | 40,260.000 |
| SKU No.: 810776681 | | 366  CTNS | | |
| HELENA 4PK CUSHION DINING CHAIRS | No. of Pallet: | | | |
| HTS Code.: 9401790011 | | | | |
| **Manufacturer Name & Address** | | | | |
| JIANGSU HONGBO HOME GOODS CO. LTD | | | | |
| NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN | | | | |
| NANTONG,, JIANGSU | | | | |
| 226600, CHINA | | | | |
| Total:    (732 CTNS) | | 732 | | 55,632.000 |

**TOTAL (USD) DOLLARS : FIFTY-FIVE THOUSAND SIX HUNDRED THIRTY-TWO ONLY.**

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
FANU3035985/HLK0795816/40H
HAMU1939451/HLK0851875/40H
HLBU3278005/HLK0795815/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
FANU3035985/HLK0795816/40H
HAMU1939451/HLK0851875/40H
HLBU3278005/HLK0795815/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95578600
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

Seller reference

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410230024

**Invoice Date.:** November 27, 2024

**Sold To:** CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:** 50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** WAN HAI A10 / E008

**Port of Loading:** SHANGHAI

**Ship on or about:** November 29, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** FANU3035985, HAMU1939451, HLBU3278005

| Cargo Description | | Quantity (Unit) | | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|---|
| **P/O No.:** 95578600 | | 366 | EA | 7,759.20 | 9,333.00 | 36.000 |
| **SKU No.:** 810776668 | | 366 | CTNS | | | |
| HELENA SQUARE LAMINATED DINING TABLE | No. of Pallet: | | | | | |
| **HTS Code.:** 9403200050 | | | | | | |
| | | | | | | |
| **P/O No.:** 95578600 | | 366 | EA | 10,540.80 | 13,029.60 | 154.000 |
| **SKU No.:** 810776681 | | 366 | CTNS | | | |
| HELENA 4PK CUSHION DINING CHAIRS | No. of Pallet: | | | | | |
| **HTS Code.:** 9401790011 | | | | | | |
| **Total:** | **(732 CTNS)** | **732** | | **18,300.00** | **22,362.60** | **190.000** |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
FANU3035985/HLK0795816/40H
HAMU1939451/HLK0851875/40H
HLBU3278005/HLK0795815/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
FANU3035985/HLK0795816/40H
HAMU1939451/HLK0851875/40H
HLBU3278005/HLK0795815/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95578600
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.     **CNS-SHA-2402640**

| | | |
|---|---|---|
| Maker/Supplier: **HOME CREATIONS INC** | | Maker/Supplier's INVOICE No.<br>**S202410230024** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC**<br>**50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | | Dated: **November 27, 2024** |
| Shipment From : **SHANGHAI**         To : **TREMONT, PA** | | Date of Receipt of Cargo<br>**November 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                    NOTIFY PARTY: GEODIS
STORES                          5101 S. BROAD STREET
                                PHILADELPHIA, PA 19112-1404, U.S.A.
PO#95578600                     ATTN: ALENA LAMINA
SKU#                        ALSO NOTIFY: EDRAY 2020 LLC.
DEPT#210                        1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                   CHARLOTTE NC 28203 USA
                                TEL: 704-593-6329
                                EMAIL: DATAQUALITY@EDRAYCPL.COM

                            CY-CY

                            SHIPPER'S LOAD, COUNT AND SEAL
                            SAID TO CONTAIN
                            FANU3035985        SEAL# HLK0795816    40H  DRY
                            HAMU1939451        SEAL# HLK0851875    40H  DRY
                            HLBU3278005        SEAL# HLK0795815    40H  DRY


                            OUTDOOR FURNITURE AS PER PO#95578600

                            SHIP TO CODE & LOCATION : 00874-TREMONT, PA
                            SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                            MATERIAL
```

```
                            732 CARTONS            190.000 CBM   22,362.60 KGS
                            ======================================================
                            TOTAL : SEVEN HUNDRED THIRTY-TWO (732) CARTONS ONLY

                                "FREIGHT COLLECT"
SHIPMENT PER S.S. "WAN HAI A10" VOY NO. E008   DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT November 29, 2024. CARGO RECEIVED ON November 26, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                           **November 27, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS** |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | As Agent<br>(Authorized Signature)        V1 |



**PO #**          **95578600**

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 08/19/2024 |
| Version: | 2 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/18/2024 |
| Cancel if not Shipped by: | 11/25/2024 |
| Must be Routed by: | 10/28/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | SHANGHAI    , CN |

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:   570-695-2862

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:   5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA
Contact:    HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:      sales@hcicreations.com

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 732 | 182,996.34 | 55,632.00 | 65.545 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms").  The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party.  "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC").  A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95578600

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 210 | 810776681 | HELENA 4PK CUSHION | 0.00 | CN | 1 | | 366 | 110.00 | 64,683.18 | 12/30/2024 |
| 21012 | H24S0346K | PTIOSETTBL | | | 1 | | 366 | 66.73 | 128,100.00 | |
| 21012001 | NA | CLOSEOUT | | | | | | 350.00 | 49.506 | 479.90 |
| 1 | 481077668100 | | GRM | 14.884 | E1 | | | | | |
| 210 | 810776668 | HELENA SQUARE LAMIN | 0.00 | CN | 1 | | 366 | 42.00 | 22,790.82 | 12/30/2024 |
| 21012 | H24S7408P | PTIOSETTBL | | | 1 | | 366 | 20.27 | 54,896.34 | |
| 21012001 | NA | CLOSEOUT | | | | | | 149.99 | 58.484 | 246.99 |
| 2 | 481077666809 | | GRM | 3.456 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410230025

**Invoice Date.:** November 22, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** HMM DREAM / 056E

**Port of Loading:** SHANGHAI

**Ship on or about:** November 29, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** ONEU0727779, TCLU7820150, TCLU9642859

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95573222 | | 450 | EA | 139.500/EA | 62,775.000 |
| **SKU No.:** 810776141 | | 450 | CTNS | | |
| OCALA 3PC CHAT SET | No. of Pallet: | | | | |
| **HTS Code.:** 9401790011 | | | | | |
| | **Manufacturer Name & Address** | | | | |
| | JIANGSU HONGBO HOME GOODS CO. LTD NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN NANTONG,, JIANGSU 226600, CHINA | | | | |
| Total: | (450 CTNS) | 450 | | | 62,775.000 |
| TOTAL (USD) DOLLARS : SIXTY-TWO THOUSAND SEVEN HUNDRED SEVENTY-FIVE ONLY. | | | | | |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
ONEU0727779/CN29818AM/40H
TCLU7820150/CN29815AM/40H
TCLU9642859/CN29817AM/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
ONEU0727779/CN29818AM/40H
TCLU7820150/CN29815AM/40H
TCLU9642859/CN29817AM/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95573222
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410230025

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB SHANGHAI

**Country of Origin:** CHINA

**Vessel / Voyage:** HMM DREAM / 056E

**Ship on or about:** November 29, 2024

**Invoice Date.:** November 22, 2024

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** SHANGHAI

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** ONEU0727779, TCLU7820150, TCLU9642859

| Cargo Description | Quantity (Unit) | | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95573222 | 450 | EA | 10,980.00 | 14,175.00 | 198.000 |
| **SKU No.:** 810776141 | 450 | CTNS | | | |
| OCALA 3PC CHAT SET | No. of Pallet: | | | | |
| **HTS Code.:** 9401790011 | | | | | |
| **Total:**  (450 CTNS) | 450 | | 10,980.00 | 14,175.00 | 198.000 |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
ONEU0727779/CN29818AM/40H
TCLU7820150/CN29815AM/40H
TCLU9642859/CN29817AM/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
ONEU0727779/CN29818AM/40H
TCLU7820150/CN29815AM/40H
TCLU9642859/CN29817AM/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95573222
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SHA-2402622**

| | |
|---|---|
| Maker/Supplier : **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202410230025** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC** **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **November 22, 2024** |
| Shipment From : **SHANGHAI**     To : **MONTGOMERY, AL** | Date of Receipt of Cargo **November 21, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br><br>PO#95573222<br>SKU#<br>DEPT#210<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>            5101 S. BROAD STREET<br>            PHILADELPHIA, PA 19112-1404, U.S.A.<br>            ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>            1300 SOUTH MINT STREET SUITE 200<br>            CHARLOTTE NC 28203 USA<br>            TEL: 704-593-6329<br>            EMAIL: DATAQUALITY@EDRAYCPL.COM<br>CY-CY<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>ONEU0727779        SEAL# CN29818AM        40H  DRY<br>TCLU7820150        SEAL# CN29815AM        40H  DRY<br>TCLU9642859        SEAL# CN29817AM        40H  DRY<br><br><br>OUTDOOR FURNITURE AS PER PO#95573222<br><br>SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 450 CARTONS | | 198.000 CBM | 14,175.00 KGS |

=========================================================
TOTAL : FOUR HUNDRED FIFTY (450) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "HMM DREAM" VOY NO. 056E    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT November 29, 2024. CARGO RECEIVED ON November 21, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                    **November 22, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.<br>No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br><br>As Agent<br>(Authorized Signature)            V1 |



**PO #**     **95573222**

| | |
|---|---|
| Date Created | 08/16/2024 |
| Version: | 3 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/25/2024 |
| Cancel if not Shipped by: | 12/02/2024 |
| Must be Routed by: | 11/04/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | SHANGHAI    , CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633      Fax:  334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800      Fax: 614-278-6871

**Purchase From Vendor:** 5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:   HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:   sales@hcicreations.com

**ADDITIONAL COMMENTS**

TT 30 DAYS FORM THE FCR

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 450 | 179,995.50 | 62,775.00 | 45.876 |

Vendor Signature   _____

Signee's Name   _____

Title   _____

Date   _____

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.       Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.       Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.       Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.       Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.       Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.       Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.       Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.       Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.       Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:   95573222

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|-------------|---------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 210 | 810776141 | OCALA 3PC CHAT SET | 0.00 | CN | 1 | | 450 | 139.50 | 97,420.50 | 01/13/2025 |
|------|-----------|---------------------|------|-----|----|---|-----|---------|-----------|------------|
| 21012 | SH24S2241W | Resin Wick | | | 1 | | 450 | 76.99 | 179,995.50 | |
| 21012005 | Broyhill | | 051 | 0.000 | | | | 399.99 | 45.876 | 599.99 |
| 1 | 481077614107 | | GRM | 15.615 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

---

# INVOICE

---

**Invoice No.:** S202410230026

**Invoice Date.:** December 05, 2024

**Sold To:** CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:** 50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** ATLANTA EXPRESS / 002E

**Port of Loading:** SHANGHAI

**Ship on or about:** December 10, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** BMOU6629918, HAMU3207450, HAMU3237541, HAMU3239673, TCKU6040450, TCLU8090457

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95573223 | | 900 | EA | 139.500/EA | 125,550.000 |
| **SKU No.:** 810776141 | | 900 | CTNS | | |
| OCALA 3PC CHAT SET | No. of Pallet: | | | | |
| **HTS Code.:** 9401790011 | | | | | |
| | | | | | |
| **Manufacturer Name & Address** | | | | | |
| JIANGSU HONGBO HOME GOODS CO. LTD NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN NANTONG,, JIANGSU 226600, CHINA | | | | | |
| Total: | (900 CTNS) | 900 | | | 125,550.000 |
| **TOTAL (USD) DOLLARS : ONE HUNDRED TWENTY-FIVE THOUSAND FIVE HUNDRED FIFTY ONLY.** | | | | | |
| | | | | | |

---

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
BMOU6629918/HLK0806817/40H
HAMU3207450/HLK0833939/40H
HAMU3237541/HLK0833950/40H
HAMU3239673/HLK0841475/40H
TCKU6040450/HLK0806905/40H
TCLU8090457/HLK0841471/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
BMOU6629918/HLK0806817/40H
HAMU3207450/HLK0833939/40H
HAMU3237541/HLK0833950/40H
HAMU3239673/HLK0841475/40H
TCKU6040450/HLK0806905/40H
TCLU8090457/HLK0841471/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95573223
SKU#

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

---

# PACKING LIST

---

**Invoice No.:** S202410230026

**Sold To:**    CLOSEOUT DISTRIBUTION, LLC
             50 RAUSCH CREEK RD
             TREMONT, PA 17981
             USA

**Shipment Terms:** FOB SHANGHAI

**Country of Origin:** CHINA

**Vessel / Voyage:** ATLANTA EXPRESS / 002E

**Ship on or about:** December 10, 2024

**Invoice Date.:** December 05, 2024

**Delivery To:**    50 RAUSCH CREEK RD
             TREMONT, PA 17981
             USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** SHANGHAI

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** BMOU6629918, HAMU3207450, HAMU3237541, HAMU3239673, TCKU6040450, TCLU8090457

| Cargo Description | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|
| **P/O No.:** 95573223 | 900 EA | 21,960.00 | 28,350.00 | 396.000 |
| **SKU No.:** 810776141 | 900 CTNS | | | |
| OCALA 3PC CHAT SET | **No. of Pallet:** | | | |
| **HTS Code.:** 9401790011 | | | | |
| **Total:**    **(900 CTNS)** | **900** | **21,960.00** | **28,350.00** | **396.000** |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
BMOU6629918/HLK0806817/40H
HAMU3207450/HLK0833939/40H
HAMU3237541/HLK0833950/40H
HAMU3239673/HLK0841475/40H
TCKU6040450/HLK0806905/40H
TCLU8090457/HLK0841471/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
BMOU6629918/HLK0806817/40H
HAMU3207450/HLK0833939/40H
HAMU3237541/HLK0833950/40H
HAMU3239673/HLK0841475/40H
TCKU6040450/HLK0806905/40H
TCLU8090457/HLK0841471/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95573223
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-SHA-2402730**

| | Maker/Supplier's INVOICE No. |
|---|---|
| Maker/Supplier : **HOME CREATIONS INC** | **S202410230026** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC**<br>**50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated: **December 05, 2024** |
| Shipment From : **SHANGHAI**          To : **TREMONT, PA** | Date of Receipt of Cargo<br>**November 30, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
BIG LOTS                    NOTIFY PARTY: GEODIS
STORES                                    5101 S. BROAD STREET
                                          PHILADELPHIA, PA 19112-1404, U.S.A.
PO#95573223                               ATTN: ALENA LAMINA
SKU#                        ALSO NOTIFY: EDRAY 2020 LLC.
DEPT#210                                  1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                             CHARLOTTE NC 28203 USA
                                          TEL: 704-593-6329
                                          EMAIL: DATAQUALITY@EDRAYCPL.COM

