**EXHIBIT B**



请装货司机使用微信绑定的手机号，扫描二维码填写货名及件重尺

提单号：**OOLU2304925440**

箱　号：**TEMU6472294**

铅封号：**OOLJVZ0257**

车　号：**鲁JG2820**

电　话：

打印时间：**2024-11-25 14:15:36**

山东泰鹏智能家居有限公司
港联捷鑫港联站出场自动闸口

装货工厂签章＿＿＿＿＿＿

---

| CTNS | 净重/箱 | TTL N.W. ( Kgs ) |
|---|---|---|
| USHFORD 10x12FT METAL LOUVERED | | |
| 88 | 85.2 | 7497.60 |
| 88 | 79.2 | 6969.60 |
| 88 | | 14467.20 |

SEAL NO: OOLJVZ0257

(handwritten: 帐蓬 88. 15780.8 65.38)

2024/11/26

| | | | | | | | 39.87 |
|---|---|---|---|---|---|---|---|
| | | 85.2 | 7497.60 | 92.30 | 8198.40 | 0.396 | 25.51 |
| 810775523 | 88 | 79.2 | 6969.60 | 85.30 | 7582.40 | 0.233 | 65.38 |
| | 88 | | 14467.20 | | 15780.80 | | |
| | 88 | | | | | | |

CONTAINER NO: TRHU5986543 · SEAL NO: 00LJVX9701 ·

## 设备交接单

提单号：00LU2304925440

箱　号：TRHU5986543

铅封号：00LJVX9701

电　话：

装货工厂签章 _____

请装货司机使用微信绑定的手机号，扫描二维码填写货名及件重

提单号： OOLU2304925440

箱　号： TXGU8053279

铅封号： OOLJVX9283

电　话：

装货工厂签章

请装货司机使用微信绑定的
手机号，扫描二维码填写货
名及件重尺



24/11/27



| | |
|---|---|
| **PO #** | **95575100** |

| | |
|---|---|
| Date Created | 08/16/2024 |
| Version: | 2 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/25/2024 |
| Cancel if not Shipped by: | 12/02/2024 |
| Must be Routed by: | 11/04/2024 |
| Payment Terms: | 1% Net 30 Days |
| Freight Terms: | Collect |
| FOB: | QINGDAO    , CN |

See attached Terms and  Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment In compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

TREMONT DC - #0874
CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT PA  17981-1734

Telephone:  570-695-2848      Fax:  570-695-2862

**BILL TO**

CLOSEOUT DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:  5006181

SHANDONG TAIPENG INTELLIGENT HOUSEH
NINA GENG
GONGYE YI ROAD 136
271600 FEICHENG
CHINA
Contact:
Telephone:                    Fax
E-Mail:

**ADDITIONAL COMMENTS**

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 264 | 395,997.36 | 161,568.00 | 43.099 |

OFFICE-COPY

 **BIG LOTS**   OFFICE-COPY   **IMPORTANT Terms and Conditions**   PO#: 95575100

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and the Vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship", "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates.  Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC").  A detailed packing slip must accompany each Shipment of Goods.  The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons.  Vendor should see the Vendor Manual for full instruction and must comply therewith.  Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof.  Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods.  In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions).  If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified.  In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.  Buyer may also impose chargebacks as set out in the Vendor Manual.  Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments.  Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate.  In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer.  In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO.  Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating.  No additional charges of any type may be added without Buyer's prior express written consent.  Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements.  In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved.  Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes

 OFFICE-COPY    **IMPORTANT Terms and Conditions**    PO#: 95575100

Page 3 of 6

title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time to assist in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency or applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or take or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are its new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, Ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of (i) improperly influencing an act or decision of such Government or Political Official, including expediting or

 **OFFICE-COPY**    **IMPORTANT Terms and Conditions**    PO#: 95575100

Page 4 of 6

securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer's efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and compliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods, Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute") will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



OFFICE-COPY        **IMPORTANT Terms and Conditions**        PO#:  95575100

Page 5 of 6

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|---|-------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 210 | 810775523 | COMBO RUSHFORD 10X | 0.00 | CN | 1 | | 264 | 612.00 | 225,326.64 | 01/06/2025 |
| 21034 | TPGAZ25120 | GAZEBO | | | 1 | | 264 | 241.51 | 395,997.36 | |
| 21034001 | Broyhill | | 051 | | | | | 1,499.99 | 43,507 | 2699.00 |
| 1 | 481077552300 | | GRM | 27.362 | UPC | | | | | |
| —>> The | above assortment | (810775523) | consists of | | | | | | | 01/06/2025 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 210 | 810775434 | RUSHFORD 10X12FT ME | 0.00 | CN | | | 264 | 178.00 | 46,992.00 | 01/06/2025 |
| 21034 | TPGAZ25120-2 | GAZEBO | | | | | 264 | | 132,000.00 | |
| 21034001 | Broyhill | | 051 | | | | | 500.00 | 64.400 | 1199.00 |
| 2 | 481077543407 | | | 12.586 | UPC | | | | | |
| 210 | 810775473 | RUSHFORD 10X12FT ME | 0.00 | CN | | | 264 | 434.00 | 114,576.00 | 01/06/2025 |
| 21034 | TPGAZ25120-1 | GAZEBO | | | | | 264 | | 263,997.36 | |
| 21034001 | Broyhill | | 051 | | | | | 999.99 | 56,600 | 1500.00 |
| 3 | 481077547306 | | | 14.775 | UPC | | | | | |
| *--End of | assortment list | for -810775523 | | | | | | | | 01/06/2025 |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



**YUSEN LOGISTICS**

Submission No : CNS-2411789
Version Date : 11/5/2024 11:36:57 AM
Page 1 of 2

*This document is issued as a receipt of cargo only and will not be negotiable unless the original is submitted to exchange for the Forwarder's Cargo Receipt which will be issued on request.*

| Shipper/Exporter (Name & Address) | SHIPPING ORDER/DOCK RECEIPT | |
|---|---|---|
| SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD 136 GONGYEYI ROAD FEICHENG, SHANDONG, 271600, CN Contact: SUNHU Tel:    0538-3308709 Fax:    0538-3305019 | Port of Loading QINGDAO | |
| | Final Destination TREMONT, PA | |
| Consignee CLOSEOUT DISTRIBUTION, LLC 50 RAUSCH CREEK RD, TREMONT, PA 17981, USA | Freight : COLLECT | Exp. Lic No. NO |
| | Ship Term FOB | Ship Mode OCEAN |
| Notify Party GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA | Estimate Delivery Date CY 19 November 2024 | No. of Original Document Required EFCR    1 |
| Also Notify EDRAY 2020 LLC. 1300 SOUTH MINT STREET SUITE 200 CHARLOTTE NC 28203 USA TEL: 704-593-6329 EMAIL: DATAQUALITY@EDRAYCPL.COM | Declaration THE SHIPMENT CONTAINS NO WOOD PACKAGING MATERIAL | |
| Shipper/Exporter Email :    18905388376@163.COM | | |
| Remarks : | | |

**REQUIRES D40H x 3 CONTAINERS ONLY**

The shipper certifies that the particulars of the face hereof are correct and agree to the terms and conditions.
Goods will be received by YUSEN LOGISTICS for Storage, Consolidation, Forwarding, or Shipment, subject to the Company's Standard Trading Terms and Conditions, a copy is available upon request which in certain circumstances, limit or exempt the Company's liabilities.

 **YUSEN LOGISTICS**

| YL Shipping Order : | Export License will be Submitted : No |
|---|---|
| | Fumigation Cert. will be Submitted : No |
| Tmast No.: | Fish & Wildlife Cert. will be submitted : No |
| | Contains Pallet : No |

**PO Seller :SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD.**

Other Document will be submitted :

Product contains Wood Formaldehyde and complied with rules and orders under TSCA Title VI : Not Applicable

| P/O No. | Item No. | No. of pkgs | Cbm | Kilos | Qty |
|---|---|---|---|---|---|
| 95575100 | 810775523 | 264 CTN | 196.710 | 48,888.000 | 264 |
| | Manufacturer : SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD. | | | | |
| | Country of Origin : CN | | | | |
| | Ship Window : 11/25/2024 - 12/2/2024 Delivery Date : 1/6/2025 Cargo must be delivered within the indicated shipping window. | | | | |
| | TSCA Title VI Compliant : NA | | | | |
| **P/O Total :** | | 264 CTN | 196.710 | 48,888.000 | 264 |

| Marks & Numbers | Description of Packages and Goods Particulars Furnished by Shipper |
|---|---|
| PO#:<br>SKU#:<br>DEPT#:<br>COUNTRY OF ORIGIN:CHINA | COMBO RUSHFORD 10x12FT METAL LOUVERED ROOF PERGOLA |

| Total : | 264 CTN | 196.710 | 48,888.000 | 264 |
|---|---|---|---|---|

| Total No. of Packages Received (In Words) | Measurement: |
|---|---|
| | Weight: |

Yusen Logistics (Hong Kong) Limited expressly disclaims all and any liability to any person in respect of anything done or omitted, and the consequences of anything done or omitted, by any such person in reliance on the contents of this electronic Forwarders Cargo Receipt (eFCR). No part of these e-FCR Standard Operational Procedures may be reproduced, recast, reformatted or transmitted in any form by any means, electronic or mechanical, including photocopying, recording or any information storage and retrieval system, without the prior written permission from Yusen Logistics.

# SHANDONG TAIPENG INTELLIGENT HOUSEHOLD

Seller reference

# PRODUCTS CO., LTD

136 GONGYEYI ROAD, FEICHENG, SHANDONG, 271600, CHINA

# INVOICE

**Invoice No.:** YT24-389

**Sold To:** CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB QINGDAO

**Country of Origin:** CHINA

**Vessel / Voyage:** EVER LEADING / 1190E

**Ship on or about:** December 03, 2024

**Invoice Date.:** December 01, 2024

**Delivery To:** 50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** QINGDAO

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** TEMU6472294, TRHU5986543, TXGU8053279

| Cargo Description | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| P/O No.: 95575100 | 264 | EA | 612.000/EA | 161,568.000 |
| SKU No.: 810775523 | 264 | CTNS | | |
| COMBO RUSHFORD 10X12FT METAL LOUVERED ROOF PERGOLA | No. of Pallet: | | | |
| HTS Code.: 7308909590 | | | | |
|     Manufacturer Name & Address | | | | |
| SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD. HIGH-NEW TECH DEVELOPMENT FEICHENG SD 271600 CHINA FEICHENG, SHANDONG 271600, CHINA | | | | |
| Total:       (264 CTNS) | 264 | | | 161,568.000 |
| TOTAL (USD) DOLLARS : ONE HUNDRED SIXTY-ONE THOUSAND FIVE HUNDRED SIXTY-EIGHT ONLY. | | | | |

**Consolidator(Full Name & Address)**
SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS
CO., LTD.
HIGH-NEW TECH DEVELOPMENT FEICHENG SD 271600 CHINA
FEICHENG , SHANDONG
271600 CHINA
Container No./Seal/Size:
TEMU6472294/OOLJVZ0257/40H
TRHU5986543/OOLJVX9701/40H
TXGU8053279/OOLJVX9283/40H

**Container Stuffing Location(Full Name & Address )**
SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS
CO., LTD.
HIGH-NEW TECH DEVELOPMENT FEICHENG SD 271600 CHINA
FEICHENG , SHANDONG
271600 CHINA
Container No./Seal/Size:
TEMU6472294/OOLJVZ0257/40H
TRHU5986543/OOLJVX9701/40H
TXGU8053279/OOLJVX9283/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

PO#:
SKU#:
DEPT#:
COUNTRY OF ORIGIN:CHINA

SHANDONG TAIPENG INTELLIGENT
HOUSEHOLD PRODUCTS CO , LTD

SHI FENG /PRESIDENT

# SHANDONG TAIPENG INTELLIGENT HOUSEHOLD

Seller reference

# PRODUCTS CO., LTD

136 GONGYEYI ROAD, FEICHENG, SHANDONG, 271600, CHINA

---

# PACKING LIST

---

**Invoice No.:** YT24-389

**Sold To:** CLOSEOUT DISTRIBUTION, LLC
50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Invoice Date.:** December 01, 2024

**Delivery To:** 50 RAUSCH CREEK RD
TREMONT, PA 17981
USA

**Shipment Terms:** FOB QINGDAO

**Country of Origin:** CHINA

**Vessel / Voyage:** EVER LEADING / 1190E

**Ship on or about:** December 03, 2024

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** QINGDAO

**Port of Entry:** NEW YORK, NY

**Destination:** TREMONT, PA

**Container Number (Factory Load) :** TEMU6472294, TRHU5986543, TXGU8053279

| Cargo Description | | Quantity (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95575100 | | 264  EA | 43,401.60 | 47,342.40 | 196.140 |
| SKU No.: 810775523 | | 264  CTNS | | | |
| COMBO RUSHFORD 10X12FT METAL LOUVERED ROOF PERGOLA | No. of Pallet: | | | | |
| HTS Code.: 7308909590 | | | | | |
| **Total:  (264 CTNS)** | | **264** | **43,401.60** | **47,342.40** | **196.140** |

**Consolidator(Full Name & Address)**
SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD.
HIGH-NEW TECH DEVELOPMENT FEICHENG SD 271600 CHINA
FEICHENG , SHANDONG
271600 CHINA
Container No./Seal/Size:
TEMU6472294/OOLJVZ0257/40H
TRHU5986543/OOLJVX9701/40H
TXGU8053279/OOLJVX9283/40H

**Container Stuffing Location(Full Name & Address )**
SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD.
HIGH-NEW TECH DEVELOPMENT FEICHENG SD 271600 CHINA
FEICHENG , SHANDONG
271600 CHINA
Container No./Seal/Size:
TEMU6472294/OOLJVZ0257/40H
TRHU5986543/OOLJVX9701/40H
TXGU8053279/OOLJVX9283/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**
PO#:
SKU#:
DEPT#:
COUNTRY OF ORIGIN:CHINA

SHANDONG TAIPENG INTELLIGENT
HOUSEHOLD PRODUCTS CO., LTD

SHI FENG /PRESIDENT

# SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD

ADDRESS:NO.136 OF INDUSTRY 1 ROAD FEICHENG CITY SHANDONG PROVINCE 271600 CHINA

# COMMERCIAL INVOICE

**TO:**  CLOSEOUT DISTRIBUTION, LLC

50 RAUSCH CREEK RD, TREMONT, PA 17981, USA

INVOICE NO: **YT24-389**

Date:     20/Nov/2024

Purchase Order Number

95575100

| | DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| Art. No. | Product | FOB QINGDAO PORT IN CHINA | | |
| | COMBO RUSHFORD 10x12FT METAL LOUVERED ROOF PERGOLA | | | |
| 95575100 | | 264 | 612 | 161568 |
| | | | Discount | 1615.68 |
| | | | | |
| | | | | |
| | | 264 | | $159,952.32 |

**AMOUNT**

SHANDONG TAIPENG INTELLIGENT
HOUSEHOLD PRODUCTS CO.,LTD.

SHI FENG /PRESIDENT

# SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD
### ADDRESS:NO.136 OF INDUSTRY 1 ROAD FEICHENG CITY SHANDONG PROVINCE 271600 CHINA
# PACKING LIST

TO:    CLOSEOUT DISTRIBUTION, LLC

        50 RAUSCH CREEK RD, TREMONT, PA 17981, USA

INVOICE NO: **YT24-389**

Date:    20/Nov/2024

Purchase Order Number

    95575100

提单号：   OOLU2304925440

| PO. NO. | QTY SETS | CTNS | 净重/箱 | TTL N.W | 毛重/箱 | TTL G.W | 体积/箱 | MEAS. |
|---|---|---|---|---|---|---|---|---|
| | | CTNS | | ( Kgs ) | | ( Kgs ) | | ( CBM ) |
| 95575100 | | COMBO RUSHFORD 10x12FT METAL LOUVERED ROOF PERGOLA | | | | | | |
| 810775523 | 88 | 88 | 85.2 | 7497.60 | 92.30 | 8198.40 | 0.396 | 39.87 |
| | | 88 | 79.2 | 6969.60 | 85.30 | 7582.40 | 0.233 | 25.51 |
| | | 88 | | 14467.20 | | 15780.80 | | 65.38 |
| 1.CONTAINER NO:TEMU6472294    SEAL NO: OOLJVZ0257 | | | | | | | | |
| 810775523 | 88 | 88 | 85.2 | 7497.60 | 92.30 | 8198.40 | 0.396 | 39.87 |
| | | 88 | 79.2 | 6969.60 | 85.30 | 7582.40 | 0.233 | 25.51 |
| | | 88 | | 14467.20 | | 15780.80 | | 65.38 |
| 2.CONTAINER NO:TRHU5986543    SEAL NO: OOLJVX9701 | | | | | | | | |
| 810775523 | 88 | 88 | 85.2 | 7497.60 | 92.30 | 8198.40 | 0.396 | 39.87 |
| | | 88 | 79.2 | 6969.60 | 85.30 | 7582.40 | 0.233 | 25.51 |
| | | 88 | | 14467.20 | | 15780.80 | | 65.38 |
| 3.CONTAINER NO:TXGU8053279    SEAL NO:OOLJVX9283 | | | | | | | | |
| TOTAL: | | 264 | | 43401.60 | | 47342.40 | | 196.14 |

SHANDONG TAIPENG INTELLIGENT
HOUSEHOLD PRODUCTS CO., LTD

SHI TENG /PRESIDENT

2960*1100*2440                    63.55712

# Yusen Logistics

Yusen Logistics - Yusen Logistics     Yusen Logistics - Yusen Logistics

FORWARDER'S CARGO RECEIPT No.    CNS-TAO-2400583

| | |
|---|---|
| Maker/Supplier :   SHANDONG TAIPENG INTELLIGENT<br>HOUSEHOLD PRODUCTS CO., LTD<br>Buyer/Consignee :   CLOSEOUT DISTRIBUTION, LLC<br>50 RAUSCH CREEK RD, TREMONT, PA 17981, USA<br>Shipment From :   QINGDAO     To : TREMONT, PA | Maker/Supplier's INVOICE No.<br>**YT24-389**<br><br>Dated:   **December 01, 2024**<br><br>Date of Receipt of Cargo<br>**November 28, 2024** |

| Marks & Nos. | Nos. of P'kgs | Supplier's description of goods | Measurement (cbm.) | Weight (kgs.) |
|---|---|---|---|---|

```
PO#:                    NOTIFY PARTY: GEODIS
SKU#:                       5101 S. BROAD STREET
DEPT#:                      PHILADELPHIA, PA 19112-1404, U.S.A.
COUNTRY OF ORIGIN:CHINA     ATTN: ALENA LAMINA
                        ALSO NOTIFY: EDRAY 2020 LLC.
                            1300 SOUTH MINT STREET SUITE 200
                            CHARLOTTE NC 28203 USA
                            TEL: 704-593-6329
                            EMAIL: DATAQUALITY@EDRAYCPL.COM

                        CY-CY

                        SHIPPER'S LOAD, COUNT AND SEAL
                        SAID TO CONTAIN
                        TEMU6472294        SEAL# OOLJVZ0257    40H   DRY
                        TRHU5986543        SEAL# OOLJVX9701    40H   DRY
                        TXGU8053279        SEAL# OOLJVX9283    40H   DRY


                        COMBO RUSHFORD 10X12FT METAL LOUVERED ROOF
                        PERGOLA

                        SHIP TO CODE & LOCATION : 00874-TREMONT, PA
                        SHIPPER DECLARED ALL CONTAINER(S) CONTAIN NO WOOD PACKAGING
                        MATERIAL



                        264 CARTONS              196.140 CBM    47,342.40 KGS
                        ================================================================
                        TOTAL : TWO HUNDRED SIXTY-FOUR (264) CARTONS ONLY
                            "FREIGHT COLLECT"
SHIPMENT PER S.S. "EVER LEADING" VOY NO. 1190E   DISCHARGED AT NEW YORK, NY
SAILING ON / ABOUT December 3, 2024. CARGO RECEIVED ON November 28, 2024.
```

| THIS IS NOT A DOCUMENT OF TITLE | QINGDAO     **December 5, 2024** |
|---|---|
| The Goods and instructions are accepted and dealt with subject to the<br>**YUSEN LOGISTICS GLOBAL MANAGEMENT (HONG KONG) LIMITED**<br>Standard Trading Conditions printed reverse side. Forwarding instructions<br>can only be cancelled or altered if the original of this document is<br>surrendered to the Company and then only provided the Company is still<br>in a position to comply with such cancellation or alteration. Instructions<br>authorizing disposal by a third party can only be cancelled or altered if the<br>original of this document is surrendered to the Company, and then only<br>provided the Company have not yet received instructions under the<br>original authority. The Company does not act as Carrier but a forwarding<br>agent only.<br>NO. OF ORIGINAL FORWARDER'S CARGO RECEIPT ISSUED: **1**<br>(Terms and conditions are to be continued to the reverse side hereof.) | (Place and date of issue.)<br>**YUSEN LOGISTICS**<br><br><br>As Agent<br><br>(Authorized Signature)     VI |

Forwarders' Cargo Receipt

Terms and Conditions

**1. DEFINITIONS**

1.1. "Company" means Yusen Logistics Global Management (Hong Kong) Limited trading or any of its affiliate entities issuing these Conditions in its capacity as an origin services provider for its customer who is the ultimate consignee of this shipment.

