**Exhibit 1**

Proposed Order

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: D.I. 13 & 1198** |

### ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS-IN-POSSESSION TO TERMINATE OR ASSUME, ASSIGN AND SELL CERTAIN NON-RESIDENTIAL REAL PROPERTY LEASES

Upon the motion (the "**Motion**")[2] of Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, for an order pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006 and 9014, and Local Rule 6004-1, (i) establishing procedures (the "**Lease Sale Procedures**") to sell or transfer certain unexpired leases of non-residential real property (each, as the same may have been amended from time to time a "**Lease**"); (ii) scheduling an auction to sell the leases (the "**Lease Sales**") detailed in the Lease Sale Procedures (the "**Lease Auction**") and a hearing to approve one or more Sales (the "**Lease Sale Hearing**"); and (iii) granting related relief [D.I. 13]; Court having entered an interim order granting the relief requested in the Motion on November 20, 2024 [D.I. 1198] (the "**Fourth Interim Order**"); and in

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

#99060213v23

accordance with the Fourth Interim Order, the Debtors having conducted a Lease Auction on December 4, 2024; and the Debtors having filed a notice of Successful Bidder on December 5, 2024 [D.I. 1312] (the "**Post-Auction Notice**"); and the Debtors having filed a *Notice of Abandonment, Utilization and Disposal of Personal Property on Certain of the Debtors' Leased Premises Sold Pursuant to the December Wave Lease Sales* on November 25, 2024 [D.I. 1237] (the "**Notice of Abandonment**"); and the Debtors having filed a *Notice of Potential Utilization and Disposal of Personal Property on Certain of the Debtors' Leased Premises Sold Pursuant to the December Wave Lease Sales* on November 25, 2024 [D.I. 1238] (the "**Notice of Disposal**"); and the Debtors having determined, in the exercise of their business judgement and in consultation with their advisors and the Consultation Parties, that the offer listed on **Exhibit A** attached hereto is the highest and best offers for the Lease; and the Court having determined that the legal and factual bases set forth in the Motion and the *Declaration of Emilio Amendola of A&G Real Estate Partners, in Support of Order (I) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of all Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (II) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [D.I. 1375] establish just cause for the relief granted herein; and the Debtors having served notice of Motion, the Lease Sale Hearing, the Notice of Abandonment, Notice of Disposal and related filings; and after due deliberation and good and sufficient cause appearing therefor;

**NOW, THEREFORE**, the Court hereby finds as follows:

A.  After good and sufficient notice of the Motion having been provided and the occurrence of the Lease Auction on December 4, 2024, the purchase price listed on **Exhibit A** is the highest and best offer received by the Debtors for the Lease listed therein.

B. A reasonable opportunity to object or be heard regarding the Post-Auction Notice has been afforded to all interested persons and entities, including the landlord for the premise referenced on **Exhibit A** (the "**Landlord**").

C. The Debtors have determined in the exercise of their reasonable business judgment that the Lease should be (i) sold and assigned to the party listed on **Exhibit A** for which the type of agreement sought to be approved is an Assignment Agreement (the "**Proposed Assignee**" or "**Buyer**," and the relevant Lease, the "**Assigned Lease**").

D. The assumption, assignment and sale of the Lease to the Buyer pursuant to Sections 363 and 365 of the Bankruptcy Code is in the best interests of the Debtors, their estates and their creditors.

E. The consideration to be paid by the Buyer pursuant to the Assumption and Assignment Agreement dated on or about December 31, 2024 (the "**Agreement**"), a copy of which is attached as **Exhibit B** hereto, constitutes adequate and fair value for the Lease.

F. Pursuant to Sections 365(b)(1)(C), 365(f)(2)(B) and 365(b)(3) of the Bankruptcy Code, to the extent required under the Lease Sale Procedures, the Buyer has provided adequate assurance of future performance under the Lease.

G. The assumption and assignment of the Assigned Lease to the Proposed Assignee is in compliance with Section 365(b)(3) of the Bankruptcy Code.

H. The Agreement was negotiated and entered into in good faith, from arm's length bargaining positions, by the Debtors and the Buyer. The Buyer is hereby found to be a good faith purchaser of the Lease and is found to be entitled to the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code.

3

#99060213v23

I. Through, *inter alia*, the Notice of Abandonment and the Notice of Disposal, the Debtors have provided sufficient notice to certain known and potentially interested third parties concerning the abandonment and disposal of personal property that will be left at the leased premises upon the Closing Date (as defined in the Agreement).

