## **Exhibit 1**

Proposed Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
|  | **Re: D.I. 1877** |

## ORDER APPROVING LEASE TERMINATION AGREEMENTS

Upon consideration of the *Certification of Counsel Regarding Order Approving Lease Termination Agreements* (the "**Certification of Counsel**"[2]) and the Lease Termination Agreements, attached hereto as **Exhibit A**; and the Court having jurisdiction over the matters raised in the Certification of Counsel and the Lease Termination Agreements, and the relief requested in the Certification of Counsel being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Certification of Counsel is in the best interests of the Debtors, their estates, and all parties-in-interest, and just cause exists for the relief granted herein; it is hereby **ORDERED, ADJUDGED AND DECREED** that:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows:  Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).  The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed thereto in the Certification of Counsel.

1.   The Lease Termination Agreements are APPROVED; *provided* that the Debtors, the Landlords, or the Landlords' managing agents, as the case may be, shall not sell or abandon any property that is not owned by the Debtors, the Landlords, or the Landlords' managing agents and shall instead return such property to the applicable lessor or other owner of the property.

2.   The Debtors are authorized to take any action necessary or appropriate to implement the terms of the Lease Termination Agreements and this Order without further order of the Court.

3.   This Court shall retain jurisdiction over any and all matters arising from or related to the implementation of this Order or the Lease Termination Agreements.

4.   This Order is effective immediately upon entry by the Court.

# **Exhibit A**

Lease Termination Agreements

# LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this _27th_ day of January, 2025 by and between Lakeview Pkwy Ventures LLC ("Landlord") and Big Lots Stores-PNS, LLC ("Tenant" and together with Landlord, the "Parties" and each, a "Party").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated __8th November, 2008 (the "Lease"), covering certain premises located at _3601 Lakeview Pkwy, Unit#100, Rowlett, TX 75088 (the "Premises"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, pursuant to Section 2.05(b) of that certain Asset Purchase Agreement dated as of January 3, 2025 by and between Tenant and Gordon Brothers Retail Partners, LLC ("Gordon Brothers"), Gordon Brothers has the right to designate certain contracts or leases for assumption and assignment to itself or its designee(s);

WHEREAS, Gordon Brothers is conducting "store closing" or other liquidation sales at certain of Tenant's retail stores and distribution centers (each, a "GOB Sale") and pursuing transactions involving the disposition or termination of Tenant's leases to be effective upon the conclusion of the applicable GOB Sale (each, a "Vacate Date"); and

WHEREAS, Landlord has prepetition and/or postpetition sums due and owing from Tenant. Further, Landlord has the right to seek relief from the subject Bankruptcy Court. The Parties desire to enter into this Agreement, for the purpose of, among other reasons, restoring Landlord to be in possession of the Premises as of the Termination Date, releasing one another from claims and causes of action, and enabling and providing Landlord all rights to dispose of any remaining personal property at the Premises in its sole and absolute discretion.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1.      Recitals.  The Recitals are incorporated in this Agreement as if fully set forth herein.

2.      Lease Termination.  Subject to Landlord's prior payment of the Termination Fee, the

1

Lease is terminated effective on the earlier of (i) March 31, 2025; and (ii) the day after the Vacate Date at the Premises; provided, that Tenant in no instant shall have vacated the Premises later than March 31, 2025 or Gordon Brothers shall give Landlord no less than seven (7) days' advance written notice of the Vacate Date (the "Termination Date").

3.      Consideration.  On or before the Termination Date and only after Tenant has vacated the Premises, Landlord shall pay to Gordon Brothers within 24 hours of written confirmation that Tenant has vacated the Premises, via wiring instructions to be provided by Gordon Brothers, an amount equal to $75,000.00 (the "Termination Fee").

4.      Landlord Release of Tenant.  For valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, except for the following items, which shall survive the termination of the Lease, (i) Tenant's obligations that expressly survive the termination of the Lease, as indicated in the Lease; and (ii) the provisions, obligations and covenants of Tenant under this Agreement.

