IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>Hearing Date: February 26, 2025 at 10:30 a.m. (ET)<br>Obj. Deadline: February 19, 2025 at 4:00 p.m. (ET) |

**HORIZON MEDIA LLC'S MOTION FOR
ALLOWANCE AND PAYMENT
OF ADMINISTRATIVE EXPENSE CLAIM**

Horizon Media LLC a/k/a Horizon Big, LLC ("Horizon"), by and through its counsel, files this motion ("Motion") for allowance and payment of its administrative expense claim in the amount of $8,534,302.47 (the "Administrative Claim Amount"). In support of its Motion, Horizon respectfully states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for this Motion are Sections 503(a) and 503(b)(1)(A) of Title 11 of the United States Code (the "Bankruptcy Code").

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).

{1484.002-W0079780.}

## BACKGROUND

**A.     Bankruptcy background.**

2.     On September 9, 2024 (the "Petition Date"), Big Lots, Inc., Big Lots Stores, LLC ("Big Lots"), and their debtor affiliates (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

3.     The Debtors have operated since the Petition Date and have continued to operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.     On January 2, 2025, the Court entered the *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Dkt. No. 1556], authorizing the Debtors to sell substantially all of their assets to Gordon Brothers Retail Partners, LLC (the "Buyer").

5.     The Debtors have not filed a list of executory contracts to be assumed or rejected, but rather provided that the Buyer will have until March 31, 2025 to make this decision. *See id.* Accordingly, at this time, Horizon does not know whether the MSA and SOW 2 (defined below) will be assumed or rejected.

**B.     Background of the MSA between Horizon and the Debtors.**

6.     Horizon and Big Lots are parties to that certain *Master Services Agreement* effective as of July 9, 2024 (the "MSA"). *See* **Ex. A**. Under the MSA, Horizon was to "provide Big Lots with certain services . . . and Work Product specified in one or more Statements of Work referencing this Agreement." *Id.* at ¶ 2.1.

7. On August 1, 2024, Horizon and Big Lots entered into *Statement of Work # 1* ("SOW 1") (**Ex. B)**, under which Horizon was to provide several categories of services to Big Lots, including "account management" services, "strategic planning services and activation management across programmatic and paid social for all key marketing initiatives."

8. Post-petition, on October 1, 2024, Horizon and Big Lots entered into *Statement of Work # 2* ("SOW 2") (**Ex. C**). SOW 2 provides that, SOW 1 "will be terminated and replaced with this [SOW 2]." *Id.* at 1. The term of SOW 2 was September 1, 2024 through September 30, 2025. SOW 2 further provides that Horizon was to provide several categories of services (collectively, the "Services"), including:

 a. Providing account management services in which Horizon is responsible for day-to-day media workflow and participate as an "active member" of the Big Lots "marketing team" and participate in media plan strategy development.

 b. Following and reporting on category trends, media investment and key activities of up to 5 core competitors in each of Big Lots' markets.

 c. Assisting in the development of buying guidelines and recommendations to include daypart mixes, programming restrictions and separations, which will be approved by Big Lots and adhered to in negotiations.

 d. Assisting in delivering the greatest possible value for Big Lots' media budgets, be it through best-in-class negotiations, creativity in integrations or the deployment of a full array of media buying tactics.

 e. Providing strategic guidance on media campaigns and strategic planning services and activation management across programmatic and paid social for all key marketing initiatives.

9. Horizon was to be compensated a retainer fee of $3,600,000 during SOW 2's Term, which would be billed in twelve equal monthly installments of $300,000 plus a commission at varying levels based on certain types of media. *See* SOW 2 at 15-16. Horizon was also to receive additional fees, including a $600,000 "blu. Data Fees" annual data usage charge that "covers segments for audience buying . . ." *Id.* at 16.

**C.     Horizon provided post-petition Services to the Debtors.**

10. Following the execution of SOW 2, at the Debtors' request, Horizon provided the Services to the Debtors subsequent to the Petition Date, including placing advertisements with third party vendors (the "<u>Vendors</u>") that ran advertisements on behalf of Big Lots. The Debtors and their estates benefited from Horizon's provision of the Services as the advertisements placed by Horizon attracted customers to make purchases from the Debtors.

11. Despite receiving the benefit of these Services from Horizon, Big Lots and its estate owe Horizon and the Vendors $8,534,302.47 – *i.e.*, the Administrative Claim Amount.

12. The Administrative Claim Amount is comprised of the following:

   a. $5,384,302.47 as detailed in the statement of account (the "<u>SOA</u>") that is annexed hereto as **Exhibit D**.

   b. $2,700,000 that is due as a retainer to Horizon under SOW 2. *See id.* at 15-16. Of the total $3,600,000 million in retainer amounts that are owed to Horizon, the Debtors have already paid $300,000 in October 2024 and an additional $600,000 that is accounted for in the SOA.

   c. $450,000 that is due for "blu. Data Fees" under SOW 2. *See id.* at 16. Under SOW 2, Big Lots agreed to pay Horizon a $600,000 annual data usage charge. Of the total $600,000, the Debtors have paid to Horizon $50,000 in October 2024 and an additional $100,000 is accounted for in the SOA.

