## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date**: **February 26, 2025 at 10:30 a.m. (ET)** |
| | **Objection Deadline**: **February 19, 2025 at 4:00 p.m. (ET)** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING (A) THE DEBTORS' ENTRY INTO AND PERFORMANCE UNDER THE PURCHASE AGREEMENT, (B) THE SALE OF THE PURCHASED ASSETS, (C) THE ASSUMPTION AND ASSIGNMENT OF THE LEASES AND THE CITY AGREEMENT, AND (D) THE DEBTORS' ENTRY INTO THE NEW LEASE AND (II) GRANTING RELATED RELIEF**

Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**" or "**Big Lots**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this *Motion of Debtors for Entry of an Order (I) Authorizing and Approving (A) the Debtors' Entry Into and Performance Under the Purchase Agreement, (B) the Sale of the Purchased Assets, (C) the Assumption and Assignment of the Leases and the City Agreement, and (D) the Debtors' Entry Into the New Lease and (II) Granting Related Relief* (this "**Motion**"). In further support of this Motion, the Debtors respectfully state as follows:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

**RELIEF REQUESTED**

1.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Order**"), (a) authorizing (i) the Debtors' entry into and performance under that certain Purchase and Sale Agreement, attached hereto as **Exhibit B** (the "**Purchase Agreement**" and, together with all other agreements, documents, instruments, deliverables thereunder or attached thereto or referenced therein, and as may be amended, modified and supplemented, the "**Transaction Documents**"), whereby Big Lots Management, LLC f/k/a BLHQ LLC ("**Seller**") has agreed to sell, and OhioHealth Corporation ("**Purchaser**") has agreed to purchase, the Purchased Assets (as defined in the Purchase Agreement), and the other Transaction Documents, (ii) the sale of the Purchased Assets to Purchaser free and clear of any lien (as defined in Section 101(37) of the Bankruptcy Code), encumbrance, claim (as defined in Section 101(5) of the Bankruptcy Code), license, charge, mortgage, deed of trust, option, pledge, security interest, restriction or similar interests, title defects, hypothecations, easements, rights of way, encroachments, orders, conditional sale or other title retention agreements and other similar impositions, imperfections or defects of title or restrictions on transfer or use or other encumbrances of any kind, except, solely in the case of the Purchased Assets, for Permitted Title Exceptions (as defined in the Purchase Agreement) and deemed Permitted Title Exceptions, on the terms set forth in the Purchase Agreement and the other Transaction Documents, (iii) the assumption and assignment of the Leases (as defined in the Purchase Agreement) which, as of the Closing (as defined in the Purchase Agreement) have not expired or terminated pursuant to a right exercised by Seller in accordance with the Purchase Agreement or pursuant to a right exercised by any tenant thereunder, on the terms set forth in the Purchase Agreement and the other Transaction Documents, (iv) the assumption and assignment, if, at or prior to Closing, Purchaser elects to assume the City Agreement (as defined in the Purchase Agreement) at Closing, of the City

Agreement, on the terms set forth in the Purchase Agreement and the other Transaction Documents, (v) the entry by the Debtors (or their assignee or designee pursuant to the Purchase Agreement) into the New Lease (as defined in the Purchase Agreement), on the terms set forth in the Purchase Agreement and the other Transaction Documents, and (vi) the exercise of the termination option under the WPG Lease (as defined in the Purchase Agreement) if Purchaser elects to cause Seller to exercise such option in accordance with the Purchase Agreement and (b) granting related relief.

2.      In support of this Motion, the Debtors submit the *Declaration of Ronald A. Robins, Executive Vice President, Chief Legal and Governance Officer, General Counsel, and Corporate Secretary of Big Lots, Inc. in Support of Motion of Debtors for Entry of an Order (I) Authorizing and Approving (A) the Debtors' Entry Into and Performance Under the Purchase Agreement, (B) the Sale of the Purchased Assets, (C) the Assumption and Assignment of the Leases and the City Agreement, and (D) the Debtors' Entry Into the New Lease and (II) Granting Related Relief* (the "**Robins Declaration**"), filed contemporaneously herewith.

