**Exhibit A**

Lease Termination Agreements

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this 29th day of January, 2025 by and between Pensacola Corners LLC ("Landlord") and Big Lots Stores, Inc. ("Tenant" and together with Landlord, the "Parties" and each, a "Party").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated August 2, 2010 (the "Lease"), covering certain premises located at 6235 N. Davis Highway, Pensacola, FL (the "Premises"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, pursuant to Section 2.05(b) of that certain Asset Purchase Agreement dated as of January 3, 2025 by and between Tenant and Gordon Brothers Retail Partners, LLC ("Gordon Brothers"), Gordon Brothers has the right to designate certain contracts or leases for assumption and assignment to itself or its designee(s);

WHEREAS, Gordon Brothers is conducting "store closing" or other liquidation sales at certain of Tenant's retail stores and distribution centers (each, a "GOB Sale") and exercising designation rights with respect to the disposition or termination of Tenant's leases to be effective upon the conclusion of the applicable GOB Sale (each, a "Vacate Date"); and

WHEREAS, Landlord has prepetition and/or postpetition sums due and owing from Tenant. The Parties desire to enter into this Agreement, for the purpose of, among other reasons, restoring Landlord to possession of the Premises as of the Termination Date, releasing one another from claims and causes of action, and enabling Landlord to dispose of any remaining personal property at the Premises in its sole and absolute discretion.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1.     Recitals. The Recitals are incorporated in this Agreement as if fully set forth herein.

2.     Lease Termination. Subject to Landlord's prior payment of the Termination Fee, the Lease is terminated effective on the earlier of (i) March 31, 2025; and (ii) the day after the Vacate

Date at the Premises; provided, that Tenant or Gordon Brothers shall give Landlord no less than seven (7) days' advance written notice of the Vacate Date (the "Termination Date").

3. Consideration. On or before the Termination Date, Landlord shall pay to Gordon Brothers, via the wiring instructions set forth on Exhibit A, an amount equal to $100,000.00 (the "Termination Fee").

4. Landlord Release of Tenant. For valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, except for the following items, which shall survive the termination of the Lease, (i) Tenant's obligations that expressly survive the termination of the Lease, as indicated in the Lease; and (ii) the provisions, obligations and covenants of Tenant under this Agreement.

5. Tenant Release of Landlord. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, except for the following items, which shall survive the termination of the Lease, (i) Landlord's obligations that expressly survive the termination of the Lease, as indicated in the Lease; and (ii) the provisions, obligations and covenants of Landlord under this Agreement.

6. In this connection, the Parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the Parties further agree, represent and warrant that the releases set forth herein have been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the released parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

7. <u>Conditions Precedent</u>. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a) Landlord has delivered the Termination Fee to the Tenant;

(b) Tenant has delivered possession of the Premises to Landlord;

(c) Tenant has delivered to Landlord the keys and access codes to the Premises (or written confirmation that Landlord is authorized to change the locks); and

(d) An order has been entered approving the entirety of this Agreement.

8. <u>Furniture, Fixtures and Equipment</u>. Any furniture, fixtures and equipment ("FF&E") remaining at the Premises after the Termination Date is deemed abandoned and the Landlord and their managing agents are free to dispose of the FF&E in their sole and absolute discretion without liability to Tenant.

9. <u>Authority to Settle</u>. Each of the Parties respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby. Each of the Parties respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

10. <u>Third Party Beneficiaries</u>. This Agreement is expressly intended to confer rights and benefits upon Gordon Brothers, and Gordon Brothers shall have the right to enforce the provisions of this Agreement.

11. <u>Entire Agreement</u>. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement and supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the Parties respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this

Agreement. Each of the Parties further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12. <u>Advice of Counsel</u>. Each of the Parties respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or had the opportunity to have, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13. <u>Attorneys' Fees</u>. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the Parties agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15. <u>Governing Law</u>. This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16. <u>Jurisdiction</u>. The Parties consent to the exclusive jurisdiction of, and entry of final orders and judgments by, the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the foregoing Agreement is dated effective as of the date and year first written above.

