## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>            Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>**February 26, 2025, at 10:30 a.m. (ET)**<br><br>**Objection Deadline:**<br>**February 19, 2025, at 4:00 p.m. (ET)** |

### MOTION OF DEBTORS FOR ENTRY OF AN ORDER ALLOWING THE ADVANCEMENT AND PAYMENT OF DEFENSE COSTS AND SETTLEMENT AMOUNTS OF INSURED PERSONS PURSUANT TO THE D&O POLICY

Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**" or "**Big Lots**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), hereby file this *Motion of Debtors for Entry of an Order Allowing the Advancement and Payment of Defense Costs and Settlements of Insured Persons Pursuant to the D&O Policy* (this "**Motion**"). In support of this Motion, the Debtors respectfully state as follows:

### Relief Requested

1.     By this Motion, and pursuant to sections 105(a) and 362(d)(1) of title 11 of the United States Code (the "**Bankruptcy Code**"), rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rule 4001-1 of the Local Rules of the United States

---

[1]     The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors request that the Court enter an order (the "**Order**") substantially in the form attached as **Exhibit A**, modifying the automatic stay, to the extent it applies, and permitting the D&O Insurer (defined below) to make payments, including the advancement of defense costs and settlement amounts, in accordance with certain directors' and officers' liability insurance policies to, or on behalf of, the Insured Persons (defined below) in connection with the Covered Claims (defined below).

### Jurisdiction

2.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

3.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  In addition, the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment in connection herewith consistent with Article III of the United States Constitution.

4.      Venue of these Chapter 11 Cases and related proceedings is proper in this district pursuant to a 28 U.S.C. §§ 1408 and 1409.

### Background

**A.      General Background.**

5.      On September 9, 2024 (the "**Petition Date**"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**").  The Debtors remain in possession of their properties and continue to operate their businesses as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

6.      The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [D.I. 95] entered by the Court on September 10, 2024, in each of the Chapter 11 Cases.

7.      On September 23, 2024, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Committee**") pursuant to section 1102 of the Bankruptcy Code. *See Not. of Appointment of Comm. of Unsecured Creditors* [D.I. 248].

8.      Additional information about the Debtors' business and affairs, capital structure, and prepetition indebtedness, and the events leading up to the Petition Date, can be found in the *Declaration of Jonathan Ramsden as Chief Financial and Administrative Officer of the Debtors in Support of the Debtors' Chapter 11 Proceedings and First Day Pleadings* [D.I. 3] and the *Amended Declaration of Jonathan Ramsden as Chief Financial and Administrative Officer of the Debtors in Support of the Debtors' Chapter 11 Proceedings and First Day Pleadings* [D.I. 77] (collectively, the "**First Day Declaration**").

**B.      The D&O Insurance Policy.**

9.      In the ordinary course of business, the Debtors obtained a directors and officers liability insurance policy to protect its directors and officers.  Specifically, the Debtors maintain a primary Directors & Officers Liability Policy issued by Berkshire Hathaway Specialty Insurance Company (the "**D&O Insurer**") with an aggregate coverage limit of $10 million (the "**D&O Policy**").  A copy of the D&O Policy is attached to the Motion as **Exhibit B**.

10.      The D&O Policy is a "claims made"[2] policy.  The D&O Policy covers the period from June 1, 2024 through June 1, 2025 (the "**Covered Period**") and generally covers losses that directors and officers incur on account of certain claims asserted during the policy period and provide for advancement of defense costs in connection with such claims and with governmental investigations.[3]  *See generally* Ex. B, D&O Policy.  The D&O Policy ensures that directors and officers will be protected from the financial burden associated with their involvement in, and defense against, covered legal proceedings, up to the applicable limits of liability of the D&O Policy and subject to the terms, conditions, exclusions and limitations of the D&O Policy.  *See id.,* §§ I, II, IV, and V.

