## **EXHIBIT B**

D&O Policy


Berkshire Hathaway
Specialty Insurance

Date:    **August 23, 2024**

To:    **Larry Bowlus**
**EPIC Insurance Brokers and Consultants**
**1 California Street Suite 400**
**San Francisco, CA 94111**

Re:    **Big Lots Inc**
**47-EPC-150195-11**
**June 01, 2024 – June 01, 2025**
**Executive First Directors & Officers Liability Policy**

Dear Larry:

Attached please find the Policy for Big Lots Inc. This policy has been placed with Berkshire Hathaway Specialty Insurance Company (1314 Douglas Street, Suite 1400, Omaha, NE 68102-1944). Thank you for placing your business with Berkshire Hathaway Specialty Insurance. We value our relationship with EPIC Insurance Brokers and Consultants and look forward to working with you on future accounts.

For any claim related questions or to report a claim, please call our 24hr toll free number at 855.453.9675 or refer to the attached claims reporting sheet for fax, email and mail instructions.

If you have questions or concerns or claims, your Berkshire Hathaway Specialty team is just a phone call away.

Sincerely,


Ashley Gafoor
415-203-9253
ashley.gafoor@bhspecialty.com

Berkshire Hathaway
Specialty Insurance

**United States**

# CLAIMS REPORTING

**All claims under policies underwritten by Berkshire Hathaway Specialty Insurance should be reported to our centralized Loss Processing Center. Claims will be assigned to our technical staff or to one of our preferred service providers.**

Our 24 hour toll free number for all claims:   **855.453.9675**

Cyber claims can be reported to this dedicated email address where specialists are available to respond:

**CyberClaimsNotice@bhspecialty.com**

For all other claims, please forward to:

**ClaimsNotice@bhspecialty.com**

To report claims via mail or overnight mail refer to our website:

**www.bhspecialty.com/claims**

### EXPECT A PERSONAL APPROACH

While technology adds speed and efficiencies, it is top-quality people that drive top-quality claims handling. That's why we continue to grow our industry-leading claims team with the most experienced claims professionals in the business.

Moreover, at Berkshire Hathaway Specialty Insurance, our claims team makes communicating proactively with you throughout the claims process a priority. Should you face a claim, you will quickly see our response is not about drafting letters, it's about having a dialogue— and responding to your particular needs and concerns.

Whether you face a D&O claim, a property loss or a large scale casualty crisis, you will have the experts you need at your service. Putting your policy to work for you.


Berkshire Hathaway
Specialty Insurance

**Berkshire Hathaway Specialty Insurance Company**

(a Stock Insurance Company)

# Executive First™

## DIRECTORS & OFFICERS LIABILITY POLICY

## DECLARATIONS

**NOTICE:  THE COVERAGE PROVIDED UNDER THIS POLICY IS LIMITED TO ONLY THOSE CLAIMS FIRST MADE DURING THE POLICY PERIOD OR ANY APPLICABLE DISCOVERY PERIOD.  THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY DEFENSE COSTS, AND DEFENSE COSTS WILL BE APPLIED AGAINST THE RETENTION.  THE INSURER WILL NOT BE LIABLE FOR DEFENSE COSTS OR OTHER LOSS IN EXCESS OF THE APPLICABLE LIMIT OF LIABILITY.  THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND UNDER THIS POLICY. PLEASE REVIEW THE POLICY CAREFULLY.**

| **Policy No.:** 47-EPC-150195-11 | **Renewal of:** 47-EPC-150195-10 |
| --- | --- |

| 1. | **Parent Company:** | Big Lots Inc |
| --- | --- | --- |
| | **Mailing Address:** | 4900 E Dublin Granville Rd<br>Columbus, OH 43081-7651 |

| 2. | **Insurer:** | Berkshire Hathaway Specialty Insurance Company |
| --- | --- | --- |

| 3. | **Policy Period:** | From:     June 01, 2024 to June 01, 2025 |
| --- | --- | --- |
| | | 12:01 a.m. local time at Mailing Address listed in Item 1, above. |

4.  **Limit of Liability:**

| A. | Aggregate Limit of Liability for all **Claims:** | $10,000,000 |
| --- | --- | --- |
| B. | Sublimit of Liability for all **Security Holder Derivative Demand Investigation Costs:** | $250,000 |

**Berkshire Hathaway
Specialty Insurance**

(not applicable to **Claims** under Insuring Agreement I.A, Coverage
Extensions II.A or II.B(1))

**5.    Retention:**          $2,500,000 Each **Claim**

| 6.    Notices to Insurer: | For **Claims** or **Potential Claims** | All Other Notices |
|---|---|---|
| | **By 24-hour toll free number:**<br>855-453-9675<br><br>**By Email:**<br>ClaimsNotice@bhspecialty.com<br><br>**By Email:**<br>CyberClaimsNotice@bhspecialty.com<br><br>**By Fax:** 617-507-8259<br><br>**By Mail:** Log on to<br>www.bhspecialty.com/claims-reporting.html for mailing address | **By Email:**<br>execandprofnotices@bhspecialty.com<br><br>**By Fax:** 617-248-1618<br><br>**By Mail:** Log on to<br>www.bhspecialty.com/claims-reporting.html for mailing address |

**7.    Discovery Period:**

| A. | Additional Premium: | 150% | 275% |
|---|---|---|---|
| B. | Additional Period: | One Year | Six Year |

**8.    Premium:**      $394,590.00, including $0.00 for Terrorism

**THESE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION FOR THIS POLICY, THE POLICY FORM AND ANY ENDORSEMENTS ATTACHED HERETO, CONSTITUTE THE ABOVE NUMBERED INSURANCE POLICY.**

**Signatures:**

_____          _____
**Ralph Tortorella, Secretary**                              **Peter Eastwood, President**

*August 23, 2024*
*Dated*



Berkshire Hathaway
Specialty Insurance

**Policy No.: 47-EPC-150195-11**

**Issued to:   Big Lots Inc**

# FORMS SCHEDULE

The contents of the Policy are comprised of the following forms:

| Form Number | Endorsement Title |
|---|---|
| EP-EFDO-ADM-DEC-10/2014 | Executive First Directors & Officers Liability Policy Declarations |
| EP-FORMS-SCH-02/2015 | Forms Schedule |
| EP-EFDO-ADM-001-10/2014 | Executive First Directors & Officers Liability Policy |
| EP-EFDO-ADM-009-10/2014 | Amend Definition of Insured Person Inquiry |
| EP-EFDO-ADM-012-10/2014 | Amend Notice of Claims |
| EP-EFDO-ADM-019-10/2014 | Amend Subrogation Clause |
| EP-EFDO-ADM-021-10/2014 | Amend Section X, Transactions: Coverage Implications of Mergers, Acquisitions and Sales of the Company or Any Subsidiary |
| EP-EFDO-ADM-025-10/2014 | Delete Dispute Resolution Process |
| EP-EFDO-ADM-029-10/2014 | Price Impact Event Study |
| EP-EFDO-ADM-062-12/2016 | Amend Application Section |
| EP-EFDO-ADM-068-12/2016 | Bodily Injury/Property Damage Exclusion Amended (Side A Carveback) |
| EP-EFDO-ADM-070-12/2016 | Books And Records Extension (With Sublimit, No Retention) |
| EP-EFDO-ADM-092-12/2016 | Insured Person Definition Amended (Audit Committee Member) |
| EP-EFDO-ADM-107-12/2016 | Prior Notice Exclusion Amended (Direct Or Indirect Renewal Or Replacement) |
| EP-EFDO-ADM-132-12/2016 | Wrongful Act Definition Amended (Delete Solely) |
| EP-EFDO-ADM-155-07/2017 | Retention Provision Amended (Recognize Erosion By DIC Policy) |
| EP-EFDO-ADM-190-10/2018 | Amend Definition Of Insured Persons (Employee As ODL) |
| EP-EFDO-ADM-211-07/2021 | Financial Insolvency Definition Amended |
| EP-EFDO-ADM-234-07/2021 | Amend Definition Of Application (Remove Written Materials) |

| EP-EFDO-ADM-226-07/2021 | Defense And Settlement Provision Amended (Add Final Adjudication) |
| EP-EFDO-ADM-035-01/2015 | Cap On Losses From Certified Acts Of Terrorism |
| EP-MANU-001 | Claim Definition Amended (Toll Or Waive Statute Of Limitations, Other ADR) |
| EP-MANU-002 | Securities Claim Definition (Aiding And Abetting) |
| EP-MANU-003 | Conduct Exclusion Amended |
| EP-MANU-004 | Amend Definition Of Company |
| EP-MANU-005 | Amend Entity V. Insured Person Exclusion |
| EP-EFDO-ADM-192-10/2018 | Notice Of Potential Claim Provision Amended (To The Extent Reasonably Known) |
| EP-EFDO-ADM-230-07/2021 | Cancellation Provision Amended (20 Days For Non-Payment) |
| EP-MANU-006 | Other Insurance Amended (Add Personal Director Liability Policy) |
| EP-MANU-007 | FLSA Exclusion Amended (Side A Carveback) |
| EP-MANU-008 | Amend Discovery Period |
| EP-MANU-009 | Side-A Liberalization (Lead Side A) |
| EP-EFDO-ADM-100-12/2016 | Amend Definition Of Loss |
| EP-EFDO-ADM-236-07/2021 | Allocation Provision Amended (Best Efforts, Fair And Proper) |

**Berkshire Hathaway Specialty Insurance**

# Executive First Directors & Officers Liability Policy

In consideration of the payment of the premium and subject to all terms, conditions and limitations of this Policy, the **Insureds** and **Insurer** agree:

**Section I**      **Insuring Agreements**

**A.**      **Side A Coverage: Non-indemnified Loss of Insured Persons**

The **Insurer** shall pay on behalf of the **Insured Persons** all **Loss** as a result of a **Claim** first made against the **Insured Persons** during the **Policy Period** for a **Wrongful Act** and reported to the **Insurer** as required by this Policy, but only to the extent such **Loss** is not paid or indemnified by the **Company**.

**B.**      **Side B Coverage: Company Indemnification of Insured Persons Loss**

The **Insurer** shall pay on behalf of the **Company** all **Loss** for which the **Company** indemnifies the **Insured Persons**, as a result of a **Claim** first made against the **Insured Person** during the **Policy Period** for a **Wrongful Act** and reported to the **Insurer** as required by this Policy.

**C.**      **Side C Coverage: Company Securities Claim**

The **Insurer** shall pay on behalf of the **Company** all **Loss** as a result of a **Securities Claim** first made against the **Company** during the **Policy Period** for a **Wrongful Act** and reported to the **Insurer** as required by this Policy.

**Section II**      **Coverage Extensions**

**A.**      **Company Coverage for Derivative Demand Investigation Costs**

The **Insurer** shall pay on behalf of the **Company** all **Security Holder Derivative Demand Investigation Costs** as a result of any **Security Holder Derivative Demand** first made during the **Policy Period** and reported to the **Insurer** as required by this Policy.  No retention shall apply to this coverage.

