**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>Objection Deadline: 2/18/25 at 4 p.m. (ET)<br><br>Re: D.I. 1556, 1923 & 2002 |

**LIMITED OBJECTION BY BVB-NC, LLC TO**
**DEBTORS' NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT**
**OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNT**

BVB-NC, LLC ("Landlord"), hereby files this Limited Objection as required by the Order (1) Authorizing Sale of Debtors' Assets Free and Clear of Liens, et. al. [D.I. 1556] and the *Debtors' Notice of Potential Assumption and Assignment of Executory Contracts and Cure Amounts and the Notice of Filing of Fifth Post-Closing Notice* [D.I. 1923]. Landlord incorporates by reference its prior Limited Objection to Cure Notice and Reservation of Rights [D.I. 821], Landlord's Supplemental Limited Objection to Cure Notice and Reservation of Rights [D.I. 1385], and Landlord's Second Supplemental Limited Objection to Cure Notice and Reservation of Rights [D.I. 2002] (the "Second Supplemental Limited Objection").

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores – PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores – CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

**BACKGROUND**

1.      On June 2, 2020, BVB-NC, LLC and Big Lot Stores, Inc. entered into a certain Lease Agreement involving a shopping center located at 1728 E. Dixon Blvd., Shelby, North Carolina (the "Premise" or the "Shopping Center" as the context requires). This Lease Agreement was subsequently amended by a Lease Modification Agreement and Second Lease Modification Agreement on February 15, 2021 and June 6, 2024, respectively (as so amended, the "Lease"). The Lease is voluminous and may contain confidential or proprietary information. Further, the Landlord believes that the Debtors have a copy of the Lease. Therefore, the Lease is not attached to this objection; however, a copy of the Lease is available upon request.

2.      On September 9, 2024 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with this Court.

3.      Upon information and belief, Debtors are operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      Contemporaneously with the filing of this Limited Objection, Landlord filed the Second Supplemental Limited Objection. The Landlord's Second Supplemental Limited Objection sets forth that the cure amount through December 31, 2024 was $51,701.72, plus attorney's fees and additional amounts that may be due under the Lease. The Affidavit which is attached to Landlord's Second Supplemental Limited Objection to Cure Notice and Reservation of Rights and incorporated herein by reference sets forth, in detail, how the cure amount was calculated.

**OBJECTIONS**

**A. General Objections - Compliance with Bankruptcy Code 6.**

5.      Landlord objects to any proposed assumption and assignment procedures unless such procedures mandate compliance with all requirements of 11 U.S.C. §365, including subsections (b) and (f). Without such compliance, any proposed assumption and assignment must be denied.

**B. Adequate Assurance.**

6.      Debtors must demonstrate adequate assurance of future performance and provide the same timely. 11 U.S.C. § 365(b)(1)(C); see also 11 U.S.C. § 365(f)(2). Debtors bear the burden of proof under 11 U.S.C. §365. See *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991); *In re Rachels Industries, Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); see also *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (holding a specific factual showing through competent evidence to determine adequate assurance of future performance). See e.g., *Matter of Haute Cuisine, Inc.*, 58 B.R. 390 (Bankr. 5 M.D. Fla. 1986) (even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented).

7.      Section 365(b)(3) heightens the adequate assurance requirements for shopping center leases. See *In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 359 (Bankr. D. Del. 1999). To assume and assign shopping center leases, Debtors must satisfy the heightened requirements set forth in 11 U.S.C. § 365(b)(3)(A) - (D). See *In re Joshua Slocum*, 922 F.2d at 1086; see also *In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000). The heightened adequate assurance includes:

- the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial

    condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. See 11 U.S.C. § 365(b)(3)(A);

- any percentage rent due under the lease will not decline substantially. See 11 U.S.C. § 365(b)(3)(B);
- assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. See 11 U.S.C. § 365(b)(3)(C); and
- assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. See 11 U.S.C. § 365(b)(3)(D).

8. The Motion appears to require potential bidders to provide financial information, However, there is no time period for providing adequate assurance information prior to the sale.

9. Landlord and other counter-parties must be provided with Adequate Assurance Information timely.

**C. Cure.**

10. Landlord demands that the Debtors must pay the full cure amount based upon actual amounts that are due on the date that the Lease is assumed and assigned by the Debtors. See 11 U.S.C. §365(b). As of December 31, 2024, Landlord was owed $51,407.72, plus attorney's fees and any additional rents and common area maintenance charges that may become due, pro-rata ad valorem taxes for 2025 and all attorneys' fees and costs incurred by the Landlord. These amounts must be paid as part of any cure. The cure amount must include all amounts due at the time of assumption.

11. Further, Landlord reserves its rights to include additional rent, attorneys' fees, costs, damages and in their asserted cure amounts, including, without limitation, adjustments for, which have not yet been billed or have not yet become due under Leases as the Debtors are responsible to satisfy the same.

