## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>BIG LOTS INC., *et al.*,<br><br>Debtors[1]. | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Re: 1923**<br><br>**Objection Deadline: 2/18/2025 at 4 p.m. (ET)** |

### LIMITED OBJECTION OF IRELAND LAWRENCE, LTD. TO DEBTOR'S PROPOSED ASSUMPTION AND ASSIGNMENT OF LEASE AND RESERVATION OF RIGHTS

IRELAND LAWRENCE, LTD. ("Landlord"), by and through its undersigned attorneys, hereby: (i) submits this Limited Objection and Reservation of Rights ("Limited Objection") to the *Notice of Filing of Fifth Post-Closing Designation Notice* [D.I. 1923] ("Notice") and, (ii) pursuant to §§ 365(b)(1)(C), 365(b)(3) and 365(f)(2)(B) of the Bankruptcy Code, requests adequate assurance of future performance from Variety Stores, LLC ("Variety"), the proposed assignee. In support of this Limited Objection, Landlord respectfully states as follows:

### INTRODUCTION

1.     Landlord does not generally oppose an assignment of the subject shopping center lease to Variety, but rather objects to the Debtors' request that the Court invalidate or otherwise impair, in connection with the proposed assignment, certain key lease terms that are beyond the scope of section 365(f)(1) in this context.  Landlord also objects to the absence of a proposed cure

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

payment on account of amounts owed to the Landlord for rent, certain property expenses, and legal fees relating to Landlord's efforts to enforce the subject lease in response to the Debtor's proposed assumption and assignment.

## RELEVANT BACKGROUND

2.      Landlord is the owner of a shopping center located in South Point, Ohio, known as Charley Creek Plaza (the "Center").  There are multiple tenants at the Center that share, among other things, a parking lot.  Debtor, Big Lots Stores-CSR, LLC ("Tenant"), leased certain premises at the Center (store no. 5352) (the "Premises") from the Landlord pursuant to the Lease Agreement executed on April 17, 2017 (as amended on October 30, 2024, the "Lease"). The Premises are 40,292 square feet. The Lease is subject to an Easement Agreement and Restrictive Covenant dated as of September 24, 2013 ("Easement").[2]

3.      Because the Premises are part of a shopping center, the Lease is subject to certain provisions intended to, among others, maintain a tenant mix, benefit other tenants, and protect the integrity of the structures.  Such provisions include those identified in **Exhibit A** hereto.  They will collectively be referred to herein as the "Relevant Shopping Center Restrictions."

4.      Section 40 of the Lease provides as follows:

> In the event either Landlord or Tenant is required to enforce the provisions of this Lease, then the prevailing party shall be entitled to court costs and reasonable attorney's fees from the non-prevailing party. This provision applies to court costs and attorney's fees incurred in any trial and/or appellate courts, and which costs and fees shall be paid upon demand therefor.

---

[2]  The Lease, as amended, and the Easement, were provided to Variety.  Copies will be provided to parties in interest upon written request therefor.  Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Lease or the Notice.

5.      Section 11 of the Lease governs indemnification and requires Debtor, as Tenant, including its successors and assigns to indemnify, defend and hold harmless Landlord in certain circumstances.

6.      On September 9, 2024 ("Petition Date"), Tenant filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court").

7.      On December 27, 2024, Debtors filed the *Motion of Debtors for Entry of an Order (I) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform Under the GBRP APA, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1437].

8.      On January 2, 2025, the Court entered the *Order (I) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform Under the GBRP APA, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1556] (the "Sale Order").  The Sale Order authorized the Debtors to assign certain executory contracts and unexpired leases designated by Gordon Brothers Retail Partners, LLC (the "Buyer") to the Buyer or its designee (a "Designated Buyer") pursuant to certain procedures.

