IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>Hrg. Date: February 26, 2025, 10:30 A.M. ET |

<u>**Affidavit of Elana Reiter, CEO of Prestige Patio Co, Ltd. in Opposition to Debtor's Motion for Entry of an Order (I) Setting a Bar Date for filing Proofs of Claims for Pre-Closing Administratiave Expense Claims against the Debtors, (II) Establishing Pre-Closing Administrative Expense Claims Procedures, and (III) Granting Related Relief, Including Notice and Filing Procedures to the Debtors Motion and in FURTHER SUPPORT OF PRESTIGE PATIO'S MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**</u>

**ELANA REITER**, being duly sworn deposes and says:

I am the Chief Executive Officer of Prestige Patio Co., Ltd. ("Prestige Patio") and submit this affidavit in Opposition to Debtor's Motion for Entry of an Order (I) Setting a Bar Date for filing Proofs of Claims for Pre-Closing Administrative Expense Claims against the Debtors, (II) Establishing Pre-Closing Administrative Expense Claims Procedures, and **(III)** Granting Related Relidf, Including Notice and Filing Procedures to the Debtors Motion and in in further support of the motion made by Prestige Patio for an order directing the payment of Prestige Patio's administrative expenses.

Granting the Debtor's Motion and denying Prestige Patio's motion will have a devastating impact on my business, on me personally and on similarly situated Vendor businesses.

Prestige Patio is an importer of outdoor furniture and related products, mostly from The People's Republic of China and Vietnam. Like many of the vendors of products that sold their products to Big Lots, we are small companies with overall profits of between $250,000 and $500,000 ... <u>**when all goes well and there are no defaults**</u>. To protect ourselves, some of us purchase insurance. However, when a company, such as Big Lots files for protection pursuant to

Chapter 11 of the Bankruptcy Laws of the United States, the insurance companies no longer are willing to write that "protective" insurance. However, as this Court is well aware, a debtor who is trying to reorganize its business is required to pay all post filing debts on a current basis. We, as vendors, know that, but despite the best intentions, full payment does not always occur. The obvious result is that vendors refuse to sell goods except on a C.O.D. basis, which makes reorganization difficult, if not impossible in most situations.

Therefore, as a practical matter, many companies that seek reorganization obtain Debtor-in-Possession ["DIP"] funding, which, as this Court is aware, is what Big Lots obtained in the present situation.

In furtherance of Big Lots Chapter 11 plan, Bruce Thorn, Big Lots then President and CEO issued a letter to the Vendors in which he stated:

"… Given the importance of our partnership, we wanted to emphasize the following points about what the protections of the Chapter 11 process mean for you:
• **We expect to pay our vendors in full for goods delivered and services provided after the filing.**
• **We expect to have sufficient liquidity to meet our business obligations during this process.** We have secured commitments for new financing from certain of our current lenders. With approval from the Court, we expect this financing, coupled with cash generated from our ongoing operations, to support business operations during the sale process…" (See Exhibit "A" submitted herewith).

In conjunction with the Letter from Mr. Thorn, Big Lots published a "flyer" which is attached as Exhibit "B" in which the following representations were made:

"…**Meeting our Business Obligations** We intend to pay our vendors in full for any goods and services provided after the filing. We have secured commitments for additional financing. Coupled with cash generated from ongoing operations, we expect to have ample liquidity for the business to operate during the sale process…"

On September 9, 2024, Big Lots published a press release in which the following statement was made:

"…In connection with the court-supervised process, Big Lots has secured commitments for $707.5 million of financing, including $35 million in new financing from certain of its current lenders, in the form of a post-petition credit facility (collectively, the "DIP Financing Facility"). Upon Court approval, the DIP Financing Facility, coupled with cash generated from the Company's ongoing operations, are expected to provide sufficient liquidity to support the Company

while it works to complete the sale transaction..." (see Exhibit "C" submitted herewith).

Thereafter, all the vendors, including Prestige Patio was sent Exhibit "D" in which the following representations were made:

"...**4. Does Big Lots have sufficient liquidity to continue operating?**

- We have secured commitments for $707.5 million of financing, including $35 million in new financing from certain of our current lenders.
- With approval from the Court, we expect these financings, coupled with cash generated from our ongoing operations, to provide ample liquidity for the business to operate during the process.

**5. What does the Chapter 11 filing mean for vendors?**
- We are continuing to operate and expect for vendors to be paid in full under normal terms for any goods delivered and services provided **after** the filing.
- Our long-term relationship with our vendors is extremely important to us as we are steadfastly steering our business towards the future.
- Looking ahead, we are unwaveringly focused on continuing to deliver the unmistakable value and extreme bargains that our customers expect from us.

**6. Will vendors be paid for goods and services provided after the filing?**
- We expect to pay vendors in full for goods delivered and services provided **after** the filing...".

