UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>    Debtors. | Chapter 11<br><br>Case No.: 24-11967-JKS<br>(Jointly Administered)<br><br>**Related to Docket No. 1923**<br><br>**Obj. Deadline: 2/19/25 by 4:00p.m. (ET)**<br>**(extended by agreement)** |

**OBJECTION OF TRANEL, INC. AND HORIZON COMMONS, LLC TO DEBTORS'
PROPOSED ASSUMPTION AND ASSIGNMENT OF LEASES**

TRANEL, INC. ("Tranel") and HORIZON COMMONS, LLC ("Horizon," and together with Tranel, the "Landlords"), by and through their undersigned counsel, hereby file this objection (the "Objection") to the Debtors' proposed assumption and assignment of certain leases identified in the Debtors' *Notice of Filing Fifth Post-Closing Designation Notice* (Doc. 1923) (the "Notice"), and in support of this Objection, Landlords respectfully state as follows:

**Factual Background**

1. Tranel and the Debtors are parties to that certain lease dated January 26, 1994 (as subsequently amended, the "Tranel Lease"), with respect to that certain premises located in Grove Park Plaza Shopping Center, 1811 South Church Street, Burlington North Carolina, Store No. 499.

2. Horizon and the Debtors are parties to that certain lease dated December 21, 1989 (as subsequently amended, the "Horizon Lease"), with respect to that certain premises located at 1090 Millwood Pike, Winchester Virginia, Store No. 51.

3. The Debtors filed voluntary petitions for relief under Chapter 11 of the United States Code on September 9, 2024 ("Petition Date"). The Debtors are in possession of the estates' remaining assets and continue to manage their financial affairs pursuant to 11 U.S.C. §§ 1107 and

1108.

4. On January 2, 2025, this Court entered the *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests, Encumbrances, and other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* (Doc. 1556) (the "Sale Order").

5. In accordance with the Sale Order, the purchaser was afforded designation rights with respect to any unexpired leases, including the right to designate any unexpired lease to be assumed and assigned to the purchaser or a designated third party.

6. On February 3, 2025, the Debtors filed the Notice, in which the Debtors provided notice of their intention to assume and assign the Tranel Lease and the Horizon Lease to Variety Stores, LLC ("Variety" or the "Proposed Assignee").

7. Tranel objects to the proposed assignment of the Tranel Lease on the basis that the Debtors incorrectly identify the cure amount with respect to such lease. Additionally, Tranel and Horizon object to the proposed assignment of the Tranel Lease and the Horizon Lease insofar as, or to the extent that, the Debtors seek to modify the terms of the Tranel Lease and the Horizon Lease incident to the proposed assignment of such leases.

8. The Debtors and Variety agreed to extend the objection deadline to the Proposed Assignments to February 19, 2025, at 4:00 p.m.

## Objection

**A.     Cure Amount with respect to the Tranel Lease**

9. Prior to the assumption or assignment of any unexpired lease in a bankruptcy case, a debtor is required by section 365(b)(1) of the Bankruptcy Code to provide adequate assurance

2

(a) that the debtor will promptly cure all defaults under the unexpired leases to be assumed and assigned and (b) of the future performance of a proposed assignee under the terms of an unexpired lease sought to be assumed and assigned.

10. Based upon an Amendment to Lease by and between the Debtors and Tranel dated November 1, 2024, the Debtors are presently in arrears the sums of $5,730.83 for 2023 CAM and $11,922.50 for 2023 taxes, totaling $17,653.33. Attached is a copy of the Lease Amendment, which identifies these amounts in paragraph 4.

11. However, the Notice identifies the cure amount for Store No. 499 (the Tranel Lease) at $0. The actual cure amount, exclusive of attorneys' fees, is $17,653.33 (the "Actual Cure Amount").

12. Tranel further objects to the proposed cure amount because it does not include attorneys' fees, to which it is entitled under the Tranel Lease. Attorneys' fees have been accruing and will continue to increase through any assumption and assignment of the Tranel Lease, and Tranel may seek to supplement this Objection by the time of any proposed order for assumption and assignment with the current amount of accrued attorneys' fees.

13. The Debtors must satisfy the Actual Cure Amount as a condition to the Debtors assuming and assigning the Tranel Lease.

14. To the extent there is a dispute over the Actual Cure Amount, all undisputed amounts should be paid upon the assumption and assignment of the Lease, and the Debtors should be required to escrow any disputed amounts.

**B.     Proposed Modifications to the Tranel and Horizon Leases**

15. The proposed assignment of the Tranel Lease and the Horizon Lease must be subject to all terms of the Leases, except to the extent that the Bankruptcy Code preempts or

otherwise allows modification of any provision or term of the Leases. *See In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) (finding that a debtor seeking to assume a lease must do so *cum onere*, accepting both its benefits and burdens).

