## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC. , *et al.*, | Case No. 24-11967 (JKS) |
| Debtor.[1] | (Jointly Administered) |
| | **Hearing Date: TBD**<br>**Objection Deadline (by agreement): Feb. 20, 2025 at 11:50 p.m. (ET)**<br>**Related D.I.: 1923** |

## LIMITED OBJECTION OF BEACON PLAZA, LLC TO ASSUMPTION AND ASSIGNMENT OF LEASE AND FIFTH POST-CLOSING DESIGNATION NOTICE

Beacon Plaza, LLC ("Beacon" or "Landlord"), through undersigned counsel, objects to the assumption and assignment of the lease (as further described below, the "Lease") for non-residential real property between Beacon and Big Lots Stores, LLC ("Debtor") and certain terms contained in the proposed order (the "Proposed Order") attached to the *Notice of Filing of Fifth Post-Closing Designation Notice* [D.I. 1923] (the "Notice").

As discussed further below, Beacon requests that: (1) any order approving the assumption and assignment of the Lease clarify the agreement between the Debtor, Gordon Brothers Retail Partners, LLC ("GBRP"), and Variety Stores, LLC ("Variety") as to which party will be entitled to any construction allowance (the "Construction Allowance") that may be payable under the

---

[1]    The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. DublinGranville Road, Columbus, OH 43081.

Lease; (2) if the Debtor, GBRP, and Variety disagree regarding the Construction Allowance, that the Court resolve that dispute prior to allowing the assumption and assignment of the Lease; (3) Variety provide evidence that it possesses the insurance required under the Lease; and (4), the Court modify the Proposed Order to remove certain proposed "Unenforceable Provisions" contained in Paragraph 9 of the Proposed Order that improperly attempt to re-write the Lease.

<strong><u>BACKGROUND</u></strong>

A. <u>The Lease</u>

1.      On October 14, 2022, Big Lots entered into the Lease with Avenue 12 Holdings, LP for the premises located in the shopping center known as Beacon Plaza, 225 South Tyndall Parkway, Panama City, Florida 32404 (the "<u>Premises</u>") and identified by the Debtor as Store Number 5490.  A copy of the Lease is attached as <u>Exhibit 1</u>.  The Lease was assigned to Beacon on February 29, 2024.  The Premises is located in a shopping center known as Beacon Plaza.  *See* Lease § 1.E.

2.      The "Rent Commencement Date" under the Lease was November 16, 2023.  The initial Lease term runs through January 31, 2034.  Lease, § 3.A.

3.      The Lease requires that the Tenant pay: (a) annual rent of $250,125.00, payable in monthly installments of $20,843.75 through January 31, 2028 (the "<u>Rent</u>"), and annual rent of $271,875.00, payable in monthly installments of $22,656.25, through January 31, 2033.  *Id.* § 5.A. The Lease also requires that the Tenant reimburse the Landlord for utility charges, common area charges, and real estate taxes.  *Id.* §§ 5.B-F.

4.      Section 5.G of the Lease provides, in part, that: "<u>Construction Allowance</u>: Landlord shall pay to Tenant an amount equal to One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00) within thirty (30) days of Tenant's opening for business and Tenant providing lien

waivers in excess of $5,000.00 . . . ."  Big Lots opened for business at the Premises on November 15, 2023.

5.      Section 12.A requires the Tenant under the Lease to maintain "at its own expense … with insurers authorized to do business in [Florida] … and which are A-/VIII or equivalent in Best's Key Rating Guide" certain forms of insurance, including commercial general liability insurance.

B.     The Pre-Petition Litigation

6.      On May 15, 2024, Big Lots commenced an action against Beacon in the United States District Court for the Northern District of Florida captioned *Big Lots Store, LLC. v. Beacon Plaza LLC*, Case No. 5:24-cv-00093-MCR-MJF (N.D. Fla.) (the "Florida Litigation") seeking payment of the Construction Allowance.  The Florida Litigation remains pending.

7.      Since May 30, 2024, Beacon has credited the Rent due under the Lease against the Construction Allowance.  As of the date of this Objection, Beacon has credited $225,545.65 in Rent and other charges against the Construction Allowance.

C.     The Debtor's Bankruptcy, Sale and the Designation Notice

8.      On September 9, 2024, the Debtor filed a petition for relief under chapter 11 of the United State Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

9.      On January 2, 2025, the Court entered the *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of all Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1556] (the "Sale Order"), pursuant to which the Court approved the sale of substantially all of the assets

of the Debtor and its debtor affiliates to GBRP under the terms of an Asset Purchase Agreement (the "APA") attached to the Sale Order.

