**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*,[1] | Case No. 24-11967 (JKS) |
| Debtors. | (Jointly Administered) |

**APPLICATION OF ALIXPARTNERS, LLP**
**FOR APPROVAL OF COMPLETION FEE**

AlixPartners, LLP ("**AlixPartners**") hereby moves the Court by this application (the "**Application**") for allowance and payment of a completion fee in the amount of $1,000,000 (the "**Completion Fee**"), in accordance with the terms of the engagement letter between AlixPartners and the Debtors dated as of September 4, 2024 (the "**Engagement Letter**"). A copy of the Engagement Letter is attached hereto as **Exhibit A**. AlixPartners was engaged as the Debtors' financial advisor and provided experienced guidance, leadership and assistance with the company's sale process in order to maximize value to the estate. In furtherance of this Application, AlixPartners respectfully submits the *Declaration of Kent Percy in Support of the Application of*

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

*AlixPartners, LLP for Approval of Completion Fee*, attached hereto as **Exhibit B**, and further represents:

## Jurisdiction and Venue

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, entered on February 29, 2012.

2.      This district is the proper venue for these chapter 11 cases under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested in this Application are Bankruptcy Code sections 330 and 331.

## Background and Retention of AlixPartners

4.      On September 9, 2024 (the "**Petition Date**"), the above-captioned debtors and debtors in possession (the "**Debtors**" or the "**Company**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court.

5.      The factual background relating to the Debtors' commencement of these Chapter 11 Cases is set forth in detail in the *Declaration of Jonathan Ramsden as Chief Financial and Administrative Officer of the Debtors in Support of the Debtors' Chapter 11 Proceedings and First Day Pleadings* (the "**First Day Declaration**") [Docket No. 3].

6.      On September 18, 2024, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing the Employment and Retention of AlixPartners, LLP as Financial Advisor for the Debtors Effective as of the Petition Date* [Docket No. 206] (the "**Retention Application**").

The Court approved the Retention Application by order dated October 21, 2024 [Docket No. 572] (the "**Retention Order**").  A copy of the Retention Order is attached hereto as **Exhibit A**.

### Completion Fee Terms

7.      As set forth in the Engagement Letter and Retention Application, the Debtors agreed to pay AlixPartners a Completion Fee.  The Engagement Letter and Retention Application both provide that AlixPartners shall earn a Completion Fee (subject to Court approval) of up to $1,500,000. The terms of the Completion Fee are broken out in two tranches, the first tranche in the amount of $1,000,000 will be earned upon the earliest to occur of any of the following: (i) confirmation of a chapter 11 plan of reorganization, (ii) a sale of all or substantially all of the Debtors' assets under section 363 of the Bankruptcy Code or otherwise, (iii) the consummation of any material recapitalization, debt exchange or debt restructuring of the Debtors, or (iv) consummation of one or more transactions, in any form, that effectively transfers a significant portion of the business as a going concern to another entity or entities or that results in a change in structure of the Board of Directors. The second tranche in the amount of $500,000 was to be awarded at the discretion of management, driven upon the basis of a successful restructuring.[2] The first tranche of the Completion Fee shall be due and payable immediately when the success objective or objectives determined as described above have been achieved.

8.      The Completion Fee is intended to compensate and reward AlixPartners for its role in these Chapter 11 Cases, and for driving the engagement successfully and maximizing the value of the Debtors' estates through the sale and chapter 11 process. The Completion Fee was negotiated as part of the overall fee and expense structure agreed to in the Engagement Letter and approved by this Court.

---

[2]    AlixPartners has agreed not to seek the $500,000 discretionary portion of its Completion Fee for reasons unrelated to the criteria for the second tranche.

9.      AlixPartners earned the Completion Fee in the amount of $1,000,000, achieved through the sale of Debtors' assets to Gordon Brothers Retail Partners, LLC ("**Gordon Brothers**"), thus satisfying condition for a sale, as described in (ii) above. AlixPartners' significant role and contributions helped preserve value and drive the transaction and, subject to Court approval, AlixPartners is entitled to payment of the Completion Fee.

