# EXHIBIT 2

# LEASE EXTENSION AND MODIFICATION AGREEMENT
## to the Lease Agreement between

**R.L. Wittbold, New Philadelphia**
**AS LANDLORD**
and
**Rent-A-Center East, Inc.**
**AS TENANT**

Dated August 10, 2001

**WITNESSTH:**

**WHEREAS**, R.L. Wittbold, (Landlord) and Rent-A-Center East, Inc., (Tenant) wish to amend and modify portions of a certain Lease Agreement dated August 10, 2001 (hereinafter the "Lease") for premises commonly described as 336 Bluebell Drive, New Philadelphia, OH 44663.

**NOW THEREFORE**, the parties in consideration of the mutual promises and covenants hereinafter contained agree to the amendments and modifications as follows:

The parties agree to extend the Lease term beginning February 1, 2007 and ending January 31, 2010.

Base rent of the extension period shall be at the rate of $34,800.00 per annum, payable in equal monthly installments of $2,900.00.

Tenant is hereby granted two (2) additional option to extend the current term of the Lease, for a period of three (3) years with a one hundred and twenty (120) day notice.

The first option shall begin February 1, 2010 and end January 31 2013 at a base rental rate of $36,000.00 per annum, payable in equal monthly installments of $3,000.00.

The second option shall begin February 1, 2013 and end January 31 2016 at a base rental rate of $37,200.00 per annum, payable in equal monthly installments of $3,100.00.

Tenant may amend the use clause of the primary lease for the Premise/Building to include, the operation of a store which (i) offers, markets, provides, leases, rents with the option to own, and occasionally sells, consumer durable goods (including but not limited to, electronics, furniture, appliances, computers, jewelry, and items related to any of the foregoing), and/or (ii) ISP, or products and services related to any of the foregoing, or for any other legal purpose which Tenant deems in its best interest. Tenant's current hours of operation are 10am-7pm M-F; 9am-6pm Sat; closed on Sunday and National Holidays. Landlord represents that Tenant's use will not be in violation of any other tenant's lease.

Landlord agrees no other portion of the Shopping Center or any other land owned by Landlord adjacent to the Shopping Center, including any outparcels, shall be used or occupied for the operation of a lease/rent-to-own business (i.e., as example, but not limited to, Aaron's, ColorTyme, Bestway, etc.). If Landlord violates this provision, Tenant, in its sole discretion, shall be entitled to any or all of the following remedies: (i) terminate this Lease upon thirty (30) days prior written notice to Landlord at any time prior to Landlord's curing such violation; (ii) receive an abatement of 100% of all sums due hereunder, during that portion of the Term of this Lease and extensions when Landlord is in violation or default under this provision; (iii) file an injunction; or (iv) sue for damages. Such remedies may be exercised singly, simultaneously or in succession. The exercise by Tenant of one or more of the preceding options shall not be deemed to be an election of remedy and Tenant retains the right to pursue any or all remedies to which it may be entitled at law or in equity.

If at anytime during the Lease Term or any extended Term, a bona fide 3rd party firm certifies to Tenant and Landlord that all or any portion of the heating, ventilating, and air conditioning system/equipment, including, but not limited to, the air conditioning compressor, the heat exchanger, boiler on an entire heating or cooling unit has passed the end of its economic life and/or that it is no longer economically or reasonably feasible to repair such equipment, such equipment shall be replaced and expense shall be divided equally (50/50) between Landlord and Tenant.

All other terms and conditions of the Lease shall remain unchanged.

**IN WITNESS WHEREOF**, this Agreement is executed as of the date it is last executed by the parties below.

| LANDLORD: R.L. Wittbold, New Philadelphia | TENANT: Rent-A-Center East, Inc. |
|---|---|
| BY: _R L Wittbold_ | BY: _Esmeralda C. West_ |
| | Esmeralda C. West |
| ITS: _Managing Member_ | ITS: Real Estate Manager |
| DATE: _October 25, 2006_ | DATE: _October 23, 2006_ |

LseExtMod
Rvsd8199

## LEASE AGREEMENT

THIS LEASE AGREEMENT (hereinafter referred to as the "Lease") is made as of the _10 Th_ day of _August_, 2001 by and between R.L. Wittbold, New Philadelphia, a Michigan Co-partnership ("Landlord") and Rent-A-Center, Inc., a Delaware Corporation ( "Tenant").

