**EXHIBIT A**

**Notice of Designation of Designated Assets**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF DESIGNATION OF DESIGNATED ASSETS

WHEREAS, Gordon Brothers Retail Partners, LLC, as buyer ("Buyer"), and Big Lots, Inc., a Delaware corporation and debtor and debtor in possession ("Seller"), are parties to that certain Asset Purchase Agreement dated as of January 3, 2025 (the "Purchase Agreement"), pursuant to which Buyer agreed to acquire the Assets from Seller and the other the Selling Entities[2].

WHEREAS, pursuant to an order of the Bankruptcy Court entered January 2, 2025 (the "Sale Order") [ECF No. 1556], the Bankruptcy Court approved the Selling Entities' sale of the Assets to Buyer pursuant to the Purchase Agreement;

WHEREAS, on January 3, 3025, the Initial Closing under the Purchase Agreement occurred; and

WHEREAS, in accordance with Section 2.05(b) of the Purchase Agreement, Buyer desires to designate the 365 Contracts identified on Exhibit A hereto and incorporated herein (collectively, the "Designated Leases") as "Designated Assets" in furtherance of those certain Lease Termination Agreements in substantially the form annexed hereto as Exhibit B hereto and incorporated herein.

## DESIGNATION OF DESIGNATED ASSET

1.      In accordance with Section 2.05(b) of the Purchase Agreement, Buyer hereby designates the Designated Leases as "Designated Assets" in furtherance of those certain Lease Termination Agreements in substantially the form annexed hereto as Exhibit B hereto and incorporated herein.

---

[1]      The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).  The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2]      All capitalized undefined terms used in this Notice shall have the same meaning as in the Purchase Agreement.

IN WITNESS WHEREOF, this Notice of Designation has been signed by as of the date hereof.

Dated:  February 20, 2025
        Boston, Massachusetts

                                    Respectfully submitted,

                                    **GORDON BROTHERS RETAIL PARTNERS, LLC**


                                    By:  _/s/ David Braun_____
                                        101 Huntington Avenue, 11th Floor
                                        Boston, MA 02199
                                        Email: dbraun@gordonbrothers.com

                                        *Attorney for Gordon Brothers Retail Partners, LLC*

2

**EXHIBIT A**

**DESIGNATED LEASES**

| Store No. | Landlord | Address |
|---|---|---|
| 1765 | Edgewater Park Urban Renewal LLC | 4355 Route 130 Ste. A, Beverly, NJ 08010 |
| 5458 | Cleveland, OH Center, LLC | 14901 Lorain Avenue, Cleveland, OH 44111 |
| 5373 | Zanesville OH Realty, LLC | 3515 Maple Ave., Zanesville, OH 43701 |
| 4133 | Oakland Realty Company Inc. | 15351 East Hampden Avenue, Aurora, CO 80013 |

4225444.1

# LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this 14th day of February, 2025 by and between Edgewater Park Urban Renewal LLC ("Landlord") and Big Lots Stores, LLC ("Tenant" and together with Landlord, the "Parties" and each, a "Party").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain Lease Agreement dated March 1, 2019 (together with any previous modifications or amendments thereto, collectively, the "Lease"), covering certain premises located at Edgewater Park Plaza in Beverly (Edgewater Park) New Jersey (the "Premises"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, pursuant to Section 2.05(b) of that certain Asset Purchase Agreement dated as of January 3, 2025 by and between Tenant and Gordon Brothers Retail Partners, LLC ("Gordon Brothers"), Gordon Brothers has the right to designate certain contracts or leases for assumption and assignment to itself or its designee(s);

WHEREAS, Gordon Brothers is conducting "store closing" or other liquidation sales at certain of Tenant's retail stores and distribution centers (each, a "GOB Sale") and is exercising its designation rights in connection with the disposition or termination of Tenant's leases to be effective upon the conclusion of the applicable GOB Sale (each, a "Vacate Date"); and

WHEREAS, the Parties desire to enter into this Agreement, for the purpose of, among other reasons, restoring Landlord to possession of the Premises as of the Termination Date, releasing one another from claims and causes of action as more fully set forth herein, and enabling Landlord to dispose of any remaining personal property at the Premises in its sole and absolute discretion.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1.    Recitals.  The Recitals are incorporated in this Agreement as if fully set forth herein.

2.    Lease Termination.  Subject to Landlord's prior payment of the Termination Fee, the Lease is terminated effective on the earlier of (i) March 31, 2025; and (ii) the day after the Vacate

Date at the Premises; provided, that Tenant or Gordon Brothers shall give Landlord no less than seven (7) days' advance written notice of the Vacate Date (the "Termination Date"). Except as otherwise expressly provided in this Agreement, Tenant shall remain obligated to comply with all terms, conditions, and obligations under the Lease through and until the Termination Date, including the payment of all rent, unless such obligations are expressly waived or reduced pursuant to this Agreement. As of the Termination Date, the Lease shall terminate and be of no further force or effect, and neither Party shall have any further right, duty, obligation, or liability under the Lease, except as expressly set forth in this Agreement.

3. <u>Tenant Representations and Warranties</u>.

