**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*,[1] | Case No. 24-11967 (JKS) |
| Debtors. | (Jointly Administered) |
| | Re: Docket No. **1964** |
| | Objection Deadline: February 24, 2025 at 4:00 p.m. (ET) |

**LIMITED OBJECTION OF TOWN N' COUNTRY PLAZA, LLC F/K/A TOWN N'**
**COUNTRY PLAZA, L.P. TO DEBTORS' NOTICE OF FILING EIGHTH POST-**
**CLOSING DESIGNATION NOTICE [D.I. 1964]**
**AND RESERVATION OF RIGHTS**

Town N' Country Plaza, LLC f/k/a Town N' Country Plaza, L.P. (the "Landlord"), by and

through its undersigned counsel, hereby files this limited objection (the "Objection") to the

Debtors' proposed assumption and assignment of lease, including the proposed cure amount

indicated in the Notice of Filing of Eighth Post-Closing Designation Notice [D.I. 1964] (the

"Notice") and the matters sought to be waived in paragraphs 5 and 9 of Exhibit "D" thereto, and

in support of its Objection, Landlord respectfully represents as follows:

**BACKGROUND**

1.      Landlord and Big Lots Stores, Inc. (n/k/a Big Lots Stores, LLC) (the "Debtor") are

parties to that certain lease agreement originally dated September 15, 1994, as subsequently

extended on April 24, 2006, July 29, 2011, and May 13, 2016 (and as may have been further

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081

amended, supplemented, or otherwise modified, the "Lease"). The Lease relates to approximately retail space located in the Landlord's shopping center located at 7565 W. Hillsborough Ave., Tampa, FL (the "Leased Premises").  Copies of the Lease documents are attached as Composite Exhibit "A."  Landlord converted from a limited partnership to a limited liability company in 2021.

2.      The Debtors filed voluntary petitions for relief under Chapter 11 of the United States Code on September 9, 2024 ("Petition Date"). The Debtors have remained in possession of the estates' assets and continue to manage their financial affairs pursuant to 11 U.S.C. §§ 1107 and 1108.

3.      On February 10, 2025, the Debtors filed the Notice (D.I. 1964), in which the Debtors provided notice of the potential assignment (the "Proposed Assignment") of the Lease to "Fine Furniture Décor (d/b/a Fine Gallery, LLC) (the "Assignee").

4.      In the Notice, the Debtors include a proposed cure cost of $55,415.37 (the "Proposed Cure Amount").

5.      Exhibit "D" to the Notice is a proposed "Order Pursuant to Sections 363 and 365 of the Bankruptcy Code Authorizing the Debtors-in-Possession to Assume, Assign and Sell Certain Nonresidential Leases" (the "Proposed Order").

6.      Paragraphs 5 and 9, as well as other directives in the Proposed Order would substantially alter the Lease by rendering several material provisions of the Lease unenforceable and waive the Landlord's objections the nonconformance with or breaches of such provisions.

7.      The deadline to file objections to the Proposed Assignment and Proposed Cure Amount is February 24, 2025, at 4:00 p.m.

**OBJECTION**

8.      Prior to any assumption or assignment of unexpired leases in these bankruptcy

cases, the debtor is required by section 365(b)(1) of the Bankruptcy Code to provide adequate assurance (a) that the debtor will promptly cure all defaults under the unexpired leases to be assumed and assigned and (b) of the future performance of a proposed assignee under the terms of an unexpired leases sought to be assumed and assigned.

### Cure Amount and Adequate Assurance

9.      As of the date of this filing, the Debtors owe $50,577.19 in rent and other unpaid charges under the Lease.  Copies of the documents supporting the Actual Cure Amount are attached as Composite Exhibit "B."  In addition, the Landlord is in the process of finalizing the reconciliation for the common area charges for the Plaza and anticipates that the Debtor's share of the expenses will be approximately $36,179.90.  The Landlord also received a payment in the amount of $13,880.80 but is unclear of the purpose of the payment and which charges were intended to be paid by the payment.  The Landlord anticipates that taking these three matters into account, the actual cure amount is approximately $86,354.75 (the "Actual Cure Amount").  Depending on the purpose of the $13,880.80 payment, the Debtor and Assignee may be due a credit against the Actual Cure Amount.  Additionally, there may also be sums due for percentage rent under the Lease that may affect an increase of the Actual Cure Amount if the Debtor provides information regarding its sales.  Therefore, the Debtors must not only satisfy the Actual Cure Amount, but the Debtors must also provide adequate assurance that Assignee will be able to perform under the Lease in the future, before the Debtors may assume and assign the Lease.

