## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: D.I. 2012, 2013, 2018, 2020, 2021, 2023, 2030, 2031, 2037, 2040** |

## DEBTORS' OMNIBUS REPLY TO OBJECTIONS TO THE MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) SETTING A BAR DATE FOR FILING PROOFS OF PRE-CLOSING ADMINISTRATIVE EXPENSE CLAIMS AGAINST THE DEBTORS, (II) ESTABLISHING PRE-CLOSING ADMINISTRATIVE EXPENSE CLAIMS PROCEDURES, AND (III) GRANTING RELATED RELIEF, INCLUDING NOTICE AND FILING PROCEDURES

Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), file this reply (this "**Reply**") to the Objections[2] filed by certain administrative expense trade creditors (the "**Objectors**") to the *Motion of Debtors for Entry of an Order (I) Setting a Bar Date for Filing Proofs of Pre-Closing Administrative Expense Claims Against the Debtors, (II) Establishing Pre-Closing Administrative Expense Claims Procedures, and (III) Granting Related*

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).  The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] "**Objections**" refers to those objections, limited objections, and joinders filed at D.I. 2012, 2013, 2018, 2020, 2021, 2023, 2030, 2031, 2037, and 2040.

*Relief, Including Notice and Filing Procedures* [D.I. 1962] (the "**Motion**").[3]  In support of this

Reply, and in further support of the Motion, the Debtors respectfully state as follows:

## REPLY

1.      As described in the Motion and on the record at the January 21, 2025 omnibus

hearing,[4] the Debtors have been inundated with requests and inquiries from creditors, including

landlords, vendors and other parties, holding claims arising after the Petition Date regarding the

timing and manner of payment of their claims.  Indeed, as of the date of the filing of this Reply,

approximately 103 motions have been filed by various trade creditors and landlords (collectively,

the "**Movants**") seeking to compel immediate and full payment of such claims.

2.      On February 7, 2025, after consultation with the Committee—and with the

Committee's support—the Debtors filed the Motion to establish a fair, efficient and transparent

process for the reconciliation of Pre-Closing Administrative Expense Claims.  The filing of the

Motion followed the Court's encouragement at the January 21, 2025 hearing. *See* Jan. 21 Hr'g Tr.

at 32:7–11 ("[I]t isn't a prudent use of time or expense engaging in ad hoc litigation of

claims . . . the Debtors really do need to implement . . . an orderly process to reconcile and

determine the validity of administrative expense claims.").  The process set forth in the proposed

Pre-Closing Administrative Expense Claims Procedures, and the other relief sought in the Motion,

will provide a streamlined, fair and comprehensive process for the reconciliation and allowance of

Pre-Closing Administrative Expense Claims.

3.      Indeed, since filing the Motion, the Debtors have been proactive and worked

extensively with many of the Movants to reconcile claims.  These efforts have proven to be largely

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[4] *See* Jan. 21, 2025 Hr'g Tr. at 22:23–23:2; 24:14–17.

successful.  As of the filing of this Reply, the Debtors have confirmed with 56 Movants that such Movants support the reconciliation process and adjournment of their Pre-Closing Administrative Expense Claims Motions to Compel *sine die* while such reconciliation is ongoing.  The Debtors have likewise already reconciled a meaningful number of Pre-Closing Administrative Expense Claims and intend to file an amended Pre-Closing Administrative Expense Claims Schedule of such claims before the February 26, 2025 omnibus hearing.  Since the filing of the Motion, the Debtors have made significant progress in establishing an orderly process for the reconciliation and allowance of Pre-Closing Administrative Expense Claims and have received substantial creditor buy-in to the process.

4.      Nevertheless, certain Objectors refuse to support the reconciliation process and instead are using the Motion as an opportunity to re-litigate issues that this Court definitively decided at the hearing to approve the Debtors' sale of substantially all of their assets to Gordon Brothers Retail Partners LLC ("**GBRP**").[5]  Indeed, such Objectors ask this Court to effectively reverse its ruling regarding the allocation of value between pre- and post-GBRP sale administrative creditors.  While certain other Objections are more limited in scope, they are equally meritless and should be denied.

