## EXHIBIT C

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administrated) |
| | **Re: Docket No. [•]** |

### ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS-IN-POSSESSION TO ASSUME, ASSIGN AND SELL A <u>CERTAIN NON-RESIDENTIAL REAL PROPERTY LEASE</u>

Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**"), each of which is a

debtor and debtor in possession in the Chapter 11 Cases, for an order pursuant to sections 105, 363

and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006 and 9014, and Local

Rule 6004-1, having received a Notice of Designation of Designated Asset from Gordon Brothers

Retail Partners, LLC ("**GBRP**") in accordance with Section 2.05(b) of the APA[2] and Paragraph

43 of the Sale Order, with respect to certain unexpired lease(s) of non-residential real property for

the premises identified in **<u>Exhibit A</u>** hereto (the "**Leases**"); and the Debtors having filed and served

a Designated 365 Contract Notice (the "**Designation Notice**") seeking, *inter alia*, (i) to assume

and assign the Leases to Burlington Coat Factory Warehouse Corporation (or a designee thereof)

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used herein and not otherwise defines shall have the meanings ascribed thereto in the Court's *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1556] (the "**Sale Order**").

(hereinafter, "**Burlington**"); and (ii) such additional and related relief as provided by the Sale Order; and the Court having determined that the legal and factual bases for the relief requested herein establish just cause for the relief granted herein; and after due deliberation and good and sufficient cause appearing therefor;

NOW, **THEREFORE**, the Court hereby finds as follows:

A.      After good and sufficient notice of the Designation Notice having been provided in accordance with the Designation Rights Procedures, and a reasonable opportunity to object or be heard regarding the proposed assumption and assignment of the Leases has been afforded to the applicable 365 Counterparty (the "**Landlords**") in accordance with the Designation Rights Procedures.

B.      The assumption, assignment and sale of the Leases to Burlington, pursuant to Sections 363 and 365 of the Bankruptcy Code is in the best interests of the Debtors, their estates and their creditors, and is consistent with the terms of the APA and Sale Order, respectively.

C.      Pursuant to Sections 365(b)(1)(C), 365(f)(2)(B) and 365(b)(3) of the Bankruptcy Code, to the extent required under the Sale Order, Burlington has provided adequate assurance of future performance under the Leases.

D.      The assumption and assignment of the Leases to Burlington is in compliance with Section 365(b)(3) of the Bankruptcy Code.

E.      The Assumption and Assignment Agreement, dated as of February 17, 2025  and attached hereto as **Exhibit B** (the "**Assignment Agreement**"), between and among the Debtors and Burlington was negotiated and entered into in good faith, and from arm's length bargaining positions. Burlington is hereby found to be a good faith purchaser of the Leases and is found to be entitled to the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT**

1.      Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, the applicable Debtor is hereby authorized to assume, sell and assign to Burlington the Leases, pursuant to the terms and provisions of the applicable Assignment Agreement(s), all of the terms of which are hereby approved.

2.      In accordance with Section 363 of the Bankruptcy Code, effective as of the occurrence of a closing of the assignment of the Leases under the Assignment Agreement(s) (such date being hereinafter defined as the "**Closing Date**"), the Leases shall be transferred free and clear of any leasehold mortgages, subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, interests, mechanics liens, bills, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances.

3.      Upon the entry of this Order and the occurrence of the Closing Date, Burlington shall be deemed to have assumed and succeeded to the entirety of the Debtors' rights and obligations in and to the Leases which are due and owing from and after the Closing Date and shall have the rights of the tenant thereunder.

4.      Upon entry of this Order and the occurrence of the Closing Date, Burlington is a good faith purchaser and shall be entitled to the protections of Bankruptcy Code Section 363(m).

