**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC.. *et al.*,[1] | Case No. 24-11967(JKS) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: November 4, 2024**<br>**Related to Docket Nos. 18, 612, 1153** |

**OBJECTION OF SAFEWAY TO POTENTIAL ASSUMPTION AND ASSIGNMENT OF**
**UNEXPIRED LEASE, CURE AMOUNT, AND ADEQUATE ASSURANCE**

Safeway Inc. ("Safeway") hereby submit this objection and reservation of rights with respect to the "Sale Order" (ECF #1556)[2] and Debtors' intention to assume and assign the Chester, MD Lease (defined below) as set forth in the *Notice of Filing of Tenth Post-Closing Designation* ("Designation Notice") [ECF #1994]:

**BACKGROUND**

1.    On September 9, 2024, the above-captioned debtors and debtors in possession (the "Debtors") commenced these chapter 11 cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in this Court.

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).

[2] The referenced pleading is entitled: ORDER (I) APPROVING THE ASSET PURCHASE AGREEMENT, (II) AUTHORIZING AND APPROVING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS, ENCUMBRANCES, AND OTHER ASSUMED LIABILITIES AND PERMITTED ENCUMBRANCES, (III) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF.

2.      Safeway, as landlord, and Debtor Big Lots Stores, LLC, as tenant, are parties to that certain lease dated June 18, 2012 (together will all exhibits and attachments thereto, as amended and assigned from time to time, the "Chester, MD Lease") for the non-residential real property located at 24 Kent Town Market, Chester, Maryland (the "Chester, MD Property").

3.      By way of the Sale Order and Designation Notice, Debtors intends to assume the Chester, MD Lease and assign it to an entity referenced as "Ocean State Job Lot of MD2025, LLC" (the "Proposed Assignee"), which as stated therein is a subsidiary of Ocean State Job Lot. [ECF #1556 and #1994.]  The Proposed Assignee was formed, according to the Maryland Secretary of State's office, on January 20, 2025.

## OBJECTION

4.      Safeway is not opposed to Debtors' efforts to assume and assign the Chester, MD Lease.   But as part of any proposed assumption and assignment, Debtors must ensure that Safeway receives proper treatment under the provisions of the Bankruptcy Code, including cure or adequate assurance of the prompt cure of defaults under the Chester, MD Lease, and adequate assurance of future performance under the Chester, MD Lease.

## I.      Debtors or the Proposed Assignee Must Promptly Cure All Defaults

5.      In order to assume and assign the Chester, MD Lease, Debtors are required, at the time of assumption, to cure or provide adequate assurance of the prompt cure of all monetary and non- monetary defaults under the Chester, MD Lease, including, without limitation, any and all defaults with respect to (i) insurance, (ii) common area maintenance charges, (iii) real estate taxes, (iv) utilities (including electricity, gas, oil, water, telephone, sanitary sewer services and all other and utilities), (v) attorneys' fees and costs, (vi) repair, maintenance, and replacement obligations with respect to the Properties (including building and any building systems/components),

(vii) satisfaction of any liens, (viii) defense and indemnity obligations with respect to any third party claims, and (ix) compliance with other provisions of the Chester, MD Lease (such as any use restrictions) and laws, owing under the Chester, MD Lease that remain undetermined as of the date of the proposed assumption (the "<u>Unliquidated Obligations</u>").   Thus, for example, Debtors are not entitled to assume or assign the Chester, MD Lease by merely curing arrearages in rent.   Instead, Debtors must cure, or provide adequate assurance of promptly curing, all liquidated cure amounts and other Unliquidated Obligations under the Chester, MD Lease, including, without limitation, their current and future obligations to maintain the Chester, MD Property and make repairs and replacements, as a condition to the assumption and assignment of the Chester, MD Lease.   *See* 11 U.S.C. § 365(b)(1).

6.     Any assumption or assignment of Chester, MD Lease must be done, if at all, subject to all of its benefits and burdens.   Section 365 of the Bankruptcy Code provides only for the assumption or assignment of an executory contract or unexpired lease in its entirety, and debtors may not assume only the favorable parts of a contract or lease and reject parts that they deem unfavorable.   *See Cinicola v. Scharffenberger*, 248 F.3d 110, 19-20 (3d Cir. 2001) ("If the trustee meets the assumption requirements under § 365, it must assume the executory contract entirely.") (*citing NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984)); *In re G-1 Holdings, Inc.*, 568 B.R. 731, 767 (Bankr. D. N.J. 2017) ("A debtor may not "cherry-pick" the provisions of an assumed contract with which it will comply."); *In re MF Global Holdings Ltd.*, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012) ("The trustee must either assume the entire contract, *cum onere,* or reject the entire contract, shedding obligations as well as benefits."); *In re Buffets Holdings, Inc.*, 387 B.R. 115, 119 (Bankr. D. Del. 2008) ("If the debtor decides to assume a lease, however, it must generally assume all the terms of the lease and may not pick and choose only favorable terms to be assumed. 'The [debtor]

may not blow hot and cold.  If he accepts the contract he accepts it *cum onere*.  If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.'") (*quoting In re Italian Cook Oil Corp.*, 190 F.2d 994, 97 (3d Cir. 1951)); *see also In re Access Beyond Technologies, Inc.*, 237 B.R 32, 47 (Bankr. D. Del. 1999) ("A debtor cannot avoid the requirements of section 365 by saying it is 'selling' a lease or executory contract, rather than assuming and assigning it.").