                            CY-CY

                            SHIPPER'S LOAD, COUNT AND SEAL
                            SAID TO CONTAIN
                            HAMU3239673        SEAL# HLK0841475      40H  DRY
                            HAMU3207450        SEAL# HLK0833939      40H  DRY
                            TCKU6040450        SEAL# HLK0806905      40H  DRY
                            BMOU6629918        SEAL# HLK0806817      40H  DRY
                            HAMU3237541        SEAL# HLK0833950      40H  DRY
                            TCLU8090457        SEAL# HLK0841471      40H  DRY


                            OUTDOOR FURNITURE AS PER PO#95573223

                            SHIP TO CODE & LOCATION : 00874-TREMONT, PA
                            SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                            MATERIAL


                            900 CARTONS              396.000 CBM   28,350.00 KGS
                            ======================================================
                            TOTAL : NINE HUNDRED (900) CARTONS ONLY

                              "FREIGHT COLLECT"
SHIPMENT PER S.S. "ATLANTA EXPRESS" VOY NO. 002E    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT December 10, 2024. CARGO RECEIVED ON November 30, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | SHANGHAI          December 5, 2024 |
|---|---|

The Goods and instructions are accepted and dealt with subject to the
**YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED**
Standard Trading Conditions printed reverse side. Forwarding instructions
can only be cancelled or altered if the original of this document is
surrendered to the Company and then only provided the Company is still
in a position to comply with such cancellation or alteration. Instructions
authorizing disposal by a third party can only be cancelled or altered if the
original of this document is surrendered to the Company, and then only
provided the Company have not yet received instructions under the
original authority. The Company does not act as Carrier but a forwarding
agent only.
No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Place and date of issue.)
**YUSEN LOGISTICS**

Yusen logistics (China) Co.,Ltd.
日郵物流(中国)有限公司
业务专用章--34

As Agent

(Authorized Signature)          V1

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics



**PO #**          **95573223**

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 08/16/2024 |
| Version: | 3 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/25/2024 |
| Cancel if not Shipped by: | 12/02/2024 |
| Must be Routed by: | 11/04/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | SHANGHAI    ,  CN |

---

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:   570-695-2862

---

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

**Purchase From Vendor:  5005944**

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:     HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:     sales@hcicreations.com

---

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

---

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 900 | 359,991.00 | 125,550.00 | 45.876 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO.  The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer.  A BOL in duplicate must accompany all Vendor invoices.  A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual.  Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period").  After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods.  Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms.  For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law.  As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification.  Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records").  Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative.  Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit.  In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice.  Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof.  Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls.  A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations.  In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above.  When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date.  Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law.  Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods.  Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality.  Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information").  "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties.  Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry.  Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected.  The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption.  Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws").  Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor.  Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or

 OFFICE-COPY Case 24-11967-JKS Doc 1359-1 Filed 04/10/25 Page 188 of 346 **IMPORTANT Terms and Conditions** PO#: 95573223

Page 4 of 6

securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:   95573223

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|------|---------|--------------------|------|-------------------|--------|--|--------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 210 | 810776141 | OCALA 3PC CHAT SET | 0.00 | CN | 1 | | 900 | 139.50 | 194,841.00 | 01/06/2025 |
| 21012 | SH24S2241W | Resin Wick | | | 1 | | 900 | 76.99 | 359,991.00 | |
| 21012005 | Broyhill | | 051 | 0.000 | | | | 399.99 | 45.876 | 599.99 |
| 1 | 481077614107 | | GRM | 15.615 | E1 | | | | | |

**HOME CREATIONS INC**                                          Seller reference

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410230027

**Invoice Date.:** November 27, 2024

**Sold To:**  DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:**  2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** MSC KATIE / 447N

**Port of Loading:** SHANGHAI

**Ship on or about:** December 01, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** GCXU6378095, MRKU3491107

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95573224 | | 300 | EA | 139.500/EA | 41,850.000 |
| **SKU No.:** 810776141 | | 300 | CTNS | | |
| OCALA 3PC CHAT SET | No. of Pallet: | | | | |
| **HTS Code.:** 9401790011 | | | | | |
| | **Manufacturer Name & Address** | | | | |
| | JIANGSU HONGBO HOME GOODS CO. LTD NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN NANTONG,, JIANGSU 226600, CHINA | | | | |
| Total: | (300 CTNS) | 300 | | | 41,850.000 |
| **TOTAL (USD) DOLLARS : FORTY-ONE THOUSAND EIGHT HUNDRED FIFTY ONLY.** | | | | | |
| | | | | | |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
GCXU6378095/CN9682242/40H
MRKU3491107/CN9682359/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
GCXU6378095/CN9682242/40H
MRKU3491107/CN9682359/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95573224
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410230027

**Invoice Date.:** November 27, 2024

**Sold To:**  DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:**  2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** MSC KATIE / 447N

**Port of Loading:** SHANGHAI

**Ship on or about:** December 01, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** GCXU6378095, MRKU3491107

| Cargo Description | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|
| P/O No.: 95573224 | 300  EA | 7,320.00 | 9,450.00 | 134.000 |
| SKU No.: 810776141 | 300  CTNS | | | |
| OCALA 3PC CHAT SET | No. of Pallet: | | | |
| HTS Code.: 9401790011 | | | | |
| **Total:**  (300 CTNS) | 300 | 7,320.00 | 9,450.00 | 134.000 |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
GCXU6378095/CN9682242/40H
MRKU3491107/CN9682359/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
GCXU6378095/CN9682242/40H
MRKU3491107/CN9682359/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95573224
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

**FORWARDER'S CARGO RECEIPT No.**    **CNS-SHA-2402646**

| | |
|---|---|
| | Maker/Supplier's INVOICE No.<br>**S202410230027** |
| Maker/Supplier :   **HOME CREATIONS INC** | |
| Buyer/Consignee :   **DURANT DC, LLC**<br>  **2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated:   **November 27, 2024** |
| Shipment From :   **SHANGHAI**       To : **DURANT, OK** | Date of Receipt of Cargo<br>**November 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95573224<br>SKU#<br>DEPT#210<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>  5101 S. BROAD STREET<br>  PHILADELPHIA, PA 19112-1404, U.S.A.<br>  ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>  1300 SOUTH MINT STREET SUITE 200<br>  CHARLOTTE NC 28203 USA<br>  TEL: 704-593-6329<br>  EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CY-CY<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>GCXU6378095      SEAL# CN9682242      40H  DRY<br>MRKU3491107      SEAL# CN9682359      40H  DRY<br><br><br>OUTDOOR FURNITURE AS PER PO#95573224<br><br>SHIP TO CODE & LOCATION : 00879-DURANT, OK<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 300 CARTONS | | 134.000 CBM | 9,450.00 KGS |

============================================================

TOTAL : THREE HUNDRED (300) CARTONS ONLY

"FREIGHT COLLECT"

SHIPMENT PER S.S. "MSC KATIE" VOY NO. 447N    DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT December 1, 2024. CARGO RECEIVED ON November 26, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**            **November 27, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS** |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | As Agent<br>(Authorized Signature)      V1 |



**PO #**　　　　　　**95573224**

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created | 08/16/2024 |
| Version: | 3 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/25/2024 |
| Cancel if not Shipped by: | 12/02/2024 |
| Must be Routed by: | 11/04/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | SHANGHAI    , CN |

---

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK 74701-1964

Telephone: 580-931-2100　　　Fax: 580-931-2197

---

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800　　　Fax: 614-278-6871

---

**Purchase From Vendor:** 5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact: 　HELEN HUANG
Telephone: 86-13817575231　　Fax
E-Mail: 　sales@hcicreations.com

---

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

---

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 300 | 119,997.00 | 41,850.00 | 45.876 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor.

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.       Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.       Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC").  A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.       Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.       Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.       Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.       Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.       Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.       Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.       Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



Case 24-11161-JTD Doc 859-1 Filed 12/15/24 Page 196 of 346

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:   95573224

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|--------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 210 | 810776141 | OCALA 3PC CHAT SET | 0.00 | CN | 1 | | 300 | 139.50 | 64,947.00 | 01/13/2025 |
|-----|-----------|---------------------|------|----|----|--|-----|--------|-----------|------------|
| 21012 | SH24S2241W | Resin Wick | | | 1 | | 300 | 76.99 | 119,997.00 | |
| 21012005 | Broyhill | | 051 | 0.000 | | | | 399.99 | 45.876 | 599.99 |
| 1 | 481077614107 | | GRM | 15.615 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410230028

**Invoice Date.:** November 27, 2024

**Sold To:**  DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:**  2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** MSC KATIE / 447N

**Port of Loading:** SHANGHAI

**Ship on or about:** December 01, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** MRSU5004746

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95642943 | | 150 | EA | 139.500/EA | 20,925.000 |
| **SKU No.:** 810776141 | | 150 | CTNS | | |
| OCALA 3PC CHAT SET | No. of Pallet: | | | | |
| **HTS Code.:** 9401790011 | | | | | |
| | **Manufacturer Name & Address** | | | | |
| | JIANGSU HONGBO HOME GOODS CO. LTD NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN NANTONG,, JIANGSU 226600, CHINA | | | | |
| Total: | (150 CTNS) | 150 | | | 20,925.000 |
| **TOTAL (USD) DOLLARS : TWENTY THOUSAND NINE HUNDRED TWENTY-FIVE ONLY.** | | | | | |
| | | | | | |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
MRSU5004746/CN9678354/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
MRSU5004746/CN9678354/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95642943
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

Seller reference

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410230028

**Sold To:**   DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Country of Origin:** CHINA

**Vessel / Voyage:** MSC KATIE / 447N

**Ship on or about:** December 01, 2024

**Invoice Date.:** November 27, 2024

**Delivery To:**   2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** SHANGHAI

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** MRSU5004746

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95642943 | | 150   EA | 3,660.00 | 4,725.00 | 66.000 |
| **SKU No.:** 810776141 | | 150   CTNS | | | |
| OCALA 3PC CHAT SET | No. of Pallet: | | | | |
| **HTS Code.:** 9401790011 | | | | | |
| **Total:** | **(150 CTNS)** | 150 | 3,660.00 | 4,725.00 | 66.000 |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
MRSU5004746/CN9678354/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
MRSU5004746/CN9678354/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95642943
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

**FORWARDER'S CARGO RECEIPT No.**    **CNS-SHA-2402645**

| | |
|---|---|
| Maker/Supplier :    **HOME CREATIONS INC** | Maker/Supplier's INVOICE No.<br>**S202410230028** |
| Buyer/Consignee :   **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated:   **November 27, 2024** |
| Shipment From :    **SHANGHAI**          To : **DURANT, OK** | Date of Receipt of Cargo<br>**November 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95642943<br>SKU#<br>DEPT#210<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>5101 S. BROAD STREET<br>PHILADELPHIA, PA 19112-1404, U.S.A.<br>ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>1300 SOUTH MINT STREET SUITE 200<br>CHARLOTTE NC 28203 USA<br>TEL: 704-593-6329<br>EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CY-CY<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>MRSU5004746          SEAL# CN9678354          40H  DRY<br><br><br>OUTDOOR FURNITURE AS PER PO#95642943<br><br>SHIP TO CODE & LOCATION : 00879-DURANT, OK<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | **150 CARTONS** | | **66.000 CBM** | **4,725.00 KGS** |

==========================================================
TOTAL : ONE HUNDRED FIFTY (150) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "MSC KATIE" VOY NO. 447N    DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT December 1, 2024. CARGO RECEIVED ON November 26, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                    **November 27, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br> |
| **No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: 1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | As Agent<br>(Authorized Signature)                    V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics



## PO # 95642943

| | |
|---|---|
| Date Created | 10/15/2024 |
| Version: | 1 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/25/2024 |
| Cancel if not Shipped by: | 12/02/2024 |
| Must be Routed by: | 11/04/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | SHANGHAI    , CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:   580-931-2197

---

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

**Purchase From Vendor:   5005944**

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:     HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:      sales@hcicreations.com

---

**ADDITIONAL COMMENTS**

PO replaces :0095573221; Ship only these quantities under the new PO.