1.2. "Conditions" means the entire undertakings, terms, conditions, and clauses embodied herein, and includes terms and conditions on the front and any Shippers' instructions received in writing at the time of receipt.

1.3. "Shipper" means the vendor tendering items to Company for Services and any person at whose request or on whose behalf Shipper undertakes any tender of those cargoes to Company.

1.4. "Shippers' Instructions" means any of Shipper's specific written shipping instructions or requirements delivered to Company at the time of receipt of the cargoes.

1.5. "Laws" means any laws, statutes, regulations, or conventions which apply compulsorily to any element of the Services or any subject matter incidental to these Conditions.

1.6. "Services" means the origin services to be provided by Company and includes the receipt of cargoes from Shipper and subsequent arranging for the storage, warehousing, collection, delivery, local transportation, insurance, customs clearance, packing, unpacking, and other handling of goods and other services intended to accomplish delivery of the cargoes to Company, the ultimate consignee.

1.7. "Owner" means the owner of the cargoes (including any package, containers, or equipment other than those provided by Customer or carriers) to which any business concluded under these Conditions relates and any other person who is or may become interested in them depending upon the commercial terms of sale and including the ultimate consignee.

**2. COMPULSORY LEGISLATION AND STATUTORY PROTECTION**

2.1. In the event that any provisions contained herein are inconsistent with any Laws that apply compulsorily to any element of the Services, those provisions, to the extent of such inconsistency, shall be null and void in relation to such element of the Services by Company, but the remaining provisions of this forwarders' certificate of receipt ("FCR") shall remain valid and enforceable.

2.2. Nothing in these Conditions shall operate to limit or deprive Company of any statutory protection, defense, exception, or limitation of liability authorized by any applicable Laws.

2.3. Any and all advice information or Services provided by Company gratuitously is provided on the basis that Company will not accept any liability whatsoever therefore, whether in tort, bailment, or otherwise.

**3. SHIPPER'S WARRANTIES**

3.1. Shipper warrants as follows:

a) By accepting these Conditions, Shipper agrees to be bound by all stipulations, exceptions, terms, and conditions on the front and back hereof, whether written, typed, stamped, or printed, as fully as if signed by Shipper;

b) By accepting these Conditions and agreeing to the terms hereof, Shipper is, or is the agent of and has the authority of, the Owner or person owning or entitled to the possession of the cargoes or of the person who is or may become interested in the cargoes;

c) The description and particulars relating to the cargoes set out on the front hereof: (a) have been checked by Shipper on receipt of these Conditions; and (b) are full and accurate;

d) The cargoes contain no drugs, prohibited or stolen goods, contraband, or other illegal material or substance or stowaways;

e) The cargoes have been properly and sufficiently prepared, packed, stowed, labelled, and/or marked by or on behalf of Shipper, and the preparation, packing, stowage, labelling, and/or marking are appropriate to the storage, handling, and any operations or transactions that may affect the cargoes and are in compliance with all applicable Laws;

f) Shipper complies with all Laws, requirements, directions, recommendations, rules, guidelines of customs, port, import, export, and other authorities;

g) Shipper shall provide the total gross mass established using calibrated and certified equipment of each packed Container (FCL) or each package of cargoes (LCL) in accordance with SOLAS. Shipper acknowledges and agrees that Company will rely on the accuracy and timeliness of such gross mass information and will use this to comply with its obligations in accordance with SOLAS.

h) Proper Packing, etc.: All the cargoes, the subject of any Service provided by Company, have been properly and sufficiently packed and/or prepared, and that Company has no liability for any loss of or damage to cargoes which are improperly or insufficiently packed or prepared, no matter how such loss or damage is caused.

i) Transport Unit: Where the cargoes delivered by or on behalf of Shipper are already carried in or on containers, trailers, flats, tilts, railway wagons, tanks, igloos, or any other unit load device (each hereafter referred to as a "transport unit") then:

i) The transport unit is in good condition, is suitable to carry the goods loaded therein or thereon, and is suitable for the intended carriage and other handling; and

ii) The cargoes are suitable for carriage and other handling in or on the transport unit and has been properly and competently packed or loaded in or on the transport unit.

j) Description of Cargoes: All descriptions, values, and other particulars of the goods furnished to Company are true, complete, and accurate, it being the duty of Shipper to provide such information to Company and to ensure that such information is true, complete, and accurate.

k) Fitness of Cargoes: The cargoes are fit and suitable for the carriage (international as well as local), storage, packing, unpacking, and other handling in accordance with, pursuant, related, or incidental to Shipper's Instructions.

l) Delivery of Cargoes: The consignee or other person entitled to the delivery of the goods shall take delivery of the goods upon their arrival at destination and shall pay all necessary charges, taxes, and duties and shall comply with all necessary formalities and procedures.

**4. DANGEROUS GOODS**

4.1. Cargoes tendered by Shipper to Company are not of such nature that they are or may become dangerous, hazardous, noxious (including radioactive materials), inflammable, explosive, or which do or may present a risk of damage to any property or person whatsoever ("Dangerous Goods") unless Shipper, or someone acting on its behalf, has given Company written notice of the nature of the Dangerous Goods prior to Company's receipt of such Dangerous Goods and Company has expressly accepted in writing to deal with the Dangerous Goods. Shipper's notice will include all information necessary for Company to perform its obligation in connection with the Dangerous Goods in accordance with all applicable Laws or requirements (or any combination of the foregoing), including without limitation information about the characteristics of the Dangerous Goods, the appropriate manner and method of storage and handling of the Dangerous Goods.

4.2. Any Dangerous Goods must be distinctly marked on the outside so as to indicate the nature and characteristics of the Dangerous Goods and so as to comply with all Laws.

4.3. Additional charges may apply to the storage and handling of Dangerous Goods. If any Dangerous Goods are tendered in breach of this Section, they may, at any time or place be unloaded, destroyed, disposed, abandoned, or rendered harmless, as circumstances may require, at Shipper's cost.

**5. COMPANY'S AUTHORITY**

5.1. SHIPPER ACKNOWLEDGES AND AGREES THAT COMPANY'S: A) ROLE IS SOLELY THAT OF ORIGIN SERVICES PROVIDER, AND THAT COMPANY WILL NOT UNDER THESE CONDITIONS PERFORM IN THE CAPACITY OF A CARRIER, NON-VESSEL-OPERATING COMMON CARRIER, CUSTOMS HOUSE BROKER, OR AS A SHIPPER AS THAT TERM IS UNDERSTOOD UNDER APPLICABLE LAWS; B) CUSTOMER IS THE ULTIMATE CONSIGNEE OF THE CARGOES PROVIDED BY SHIPPER TO COMPANY UNDER THESE CONDITIONS AND CUSTOMERWILL BE EXEMPTED AS THE LAWFUL SHIPPER FOR INTERNATIONAL OCEAN CARRIAGE; AND C) SERVICES ARE DELIVERED AS A CONVENIENCE TO SHIPPER IN ITS TRANSACTION WITH THE ULTIMATE CONSIGNEE AND FOR WHICH COMPANY IS ENTITLED TO COLLECT FROM SHIPPER FOR THOSE SERVICES RENDERED AT ORIGIN.

5.2. Company is authorized to depart or deviate from Shipper Instructions in any respect if in the opinion of Company such departure or deviation is necessary or desirable in Shipper's interests or is expedient.

5.3. Company is authorized by Shipper to act or to enter into any contract or arrangement with third-parties for performance of the Services without prior consultation with or further authorization from Shipper.

5.4. Company is authorized to agree with any 3rd Party the charges payable to such 3rd Party without reference to or further authorization from Shipper, it being agreed that the difference between the charges payable by Company to 3rd Party(ies), and the charges payable by Shipper to Company is Company's commission or remuneration or profit. Shipper waives any and has no right of enquiry of the charges payable to 3rd Party(ies) and Company is not under any duty to account to Shipper for Company's commissions, remunerations, or profits.

5.5. Company is authorized (but not obligated) to inspect or arrange for cargoes to be inspected.

5.6. Company is authorized to arrange for Shipper's goods to be carried, forwarded, packed, unpacked, stored, or handled separately. Company is authorized (but not obliged) to consolidate or arrange to be consolidated cargoes of Shipper with other goods.

5.7. Shipper expressly agrees to be bound in all respects by any act, contract, or arrangement entered into by Company with third-parties pursuant to the aforesaid authorizations. Company is not and does not act as Shipper's agent with respect to any cargoes or shipments under these Conditions, and Company does not accept any such purported appointment of agency.

**6. LIABILITY AND LIMITATIONS**

6.1. SHIPPER ACKNOWLEDGES AND AGREES THAT IT HEREBY WAIVES ALL CLAIMS AGAINST

a) A force majeure event;

b) Strike, lock-out, stoppage or restraint of labor, the consequences of which Company is unable to avoid by the exercise of reasonable diligence;

c) Any cause or event which Company is unable to avoid and the consequences whereof Company is unable to prevent by the exercise of reasonable diligence; or

d) Compliance with instructions or directions of Shipper or the consignee or any person authorized to give them.

6.4. Amount of Compensation - Subject to these Conditions, if Company is liable for loss of or damage to cargoes, the liability of Company shall be limited to the lesser of:

a) The landed cost at the destination of only those cargoes damaged or lost (excluding insurance); or

b) Two (2) SDRs per kilo of the gross weight of any cargoes lost or damaged.

6.5. No insurance will be arranged by Company for the benefit of Shipper.

6.6. Entire Liability – Except as set forth in this Section, Company shall not be liable for loss of or damage to any cargoes or have any liability whatsoever for any events arising out or in connection with the storage and handling of cargoes and/or this FCR.

6.7. Application of Defenses, Limits, and Exclusions of Liability - The defenses, limits and exclusions of liability provided for in these Conditions of receipt shall apply in any action against Company arising out of or in connection with the Services (including loss or damage to cargoes) and whether the action be founded in contract, bailment, tort, breach of express or implied warranty, or otherwise, even if the loss or damage arose as a result of negligence, willful misconduct, or fundamental breach of contract.

6.8. By special arrangement which must be agreed to in writing, Company may accept liability in excess of the limit set forth herein if Shipper agrees to pay, and has paid, Company's additional charges for accepting such increased liability.

**7. INDEMNITY**

7.1. Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses (including without limitation all duties, taxes, imposts, levies, deposits, fines, and outlays of whatsoever nature levied by any authority) arising out of Company acting in accordance with Shipper's instructions, or arising from a breach of warranty or obligation by Shipper, or arising from Shipper's inaccurate or incomplete or ambiguous information or instructions, or arising from the negligence of Shipper or Owner.

7.2. Advice and information, in whatever form as may be given by Company, are provided by Company for Shipper only and Shipper shall save harmless and indemnify and keep indemnified Company from and against all claims, liabilities, losses, damages, costs, and expenses arising out of any other person relying on such advice or information. Except under special arrangements previously made in writing, advice, or information which is not related to specific instructions accepted by Shipper is provided gratuitously and without liability.

7.3. Shipper undertakes that no claim shall be made against any officer, servant, agent, or sub-contractor of Company which imposes or attempts to impose upon them any liability in connection with any Services provided or to be provided by Company. If any such claim should nevertheless be made Shipper shall indemnify Company against all consequences thereof. Without prejudice to the foregoing every such officer, servant, agent, and sub-contractor shall have the benefit of all provisions herein benefiting Company as if such provisions were expressly for his or its benefit. For the foregoing purposes, Shipper contracts for itself as well as agents for all the aforesaid persons.

7.4. Shipper shall defend, indemnify, and hold harmless Company from and against all claims, costs, and demands whatsoever and by whomsoever made or preferred in excess of the liability of Company under the terms of these Conditions, and without prejudice to the generality of the foregoing this indemnity shall include (without limitation) all claims, costs, and demands arising from or in connection with the negligence of Company, its officers, servants, agents, or sub -contractors.

**8. WAREHOUSING**

8.1. Pending release of the cargoes after provision of Services at origin, cargoes may be warehoused or otherwise held at the risk of Shipper or the Owner at any place at the sole discretion of Company and the cost therefore shall be for the account of Shipper.

**9. DECLARED VALUE**

9.1. Company shall not be obliged to make any declaration for the purpose of any statute or convention or contract as to the nature or value of any goods or as to any special interest in delivery unless express instructions to writing were previously given to and accepted by Company. A mere statement or declaration of the value or nature of cargoes for insurance or export or customs or other purposes is not and shall not be construed to be Shipper's instructions to Company to make any such declaration.

**10. SHIPPER'S OBLIGATION TO PAY DUTIES, TAXES, ETC.**

10.1. Shipper shall be liable for any duties, taxes, levies, deposits, or outlays of any kind levied by the authorities at any port or place for or in connection with cargoes and for any payments, storage, demurrage, fines, expenses, loss, or damage whatsoever incurred or sustained by Company in connection therewith.

**11. LIEN, DISPOSAL OF GOODS, ETC.**

11.1. Company shall have a general lien on all cargoes (and documents relating thereto) and any other property belonging to Shipper, directly or indirectly in Company's possession, custody, control, or enroute for all monies due to Company and/or its affiliates from Shipper or the ultimate consignee. Company may at its sole discretion exercise its lien at any time and at any place. The lien shall cover without limitation all charges, expenses, and advances of whatsoever nature due to Company and/or its affiliates and inclusive of any costs incurred enforcing and preserving its lien (including but not limited to storage charges) and in recovering or attempting to recover any sums due from Shipper or the ultimate consignee (whether in respect of the storage and handling herein or otherwise).

11.2. Company shall be entitled to sell (at any time and at any place) at the costs of Shipper cargoes and/or any such other property by private treaty or by public auction or other means, without giving prior notice or incurring any liability to Shipper and to apply the proceeds of such sale (net of expenses) in or towards the payment of any amount due to Company. Company shall be entitled to claim the difference against Shipper or the ultimate consignee in the event that the (net) sale proceeds do not discharge in full the amount due from Shipper or the ultimate consignee. Company's lien shall survive delivery or deemed delivery of cargoes.

11.3. Perishable cargoes which are not taken up immediately upon arrival or which are insufficiently addressed or marked or otherwise not readily identifiable, may be sold or otherwise disposed of without any notice to Shipper or the Owner and payment or tender of the net proceeds of any sale after deduction of charges and expenses shall be equivalent to delivery. All charges and expenses arising in connection with the sale or disposal of cargoes shall be paid by Shipper.

11.4. The rights of Company under this Section are independent and cumulative.

**12. RATES AND CHARGES**

12.1. Shipper is directly and primarily liable for the payment of all charges owed to Company in performance of the Services at origin for its benefit. Shipper shall pay to Company all sums immediately when due without deduction or deferment on account of any claim, counterclaim, or set - off.

12.2. Company at its discretion may request an advance to cover fees, duties, charges, taxes, and/or other expenses payable before Shipper's invoice is rendered. Forthwith upon such request being made, Shipper shall make such advance to Company.

12.3. On all amounts overdue to Company, Company shall be entitled to interest calculated on a monthly basis from the date such accounts are overdue until payment thereof at 2% per month (compounded monthly) during the period that such amounts are overdue.

**13. NOTICE OF CLAIM**

13.1. Any claim against Company must be in writing and delivered to Company at its registered office or its principal place of business in Hong Kong within 3 days of:

a) In the case of damage to goods, the date of delivery of cargoes;

b) In the case of loss or non-delivery or mis-delivery of cargoes, the date that cargoes should have been delivered; and

c) In any other case, the date of the event giving rise to the claim.

13.2. No action shall lie against Company if the claim is not made within the times and in the manner specified herein.

**14. TIME BAR**

14.1. Any right of action against Company shall be extinguished if suit is not brought in the proper forum and written notice thereof received by Company within three 3 months from the date cargoes arrived at the destination or the date cargoes should have arrived at the destination (whichever date is the earlier).

**15. NO COLLECT ON DELIVERY (C.O.D.) SHIPMENTS**

15.1. Shipper agrees that: (a) Company shall have no obligation to Shipper whatsoever related to Collect on Delivery (C.O.D.) shipments and commensurate obligations for collection of bank drafts or otherwise, or to collect on any specified terms by time drafts or otherwise; and (b) Shipper bears all risk for the payment of costs and/or collection of the invoice price from its customer and the consignee.

**16. GOVERNING LAW**

COMPANY: (A) FOR DAMAGE TO CARGOES, EXCEPT TO THE EXTENT CONSIGNEE CAN PROVE THAT SUCH HARM OCCURRED WHILE SUCH CARGOES WERE IN THE CARE, CUSTODY, AND CONTROL OF COMPANY DURING PERFORMANCE OF THE SERVICES PURSUANT TO THESE CONDITIONS; (B) RELATED TO THE RELEASE OF THE CARGOES TO THE CONSIGNEE OR OTHER PARTIES INCLUDING CARRIERS AND SERVICE PROVIDERS; AND (C) FOR LOSS OF PROFIT, LOSS OF SALES, LOSS OF BUSINESS, LOSS OF GOODWILL OR REPUTATION, THIRD-PARTY CLAIMS OF ANY NATURE, OR ASSERTING SPECIAL, PUNTIVE, INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND.

6.2    Company's liability for the cargoes, if any, shall be determined and limited in accordance with this Section.

6.3    Liability for Loss or Damage to Cargoes – Without prejudice to any other right or remedies Company may have, Company shall be relieved of liability for any loss or damage to cargoes if, and to the extent that, such loss or damage is caused by:

to these Conditions or any act or of the Company and/or its agent shall be governed by and construed according to the laws of the Hong Kong Special Administrative Region. Any dispute arising out of these Conditions or any such act or contest shall be subject to the non exclusive jurisdiction of the courts of the Hong Kong Special Administrative Region.