**ACCORDINGLY, IT IS HEREBY ORDERED THAT**

1. The Lease Sale Procedures Motion, as it pertains to the assignment of the Lease to the Buyer is hereby approved.

2. The Court overrules the *Objection of 5620 Nolensville Pike, LLC to Proposed Assignment of Lease to Burlington Coat Factory Warehouse Corporation* [Docket No. 1346] (the "Landlord Objection") and the *Ross Stores, Inc.'s Objection to Debtors' Fourth Notice of Successful Bidders with Respect to the Auction of Certain of the Debtors' Lease Assets and Assumption and Assignment of Certain Unexpired Leases* [Docket No. 1350] (the "Ross Objection", and together with the Landlord Objection, the "Nashville Objections") in full, including but not limited to any assertion that Landlord has the capacity to prevent the Assignment or prevent the Proposed Assignee from using the subject premises in any manner.

3. Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, the Debtors are each hereby authorized to assume, sell and assign to the Proposed Assignee the Assigned Lease, pursuant to the terms and provisions of this Order and the Agreement attached hereto as **Exhibit B**, all of the terms of which are hereby approved.

4. In accordance with Section 363 of the Bankruptcy Code, effective as of the applicable Closing Date, the Lease shall be transferred free and clear of any leasehold mortgages, subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and

rules, claims, liens, interests, mechanics liens, bills, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances.

5. Upon the entry of this Order and the occurrence of the Closing Date (as defined in the Assignment Agreement), the Proposed Assignee shall be deemed to have assumed and succeeded to the entirety of the Debtors' rights and obligations in the Assigned Lease which are due and owing from and after the Closing Date and shall have the rights of the tenant thereunder.

6. Upon entry of this Order and the occurrence of the Closing Date, the Buyer is a good faith purchaser and shall be entitled to the protections of Bankruptcy Code Section 363(m).

7. Pursuant to Section 365(b)(l) of the Bankruptcy Code, to the extent a Cure Cost is owed to a Counterparty, the applicable Cure Cost shall be promptly paid by the Debtors. Any objection of any Counterparty to the assumption or assignment or transfer of the Assigned Lease, any Cure Cost, or seeking further adequate assurance of future performance other than that provided in the Agreement, to the extent not otherwise resolved by agreement, contemplated to be heard after the Lease Sale Hearing, or by separate order of this Court, is hereby overruled. There shall be no accelerations, assignment fees, increases, or any other fees charged to the Buyer or the Debtors as a result of the assumption and assignment of the Assigned Lease. Upon remittance of the Cure Costs by the Debtors to the Landlord pursuant to the terms of this Order, the Landlord for the Assigned Lease shall be barred from asserting any additional cure amounts or other claims with respect to the Assigned Lease. For the avoidance of doubt, the counterparties (including without limitation, the Landlord) to the Assigned Lease shall be forever (i) barred from objecting to the applicable Cure Cost and from asserting any additional amounts are due or other defaults exist as of the date hereof, and the Debtors and Assignee shall be entitled to rely solely upon the Cure Cost set forth above, and (ii) barred, estopped, and permanently enjoined from asserting or

claiming against the Debtors, the Buyer or their respective property that any additional amounts are due or other defaults exist as of the date hereof, that conditions to assignment must be satisfied under the Lease, or that there is any objection or defense to the assumption or assumption and assignment of the Lease. On and after the Closing Date, the Proposed Assignee shall be responsible for paying (and shall be entitled to receive any credits arising therefor) all amounts outstanding under the Assigned Lease due on or after the Closing Date.

8. The proceeds of the Lease Sales shall be payable in accordance with the DIP Orders and the Approved Budget (as defined in the DIP Orders).

9. All personal property and furniture, fixtures and equipment ("**FF&E**") remaining in the stores subject to the Lease on or after the Closing Date shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as of the Closing Date. The Buyer may, in its sole discretion and without further order of this Court, utilize and/or dispose of such property without notice or liability to the Debtors or any consenting third parties and, to the extent applicable, the automatic stay is modified to allow such disposition; provided, however, that the DIP Lenders and the Debtors' pre-petition secured lenders consent to the release of their interests (if any) in, and liens on (if any), the FF&E, and to the Buyer's disposition of such FF&E, and any such interests and liens are hereby released; provided, further, that the Debtors are not aware of any other parties with interests in the FF&E.