5.      Tenant Release of Landlord. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, except for the following items, which shall survive the termination of the Lease, (i) Landlord's

2

obligations that expressly survive the termination of the Lease, as indicated in the Lease; and (ii) the provisions, obligations and covenants of Landlord under this Agreement.

6.      In this connection, the Parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the Parties further agree, represent and warrant that the releases set forth herein have been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the released parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

7.      <u>Conditions Precedent</u>.   As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than 24 hours following the Termination Date:

(a)      Landlord has delivered the Termination Fee to the Tenant;

(b)      Tenant has delivered possession of the Premises to Landlord;

(c)      Tenant has delivered to Landlord the keys and access codes to the Premises (or written confirmation that Landlord is authorized to change the locks); and

(d)      An Order has been entered approving the entirety of this Agreement by the Bankruptcy Court.

8.      <u>Furniture, Fixtures and Equipment</u>. Any furniture, fixtures and equipment ("<u>FF&E</u>") remaining at the Premises after the Termination Date is deemed abandoned and the Landlord and their managing agents are free to dispose of the FF&E in their sole and absolute discretion without liability to Tenant.

9.      <u>Authority to Settle</u>. Each of the Parties respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the Parties respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

10.      <u>Third Party Beneficiaries</u>.  This Agreement is expressly intended to confer rights and benefits upon Gordon Brothers (or other similarly situated assigns), and Gordon Brothers (or other similarly situated assigns) shall have the right to enforce the provisions of this Agreement.

11.      <u>Entire Agreement</u>.  This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire

3

agreement and understanding concerning the subject matter of the Agreement and supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the Parties respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the Parties further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.    Advice of Counsel. Each of the Parties respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or had the opportunity to have, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.    Attorneys' Fees. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the Parties agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.    Governing Law. This Agreement shall be governed by and construed under the laws of the State of Texas, except as subject to the laws of the State of Delaware by the Bankruptcy Court, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.    Jurisdiction. The Parties consent to the exclusive jurisdiction of the State of Texas, except as to the entry of final orders and judgments by, the United States Bankruptcy Court for the District of Delaware, with respect to all matters arising under or relating to this Agreement.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the foregoing Agreement is dated effective as of the date and year first written above.

**LAKEVIEW PKWY VENTURES LLC**

By: _____    1/27/2025

Name: Swathy Pasham

Title:  Manager

**BIG LOTS STORES - PNS, LLC**

By: _____

Name: Joshua H. Nanberg

Title:  VP, Real Estate

Docusign Envelope ID: 25336860-808C-4DDB-94E8-A63AE21D998E

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this 27 day of January , 2025 by and between AELEP CHOCTAW, LLC ("Landlord") and Big Lots Stores, LLC ("Tenant" and together with Landlord, the "Parties" and each, a "Party").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated 2-1-2024 (the "Lease"), covering certain premises located at 111 Racetrack Road NW, Ft Walton Beach, (the "Premises"), on the terms and conditions set forth therein;FL

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, pursuant to Section 2.05(b) of that certain Asset Purchase Agreement dated as of January 3, 2025 by and between Tenant and Gordon Brothers Retail Partners, LLC ("GBRP"), GBRP has the right to designate certain contracts or leases for assumption and assignment to itself or its designee(s);

WHEREAS, GBRP is conducting "store closing" or other liquidation sales at certain of Tenant's retail stores and distribution centers (each, a "GOB Sale") and has engaged Gordon Brothers Realty Services, LLC ("GBRS" and, together with GBRP, "Gordon Brothers") as its agent to assist with the disposition or termination of Tenant's leases to be effective upon the conclusion of the applicable GOB Sale (each, a "Vacate Date"); and

WHEREAS, Landlord has prepetition and/or postpetition sums due and owing from Tenant. The Parties desire to enter into this Agreement, for the purpose of, among other reasons, restoring Landlord to possession of the Premises as of the Termination Date, releasing one another from claims and causes of action, and enabling Landlord to dispose of any remaining personal property at the Premises in its sole and absolute discretion.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1.     Recitals. The Recitals are incorporated in this Agreement as if fully set forth herein.