13. Of the Administrative Claim Amount, Horizon is owed a subset of $3,907,628.14, ($757,628.14 as detailed in the SOA + $2,700,000 in retainer fees not accounted for in the SOA + $450,000 for "blu. Data fees" not accounted for in the SOA) (the "Horizon Portion").

14. The invoices supporting the Administrative Claim Amount are annexed hereto as **Exhibit E**.

15. The full amount of the Administrative Claim Amount, inclusive of the Horizon Portion, is presently due and owing and remains unpaid and outstanding.

## RELIEF REQUESTED

16. Horizon respectfully requests entry of an Order, substantially in the form annexed hereto as **Exhibit F**, (i) allowing and directing payment of all sums payable to Horizon for past due post-petition Services rendered from the Petition Date through the date hereof in the amount no less than the Administrative Claim Amount; and (ii) granting such other, further, and additional relief as the Court deems just and proper.

## BASIS FOR RELIEF

17. Section 503(b)(1) of the Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate . . . ."

18. A claim qualifies for administrative expense priority if it arises from "a post-petition transaction with the debtor-in-possession and the expense must be beneficial to the debtor-in-possession in the operation of the business." *In re Marcal Paper Mills, Inc.*, 650 F.3d. 311, 314-15 (3d Cir. 2011) (administrative expenses allowed under section 503(b) include post-petition expenses incurred to preserve the bankruptcy estate).

19. "There is an initial presumption that, where a contract exists, the contractual rate is the reasonable value of the goods or services provided to the estate." *In re Bethlehem Steel Corp.*,

{1484.002-W0079780.}

5

y

291 B.R. 260, 264 (Bankr. S.D.N.Y. 2023); *accord In re Smurfit-Stone Container Corp.*, 425 B.R. 735, 741 (Bankr. D. Del. 2010) (citing *NLRB. v. Bildisco*, 465 U.S. 513, 531 (1984)).

20. The Debtors entered into a post-petition agreement (*i.e.*, SOW 2) for Horizon to provide the Services on a post-petition basis. Since the Petition Date, the Debtors have continued to benefit from the Services that Horizon provided under SOW 2, which supported the Debtors' continued operation and benefitted the Debtors' estates.

21. However, despite receiving the benefits of those post-petition Services, Big Lots has failed to pay Horizon for those services in the amount of the Administrative Claim Amount, which includes the Horizon Portion. There can be no reasonable dispute that the Services constitute a "post-petition" transaction, and provided "actual and necessary" benefits to the bankruptcy estate. In fact, in connection with the sale to the affiliate of Nexus Capital Management LP, the Debtors intended to assume and assign, *inter alia*, the MSA, SOW 1 and SOW 2, thereby indicating the importance of Horizon's Services to the Debtors' operations. *See* Dkt. No. 511 at 39. The Debtors are now obligated to pay Horizon for past due post-petition Services in the amount of the Administrative Expense Clam rendered under SOW 2.

## RESERVATION OF RIGHTS

22. Horizon expressly reserves, and does not waive, any and all of its rights, claims, causes of action and defenses in connection with the MSA or SOW, under the terms of the MSA or SOW, the Debtors' pre- and post-petition conduct related to the same, the Bankruptcy Code, applicable law or otherwise against the Debtors, any successor in interest, and any and all third-parties, including, but not limited to, claims for fraudulent inducement or any other claims or causes of action. Horizon does not waive any rights with respect to its ability to file proofs of claim or otherwise assert claims in the Debtors' Chapter 11 cases by filing this Motion and reserves all rights with respect thereto.

{1484.002-W0079780.}

23. Horizon reserves all of its rights to amend, modify or supplement this Motion in any manner, at any time and for any purpose and to assert and file any and all additional claims or amended claims of whatever kind or nature that it has or may hereafter have against the Debtors, which may be based on the respective rights and obligations arising under the relationship and agreements discussed herein or the same events and circumstances described herein, including, but not limited to claims related to or arising in connection with the MSA or SOW.

### NOTICE AND NO PRIOR REQUEST

24. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Debtors; (b) the Office of the United States Trustee; (c) counsel to the Official Committee of Unsecured Creditors; and (d) any party requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, Horizon submits that no other or further notice is required.

25. No prior application for the relief sought herein has been made to this or any other Court.

[*Remainder of Page Intentionally Left Blank*]

**CONCLUSION**

WHEREFORE, Horizon respectfully requests that the Court enter an Order (i) allowing and authorizing payment in the amount of the Horizon Administrative Claim Amount; and (ii) granting such other and further relief as the Court deems to be just, fair and equitable under the circumstances.

Dated: February 5, 2025
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

/s/ Joshua B. Brooks
Kimberly A. Brown (No. 5138)
Joshua B. Brooks (No. 6765)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: brown@lrclaw.com
brooks@lrclaw.com

-and-

**LOEB & LOEB LLP**
William M. Hawkins (*pro hac vice* pending)
Noah Weingarten (*pro hac vice* pending)
Alexis Zobeideh (*pro hac vice* pending)
345 Park Avenue
New York, NY 10154
Telephone: (212) 407-4000
Facsimile: (212) 407-4990
Email: whawkins@loeb.com
nweingarten@loeb.com
azobeideh@loeb.com

*Counsel to Creditor*
*Horizon Media LLC*

{1484.002-W0079780.}