## INTRODUCTION

3.      By this Motion, the Debtors seek authorization for the Sale of the Purchased Assets. As set forth in the Asset Purchase Agreement by and among Big Lots, Inc. and Gordon Brothers Retail Partners, LLC dated December 27, 2024 (the "**APA**") and the *Order (I) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform Under the GBRP APA, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1556] (the "**GBRP Sale Order**"), this Sale will generate approximately $36 million (the "**Purchase Price**") for the estates, funds which will ultimately be directed to the payment of

administrative claims after certain distributions to HQ Sale Deductions (as defined in the APA) and Purchaser.  *See* APA § 3.01(b). For the reasons further discussed below, the Debtors believe that the relief sought in the Motion is a reasonable exercise of the Debtors' business judgment, is in the best interests of the estates, and should be granted.

### JURISDICTION, VENUE, AND AUTHORITY

4.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief requested herein are sections 105(a), 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), rules 2002, 6004, 6006 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Rule 6004-1.

### Background

6.      On September 9, 2024 (the "**Petition Date**"), the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  The Debtors continue to manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 23, 2024, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "**Committee**") pursuant to 11 U.S.C. § 1102(a)(1). No trustee or examiner has been appointed in the Chapter 11 Cases.

7.      Additional detail regarding the Debtors, their business, the events leading to the filing of this chapter 11 case, and the facts and circumstances supporting the relief requested herein

is set forth in the *Declaration of Jonathan Ramsden as Chief Financial and Administrative Officer of the Debtors in Support of the Debtors' Chapter 11 Proceedings and First Day Pleadings* (D.I. 77) (the "**Ramsden Declaration**") and the GBRP Sale Order.

**A. The Sale**

9.      The Debtors believe that a private sale of the Purchased Assets to Purchaser pursuant to the terms and conditions of the Purchase Agreement is both appropriate and in the best interest of the Debtors, their estates, and their creditors.  The Purchase Agreement will yield, in the Debtors' reasonable business judgment, the highest or otherwise best offer for the Purchased Assets and will provide a greater recovery for their estates than any known or practicably available alternative.  Robins Decl. ¶ 7.

10.      The proposed Sale, if approved, will provide the Debtors with approximately $36 million in additional liquidity and will be one of the initial sources of payments to holders of administrative expense claims.  To avoid incurring unnecessary expenses of a longer marketing process that is not likely to generate a higher and better offer for the Purchased Assets and would otherwise force the Debtors to continue to pay ongoing operating costs, the Debtors believe this private sale process is appropriate under the circumstances.

11.      Importantly, the Debtors, in consultation with their advisors, believe that the cost and delay of running an auction process for the Purchased Assets would outweigh any marginal increase to the Sale proceeds, particularly in light of the benefits to the Debtors, their estates, and all stakeholders if the Sale is approved expeditiously.  The Debtors and their advisors believe that proceeding to closing is in the best interests of the Debtors and all parties in interest.  Ultimately, approval of the Sale will provide the most efficient path to divesting the Purchased Assets for fair consideration.

## B. Summary of Key Sale Terms

12.    The following is a summary of the material terms of the Purchase Agreement:[2]

| Provision | Summary Description |
|---|---|
| **Parties** | Seller:  Big Lots Management f/k/a BLHQ LLC, an Ohio limited liability company ("**Seller**")<br><br>Purchaser: OhioHealth Corporation, an Ohio nonprofit corporation ("**Purchaser**") |
| **Purchased Assets** | • The Big Lots corporate headquarters (the "**Property**"), subject to the Lease (the "**WPG Lease**") of certain space therein to WPG Management Associates, Inc. ("**WPG**"),<br><br>• Seller's interest in personal property located on the Property (other than furniture), and<br><br>• If the Purchaser elects to assume it and pay any related cure costs, the City Agreement between Seller, Big Lots Inc., and the City of Columbus (the "**City Agreement**"), which provides for a property tax abatement for the Property. |
| **Purchase Price** | $36,000,000, subject to customary prorations (e.g., for taxes, rents, utilities and tenant common area maintenance charges). |
| **Deposit** | $1,000,000, fully refundable to Purchaser until the end of the Inspection Period (described below) except that $50,000 will become non-refundable to Purchaser if Purchaser exercises the Lease Termination Option (described below) prior to the end of the Inspection Period. |
| **Inspection Period** | 90 days after signing, during which Purchaser may conduct diligence.<br><br>At any time, Purchaser may waive the remainder of the Inspection Period and accelerate Closing. |
| **Closing Date** | 30 days after the expiration of the Inspection Period (as the same may be accelerated), or such earlier date agreed to by Seller and Purchaser. |
| **Lease Termination Option** | On or prior to February 12, 2025, Purchaser may elect to cause Seller to terminate the WPG Lease[3]. Upon such election, Seller shall send WPG a lease termination notice on or prior to February 14, 2025. |
| **Purchaser Termination Rights** | Purchaser may terminate the Agreement and receive a full refund of the Deposit:<br><br>• at any time during the Inspection Period,<br><br>• if any update to the title report or survey discloses any encumbrance or defect which Purchaser objects to and Seller does not cure, |