Pensacola Corners LLC

By: _____
Name:  Harry Spitzer
Title:  President


Big Lots Stores, Inc.

By: _____
Name:  Joshua H. Nanberg
Title:  VP, Real Estate

# LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this ___ day of November, 2024 by and between **SELECTIVE API ONE LLC**, a California limited liability company ("Landlord") and **BIG LOTS STORES-PNS, LLC**, a California limited liability company ("Tenant" or "Debtor").

## RECITALS

WHEREAS, Landlord (or its predecessor-in-interest) and Tenant entered into a certain lease dated January 29, 1986 (as amended or modified from time to time, the "Lease"), covering certain premises located at 1207 Aviation Blvd, Redondo Beach, California 90278, which premises is defined and more particularly described in the Lease (the "Premises");

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which case is being jointly administered under the case stylized as *In re Big Lots, Inc., et al.,* jointly administered as Case No. 24-11967 (JKS) (the "Bankruptcy Case");

WHEREAS, Landlord has prepetition and post-petition sums due and owing from Tenant, and the Parties desire to enter into this Agreement to, among other things, terminate the Lease and restore possession of the Premises to the Landlord as of the Termination Date, provide for mutual releases as set forth in this Agreement, and grant Landlord the right to use or dispose of any furniture, fixtures, equipment or other property of the Tenant remaining at the Premises as of the Termination Date, in its sole and absolute discretion; and

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1. Recitals. The Recitals are incorporated herein as if set forth at length.

2.     <u>Lease Termination</u>. The Lease is terminated effective as of the later of (a) the Vacate Date (as defined below), which date shall not be later than January 31, 2025, unless otherwise agreed to in writing by Landlord, and (b) the date the Bankruptcy Court enters an order in the Bankruptcy Case approving this Agreement, (the "<u>Termination Date</u>"). Upon the conclusion of the store closing sale, the Tenant shall surrender possession of the Premises to the Landlord (i.e., return, as applicable, the keys, key codes and alarm codes for the Premises to the Landlord (or its agent and deliver the Premises to Landlord in "Restored Condition," meaning broom clean and free of Tenant's personal property, trade fixtures, and equipment, and debris (the "<u>Vacate Date</u>").  Effective as of the Termination Date, Tenant shall: (a) surrender the Premises to Landlord in Restored Condition and shall give, grant and surrender unto Landlord all of Tenant's right, title and interest in and to the Premises, including, without limitation, all of the Tenant's right, title and interest in, to and under the Lease, and Landlord hereby accepts such surrender; and (b) reasonably cooperate with Landlord to transfer utilities into the name of Landlord.  Each of the parties hereto acknowledges performance of all obligations of the other party under this Lease or otherwise in connection with the Premises through and including the Vacate Date, and agree that, from and after the Termination Date, the Lease, and all rights and obligations of the parties thereunder, shall be deemed to have expired and terminated as fully and completely and with the same force and effect as if such date were the expiry date set forth in the Lease.

3.     <u>Remaining Lease Obligations</u>.  From the date of this Agreement through the Termination Date, Tenant agrees that it will (i) continue to perform all of its covenants and obligations, including to pay all rent and related lease charges, under the Lease, which shall be deemed an obligation of the Debtors, as well as an administrative expense of the Debtors' bankruptcy estates pursuant to Section 365(d)(3) and Section 503(b); (ii) remain current on its obligations under the Lease with respect to maintenance of insurance and payment of utilities; (iii) not cause any material damage to the Premises in connection with any removal of Tenant's trade fixtures or other personal property; (iv) upon return of Premises to Landlord provide Landlord with keys, alarm codes, and copies of most recent utility bills, and (v) not cause mechanics liens to be asserted against the Premises (collectively, the "<u>Remaining Lease Obligations</u>").