11.      The D&O Policy also provides Side A, Side B, and Side C coverage (the "**ABC Policies**").  Ex. B § I.  The D&O Policy's Side A Coverage provides protection directly to directors and officers where the Debtors has not indemnified, or will not indemnify, the directors and/or officers.  Side B coverage typically allows the Debtors to receive reimbursement when it indemnifies a director or officer for costs associated with covered claims or governmental

---

[2] Generally, a "claims-made" policy is an agreement by the insurer to indemnify the insured against all claims made during the policy period for alleged acts committed or attempted prior to the policy expiration (or within some other specified period).

[3] The descriptions of the D&O Policies are provided in summary format only.

investigations.  Side C coverage applies to any loss suffered by the Debtors from securities claims made against it in its own right.  Even though the ABC Policies provide Side A, Side B, and Side C coverage, the ABC Policies include "Order of Payments" provisions which state that, where available insurance is insufficient to cover liabilities of both the directors and officers, on the one hand, and the Debtors, on the other hand, the insurer must first provide coverage to the directors and officers.  *See id.*, § XII.B.

**C.      The Insured Persons and the Covered Claims.**

12.      The D&O Policy afford coverage for "**Insured Persons**," as the term is defined in the D&O Policy.[4]  Insured Persons include any past, present or future natural person directors

---

[4] Insured Persons shall mean any natural person who was, is or shall be:

    a.    a duly elected or appointed director (including shadow directors, *de facto* directors and prospective directors identified in a Company prospectus or similar offering document), officer, in-house general counsel, risk manager, controller, trustee, regent or governor of a Company;

    b.    a manager, member of any board of managers or the equivalent executive of a Company that is a limited liability company or a joint venture;

    c.    an official of a Company, including a Company organized or operated in a Foreign Jurisdiction, while serving in a functionally equivalent position to those described in subsections (a) or (b), above;

    d.    an individual described in subsections (a), (b), or (c) above while serving at the specific discretion or request of the Company in a position functionally equivalent to those described in subsections (a), (b), or (c) above for an Outside Entity; or

    e.    any other employee of the Company, but solely with respect to (i) Securities Claims, or (ii) any other Claim while such other Claim is brought and maintained against both such employee and an Insured Person as defined above in subsections (a), (b), (c), or (d).

In addition:

The coverage provided by this policy shall also apply to an Insured Person's lawful spouse or domestic partner under applicable law or the provisions of any formal program established by the Company, but only for a Claim arising out of any actual or alleged Wrongful Acts of such Insured Person.

The coverage provided by this policy also shall apply to the estates, heirs, legal representatives or assigns of any Insured Person in the event of their death, incapacity or bankruptcy, but only for Claims arising out of any actual or alleged Wrongful Acts of such Insured Person.

and/or officers of the Debtors.  Bruce Thorn ("**Mr. Thorn**") is the President, Chief Executive

Officer, and a member of the Board of Directors of Big Lots.  Kristen Cox ("**Ms. Cox**") is Big

Lots's Senior Vice President and Chief of Stores Officer.  Juan Guerrero ("**Mr. Guerrero**") is Big

Lots's Senior Vice President and Chief Supply Chain Officer.  Kevin Kuehl ("**Mr. Kuehl**") is Big

Lots's Senior Vice President and General Merchandise Manager of Home, Apparel, and Global

Sourcing.  Seth Marks ("**Mr. Marks**") is Big Lots's Senior Vice President of Extreme Value

Sourcing.  Shelly Trosclair ("**Ms. Trosclair**") is Big Lots's Senior Vice President and General

Merchandise Manager of Furniture & Seasonal.  Matt Weger ("**Mr. Weger**") is Big Lots's Senior

Vice President and Chief Digital & Technology Officer.    Margarita Giannatonio ("**Ms.**

**Giannatonio**") is Big Lots's former Chief Merchandising Officer.  Steven Rogers ("**Mr. Rogers**")

is Big Lots's former Vice President of Purchasing.