**B.**      **Insured Person Inquiry Costs Coverage**

**1.**      The **Insurer** shall pay on behalf of an **Insured Person** all **Defense Costs** incurred solely by such **Insured Person** as a result of an **Insured Person Inquiry** first made during the **Policy Period** and reported to the **Insurer** as required by this Policy, except to the extent such **Defense Costs** have been paid or indemnified by the **Company** or another party;

**2.**      The **Insurer** shall pay on behalf of the **Company** all **Defense Costs** incurred solely by an **Insured Person** as a result of an **Insured Person Inquiry** first made during the **Policy Period** and reported to the **Insurer** as required by this Policy, to the extent the **Company** pays or indemnifies such **Defense Costs**.

**Section III**      **Definitions**

**1.**      **"Application"** shall mean the application submitted to the **Insurer** for this Policy together with any written materials attached thereto or submitted to the **Insurer** in connection with the underwriting of this Policy.  **Application** shall also include all publicly available documents filed by the **Company** with the Securities and Exchange Commission during the twelve (12) months preceding the effective date of this Policy.



2. **"Claim"** shall mean:

    **a.** a written demand against an **Insured** (other than a **Security Holder Derivative Demand**):

        **i.** for monetary or non-monetary (including injunctive) relief, including a request to toll any statute of limitations, or

        **ii.** to engage in arbitration or mediation,

    which shall be deemed first made upon receipt by the **Insured** of such demand;

    **b.** a civil or criminal proceeding against an **Insured**, which shall be deemed first made upon:

        **i.** the service of a complaint or similar pleading upon the **Insured**, or

        **ii.** in the case of a criminal proceeding, an arrest, the return of an indictment or information, or the receipt or filing of notice of charges or similar document;

    provided, however, that a **Claim** under this subsection shall not include any investigation or any administrative or regulatory proceeding;

    **c.** an administrative or regulatory proceeding (other than an investigation) against:

        **i.** an **Insured Person**, or

        **ii.** a **Company**, but only where such proceeding is also made and continuously maintained against an **Insured Person**,

    which shall be deemed first made upon receipt of a notice of charges, complaint or similar document by the **Insured**;

    **d.** an investigation of an **Insured Person** by an **Enforcement Authority** which shall be deemed first made upon service on or receipt by the **Insured Person** of a written document from such **Enforcement Authority** identifying such **Insured Person** as a target of the investigation, including a notice of investigation, target letter, Wells Notice or similar document;

    **e.** an official request for the **Extradition** of an **Insured Person**, or the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**, which shall be deemed first made upon receipt of the request or warrant;

    **f.** solely with respect to **Coverage Extensions**, Section II.A, a **Security Holder Derivative Demand**, which shall be deemed first made upon receipt by the **Company** of such demand; or

    **g.** solely with respect to **Coverage Extensions,** Section II.B, an **Insured Person Inquiry**, provided, however, that an **Insured Person Inquiry** only shall constitute a **Claim** under this Policy if the **Insured Person** or **Company** elects to give to the **Insurer** written notice thereof pursuant to Section IX below, at which point such **Insured Person Inquiry** shall be deemed first made.

3. **"Company"** shall mean the **Parent Company** and any **Subsidiary**, including in the event of a bankruptcy, the **Parent Company** and any **Subsidiary** as a debtor in possession as such term is used in Chapter 11 of the United States Bankruptcy Code.

4. **"Defense Costs"** shall mean that part of **Loss** consisting of:

    **a.** reasonable fees, costs and expenses incurred by the **Insureds** in the defense or appeal of any **Claim** (except a **Security Holder Derivative Demand**), including the costs of an appeal bond,

www.bhspecialty.com



attachment bond or similar bond, but does not include the obligation to apply for or furnish such bonds;

**b.**  **SOX 304/Dodd-Frank 954 Costs**;

**c.**  reasonable fees, costs and expenses incurred by the **Insureds** at the **Insurer's** request to assist the **Insurer** in investigating a **Claim**; and

**d.**  solely with respect to coverage under Coverage Extensions II.A, **Security Holder Derivative Demand Investigation Costs**.

**Defense Costs** shall not include (i) any salaries, wages, overhead, benefits or benefit expenses associated with any **Insured**, or (ii) any fees, costs or expenses incurred by an **Insured** prior to the time that the **Claim** is first made against the **Insured**.

**5.**  **"Enforcement Authority"** shall mean any federal, state, local or foreign law enforcement or governmental authority (including the U.S. Department of Justice, the U.S. Securities and Exchange Commission and any federal or state attorney general) or the enforcement unit of any securities exchange or similar self-regulatory body.

**6.**  **"Extradition"** shall mean any formal process (including without limitation an extradition proceeding pursuant to the U.K. Extradition Act of 2003 or the equivalent in any other jurisdiction) by which an **Insured Person** located in any country is or is sought to be surrendered to any other country for trial, or otherwise to answer any criminal accusation, for a **Wrongful Act**.

**7.**  **"Financial Insolvency"** shall mean the **Company** becoming a debtor in possession (as defined under U.S. bankruptcy law or equivalent foreign law), or the appointment, pursuant to state or federal law, of a receiver, conservator, liquidator, trustee, rehabilitator or other official to control, supervise, manage or liquidate the **Company**.

**8.**  **"Foreign Jurisdiction"** shall mean any jurisdiction, other than the United States or any of its territories or possessions.

**9.**  **"Foreign Policy"** shall mean the standard directors and officers liability policy (including all mandatory endorsements, if any) approved by the **Insurer** for use within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this Policy.  The term "**Foreign Policy**" shall not include any partnership, pension trust or professional liability policy or similar coverage.

**10.**  **"Insured(s)"** shall mean any **Insured Person** or **Company**.

**11.**  **"Insured Persons"** shall mean any natural person who was, is or shall be:

**a.**  a duly elected or appointed director (including shadow directors, *de facto* directors and prospective directors identified in a **Company** prospectus or similar offering document), officer, in-house general counsel, risk manager, controller, trustee, regent or governor of a **Company**;

**b.**  a manager, member of any board of managers or the equivalent executive of a **Company** that is a limited liability company or a joint venture;

**c.**  an official of a **Company**, including a **Company** organized or operated in a **Foreign Jurisdiction**, while serving in a functionally equivalent position to those described in subsections (a) or (b), above;



    **d.** an individual described in subsections (a), (b), or (c) above while serving at the specific direction or request of the **Company** in a position functionally equivalent to those described in subsections (a), (b), or (c) above for an **Outside Entity**; or

    **e.** any other employee of the **Company**, but solely with respect to (i) **Securities Claims**, or (ii) any other **Claim** while such other **Claim** is brought and maintained against both such employee and an **Insured Person** as defined above in subsections (a), (b), (c) or (d).

**12.** **"Insured Person Inquiry"** shall mean a written request made upon an **Insured Person** for an interview, a meeting, sworn testimony or the production of documents from:

    **a.** an **Enforcement Authority**  in connection with either (i) the business of a **Company** or (ii) such **Insured Person** in his or her capacity as such, or

    **b.** a **Company** in connection with either (i) an investigation of a **Company** by an **Enforcement Authority** or (ii) a **Security Holder Derivative Demand**,

provided that an **Insured Person Inquiry** shall not include any request by an **Enforcement Authority** that is part of a routine or regularly scheduled audit, inspection or general oversight or compliance activity.

**13.** **"Insurer"** shall mean the insurance company identified at Item 2 of the Declarations.

**14.** **"Loss"** shall mean those amounts any **Insured** is legally obligated to pay as a result of a **Claim**, including, but not limited to:

    **a.** compensatory, punitive, exemplary and multiple damages;

    **b.** settlements and judgments, including costs and fees awarded pursuant to a covered judgment and pre-judgment and post-judgment interest on that portion of a covered judgment;

    **c.** **Defense Costs;**

    **d.** civil fines or penalties assessed against an **Insured Person** for an unintentional and non-willful violation of any federal, state, local or foreign law, including without limitation any such fines or penalties described in Section 308 of the Sarbanes-Oxley Act of 2002 or assessed pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act 15 U.S.C. §78dd-2(g)(B);

    **e.** solely with respect to Insuring Agreement I.A, taxes imposed on a **Company** for which the **Insured Persons** are legally obligated to pay solely by reason of the **Company's** insolvency; and

    **f.** plaintiffs' attorney fees and costs in a security holder derivative lawsuit under Insuring Agreement I.C.

**Loss** (other than **Defense Costs**) shall not include any of the following:

    **i.** fines or penalties, except as provided at Subsection (d) above;

    **ii.** taxes, except as provided at Subsection (e) above;

    **iii.** any amount for which an **Insured** is legally absolved from payment;

    **iv.** any amount incurred to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**;

    **v.** solely with respect to Insuring Agreement I.B and I.C, any portion of damages, judgments or settlements incurred by the **Insureds** that represents or is substantially equivalent to



an increase in the consideration paid or proposed to be paid in connection with the purchase of any securities, assets or entity;

**vi.** any amount not insurable under the law pursuant to which this Policy shall be construed; or

**vii.** costs incurred by an **Insured** to comply with any order for non-monetary relief (including injunctive relief) or with any agreement to provide such relief.

The insurability of matters otherwise included within this definition shall be determined under the law of the applicable jurisdiction most favorable to such insurability, including, without limitation, the jurisdiction in which the **Parent Company**, the **Insured Persons**, the **Insurer** or such **Claim** is located. The **Insurer** shall not assert that the following matters are uninsurable: (i) **Loss** due to the **Insured's** actual or alleged violation of Sections 11, 12 or 15 of the Securities Act of 1933, as amended; or (ii) **SOX 304/Dodd-Frank 954 Costs**.

15. **"Management Control"** shall mean:

    **a.** owning an interest of an entity representing more than fifty percent (50%) of the power to manage or control said entity, including the power to elect, appoint or designate a majority of the board of directors or equivalent executives of such entity; or

    **b.** having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an entity (including a limited liability company or joint venture), to elect, appoint or designate a majority of the board of directors or equivalent executives of such entity.

16. **"Outside Entity"** shall mean any not-for-profit entity classified as such by the Internal Revenue Code of 1986, or any for-profit entity, but only if the securities of such for-profit entity are neither publicly owned nor publicly traded or if such for-profit entity is specifically added as an **Outside Entity** by written endorsement to this Policy; provided such not-for-profit or for-profit entity is not otherwise a **Company**.

17. **"Parent Company"** shall mean the entity or organization identified in Item 1 of the Declarations.

18. "**Policy Period**" shall mean the period from the Inception Date of this Policy to the Expiration Date of this Policy as set forth in Item 3 of the Declarations (subject to its earlier cancellation in accordance with Section XIV Cancellation or Non-Renewal) and the Discovery Period, if applicable.