12. Further, the Motion fails to provide a framework under which disputed or undisputed cure amounts are paid to the Landlord. The Cure Procedures should provide that any undisputed cure amounts must be paid to the Landlord on the effective date of the assignment of the Lease. The Cure Procedures should provide that any disputed cure amounts must be reserved, in cash, at the highest amount asserted, pending an out-of-court resolution or judicial proceedings.

**D. Landlord Objects to any Change in Use of Other Provisions in the Leases**

13. The Landlord demands the "Use" for the Premises remain the same. Currently, the Motion as well as proposed form of Order do not make that clear.

14. Through the BAPCPA "[s]ection 365(f)(1) is amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the code does not override Section 365(b)." Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

15. The changes embodied in the BAPCPA specifically preserve a landlord's right to enforce use and other lease provisions. Senator Hatch's remarks in the Congressional Record note:

> A shopping center operator. . . must be given broad leeway to determine the mix of retail tenants it leases to. Congress decided that use or similar restrictions in a retail lease, which the retailer cannot evade under nonbankruptcy law, should not be evaded in bankruptcy. It is my understanding that some bankruptcy judges have not followed this mandate. Under another provisions of the Code, Section 365(f), a number of bankruptcy judges have misconstrued the Code and allowed the assignment of a lease even though terms of the lease are not being followed. 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

16. The second paragraph of paragraph 4.A. on page 6 of the Lease Agreement provides as follows:

> "Except for tenants open and operating for business in the Shopping Center as of the date of this Lease, no other general merchandise discount store. liquidator. close-out store, stores selling. leasing or renting furniture (including home furnishings and mattresses), craft stores or dollar store operations ("Competing Business") may be permitted in the Shopping Center during the Original Term of

this Lease or any Option Terms or extensions thereof. In addition to the foregoing, a "Competing Business" shall include. without limitation the following business operations: Dollar General. Dollar General Market, Dollar Tree, Roses, Encore, Family Dollar, 99 Cent Only (and any store with the word 99 Cent in its name), Deals, Save-A-Lot, Marc's, Fred's, Super 10, Maxway, Mazel, Odd Job, Amazing Savings, Ocean State Job Lot, Grossman's Bargain Outlet, Greenbacks, Kings Discount, Building 19, National Wholesale Liquidators, Dollar Dream, Bed Bath & Beyond, Dirt Cheap, Rose's, Christmas Tree Shops, Encore and Ollie's Bargain Outlet, Aaron's, Rent A Center, Rent Way, Color Tyme, Show Place, Buddy's."

17. Upon information and belief, Variety Wholesalers, Inc. either intends to operate a Rose's or other affiliated entity in this location. Alternatively, upon information and belief, Variety Wholesalers, Inc. intends to operate under the name of Big Lots but will sell items as a wholesaler or discounter.

18. Upon information and belief, Variety Wholesales, Inc. only operates discount or off-price retail stores which include Roses, Roses Express, Maxway, Super 10, Bargain Town, Bill's Dollar Store and Super Dollar.

19. The Burlington Coat Factory lease also provides that the restrictions noted in the above paragraph do not apply to existing tenants in the Shopping Center such as the Lease Agreement with Big Lot Stores, Inc.

20. In addition, the leases the lease agreement with Burlington Coat Factory Warehouse Corporation contains provisions which prohibit Landlord from leasing any space to other stores in the Shopping Center which utilize more than the approved square feet for the sale of apparel for some tenants or to off-price retailers (as defined in that lease) such as Rose's.

21. Should a violation of this provision occur, Landlord would suffer $500.00 a day penalty or reduction in rent (which calculates to be $15,000.00 a month) as noted in the Burlington Coat Factory Warehouse Corporation lease or provide that rent will accrue at a percentage of sales

such as 1½% of gross sales. Either way, this results in a substantial reduction in rent paid by the tenants with similar restricted-use provisions.

22. Thus, even if Variety Wholesalers, Inc. intended to utilize the leased space to operate under the name of Big Lots, Inc. in the premises leased by Landlord, it is not able to deviate in any way shape or form from the items sold by Big Lots, Inc. prior to the petition date.

23. The Sale cannot proceed if the use changes without Landlord's prior written approval.

## JOINDER IN OTHER LANDLORD CURE OBJECTIONS

24. The Landlord joins in any legal objections of other similarly situated landlords.

Dated: February 18, 2025
Wilmington, Delaware

**ESBROOK P.C.**

*/s/ Scott J. Leonhardt*
Scott J. Leonhardt (DE 4885)
1000 N. West Street
Suite 1200
Wilmington, DE 19801
(Phone) 302.650.7540
E-Mail: scott.leonhardt@esbrook.com

and

HUTCHENS LAW FIRM, LLP
William Walt Pettit (NC 9407)
6230 Fairview Road, Suite 315
Charlotte, NC 28210
Telephone: (704) 362-9255
Email: walt.pettit@hutchenslawfirm.com

*Counsel for the Landlord*