9.      Consistent with certain requirements imposed by Bankruptcy Code Section, the Sale Order also provides as follows:

> The Debtors and the Buyer, or any Designated Buyer, as applicable will, to the extent necessary, satisfy the requirements of section 365 of the Bankruptcy Code, including sections 365(b)(1)(A), 365(b)(1)(B), and 365(f) of the Bankruptcy Code, prior to the assumption and assignment of the Assigned Contracts pursuant to the Designation Rights Procedures and the APA and will: (a) cure any default existing prior to the effective date of any assumption and assignment of any of the Assigned

Contracts, within the meaning of section 365(b)(l)(A) of the Bankruptcy Code; (b) provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assigned Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code; and (c) <u>provide adequate assurance of future performance with respect to the Assigned Contracts, within the meaning of sections 365(b)(1), 365(b)(3) (to the extent applicable), and 365(f)(2) of the Bankruptcy Code.</u>

[D.I. 1556, pp. 14-15 (emphasis added)].

10.     On February 3, 2025, Debtors filed the Notice. The Notice provides that Tenant seeks Court approval to assume and assign the Lease to Variety Stores, LLC ("<u>Variety</u>").

11.     Attached to the Notice as Exhibit C is a proposed form of Order ("<u>Proposed Order</u>"). The Proposed Order, at ¶¶ 9 and 10, purports to annul and/or vary certain typical lease provisions that it refers to as "Unenforceable Provisions" and to establish that such provisions will not apply to Variety or constitute an event of default under the Lease.

12.     There are currently uncured defaults by the Tenant under the Lease. They include its failure to pay certain rent for the month of September 2024 and its *pro rata* share of 2024 real estate taxes and other reimbursable expenses, plus Landlord's attorney's fees as it seeks enforce the agreed-upon terms of the Lease.

## <u>LIMITED OBJECTION</u>

13.     While Landlord does not object to the sale of the Debtors' assets to maximize the value of their estates for the benefit of creditors or to Variety serving as an assignee of the Lease, it does object to overly broad prohibitions against the Landlord's rights to enforce bargained-for protections in the Lease that section 365 of the Bankruptcy Code entitles Landlord to enforce.

### A.     The Proposed Assumption and Assignment is *Cum Onere.*

14.     If Variety acquires the Lease from the Tenant, it will acquire the instrument *cum onere; i.e.,* subject to all existing provisions. Variety cannot ask this Court to deem certain agreed-

4

to portions of the Lease unenforceable as a way to assume only favorable portions of the Lease and void or vary other portions. *See In re Washington Capital Aviation & Leasing*, 156 B.R. 167, 172 (Bankr. E.D. Va. 1993). Because Landlord is being forced to continue in the performance of the Lease for the benefit of someone other than its chosen tenant, it is entitled to the full benefit of its bargain under the original Lease it agreed to with the existing Tenant. *See Matter of Superior Toy and Mfg. Co., Inc*., 78 F.3d 1169 (7th Cir. 1996). The "full benefit of its bargain" principle is intended to permit Landlord to continue in a beneficial contract.  The proposed assumption and assignment is not an opportunity for a new tenant, forced upon Landlord, to re-write the Lease.

      **B.**      **The Lease is a Shopping Center Lease that Must be Afforded Special Considerations.**

      15.      Special considerations are afforded Landlord because the Lease is a lease "of real property in a shopping center" as that term is used in section 365(b)(3). *See In re Joshua Slocum, Ltd*., 922 F.2d 1081, 1096-87 (3d Cir. 1990)("*Joshua Slocum*").  Special considerations are warranted because "Congress recognized that unlike the usual situation where a lease assignment affects only the lessor, an assignment of a shopping center lease to an outside party can have a significant detrimental impact on others, in particular, the center's other tenants." *Id. at* 1086. The Third Circuit noted in *Medtronic AVE Inc. v. Advanced Cardiovascular Sys.*, 247 F.3d 44 (3d Cir. 2001), that "[a]n assignment is intended to change only who performs an obligation, not the obligation to be performed. . . . An assignee obtains only the right, title and interest of his assignor at the time of his assignment, and no more." *Id*. at 60 (citations omitted).

      16.      While Bankruptcy Code Section 365(f)(1) can in certain circumstances authorize assignment of an unexpired lease notwithstanding any provision that prohibits, restricts, or conditions assignment, that provision is limited in scope.  For example, it cannot justify an assignment that would have the effect of impairing other lease terms such as those regarding use,

exclusivity, and tenant mix. *See Trak Auto Corp. v. West Town Ctr. LLC (In re Trak Auto Corp.)*, 367 F.3d 237 (4th Cir. 2004) ("*Trak*") (recognizing that the more specific protections afforded shopping center landlords by section 365(b)(3) control over the more general protection afforded bankruptcy estates through section 365(f)(1)).