In addition to the foregoing writings received by Prestige Patio, we had numerous conversations with various representatives of Big Lots in which we were assured in no uncertain terms that there was no risk in agreeing to sell the merchandise "FOB" China or Viet Nam, as the case may be with 30 day payment terms.

I consulted with experienced bankruptcy professionals and industry veterans, all of whom assured me that non-payment of post-bankruptcy administrative claims is highly unusual and when sufficient DIP funding was in place, it was an industry-wide understanding that vendors supplying under DIP financing would be paid in full.

As the owner of a small business, my company, in good faith relied on the assurances that invoices would be paid by the (DIP) financing secured during Big Lots' Chapter 11 restructuring. On September 19, 2024, our buyer at Big Lots provided us with the DIP financing number, and

assured us that all invoices would be paid under this secured financing to ensure that Big Lots maintained inventory during reorganization. Following this, my team worked closely with Big Lots to ensure timely delivery of patio furniture for the Spring 2025 selling season, beginning with shipments in October 2024.

On December 12, 2024, we received a remittance confirmation detailing a wire payment of $93,138. When the funds were never received, Big Lots' Accounts Payable department assured us that there was merely a "glitch" and that not only could we expect to receive the confirmed payment, but that the remaining sum due of $784,379 would be wired by the end of the following week. Neither payment was ever made or received. **We now know that a "business decision" was made by the Debtor to stop paying all vendors, notwithstanding the continued existence of available funds.**

The non-payment from Big Lots has had catastrophic consequences for my business and my personal life. My company operates on 30-day payment terms with our factories, meaning I was relying on Big Lots' payments to pay my suppliers in China and Vietnam. Because these payments were never received, I now owe approximately $500,000 to my Chinese factory "partner" and $300,000 to my Vietnamese factory "partner".

It is my understanding that under Section 263 of Chinese Criminal law, principals of companies that default in payments to "Chinese" companies are subject to arrest and incarceration as well as seizure of any assets possessed by the company or its principals.

This has led to the following "domino" severe repercussions:

- **Loss of Supplier Relationships:** My factory partners have lost trust in my company and are threatening not to produce future orders for any of my other customers if payment isn't made, jeopardizing my entire business.
- **Threats to me personally and employees:** The U.S. State Department has issued warnings against traveling to China with unresolved financial disputes. Visiting factories is a critical

component of my business operations and unless I am able to pay the Chinese factories, I risk criminal exposure given the strict enforcement of financial obligations in China.

- **Business Collapse:** I spent nearly a decade building Prestige Patio from the ground up, establishing trusted factory supplier relationships, and securing major retail partnerships after years of persistence. This setback threatens to unravel everything I have sacrificed for, putting my ability to provide for my 3 young children at serious risk. This is especially heartbreaking given my background—I was raised by a single mother and grandmother who struggled with financial uncertainty, and my entire career has been dedicated to breaking that cycle. Now, with one devastating event, so much of that progress is being undone.

Adding to the injustice, on December 19, 2024, Big Lots reached out to actively assist us in getting our unpaid goods reconsigned to Prestige Patio. Their Director of Global Inbound Logistics, along with key executives, worked with us to coordinate reconsignment of the merchandise, allowing my Company to recover some financial losses. I secured commitments from other retailers to purchase these goods, but at the last moment, were informed that 'Legal' advised Big Lots to immediately halt all reconsignment efforts, refusing to return merchandise they had neither paid for nor received into their distribution centers. These were goods in containers on the water and this decision was particularly egregious given that Big Lots subsequently announced that the majority of its stores would be closing within 60 days, meaning they had no need for these seasonal Spring and Summer goods. The logical and ethical decision would have been to return the unpaid merchandise so it could be resold, but instead, Big Lots chose to retain the goods while refusing to honor the associated invoices.

We have spoken to other vendors who are experiencing similar and in some cases even worse repercussions by reason of the non-payment of Administrative Claims, including not only loss of their business but loss of their homes as well.

This situation has far-reaching consequences beyond my own business. The fundamental

trust in DIP financing as a mechanism to protect vendors has been eroded. If post-bankruptcy suppliers cannot rely on DIP financing assurances, future vendors will be unwilling to supply essential goods to companies undergoing restructuring, except on a COD basis, thus undermining the entire purpose of Chapter 11.

I urge the Court to consider a remedy that ensures vendors like me will receive payment for goods supplied under the explicit understanding and the clear representation by the Debtor that DIP financing would cover all post filing obligations. Small businesses like mine cannot absorb nearly $900k in unexpected losses without severe repercussions to the very survival of my business.

_____
Elana Reiter

Sworn to before me this
19th Day of February, 2025

_____
Notary Public

RICHARD E. SCHRIER
Notary Public of New York
No. 02SC6018974
Qualified in Nassau County
Commission Expires February 1, 2026

---

[1] The debtors and debtors in possession in these chapter 11 cases (hereafter, "Debtors") are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).