16. The Notice includes a proposed order authorizing the proposed assumption and assignment of leases (the "Proposed Order"). The Proposed Order, in paragraph 9, subparts (a) through (i), identifies certain "Unenforceable Provisions" of the leases sought to be assumed and assigned, which seek to modify the terms of the Leases. While some of these modifications are permissible under Section 365(b)(2), others go beyond that which is allowed or authorized by the Bankruptcy Code.[1]

---

[1] Paragraph 9 of the Proposed Order states that:

Solely with respect to the transactions contemplated by this Order and the Assignment Agreement, and except as otherwise agreed between the Landlord and Variety, nothing in this Order shall be deemed to annul or vary any provision of the Leases *other than* the following provisions (the **"Unenforceable Provisions"**)**:**
    a.    a provision prohibiting Variety's intended use of the premises;
    b.    a provision unreasonably prohibiting necessary alterations to the premises or signage required to convert the premises to Variety's intended use; provided such alterations are deemed necessary by Variety to conform such store consistent with Variety's intended use of the premises;
    c.    a provision commonly referred to as a "going dark" or "continuous operations" provision, providing in substance for a forfeiture of the Leases or an increase in rent or other penalty by reason of the Debtors' cessation of retail operations before the assignment, and/or any delay by Variety in reestablishing retail operations after the assignment, to the extent any such provision does not permit Variety to "go dark" until the later of: (i) one hundred twenty (120) days after the Closing Date of the assignment of the Leases, or (ii) such later time, when the particular facts and circumstances of a given store warrant additional time, which circumstances shall include, without limitation, the age and condition of the shopping center, the ability to obtain any permits and documents necessary to complete construction, the location of the premises in the shopping center, the shape of the premises to be assigned, the demographics of the shopping center's location and the overall quality of the shopping center and its existing tenants;
    d.    a provision conditioning assignment on Landlord consent, or requiring payment to the Landlord as the price of assignment, or granting Landlord the right to recapture the leased premises following the assignment;
    e.    a provision effecting forfeiture or a modification of any of Variety's rights or obligations presently in effect under the Leases upon an assignment by the Debtors of the Leases;
    f.    a provision conditioning the Debtors' ability to assign their leasehold rights upon any terms not otherwise required under the Bankruptcy Code;
    g.    a provision restricting Variety's ability to place reasonable signage on the premises: provided that such signage is deemed necessary by Variety to conform such store with Variety's intended use of the premises;
    h.    a provision requiring the use of a certain tradename; and
    i.    a provision regarding minimum sales revenues required to be satisfied at the premises covered by the Leases.

17.     For example, subsections (b), (c) and (g) of paragraph 9 are particularly problematic.  Subsection (a), by its terms, allows Variety to alter the leased premises in whatever manner it deems necessary to conform with Variety's intended use of the premises.  Subsection (c), the so-called "going dark" provision, by its terms, creates an open-ended time period for Variety to commence operations. Additionally, subsection (g)—modifying any signage restrictions—by its terms, allows Variety to place any reasonable signage so long as it conforms with Variety's intended use of the premises.

18.     Depending on the actions taken by Variety, these proposed modifications may materially prejudice the rights of the Landlords.  If Variety acquires the Leases from the Debtors, it should acquire the Leases *cum onere*—subject to all existing provisions.

## Reservation of Rights

19.     The Landlords reserve their rights to: (a) amend this Objection for purposes of asserting any additional amounts which may be owed (whether pre-petition or administrative claims); (b) assert any claims (including, without limitation, administrative claims) for damages to the leased premises, the removal of personal property left behind by the Debtors and/or for damages relating to removal or change of signage; (c) object to the proposed form of assumption and assignment agreement; (d) enforce any other rights of the Landlords or obligations of the Debtors and/or proposed assignee in connection with the proposed assignment of the Leases; and (e) seek allowance and payment of any amounts owed under the Leases pursuant to the Bankruptcy Code, including, without limitation, sections 365(d)(3) and 503(b) of the Bankruptcy Code.

WHEREFORE, the Landlords respectfully request that this Court enter an Order sustaining this Objection and granting relief consistent with this Objection, as well as granting the Landlords such other and further relief as it deems just and proper.

Dated: February 19, 2025

**CONNOLLY GALLAGHER LLP**

<u>/s/ Karen C. Bifferato</u>
Karen C. Bifferato (DE Bar No. 3279)
1201 N. Market Street, 20th Floor
Wilmington, DE  19801
Telephone: (302) 757-7300
Email: kbifferato@connollygallagher.com

-and-

Mark S. Mitchell (FBN: 018039)
**ROGERS TOWERS, P.A.**
1301 Riverplace Blvd., Suite 1500
Jacksonville, Florida 32207
(904) 398-3911 (telephone)
(904) 396-0663 (facsimile)
mmitchell@rtlaw.com (email)

*Attorneys for Tranel Inc. and Horizon Commons, LLC*