10.     The APA attached to the Sale Order does not include any of the schedules to the APA, such as: (i) Schedule 5.08 – Excluded Proceedings; (ii) Schedule 5.10 – Material Contracts; or (iii) Schedule 5.13(b)(i) – Leased Real Property.

11.     Under the Sale Order and the APA, GBRP was provided with designation rights to designate leases of the Debtor to be assumed and assigned by the Debtor to a third party. *See, generally,* Sale Order ¶¶ 41-50; APA § 2.05(b).

12.     On February 3, 2025, the Debtor filed the Notice. The Lease is included among the leases identified for assumption and assignment to Variety. *See* D.I. 1923-3 at #200.

13.     Paragraph 9 of the Proposed Order attached to the Notice contains several purported "Unenforceable Provisions," declaring certain provisions of assumed and assigned leases unenforceable including:

a.   a provision prohibiting Variety's intended use of the premises;

b.   a provision unreasonably prohibiting necessary alterations to the premises or signage required to convert the premises to Variety's intended use; provided such alterations are deemed necessary by Variety to conform such store consistent with Variety's intended use of the premises;

c.   a provision commonly referred to as a "going dark" or "continuous operations" provision, providing in substance for a forfeiture of the Leases or an increase in rent or other penalty by reason of the Debtors' cessation of retail operations before the assignment, and/or any delay by Variety in reestablishing retail operations after the assignment, to the extent any such provision does not permit Variety to "go dark"

until the later of (i) one hundred twenty (120) days after the Closing Date of the assignment of the Leases, or (ii) such later time, when the particular facts and circumstances of a given store warrant additional time, which circumstances shall include, without limitation, the age and condition of the shopping center, the ability to obtain any permits and documents necessary to complete construction, the location of the premises in the shopping center, the shape of the premises to be assigned, the demographics of the shopping center's location and the overall quality of the shopping center and its existing tenants …;

g.    a provision restricting Variety's ability to place reasonable signage on the premises; provided, that such signage is deemed necessary by Variety to conform such store with Variety's intended use of the premises….

*See* Proposed Order, D.I. 1923-3 at ¶ 9.

D.    Beacon's Attempt to Address the Construction Allowance.

14.    On February 12, 2025, undersigned counsel e-mailed counsel for the Debtor, GBRP, and Variety to inquire into their respective positions on who would be entitled to the Construction Allowance following assignment of the Lease to Variety.    *See* Exhibit 2. Undersigned counsel requested a response or responses by February 14, 2025 to determine whether the Construction Allowance issue would need to be addressed by this Court.    As of the filing of this Objection, no response has been received.

<u>**LIMITED OBJECTION**</u>

**A. The Construction Allowance Should Follow the Lease and this Court Should Resolve Any Dispute Regarding the Construction Allowance Among the Debtor, GBRP, and Variety Before Authorizing Assumption & Assignment of the Lease.**

15.    Section 365 of the Bankruptcy Code authorizes a chapter 11 debtor to assume and assign an unexpired lease of the debtor.  *See* 11 U.S.C. § 365(a) & (f).  A debtor must assume all of the terms of a lease *cum onere*; with all of its benefits and its burdens.  *See In re G-I Holdings, Inc.*, 580 B.R. 388, 420 (Bankr. D.N.J. 2018) (citing *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531-32 (1984).  "A debtor may not 'cherry-pick' the provisions of an assumed contract with which it will comply."  *Id.* (citations omitted).

16.    Furthermore, neither the debtor nor the Court can modify the terms of an assigned lease.  *See, e.g.*, *In re ANC Rental Corp., Inc.*, 277 B.R. 238-39 (Bankr. D. Del. 2002) (citing *In re Italian Cook Oil Corp.*, 190 F.2d 994, 997 (3d Cir. 1951); *City of Covington v. Covington Landing L.P.*, 71 F.3d 1221, 1226 (6th Cir.1995); *In re Allegheny Health, Educ. & Research Found.*, 265 B.R. 88, 113 (Bankr. W.D. Pa. 2001); *In re Wash. Capital Aviation & Leasing*, 156 B.R. 167, 173 (Bankr. E.D. Va. 1993); *In re Mellen*, 79 B.R. 385, 387 (Bankr. N.D. Ill. 1987); *In re Mushroom Transp. Co.*, 78 B.R. 754, 759 (Bankr. E.D. Pa. 1987); *In re Air Vectors Assocs.*, 53 B.R. 668, 687 (Bankr. S.D.N.Y. 1985); *In re Easthampton Sand & Gravel Co.*, 25 B.R. 193, 198 (Bankr. E.D.N.Y. 1982)).  According to the Third Circuit:

> [A]bsent a provision stating otherwise, assignment of a contract will result in the assignee stepping into the shoes of the assignor with regard to the rights that the assignor held and not in an expansion of those rights to include those held by the assignee. An assignment does not modify the terms of the underlying contract. It is a separate agreement between the assignor and the assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party changed...."