### Basis for Relief

10.      AlixPartners performed substantial and necessary services both prior to and during these Chapter 11 Cases which were, and are, paramount to preventing further economic loss to the Debtors' bankruptcy estates, warranting an award of compensation beyond the amount that results from payment of hourly fees and simple application of the lodestar approach.

11.      From the outset of the Chapter 11 proceedings, AlixPartners provided indispensable support to the Debtors. AlixPartners' contributions spanned several crucial workstreams, including liquidity management, vendor management, executory contracts, and the development of a comprehensive business plan that underpinned the sales process. By assisting with due diligence, real estate advisory, and coordination with the secured creditors, AlixPartners ensured that the Debtors were positioned for a sale that maximized value for the estates.

12.      AlixPartners' involvement in negotiating the sale of the Debtors' assets was crucial to the success of the transaction. As Debtors' Financial Advisor, AlixPartners facilitated complex discussions with multiple stakeholders—including lenders, customers, and vendors—and carefully navigated the intricacies of the Debtors' large-scale operations. Their role included assisting with the terms of the sale, negotiating with potential buyers, overseeing due diligence, and managing the cash forecasting and business planning processes.

13.     As a result of these efforts, AlixPartners helped secure an agreement with Gordon Brothers, for the purchase of between 200 and 400 Big Lots stores and distribution centers, preserving a substantial portion of the business as a going concern. This achievement not only generated substantial liquidity for the Debtors' estates but also ensured the continuation of employment for a number of workers, further demonstrating the sale's value to the Debtors and their creditors.

14.     The sale of assets to Gordon Brothers was a critical market test of the Debtors' assets. This is a key component of maximizing value during Chapter 11 proceedings. AlixPartners played a direct role in structuring and executing the sale, leveraging their expertise to ensure that the Debtors obtained the highest possible offer for their assets. Without AlixPartners' efforts, it is likely that the Debtors would have been forced into a complete liquidation, which would have resulted in a significantly less favorable outcome for creditors and other parties in interest alike.

15.     AlixPartners' efforts have resulted in tangible, quantifiable benefits to the estate, including substantial cash considerations that will help pay creditors and fund the Debtors' plan confirmation process. Details that support the purchase price reflect the depth of the sale's success: (i) Debt payoff up to $304 million; (ii) cash to satisfy obligations up to $17 million; (iii) cash to cover obligations up to $42.391 million, as per the APA Administration Budget; (iv) cash for wind-down expenses; and (v) the payment of approximately $7.5 million in cash for the Professional Escrow Amount, along with other negotiated terms, underscores the significant contribution AlixPartners made to the completion of the sale. Moreover, the substantial debt payoffs and the funding of necessary obligations demonstrate the financial health and liquidity provided by the transaction, much of which can be attributed to AlixPartners' expertise and strategic input.

16.     Under rigorous judicial standards, the substantial work performed by AlixPartners in orchestrating this sale, preserving value, and ensuring the continuation of the Debtors' operations as a going concern clearly warrants the payment of the Completion Fee. Their efforts were instrumental in navigating the complexities of the case and bringing the transaction to fruition quickly and efficiently. Therefore, AlixPartners has fully met the condition for the sale and their significant contributions to the Debtors' structuring and executing the sale justify the payment of the Completion Fee. The fee is not only a reflection of their work but is also in line with the principles of rewarding professionals for achieving favorable outcomes for the estate and its stakeholders. The Completion Fee should be granted as it is well-earned and deserved.

## Legal Standard

17.     Completion fees are normal parts of compensation for turnaround firms and management restructuring consulting firms and are standard for AlixPartners' engagements of this type, both inside and outside of bankruptcy courts.[3]  Indeed, AlixPartners and other similar firms price their engagements to include completion fees as part of the total compensation packages for such engagements.  Thus, AlixPartners and other turnaround and management restructuring firms rely upon and take into account the negotiated completion fee when accepting engagements.