### SECTION 1

### DEMISE AND DESCRIPTION OF PREMISES

A. In consideration of the covenants and agreements hereinafter contained, Landlord does hereby demise and lease to Tenant and Tenant does hereby lease from Landlord, a portion of the Bluebell Plaza Shopping Center (hereinafter referred to as the "Shopping Center") outlined on Exhibit A, which Shopping Center consists of 58,088  square feet of gross leasable area ("GLA"), more specifically described as a 5000 square foot premises, shown on Exhibit B attached hereto ("Premises"), located at 336 Bluebell Drive, situated in New Philadelphia (City), Ohio (State). The term Shopping Center shall include any and all contiguous, proximate, or adjoining land now or hereafter owned or controlled, directly or indirectly, by the Landlord, even though not presently integrated as a part of the Shopping Center. Exhibits A and B shall be attached to this Lease by Landlord for Tenant's approval, and shall be deemed approved and incorporated herein by reference when they have been initialed by Tenant. The calculation of the square footage of the Premises shall be measured from the center of interior common walls and from the outside of exterior Premises walls.

B. Tenant is hereby granted a nonexclusive right for itself, its agents, employees and customers, to use the Shopping Center's motor vehicle parking areas, driveways and footways, and other facilities upon and appurtenant to the Shopping Center, and all common areas of the Shopping Center for their intended uses, including but not limited to the purpose of ingress and egress on foot and by motor vehicles, for parking motor vehicles during the day and overnight, and for purposes of loading and unloading merchandise. Tenant agrees that it shall observe reasonable regulations applicable to all Tenants established for the Shopping Center concerning the use of its common areas, including the parking of Tenant's and its employees' motor vehicles and the maintaining of an orderly flow of vehicular and pedestrian traffic in and about the Shopping Center parking areas, driveways and footways. Landlord shall not reduce the ratio of parking spaces to the Shopping Center floor area below the ratio as shown on Exhibit A hereof and shall not make other changes to the parking areas, driveways, footways or other common areas of the Shopping Center in any way which will adversely affect Tenant's business or its use of the Premises.

### SECTION 2

### INITIAL TERM

A. This Lease shall be for an initial term ("Term") of Sixty-five    ( 65 ) months commencing upon the date of actual physical delivery of the Premises by Landlord to Tenant., and actual acceptance of such delivery by Tenant or its designee. Landlord shall give Tenant advanced written notice ten (10) days prior to the date Landlord intends to physically deliver the Premises to Tenant. Tenant's obligation to pay base and additional rent hereunder shall commence on the 151st  day after delivery of possession of the Premises to Tenant and acceptance of the Premises by Tenant as provided above. Immediately after the term hereof has been ascertained, the parties shall mutually agree, using the form attached as Exhibit E and submitted to Tenant by Landlord within ten (10) business days after Tenant opens for business, to the actual lease commencement and termination dates, and the termination date shall always coincide with the end of a month.

B. In the event tenant shall not be able to obtain its construction permit within thirty 30 days after its application, the free rent period as defined above (i.e., the date of delivery until the first rent payment obligation), shall be extended by one (1) day for each and every day beyond thirty (30) days until tenant is granted its construction permit.

C. Should Landlord fail to deliver possession of the Premises to Tenant by  09/01/01 , Tenant shall have an option at any time thereafter, upon thirty (30) days written notice to Landlord, to terminate this Lease. If terminated at Tenants' option, the Lease shall thereafter be null and void and have no further force and effect, and all sums paid to Landlord by Tenant shall be immediately refunded to Tenant. Should Landlord fail to deliver possession of the Premises to Tenant by the above stated date and if this Lease is not terminated as provided above, then as of the date Tenant begins the operation of its business within the Premises, Tenant shall receive two (2) days of rent, including other charges and use of the Premises, for each 24 hour period expiring between the originally designated possession date above and the date Landlord delivers actual possession of the Premises

reasonably necessary to permit Landlord to comply with the foregoing provision, provided however, that Landlord shall not unreasonably interfere with Tenant's business or Tenant's use of the Premises.