(a) Tenant hereby represents and warrants that the following statements are true as of the Effective Date which shall remain accurate as of the Termination Date:

(i) Tenant holds the entire interest of the "tenant" under the Lease.

(ii) Other than as a result of the GOB Sale, Tenant has not otherwise pledged its interest in the Lease as collateral or otherwise sold, transferred, assigned or subleased all or any portion of the Lease or the Premises.

(iii) Tenant has no knowledge of any claim, injury or cause of action, which has occurred, whether or not filed, by or for any party, relating to the Lease.

(iv) No contracts for the furnishing of any labor or materials with respect to improvements or alterations in or about the Premises have been entered into by Tenant.

(v) No concessions or other rights of use and occupancy of the Premises have been granted by Tenant.

4. <u>Consideration</u>. On or before the Termination Date, Landlord shall pay to Gordon Brothers, via the wiring instructions set forth on <u>Exhibit B</u>, an amount equal to $80,000.00 (the "Termination Fee"). Notwithstanding the foregoing, if Tenant fails to vacate and surrender the Premises by the Termination Date in accordance with the applicable surrender requirements of the Lease or as otherwise set forth herein, Landlord shall have no obligation to pay the Termination Fee, and Tenant shall be deemed a "tenant at sufferance."

5. <u>Landlord Release of Tenant</u>. For valuable consideration, and the mutual covenants and agreements contained herein, and subject to the terms and conditions set forth in this Agreement, Landlord does hereby fully, forever, and irrevocably release, discharge, and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, from and against any and all rights, claims, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of

money, accounts, compensations, contracts, controversies, promises, damages, costs, losses, and expenses of every type, kind, nature, description, or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, provided, however, that such release shall only become effective as of the Termination Date. Notwithstanding the foregoing, the following items shall be excluded from this release and shall survive the termination of the Lease: (i) Tenant's obligations that expressly survive the termination of the Lease, as indicated in the Lease; and (ii) the provisions, obligations, and covenants of Tenant under this Agreement.

6.    <u>Tenant Release of Landlord</u>. For valuable consideration, and the mutual covenants and agreements contained herein, and subject to the terms and conditions set forth in this Agreement, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, from and against any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, provided, however, that such release shall only become effective as of the Termination Date. Notwithstanding the foregoing, the following items shall be excluded from this release and shall survive the termination of the Lease, (i) Landlord's obligations that expressly survive the termination of the Lease, as indicated in the Lease; and (ii) the provisions, obligations and covenants of Landlord under this Agreement.

7.    <u>Acknowledgment of Unknown Claims</u>. The Parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the Parties further agree, represent and warrant that the releases set forth herein have been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the released parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

8.    <u>Conditions Precedent</u>. As a condition precedent to the effectiveness of this

3

Agreement, each and all of the following shall have occurred no later than the Termination Date:

        (a)      Landlord has delivered the Termination Fee to the Tenant; and

        (b)      An order approving this Agreement in its entirety shall have been entered by the Bankruptcy Court. Upon the full execution of this Agreement, Tenant shall, at its sole cost and expense, take all necessary actions with the Bankruptcy Court to obtain such order promptly and in accordance with applicable law and procedure.

      9.     <u>Other Obligations of Tenant</u>.  On or before the Termination Date:

        (a)      Tenant shall continue to make all Fixed Minimum Rent and Additional Rent payments as and when due, in accordance with the applicable terms of the Lease;

        (b)      Subject to Section 10, hereof, Tenant shall deliver possession of the Premises to Landlord in accordance with the surrender provisions of the Lease; and

        (c)      Tenant shall deliver to Landlord the keys and access codes to the Premises (or written confirmation that Landlord is authorized to change the locks).

      10.    <u>Furniture, Fixtures and Equipment</u>. Any furniture, fixtures and equipment ("<u>FF&E</u>") remaining at the Premises after the Termination Date is deemed abandoned and the Landlord and their managing agents are free to dispose of the FF&E in their sole and absolute discretion without liability to Tenant.

      11.    <u>Authority to Settle</u>. Each of the Parties respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby. Each of the Parties respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

      12.    <u>Third Party Beneficiaries</u>.  This Agreement is expressly intended to confer rights and benefits upon Gordon Brothers, and Gordon Brothers shall have the right to enforce the provisions of this Agreement.

      13.    <u>Entire Agreement</u>.  This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement and supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the Parties respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement.  Each of the Parties further acknowledges that such party is not executing this

Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

14.    <u>Advice of Counsel</u>. Each of the Parties respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or had the opportunity to have, the same explained to it by its own counsel.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

15.    <u>Attorneys' Fees</u>.  Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

16.    <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the Parties agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

17.    <u>Governing Law</u>. This Agreement shall be governed by and construed under the laws of the State of New Jersey, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

18.    <u>Jurisdiction</u>. The Parties consent to the exclusive jurisdiction of, and entry of final orders and judgments by, the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the foregoing Agreement is dated effective as of the date and year first written above.