10.      To the extent there is a dispute over the total cure obligation for the Lease, all undisputed cure amounts should be paid upon assumption and assignment of the Lease. The Debtors should be required to escrow any disputed amounts, and the Court conduct a further proceeding within thirty (30) days of the assumption of the Lease to deal with any disputes that

remain unresolved after such period.

11.    Further, the Debtors proposed assumption and assignment of the Lease is subject to all terms of the Lease, including all obligations due and owing under the Lease such obligations that may have accrued, but may not have been billed under the Lease. By way of limited example, the Debtors are responsible for real estate taxes and any "true up" charges for common area maintenance charges each year.

12.    As further example the Leased Premises suffered damage during Hurricane Helene and/or Hurricane Milton. At present, it appears that the Debtors are remediating or repairing the damage, but to the extent it is not remediated or repaired at the time of the Proposed Assignment, Assignee should be required to provide adequate assurance that it will discharge the Debtors' repair obligations under the Lease.

13.    As the Landlord has been provided with the proposed assumption and assignment agreement, however any final assumption and assignment of the Lease should clearly state that Assignee will assume these lease obligations and pay and perform them when due, regardless of whether they relate to the period prior to, or after, the proposed assumption and assignment.

14.    Any release in favor of the Debtors of further liability based upon a payment of cure amounts, must specify that such release does not apply to any and all obligations of Assignee to pay accrued or accruing, but unbilled, charges that come due under the Lease or otherwise discharge the Debtors duties under the Lease.

**Indemnification and Hold Harmless**

15.    Additionally, the Lease requires the Debtors to indemnify and hold the Landlord harmless with respect to any claims resulting from injury or damages to persons or property occurring in or about the Leased Premises subject of the Lease. Any assumption and assignment

of the Lease must be subject to the terms of the Lease, including the continuation of all indemnification obligations, regardless of when any claim arose.[2] Nothing in any order should preclude the Landlord from pursuing the Debtors, its insurance, or any other party that may be liable under the Lease, and the Landlord specifically reserves its right to pursue such rights irrespective of any amounts claimed herein.

**Restricted Uses, Exclusive Use Covenants, and Other Material Provisions Deemed Waived**

**in Paragraph 9 and Mandated in Paragraph 14 of the Proposed Order**

9.a Use Restriction and Exclusive Use Covenants

16.    Paragraph 9.a. of the proposed order eviscerates the use provisions and compliance with restrictive covenants in the Lease.

17.    The Leased Premises is located within a shopping center (the "Plaza") and the Landlord has restrictions on the uses of the various leased premises located therein and has certain agreements with other tenants that provide them with exclusive use rights within the Plaza.   A statement of the restrictions and exclusive uses is attached as Exhibit "C."  Any assumption and assignment of the Lease must ensure that Assignee does not use the Leased Premises for any of the restricted uses and that the use of the Leased Premises does not violate any of the exclusive use agreements that Landlord has with other tenants that lease premises within the Plaza.  The Debtors by virtue of section 4 of the Lease benefit from their own restrictive covenant with the Landlord, and Assignee should not be permitted to use or occupy the Premises for any purpose that would violate any similar covenants with other tenants in the Plaza, including: use for a hardware operation; auto parts store or sale of automobile parts, supplies and/or accessories; rental-

---

[2] Any ability to assume the Lease is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the Lease.

purchase dealer, furniture dealer, or appliance dealer; full service hair salon; or thrift store and/or collection bins.

18.     The forgoing restrictions were included in the Landlord's *Limited Objection of Town N' Country Plaza, LLC f/k/a Town N' Country Plaza, L.P. to Debtors' Proposed Assumption and assignment of Lease, Including Cure Amount, and Reservation of Rights* [D.I. 808] (the "First Objection"), thus the Debtor was fully aware of the restriction regarding leasing to a furniture dealer or appliance dealer.

19.     The Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases for shopping centers. *See* 11 U.S.C. § 365(b)(3).  Although ordinarily to obtain the bankruptcy court's permission to assign a lease a debtor need only provide assurance that the assignee will perform under the lease's terms, the Bankruptcy Code places additional restrictions on assignment of shopping center leases in order to protect the rights of the lessors and the center's other tenants. *See* S.Rep. Nos. 98–70, 98th Cong. 1st Sess. (1983). Unlike the usual situation where a lease assignment affects only the lessor, an assignment of a shopping center lease to an outside party can have a significant detrimental impact on others, in particular, the center's other tenants. *Id.*  The legislative history for § 365(b)(3) describes a shopping center as "a carefully planned enterprise, and though it consists of numerous individual tenants . . . is planned as a single unit." H.R. Rep. No. 95-595, 348-49 (1978).  Section 365(b)(3) of the Bankruptcy Code provides that adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center, and that assumption

or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.  11 U.S.C. 365(b)(3).