### A.      Granting the Relief Sought by Certain Objectors Would Effectively Undo the GBRP Sale Order

5.      The Objection filed by Prestige Patio Co., Ltd. (the "**Prestige Patio Objection**")[6] argues that the Motion should be denied because it would "permit[] the non-payment of

---

[5] *See Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of all Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1556] (the "**GBRP Sale Order**").

[6] The Prestige Patio Objection was joined by Respawn, LLC [D.I. 2020] and Hybrid Promotions, LLC d/b/a Hybrid Apparel Air Waves, LLC [D.I. 2040] (collectively, the "**Prestige Patio Joinders**").  Accordingly, the Debtors' arguments in this Reply shall apply with the same force against the Prestige Patio Joinders.

Administrative Expenses in Chapter 11 cases" and thus have far-reaching consequences on vendors and other trade creditors who continue to do business with chapter 11 debtors in other cases. Prestige Patio Obj. at 2. Such argument is factually mistaken. The primary purpose of the Motion is to improve creditor recoveries by establishing an orderly and equitable process for reconciling the proper amounts owed to the Movants, rather than the Debtors having to engage in costly and time-intensive motion practice for over 100 motions. Although the Motion seeks the Court's permission to make interim pro rata payments to holders of Pre-Closing Administrative Expense Claims, nothing in the Motion or the Pre-Closing Administrative Expense Claims Procedures Order attached thereto would sanction the "non-payment" of claims. To the contrary, although the Debtors are sympathetic to the commercial consequences that the events of these Chapter 11 Cases may impose on trade creditors, the Debtors consummated the GBRP Sale because it was the most value-maximizing path available for the estates and stakeholders. Given the volume of Pre-Closing Administrative Expense Claims in these Chapter 11 Cases, the Debtors have now proposed a set of procedures not to evade payment or authorize non-payment, but rather to equitably reconcile claims and make interim distributions on account of such claims thereafter.

6.      The Prestige Patio Objection also objects to the Motion on the basis that the procedures do not account for payments already made by the Debtors prior to the closing of the GBRP Sale. *See* Prestige Patio Obj. at 2 ("[W]e urge the Court to direct a procedure in which the Administrative Claim creditors will receive payment on a pari-passu basis taking into consideration that some of the Administrative Claim Creditors did receive some payment.").[7] The Prestige Patio Objection asks this Court to craft an extraordinary remedy that would effectively

---

[7] Other Objectors make similar arguments. *See* Shandong Obj. ¶ 8; East West Obj. ¶ 8 ("[T]here is nothing that prevents the Debtors from paying other administrative claims while East West's administrative claim, along with similarly situated administrative claims, is pending allowance. Administrative expense claims under §503(b) must be treated equally and ratably with all other administrative expense claims.").

unwind payments already made to creditors, including pursuant to orders of this Court such as the

GBRP Sale Order.  *See id.* at 3 ("It is proposed that the distribution calculation shall be calculated

taking into consideration of all post filing expenses [whether paid or unpaid] – (including the

landlords) and then when determining the distribution to be made to post filing creditors, payments

already made to individual creditors be 'charged/credited' to those companies who already

received some payment so that the 'true' and fair pari-passu distribution will actually be made.").

Moreover, the Prestige Patio Objection, if granted, would upend the carefully fashioned balance

in the GBRP Sale Order with respect to claims arising before the closing of the GBRP Sale and

claims arising after the closing.  Instead, Prestige Patio seeks a convoluted distribution mechanism

that would take into account all post-petition claims regardless of when such claim arose—relief

that this Court overruled in its ruling on the GBRP Sale.[8]