5.      Pursuant to Section 365(b)(l) of the Bankruptcy Code, to the extent a Cure Cost is owed to a Landlord, the Cure Cost shall be promptly paid by Burlington. Any objection of the Landlords to the assumption or assignment or transfer of the Leases, any Cure Cost, or seeking further adequate assurance of future performance other than that provided in the Assignment Agreement(s), to the extent not otherwise resolved by agreement, or by agreement contemplated to be heard after the date of any hearing to be held in connection with the Designation Notice, or

disposed of by separate order of this Court, is hereby overruled. There shall be no accelerations, assignment fees, increases, or any other fees charged to GBRP, Burlington, or the Debtors as a result of the assumption and assignment of the Leases. Upon remittance of the Cure Costs by Burlington to the Landlords, the Landlords shall be barred from asserting any additional cure amounts or other claims with respect to the Leases. For the avoidance of doubt, the Landlords shall be forever (i) barred from objecting to the applicable Cure Costs and from asserting any additional cure or other amounts with respect to the Leases, and the Debtors and Burlington shall be entitled to rely solely upon the Cure Costs set forth above and (ii) barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, GBRP or Burlington, or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under the Leases, or that there is any objection or defense to the assumption or assumption and assignment of the Leases. On and after the Closing Date, Burlington shall be responsible for paying (and shall be entitled to receive any credits for) all amounts outstanding under the Leases due on or after the Closing Date.

6.      The proceeds of the Lease Sale shall be payable to GBRP in accordance with the Assignment Agreement(s), APA and Sale Order, respectively.

7.      All personal property and furniture, fixtures and equipment ("**FF&E**") remaining in the stores subject to the Leases on or after the Closing Date shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as of the Closing Date. Burlington may, in its sole discretion and without further order of this Court, utilize and/or dispose of such property without notice or liability to the Debtors or any consenting third parties and, to the extent applicable, the automatic stay is modified to allow such disposition; provided, that the Debtors shall not sell or abandon any property that the Debtors know is not owned by the Debtors; provided, further, that

that the Debtors will either (a) provide for the return of such property to the Headquarters (as defined below) or (b) return such property to the applicable lessor, or other owner of the property; provided, however, that the Debtors are not aware of any other parties with interests in the FF&E; provided, further, however, that the Debtors may abandon property owned by the Landlords at the applicable Stores.

8.      Any party which did not object within the time set forth in the notice thereof is deemed to consent to the Debtors' assumption and assignment of the Leases, and the satisfaction of the requirements of Section 365 of the Bankruptcy Code. Upon the sale and assignment of the Leases, payment of the Cure Costs and the transfer of the furniture, fixtures and equipment referenced immediately above, as applicable, shall relieve the Debtors from any further liability pursuant to Section 365(k) of the Bankruptcy Code.

9.      Solely with respect to the transactions contemplated by this Order and the Assignment Agreement(s), and except as otherwise agreed between a Landlord and Burlington, nothing in this Order shall be deemed to annul or vary any provision of the Leases *other than* the following provisions (the "**Unenforceable Provisions**"):

    a.      a provision prohibiting Burlington's intended use of the premises;

    b.      a provision unreasonably prohibiting necessary alterations to the premises or signage required to convert the premises to Burlington's intended use; provided such alterations are deemed necessary by Burlington to conform such store to Burlington's typical retail store consistent with the Burlington's intended use of the premises;

    c.      a provision commonly referred to as a "going dark" or "continuous operations" provision, providing in substance for a forfeiture of the Leases or an increase in rent or other penalty by reason of the Debtors' cessation of retail operations before the

assignment, and/or any delay by Burlington in reestablishing retail operations after the assignment, to the extent any such provision does not permit Burlington to "go dark" until the later of: (i) one hundred twenty (120) days after the Closing Date (as defined in the Assignment Agreement(s)) of the assignment of the Leases, or such later time, when the particular facts and circumstances of a given store warrant additional time, which circumstances shall include, without limitation, the age and condition of the shopping center, the ability to obtain any permits and documents necessary to complete construction, the location of the premises in the shopping center, the shape of the premises to be assigned, the demographics of the shopping center's location and the overall quality of the shopping center and its existing tenants or (ii) the Going Dark Period listed in the applicable Assignment Agreement;

d.      a provision conditioning assignment on Landlord consent, or requiring payment to the Landlords as the price of assignment, or granting Landlords the right to recapture the leased premises following the assignment;

e.      a provision effecting forfeiture or a modification of any of Burlington's rights or obligations presently in effect under the Leases upon an assignment by the Debtors of the Leases;

f.      a provision conditioning the Debtors' ability to assign their leasehold rights upon any terms not otherwise required under the Bankruptcy Code;

g.      a provision restricting Burlington's ability to place reasonable signage on the premises; provided, that such signage is deemed necessary by Burlington to conform such store to Burlington's typical retail store consistent with Burlington's intended use of the premises;

6

      h.      a provision requiring the use of a certain tradename;

      i.      a provision regarding minimum sales revenues required to be satisfied at the premises covered by the Leases; and

      j.      any radius provisions set forth in the Leases to the extent applicable to any existing Burlington stores located near the Debtors' premises (but such radius provisions shall at all times apply to any new stores which might be opened by Burlington in the area of Debtors' premises after the Closing Date).