7.      Safeway objects to Debtors' proposed cure amounts, and further object to the extent the Debtors seek authorization for the sale or assignment of the Chester, MD Lease free and clear of any liquidated cure amounts or Unliquidated Obligations, including without limitation any obligations to satisfy unbilled taxes or other charges, reconciliations, or adjustments.   Any order approving the assumption and assignment of the Chester, MD Lease should make clear that all liquidated cure amounts must be paid at or prior to assumption and assignment and all Unliquidated Obligations shall survive, and that any assignee shall take the Chester, MD Lease subject to all of its terms and undertake to satisfy all monetary and other non-monetary obligations under the Chester, MD Lease, regardless of whether such Unliquidated Obligations could be argued to have existed, occurred, arose, accrued or related prior to the assumption and assignment of the Chester, MD Lease.

II.     **Debtors and/or the Proposed Assignee Must Provide Adequate Assurance of Future Performance**

8.      In addition to the curing of all defaults, any assignment of the Chester, MD Lease is also conditioned upon Debtors or the Proposed Assignee providing Safeway with adequate assurance of future performance.  *See* 11 U.S.C. § 365(b)(1)(C).

(A)     **The Bankruptcy Code Requires Additional Protections for Shopping Center Leases**

9.      In connection with the assumption and assignment of leases, shopping center landlords are afforded special statutory protections under the Bankruptcy Code in the form of adequate assurance of future performance.  *In re Joshua Slocum*, 922 F.2d at 1086; *In re Trak Auto Corp.*, 277 B.R. 655 (Bankr. E.D. Va. 2002).  Section 365(f)(2) provides:

> The trustee may assign an executory contract or unexpired lease of the debtor only if:
>
> > (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
> >
> > (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

10.      Section 365(b)(1) of the Bankruptcy Code provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee:
>
> > (A) cures, or provides adequate assurance that the trustee will promptly cure, such default…;
> >
> > (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease for any actual pecuniary loss to such party resulting from such default; and
> >
> > (C) provides adequate assurance of future performance under such contract or lease.

11.      In connection with the assumption and assignment of a shopping center lease, adequate assurance of future performance includes adequate assurance:

> > (A) of the source of rent… due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee… shall be similar to the financial condition and operating performance of the debtor… as of the time the debtor became the lessee under the lease;
> >
> > (B) that any percentage rent due under such lease will not decline substantially;

(C) that assumption . . . of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement related to such shopping center; and

(D)  that assumption . . . of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

12.    Debtors bear the burden of proving adequate assurance of future performance in connection with the potential assumption and assignment of the Chester, MD Lease.  *In re F.W. Restaurant Assoc., Inc.*, 190 B.R. 143 (Bankr. D. Conn. 1995); *In re Rachels Indus. Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

13.    To determine whether the requirements of adequate assurance of future performance will be satisfied, at a minimum, Safeway must receive the following information from the Proposed Assignee (collectively, the "Adequate Assurance Information"):

a.    The exact name and address of the entity that will be designated as the Proposed Assignee and any guarantor;

b.    Audited (or un-audited, if audited is not available) financial statements (profit loss statement and balance sheet), and any supplemental schedules and accompany notes, for the fiscal years ended 2023 and 2024, and the most recent fiscal quarter, for both the Proposed Assignee and any guarantors;

c.    The Proposed Assignee's and any guarantor's 2025 and 2026 business plans including sales and cash flow projections;

d.    Any financial projections, calculations, and/or financial *pro-formas* with respect to the proposed acquisition of the Chester, MD Lease;

e.    A detailed summary of the Proposed Assignee's and guarantor's experience operating retail stores; and

      f.     The number of retail stores the Proposed Assignee and any guarantor operates and all trade names used.

14.     Safeway may also need similar information for Debtors in the year when Debtors entered into the Chester, MD Lease to appropriately evaluate the ability of the Proposed Assignee to provide adequate assurance of future performance.

15.     Unless and until Safeway receives all of this information, Debtors have not satisfied their burden pursuant to 11 U.S.C. § 365(b)(3).

**(B)    The Chester, MD Lease Must Be Assumed and Assigned *Cum Onere***

16.     Section 365(b)(3)(C) of the Bankruptcy Code provides that the assumption of a shopping center lease "is subject to all the provisions thereof…". 11 U.S.C. § 365(b)(3)(C). Bankruptcy courts have described the assumption of an unexpired lease as "an all-or-nothing proposition – either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected." *See, e.g.*, *In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003).