TT 30 DAYS FROM THE FCR

---

| Vendor Signature | _____ |
|---|---|
| Signee's Name | _____ |
| Title | _____ |
| Date | _____ |

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 150 | 59,998.50 | 20,925.00 | 45.876 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:    95642943

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

### Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.       Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.       Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.       Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.       Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.       Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.       Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.       Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.       Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.       Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 210 | 810776141 | OCALA 3PC CHAT SET | 0.00 | CN | 1 | | 150 | 139.50 | 32,473.50 | 01/13/2025 |
| 21012 | SH24S2241W | Resin Wick | | | 1 | | 150 | 76.99 | 59,998.50 | |
| 21012005 | Broyhill | | 051 | 0.000 | | | | 399.99 | 45.876 | 599.99 |
| 1 | 481077614107 | | GRM | 15.615 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410230029

**Invoice Date.:** November 27, 2024

**Sold To:**  DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:**  2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** MSC KATIE / 447N

**Port of Loading:** SHANGHAI

**Ship on or about:** December 01, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** CAAU8128569

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95647144 | | 191 | EA | 180.000/EA | 34,380.000 |
| **SKU No.:** 810796888 | | 191 | CTNS | | |
| ESTANCIA 4PC WICKER | No. of Pallet: | | | | |
| **HTS Code.:** 9401790011 | | | | | |
| | **Manufacturer Name & Address** | | | | |
| | JIANGSU HONGBO HOME GOODS CO. LTD NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN NANTONG,, JIANGSU 226600, CHINA | | | | |
| | Total:    (191 CTNS) | 191 | | | 34,380.000 |
| **TOTAL (USD) DOLLARS : THIRTY-FOUR THOUSAND THREE HUNDRED EIGHTY ONLY.** | | | | | |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
CAAU8128569/CN9683702/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
CAAU8128569/CN9683702/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95647144
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410230029

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Country of Origin:** CHINA

**Vessel / Voyage:** MSC KATIE / 447N

**Ship on or about:** December 01, 2024

**Invoice Date.:** November 27, 2024

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** SHANGHAI

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** CAAU8128569

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95647144 | | 191  EA | 7,926.50 | 9,263.50 | 68.000 |
| **SKU No.:** 810796888 | | 191  CTNS | | | |
| ESTANCIA 4PC WICKER | **No. of Pallet:** | | | | |
| **HTS Code.:** 9401790011 | | | | | |
| **Total:** | **(191 CTNS)** | 191 | 7,926.50 | 9,263.50 | 68.000 |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
CAAU8128569/CN9683702/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
CAAU8128569/CN9683702/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95647144
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics

Yusen Logistics - Yusen Logistics

## FORWARDER'S CARGO RECEIPT No.    CNS-SHA-2402644

| | |
|---|---|
| Maker/Supplier: **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202410230029** |
| Buyer/Consignee: **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **November 27, 2024** |
| Shipment From: **SHANGHAI**        To: **DURANT, OK** | Date of Receipt of Cargo<br>**November 26, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95647144<br>SKU#<br>DEPT#210<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>5101 S. BROAD STREET<br>PHILADELPHIA, PA 19112-1404, U.S.A.<br>ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>1300 SOUTH MINT STREET SUITE 200<br>CHARLOTTE NC 28203 USA<br>TEL: 704-593-6329<br>EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CY-CY<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>CAAU8128569        SEAL# CN9683702        40H  DRY<br><br><br>OUTDOOR FURNITURE AS PER PO#95647144<br><br>SHIP TO CODE & LOCATION : 00879-DURANT, OK<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 191 CARTONS | | 68.000 CBM | 9,263.50 KGS |

TOTAL : ONE HUNDRED NINETY-ONE (191) CARTONS ONLY

"FREIGHT COLLECT"

SHIPMENT PER S.S. "MSC KATIE" VOY NO. 447N    DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT December 1, 2024. CARGO RECEIVED ON November 26, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                    **November 27, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.<br>No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br><br><br>As Agent<br>(Authorized Signature)                    V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics



**PO #**      **95647144**

| | |
|---|---|
| Date Created | 10/21/2024 |
| Version: | 0 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/25/2024 |
| Cancel if not Shipped by: | 12/02/2024 |
| Must be Routed by: | 11/04/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | SHANGHAI    , CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK 74701-1964

Telephone: 580-931-2100      Fax: 580-931-2197

---

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800      Fax: 614-278-6871

---

Purchase From Vendor:   5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:   86-13817575231    Fax
E-Mail:    sales@hcicreations.com

---

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

---

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 191 | 95,498.09 | 34,380.00 | 47.661 |

OFFICE-COPY



These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor.

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner, without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


**IMPORTANT Terms and Conditions**

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95647144

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 210 | 810796888 | ESTANCIA 4PC WICKER | 0.00 | CN | 1 | | 191 | 180.00 | 49,982.79 | 01/13/2025 |
|---|---|---|---|---|---|---|---|---|---|---|
| 21012 | HSVS443V | Resin Wick | | | 1 | | 191 | 81.69 | 95,498.09 | |
| 21012005 | NA | CLOSEOUT | | | | | | 499.99 | 47.661 | 606.00 |
| 1 | 481079688809 | | GRM | 12.602 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410250008

**Invoice Date.:** December 13, 2024

**Sold To:** CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:** 50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO ITALY / 071E

**Port of Loading:** SHANGHAI

**Ship on or about:** December 17, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** LONG BEACH, CA

**Container Number (Factory Load) :** CCLU5188799, OOLU4310742, OOLU4499750

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95578605 | | 336 | EA | 42.000/EA | 14,112.000 |
| **SKU No.:** 810776668 | | 336 | CTNS | | |
| HELENA SQUARE LAMINATED DINING TABLE | No. of Pallet: | | | | |
| **HTS Code.:** 9403200050 | | | | | |
| | | | | | |
| **P/O No.:** 95578605 | | 336 | EA | 110.000/EA | 36,960.000 |
| **SKU No.:** 810776681 | | 336 | CTNS | | |
| HELENA 4PK CUSHION DINING CHAIRS | No. of Pallet: | | | | |
| **HTS Code.:** 9401790011 | | | | | |
| | **Manufacturer Name & Address** | | | | |
| | JIANGSU HONGBO HOME GOODS CO. LTD NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN NANTONG,, JIANGSU 226600, CHINA | | | | |
| **Total:** | **(672 CTNS)** | **672** | | | **51,072.000** |
| **TOTAL (USD) DOLLARS : FIFTY-ONE THOUSAND SEVENTY-TWO ONLY.** | | | | | |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
CCLU5188799/OOLJQM4780/40'
OOLU4310742/OOLJQM4777/40'
OOLU4499750/OOLJQM4774/40'

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
CCLU5188799/OOLJQM4780/40'
OOLU4310742/OOLJQM4777/40'
OOLU4499750/OOLJQM4774/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95578605
SKU#
DEPT#210
MADE IN CHINA

**HOME CREATIONS INC**

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410250008

**Sold To:**   CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB SHANGHAI

**Country of Origin:** CHINA

**Vessel / Voyage:** COSCO ITALY / 071E

**Ship on or about:** December 17, 2024

**Invoice Date.:** December 13, 2024

**Delivery To:**   50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** SHANGHAI

**Port of Entry:** LONG BEACH, CA

**Destination:** LONG BEACH, CA

**Container Number (Factory Load) :** CCLU5188799, OOLU4310742, OOLU4499750

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95578605 | | 336  EA | 7,123.20 | 8,568.00 | 33.000 |
| **SKU No.:** 810776668 | | 336  CTNS | | | |
| HELENA SQUARE LAMINATED DINING TABLE | No. of Pallet: | | | | |
| **HTS Code.:** 9403200050 | | | | | |
| | | | | | |
| **P/O No.:** 95578605 | | 336  EA | 9,676.80 | 11,961.60 | 141.000 |
| **SKU No.:** 810776681 | | 336  CTNS | | | |
| HELENA 4PK CUSHION DINING CHAIRS | No. of Pallet: | | | | |
| **HTS Code.:** 9401790011 | | | | | |
| **Total:**  (672 CTNS) | | 672 | 16,800.00 | 20,529.60 | 174.000 |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
CCLU5188799/OOLJQM4780/40'
OOLU4310742/OOLJQM4777/40'
OOLU4499750/OOLJQM4774/40'

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
CCLU5188799/OOLJQM4780/40'
OOLU4310742/OOLJQM4777/40'
OOLU4499750/OOLJQM4774/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95578605
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.   **CNS-SHA-2402795**

| | |
|---|---|
| Maker/Supplier : **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202410250008** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC** **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated: **December 13, 2024** |
| Shipment From : **SHANGHAI**   To : **TREMONT, PA** | Date of Receipt of Cargo **December 12, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES<br><br>PO#95578605<br>SKU#<br>DEPT#210<br>MADE IN CHINA | NOTIFY PARTY: GEODIS<br>5101 S. BROAD STREET<br>PHILADELPHIA, PA 19112-1404, U.S.A.<br>ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>1300 SOUTH MINT STREET SUITE 200<br>CHARLOTTE NC 28203 USA<br>TEL: 704-593-6329<br>EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CY-CY<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>CCLU5188799      SEAL# OOLJQM4780   40' DRY<br>OOLU4310742      SEAL# OOLJQM4777   40' DRY<br>OOLU4499750      SEAL# OOLJQM4774   40' DRY<br><br><br>OUTDOOR FURNITURE AS PER PO#95578605<br><br>SHIP TO CODE & LOCATION : 00874-TREMONT, PA<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 672 CARTONS | | 174.000 CBM | 20,529.60 KGS |

===============================================================
TOTAL : SIX HUNDRED SEVENTY-TWO (672) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "COSCO ITALY" VOY NO. 071E    DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT December 17, 2024. CARGO RECEIVED ON December 12, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**                **December 13, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.<br>No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br><br><br>As Agent<br>(Authorized Signature)                V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics



**PO #**    **95578605**

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created: | 08/19/2024 |
| Version: | 4 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 12/16/2024 |
| Cancel if not Shipped by: | 12/23/2024 |
| Must be Routed by: | 11/25/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | SHANGHAI    , CN |

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:  570-695-2862

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

**Purchase From Vendor:**  5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:  86-13817575231    Fax
E-Mail:    sales@hcicreations.com

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 672 | 167,996.64 | 51,072.00 | 65.545 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 210 | 810776681 | HELENA 4PK CUSHION | 0.00 | CN | 1 | | 336 | 110.00 | 59,381.28 | 01/27/2025 |
| 21012 | H24S0346K | PTIOSETTBL | | | 1 | | 336 | 66.73 | 117,600.00 | |
| 21012001 | NA | CLOSEOUT | | | | | | 350.00 | 49.506 | 479.90 |
| 1 | 481077668100 | | GRM | 14.884 | E1 | | | | | |
| 210 | 810776668 | HELENA SQUARE LAMIN | 0.00 | CN | 1 | | 336 | 42.00 | 20,922.72 | 01/27/2025 |
| 21012 | H24S7408P | PTIOSETTBL | | | 1 | | 336 | 20.27 | 50,396.64 | |
| 21012001 | NA | CLOSEOUT | | | | | | 149.99 | 58.484 | 246.99 |
| 2 | 481077666809 | | GRM | 3.456 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410250010

**Invoice Date.:** December 13, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO ITALY / 071E

**Port of Loading:** SHANGHAI

**Ship on or about:** December 17, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** OOCU4859280, OOLU4315301

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| P/O No.: 95578611 | | 224 | EA | 42.000/EA | 9,408.000 |
| SKU No.: 810776668 | | 224 | CTNS | | |
| HELENA SQUARE LAMINATED DINING TABLE | No. of Pallet: | | | | |
| HTS Code.: 9403200050 | | | | | |
| P/O No.: 95578611 | | 224 | EA | 110.000/EA | 24,640.000 |
| SKU No.: 810776681 | | 224 | CTNS | | |
| HELENA 4PK CUSHION DINING CHAIRS | No. of Pallet: | | | | |
| HTS Code.: 9401790011 | | | | | |
| **Manufacturer Name & Address** | | | | | |
| JIANGSU HONGBO HOME GOODS CO. LTD NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN NANTONG,, JIANGSU 226600, CHINA | | | | | |
| Total: | (448 CTNS) | 448 | | | 34,048.000 |

**TOTAL (USD) DOLLARS : THIRTY-FOUR THOUSAND FORTY-EIGHT ONLY.**

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
OOCU4859280/OOLJQM4768/40'
OOLU4315301/OOLJQM9799/40'

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, HAI AN
NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
OOCU4859280/OOLJQM4768/40'
OOLU4315301/OOLJQM9799/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95578611

SKU#
DEPT#210
MADE IN CHINA

**HOME CREATIONS INC**

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410250010

**Invoice Date.:** December 13, 2024

**Sold To:** DURANT DC, LLC
2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Delivery To:** 2306 ENTERPRISE DR
DURANT, OK 74701
USA

**Shipment Terms:** FOB SHANGHAI

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO ITALY / 071E

**Port of Loading:** SHANGHAI

**Ship on or about:** December 17, 2024

**Port of Entry:** LONG BEACH, CA

**Destination:** DURANT, OK

**Container Number (Factory Load) :** OOCU4859280, OOLU4315301

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95578611 | | 224 EA | 4,748.80 | 5,712.00 | 22.000 |
| **SKU No.:** 810776668 | | 224 CTNS | | | |
| HELENA SQUARE LAMINATED DINING TABLE | No. of Pallet: | | | | |
| **HTS Code.:** 9403200050 | | | | | |
| | | | | | |
| **P/O No.:** 95578611 | | 224 EA | 6,451.20 | 7,974.40 | 94.000 |
| **SKU No.:** 810776681 | | 224 CTNS | | | |
| HELENA 4PK CUSHION DINING CHAIRS | No. of Pallet: | | | | |
| **HTS Code.:** 9401790011 | | | | | |
| Total: | (448 CTNS) | 448 | 11,200.00 | 13,686.40 | 116.000 |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
OOCU4859280/OOLJQM4768/40'
OOLU4315301/OOLJQM9799/40'

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO. LTD
NO.50 LIAN FA ROAD, BIN HAI NEW AREA, LAO BA GANG, HAI AN NANTONG, , JIANGSU
226600 CHINA
Container No./Seal/Size:
OOCU4859280/OOLJQM4768/40'
OOLU4315301/OOLJQM9799/40'