日邮物流(中国)有限公司青岛分公司
**Yusen Logistics(China) Co.,Ltd.  Qingdao branch**

**Yusen Logistics**

地址：山东省青岛市南区延安三路121号 融信月际中心24层
电话：0532-66233152
邮箱：Jobs.shifen.yusen-logistics.com

## 订舱确认（Booking Confirmation）

BIG LOTS STORES

| | | |
|---|---|---|
| 收件单位：SHANDONG TAIPENG INTELLIGENT | 截关日期：2024/11/27 10:00:00 | 截单日期：2024/11/26 12:00:00 |

**关单号：** 00LU2304925440

| | | |
|---|---|---|
| 船名航次：EVER LEADING/1190E | 承运人：东方海外货柜航运有限公司 | 运输条款：CY-DOOR |
| ETD  2024/11/30 | 箱型箱量：3*40HC | （冷干千：否） |
| 起运港：QINGDAO | 卸货港：NEW YORK | 交货地：TREMONT |
| 船代：青岛港国际物流有限公司 | | |
| 场站信息：东港场站 | https://www.qingdao-port.net/hycx1/index.html?201911081#/wlzz/crtxcz | |

**注意事项：**

01、从2003年2月1日开始，美国已正式实行AMS，请提醒所有工厂，在我司入货通知截单时间之前提交e-CLP及所有准确信息。晚于截单时间导致的责任风险及费用由贵司承担。晚于截单时间提出更改提单任何内容，都将产生改单费。从2011年1月1日开始，欧盟已正式实行ENS，请提醒所有工厂，在我司入货通知截单时间之前提交e-CLP及所有准确信息。晚于截单时间导致的责任风险及费用由贵司承担。晚于截单时间提出更改提单任何内容，都将产生改单费。

02、收到SO后，请核对数据、柜型、柜量、目的港等信息，如有错漏，请及时告知，否则产生多余费用，请自行吸收。

03、车队背箱请核对系场站核实放箱情况，若未核实产生额外费用我司概不负责。请务必在提箱前核实最新免费提使用。

04、请于截单日期前，在系统提交e-Load Plan和VGM。***我司是一次性补料，如第一次提交后需再次修改，或第二次提交后需再次修改，我司将会收取改单费*** ***如不能及时提交SI，请提前申请。如未申请将晚于SI截止时间，将产生额外费用***

05、如有任何分票请于截单前通知我司，并提供分票分箱明细，否测默认一票报关。分箱明细请于截单及截港前邮件发至我司，以免产生改单费用。

06、如委托我司报关，请于截单时与操作联系，以便取得链接上传出口报关单据。

07、请务必提醒与我司核实预配单品名，船公司要求须与提单品名保持完全一致。

08、目的港清关文件请在客人规定的日期内提交，否测发货人需承担各入规定的罚款。

09、如为内点装箱，请提前告知，并邮件提供准确确件重以，以便封箱截单。若无通知，默认为背箱操作。

10、入货通知显示标注截港时间为船公司目前预计时间，请以码头实时更新的实际计划为准。

11、如需我司收费标准，请由货前咨询。一旦货物出运我司将默认贵司接受我司收费标准。

------------------------------------------------------------

00CL需要车队凭象装箱提取检查代码自行申请EIR放箱并注意用箱时间。

*如果是单件过吨的务必记得及时提供保函和照片，以便发稿前审核，审核通过后才能集港

*单件过吨，有时需及国外铁路审核，请提供需国外铁路管复，有审核批时间可能会较长(周末船司不上班)；有了保函和加固照片请务必尽早提供

*单件过吨的，一旦审核不合格用箱之后的相关费用需要客人自己承担，如果客人接受是由于不批复所产生的费用可正常用箱。

**SHIPPING ADVICE** ----------------------------------------------------

免堆倍8天
免堆存7天  请勿过早返场
港箱护始站点  4099

**货物数据明细**

| SO# | PO# | SUBMISSION# | 件数 | 毛重 | 体积 |
|---|---|---|---|---|---|
| TAOT1004452 | 95575100 | CNS-2411789 | 264 | 48888 | 196.71 |
| | | | 264 | 48888 | 196.71 |

2024/11/20

 **中华人民共和国海关出口货物报关单**  

| 预录入编号:433020240000022051 | | 海关编号:433020240000022051　　　(泰安海关) | | 仅供核对用 | | | 页码/页数:1/1 | |
|---|---|---|---|---|---|---|---|---|
| 境内发货人 (91370983738196054N)<br>山东泰鹏智能家居股份有限公司 | | 出境关别 (4218)<br>青开发区 | | 出口日期<br>20241203 | 申报日期<br>20241201 | | 备案号 | |
| 境外收货人<br>CLOSEOUT DISTRIBUTION, LLC | | 运输方式 (2)<br>水路运输 | | 运输工具名称及航次号<br>EVER LEADING/1190E | 提运单号<br>OOLU2304925440 | | | |
| 生产销售单位 (91370983738196054N)<br>山东泰鹏智能家居股份有限公司 | | 监管方式 (0110)<br>一般贸易 | | 征免性质 (101)<br>一般征税 | 许可证号 | | | |
| 合同协议号<br>YT24-389 | | 贸易国 (地区) (USA)<br>美国 | | 运抵国 (地区) (USA)<br>美国 | 指运地 (USA000)<br>美国 | | 离境口岸 (370201)<br>黄岛 | |
| 包装种类 (99/22)<br>其他包装/低制成纤维板制盒/箱 | | 件数<br>264 | 毛重(千克)<br>47342.4 | 净重(千克)<br>43401.6 | 成交方式 (3)<br>FOB | 运费 | 保费 | 杂费 |
| 随附单证及编号 | | | | | | | | |

标记唛码及备注
备注:PO#; SKU#; DEPT#; COUNTRY OF ORIGIN:CHINA　集装箱标箱数及号码:6;TRHU5986543;TXGU8053279;TEMU6472294;

| 项号 | 商品编号 | 商品名称及规格型号 | 数量及单位 | 单价/总价/币制 | 原产国(地区) | 最终目的国(地区) | 境内货源地 | 征免 |
|---|---|---|---|---|---|---|---|---|
| 1 | 6306220090 帐篷 | 3 \| 庭院用帐篷 \| 铁支架50%铝支架20%全涤帷布30%<br>\| Broyhill \| 95575100 | 264件<br>43401.6千克<br>264件 | 605.8800<br>159952.32<br>美元 | 中国<br>(CHN) | 美国<br>(USA) | (37099)泰安 照章征税<br>(1) | |

| 特殊关系确认:否 | | 价格影响确认:否 | | 支付特许权使用费确认:否 | 公式定价确认: | 暂定价格确认: | | 自报自缴:否 | | 水空中转: |
|---|---|---|---|---|---|---|---|---|---|---|
| 报关人员 | 报关人员证号43000535 | | 电话 | | 兹申明对以上内容承担如实申报、依法纳税之法律责任<br>申报单位(签章) | | | 海关批注及签章 | | |
| 申报单位 (91370983738196054N)山东泰鹏智能家居股份有限公司 | | | | | | | | | | |



**PO #**     **95575099**

| | |
|---|---|
| Date Created | 08/16/2024 |
| Version: | 2 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 11/25/2024 |
| Cancel if not Shipped by: | 12/02/2024 |
| Must be Routed by: | 11/04/2024 |
| Payment Terms: | 1% Net 30 Days |
| Freight Terms: | Collect |
| FOB: | QINGDAO   , CN |

See attached Terms and Conditions for additional Big Lots requirements.
A complete list of requirements can be found on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633     Fax:  334-286-7024

---

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800     Fax: 614-278-6871

---

**Purchase From Vendor:  5006181**

SHANDONG TAIPENG INTELLIGENT HOUSEH
NINA GENG
GONGYE YI ROAD 136
271600 FEICHENG
CHINA
Contact:    NINA GENG
Telephone:          Fax
E-Mail:     NINA.GENG@TAIPENGCHINA.COM

---

**ADDITIONAL COMMENTS**

---

Vendor Signature    _____

Signee's Name    _____

Title    _____

Date    _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 176 | 263,998.24 | 107,712.00 | 43.099 |

OFFICE-COPY



OFFICE-COPY    **IMPORTANT Terms and Conditions**    PO#: 95575099

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.       Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.       Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.       Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.       Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.       Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.       Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.       Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.       Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.       Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes



OFFICE-COPY

**IMPORTANT Terms and Conditions**

PO#:  95575099

Page 3 of 6

title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for such Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoicing payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other United States governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or take or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used; (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or

 **OFFICE-COPY** | IMPORTANT Terms and Conditions | PO#: 95575099
Page 4 of 6

securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such Information and further written certifications as Buyer may request from time-to-time to assist Buyer's efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.
15. Indemnification.  Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,
description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.
16. Insurance.  Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence.  Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and  (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.
17. Cumulative Remedies.  Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.
18. Force Majeure.  Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control.  In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.
19. Use of Goods; Content & Marks.  Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion.  Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail
operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.
20. Assignment & Subcontracting.  Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer.  Any purported assignment or delegation made without this consent is void.  Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion.  In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation.  Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives.  Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.
21. Governing Law; Venue; Jury Waiver; and Arbitration.  The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms.  Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum.  The parties hereby agree to waive a trial by jury with respect to Disputes.  Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations.  The location of such arbitration will be in Columbus, Ohio.  Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree.  The parties may also mutually elect to seek mediation as an alternative precursor to arbitration.  If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply.  The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree.  The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.
22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.
23. Entire Agreement.  The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof.  The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor.  The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer.  Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (q) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.
24. No Third-Party Beneficiaries.  Certain sections of the PO Terms are for the benefit of Buyer's Affiliates.  As a result, any of Buyer's Affiliates may enforce the PO Terms.  Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.
25. LIMITATION OF LIABILITY.  EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.
26. Acceptance of PO Terms.  Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:  95575099

Page 5 of 6

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ,
UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO
TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED
TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER
OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license,
permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary
to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and
accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other
documentation necessary for their proper classification and importation into the United States and clearance through
United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 210 | 810775523 | COMBO RUSHFORD 10X | 0.00 | CN | 1 | | 176 | 612.00 | 150,217.76 | 01/13/2025 |
| 21034 | TPGAZ25120 | GAZEBO | | | 1 | | 176 | 241.51 | 263,998.24 | |
| 21034001 | Broyhill | | 051 | | | | | 1,499.99 | 43.507 | 2699.00 |
| 1 | 481077552300 | | GRM | 27.362 | UPC | | | | | |
| –>> The | above assortment | (810775523) | consists of | | | | | | | 01/13/2025 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 210 | 810775434 | RUSHFORD 10X12FT ME | 0.00 | CN | | | 176 | 178.00 | 31,328.00 | 01/13/2025 |
| 21034 | TPGAZ25120-2 | GAZEBO | | | | | 176 | | 88,000.00 | |
| 21034001 | Broyhill | | 051 | | | | | 500.00 | 64.400 | 1199.00 |
| 2 | 481077543407 | | | 12.586 | UPC | | | | | |
| 210 | 810775473 | RUSHFORD 10X12FT ME | 0.00 | CN | | | 176 | 434.00 | 76,384.00 | 01/13/2025 |
| 21034 | TPGAZ25120-1 | GAZEBO | | | | | 176 | | 175,998.24 | |
| 21034001 | Broyhill | | 051 | | | | | 999.99 | 56.600 | 1500.00 |
| 3 | 481077547306 | | | 14.775 | UPC | | | | | |
| *–End of | assortment list | for -810775523 | | | | | | | | 01/13/2025 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |

# SHANDONG TAIPENG INTELLIGENT HOUSEHOLD

Seller reference

# PRODUCTS CO., LTD

136 GONGYEYI ROAD, FEICHENG, SHANDONG, 271600, CHINA

---

# INVOICE

---

**Invoice No.:** YT24-391

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB QINGDAO

**Country of Origin:** CHINA

**Vessel / Voyage:** OOCL BAUHINIA / 001E

**Ship on or about:** December 02, 2024

**Invoice Date.:** November 30, 2024

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** QINGDAO

**Port of Entry:** LONG BEACH, CA

**Destination:** LONG BEACH, CA

**Container Number (Factory Load) :** FCIU9679166, TGBU8612055

| Cargo Description | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|
| P/O No.: 95575099 | 176 | EA | 612.000/EA | 107,712.000 |
| SKU No.: 810775523 | 176 | CTNS | | |
| COMBO RUSHFORD 10X12FT METAL LOUVERED ROOF PERGOLA | No. of Pallet: | | | |
| HTS Code.: 7308909590 | | | | |
|     Manufacturer Name & Address | | | | |
|     SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD. HIGH-NEW TECH DEVELOPMENT FEICHENG SD 271600 CHINA FEICHENG, SHANDONG 271600, CHINA | | | | |
| Total: (176 CTNS) | 176 | | | 107,712.000 |
| TOTAL (USD) DOLLARS : ONE HUNDRED SEVEN THOUSAND SEVEN HUNDRED TWELVE ONLY. | | | | |

**Consolidator(Full Name & Address)**
SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD.
HIGH-NEW TECH DEVELOPMENT FEICHENG SD 271600 CHINA
FEICHENG , SHANDONG
271600 CHINA
Container No./Seal/Size:
FCIU9679166/OOLJVW8999/40H
TGBU8612055/OOLJVZ2525/40H

**Container Stuffing Location(Full Name & Address )**
SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD.
HIGH-NEW TECH DEVELOPMENT FEICHENG SD 271600 CHINA
FEICHENG , SHANDONG
271600 CHINA
Container No./Seal/Size:
FCIU9679166/OOLJVW8999/40H
TGBU8612055/OOLJVZ2525/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**
PO#:
SKU#:
DEPT#:
COUNTRY OF ORIGIN:CHINA

SHANDONG TAIPENG INTELLIGENT
HOUSEHOLD PRODUCTS CO., LTD.

SHI FENG /PRESIDENT

# SHANDONG TAIPENG INTELLIGENT HOUSEHOLD

Seller reference

# PRODUCTS CO., LTD

136 GONGYEYI ROAD, FEICHENG, SHANDONG, 271600, CHINA

---

# PACKING LIST

**Invoice No.:** YT24-391

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB QINGDAO

**Country of Origin:** CHINA

**Vessel / Voyage:** OOCL BAUHINIA / 001E

**Ship on or about:** December 02, 2024

**Invoice Date.:** November 30, 2024

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Payment Term / OAT #(Open Account Transaction):**

**L/C Number:** TT

**Port of Loading:** QINGDAO

**Port of Entry:** LONG BEACH, CA

**Destination:** LONG BEACH, CA

**Container Number (Factory Load) :** FCIU9679166, TGBU8612055

| Cargo Description | | Quantity (Unit) | | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|---|
| P/O No.: 95575099 | | 176 | EA | 28,934.40 | 31,561.60 | 130.760 |
| SKU No.: 810775523 | | 176 | CTNS | | | |
| COMBO RUSHFORD 10X12FT METAL LOUVERED ROOF PERGOLA | No. of Pallet: | | | | | |
| HTS Code.: 7308909590 | | | | | | |
| **Total:** | **(176 CTNS)** | **176** | | **28,934.40** | **31,561.60** | **130.760** |

**Consolidator(Full Name & Address)**
SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD.
HIGH-NEW TECH DEVELOPMENT FEICHENG SD 271600 CHINA
FEICHENG , SHANDONG
271600 CHINA
Container No./Seal/Size:
FCIU9679166/OOLJVW8999/40H
TGBU8612055/OOLJVZ2525/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

PO#:
SKU#:
DEPT#:
COUNTRY OF ORIGIN:CHINA

**Container Stuffing Location(Full Name & Address )**
SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD.
HIGH-NEW TECH DEVELOPMENT FEICHENG SD 271600 CHINA
FEICHENG , SHANDONG
271600 CHINA
Container No./Seal/Size:
FCIU9679166/OOLJVW8999/40H
TGBU8612055/OOLJVZ2525/40H

SHANDONG TAIPENG INTELLIGENT
HOUSEHOLD PRODUCTS CO., LTD.

SHI FENG /PRESIDENT





设备交接单 ⊘

提单号：00LU2751600950

箱　号：TGBU8612055

铅封号：00LJVZ2525

电　话：

装货工厂签章

请装货司机使用微信绑定的
手机号，扫描二维码填写货
名及件重等信息

## SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD

ADDRESS:NO.136 OF INDUSTRY 1 ROAD FEICHENG CITY SHANDONG PROVINCE 271600 CHINA

# COMMERCIAL INVOICE

**TO:** CSC DISTRIBUTION, LLC

2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA

INVOICE NO: **YT24-391**

Date:      25/Nov/2024

Purchase Order Number

95575099

| Art. No. | Product / DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | | | FOB QINGDAO PORT IN CHINA | |
| | COMBO RUSHFORD 10x12FT METAL LOUVERED ROOF PERGOLA | | | |
| 95575099 | | 176 | 612 | 107712 |
| | | | Discount | 1077.12 |
| | | | | |
| | | | | |
| | | 176 | | $106,634.88 |

**AMOUNT**

SHANDONG TAIPENG INTELLIGENT
HOUSEHOLD PRODUCTS CO., LTD.

SHI FENG /PRESIDENT

### SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD
ADDRESS:NO.136 OF INDUSTRY 1 ROAD FEICHENG CITY SHANDONG PROVINCE 271600 CHINA

# PACKING LIST

TO:    CSC DISTRIBUTION, LLC               INVOICE NO: YT24-391

          2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA    Date: 25/Nov/2024

                                        Purchase Order Number

                B/L NO:    OOLU2751600950        95575099

| PO. NO. | QTY SETS | CTNS | 净重/箱 | TTL N.W | 毛重/箱 | TTL G.W | 体积/箱 | MEAS. |
|---|---|---|---|---|---|---|---|---|
| | | CTNS | | ( Kgs ) | | ( Kgs ) | | ( CBM ) |
| 95575099 | | COMBO RUSHFORD 10x12FT METAL LOUVERED ROOF PERGOLA | | | | | | |
| 810775523 | 88 | 88 | 85.2 | 7497.60 | 92.30 | 8198.40 | 0.396 | 39.87 |
| | | 88 | 79.2 | 6969.60 | 85.30 | 7582.40 | 0.233 | 25.51 |
| | | 88 | | 14467.20 | | 15780.80 | | 65.38 |
| 1.CONTAINER NO:FCIU9679166     SEAL NO:OOLJVW8999 | | | | | | | | |
| 810775523 | 88 | 88 | 85.2 | 7497.60 | 92.30 | 8198.40 | 0.396 | 39.87 |
| | | 88 | 79.2 | 6969.60 | 85.30 | 7582.40 | 0.233 | 25.51 |
| | | 88 | | 14467.20 | | 15780.80 | | 65.38 |
| 2.CONTAINER NO: TGBU8612055  SEAL NO: OOLJVZ2525 | | | | | | | | |
| TOTAL: | | 176 | | 28934.40 | | 31561.60 | | 130.76 |

SHANDONG TAIPENG INTELLIGENT
HOUSEHOLD PRODUCTS CO.,LTD

SHI PENG /PRESIDENT

托盘 一个柜子8拖，1托11套
托盘尺寸

2.96*1.07*2.395

177.6

1972.6

15780.8

日郵物流(中国)有限公司青岛分公司
Yusen Logistics(China) Co.,Ltd.  Qingdao branch


Yusen Logistics

## 订舱确认（Booking Confirmation）

BIG LOTS STORES

| | | |
|---|---|---|
| 收件单位: SHANDONG TAIPENG INTELLIGENT | 截关日期: 2024/11/30 0:00:00 | 截单日期: 2024/11/28 17:00:00 |

关单号: OOLU2751600950

| | | |
|---|---|---|
| 船名航次: CMA CGM BIG SUR/OMEJNW | 承运人: 东方海外货柜航运有限公司 | 运输条款: CY-CY |
| ETD  2024/12/02 | 箱型箱量: 2*40HC | (冷开干: 否) |
| 起运港: QINGDAO | 卸货港: LOS ANGELES | 交货地: LOS ANGELES |
| 船代: 青岛联合国际船舶代理有限公司 | | |
| 场站信息: 东港场站 | https://www.qingdao-port.net/hycx1/index.html?201911081#/wlzz/crtxcz | |