10. Any party which did not object to the Lease Auction, Cure Cost & Lease Sale Hearing Notice within the time set forth in the notice is deemed to consent to the Debtors' assumption and assignment of the Assigned Lease, and the satisfaction of the requirements of Section 365 of the Bankruptcy Code. Absent further order of the Court, in accordance with the Notice of Abandonment, any party served with the Notice of Abandonment that did not timely

#99060213v23

object to abandonment in accordance with objection procedures set forth in such notice is deemed to have consented to the abandonment of the Debtors' personal property remaining on the Lease Asset premises as of the effective date of the Lease Sale. In accordance with the Notice of Disposal, any party served with the Notice of Disposal that did not timely object to disposal in accordance with objection procedures set forth in such notice is deemed to have consented to (i) the transfer to the Buyer of ownership of personal property remaining on the Lease Asset premises as of the effective date of the Lease Sale and (ii) allow the Debtors or the Buyer to utilize and/or dispose of any personal property remaining on the premises of the Lease Asset without further Court order and without liability or further notice to any third party. Subject to paragraph 19 herein, the sale and assignment of the Assigned Lease, payment of the Cure Costs and the transfer of the furniture, fixtures and equipment referenced immediately above, as applicable, shall relieve the Debtors from any further liability pursuant to Section 365(k) of the Bankruptcy Code.

11. Solely with respect to the transactions contemplated by this Order and the Agreement, and except as otherwise agreed between the Landlord and the Buyer, nothing in this Order shall be deemed to annul or vary any provision of the Lease *other than* the following provisions (the "**Unenforceable Provisions**"):

    a.    a provision prohibiting the Buyer's Intended Use of the premises, as defined in the Agreement;

    b.    a provision unreasonably prohibiting necessary alterations to the premises or signage required to convert the premises to the Buyer's Intended Use, as defined in the Agreement; provided such alterations are deemed necessary by the Buyer to conform such store to the Buyer's typical retail store consistent with the Buyer's Intended Use of the premises, as defined in the Agreement;

#99060213v23

    c. a provision commonly referred to as a "going dark" or "continuous operations" provision, providing in substance for a forfeiture of the Leases or an increase in rent or other penalty by reason of the Debtors' cessation of retail operations before the assignment, and/or any delay by any Buyer in reestablishing retail operations after the assignment, to the extent any such provision does not permit any Buyer to "go dark" until the later of: (i) one hundred eighty (180) days after the Closing Date (as defined in the Agreement) of the assignment of the Lease, or such later time, when the particular facts and circumstances of a given store warrant additional time, which circumstances shall include, without limitation, the age and condition of the shopping center, the ability to obtain any permits and documents necessary to complete construction, the location of the premises in the shopping center, the shape of the premises to be assigned, the demographics of the shopping center's location and the overall quality of the shopping center and its existing tenants or (ii) the Going Dark Period (as defined in the Agreement) listed in the Agreement;

    d. a provision conditioning assignment on Landlord consent, or requiring payment to the Landlord as the price of assignment, or granting Landlord the right to recapture the leased premises following the assignment;

    e. a provision effecting forfeiture or a modification of any of the Buyer's rights or obligations presently in effect under the Lease upon an assignment by the Debtors of the Lease;

    f. a provision conditioning the Debtors' ability to assign their leasehold rights upon any terms not otherwise required under the Bankruptcy Code;

    g. a provision restricting the Buyer's ability to place reasonable signage on the premises; provided such signage is deemed necessary by the Buyer to conform such store to the

Buyer's typical retail store consistent with the Buyer's Intended Use of the premises, as defined in the Agreement;

       h.     a provision requiring the use of a certain tradename;

       i.     a provision regarding minimum sales revenues required to be satisfied at the premises covered by the Lease; and

       j.     any radius provisions set forth in the Lease to the extent applicable to any existing stores of the Buyer located near the Debtors' premises (but such radius provisions shall at all times apply to any new stores which might be opened by the Buyer in the area of Debtors' premises after Closing).

12.    Solely with respect to the transaction contemplated by this Order and the Agreement, none of the Unenforceable Provisions shall apply to the Proposed Assignee in any respect and, without limiting the generality of the foregoing, no violation by the Debtors or Proposed Assignee of the Unenforceable Provisions shall constitute an event of default under the Lease.