2.     Lease Termination. Subject to Landlord's prior payment of the Termination Fee, the

1

Lease is terminated effective on the earlier of (i) March 31, 2025; and (ii) the day after the Vacate Date at the Premises; provided, that Tenant or Gordon Brothers shall give Landlord no less than seven (7) days' advance written notice of the Vacate Date (the "Termination Date").

3.    Consideration.  On or before the Termination Date, Landlord shall pay to GBRS, via the wiring instructions set forth on Exhibit A, an amount equal to $ 25,000_____  (the "Termination Fee").

4.    Landlord Release of Tenant.  For valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, except for the following items, which shall survive the termination of the Lease, (i) Tenant's obligations that expressly survive the termination of the Lease, as indicated in the Lease; and (ii) the provisions, obligations and covenants of Tenant under this Agreement.

5.    Tenant Release of Landlord. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, except for the following items, which shall survive the termination of the Lease, (i) Landlord's obligations that expressly survive the termination of the Lease, as indicated in the Lease; and (ii) the provisions, obligations and covenants of Landlord under this Agreement.

2

6.      As further consideration for the releases set forth herein, the Parties, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the Parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

7.      In this connection, the Parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the Parties further agree, represent and warrant that the releases set forth herein have been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the released parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.      <u>Conditions Precedent</u>.   As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)      Landlord has delivered the Termination Fee to the Tenant;

(b)      Tenant has delivered possession of the Premises to Landlord;

(c)      Tenant has delivered to Landlord the keys and access codes to the Premises (or written confirmation that Landlord is authorized to change the locks); and

(d)      An order has been entered approving the entirety of this Agreement.

9.      <u>Furniture, Fixtures and Equipment</u>. Any furniture, fixtures and equipment ("<u>FF&E</u>") remaining at the Premises after the Termination Date is deemed abandoned and the Landlord and their managing agents are free to dispose of the FF&E in their sole and absolute discretion without liability to Tenant.

10.      <u>Authority to Settle</u>. Each of the Parties respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the Parties respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes

3

of action, or other matters.

11. Third Party Beneficiaries. This Agreement is expressly intended to confer rights and benefits upon Gordon Brothers, and Gordon Brothers shall have the right to enforce the provisions of this Agreement.

12. Entire Agreement. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement and supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the Parties respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the Parties further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

13. Advice of Counsel. Each of the Parties respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or had the opportunity to have, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

14. Attorneys' Fees. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

15. Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the Parties agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

16. Governing Law. This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

17. Jurisdiction. The Parties consent to the exclusive jurisdiction of, and entry of final orders and judgments by, the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and

4

irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the foregoing Agreement is dated effective as of the date and year first written above.

**[LANDLORD]**

By: _____
Name:  Eric Howell
Title:  Manager

**BIG LOTS STORES, LLC**

By: _____
Name:  Joshua H. Nanberg
Title:  VP, Real Estate

## **Exhibit A**

GBRS Wiring Instructions

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this 22nd day of January, 2025 by and between B.H. 13620 North 35th Avenue, LLC ("Landlord") and Big Lots Stores, LLC ("Tenant" and together with Landlord, the "Parties" and each, a "Party").