---

[2]  This summary is provided for the convenience of the Court and parties in interest and describes, generally, the terms contained in the Purchase Agreement.  To the extent there is any conflict between this summary and the Purchase Agreement, the Purchase Agreement shall govern in all respects.

[3]  Seller has a bilateral lease termination option with WPG (the "**Lease Termination Option**"), requiring notice to be given by February 15, 2025 in order to terminate the WPG Lease in accordance with its terms.  If the Lease Termination Option is exercised, the Debtors will retain all rights to receive the $500,000 termination fee payable to Seller under the WPG Lease in connection with such exercise by Seller, and such fee will not be part of the Purchased Assets acquired by Purchaser.

| | |
|---|---|
| | • in the event of any condemnation or a casualty of more than $10,000,000,<br><br>• if Purchaser exercises the Lease Termination Option but Seller does not timely send WPG a lease termination notice, and<br><br>• if the Bankruptcy Court does not approve the Agreement. |
| **Leaseback** | At Closing, the Parties shall enter into a leaseback agreement (the "**Lease**") on the terms outlined in **Exhibit E** of the Purchase Agreement.  The form of Lease is to be negotiated between Purchaser and Seller prior to the expiration of the Inspection Period. |

## Basis for Relief

**I.     The Debtors' Entry Into the Purchase Agreement Should Be Approved as an Exercise of Sound Business Judgment.**

13.     Section 363(b) of the Bankruptcy Code provides that "[t]he [debtor-in-possession], after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  In determining whether to authorize the use, sale, or lease of property of the estates under section 363 of the Bankruptcy Code, "courts require the debtor to show that a sound business purpose justifies such actions."  *The Dai-Ichi Kangyo Bank Ltd. V. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *see, e.g.*, *In re ICL Holding Co., Inc.*, 802 F.3d 547, 551 (3d Cir. 2015); *In re Lionel Corp.*, 722 F.2d 1063, 1070–71 (2d Cir. 1983).  The "sound business purpose" test requires a debtor to establish that:  "(1) a sound business purpose [for the sale] exists; (2) the [total consideration] is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the purchaser has acted in good faith."  *In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)).  The Debtors submit that the Sale satisfies each of these elements.

14.     Once a debtor articulates a valid business justification, then the burden of rebutting the "strong presumption . . . that the agreement at issue was negotiated in good faith and in the best interests of the estate" falls to parties opposing the transaction.  *In re Filene's Basement*,

No. 11-13511 (KJC), 2014 WL 1713416; *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). Thus, if a debtor satisfies the business judgment rule, the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

15.     Here, the Debtors' entry into the Purchase Agreement is a sound exercise of their business judgment because selling the Purchased Assets by private sale is in the best interests of the Debtors' estates. After engaging in good-faith, arm's-length negotiations for several weeks, the Parties agreed on the purchase price for the Purchased Assets, which totals approximately $36 million in cash consideration, which is higher than any other offer received by the Debtors. Robins Decl. ¶ 6. Forcing the Debtors to abandon or restart the sales and marketing process when the Sale is agreed would be value destructive and jeopardize the Debtors' ability to effectuate a Sale in a timely manner. Unwinding the progress made towards negotiating and preparing for the consummation of the Sale would require expending material assets of the Debtors' estates and would be detrimental to the Debtors, their creditors, estates, and other parties-in-interest.

16.     Further, the terms and conditions of the Purchase Agreement are favorable to the Debtors and comport with the Debtors' present strategic direction, which is to divest assets and use available cash to pay administrative expense claims. Pursuant to the Purchase Agreement, the Debtors intend to deliver a termination notice to WPG (as defined in the Purchase Agreement) and effectuate a termination of the WPG Lease (as defined in the Purchase Agreement) so as to make the Property suitable for Purchaser's use if Purchaser elects to cause Seller to deliver such notice pursuant to the Purchase Agreement. Further, the Debtors and Purchaser have the flexibility to enter into a leaseback transaction to ensure that the Debtors are able to continue those executive

and administrative operations which occur at the Property while Purchaser begins to integrate its own operations into the space.