4.     <u>Consideration</u>. As consideration for this Agreement, Landlord shall pay Tenant (i) **$900,000.00** ("<u>First Payment</u>") no earlier than the day after of closing of the sale of substantially all of the assets of Tenant to Nexus Capital Management LP or an affiliate thereof (the "<u>Acquisition Date</u>") and no later than fourteen (14) calendar days after the Acquisition Date; and (ii) **$100,000.00** ("<u>Second Payment</u>") within fourteen (14)

calendar days of the Vacate Date. Further, Landlord shall waive any pre-petition balance owing under the Lease, but not unpaid post-petition amounts due (September rent in the amount of $6,667and coming due under the Lease through the date that the Property is surrendered to Landlord in Restored Condition. If the Premises have not been surrendered in Restored Condition by January 31, 2025 ("Outside Vacate Date"), then each day thereafter until the Premises are surrendered in Restored Condition, the consideration shall be reduced by the per diem amount of $462.82 ("Per Diem Rent"), If the Premises are not delivered by January 31, 2025 and/or are not delivered in Restored Condition, Landlord shall be permitted to deduct from the Second Payment (a) Per Diem Rent, if any, and, if the Premises have not been delivered in Restored Condition, (b) the lesser of $25,000 or 1.5 times the actual cost of placing the Premises in Restored Condition.

5.    Landlord Release of Tenant. Conditioned upon (i) the entry of an order of the Bankruptcy Court approving this Agreement (the "Bankruptcy Order") and (ii) Tenant's return of possession of the Premises to Landlord in accordance with this Agreement on or prior to the Termination Date, for valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease. Notwithstanding the above, Landlord does not waive or release Tenant from the following: (i) the Remaining Lease Obligations; (ii) any obligations arising under this Termination Agreement; (iii) any Lease obligations that expressly survive the Termination Date; (iv) any indemnification obligations arising from third party claims asserted with respect to or arising from Tenant's use and occupancy of the Premises prior to the Termination Date for which Tenant had a duty to indemnify Landlord pursuant to the Lease, and which expressly survive the expiration or termination of the Lease (but only to the extent that such claims are covered by Tenant's

insurance policies and on the condition that Landlord only seeks recovery from the insurer and only up to the insured amount); and (v) Landlord's exercise of any discovery rights Landlord has against the Tenant in connection with any civil litigation or arbitration proceedings involving a third party.

6. <u>Tenant Release of Landlord</u>. Conditioned upon (i) the entry of an order of the Bankruptcy Court approving this Agreement (the "<u>Bankruptcy Order</u>") and (ii) Tenant's return of possession of the Premises to Landlord in accordance with this Agreement on or prior to the Termination Date, for valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, including the pursuit of any avoidance actions under Sections 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code against the Landlord, solely relating to or arising out of the Lease, this Agreement or the Premises. Notwithstanding the above, Tenant, the bankruptcy estate, and anyone eligible to make a claim by or through the Tenant and bankruptcy estate, including the Committee, does not waive or release Landlord from the following: (i) any obligations arising under this Agreement; (ii) any indemnifications obligations arising from third party claims asserted with respect to or arising from Landlord's obligations prior to the Termination Date for which Landlord had a duty to indemnify Tenant pursuant to the Lease, and which expressly survive the expiration or termination of the Lease (but only to the extent that such claims are covered by Landlord's insurance policies and on the condition that Tenant only seeks recovery from the insurer and only up to the insured amount); and (iii) Tenant's exercise of any discovery rights Tenant has against the Landlord in connection with any civil litigation or arbitration proceedings involving a third party.

7. As further consideration for this Release, the parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

8. In this connection, the parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the parties further agree, represent and warrant that this Release has been negotiated and agreed upon in light of that realization and that, except as expressly limited above, it nevertheless hereby intends to release, discharge, and acquit the Released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses. Notwithstanding the foregoing, the obligations of Tenant to defend, indemnify, and hold the Landlord harmless for claims or potential claims (including but not limited to: (i) any third-party claims for bodily injury, personal injury, or property damage relating to the Premises; and, (ii) claims asserted by contractors, subcontractors, materialmen, laborers or persons or entities entitled to assert mechanics' liens or similar claims for works of improvement at any of the Premises) shall survive termination of the Leases but only to the extent that such claims are covered by Tenant's insurance policy, and are not affected by the mutual release contained in this Agreement.