13.    To date, an action in the United States District Court for the Western District of

Kentucky has been filed against certain of the Insured Persons and the Debtors: *The Gerson Co.,*

*v. Big Lots, Inc. et al.*, Case No. 3:24-cv-00370-GNS (W.D. Ky. Sept. 3, 2024) (the "**Action**" and

together with any other claims, investigations, and causes of action, whether currently pending or

brought in the future, to which the Insured Persons are or may be entitled to coverage under the

D&O Policy for defense costs, any judgment or settlement, or otherwise, the "**Covered Claims**").

14.    The Action was filed before the Petition Date.  Mr. Thorn, Ms. Cox, Mr. Guerrero,

Mr. Kuehl, Mr. Marks, Ms. Trosclair, Mr. Weger, Ms. Giannatonio, and Mr. Rogers are defendants

in the Action.

15.    In the Action, the plaintiffs allege violations 17 U.S.C. § 101 *et seq.* based on

alleged copyright infringement by Big Lots (First Amend. Comp. ¶ 1).  The Debtors have no reason

---

Ex. B, D&O Policy § III.11, § XVIII.

to believe that additional similar lawsuits or claims may be asserted against the Insured Persons in the future.

**D.      Events Precipitating the Motion.**

16.      As directors and officers during the Covered Period, the Insured Persons are entitled to indemnification for and advancement of expenses—including attorneys' fees and settlement payments—from the Debtors.  The Debtors cannot advance any defense costs or settlement amounts to or on behalf of the Insured Persons with respect to the Covered Claims because it is currently a chapter 11 debtor-in-possession.  As a result, the Insured Persons seek payment directly from the D&O Policy to cover the expenses they have incurred, are incurring, and will incur—as well as settlement payment obligations they may incur—in responding to the Covered Claims.

17.      The Debtors and/or Insured Persons have submitted claim notices to the D&O Insurer.  The D&O Insurer requires an order from the Court authorizing them to advance payments under the D&O Policy to the Insured Persons.  Consistent with the terms of the D&O Policy, the Debtors respectfully request that the Court enter an order modifying the automatic stay, to the extent necessary, to allow the D&O Insurer to advance and pay defense costs and settlement amounts on behalf of the Insured Persons under the D&O Policy.  *See generally* Ex. B, D&O Policy.

18.      For the avoidance of doubt, this Motion does not modify the terms and conditions of the D&O Policy, or the rights, obligations, and defenses of the D&O Insurer, the Debtors, or the Insured Persons under the D&O Policy.

<u>**Basis for the Relief Requested**</u>

19.      In the first instance, payments made by the D&O Insurer for the Insured Persons' defense costs and settlement amounts are not property of the Debtors' estate and not subject to the

automatic stay.  Alternatively, this Court need not determine whether the proceeds of the D&O Policy are property of the Debtors' estate because cause exists to modify the automatic stay. Absent coverage under the D&O Policy, the Insured Persons will be prejudiced in defending the Covered Claims.  Accordingly, the Debtors seek entry of the Order to permit the D&O Insurer to advance and pay defense costs and settlement amounts as contemplated under the D&O Policy.

**A.     The Automatic Stay Does Not Apply.**

20.     Proceeds of the D&O Policy are not property of the estate, and, therefore, the D&O Insurer should be permitted to advance and pay defense costs and settlement amounts on behalf of the Insured Persons for the Covered Claims.  The automatic stay prohibits "any act to obtain possession of property of the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a).  Section 541(a) of the Bankruptcy Code provides, in turn, that property of estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a).  In determining whether the automatic stay applies to proceeds of a director and officer liability insurance policy, the threshold issue is whether insurance proceeds are property of the estate.  *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010); *In re World Health Alts., Inc.*, 369 B.R. 805, 811 (Bankr. D. Del. 2007); *In re Allied Digit. Techs. Corp.*, 306 B.R. 505, 509 (Bankr. D. Del. 2004).  Courts focus on the debtor's rights under the terms of the insurance policy at issue.  *In re Downey Fin.*, 428 B.R. at 607 (citing *In re Allied Digit.*, 306 B.R. at 509 (observing that cases examining whether proceeds of D&O Policy are property of the estate are controlled by the language and scope of the policy at issue and not by broad, general statements")).