19. **"Pollutants"** shall mean any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on any list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof including, but not limited to, nuclear material or nuclear waste. Such substances shall include, without limitation, solids, liquids, gaseous, biological, radiological or thermal irritants, contaminants or smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals or waste materials and any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

20. **"Related Wrongful Acts"** shall mean all **Wrongful Acts** that are logically or causally connected by any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

21. **"Securities Claim"** shall mean a **Claim** for a **Wrongful Act** against an **Insured** which is:



    **a.** brought by any person or entity alleging, arising out of, based upon or attributable to, in part or in whole, the purchase or sale, or the offer or solicitation of an offer to purchase or sell, any securities of a **Company**; or

    **b.** brought by a security holder of the **Company** in their capacity as such, whether directly, by class action, or derivatively on behalf of the **Company**.

22. **"Security Holder Derivative Demand"** shall mean a written demand by one or more security holders of the **Company** upon the board of directors of the **Company** to bring a lawsuit against any **Insured Person** for a **Wrongful Act**.

23. **"Security Holder Derivative Demand Investigation Costs"** shall mean reasonable fees, costs and expenses incurred solely by the **Company** (including its board of directors or any committee of its board of directors) in connection with its investigation or evaluation on behalf of the **Company** of:

    **a.** a **Security Holder Derivative Demand**; or

    **b.** a lawsuit by a security holder of the **Company** brought derivatively on behalf of the **Company** against any **Insured Person** for a **Wrongful Act** without first making a demand as described in the definition of **Security Holder Derivative Demand**,

but it shall not include any salaries, wages, overhead, benefits or benefit expenses associated with any **Insured**.

24. **"SOX 304/Dodd-Frank 954 Costs"** shall mean the reasonable fees, costs and expenses (including the premium or origination fee for a loan or bond) incurred by an **Insured Person** to investigate or defend any **Claim** pursuant to, or to facilitate the return of amounts required to be repaid by such **Insured Person** pursuant to, Section 304(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Act of 2010 or any rules, regulations or policies pursuant to such sections.  **SOX 304/Dodd-Frank 954 Costs** do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Insured Person** pursuant to such sections, rules, regulations or policies.

25. **"Subsidiary"** shall mean any entity with respect to which the **Company** has **Management Control,** including any not-for-profit entity described in Section 501(c) of the Internal Revenue Code of 1986, as amended, sponsored exclusively by the **Company**.

26. **"Wrongful Act"** shall mean:

    **a.** any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by any **Insured Persons** in their capacity as such;

    **b.** any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by the **Company**, but only with respect to a **Securities Claim** under Insuring Agreement I.C.;

    **c.** any matter claimed against any **Insured Persons** solely by reason of their serving in such capacity or

    **d.** solely with respect to determining whether a securities holder derivative lawsuit which names any **Company** as a defendant (including as a "nominal" defendant) is a **Securities Claim** against said **Company** for purposes of Insuring Agreement I.C, any **Wrongful Act** of **Insured Persons** as described in subsection (a) above shall also be deemed to be a **Wrongful**



**Act** of said **Company**, provided, however, this provision shall not be deemed to create coverage for **Security Holder Derivative Demand Investigation Costs** under Insuring Agreement I.C. Any coverage for such costs is only available under Coverage Extension II.A.

**Section IV        Exclusions**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with that portion of any **Claim** made against any **Insured**:

**A.    Conduct**

based upon, arising out of, or relating to:

1. such **Insured** gaining any profit, financial advantage or remuneration that he, she or it was not legally entitled to receive; or

2. any deliberately fraudulent act or deliberately fraudulent omission or any intentional violation of any statute, rule or law by such **Insured**;

provided, however, that this exclusion shall only apply if a final and non-appealable adjudication adverse to such **Insured** in an underlying proceeding establishes
that such conduct occurred, and provided further that paragraph A.1) of this exclusion shall not apply to:

a) any **Securities Claim** alleging violation of Sections 11, 12 or 15 of the Securities Act of 1933, as amended; or

b) **SOX 304/Dodd-Frank 954 Costs.**

For purposes of determining the applicability of this Exclusion, the **Wrongful Acts** and knowledge of any **Insured Person** shall not be imputed to any other **Insured Person** and, solely with respect to payment of **Loss** under Insuring Agreement I.C, only the **Wrongful Acts** and knowledge of a **Company's** chief executive officer, chief financial officer, general counsel or their functional equivalents shall be imputed to such **Company** and its **Subsidiaries**.

**B.    Prior Notice**

based upon or arising out of any **Wrongful Act**, fact, circumstance or situation which has been the subject of any written notice given before the inception of the **Policy Period** under any directors and officers liability policy, provided the insurer of such policy does not reject such notice as invalid.

**C.    Bodily Injury/Property Damage**

for any actual or alleged;

1. bodily injury, mental anguish, emotional distress, sickness, disease, or death of any person; or

2. damage to or destruction of any tangible property, including the loss of use thereof;

provided, however, this exclusion shall not apply to (i) any **Securities Claim,** (ii) **Defense Costs** incurred as a result of a **Claim** against an **Insured Person** for violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any other jurisdiction, or (iii) claims for mental anguish or emotional distress brought by a current, prospective or former employee of a **Company** in an employment-related **Claim**.

**D.    Violation of Law**

1. for any actual or alleged violation of any of the responsibilities, obligations or duties imposed pursuant to the Employee Retirement Income Security Act of 1974, as amended, or any similar

federal, state, local or foreign statutory law or common law; provided, however, this paragraph shall only apply with respect to plans, programs and trusts established or maintained in whole or in part for the benefit of employees of the **Company**;

2. for any actual or alleged violation of the Fair Labor Standards Act, provided, however, this paragraph shall not apply to any **Securities Claim**, or

3. for any actual or alleged violation of any other federal, state, local or foreign law statutory or common governing wage, hour, labor, employment or payroll policies of any **Company** or **Outside Entity**, except that this paragraph shall not apply to any **Claim** under Insuring Agreement I.A, Coverage Extensions II.A or II.B(1) or any **Securities Claim**.

E. **Entity v. Insured Person**

brought or maintained by or on behalf of:

1. the **Company** against an **Insured Person**; or

2. an **Outside Entity** against an **Insured Person** serving in his or her capacity as such for said **Outside Entity**;

provided this Exclusion shall not apply to:

    i. **Defense Costs** covered under Insuring Agreement I.A or Coverage Extensions II.B(1);

    ii. any **Claim** against an **Insured Person** that is a derivative lawsuit brought and maintained on behalf of the **Company** or the **Outside Entity** without the active assistance or participation of more than one **Insured Person,** unless such assistance or participation is (a) solely pursuant to, or in compliance with, a subpoena or similar legal process, or (b) protected pursuant to Section 806 of the Sarbanes-Oxley Act of 2002 or any similar whistleblower statute;

    iii. any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency receiver, trustee, examiner, conservator, liquidator, rehabilitator or creditors' committee (or equivalent in a foreign jurisdiction) of the **Company** or the **Outside Entity**, or any assignee of any of the foregoing; or

    iv. any **Claim** brought and maintained outside any common law jurisdiction, including the United States of America.

**Section V    Limit of Liability**

A. **Defense Costs** shall be part of, and not in addition to, the Limits of Liability stated in Item 4 of the Declarations.  Such **Defense Costs** shall reduce the Limit of Liability.

B. The maximum liability of the **Insurer** for all **Loss** arising from all **Claims** combined shall be the amount stated in Item 4.A. of the Declarations.  The maximum liability of the **Insurer** for all **Derivative Demand Investigation Costs** combined under Coverage Extension II.A shall be the amount stated in Item 4.B. of the Declarations.  The amount stated in Item 4.B of the Declarations is a sublimit that is part of and not in addition to the aggregate Limit of Liability in Item 4.A. of the Declarations.

**Section VI    Retention**

A. The Retention specified in Item 5 of the Declarations shall apply to **Loss** resulting from each **Claim**, except that no Retention shall apply to **Loss** under Insuring Agreement I.A, Coverage Extension II.B(1) or to **Company Coverage for Derivative Demand Investigation Costs** under Coverage Extensions II.A.

www.bhspecialty.com



**B.**     The **Insurer's** liability with respect to covered **Loss** resulting from each **Claim** shall be excess of the applicable Retention specified in Item 5 of the Declarations.  The applicable Retention shall be borne by the **Company** uninsured under this policy, and shall apply to all covered **Loss**, including **Defense Costs**.

**C.**     If a **Company** refuses or fails within sixty (60) days after an **Insured Person's** request to indemnify or advance covered **Loss** or if a **Company** is unable to indemnify or advance covered **Loss** due to its **Financial Insolvency**, the **Insurer** shall pay such covered **Loss** without applying the applicable Retention.  If the **Insurer** pays under this Policy any **Loss** incurred by an **Insured Person** for which the **Company** is legally permitted or required and is financially able to advance or indemnify, then the **Company** shall reimburse the **Insurer** for such amounts up to the applicable Retention, and such amounts shall become due and payable as a direct obligation of the **Company** to the **Insurer**.

**Section VII**     **Related Claims**

More than one **Claim**, including any **Claim** that is an **Insured Person Inquiry**, involving the same **Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds**, or with respect to an **Insured Person Inquiry**, arising from the same or related facts or circumstances or series of causally or logically related facts or circumstances, shall be considered a single **Claim**, and only one Retention shall be applicable to such single **Claim**.  All such **Claims** constituting a single **Claim** shall be deemed to have been first made on the earlier of the following dates:  (1) the earliest date on which any such **Claim** was first made; or (2) the earliest date on which any such **Wrongful Act**, **Related Wrongful Act** or, with respect to an **Insured Person Inquiry**, such fact or circumstance, was reported under this Policy or any other policy providing similar coverage, regardless whether such date is before or during the **Policy Period**.  In no event shall a single lawsuit or proceeding constitute more than one **Claim** subject to more than one Retention.

**Section VIII**     **Defense and Settlement**

**A.   Defense of Claims**

**1.**     The **Insureds**, and not the **Insurer**, shall have the duty to defend all **Claims**.

**2.**     The **Insureds** shall not incur **Defense Costs** in connection with any **Claim** without the prior written consent of the **Insurer**, which consent shall not be unreasonably withheld or delayed.  The **Insurer** shall not be liable under this Policy for any **Defense Costs** incurred without such consent.

**3.**     The **Insurer** shall advance such **Defense Costs** on a current basis but no later than sixty (60) days after the **Insurer** receives itemized invoices for such **Defense Costs**; provided that to the extent it is finally established that any such **Defense Costs** are not covered under this Policy, the **Insureds**, severally according to their interests, shall repay such **Defense Costs** to the **Insurer**.