17.     These special considerations afforded landlords for shopping center leases are well rooted in the legislative record attendant to prior changes made to section 365(f)(1).  Through the BAPCPA amendments, "Section 365(f)(1) was amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the Code does not override Section 365(b)." Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005). In explaining the change to section 365(f)(1), Senator Hatch stated:

> The bill helps clarify that an owner should be able to retain control over the mix of retail uses in a shopping center. When an owner enters into a use clause with a retail tenant forbidding assignments of the lease for a use different than that specified in the lease, that clause should be honored. Congress has so intended already, but bankruptcy judges have sometimes ignored the law.

151 Cong. Rec. S. 2459, 2461 (daily ed. March 10, 2005).

18.     The changes embodied in the BAPCPA specifically preserve a landlord's right to enforce use and other lease provisions. Again, Senator Hatch's remarks in the Congressional Record clarify the intent behind Section 365(b) and 365(f):

> A shopping center operator . . . must be given broad leeway to determine the mix of retail tenants it leases to. Congress decided that use or similar restrictions in a retail lease, which the retailer cannot evade under nonbankruptcy law, should not be evaded in bankruptcy. It is my understanding that some bankruptcy judges have not followed this mandate. Under another provisions of the Code, Section 365(f), a number of bankruptcy judges have misconstrued the Code and allowed the assignment of a lease even though terms of the lease are not being followed. (emphasis added).

151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

19.     The Tenant as Debtor has the burden of proof under section 365(b)(1). *In re Memphis-Friday's Associates*, 88 Bankr. 830, 840-1 (Bankr. W.D. Tenn. 1988); *In re Lafayette Radio Electronics Corp*., 12 Bankr. 302, 307 (Bankr. E.D.N.Y. 1981). The Debtor has the specific burden of showing that assumption and assignment will not affect the "use," will not disrupt the tenant mix or balance in the shopping center affected, will not substantially affect future performance of non-monetary obligations of the lessee, and will insure the performance of all monetary obligations under the leases. *In re: Lafayette Radio Electronics Corp*. 12 B.R. 302 (Bankr. E.D.N.Y. 1981).   Landlord requests an evidentiary hearing on this issue with an opportunity for discovery in advance.

20.     BAPCPA clarified section 365 to reflect Congressional intent that a debtor cannot use section 365(f)(1) to void lease provisions and to overrule those prior court decisions that did not strictly enforce lease terms. The predicate to the limited ability to assign a lease over a landlord's objection under section 365(f) is that such assignment must be subject to the protections of sections 365(b)(1) and (3). Section 365(f)(1) does not modify or override section 365(b). *See Trak* at 243-44 (recognizing that bankruptcy courts could not use the general anti-assignment provision of section 365(f)(1) to trump the specific protections granted to landlords in section 365(b)(3)(C), and that any assignment must remain subject to all provisions of the leases, including those provisions concerning use, radius, exclusivity, tenant mix and balance.)

21.     The Debtor-Tenant's departure and Variety's arrival could disrupt the tenant mix and negatively impact the businesses of other tenants in the shopping center.  By way of example only, if Variety were to devote more than a certain percentage of its space to the sale of lawn and garden equipment, it would infringe upon on the exclusive use rights of O'Reilly's reflected in the Easement and in Exhibit F of the Lease.  Significantly, nothing in the Proposed Order specifically

7

outlines Variety's intended use(s) of the Premises. Any extended disruption or interruption in business operations at the Premises could lead to a loss in foot traffic adversely affecting other Center tenants.

### C.    Adequate Assurance of Future Performance

22.    Pursuant to section 365(f)(2)(B) of the Bankruptcy Code, a debtor may only assume and assign a landlord's lease if "adequate assurance of future performance by the assignee of such . . . lease is provided, . . . ." As set forth in section 365(b)(3), adequate assurance of future performance in the shopping center context includes, *inter alia*, adequate assurance:

> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that assumption and assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as **radius, location, use or exclusivity provision**, and will not breach any such provision contained in any other lease . . . relating to such shopping center; and
>
> (D) that assumption or assignment of such lease will not disrupt any **tenant mix or balance** in such shopping center.