*Id.* at 239 (quoting *Medtronic Ave., Inc. v. Adv. Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3d Cir. 2001) (quotations omitted)).

17.     The Sale Order appears to recognize that assignment results in substitution of the Debtor as the Tenant under the Lease, not modification of the Lease itself.  *See* Sale Order ¶ 37 ("Upon entry of an order approving the assignment of the Assigned Contracts and payment of the applicable Cure Costs, the Buyer (or any Designated Buyer, as applicable) shall be deemed to be substituted for the Debtors as a party to the applicable Assigned Contracts….").

18.     Under the authority above and the Sale Order, Beacon believes that the right to receive the Construction Allowance travels with the Lease and cannot be severed from it, either by the Debtor or GBRP.  Indeed, any other outcome would amount to an amendment to the Lease, which, as discussed above, is not permitted under Section 365 of the Bankruptcy Code.  Thus, upon assignment of the Lease to Variety, only Variety would have the right to enforce the Construction Allowance.  If the Debtor and GBRP agree with that position, their acknowledgment would resolve Beacon's objection to the assumption and assignment of the Lease as to the Construction Allowance.

19.     If the Debtor or GBRP disagree, however, then the question of which party is entitled to enforce the Construction Allowance under the Lease should be addressed by this Court. If the Debtor takes the position that it is entitled to the Construction Allowance notwithstanding assignment of the Lease to Variety, then presumably it will be taking that position in contravention of the obligation to assume and assign the entire Lease under section 365 of the Bankruptcy Code. If GBRP takes the position that it is entitled to the Construction Allowance notwithstanding assignment of the Lease to Variety, then presumably it will be relying on some provision of the

Sale Order or the APA (perhaps an undisclosed schedule to the APA).  This Court retained jurisdiction over any such dispute under the Sale Order.  *See* Sale Order ¶ 101.[2]

20.      Furthermore, any dispute regarding the payee of the Construction Allowance among the Debtor, GBRP and/or Variety should be resolved before the Lease is assumed and assigned to Variety.  Beacon should not face the risk of defending the claims of multiple parties in multiple litigations, possibly in multiple fora, each asserting a right to the Construction Allowance. This is particularly so because, once the Lease is assumed and assigned to Variety, Beacon would only have the contractual right to recover attorneys' fees from Variety in any litigation in which a party claiming entitlement to the Construction Allowance loses.  *See* Lease § 40.  In other words, allowing the Lease to be assigned without resolving any dispute over entitlement to the Construction Allowance exposes Beacon to irreparable harm arising from the cost of defending against those claims.

21.      Finally, the dilemma faced by Beacon should two or more of the Debtor, GBRP or Variety claim entitlement to the Construction Allowance cannot be addressed simply by paying the remaining Construction Allowance into the Court and letting those parties fight amongst themselves.  If GBRP asserts an interest in the Construction Allowance, Beacon may have unique defenses against GBRP as a third party attempting to assert rights under a Lease that was never assigned to it.  Variety, on the other hand, will be the Tenant under the Lease, and the Construction Allowance may factor into negotiations should Variety seek to modify the terms of the Lease following assignment.

---

[2]      To be clear, Beacon is **not** asking this Court to resolve the Florida Litigation. Though if this Court determines that a party other than the Debtor is entitled to the Construction Allowance, Beacon will seek dismissal of the Florida Litigation.

22.     Accordingly, Beacon respectfully requests that the Court: (a) direct the Debtor, GBRP and Variety to clarify in connection with any order authorizing the assumption and assignment of the Lease who is entitled to claim the Construction Allowance and that such clarification be included in any order authorizing the assumption and assignment of the Lease, and, (b) resolve any dispute among the Debtor, GBRP and Variety before authorizing the assumption and assignment of the Lease to Variety.