18.     Completion fees are typical in restructuring cases because clients appreciate an approach which aligns the interests of the client with the interests of its advisor.  In colloquial terms, success fees demonstrate that a turnaround firm, such as AlixPartners, has "skin in the

---

[3]     While success fees for lawyers and accountants are rarely sought or granted, success fees are a standard component of compensation for turnaround management, restructuring, and consulting firms and investment banking firms.  AlixPartners is neither a law firm nor an accounting firm.  AlixPartners is, among other things, a firm that specializes in supplying senior executives on an interim basis to financially troubled companies.  As such, payment of the Completion Fee to AlixPartners is consistent with industry practice in and out of bankruptcy cases.

game" along with the company undergoing the turnaround.  This alignment of interests inures to the overall benefit of a debtor, as well as its estate and creditors.  Without that demonstrated alignment of interests, such a client might be reluctant to reach out for critical leadership and specialized guidance from seasoned turnaround and management restructuring firms like AlixPartners.  As a result, the absence of specialized top-management leadership would decrease the likelihood of a successful outcome of that client's bankruptcy.  Similarly, completion fees are a vital and inseparable component of the overall compensation model for turnaround and crisis management firms like AlixPartners, and denial of such fees in cases such as these, where the concrete achievement of one of the stated goals outlined at the outset of AlixPartners' engagement has occurred, would ill-serve restructurings generally and potentially produce undesirable results.  Some firms would simply decline challenging engagements and others would adjust their compensation model by increasing their monthly and/or hourly fees.[4]  In recognition of these realities, courts routinely authorize and approve the payment of completion fees upon a clear and demonstrable showing of management expertise that is transformative, in terms of business viability, capital structure fit and value generation.  This reasoning is precisely applicable to the engagement of AlixPartners by the Debtors in these Chapter 11 Cases.

19.     The marketplace ordinarily compensates restructuring advisors with both a salary component, based on hours worked, and a performance-based fee.  As the Bankruptcy Court in the Southern District of Ohio held in *In re Cardinal Indus., Inc.*, 151 B.R. 843 (Bankr. S.D. Ohio 1993) (awarding AlixPartners a fee of $2.1 million plus a success fee of 50,000 shares of stock):

---

[4]     The former is not an acceptable result, as it would deny distressed companies the necessary services of firms like AlixPartners that specialize in supplying senior executives to financially troubled companies and that have earned a national and international reputation for their expertise in financial reorganizations and restructurings of troubled companies.  The latter also is not a desirable result, as it would needlessly result in increased fees during the pendency of the case, without such fees being tied to performance-based criteria and the outcome of the case itself (measuring success against alternative outcomes and relative distributable value yields).

> Performance-based or success-factor bonuses are a normal part of compensation arrangements for management restructure consultants and . . . such bonuses generally far exceed the time value of the consultant's services on a lodestar basis. Indeed, the time value component is referred to as the base salary, apparently payable to the consultant even if success is not achieved.

151 B.R. at 847. *See also In re Busy Beaver Bldg. Ctr., Inc.*, 19 F.3d 833, 849 (3rd Cir. 1993) (explaining that the basis for requested compensation should be based on the market rate that professional would charge and collect from a client in a non-bankruptcy setting); *In re UDC Homes, Inc.*, 203 B.R. 218, 222 (Bankr. D. Del. 1996) (same).