B. Landlord has the full right and power to execute and deliver this Lease, grant the estate created hereby and to perform its obligations hereunder, all without notice to, or consent of, any other person or entity.

C. So long as Tenant is not in breach of its duty to pay rent, or in the performance of any of its other covenants and agreements hereunder beyond the applicable grace periods, Tenant shall peaceably and quietly have, hold and enjoy the Premises and all rights, covenants, appurtenances and privileges pertaining thereto, from and after the date hereof and throughout the term of this Lease, without interference's by Landlord or anyone claiming by, through or under Landlord.

D. Landlord warrants that the fire protection/sprinkler system for the Premises and Shopping Center meets present codes and requirements of the governing body. In the event a sprinkler system is required to be installed, updated, reworked, repaired or modified in the Premises, and said installation, update, rework, repair or modification is not required due to Tenant's specific business use or improvements, then the Landlord shall, at Landlord's sole cost and expense, install, update, rework, repair or modify the sprinkler system. In the event Landlord has not completed such work within 30 days after notification of the need for such work, then Tenant may forthwith terminate the Lease and have no further obligation to Landlord.

E. Landlord has received no notice and has no knowledge of any threatened or pending proceeding or litigation, either in condemnation, enforcement of creditor's rights, zoning or otherwise, without limitation, against or affecting any part or portion of the Shopping Center or access to or egress from the Shopping Center or Tenant's ability to use the Premises for its intended purposes.

F. Landlord has no knowledge of any existing or proposed zoning or other land use ordinances, rule or regulation of any kind or type, including being located in a flood plain or zone, and no knowledge of any pending or threatened change in zoning or other land use ordinance, rule or regulation, or any existing, proposed or threatened proceeding or taking (by eminent domain or otherwise) by or on behalf of any governmental body, department or agency which would adversely affect Tenant's rights to use the Premises as herein contemplated, or which would alter the Shopping Center or access to or egress from the Shopping Center or would otherwise affect Landlord's ability to comply with the terms and provisions of this Lease.

G. Landlord agrees to assign, or cause its contractors, vendors and suppliers to assign to Tenant all contractor's or subcontractor's guarantees or product warranties, if any, which relate to any improvements or equipment installed for which Tenant shall have the obligation to make repairs.

H. Landlord has no knowledge of any hazardous or toxic materials or substances in or under the Shopping Center, including the Premises.

I. Landlord has provided Tenant with all relevant history of which it has knowledge regarding safety or security, or illegal activities, in or about the Premises.

## SECTION 6

## USE OF PREMISES

A. Tenant may use the Premises for the operation of a store which leases, markets, provides, rents with the option to own and occasionally sells consumer durable goods, including but not limited to electronics, furniture, appliances, computers, ISP,communication equipment (excluding wireless communication equipment) and related items. Tenants current hours of operation are 10am-7pm M-F; 9am-6pm Sat; closed on Sunday and National Holidays.

B. During the Term of this Lease, and all renewals thereof, Landlord agrees not to lease any other space in the Shopping Center or in any contiguous, proximate or adjoining property now or hereafter owned or controlled, directly or indirectly, by the Landlord, to any other occupant, or consent to modification of any existing lease, or the assignment or subletting by any other tenant within the Shopping Center, which will permit the tenant or subtenant thereunder to engage in a business which leases, markets, provides, rents with the option to own and occasionally sells consumer durable goods, (a "rent to own" business). If Landlord violates this provision, Tenant shall be entitled to seek redress and equity in law.

C. Tenant shall be permitted to park its company vehicles in the common areas/parking lots of the Shopping Center during the day and night.