**EDGEWATER PARK URBAN RENEWAL LLC**

By: _____

Name: _____Joel Waldman_____

Title: _____Member_____

**BIG LOTS STORES, LLC**

By: _____

Name: _____Joshua H. Nanberg_____

Title: _____VP, Real Estate_____

Big Lots Store No. 5458
Cleveland, OH
Landlord: Cleveland, OH Center, LLC

## <u>LEASE TERMINATION AGREEMENT</u>

This Lease Termination Agreement (the "<u>Agreement</u>") is made as of this ___ day of
February, 2025 by and between Cleveland, OH Center, LLC ("<u>Landlord</u>") and Big Lots Stores -
CSR LLC ("<u>Tenant</u>" and together with Landlord, the "<u>Parties</u>" and each, a "<u>Party</u>").

## <u>RECITALS</u>

WHEREAS, Landlord and Tenant entered into a certain lease dated September 3, 2021 (the
"<u>Lease</u>"), covering certain premises located at 14901 Lorain Avenue, Cleveland, OH 44111 (the
"<u>Premises</u>"), on the terms and conditions set forth therein;

WHEREAS, on September 9, 2024 (the "<u>Petition Date</u>") Tenant, along with its affiliated
debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of
Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "<u>Bankruptcy Code</u>"),
in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>");

WHEREAS, pursuant to Section 2.05(b) of that certain Asset Purchase Agreement dated as
of January 3, 2025 by and between Tenant and Gordon Brothers Retail Partners, LLC ("<u>Gordon
Brothers</u>"), Gordon Brothers has the right to designate certain contracts or leases for assumption and
assignment to itself or its designee(s);

WHEREAS, Gordon Brothers is conducting "store closing" or other liquidation sales at
certain of Tenant's retail stores and distribution centers (each, a "<u>GOB Sale</u>") and exercising
designation rights with respect to the disposition or termination of Tenant's leases to be effective upon
the conclusion of the applicable GOB Sale (each, a "<u>Vacate Date</u>"); and

WHEREAS, Landlord has prepetition and/or postpetition sums due and owing from Tenant.
The Parties desire to enter into this Agreement, for the purpose of, among other reasons, restoring
Landlord to possession of the Premises as of the Termination Date, releasing one another from claims
and causes of action, and enabling Landlord to dispose of any remaining personal property at the
Premises in its sole and absolute discretion.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained
herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby
covenant and agree as follows subject only to an order of the Bankruptcy Court approving this
Agreement:

1

Big Lots Store No. 5458
Cleveland, OH
Landlord: Cleveland, OH Center, LLC

## **AGREEMENT**

1.  <u>Recitals</u>.  The Recitals are incorporated in this Agreement as if fully set forth herein.

2.  <u>Lease Termination</u>.  Subject to Landlord's prior payment of the Termination Fee, the Lease is terminated effective on the earlier of (i) March 31, 2025; and (ii) the day after the Vacate Date at the Premises; <u>provided</u>, that Tenant or Gordon Brothers shall give Landlord no less than seven (7) days' advance written notice of the Vacate Date (the "<u>Termination Date</u>").

3.  <u>Consideration</u>.  On or before the Termination Date, Landlord shall pay to Gordon Brothers, via the wiring instructions set forth on <u>Exhibit A,</u> an amount equal to $10,000.00 (the "<u>Termination Fee</u>").

4.  <u>Waiver and Retention of Claims</u>.  Landlord agrees to waive any and all claims for (i) unpaid Lease obligations arising, accruing, or relating to the period prior to the Petition Date, including cure claims and Lease rejection damage claims.  However, Landlord expressly preserves the right to payment of any unpaid Lease obligations arising, accruing, coming due, or relating to the period after the Petition Date.

5.  <u>Landlord Release of Tenant</u>.  For valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, except for the following items, which shall survive the termination of the Lease, (i) Tenant's obligations that expressly survive the termination of the Lease, as indicated in the Lease; (ii) the provisions, obligations and covenants of Tenant under this Agreement; and (iii) any indemnification obligations arising from third-party claims asserted with respect to or arising from Tenant's use and occupancy of the Premises on or prior to the Termination Date for which Tenant had a duty to indemnify Landlord pursuant to the Lease, with respect to which

2

Big Lots Store No. 5458
Cleveland, OH
Landlord: Cleveland, OH Center, LLC

Tenant was required to maintain insurance coverage pursuant to the Lease; this paragraph shall expressly survive the expiration and/or termination of the Lease.

6.      <u>Tenant Release of Landlord</u>. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, except for the following items, which shall survive the termination of the Lease, (i) Landlord's obligations that expressly survive the termination of the Lease, as indicated in the Lease; and (ii) the provisions, obligations and covenants of Landlord under this Agreement.

7.      As further consideration for this Release, the parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

8.      In this connection, the Parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses

3

4906-4276-2262v.1

Big Lots Store No. 5458
Cleveland, OH
Landlord: Cleveland, OH Center, LLC

that are presently unknown, unanticipated, and unsuspected, and the Parties further agree, represent and warrant that the releases set forth herein have been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the released parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

9.    <u>Conditions Precedent</u>.    As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)    Landlord has delivered the Termination Fee to the Tenant;

(b)    Tenant has delivered possession of the Premises to Landlord;

(c)    Tenant has delivered to Landlord the keys and access codes to the Premises (or written confirmation that Landlord is authorized to change the locks); and

(d)    An order of the Bankruptcy Court has been entered approving the entirety of this Agreement.