20.     The Plaza constitutes a "shopping center" as that term is used in the Bankruptcy Code.  Big Lots #0547's lease provides that the tenant will use the premises for the purpose of retail sale of general merchandise and will not use or occupy more than five hundred square feet of the premises for any purpose that is in competition with any other tenant occupying space in the Shopping Center as of the date of any future assignment.

21.     The Landlord's lease with another tenant in the Plaza, Rent King, provides that Landlord "will not lease space within the shopping center to any other rental-purchase dealer, or furniture or appliance dealer without the prior written consent of" Rent King.

22.     It appears that Fine Furniture Décor d/b/a Fine Gallery, LLC is in in the furniture business.   Thus, an assumption and assignment of the lease with Big Lots #0547 to Fine Furniture Décor d/b/a Fine Gallery, LLC would violate the terms of Rent King's lease unless Rent King consents to the assignment, which appears unlikely.

23.     In these regards, the First Objection has either been completely disregarded by the Debtor and Assignee, or the Assignee was chosen intentionally in an attempt to pressure the Landlord to make a payment to "buy back" its Lease.

24.     Paragraph 9 of the Proposed Order would compel Landlord to accept the Assignee's use without restriction and should the assignee use the Premises for a prohibited purpose place the Landlord in breach of its leases with other tenants, and, in particular, the proposed transfer to Assignee, a furniture store, would breach the Landlord's lease with Rent King, without recourse against the Debtor or Assignee for their corresponding breaches of the Lease.

<u>9.b. Signage and alterations</u>

25.     Paragraph 9.b. of the Proposed Order eviscerates the provisions of the Lease related to signage and alterations.

26.     As noted above, the Plaza is a shopping center.  Paragraph 8 of the Lease generally governs the tenants use of pylon signs and other signs.  Paragraph 6 of the Lease generally controls the alterations to the Premises.  There is no reason for the Court to render provisions of the Lease governing signage and alterations, including without limitations sections 6 and 8 of the Lease, unenforceable.  Such provisions are material to the Lease and to the Landlord's management of the Plaza.

### 9.d. Consent

27.     Paragraph 9.d. of the Proposed Order removes the obligation for the Landlord's written consent to an assignment as required by section 23 of the Lease, which provides that the Landlord's consent will not be unreasonably withheld.  As voiced in this objection, the Landlord is concerned about the Assignee's use of the Premises and compliance with other terms of the Lease.

### 9.e. Forfeiture/Modification

28.     Paragraph 9.e. of the Proposed Order vaguely states that a "provision effecting the forfeiture or a modification of an . . . rights or obligations presently in effect under the Lease upon an assignment by the Debtors of the Lease" would be unenforceable.  Paragraph 9.e. is vague and ambiguous. It is unclear from the language in the Proposed Order which rights the provision is seeking to modify under the Lease.  Upon assignment, the Assignee would obviously enjoy the rights provided in the Lease, however, it appears from the Notice that the Assignee does not intend to comply with burdens of the Lease.  In addition, the use provision and restrictive covenants in section 4 of the Lease that related to the Debtor's use "for the purpose of the retail sale of general

merchandise" and prohibiting the Landlord from leasing to another "discount liquidator, or close out store or dollar store operation," would seemingly be obsolete if the Assignee is not going to operate a retail store similar to the Debtors, and there is no reason to prohibit the Landlord from permitting another tenant that is a "discount liquidator, or close out store or dollar store operation" under such circumstances.

### 9.f. Not Otherwise Required

29.     Paragraph 9.f. of the Proposed Order provides that "a provision conditioning the Debtors' ability to assign their leasehold rights upon any terms not otherwise required under the Bankruptcy Code" would be unenforceable. Paragraph 9.f. is vague and ambiguous. Section 365 of the Bankruptcy Code requires the Debtor to cure all defaults and provide adequate assurance of future performance of the Debtor's obligations of the Lease as conditions of the assumption and assignment of the Lease. Section 365(b)(3) provides that adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance--**(A)** of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease; **(B)** that any percentage rent due under such lease will not decline substantially; **(C)** that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and **(D)** that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center. 11 U.S.C. § 365. Based upon the matters that the Debtor

and Assignee intend to render unenforceable in their proposed order, it is clear that the Debtor and Assignee do not intend to comply with the requirements of the Bankruptcy Code. The Debtor and Assignee should be able to rely on the vague language included in paragraph 9.f. to eviscerate any provision of the Lease governing their conduct that they believe is not required under the Bankruptcy Code.