7.      There are substantial equitable and prudential reasons why the Prestige Patio

Objection should not be sustained.  For one, administrative creditors, including landlords who

received stub rent pursuant to the GBRP Sale Order, would be prejudiced because they relied upon

and received value pursuant to an order of this Court.  The Prestige Patio Objection, without any

justification or precedent, effectively asks the Debtors to initiate disgorgement actions against such

administrative creditors.  And, the time and expense associated with netting out payments already

made to administrative creditors in these Chapter 11 Cases would greatly distract from the

Debtors' efforts to reconcile administrative expense claims in accordance with the Pre-Closing

---

[8] *See* Dec. 31, 2024 Hr'g Tr. at 192:19–24 ("[T]he Court, through counsel's suggestions, could exercise its equity powers and order that at least there be some sort of *pari passu*, pro rata situation where everyone [could] fund and help this, the company stay alive at this point, be compensated, at least, to some reasonable degree."); *see also id.* at 231:19–232:1. ("Several objectors argue that all vendor claims should share -- all vendor and administrative claims should share *pari passu*. That argument fails to capture the superpriority claim of the DIP lenders and their right to payment out of the sale proceeds. Similarly, the landlords' settlement entitled them to stub rent payment under the DIP order was exchanged for certain concessions, including the negotiated 503(c) waiver.").

Administrative Expense Claims Procedures, thereby grinding the process to a halt and introducing unnecessary delay and substantial cost to the Debtors' pro rata interim distributions to creditors. Such a process would only lead to unnecessarily incurred professional expenses that would reduce the Objectors' own recoveries, including through increased litigation costs that would surely arise from creditors who were paid on account of their administrative expense claims prior to the closing of the GBRP Sale. Finally, the Objectors' requested language would unfairly penalize those creditors on whom the Debtors relied upon to stabilize the business after the Petition Date and during the pendency of the Nexus sale.

8.      Prestige Patio's reallocation scheme would also cause the Debtors to violate the GBRP Sale Order as well as other applicable provisions of the Bankruptcy Code. Specifically, the GBRP Sale Order requires the Debtors to pay all outstanding stub rent expenses.[9] Under Prestige Patio's proposed concept, a landlord who was paid a portion of its stub rent claim prior to the GBRP Sale closing would be required to forfeit any remaining amounts on account of their claims for post-petition rent and other charges. Thus, if Prestige Patio's procedure were adopted, the Debtors would be in violation of the GBRP Sale Order because they would not be able to pay *all* outstanding stub rent. This same example may also run afoul of section 365(d)(3), as it would not permit the Debtors to "timely perform all the obligations . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected." 11 U.S.C. 365(d)(3).[10]

---

[9] *See* GBRP Sale Order ¶ 22 ("Upon the Initial Closing Date, the Buyer shall pay the Debtors the portion of the Purchase Price allocated to outstanding stub rent (as set forth in section 3.01(a)(ii) of the APA), and the Debtors shall promptly pay such outstanding stub rent to the applicable landlords, unless otherwise agreed between the Debtors and the applicable landlord.").

[10] Moreover, given that the Debtors have already assumed and assigned numerous leases to various Designated Buyers (and continue to be in the process of doing so), the Prestige Patio Objection overlooks a critical practical consequence of its proposed scheme—it would force the Debtors to claw back post-petition payments that have already been made to landlords, thus adding additional cure costs for such leases. Nor does the Prestige Patio

9.      The relief sought by Prestige Patio—namely, its request that any administrative claims procedures be structured "on a pari-passu basis taking into consideration that some of the Administrative Claim Creditors did receive some payment," Prestige Patio Obj. at 3—also runs afoul of the well-established doctrines of "law of the case" and *res judicata* given that Prestige Patio made similar arguments at the GBRP Sale hearing that were rejected by the Court.[11]  Cases in this Court and others are clear that a litigant may not re-litigate an issue that has already been litigated and decided, as certain Objectors like Prestige Patio do here.  "Under the law of the case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case . . . This rule of practice promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'"  *In re AmeriServe Food Distrib., Inc.*, 315 B.R. 24, 36 (Bankr. D. Del. 2004) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)); *see also In re Resyn Corp.*, 945 F.2d 1279, 1281 (3d Cir. 1991) ("The doctrine of the law of the case dictates that 'when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the litigation.'" (quoting *Devex Corp. v. General Motors Corp.*, 857 F.2d 197, 199 (3d Cir. 1988))); *In re Edwards*, No. 96–17868 (DWS), 1999 WL 223506, at*4 (Bankr. E.D. Pa. April 13, 1999) (holding that court's ruling on sale motion "will serve as a limitation on the matters that may be litigated").  Guided by "the interests of finality and judicial economy," the law of the case doctrine precludes relitigation of issues, like the distribution of the proceeds of the GBRP Sale, "that were