10.      Solely with respect to the transactions contemplated by this Order, the Sale Order, and the Assignment Agreement, none of the Unenforceable Provisions shall apply to Burlington in any respect and, without limiting the generality of the foregoing, no violation by the Debtors or Burlington of the Unenforceable Provisions shall constitute an event of default under any of the Leases.

11.      Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and Burlington are authorized to close the sale of the Leases set forth in the Assignment Agreement(s) immediately upon entry of this Order. Time is of the essence in closing the Lease sale transactions referenced herein, and the Debtors and Burlington intend to close the Lease sale transactions as soon as practicable. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order.

12.      Upon entry of this Order, this Order and the findings hereunder shall be binding upon all parties to the Leases and the Assignment Agreement(s).

13.      Upon the entry of this Order and the occurrence of the Closing Date, the Landlords shall accept and honor the assignment of the Leases to Burlington.

14.     The Landlords shall cooperate and expeditiously execute and deliver, within ten (10) days of any reasonable requests of Burlington and at no cost to the Landlords, any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, opening and operating of the properties as contemplated under the Assignment Agreement(s).

15.     Notwithstanding anything to the contrary in this Order, the Assignment Agreement(s) or any side letters, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) shall be abandoned, sold, assigned, or otherwise transferred without the express prior written consent of the Burlington and applicable insurer and/or third-party administrator.

16.     This Court shall retain jurisdiction (i) to construe and determine any disputes under this Order, (ii) to enforce and implement the terms and provisions of the Assignment Agreement(s), all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, and (iii) to resolve any disputes arising under or related to the Lease sales (but all Landlord/tenant disputes arising subsequent to the Closing Date which do not involve the Lease sales, this Order or the Debtors shall not be subject to the jurisdiction of this Court).

17.     The Debtors and Burlington are hereby authorized and directed to execute and deliver any and all documents, and to do all things reasonably necessary, to effectuate the purposes of this Order, to transfer the Debtors' interests in and to the Leases, in accordance with the terms

of the Assignment Agreement(s), and to carry out the terms and conditions of the Assignment Agreement(s).

18.    Burlington is not a successor in interest to the Debtors (other than with respect to the Debtors' rights and obligations under the Leases first accruing after Burlington takes assignment thereunder as provided for under the Assignment Agreement(s)), or their bankruptcy estates as a result of Burlington taking title or possession of the Leases and the subject premises, and Burlington is not assuming any liabilities or obligations of the Debtors or their bankruptcy estates, except as may be specifically provided for in the Assignment Agreement(s).

19.    This Order shall be effective and enforceable after its entry as provided by Bankruptcy Rule 7062.

20.    Any remaining objections to the assignment of the Leases that have not been withdrawn, waived, adjourned, or settled, and all reservations of rights included in such objections, are overruled in all respects and denied.

21.    Any provision in the Leases regarding percentage rent to the extent of Debtors' sales prior to the Closing Date shall not be imputed against Burlington, provided that Burlington shall be liable for percentage rent for the prorated portion of calendar year 2025 remaining after the Closing Date for a partial calendar year as if the term began on the Closing Date (and Burlington shall not be liable to pay any percentage rent based upon sales that occurred prior to the Closing Date) and no percentage rent is due and owing by Burlington for the period prior to the Closing Date.

22.    To the extent there is any inconsistency between the terms of this Order and the terms of the Assignment Agreement(s) (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

23.     To the extent that Burlington and a Landlord enter into a side letter with respect to a Lease, such side letter shall govern with respect to rights and obligations of Burlington and that Landlord.  For the avoidance of doubt, no side letters shall modify the rights and obligations of any third party without such third party's consent.