17.     As the court noted in *In re Washington Capital Aviation & Leasing*, 156 B.R. at 167, 175 n. 3 (Bankr. E.D. Va. 1993):

> Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the ... estate from any liability for any breach of such ... lease occurring after such assignment." A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty. See Douglas G. Baird and Thomas H. Jackson, Bankruptcy 285 (2d ed. 1990) (citing Restatement (Second) of Contracts § 318(3) (1981) ("delegation of performance ... does not discharge any duty or liability of the delegating obligor")). While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise. Section 365(k) changes this common law rule and relieves the estate from all liability under the lease following assignment.

*See also In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) (adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because

assignment relieves the trustee and the estate from liability arising from a post-assignment breach"). Debtors are not entitled to the benefits and protections of section 365(k) if they do not assume and assign a lease *cum onere* – with all benefits and burdens. *See, e.g., American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999).

18.     Furthermore, Debtors or the Proposed Assignee must be required to comply with all contractual obligations to indemnify and hold Safeway harmless for events which occurred before assumption and assignment, but which were not known to Safeway as of the date of the assumption and assignment. This includes, but is not limited to, (i) claims for personal injury that occurred at the Chester, MD Property, (ii) damage and destruction to the Chester, MD Property or property by Debtors or their agents, and (iii) environmental damage or clean-up. To cure possible pre- assignment, non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Chester, MD Lease, either (a) the Debtors or the Proposed Assignee must be required to satisfy any and all such claims, notwithstanding anything to the contrary contained in a plan or any court order, or (b) the Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences that occurred prior to the effective date of an assignment. Such claims for indemnity could include claims for personal injury occurring at the Chester, MD Property where Safeway is joined as a party to a lawsuit or for damage and destruction of property by Debtors or their agents or employees.

### III. <u>Demand for Security</u>

19.     Section 365(l) of the Bankruptcy Code provides, in pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease

substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

20.     In the ordinary course of business, Safeway requires security deposits, letters of credit, or guaranties when leasing (or assessing an assignment of a lease) to certain companies based on their financial information and history.   In connection with the proposed assumption and assignment of the Chester, MD Lease, Safeway reserves the right to require such security in one of the forms listed in section 365(l) of the Bankruptcy Code.   Until the financials of the Proposed Assignee are known to Safeway, Safeway reserves the right to specify the form and amount of such security; however, Safeway often requires a security deposit, or parent or personal guaranty in connection with leasing to a new tenant.

**IV.     Debtors Must be Responsible for Timely Payment of all Post-Petition Rent and Additional Rent Due Under the Chester, MD Lease until they are Assumed, Assumed and Assigned, or Rejected**

21.     Section 365(d)(3) of the Bankruptcy provides, in pertinent part:

> The [debtor] shall timely perform all the obligations of the debtor…arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of [the Bankruptcy Code].

22.     Safeway requests that the assumption and assignment of the Chester, MD Lease be conditioned upon Debtors' timely performance of all obligations arising under the Chester, MD Lease before the Chester, MD Lease is assumed, assumed and assigned, or rejected pursuant to section 365(d)(3) of the Bankruptcy Code, including, without limitation, the payment in full of rent and additional rent on the first day of each month.

**V.     Execution of Assignment Agreement with Safeway**

23.     Safeway requires, with any proposed assignment, that the Proposed Assignee execute an evidencing the assignment and Proposed Assignee's agreement, made directly with Safeway, to comply with all terms and conditions of the Chester, MD Lease.

## <u>RESERVATION OF RIGHTS</u>

24.     Safeway reserves the right to amend or supplement any statement of cure amount as necessary or appropriate under the circumstances, including without limitation to account for property inspections, reconciliations or adjustments which have not yet been billed or have not yet become due under the terms of the Chester, MD Lease, amounts that become due and owing after the date hereof and prior to the time the Chester, MD Lease are actually assumed and assigned, or amounts that Safeway becomes aware of after the date hereof.

**WHEREFORE**, Safeway hereby requests that the Court deny the purported assumption and assignment until and unless the stated conditions and terms, as set forth herein, are complied with and/or otherwise duly satisfied.

Dated: March 3, 2025
Wilmington, Delaware

Respectfully submitted,

By:  /s/ *Geoffrey G. Grivner*
        Geoffrey G. Grivner (No. 4711)
        BUCHANAN INGERSOLL & ROONEY PC

        500 Delaware Avenue, Suite 720
        Wilmington, DE 19801
        Telephone: (302) 552-4200
        Email: geoffrey.grivner@bipc.com

        *Attorneys for Albertsons LLC and Safeway Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Geoffrey G. Grivner, hereby certify that, on this 3rd day of March 2025, I caused a true and correct copy of the foregoing *Objection of Safeway to Potential Assumption and Assignment of Unexpired Lease, Cure Amount, and Adequate Assurance* to be served *via* CM/ECF on all parties who have registered for electronic service in these cases.

Dated: March 3, 2025
Wilmington, Delaware

/s/ *Geoffrey G. Grivner*
Geoffrey G. Grivner (No. 4711)