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95578611
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

**FORWARDER'S CARGO RECEIPT No.**   **CNS-SHA-2402794**

| | |
|---|---|
| Maker/Supplier: **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202410250010** |
| Buyer/Consignee: **DURANT DC, LLC**<br>**2306 ENTERPRISE DR, DURANT, OK 74701, USA** | Dated: **December 13, 2024** |
| Shipment From: **SHANGHAI**    To: **DURANT, OK** | Date of Receipt of Cargo<br>**December 12, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95578611<br>SKU#<br>DEPT#210<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>            5101 S. BROAD STREET<br>            PHILADELPHIA, PA 19112-1404, U.S.A.<br>            ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>            1300 SOUTH MINT STREET SUITE 200<br>            CHARLOTTE NC 28203 USA<br>            TEL: 704-593-6329<br>            EMAIL: DATAQUALITY@EDRAYCPL.COM<br>CY-CY<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>OOCU4859280        SEAL# OOLJQM4768        40' DRY<br>OOLU4315301        SEAL# OOLJQM9799        40' DRY<br><br><br>OUTDOOR FURNITURE AS PER PO#95578611<br><br>SHIP TO CODE & LOCATION : 00879-DURANT, OK<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | **448 CARTONS** | | **116.000 CBM** | **13,686.40 KGS** |

```
================================================================
TOTAL : FOUR HUNDRED FORTY-EIGHT (448) CARTONS ONLY

                    "FREIGHT COLLECT"
SHIPMENT PER S.S. "COSCO ITALY" VOY NO. 071E   DISCHARGED AT LONG BEACH, CA
SAILING ON / ABOUT December 17, 2024. CARGO RECEIVED ON December 12, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **SHANGHAI**              **December 13, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br><br><br>As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                    V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics



**PO #**        **95578611**

| | |
|---|---|
| Date Created: | 08/19/2024 |
| Version: | 5 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 12/16/2024 |
| Cancel if not Shipped by: | 12/23/2024 |
| Must be Routed by: | 11/25/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | SHANGHAI    , CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

DURANT DC - #0879
DURANT DC, LLC
2306 ENTERPRISE DR
DURANT OK  74701-1964

Telephone:  580-931-2100        Fax:   580-931-2197

**BILL TO**

DURANT DC, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:   5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:       sales@hcicreations.com

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

| Vendor Signature | _____ |
|---|---|
| Signee's Name | _____ |
| Title | _____ |
| Date | _____ |

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 448 | 111,997.76 | 34,048.00 | 65.545 |

OFFICE-COPY



These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.    Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.    Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.    Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.    Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.    Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.    Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.    Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.    Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.    Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 210 | 810776681 | HELENA 4PK CUSHION | 0.00 | CN | 1 | | 224 | 110.00 | 39,587.52 | 02/03/2025 |
| 21012 | H24S0346K | PTIOSETTBL | | | 1 | | 224 | 66.73 | 78,400.00 | |
| 21012001 | NA | CLOSEOUT | | | | | | 350.00 | 49.506 | 479.90 |
| 1 | 481077668100 | | GRM | 14.884 | E1 | | | | | |
| 210 | 810776668 | HELENA SQUARE LAMIN | 0.00 | CN | 1 | | 224 | 42.00 | 13,948.48 | 02/03/2025 |
| 21012 | H24S7408P | PTIOSETTBL | | | 1 | | 224 | 20.27 | 33,597.76 | |
| 21012001 | NA | CLOSEOUT | | | | | | 149.99 | 58.484 | 246.99 |
| 2 | 481077666809 | | GRM | 3.456 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410250011

**Invoice Date.:** November 13, 2024

**Sold To:**  CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:**  2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB NINGBO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** WAN HAI A13 / E004

**Port of Loading:** NINGBO

**Ship on or about:** November 17, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** TXGU6524277

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95602141 | | 818  EA | 15.750/EA | 12,883.500 |
| **SKU No.:** 810775687 | | 409  CTNS | | |
| SLING GRAVITY LOUNGER | No. of Pallet: | | | |
| **HTS Code.:** 9401790011 | | | | |
| **Manufacturer Name & Address** YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD NO.77 YUGUI ROAD WEST CITY,YONGKANG JINHUA, ZHEJIANG 321300, CHINA | | | | |
| Total: | (409 CTNS) | 818 | | 12,883.500 |
| TOTAL (USD) DOLLARS : TWELVE THOUSAND EIGHT HUNDRED EIGHTY-THREE AND CENTS FIFTY ONLY. | | | | |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
TXGU6524277/HLK0629660/40H

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
TXGU6524277/HLK0629660/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95602141
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410250011

**Invoice Date.:** November 13, 2024

**Sold To:**  CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:**  2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB NINGBO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** WAN HAI A13 / E004

**Port of Loading:** NINGBO

**Ship on or about:** November 17, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** TXGU6524277

| Cargo Description | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|
| **P/O No.:** 95602141 | 818  EA | 6,053.20 | 7,198.40 | 66.000 |
| **SKU No.:** 810775687 | 409  CTNS | | | |
| SLING GRAVITY LOUNGER | **No. of Pallet:** | | | |
| **HTS Code.:** 9401790011 | | | | |
| **Total:** (409 CTNS) | 818 | 6,053.20 | 7,198.40 | 66.000 |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
TXGU6524277/HLK0629660/40H

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
TXGU6524277/HLK0629660/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95602141
SKU#
DEPT#210
MADE IN CHINA

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

# Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NBO-2400511**

| | |
|---|---|
| Maker/Supplier : **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202410250011** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC** **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **November 13, 2024** |
| Shipment From : **NINGBO**    To : **MONTGOMERY, AL** | Date of Receipt of Cargo **November 11, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES | | NOTIFY PARTY: GEODIS | | |

```
BIG LOTS                NOTIFY PARTY: GEODIS
STORES                               5101 S. BROAD STREET
                                     PHILADELPHIA, PA 19112-1404, U.S.A.
PO#95602141                          ATTN: ALENA LAMINA
SKU#                    ALSO NOTIFY: EDRAY 2020 LLC.
DEPT#210                             1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                        CHARLOTTE NC 28203 USA
                                     TEL: 704-593-6329
                                     EMAIL: DATAQUALITY@EDRAYCPL.COM

                        CY-CY

                        SHIPPER'S LOAD, COUNT AND SEAL
                        SAID TO CONTAIN
                        TXGU6524277        SEAL# HLK0629660        40H  DRY


                        OUTDOOR FURNITURE AS PER PO#95602141

                        SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL
                        SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                        MATERIAL




                        409 CARTONS                66.000 CBM    7,198.40 KGS
                        ================================================
                        TOTAL : FOUR HUNDRED NINE (409) CARTONS ONLY

                             "FREIGHT COLLECT"
SHIPMENT PER S.S. "WAN HAI A13" VOY NO. E004    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT November 17, 2024. CARGO RECEIVED ON November 11, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **NINGBO**    **November 18, 2024** |
|---|---|

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company has not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Place and date of issue.)
**YUSEN LOGISTICS**



As Agent

(Authorized Signature)    V1

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics



**PO #**        **95602141**

| | |
|---|---|
| Date Created | 09/06/2024 |
| Version: | 3 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/04/2024 |
| Cancel if not Shipped by: | 11/11/2024 |
| Must be Routed by: | 10/14/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | NINGBO        , CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633        Fax:  334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:  5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:    sales@hcicreations.com

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 2,454 | 122,675.46 | 38,650.50 | 45.969 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:    95602141

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official. For the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|---|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 210 | 810775687 | SLING GRAVITY LOUNG | 0.00 | CN | 2 | | 2,454 | 15.75 | 66,282.54 | 12/23/2024 |
| 21012 | HFTS695J | QUADCHAIRS | | | 2 | | 1,227 | 11.26 | 122,675.46 | |
| 21012018 | Real Living | | | | | | | 49.99 | 45.969 | 89.99 |
| 1 | 481077568707 | | GRM | 5.723 | E1 | | | | | |

# HOME CREATIONS INC

Seller reference

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202410280001

**Invoice Date.:** November 22, 2024

**Sold To:**  CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:**  50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB NINGBO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** WAN HAI A17 / E002

**Port of Loading:** NINGBO

**Ship on or about:** November 25, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** HAMU1681813, HAMU3104410, HLBU2796648

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95602150 | | 2,348  EA | 15.750/EA | 36,981.000 |
| **SKU No.:** 810775687 | | 1,174  CTNS | | |
| SLING GRAVITY LOUNGER | No. of Pallet: | | | |
| **HTS Code.:** 9401790011 | | | | |
| | **Manufacturer Name & Address** | | | |
| | YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD NO.77 YUGUI ROAD WEST CITY,YONGKANG JINHUA, ZHEJIANG 321300, CHINA | | | |
| **Total:** | **(1,174 CTNS)** | **2,348** | | **36,981.000** |
| **TOTAL (USD) DOLLARS : THIRTY-SIX THOUSAND NINE HUNDRED EIGHTY-ONE ONLY.** | | | | |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
HAMU1681813/HLK0725878/40H
HAMU3104410/HLK0725880/40H
HLBU2796648/HLK0651530/40H

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
HAMU1681813/HLK0725878/40H
HAMU3104410/HLK0725880/40H
HLBU2796648/HLK0651530/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95602150
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

Seller reference

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202410280001

**Sold To:** CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB NINGBO

**Country of Origin:** CHINA

**Vessel / Voyage:** WAN HAI A17 / E002

**Ship on or about:** November 25, 2024

**Invoice Date.:** November 22, 2024

**Delivery To:** 50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** NINGBO

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** HAMU1681813, HAMU3104410, HLBU2796648

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95602150 | | 2,348  EA | 17,375.20 | 20,662.40 | 189.000 |
| SKU No.: 810775687 | | 1,174  CTNS | | | |
| SLING GRAVITY LOUNGER | No. of Pallet: | | | | |
| HTS Code.: 9401790011 | | | | | |
| **Total:** | **(1,174 CTNS)** | **2,348** | **17,375.20** | **20,662.40** | **189.000** |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
HAMU1681813/HLK0725878/40H
HAMU3104410/HLK0725880/40H
HLBU2796648/HLK0651530/40H

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
HAMU1681813/HLK0725878/40H
HAMU3104410/HLK0725880/40H
HLBU2796648/HLK0651530/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95602150
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NBO-2400523**

| | |
|---|---|
| Maker/Supplier: **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202410280001** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC** **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated: **November 22, 2024** |
| Shipment From : **NINGBO**    To : **TREMONT, PA** | Date of Receipt of Cargo **November 22, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES | | NOTIFY PARTY: GEODIS | | |
| | | 5101 S. BROAD STREET | | |
| PO#95602150 | | PHILADELPHIA, PA 19112-1404, U.S.A. | | |
| SKU# | | ATTN: ALENA LAMINA | | |
| DEPT#210 | | ALSO NOTIFY: EDRAY 2020 LLC. | | |
| MADE IN CHINA | | 1300 SOUTH MINT STREET SUITE 200 | | |
| | | CHARLOTTE NC 28203 USA | | |
| | | TEL: 704-593-6329 | | |
| | | EMAIL: DATAQUALITY@EDRAYCPL.COM | | |
| | | CY-CY | | |
| | | SHIPPER'S LOAD, COUNT AND SEAL | | |
| | | SAID TO CONTAIN | | |
| | | HAMU1681813      SEAL# HLK0725878      40H  DRY | | |
| | | HAMU3104410      SEAL# HLK0725880      40H  DRY | | |
| | | HLBU2796648      SEAL# HLK0651530      40H  DRY | | |
| | | OUTDOOR FURNITURE AS PER PO#95602150 | | |
| | | SHIP TO CODE & LOCATION : 00874-TREMONT, PA | | |
| | | SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | **1,174 CARTONS** | | **189.000 CBM** | **20,662.40 KGS** |

```
=========================================================
TOTAL : ONE THOUSAND ONE HUNDRED SEVENTY-FOUR (1,174) CARTONS
ONLY
```

"FREIGHT COLLECT"
SHIPMENT PER S.S. "WAN HAI A17" VOY NO. E002    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT November 25, 2024. CARGO RECEIVED ON November 22, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | **NINGBO**    **November 22, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS**  As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)    V1 |



**PO #**  **95602150**

| | |
|---|---|
| Date Created: | 09/06/2024 |
| Version: | 3 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/11/2024 |
| Cancel if not Shipped by: | 11/18/2024 |
| Must be Routed by: | 10/21/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | NINGBO        ,  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:   570-695-2862

---

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

---

Purchase From Vendor:   5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA
Contact:    HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:     sales@hcicreations.com

---

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

---

| | Units | Retail | Vendor Cost | IMU |
|---|---|---|---|---|
| | 4,808 | 240,351.92 | 75,726.00 | 45.969 |

Vendor Signature _____

Signee's Name  _____

Title   _____

Date   _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95602150

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|--------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 210 | 810775687 | SLING GRAVITY LOUNG | 0.00 | CN | 2 | | 4,808 | 15.75 | 129,864.08 | 12/23/2024 |
|-----|-----------|---------------------|------|-----|---|--|-------|-------|------------|------------|
| 21012 | HFTS695J | QUADCHAIRS | | | 2 | | 2,404 | 11.26 | 240,351.92 | |
| 21012018 | Real Living | | | | | | | 49.99 | 45.969 | 89.99 |
| 1 | 481077568707 | | GRM | 5.723 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