**注意事项:**
01. 从2003年2月1日开始，美国已正式实行AMS，请提醒所有工厂，在我司入货通知截单时间之前提交e-CLP及所有准确信息。晚于截单时间导致的责任风险及费用由贵司承担。晚于我司截单时间提出更改提单任何内容，都将产生改单费。从2011年1月1日开始，欧盟已正式实行ENS，请提醒所有工厂，在我司入货通知结单时间之前提交e-CLP及所有准确信息。晚于我司截单时间导致的责任风险及费用由贵司承担。晚于我司截单时间提出更改提单任何内容，都将产生改单费。
02. 收到SO后，请核对数据，柜型、柜量、目的港等信息，如有错漏，请及时告知，否则产生多余费用，请自行吸收。
03. 车队背箱前请联系场站核实放箱情况，若未核实产生额外费用我司概不负责。请务必在提箱前核实集港的最新免费箱使用期。
04. 请于截单日期前，在系统提交e-Load Plan和VGM。***我司是一次性补料，如果一次提交后需再次修改，我司将会收取改单费*** ***如不能及时提交SI，请提前申请。如未申请并晚于SI截止时间，将产生额外费用***
05. 如有任何分票请于截单前通知我司，并提供分票分票明细，否则缺少一票报关。分箱明细请于截单及截港前邮件发至我司，以免产生改单费用
06. 如委托我司报关，请于截单前操作联系，以便取得链接上传出口报关单据。
07. 请务必提醒与我司核实预配舱单品名，船公司要求须与提单品名保持统一。
08. 目的港清关关件请在客人规定的日期内提交，否则发货人需承担客人规定的罚款。
09. 如为内点装箱，请提前告知，并邮件提供准确箱件重兴，以便封箱疏单。无近通知，默认为背箱操作。
10. 入货通知所标注截港时间为船公司预计时间，请以码头实时更新的实际计划为准。
11. 如需我司收费标准，请由货前咨询。一旦货物出运我司将默认认可接受我司收费标准。

**YT24-391  BIGLOTS**
**PO:95575099**

OOCL需要车队凭集装箱提取检查代码自行申请EIR放箱并注意用箱时间。
*如果是单件过吨的务必记得及时提供保诸和照片，以便发箱可审核，审核通过后才能集港
*单件过吨，有时需发国外快路审核，请注意时候需等国外快路回复，有时审批时可能会校长(周末船司不上班)；有了保诸和加固照片请务必尽早提供
*单件过吨的，一旦审核不合格用箱之后的相关用箱时需要客人自己承担，如果客人接受由于不批复所产生的费用可正常用箱。

SHIPPING ADVICE
免箱使9天
提箱校验码: 3065

货物数据明细

| SO# | PO# | SUBMISSION# | 件数 | 毛重 | 体积 |
|---|---|---|---|---|---|
| TAOM1004419 | 95575099 | CNS-2411627 | 176 | 32592 | 131.14 |
| | | | 176 | 32592 | 131.14 |

2024/11/25



# 中华人民共和国海关出口货物报关单



★4330202400000022010★

| 预录入编号：4330202400000022010 | | 海关编号：433020240000022010 | （泰安海关） | 仅供核对用 | | | 页码/页数：1/1 |
|---|---|---|---|---|---|---|---|
| 境内发货人 (91370983738196054N)<br>山东泰鹏智能家居股份有限公司 | | 出境关别 (4218)<br>青开发区 | 出口日期<br>20241202 | 申报日期<br>20241130 | | 备案号 | |
| 境外收货人<br>CSC DISTRIBUTION, LLC | | 运输方式 (2)<br>水路运输 | 运输工具名称及航次号<br>CMA CGM BIG SUR/0MEJNW | 提运单号<br>OOLU2751600950 | | | |
| 生产销售单位 (91370983738196054N)<br>山东泰鹏智能家居股份有限公司 | | 监管方式 (0110)<br>一般贸易 | 征免性质 (101)<br>一般征税 | 许可证号 | | | |
| 合同协议号<br>YT24-391 | | 贸易国 (地区) (USA)<br>美国 | 运抵国 (地区) (USA)<br>美国 | 指运港 (USA000)<br>美国 | | 离境口岸 (370201)<br>黄岛 | |
| 包装种类 (99/22)<br>其他包装/纸制或纤维板制品/箱 | | 件数<br>176 | 毛重(千克)<br>31561.6 | 净重(千克)<br>28934.4 | 成交方式 (3)<br>FOB | 运费 | 保费 | 杂费 |
| 随附单证及编号 | | | | | | | |
| 标记唛码及备注 | | | | | | | |
| 备注：PO#: SKU#: DEPT#: COUNTRY OF ORIGIN:CHINA  集装箱标箱数及号码：4;FCIU9679166;TGBU8612055; | | | | | | | |

| 项号 | 商品编号 | 商品名称及规格型号 | 数量及单位 | 单价/总价/币制 | 原产国(地区) | 最终目的国(地区) | 境内货源地 | 征免 |
|---|---|---|---|---|---|---|---|---|
| 1 | 6306220090 | 帐篷<br>3|0|庭院用帐篷|铁支架50%铝支架20%全涤帷布30%<br>|Broyhill|95575099 | 176件<br>28934.4千克<br>176件 | 605.8800<br>106634.88<br>美元 | 中国<br>(CHN) | 美国<br>(USA) | (37099)泰安 照章征税 | (1) |

| 特殊关系确认：否 | 价格影响确认：否 | 支付特许权使用费确认：否 | 公式定价确认： | 暂定价格确认： | 自报自缴：否 | 水空中转： |
|---|---|---|---|---|---|---|
| 报关人员 | 报关人员证号43000535 | 电话 | 兹申明对以上内容承担如实申报、依法纳税之法律责任 | | | |
| 申报单位 (91370983738196054N) 山东泰鹏智能家居股份有限公司 | | | 申报单位（签章） | | | |

 **YUSEN LOGISTICS**

Submission No : CNS-2411627
Version Date : 11/5/2024 11:22:39 AM
Page 1 of 2

This document is issued as a receipt of cargo only and will not be negotiable unless the original is submitted to exchange for the Forwarder's Cargo Receipt which will be issued on request.

| Shipper/Exporter (Name & Address) | SHIPPING ORDER/DOCK RECEIPT | |
|---|---|---|
| SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD 136 GONGYEYI ROAD FEICHENG, SHANDONG, 271600, CN  Contact: SUNHU Tel:    0538-3308709 Fax:    0538-3305019 | **Port of Loading**  QINGDAO | |
| Consignee  CSC DISTRIBUTION, LLC 2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA | **Final Destination**  MONTGOMERY, AL | |
| | Freight :  COLLECT | Exp. Lic No.  NO |
| | Ship Term  FOB | Ship Mode  OCEAN |
| Notify Party  GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA | Estimate Delivery Date  CY 19 November 2024 | No. of Original Document Required  EFCR    1 |
| Also Notify | Declaration  THE SHIPMENT CONTAINS NO WOOD PACKAGING MATERIAL | |
| Shipper/Exporter Email :    18905388376@163.COM | | |
| Remarks : | | |

**REQUIRES D40H x 2 CONTAINERS ONLY**

The shipper certifies that the particulars of the face hereof are correct and agree to the terms and conditions.
Goods will be received by YUSEN LOGISTICS for Storage, Consolidation, Forwarding, or Shipment, subject to the Company's Standard
Trading Terms and Conditions, a copy is available upon request which in certain circumstances, limit or exempt the Company's liabilities.

 **YUSEN LOGISTICS**

Submission No : CNS-2411627
Version Date : 11/5/2024 11:22:39 AM
Page 2 of 2

| YL Shipping Order : | Export License will be Submitted : No |
|---|---|
| Tmast No.: | Fumigation Cert. will be Submitted : No<br>Fish & Wildlife Cert. will be submitted : No<br>Contains Pallet : No |

**PO Seller :SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD.**

Other Document will be submitted :

Product contains Wood Formaldehyde and complied with rules and orders under TSCA Title VI : Not Applicable

| P/O No. | Item No. | No. of pkgs | Cbm | Kilos | Qty |
|---|---|---|---|---|---|
| 95575099 | 810775523 | 176 CTN | 1310.76 | 31561.60 | 176 |
| | Manufacturer : SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD. | | | | |
| | Country of Origin : CN | | | | |
| | Ship Window : 11/25/2024 - 12/2/2024 Delivery Date : 1/13/2025 Cargo must be delivered within the indicated shipping window. | | | | |
| | TSCA Title VI Compliant : NA | | | | |
| P/O Total : | | 176 CTN | 130.76 | 31561.60 | 176 |

| Marks & Numbers | Description of Packages and Goods<br>Particulars Furnished by Shipper |
|---|---|
| PO#:<br><br>SKU#:<br>DEPT#:<br>COUNTRY OF ORIGIN:CHINA | COMBO RUSHFORD 10x12FT METAL LOUVERED ROOF PERGOLA |

| Total : | 176 CTN | 130.76 | 31561.60 | 176 |
|---|---|---|---|---|

| Total No. of Packages Received (In Words) | Measurement:<br><br>Weight: |
|---|---|

Yusen Logistics (Hong Kong) Limited expressly disclaims all and any liability to any person in respect of anything done or omitted, and the consequences of anything done or omitted, by any such person in reliance on the contents of this electronic Forwarders Cargo Receipt (eFCR). No part of these e-FCR Standard Operational Procedures may be reproduced, recast, reformatted or transmitted in any form by any means, electronic or mechanical, including photocopying, recording or any information storage and retrieval system, without the prior written permission from Yusen Logistics.





亚洋大亚场站设备交接单

请使用微信扫描二维码预约返重
并提交准确货名及件重尺数据

船名航次：士明/016E

提单号：ONEYTA4PTARI2600

箱号：NYKU5268377
箱型：40HC
铅封号：CN6028AN

温度：            湿度：

通风车号：

提箱提箱出场所提交数据种件金率确认。

司机签字：
司机须知：

工厂盖章：
工厂须知：

1. 集装箱出场即为返箱人签率确认。出现
后果用用箱人或返箱人自负。
2. 请果证提交数据真实有效。
3. 本单必须由发货主或发货人加盖
公章，否则单据无效。
4. 内贸箱预约返重前请到云港利进
缴纳作业包干费，以便顺利进

洛动序

48 件

11940

63.63



请使用微信扫描二维码
并提交准确货名及件重尺数据
帖名航次：1-明/016E

提单号：ONEYTAIPTARI2600

箱号：NYKU4384259
箱型：40HC

铅封号：CN60255AN

温度：
湿度：
通风度：
提箱车号：

司机提箱出场时须检查集装箱并签字确认。
司机签字：

工厂签章：
工厂须知：

1. 集装箱出场即为适货箱，出现后果用箱人或运箱人自负。
2. 请保证提交数据真实有效。
3. 本单必须由货主或发货人加盖

活动房　48件　11940　60.03

526.



526.

请使用微信扫描二维码并确认数据
并提交准确货名及件重尺数据

贴名航次：上明/0161

批单号：ONEYTAMPIARL23600      活动房

箱号：NYM1384259             481件

箱型：40HC                    11940

铅封号：CN60255AN             66.03

温度：
湿度：
通风度：

提箱车号：

司机提箱出场时必验查集装箱并签字确认。

司机签字：          发货专用章

工厂签章：

工厂须知：

1. 集装箱出场即为运货箱，出现后果用箱人或运箱人自负。
2. 请保证提交数据真实有效。
3. 本单必须由货主或发货人加盖公章，否则单据无效。





请使用微信扫描二维码预约返重
并提交准确货名及件重尺数据
船名航次：土明/0166

提单号：ONEYTA4PIAR12600

箱号：TCNU8415230
箱型：40HC
铅封号：CN2123SAR

温度：　　　　湿度：

通风度：

提箱车号：鲁JC1709

司机提箱出场前请检查集装箱并签字确认

司机签字：

工厂签章：
工厂须知：
1. 集装箱出场即为适货箱，出现后果用箱人或运箱人自负。
2. 请保证提交数据真实有效。
3. 本单必须由货主或发货人加盖公章，否则单据无效。
4. 内贸箱预约返重前请到云港通缴纳作业包干费，以便顺利进

88/14
以-78D1.8
61.38.



请使用微信扫描二维码预约返重
并提交准确货名及件重尺数据

船名航次：上明/016E

提单号：ONEYTA4PTAR12600

箱号：TCNU8415230

箱型：40HC

铅封号：CN21235AR

温度：　　　湿度：

通风度：

提箱车号：鲁JC17

司机提箱：

司机签字：

工厂须知：

工厂注意：

1. 集装箱出场即为返货箱，出现后果用提箱人或返箱人自负。
2. 请保证提交数据真实有效。
3. 本单必须由货主或发货人加盖公章，否则单据无效。
4. 内贸箱预约返重前消耗到云港通缴纳作业包干费，以便顺利进

司机提箱出场前检查集装箱并签字确认



远洋大亚场站设备交接单

请使用微信扫描二维码预约返重
并提交准确货名及件重尺数据

船名航次：土明Y016E
提单号：ONEYTA4PTAR12600
箱号：TCNU4866914
箱型：40HC
铅封号：CN2123AR
温度：
通风度：
提箱车号：
司机提箱出场前检验箱号铅封字。
司机签字：

工厂签章：
工厂须知：
1. 集装箱出场即为适货箱，出现
后果用箱人或运箱人自负。
2. 请保证提交数据真实有效。





**PO #**  **95604843**

| | |
|---|---|
| Date Created | 09/10/2024 |
| Version: | 2 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 12/09/2024 |
| Cancel if not Shipped by: | 12/16/2024 |
| Must be Routed by: | 11/18/2024 |
| Payment Terms: | 1% Net 30 Days |
| Freight Terms: | Collect |
| FOB: | QINGDAO      ,  CN |

See attached Terms and  Conditions for
additional Big Lots requirements.
A complete list of requirements can be found
on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit
it to BigLotsmsds@chemtelinc.com prior to the time of shipment in
compliance with OSHA 29 CRF.1910.1200. If the product does not require
a Safety Data Sheet (SDS), please disregard this request. Thank you for
assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633          Fax:  334-286-7024

---

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800          Fax: 614-278-6871

---

**Purchase From Vendor:  5006181**

SHANDONG TAIPENG INTELLIGENT HOUSEH
NINA GENG
GONGYE YI ROAD 138
271600 FEICHENG
CHINA
Contact:     NINA GENG
Telephone:                        Fax
E-Mail:     NINA.GENG@TAIPENGCHINA.COM

---

**ADDITIONAL COMMENTS**

PO replaces :0095575103; Ship only these quantities under the new PO.

---

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 176 | 263,998.24 | 107,712.00 | 43.099 |

OFFICE-COPY

 **OFFICE-COPY** **IMPORTANT Terms and Conditions** PO#: 95604843

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/ freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1. Purchase Order. Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2. Shipping Goods to a DC. Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3. Shipping Goods to a Buyer Store. Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer operating the store to which the Goods are delivered.

4. Inspection of Goods. Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5. Cancellation. Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense, and Buyer shall be subject to the remedies available hereunder.

6. Buyer Remedies. If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7. Disposition of Rejected Goods. Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8. Vendor Disposal of Goods. Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9. Payment & Taxes. Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes

 OFFICE-COPY    **IMPORTANT Terms and Conditions**    PO#: 95604843

Page 3 of 6

title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or take or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used; (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or

 **OFFICE-COPY**    **IMPORTANT Terms and Conditions**    PO#: 95604843

Page 4 of 6

securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer's efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgements, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



OFFICE-COPY

**IMPORTANT Terms and Conditions**

PO#:  95604843

Page 5 of 6

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

PO#:  95604843

Page 6 of 6

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|------|---------|---------------------|------|-------------------|--------|--|--------------|------|-----------|---------------|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| 210 | 810775523 | COMBO RUSHFORD 10X | 0.00 | CN | 1 | | 176 | 612.00 | 150,217.76 | 01/27/2025 |
| 21034 | TPGAZ25120 | GAZEBO | | | 1 | | 176 | 241.51 | 263,998.24 | |
| 21034001 | Broyhill | | 051 | | | | | 1,499.99 | 43.507 | 2699.00 |
| 1 | 481077552300 | | GRM | 27.362 | UPC | | | | | |
| -->> The | above assortment | (810775523) | consists of | | | | | | | 01/27/2025 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 210 | 810775434 | RUSHFORD 10X12FT ME | 0.00 | CN | | | 176 | 178.00 | 31,328.00 | 01/27/2025 |
| 21034 | TPGAZ25120-2 | GAZEBO | | | | | 176 | | 88,000.00 | |
| 21034001 | Broyhill | | 051 | | | | | 500.00 | 64.400 | 1199.00 |
| 2 | 481077543407 | | | | UPC | | | | | |
| 210 | 810775473 | RUSHFORD 10X12FT ME | 0.00 | CN | | | 176 | 434.00 | 76,384.00 | 01/27/2025 |
| 21034 | TPGAZ25120-1 | GAZEBO | | | | | 176 | | 175,998.24 | |
| 21034001 | Broyhill | | 051 | | | | | 999.99 | 56.600 | 1500.00 |
| 3 | 481077547306 | | | | UPC | | | | | |
| *--End of | assortment list | for -810775523 | | | | | | | | 01/27/2025 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |



Page 1 of 6

**PO #**      **95575084**

| | |
|---|---|
| Date Created | 08/16/2024 |
| Version: | 2 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 12/09/2024 |
| Cancel if not Shipped by: | 12/16/2024 |
| Must be Routed by: | 11/18/2024 |
| Payment Terms: | 1% Net 30 Days |
| Freight Terms: | Collect |
| FOB: | QINGDAO      , CN |

See attached Terms and Conditions for
additional Big Lots requirements.
A complete list of requirements can be found
on the Big Lots website
www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit
it to BigLotsmsds@chemtelinc.com prior to the time of shipment in
compliance with OSHA 29 CRF.1910.1200. If the product does not require
a Safety Data Sheet (SDS), please disregard this request. Thank you for
assisting Big Lots with our Environmental Health and Safety compliance program.