13.    Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and Buyer are authorized to close the Lease Sale set forth in the Agreement immediately upon entry of this Order. Time is of the essence in closing the Lease Sale transaction referenced herein, and the Debtors and Buyer intend to close the Lease Sale transaction as soon as practicable. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order.

14.    Upon entry of this Order, this Order and the findings hereunder shall be binding upon all parties to the Lease and the Agreement.

15. Upon the entry of this Order and the occurrence of the Closing Date, the Landlord of the Assigned Lease shall accept and honor the assignment of the Assigned Lease to the Proposed Assignee.

16. The Landlord for the Assigned Lease shall cooperate and expeditiously execute and deliver, within ten (10) days of any reasonable requests of any Buyer and at no cost to such Landlord, any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, opening and operating of the properties as contemplated under the Agreement.

17. Notwithstanding anything to the contrary in the Fourth Interim Order, this Order, the Agreement, any side letters, or the Lease Sale Procedures, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) shall be abandoned, sold, assigned, or otherwise transferred without the express prior written consent of the Buyer and applicable insurer and/or third-party administrator.

18. This Court shall retain jurisdiction (i) to construe and determine any disputes under this Order, (ii) to enforce and implement the terms and provisions of the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, and (iii) to resolve any disputes arising under or related to the Lease Sale (but all Landlord/tenant disputes arising subsequent to the Closing Date which do not involve the Lease Sale, this Order or the Debtors shall not be subject to the jurisdiction of this Court).

19. The Debtors and the Buyer are hereby authorized and directed to execute and deliver any and all documents, and to do all things reasonably necessary, to effectuate the purposes

of this Order, to transfer the Debtors' interests in and to the Lease, in accordance with the terms of the Agreement, and to carry out the terms and conditions of such Agreement.

20. The Buyer is not a successor in interest to the Debtors (other than with respect to the Debtors' rights and obligations under the Assigned Lease first accruing after each Proposed Assignee takes assignment thereunder as provided for under the Agreement), or their bankruptcy estates as a result of the Buyer taking title or possession of the Lease and the subject premises, and the Buyer is not assuming any liabilities or obligations of the Debtors or their bankruptcy estates, except as set forth in this Order and as may be specifically provided for in the Agreement.

21. This Order shall be effective and enforceable after its entry as provided by Bankruptcy Rule 7062.

22. Any remaining objections to the assignment of the Lease that have not been withdrawn, waived, adjourned, or settled, and all reservations of rights included in such objections, are overruled in all respects and denied.

23. Any provision in the Lease regarding percentage rent to the extent of Debtors' sales prior to the Closing Date shall not be imputed against the Proposed Assignee provided that each Proposed Assignee shall be liable for Percentage Rent for the prorated portion of calendar year 2025 remaining after the Closing Date for a partial calendar year as if the Term began on the Closing Date (and the Proposed Assignee shall not be liable to pay any Percentage Rent based upon sales that occurred prior to the Closing Date) and no Percentage Rent is due and owing by the Buyer for the period prior to the Closing Date.

24. To the extent there is any inconsistency between the terms of this Order and the terms of the Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

25. To the extent that any Buyer and Landlord enter into a side letter with respect to any Lease, such side letter shall govern with respect to rights and obligations of the Buyer and Landlord. For the avoidance of doubt, no side letter shall modify the rights and obligations of any third party without such third party's consent.

26. The failure to specifically include any particular provision of the Agreement or other related documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreement and all other related documents be authorized and approved in its entirety pursuant to this Order.

27. The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement is consistent with this Order and does not have any adverse effect on the Debtors' estates; *provided, further*, that the Debtors shall provide any such modification, amendment, or supplement to the Secured Parties, the applicable Landlord under the Lease and any official committee appointed in these Chapter 11 Cases no less than one (1) day prior to execution of such modification, amendment, or supplement; *provided further,* that after Closing, the final versions of the Agreement any related agreements, documents or other instruments (as modified, amended or supplemented) shall be filed with the Court.

## **EXHIBIT A**

| LEASE ASSET(S) | LEASE COUNTERPARTY | SUCCESSFUL BIDDER | TYPE OF AGREEMENT | PRICE | CURE |
|---|---|---|---|---|---|
| #5216, 5702 Nolensville Rd., Nashville, TN | 5620 Nolensville Pike, LLC | Burlington Coat Factory Warehouse Corporation | Assumption & Assignment | $300,000 | $54,720.10 |

# **EXHIBIT B**

**Assumption & Assignment Agreements**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

**THIS ASSUMPTION AND ASSIGNMENT AGREEMENT** (the "Agreement"), dated as of December 31, 2024, is by and between **BIG LOTS, INC.**, an **Ohio** corporation and certain of its affiliates (collectively, the "Assignor") and **BURLINGTON COAT FACTORY WAREHOUSE CORPORATION**, a Florida corporation, or its designated affiliates reflected on **Schedule A** ("Assignee"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Assignor to the Assignee.

### RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), jointly administered under case *In re Big Lots, Inc.*, Case No. 24-11967 (JKS) (Bankr. D. Del. 2024) (the "**Chapter 11 Cases**"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on Schedule A attached hereto, with the term and address of each lease being as represented in the documents provided by Debtor's Broker of record, A&G Real Estate Partners, on Schedule A, including rights under those certain Subordination, Non-Disturbance and Recognition Agreements executed in connection with such leases (collectively referred to as either as the "Assigned Assets" or the "Leases" and individually an "Assigned Asset" or "Lease") with respect to the premises set forth on Schedule A (the "Premises), pursuant to the terms and conditions of the *Lease Sale Procedures for the Sale of Certain Lease Assets* (the "**Lease Sale Procedures**") subject to approval by the Court in the Chapter 11 Cases (the "Court Order").

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto (individually, "Party" or collectively, "Parties") agree as follows:

### AGREEMENT

1. Assignment and Assumption. Effective as of the date the Bankruptcy Court enters an order of record pursuant to 11 U.S.C. 363(b) and 365 approving the assumption and assignment contemplated by this Agreement (the "Closing Date"), and upon payment of the Purchase Price as set forth below:

    (a) Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Assets.

    (b) No later than the Closing Date, Assignor shall surrender the Premises to Assignee, deliver possession thereof to Assignee and deliver all access codes and keys (or written confirmation that Assignee is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Assignee.

    (c) Except as specifically set forth in this Agreement, Assignee hereby assumes and undertakes to pay, perform and discharge all of Assignor's obligations and duties with respect to the Assigned from and after the Closing Date.

2. <u>Payment of Purchase Price</u>. Subject to the immediately following sentence, Assignee shall, on the Closing Date or the immediately following business day if the Court Order is entered of record after 3:00PM ET, deliver the purchase price for the Assigned Assets in the amount of **EIGHT HUNDRED SEVENTY-NINE THOUSAND SEVEN HUNDRED SIXTY-NINE DOLLARS AND 65/100 CENTS ($879,769.65)** (the "<u>Purchase Price</u>"), net of any previously paid deposits, in immediately available funds wired to the account specified by Assignor. Additionally, if Assignee and Debtor prevail in the objections filed of record at docket 1346 and 1350 with respect to Big Lots Store #5216 (Nashville, TN), then Assignee shall pay an additional **THREE HUNDRED THOUSAND DOLLARS ($300,000.00)** (the "<u>Nashville TN Adjustment</u>") on the immediately following business day after the latest to occur of the following: (i) the date a Court order authorizing the assumption and assignment of the Nashville, TN lease is entered of record; and (ii) the date any and all applicable appeals have been finalized and/or such appeal periods have expired; and (iii) the matter is settled between the relevant parties involved in the objections in a fully executed agreement; with such payment date being the effective date of the assignment of the Nashville TN lease. Further, Assignee, as back-up bidder, shall pay an additional **ONE HUNDRED NINETY FIVE THOUSAND DOLLARS ($195,000.00)** (the "<u>Paris TX Adjustment</u>") if the Ivan Smith Furniture, the successful bidder for Big Lots Store #4761 (Paris, TX) does not close on the Paris, TX lease. If Assignee were to become the ultimate winner of the Paris, TX lease, Assignee shall pay the Paris TX Adjustment on the immediately following business day after a Court order authorizing the assumption and assignment of the Paris, TX lease is entered of record, with such payment date being the effective date of the assignment of the Paris, TX lease. The Parties acknowledge that if the assumption and assignment of the Assigned Assets (the "<u>Closing</u>") does not occur on the date of the final Court Order the Lease(s) may thereafter be rejected in the bankruptcy proceeding referenced above.

3. <u>Assumption of Liabilities</u>. All defaults or other obligations of Assignor subject to 11 U.S.C. 365(b) shall be cured by Assignor on or before the Closing Date or as soon thereafter as reasonably practicable (or as otherwise agreed with the counterparty to such Assigned Asset), and Assignee shall have no liability or obligation for such obligations or defaults. Assignee shall assume all obligations with respect to the Assigned Assets due from and after the Closing Date.