## RECITALS

WHEREAS, Landlord's predecessor in interest and Tenant's predecessor in interest entered into a certain lease dated February 9, 1987 (together with all amendments, assignments, and other modifications, collectively, the "Lease"), covering certain premises located at 3543 West Thunderbird Road, Phoenix, AZ (the "Premises"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, pursuant to Section 2.05(b) of that certain Asset Purchase Agreement dated as of January 3, 2025 by and between Tenant and Gordon Brothers Retail Partners, LLC ("GBRP"), GBRP has the right to designate certain contracts or leases for assumption and assignment to itself or its designee(s);

WHEREAS, GBRP is conducting "store closing" or other liquidation sales at certain of Tenant's retail stores and distribution centers (each, a "GOB Sale") and has engaged Gordon Brothers Realty Services, LLC ("GBRS" and, together with GBRP, "Gordon Brothers") as its agent to assist with the disposition or termination of Tenant's leases to be effective upon the conclusion of the applicable GOB Sale (each, a "Vacate Date"); and

WHEREAS, Landlord has prepetition and/or postpetition sums due and owing from Tenant. The Parties desire to enter into this Agreement, for the purpose of, among other reasons, restoring Landlord to possession of the Premises as of the Termination Date, releasing one another from claims and causes of action, and enabling Landlord to dispose of any remaining personal property at the Premises in its sole and absolute discretion.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1.    Recitals. The Recitals are incorporated in this Agreement as if fully set forth herein.

2.      Lease Termination.  Subject to Landlord's prior payment of the Termination Fee, the Lease is terminated effective on the earlier of (i) March 31, 2025; and (ii) the day after the Vacate Date at the Premises; provided, that Tenant or Gordon Brothers shall give Landlord no less than seven (7) days' advance written notice of the Vacate Date (the "Termination Date").

3.      Consideration.  On or before the Termination Date, Landlord shall pay to GBRS, via the wiring instructions set forth on Exhibit A, an amount equal to $35,000.00 (the "Termination Fee").

4.      Landlord Release of Tenant.  For valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, except for the following items, which shall survive the termination of the Lease, (i) Tenant's obligations that expressly survive the termination of the Lease, as indicated in the Lease; and (ii) the provisions, obligations and covenants of Tenant under this Agreement.

5.      Tenant Release of Landlord.  For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, except for the following items, which shall

2

survive the termination of the Lease, (i) Landlord's obligations that expressly survive the termination of the Lease, as indicated in the Lease; and (ii) the provisions, obligations and covenants of Landlord under this Agreement.

6.      As further consideration for the releases set forth herein, the Parties, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the Parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

7.      In this connection, the Parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the Parties further agree, represent and warrant that the releases set forth herein have been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the released parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.      <u>Conditions Precedent</u>.   As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)      Landlord has delivered the Termination Fee to the Tenant;

(b)      Tenant has delivered possession of the Premises to Landlord;

(c)      Tenant has delivered to Landlord the keys and access codes to the Premises (or written confirmation that Landlord is authorized to change the locks); and

(d)      An order has been entered approving the entirety of this Agreement.

9.      <u>Furniture, Fixtures and Equipment</u>. Any furniture, fixtures and equipment ("<u>FF&E</u>") remaining at the Premises after the Termination Date is deemed abandoned and the Landlord and their managing agents are free to dispose of the FF&E in their sole and absolute discretion without liability to Tenant.

10.      <u>Authority to Settle</u>. Each of the Parties respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and

settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the Parties respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.     Third Party Beneficiaries.  This Agreement is expressly intended to confer rights and benefits upon Gordon Brothers, and Gordon Brothers shall have the right to enforce the provisions of this Agreement.

12.     <u>Entire Agreement</u>.  This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement and supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the Parties respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement.  Each of the Parties further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

13.     <u>Advice of Counsel</u>. Each of the Parties respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or had the opportunity to have, the same explained to it by its own counsel.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

14.     <u>Attorneys' Fees</u>.  Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

15.     <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the Parties agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

16.     <u>Governing Law</u>. This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

17.    <u>Jurisdiction</u>. The Parties consent to the exclusive jurisdiction of, and entry of final orders and judgments by, the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the foregoing Agreement is dated effective as of the date and year first written above.