17.     For these reasons, the Debtors submit that the Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets and the Debtors' entry into the Purchase Agreement is a sound exercise of the Debtors' business judgment and should be approved.

## II.     The Private Sale of the Purchased Assets Is Appropriate Pursuant to Bankruptcy Rule 6004(f) and Should Be Approved.

18.     Bankruptcy Rule 6004(f)(1) authorizes a debtor to sell estate property outside of the ordinary course of its business by private sale or public auction.  *See* Fed. R. Bankr. P. 6004(f)(1).  Courts generally afford debtors in possession broad discretion in determining the manner in which estate property is sold.  *See*, *e.g.*, *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998).  Private sales by a debtor outside of the ordinary course of business are appropriate where the debtor demonstrates that the sale is permissible pursuant to section 363 of the Bankruptcy Code.  *See In re Stephens Indus., Inc.*, 789 F.2d 386, 390 (6th Cir. 1986) (holding a debtor may sell property via private sale "when a sound business purpose dictates such action"); *In re Schipper*, 933 F.2d 513 (7th Cir. 1991) (approving private real estate sale by debtor when purchase price was the same as independent appraisal); *Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect to sales of estate property, "[t]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction."); *In re Blue Coal Corp.*, 67 B.R. 798 (Bankr. M.D. Penn. 1986) (permitting the private sale of certain of the debtor's assets); *In re Paper Corp. of Am.*, 138 F.Supp. 29 (S.D.N.Y. 1956) (holding that the trustee's inability to sell the property after "many months . . . was sufficient to warrant the private sale."); *see also In re Blue Coal Corp.*, 168 B.R. 553, 564 (M.D. Penn. 1994) ("[A] larger measure of discretion is available to the court

in considering whether a private bid should be approved or confirmed."). Courts in this and other jurisdictions regularly authorize private sales pursuant to section 363 of the Bankruptcy Code. *See, e.g.*, *In re Sunpower Corporation*, No. 24-11649 (CTG) (Bankr. D. Del. Aug. 29, 2024) (authorizing a private sale of certain of the debtors' assets without bidding procedures or an auction); *In re MVK FarmCo LLC*, No. 23-11721 (LSS) (Bankr. D. Del. Mar. 11, 2024) (same); *In re Armstrong Flooring, Inc.*, No. 22-10426 (MFW) (Bankr. D. Del. Mar. 27, 2023) (same); *In re Indep. Pet Partners Holdings, LLC*, No. 23-10153 (LSS) (Bankr. D. Del. Feb. 24, 2023); *In re Boy Scouts of Am.*, No. 20-10343 (LSS) (Bankr. D. Del. Apr. 22, 2022) (same).

19.     The Debtors believe that a public auction for the Purchased Assets would require the Debtors' estates to incur substantial additional costs and create undue delay in realizing a recovery on the Purchased Assets. The Debtors do not believe an auction would result in incremental value sufficient to justify the incurrence of such costs and delay, particularly in light of the Debtors' timing and liquidity constraints.

## III.     The Sale of the Purchased Assets Free and Clear of Liens and Other Interests Is Authorized by Section 363(f) of the Bankruptcy Code.

20.     Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if:

(1)     applicable non-bankruptcy law permits sale of such property free and clear of such interests;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because these requirements are listed in the disjunctive, the Debtors only need to satisfy one of the five requirements to permit the Purchased Assets to be sold "free and clear" of liens and interests. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002). The Debtors submit that each lien or interest in the Purchased Assets satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such lien or interest will be adequately protected by either being paid in full at the time of closing or by attaching to the net proceeds of the Sale, subject to any claims and defenses the Debtors may possess with respect thereto.

21.     Further, to the extent any prepetition secured lenders have a prepetition security interest in and liens upon the Purchased Assets, those creditors can be compelled to accept a monetary satisfaction of their interests or are adequately protected by having their claims that constitute interests in the Purchased Assets, if any, attach to the proceeds of the Sale with the same priority that existed immediately prior to the closing.