9. <u>Conditions Precedent</u>. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

    (a) Tenant has delivered possession of the Premises to Landlord;

5

    (b)  Tenant has delivered to Landlord the keys and access codes to the Premises;

    (c)  An order has been entered by the Bankruptcy Court approving the entirety of this Agreement.

  10.  <u>Abandonment</u>.  Subject to Court approval, upon the Termination Date, any personal property remaining at the Premises is deemed abandoned and Landlord is free to dispose of or utilize any personal property without further notice or liability to the Tenant or any third parties.  However, the abandonment of personal property remaining at the Premises shall not relieve Tenant of its obligations or deprive Landlord of its rights under paragraphs 2 and 4 above.

  11.  <u>Authority to Settle</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby. Each of the parties to this Agreement respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

  12.  <u>Entire Agreement</u>. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the parties to this Agreement respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the parties to this Agreement further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

  13.  <u>Advice of Counsel</u>. Each of the parties to this Agreement respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel,

6

or that it has had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or has had the opportunity to have had, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

14. <u>Attorneys' Fees</u>. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees from the other party.

15. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the parties to this Agreement agrees that scanned or digital signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

16. <u>Governing Law.</u> This Agreement shall be governed by and construed under the laws of the State of California, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

17. <u>Jurisdiction</u>. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum *non conveniens*, or any similar grounds and irrevocably consent to service of process by mail, provided a copy of any document served on Landlord is also served by mail and email to Landlord's counsel Marc Lieberman (FLP Law Group LLP/1875 Century Park East, Suite 2230/Los Angeles, CA 90067; marc.lieberman@flpllp.com). The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

18. <u>Miscellaneous</u>.

(a) The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement. This Agreement and its terms, provisions, covenants and conditions may not be amended,

changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

(b) This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

(c) Each of the parties to this Agreement shall take all necessary steps, cooperate, and use reasonable best efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

(d) Each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

(e) The determination of the terms of, and the drafting of, this Agreement has been by mutual agreement after negotiation, with consideration by and participation of all parties hereto and their counsel. Because this Agreement was drafted with the participation of all parties hereto and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. Each of the parties to this Agreement respectively represents and warrants that each such party was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Agreement, and there was no disparity in bargaining power among the parties to this Agreement.

*[Signatures appear on following page]*

IN WITNESS HEREOF, the parties have duly executed this Agreement as of the date and year first written above.

**API ONE LLC,**
**a California limited liability company**

By: _____
Name: ____Brian Andrew Fagan,____
Title: ____As: President,____
____Selective Real Estate Investments____
____Its: Manager____

**BIG LOTS STORES-PNS, LLC,**
**an Ohio limited liability company**

By: _____
        Signed by: Joshua H. Nanberg
        AB5634F80C07429...

Joshua H. Nanberg, Vice President

9

## AMENDMENT TO LEASE TERMINATION AGREEMENT

This AMENDMENT TO LEASE TERMINATION AGREEMENT (the "Amendment") is dated as of the 17th day of January 2025, by and among SELECTIVE API ONE LLC, a California limited liability company ("Landlord") and BIG LOTS STORES-PNS, LLC ("Tenant" or "Debtor"). Landlord and Tenant are referred to, collectively, as "Parties" and each, individually, as a "Party."

## RECITALS

WHEREAS, the Parties entered into that certain Lease Termination Agreement to the Lease Termination Agreement dated as of November 25, 2024 (the "Original Agreement");

WHEREAS, pursuant to Section 2.05(b) of that certain Asset Purchase Agreement dated as of January 3, 2025 by and between Assignor and Gordon Brothers Retail Partners, LLC ("GB"), GB acquired the right to designate certain contracts or leases for disposition to itself or third parties; and

WHEREAS, Tenant, at the direction of GB, and Landlord desire to amend the Original Agreement in accordance with the terms herein.