21.     When a D&O policy provides direct coverage to directors and officers, the proceeds of the insurance policy are not property of the estate because the proceeds are payable to the

8

directors and officers and not to the estate. *In re Allied Digit.*, 306 B.R. at 510. Here, the Side A coverage under the ABC Policies has priority over the Side B and Side C coverage, and Side A DIC Policies are exclusively for the benefit of the directors and officers, and thus are not property of the Debtors' estates. *See In re SVB Fin. Grp.*, 650 B.R. 790, 799 n.3 (Bankr. S.D.N.Y. 2023) (citing *In re Allied Digit.*, 306 B.R. at 512)).

22.     Where a D&O policy "provides direct coverage to both the debtor and the directors and officers, the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other asset from diminution." *In re Downey*, 428 B.R. at 603 (internal quotation omitted). Furthermore, even where a debtor is also an insured under a D&O policy, but the debtor's potential claim against the policy is speculative or hypothetical, courts hold that the proceeds of that D&O policy are not property of the estate. *See, e.g., In re Downey*, 428 B.R. at 607; *In re World Health Alts.*, 369 B.R. at 810 (noting that courts "have found that insurance policy proceeds are not property of the estate where a debtor is covered for indemnification, but indemnification either has not occurred, is hypothetical, or speculative") (internal quotation omitted); *In re Allied Digit.*, 306 at 512 (concluding that "when the liability policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate.").[5]

23.     Here, the Debtors' need for coverage under the ABC Policies is largely hypothetical. As the Debtors have not indemnified the Insured Persons, the Debtors do not

---

[5] A debtor's potential claim against a D&O policy vis-à-vis its (potential) status as a plaintiff against the insureds is insufficient to make the policy's proceeds property of the debtor's estate. *See, e.g., In re CHS Elecs., Inc.*, 261 B.R. 538, 544 (Bankr. S.D. Fla. 2001) ("Proceeds which [trustee] seeks to protect to satisfy his claims if he obtains a judgment against the officers and directors are not property of the estate.").

currently need access to Side B coverage.  Even if the Debtors eventually sought Side B coverage, the policies contain an Order of Payments provision, which would subordinate the Debtors' rights in the proceeds of the ABC Policies to those of the directors and officers.[6]  *In re World Health Alts.*, 369 B.R. at 810-11 (holding that insurance proceeds were not property of estate where the policy contained a priority of payment provision and the debtor was entitled only to coverage for amounts it was required to indemnify, and no indemnification claims had yet been made); *see also In re MF Glob. Holdings Ltd.*, 515 B.R. 193, 203-04 (Bankr. S.D.N.Y. 2014) ("Even if [the debtors] had a contractual claim to the D&O Proceeds, that claim would be subject to the D&O Policy' priority of payment provision.  That provision requires that the [directors and officers] be advanced defense costs before other payments under the D&O Policy are satisfied.").

24.    Accordingly, the proceeds of the D&O Policy for defense costs and settlements on behalf of the Insured Persons are not property of the estate and the automatic stay should not prevent the D&O Insurer from advancing and paying the Insured Persons' defense costs and settlement amounts.

**B.    Cause Exists to Grant Relief from the Automatic Stay.**

25.    Even if the D&O Policy or their proceeds were deemed to be property of the estate, cause exists to modify the automatic stay to permit the D&O Insurer to advance and pay defense costs and settlement amounts for the Covered Claims.  Here, the Debtors will not suffer any meaningful harm, while the Insured Persons will suffer harm absent lifting or modifying the stay

---

[6] The Order of Payments provision states in pertinent part:

> In the event Loss under Insuring Agreement I.A. or Coverage Extensions II.B(1) and any other Loss becomes due and payable concurrently, the Insurer shall pay, subject to the Limit of Liability, Loss covered under Insuring Agreement I.A. or Coverage Extensions II.B(1) first before paying any other Loss.