**B.   Settlement of Claims**

**1.**     The **Insureds** shall not admit liability, offer to settle, or agree to any settlement in connection with any **Claim** without the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld or delayed.  The **Insurer** shall not be liable under this Policy for **Loss** incurred as a result of any such admission, offer or agreement to which the **Insurer** did not so consent.

**2.**     Notwithstanding the preceding paragraph, the **Insureds** may settle all **Claims** subject to a single Retention without the **Insurer's** prior written consent if and only if the settlement amount plus **Defense Costs** for all such **Claims** do not exceed the applicable Retention.

**C.   Insurer's Right to Associate**



The **Insurer** shall at all times have the right, but not the duty, to associate with the **Insureds** in the investigation, defense or settlement of any **Claim** that may implicate coverage under this Policy. The **Insureds** shall cooperate with the **Insurer** and provide the **Insurer** with such information as it may reasonably require in the investigation, defense or settlement of any **Claim**. The failure of one **Insured Person** or **Company** to comply with this provision shall not impair the rights of any other **Insured Person** under this Policy.

**D. Allocation**

If in any **Claim** the **Insureds** incur **Loss** jointly with others (including other **Insureds**) who are not afforded coverage under this Policy for such **Claim** or incur both **Loss** covered by this Policy and other amounts which are not covered by this Policy, the **Insureds** and the **Insurer** shall allocate such amounts between covered **Loss** and uncovered loss based on the relative legal and financial exposures of the parties to covered and uncovered matters. If the **Insureds** and the **Insurer** cannot agree on an allocation of **Defense Costs**, the **Insurer** shall advance **Defense Costs** which the **Insurer** believes to be covered under this Policy until a different allocation is negotiated, arbitrated or judicially determined. In such event, such allocation shall be applied retroactively to all **Defense Costs**.

**Section IX    Notice**

**A. Claims**

The **Insureds** shall, as a condition precedent to their rights under this Policy with respect to a **Claim**, give the **Insurer** notice in writing of any such **Claim** which is made during the **Policy Period**, except that this section shall not apply to any **Insured Person Inquiry** that the **Insured** elects not to treat as a **Claim** pursuant to Section III(2)(g), above. Any notice provided pursuant to this section shall be given as soon as practicable after the risk manager or in-house general counsel of the **Parent Company** first learns of such **Claim**, but in no event later than sixty (60) days after the end of the **Policy Period**.

**B. Late Notice – Prejudice Required**

If the **Insureds** fail to provide timely notice to the **Insurer** as specified above, the **Insurer** shall not be entitled to deny coverage based solely upon late notice unless the **Insurer** can demonstrate its interests were materially prejudiced by reason of such late notice.

**C. Potential Claims**

During the **Policy Period** or the **Discovery Period** (if purchased), the **Insureds** may give written notice to the **Insurer** of circumstances that may reasonably be expected to give rise to a **Claim**; and

**1.** such notice shall set forth the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved;

**2.** any **Claim** which is subsequently made against such **Insured** alleging, arising out of, based upon or attributable to such circumstances, shall be considered made at the time notice of such circumstances was first given to the **Insurer**, and

**3.** notice of any such subsequent **Claim** shall be given to the **Insurer** as soon as practicable after the risk manager or in-house general counsel of the **Parent Company** first learns of such **Claim**. No coverage shall be provided under this Policy for fees, costs, expenses or other loss incurred as a result of such circumstances prior to the time such subsequent **Claim** is actually made.

**D.** Except as otherwise provided in this Policy, all notices under any provision of this Policy shall be in writing and given by email, prepaid express courier or certified mail properly addressed to the



appropriate party.  Notice to the **Insureds** may be given to the **Parent Company** at the address shown in Item 1 of the Declarations.  Notice to the **Insurer** shall be given to the respective address shown in Item 6 of the Declarations.  If notice is given as described above, it shall be deemed to be received and effective upon the date of transmittal, subject to proof of transmittal.

**Section X**    **Transactions:  Coverage Implications of Mergers, Acquisitions and Sales of the Company or any Subsidiary**

    **A.**    **Merger or Acquisition of Parent Company**

If during the **Policy Period** any of the following events occur:

    **1.**    the **Parent Company**:  (i) sells all or substantially all of its assets to any other person or entity or affiliated group of persons or entities, or (ii) merges or consolidates with another entity such that the **Parent Company** is not the surviving entity; or

    **2.**    any person, entity or affiliated group of persons or entities acquires **Management Control** of the **Parent Company**;

then coverage under this Policy shall continue until expiration of the **Policy Period**, but only for **Wrongful Acts** taking place prior to the effective date of such transaction.  The entire premium for this Policy shall be deemed earned as of the date of such transaction.

    **B.**    **Acquisition of a Subsidiary**

    **1.**    Except as set forth in the following paragraph (B)(2),  if before or during the **Policy Period** any entity qualifies as a **Subsidiary**, then such **Subsidiary** and its **Insured Persons** shall be **Insureds**, but only with respect to **Wrongful Acts** occurring or allegedly occurring after such entity qualified as a **Subsidiary**.

    **2.**    If an entity first qualifies as a **Subsidiary** during the **Policy Period** and if at that time such **Subsidiary's**  total assets exceed twenty-five percent (25%) of the total consolidated assets of the **Parent Company** as set forth in the **Parent Company's** most recent audited consolidated financial statements, then coverage under this Policy for such **Subsidiary** and its **Insured Persons** as set forth in the preceding paragraph shall cease ninety (90) days after such entity first qualifies as a **Subsidiary** unless:

    **a)**    the **Company** within such ninety (90) days provides the **Insurer** with written notice of such creation or acquisition;

    **b)**    the **Company** and the **Insurer** agree on any revisions to the Policy either party may require; and

    **c)**    the **Company** pays any additional premium required by the **Insurer** as a result of the addition of the new **Subsidiary.**

    **C.**    **Cessation of a Subsidiary**

If during or prior to the **Policy Period** any entity ceases to be a **Subsidiary**, then coverage for such former **Subsidiary** and its **Insured Persons** under this Policy shall only be available, subject to all other terms and conditions of this Policy, for **Wrongful Acts** occurring or allegedly occurring prior to the date it ceased to qualify as a **Subsidiary**.

**Section XI**    **Indemnification, Other Insurance and Subrogation**

    **A.**    **Indemnification of Insured Persons**

www.bhspecialty.com



The **Company** agrees to indemnify the **Insured Persons**, including the advancement of **Defense Costs** incurred by **Insured Persons**, to the fullest extent permitted by law.

**B.    Other Insurance**

**1.**    All amounts payable under this Policy will be specifically excess of, and will not contribute with, any other valid and collectible insurance, including but not limited to any insurance under which there is a duty to defend or any employment practices liability insurance, unless such other insurance is specifically excess of this Policy; provided this Policy shall apply on a primary basis with respect to any personal umbrella excess liability insurance policy purchased by an **Insured Person**.  This Policy will not be subject to the terms of any other insurance policy.

**2.**    In the event a **Claim** is made against any **Insured Persons** in their capacity as such for an **Outside Entity**, coverage otherwise afforded under this Policy shall be excess of any indemnification provided by the **Outside Entity** and any insurance maintained by the **Outside Entity** which covers its directors, officers, trustees or other equivalent executives.

**C.    Subrogation**

**1.**    In the event of any payment under this Policy, the **Insurer** shall be subrogated to all of the **Insureds'** rights of recovery and the **Company** and **Insured Persons** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents as may be necessary to enable the **Insurer** to effectively bring suit in the name of any **Insured Persons** or the **Company**.  The **Insurer** shall not exercise any available right of subrogation against an **Insured Person** under this Policy unless Exclusion IV.A. applies to such **Insured Person**.

**2.**    In the event the **Insurer** recovers amounts it paid under this Policy, the **Insurer** will reinstate the applicable Limits of Liability of this Policy to the extent of such recovery, less the **Insurer's** costs incurred in obtaining such recovery.  The **Insurer** assumes no duty to seek a recovery of any amounts paid under this Policy.

**Section XII    Order of Payments**

**A.**    The **Insurer** shall be entitled to pay **Loss** as it becomes due and payable under this Policy without consideration of other future payment obligations.

**B.**    In the event **Loss** under Insuring Agreement I.A or Coverage Extensions II.B(1) and any other **Loss** become due and payable concurrently, the **Insurer** shall pay, subject to the Limit of Liability, **Loss** covered under Insuring Agreement I.A or Coverage Extensions II.B(1) first before paying any other **Loss**.

**C.**    The bankruptcy or insolvency of any **Insured** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this Policy as set forth above.

**Section XIII    Discovery Period**

**A.**    In the event the **Insurer** refuses to renew this Policy or the **Company** cancels or non-renews this Policy, the **Company** and the I**nsured Persons** shall have the right to elect an extension of the coverage provided by this Policy for the time period and subject to the additional premium set forth in Item 7 of the Declarations.  Coverage for any **Claim** deemed first made during the Discovery Period shall apply only with respect to any **Wrongful Act** committed or alleged to have been committed before the end of the **Policy Period**.

www.bhspecialty.com



**B.** As a condition precedent to the right to purchase the Discovery Period, the total premium for this Policy must have been paid and a written request to elect the Discovery Period, together with payment of the additional premium for the Discovery Period, must be provided to the **Insurer** no later than sixty (60) days following the effective date of such non-renewal or cancellation. The premium paid for the Discovery Period is deemed fully earned at the inception of the Discovery Period.

**C.** The fact that the coverage provided by this Policy may be extended by virtue of the purchase of the Discovery Period shall not in any way increase the Limit of Liability stated in Item 4 of the Declarations. For purposes of the Limit of Liability, the Discovery Period is considered to be part of, and not in addition to, the **Policy Period**.

**Section XIV    Cancellation or Non-Renewal**

**A.** This Policy may be cancelled by the **Company** at any time by prior written notice to the **Insurer** stating the effective time of such cancellation. Upon cancellation, the **Insurer** shall be entitled to retain the *pro rata* proportion of the premium calculated from the effective date of such cancellation, unless Section X.A, above, applies, in which case the entire premium for this Policy shall be deemed fully earned.

**B.** This Policy may be cancelled by the **Insurer** only for nonpayment of premium. Such cancellation shall be effective on the date specified in the written notice of cancellation given by the **Insurer** to the **Parent Company**, provided such date is at least ten (10) days after the date such notice is given. If the **Parent Company** pays in full the premium due prior to such effective date, the **Insurer's** notice of cancellation shall be ineffective.

**C.** If the **Insurer** elects not to renew this Policy, the **Insurer** shall provide the **Parent Company** with no less than sixty (60) days advance written notice thereof.

**Section XV    Application**

**A.** The **Insureds** represent and acknowledge that statements made and information in the **Application** are accurate and complete, are the basis of this Policy and are incorporated in and constitute part of this Policy. The **Application** shall be construed as a separate **Application** for each **Insured**.