11 U.S.C. § 365(b)(3) (emphasis added). Congress's intent in imposing cure and adequate assurance conditions on the ability of a debtor to assume an executory contract was to ensure that contracting parties receive the full benefit of their bargain if they are forced to continue performance. *In re Superior Toy & Manufacturing Co.*, 78 F.3d 1169, 1174 (7th Cir. 1996). The Bankruptcy Code requires more than the basic adequate assurance of future performance of the leases under section 365(b)(3). *In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 359 (Bankr. D.

Del. 1999). In order to assume and assign shopping center leases, a debtor must satisfy the heightened requirements set forth in 11 U.S.C. § 365(b)(3)(A)–(D). *See Joshua Slocum*, 922 F.2d at 1086; *see also L.R.S.C. Co. v. Rickel Home Centers, Inc.* (*In re Rickel Home Centers, Inc.*), 209 F. 3d 291, 299 (3d Cir. 2000).

23.     Here, **Exhibit B** sets forth Landlord's specific objections to the self-styled Unenforceable Provisions contained in ¶¶ 9 and 10 of the Proposed Order, and Tenant's attempt to override its burden to show adequate assurance of future performance.

### D.     Cure Amount

24.     A cure under section 365 means that all unpaid amounts due under the agreement have been paid. *In re Network Access Solutions, Corp*., 330 B.R. 67, 76 (Bankr. D. Del. 2005). "When attempting to assume under § 365, a Debtor must cure both prepetition and post-petition defaults. *In re Rachels Industries, Inc.*, 109 B.R. 797, 812-813 (Bankr. W.D. Tenn.1990. Thus, all pre and post-petition amounts must be paid as of the effective date of assumption and assignment.

25.     Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and Variety must satisfy these lease charges as part of the assumption or assumption and assignment of the Lease. *In re Entm't, Inc.,* 223 B.R. 141, 152 (Bankr. N.D. Ill. 1998). There is no logical distinction for purposes of section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. *Id*. at 154. The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). *Id*., *see also In re Crown Books Corp*., 269 B.R. 12 (Bankr. D. Del. 2001) (landlord's fees and costs are recoverable

as a component of cure under 11 U.S.C. § 365(b)(1)); *Urban Retail Props. v. Loews Cineplex Entm't Corp., et al.*, 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . .").

26.     Under the Lease, Debtor failed to pay certain rent for the month of September 2024 in the amount of $21,041.67, along with its pro rata share of the 2024 real estate taxes in the amount of $43.596.90, totaling $64,638.57 and thus is obligated to cure all defaults. The supporting documents are included in **Exhibit C**.

27.     Accordingly, Landlord requests that it be reimbursed for all actual pecuniary losses including, but not limited to, attorney's fees and costs expended with regard to actions taken to enforce Lease provisions.

## **Reservation of Rights**

28.     Landlord reserves its rights to: (a) amend this Limited Objection for purposes of asserting any amounts that may be owed (whether pre-petition or administrative claims); (b) assert any claims (including, without limitation, administrative claims) for damages to the  Premises, the removal of personal property left behind by the Debtors and/or for damages relating to removal or change of signage; (c) object to the proposed form of assumption and assignment agreement and/or proposed amendment to the Lease; (d) enforce any other rights of Landlord or obligations of Tenant or Variety in connection with the proposed assignment of the Lease; (e) seek allowance and payment of any amounts owed under the Lease pursuant to the Bankruptcy Code, including, without limitation, sections 365(d)(3) and 503(b) of the Bankruptcy Code; and (f) object in the absence of compliance with any other restrictive use covenants.

**WHEREFORE**, Landlord respectfully requests that the Court enter an Order consistent with the foregoing objections; and for such other and further relief as it deems just and proper.

Date:    February 18, 2025
            Wilmington, Delaware

                                        **THE ROSNER LAW GROUP LLC**

                                        */s/ Frederick B. Rosner*

                                        Frederick B. Rosner, Esq. (DE #3995)
                                        Chan (Cora) Dong (DE #7393)
                                        824 Market Street, Suite 810
                                        Wilmington, DE 19801
                                        302-777-1111
                                        rosner@teamrosner.com
                                        dong@teamrosner.com

                                        Counsel to Landlord