**B. Variety Must Provide Evidence of Insurance.**

23.     Variety previously leased the Premises.  The Premises was largely destroyed by Hurricane Michael on October 10, 2018.  Variety was "self-insured," and lacked adequate insurance to repair the Premises.  Section 12.A of the Lease requires that the Tenant to maintain adequate insurance through an authorized insurer and not be "self-insured."  Section 365(b)(3)(C) of the Bankruptcy Code provides that assumption and assignment of a lease in a shopping center is "subject to all the provisions" of the lease.  11 U.S.C. § 365(b)(3)(C).  *See also id.* § 365(f)(2)(B) (debtor must provide adequate assurance of future performance).  The adequate assurance information provided by Variety did not include evidence of insurance.  Variety must provide Beacon with evidence of insurance as required under the Lease before the Lease is assigned to Variety.

**C. The Court Should Curtail the Language of Paragraph 9 of the Proposed Order to Avoid Rewriting the Lease.**

24.     As discussed above, sections 365(a) and (f) of the Bankruptcy Code do not authorize the Court to rewrite the terms of the Lease.  While the Court can proscribe the enforcement of provisions that would have the effect of preventing assignment under Sections 365(f)(1) and (f)(3) of the Bankruptcy Code, that authority does not extend to eviscerating restrictions in the Lease that are merely inconvenient to Variety.  Rather, the lease terms deemed

unenforceable must directly or effectively serve as an anti-assignment clause.  *See In re E-Z Serve Convenience Stores, Inc.*, 289 B.R. 45, 50 (Bankr. M.D.N.C. 2003).  To make that determination, a "court must examine the particular facts and circumstances of the transaction to determine whether a lease clause restricts or conditions assignment including the extent to which the provision hampers a debtor's ability to assign, whether the provision would prevent the bankruptcy estate from realizing the full value of its assets, and the economic detriment to the non-debtor party."  *Id.* (citations omitted).

25.    Paragraph 9.a of the Proposed Order renders unenforceable "a provision prohibiting Variety's intended use of the premises."  Section 4.A of the Lease defines the permitted use of the Premises as being:

> the retail sale (including financing and/or leasing) of general merchandise, furniture, furniture accessories, furnishings, mattresses, appliances, electronics, toys, seasonal merchandise, plastics, crafts, home goods, party goods, greeting cards, health and beauty produces, food (including refrigerated and frozen food, beer and wine not to exceed 3,000 square feet), all similar or related merchandise, and for any other lawful retail use not otherwise restricted herein.

Section 4.B of the Lease enumerates 25 uses of the Premises that are prohibited.  This issue may be moot, because Beacon understands that Variety intends to use the Premises either to run a Big Lots-branded store or a similar store under another name.  However, assumption and assignment of the Lease is subject to Section 365(b)(3)(C) of the Bankruptcy Code because the Premises is located in a shopping center and, accordingly, Variety must take the Lease subject to the use restrictions contained in the Lease.  *See* 11 U.S.C. § 365(b)(3)(C).  Furthermore, the Proposed Order fails to articulate Variety's intended use of the Premises, thus giving Variety free range to use the Premises in any manner whatsoever.  Paragraph 9.a should be stricken from any order

approving the assumption and assignment of the Lease or, alternatively, Variety's use of the Premises should be clearly articulated and consistent with the terms of the Lease.

26.    Paragraph 9.b of the Proposed Order renders unenforceable "a provision unreasonably prohibiting necessary alterations to the premises or signage…." Reasonableness is a matter of perspective, and here the Proposed Order renders Variety's perspective conclusive evidence of reasonableness.  The Lease contains a fairly liberal provision regarding internal alterations to the Premises and a detailed provision regarding signage. *See* Lease §§ 6 and 8. There is no reason to broaden or alter those provisions by allowing Variety to declare whatever it wants "necessary" and any opposition thereto "unreasonable".  Paragraph 9.b of the Proposed Order should not apply to Beacon.  Any size, placement, and permitting requirements of the Lease must remain in effect.  If Variety seeks to alter any existing Big Lots signage, it must do so consistent with the terms of the Lease, and if it intends to operate under a different banner, all signage restrictions and processes must be followed, other than those for specific "Big Lots" designs.

27.    Paragraph 9.c of the Proposed Order purports to render any "go dark" provision in the Lease unenforceable for the later of 120 days after the assignment of the Lease or some uncertain period of time depending on vague factors that defy definition or certainty, such as "the demographics of the shopping center's location."  The Lease has a 90 day "go dark" provision. *See* Lease § 4.A ("In the event that Tenant closes the Demised Premises under this Section and fails to reopen the Demised Premises within ninety (90) days thereafter, Landlord may terminate the Lease upon thirty (30) days' notice to Tenant…."). The store on the Premises remains open. If Variety closes the store for restocking, rebranding or other actions, the 90 day provision in the Lease is more than adequate to allow it time to perform those tasks.  Furthermore, Beacon objects to subpart (ii) of paragraph 9.c of the Proposed Order, which would allow Variety to delay

reopening the store indefinitely based on nebulous criteria not included in the Lease.  Subpart (ii) of paragraph 9.c of the Proposed Order should be stricken in its entirety.