20.    Courts review transaction fees or success fees under the "reasonableness standard" of section 330 of the Bankruptcy Code. *See In re Northwest Airlines Corp.*, 400 B.R. 393, 395 (Bankr. S.D.N.Y. 2009); *In re XO Commc'ns, Inc.*, 398 B.R. 106, 110 (Bankr. S.D.N.Y. 2008). In considering a success fee, courts consider: (a) whether the financial advisor's services were necessary and beneficial to the debtors' estates at the time the services were rendered; and (b) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases outside of bankruptcy. *XO Commc'ns*, 398 B.R. at 113. In determining the reasonableness of a success fee and whether the services were necessary and beneficial to the debtor's estate, courts will look "at the nexus between what was achieved, *i.e.*, the restructuring of the debt, and the impact of the advisor's effort in that regard." *Id*. at 116; *see also In re Residential Capital, LLC*, 504 B.R. 358, 367 (Bankr. S.D.N.Y. 2014).

21.    When Congress passed the Bankruptcy Reform Act of 1978, it decided to remove the "spirit of frugality" as a factor in bankruptcy fees. The standard is now the cost of comparable services in a non-bankruptcy setting. Inasmuch as success fees are a normal part of the fee structures of AlixPartners and other turnaround and management restructuring firms, both within

and outside of bankruptcy, approval of the Completion Fee is appropriate to assure comparable

compensation for comparable services.

22.     Recent bankruptcy cases involving success fees awarded to AlixPartners include

the following:

- Vyaire Medical, Inc., a chapter 11 case in the District of Delaware before Judge Brendan L. Shannon.   In 2024, AlixPartners was awarded a completion fee of $1,000,000 [Case No. 24-11217, Docket 844].

- Careismatic Group Inc., a chapter 11 case in the District of New Jersey before Judge Vincent F. Papalia.   In 2024, AlixPartners was awarded a completion fee of $1,500,000. [Case No. 24-10569, Docket 109].

- AeroTech Miami Inc. d/b/a iAero Tech, a chapter 11 case in the Southern District of Florida before Judge Robert A. Mark.  In 2024, AlixPartners was awarded a completion fee of $$340,094.26. [Case No. 23-17503, Docket 745].

- Cyxtera Techs., Inc., a chapter 11 case in the District of New Jersey before Judge John K. Sherwood.  In 2024, AlixPartners was awarded a completion fee of $2,000,000 [Case No. 23-14853, Docket 944].

- Cineworld Group plc, a chapter 11 case in the Southern District of Texas before Judge Marvin Isgur.   In 2023, AlixPartners was awarded a completion fee of $2,506,934.00 [Case No. 23-90267 (previously Case No. 23-90168), Docket 47].

- Bed Bath & Beyond Inc., a chapter 11 case in the District of New Jersey before Judge Vincent F. Papalia.   In 2023, AlixPartners was awarded a completion fee of $750,000.00 [Case No. 23-13359, Docket 2411].

- Avaya, Inc., a chapter 11 case in the Southern District of Texas before Judge David R. Jones.  In 2023, AlixPartners was awarded a completion fee of $2,875,000.00 [Case No. 23-90088, Docket No. 440].

- Carlson Travel, Inc., a chapter 11 case in the Southern District of Texas before Judge Marvin Isgur.  In 2022, AlixPartners was awarded a success fee of $500,000.00 [Case No. 21-90017, Docket No. 274].

- Southland Royalty Company LLC, a chapter 11 case in the District of Delaware before Judge Karen B. Owens.   In 2021, AlixPartners was awarded a success fee of $1,000,000.00 [Case No. 20-10158, Docket No. 1879].

- NPC International, Inc., a chapter 11 case in the Southern District of Texas before Judge David R. Jones.   In 2021, AlixPartners was awarded a restructuring fee of $1,500,000.00 [Case No. 20-33353, Docket No. 1655].

- <u>Noble Corporation PLC</u>, a chapter 11 case in the Southern District of Texas before Judge David R. Jones. In 2021, AlixPartners was awarded a success fee of $1,750,000.00 [Case No. 20-33826, Docket No. 999].

- <u>Tailored Brands, Inc.</u>, a chapter 11 case in the Southern District of Texas before Judge Marvin Isgur. In 2021, AlixPartners was awarded a success fee of 500,000.00 [Case No. 20-33900, Docket No. 1648].