10.    <u>Furniture, Fixtures and Equipment</u>. Any furniture, fixtures and equipment ("<u>FF&E</u>") remaining at the Premises after the Termination Date is deemed abandoned and the Landlord and their managing agents are free to dispose of the FF&E in their sole and absolute discretion without liability to Tenant.

11.    <u>Authority to Settle</u>. Each of the Parties respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the Parties respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

12.    Third Party Beneficiaries.  This Agreement is expressly intended to confer rights and benefits upon Gordon Brothers, and Gordon Brothers shall have the right to enforce the provisions of this Agreement.

13.    <u>Entire Agreement</u>.  This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement and supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the Parties

4

Big Lots Store No. 5458
Cleveland, OH
Landlord: Cleveland, OH Center, LLC

respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the Parties further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

14.     <u>Advice of Counsel</u>. Each of the Parties respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or had the opportunity to have, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

15.     <u>Attorneys' Fees</u>. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

16.     <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the Parties agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

17.     <u>Governing Law</u>. This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

18.     <u>Jurisdiction</u>. The Parties consent to the exclusive jurisdiction of, and entry of final orders and judgments by, the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

*[Signature Pages Follow]*

5

4906-4276-2262v.1

Big Lots Store No. 5458
Cleveland, OH
Landlord: Cleveland, OH Center, LLC

IN WITNESS WHEREOF, the foregoing Agreement is dated effective as of the date and year first written above.

**[LANDLORD]**

By: _____
Name: Andrew Greene
Title: Vice President

**[BIG LOTS TENANT]**

By: _____
Name: Joshua H. Nanberg
Title: VP, Real Estate

4906-4276-2262v.1

Big Lots Store No. 5373
Zanesville, OH
Landlord: Zanesville OH Realty, LLC

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "<u>Agreement</u>") is made as of this <u>19</u> day of February, 2025 by and between Zanesville OH Realty, LLC ("<u>Landlord</u>") and Big Lots Stores - CSR LLC ("<u>Tenant</u>" and together with Landlord, the "<u>Parties</u>" and each, a "<u>Party</u>").

## RECITALS

WHEREAS, Landlord and Tenant entered into a certain lease dated March 15, 2018 (the "<u>Lease</u>"), covering certain premises located at 3515 Maple Ave., Zanesville, OH 43701 (the "<u>Premises</u>"), on the terms and conditions set forth therein;

WHEREAS, on September 9, 2024 (the "<u>Petition Date</u>") Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "<u>Bankruptcy Code</u>"), in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>");

WHEREAS, pursuant to Section 2.05(b) of that certain Asset Purchase Agreement dated as of January 3, 2025 by and between Tenant and Gordon Brothers Retail Partners, LLC ("<u>Gordon Brothers</u>"), Gordon Brothers has the right to designate certain contracts or leases for assumption and assignment to itself or its designee(s);

WHEREAS, Gordon Brothers is conducting "store closing" or other liquidation sales at certain of Tenant's retail stores and distribution centers (each, a "<u>GOB Sale</u>") and exercising designation rights with respect to the disposition or termination of Tenant's leases to be effective upon the conclusion of the applicable GOB Sale (each, a "<u>Vacate Date</u>"); and

WHEREAS, Landlord has prepetition and/or postpetition sums due and owing from Tenant. The Parties desire to enter into this Agreement, for the purpose of, among other reasons, restoring Landlord to possession of the Premises as of the Termination Date, releasing one another from claims and causes of action, and enabling Landlord to dispose of any remaining personal property at the Premises in its sole and absolute discretion.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement:

1

4924-6276-2518v.2

Big Lots Store No. 5373
Zanesville, OH
Landlord: Zanesville OH Realty, LLC

## **AGREEMENT**

1.      Recitals.  The Recitals are incorporated in this Agreement as if fully set forth herein.

2.      Lease Termination.  Subject to Landlord's prior payment of the Termination Fee, the Lease is terminated effective on the earlier of (i) March 31, 2025; and (ii) the day after the Vacate Date at the Premises; provided, that Tenant or Gordon Brothers shall give Landlord no less than seven (7) days' advance written notice of the Vacate Date (the "Termination Date").

3.      Consideration.  On or before the Termination Date, Landlord shall pay to Gordon Brothers, via the wiring instructions set forth on Exhibit A, an amount equal to $10,000.00 (the "Termination Fee").

4.      Waiver and Retention of Claims.  Landlord agrees to waive any and all claims for (i) unpaid Lease obligations arising, accruing, or relating to the period prior to the Petition Date, including cure claims and Lease rejection damage claims.  However, Landlord expressly preserves the right to payment of any unpaid Lease obligations arising, accruing, coming due, or relating to the period after the Petition Date.