### 9.g. Signage

30.    Similar to Paragraph 9.b. of the Proposed Order, Paragraph 9.g. of the Proposed Order eviscerates the provisions of the Lease related to signage.

31.    As noted above, the Plaza is a shopping center. Paragraph 8 of the Lease generally governs the tenant's use of pylon signs and other signs. There is no reason for the Court to provide additional rights to place signs that the Assignee has "deemed necessary . . . to conform such store to [the Assignee's] typical retail store." The signage provision in section 8 of the Lease is material to the Lease and to the Landlord's management of the Plaza and should not be rendered unenforceable by this Court upon assignment.

### 9.i. Minimum Sales Revenues

32.    Paragraph 9.i. of the Proposed Order provides that "a provision regarding minimum sales revenues required to be satisfied at the premises covered by the Lease" would be unenforceable.

33.    The rent due under the Lease includes percentage rent as addressed in section 5.D. of the Lease. The provisions of the Lease, as modified, governing the percentage rent due to the Landlord are material to the Lease and should not be nullified by the Court upon assignment to the Assignee.

### 14. Cooperation

34.     Paragraph 14 of the Proposed Order mandates that Landlord "shall cooperate and expeditiously execute and deliver, within ten (10) days of any reasonable requests of [the Assignee] and at no cost to the Landlords, any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, opening and operating of the properties as contemplated under the Assignment Agreements."

35.     Exhibit B to the Lease governs remodeling and, among other requirements, requires the tenant to obtain all necessary permits and approvals from applicable governmental authorities. Although the Landlord would otherwise be happy to cooperate with the tenant in good faith so long as the tenant discharging its obligations under the Lease in good faith, there is no reason for this Court to modify the Lease by requiring or imposing deadlines for the Landlord to provide "any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, opening and operating of the properties."

<u>Conclusion Regarding Proposed Order</u>

36.     Section 365 of the Bankruptcy Code requires the Debtor and Assignee to provide adequate assurance of future performance of the covenants in the Lease.  Paragraphs 9 and 14 of the Proposed Order make it clear that the Debtor and Assignee do not intend to provide adequate assurance of future performance of the covenants of the Lease, but rather intend to have this Court eviscerate material provisions of the Lease by rendering them unenforceable in conjunction with the proposed assumption and assignment of the Lease.

37.    The Landlord does not consent to paragraph 16 of the Proposed Order, which provides that the Court will retain jurisdiction to enforce the terms of the Proposed Order.  Clearly, if any dispute arises between the Landlord and Assignee regarding their respective rights and duties, the same should be resolved in the state court where the Premises is located.

38.    The Landlord does not consent to paragraph 18 of the Proposed Order.  As noted above the Assignee should assume the lease obligations and pay and perform them when due, regardless of whether they relate to the period prior to, or after, the proposed assumption and assignment.

39.    Finally, the Landlord does not consent to being provided one day notice prior to the execution of any assignment agreements as provided in paragraph 25 of the Proposed Order.

## **RESERVATION OF RIGHTS**

40.    The Landlord reserves its rights to (a) amend this Objection for purposes of asserting any additional amounts which may be owed (whether pre-petition or administrative claims), including, without limitation, any rent based on percentage of sales, (b) assert any claims (including, without limitation, administrative claims) for damages to the Leased Premises, the removal of personal property left behind by the Debtors and/or for damages relating to removal or change of signage, (c) object to the proposed form of assumption and assignment agreement, (d) enforce any other rights of the Landlord or obligations of the Debtors and/or assignee in connection with the assignment of the Lease, (e) object in the event the prior written consent of Ross is required but not obtained, and (f) object in the absence of compliance with any other restrictive use covenants, including, but not limited to, for the benefit of any other existing tenants.

WHEREFORE, the Landlord respectfully requests that this Court enter an Order sustaining this Objection or granting relief consistent with this Objection and granting the Landlord such

other and further relief as it deems just and proper.

Dated: February 24, 2025

**BIELLI & KLAUDER, LLC**

*/s/ David M. Klauder*
David M. Klauder (No. 5769)
1204 N. King Street
Wilmington, DE 19801
Phone: (302) 803-4600
Email: dklauder@bk-legal.com

-and-

**Anthony & Partners, LLC**

Townsend J. Belt *(pro hac vice)*
Florida Bar Number:  0066811
tbelt@anthonyandpartners.com
lortega@anthonyandpartners.com
eservice@anthonyandpartners.com
100 South Ashley Drive, Suite 1600
Tampa, Florida 33602
Telephone:  813-273-5616
Telecopier:  813-221-4113

*Co-Counsel to Town N' Country Plaza, LLC*
*f/k/a Town N' Country Plaza, L.P.*