---

Objection address what would happen with respect to payments made on account of leases that have already been assumed and assigned.

[11] *See* Dec. 31, 2024 Hr'g Tr. at 192:19–24 ("[T]he Court, through counsel's suggestions, could exercise its equity powers and order that at least there be some sort of *pari passu*, pro rata situation where everyone [could] fund and help this, the company stay alive at this point, be compensated, at least, to some reasonable degree."); *see also id.* at 231:19–232:1. ("Several objectors argue that all vendor claims should share -- all vendor and administrative claims should share *pari passu*. That argument fails to capture the superpriority claim of the DIP lenders and their right to payment out of the sale proceeds. Similarly, the landlords' settlement entitled them to stub rent payment under the DIP order was exchanged for certain concessions, including the negotiated 503(c) waiver.").

actually litigated and decided by the court" or "which parties have already had a full and fair opportunity to litigate." *In re Vaso Active Pharm., Inc.*, 500 B.R. 384, 399 (Bankr. D. Del. 2013). Here, as this Court well knows, at the hearing to approve the GBRP Sale, the Debtors already heavily litigated the issue of whether it was permissible that post-sale closing administrative creditors may be paid ahead of pre-sale closing administrative creditors.[12]  Indeed, Prestige Patio specifically made the same arguments in favor of forced reallocation at the GBRP Sale hearing. *See* Dec. 31, 2024 Hr'g Tr. at 192:19–24. The Court's ruling on this, as well as the issue of whether interim distributions to administrative creditors were permissible, was clear:

> Certain objectors objected to the proposed payment of going forward administrative claims. Nothing in Section 363 speaks of payment of administrative claims. Section 363 focuses on liens, not administrative creditors. . . . Further, unlike *Jevic*, approval of a sale under 363 is an interim step in a case, not a final disposition. In *Jevic*, the Supreme Court was reviewing a structured dismissal, rather than a Code-sanctioned sale. **And in *Jevic*, the Supreme Court recognized that courts, such as *Iridium Operating*, have approved interim distributions that violate the ordinary priority rules when Code-related [] objectives are served**.

*See* Dec. 31, 2024 Hr'g Tr. at 228:24–230:16 (emphasis added).

10.    Moreover, under the doctrine of *res judicata*, a party may not relitigate claims that were, or could have been, asserted in a prior action.  *Res judicata* applies where, as here, there has been: "(1) A final judgment on the merits in a prior action involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."  *In re The IT Grp., Inc.*, 322 B.R. 729, 736 (Bankr. D. Del. 2005); *see also CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999).  Courts in the Third Circuit regularly find that orders authorizing section 363 sales, such as the GBRP Sale Order in this case, are final orders for the purposes of *res judicata*

---

[12] *See generally* Dec. 31, 2024 Hr'g Tr.

that thus bar subsequent re-litigation.  *See, e.g.*, *In re Virgin Orbit, LLC*, 659 B.R. 36, 41–42 (Bankr. D. Del. 2024) (holding that, under *res judicata*, the bankruptcy court's decision on an earlier sale order barred request to revoke confirmation order).  Given that the GBRP Sale Order authorized the aforementioned allocation of payments between administrative creditors, any attempt to end-run around it is purely barred by *res judicata*.