24.     The failure to specifically include any particular provision of the Assignment Agreement(s) or other related documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Assignment Agreement(s) and all other related documents be authorized and approved in their entirety pursuant to this Order.

25.     The Assignment Agreement(s) and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement is consistent with this Order and does not have any adverse effect on the Debtors' estates; provided, further, that the Debtors shall provide any such modification, amendment, or supplement to the Landlords and the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases no less than one (1) day prior to execution of such modification, amendment, or supplement; provided, further, that after the occurrence of the Closing Date, the final versions of the Assignment Agreement(s) any related agreements, documents or other instruments (as modified, amended or supplemented) shall be filed with the Court.

## EXHIBIT A

| Store Number | Address | Base Rent PSF | Lease Expiration Date | Options | Purchaser Entity | Vacate Date | Estimated Cure |
|---|---|---|---|---|---|---|---|
| 809 | 1335 W. Walnut Ave. Dalton, GA | $7.25 | 01/31/27 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $0.00 |
| 1012 | 6880 Garners Ferry Rd. Columbia, SC | $7.02 | 01/31/30 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $0.00 |
| 1155 | 125 Highway 332 W. Lake Jackson, TX | $8.50 | 01/31/29 | 5 | Burlington Coat Factory of Texas, L.P. | 2/28/25 | $61,000.00 |
| 1218 | 19142 Montgomery Village Ave. Montgomery Village, MD | $15.00 | 01/31/32 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 3/17/25 | $10,000.00 |
| 1595 | 1400 Merritt Blvd. Dundalk, MD | $8.18 | 01/31/31 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 3/17/25 | $51,000.00 |
| 1742 | 1601 E Price Rd. Brownsville, TX | $5.88 | 01/31/29 | 5 | Burlington Coat Factory of Texas, L.P. | 2/28/25 | $97,000.00 |
| 1805 | 5781 SW Green Oaks Blvd. Arlington, TX | $7.00 | 01/31/30 | 5 + 5 | Burlington Coat Factory of Texas, L.P. | 2/28/25 | $89,000.00 |
| 1809 | 151 VFW Parkway Revere, MA | $9.00 | 01/31/27 | 5 + 5 | Burlington Coat Factory of Texas, Inc. | 3/17/25 | $8,000.00 |
| 4753 | 9500 Montgomery Blvd. NE, Suite A Albuquerque, NM | $10.50 | 01/31/29 | 5 + 5 + 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $0.00 |
| 5118 | 1507 West Mason St. Green Bay, WI | $4.82 | 01/31/26 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $0.00 |
| 5238 | 11 McKenna Rd. Arden, NC | $10.00 | 01/31/28 | 5 + 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $79,000.00 |
| 5144 | 380 Universal Dr. N North Haven, CT | $10.50 | 01/31/29 | 5 | Burlington Coat Factory Warehouse Corporation | 3/17/25 | $0.00 |

A-1

## __EXHIBIT B__

**Assumption & Assignment Agreement(s)**

*Execution Version*

## ASSUMPTION AND ASSIGNMENT AGREEMENT

THIS ASSUMPTION AND ASSIGNMENT AGREEMENT (the "Agreement"), dated as of **February 27, 2025**, is by and between **BIG LOTS STORES, LLC**, an Ohio limited liability company ("Assignor") and **BURLINGTON COAT FACTORY WAREHOUSE CORPORATION**, a Florida corporation, or its designated affiliates reflected on **Schedule A** attached hereto ("Assignee"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Assignor to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court"), jointly administered under case *In re Big Lots, Inc.*, Case No. 24-11967 (JKS) (Bankr. D. Del. 2024) (the "Chapter 11 Cases"); and

WHEREAS, Gordon Brothers Retail Partners, LLC ("GBRP"), as buyer, and Big Lots, Inc. and certain of its subsidiaries, as seller ("Seller"), are parties to that certain Asset Purchase Agreement dated as of January 3, 2025 (the "Purchase Agreement"), pursuant to which Buyer agreed to acquire certain assets, including designation rights with respect to executory contracts and unexpired leases;