---

# INVOICE

---

**Invoice No.:** S202410280005

**Sold To:** CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB NINGBO

**Country of Origin:** CHINA

**Vessel / Voyage:** COSCO SHIPPING LOTUS / 026E

**Ship on or about:** November 19, 2024

**Invoice Date:** November 13, 2024

**Delivery To:** 50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** NINGBO

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** CSNU6083933, CSNU6164362

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95602142 | | 1,634   EA | 15.750/EA | 25,735.500 |
| **SKU No.:** 810775687 | | 817   CTNS | | |
| SLING GRAVITY LOUNGER | No. of Pallet: | | | |
| **HTS Code.:** 9401790011 | | | | |
| | **Manufacturer Name & Address** | | | |
| | YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD NO.77 YUGUI ROAD WEST CITY,YONGKANG JINHUA, ZHEJIANG 321300, CHINA | | | |
| Total:   (817 CTNS) | | 1,634 | | 25,735.500 |
| **TOTAL (USD) DOLLARS : TWENTY-FIVE THOUSAND SEVEN HUNDRED THIRTY-FIVE AND CENTS FIFTY ONLY.** | | | | |
| | | | | |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
CSNU6083933/OOLJGK6304/40H
CSNU6164362/OOLJGK6305/40H

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
CSNU6083933/OOLJGK6304/40H
CSNU6164362/OOLJGK6305/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95602142
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

Seller reference

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

---

# PACKING LIST

---

**Invoice No.:** S202410280005

**Invoice Date.:** November 13, 2024

**Sold To:**  CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:**  50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB NINGBO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO SHIPPING LOTUS / 026E

**Port of Loading:** NINGBO

**Ship on or about:** November 19, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** CSNU6083933, CSNU6164362

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95602142 | | 1,634  EA | 12,091.60 | 14,379.20 | 132.000 |
| SKU No.: 810775687 | | 817  CTNS | | | |
| SLING GRAVITY LOUNGER | No. of Pallet: | | | | |
| HTS Code.: 9401790011 | | | | | |
| Total: | (817 CTNS) | 1,634 | 12,091.60 | 14,379.20 | 132.000 |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
CSNU6083933/OOLJGK6304/40H
CSNU6164362/OOLJGK6305/40H

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
CSNU6083933/OOLJGK6304/40H
CSNU6164362/OOLJGK6305/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95602142
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-NBO-2400515**

| | |
|---|---|
| Maker/Supplier : **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202410280005** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC** **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated: **November 13, 2024** |
| Shipment From : **NINGBO**    To : **TREMONT, PA** | Date of Receipt of Cargo **November 11, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES | | NOTIFY PARTY: GEODIS | | |

**BIG LOTS**
**STORES**

**PO#95602142**
**SKU#**
**DEPT#210**
**MADE IN CHINA**

```
                          NOTIFY PARTY: GEODIS
                                  5101 S. BROAD STREET
                                  PHILADELPHIA, PA 19112-1404, U.S.A.
                                  ATTN: ALENA LAMINA
                          ALSO NOTIFY: EDRAY 2020 LLC.
                                  1300 SOUTH MINT STREET SUITE 200
                                  CHARLOTTE NC 28203 USA
                                  TEL: 704-593-6329
                                  EMAIL: DATAQUALITY@EDRAYCPL.COM

                          CY-CY

                          SHIPPER'S LOAD, COUNT AND SEAL
                          SAID TO CONTAIN
                          CSNU6083933            SEAL# OOLJGK6304        40H  DRY
                          CSNU6164362            SEAL# OOLJGK6305        40H  DRY


                          OUTDOOR FURNITURE AS PER PO#95602142

                          SHIP TO CODE & LOCATION : 00874-TREMONT, PA
                          SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                          MATERIAL
```