---

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL 36108-5035

Telephone:  334-286-6633        Fax:  334-286-7024

---

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

---

**Purchase From Vendor:  5006181**

SHANDONG TAIPENG INTELLIGENT HOUSEH
NINA GENG
GONGYE YI ROAD 136
271600 FEICHENG
CHINA
Contact:    NINA GENG
Telephone:                      Fax
E-Mail:      NINA.GENG@TAIPENGCHINA.COM

---

**ADDITIONAL COMMENTS**

---

| | Units | Retail | Vendor Cost | IMU |
|---|---|---|---|---|
| Vendor Signature | | | | |
| Signee's Name | 288 | 719,997.12 | 284,544.00 | 45.023 |
| Title | | | | |
| Date | OFFICE-COPY | | | |

 **OFFICE-COPY**   **IMPORTANT Terms and Conditions**   PO#: 95575084

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual; and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

**Definitions**

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the terms "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship", "Shipped", "Shipping", or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.      Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.      Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.      Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.      Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods before resale thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Vendor's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.      Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.      Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not as ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.      Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.      Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.      Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes

 **OFFICE-COPY** **IMPORTANT Terms and Conditions**

PO#: 95575084
Page 3 of 6

title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframes for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/ or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification.  Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management process as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor ongoing compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls.  A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above.  When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date.  Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods.  Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality.  Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or take or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods.  Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties.  Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used: (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Goods; (e) the Goods are in new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected.  The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption.  Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



OFFICE-COPY    **IMPORTANT Terms and Conditions**    PO#: 95575084

Page 4 of 6

securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer's efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification.  Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance.  Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence.  Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer).  In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies.  With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured.  The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and  (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies.  Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure.  Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control.  In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks.  Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion.  Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce.  "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting.  Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer.  Any purported assignment or delegation made without this consent is void.  Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion.  In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation.  Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverable provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Laws; Venue; Jury Waiver; and Arbitration.  The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum.  The parties hereby agree to waive a trial by jury with respect to Disputes.  Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations.  The location of such arbitration will be in Columbus, Ohio.  Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree.  The parties may also mutually elect to seek mediation as an alternative precursor to arbitration.  If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply.  The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree.  The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof.  The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor.  The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer.  Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy Immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries.  Certain sections of the PO Terms are for the benefit of Buyer's Affiliates.  As a result, any of Buyer's Affiliates may enforce the PO Terms.  Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY.  EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms.  Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



OFFICE-COPY    **IMPORTANT Terms and Conditions**

PO#:   95575084

Page 5 of 6

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BB BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise. Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |
| 210 | 810774481 | COMBO LIVERPOOL 10X | 0.00 | CN | 1 | | 288 | 988.00 | 395,832.96 | 01/27/2025 |
| 21034 | TPGAZ25122 | GAZEBO | | | 1 | | 288 | 386.42 | 719,997.12 | |
| 21034001 | Broyhill | | 002 | | | | | 2,499.99 | 45.418 | 3749.72 |
| 1 | 481077448108 | | GRM | 42.692 | UPC | | | | | |
| -->> The | above assortment | (810774481) | consists of | | | | | | | 01/27/2025 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 210 | 810774425 | LIVERPOOL 10X12FT S | 0.00 | CN | | | 288 | 486.00 | 139,968.00 | 01/27/2025 |
| 21034 | TPGAZ25122-1 | GAZEBO | | | | | 288 | | 345,600.00 | |
| 21034001 | Broyhill | | 002 | | | | | 1,200.00 | 59.500 | |
| 2 | 481077442502 | | | 17.938 | UPC | | | | | |
| 210 | 810774467 | LIVERPOOL 10X12FT S | 0.00 | CN | | | 288 | 502.00 | 144,576.00 | 01/27/2025 |
| 21034 | TPGAZ25122-2 | GAZEBO | | | | | 288 | | 374,397.12 | |
| 21034001 | Broyhill | | 002 | | | | | 1,299.99 | 61.384 | 1874.86 |
| 3 | 481077446708 | | | 24.754 | UPC | | | | | |
| *--End of | assortment list | for -810774481 | | | | | | | | 01/27/2025 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |

**SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD**
ADDRESS:NO.136 OF INDUSTRY 1 ROAD FEICHENG CITY SHANDONG PROVINCE 271600 CHINA

# COMMERCIAL INVOICE

**TO:** CBC DISTRIBUTION, LLC

2855 SEIMA HIGHWAY, MONTGOMERY, AL 36108, USA

INVOICE NO: **YT24-409**

Date:      29/Nov/2024

Purchase Order Number

95575084

95604843

| Art. No. | Product | QTY | UNIT PRICE | AMOUNT | |
|---|---|---|---|---|---|
| | DESCRIPTION | | | | |
| | FOB QINGDAO PORT IN CHINA | | | | |
| | | | | | |
| 95575084 | COMBO LIVERPOOL 10X12FT SCREEN HOUSE | 288 | 988 | 284544 | 94069000 |
| 95604843 | COMBO RUSHFORD 10x12FT METAL LOUVERED ROOF PERGOLA | 176 | 612 | 107712 | 63062200 |
| | | | | | |
| | | | Discount | 3922.56 | |
| | | | | | |
| | | | | | |
| | | 464 | | $388,333.44 | |

**AMOUNT**

SHANDONG TAIPENG INTELLIGENT
HOUSEHOLD PRODUCTS CO., LTD.

SHI FENG /PRESIDENT

# SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD
ADDRESS:NO.136 OF INDUSTRY 1 ROAD FEICHENG CITY SHANDONG PROVINCE 271600 CHINA

## PACKING LIST

TO:
CSC
DISTRIB
2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA

INVOICE NO: YT24-409
Date: 29/Nov/2024
Purchase Order Number
95575084
95604843

| PO. NO. | QTY SETS | CTNS | 净重/箱 CTNS | TTL N.W | 毛重/箱 | TTL G.W | 体积/箱 | MEAS. |
|---|---|---|---|---|---|---|---|---|
| | | | | ( Kgs ) | | ( Kgs ) | | ( CBM ) |
| 95575084 | COMBO LIVERPOOL 10X12FT SCREEN HOUSE | | | | | | | |
| 810774481 | 48 | 48 | 148 | 7104.00 | 166.00 | 8058.00 | 0.508 | 28.38 |
| | | 48 | 67 | 3216.00 | 79.00 | 3882.00 | 0.701 | 37.65 |
| | | 48 | | 10320.00 | | 11940.00 | | 66.03 |
| 1.CONTAINER NO:ONEU1153382    SEAL NO: CN60372AN | | | | | | | | |
| 810774481 | 48 | 48 | 148 | 7104.00 | 166.00 | 8058.00 | 0.508 | 28.38 |
| | | 48 | 67 | 3216.00 | 79.00 | 3882.00 | 0.701 | 37.65 |
| | | 48 | | 10320.00 | | 11940.00 | | 66.03 |
| 2.CONTAINER NO:NYKU5268377    SEAL NO: CN60288AN | | | | | | | | |
| 810774481 | 48 | 48 | 148 | 7104.00 | 166.00 | 8058.00 | 0.508 | 28.38 |
| | | 48 | 67 | 3216.00 | 79.00 | 3882.00 | 0.701 | 37.65 |
| | | 48 | | 10320.00 | | 11940.00 | | 66.03 |
| 3.CONTAINER NO:NYKU4384259    SEAL NO:CN60255AN | | | | | | | | |
| 810774481 | 48 | 48 | 148 | 7104.00 | 166.00 | 8058.00 | 0.508 | 28.38 |
| | | 48 | 67 | 3216.00 | 79.00 | 3882.00 | 0.701 | 37.65 |
| | | 48 | | 10320.00 | | 11940.00 | | 66.03 |
| 4.CONTAINER NO: TCNU4984394    SEAL NO: CN60348AN | | | | | | | | |
| 810774481 | 48 | 48 | 148 | 7104.00 | 166.00 | 8058.00 | 0.508 | 28.38 |
| | | 48 | 67 | 3216.00 | 79.00 | 3882.00 | 0.701 | 37.65 |
| | | 48 | | 10320.00 | | 11940.00 | | 66.03 |
| 5.CONTAINER NO:TRHU6652427    SEAL NO:CN60319AN | | | | | | | | |
| 810774481 | 48 | 48 | 148 | 7104.00 | 166.00 | 8058.00 | 0.508 | 28.38 |
| | | 48 | 67 | 3216.00 | 79.00 | 3882.00 | 0.701 | 37.65 |
| | | 48 | | 10320.00 | | 11940.00 | | 66.03 |
| 6.CONTAINER NO:TCNU4866914    SEAL NO:CN21233AR | | | | | | | | |
| 95604843 | COMBO RUSHFORD 10x12FT METAL LOUVERED ROOF PERGOLA | | | | | | | | |
| 810775523 | 88 | 88 | 85.2 | 7497.60 | 92.30 | 8198.40 | 0.396 | 39.87 |
| | | 88 | 79.2 | 6969.60 | 85.30 | 7582.40 | 0.233 | 25.51 |
| | | 88 | | 14467.20 | | 15780.80 | | 65.38 |
| 7.CONTAINER NO:ONEU0097670    SEAL NO: CN60303AN | | | | | | | | |
| 810775523 | 88 | 88 | 85.2 | 7497.60 | 92.30 | 8198.40 | 0.396 | 39.87 |
| | | 88 | 79.2 | 6969.60 | 85.30 | 7582.40 | 0.233 | 25.51 |
| | | 88 | | 14467.20 | | 15780.80 | | 65.38 |
| 8.CONTAINER NO: TCNU8415230    SEAL NO: CN21235AR | | | | | | | | |
| TOTAL: | | 464 | | 90854.40 | | 103201.60 | | 526.94 |
| | | 288 | | 61920 | | 71640 | | 396.18 |
| 94069000 | | 176 | | 28934.4 | | 31561.6 | | 130.76 |
| 63062200 | | | | | | | | |

托盘一个柜子12捆
托盘尺寸

245
995
11940

464          90854.4          103201.6          526.94

SHELTER-PRESIDENT

E，1托4套

2.15*0.95*2.495

2.15*0.945*0.25

2.15*0.945*0.345

288          71640          396.18

 **中华人民共和国海关出口货物报关单** 

`*43302024000000022709*`

| 预录入编号：433302024000000022709 | 海关编号：433302024000000022709 | （泰安海关） | 仅供核对用 | 页码/页数：1/1 |
|---|---|---|---|---|

| 境内发货人 (91370983738196054N) 山东泰鹏智能家居股份有限公司 | 出境关别 (4218) 青开发区 | 出口日期 20241214 | 申报日期 20241211 | 备案号 |
|---|---|---|---|---|
| 境外收货人 CSC DISTRIBUTION, LLC | 运输方式 (2) 水路运输 | 运输工具名称及航次号 YM TUTORIAL/016E | 提运单号 ONEYTA4PTAR12600 | |
| 生产销售单位 (91370983738196054N) 山东泰鹏智能家居股份有限公司 | 监管方式 (0110) 一般贸易 | 征免性质 (101) 一般征税 | 许可证号 | |
| 合同协议号 YT24-409 | 贸易国 (地区) (USA) 美国 | 运抵国 (地区) (USA) 美国 | 指运港 (USA000) 美国 | 离境口岸 (370201) 黄岛 |
| 包装种类 (99/22) 其他包装/纸制或纤维板制盒/箱 | 件数 464 | 毛重 (千克) 103201.6 | 净重 (千克) 90854.4 | 成交方式 (3) FOB | 运费 | 保费 | 杂费 |
| 随附单证及编号 | | | | | | | |

| 标记唛码及备注 | |
|---|---|
| 备注：POR; SKU#; DEPT#; COUNTRY OF ORIGIN:CHINA  集装箱标箱数及号码：16;NYKU4384259;NYKU5268377;ONEU0097670;ONEU1153382;TCNU4866914;TCNU498(详见集装箱附加页) | |

| 项号 | 商品编号 | 商品名称及规格型号 | 数量及单位 | 单价/总价/币制 | 原产国 (地区) | 最终目的国 (地区) | 境内货源地 | 征免 |
|---|---|---|---|---|---|---|---|---|
| 1 | 9406900090 | 其他活动房屋 3 | 0 | 铁支架70%铝支架29%玻璃纤维丝网纱1%|无内部 配置|10×12英尺 | 61920千克 288套 288套 | 978.1200 281698.56 美元 | 中国 (CHN) | 美国 (USA) | (37099)泰安 照章征税 | (1) |
| 2 | 6306220000 | 庭院用帐篷 3 | 0 | 腐院用帐篷|铁支架50%铝支架20%全涤锦布30% |Broyhill|95604843 | 176件 28934.4千克 176件 | 605.6800 106634.88 美元 | 中国 (CHN) | 美国 (USA) | (37099)泰安 照章征税 | (1) |

| 特殊关系确认：否 | 价格影响确认：否 | 支付特许使用费确认：否 | 公式定价确认：□ | 暂定价格确认：□ | 自报自缴：否 | 水运中转： |
|---|---|---|---|---|---|---|
| 报关人员 申报单位 (91370983738196054N) 山东泰鹏智能家居股份有限公司 | 报关人员证号43000535 | 电话 | 兹申明以上内容承担如实申报、依法纳税之法律责任 申报单位 (签章) | | 海关批注及签章 | |

 **YUSEN LOGISTICS**

This document is issued as a receipt of cargo only and will not be negotiable unless the original is submitted to exchange for the Forwarder's Cargo Receipt which will be issued on request.

| Shipper/Exporter (Name & Address) | SHIPPING ORDER/DOCK RECEIPT | | |
|---|---|---|---|
| SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD 136 GONGYEYI ROAD FEICHENG, SHANDONG, 271600, CN  Contact: SUNHU Tel:     0538-3308709 Fax:     0538-3305019 | Port of Loading  QINGDAO | | |
| | Final Destination  MONTGOMERY, AL | | |
| Consignee CSC DISTRIBUTION, LLC 2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA | Freight :  COLLECT | | Exp. Lic No.  NO |
| | Ship Term  FOB | | Ship Mode  OCEAN |
| Notify Party GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA | Estimate Delivery Date  CY 2 December 2024 | | No. of Original Document Required  EFCR     1 |
| Also Notify | Declaration  THE SHIPMENT CONTAINS NO WOOD PACKAGING MATERIAL | | |
| Shipper/Exporter Email :    18905388376@163.COM | | | |
| Remarks : | | | |

**REQUIRES D40H x 2 CONTAINERS ONLY**

The shipper certifies that the particulars of the face hereof are correct and agree to the terms and conditions.
Goods will be received by YUSEN LOGISTICS for Storage, Consolidation, Forwarding, or Shipment, subject to the Company's Standard
Trading Terms and Conditions, a copy is available upon request which in certain circumstances, limit or exempt the Company's liabilities.

 **YUSEN LOGISTICS**

| YL Shipping Order : | Export License will be Submitted : No |
| --- | --- |
| | Fumigation Cert. will be Submitted : No |
| Tmast No.: | Fish & Wildlife Cert. will be submitted : No |
| | Contains Pallet : No |

PO Seller :SHANDONG TAIPENG INTELLIGENT
HOUSEHOLD PRODUCTS CO., LTD.

Other Document will be submitted :

Product contains Wood Formaldehyde and complied with rules and orders under TSCA Title VI : Not Applicable

| P/O No. | Item No. | No. of pkgs | Cbm | Kilos | Qty |
| --- | --- | --- | --- | --- | --- |
| 95604843 | 810775523 | 176 CTN | 130.760 | 32,768.000 | 176 |
| | Manufacturer : SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD. | | | | |
| | Country of Origin : CN | | | | |
| | Ship Window : 12/9/2024 - 12/16/2024 Delivery Date : 1/27/2025 Cargo must be delivered within the indicated shipping window. | | | | |
| | TSCA Title VI Compliant : NA | | | | |
| P/O Total : | | 176 CTN | 130.760 | 32,768.000 | 176 |

| Marks & Numbers | Description of Packages and Goods Particulars Furnished by Shipper |
| --- | --- |
| PO#: SKU#: DEPT#: COUNTRY OF ORIGIN:CHINA | COMBO RUSHFORD 10x12FT METAL LOUVERED ROOF PERGOLA |

| Total : | | 176 CTN | 130.760 | 32,768.000 | 176 |
| --- | --- | --- | --- | --- | --- |

| Total No. of Packages Received (In Words) | Measurement: |
| --- | --- |
| | Weight: |

Yusen Logistics (Hong Kong) Limited expressly disclaims all and any liability to any person in respect of anything done or omitted, and the consequences of anything done or omitted, by any such person in reliance on the contents of this electronic Forwarders Cargo Receipt (eFCR). No part of these e-FCR Standard Operational Procedures may be reproduced, recast, reformatted or transmitted in any form by any means, electronic or mechanical, including photocopying, recording or any information storage and retrieval system, without the prior written permission from Yusen Logistics.

Remark:                                                    **Booking Confirmation**

TO: SHANDONG TAIPENG INTELLIGENT                     Date:    3-Dec
ATTN:
FM: YUSEN LOGISTICS QINGDAO    John          TEL: 0532-66759752    Mobile: 13953286231          **Yusen Logistics**

| PLANNED VESSEL: | **YM TUTORIAL** | 016E | | ETD: | **2024/12/14** | | 场站: | 大亚 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CARRIER: | ONE | | | | | | | | | | |
| 提箱单/提箱码是否需要: | Y | | 船代: 中创 | | | | | | | | |

| S/O# | PO# | O B/L# | DEST | MODE | CTN | G. W. | CBM | CONTAINER 20' | 40'S | 40'H | 45' |
|---|---|---|---|---|---|---|---|---|---|---|---|
| TAOM1004428 | 95575084 | ONEYTA4PTAR12600 | LOS ANGELES, CA | CY-CY | 288 | 75888 | 396.18 | 0 | 0 | 6 | 0 |
| TAOM1004427 | 95604843 | | LOS ANGELES, CA | CY-CY | 176 | 31561.6 | 130.76 | 0 | 0 | 2 | 0 |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| 1. 截单日期: | 12月9日 | 15:00 | | | **TOTAL** | 464 | 107449.6 | 526.94 | 0 | 0 | 8 | 0 |
| 2. 截港日期: | 12月11日 | 12:00 | 截港时间以码头公布为准 | | | | | | | | |

重要提醒：      免费箱使为7天，请勿过早提箱（箱使含开船当天）

1. 从2003年2月1日开始，美国已正式实行AMR，请提醒所有工厂，在YUSEN LOGISTICS提供的船公司单证信息截止时间之前提交eCLP及所有准确信息。
   从2011年1月1日开始，欧盟已正式实行ENS，请提醒所有工厂，在YUSEN LOGISTICS提供的船公司单证信息截止时间之前提交eCLP及所有准确信息。

2. 请核对以上数据，工厂装货时请根据客户的各项要求进行装柜（尺码，毛重，样品等）。由此产生的责任我方概不负责。

3. 如委托我司报关，请将全套正确之报关单据及时发送下列邮箱：
   （请注明YUSEN LOGISTICS送仓编号及"日邮物流"字样，若不注明由此引起的后果自负。）
   公司：青岛联懋源国际货运代理有限公司 代码：3702980842
   联络：董小姐 <baoquan08@qdlcy.cn>        电话：66770668

4. 目的港清关文件请在客人规定的日期内上传系统，否则发货人需承担客人规定的罚款。

5. 截港时间以码头公布为准，因无法按时返场产生加急费用我司概不负责。

YT24-409 BIGLOTS
PO:95575084 铁皮
95604843 百叶

# SHANDONG TAIPENG INTELLIGENT HOUSEHOLD

**Seller reference**

# PRODUCTS CO., LTD

136 GONGYEYI ROAD, FEICHENG, SHANDONG, 271600, CHINA

# INVOICE

**Invoice No.:** YT24-409

**Invoice Date.:** December 11, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB QINGDAO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** YM TUTORIAL / 016E

**Port of Loading:** QINGDAO

**Ship on or about:** December 14, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** LOS ANGELES, CA

**Container Number (Factory Load) :** NYKU4384259, NYKU5268377, ONEU0097670, ONEU1153382, TCNU4866914, TCNU4984394, TCNU8415230, TRHU6652427

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| P/O No.: 95575084 | | 288 | EA | 988.000/EA | 284,544.000 |
| SKU No.: 810774481 | | 288 | CTNS | | |
| COMBO LIVERPOOL 10X12FT SCREEN HOUSE | No. of Pallet: | | | | |
| HTS Code.: 7308909590 | | | | | |
| 810774481 IS COMBO SKU,INCLUDES BABY SKU#810774425 AND 810774467 | | | | | |
| P/O No.: 95604843 | | 176 | EA | 612.000/EA | 107,712.000 |
| SKU No.: 810775523 | | 176 | CTNS | | |
| COMBO RUSHFORD 10X12FT METAL LOUVERED ROOF PERGOLA | No. of Pallet: | | | | |
| HTS Code.: 7308909590 | | | | | |
| Manufacturer Name & Address<br><br>SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD.<br>HIGH-NEW TECH DEVELOPMENT FEICHENG SD 271600 CHINA<br>FEICHENG, SHANDONG<br>271600, CHINA | | | | | |
| Total: | (464 CTNS) | 464 | | | 392,256.000 |

TOTAL (USD) DOLLARS : THREE HUNDRED NINETY-TWO THOUSAND TWO HUNDRED FIFTY-SIX ONLY.