4. <u>No Further Liability of Assignor</u>. From and after the Closing Date, Assignor shall have no further obligations and duties with respect to the Assigned Assets due after the Closing Date.

5. <u>Further Assurances</u>. At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Assets.

6. <u>"As Is Where Is" Transaction</u>. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Assets; *provided, however*, Assignor warrants and represents that it has fully complied with any requests from Assignee to provide access to all known leases and amendments documents relating to the Assigned Asset(s).

7. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles of conflicts of law.

8. <u>Jurisdiction.</u> The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to

this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

9. No Reliance. Except as specifically set forth in this Agreement, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.

10. Construction. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

11. Execution in Counterparts. This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All such counterparts, when so executed, shall be deemed to constitute one final agreement as if one document had been signed by all Parties to this Agreement. Each such counterpart, upon execution and delivery of all counterparts, shall be deemed a complete and original of this Agreement. The Parties hereby each agree that its authorized signatories may receive and review this Agreement via electronic record and may sign this Agreement via electronic digital signature (i.e., DocuSign or similar electronic signature technology), and the Parties may rely on such electronic digital signatures as if they are original signatures by each Party or duly authorized representatives of each Party, and delivery of an executed copy of this Agreement by facsimile or by other electronic means (.pdf) shall be legal and binding and shall have the same full force and effect as if an original executed copy of this Agreement had been delivered. No Party may raise the use of an image transmission device or method or the fact that any signature was transmitted as an image as a defense to the enforcement of such document.

12. Intended Use & Going Dark. Assignee intends to use the Premises for the operation of a Burlington retail store. In order to facilitate such usage, Assignee may need to delay reestablishing retail operations for a period of time not to exceed one hundred and eighty (180) days after receipt of applicable permits, subject to events of force majeure (the "**Going Dark Period**").

*[Signatures appear on following page]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
**BIG LOTS, INC.**,
an Ohio corporation

By: _____
Name: Ronald A. Robins Jr.
Title: Executive Vice President, General Counsel

**ASSIGNEE:**
**BURLINGTON COAT FACTORY WAREHOUSE CORPORATION**,
a Florida corporation

By: _____
Name: Scott Ciocco
Title: Senior Vice President, Real Estate - Legal
Federal I.D. No.: 22-1970303

## Schedule A to the Assumption and Assignment Agreement

### Description of Assigned Assets

| Store Number | Address | Base Rent PSF | Lease Expiration Date | Options | Purchaser Entity |
|---|---|---|---|---|---|
| 4671 | 78 Frontage Road<br>East Haven, CT – **Round 5** | $9.50 | 01/31/27 | 5 + 5 | Burlington Coat Factory Warehouse Corporation |
| 4687 | 1851 Sunrise Way<br>Bayshore, NY – **Round 5** | $7.72 | 01/31/28 | 5 + 5 + 5 | Burlington Coat Factory of Texas, Inc. |
| 4711 | 4655 Canal Avenue SW<br>Grandville, MI – **Round 5** | $7.00 | 01/31/30 | 5 + 5 + 5 | Burlington Coat Factory of Texas, Inc. |
| 5216 | 5702 Nolensville Road<br>Nashville, TN – **Round 5** | $8.00 | 01/31/29 | 5 + 5 | Burlington Coat Factory Warehouse Corporation |
| 4277 | 1070 W Avenue K, Suite A<br>Lancaster, CA – **Round 6** | $9.96 | 08/31/43 | 5 + 5 + 4 | Burlington Coat Factory of Texas, Inc. |
| 4701 | 5055 W Sahara Avenue<br>Las Vegas, NV – **Round 6** | $11.00 | 01/31/30 | 5 + 5 + 5 + 5 | Burlington Coat Factory Warehouse Corporation |
| 4736 | 3300 W Expressway 83<br>McAllen, TX – **Round 6** | $8.00 | 01/31/32 | 5 + 5 + 5 + 5 | Burlington Coat Factory of Texas, L.P. |
| 4761 | 3512 Lamar Avenue<br>Paris, TX – **Round 7** | $2.50 | 01/31/33 | 5 + 5 + 5 | Burlington Coat Factory of Texas, L.P.<br>**AS BACK-UP BIDDER** |