**B.H. 13620 NORTH 35TH AVENUE, LLC,**
a California limited liability company

By: _____
Name: Arsalan Gozini
Title: Manager


**BIG LOTS STORES, LLC**

By: _____
Name: Joshua H. Nanberg
Title: VP, Real Estate

Docusign Envelope ID: C6CBB8C7-108C-48A5-8649-A91FBAAE5900

**Exhibit A**

GBRS Wiring Instructions

# LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this 26th day of January, 2025 by and between Lafayette Place OMV, LLC ("Landlord") and Big Lots Stores, LLC ("Tenant" and together with Landlord, the "Parties" and each, a "Party").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated May 16, 2014 (the "Lease"), covering certain premises located at 3111 Mahan Drive, Suite 18, Tallahassee, FL 32308 (the "Premises"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); and

WHEREAS, Landlord has prepetition and/or postpetition sums due and owing from Tenant. The Parties desire to enter into this Agreement, for the purpose of, among other reasons, restoring Landlord to possession of the Premises as of the Termination Date, releasing one another from claims and causes of action, and enabling Landlord to dispose of any remaining personal property at the Premises in its sole and absolute discretion.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1.      Recitals.  The Recitals are incorporated in this Agreement as if fully set forth herein.

2.      Lease Termination.  The Lease is terminated effective February 28th, 2025 (the "Termination Date").

3.      Consideration.  On or before the Termination Date, Landlord shall pay to Gordon Brothers Realty Services, LLC, via the wiring instructions set forth on Exhibit A, an amount equal to $475,000.00 (the "Termination Fee").

4.      Landlord Release of Tenant.  For valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity

1

now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, except for the following items, which shall survive the termination of the Lease, (i) Tenant's obligations that expressly survive the termination of the Lease, as indicated in the Lease; and (ii) the provisions, obligations and covenants of Tenant under this Agreement.

5.      Tenant Release of Landlord. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, except for the following items, which shall survive the termination of the Lease, (i) Landlord's obligations that expressly survive the termination of the Lease, as indicated in the Lease; and (ii) the provisions, obligations and covenants of Landlord under this Agreement.

6.      As further consideration for the releases set forth herein, the Parties, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the Parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

7.    In this connection, the Parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the Parties further agree, represent and warrant that the releases set forth herein have been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the released parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.    <u>Conditions Precedent</u>.  As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)    Landlord has delivered the Termination Fee to the Tenant;

(b)    Tenant has delivered possession of the Premises to Landlord;

(c)    Tenant has delivered to Landlord the keys and access codes to the Premises (or written confirmation that Landlord is authorized to change the locks); and

(d)    An order has been entered approving the entirety of this Agreement.

9.    <u>Furniture, Fixtures and Equipment</u>. Any furniture, fixtures and equipment ("<u>FF&E</u>") remaining at the Premises after the Termination Date is deemed abandoned and the Landlord and their managing agents are free to dispose of the FF&E in their sole and absolute discretion without liability to Tenant.

10.    <u>Authority to Settle</u>. Each of the Parties respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the Parties respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

11.    <u>Entire Agreement</u>.  This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement and supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the Parties respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement.  Each of the Parties further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.    <u>Advice of Counsel</u>. Each of the Parties respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or had the opportunity to have, the same explained to it by its own counsel.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.    <u>Attorneys' Fees</u>.  Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the Parties agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15.    <u>Governing Law</u>. This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.    <u>Jurisdiction</u>. The Parties consent to the exclusive jurisdiction of, and entry of final orders and judgments by, the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

*[Signature Pages Follow]*

4

IN WITNESS WHEREOF, the foregoing Agreement is dated effective as of the date and year first written above.

**LAFAYETTE PLACE OMV, LLC, a Florida limited liability company**
**BY OMV-LP MANAGEMENT, LLC, a Delaware limited liability company, its Managing Member**

By: _____
Dharma Malempati, Member


**BIG LOTS STORES, LLC**


By: _____
Name:   Joshua H. Nanberg
Title:   VP. Real Estate