22.     Thus, section 363(f)(5) of the Bankruptcy Code is satisfied and any existing interests in the Purchased Assets will be adequately protected through attachment to the proceeds of the Sale. *See In re Katy Indus.*, No. 17-11101 (KJC), 2017 WL 5434578, at *5 (Bankr. D. Del. 2017) (finding that holders of liens against property sold free and clear of all liens are "adequately protected by having their Encumbrances, if any, attach to the cash proceeds of the Sale attributable to the Purchased Assets in which such holder alleges an Encumbrance"); *see also MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition."). Accordingly, the Debtors request that the Purchased Assets be transferred to the applicable party free and clear of

liens, claims, and encumbrances, with any such liens, claims, and encumbrances attaching to the net sale proceeds realized from the applicable private sale.

## IV.    Purchaser is a Good-Faith Purchaser and is Entitled to the Full Protection of Section 363(m) of the Bankruptcy Code.

23.    Section 363(m) of the Bankruptcy Code provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith[.]" 11 U.S.C. § 363(m).  Although good faith is not specifically defined in the Bankruptcy Code, one court has stated that the "[g]ood faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings . . . A purchaser's good faith is lost by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997) (internal quotations omitted).  Within the Third Circuit, a good faith purchaser is one who purchases assets for value and in good faith.  "The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings.  Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies of Pa.,* 788 F.2d 143, 147 (3d Cir. 1986).

24.    The Purchase Agreement and the Sale contemplated therein are the product of good-faith, arm's-length negotiations.  There is no indication of fraud or any improper insider dealing.  Further, the consideration to be received by the Debtors for the Purchased Assets is fair and reasonable, and the Debtors are not aware of any other actionable competing offers.  The Debtors submit that Purchaser is a "good faith purchaser" within the meaning of section 363(m)

of the Bankruptcy Code and that the Purchase Agreement is a good faith agreement on arms'-length terms entitled to the protections of section 363(m) of the Bankruptcy Code. The consideration to be received by the Debtors pursuant to the Purchase Agreement is substantial, fair, and reasonable under the circumstances. Furthermore, Purchaser and the Debtors are wholly unrelated, sharing no officers, directors, shareholders, incorporators, employees, or economic interests—other than as embodied in these transactions—in common, and Purchaser is not an "insider" as that term is defined in the Bankruptcy Code. 11 U.S.C. § 101(31). Accordingly, the Debtors request that the Court enter an order entitling each of the parties to the Sale to the full protections of section 363(m) of the Bankruptcy Code.

## V.    Relief Under Bankruptcy Rules 6004(h) and 6006(d) is Appropriate.

25.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise." Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise." The Debtors request that the Order be effective immediately upon its entry by providing that the fourteen day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

26.    The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *In re Filene's Basement,* 2014 WL 1713416*,* at *14; *see* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d). Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, the leading treatise on bankruptcy suggests that the fourteen-day stay should be eliminated to allow a sale or other transaction to close immediately "where there has been no

objection to procedure." 10 *Collier on Bankruptcy* ¶ 6004.11, ¶ 6004.04 (16th rev. ed. 2014). Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id.*; *see In re Filene's Basement,* 2014 WL 1713416, at *14 (reducing the stay to seven days from the date of entry of the sale order).

27.     To maximize the value received for the Purchased Assets and reduce the accrual of administrative expenses relating to such assets, the Debtors seek to close the Sale as soon as possible after the Sale Hearing.  Accordingly, the Debtors hereby request that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

### **Notice**

28.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the United States Trustee for the District of Delaware; (b) counsel to the Committee; (c) all parties who have expressed a written interest in some or all of the Purchased Assets, if any; (d) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Purchased Assets; (e) all counterparties to the Leases and the City Agreement; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the "**Notice Parties**").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached hereto as **<u>Exhibit A</u>**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: February 5, 2025
       Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Casey B. Sawyer*
Robert J. Dehney, Sr. (No. 3578)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Sophie Rogers Churchill (No. 6905)
Casey B. Sawyer (No. 7260)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
rdehney@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
srchurchill@morrisnichols.com
csawyer@morrisnichols.com

*-and-*

DAVIS POLK & WARDWELL LLP
Brian M. Resnick (admitted *pro hac vice*)
Adam L. Shpeen (admitted *pro hac vice*)
Stephen D. Piraino (admitted *pro hac vice*)
Ethan Stern (admitted *pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
brian.resnick@davispolk.com
adam.shpeen@davispolk.com
stephen.piraino@davispolk.com
ethan.stern@davispolk.com

*Counsel to the Debtors and Debtors in Possession*