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties hereby agree as follows:

## AMENDMENT

1. <u>Amendments</u>. The Original Agreement is hereby amended by:

    (a) Deleting the first sentence of Section 2 in its entirety and replacing it with:

    "The Lease is terminated effective upon GB's receipt of the Second Payment and subject to GB's prior receipt of the First Payment."

    (b) Deleting Section 3 in its entirety and replacing it with:

    "3. <u>Remaining Lease Obligations</u>. From the date of this Agreement through the Termination Date, Tenant agrees that it will (i) continue to perform all of its covenants and obligations, including to pay all rent and related lease charges, under the Lease, which shall be deemed an obligation of the Debtors, as well as an administrative expense of the Debtors' bankruptcy estates pursuant to Section 365(d)(3) and Section 503(b); (ii) remain current on its obligations under the Lease with respect to maintenance of insurance and payment of utilities (clauses (i) and (ii) together, "<u>Rent and Maintenance Obligations</u>"); (iii) not cause any material damage to the Premises in connection with any removal of Tenant's trade fixtures or other personal property; (iv) upon return of Premises to Landlord provide Landlord with keys, alarm codes, and copies of most recent utility bills, and (v) not cause mechanics liens to be asserted

against the Premises (clauses (i)-(v) collectively, the "Remaining Lease Obligations"); provided, that notwithstanding anything to the contrary herein, Tenant shall not be responsible for the Rent and Maintenance Obligations from and after February 1, 2025 if each of the following has occured (x) the Vacate Date has occurred prior to February 1, 2025; (y) the Tenant has filed a certification of counsel seeking entry of the Bankruptcy Order prior to February 1, 2025; and (z) an order approving this Agreement becomes final prior to March 15, 2025.

(c) Deleting the first sentence of Section 4 in its entirety and replacing it with:

"As consideration for this Agreement, Landlord shall pay Gordon Brothers Retail Partners, LLC ("GB") (i) $100,000.00 ("First Payment") no later than January 24, 2025; and (ii) $900,000.00 ("Second Payment") no more than four calendar days after an order approving this Agreement becomes final; provided, that if the Bankruptcy Order is not entered within thirty (30) days of the filing thereof and such delay is not the result of any act or omission of Landlord, then, unless Landlord agrees in writing to extend such time period, GB shall refund Landlord the First Payment as soon as reasonably practicable."

(d) Adding a new Section 19 which states the following:

"19. Third Party Beneficiaries. This Agreement is expressly intended to confer rights and benefits upon GB, and GB shall have the right to enforce the provisions of this Agreement.

2. Effect of Amendment. Except as expressly amended or modified by this Amendment, all terms, conditions, and provisions of the Original Agreement shall remain in full force and effect and are hereby ratified and confirmed. In the event of any conflict or inconsistency between the terms of this Amendment and the terms of the Original Agreement, the terms of this Amendment shall control.

3. Entire Agreement; Amendment. This Amendment, the Original Agreement and the documents delivered pursuant hereto constitute the entire agreement and understanding among the Parties hereto and supersede and revoke any prior agreement or understanding relating to the subject matter thereof. No change, amendment, termination or attempted waiver of any of the provisions hereof shall be binding upon the other Party unless reduced to writing and signed by the Party against whom such change, amendment, termination or waiver is sought to be enforced.

[The remainder of this page is intentionally blank.]

4. <u>Counterparts and Execution</u>. This Amendment may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the parties to this Amendment agrees that scanned or digital signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

**IN WITNESS WHEREOF**, the undersigned parties have entered into and executed this Amendment to be effective as of the day and year first above written.

**API ONE LLC**, a California limited liability companyy

By: _/s/ Brian Andrew Fagan_
Name: Brian Andrew Fagan
Title: President

**BIG LOTS STORES-PNS, LLC**, an Ohio limited liability company

By: _/s/ Joshua Nanberg (AB5634F80C07429...)_
Name: Joshua H. Nanberg
Title: Vice President, Real Estate