Ex. B, D&O Policy § XII.

10

to authorize the D&O Insurer to advance and pay defense costs and settlement amounts for the Covered Claims.

26.     Indeed, courts in this district routinely grant such relief under similar circumstances. *See generally*, *In re Dermtech, Inc.*, Case No. 24-11378 (JTD) [D.I. 164] (Bankr. D. Del. Aug. 9, 2024) (granting limited relief from the automatic stay to permit D&O insurer to pay or advance covered defense costs for directors and officers in a securities class action and shareholder derivative action); *In re Humanigen, Inc.*, Case No. 24-10003 (BLS) [D.I. 310] (Bankr. D. Del. June 18, 2024) (finding the automatic stay does not apply, or, to the extent it does apply, lifting the automatic stay to permit the D&O insurer to evaluate coverage and make payments to directors and officers for defense costs); *In re Cano Health, Inc.*, Case No. 24-10164 (KBO) [D.I. 893] (Bankr. D. Del. May 30, 2024) (to the extent the automatic stay would otherwise prohibit advancement or payment of any amounts covered under the D&O Policy, authorizing D&O Insurer to pay defense costs and any other losses under the D&O Policy to the directors and officers); *In re KDC Agribusiness LLC*, Case No. 23-10786 (CTG) [D.I. 533] (Bankr. D. Del. Dec. 20, 2023) (authorizing D&O insurer to advance defense costs to directors and officers in connection with defense of a Delaware Court of Chancery action); *In re Lordstown Motors Corp.*, Case No. 23-10831 (MFW) [D.I. 495] (Bankr. D. Del. Oct. 2, 2023) (to the extent applicable, modifying the automatic stay to authorize D&O Insurer to make payments under the D&O Policy on behalf of directors and officers in connection with securities litigation); *In re NewAge, Inc.*, Case No. 22-10819 (LSS) [D.I. 476] (Bankr. D. Del. Feb. 7, 2023) (lifting the automatic stay to permit D&O insurer to pay covered costs to officer); *In re Valeritas Holdings, Inc.*, Case No. 20-10290 (JKS) [D.I. 578] (Bankr. D. Del. Nov. 22, 2022) (to the extent applicable, modifying the automatic stay to allow D&O Insurer to advance D&O insurance proceeds or pay defense costs of

directors and officers); *see also In re MF Glob. Holdings, Ltd.*, 469 B.R. 177, 192 (Bankr. S.D.N.Y. 2012) ("Courts in this Circuit and other jurisdictions have permitted the advancement of defense costs to a debtor's directors or officers even though the insurance policies provide direct coverage to the [debtor]").

27.     The Bankruptcy Code provides that the Court shall grant relief from the automatic stay upon the request of a party in interest for "cause." 11 U.S.C. § 362(d)(1).  The term "cause" is not defined in the Bankruptcy Code, but it is "a flexible concept and courts often consider a fact intensive case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007).  When considering whether to grant relief from the automatic stay, courts consider (a) whether any great prejudice to either the estate or the debtor will result from lifting the stay and (b) whether the hardship to the non-debtor by maintenance of the stay considerably outweighs the hardship to the debtor.  *In re Downey Fin.*, 428 B.R. at 609.