**B.** With respect to any statements or other information provided in the **Application**, the knowledge possessed by any one **Insured Person** shall not be imputed to any other **Insured Person.**

**C.** If any statement in the **Application** was (i) not accurate and complete and (ii) either was made with the intent to deceive or materially affected the acceptance of the risk or hazard assumed by the **Insurer** under this Policy, then the **Insurer** shall not be liable to make any payment for **Loss** in connection with that portion of any **Claim** based upon, arising out of or in consequence of the facts that were not accurately and completely disclosed in the **Application**, to the extent such **Loss** is incurred by:

  **1.** an **Insured Person** who knew, prior to the **Policy Period**, the facts that were not accurately and completely disclosed in the **Application** if prior to the **Policy Period** a reasonable person would have believed such facts were likely to give rise to a **Claim**; or

  **2.** any **Company**, if its chief executive officer, chief financial officer or functional equivalent official knew, prior to the **Policy Period**, the facts that were not accurately and completely disclosed in the **Application** if prior to the **Policy Period** a reasonable person would have believed such facts were likely to give rise to a **Claim**,



whether or not such **Insured Person** or official knew the **Application** contained such inaccurate and incomplete information.

**D.**     To the extent the **Insurer** asserts that any **Loss** is not covered pursuant to Section C, above, the **Insured** which incurred such **Loss** or the **Company** which paid such **Loss**, to the extent the **Loss** would attach to Insuring Agreement I.B or Coverage Extension II.B(2), shall be entitled to a judicial determination of whether Section C, above, applies to such **Loss**.  Section XVI, Dispute Resolution Process, shall not apply to any dispute arising out of Section C, above.  If any **Insured** seeking a judicial determination pursuant to this section prevails, the fees and costs incurred by such **Insured** in connection with the judicial determination shall be paid by the **Insurer** within 30 days of a final judgment.

**E.**     The **Insurer** shall not be entitled under any circumstances to rescind or void this Policy in whole or in part.

**Section XVI     Dispute Resolution Process**

The **Insurer** and the **Insureds** shall attempt in good faith to resolve any dispute arising out of or relating to this Policy promptly by negotiation between executives with authority to settle such dispute.  If any dispute cannot be resolved through negotiation, the parties agree that they will submit the dispute to non-binding mediation.  The parties will use best efforts to agree on the terms of any such mediation process, but if they do not agree within thirty (30) days of either party requesting mediation, the dispute will be submitted to JAMS for mediation.  Each party will bear their own costs, regardless of the mediation process used.  If the dispute is not settled at mediation, no party may commence an action against any other party until at least thirty (30) days after the final mediation session.

**Section XVII     Action Against the Insurer**

**A.**     No action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy.

**B.**     No person or organization shall have any right under this Policy to join the **Insurer** as a party to any **Claim** against an **Insured**, nor shall the **Insurer** be impleaded by any **Insured** or their legal representative in any such **Claim**.

**Section XVIII     Spouses, Domestic Partners, Estates and Legal Representatives**

**A.**     The coverage provided by this Policy shall also apply to an **Insured Person's** lawful spouse or domestic partner under applicable law or the provisions of any formal program established by the **Company**, but only for a **Claim** arising out of any actual or alleged **Wrongful Acts** of such **Insured Person**.

**B.**     The coverage provided by this Policy also shall apply to the estates, heirs, legal representatives or assigns of any **Insured Person** in the event of their death, incapacity or bankruptcy, but only for **Claims** arising out of any actual or alleged **Wrongful Acts** of such **Insured Person.**

**Section XIX     Assignment**

This Policy and any and all rights hereunder are not assignable without the prior written consent of the **Insurer**, which consent shall be in the sole and absolute discretion of the **Insurer**.

**Section XX     Conformity to Statute**

Any terms of this Policy which are in conflict with the terms of any applicable laws are hereby amended to conform to such laws.



**Section XXI    Territory and Loss in Foreign Jurisdictions**

**A.    Worldwide Territory**

Coverage shall apply to **Claims** made and **Wrongful Acts** committed worldwide.

**B.    Liberalization Clause for Claims in Foreign Jurisdictions**

If permitted by applicable law, when determining coverage under this Policy for **Loss** from that portion of any **Claim** maintained in a **Foreign Jurisdiction** or to which the law of a **Foreign Jurisdiction** is applied, the **Insurer** shall apply to such **Claim** the terms and conditions of this Policy, as amended to include the terms and conditions of the **Foreign Policy** in such **Foreign Jurisdiction** that are more favorable to **Insureds** in the **Foreign Jurisdiction**.  However, this paragraph shall not apply to:  (i) any provision of any **Foreign Policy** addressing limits of liability, retentions, other insurance, non-renewal, duty to defend, defense within or without limits, taxes, conformance to law or excess liability coverage, or any claims made provisions, and (ii) any provision in this Policy that excludes or limits coverage for specific events or litigation.

**C.    Loss Incurred By a Company in a Foreign Jurisdiction**

Any **Loss** incurred by a **Company** in a **Foreign Jurisdiction** may be deemed a **Loss** of the **Parent Company** payable to the **Parent Company** at the address listed at Item 1 of the Declarations.  Any such payment by the **Insurer** to the **Parent Company** pursuant to this paragraph shall fully discharge the **Insurer's** liability under the Policy for such **Loss** to such **Company.**

**D.    Side A Loss in a Foreign Jurisdiction**

Any **Loss** incurred by an **Insured Person** under Insuring Agreement I.A or Coverage Extensions II.B(1) in a **Foreign Jurisdiction** shall, to the extent permissible under applicable law, be paid to such **Insured Person** in a jurisdiction mutually acceptable to such **Insured Person** and the **Insurer.**

**Section XXII    Compliance with Applicable Trade and Economic Sanction Laws**

This Policy does not provide coverage that would be in violation of the laws or regulations of the European Union, United Kingdom or  United States of America concerning trade or economic sanctions, including, but not limited to, those administered and enforced by the or U.S. Treasury's Office of Foreign Asset Control (OFAC).  Payment of **Loss** under this Policy shall only be made in full and complete compliance with all economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by OFAC.

**Section XXIII    Currency**

All premiums, limits, retentions, **Loss** and other amounts under this Policy are and shall be expressed and payable in the currency of the United States of America.  If any covered **Loss**, including judgments or settlements, is expressed in, calculated on or otherwise based upon any other currency, payment of such **Loss**, whether in such other currency or U.S. dollars, shall be made at the rate of exchange published in *The Wall Street Journal* on the date the **Insurer's** obligation to pay such **Loss** is established (or, if not published on that date, on the date of next publication).

**Section XXIV    Bankruptcy**

Bankruptcy or insolvency of the **Company,** any **Subsidiary** or any **Insured Persons** shall not relieve the **Insurer** of any of its obligations under this Policy.  In such event the **Insureds** hereby waive and release any automatic stay or injunction in such proceeding which may apply to this Policy or its proceeds and agree not to oppose or object to any efforts by the **Insurer** or any **Insureds** to obtain relief from any such stay or injunction.



**Section XXV    Headings**

> The descriptions in the headings of this Policy form no part of the terms and conditions of the coverage under this Policy.

**Section XXVI    Entire Agreement**

> By acceptance of this Policy, all **Insureds** and the **Insurer** agree that this Policy (including the Declarations and **Application**) and any written endorsements attached hereto constitute the entire agreement between the parties.  The terms, conditions and limitations of this Policy can be waived or changed only by written endorsement hereto.

**Section XXVII Authorization**

By acceptance of this Policy, the **Parent Company** agrees to act on behalf of all **Insureds** with respect to the giving and receiving of any notice provide for in this Policy (except the giving of notice to apply for any Discovery Period), the payment of premiums and the receipt of any return premiums that may become due under this Policy, and the agreement to and acceptance of endorsements, and the **Insureds** agree that the **Parent Company** shall act on their behalf.





**ENDORSEMENT 1**

This endorsement, effective 12:01AM: **June 01, 2024**
Forms a part of Policy No.: **47-EPC-150195-11**
Issued to: **Big Lots Inc**
By: **Berkshire Hathaway Specialty Insurance Company**

## AMEND DEFINITION OF INSURED PERSON INQUIRY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that Section **III DEFINITIONS**, **12.** is deleted in its entirety and replaced with the following:

12.   **"Insured Person Inquiry"** shall mean a written request made upon an **Insured Person** for an interview, a meeting, sworn testimony or the production of documents from:

    **a.**   an **Enforcement Authority**  in connection with either (i) the business of a **Company** or (ii) such **Insured Person** in his or her capacity as such; or

    **b.**   a **Company** (including its board of directors or any committee of its board of directors) in connection with either (i) an investigation of a **Company** by an **Enforcement Authority** or (ii) a **Security Holder Derivative Demand**;

    provided that an **Insured Person Inquiry** shall not include any request by an **Enforcement Authority** that is part of a routine or regularly scheduled audit, inspection or general oversight or compliance activity.

All other terms and conditions of this policy remain unchanged.



**ENDORSEMENT 2**

This endorsement, effective 12:01AM:  **June 01, 2024**
Forms a part of Policy No.:  **47-EPC-150195-11**
Issued to:  **Big Lots Inc**
By:  **Berkshire Hathaway Specialty Insurance Company**

## AMEND NOTICE OF CLAIMS

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that Section **IX NOTICE**, **A. Claims**, is deleted in its entirety and replaced with the following:

The **Insureds** shall, as a condition precedent to their rights under this Policy with respect to a **Claim**, give the **Insurer** notice in writing of any such **Claim** which is made during the **Policy Period**, except that this section shall not apply to any **Insured Person Inquiry** that the **Insured** elects not to treat as a **Claim** pursuant to Section **III DEFINITIONS**, **2. g**. Any notice provided pursuant to this section shall be given as soon as practicable after the risk manager or in-house general counsel  of the **Parent Company** first learns of such **Claim**, but in no event later than 90 days after the end of the **Policy Period**.

All other terms and conditions of this policy remain unchanged.



**ENDORSEMENT 3**

This endorsement, effective 12:01AM:   **June 01, 2024**
Forms a part of Policy No.:   **47-EPC-150195-11**
Issued to:   **Big Lots Inc**
By:   **Berkshire Hathaway Specialty Insurance Company**

## AMEND SUBROGATION CLAUSE

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that Section **XI INDEMNIFICATION, OTHER INSURANCE AND SUBROGATION C. 1**., is deleted in its entirety and replaced with the following:

1) In the event of any payment under this Policy, the **Insurer** shall be subrogated to all of the **Insureds'** rights of recovery and the **Company** and **Insured Persons** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents as may be necessary to enable the **Insurer** to effectively bring suit in the name of any **Insured Persons** or the **Company**. The **Insurer** shall not exercise any available right of subrogation against an **Insured Person** under this Policy. The failure of one **Insured Person** or **Company** to comply with this provision shall not impair the rights of any other **Insured Person** under this Policy.