28.     Paragraph 9.g renders unenforceable "a provision restricting Variety's ability to place reasonable signage on the premises; provided, that such signage is deemed necessary by Variety to conform such store with Variety's intended use of the premises."  Much like Paragraph 9.b, this provision essentially allows Variety to decide what signage is "necessary" for its intended use of the Premises.  And here again, the Lease contains a detailed provision addressing signage. *See* Lease § 8.  The existing signage on the premises was adequate for the Debtor.  To the extent Variety intends to operate a Big Lots or similar store, the existing signage should be adequate for it.  To the extent Variety wants to alter the signage, it should do so within the confines of Section 8 of the Lease rather than being given *carte blanche*, as Paragraph 9.g of the Proposed Order contemplates.  Paragraph 9.g should not apply to Beacon.

<u>CONCLUSION</u>

29.     In light of the foregoing, Beacon respectfully requests that: (1) any order authorizing the assumption and assignment of the Lease clarify who among the Debtor, GBRP, and Variety will be entitled to the Construction Allowance following assignment of the Lease; (2) if the Debtor, GBRP and Variety disagree regarding the Construction Allowance, the Court resolve that dispute prior to allowing the assumption and assignment of the Lease; (3) Variety be required to provide evidence of insurance in the amounts required under the Lease; and, (4) the Court modify Paragraph 9 of the Proposed Order where it improperly attempts to re-write the Lease, as identified above.

Dated:  February 20, 2025                 /s/ Nicholas J. Brannick
Wilmington, Delaware                      Laurel D. Roglen (No. 5759)
                                          Nicholas J. Brannick (No. 5721)
                                          **BALLARD SPAHR LLP**
                                          919 N. Market Street, 11th Floor
                                          Wilmington, Delaware 19801-3034
                                          Telephone: (302) 252-4465
                                          Facsimile: (302) 252-4466
                                          E-mail:  roglenl@ballardspahr.com
                                                   brannickn@ballardspahr.com

                                          *Counsel for Beacon Plaza, LLC*

## CERTIFICATE OF SERVICE

Nicholas J. Brannick certifies that on February 20, 2025 he caused a copy of the foregoing limited objection to be served on the parties identified below by e-mail as indicated in the *Notice of Filing of Fifth Post-Closing Designation Notice* and upon all parties receiving notice in this matter through the Court's CM/ECF filing system.

| | |
|---|---|
| Steven E. Fox (sfox@riemerlaw.com)<br>**Riemer Braunstein LLP**<br><br>*Counsel to Gordon Brothers Retail Partners, LLC* | Robert J. Dehney, Sr. (rdehney@morrisnichols.com)<br>Andrew R. Remming (aremming@morrisnichols.com)<br>Daniel B. Butz (dbutz@morrisnichols.com)<br>Sophie Rogers Churchill (schurchill@morrisnichols.com)<br>Casey B. Sawyer (csawyer@morrisnichols.com)<br>**Morris Nichols Arsht & Tunnell LLP**<br><br>Brian M. Resnick (brian.resnick@davispolk.com)<br>Adam L. Shpeen (adam.shpeen@davispolk.com)<br>Stephen D. Piraino (stephen.piraino@davispolkcom)<br>Ethan Stern (etahn.stern@davispolk.com)<br>**Davis Polk & Wardwell LLP**<br><br>*Counsel to Debtors* |
| Simon E. Fraser (sfraser@cozen.com)<br>Mark Felger (mfelger@cozen.com)<br>**Cozen O'Conner**<br><br>*Counsel to Variety Stores, LLC* | Justin R. Alberto (jalberto@coleschotz.com)<br>Stacy L. Newman (snewman@coleschotz.com)<br>Jack M. Dougherty (jdougherty@coleschotz.com)<br>Sarah A. Carnes (scarnes@coleschotz.com)<br>**Cole Schotz P.C.**<br><br>Darren Azman (dazman@mwe.com)<br>Kristin K. Going (kgoing@mwe.com)<br>Stacy Lutkus (salutkus@mwe.com)<br>Natalie Rowles (nrowles@mwe.com)<br>**McDermott Will & Emery LLP**<br><br>*Counsel to the Official Committee of Unsecured Creditors* |

*/s/ Nicholas J. Brannick*
Nicholas J. Brannick (DE No. 5721)
BALLARD SPAHR LLP