- <u>PG&E Corporation</u>, a chapter 11 case in the Northern District of California before Judge Dennis Montali. In 2020, AlixPartners was awarded a success fee of $8,000,000.00 [Case No. 19-30088, Docket No. 9373].

- <u>McDermott International, Inc.</u>, a chapter 11 case in the Southern District of Texas before Judge David R. Jones. In 2020, AlixPartners was awarded a success fee of $5,000,000.00 [Case No. 20-30336, Docket No. 1022].

- <u>Alta Mesa Resources, Inc.</u>, a chapter 11 case in the Southern District of Texas before Judge Marvin Isgur. In 2020, AlixPartners was awarded a completion fee of $200,000.00 [Case No. 19-35133, Docket No. 2007].

- <u>Aegerion Pharmaceuticals, Inc.</u>, a chapter 11 case in the Southern District of New York before Judge Martin Glenn. In 2019, AlixPartners was awarded a success fee of $500,000.00 [Case No. 19-11632, Docket No. 406].

- <u>Sungard Availability Capital Services</u>, a chapter 11 case in the Southern District of New York before Judge Robert D. Drain. In 2019, AlixPartners was awarded a success fee of $1,250,000.00 [Case No. 19-22915, Docket No. 115].

- <u>Aceto Corporation</u>, a chapter 11 case in the District of New Jersey before Judge Vincent F. Papalia. In 2019, AlixPartners was awarded a success fee of $1,000,000.00 [Case No. 19-13448, Docket No. 683].

- <u>Westinghouse Electric Company</u>, a chapter 11 case in the Southern District of New York before Judge Michael E. Wiles. In 2018, AlixPartners was awarded a success fee of $7,500,000.00 [Case No. 17-10751, Docket No. 3633].

- <u>VER Technologies Holdco, LLC</u>, a chapter 11 case in the District of Delaware before Judge Kevin Gross. In 2018, AlixPartners was awarded a success fee of $750,000.00 [Case No. 18-1083, Docket No. 881].

23. In determining the reasonableness of fee awards under section 330, courts consider whether the services provided are "services which are reasonably likely to benefit the debtors' estates." *In re Residential Capital, LLC*, 504 B.R. at 366 (quoting *In re Angelika Films 57th Inc.*,

227 B.R. 29, 42 (Bankr. S.D.N.Y. 1998)); *see also In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 71–72 (2d Cir. 1996).

24.     In short, completion fees are a normal part of compensation for firms such as AlixPartners, which provided financial advisory services to the Debtors, and may be approved on that basis.  The services provided by AlixPartners resulted in tangible, measurable, and significant incremental value to the Debtors and their estates, to the benefit of the Debtors' stakeholders.

25.     The contributions of the AlixPartners personnel were key enablers of the successful outcome and recoveries within these Chapter 11 Cases.  As such, the amount of the Completion Fee in these cases is reasonable pursuant to the standards outlined in section 330 of the Bankruptcy Code and should be approved.

## Notice

26.     Notice of the Application has been or will be provided to those parties entitled to receive notice hereof in accordance with any applicable order of this Court.

## Conclusion

27.     To summarize, the Engagement Letter provides for the payment of the Completion Fee based upon defined criteria.  The defined criteria have been attained.  Fees such as the Completion Fee are a normal part of the compensation structure of AlixPartners and other similar firms both inside and outside of bankruptcy.  AlixPartners played a pivotal role in the positive outcome of these Chapter 11 Cases.  Accordingly, the approval of the Completion Fee is warranted and appropriate.

**WHEREFORE**, AlixPartners respectfully requests that this Court enter an order, substantially in the form of the Proposed Order attached hereto as **Exhibit C**, awarding AlixPartners its Completion Fee in the amount of $1,000,000, and such other or further relief as is just or appropriate.

Dated: February 21, 2025                    AlixPartners, LLP


                                            /s/ Kent Percy
                                            Name: Kent Percy
                                            Partner & Managing Director