5.      Landlord Release of Tenant.  For valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, except for the following items, which shall survive the termination of the Lease, (i) Tenant's obligations that expressly survive the termination of the Lease, as indicated in the Lease; (ii) the provisions, obligations and covenants of Tenant under this Agreement; and (iii) any indemnification obligations arising from third-party claims asserted with respect to or arising from Tenant's use and occupancy of the Premises on or prior to the Termination Date for which Tenant had a duty to indemnify Landlord pursuant to the Lease (but only to the extent

2

Big Lots Store No. 5373
Zanesville, OH
Landlord: Zanesville OH Realty, LLC

that such claims are covered by Tenant's insurance policies and on the condition that Landlord only seeks recovery from the insurer and only up to the insured amount). This paragraph shall expressly survive the expiration and/or termination of the Lease.

6.      <u>Tenant Release of Landlord</u>. For valuable consideration, and the mutual covenants and agreements contained herein, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, except for the following items, which shall survive the termination of the Lease, (i) Landlord's obligations that expressly survive the termination of the Lease, as indicated in the Lease; and (ii) the provisions, obligations and covenants of Landlord under this Agreement.

7.      As further consideration for this Release, the parties hereto, for themselves and their successors and assigns, hereby agree, represent and warrant that the matters released herein are not limited to matters that are known or disclosed, and the parties hereby waive any and all rights and benefits that they now have, or in the future may have, conferred upon it by virtue of the provisions of Section 1542 of the Civil Code of the State of California (or any other statute or common law principles of similar effect), which Section provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTORS.

8.      In this connection, the Parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give

3

Big Lots Store No. 5373
Zanesville, OH
Landlord: Zanesville OH Realty, LLC

rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the Parties further agree, represent and warrant that the releases set forth herein have been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the released parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

9.    <u>Conditions Precedent</u>.    As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a)    Landlord has delivered the Termination Fee to the Tenant;

(b)    Tenant has delivered possession of the Premises to Landlord;

(c)    Tenant has delivered to Landlord the keys and access codes to the Premises (or written confirmation that Landlord is authorized to change the locks); and

(d)    An order of the Bankruptcy Court has been entered approving the entirety of this Agreement.

10.    <u>Furniture, Fixtures and Equipment</u>. Any furniture, fixtures and equipment ("<u>FF&E</u>") remaining at the Premises after the Termination Date is deemed abandoned and the Landlord and their managing agents are free to dispose of the FF&E in their sole and absolute discretion without liability to Tenant.

11.    <u>Authority to Settle</u>. Each of the Parties respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the Parties respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

12.    Third Party Beneficiaries.  This Agreement is expressly intended to confer rights and benefits upon Gordon Brothers, and Gordon Brothers shall have the right to enforce the provisions of this Agreement.

13.    <u>Entire Agreement</u>.  This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement and supersedes and

4

Big Lots Store No. 5373
Zanesville, OH
Landlord: Zanesville OH Realty, LLC

replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the Parties respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the Parties further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

14.   Advice of Counsel. Each of the Parties respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or had the opportunity to have, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

15.   Attorneys' Fees. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

16.   Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the Parties agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

17.   Governing Law. This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

18.   Jurisdiction. The Parties consent to the exclusive jurisdiction of, and entry of final orders and judgments by, the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

5

Big Lots Store No. 5373
Zanesville, OH
Landlord: Zanesville OH Realty, LLC

*[Signature Pages Follow]*

2

Big Lots Store No. 5373
Zanesville, OH
Landlord: Zanesville OH Realty, LLC

      IN WITNESS WHEREOF, the foregoing Agreement is dated effective as of the date and year first written above.

**Zanesville OH Realty, LLC**

By: _____

Name: Andrew Greene

Title: Vice President

**Big Lots Stores - CSR LLC**

By: _____

Name: Joshua H. Nanberg

Title: VP, Real Estate

4924-6276-2518v.2

## LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this $\underline{19}$ day of February, 2025 by and between OAKLAND REALTY COMPANY INC, a Delaware corporation ("Landlord") and BIG LOTS STORES - PNS STORES, INC., a California limited liability company ("Tenant" and together with Landlord, the "Parties" and each, a "Party").

## RECITALS

WHEREAS, Landlord, as ultimate successor-in-interest to Paul E. Taylor Jr., as Trustee for the use and benefit of Corporate Property Investors, and Tenant, as ultimate successor-in-interest to Safeway Stores, Incorporated, are parties to that certain Grocery Supermarket Lease dated December 1, 1974 (as amended and assigned, the "Lease"), covering certain premises located at 15351 East Hampden Avenue, Aurora, Arapahoe County, Colorado (the "Premises"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which chapter 11 cases are being jointly administered under Case No. 24-11967, entitled In Re: Big Lots Stores, Inc. et al. (the "Bankruptcy Action");

WHEREAS, in connection with the Bankruptcy Action, the Bankruptcy Court has issued or shall issue an order authorizing the sale of all or substantially all of Tenant's assets to Gordon Brothers Retail Partners, LLC ("Gordon Brothers"), pursuant to the terms of that certain Asset Purchase Agreement dated as of January 3, 2025 by and between Tenant and Gordon Brothers;

WHEREAS, pursuant to Section 2.05(b) of the Asset Purchase Agreement, Gordon Brothers has the right to designate certain contracts or leases for assumption and assignment to itself or its designee(s);

WHEREAS, Gordon Brothers is conducting "store closing" or other liquidation sales at certain of Tenant's retail stores and distribution centers (each, a "GOB Sale") and exercising designation rights with respect to the disposition or termination of Tenant's leases to be effective upon the conclusion of the applicable GOB Sale (each, a "Vacate Date"); and

WHEREAS, Landlord has prepetition and/or postpetition sums due and owing from Tenant. The Parties desire to enter into this Agreement, for the purpose of, among other reasons, restoring Landlord to possession of the Premises as of the Termination Date, releasing one another from claims and causes of action, and enabling Landlord to dispose of any remaining personal property at the Premises in its sole and absolute discretion.