      **B.**      **The Court Should Not Impose a Date Certain for Payments on Account of Pre-Closing Administrative Expense Claims.**

11.      The objection filed by Shandong Taipeng Intelligent Household Products Co., (the "**Shandong Objection**"),[13] objects to the Motion because, in Shandong's view, it fails to provide a deadline by which the Debtors must object to administrative expense claims.  Shandong Obj. ¶ 7. The objection filed by the East West Import Export, Inc. (the "**East West Objection**") likewise objects to the failure to state when the Debtors will pay administrative expense claims and whether such claims will be paid in full.  East West Obj. ¶ 9.  Both Objections are not only impractical but have no basis in law or precedent.

12.      As the Debtors noted at the hearing to approve the GBRP Sale, the primary source of value for distributions to Pre-Closing Administrative Expense Claims will be, among other items, the sale of the Debtors' corporate headquarters.  The Debtors have now filed a motion to approve such sale.  *See generally Motion of Debtors for Entry of an Order (I) Authorizing and Approving (A) the Debtors' Entry Into and Performance Under the Purchase Agreement, (B) the Sale of the Purchased Assets, (C) the Assumption and Assignment of the Leases and the City Agreement, and (D) the Debtors' Entry Into the New Lease and (II) Granting Related Relief* [D.I. 1942] (the "**HQ Sale Motion**").  As noted in the HQ Sale Motion, the APA provides for a

---

[13] The Shandong Objection was joined by Popcorn Alley, Inc. d/b/a Stonehedge Farms [D.I. 2030] and Vitelli Foods, LLC [D.I. 2031].  Accordingly, the Debtors' arguments in this Reply shall apply with the same force as against the Shandong Objection.

90-day inspection period during which the Purchaser may diligence the property. *Id.* at ¶ 12. Although the Purchaser may expedite this period by waiving the remainder, the Debtors do not have any control over such decision. *Id.*

13.    Accordingly, given the Debtors' limited ability to control the timing of receipt of funds necessary to make the pro rata interim distributions described in the Motion, the Debtors simply cannot predict and establish a date for objections and payments. The Debtors will endeavor to make payments as soon as practicable, but they are also mindful that an artificial deadline by which the Debtors would have to make payments is not workable and would likely only prejudice claimholders. Indeed, permitting the Debtors discretion as to the timing of the interim distributions will only further *increase* the amount of such payments, whereas imposing a deadline on the Debtors creates a risk that the HQ Sale will not have been consummated prior to such distributions. As such, although the desire for finality is understandable, the Debtors will not risk violation of a Court order based on events entirely out of their control.

14.    Finally, certain Objections argue that the Pre-Closing Administrative Expense Claims Procedures Order should direct, rather than authorize, the Debtors to make the proposed interim payments. *See Limited Objection and Reservation of Rights of Parfums de Coeur Regarding Debtors' Motion Regarding Administrative Expense Claims Procedures* [D.I. 2018] ("[T]he Debtors' Order should actually 'require' the Debtors to commence making such payments to undisputed administrative claims and setting aside reserves for disputed administrative claims as the case may be."). Such argument critically overlooks customary and standard language in this Court's orders, which authorize, but not direct, the Debtors to make certain payments throughout these Chapter 11 Cases. *See, e.g.*, *Final Order (I) Authorizing Debtors to Pay Prepetition Critical Vendor Claims, Foreign Vendor Claims, and 503(b)(9) Claims in the Ordinary Course of*

*Business, (II) Granting Administrative Expense Status to Debtors' Undisputed Obligations to Vendors Arising from Post-Petition Delivery of Goods Ordered Prepetition and Authorizing Debtors to Pay Those Obligations in the Ordinary Course of Business, (III) Authorizing Debtors to Return Goods, (IV) Authorizing Debtors to Pay Certain Prepetition Claims of Lien Claimants, and (V) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers* [D.I. 463] at ¶ 5 ("The Debtors are authorized, ***but not directed***, to pay 503(b)(9) Claims in the ordinary course of business.") (emphasis added); *Final Order Authorizing (I) Debtors to Honor Prepetition Obligations to Customers and to Otherwise Continue Customer Practices and (II) Financial Institutions to Honor and Process Related Checks and Transfers* [D.I. 518] at ¶ 2 ("The Debtors are authorized, ***but not directed***, in their sole discretion, to (a) fulfill, pay, and/or honor all Customer Obligations as they deem appropriate . . . .") (emphasis added).