WHEREAS, on January 2, 2025, the Court entered an order approving the transactions contemplated under the Purchase Agreement [Docket No. 1556] (the "Sale Order");

WHEREAS, in accordance with Section 2.5(b) of the Purchase Agreement and Paragraph 43 of the Sale Order, Buyer designated the Lease (as defined herein) as a "Designated Asset" for assumption and assignment to Assignee as the "Designated Buyer";

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on **Schedule A**, with the term and address of each lease being as represented in the documents provided by Assignor, on **Schedule A**, including rights under those certain Subordination, Non-Disturbance and Recognition Agreements executed in connection with such leases (collectively referred to as either as the "Assigned Assets" or the "Leases" and individually an "Assigned Asset" or "Lease") with respect to the premises set forth on **Schedule A** (the "Premises"), subject to the Court's entry of an order of record pursuant to 11 U.S.C. 363(b) and 365 approving the assumption and assignment of the Leases contemplated by this Agreement(the "Court Order").

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto (individually, "Party" or collectively, "Parties") agree as follows:

## AGREEMENT

1.    Assignment and Assumption.  On the later of the (a) date of entry of the Court Order, or (b) the day after the Vacate Date at the Premises, as reflected on **Schedule A**; provided, that Assignor or GBRP shall give Assignee no less than seven (7) days' advance written notice of the Vacate Date (the "Closing Date"):

(a)    Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset.

(b)     No later than the Closing Date, Assignor shall surrender the Premises to Assignee, deliver possession thereof to Assignee and deliver all access codes and keys (or written confirmation that Assignee is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Assignee.

(c)     Except as specifically set forth in this Agreement, Assignee hereby assumes and undertakes to pay, perform and discharge all of Assignor's obligations and duties with respect to the Assigned Asset from and after the Closing Date.

2.     <u>Payment</u>. Subject to the immediately following sentence, Assignee shall, on the Closing Date or the immediately following business day if the Court Order is entered of record after 3:00 PM ET, deliver the purchase price for the Assigned Asset in the amount of **$2,400,000.00** (the "<u>Purchase Price</u>") net of any previously paid deposits, in immediately available funds wired to the account of GBRP set forth on **<u>Schedule B</u>** hereto. The Parties acknowledge that if the assumption and assignment of the Assigned Asset (the "<u>Closing</u>") does not occur as set forth herein, the Lease(s) may thereafter be rejected in the bankruptcy proceeding referenced above.

3.     <u>Assumption of Liabilities</u>. All defaults or other obligations of Assignor subject to 11 U.S.C. 365(b) shall be cured by Assignee as soon as reasonably practicable after the Closing Date (or as otherwise agreed with Lessor, and Assignee shall have no liability or obligation for such obligations or defaults (the "<u>Cure Amount</u>"). Assignee shall assume all obligations with respect to the Assigned Asset due from and after the Closing Date. Notwithstanding any of the foregoing, the Parties agree that if the cure amount timely asserted by the counterparty to the Assigned Asset (the "<u>Lessor</u>"), in accordance with the Designation Rights Procedures (as such term is defined in the Sale Order) (the "<u>Asserted Cure Amount</u>"), is higher than GBRP's estimated Cure Amount reflected in **<u>Schedule A</u>**, Assignee may, in its sole determination and discretion, withdraw its offer for such Lease(s), and the Lease(s) may thereafter be rejected in the bankruptcy proceeding referenced above; *provided further*, in the event of this election, the Purchase Price shall be adjusted accordingly, as agreed between GB and Assignee.

4.     <u>No Further Liability of Assignor</u>.  From and after the Closing Date, Assignor shall have no further obligations and duties with respect to the Assigned Asset due after the Closing Date.

5.     <u>Further Assurances</u>.  At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset.

6.     <u>"As Is Where Is" Transaction</u>. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset; *provided, however*, Assignor warrants and represents that it has fully complied with any requests from Assignee to provide access to all known leases and amendments documents relating to the Assigned Asset(s).

7.     <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to principles of conflicts of law.

8.     <u>Jurisdiction.</u> The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar

grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

9.  <u>No Reliance</u>.  Except as specifically set forth in this Agreement, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.

10.  <u>Third Party Beneficiaries</u>.  This Agreement is expressly intended to confer rights and benefits upon GBRP, and GBRP shall have the right to enforce the provisions of this Agreement.