|  | 817 CARTONS | | 132.000 CBM | 14,379.20 KGS |

```
                          ====================================================
                          TOTAL : EIGHT HUNDRED SEVENTEEN (817) CARTONS ONLY

                               "FREIGHT COLLECT"
SHIPMENT PER S.S. "COSCO SHIPPING LOTUS" VOY NO. 026E    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT November 19, 2024. CARGO RECEIVED ON November 11, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **NINGBO**    **November 18, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS**  As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)    V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics



**PO #**  **95602142**

| | |
|---|---|
| Date Created | 09/06/2024 |
| Version: | 3 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/04/2024 |
| Cancel if not Shipped by: | 11/11/2024 |
| Must be Routed by: | 10/14/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | NINGBO          , CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:  570-695-2862

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

Purchase From Vendor:  5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:      sales@hcicreations.com

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

Vendor Signature _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 3,172 | 158,568.28 | 49,959.00 | 45.969 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.	Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.	Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.	Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.	Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.	Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.	Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.	Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.	Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.	Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



OFFICE-COPY Case 24-11967-JTD Doc 1359-3 Filed 12/13/24 Page 261 of 346 **IMPORTANT Terms and Conditions** PO#: 95602142

Page 3 of 6

title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|--------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| | | | | | | | | | | |
|------|---------|---------------------|------|-------------------|--------|--|--------------|------|-----------|---------------|
| 210 | 810775687 | SLING GRAVITY LOUNG | 0.00 | CN | 2 | | 3,172 | 15.75 | 85,675.72 | 12/16/2024 |
| 21012 | HFTS695J | QUADCHAIRS | | | 2 | | 1,586 | 11.26 | 158,568.28 | |
| 21012018 | Real Living | | | | | | | 49.99 | 45.969 | 89.99 |
| 1 | 481077568707 | | GRM | 5.723 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202411060013

**Invoice Date.:** November 12, 2024

**Sold To:** CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:** 50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB QINGDAO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO SHIPPING LOTUS / 026E

**Port of Loading:** QINGDAO

**Ship on or about:** November 16, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** OOLU9253590

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95575146 | | 84    EA | 220.000/EA | 18,480.000 |
| **SKU No.:** 810776600 | | 84    CTNS | | |
| MATARA CORNER SOFA DINING SET | No. of Pallet: | | | |
| **HTS Code.:** 9401790050 | | | | |
| | **Manufacturer Name & Address** | | | |
| | JIANGSU HONGBO HOME GOODS CO., LTD JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY HEZE, SHANDONG 274601, CHINA | | | |
| | **Total:**    (84 CTNS) | 84 | | 18,480.000 |
| **TOTAL (USD) DOLLARS : EIGHTEEN THOUSAND FOUR HUNDRED EIGHTY ONLY.** | | | | |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
OOLU9253590/OOLJVZ9253/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
OOLU9253590/OOLJVZ9253/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95575146
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202411060013

**Invoice Date.:** November 12, 2024

**Sold To:**  CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:**  50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB QINGDAO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** COSCO SHIPPING LOTUS / 026E

**Port of Loading:** QINGDAO

**Ship on or about:** November 16, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** OOLU9253590

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95575146 | | 84  EA | 5,208.00 | 6,006.00 | 67.000 |
| SKU No.: 810776600 | | 84  CTNS | | | |
| MATARA CORNER SOFA DINING SET | No. of Pallet: | | | | |
| HTS Code.: 9401790050 | | | | | |
| Total: | (84 CTNS) | 84 | 5,208.00 | 6,006.00 | 67.000 |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
OOLU9253590/OOLJVZ9253/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
OOLU9253590/OOLJVZ9253/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95575146
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics    Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-TAO-2400543**

| | |
|---|---|
| | Maker/Supplier's INVOICE No.<br>**S202411060013** |
| Maker/Supplier :    **HOME CREATIONS INC** | |
| Buyer/Consignee :    **CLOSEOUT DISTRIBUTION, LLC**<br>**50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated:    **November 12, 2024** |
| Shipment From :    **QINGDAO**         To :    **TREMONT, PA** | Date of Receipt of Cargo<br>**November 11, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95575146<br>SKU#<br>DEPT#210<br>MADE IN CHINA | | NOTIFY PARTY: GEODIS<br>              5101 S. BROAD STREET<br>              PHILADELPHIA, PA 19112-1404, U.S.A.<br>              ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>              1300 SOUTH MINT STREET SUITE 200<br>              CHARLOTTE NC 28203 USA<br>              TEL: 704-593-6329<br>              EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>              CY-CY<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>OOLU9253590         SEAL# OOLJVZ9253         40H  DRY<br><br><br>OUTDOOR FURNITURE AS PER PO#95575146<br><br>SHIP TO CODE & LOCATION : 00874-TREMONT, PA<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 84 CARTONS | | 67.000 CBM | 6,006.00 KGS |

==========================================================
TOTAL : EIGHTY-FOUR (84) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "COSCO SHIPPING LOTUS" VOY NO. 026E    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT November 16, 2024. CARGO RECEIVED ON November 11, 2024.

| | |
|---|---|
| **THIS IS NOT A DOCUMENT OF TITLE** | **QINGDAO**                    **November 26, 2024** |
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br><br><br>As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)         V1 |



**PO #**          **95575146**

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created: | 08/16/2024 |
| Version: | 5 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 12/09/2024 |
| Cancel if not Shipped by: | 12/16/2024 |
| Must be Routed by: | 11/18/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | QINGDAO          ,  CN |

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848          Fax:  570-695-2862

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800          Fax:  614-278-6871

Purchase From Vendor:  5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:      HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:      sales@hcicreations.com

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 924 | 646,790.76 | 203,280.00 | 49.906 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1. Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2. Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3. Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4. Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5. Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6. Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7. Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8. Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9. Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade, names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 210 | 810776600 | MATARA CORNER SOFA | 0.00 | CN | 1 | | 924 | 220.00 | 324,000.60 | 01/20/2025 |
| 21012 | SH24S4930X | Resin Wick | | | 1 | | 924 | 130.65 | 646,790.76 | |
| 21012005 | NA | CLOSEOUT | | 0.000 | | | | 699.99 | 49.906 | 997.49 |
| 1 | 481077660005 | | GRM | 28.570 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

---

# INVOICE

---

**Invoice No.:** S202411060015

**Sold To:**  CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB QINGDAO

**Country of Origin:** CHINA

**Vessel / Voyage:** UMM SALAL / 040E

**Ship on or about:** November 20, 2024

**Invoice Date:** November 15, 2024

**Delivery To:**  2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** QINGDAO

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** TGBU6352299

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95575145 | | 84    EA | 220.000/EA | 18,480.000 |
| **SKU No.:** 810776600 | | 84    CTNS | | |
| MATARA CORNER SOFA DINING SET | No. of Pallet: | | | |
| **HTS Code.:** 9401790050 | | | | |
| **Manufacturer Name & Address**<br><br>JIANGSU HONGBO HOME GOODS CO., LTD<br>JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY<br>HEZE, SHANDONG<br>274601, CHINA | | | | |
| Total: | (84 CTNS) | 84 | | 18,480.000 |
| **TOTAL (USD) DOLLARS : EIGHTEEN THOUSAND FOUR HUNDRED EIGHTY ONLY.** | | | | |
| | | | | |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
TGBU6352299/24H1123052/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
TGBU6352299/24H1123052/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95575145
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202411060015

**Invoice Date.:** November 15, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB QINGDAO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** UMM SALAL / 040E

**Port of Loading:** QINGDAO

**Ship on or about:** November 20, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** TGBU6352299

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95575145 | | 84  EA | 5,208.00 | 6,006.00 | 67.000 |
| SKU No.: 810776600 | | 84  CTNS | | | |
| MATARA CORNER SOFA DINING SET | No. of Pallet: | | | | |
| HTS Code.: 9401790050 | | | | | |
| **Total:** | **(84 CTNS)** | **84** | **5,208.00** | **6,006.00** | **67.000** |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
TGBU6352299/24H1123052/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
TGBU6352299/24H1123052/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95575145
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-TAO-2400550**

| | |
|---|---|
| Maker/Supplier : **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202411060015** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC** **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **November 15, 2024** |
| Shipment From : **QINGDAO** To : **MONTGOMERY, AL** | Date of Receipt of Cargo **November 15, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **BIG LOTS STORES** **PO#95575145** **SKU#** **DEPT#210** **MADE IN CHINA** | | NOTIFY PARTY: GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA ALSO NOTIFY: EDRAY 2020 LLC. 1300 SOUTH MINT STREET SUITE 200 CHARLOTTE NC 28203 USA TEL: 704-593-6329 EMAIL: DATAQUALITY@EDRAYCPL.COM CY-CY SHIPPER'S LOAD, COUNT AND SEAL SAID TO CONTAIN TGBU6352299    SEAL# 24H1125524    40H  DRY OUTDOOR FURNITURE AS PER PO#95575145 SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | **84 CARTONS** | | **67.000 CBM** | **6,006.00 KGS** |

==========================================================
TOTAL : EIGHTY-FOUR (84) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "UMM SALAL" VOY NO. 040E    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT November 21, 2024. CARGO RECEIVED ON November 15, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | QINGDAO November 26, 2024 |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Place and date of issue.) **YUSEN LOGISTICS**  As Agent (Authorized Signature)    V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics



**PO #**  **95575145**

| | |
|---|---|
| Date Created | 08/16/2024 |
| Version: | 4 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 12/02/2024 |
| Cancel if not Shipped by: | 12/09/2024 |
| Must be Routed by: | 11/11/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | QINGDAO     ,  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633        Fax:  334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:  5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA
Contact:    HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:      sales@hcicreations.com

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 756 | 529,192.44 | 166,320.00 | 49.906 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms").  The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party.  "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1. Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2. Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC").  A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3. Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4. Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5. Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6. Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7. Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8. Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9. Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or








securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 210 | 810776600 | MATARA CORNER SOFA | 0.00 | CN | 1 | | 756 | 220.00 | 265,091.40 | 01/20/2025 |
| 21012 | SH24S4930X | Resin Wick | | | 1 | | 756 | 130.65 | 529,192.44 | |
| 21012005 | NA | CLOSEOUT | | 0.000 | | | | 699.99 | 49.906 | 997.49 |
| 1 | 481077660005 | | GRM | 28.570 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

---

# INVOICE

---

**Invoice No.:** S202411060016

**Sold To:**   CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB QINGDAO

**Country of Origin:** CHINA

**Vessel / Voyage:** ZIM MOUNT RAINIER / 006E

**Ship on or about:** November 18, 2024

**Invoice Date.:** November 13, 2024

**Delivery To:**   2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** QINGDAO

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** TCKU7084200

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95575145 | | 84    EA | 220.000/EA | 18,480.000 |
| **SKU No.:** 810776600 | | 84    CTNS | | |
| MATARA CORNER SOFA DINING SET | **No. of Pallet:** | | | |
| **HTS Code.:** 9401790050 | | | | |
| | **Manufacturer Name & Address** | | | |
| | JIANGSU HONGBO HOME GOODS CO., LTD JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY HEZE, SHANDONG 274601, CHINA | | | |
| **Total:** | **(84 CTNS)** | **84** | | **18,480.000** |
| TOTAL (USD) DOLLARS : EIGHTEEN THOUSAND FOUR HUNDRED EIGHTY ONLY. | | | | |
| | | | | |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
TCKU7084200/CN9403997/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
TCKU7084200/CN9403997/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95575145
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

Seller reference

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202411060016

**Sold To:**  CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB QINGDAO

**Country of Origin:** CHINA

**Vessel / Voyage:** ZIM MOUNT RAINIER / 006E

**Ship on or about:** November 18, 2024

**Invoice Date.:** November 13, 2024

**Delivery To:**  2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** QINGDAO

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** TCKU7084200

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95575145 | | 84  EA | 5,208.00 | 6,006.00 | 67.000 |
| SKU No.: 810776600 | | 84  CTNS | | | |
| MATARA CORNER SOFA DINING SET | No. of Pallet: | | | | |
| HTS Code.: 9401790050 | | | | | |
| **Total:** | **(84 CTNS)** | **84** | **5,208.00** | **6,006.00** | **67.000** |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
TCKU7084200/CN9403997/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
TCKU7084200/CN9403997/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95575145
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

**FORWARDER'S CARGO RECEIPT No.**    **CNS-TAO-2400549**

|  |  |
|---|---|
| Maker/Supplier : **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202411060016** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC** **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **November 13, 2024** |
| Shipment From : **QINGDAO**       To : **MONTGOMERY, AL** | Date of Receipt of Cargo **November 13, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| **BIG LOTS STORES** **PO#95575145** **SKU#** **DEPT#210** **MADE IN CHINA** | | NOTIFY PARTY: GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA ALSO NOTIFY: EDRAY 2020 LLC. 1300 SOUTH MINT STREET SUITE 200 CHARLOTTE NC 28203 USA TEL: 704-593-6329 EMAIL: DATAQUALITY@EDRAYCPL.COM CY-CY SHIPPER'S LOAD, COUNT AND SEAL SAID TO CONTAIN TCKU7084200    SEAL# CN9403997    40H  DRY OUTDOOR FURNITURE AS PER PO#95575145 SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | **84 CARTONS** | | **67.000 CBM** | **6,006.00 KGS** |

TOTAL : EIGHTY-FOUR (84) CARTONS ONLY

"FREIGHT COLLECT"

SHIPMENT PER S.S. "ZIM MOUNT RAINIER" VOY NO. 006E    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT November 18, 2024. CARGO RECEIVED ON November 13, 2024.

| | |
|---|---|
| **THIS IS NOT A DOCUMENT OF TITLE** | **QINGDAO**                    **November 26, 2024** |
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS**  |
| **No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: 1** (Terms and conditions are to be continued to the reverse side hereof.) | As Agent (Authorized Signature)                V1 |



**PO #**  **95575145**

| | |
|---|---|
| Date Created: | 08/16/2024 |
| Version: | 4 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 12/02/2024 |
| Cancel if not Shipped by: | 12/09/2024 |
| Must be Routed by: | 11/11/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | QINGDAO    ,  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633        Fax:  334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:  5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:    sales@hcicreations.com

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

Vendor Signature _____

Signee's Name   _____

Title   _____

Date   _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 756 | 529,192.44 | 166,320.00 | 49.906 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:    95575145

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.    Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.    Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.    Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.    Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.    Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.    Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.    Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.    Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.    Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 210 | 810776600 | MATARA CORNER SOFA | 0.00 | CN | 1 | | 756 | 220.00 | 265,091.40 | 01/20/2025 |
| 21012 | SH24S4930X | Resin Wick | | | 1 | | 756 | 130.65 | 529,192.44 | |
| 21012005 | NA | CLOSEOUT | | 0.000 | | | | 699.99 | 49.906 | 997.49 |
| 1 | 481077660005 | | GRM | 28.570 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202411060017

**Sold To:**     CSC DISTRIBUTION, LLC
                 2855 SELMA HIGHWAY
                 MONTGOMERY, AL 36108
                 USA

**Shipment Terms:** FOB QINGDAO

**Country of Origin:** CHINA

**Vessel / Voyage:** AIN SNAN EXPRESS / 0034E

**Ship on or about:** November 15, 2024

**Invoice Date.:** November 12, 2024

**Delivery To:**    2855 SELMA HIGHWAY
                    MONTGOMERY, AL 36108
                    USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** QINGDAO

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** KOCU4251607

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95575145 | | 14    EA | 220.000/EA | 3,080.000 |
| **SKU No.:** 810776600 | | 14    CTNS | | |
| MATARA CORNER SOFA DINING SET | No. of Pallet: | | | |
| **HTS Code.:** 9401790050 | | | | |
| | | | | |
| **P/O No.:** 95637664 | | 288    EA | 44.500/EA | 12,816.000 |
| **SKU No.:** 810792383 | | 288    CTNS | | |
| 3PC ROPE WICKER FOL | No. of Pallet: | | | |
| **HTS Code.:** 9401790025 | | | | |
| | **Manufacturer Name & Address** | | | |
| | JIANGSU HONGBO HOME GOODS CO., LTD JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY HEZE, SHANDONG 274601, CHINA | | | |
| **Total:** | (302 CTNS) | 302 | | 15,896.000 |
| TOTAL (USD) DOLLARS : FIFTEEN THOUSAND EIGHT HUNDRED NINETY-SIX ONLY. | | | | |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
KOCU4251607/24H0631368/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
KOCU4251607/24H0631368/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95575145

SKU#
DEPT#210
MADE IN CHINA
BIG LOTS
STORES

PO#95637664
SKU#
DEPT#210
MADE IN CHINA

**HOME CREATIONS INC**

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202411060017

**Invoice Date.:** November 12, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB QINGDAO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** AIN SNAN EXPRESS / 0034E

**Port of Loading:** QINGDAO

**Ship on or about:** November 15, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** KOCU4251607

| Cargo Description | | Quantity (Unit) | | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|---|
| **P/O No.:** 95575145 | | 14 | EA | 868.00 | 1,001.00 | 11.000 |
| **SKU No.:** 810776600 | | 14 | CTNS | | | |
| MATARA CORNER SOFA DINING SET | No. of Pallet: | | | | | |
| **HTS Code.:** 9401790050 | | | | | | |
| **P/O No.:** 95637664 | | 288 | EA | 4,608.00 | 5,644.80 | 45.000 |
| **SKU No.:** 810792383 | | 288 | CTNS | | | |
| 3PC ROPE WICKER FOL | No. of Pallet: | | | | | |
| **HTS Code.:** 9401790025 | | | | | | |
| **Total:** | **(302 CTNS)** | 302 | | 5,476.00 | 6,645.80 | 56.000 |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
KOCU4251607/24H0631368/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
KOCU4251607/24H0631368/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95575145
SKU#
DEPT#210
MADE IN CHINA
BIG LOTS
STORES

PO#95637664
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-TAO-2400541**

| | |
|---|---|
| | Maker/Supplier's INVOICE No.<br>**S202411060017** |
| Maker/Supplier : **HOME CREATIONS INC** | |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC**<br>**2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **November 12, 2024** |
| Shipment From : **QINGDAO**          To : **MONTGOMERY, AL** | Date of Receipt of Cargo<br>**November 08, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS<br>STORES<br><br>PO#95575145<br>SKU#<br>DEPT#210<br>MADE IN CHINA<br><br>BIG LOTS<br>STORES<br><br>PO#95637664<br>SKU#<br>DEPT#210<br>MADE IN CHINA | NOTIFY PARTY: GEODIS<br>        5101 S. BROAD STREET<br>        PHILADELPHIA, PA 19112-1404, U.S.A.<br>        ATTN: ALENA LAMINA<br>ALSO NOTIFY: EDRAY 2020 LLC.<br>        1300 SOUTH MINT STREET SUITE 200<br>        CHARLOTTE NC 28203 USA<br>        TEL: 704-593-6329<br>        EMAIL: DATAQUALITY@EDRAYCPL.COM<br><br>CY-CY<br><br>SHIPPER'S LOAD, COUNT AND SEAL<br>SAID TO CONTAIN<br>KOCU4251607        SEAL# 24H0631368        40H  DRY<br><br><br>OUTDOOR FURNITURE AS PER PO#95575145<br><br>OUTDOOR FURNITURE AS PER PO#95637664<br><br>SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL<br>SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING<br>MATERIAL | | |
| | 302 CARTONS | | 56.000 CBM | 6,645.80 KGS |

===================================================================
TOTAL : THREE HUNDRED TWO (302) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "AIN SNAN EXPRESS" VOY NO. 0034E    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT November 16, 2024. CARGO RECEIVED ON November 8, 2024.

---

| THIS IS NOT A DOCUMENT OF TITLE | QINGDAO          November 28, 2024 |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.<br>No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br><br><br>                                        As Agent<br>(Authorized Signature)                    V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics



**PO #**          **95575145**

| | |
|---|---|
| Date Created | 08/16/2024 |
| Version: | 4 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 12/02/2024 |
| Cancel if not Shipped by: | 12/09/2024 |
| Must be Routed by: | 11/11/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | QINGDAO    ,  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633        Fax:  334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800          Fax:  614-278-6871

**Purchase From Vendor:   5005944**

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA
Contact:     HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:       sales@hcicreations.com

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 756 | 529,192.44 | 166,320.00 | 49.906 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses'), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI') signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner, without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute'), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy'). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



# IMPORTANT Terms and Conditions

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 210 | 810776600 | MATARA CORNER SOFA | 0.00 | CN | 1 | | 756 | 220.00 | 265,091.40 | 01/20/2025 |
| 21012 | SH24S4930X | Resin Wick | | | 1 | | 756 | 130.65 | 529,192.44 | |
| 21012005 | NA | CLOSEOUT | | 0.000 | | | | 699.99 | 49.906 | 997.49 |
| 1 | 481077660005 | | GRM | 28.570 | E1 | | | | | |



**PO #**          **95637664**

| | |
|---|---|
| Date Created: | 10/11/2024 |
| Version: | 1 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/11/2024 |
| Cancel if not Shipped by: | 11/18/2024 |
| Must be Routed by: | 10/21/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | QINGDAO          ,  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633        Fax:  334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:   5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:     sales@hcicreations.com

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 288 | 37,437.12 | 12,816.00 | 45.996 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 210 | 810792383 | 3PC ROPE WICKER FOL | 0.00 | CN | 1 | | 288 | 44.50 | 20,217.60 | 12/30/2024 |
|---|---|---|---|---|---|---|---|---|---|---|
| 21012 | HSVS35FE | BISTROSETS | | | 1 | | 288 | 25.70 | 37,437.12 | |
| 21012004 | Real Living | | | | | | | 129.99 | 45.996 | 173.53 |
| 1 | 481079238301 | | GRM | 5.470 | E1 | | | | | |

**HOME CREATIONS INC**

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202411120001

**Invoice Date:** November 19, 2024

**Sold To:**    CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:**    2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB NINGBO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** AIN SNAN EXPRESS / 034E

**Port of Loading:** NINGBO

**Ship on or about:** November 20, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** KOCU4002435

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95602141 | | 818    EA | 15.750/EA | 12,883.500 |
| **SKU No.:** 810775687 | | 409    CTNS | | |
| SLING GRAVITY LOUNGER | **No. of Pallet:** | | | |
| **HTS Code.:** 9401790011 | | | | |
| | **Manufacturer Name & Address** | | | |
| | YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD NO.77 YUGUI ROAD WEST CITY,YONGKANG JINHUA, ZHEJIANG 321300, CHINA | | | |
| **Total:** | **(409 CTNS)** | **818** | | **12,883.500** |
| TOTAL (USD) DOLLARS : TWELVE THOUSAND EIGHT HUNDRED EIGHTY-THREE AND CENTS FIFTY ONLY. | | | | |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
KOCU4002435/231639861/40H

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
KOCU4002435/231639861/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95602141
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202411120001

**Invoice Date.:** November 19, 2024

**Sold To:**  CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:**  2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB NINGBO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** AIN SNAN EXPRESS / 034E

**Port of Loading:** NINGBO

**Ship on or about:** November 20, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** KOCU4002435

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95602141 | | 818   EA | 6,053.20 | 7,198.40 | 66.000 |
| SKU No.: 810775687 | | 409   CTNS | | | |
| SLING GRAVITY LOUNGER | No. of Pallet: | | | | |
| HTS Code.: 9401790011 | | | | | |
| **Total:** | **(409 CTNS)** | **818** | **6,053.20** | **7,198.40** | **66.000** |

**Consolidator(Full Name & Address)**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
KOCU4002435/231639861/40H

**Container Stuffing Location(Full Name & Address )**
YONGKANG YUXIANG ALUMINUM INDUSTRY CO.,LTD
NO.77 YUGUI ROAD WEST CITY,YONGKANG
JINHUA , ZHEJIANG
321300 CHINA
Container No./Seal/Size:
KOCU4002435/231639861/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95602141
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

**FORWARDER'S CARGO RECEIPT No.**     **CNS-NBO-2400517**

| | |
|---|---|
| Maker/Supplier : **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202411120001** |
| Buyer/Consignee : **CSC DISTRIBUTION, LLC** **2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA** | Dated: **November 19, 2024** |
| Shipment From : **NINGBO**     To : **MONTGOMERY, AL** | Date of Receipt of Cargo **November 19, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES | NOTIFY PARTY: GEODIS | | | |