**Consolidator(Full Name & Address)**
SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS
CO., LTD.
HIGH-NEW TECH DEVELOPMENT FEICHENG SD 271600 CHINA
FEICHENG , SHANDONG
271600 CHINA
Container No./Seal/Size:
NYKU4384259/CN60255AN/40H
NYKU5268377/CN60288AN/40H
ONEU0097670/CN60303AN/40H
ONEU1153382/CN60372AN/40H

**Container Stuffing Location(Full Name & Address )**
SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS
CO., LTD.
HIGH-NEW TECH DEVELOPMENT FEICHENG SD 271600 CHINA
FEICHENG , SHANDONG
271600 CHINA
Container No./Seal/Size:
NYKU4384259/CN60255AN/40H
NYKU5268377/CN60288AN/40H
ONEU0097670/CN60303AN/40H
ONEU1153382/CN60372AN/40H

TCNU4866914/CN21233AR/40H  TCNU4866914/CN21233AR/40H
TCNU4984394/CN60348AN/40H  TCNU4984394/CN60348AN/40H
TCNU8415230/CN21235AR/40H  TCNU8415230/CN21235AR/40H
TRHU6652427/CN60319AN/40H  TRHU6652427/CN60319AN/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

PO#:
SKU#:
DEPT#:
COUNTRY OF ORIGIN:CHINA
PO#:
SKU#:
DEPT#:
COUNTRY OF ORIGIN:CHINA

# SHANDONG TAIPENG INTELLIGENT HOUSEHOLD

Seller reference

# PRODUCTS CO., LTD

136 GONGYEYI ROAD, FEICHENG, SHANDONG, 271600, CHINA

## PACKING LIST

**Invoice No.:** YT24-409

**Invoice Date.:** December 11, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB QINGDAO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** YM TUTORIAL / 016E

**Port of Loading:** QINGDAO

**Ship on or about:** December 14, 2024

**Port of Entry:** LOS ANGELES, CA

**Destination:** LOS ANGELES, CA

**Container Number (Factory Load) :** NYKU4384259, NYKU5268377, ONEU0097670, ONEU1153382, TCNU4866914, TCNU4984394, TCNU8415230, TRHU6652427

| Cargo Description | Quantity (Unit) | | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95575084 | 288 | EA | 61,920.00 | 71,640.00 | 396.180 |
| SKU No.: 810774481 | 288 | CTNS | | | |
| COMBO LIVERPOOL 10X12FT SCREEN HOUSE | No. of Pallet: | | | | |
| HTS Code: 7308909590 | | | | | |
| | | | | | |
| P/O No.: 95604843 | 176 | EA | 28,934.40 | 31,561.60 | 130.760 |
| SKU No.: 810775523 | 176 | CTNS | | | |
| COMBO RUSHFORD 10X12FT METAL LOUVERED ROOF PERGOLA | No. of Pallet: | | | | |
| HTS Code: 7308909590 | | | | | |
| **Total:** (464 CTNS) | 464 | | 90,854.40 | 103,201.60 | 526.940 |

**Consolidator(Full Name & Address)**
SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD.
HIGH-NEW TECH DEVELOPMENT FEICHENG SD 271600 CHINA
FEICHENG , SHANDONG
271600 CHINA
Container No./Seal/Size:
NYKU4384259/CN60255AN/40H
NYKU5268377/CN60288AN/40H
ONEU0097670/CN60303AN/40H
ONEU1153382/CN60372AN/40H
TCNU4866914/CN21233AR/40H
TCNU4984394/CN60348AN/40H
TCNU8415230/CN21235AR/40H
TRHU6652427/CN60319AN/40H

**Container Stuffing Location(Full Name & Address )**
SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD.
HIGH-NEW TECH DEVELOPMENT FEICHENG SD 271600 CHINA
FEICHENG , SHANDONG
271600 CHINA
Container No./Seal/Size:
NYKU4384259/CN60255AN/40H
NYKU5268377/CN60288AN/40H
ONEU0097670/CN60303AN/40H
ONEU1153382/CN60372AN/40H
TCNU4866914/CN21233AR/40H
TCNU4984394/CN60348AN/40H
TCNU8415230/CN21235AR/40H
TRHU6652427/CN60319AN/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

PO#:
SKU#:
DEPT#:
COUNTRY OF ORIGIN:CHINA
PO#:
SKU#:
DEPT#:
COUNTRY OF ORIGIN:CHINA



| PO # | 95575104 |
|---|---|
| Date Created | 08/16/2024 |
| Version: | 2 |
| Buyer: | INMAN, ANNE |
| Do Not Ship Before: | 12/16/2024 |
| Cancel if not Shipped by: | 12/23/2024 |
| Must be Routed by: | 11/25/2024 |
| Payment Terms: | 1% Net 30 Days |
| Freight Terms: | Collect |
| FOB: | QINGDAO    , CN |

See attached Terms and Conditions for additional Big Lots requirements. A complete list of requirements can be found on the Big Lots website www.biglots.com/corporate/vendors

Should any item on this PO require a Safety Data Sheet (SDS), please submit it to BigLotsmsds@chemtelinc.com prior to the time of shipment in compliance with OSHA 29 CRF.1910.1200. If the product does not require a Safety Data Sheet (SDS), please disregard this request. Thank you for assisting Big Lots with our Environmental Health and Safety compliance program.

**SHIP TO**

MONTGOMERY DC - #0870
CSC DISTRIBUTION, LLC
2855 SELMA HWY
MONTGOMERY AL  36108-5035

Telephone:  334-286-6633        Fax:  334-286-7024

**BILL TO**

CSC DISTRIBUTION, LLC
4900 E. Dublin Granville Rd
Columbus, OH 43081-7651 US

Telphone: 614-278-6800        Fax: 614-278-6871

Purchase From Vendor:  5006181

SHANDONG TAIPENG INTELLIGENT HOUSEH
NINA GENG
GONGYE YI ROAD 136
271600 FEICHENG
CHINA
Contact:    NINA GENG
Telephone:                       Fax
E-Mail:    NINA.GENG@TAIPENGCHINA.COM

**ADDITIONAL COMMENTS**

Vendor Signature _____

Signee's Name _____

Title _____

Date _____

| Units | Retail | Vendor Cost | IMU |
|---|---|---|---|
| 88 | 131,999.12 | 53,856.00 | 43.099 |

OFFICE-COPY



**OFFICE-COPY**    **IMPORTANT Terms and Conditions**    PO#: 95575104

Page 2 of 6

These Purchase Order Terms and Conditions (these "Terms & Conditions") are an agreement between Buyer and Vendor consisting of these Terms & Conditions; all Purchase Orders; the terms contained on Buyer's Vendor Resource Website, including, without limitation, those in the Vendor Manual, and in Buyer's vendor portal; any Buyer addenda referencing the Purchase Order; and any attachments, instructions or requirements provided by Buyer to Vendor (all of the foregoing are incorporated herein by this reference and collectively referred to as the "PO Terms"). The PO Terms are binding with respect to all purchases of Goods by Buyer from Vendor

Definitions

"Affiliate" means any entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a party. "Control," including the term "controlling," "controlled by" and "under common control with," for purposes of this definition, means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, through membership, by contract or otherwise.

"Buyer" means Big Lots Stores, Inc. or its Affiliate, as named in the Ship To box on the applicable PO, or that is otherwise the purchaser of Goods from Vendor.

"Buyer's Vendor Resource Website" means the site located at www.biglots.com/corporate/vendors.

"Goods" means the items of merchandise referenced in a PO, or that are otherwise the subject of the PO Terms, including all components, packaging, labeling, printed materials, designs, images, logos, copyrights, trademarks, service marks, trade names, trade dress, and visual and digital information of or related to such merchandise.

"Purchase Order" or "PO" means any Buyer order or other purchasing agreement or document for the purchase of Goods from Vendor whether issued in hard or electronic copy, through electronic data interchange ("EDI"), or otherwise.

"Ship," "Shipped," "Shipping," or "Shipment" means transporting the Goods by Vendor into the hands of the ocean/freight carrier for delivery to Buyer.

"Vendor" means the entity or person that is named in the Purchased From box on the applicable PO, or that is otherwise the seller of Goods to Buyer.

"Vendor Manual" means the then-current Import Supplier Manual, and its related documents, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-and-compliance.

1.    Purchase Order.  Buyer's commitment to purchase Goods arises only upon Buyer's issuance of a PO to Vendor. Any forecasts, commitments, projections, representation about quantities to be purchased or other estimates provided to Vendor are for planning purposes only and shall not be binding on Buyer, and Buyer will not be liable for any amounts incurred by Vendor in reliance on such estimates. Unless Buyer agrees in writing in advance, regardless of industry standards, no variances with respect to quality, quantity, size, capacity, volume, content or other standard measure of Goods are allowed. Buyer and Vendor agree that any PO may be transmitted to Vendor by Electronic Data Interchange (EDI) and Vendor will be bound by all such POs and all such POs will be governed by these PO Terms which are automatically incorporated therein.

2.    Shipping Goods to a DC.  Vendor must comply with all processes and instructions contained in the Vendor Manual for routing and Shipping Goods to a Buyer distribution center or other non-store location designated by Buyer or listed in the PO (each a "DC"). A detailed packing slip must accompany each Shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the bill of lading ("BOL"), invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to Buyer upon receipt of the Goods at Buyer's DC or the location otherwise designated by Buyer in the PO.

3.    Shipping Goods to a Buyer Store.  Vendor must comply with all processes and instructions for shipping Goods to a Buyer store contained in the Vendor Manual. A detailed packing slip must accompany each shipment of Goods. The PO number and all other information as required by the Vendor Manual must appear on the BOL, invoice, packing slip and shipping cartons. Vendor should see the Vendor Manual for full instruction and must comply therewith. Unless expressly stated differently on the PO from Buyer, title to and risk of loss of the Goods passes from Vendor to the Buyer Affiliate operating the store to which the Goods are delivered.

4.    Inspection of Goods.  Goods are subject to Buyer's inspection, but Buyer is under no obligation to unpack or inspect the Goods received as herbefore thereof. Buyer's inspection, testing, payment for or retention of Goods does not: (a) constitute acceptance of Goods not in compliance with the PO Terms; (b) affect Buyer's right to reject or return Goods; or (c) constitute a waiver by Buyer of any of Buyer's representations, warranties or covenants, or any of Buyer's rights or remedies, under the PO Terms, at law, in equity or otherwise.

5.    Cancellation.  Buyer may cancel a PO, in whole or in part, for its convenience, without liability, at any time prior to Shipment of Goods. In the event of Buyer's cancellation for convenience, Buyer's liability to Vendor will be limited to the unit price of Goods Shipped prior to such cancellation (as such Goods are otherwise in compliance with specifications and these Terms & Conditions). If Vendor fails to Ship Goods before the "cancel if not shipped by date" in the subject PO, that PO will be cancelled automatically on such date, unless otherwise directed by Buyer in writing, and Buyer will have no liability to Vendor in connection therewith including acceptance of back ordered Goods (and without waiver of any remedies in Section 6 of these Terms & Conditions that may accrue to Buyer). Buyer has the right to reject late Shipments at Vendor's expense and Buyer shall be subject to the remedies available hereunder.

6.    Buyer Remedies.  If: (a) Vendor fails to route, Ship or deliver as required by a PO; (b) Goods are not the same as the approved samples; (c) Goods are not ordered and/or do not conform to the specifications in the PO; (d) Vendor does not Ship the Goods in the quantities specified in the PO; (e) Buyer deems that the Goods are damaged or defective; or (f) Vendor is otherwise in breach of the PO Terms, including without limitation any breach of the Vendor Manual, Buyer may, at any time, as to any or all Goods, without authorization from Vendor, and subject to the other terms hereof: (i) accept the Goods; (ii) cancel the subject PO for cause; (iii) reject the Goods; (iv) refuse to receive the Goods; (v) revoke prior to acceptance of the Goods; and/or (vi) in the case of early Shipment of Goods, reject and return the Goods to Vendor, with all Return Costs (defined below) to be borne by Vendor, to be held by Vendor, at Vendor's cost, for Buyer until the original date specified. In the event of any of the foregoing, Buyer will not be liable to Vendor for any amount, except to pay for any goods Buyer accepts based on the unit price of the Goods ordered, subject to the right to offset and withhold payment as provided in Section 9 of these Terms & Conditions. Buyer may also impose chargebacks as set out in the Vendor Manual. Any cancellation, rejection, refusal to receive or revocation of prior acceptance by Buyer with respect to any Goods will not serve as a cancellation or rejection of any future shipments of Goods, unless Buyer exercises its right to cancel future POs or shipments. Acceptance of any Goods is not a waiver of any of Buyer's rights or remedies under the PO Terms, at law, in equity, or otherwise.

7.    Disposition of Rejected Goods.  Unless Buyer and Vendor have signed an agreement to the contrary, with respect to Goods Buyer has rejected, refused or revoked acceptance of, Buyer, at its sole option, may return such Goods to Vendor and Vendor will be liable for all costs and expenses related to the return, including, without limitation, the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging and any other processing or handling costs and charges incurred or charged by Buyer; and lost profits ("Return Costs"). Unless Buyer and Vendor have signed an agreement to the contrary, if Buyer elects not to return the Goods because: (a) the return of Goods is precluded by applicable law or regulation; (b) the Goods contain a defect that could create substantial risk of injury to person or property; (c) Buyer has reasonable cause to believe Vendor intends to dispose of Goods in violation of Section 8 of these Terms & Conditions; or (d) Buyer, in its reasonable discretion, deems return of the Goods unadvisable, then Buyer may dispose of the Goods in a manner Buyer deems appropriate. In the event of such disposal, Vendor will be liable for all costs and expenses related to the disposal, including the landed cost of Goods; freight (inbound and outbound); storage, labor, packaging, disposal and destruction, and any other processing or handling costs and charges incurred or charged by Buyer; and lost profit.

8.    Vendor Disposal of Goods.  Vendor agrees that it will, at its sole expense, remove, or otherwise make permanently illegible, all of Buyer's and its Affiliates' names, trademarks, trade names, logos, service marks, and other identifying information from all Goods returned by Buyer. In addition, Vendor agrees that it will not use, resell or otherwise transfer to any third-party Goods returned by Buyer without the express prior written consent given by an officer of Buyer. If any Goods incorporate Buyer's trademarks or if any Goods are proprietary or incorporate designs exclusive to Buyer, Vendor must provide to Buyer a reasonable opportunity to inspect such products before disposal or resale and follow all such instructions of Buyer regarding modifications to or destruction of such Goods. Vendor agrees to abide by all of Buyer's guidelines relating to the proper disposal of rejected goods and the issuance of appropriate certificates of destruction, as applicable.

9.    Payment & Taxes.  Vendor may not charge Buyer, and Buyer will have no obligation to pay, prices for Goods higher than those specified in the applicable PO. Prices in the applicable PO are complete and include, without limitation, shipping, packaging, labeling, custom duties, storage, insurance, boxing and crating. No additional charges of any type may be added without Buyer's prior express written consent. Buyer may deduct from any payments to Vendor any amounts owed by Vendor to Buyer under the PO Terms, including, without limitation, amounts due in connection with Vendor's indemnification obligations, any damages for breach to which Buyer is entitled, and any charges or penalties for non-compliance with Buyer's requirements. In addition, following Buyer's receipt of any demand, claim or action that may give rise to Buyer's right to receive indemnification from Vendor, Buyer may withhold full or partial payment, in Buyer's sole discretion, to Vendor until such demand, claim or action is fully and finally resolved. Buyer will have no obligation to compensate Vendor for or return to Vendor any goods Shipped to Buyer in excess of or different from those Goods referenced in the applicable PO, and Buyer will take title to any such goods in the same manner in which it takes

 OFFICE-COPY **IMPORTANT Terms and Conditions**

PO#: 95575104

Page 3 of 6

title to those Goods referenced in the applicable PO. The per unit price of the Goods ordered under the applicable PO will be automatically reduced to account for all such excess or different Goods received by Buyer. A BOL in duplicate must accompany all Vendor invoices. A forwarding cargo receipt ("FCR"), packing list and certificate of product liability insurance must accompany Vendor's invoice and the PO number must appear on the FCR. Payments may be made by Buyer or a Buyer Affiliate on Buyer's behalf and will be paid in accordance with the Vendor Manual. Vendor and Buyer will have the right to verify the accuracy of amounts invoiced and paid for Goods within 180 days after Buyer's receipt of such Goods; provided that timeframe for instituting compliance disputes will be as set forth in the Vendor Manual ("Review Period"). After the Review Period, any payments made for the subject Goods will and will be deemed to conclusively reflect the actual amount owed to Vendor for such Goods, and neither Vendor nor Buyer will have the right to seek further payment or adjustment with respect to such Goods. Each party shall remain responsible (and hold the other party harmless) for its taxes, collection and reporting obligations resulting from the transactions covered by the PO Terms. For purposes of clarity, but without limiting the foregoing, Vendor acknowledges that it may have business activity, business privilege, commercial activity, gross receipts, income tax, license and reporting obligations where the receipt of revenue, or the benefit thereof, may be assigned, sourced, apportioned or allocated under applicable tax law. As a prerequisite to payment and as further described in the Vendor Manual, Vendor must provide Buyer and/or Buyer's designated freight forwarder with the following documentation in connection with this PO: commercial invoice showing manufacturer's name, address, telephone number; commercial packing list indicating weights and measurements in kgs and cbm's; FCR; a certificate of product liability insurance naming "Big Lots, Inc. and all subsidiaries and affiliates" as additional insured; Buyer-approved import product data sheet; product testing certificate (s) from a Buyer-approved testing laboratory; factory inspection certificate from a Buyer-approved inspector; commercial bill-of-lading; and pre-pricing sticker approval sheet. Additional documentation may be required prior to shipping and/or invoice payment based on Goods ordered.

10. Records, Audit and Certification. Vendor will keep complete and accurate books, records and documents relating to the subject matter of POs and Vendor's fulfillment of POs, including, without limitation those: (a) evidencing and detailing amounts charged; (b) regarding the Goods' origin, manufacture location, content, testing, and inspection; (c) regarding order receipt, fulfillment and Shipment of Goods; and (d) otherwise required by applicable law to be maintained ("Records"). Vendor will make the Records available to Buyer, either remotely or at Vendor's offices, at all reasonable times upon at least three (3) calendar days' prior written notice, for inspection, audit or reproduction by Buyer or its representative. Vendor will promptly pay Buyer for any overcharges made by Vendor that are disclosed by such audit. In addition, Buyer, itself or through its representative, has the right to inspect Vendor's, and Vendor's contractors' facilities, warehouses and manufacturing plants at all reasonable times upon at least three (3) calendar days' prior written notice. Vendor agrees, at Vendor's cost, to subscribe to and be a part of Buyer's risk management program as part of onboarding process with Buyer and agrees to comply with the requirements thereof. Vendor agrees to comply with all of Buyer's vendor supplier compliance program(s) operated by Buyer (or an agent of Buyer) and Vendor will promptly provide such information as reasonably required from time to time in accordance with such programs. Vendor acknowledges that if it fails Buyer's compliance program requirements, it will be deemed a breach of these Terms & Conditions and Buyer may terminate any or all POs with Vendor without liability.

11. Recalls. A "Recall" is any recall of, or corrective action involving, Goods that is: (a) required by the United States Consumer Product Safety Commission ("CPSC") or other relevant governmental agency, applicable law, or in Buyer's commercially reasonable judgment; (b) agreed upon between Buyer and Vendor; (c) instituted voluntarily by Vendor; or (d) instituted by Buyer because Buyer has reason to believe the subject Goods are (i) defective, dangerous, or incomplete; (ii) infringe upon Buyer's or a third party's intellectual property rights; or (iii) are not in compliance with applicable laws or regulations. In the event of a Recall, Buyer reserves the right to, at Buyer's option: (w) use reasonable means to remove the Goods that are subject to a Recall ("Recalled Goods") from sale; (x) correct the condition necessitating the Recall through relabeling, repackaging or other corrective action as Buyer deems appropriate; (y) return the Recalled Goods to Vendor; or (z) dispose of the Recalled Goods in a manner Buyer deems appropriate. Vendor will be liable for all costs and expenses arising from or related to such Recall, including, without limitation Return Costs, Disposal Costs, Buyer's own and third-party labor costs, lost profits and other costs and expenses incurred in taking the actions stated in Sections 11(w), (x), (y) and/or (z) above. When effectuating a Recall, Buyer reserves the right to, at Buyer's option, include in the Recall all Goods bearing the SKU or UPC of the Recalled Goods, regardless of date code, lot code or expiration date. Vendor will provide Buyer with no less than 24-hours written notice prior to the public announcement of any Recall or safety-related issues in connection with the Goods to the extent permitted by applicable law. Such notification shall include, without limitation, all of Vendor's item numbers affected by the Recall or safety related issue, expected inventory levels affected, and a detailed description of the nature of the public announcement.