28.     If the Court authorizes the D&O Insurer to advance defense costs and settlement amounts in accordance with the D&O Policy, the Debtors' estates will not suffer any prejudice. The Action against the Debtors are stayed under section 362 of the Bankruptcy Code, and thus the Debtors do not have any significant interest in the proceeds of the D&O Policy.  Further, the Debtors' limited right to proceeds under the policy is contingent on the Debtors' payment of indemnification to the Insured Persons—which it has not paid and does not expect to pay—and expressly subordinated to the right of the directors and officers to coverage.  *See* Ex. B, D&O Policy § XII.B.  In fact, any payment of defense costs and settlement amounts by D&O insurance proceeds would benefit the estate by removing any indemnification claim the Insured Persons would otherwise have against the Debtors.  *In re Allied Digit.*, 306 B.R. at 514.

29.     In contrast, the Insured Persons will be prejudiced and suffer irreparable harm, if they are prevented from receiving advances for and payment of their defense costs or settling Covered Claims under the D&O Policy.  *See In re Allied Digit.*, 306 B.R. at 513, 514 (finding that cause existed to grant stay relief and reasoning that directors and officers may suffer substantial and irreparable harm where they are prevented from conducting a meaningful defense because they are denied bargained for D&O coverage); *see also In re MF Glob. Holdings Ltd.*, 469 B.R. at 192-93 ("Lifting the automatic stay to permit [the insurer] to advance defense costs on behalf of the Individual Insureds would not severely prejudice the Debtors estates.  But the failure to do so would significantly injure the Individual Insureds, whose defense costs are covered by the [insurance policies].").

30.     Here, the Debtors and their estates will not be harmed by entry of the Order. However, the Insured Persons may be severely prejudiced if they do not receive advancement and payment of their defense costs or settlement amounts under the D&O Policy.  The hardship that the Insured Persons face by the maintenance of the automatic stay substantially outweighs any conceivable hardship to the Debtors by lifting or modifying the automatic stay to permit payment of defense costs and settlement amounts under the D&O Policy.  The Debtors respectfully submit that "cause" thus exists to grant relief from the automatic stay to the extent it applies, to permit the D&O Insurer to advance and pay defense costs and settlement amounts to or on behalf of Insured Persons under the D&O Policy**.**

### Waiver of Bankruptcy Rule 4001(a)(3)

31.     Given the nature of the relief requested, the Debtors respectfully request a waiver of the fourteen (14) day stay under Bankruptcy Rule 4001(a)(3) to the extent it applies.  Pursuant to Bankruptcy Rule 4001(a)(3), "[a]n order granting a motion for relief from an automatic stay

made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  For the reasons described above, the relief requested is essential to prevent potential hardship to the Insured Persons.

### Notice

32.     Notice of this Motion will be provided to the following parties: (a) the U.S. Trustee; (b) McDermott Will & Emery LLP and Cole Schotz P.C., as counsel to the Official Committee of Unsecured Creditors; (c) the Securities and Exchange Commission; (d) the Internal Revenue Service; (e) the United States Attorney's Office for the District of Delaware; (f) the state attorneys general for states in which the Debtors conduct business; (g) Riemer & Braunstein LLP, as counsel to GBRP; (h) the D&O Insurer, and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"). Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no other or further notice is required.

*[Remainder intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: February 12, 2025
Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Sophie Rogers Churchill*
Robert J. Dehney, Sr. (No. 3578)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Sophie Rogers Churchill (No. 6905)
Casey B. Sawyer (No. 7260)
1201 N. Market Street, 16th Floor
Wilmington, DE 19801
Tel: (302) 658-9200
rdehney@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
srchurchill@morrisnichols.com
csawyer@morrisnichols.com

-*and*-

DAVIS POLK & WARDWELL LLP

Brian M. Resnick (admitted *pro hac vice*)
Adam L. Shpeen (admitted *pro hac vice*)
James I. McClammy (admitted *pro hac vice*)
Stephen D. Piraino (admitted *pro hac vice*)
Ethan Stern (admitted *pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Tel.: (212) 450-4000
brian.resnick@davispolk.com
adam.shpeen@davispolk.com
james.mcclammy@davispolk.com
stephen.piraino@davispolk.com
ethan.stern@davispolk.com

*Counsel to the Debtors and Debtors in Possession*

15