All other terms and conditions of this policy remain unchanged.



**Berkshire Hathaway Specialty Insurance**

## ENDORSEMENT 4

| | |
|---|---|
| This endorsement, effective 12:01AM: | **June 01, 2024** |
| Forms a part of Policy No.: | **47-EPC-150195-11** |
| Issued to: | **Big Lots Inc** |
| By: | **Berkshire Hathaway Specialty Insurance Company** |

# AMEND SECTION X, TRANSACTIONS: COVERAGE IMPLICATIONS OF MERGERS, ACQUISITIONS AND SALES OF THE COMPANY OR ANY SUBSIDIARY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that **SECTION X TRANSACTIONS: COVERAGE IMPLICATIONS OF MERGERS, ACQUISITIONS AND SALES OF THE COMPANY OR ANY SUBSIDIARY** is deleted in its entirety and replaced with the following:

**Section X**     **TRANSACTIONS:  COVERAGE IMPLICATIONS OF MERGERS, ACQUISITIONS AND SALES OF THE COMPANY OR ANY SUBSIDIARY**

    **A.**     **Merger or Acquisition of Parent Company**

       If during the **Policy Period** any of the following events occur:

       **1.** the **Parent Company**:  (i) sells all or substantially all of its assets to any other person or entity or affiliated group of persons or entities, or (ii) merges or consolidates with another entity such that the **Parent Company** is not the surviving entity; or

       **2.** any person, entity or affiliated group of persons or entities acquires **Management Control** of the **Parent Company**;

       then coverage under this Policy shall continue until expiration of the **Policy Period**, but only for:

          **a.**     **Wrongful Acts**; or

          **b.**     solely with respect to an **Insured Person Inquiry**, such facts or circumstances;



taking place prior to the effective date of such transaction.  The entire premium for this Policy shall be deemed earned as of the date of such transaction

**B.**     **Acquisition of a Subsidiary**

**1.** Except as set forth in the following paragraph **B.2)**,  if before or during the **Policy Period** any entity qualifies as a **Subsidiary**, then such **Subsidiary** and its **Insured Persons** shall be **Insureds**, but only with respect to:

    **a.**   **Wrongful Acts;** or

    **b.**  solely with respect to an **Insured Person Inquiry**, such facts or circumstances;

occurring or allegedly occurring after such entity qualified as a **Subsidiary**.

**2.** If an entity first qualifies as a **Subsidiary** during the **Policy Period** and if at that time such **Subsidiary's** total assets exceed twenty-five percent (25%) of the total consolidated assets of the **Parent Company** as set forth in the **Parent Company's** most recent audited consolidated financial statements, then coverage under this Policy for such **Subsidiary** and its **Insured Persons** as set forth in the preceding paragraph shall cease ninety (90) days after such entity first qualifies as a **Subsidiary** unless:

    **a.** the **Company** within such ninety (90) days provides the **Insurer** with written notice of such creation or acquisition;

    **b.** the **Company** and the **Insurer** agree on any revisions to the Policy either party may require; and

    **c.** the **Company** pays any additional premium required by the **Insurer** as a result of the addition of the new **Subsidiary.**

**C.**     **Cessation of a Subsidiary**

If during or prior to the **Policy Period** any entity ceases to be a **Subsidiary**, then coverage for such former **Subsidiary** and its **Insured Persons** under this Policy shall only be available, subject to all other terms and conditions of this Policy, for:

**a.** **Wrongful Acts;** or

**b.** solely with respect to an **Insured Person Inquiry**, such facts or circumstances;

occurring or allegedly occurring prior to the date it ceased to qualify as a **Subsidiary**.

All other terms and conditions of this policy remain unchanged.

www.bhspecialty.com





**ENDORSEMENT 5**

| | |
|---|---|
| This endorsement, effective 12:01AM: | **June 01, 2024** |
| Forms a part of Policy No.: | **47-EPC-150195-11** |
| Issued to: | **Big Lots Inc** |
| By: | **Berkshire Hathaway Specialty Insurance Company** |

## DELETE DISPUTE RESOLUTION PROCESS

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that Section **XVI, DISPUTE RESOLUTION PROCESS**, is deleted in its entirety.

All other terms and conditions of this policy remain unchanged.





**ENDORSEMENT 6**

This endorsement, effective 12:01AM:     **June 01, 2024**
Forms a part of Policy No.:     **47-EPC-150195-11**
Issued to:     **Big Lots Inc**
By:     **Berkshire Hathaway Specialty Insurance Company**

## PRICE IMPACT EVENT STUDY

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that Section **VI RETENTION**, **A.** is amended to add the following sentence at the end thereof:

> Furthermore, with respect to a **Securities Claim,** no Retention as specified in Item **5** of the Declarations shall apply to expert witness **Defense Costs** incurred solely in the preparation of an event study in order to rebut price impact evidence at the class certification stage of such **Securities Claim.**

All other terms and conditions of this policy remain unchanged.

**ENDORSEMENT 7**

This endorsement, effective 12:01AM:  **June 01, 2024**
Forms a part of Policy No.:  **47-EPC-150195-11**
Issued to:  **Big Lots Inc**
By:  **Berkshire Hathaway Specialty Insurance Company**

## AMEND APPLICATION SECTION

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that **Section XV Application** is deleted in its entirety and replaced with the following:

Section XV    Application

**A.**    The **Insureds** represent and acknowledge that statements and information contained in the **Application** are accurate and complete, are the basis of this Policy and are incorporated in and constitute part of this Policy. The **Application** shall be construed as a separate **Application** for each **Insured**.

**B.**    With respect to any statements or other information provided in the **Application**, the knowledge possessed by any one **Insured** shall not be imputed to any other **Insured Person.**

**C.**    If any statement in the **Application** was (i) not accurate and complete, (ii) was made with the intent to deceive, and (iii) materially affected the acceptance of the risk or hazard assumed by the **Insurer** under this Policy, then the **Insurer** may void overage under this Policy *ab initio* as to:

1)    any **Company** under Insuring Agreement I.B in the event it indemnifies an **Insured Person** who knew, prior to the **Policy Period**, the facts that were not accurately and completely disclosed in the **Application**; or

2)    any **Company** under Insuring Agreement I.C if its **Parent Company** chief executive officer, chief financial officer or functional equivalent official knew, prior to the **Policy Period**, the facts that were not accurately and completely disclosed in the **Application**,

whether or not such **Insured Person** or official knew the **Application** contained such inaccurate and incomplete information.

**D.**    The **Insurer** shall not be entitled under any circumstances to rescind or void, in whole or in part, coverage under Insuring Agreement I.A or Coverage Extension II.B(1).

All other terms and conditions of this policy remain unchanged.

**ENDORSEMENT 8**

This endorsement, effective 12:01AM: **June 01, 2024**
Forms a part of Policy No.: **47-EPC-150195-11**
Issued to: **Big Lots Inc**
By: **Berkshire Hathaway Specialty Insurance Company**

## BODILY INJURY/PROPERTY DAMAGE EXCLUSION AMENDED (SIDE A CARVEBACK)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that **Section IV Exclusions** is amended by deleting paragraph **C. Bodily Injury/Property Damage** in its entirety and replacing it with the following:

C. **Bodily Injury/Property Damage**

   for any actual or alleged;

   1.  bodily injury, mental anguish, emotional distress, sickness, disease, or death of any person; or

   2.  damage to or destruction of any tangible property, including the loss of use thereof; provided, however, this exclusion shall not apply to:
       (i)   any **Securities Claim**;
       (ii)  **Defense Costs** incurred as a result of a **Claim** against an **Insured Person** for violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any other jurisdiction;
       (iii) claims for mental anguish or emotional distress brought by a current, prospective or former employee of a **Company** in an employment-related **Claim**; or
       (iv)  any **Claim** under **Section I Insuring Agreement, I.A** or  **Section II Coverage Extensions, II.B.1**.

All other terms and conditions of this Policy remain unchanged.

**ENDORSEMENT 9**

This endorsement, effective 12:01AM:     **June 01, 2024**
Forms a part of Policy No.:     **47-EPC-150195-11**
Issued to:     **Big Lots Inc**
By:     **Berkshire Hathaway Specialty Insurance Company**

## BOOKS AND RECORDS EXTENSION
## (WITH SUBLIMIT, NO RETENTION)
### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that the Policy is amended as follows:

1. Subject to all other terms, conditions and exclusions of this policy, the **Insurer** shall pay on behalf of the **Company** all **Books and Records Costs** as a result of a **Books and Records Demand** first made during the **Policy Period** and reported to the **Insurer** as required by this Policy.

2. For purposes of this endorsement, the definition of "**Claim**" shall be amended to include a **Books and Records Demand** and the definition of "**Defense Costs**" shall be amended to include **Books and Records Costs**.

3. For purposes of this endorsement, the following terms shall have the following meanings:

   "**Books and Records Costs**" shall mean the reasonable and necessary fees, costs and expenses incurred solely by the **Company** in responding to a **Books and Records Demand.**

4. "Books and Records Demand" shall mean a written demand by or on behalf of any security holder of the **Company** to inspect the books and records of such **Company** pursuant to Section 220 of the Delaware General Corporation Law or any similar statute in any other jurisdiction.

5. Notwithstanding anything in the policy to the contrary, there shall be no Retention applicable to **Books and Records Costs**.

6. Notwithstanding anything in the policy to the contrary, all **Books and Records Costs** shall be subject to an aggregate sublimit of liability of $250,000, which amount shall be part of, and not in addition to, the Sublimit of Liability for all **Security Holder Derivative Demand Investigation Costs** as set forth in **Item 4.B** of the Declarations.

All other terms and conditions of this policy remain unchanged.

**ENDORSEMENT 10**

This endorsement, effective 12:01AM: **June 01, 2024**
Forms a part of Policy No.: **47-EPC-150195-11**
Issued to: **Big Lots Inc**
By: **Berkshire Hathaway Specialty Insurance Company**

## INSURED PERSON DEFINITION AMENDED
## (AUDIT COMMITTEE MEMBER)
**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that in **Section III Definitions**, paragraph **11. "Insured Person"**, subparagraph **b.** is in its entirety and replaced with the following:

**b.** a manager, member of any board of managers, audit committee member or the equivalent executive of a **Company** that is a limited liability company or a joint venture;

All other terms and conditions of this policy remain unchanged.

**ENDORSEMENT 11**

This endorsement, effective 12:01AM: **June 01, 2024**
Forms a part of Policy No.: **47-EPC-150195-11**
Issued to: **Big Lots Inc**
By: **Berkshire Hathaway Specialty Insurance Company**

## PRIOR NOTICE EXCLUSION AMENDED
## (DIRECT OR INDIRECT RENEWAL OR REPLACEMENT)
**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that **Section IV Exclusions** is amended by deleting paragraph **B.** Prior Notice in its entirety and replacing it with the following:

**B. Prior Notice**

based upon or arising out of any **Wrongful Act**, fact, circumstance or situation which has been the subject of any written notice given before the inception of the **Policy Period** under any directors and officers liability policy of which this Policy is a direct or indirect renewal or replacement, provided the insurer of such policy does not reject such notice as invalid.