1

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement:

## AGREEMENT

1.  <u>Recitals</u>. The Recitals are incorporated in this Agreement as if fully set forth herein.

2.  <u>Lease Termination</u>. Subject to satisfaction in full of the conditions precedent set forth in Section 7 of this Agreement, the Lease is terminated effective on the earlier of (i) March 31, 2025; and (ii) the day after the Vacate Date at the Premises (the "<u>Termination Date</u>"). Tenant or Gordon Brothers shall give Landlord no less than seven (7) days' advance written notice of the Vacate Date (the "<u>Vacate Date Notice</u>"), and the Vacate Date set forth in such Vacate Date Notice shall be binding upon the Parties as the Vacate Date. Tenant shall cause Gordon Brothers to vacate and surrender possession of the Property on the Vacate Date set forth in the Vacate Date Notice, notwithstanding whether or not Gordon Brothers shall have completed the GOB Sale on the Property. For avoidance of ambiguity, the Parties hereby acknowledge and agree that the Termination Date shall occur no later than March 31, 2025, except as otherwise expressly agreed in an instrument executed by each of the Parties. From and after the Termination Date, the Lease, and all rights and obligations of the Parties thereunder, shall be null and void and of no further effect, except any obligations which by the express terms of the Lease and/or this Agreement survive termination of the Lease. On or prior to the Termination Date, (a) Tenant shall peacefully relinquish and surrender, or cause to be peacefully relinquished and surrendered, possession of the Premises to Landlord in good condition, subject to ordinary wear and tear and damage by fire, earthquake or the elements, and otherwise in the condition required under the Lease, subject however to Tenant's right to abandon any all, furniture, fixtures and equipment or other personal property in the Premises in accordance with <u>Section 8 hereof</u>, and Landlord shall accept such surrender; (b) convey, grant and surrender unto Landlord all of Tenant's right, title and interest in and to the Premises, and Landlord shall accept such right, title and interest; (c) reasonably coordinate with Landlord in connection with the transfer of utilities serving the Premises, including, without limitation, providing to Landlord all utility account information as may be reasonably requested by Landlord; and (d) deliver or provide to Landlord all keys, security cards, access and alarm codes and similar security devices in the possession and control of Tenant, its employees, agents, contractors and successors (or provide written confirmation that Landlord is duly authorized to change the locks). Notwithstanding anything to the contrary contained in this Agreement, including, without limitation, Section 5 hereof, from the date of this Agreement through and including the Vacate Date, Tenant agrees that it shall continue to perform or caused to be performed all obligations of Tenant under the Lease, including, without limitation, payment of rent and all other sums due and payable under the Lease. Further, Tenant acknowledges and agrees that from and after the date of execution of this Agreement, (a) Landlord shall have the right to immediately market the Premises for lease, and (b) neither Tenant nor Gordon Brothers shall market the Lease, and Tenant and Gordon Brothers shall remove the Lease from any

2

further sale process, and shall instruct their respective representatives, advisors and agents accordingly.

      3.     <u>Consideration</u>.

      A.     <u>Termination Fee</u>. On or before the Termination Date, Landlord shall pay to Gordon Brothers, via the wiring instructions set forth on <u>Exhibit A</u>, an amount equal to Seventy-Six Thousand and 00/100 Dollars ($76,000.00) (the "<u>Termination Fee</u>"), less the Special Assessment Credit set forth in Section 3.B below. Landlord and Tenant hereby acknowledge and agree that the Termination Fee was mutually negotiated by the Parties, represents full and fair consideration for the termination and releases set forth in this Agreement, and that no portion of the Termination Fee constitutes a fine or penalty.