15.     Accordingly, although the Debtors are hopeful that they will be able to make interim payments to holders of Pre-Closing Administrative Expense Claims as soon as practicable following the Pre-Closing Administrative Expense Claims Bar Date, the Debtors respectfully submit that it is neither appropriate nor customary to require payment direction language in the Pre-Closing Administrative Expense Claims Procedures Order.

**C.     The Debtors Have Consensually Resolved, or Expect to Consensually Resolve, Other Objections**

16.     The Debtors received informal comments from the Office of the United States Trustee (the "**U.S. Trustee**") as well as certain landlord groups to the proposed Pre-Closing Administrative Expense Claims Procedures Order.  In response, the Debtors have made various changes to the Pre-Closing Administrative Expense Claims Procedures Order such that the U.S. Trustee and such landlords do not object to entry of the Pre-Closing Administrative Expense Claims Procedures Order.

17.     In addition, as of the filing of this Reply, the Debtors and Movant Giftree Crafts Company Limited ("**Giftree**") are engaged in discussions regarding a consensual resolution that the Debtors expect will resolve Giftree's Objection. *See Creditor Giftree Crafts Company Limited's Objection to the Debtors' Motion for Entry of an Order (I) Setting a Bar Date for Filing Proofs of Claims for Pre-Closing Administrative Expense Claims Against the Debtors, (II) Establishing Pre-Closing Administrative Expense Claims Procedures, and (III) Granting Related Relief, Including Notice and Filing Procedures* [D.I. 2023] (the "**Giftree Objection**"). Nevertheless, the Debtors reserve all rights to respond to the Giftree Objection in the event that a consensual resolution is not reached prior to the February 26, 2025 omnibus hearing.

## **RESERVATION OF RIGHTS**

18.     The Debtors file this Reply without prejudice to, and with full reservation of, their rights to make additional arguments in support of the Motion, including at any hearing thereon.

## **CONCLUSION**

19.     For the reasons set forth herein, the Debtors respectfully request that the Court overrule the Objections and grant the Motion and any such other and further relief as the Court may deem just and proper.

*[Remainder of page intentionally left blank.]*

Dated:   February 24, 2025
       Wilmington, Delaware

                                      MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                                      */s/ Sophie Rogers Churchill*
                                      Robert J. Dehney, Sr. (No. 3578)
                                      Andrew R. Remming (No. 5120)
                                      Daniel B. Butz (No. 4277)
                                      Tamara K. Mann (No. 5643)
                                      Sophie Rogers Churchill (No. 6905)
                                      1201 N. Market Street, 16th Floor
                                      Wilmington, DE 19801
                                      Tel: (302) 658-9200
                                      rdehney@morrisnichols.com
                                      aremming@morrisnichols.com
                                      dbutz@morrisnichols.com
                                      tmann@morrisnichols.com
                                      srchurchill@morrisnichols.com

                                      *-and-*

                                      DAVIS POLK & WARDWELL LLP

                                      Brian M. Resnick (admitted *pro hac vice*)
                                      Adam L. Shpeen (admitted *pro hac vice*)
                                      Stephen D. Piraino (admitted *pro hac vice*)
                                      Ethan Stern (admitted *pro hac vice*)
                                      450 Lexington Avenue
                                      New York, NY 10017
                                      Tel.: (212) 450-4000
                                      brian.resnick@davispolk.com
                                      adam.shpeen@davispolk.com
                                      stephen.piraino@davispolk.com
                                      ethan.stern@davispolk.com

                                      *Counsel to the Debtors and Debtors in Possession*