11.  <u>Construction</u>.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

12.  <u>Execution in Counterparts</u>.  This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All such counterparts, when so executed, shall be deemed to constitute one final agreement as if one document had been signed by all Parties to this Agreement. Each such counterpart, upon execution and delivery of all counterparts, shall be deemed a complete and original of this Agreement. The Parties hereby each agree that its authorized signatories may receive and review this Agreement via electronic record and may sign this Agreement via electronic digital signature (i.e., DocuSign or similar electronic signature technology), and the Parties may rely on such electronic digital signatures as if they are original signatures by each Party or duly authorized representatives of each Party, and delivery of an executed copy of this Agreement by facsimile or by other electronic means (.pdf) shall be legal and binding and shall have the same full force and effect as if an original executed copy of this Agreement had been delivered.  No Party may raise the use of an image transmission device or method or the fact that any signature was transmitted as an image as a defense to the enforcement of such document.

13.  <u>Intended Use & Going Dark</u>.  Assignee intends to use the Premises for the operation of a Burlington retail store. In order to facilitate such usage, Assignee may need to delay reestablishing retail operations for a period of time not to exceed **one hundred and eighty (180) days** after receipt of applicable permits, subject to events of force majeure (the "<u>Going Dark Period</u>").

*[Signatures appear on following page]*

*Execution Version*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**

**BIG LOTS STORES, LLC**

By: _____

Name: _____

Title: _____

Federal I.D. No.: _____

**ASSIGNEE:**

**BURLINGTON COAT FACTORY
WAREHOUSE CORPORATION**,
a Florida corporation

By: *Jeff Morrow*
     89CD8F75CF53462...

Name: Jeffrey Morrow

Title: Senior Vice President – Real Estate

Federal I.D. No.: 22-1970303

### Schedule A to the Assumption and Assignment Agreement

### Description of Assigned Asset(s)

| Store Number | Address | Base Rent PSF | Lease Expiration Date | Options | Purchaser Entity | Vacate Date | Estimated Cure |
|---|---|---|---|---|---|---|---|
| 809 | 1335 W. Walnut Ave. Dalton, GA | $7.25 | 01/31/27 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $0.00 |
| 1012 | 6880 Garners Ferry Rd. Columbia, SC | $7.02 | 01/31/30 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $0.00 |
| 1155 | 125 Highway 332 W. Lake Jackson, TX | $8.50 | 01/31/29 | 5 | Burlington Coat Factory of Texas, L.P. | 2/28/25 | $61,000.00 |
| 1218 | 19142 Montgomery Village Ave. Montgomery Village, MD | $15.00 | 01/31/32 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 3/17/25 | $10,000.00 |
| 1595 | 1400 Merritt Blvd. Dundalk, MD | $8.18 | 01/31/31 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 3/17/25 | $51,000.00 |
| 1742 | 1601 E Price Rd. Brownsville, TX | $5.88 | 01/31/29 | 5 | Burlington Coat Factory of Texas, L.P. | 2/28/25 | $97,000.00 |
| 1805 | 5781 SW Green Oaks Blvd. Arlington, TX | $7.00 | 01/31/30 | 5 + 5 | Burlington Coat Factory of Texas, L.P. | 2/28/25 | $89,000.00 |
| 1809 | 151 VFW Parkway Revere, MA | $9.00 | 01/31/27 | 5 + 5 | Burlington Coat Factory of Texas, Inc. | 3/17/25 | $8,000.00 |
| 4753 | 9500 Montgomery Blvd. NE, Suite A Albuquerque, NM | $10.50 | 01/31/29 | 5 + 5 + 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $0.00 |
| 5118 | 1507 West Mason St. Green Bay, WI | $4.82 | 01/31/26 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $0.00 |
| 5238 | 11 McKenna Rd. Arden, NC | $10.00 | 01/31/28 | 5 + 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $79,000.00 |
| 5144 | 380 Universal Dr. N North Haven, CT | $10.50 | 01/31/29 | 5 | Burlington Coat Factory Warehouse Corporation | 3/17/25 | $0.00 |

## Schedule B

GBRP Wiring Instructions