```
BIG LOTS                    NOTIFY PARTY: GEODIS
STORES                                    5101 S. BROAD STREET
                                          PHILADELPHIA, PA 19112-1404, U.S.A.
PO#95602141                               ATTN: ALENA LAMINA
SKU#                        ALSO NOTIFY: EDRAY 2020 LLC.
DEPT#210                                  1300 SOUTH MINT STREET SUITE 200
MADE IN CHINA                             CHARLOTTE NC 28203 USA
                                          TEL: 704-593-6329
                                          EMAIL: DATAQUALITY@EDRAYCPL.COM

                            CY-CY

                            SHIPPER'S LOAD, COUNT AND SEAL
                            SAID TO CONTAIN
                            KOCU4002435        SEAL# 231639861        40H  DRY


                            OUTDOOR FURNITURE AS PER PO#95602141

                            SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL
                            SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                            MATERIAL




                            409 CARTONS               66.000 CBM    7,198.40 KGS
                            =====================================================
                            TOTAL : FOUR HUNDRED NINE (409) CARTONS ONLY

                                "FREIGHT COLLECT"
SHIPMENT PER S.S. "AIN SNAN EXPRESS" VOY NO. 034E    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT November 20, 2024. CARGO RECEIVED ON November 19, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | **NINGBO**     **November 19, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.   No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Place and date of issue.) **YUSEN LOGISTICS**  As Agent _____ (Authorized Signature)     V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics



**PO #**          **95602141**

| | |
|---|---|
| Date Created: | 09/06/2024 |
| Version: | 3 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/04/2024 |
| Cancel if not Shipped by: | 11/11/2024 |
| Must be Routed by: | 10/14/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | NINGBO          , CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633        Fax:  334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:  5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:      sales@hcicreations.com

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 2,454 | 122,675.46 | 38,650.50 | 45.969 |

OFFICE-COPY



# IMPORTANT Terms and Conditions

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms").  The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party.  "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and related in value and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC").  A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95602141

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|--------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 210 | 810775687 | SLING GRAVITY LOUNG | 0.00 | CN | 2 | | 2,454 | 15.75 | 66,282.54 | 12/23/2024 |
| 21012 | HFTS695J | QUADCHAIRS | | | 2 | | 1,227 | 11.26 | 122,675.46 | |
| 21012018 | Real Living | | | | | | | 49.99 | 45.969 | 89.99 |
| 1 | 481077568707 | | GRM | 5.723 | E1 | | | | | |

**HOME CREATIONS INC**                                    Seller reference

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202411150001                    **Invoice Date.:** December 02, 2024

**Sold To:**    CSC DISTRIBUTION, LLC          **Delivery To:**    2855 SELMA HIGHWAY
           2855 SELMA HIGHWAY                            MONTGOMERY, AL 36108
           MONTGOMERY, AL 36108                         USA
           USA

**Shipment Terms:** FOB QINGDAO                    **Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA                       **L/C Number:** TT

**Vessel / Voyage:** UNAYZAH EXPRESS / 034E        **Port of Loading:** QINGDAO

**Ship on or about:** December 04, 2024            **Port of Entry:** SAVANNAH, GA

                                                 **Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** FDCU0358397, NYKU4880876, ONEU1595213, ONEU1914413, TCLU8636018

| Cargo Description | | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| **P/O No.:** 95575145 | | 252  EA | 220.000/EA | 55,440.000 |
| **SKU No.:** 810776600 | | 252  CTNS | | |
| MATARA CORNER SOFA | No. of Pallet: | | | |
| **HTS Code.:** 9401790050 | | | | |
| | | | | |
| **P/O No.:** 95575145 | | 70  EA | 220.000/EA | 15,400.000 |
| **SKU No.:** 810776600 | | 70  CTNS | | |
| MATARA CORNER SOFA | No. of Pallet: | | | |
| **HTS Code.:** 9401790050 | | | | |
| | | | | |
| **P/O No.:** 95575145 | | 84  EA | 220.000/EA | 18,480.000 |
| **SKU No.:** 810776600 | | 84  CTNS | | |
| MATARA CORNER SOFA DINING SET | No. of Pallet: | | | |
| **HTS Code.:** 9401790050 | | | | |
| | Manufacturer Name & Address | | | |
| | JIANGSU HONGBO HOME GOODS CO., LTD JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY HEZE, SHANDONG 274601, CHINA | | | |
| **Total:** | **(406 CTNS)** | **406** | | **89,320.000** |
| TOTAL (USD) DOLLARS : EIGHTY-NINE THOUSAND THREE HUNDRED TWENTY ONLY. | | | | |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
FDCU0358397/CN39448AR/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
FDCU0358397/CN39448AR/40H

NYKU4880876/CN39441AR/40H
ONEU1595213/CN39443AR/40H
ONEU1914413/CN32925AR/40H
TCLU8636018/CN39357AR/40H

Case 1:24-11967-JKS   Doc 1859-2   Filed 02/28/25   Page 317 of 346

NYKU4880876/CN39441AR/40H
ONEU1595213/CN39443AR/40H
ONEU1914413/CN32925AR/40H
TCLU8636018/CN39357AR/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95575145
SKU#
DEPT#210
MADE IN CHINA
BIG LOTS
STORES

PO#95575145
SKU#
DEPT#210
MADE IN CHINA
BIG LOTS
STORES

PO#95575145
SKU#
DEPT#210
MADE IN CHINA
BIG LOTS
STORES

PO#95575145
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

---

# PACKING LIST

---

**Invoice No.:** S202411150001

**Invoice Date.:** December 02, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB QINGDAO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** UNAYZAH EXPRESS / 034E

**Port of Loading:** QINGDAO

**Ship on or about:** December 04, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** FDCU0358397, NYKU4880876, ONEU1595213, ONEU1914413, TCLU8636018

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95575145 | | 252 EA | 15,624.00 | 18,018.00 | 201.000 |
| **SKU No.:** 810776600 | | 252 CTNS | | | |
| MATARA CORNER SOFA | No. of Pallet: | | | | |
| **HTS Code.:** 9401790050 | | | | | |
| **P/O No.:** 95575145 | | 70 EA | 4,340.00 | 5,005.00 | 56.000 |
| **SKU No.:** 810776600 | | 70 CTNS | | | |
| MATARA CORNER SOFA | No. of Pallet: | | | | |
| **HTS Code.:** 9401790050 | | | | | |
| **P/O No.:** 95575145 | | 84 EA | 5,208.00 | 6,006.00 | 67.000 |
| **SKU No.:** 810776600 | | 84 CTNS | | | |
| MATARA CORNER SOFA DINING SET | No. of Pallet: | | | | |
| **HTS Code.:** 9401790050 | | | | | |
| Total: | (406 CTNS) | 406 | 25,172.00 | 29,029.00 | 324.000 |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
FDCU0358397/CN39448AR/40H
NYKU4880876/CN39441AR/40H
ONEU1595213/CN39443AR/40H
ONEU1914413/CN32925AR/40H
TCLU8636018/CN39357AR/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
FDCU0358397/CN39448AR/40H
NYKU4880876/CN39441AR/40H
ONEU1595213/CN39443AR/40H
ONEU1914413/CN32925AR/40H
TCLU8636018/CN39357AR/40H

**Carton Marks And Number**

BIG LOTS
STORES

PO#95575145
SKU#
DEPT#210
MADE IN CHINA
BIG LOTS
STORES

PO#95575145
SKU#
DEPT#210
MADE IN CHINA
BIG LOTS
STORES

PO#95575145
SKU#
DEPT#210
MADE IN CHINA
BIG LOTS
STORES

PO#95575145
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics          Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-TAO-2400577**

| | |
|---|---|
| **Maker/Supplier:** HOME CREATIONS INC | Maker/Supplier's INVOICE No. **S202411150001** |
| **Buyer/Consignee:** CSC DISTRIBUTION, LLC 2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA | Dated: **December 02, 2024** |
| **Shipment From:** QINGDAO    To: MONTGOMERY, AL | Date of Receipt of Cargo **November 29, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES | | NOTIFY PARTY: GEODIS | | |

BIG LOTS
STORES
PO#95575145
SKU#
DEPT#210
MADE IN CHINA

NOTIFY PARTY: GEODIS
        5101 S. BROAD STREET
        PHILADELPHIA, PA 19112-1404, U.S.A.
        ATTN: ALENA LAMINA
ALSO NOTIFY: EDRAY 2020 LLC.
        1300 SOUTH MINT STREET SUITE 200
        CHARLOTTE NC 28203 USA
        TEL: 704-593-6329
        EMAIL: DATAQUALITY@EDRAYCPL.COM

        CY-CY

        SHIPPER'S LOAD, COUNT AND SEAL
        SAID TO CONTAIN

| | | |
|---|---|---|
| FDCU0358397 | SEAL# CN39448AR | 40H DRY |
| NYKU4880876 | SEAL# CN39441AR | 40H DRY |
| ONEU1595213 | SEAL# CN39443AR | 40H DRY |
| ONEU1914413 | SEAL# CN32925AR | 40H DRY |
| TCLU8636018 | SEAL# CN39357AR | 40H DRY |

        OUTDOOR FURNITURE AS PER PO#95575145

        SHIP TO CODE & LOCATION : 00870-MONTGOMERY, AL
        SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
        MATERIAL

| | | | |
|---|---|---|---|
|     406 CARTONS | | 324.000 CBM | 29,029.00 KGS |

======================================================
TOTAL : FOUR HUNDRED SIX (406) CARTONS ONLY

        "FREIGHT COLLECT"
SHIPMENT PER S.S. "UNAYZAH EXPRESS" VOY NO. 034E    DISCHARGED AT SAVANNAH, GA
SAILING ON / ABOUT December 8, 2024. CARGO RECEIVED ON November 29, 2024.

| | |
|---|---|
| THIS IS NOT A DOCUMENT OF TITLE | **QINGDAO**    **December 2, 2024** |

The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only.

(Place and date of issue.)
**YUSEN LOGISTICS**



As Agent

No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**
(Terms and conditions are to be continued to the reverse side hereof.)

(Authorized Signature)    V1



**PO #**      **95575145**

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

| | |
|---|---|
| Date Created: | 08/16/2024 |
| Version: | 4 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 12/02/2024 |
| Cancel if not Shipped by: | 12/09/2024 |
| Must be Routed by: | 11/11/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | QINGDAO    ,  CN |

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633      Fax:  334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800      Fax: 614-278-6871

**Purchase From Vendor:**  5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:     HELEN HUANG
Telephone:   86-13817575231     Fax
E-Mail:      sales@hcicreations.com

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 756 | 529,192.44 | 166,320.00 | 49.906 |

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:    95575145

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.        Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.        Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.        Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.        Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.        Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.        Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.        Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.        Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.        Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


# IMPORTANT Terms and Conditions

title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or


securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution, description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.


AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95575145

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 210 | 810776600 | MATARA CORNER SOFA | 0.00 | CN | 1 | | 756 | 220.00 | 265,091.40 | 01/20/2025 |
| 21012 | SH24S4930X | Resin Wick | | | 1 | | 756 | 130.65 | 529,192.44 | |
| 21012005 | NA | CLOSEOUT | | 0.000 | | | | 699.99 | 49.906 | 997.49 |
| 1 | 481077660005 | | GRM | 28.570 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202411150003        **Invoice Date.:** December 09, 2024

**Sold To:**   CLOSEOUT DISTRIBUTION, LLC      **Delivery To:**   50 RAUSCH CREEK RD
          50 RAUSCH CREEK RD                      TREMONT, PA 17981
          TREMONT, PA 17981                       USA
          USA

**Shipment Terms:** FOB QINGDAO       **Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA            **L/C Number:** TT

**Vessel / Voyage:** EVER FORE / 1192E      **Port of Loading:** QINGDAO

**Ship on or about:** December 14, 2024       **Port of Entry:** NEW YORK, NY

                                      **Destination:** TREMONT, PA

**Container Number (Factory Load) :** OOCU7292224, OOLU9770611, OOLU9955657

| Cargo Description | Quantity (Unit) | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|
| **P/O No.:** 95575146 | 252   EA | 220.000/EA | 55,440.000 |
| **SKU No.:** 810776600 | 252   CTNS | | |
| MATARA CORNER SOFA       No. of Pallet: | | | |
| **HTS Code.:** 9401790050 | | | |
|      <u>Manufacturer Name & Address</u><br>     JIANGSU HONGBO HOME GOODS CO., LTD<br>     JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY<br>     HEZE, SHANDONG<br>     274601, CHINA | | | |
| Total:      (252 CTNS) | 252 | | 55,440.000 |
| **TOTAL (USD) DOLLARS : FIFTY-FIVE THOUSAND FOUR HUNDRED FORTY ONLY.** | | | |

**Consolidator(Full Name & Address)**           **Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD       JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG    JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY                                            COUNTRY
HEZE , SHANDONG                            HEZE , SHANDONG
274601 CHINA                                 274601 CHINA
Container No./Seal/Size:                     Container No./Seal/Size:
OOCU7292224/OOLJVZ7780/40H          OOCU7292224/OOLJVZ7780/40H
OOLU9770611/OOLJVW3383/40H          OOLU9770611/OOLJVW3383/40H
OOLU9955657/OOLJVX2648/40H          OOLU9955657/OOLJVX2648/40H

We certify that there is no wood packing material in the shipment.