The PO Terms will continue to apply to Recalled Goods. Upon Buyer's request, Vendor will, at its cost, change the SKU or UPC on all existing, non-impacted Goods bearing the same SKU or UPC as the Recalled Goods if the Recalled Goods bear any Buyer or Buyer Affiliate brand or private label and Vendor acknowledges that such SKU or UPC

changes may require Vendor, at its cost, to relabel or repack such non-Recalled Goods.

12. Confidentiality. Subject to the provisions of any confidentiality, non-disclosure or similar agreement executed by Buyer and Vendor, which agreement will control over the terms of this Section 12 and is incorporated herein by this reference, Vendor may not disclose to a third party or take or use for its own purposes or the purposes of others, any of Buyer's trade secrets, proprietary information, data or materials, or any other information Buyer reasonably considers to be confidential ("Buyer's Confidential Information"). "Buyer's Confidential Information" includes, without limitation, the PO Terms and the price paid for Goods. Vendor may disclose Buyer's Confidential Information: (a) to its contractors only to the extent necessary to enable Vendor to perform its obligations under the PO Terms only if such contractors are bound by confidentiality obligations sufficient to protect Buyer's Confidential Information in accordance with the terms of this Section 12; and (b) to the extent required by court order, subpoena or applicable law with, if permitted by applicable law, prior notice to Buyer.

13. Warranties. Vendor warrants that: (a) all Goods, and the design, production, manufacture, importation, distribution, transportation, labeling, packaging, pricing and sale of all Goods, and all representations, warranties and advertising made by Vendor, or authorized by Vendor to be made, in connection with Goods, shall be in accordance with, comply with, and where required, be registered under, all applicable laws, rules, regulations, standards, codes, orders, directives, judicial and administrative decisions, and ordinances, whether now in force or hereinafter enacted, of the country of origin, the country of transit, the United States of America ("USA"), and each state or subdivision thereof, and any agency or entity of the foregoing, including, without limitation, the Consumer Product Safety Improvement Act of 2008, as amended, the California Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65") and other substantially similar federal, state or local laws, as amended, those related to environmental protection, labor, health, consumer product safety, agriculture, food and drug, and the regulations promulgated under such laws ("Laws") and that Vendor complies, and will comply at all times, with all other applicable laws in the operation of Vendor's business; (b) none of the articles of food Shipped or sold by Vendor are or will be adulterated, misbranded or improperly labeled within the meaning of the Federal Food, Drug and Cosmetic Act of June 25, 1938, as amended, the Nutrition Labeling and Education Act of 1991, as amended, and the Food Safety Modernization Act, as amended; (c) all processes used or engaged in with respect to processing, manufacturing, packaging, labeling, storing and Shipping Goods comply with all Laws; (d) it has full and clear title, free of all liens and encumbrances whatsoever to the Goods and that the Goods are hereby sold and can be resold, advertised, and used; (i) in full compliance with all contracts, laws, rules and regulations, including those governing the use of trade names, trademarks, trade dress, trade secrets, copyright and patents; and (ii) in a manner that assures the safety of the representatives, patrons, and customers of Buyer and consumers of the Good; (e) the Goods are In new, good and saleable condition; and (f) the Goods are manufactured in the country of origin stated on the commercial documents required for customs entry. Vendor will regularly have independent tests performed on all Goods prior to Shipping to ensure compliance with the PO Terms, including, without limitation, the provisions of this Section 13. Vendor will provide Big Lots with copies of: (y) any and all test reports, Safety Data Sheet (SDS) information, Proposition 65 product information, ingredient information, and any information Big Lots' deems necessary to comply, or support its compliance with, any Laws; and (z) upon Big Lots' request, signed copies of any and all license agreements relating to the Goods. Vendor acknowledges and agrees that it will be a breach of warranty if any Goods are in violation of any Laws at any time, including after the sale of such Goods by Vendor to Buyer. The parties agree that no personal identifiable information, as defined under California Consumer Privacy Act, 2018, as updated from time to time ("PII") will be shared or provided under this PO Terms. In the event Vendor receives any PII, Vendor shall forthwith notify Buyer of the same and use best efforts to remove such PII and comply with applicable privacy laws. In the event Goods fail to comply with the warranties set forth in the PO Terms at any time, Vendor agrees that it will immediately notify Buyer and take all measures to identify the Goods that are or may be affected. The PO Terms are not intended to and will not negate or replace any of, but will supplement, the warranties, express or implied, provided by the Uniform Commercial Code, at law, or in equity.

14. Anti-corruption. Vendor shall comply with all applicable laws. Vendor specifically acknowledges and agrees that Vendor's performance of the PO Terms is subject to the United States Foreign Corrupt Practices Act and other applicable anti-bribery and anti-corruption laws of the United States and other countries where the Vendor operates (collectively, "Anti-corruption Laws"). Vendor warrants and agrees that Vendor, its employees, agents, and anyone acting on Vendor's behalf will not violate any Anticorruption Laws for the benefit of or on behalf of Buyer or Vendor. Further, Vendor warrants and agrees that Vendor and anyone acting on Vendor's behalf will not, directly or indirectly, offer, promise, make, give, or authorize the payment of any money or transfer of anything else of value to: (a) an officer, employee, agent or representative of any national, state, regional, or local government, including any department, agency or instrumentality of any government or any government-owned or government-controlled entity, or public international organization, or any person acting in an official capacity on behalf thereof, or any political party, political party official, or candidate for political office (each a "Government or Political Official"); (b) a close associate or relative of any Government or Political Official; or (c) any other person or entity while knowing or having reason to believe that some or all of the payment or thing of value will be offered, given or promised, directly or indirectly, to any Government or Political Official, for the purpose of: (i) improperly influencing an act or decision of such Government or Political Official, including expediting or



OFFICE-COPY   **IMPORTANT Terms and Conditions**   PO#: 95575104

Page 4 of 6

securing the performance of a routine government action; (ii) obtaining, retaining or directing any business; or (iii) securing an improper business advantage. Vendor will provide Buyer such information and further written certifications as Buyer may request from time-to-time to assist Buyer's efforts to assure compliance with Anti-corruption Laws. Vendor specifically agrees to comply at all times with (a) all applicable laws prohibiting child labor, prison labor, indentured labor or bonded labor, (b) all applicable laws pertaining to safe and healthy workplaces and working conditions, (c) all applicable laws pertaining to minimum wage, maximum work periods, and the payment of overtime, and (f) all environmental laws applicable to the Goods.

15. Indemnification. Vendor shall indemnify, defend (at Buyer' sole option) and hold harmless Buyer, its Affiliates, and their respective officers, directors, contractors, employees and agents, from and against any and all liabilities, obligations, penalties, fines, judgments, settlements, damages, losses, deficiencies, interest, fees, costs, expenses, incidents, demands, claims and/or suits, whether actual or alleged, including, without limitation, attorneys' fees, court costs, and expert witness fees, including those fees, costs and expenses incurred in enforcing Buyer's rights under the PO Terms, whether in connection with a breach of the PO Terms or otherwise ("Losses"), arising from or related to: (a) the acts or omissions of Vendor, its Affiliates or contractors, or their respective contractors, employees, or agents; (b) Recall of the Goods; (c) personal injury or property damage resulting from any actions or inactions of Vendor, or from the manufacture, storage, movement, use or consumption of the Goods; (d) breach of Vendor's warranties or a term of the PO Terms; (e) infringement of a third party's intellectual property or proprietary rights, including, but not limited to, trade names, trademarks, trade dress, trade secrets, patents and copyrights, in connection with the use, manufacture, distribution,

description, advertising, marketing sale or offer for sale of the Goods; and (f) an employment related claim brought by an employee, agent or contractor of Vendor, its Affiliates, or a Vendor contractor.

16. Insurance. Vendor will, at its own expense, procure and maintain, at a minimum, the types and amounts of insurance coverage described in the Big Lots Certificate of Insurance and Indemnification Policy, the most current version of which can be obtained by visiting Buyer's Vendor Resource Website and clicking "Routing and Compliance," or by going directly to www.biglots.com/corporate/vendors/routing-andcompliance. The insurance companies issuing the policies must: (a) have Standard & Poor's rating of BBB or better or A.M. Best's rating of A-VII or better; and (b) be licensed to operate in the country from where the subject Good is sold and invoiced to Buyer, and have an extensive North American presence. Prior to the first PO being issued, annually thereafter (within sixty (60) days after policy renewal), and at any other time upon Buyer's request, Vendor will provide Buyer with certificates of insurance ("COI") signed by an authorized representative of the insurance carrier evidencing the required insurance coverages (unless lower coverage limits are agreed upon in writing by an officer of Buyer). In addition, upon Buyer's request, Vendor will provide Buyer with copies of the actual endorsements and/or policies. With the exception of workers' compensation, the COI must show a broad form vendor's endorsement or name "Big Lots, Inc. and all of its direct and indirect subsidiaries and affiliates" as an additional insured. The policies must: (i) respond as primary coverage and non-contributory to any other insurance policy available to Buyer; (ii) not contain any exclusion, limitation or endorsement that restricts or limits applicable liability coverage; (iii) provide for the investigation, defense, and satisfaction (by settlement or otherwise), at no cost to Buyer, of any Losses incurred by Buyer; and (iv) provide that the insurance companies issuing the policies will notify Buyer at least thirty (30) days prior to any policy cancellation or modification. Vendor will bear its own insurance and insurance-related expenses and Vendor's liability will not be limited to its insurance coverage.

17. Cumulative Remedies. Each of Buyer's rights and remedies under the PO Terms is cumulative and in addition to any other rights and remedies provided at law, in equity, elsewhere in the PO Terms, or otherwise, including, without limitation, the Uniform Commercial Code.

18. Force Majeure. Buyer may delay delivery or acceptance of any or all Goods, or cancel any PO in the event that such delay or cancellation is due to causes beyond Buyer's reasonable control. In such case, Buyer will not be liable to Vendor for any amount except to pay for the unit cost of Goods that are fully delivered and accepted by Buyer, subject to Buyer's right to offset and withhold payment as provided in Section 9 of these Terms & Conditions.

19. Use of Goods; Content & Marks. Vendor is not permitted to use Buyer's, or Buyer's Affiliates', names, trademarks, trade names, logos or service marks in any marketing, advertising or publicity without the prior written consent of B buyer's Chief Executive Officer, Chief Financial Officer, or General Counsel, which consent may be given or withheld in Buyer's sole and absolute discretion. Vendor hereby grants to Buyer the royalty-free, sublicensable, worldwide right to use the Goods and Vendor Content in or related to Buyer's retail

operations, both brick and mortar and eCommerce. "Vendor Content" means text, graphics, names, marks, images, audio or digital files, audio-visual content and all other data, information, marketing and promotional materials and content in any medium, and all copyrights, logos, trademarks, service marks, trade names, and other intellectual property rights therein or related to the Goods.

20. Assignment & Subcontracting. Vendor will not assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms), voluntarily or involuntarily, by operation of law, or in any other manner,

without the prior written consent of an officer of Buyer. Any purported assignment or delegation made without this consent is void. Buyer may assign the PO Terms in whole or in part (by assigning any right or delegating any duty under the PO Terms) to an Affiliate or to any other party in Buyer's sole discretion. In the event Buyer assigns the entire PO Terms to another party, Buyer will have no further obligation to Vendor under the PO Terms and Vendor hereby consents that Buyer's assignment will constitute a novation. Buyer's payment to Vendor constitutes payment for Goods, services, equipment or other deliverables provided by any subcontractor of Vendor or Vendor's agents or representatives. Vendor remains fully responsible and liable to Buyer for the acts and omissions of its subcontractors and performance of all Vendor's duties and obligations under the PO Terms.

21. Governing Law; Venue; Jury Waiver; and Arbitration. The laws of the State of Ohio, without application of conflicts of law principles, govern the PO Terms and all matters arising out of or related to the PO Terms. Each party hereby irrevocably agrees that any disagreement, dispute, action, controversy or claim with respect to: (a) the validity of the PO Terms; (b) breach of the PO Terms; or (c) otherwise arising out of, or in relation to the PO Terms, a PO, or any agreement in which either is incorporated ("Dispute"), will be brought in the state or federal courts located in Franklin County, Ohio, and hereby expressly submits to the personal jurisdiction and venue of such courts for purposes thereof and expressly waives all claims of improper venue and all claims that such courts are an inconvenient forum. The parties hereby agree to waive a trial by jury with respect to Disputes. Any Dispute may, in Buyer's sole and absolute discretion, be settled by binding arbitration by an arbitration service of Buyer's choice, in accordance with the laws of the state of Ohio governing voluntary arbitrations. The location of such arbitration will be in Columbus, Ohio. Discovery will be permitted as provided by applicable state law or as the parties may otherwise mutually agree. The parties may also mutually elect to seek mediation as an alternative precursor to arbitration. If the PO Terms govern an international transaction, the applicable state law regarding the arbitration of international disputes will apply. The arbitrator will agree to conduct proceedings under the laws relating to arbitration cited above, or such other rules to which the parties mutually agree. The United Nations Convention on Contracts for the International Sale of Goods shall have no application to this Agreement or actions hereunder or contemplated hereby.

22. Severability. Provisions of the PO Terms will be interpreted to be valid and enforceable under applicable law; provided, however, that if any provision is held invalid or unenforceable, such provision will not invalidate the PO Terms. The PO Terms' remaining provisions will stay in effect and be enforced to the fullest extent permitted by law.

23. Entire Agreement. The PO Terms constitute the entire agreement between the parties and supersede all previous agreements, written or oral, between the parties with respect to the subject matter hereof. The PO Terms may not be modified by course of dealing, course of performance, or any oral communication between Buyer and Vendor. The PO Terms may only be modified by, and a waiver will be effective only if set forth in, a written instrument that references the PO Terms, expressly describes the terms herein to be modified, and is signed by a representative of Vendor and an officer of Buyer. Without limiting the generality of the foregoing, no term or condition of any document issued by Vendor, including, without limitation, invoices, sales acknowledgments, or other similar documents, will constitute a modification of or addition to the PO Terms and will have no force or effect and are hereby rejected. The Vendor Guide as in effect from time to time is made a part hereof and is expressly incorporated herein. In the event of any conflict between the any terms and conditions or any other document of Vendor, Vendor Guide and these PO Terms, the PO Terms is binding to the extent of such conflicts. Vendor will comply with (a) applicable industry standards with respect to privacy and data security relating Buyer's Confidential Information and (b) applicable privacy and security laws ("Privacy Policy"). Any updates to the Vendor Guide or the Privacy Policy immediately take effect and are binding on the parties.

24. No Third-Party Beneficiaries. Certain sections of the PO Terms are for the benefit of Buyer's Affiliates. As a result, any of Buyer's Affiliates may enforce the PO Terms. Except for Buyer's Affiliates, the PO Terms do not create any enforceable rights by anyone other than Buyer and Vendor.

25. LIMITATION OF LIABILITY. EXCEPT IN THE CASE OF GROSS NEGLIGENCE AND/OR WILLFUL MISCONDUCT, BUYER WILL NOT BE LIABLE TO VENDOR OR ITS AFFILIATES FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, BUSINESS INTERRUPTION, AND ANY LOSS OF USE, REVENUE, GOODWILL, OPPORTUNITY OR DATA, IN CONNECTION WITH THE PO TERMS, REGARDLESS OF THE FORM OF THE ACTION, WHETHER IN CONTRACT, WARRANTY, STRICT LIABILITY OR TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE OF ANY KIND, AND REGARDLESS OF WHETHER BUYER WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW, OF THE POSSIBILITY OF LIABILITY.

26. Acceptance of PO Terms. Vendor agrees to and accepts all of the terms and conditions in the PO Terms by doing any of the following: (a) acknowledging or accepting a PO; (b) acknowledging or agreeing to the PO Terms through Buyer's EDI process, by click-through, click to accept, or otherwise; (c) signing these Terms & Conditions; (d) Shipping any portion of the Goods referenced in a PO or otherwise fulfilling any portion of its obligations under a PO; or (e) accepting any complete or partial payment for the Goods, transportation of the Goods, or otherwise in connection with a PO or the Goods, or by any other means of acceptance recognized at law or in equity.



OFFICE-COPY

## IMPORTANT Terms and Conditions

PO#:   95575104

Page 5 of 6

AS AN INDUCEMENT FOR BUYER TO ENTER INTO A PO, VENDOR WARRANTS THAT IT HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS OF THE PO TERMS, INCLUDING THE VENDOR GUIDE, WITHOUT MODIFICATION.  EACH PO IS EXPRESSLY LIMITED TO, AND EXPRESSLY MADE CONDITIONAL ON, VENDOR'S ACCEPTANCE OF THE PO TERMS AND BUYER OBJECTS TO AND REJECTS ANY DIFFERENT OR ADDITIONAL TERMS.

27. Import/Export Laws. Vendor shall be responsible for timely obtaining and maintaining any required export license, permit or approval and pay all required fees, assessments, duties, charges, taxes, tariffs, levies or other charges necessary to lawfully export the Goods from Vendor's country.  Vendor shall ensure that the Goods are properly marked and accompanied by such true, complete, and correct invoices, packing lists, certifications, declarations and other documentation necessary for their proper classification and importation into the United States and clearance through United States customs.



OFFICE-COPY

| Dept | Article | Article Description | Size | Country of Origin | Master | | Total  Units | Cost | Ext. Cost | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | MFG# | Merch Cat Descrption | | Dangerous Goods | Inner | Package Art | # of Cartons | Additionals | Ext. Retail | Promo Event |
| Merch. Cat | Brand | Merchandise, Type | Release Week | CS Weight | | | | Retail | IMU | Compare TO |
| Line Item# | UPC | Expiration Date | Goods Class | CS Cube | Ticket Type | | EAS Tag | PDQ Pkg | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 210 | 810775523 | COMBO RUSHFORD 10X | 0.00 | CN | 1 | | 88 | 812.00 | 75,108.88 | 02/03/2025 |
| 21034 | TPGAZ25120 | GAZEBO | | | 1 | | 88 | 241.51 | 131,999.12 | |
| 21034001 | Broyhill | | 051 | | | | | 1,499.99 | 43.507 | 2699.00 |
| 1 | 481077552300 | | GRM | 27.362 | UPC | | | | | |
| -->> The | above assortment | (810775523) | consists of | | | | | | | 02/03/2025 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |
| 210 | 810775434 | RUSHFORD 10X12FT ME | 0.00 | CN | | | 88 | 178.00 | 15,664.00 | 02/03/2025 |
| 21034 | TPGAZ25120-2 | GAZEBO | | | | | 88 | | 44,000.00 | |
| 21034001 | Broyhill | | 051 | | | | | 500.00 | 64.400 | 1199.00 |
| 2 | 481077543407 | | | 12.586 | UPC | | | | | |
| 210 | 810775473 | RUSHFORD 10X12FT ME | 0.00 | CN | | | 88 | 434.00 | 38,192.00 | 02/03/2025 |
| 21034 | TPGAZ25120-1 | GAZEBO | | | | | 88 | | 87,999.12 | |
| 21034001 | Broyhill | | 051 | | | | | 999.99 | 56.600 | 1500.00 |
| 3 | 481077547306 | | | 14.775 | UPC | | | | | |
| *--End of | assortment list | for -810775523 | | | | | | | | 02/03/2025 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| 0 | | | | | | | | | | |

# SHANDONG TAIPENG INTELLIGENT HOUSEHOLD

Seller reference

# PRODUCTS CO., LTD

136 GONGYEYI ROAD, FEICHENG, SHANDONG, 271600, CHINA

---

## INVOICE

**Invoice No.:** YT24-411

**Invoice Date.:** December 14, 2024

**Sold To:**　CSC DISTRIBUTION, LLC
　　　　　2855 SELMA HIGHWAY
　　　　　MONTGOMERY, AL 36108
　　　　　USA

**Delivery To:**　2855 SELMA HIGHWAY
　　　　　MONTGOMERY, AL 36108
　　　　　USA

**Shipment Terms:** FOB QINGDAO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** NEW YORK EXPRESS / 054E

**Port of Loading:** QINGDAO

**Ship on or about:** December 18, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** FDCU0428724

| Cargo Description | | Quantity (Unit) | | Unit Price (USD) | Total Amount (USD) |
|---|---|---|---|---|---|
| P/O No.: 95575104 | | 88 | EA | 612.000/EA | 53,856.000 |
| SKU No.: 810775523 | | 88 | CTNS | | |
| COMBO RUSHFORD 10X12FT METAL LOUVERED ROOF PERGOLA | No. of Pallet: | | | | |
| HTS Code.: 7308909590 | | | | | |
| | Manufacturer Name & Address | | | | |
| | SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD. HIGH-NEW TECH DEVELOPMENT FEICHENG SD 271600 CHINA FEICHENG, SHANDONG 271600, CHINA | | | | |
| **Total:** | **(88 CTNS)** | **88** | | | **53,856.000** |
| TOTAL (USD) DOLLARS : FIFTY-THREE THOUSAND EIGHT HUNDRED FIFTY-SIX ONLY. | | | | | |
| | | | | | |

**Consolidator(Full Name & Address)**
SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD.
HIGH-NEW TECH DEVELOPMENT FEICHENG SD 271600 CHINA
FEICHENG , SHANDONG
271600 CHINA
Container No./Seal/Size:
FDCU0428724/CN48915AN/40H

**Container Stuffing Location(Full Name & Address )**
SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD.
HIGH-NEW TECH DEVELOPMENT FEICHENG SD 271600 CHINA
FEICHENG , SHANDONG
271600 CHINA
Container No./Seal/Size:
FDCU0428724/CN48915AN/40H

We certify that there is no wood packing material in the shipment.