All other terms and conditions of this Policy remain unchanged.

**ENDORSEMENT 12**

This endorsement, effective 12:01AM:  **June 01, 2024**
Forms a part of Policy No.:  **47-EPC-150195-11**
Issued to:  **Big Lots Inc**
By:  **Berkshire Hathaway Specialty Insurance Company**

## WRONGFUL ACT DEFINITION AMENDED (DELETE SOLELY)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that **Section III Definitions**, **26. Wrongful Act** is amended by deleting paragraph **c.** thereof in its entirety and replacing it with the following:

**c.**    any matter claimed against any **Insured Persons** by reason of their serving in such capacity; or

All other terms and conditions of this Policy remain unchanged.

**ENDORSEMENT 13**


This endorsement, effective 12:01AM:     **June 01, 2024**
Forms a part of Policy No.:     **47-EPC-150195-11**
Issued to:     **Big Lots Inc**
By:     **Berkshire Hathaway Specialty Insurance Company**

## RETENTION PROVISION AMENDED
## (RECOGNIZE EROSION BY DIC POLICY)
**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**


**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that in Section **VI. Retention**, paragraph **B.** is deleted in its entirety and replaced with the following:

B.     The **Insurer's** liability with respect to covered **Loss** resulting from each **Claim** shall be excess of the applicable Retention specified in Item 5 of the Declarations. The applicable Retention shall be borne by the **Company** uninsured under this policy, and shall apply to all covered **Loss**, including **Defense Costs**. Provided, however, the **Insurer** shall recognize erosion of the Retention for a **Claim** under **Insuring Agreement B. Side B Coverage: Company Indemnification of Insured Persons Loss** by coverage afforded under any Side A Excess/Difference in Conditions policy applicable to such **Claim**.


All other terms and conditions of this policy remain unchanged.

**ENDORSEMENT 14**

This endorsement, effective 12:01AM: **June 01, 2024**
Forms a part of Policy No.: **47-EPC-150195-11**
Issued to: **Big Lots Inc**
By: **Berkshire Hathaway Specialty Insurance Company**

## AMEND DEFINITION OF INSURED PERSONS (EMPLOYEE AS ODL)

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that in **Section III. Definitions**, paragraph **11. "Insured Person**", subparagraph **d**. is deleted in its entirety and replaced with the following:

**d.** an individual described in subsections (a), (b), or (c) above, or any other employee of the **Company,** while serving at the specific direction or request of the **Company** in a position functionally equivalent to those described in subsections (a), (b), or (c) above for an **Outside Entity**; or

All other terms and conditions of this policy remain unchanged.

**ENDORSEMENT 15**

This endorsement, effective 12:01AM:  **June 01, 2024**
Forms a part of Policy No.:  **47-EPC-150195-11**
Issued to:  **Big Lots Inc**
By:  **Berkshire Hathaway Specialty Insurance Company**

## FINANCIAL INSOLVENCY DEFINITION AMENDED

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that **Section III**, paragraph **7. "Financial Insolvency"** is deleted in its entirety and replaced with the following:

7.  **"Financial Insolvency"** shall mean a **Company** becoming a debtor in possession (as defined under U.S. bankruptcy law or equivalent foreign law), or the appointment, pursuant to state or federal law, of a receiver, conservator, liquidator, trustee, rehabilitator or other official to control, supervise, manage or liquidate a **Company**.

All other terms and conditions of this policy remain unchanged.

**ENDORSEMENT 16**

This endorsement, effective 12:01AM:  **June 01, 2024**
Forms a part of Policy No.:  **47-EPC-150195-11**
Issued to:  **Big Lots Inc**
By:  **Berkshire Hathaway Specialty Insurance Company**

## AMEND DEFINITION OF APPLICATION (REMOVE WRITTEN MATERIALS)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that in **Section III Definitions**, paragraph **1. "Application"** is deleted in its entirety and replaced with the following:

1. **"Application"** shall mean the application submitted to the **Insurer** in connection with the underwriting of this Policy. **Application** shall also include all publicly available documents filed by the **Company** with the Securities and Exchange Commission during the twelve (12) months preceding the effective date of this Policy.

All other terms and conditions of this policy remain unchanged.

**ENDORSEMENT 17**

This endorsement, effective 12:01AM: **June 01, 2024**
Forms a part of Policy No.: **47-EPC-150195-11**
Issued to: **Big Lots Inc**
By: **Berkshire Hathaway Specialty Insurance Company**

## DEFENSE AND SETTLEMENT PROVISION AMENDED (ADD FINAL ADJUDICATION)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that Section **VIII Defense and Settlement, A. Defense of Claims** subparagraph **3.** is amended as follows:

**3.** The **Insurer** shall advance such **Defense Costs** on a current basis but no later than sixty (60) days after the **Insurer** receives itemized invoices for such **Defense Costs**; provided that to the extent it is finally established by a final, non-appealable adjudication that any such **Defense Costs** are not covered under this Policy, the **Insureds**, severally according to their interests, shall repay such **Defense Costs** to the **Insurer**.

All other terms and conditions of this policy remain unchanged.

**ENDORSEMENT 18**

This endorsement, effective 12:01AM: **June 01, 2024**
Forms a part of Policy No.: **47-EPC-150195-11**
Issued to: **Big Lots Inc**
By: **Berkshire Hathaway Specialty Insurance Company**

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM
### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Calendar Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.   The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms and conditions of this policy remain unchanged.

## ENDORSEMENT  19

This endorsement, effective 12:01AM: **June 01, 2024**
Forms a part of Policy No.: **47-EPC-150195-11**
Issued to: **Big Lots Inc**
By: **Berkshire Hathaway Specialty Insurance Company**

## CLAIM DEFINITION AMENDED
## (TOLL OR WAIVE STATUTE OF LIMITATIONS, OTHER ADR)
### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that in **Section III Definitions**, paragraph **2. "Claim"**, subparagraph **a.** is in its entirety and replaced with the following:

    **a.**    a written demand against an **Insured** (other than a **Security Holder Derivative Demand**):

        **i.**    for monetary or non-monetary (including injunctive) relief, including a request to toll or waive any statute of limitations, or

        **ii.**    to engage in arbitration, mediation or other alternative dispute resolution process, which shall be deemed first made upon receipt by the **Insured** of such demand;

All other terms and conditions of this policy remain unchanged.

**ENDORSEMENT 20**

This endorsement, effective 12:01AM: **June 01, 2024**
Forms a part of Policy No.: **47-EPC-150195-11**
Issued to: **Big Lots Inc**
By: **Berkshire Hathaway Specialty Insurance Company**

## SECURITIES CLAIM DEFINITION
## (AIDING AND ABETTING)
### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that in **Section III Definitions**, paragraph **21. "Securities Claim"** is amended to include the following at the end thereof:

"**Securities Claim**" shall also mean a **Claim,** as defined in subparagraph. **a.** or **b**. of that definition against a **Company** that is brought by a security holder of another entity alleging that the **Company** aided and abetted such other entity's duly elected or appointed directors' and officers' alleged breach of fiduciary duty in connection with the acquisition or completion of the acquisition of any ownership interest in or assets of such other entity by the **Company** for a price or consideration paid, or proposed to be paid, that is inadequate.

All other terms and conditions of this policy remain unchanged.

**ENDORSEMENT 21**

This endorsement, effective 12:01AM:  **June 01, 2024**
Forms a part of Policy No.:  **47-EPC-150195-11**
Issued to:  **Big Lots Inc**
By:  **Berkshire Hathaway Specialty Insurance Company**

## CONDUCT EXCLUSION AMENDED

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that in **Section IV Exclusion**, paragraph **A. Conduct** is deleted in its entirety and replaced with the following:

**A.    Conduct**

based upon, arising out of, or relating to:

**1.**  such **Insured** gaining any personal profit, financial advantage or remuneration that he, she or it was not legally entitled to receive; or

**2.**  any deliberately fraudulent act or deliberately fraudulent omission or any deliberately criminal act or deliberately criminal omission by such **Insured**;

provided, however, that this exclusion shall only apply if a final and non-appealable adjudication adverse to such **Insured** in the underlying proceeding establishes that such conduct occurred, and provided further that paragraph A.1) of this exclusion shall not apply to:

**a)**  any **Securities Claim** alleging violation of Sections 11, 12 or 15 of the Securities Act of 1933, as amended; or

**b)**  **SOX 304/Dodd-Frank 954 Costs.**

For purposes of determining the applicability of the foregoing Exclusions, the **Wrongful Acts** and knowledge of any **Insured** shall not be imputed to any other **Insured Person** and, solely with respect to payment of **Loss** under Insuring Agreement I.C, only the **Wrongful Acts** and knowledge of **Parent Company's** chief executive officer or chief financial officer shall be imputed to a **Company** and its **Subsidiaries**.

With respect to paragraph **A. 2.** of this exclusion, in the event an act or omission is treated as a criminal violation of any statute, rule or law in a **Foreign Jurisdiction** but not in the United States of America, the imposition upon an **Insured** of a criminal fine, sanction or penalty in such **Foreign Jurisdiction** as a result of such criminal violation will not, in and of itself, be deemed conclusive proof that a deliberately fraudulent or criminal act or a deliberately fraudulent or criminal omission by such **Insured** has occurred.

All other terms and conditions of this policy remain unchanged.

**ENDORSEMENT 22**

This endorsement, effective 12:01AM:   **June 01, 2024**
Forms a part of Policy No.:   **47-EPC-150195-11**
Issued to:   **Big Lots Inc**
By:   **Berkshire Hathaway Specialty Insurance Company**

## AMEND DEFINITION OF COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that Section **III DEFINITIONS**, **3.** is deleted in its entirety and replaced with the following:

**3.**    **"Company"** shall mean the **Parent Company** or any **Subsidiary**, including in the event of a bankruptcy, the **Parent Company** or any **Subsidiary** as:

**a.** a debtor in possession as such term is used in Chapter 11 of the United States Bankruptcy Code; or

**b.** the equivalent of **3. a.** above in any **Foreign Jurisdiction**.


All other terms and conditions of this policy remain unchanged.