      B.     <u>Special Assessment</u>. Landlord and Tenant hereby acknowledge and agree that certain liens were heretofore imposed against the Property by the City of Aurora for the removal of trash and debris and/or weed cutting, boardup, snow or graffiti violations, which liens were recorded against the Property pursuant to that certain (i) Notice of Assessment of Lien recorded in the office of the Arapahoe County, Colorado Clerk on July 11, 2024 as Instrument Number E4044317 in the amount of One Thousand Sixty and 23/100 Dollars ($1,060.23) and (ii) Notice of Assessment of Lien recorded in the office of the Arapahoe County, Colorado Clerk on August 22, 2024 as Instrument Number E4054462 in the amount of One Thousand Six Hundred Twenty and 00/100 Dollars ($1,620.00) (collectively, the "<u>Liens</u>"). The Liens, together with fines and penalties, are now due and payable to the Arapahoe County Treasurer (the "<u>Treasurer</u>") as a special assessment in the aggregate amount of Four Thousand Nine Hundred Twenty-Two and 40/100 Dollars ($4,922.40) (the "<u>Special Assessment</u>"). The Parties further acknowledge and agree that, pursuant to the Terms of the Lease, Tenant is responsible for payment of the Special Assessment and discharge of the Liens. Notwithstanding the foregoing or anything to the contrary contained herein, the Parties hereby agree that Landlord shall offset and deduct from the Termination Fee payable to Tenant pursuant to Section 3.A above the full amount of the Special Assessment (such offset and deduction is herein referred to as the "<u>Special Assessment Credit</u>"), such that the net amount payable by Landlord to Tenant shall be Seventy-One Thousand Seventy-Seven and 60/100 ($71,077.60). On or prior to the Termination Date, Landlord shall pay or cause to be paid to the Treasurer the Special Assessment, and Tenant shall have no further obligation with respect to the Liens or Special Assessment.

      4.     <u>Landlord Release of Tenant</u>. Subject to the entry by the Bankruptcy Court of an order approving this Agreement, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and the mutual covenants and agreements contained herein, effective as of the Termination Date, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now,

previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease (collectively, "Claims"), except for the following items, which shall survive the termination of the Lease and for which Tenant is not released: (i) Tenant's obligations that expressly survive the termination of the Lease, as indicated in the Lease; (ii) any Claims arising in connection with the environmental liability of Tenant, including, without limitation, any Claims arising as a result of or in connection with the unlawful discharge, storage or handling of any hazardous substances on, in or under the Premises by Tenant or its employees, agents, contractors, invitees, representatives, assigns and subtenants, or any other violation of any environmental law by Tenant, its employees, agents, contractors, invitees, representatives, assigns and subtenants accruing or arising prior to the Termination Date; (iii) any Claims by third parties, including without limitation personal injury claims or mechanic's liens that have been or may be filed with respect to the Premises, or any indemnification obligations arising from Claims by third parties, arising from or in connection with Tenant's or any of its agent's use and occupancy of the Premises prior to the Termination Date and/or any act, omission or obligation of Tenant or any of its agents under the Lease arising or accruing prior to the Termination Date; and (iv) the provisions, obligations and covenants of Tenant under this Agreement.

5.    <u>Tenant Release of Landlord</u>. Subject to the entry by the Bankruptcy Court of an order approving of this Agreement, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and the mutual covenants and agreements contained herein, effective as of the Termination Date, Tenant does hereby fully, forever and irrevocably release, discharge and acquit Landlord, Kin Properties, as managing agent of Landlord, and their respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, avoidance actions under chapter 5 of the Bankruptcy Code, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein

4

at length, including, without limitation, any and all claims evidenced by the Lease, except for the following items, which shall survive the termination of the Lease and for which Landlord is not released: (i) Landlord's obligations that expressly survive the termination of the Lease, as indicated in the Lease; and (ii) the provisions, obligations and covenants of Landlord under this Agreement.

6.      Subject to the provisions of Section 4(i) through (iv) of this Agreement, the Parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the Parties further agree, represent and warrant that the releases set forth herein have been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the released Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

7.      <u>Conditions Precedent</u>.

A.      <u>Conditions Precedent to Tenant's Obligations</u>. As a condition precedent to Tenant's obligation to consummate the termination of the Lease pursuant to the terms of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(i)      Landlord has delivered the Termination Fee to Gordon Brothers pursuant to the wire instructions attached hereto as <u>Exhibit A</u> and made a part hereof;

(ii)     An order has been entered by the Bankruptcy Court approving the entirety of this Agreement. Tenant shall exercise diligent, good faith efforts to cause such order to be entered by the Bankruptcy Court as soon as reasonably practicable and shall reasonably cooperate with any and all requirements of the Bankruptcy Court as necessary in connection with the issuance of said order.

In the event the condition precedent set forth in <u>Section 7.A(i)</u> shall not be satisfied on or prior to the Termination Date, provided Tenant shall have satisfied all of the conditions of Landlord pursuant to <u>Section 7.B(i)</u> and Section 7.B(ii) below, Tenant shall have the right to: (i) terminate this Agreement upon written notice to Landlord, in which event this Agreement and the provisions hereof, including, without limitation, the Parties' agreement to terminate the Lease, shall be null and void and of no further effect, and the Lease shall continue and remain in full force and effect, binding upon the Parties in accordance with the terms thereof; and/or (ii) pursue any and all rights and remedies available to Tenant under the Lease with respect to a Landlord default, at law or in equity, including, without limitation, the right to file an action

with or otherwise pursue relief from the Bankruptcy Court.

B.    Conditions Precedent to Landlord's Obligations. As a condition precedent to Landlord's obligation to consummate the termination of the Lease pursuant to the terms of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(i)    Tenant has delivered possession of the Premises to Landlord in the condition required under the Lease and Section 2 of this Agreement;

(ii)    Tenant has delivered to Landlord the keys and access codes to the Premises (or written confirmation that Landlord is authorized to change the locks); and

(iii)    An order has been entered by the Bankruptcy Court approving the entirety of this Agreement.