<u>Carton Marks And Number</u>

BIG LOTS
STORES

PO#95575146
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# PACKING LIST

**Invoice No.:** S202411150003

**Invoice Date.:** December 09, 2024

**Sold To:**  CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:**  50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB QINGDAO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** EVER FORE / 1192E

**Port of Loading:** QINGDAO

**Ship on or about:** December 14, 2024

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** OOCU7292224, OOLU9770611, OOLU9955657

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95575146 | | 252  EA | 15,624.00 | 18,018.00 | 201.000 |
| SKU No.: 810776600 | | 252  CTNS | | | |
| MATARA CORNER SOFA | No. of Pallet: | | | | |
| HTS Code.: 9401790050 | | | | | |
| **Total:** | **(252 CTNS)** | **252** | **15,624.00** | **18,018.00** | **201.000** |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
OOCU7292224/OOLJVZ7780/40H
OOLU9770611/OOLJVW3383/40H
OOLU9955657/OOLJVX2648/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
OOCU7292224/OOLJVZ7780/40H
OOLU9770611/OOLJVW3383/40H
OOLU9955657/OOLJVX2648/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95575146
SKU#
DEPT#210
MADE IN CHINA

# Yusen Logistics

Yusen Logistics - Yusen Logistics
Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    **CNS-TAO-2400593**

| | |
|---|---|
| Maker/Supplier : **HOME CREATIONS INC** | Maker/Supplier's INVOICE No. **S202411150003** |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC** **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated: **December 09, 2024** |
| Shipment From : **QINGDAO**    To : **TREMONT, PA** | Date of Receipt of Cargo **December 09, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES | | NOTIFY PARTY: GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA | | |
| PO#95575146 SKU# DEPT#210 MADE IN CHINA | | ALSO NOTIFY: EDRAY 2020 LLC. 1300 SOUTH MINT STREET SUITE 200 CHARLOTTE NC 28203 USA TEL: 704-593-6329 EMAIL: DATAQUALITY@EDRAYCPL.COM | | |
| | | CY-CY | | |
| | | SHIPPER'S LOAD, COUNT AND SEAL SAID TO CONTAIN | | |
| | | OOCU7292224       SEAL# OOLJVZ7780       40H  DRY OOLU9770611       SEAL# OOLJVW3383       40H  DRY OOLU9955657       SEAL# OOLJVX2648       40H  DRY | | |
| | | OUTDOOR FURNITURE AS PER PO#95575146 | | |
| | | SHIP TO CODE & LOCATION : 00874-TREMONT, PA SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING MATERIAL | | |
| | 252 CARTONS | | 201.000 CBM | 18,018.00 KGS |

===========================================================
TOTAL : TWO HUNDRED FIFTY-TWO (252) CARTONS ONLY

"FREIGHT COLLECT"
SHIPMENT PER S.S. "EVER FORE" VOY NO. 1192E    DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT December 14, 2024. CARGO RECEIVED ON December 9, 2024.

| THIS IS NOT A DOCUMENT OF TITLE | QINGDAO                December 9, 2024 |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS**  As Agent |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | (Authorized Signature)                V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics



| PO # | **95575146** |
|---|---|

| | |
|---|---|
| Date Created | 08/16/2024 |
| Version: | 5 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 12/09/2024 |
| Cancel if not Shipped by: | 12/16/2024 |
| Must be Routed by: | 11/18/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | QINGDAO    , CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

SHIP TO

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:  570-695-2862

---

BILL TO

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

---

Purchase From Vendor:  5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:  86-13817575231    Fax
E-Mail:      sales@hcicreations.com

---

ADDITIONAL COMMENTS

TT 30 DAYS FROM THE FCR

---

| | Units | Retail | Vendor Cost | IMU |
|---|---|---|---|---|
| | 924 | 646,790.76 | 203,280.00 | 49.906 |

Vendor Signature  _____

Signee's Name  _____

Title  _____

Date  _____

OFFICE-COPY



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:    95575146

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.
"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.
"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.
"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.
"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.
"Ship," "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.
"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.
"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.
1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.
2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.
3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.
4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.
6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.
7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.
8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.
9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner, without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 210 | 810776600 | MATARA CORNER SOFA | 0.00 | CN | 1 | | 924 | 220.00 | 324,000.60 | 01/20/2025 |
| 21012 | SH24S4930X | Resin Wick | | | 1 | | 924 | 130.65 | 646,790.76 | |
| 21012005 | NA | CLOSEOUT | | 0.000 | | | | 699.99 | 49.906 | 997.49 |
| 1 | 481077660005 | | GRM | 28.570 | E1 | | | | | |

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

# INVOICE

**Invoice No.:** S202411150004

**Invoice Date.:** December 09, 2024

**Sold To:**  CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:**  50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB QINGDAO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** MAERSK SKARSTIND / 450E

**Port of Loading:** QINGDAO

**Ship on or about:** December 12, 2024

**Port of Entry:** BALTIMORE, MD

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** MRKU2574249, MRSU3700405, MRSU4639300, UETU5031900

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| **P/O No.:** 95575146 | | 168 | EA | 220.000/EA | 36,960.000 |
| **SKU No.:** 810776600 | | 168 | CTNS | | |
| MATARA CORNER SOFA DINING SET | No. of Pallet: | | | | |
| **HTS Code.:** 9401790050 | | | | | |
| | | | | | |
| **P/O No.:** 95575146 | | 168 | EA | 220.000/EA | 36,960.000 |
| **SKU No.:** 810776600 | | 168 | CTNS | | |
| MATARA CORNER SOFA | No. of Pallet: | | | | |
| **HTS Code.:** 9401790050 | | | | | |
| | **Manufacturer Name & Address** | | | | |
| | JIANGSU HONGBO HOME GOODS CO., LTD JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG COUNTRY HEZE, SHANDONG 274601, CHINA | | | | |
| | **Total:** (336 CTNS) | | 336 | | 73,920.000 |

**TOTAL (USD) DOLLARS : SEVENTY-THREE THOUSAND NINE HUNDRED TWENTY ONLY.**

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
MRKU2574249/CN0989445/40H
MRSU3700405/CN0989541/40H
MRSU4639300/CN0983652/40H
UETU5031900/CN0980206/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
MRKU2574249/CN0989445/40H
MRSU3700405/CN0989541/40H
MRSU4639300/CN0983652/40H
UETU5031900/CN0980206/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95575146
SKU#
DEPT#210
MADE IN CHINA

# HOME CREATIONS INC

ROOM A-522,NO.188 YESHENG ROAD, , LIN-GANG SPECIAL AREA,CHINA(SHANGHAI)PILOT, , SHANGHAI, SHANGHAI, 201308, CHINA

---

# PACKING LIST

---

**Invoice No.:** S202411150004

**Invoice Date.:** December 09, 2024

**Sold To:**   CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Delivery To:**   50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB QINGDAO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** MAERSK SKARSTIND / 450E

**Port of Loading:** QINGDAO

**Ship on or about:** December 12, 2024

**Port of Entry:** BALTIMORE, MD

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** MRKU2574249, MRSU3700405, MRSU4639300, UETU5031900

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| **P/O No.:** 95575146 | | 168  EA | 10,416.00 | 12,012.00 | 134.000 |
| **SKU No.:** 810776600 | | 168  CTNS | | | |
| MATARA CORNER SOFA DINING SET | No. of Pallet: | | | | |
| **HTS Code.:** 9401790050 | | | | | |
| | | | | | |
| **P/O No.:** 95575146 | | 168  EA | 10,416.00 | 12,012.00 | 134.000 |
| **SKU No.:** 810776600 | | 168  CTNS | | | |
| MATARA CORNER SOFA | No. of Pallet: | | | | |
| **HTS Code.:** 9401790050 | | | | | |
| **Total:**        (336 CTNS) | | 336 | 20,832.00 | 24,024.00 | 268.000 |

**Consolidator(Full Name & Address)**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
MRKU2574249/CN0989445/40H
MRSU3700405/CN0989541/40H
MRSU4639300/CN0983652/40H
UETU5031900/CN0980206/40H

**Container Stuffing Location(Full Name & Address )**
JIANGSU HONGBO HOME GOODS CO., LTD
JISHAN INDUSTRIAL PARK, JISHAN TOWN, JUANCHENG
COUNTRY
HEZE , SHANDONG
274601 CHINA
Container No./Seal/Size:
MRKU2574249/CN0989445/40H
MRSU3700405/CN0989541/40H
MRSU4639300/CN0983652/40H
UETU5031900/CN0980206/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

BIG LOTS
STORES

PO#95575146
SKU#

# Yusen Logistics

Yusen Logistics - Yusen Logistics  Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.   **CNS-TAO-2400592**

| | |
|---|---|
| | Maker/Supplier's INVOICE No. **S202411150004** |
| Maker/Supplier : **HOME CREATIONS INC** | |
| Buyer/Consignee : **CLOSEOUT DISTRIBUTION, LLC** **50 RAUSCH CREEK RD, TREMONT, PA 17981, USA** | Dated: **December 09, 2024** |
| Shipment From : **QINGDAO**     To : **TREMONT, PA** | Date of Receipt of Cargo **December 06, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|
| BIG LOTS STORES | NOTIFY PARTY: GEODIS | | | |

```
BIG LOTS
STORES                        NOTIFY PARTY: GEODIS
                                 5101 S. BROAD STREET
PO#95575146                      PHILADELPHIA, PA 19112-1404, U.S.A.
SKU#                             ATTN: ALENA LAMINA
DEPT#210                    ALSO NOTIFY: EDRAY 2020 LLC.
MADE IN CHINA                    1300 SOUTH MINT STREET SUITE 200
                                 CHARLOTTE NC 28203 USA
                                 TEL: 704-593-6329
                                 EMAIL: DATAQUALITY@EDRAYCPL.COM

                           CY-CY

                           SHIPPER'S LOAD, COUNT AND SEAL
                           SAID TO CONTAIN
                           MRKU2574249        SEAL# CN0989445    40H  DRY
                           MRSU3700405        SEAL# CN0989541    40H  DRY
                           MRSU4639300        SEAL# CN0983652    40H  DRY
                           UETU5031900        SEAL# CN0980206    40H  DRY


                           OUTDOOR FURNITURE AS PER PO#95575146

                           SHIP TO CODE & LOCATION : 00874-TREMONT, PA
                           SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                           MATERIAL



                           336 CARTONS                268.000 CBM   24,024.00 KGS
                           ================================================================
                           TOTAL : THREE HUNDRED THIRTY-SIX (336) CARTONS ONLY

                                "FREIGHT COLLECT"
SHIPMENT PER S.S. "MAERSK SKARSTIND" VOY NO. 450E    DISCHARGED AT BALTIMORE, MD
SAILING ON / ABOUT December 12, 2024. CARGO RECEIVED ON December 6, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | QINGDAO                           December 9, 2024 |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the **YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED** Standard Trading Conditions printed reverse side. Forwarding instructions can only be cancelled or altered if the original of this document is surrendered to the Company and then only provided the Company is still in a position to comply with such cancellation or alteration. Instructions authorizing disposal by a third party can only be cancelled or altered if the original of this document is surrendered to the Company, and then only provided the Company have not yet received instructions under the original authority. The Company does not act as Carrier but a forwarding agent only. | (Place and date of issue.) **YUSEN LOGISTICS**  |
| No. of ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1** (Terms and conditions are to be continued to the reverse side hereof.) | As Agent |
| | (Authorized Signature)                              V1 |

Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics - Yusen Logistics



**PO #**                **95575146**

| | |
|---|---|
| Date Created | 08/16/2024 |
| Version: | 5 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 12/09/2024 |
| Cancel if not Shipped by: | 12/16/2024 |
| Must be Routed by: | 11/18/2024 |
| Payment Terms: | Wire Transfer + 30 days |
| Freight Terms: | Collect |
| FOB: | QINGDAO    ,  CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848        Fax:   570-695-2862

---

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone:  614-278-6800        Fax:  614-278-6871

---

Purchase From Vendor:   5005944

HOME CREATIONS INC
HELEN HUANG
2ND FLOOR,BUILDING 1,NO.88 SHUANG LIAN
201700 ROAD, QING PU DISTRICT, SHANGHAI
CHINA

Contact:    HELEN HUANG
Telephone:  86-13817575231      Fax
E-Mail:     sales@hcicreations.com

---

**ADDITIONAL COMMENTS**

TT 30 DAYS FROM THE FCR

---

Vendor Signature _____

Signee's Name  _____

Title  _____

Date  _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 924 | 646,790.76 | 203,280.00 | 49.906 |

OFFICE-COPY



OFFICE-COPY  **IMPORTANT Terms and Conditions**

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC").  A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual.  A detailed packing slip must accompany each shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of any of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs").  Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes


title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible for (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or use or for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer' efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverage (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION. EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country. Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95575146

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 210 | 810776600 | MATARA CORNER SOFA | 0.00 | CN | 1 | | 924 | 220.00 | 324,000.60 | 01/20/2025 |
|---|---|---|---|---|---|---|---|---|---|---|
| 21012 | SH24S4930X | Resin Wick | | | 1 | | 924 | 130.65 | 646,790.76 | |
| 21012005 | NA | CLOSEOUT | | 0.000 | | | | 699.99 | 49.906 | 997.49 |
| 1 | 481077660005 | | GRM | 28.570 | E1 | | | | | |