**Carton Marks And Number**

PO#:
SKU#:
DEPT#:
COUNTRY OF ORIGIN:CHINA

# SHANDONG TAIPENG INTELLIGENT HOUSEHOLD

Seller reference

## PRODUCTS CO., LTD

136 GONGYEYI ROAD, FEICHENG, SHANDONG, 271600, CHINA

# PACKING LIST

**Invoice No.:** YT24-411

**Invoice Date.:** December 14, 2024

**Sold To:** CSC DISTRIBUTION, LLC
2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Delivery To:** 2855 SELMA HIGHWAY
MONTGOMERY, AL 36108
USA

**Shipment Terms:** FOB QINGDAO

**Payment Term / OAT #(Open Account Transaction):**

**Country of Origin:** CHINA

**L/C Number:** TT

**Vessel / Voyage:** NEW YORK EXPRESS / 054E

**Port of Loading:** QINGDAO

**Ship on or about:** December 18, 2024

**Port of Entry:** SAVANNAH, GA

**Destination:** MONTGOMERY, AL

**Container Number (Factory Load) :** FDCU0428724

| Cargo Description | | Quantify (Unit) | Net Weight (KGS) | Gross Weight (KGS) | CBM |
|---|---|---|---|---|---|
| P/O No.: 95575104 | | 88  EA | 14,467.20 | 15,780.80 | 65.380 |
| SKU No.: 810775523 | | 88  CTNS | | | |
| COMBO RUSHFORD 10X12FT METAL LOUVERED ROOF PERGOLA | No. of Pallet: | | | | |
| HTS Code.: 7308909590 | | | | | |
| **Total:** (88 CTNS) | | 88 | 14,467.20 | 15,780.80 | 65.380 |

**Consolidator(Full Name & Address)**
SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD.
HIGH-NEW TECH DEVELOPMENT FEICHENG SD 271600 CHINA
FEICHENG , SHANDONG
271600 CHINA
Container No./Seal/Size:
FDCU0428724/CN48915AN/40H

We certify that there is no wood packing material in the shipment.

**Container Stuffing Location(Full Name & Address )**
SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD.
HIGH-NEW TECH DEVELOPMENT FEICHENG SD 271600 CHINA
FEICHENG , SHANDONG
271600 CHINA
Container No./Seal/Size:
FDCU0428724/CN48915AN/40H

**Carton Marks And Number**

PO#:
SKU#:
DEPT#:
COUNTRY OF ORIGIN:CHINA

| 条形码: | ‖‖‖‖‖‖‖‖‖‖‖‖‖‖ | | 3051312380525 |
|---|---|---|---|
| 通知单打印人: | 青岛远洋大亚物流有限公司 | | |
| 订舱号: | TA4PTAR13700 | 箱型: | 40H Q |
| 船名航次: | NEW YORK EXPRESS / 054E | | |
| 提箱地点: | 青岛大亚 青岛市经济技术开发区龙岗山路88号 | | |
| 箱经人代码: | ONE | 箱号: | |
| 口的港: | USMGM/USSA1 | 进港码头: | 青岛前湾集装箱码头 |
| 有效期: | 2024-12-10 15:46:43       ~       2024-12-13 15:46:43 | | |
| 备注: | 特殊条款: | | |

打印日期: **2024-12-10 15:46:45**



PACKING LIST

...HOUSEHOLD PRO...
...CITY SHANDONG PROVINC...
...RY 1 ROAD FEICHENG

LLC
MONTGOMERY, AL 36108, USA

T METAL LOUVERED ROOF PERGOLA

| 件/箱 | TTL N.W (Kgs) | 毛重/箱 (Kgs) | TTL G (Kgs) |
|---|---|---|---|
| 2 | 7497.60 | 92.30 | 8198. |
| 2 | 6969.60 | 85.30 | 7582. |
| | 14467.20 | | 15780. |

远洋大亚场站设备交接单

请使用微信扫描二维码预约返重
并提交准确货名及件重尺寸数据
船名航次：纽约快航/054E
提单号：ONEYTIA4PIAR13700
箱号：FDCIU0428724
箱型：40HC
铅封号：CN48915AN
温度：
通风度：
提箱车号：
司机提箱出场前核重拍照并签字：
司机签字：

工厂签章：
工厂须知：
1. 集装箱出场即为送货箱，出现
后果用箱人或送箱人自负。
2. 请保证提交数据真实有效。
3. 本单必须由货主或发货人加盖
公章，否则单据无效。
4. 内贸箱预约返重需清到云港通
缴纳作业包干费，以便顺利进...



# 中华人民共和国海关出口货物报关单



★433020240000022915★

| 预录入编号：433020240000022915 | 海关编号：433020240000022915 | （泰安海关） | 仅供核对用 | 页码/页数：1/1 |

| 境内发货人 (9137098373819605 4N)<br>山东泰鹏智能家居股份有限公司 | 出境关别 (4218)<br>肯开发区 | 出口日期<br>20241217 | 申报日期<br>20241214 | 备案号 |
| 境外收货人<br>CSC DISTRIBUTION, LLC | 运输方式 (2)<br>水路运输 | 运输工具名称及航次号<br>NEW YORK EXPRESS/054E | 提运单号<br>ONEYTA4PTARI3700 | |
| 生产销售单位 (91370983738196054N)<br>山东泰鹏智能家居股份有限公司 | 监管方式 (0110)<br>一般贸易 | 征免性质 (101)<br>一般征税 | 许可证号 | |
| 合同协议号<br>YT24-411 | 贸易国 (地区) (USA)<br>美国 | 运抵国 (地区) (USA)<br>美国 | 指运港 (USA000)<br>美国 | 离境口岸 (370201)<br>黄岛 |
| 包装种类 (99/22)<br>其他包装/纸制或纤维板制盒/箱 | 件数<br>88 | 毛重（千克）<br>15780.8 | 净重（千克）<br>14467.2 | 成交方式 (3)<br>FOB | 运费 | 保费 | 杂费 |
| 随附单证及编号 | | | | |

| 标记唛码及备注 |
| 备注：FOB; SKU#: DEPT#: COUNTRY OF ORIGIN:CHINA  集装箱箱数及号码：2;FDCU0428724; |

| 项号 | 商品编号 | 商品名称及规格型号 | 数量及单位 | 单价/总价/币制 | 原产国 (地区) | 最终目的国 (地区) | 境内货源地 | 征免 |
|---|---|---|---|---|---|---|---|---|
| 1 | 6306220090 帐篷 | 3|0|庭院用帐篷|铁支架50%铝支架20%全涤帷布30%<br>|Broyhill|95575104 | 88件<br>14467.2千克<br>88件 | 608.8800<br>53317.44<br>美元 | 中国<br>(CHN) | 美国<br>(USA) | (37099)泰安 | 照章征税<br>(1) |

| 特殊关系确认：否 | 价格影响确认：否 | 支付特许权使用费确认：否 | 公式定价确认： | 暂定价格确认： | 自报自缴：否 | 水运中转： |

| 报关人员 | 报关人员证号43000535 | 电话 | 兹申明对以上内容承担如实申报、依法纳税之法律责任 | 海关批注及签章 |
| 申报单位 (91370983738196054N) 山东泰鹏智能家居股份有限公司 | | | 申报单位（签章） | |

 **YUSEN LOGISTICS**

Submission No : CNS-2412250
Version Date : 11/26/2024 2:23:49 PM
Page 1 of 2

This document is issued as a receipt of cargo only and will not be negotiable unless the original is submitted to exchange for the Forwarder's Cargo Receipt which will be issued on request.

| Shipper/Exporter (Name & Address) | SHIPPING ORDER/DOCK RECEIPT | |
|---|---|---|
| SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD 136 GONGYEYI ROAD FEICHENG, SHANDONG, 271600, CN<br><br>Contact: SUNHU<br>Tel:    0538-3308709<br>Fax:    0538-3305019 | **Port of Loading**<br><br>QINGDAO | |
| | **Final Destination**<br><br>MONTGOMERY, AL | |
| Consignee<br><br>CSC DISTRIBUTION, LLC 2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA | Freight :<br><br>COLLECT | Exp. Lic No.<br><br>NO |
| | Ship Term<br><br>FOB | Ship Mode<br><br>OCEAN |
| Notify Party<br><br>GEODIS 5101 S. BROAD STREET PHILADELPHIA, PA 19112-1404, U.S.A. ATTN: ALENA LAMINA | Estimate Delivery Date<br><br>CY 12 December 2024 | No. of Original Document Required<br><br>EFCR    1 |
| Also Notify | Declaration<br><br>THE SHIPMENT CONTAINS NO WOOD PACKAGING MATERIAL | |
| Shipper/Exporter Email :    18905388376@163.COM | | |
| Remarks : | | |

**REQUIRES D40H x 1 CONTAINER ONLY**

The shipper certifies that the particulars of the face hereof are correct and agree to the terms and conditions.
Goods will be received by YUSEN LOGISTICS for Storage, Consolidation, Forwarding, or Shipment, subject to the Company's Standard
Trading Terms and Conditions, a copy is available upon request which in certain circumstances, limit or exempt the Company's liabilities.

 **YUSEN LOGISTICS**

| YL Shipping Order : | | | Export License will be Submitted : No | | |
|---|---|---|---|---|---|
| Tmast No.: | | | Fumigation Cert. will be Submitted : No <br> Fish & Wildlife Cert. will be submitted : No <br> Contains Pallet : No | | |
| PO Seller :SHANDONG TAIPENG INTELLIGENT <br> HOUSEHOLD PRODUCTS CO., LTD. | | | | | |
| Other Document will be submitted : | | | | | |
| Product contains Wood Formaldehyde and complied with rules and orders under TSCA Title VI : Not Applicable | | | | | |

| P/O No. | Item No. | No. of pkgs | Cbm | Kilos | Qty |
|---|---|---|---|---|---|
| 95575104 | 810775523 | 88 CTN | 65.380 | 15,780.800 | 88 |
| | Manufacturer : SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD. | | | | |
| | Country of Origin : CN | | | | |
| | Ship Window : 12/16/2024 - 12/23/2024 Delivery Date : 2/3/2025 Cargo must be delivered within the indicated shipping window. | | | | |
| | TSCA Title VI Compliant : NA | | | | |
| P/O Total : | | 88 CTN | 65.380 | 15,780.800 | 88 |

| Marks & Numbers | Description of Packages and Goods <br> Particulars Furnished by Shipper | | | |
|---|---|---|---|---|
| PO#: | COMBO RUSHFORD 10x12FT METAL LOUVERED ROOF PERGOLA | | | |
| SKU#: | | | | |
| DEPT#: | | | | |
| COUNTRY OF ORIGIN:CHINA | | | | |

| Total : | 88 CTN | 65.380 | 15,780.800 | 88 |
|---|---|---|---|---|

| Total No. of  Packages Received (In Words) | Measurement: |
|---|---|
| | Weight: |

Yusen Logistics (Hong Kong) Limited expressly disclaims all and any liability to any person in respect of anything done or omitted, and the consequences of anything done or omitted, by any such person in reliance on the contents of this electronic Forwarders Cargo Receipt (eFCR). No part of these e-FCR Standard Operational Procedures may be reproduced, recast, reformatted or transmitted in any form by any means, electronic or mechanical, including photocopying, recording or any information storage and retrieval system, without the prior written permission from Yusen Logistics.

# SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD

ADDRESS:NO.136 OF INDUSTRY 1 ROAD FEICHENG CITY SHANDONG PROVINCE 271600 CHINA

# COMMERCIAL INVOICE

**TO:**  CSC DISTRIBUTION, LLC

2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA

INVOICE NO: **YT24-411**

Date:    29/Nov/2023

Purchase Order Number

95575104

| | DESCRIPTION | QTY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| Art. No. | Product | FOB QINGDAO PORT IN CHINA | | |
| | COMBO RUSHFORD 10x12FT METAL LOUVERED ROOF PERGOLA | | | |
| 95575104 | | 88 | 612 | 53856 |
| | | | Discount | 538.56 |
| | | | | |
| | | | | |
| | | 88 | | $53,317.44 |

**AMOUNT**

SHANDONG TAIPENG INTELLIGENT
HOUSEHOLD PRODUCTS CO., LTD.

SHI FENG /PRESIDENT

## SHANDONG TAIPENG INTELLIGENT HOUSEHOLD PRODUCTS CO., LTD

ADDRESS:NO.136 OF INDUSTRY 1 ROAD FEICHENG CITY SHANDONG PROVINCE 271600 CHINA

## PACKING LIST

TO:  CSC DISTRIBUTION, LLC

2855 SELMA HIGHWAY, MONTGOMERY, AL 36108, USA

INVOICE NO: **YT24-411**

Date:  29/Nov/2023

Purchase Order Number

95575104

| PO. NO. | QTY SETS | CTNS | 净重/箱 | TTL N.W | 毛重/箱 | TTL G.W | 体积/箱 | MEAS. |
|---|---|---|---|---|---|---|---|---|
| | | CTNS | | ( Kgs ) | | ( Kgs ) | | ( CBM ) |
| 95575104 | | COMBO RUSHFORD 10x12FT METAL LOUVERED ROOF PERGOLA | | | | | | |
| 810775523 | 88 | 88 | 85.2 | 7497.60 | 92.30 | 8198.40 | 0.396 | 39.87 |
| | | 88 | 79.2 | 6969.60 | 85.30 | 7582.40 | 0.233 | 25.51 |
| | | 88 | | 14467.20 | | 15780.80 | | 65.38 |
| CONTAINER NO: FDCU0428724    SEAL NO:CN48915AN | | | | | | | | |

SHI FENG /PRESIDENT

日郵物流(中国)有限公司青岛分公司
Yusen Logistics(China) Co.,Ltd.  Qingdao branch

地址：山东省青岛市市南区software园大厦24号 南区万源中心7-608
电话：0532-66819732
传真：0532-66819732
邮箱：John.shi@cn.yusen-logistics.com

**Yusen Logistics**

## 订舱确认（Booking Confirmation）

BIG LOTS STORES

---

收件单位：SHANDONG TAIPENG INTELLIGENT                截关日期：2024/12/15 10:00:00      截单日期：2024/12/13 14:00:00

关单号：ONEYTA4PTAR13700

---

| | | |
|---|---|---|
| 船名航次：NEW YORK EXPRESS/054E | 承运人：海洋网联船务（中国）有限公司 | 运输条款：CY-DOOR |
| ETD  2024/12/18 | 箱型箱量：1*40HC | （冷代干：否） |
| 起运港：QINGDAO | 卸货港：SAVANNAH | 交货地：MONTGOMERY |
| 船代：青岛港国际物流有限公司 | | |
| 场站信息：大亚 | http://www.yydy.com/cn/index.aspx | |

**注意事项：**

01. 从2003年2月1日开始，美国已正式实行AMS，请提醒所有工厂，在我司入货通知截单时间之前提交e-CLP及所有准确信息。晚于截单时间导致的责任风险及费用由贵司承担。晚于完可截单时间提出更改提单任何内容，都将产生改单费。从2011年1月1日开始，欧盟已正式实行ENS，请提醒所有工厂，在我司入货通知截单时间之前提交e-CLP及所有准确信息。晚于截单时间导致的责任风险及费用由贵司承担。晚于我司截单时间提出更改提单任何内容，都将产生改单费。
02. 收到SO后，请核对数据，柜型、柜量、目的港等信息，如有错漏，请及时告知，否则产生多余费用，请自行吸收。
03. 车队背箱前请联系场站核实装箱情况，若未核实产生额外费用由贵司概不负责。请务必在提前前审实最高免费提使用。
04. 请于截单日期前，在系统提交e-Load Plan和VGM。***我司是第一次提交报关，如第一次提交后需再次修改，我司将会收取改单费*** ***如不能及时提交SI，请提前申请。如未申请并晚于SI截止时间，将产生额外费用***
05. 如有任何分票请于截单前通知我司，并提供分票分箱明细，否则默认一票报关。分箱明细请于截单及截港前邮件发至我司，以免产生改单费用
06. 如委托我司报关，请于截单与操作联系，以便取得链接上传出口税率单据。
07. 请务必提前与我司核实预配舱单品名，船公司要求须与提单品名保持完全一致。
08. 目的港清关文件请在客人规定的日期内提交，否则发货人需承担客人规定的罚款。
09. 如为内点装箱，请提前告知，并邮件提供准确件重尺，以便封箱截港。若无通知，默认为背箱操作。
10. 入货通知原标注截港时间为船公司预计时间，请以码头实时更新的实际计划为准。
11. 如需我司收费标准，请由货前咨询。一旦货物出运我司将默认贵司接受我司收费标准。

------------------------------------------------

海洋网联船公司提箱小票有效期72小时，请于提箱前向我司索要小票。

┌─────────────────────┐
│ YT24-411            │
│ BIGLOTS             │
│ 95575104            │
│                     │
└─────────────────────┘

------------------------------------------------
SHIPPING ADVICE
免箱后7天

------------------------------------------------

货物数据明细

| SO# | PO# | SUBMISSION# | 件数 | 毛重 | 体积 |
|---|---|---|---|---|---|
| TAOM1004431 | 95575104 | CNS-2412250 | 88 | 15780.8 | 65.38 |
| | | | 88 | 15780.8 | 65.38 |

| Invoice Number | Invoice Date | PO Number(s) | Total Amount | Ship Date | Confirming Actual Arrival Date / Estimated Delivery Date | PO / Bill To: |
|---|---|---|---|---|---|---|
| YT24-389 | 12/1/2024 | 95575100 | $161,568.00 | 12/03/24 | 01/20/25 | CLOSEOUT DISTRIBUTION, LLC |
| YT24-391 | 11/30/2024 | 95575099 | $107,712.00 | 12/02/24 | 12/28/24 | CSC DISTRIBUTION, LLC |
| YT24-409 | 12/11/2024 | 95575084 | $284,544.00 | 12/14/2024 | 1/10/2025 | CSC DISTRIBUTION, LLC |
| | | 95604843 | $107,712.00 | | | |
| YT24-411 | 12/14/2024 | 95575104 | $53,856.00 | 12/17/24 | 02/11/25 | CSC DISTRIBUTION, LLC |
| | | | $715,392.00 | | | |