**ENDORSEMENT 23**

This endorsement, effective 12:01AM:  **June 01, 2024**
Forms a part of Policy No.:  **47-EPC-150195-11**
Issued to:  **Big Lots Inc**
By:  **Berkshire Hathaway Specialty Insurance Company**

## AMEND ENTITY V. INSURED PERSON EXCLUSION
### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that Section **IV EXCLUSIONS**, **E.** is deleted in its entirety and replaced with the following:

**E.  Entity v. Insured Person**

brought or maintained by or on behalf of:

**1.**  the **Company** against an **Insured Person**; or

**2.**  an **Outside Entity** against an **Insured Person** serving in his or her capacity as such for said **Outside Entity**;

provided this Exclusion shall not apply to:

**i.**  **Defense Costs** covered under **INSURING AGREEMENT I.A** or Coverage Extensions **II. B. 1.**;

**ii.**  any **Claim** against an **Insured Person** that is a derivative lawsuit brought and maintained on behalf of the **Company** or the **Outside Entity** without the active assistance or participation of more than one current **Insured Person,** unless such assistance or participation is (a) pursuant to, or in compliance with, a subpoena or similar legal process, or (b) protected pursuant to Section 806 of the Sarbanes-Oxley Act of 2002 or any similar whistleblower statute;

**iii.**  any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency receiver, trustee, examiner, conservator, liquidator, rehabilitator or creditors' committee, bondholders' committee or equity holders' committee (or equivalent in a foreign jurisdiction) of the **Company** or the **Outside Entity**, or any assignee of any of the foregoing;

**iv.**  any **Claim** brought and maintained outside any common law jurisdiction, including the United States of America;

**v.**  any **Claim** against an **Insured Person** who has not served as an **Insured Person** of,  advisor or consultant to, or contractor for, the **Company** or **Outside Entity** for a minimum of two consecutive years prior to the date such **Claim** is deemed made; or

**vi.**  an **Insured Person Inquiry**.

**vii.  SOX 304/Dodd-Frank 954 Costs**.

All other terms and conditions of this policy remain unchanged.

**ENDORSEMENT 24**

This endorsement, effective 12:01AM: **June 01, 2024**
Forms a part of Policy No.: **47-EPC-150195-11**
Issued to: **Big Lots Inc**
By: **Berkshire Hathaway Specialty Insurance Company**

## NOTICE OF POTENTIAL CLAIM PROVISION AMENDED (TO THE EXTENT REASONABLY KNOWN)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that in **Section IX Notice**, paragraph **C. Potential Claims** is deleted in its entirety and replaced with the following:

**C.  Potential Claims**

During the **Policy Period** or the **Discovery Period** (if purchased), the **Insureds** may give written notice to the **Insurer** of circumstances that may reasonably be expected to give rise to a **Claim**; and

1.  such notice shall set forth the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars (to the extent reasonably known) as to dates, persons and entities involved;

2.  any **Claim** which is subsequently made against such **Insured** alleging, arising out of, based upon or attributable to such circumstances, shall be considered made at the time notice of such circumstances was first given to the **Insurer**, and

3.  notice of any such subsequent **Claim** shall be given to the **Insurer** as soon as practicable after the risk manager or in-house general counsel of the **Parent Company** first learns of such **Claim**. No coverage shall be provided under this Policy for fees, costs, expenses or other loss incurred as a result of such circumstances prior to the time such subsequent **Claim** is actually made.

All other terms and conditions of this policy remain unchanged.

**ENDORSEMENT 25**

This endorsement, effective 12:01AM: **June 01, 2024**
Forms a part of Policy No.: **47-EPC-150195-11**
Issued to: **Big Lots Inc**
By: **Berkshire Hathaway Specialty Insurance Company**

## CANCELLATION PROVISION AMENDED
## (20 DAYS FOR NON-PAYMENT)
**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that in **Section XIV Cancellation**, paragraph **B** is deleted in its entirety and replaced with the following:

**B.** This Policy may be cancelled by the **Insurer** only for nonpayment of premium. Such cancellation shall be effective on the date specified in the written notice of cancellation given by the **Insurer** to the **Parent Company**, provided such date is at least twenty (20) days after the date such notice is given. If the **Parent Company** pays in full the premium due prior to such effective date, the **Insurer's** notice of cancellation shall be ineffective.

All other terms and conditions of this policy remain unchanged.

**ENDORSEMENT 26**

| | |
|---|---|
| This endorsement, effective 12:01AM: | **June 01, 2024** |
| Forms a part of Policy No.: | **47-EPC-150195-11** |
| Issued to: | **Big Lots Inc** |
| By: | **Berkshire Hathaway Specialty Insurance Company** |

## OTHER INSURANCE AMENDED
## (ADD PERSONAL DIRECTOR LIABILITY POLICY)
### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that in Section **XI. Indemnification, Other Insurance and Subrogation**, paragraph **B. Other Insurance**, subparagraph **1.** is deleted in its entirety and replaced by the following:

1.  All amounts payable under this Policy will be specifically excess of, and will not contribute with, any other valid and collectible insurance, including but not limited to any insurance under which there is a duty to defend or any employment practices liability insurance, unless such other insurance is specifically excess of this Policy; provided this Policy shall apply on a primary basis with respect to (i) any personal umbrella excess liability insurance policy purchased by or on behalf of an **Insured Person,** and (ii) any personal director liability insurance policy purchased by or on behalf of an **Insured Person**. This Policy will not be subject to the terms of any other insurance policy.

All other terms and conditions of this Policy remain unchanged.

**ENDORSEMENT 27**

This endorsement, effective 12:01AM: **June 01, 2024**
Forms a part of Policy No.: **47-EPC-150195-11**
Issued to: **Big Lots Inc**
By: **Berkshire Hathaway Specialty Insurance Company**

## FLSA EXCLUSION AMENDED
## (SIDE A CARVEBACK)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that in **Section IV Exclusions**, paragraph **D. Violation of Law**, subparagraph **2.** is deleted in its entirety and replaced with the following:

**2.**  for any actual or alleged violation of the Fair Labor Standards Act provided, however, this paragraph shall not apply to:

   a.  any **Claim** under **Section I. Insuring Agreement A.** or **Section II. Coverage Extensions A.** or **B.1.**; or

   b.  any **Securities Claim**.


All other terms and conditions of this Policy remain unchanged.

**ENDORSEMENT 28**

This endorsement, effective 12:01AM: **June 01, 2024**
Forms a part of Policy No.: **47-EPC-150195-11**
Issued to: **Big Lots Inc**
By: **Berkshire Hathaway Specialty Insurance Company**

## AMEND DISCOVERY PERIOD

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the payment of premium for this Policy, it is hereby understood and agreed that in **Section XIII Discovery Period**, paragraph **A.** is deleted in its entirety and replaced with the following:

**A.** In the event that:

**1.** the **Insurer** refuses to renew this Policy;

**2.** the **Company** cancels or non-renews this Policy; or

**3.** an event as described in **Section X**, paragraph **A. Merger or Acquisition of Parent Company** occurs;

then the **Company** and **the Insured Persons** shall have the right to elect an extension of the coverage provided by this Policy for the time period and subject to no more than the additional premium set forth in Item 7 of the Declarations. Coverage for any **Claim** deemed first made during the Discovery Period shall apply only with respect to:

**a.** any **Wrongful Act** committed or alleged to have been committed; or

**b.** solely with respect to a **Claim** as defined in **Section III Definitions**, paragraph **2.**, subparagraph **g.**, such facts or circumstances that take place;

before the end of the **Policy Period**.

All other terms and conditions of this Policy remain unchanged.

**ENDORSEMENT 29**

This endorsement, effective 12:01AM:  **June 01, 2024**
Forms a part of Policy No.:  **47-EPC-150195-11**
Issued to:  **Big Lots Inc**
By:  **Berkshire Hathaway Specialty Insurance Company**

## SIDE-A LIBERALIZATION
## (LEAD SIDE A)

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that, solely with respect to any **Claim** against an **Insured Person**, Insuring Agreement I.A. and Coverage Extension II.B(1) of this Policy shall be extended to include the coverage provided by the **Lead Side-A Policy** to the extent that such coverage is not already included in this Policy, except that nothing herein shall: (a) increase this Policy's Limit of Liability as stated in **Item 4.** of the Declarations; (b) extend any reinstatement feature into this Policy; (c) apply to any endorsement to this Policy expressly stating that this Side-A Liberalization shall not apply to; or (d) modify any term, condition, limitation or exclusion to any coverage under this Policy, other than the coverage provided under Insuring Agreement I.A. and Coverage Extension II.B(1) of this Policy.

For purposes of this endorsement, "**Lead Side-A Policy**" shall mean Side A Edge Insurance coverage number 01-166-73-96 issued by National Union Fire Insurance Company of Pittsburgh, Pa., which provides an excess Side-A limit of liability directly or indirectly over this Policy's Limit of Liability as stated in **Item 4.** of the Declarations to this Policy.

All other terms and conditions of this Policy remain unchanged.

## ENDORSEMENT 30

| | |
|---:|:---|
| This endorsement, effective 12:01AM: | **June 01, 2024** |
| Forms a part of Policy No.: | **47-EPC-150195-11** |
| Issued to: | **Big Lots Inc** |
| By: | **Berkshire Hathaway Specialty Insurance Company** |

## AMEND DEFINITION OF LOSS

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that in **Section III Definitions**, paragraph **14. "Loss"**, subparagraph **d.** is deleted in its entirety and replaced with the following:

    **d.** civil fines or penalties assessed against an **Insured Person** for an unintentional and non-willful violation of any federal, state, local or foreign law, including without limitation any such fines or penalties described in Section 308 of the Sarbanes-Oxley Act of 2002 or assessed pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act 15 U.S.C. §78dd-2(g)(B) or Section (ff)(c)(2)(B) of the Foreign Corrupt Practices Act 15 U.S.C. §78ff(c)(2)(B);

All other terms and conditions of this policy remain unchanged.

**ENDORSEMENT 31**

This endorsement, effective 12:01AM: **June 01, 2024**
Forms a part of Policy No.: **47-EPC-150195-11**
Issued to: **Big Lots Inc**
By: **Berkshire Hathaway Specialty Insurance Company**

## ALLOCATION PROVISION AMENDED
## (BEST EFFORTS, FAIR AND PROPER)
**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**EXECUTIVE FIRST DIRECTORS & OFFICERS LIABILITY POLICY**

In consideration of the premium for this Policy, it is hereby understood and agreed that in **Section VIII Defense and Settlement,** paragraph **D. Allocation** is deleted in its entirety and replaced with the following:

**D.  Allocation**

If in any **Claim** the **Insureds** incur **Loss** jointly with others (including other **Insureds**) who are not afforded coverage under this Policy for such **Claim** or incur both **Loss** covered by this Policy and other amounts which are not covered by this Policy, the **Insureds** and the **Insurer** shall use their best efforts to agree upon a fair and proper allocation between covered **Loss** and uncovered loss. If the **Insureds** and the **Insurer** cannot agree on an allocation of **Defense Costs**, the **Insurer** shall advance **Defense Costs** which the **Insurer** believes to be covered under this Policy until a different allocation is negotiated, arbitrated or judicially determined. In such event, such allocation shall be applied retroactively to all **Defense Costs**.

All other terms and conditions of this policy remain unchanged.