In the event the conditions precedent set forth in Section 7.B(i) and/or Section 7.B(ii) shall not be satisfied on or prior to the Termination Date, provided Landlord shall have satisfied all of the conditions of Landlord pursuant to Section 7.A(i) above, then without limitation of any rights and remedies of Landlord upon a Tenant default under the Lease, Landlord shall have the right to: (i) terminate this Agreement upon written notice to Tenant, in which event this Agreement and the provisions hereof, including, without limitation, the Parties' agreement to terminate the Lease, shall be null and void and of no further effect, and the Lease shall continue and remain in full force and effect, binding upon the Parties in accordance with the terms thereof; and/or (ii) pursue any and all rights and remedies available to Landlord under the Lease with respect to a Tenant default, at law or in equity, including, without limitation, the right to file an action with or otherwise pursue relief from the Bankruptcy Court. Additionally, and without limitation of the foregoing, in the event the conditions precedent set forth in Section 7.B(i) and/or Section 7.B(ii) shall not be satisfied on or prior to the Termination Date, provided Landlord shall have satisfied the condition of Landlord pursuant to Section 7.A(i) above, Tenant shall immediately refund to Landlord, or shall cause Gordon Brothers to immediately refund to Landlord, the Termination Fee in its entirety.

C.    Failure of Condition Precedent as to Entry of Order by the Bankruptcy Court. In the event the conditions precedent set forth in Section 7.A(ii) and Section 7.B(iii) are not satisfied, each of the Parties shall have the right, but not the obligation, to either: (i) terminate this Agreement upon written notice to the Parties, in which event the Termination Fee in full shall be immediately refunded to Landlord, or (ii) agree to extend the Termination Date to a date mutually agreed upon by the Parties, which right shall only be effective if agreed upon in a written instrument signed by each of the Parties.

6

8.    Furniture, Fixtures and Equipment.  Any furniture, fixtures and equipment ("FF&E") remaining at the Premises after the Termination Date is deemed abandoned and the Landlord and Kin and their respective employees, agents and contractors are free to dispose of the FF&E in their sole and absolute discretion without liability to Tenant, and Tenant hereby waives any claims of any kind or nature whatsoever in connection therewith.

9.    Authority to Settle. Each of the Parties respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims contemplated to be resolved hereby.  Each of the Parties respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

10.    Third Party Beneficiary.  This Agreement is expressly intended to confer rights and benefits upon Gordon Brothers (but no other person or entity), and Gordon Brothers (but no other person or entity) shall have the right to enforce the provisions of this Agreement.

11.    Entire Agreement.  This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement and supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  Each of the Parties respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the Parties further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

12.    Advice of Counsel. Each of the Parties respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or had the opportunity to have, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13.    Attorneys' Fees.  Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14.    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the Parties agrees that electronic, digital or scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is so executed to the same extent as if it were its original signature.

15.    <u>Governing Law</u>. This Agreement shall be governed by and construed under the laws of the State of Colorado, without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

16.    <u>Jurisdiction</u>. To the fullest extent permitted by applicable law, the Parties consent to the exclusive jurisdiction of, and entry of final orders and judgments by, the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

17.    <u>Miscellaneous</u>.

A.    The headings of the sections of this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement. This Agreement and its terms, provisions, covenants and conditions may not be amended, changed, altered, modified or waived except by an express instrument in writing signed by each and all of the parties hereto.

B.    This Agreement and each of its provisions are binding upon and shall inure to the benefit of the Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under Chapter 7 or 11 of the Bankruptcy Code.

C.    Each of the parties to this Agreement shall take all reasonably necessary steps, cooperate, and use commercially reasonable efforts, good faith efforts to obtain and achieve the objectives and fulfill the obligations of this Agreement. Each of the parties hereto shall cooperate with each other and shall execute and deliver any and all additional written notices, papers, documents, and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder and to carry out the intent of this Agreement.

D.    Subject to the provisions of <u>Section 13</u> of this Agreement, each of the parties to this Agreement shall pay all of its own legal fees, costs, and any other expenses incurred or to be incurred in connection with the consummation of this Agreement.

E.      Tenant acknowledges and agrees that Landlord shall have no obligation to pay a broker commission or any other compensation to any broker or real estate consultant engaged by Tenant with respect to this Agreement.

F.      No provision of this Agreement shall be construed against any party hereto by reason of such party's being deemed to have drafted or structured such provisions.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the foregoing Agreement is dated effective as of the date and year first written above.

OAKLAND REALTY COMPANY INC.,
a Delaware corporation

By: _____

Name: _____ ANDREW M. SCHREIER _____

Title: _____ VICE PRESIDENT _____

Approved
as to form _cm_
Date _2-14-25_

BIG LOTS STORES - PNS STORES, INC.,
a California limited liability company

Signed by:
By: _____ Joshua H. Nanberg _____
AB5634F80C07429...
Name: Joshua H. Nanberg

Title: VP, Real
Estate