# Exhibit A

## LEASE CONTRACT SUMMARY

The following is a summary of some of the provisions of the Lease Contract attached hereto and made a part hereof. In the event of a conflict between the provisions of this Summary and the Lease Contract, the provisions of the Lease Contract shall govern and control.

1.   **Landlord and
     Notice Address:**        **TOWN 'N COUNTRY PLAZA L.P.**
                              C/O STUART S. GOLDING COMPANY. 27001 U.S. HIGHWAY 19 N.
                                  SUITE 2095, CLEARWATER, FL 33761

2.   **Tenant:**              **BIG LOTS #547**

     **Trade Name:**          **BIG LOTS #547**

     **Tax ID or SS#:**

     **Notice Address:**      7570 W. HILLSBOROUGH AVENUE      **UNIT #13**
                              TAMPA, FL 33615

     **Tenant Billing Address:** **LEASE ADMIN DEPT #10051, P.O. BOX 28512, COLUMBUS, OH 43228-0512**
                              LEASE ADMIN DEPT #10051, 300 PHILLIPI ROAD, COLUMBUS 43228-1310
     **Owner Residence
     Address:**               **614 278-6762**

     **Telephone Number
     Current Business:**      **813 249-4818**

     **Fax Number:**          **614 278-6763**

3.   **Lease Guarantor:**

     **Tax ID or SS#:**

     **Address:**

     **Telephone #:**

     **Fax Number:**

4.   **Leased Premises:**     30,000 Approximate square footage as shown on Exhibit "A".

5.   **Tenant's Pro-Rata Share:** ---% of Shopping Center, which currently includes an aggregate of  square feet of gross leasable area ("GLA").  Tenant's Pro-Rata Share shall be modified from time to time to reflect any changes in the aggregate GLA of the Shopping Center.

6.   **Lease Term:**          NOV 13, 1994 – JAN 31, 2002

     **Commencement Date:**   NOVEMBER 13, 1994

     **Termination Date:**    ~~JANUARY 31~~, Feb 1 2007  OPTION
                              2012 OPTION

     **Holdover Rent:**       150% of minimum rent, percentage rent, common area payment, tax payment, insurance payment, marketing payment and mail payment payable for the last month of the existing term.

7.   **Minimum Rent:**         $ total Lease Contract Minimum Rents.
                               Payable in equal successive monthly installments as follows:

                               **$10,000.00** per month, from 2/1/02 to 1/31/2007      Year 1 – 5  OPTION

                               $_____ per month, from ____ to _____      Year

                               $_____ per month, from ____ to _____      Year

8.   **Percentage Rent:**      A sum equal to **2 1/2%** of all "Gross Sales" (as defined in Section 4.02) in excess of
                               **4,800,000.00.**

9.   **Security Deposit:**     N/A

10.  **Additional Charges**

     **Common Area
     Maintenance Payment:** $1,646.91 per month

     **Tax Payment:**          $1,807.25 per month

     **Insurance Payment:**    ~~$__ per month~~

     **Water:**                N/A

     **Trash:**                N/A

     **Other:**                N/A

11.  **Permitted Use:**        **THE SALE OF GENERAL MERCHANDISE**

12.  **Tenant Insurance
     Coverage Required:**

13.  **Late Charges:**

14.  **Special Provisions:**      list provision numbers for key provisions requiring special knowledge

15.  **Renewal Term(s):**      1 – 5 YR

     **Renewal Rents:**        $11,250.00

     **Notice Required:**      ~~() months prior to expiration of existing term.~~

**LEASE**

This Lease, made effective this _15_ day of ___September___, 1994, by and between ___Town "N" Country Plaza___, with its business address at _3550 Buschwood Park Drive, Suite#145, Tampa, Fl 33618-4433_, LANDLORD, and Consolidated Stores Corporation, an Ohio corporation, doing business as Odd Lots or Big Lots, of the City of Columbus, County of Franklin, and State of Ohio, Tenant, whose mailing address is 300 Phillipi Road, Department 907, Columbus, Ohio 43228-1310.

**WITNESSETH:**

1. **DEFINITIONS:**

   For purposes of this Lease, these terms are defined as follows:

   A. <u>Common Areas</u>: The term "Common Area" as used herein shall mean the improved portion of the shopping center not occupied by building area as shown on the site plan, including, but not limited to, the parking areas, driveways, service driveways, service areas, sidewalks, any landscaped areas, shopping center sign, and parking lot lighting poles and light fixtures of the shopping center are collectively referred to as Common Areas.

   Landlord shall maintain the Common Areas which shall remain under Landlord's control and be subject to rearrangement, enlargement or diminution and to such reasonable rules and regulations as are prescribed by Landlord from time to time. Tenant, any employees or agents, shall not fence, block, allow property to remain in or upon or otherwise obstruct the Common Areas. Tenant is permitted to erect a cart corral in the parking area, upon obtaining Landlord's prior written consent, which consent will not be unreasonably withheld.

   Landlord agrees not to materially decrease the number of parking spaces contained in the Common Areas, to block access to the Demised Premises or to obstruct the visibility of the Demised Premises from motorists using _Ambassador Drive, Hillsborough Avenue or Hanley Road_ except for such reasonable blockage resulting from construction of buildings on the shopping center building reserve and any outlots reserved.

   B. <u>Dates</u>:

   1) The Tenant Entrance Date shall be the date first appearing above or whenever Tenant or any agent, employee or contractor of Tenant commences work in the Demised Premises or stores equipment or materials therein, whichever is later. From the Tenant Entrance Date until the Rent Commencement Date, Tenant shall have all of the duties, obligations and responsibilities under this Lease except those set forth in Sections 3, 4, (except the 4th and 5th paragraphs thereof) and 5, and Tenant may install trade fixtures and equipment in the Demised Premises and store materials therein at Tenant's sole risk providing that such activity does not interfere with Landlord or its contractor's work in the Demised Premises.

   2) The Rent Commencement Date shall be the earlier of the date that is sixty (60) days after the Tenant Possession Date or the date on which Tenant opens for business in the Demised Premises. Upon the request of either Landlord or Tenant, the parties hereto shall join in the execution of a letter agreement stipulating the Tenant Possession Date.

   As of the Rent Commencement Date, all provisions of this Lease shall be applicable.

3)    The Term Commencement Date shall be the date that the term of this Lease commences which shall coincide with the Rent Commencement Date if the latter is on the first day of a month, but if not, then it shall be the first day of the month following the Rent Commencement Date.

4)    Lease Year shall mean each successive twelve (12) month period beginning with the first day of February of each year during the term hereof.

5)    The Tenant Possession Date shall be the date Landlord, after having completed all construction required of him under the Remodeling Rider, tenders possession of the Demised Premises to Tenant.  Possession of the Demised Premises shall not be deemed to have been given to Tenant unless the Demised Premises are ready for the installation of Tenant's fixtures and finishing work by Tenant, and comply with all laws, ordinances, regulations and building restrictions relating to the construction upon the Demised Premises.

6)    If Landlord fails to return properly executed Leases to Tenant by September 15, 1994 , or if Landlord fails to tender possession of the Demised Premises to Tenant by  September 19, 1994 , then Tenant may cancel this Lease by written notice to Landlord.

C.    Exhibits:  The following Exhibits are attached to and made a part of this Lease by this reference hereto:

1)    Exhibit A - Legal Description of Shopping Center

2)    Exhibit B - Rider for Remodeling

3)    Exhibit C - Sign Specifications

4)    Exhibit D - Site Plan of Shopping Center

5)    Exhibit E - Excluded Tax Parcel

6)    Exhibit F - Title Exceptions

D.    Demised Premises:  Being a storeroom, which storeroom shall have approximately  30,000  square feet with dimensions of  150 x 200, as depicted on Exhibit D.

E.    Shopping Center:  Landlord's shopping center is known as  Town " N" Country Plaza  at the  north side of Hillsborough Avenue between Hanley Road and Ambassador Drive  in the State of  Florida , and County of  Hillsborough, Legally described on Exhibit A.

2.    DEMISED :

Landlord, in consideration of the rent to be paid by Tenant and Tenant's covenants and undertakings hereinafter provided, hereby leases to Tenant the Demised Premises during the term and for the use hereinafter provided.  Landlord further grants to Tenant a non-exclusive license to use the Common Areas to be shared with the other Tenants and occupants of the shopping center and their respective employees, agents, customers, and invitees.

3.    TERM:

A.    Original Term:  The original term of this Lease shall be for a period commencing on the Term Commencement Date as defined in Article 1.B(3) above and ending January 31, 2002.  The "Lease Year" shall be defined as each successive period of twelve (12) consecutive calendar months commencing on the first day of February

2

of each year during the term hereof. If the Term Commencement Date is other than February 1st of any year, the period between the Term Commencement Date and January 31st of the following year shall be the "First Partial Lease Year." Tenant's obligations to pay rent shall commence on the Rent Commencement Date.

B.    Option to Extend Term: So long as the Tenant is not in default under the terms of this Lease, Landlord hereby grants to Tenant the option to extend the Term of this Lease for two (2), five (5) year option terms, consecutively referred to as "First Option Term" and "Second Option Term." The First Option Term shall commence at the end of the original Term of this Lease, and the Second Option Term shall commence at the end of the First Option Term, each upon the same terms and conditions as contained in this Lease except as provided herein. If Tenant is then in possession of the Demised Premises, Tenant may elect to exercise each option by giving the Landlord written notice at least six (6) months prior to the expiration of the original term or the previous option term.

**4.    USE AND OPERATION:**

Tenant covenants and agrees that the Demised Premises shall be used and occupied for the purpose of the retail sale of general merchandise. No other discount liquidator, or close out store or dollar store operation may be permitted in the Shopping Center during the original term of this Lease or any option terms exercised by Tenant. Notwithstanding the foregoing, Tenant covenants and agrees that it will not use or occupy more than five hundred (500) square feet of the Demised Premises for any purpose that is in competition with any other tenant occupying space in the Shopping Center as of the date of this Lease (or as of the date of any future assignment of this Lease or subletting of the Demised Premises to which Landlord has consented as otherwise provided herein); provided, however, that in no event will Tenant be permitted to use or occupy any portion of the Demised Premises for any of the following purposes:

1.    prescription drug department;
2.    dry cleaning or laundry services;
3.    video cassette rentals;
4.    sales of ice cream, frozen yogurt or frozen desserts;
5.    beauty or hair styling salon;
6.    sales of prepared hamburgers or chicken;
7.    automatic teller machine;
8.    optometry or optician services, or sales of prescription visual aids.

Tenant agrees to, when possible, operate and open the Demised Premises for business at least between the hours of 10:00 A.M. and 6:00 P.M., Monday through Saturday, and 1:30 P.M. to 5:00 P.M. on Sunday, of each week, except for state and federally recognized holidays or religious holidays and except for days on which the conducting of business shall be prohibited by governmental authority, during the term of this Lease.

In the event Tenant (a) shall fail to take possession and open for business in the Demised Premises fully fixtured, stocked and staffed on the Rent Commencement Date, or (b) shall vacate, abandon or desert the Demised Premises, or (c) shall cease operating Tenant's business therein (except where the Demised Premises are rendered untenantable by reason of fire, casualty or other causes beyond Tenant's control not resulting from the negligent acts or omissions of Tenant or Tenant's employees, agents, contractors, licensees, concessionaires or invitees), then and in any such events (hereinafter collectively referred to as "failure to do business") Landlord shall have the right, in addition to other remedies herein provided, to collect the Guaranteed Minimum Rent, and all other sums and charges payable under this Lease, and, additionally, Tenant will be in default hereunder.

Tenant agrees to keep the Demised Premises in a clean, neat, healthful, aesthetically pleasing, well-maintained and orderly condition and to keep the Demised Premises free of debris, trash, garbage, or refuse (except that reasonable amounts may be kept temporarily in closed containers in the places directed by Landlord) from vermin, insects or pests by

3

virtue of having regular pest extermination, excessive vibrations, loud or constant noises, dangerous materials and all other nuisances.  Tenant further agrees not to burn trash or garbage in the shopping center; allow deliveries, shipments or pick-ups through the front entrance to the Demised Premises; commit waste in the Demised Premises or shopping center; cause or permit pipes, lines, conduits, fixtures or appliances in the Demised Premises to be ruined or damaged by freezing, excessive heat or lack of care, maintenance or repair; permit Tenant's agents, employees, customers or invitees to repeatedly or routinely break the law or reasonable rules and regulations adopted by Landlord; do anything to damage, injure or interfere with Landlord, other tenants or occupants of the shopping center or their customers or invitees; or engage in any conduct, activity, or omission which serves to reduce trade in the shopping center or place Landlord's family oriented shopping center in disrepute.

The Demised Premises shall not be used in any manner or occupied for any purpose constituting a fire hazard or so as to increase the cost of Landlord's hazard insurance over the normal cost of such insurance, absent that use, for the type and location of the building of which the Demised Premises are a part.

5.    **RENT:**

From the Rent Commencement Date during the term hereof, Tenant does hereby covenant and agree to pay to the Landlord in lawful money of the United States at, 3550 Buschwood Park Drive, #145, Tampa, Florida 33618-4433 , or at such other place as Landlord may from time to time direct in writing, the following which are collectively referred to hereinafter as "Rent":

A.    Guaranteed Minimum Rent:  During the original term of this Lease, the sum of  $105,000.00  per annum which shall be paid in equal monthly installments in advance on the first day of each and every month, in the amount of  $8,750.00  each.  The Guaranteed Minimum Rent for any partial month shall be prorated on the basis of a thirty (30) day month.

*8750.00* Rent
*(1385.68)* abatement
*7364.32*

All the terms and conditions of this Lease shall apply during the option terms except that (1) this option to extend term shall terminate when exercised; (2) the Guaranteed Minimum Rent applicable for the First Option Term shall be the sum of  $120,000.00  per Lease Year which shall be paid in equal monthly installments, in advance of the first day of each and every month in the amount of  $10,000.00 .  The Guaranteed Minimum Rent for the Second Option Term shall be the sum of  $135,000.00  per Lease Year which shall be paid in equal monthly installments, in advance of the first day of each and every month in the amount of  $11,250.00 .

*10,000.00* ⓉⓇ
*(1385.68)* abmt
*8614.32* 1/1/05

B.    Rent Abatement:  Tenant shall be entitled to a rent abatement equivalent to the amount of its construction costs, not to exceed $120,000.00.  Said amount shall be apportioned equally over the initial term of seven (7) years and deducted from Tenant's monthly payments of Guaranteed Minimum Rent.  In the event this Lease terminates prior to the expiration of the original term of this Lease as defined herein for a reason other than default by Tenant, Landlord shall pay to Tenant the remaining balance due as rent abatement in a lump sum cash payment prior to the effective date of the early termination.  *120,000 ÷ 86.60 = 1385.68 per letter 11/17/94*

C.    Utilities Charge and Exterior Lighting:  Landlord shall provide Tenant with access to all utilities necessary to conduct business on the Demised Premises.  Tenant shall be solely responsible for and shall promptly pay for all public utility and private services rendered or furnished to or for the benefit of Tenant and to the Demised Premises during the term hereof including heat, water, gas, electricity, garbage and refuse disposal facilities and sewer rental, together with all taxes, levies, or other charges based on the use of such utilities.  Tenant shall provide separate utility meters which shall accurately reflect Tenant's usage.  Should any

4

such services be furnished by Landlord, Tenant agrees to pay Landlord for same. The rates charged by Landlord shall not exceed those of a public utility company furnishing similar service in the area. All billings by Landlord for any such service shall be paid within thirty (30) days of receipt thereof, or among Landlord's other remedies, such services may be discontinued.

D.  Percentage Rent: In addition to the "Guaranteed Minimum Rent" hereinbefore expressly reserved, Tenant further agrees to pay to Landlord as additional rent for each Lease Year, in the manner following, a "Percentage Rent" equal to two and one-half percent (2-1/2%) of the excess of Tenant's annual gross sales and income, as hereinafter defined, which exceeds the annual base sum of _$4,200,000.00_ during the initial term; _$4,800,000.00_ during the First Option Term; and _$5,400,000.00_ during the Second Option Term.

Within thirty (30) days following the end of each month, Tenant shall furnish to Landlord an accurate statement of gross sales and income for the previous month. Tenant shall furnish to Landlord within thirty (30) days immediately following the end of each Lease Year, an accurate statement of the gross sales and income for such period, certified to by an executive financial officer of Tenant, in form satisfactory to Landlord, and shall therewith pay to Landlord, any percentage rental then due at the percentage above stated. Percentage rental payments required to be made by Tenant under the terms of this Lease shall be made promptly when due. The term "gross sales and income" as used herein, shall be deemed to mean (1) the aggregate gross amount of all sales made in or from the Demised Premises; (2) charges for all services rendered in or from the Demised Premises; and (3) all gross receipts income from vending machines located in the Demised Premises excluding those used solely for the benefit of Tenant's employees. Such sales, charges, and receipts shall include those of Tenant and Tenant's sublessees, licensees and concessionaires. The following shall be deducted therefrom to the extent same are included in the above computation: (1) sales taxes, excise taxes and any similar tax specifically charged to and paid by customers and directly remitted to the taxing authority; (2) merchandise returned for cash, (3) income from stamp machines and public telephones; (4) bad debts on credit sales, bad checks, and credit card fees paid to credit card issuers and (5) sales of merchandise to employees at a discount.

For the First Partial Lease Year, percentage rent shall be calculated using a formula with the numerator being the number of days in the partial lease year and the denominator being 365 multiplied by the annual base sum during the term in which it falls. Tenant shall pay the amount by which two and one-half percent (2-1/2%) of Tenant's gross sales exceeds the product.

Should Tenant have opened for business during the month preceding the Term Commencement Date, the gross sales and income for the fractional month shall be added to the gross sales and income for the first month of this term, and the annual base sum shall be proportionately increased and the Percentage Rent paid thereon. Should this Lease expire or be sooner terminated leaving a fractional Lease Year, for purpose of computation of Percentage Rent payable hereunder, the annual base sum shall be proportionately reduced and Percentage Rent shall be paid thereon.

Tenant agrees to keep books of account, in accordance with good accounting practice, in form satisfactory to Landlord, of the business conducted on said Demised Premises, accurately showing all gross sales and income. Landlord or its authorized agents may audit the same at any reasonable time. Should Landlord's audit of Tenant's books and records disclose gross sales and income which are three percent (3%) or more greater than that reported by Tenant, then Tenant shall promptly pay to Landlord the cost of such audit and any Percentage Rent found to be due by such audit.

Should Tenant fail to furnish such sales report within the period required, Landlord may have said sales report prepared by an accounting firm of Landlord's choice after reasonable notice to Tenant, and Tenant shall promptly pay the cost thereof and any Percentage Rent required to be paid pursuant to such sales report.

E. <u>Common Area Charges</u>: Throughout the term of this Lease, Landlord shall be responsible for cleaning, snow and ice removal in the parking lot. Landlord shall also be responsible for:

(i) operating, maintaining, refurbishing, replacing, improving, repairing, and lighting the Common Areas and all other non-leasable areas and facilities located in the shopping center which are available for use in common by occupants of the shopping center and/or their customers and invitees;

(ii) operating, maintaining, refurbishing, repairing, replacing, improving, and lighting the service areas, shopping center maintenance and storage room, loading area and all other areas and facilities located in the shopping center which are used in the maintenance and operation of the shopping center;

(iii) operating, maintaining, repairing, replacing, and improving the building roof, building walls, (including periodic painting), and appropriate parking area entrance, exit and directional markers, shopping center signs, and other traffic control signs as are reasonably required to effect the plot plan;

(iv) providing security and on-site and off-site traffic control if deemed necessary by Landlord and in Landlord's sole discretion; and

(v) maintenance of paved surfaces in a level and smooth condition, free of potholes, with the type of material as originally used or a substitute equal in quality, restriping as required to keep same clearly visible and appropriately marked.

Such expenses are limited to, costs of on-site management and supervision, refurbishing, repairing, maintaining, replacing, and improving (but less the amount of any insurance proceeds, or condemnation awards), lighting, line painting, landscaping, providing security, providing public liability, property damage, fire and extended coverage on the common facilities and such other insurance as Landlord deems appropriate, total compensation and benefits (including premiums for worker's compensation and other insurance) paid to on behalf of employees; personal property, supplies, fire protection, and fire hydrant charges, water and sewer charges, utility charges, licenses and permit fees, parking area surcharges or levies, reasonable depreciation of equipment used in operating, maintaining, refurbishing, repairing, replacing and improving the common areas and service areas and rent paid for the leasing of any such equipment.

During the period from the Rent Commencement Date until Landlord gives Tenant a notice of a change in amount Tenant will pay to Landlord a common area maintenance expense contribution (which includes Tenant's insurance contribution) in the amount specified herein. The first such initial common area expense contribution will be due on the Rent Commencement Date and subsequent such common area expense contributions will be due on the first day of each month thereafter. If the Rent Commencement Date is not the first day of any month, the Initial Operating Expense Contribution for the first partial calendar month of the term will be one-thirtieth (1/30th) of a normal monthly payment of common area expense contribution for each day of the period from the day the Rent Commencement Date occurs to the last day of the month in which the Rent Commencement Date occurs. If the expiration date of this Lease is not the last day of a month, the common area expense contribution for the month in which the expiration date occurs will be one-thirtieth (1/30th) of a normal monthly payment for each day of the period from the first day of that month to the expiration date.

6

Landlord will use Tenant's common area expense contributions to pay common area expense charges as described hereinabove as and when they are incurred.

In accordance with this Section 5(E), Landlord will estimate the common area expense of the Shopping Center annually after the close of each calendar year, and will give Tenant written notice of any change in amount of Tenant's common area expense contribution. Tenant's new common area expense contribution will be computed by multiplying the total estimated common area expense for the Shopping Center by Tenant's prorata share factor as described below. On the first day of each month after the date of such notice until Landlord notifies Tenant of a subsequent change in amount, Tenant will pay to Landlord, in advance, the most recent changed amount of Tenant's common area expense contribution.

Landlord will determine the actual total common area expense contribution for the Shopping Center for the same period for which the common area expense was estimated (but such determination will not be made more often than annually) on an accrual basis, in accordance with generally accepted accounting principles. After each such determination, Landlord will notify Tenant of the total amount of common area expense of the Shopping Center for such period, and Tenant's prorata share factor as applied to such actual common area expense. If the total of common area expense contributions paid by Tenant to Landlord during such period exceeds the actual amount of common area expense multiplied by Tenant's prorata share factor for the same period, Landlord may, at its option, pay any such excess to Tenant, or credit such excess against the next common area expense contributions to come due. If Tenant's prorata share factor multiplied by the actual common area expense for such period exceeds the total of Tenant's common area expense contributions paid to Landlord during the same period, then Tenant will pay any such excess to Landlord within twenty (20) days after Landlord gives Tenant a bill for such excess.

Tenant agrees to pay to Landlord a proportionate share of such common area maintenance charges as set forth herein. Tenant's prorata share shall be determined by the use of a formula, the numerator of which is the square footage of Tenant's premises and the denominator of which is the gross leasable area of the Shopping Center, with the resulting percentage being Tenant's prorata share.

Landlord agrees to furnish a summary and copies of actual invoices on a monthly basis on request or such common area maintenance charges as stated herein, and Tenant agrees to pay its proportionate share for said expenses, excluding administrative charges and depreciation on machinery and equipment used in such maintenance.

Notwithstanding anything to the contrary contained herein, Tenant's proportionate share of common area expenses shall be paid within thirty (30) days of receipt of invoice from Landlord. Tenant's share of such expense shall not exceed $.50 during the first Lease Year of the initial term; Tenant's proportionate share of such expenses shall not thereafter, increase by more than seven percent (7%) per Lease Year during the initial term of the Lease and any Option Terms.

F.  **Taxes and Assessments**:  Tenant shall pay its prorata share of all real property taxes and assessments, whether general or special, together with storm water drainage fees, which may be levied or assessed by any lawful authority against the land and improvements in the shopping center or against Landlord in respect of the land and improvements in the shopping center. Tenant's prorata share of real estate taxes shall be the product obtained by multiplying said taxes by a fraction, the numerator of which shall be the gross leasable square foot area of the Demised Premises and the denominator of which shall be the gross leasable square foot area of the shopping center (less the land described in Exhibit E attached hereto). If the term of this Lease shall begin on and/or terminate at a time other than the beginning (or ending, as the case may be) of a tax year, a proper apportionment of

7

said real estate taxes for the year shall be made to cover the fraction of a year included within the terms of this Lease.

Tenant shall pay its prorata share of the taxes against the land and improvements in the shopping center, or against Landlord in respect thereof, based upon the actual amount of the last taxes which have been assessed or shall be based upon an estimate, projection or other statement in writing by the taxing authority, or if unavailable then as estimated reasonably by Landlord. Tenant's prorata share of such taxes shall be determined as provided in the preceding paragraph. Landlord shall furnish Tenant with copies of actual tax bills when same are issued, and Tenant shall pay its prorata share thirty (30) days within receipt of such invoice from Landlord. If required to pay its prorata share of the estimated taxes, an adjustment shall be made as soon as the actual taxes for the period, and Tenant's prorata share thereof, can be determined; and Tenant shall promptly pay for any deficiency, and Landlord shall promptly give credit for any overage.

Interest and/or penalties for late payment shall not be included in determining tax and assessment increases.

If Tenant deems any taxes, assessments, or charges payable by Tenant hereunder, or any part thereof, to be illegal or excessive, Tenant may contest the same by proper proceedings commenced at its own expense and in good faith. If such proceedings are resolved against Tenant, Tenant shall pay its prorata share of all taxes, assessments, and charges, and all penalties and interest thereon, found to be due and owing. Tenant shall indemnify Landlord against any loss or damage by reason of such contest, including all costs and expenses thereof during the pendency of any such proceeding, and shall fully protect and preserve the title and rights to Landlord, as well as Tenant's leasehold estate in and to the Demised Premises.

Tenant shall pay all taxes assessed against its trade fixtures, equipment, machinery, appliances, and other personal property, and any other license fees, occupational taxes, sales, excise, privilege and lease taxes, and other governmental charges arising in connection with this Lease or Tenant's use or occupancy of the Demised Premises or operation of its business.

All rent and other charges within this Section 5 shall be payable without deduction or offset.

6.    **ALTERATIONS:**

Tenant shall have the right to make changes, additions, and alterations inside the Demised Premises, provided that such work shall not affect the structural parts of the building of which they are a part; that such is done in good and workmanlike manner; that permits therefor from all public authorities, as required, are obtained and paid for; that all cost and expense arising from such undertaking as well as all damages occasioned in connection therewith shall be paid by Tenant; that all such changes shall at the end of this term remain the property of Landlord, unless Landlord otherwise agrees in writing, and that Tenant shall promptly remove any Construction Lien placed on the Demised Premises resulting therefrom.

Construction Liens: All persons are hereby notified that Landlord's interest in the Demised Premises will never, under any circumstances, be subject to construction liens of any nature during the term of this Lease as the result of labor, materials or services contracted by Tenant. Tenant will not suffer or permit any construction or other liens to be filed against all or any portion of the Demised Premises, nor against Tenant's leasehold interest therein by reason of work, labor, services, or materials supplied or claimed to have been supplied to Tenant, and nothing in this Lease will be deemed or construed in any way as constituting the consent or request of Landlord, express or implied, to any contractor, subcontractor, subsubcontractor, laborer, or material/supplier for the performance of any

8

labor or the furnishing of any materials for any specific improvement, alteration, or repair of the Demised Premises, nor as giving Tenant any right, power, or authority to contract for or permit the rendering of any services or the furnishing of any materials that would give rise to the filing of any construction or other liens against the Demised Premises. If any such construction liens are filed against the Demised Premises at any time, Tenant will cause the same to be discharged of record within ten (10) days after the date of recordation of the lien. If Tenant fails to discharge the lien, Landlord may bond or pay the lien or claim for the account of Tenant without inquiring into the validity of the lien. Any amount expended by Landlord to pay or bond the lien will be additional rent under this Lease and will be immediately due and payable to Landlord by Tenant. Tenant agrees that if a short form of this Lease is recorded in the Public Records of the county in which the shopping Center is located, it will include a provision expressly prohibiting the attachment of the aforesaid construction or other liens to Landlord's interest in the Demised Premises as stated above.

7.    **MAINTENANCE AND REPAIRS:**

Tenant agrees to maintain and replace all plate glass and other glass which is part of the Demised Premises, promptly replacing any such damaged or broken glass with tempered or safety plate glass (as required) and to save Landlord harmless from any loss, cost, damage or claim resulting from such breakage or the replacement thereof unless such damage is due to the willful or wanton act or negligence of Landlord.

Tenant acknowledges that the Demised Premises, including marquee lights, rear or side floodlight, heating system, electrical system, fixtures, equipment, air conditioning, if any, plumbing, hot water tank, floor covering, doors, windows, and the interior of the Demised Premises, will be, as of the date of possession under the possession and control of Tenant. Tenant agrees to keep same in good order, repair, maintenance, and operation.

Landlord acknowledges that it is the responsibility of the Landlord to place the HVAC system in good working condition prior to the Tenant Possession Date. Tenant was responsible for obtaining an HVAC inspection report prior to execution of this Lease. Such inspection was performed by a reputable HVAC company, reasonably acceptable to Tenant and Tenant acknowledges and agrees that the HVAC is in good working condition.

The Tenant also agrees to keep the area adjoining the entrance to the Demised Premises in a clean and safe condition by removing snow and ice from the doorways and sidewalks.

Tenant further agrees to free all stopped or clogged interior waste or interior sewer lines and to exterminate pests when necessary.

Landlord agrees to keep and maintain the roof, roof drains, exterior walls, exclusive of doors and windows and exterior utility lines, during the term and will make required structural repairs to the building of which the Demised Premises are a part. However, Tenant agrees to make and pay for all repairs of damage to the same caused through the fault or negligence of Tenant, his or its agents, employees, invitees, and customers. Landlord, its agents and employees, may freely enter the Demised Premises at all reasonable times to inspect or display them or to make repairs to common facilities or those facilities required to be maintained by Landlord.

As a condition precedent to all obligations of Landlord to perform repairs or the Demised Premises and shopping center, Tenant will notify Landlord in writing of the need for such repair. If Landlord fails to commence the making of repairs within fifteen (15) days after such notice, Tenant shall have the right to perform such repairs and to charge Landlord the reasonable cost thereof. If the repair is necessary to end or avert an emergency and if Landlord after receiving notice from Tenant of such necessity fails to commence repair as soon as reasonably possible, Tenant may do so at Landlord's cost, without waiting fifteen (15) days. Should Landlord refuse to reimburse Tenant the reasonable cost of any such

9

PAGE.010                                    SEP 14 '94 11:26  FROM CONSOLIDATED STORES

repair work, Tenant shall have the right to deduct such cost from the next common area maintenance charges owing.

8.  **SIGNS:**

Tenant shall have the right to place a suitable road sign upon the existing pylons, if there are pylons existing and if applicable local ordinances permit the same. Absent an existing pylon, Tenant shall have the right to erect pylons for its road signs. Tenant shall, at its own expense, obtain the necessary permits and comply with applicable local codes and ordinances. Once the pylon signs are installed Tenant shall not be required to remove, replace change, or alter it and Landlord shall not remove, replace or diminish the size of Tenant's pylon sign.

Tenant shall also have the right to place, suffer or erect signs, awnings, canopies or decorations on the exterior walls of the Demised Premises. Such signs shall only contain the name and business of Tenant and Tenant agrees to maintain such sign in good condition and repair, save and defend Landlord free of all cost, expense, loss, or damage which may result from the erection, maintenance, and existence of the same.

9.  **FIXTURES:**

Tenant agrees to furnish and install, at Tenant's expense, all trade fixtures or equipment required by Tenant. At all times while Tenant is not in default under the terms and conditions of this Lease, Tenant may replace such trade fixtures or equipment. At the end of the term, provided that all rents have been paid to Landlord, and , at the request of Landlord, Tenant shall remove such trade fixtures or equipment, but shall repair any damage to the Demised Premises caused by or resulting from such removal, except that should Tenant have installed lighting fixtures, and/or air conditioning equipment, the parties agree that they are not trade fixtures or equipment and they may not be removed since they became the property of the Landlord when affixed.

10. **GOVERNMENTAL REGULATIONS:**

Landlord agrees that the Demised Premises materially conform to all requirements by authority having jurisdiction; if said Demised Premises do not materially conform, Landlord will promptly have them materially conform at all times unless such is necessitated by changes, alterations or additions made by Tenant. Landlord agrees to make all repairs, alterations, additions, or replacements to the Demised Premises required by any law, statute, ordinance, order or regulation of any governmental authority; to keep the Demised Premises equipped with all fire and safety appliances, devices, equipment and applications so required, including, but not limited to, smoke and fire alarms, sprinkler system and approved fire extinguishers of the type and number recommended (provided however that Tenant must pay the cost of any necessary fire extinguishers) to procure any licenses and permits required; and to comply with the orders and regulations of all governmental authorities, including all requirements as set forth in the Americans with Disabilities Act as said Act now exists or may be amended in the future provided however that any such A.D.A. compliance required within the Demised Premises shall be the sole expense of Tenant).. Landlord shall also be responsible for monitoring the sprinkler system if it is required to be monitored locally. If the sprinkler system can be monitored outside of the State Tenant shall be responsible for installing its monitoring equipment and monitoring the sprinkler system.

11.  **PERSONAL PROPERTY:**

Tenant assumes all risk of damage to or destruction, loss or pilferage of fixtures or personal property within the Demised Premises or loss suffered by Tenant's business resulting from any cause whatsoever and shall save and hold Landlord harmless from all claims resulting therefrom, except those resulting from the intentional act or omission or the gross negligence of Landlord.

12. **INDEMNIFICATION:**

Tenant will indemnify Landlord and save it harmless except for the negligence of Landlord, its agents, contractors, or employees, from and against any and all claims, actions, damages, liability and expense in connection with loss of life, personal injury and/or damage to property which either (A) arise from or are in connection with the control of the Demised Premises, or any portion thereof, (b) arise from or are in connection with any act or omission of Tenant or Tenant's Agents; (C) result from any Default (as hereinafter defined), breach, violation or nonperformance of this Lease or any provision of this Lease by Tenant; or (D) result in injury to person or property or loss of life sustained in or about the Demised Premises. If Landlord is made a party to any litigation or proceeding commenced by or against Tenant, then Tenant will indemnify and hold Landlord harmless except for the negligence of Landlord, its agents, contractors, or employees and will pay all damages, costs, expenses and reasonable attorney's fees incurred or paid by Landlord in connection with such litigation or proceeding. Tenant will also satisfy, pay and discharge any judgments, orders and/or decrees which may be recovered against Landlord in connection with the foregoing.

13. **INSURANCE:**

A. <u>Liability</u>: Tenant agrees to carry at its own expense, throughout this Lease, public liability insurance covering the Demised Premises and Tenant's use thereof, which insurance, shall include Landlord as an additional insured, in companies and in a form satisfactory to Landlord, with minimums of the following: (i) Five Hundred Thousand Dollars ($500,000.00) per occurrence of bodily injuries to, or death of one person; (ii) Aggregate of One Million Dollars ($1,000,000.00) combined single limit on account of bodily injuries to or death of more than one person as a result of any one accident or disaster ; and (iii) with Two Hundred Thousand Dollars ($200,000.00) coverage for property damaged in an accident, and to deposit said certificates of coverage thereof with Landlord prior to the date of occupancy by Tenant. Such liability insurance coverage and the certificate shall bear endorsements to the effect that the insurer agrees to notify Landlord not less than thirty (30) days in advance of modification or cancellation thereof and ten (10) days notice of nonpayment.

B. <u>Insurance Premiums</u>: Landlord has insured the Demised Premises against loss or damage by fire and such other risks as are normally insurable under the standard form of fire insurance with broad form extended coverage endorsement, including malicious mischief and vandalism, in an amount not less than eighty percent (80%) of the full insurable value of all the buildings in the shopping center.

Tenant's prorata share of the premiums for such insurance shall be included in its monthly Common Area Maintenance Charges.

Tenant will comply with all insurance carrier requirements relating to or affecting the Demised Premises. If the insurance premiums applicable to the Demised Premises exceed the rate that would have been applicable to the Shopping Center or the building in which the Demised Premises is located as a result of any failure by Tenant to comply with insurance carrier requirements, or as a result of or in connection with the use to which the Demised Premises are put by Tenant, Tenant will reimburse Landlord for the excess. The reimbursement will be made within twenty (20) days after Landlord renders a bill and supporting documentation therefor. For purposes of this Section, any finding or schedule of a fire insurance rating organization having jurisdiction over the Demised Premises will be deemed to be conclusive.

Tenant agrees that it will not keep, use, sell or offer for sale in or upon the Demised Premises any article which may be prohibited by Landlord's fire insurance policy. Tenant agrees to pay any increase in premiums for fire and extended coverage insurance that may be charged during the term of this **Lease on the**

11

amount of such insurance which may be carried by Landlord on the Demised Premises or the building of which they are a part, resulting from the type of merchandise sold or activities engaged in by Tenant or Tenant's Agents in the Demised Premises, whether or not Landlord has consented to the same. In determining whether increased premiums are the result of Tenant's use of the Demised Premises, a schedule, issued by the organization making the insurance rate on the Demised Premises, showing the various components of such rate, will be conclusive evidence of the several items and charges which make up the fire insurance rate on the Demised Premises.

14.    **FIRE REBUILDING AND ALTERING:**

A.    Landlord shall at all times during the term of this Lease, carry fire, casualty, and extended coverage insurance on all the buildings and permanent improvements on the building .

B.    If the Demised Premises or any permanent additions or leasehold improvements thereto shall be damaged, destroyed, or rendered untenantable, in whole or in part, by or as the result or consequence of fire or other casualty during the term hereof, and same can be restored to tenantable condition within one hundred twenty (120) days after commencement of restoration. Landlord shall repair and restore the same to a good tenantable condition within a reasonable time not to exceed one hundred twenty (120) days after receipt of the proceeds of insurance payable in connection therewith. During such period of repair, the rent herein provided for in this Lease shall abate entirely in case the whole premises are untenantable, or if Tenant determines in good faith it cannot economically conduct business from the undamaged portion of the Demised Premises. Said abatement shall cease when the Demised Premises are restored to tenantable condition.

C.    In the event the Demised Premises, because of such damage or destruction, are not repaired and restored to tenantable condition within one hundred twenty (120) days from the date of receipt of insurance proceeds for such damage or destruction, Tenant or Landlord may, at its option, terminate this Lease by giving sixty (60) days prior written notice to the other party and thereupon Landlord and Tenant shall be released from all future liability and obligations under this Lease.

D.    If the Demised Premises are damaged or destroyed (a) and same cannot be restored to tenantable condition within one hundred twenty (120) days after commencement, or (b) during the last six (6) months of the original or any extended term of this Lease, to the extent of more than one-third (1/3) of the ground floor area thereof, Landlord shall have the right to terminate this Lease by written notice to Tenant within sixty (60) days following such damage or destruction, unless Tenant shall, within thirty (30) days following receipt of such notice, offer to extend the term of this Lease for an additional period of five (5) years from the date such damage or destruction is repaired and restored. If the Tenant makes said offer to extend, Landlord and Tenant shall determine the terms and conditions of said extension within thirty (30) days thereafter or Tenant's offer shall not be deemed to stop Landlord from canceling this Lease. If the terms and conditions have been mutually agreed to by the parties, then Landlord shall accept Tenant's offer and shall repair and restore the premises within the time and in the manner set forth above.

15.    **FORCE MAJEURE:**

Whenever a period of time is provided in this Lease for Landlord or Tenant to do or perform any act or thing, Landlord or Tenant shall not be liable or responsible for any delays due to strikes, lockouts, casualties, acts of God, war, governmental regulation or control, or other causes beyond the reasonable control of Landlord or Tenant, and in any such event said time period shall be extended for the amount of time Landlord or Tenant is so delayed. This provision shall not apply to the payment of money.

12

**Landlord Access:** Landlord or Landlord's agents will have the right to enter the Demised Premises at all times during normal business hours to examine the same, and to show them to prospective purchasers, and to make emergency repairs. During the three (3) months prior to the expiration of the term of this Lease or any renewal term, Landlord may place upon the Demised Premises "For Lease" or "For Sale" signs which notices Tenant will permit to remain thereon without molestation. If Tenant is not personally present to open and permit an entry into the Demised Premises, at any time, when for any reason an entry therein is necessary or permissible in the event of an emergency, Landlord or Landlord's agents may enter the same by a master key, or may forcibly enter the same.

16.    **INJUNCTION:**

In addition to all other remedies, Tenant or Landlord is entitled to obtain a restraining order and/or injunction against all violations, actual, attempted or threatened of any covenant, condition, or provision of this Lease.

17.    **WARRANTY OF TITLE BY LANDLORD:**

Landlord hereby warrants, represents, and covenants to Tenant that: (a) at the time of the execution by Landlord of this Lease, Landlord is the sole ground tenant of the Demised Premises under a ground lease having an unexpired term that is greater than the term of this Lease and all renewal options hereunder; (b) at the time of the execution by Landlord of this Lease, James H. Shimberg as Trustee has good and marketable fee simple title to the Demised Premises free and clear of all liens and encumbrances except taxes not yet due and payable and other  exceptions of title  described in Exhibit F attached hereto; (c) Landlord does warrant and will defend the title of the Demised Premises, and will indemnify Tenant against any damage and expense which Tenant may suffer by reason of any lien, encumbrance, restriction or defect in the title or description herein of the Premises except as to matters on Exhibit F; and (d) Landlord has full right and power to execute this Lease and to lease the Demised Premises for the term provided in this Lease. In case Landlord does not have the title and rights aforesaid, then in such event, in addition to any other rights of Tenant's, this Lease shall, at the option of Tenant, become null and void, and no rent for the remainder of the term of aforesaid shall become due to the Landlord, its legal representatives or assigns, and all advanced rents and other payments shall be returned by the Landlord to Tenant, or Tenant may withhold rent thereafter accruing until Tenant is furnished proof satisfactory to Tenant as to the parties entitled to receive rent, and Landlord will defend, indemnify, and protect the Tenant in any dispute made by any party claiming that Landlord does not have full right and power to execute this Lease.

Tenant may obtain, at his own expense, a title insurance policy issued by a title insurance company acceptable to Tenant. Landlord agrees to cooperate with Tenant in obtaining said policy by delivering, within seven (7) days after notification by Tenant or its agent of the name and address of the title insurance company which will furnish the policy to said title insurance company at such address all title information in Landlord's possession  . relating to the Demised Premises and thereafter any additional documents as may be required by the title insurance company to issue its policy of title insurance

18.    **QUIET ENJOYMENT:**

Landlord hereby covenants, warrants, and agrees that if Tenant shall not be in default beyond any period for the cure thereof, Tenant shall, at all times during the original term of this Lease and any renewal term, have peaceable and quiet enjoyment and possession of the Demised Premises without any manner of let or hindrance from the Landlord or any other person, firm, or corporation.

13

19.  **MORTGAGE AND ESTOPPEL CERTIFICATES:**

Tenant accepts this Lease subject and subordinate to any recorded mortgage lien or Ground Lease presently existing or hereafter created upon the Demised Premises or shopping center; provided that as a condition to Tenant's obligations under this Lease, Tenant and the holder of any mortgage lien or Ground Lease which shall be placed on the Demised Premises prior to the Tenant possession date shall enter into a subordination, non-disturbance and attornment agreement on terms mutually satisfactory within fifteen (15) days of the date of the execution of this Lease by Landlord, which agreement shall provide, inter alia, that the mortgage or Ground Lease shall not disturb the tenancy of Tenant, so long as Tenant is not in default of its obligations under this Lease beyond any applicable notice and cure periods. Landlord shall request any such mortgagee or Ground Lessor to agree that insurance proceeds and condemnation awards shall be used for the repair and restoration of the Demised Premises when so provided in this Lease. Tenant agrees to subordinate Tenant's interest under this Lease to any mortgage lien or Ground Lessor placed on the Demised Premises after the Tenant possession date, provided that as a condition to such subordination Tenant and such mortgagee shall enter into a mutually satisfactory non-disturbance, subordination and attornment agreement which shall include a covenant by the mortgagee not to disturb the tenancy of Tenant, so long as Tenant is not in default of its obligations under this Lease beyond any applicable notice and cure periods. Landlord shall request any such mortgagee or Ground Lessor to agree that insurance proceeds and condemnation awards shall be used for the repair and restoration of the Demised Premises when so provided in this Lease. If the interests of Landlord under this Lease shall be transferred by reason of foreclosure or other proceedings for enforcement of any first mortgage on the Demised Premises, Tenant shall be bound to the transferee, under the terms, covenants and conditions of this Lease for the balance of the term remaining, including any extensions or renewals, with the same force and effect as if the transferee were Landlord under this Lease, and Tenant agrees to attorn to the transferee, including the first mortgagee under any such mortgage if it be the transferee, as its Landlord.

Upon request in writing from Landlord, Tenant agrees to execute, acknowledge, and deliver to Landlord, or to the holder of the mortgage lien or Ground Lease on the Demised Premises, a statement in writing satisfactory to Landlord or the holder of the mortgage or Ground Lease certifying the facts stated therein which may include, but shall not be limited to, all or any part of the following information: (i) this Lease constitutes the entire agreement between Landlord and Tenant, is unmodified (or if there has been a modification, that the Lease, as modified, is in full force and effect), and is in full force and effect; (ii) the dates to which the guaranteed minimum rent, common area charge and other charges hereunder have been paid; (iii) the date that the Demised Premises were ready for occupancy and all conditions precedent to the Lease taking effect were satisfied or waived by Tenant; (iv) the dates on which Tenant accepted possession and Tenant's store will be open for business; (v) the Tenant is occupying the Demised Premises; and (vi) Tenant knows of no default under the Lease by the Landlord and there is no offset which Tenant has against Landlord; provided that such facts are true and ascertainable and (vii) such other reasonable and truthful information as may be requested..

20.  **DEFAULT:**

A.   If the Demised Premises shall be deserted for a period of over thirty (30) days (or the business of Tenant thereon closed for such period), or if Tenant shall be adjudicated a bankrupt, or if a trustee or receiver of Tenant's property be appointed, or if Tenant shall make an assignment for the benefit of creditors, or if default shall at any time be made by Tenant in the payment of the rent reserved herein, or any installment thereof for more than ten (10) days after written notice of such default by the Landlord, or if there shall be default in the performance of any other covenant, agreement, condition, rule or regulation herein contained or hereafter established on the part of the Tenant for thirty (30) days after written notice of such default by the Landlord, this Lease, if the Landlord so elects, shall thereupon become null and void, and the Landlord shall have the right to reenter or

14

repossess the leased property, either by force, summary proceedings, surrender or otherwise, and dispossess and remove therefrom the Tenant or other occupants thereof and their effects, without being liable to any prosecution therefor. In such case, the Landlord may, as its option, relet the Demised Premises or any part thereof, as the agent of the Tenant, and the Tenant shall pay the Landlord the amount by which the rent and charges equivalent to rent reserved herein for the balance of the term shall exceed the rental and such charges actually collected by Landlord, together with all other damages , costs and expenses, including expenses of reletting, suffered or incurred by Landlord for the same period. Tenant agrees, irrespective of other provisions of this lease, that in the event any monthly installment of rent is not paid by the tenth (10th) of the month, additional rent of ten percent (10%) of the monthly rental shall be paid for each such month. Notwithstanding the foregoing, Landlord shall have all remedies available to it in law or equity and choosing one remedy shall not preclude Landlord from other remedies.

B.      If Landlord shall fail to pay any taxes, assessments, insurance premiums, mortgage interest or amortization or any other charges accruing against the Demised Premises, or the shopping center of which the Demised Premises may be a part, or fail to perform any of the conditions or covenants hereof on its part to be performed, Tenant may give written notice of such default to Landlord and if Landlord shall not within thirty (30) days thereafter cure such default (or if the default cannot be cured within thirty (30) days, if Landlord shall not within such period commence such cure and thereafter diligently complete the same), then Tenant shall have the right, at its option, to cure such default and the amount expended by it therefor, with interest at the rate of ten percent (10%) annually, shall be paid by Landlord to Tenant upon demand. Tenant shall, upon request, submit to Landlord receipted bills showing payment of all the aforesaid items. It is further provided, however, that in the event of urgent situations which shall include, but not be limited to, defects and failures in the heating, air conditioning or sprinkler systems, the Tenant shall immediately notify the Landlord, or its duly appointed agent, orally or by facsimile, and upon the failure of the Landlord to promptly correct, or take necessary steps to correct such urgency then Tenant shall have the right to correct the same and be reimbursed as hereinabove provided. In the event the Demised Premises shall be rendered untenantable by reason of Landlord's failure to perform any obligation described herein, Tenant shall have the right to perform such obligations at the expense of Landlord as hereinabove provided.

If a lawsuit or other proceeding is instituted for recovery of possession of the Demised Premises, for the recovery of any Guaranteed Minimum Rent, Percentage Rent, Additional Rent or any other amount due under the provisions of this Lease, or to construe, interpret, or enforce any of the covenants of this Lease or the rights of the parties hereto, the prevailing party will be entitled to recover all expenses incurred, including reasonable attorneys' and paralegal assistants' fees and costs, whether incurred before suit, before, during or at trial, on appeal or in bankruptcy or reorganization proceedings.

If a Default occurs under this Lease, and after written notice to Tenant as specified herein, Landlord may cure the Default for the account and at the expense of Tenant. If Landlord cures a Default on the part of Tenant, such sum will be due within ten (10) days after notice from Landlord as Additional Rent and Tenant will reimburse Landlord for any amount expended by Landlord in connection with the cure.

15

PAGE.016                          SEP 14 '94 11:51    FROM CONSOLIDATED STORES

21.  **CONDEMNATION:**

A.  Eminent Domain

1)  Total Condemnation of Demised Premises

If the whole of the Demised Premises are acquired or condemned by eminent domain for any public or quasi-public use or purpose, then the term of this Lease will cease and terminate as of the date of title vesting in such proceeding; all Minimum Rent, Percentage Rent and Additional Rent will be paid up to that date and Tenant will have no claim against Landlord or the condemning authority for the value of any unexpired term of this Lease except for personal property, relocation expenses and matters provided in Section 6 below.

2)  Partial condemnation of Demised Premises

If any part of or interest in the Demised Premises is acquired or condemned as aforesaid, and in the event that such partial taking or condemnation renders the Demised Premises unsuitable for the business of Tenant, then the term of this Lease will cease and terminate as of the date of title vesting in such proceeding. Tenant will have no claim against Landlord or the condemning authority for the value of any unexpired term of this Lease and Minimum Rent, Percentage Rent and Additional Rent will be adjusted to the date of such termination. In the event of a partial taking or condemnation which is not extensive enough to render the Demised Premises unsuitable for the business of Tenant, Landlord will promptly restore the Demised Premises to a condition comparable to its condition comparable to its condition at the time of such condemnation, less the portion lost in the taking, and this Lease will continue in full force and effect with a proportionate abatement of Guaranteed Minimum Rent, Percentage Rent or Additional Rent.

3)  Total Condemnation of Parking Area

If the whole of the Parking Area in the Shopping Center is acquired or condemned as aforesaid, then the term of this Lease will cease and terminate as of the date of title vesting in such proceeding , unless Landlord takes immediate steps to provide other Parking Area substantially equal to the previous existing ratio between Parking Area and the Demised Premises, and such substantially equal Parking Area has been provided by Landlord at its own expense within ninety (90) days form the date of acquisition of the previous Parking Area. In the event that Landlord provides such other substantially equal Parking Area, then this lease will continue  force and effect without any reduction or abatement of Minimum Rent, Percentage Rent or Additional Rent.

4)  Partial Condemnation of Parking Area

If any part or any interest of the Parking Area is acquired or condemned as aforesaid, and if, as the result thereof the ratio of parking spaces to rentable area within the Demised Premises is reduced to a ratio below applicable Hillsborough County Code requirements, then the term of this Lease will cease and terminate upon the vesting of title in such proceeding, unless Landlord takes immediate steps toward increasing the parking ratio to a ratio in excess of applicable Hillsborough County Code requirements, in which event, this Lease will be unaffected and remain in full force and effect without any reduction or abatement or rent. In event of termination of this Lease as aforesaid, Guaranteed Minimum Rent, Percentage Rent and Additional Rent will be adjusted to the date of such termination.

16

     5)    Landlord's Damages

In the event of any condemnation or taking as provided above, whether whole or partial, Tenant will not be entitled to any part of the award paid for such condemnation (except for personal property, relocation expenses and business interruption) and Landlord will receive the full amount of such award (except as aforesaid), Tenant hereby expressly waiving any right or claim to any part thereof (except as aforesaid).

     6)    Tenant's Damages

Although all damages in the event of any condemnation are to belong to Landlord, whether such damages are awarded as compensation for diminution in value of the leasehold or to the fee of the Demised Premises, Tenant will have the right to claim and recover from the condemning authority, but not from Landlord, such compensation as may be separately awarded or recoverable by Tenant in Tenant's own right on account of any and all damage to Tenant's business by reason of the condemnation and for or on account of any cost or loss to which Tenant might be put in removing Tenant's merchandise, furniture, fixtures, leasehold improvements and equipment and other personal property, and for relocation and business interruption expenses.)

## 22.  WAIVER OF SUBROGATION:

Landlord and Tenant hereby release each other and each other's officers, directors, partners, employees, servants and agents, from liability or responsibility for any loss or damage to the Shopping Center or Tenant's fixtures, merchandise or property. This release will apply not only to liability and responsibility of the parties to each other, but will also extend to liability and responsibility for anyone claiming through or under the parties by way of subrogation or otherwise. This release will apply even if the fire or other casualty is caused by the fault or negligence of a party or anyone for whom a party may be responsible.

## 23.  ASSIGNMENT AND SUBLETTING:

After first obtaining the written consent of Landlord, which shall not unreasonably be withheld Tenant shall have the right at any time to sublet the Demised Premises or any part thereof or to assign this Lease; provided, that no such subletting or assignment shall relieve Tenant of any of its obligations hereunder. Each sublease or assignment shall provide that it is subject and subordinate to the rights of Landlord under this Lease and to any renewal, amendment or modification thereof, to the rights of any first mortgage to which this Lease is subject or subordinate and to all renewals, modifications, consolidations and extensions thereof. The provisions for such subordination shall be self-operative so that no further instrument of subordination need be required by a mortgagee.

## 24.  SURRENDER AND HOLDOVER:

When the tenancy herein created terminates, Tenant agrees to surrender the Demised Premises to Landlord in the same or better condition than existed when Tenant entered possession, loss by fire, wind and ordinary wear and tear excepted. Tenant agrees to remove all of its trade fixtures with the exception of lighting fixtures and air conditioning whether or not attached to the Demised Premises and to repair all damage done by the removal of said fixtures. Should Tenant thereafter remain in possession or occupancy of any part of the Demised Premises or hold the keys, a tenancy shall be deemed to continue from month to month only at the guaranteed minimum rent rate above provided and on the terms herein expressed, where applicable, but should the same occur without Landlord's consent, no tenancy of any duration shall be created and Tenant's use and occupancy fee

17

while in possession of the Demised Premises shall be the guaranteed minimum rent, plus all other charges due under this Lease, and percentage rent based on the twelve (12) months (or fraction thereof, if less than twelve (12) months of the lease term has elapsed) prior to the breach.

25.  **NOTICES:**

Whenever any demand, request, approval, consent or notice ("Notice") shall or may be given by one party to the other, Notice shall be addressed to the parties at their respective addresses and delivered by (i) hand, (ii) a nationally recognized overnight express courier, or (iii) registered or certified mail return receipt requested.  The date of actual receipt shall be deemed the date of service of Notice.  In the event an addressee refuses to accept delivery, however, then Notice shall be deemed to have been served on either (i) the date hand delivered is refused, (ii) the next business day in the case of delivery by overnight courier, or (iii) three (3) business days after mailing the Notice in the case of registered or certified mail.  Either party may, at any time, change its Notice address by giving the other party Notice, in accordance with the above, stating the change and setting forth the new address.

26.  **LEGALITY:**

Should any one or more of the clauses of this Lease be declared void or in violation of law, this Lease shall remain in effect, exclusive of such clause or clauses, to the fullest extent of the law.  The terms of this Lease shall be interpreted under the laws of the State of _Florida_.

27.  **BINDING OBLIGATIONS:**

This Lease and all rights and duties hereunder shall inure to the benefit of and shall be binding upon Landlord and Tenant and their respective personal representatives, administrators, executors, heirs, successors and assigns.

28.  **NO RECORDATION:**

If requested by Tenant or Landlord, both parties agree to execute a recordable short form of lease which the party requesting the same may record at their sole expense.  The parties will provide each other with a copy of such recorded memorandum of Lease.

Neither party shall record this Lease.

29.  **REAL ESTATE BROKER'S COMMISSION:**

Tenant and Landlord covenant and represent to each other that no parties are entitled be paid a fee or commission in connection with the transaction contemplated by this Lease except Retail Realty Group, Inc., a licensed Florida real estate broker whose commission will be paid solely by Landlord pursuant to the terms of a separate listing agreement... If any individual or entity shall assert a claim to a finder's fee or commission as a broker or a finder, other than as aforesaid, then the party who is alleged to have retained such individual or entity shall defend, indemnify and hold harmless the other party from and against any such claim and all costs, expenses, liabilities and damages incurred in connection with such claim or any action or proceeding brought thereon.

30.  **NO WAIVER, LACHES OR ACCORD AND SATISFACTION:**

The waiver of any covenant or condition or the acquiesced breach thereof shall not be taken to constitute a waiver of any subsequent breach of such covenant or condition nor to justify or authorize the non-observance of the same or of any other covenant or condition hereof.  No payment by Tenant or receipt by Landlord of a lesser amount than the rental herein stipulated shall be deemed to be other than on account of the earliest stipulated rent nor shall any endorsement or statement on any check or any letter

18

accompanying any check or payment as rent be deemed an accord and satisfaction or waiver, and Landlord may accept such check or payment without waiver of the default or prejudice to Landlord's right to recover the balance of such rent or pursue any remedy provided for in this Lease or available at law or in equity.

31.   **HAZARDOUS MATERIAL:**

Throughout the term of this Lease, Tenant shall prevent the presence, use, generation, release, discharge, storage, disposal, or transportation of any Hazardous Materials (as hereinafter defined) on, under, in, above, to, or from the Demised Premises other than in strict compliance with all applicable federal, state, and local laws, rules, regulations and orders. For purposes of this provision, the term "Hazardous Materials" shall mean and refer to any wastes, materials, or other substances of any kind or character that are or become regulated as hazardous or toxic waste or substances, or which require special handling or treatment, under any applicable local, state, or federal laws, rules, regulations, or orders. Tenant shall indemnify, defend, and hold harmless from and against (a) any loss, cost, expense, claim, or liability arising out of any investigation, monitoring, clean-up, containment, removal, storage, or restoration work (herein referred to as "Remedial Work") required by, or incurred by Landlord or any other person or party in a reasonable belief that such Remedial Work is required by any applicable federal, state of local laws, rules, regulations or orders, or by a governmental agency, authority, political subdivision having jurisdiction over the Demised Premises, and (b) any claims of third parties for loss, injury, expense, or damage arising out of the presence, release or discharge of any Hazardous Materials on, under, in, above, to, or from the Demised Premises. In the event any Remedial Work is so required promptly perform or cause to be performed such Remedial Work to completion, such failure shall constitute an event of default on the part of Tenant under the terms of this Lease, and Landlord, in addition to any other rights or remedies afforded it hereunder, may, but shall not be obligated to, cause the Remedial Work to be performed, and Tenant shall promptly reimburse Landlord for the cost and expense thereof upon demand. Notwithstanding the foregoing, Tenant shall not be responsible for pre-existing (prior to Tenant Possession Date) Hazardous Waste and Landlord shall indemnify, defend and hold harmless from and against (a) any loss, cost, expense, claim, or liability arising out of any investigation, monitoring, clean-up, containment, removal, storage, or restoration work (herein referred to as "Remedial Work") required by, or incurred by Landlord or any other person or party in a reasonable belief that such Remedial Work is required by any applicable federal, state or local laws, rules, regulations or orders, or by a governmental agency, authority, political subdivision having jurisdiction over the Demised Premises, and (b) any claims of third parties for loss, injury, expense, or damage arising out of the presence, release or discharge of any Hazardous Materials on, under, in, above, to, or from the Demised Premises.

32.   **TITLES AND ENTIRE AGREEMENT:**

All marginal titles are for reference and convenience only and do not form a part of this Lease. This Lease and Exhibits, and Rider, if any, attached hereto and forming a part hereof, set forth all the covenants, promises, agreements, conditions, and understandings between Landlord and Tenant concerning the Demised Premises. No subsequent alteration, amendment, change or addition to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by them. This Lease is not binding upon Landlord until it has been signed by its authorized officers and delivered to the Tenant.

Transfer of Landlord's Interest:

The term "Landlord" as used in this Lease means only the owner for the time being of the Demised Premises. Each time the Demised Premises are sold, the selling Landlord will be entirely relieved of all obligations and liability under this Lease. If the person who owns the Demised Premises leases its reversionary interest in the Demised Premises subject to this Lease, that person will be relieved of all of its liability under this Lease.

19

**Mortgagee's Rights:**

If Landlord notifies Tenant that the Demised Premises are encumbered by a Mortgage and notifies Tenant of the name and address of the Mortgagee, the following will apply. No notice intended for Landlord will be deemed properly given unless a copy of the notice is simultaneously sent to the Mortgagee by certified or registered mail, return receipt requested. If any Mortgagee performs any obligation that Landlord is required to perform under this Lease, the performance by the Mortgagee will be deemed to be performance on behalf of Landlord insofar as Tenant is concerned and the performance will be accepted by Tenant as if performed by Landlord.

**Liability Limitation:**

Tenant agrees that neither Landlord nor any of the partners, officers, directors, shareholders or trustees of landlord, or the Ground Lessor of the Shopping Center will have any personal liability hereunder, but that the liability of Landlord and such Ground Lessor will be limited to their respective interests in the Shopping Center and that Tenant agrees to look solely to the interest of Landlord and such Ground Lessor in the Shopping Center for the payment of any claims made hereunder. Nothing in this section will be deemed to prevent Tenant from seeking injunctive or similar equitable relief in a court of appropriate jurisdiction.

IN TESTIMONY WHEREOF, the Landlord and Tenant have caused this Lease to be signed in triplicate as of the respective acknowledgment dates:

Signed and acknowledged in the presence of:

Witnesses As To Landlord:

ALBERTO A. de AGEJO

Joyce M. Jones

LANDLORD:  TOWN 'N COUNTRY PLAZA,
a Florida general partnership

By: _____
         James H. Shimberg

Title:         Managing General Partner

By: _____
         Loren M. Pollock

Title:         Managing General Partner

Witnesses As To Tenant:

James Harris

Kristen Wachtman

TENANT:  CONSOLIDATED STORES
             CORPORATION, an Ohio corporation

By: _____
         Albert J. Bell

Title:         Senior Vice President

20

## ACKNOWLEDGEMENTS

STATE OF _Florida_

COUNTY OF _Hillsborough_

The foregoing instrument was acknowledged before me this 1st day of September, 1994, by JAMES H. SHIMBERG, Managing General Partner of Town 'n Country Plaza, a Florida general partnership, on behalf of the partnership. He is either [CHECK APPLICABLE] ✓ _____ personally known to me or _____ has produced a valid drivers license of the State of Florida as identification.

(Affix Notarial Seal)

Notary Public

[Print Name]: _Ruth E. Abelson_

NOTARY PUBLIC, STATE OF FLORIDA AT LARGE
My Commission Expires: MY COMMISSION EXPIRES JUNE 02, 1995
BONDED THRU AGENT'S NOTARY BROKERAGE
# CC 14853

STATE OF _FLORIDA_

COUNTY OF _PINELLAS_

The foregoing instrument was acknowledged before me this 1st day of September, 1994, by LOREN M. POLLACK, Managing General Partner of Town 'n Country Plaza, a Florida general partnership, on behalf of the partnership. He is either [CHECK APPLICABLE] _____ personally known to me or _____ has produced a valid drivers license of the State of Florida as identification.

(Affix Notarial Seal)

Notary Public
[Print Name]: JUDITH L. SMITH
Notary Public, State of Florida At Large
My Commission Expires May 2, 1998
Commission Number 378756

STATE OF _OHIO_

COUNTY OF _FRANKLIN_

The foregoing instrument was acknowledged before me this 15 day of September, 1994, by ALBERT J. BELL, the Senior Vice President of Consolidated Stores Corporation, an Ohio corporation, on behalf of the corporation. He is either [CHECK APPLICABLE] _____ personally known to me or _____ has produced a valid drivers license of the State of _____ as identification.

(Affix Notarial Seal)

Notary Public
[Print Name]: JANET L. BLANKENSHIP

I am a notary public of the State of Ohio and my commission expires:

JANET L. BLANKENSHIP
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES DEC. 7, 1998

21

**EXHIBIT A**

**LEGAL DESCRIPTION OF SHOPPING CENTER**

A parcel of land lying in the Southwest 1/4 of Section 36, Township 28 South, Range 17 East, Hillsborough County, Florida, and being more particularly described as follows:

From the Southwest corner of said Section 36 and run thence N 00°03'40" E., 20.90 feet, along the West boundary of said Section 36, to the Northerly right-of-way line of Hillsborough Avenue (State Road No. 580); thence N 89°51'17" E, 507.11 feet, along said Northerly right-of-way line to its intersection with the East right-of-way line of Ambassador Drive as recorded in O. R. Book 1601, Page 865, Public Records of Hillsborough County, Florida for a POINT OF BEGINNING; thence North, 706.18 feet along the East right-of-way line of said Ambassador Drive; thence East, 773.62 feet to a point on the West right-of-way line of Hanley Road (per County project No. 86-238-R); thence along said Westerly right-of-way line the following four (4) courses: 1) Southerly, 68.41 feet along the arc of a curve concave to the Easterly, having a radius of 7679.19 feet, and a chord bearing and distance of S 00°36'58" W, 68.41 feet to a point of tangency; 2) S 00°21'39" W, 211.95 feet; 3) S 01°11'44" W, 240.23 feet; 4) S 00°21'39" W, 23.66 feet; thence West 147.27 feet; thence South, 150.42 feet; thence S 89°51'17" W, 618.05 feet along the Northerly right-of-way line of said Hillsborough Avenue (State Road No. 580) to the POINT OF BEGINNING.

h:/re/drb/golding/biglots/legal

**EXHIBIT B**

## RIDER FOR REMODELING

This Rider is prepared to be attached to and become part of the foregoing Lease as the Tenant's Demised Premises therein described is to be repaired and remodeled by Landlord prior to commencement of the term.

**Landlord covenants and agrees to deliver the premises to Tenant as follows:**

1.   HVAC to be in good working condition and adequate for Tenant's intended use (a minimum of 1 ton per 400 square feet).

2.   Roof to be in good condition and free of leaks.

3.   Landlord agrees Demised Premises conform to all requirements by authority having jurisdiction; if said Demised Premises do not conform, Landlord will promptly have them conform at all times unless such is necessitated by changes, alterations or additions made by Tenant.

   Landlord shall complete such work on or before the _____19th_____ day of_____ _____September_____, 19__94__.

**Tenant covenants and agrees to do and perform the following:**

1.   All plumbing, electrical and mechanical equipment to be in good working condition, including sprinkler system. Landlord to provide Tenant with sprinkler certification.

2.   All lighting inside and out to be in good working condition. Additional lighting required in the stockroom and salesfloor area. Lighting should be 80 foot candles on the sales floor and 60 foot candles in the stockroom.

3.   Remove carpet, if any, and replace with commercial grade tile to Tenant's specifications.

4.   All damaged or missing ceiling and floor tiles to be replaced with similar tile.

5.   All doors and door systems to be sound and secure and in good working condition, and in compliance with A.D.A. requirements.
   Any work, installation or equipment not called for in the Landlord's covenants above shall be furnished and performed by and at the expense of Tenant.

6.   Tenant to separate utilities and provide own meter.

7.   Tenant to erect demising wall, to roof deck, separating Tenants.

8.   Tenant to erect demising wall, to roof deck, separating sales area from stockroom. Landlord to install stockroom doors to Tenant's specifications.

9.   Tenant to provide Tenant with offices, lounge, and restrooms (up to code and A.D.A. regulations). Cash office to have a solid plywood ceiling (minimum of ½").

10.   Replace all broken glass.

11.   Premises to be professionally inspected for pestilents and termites, and Tenant to be provided with a certified report that the Demised Premises is pest free, and if not, Landlord will make pest free.

All work performed by Tenant will be performed in accordance with good construction practices. Tenant agrees to comply with any reasonable directives of Landlord for the control or suppression of noise, dust, or debris on or about the Demised Premises. Before beginning Tenant's work, Tenant will obtain all necessary permits and approvals from applicable governmental authorities, will deliver copies of same to Landlord, and pay all applicable permit and impact fees. Tenant will obtain and deliver to Landlord a final certificate of occupancy permit from the applicable governmental authorities prior to the date that Tenant opens for business on the Demised Premises. Tenant agrees that all waste, trash, debris or rubble resulting from Tenant's work will be removed from the Shopping Center and lawfully disposed of by Tenant at Tenant's cost and expense.

**EXHIBIT C**

**SIGN SPECIFICATIONS**



-Each letter is 4 foot high
-The Words "The Closeout Store" are on a box sign and are 18 inches high
-The scale of the drawing is 1/2" = 1 foot
-The individual letters are neon illuminated channeled letters with 7 inch deep returns
-#2119 Orange flext faces, 2 foot subtrim type (bronze)
-neon or fluorescent type lighting 110 volt 60 cycle
-Flushwall mounted, no exposed clips

The bottom information is the wiring information for our sign installers.

EXHIBIT D

## SITE PLAN OF SHOPPING CENTER



**EXHIBIT E**

### EXCLUDED TAX PARCEL

From the Southwest corner of Section 36, Township 28 South, Range 17 East, Hillsborough County, Florida; run thence N 00°03'40" E, 20.90 feet, along the West boundary of said Section 36, to the Northerly right-of-way line of Hillsborough Avenue (State Road No. 580); thence N 88°51'17" E, 819.11 feet, along said Northerly right-of-way line; thence North 30.24 feet, to the Point of Beginning; thence continue North, 106.50 feet; thence West, 106.50 feet; thence South, 106.50 feet; thence East 106.50 feet, to the Point of Beginning.

** TOTAL PAGE.028 **

**EXHIBIT F**

## TITLE EXCEPTIONS

1.  Lease between JAMES H. SHIMBERG, as Trustee, and TOWN 'N COUNTRY PLAZA OF TAMPA, INC., a Florida corporation, dated June 14, 1966 and recorded November 1, 1966 in Official Record Book 1681 on Page 24; said Lease having been modified by instrument recorded April 12, 1967 in Official Record Book 1744 on Page 1; said Lease having been assigned to TOWN 'N COUNTRY PLAZA, a Florida partnership, by instrument recorded April 16, 1984 in Official Record Book 4314 on Page 1872, of the public records of Hillsborough County, Florida.

2.  Real estate taxes and assessments for the year 1994 and subsequent years, which are not yet due and payable.

PREPARED BY AND AFTER RECORDING
RETURN TO:
David R. Brittain, Esquire
Trenam, Simmons, Kemker, Scharf, Barkin,
 Frye & O'Neill
101 E. Kennedy Blvd., Suite 2700
Tampa, FL 33602

_____|Space Above This Line for Recording Data|_____



### SHORT FORM LEASE AGREEMENT

THIS SHORT FORM LEASE AGREEMENT, dated the 15th day of September, 1994, by and between **TOWN 'N COUNTRY PLAZA, a Florida general partnership** ("Landlord"), whose address is c/o 3550 Buschwood Park Drive, Tampa, Florida 33618-4433 and **CONSOLIDATED STORES CORPORATION, an Ohio corporation** ("Tenant"), whose address is 300 Phillipi Road, Department 907, Columbus, Ohio 43228-1310.

### W I T N E S S E T H:

For and in consideration of the mutual covenants, conditions and agreements set forth in a certain "Lease," dated the same date as this Short Form Lease (the "Lease"), the terms and conditions of which are fully incorporated by reference herein, Landlord has and hereby does lease, let and demise to Lessee, and Lessee has and hereby does take and hire from Landlord, all that certain storeroom and improvements thereto, containing approximately 30,000 square feet of space and having approximate dimensions of 150 feet by 200 feet (the "Demised Premises"), being a part of the shopping center known as "Town 'n Country Plaza" located in Hillsborough County, Florida (the "Shopping Center"), such shopping center being legally described in **Exhibit "A"** attached hereto and made a part hereof. The specific location of the Demised Premises is depicted on **Exhibit "B"** attached hereto and made a part hereof and is together with a non-exclusive license in favor of Tenant, its employees, agents, customers and invitees to use the common areas of the Shopping Center as described in the Lease, in common with other tenants thereof, during the term of the Lease.

TO HAVE AND TO HOLD, the Demised Premises for an original term of beginning on the Term Commencement Date (as defined in the Lease) and expiring on January 31, 2002. The Lease gives and grants to Tenant the option to extend the term of the Lease for two (2), five (5) year option terms, the first such option term commencing immediately upon expiration of the original term and the second such option commencing immediately upon expiration of the first option term. If both options to extend the term of the Lease are exercised, the Lease will expire on January 31, 2012.

Among other things, the Lease provides as follows with respect to the subject of construction liens:

### Construction Liens

All persons are hereby notified that Landlord's interest in the Demised Premises will never, under any circumstances, be subject to construction liens of any nature during the term of this Lease as the result of labor, materials or services contracted by Tenant. Tenant will not suffer or permit any construction or other liens to be filed against all or any portion of the Demised Premises, nor against Tenant's leasehold interest therein by reason of work, labor, services, or materials supplied or claimed to have been supplied to Tenant, and nothing in this Lease will be deemed or construed in any way as constituting the consent or request of Landlord, express or implied, to any contractor, subcontractor, subsubcontractor, laborer, or material/supplier for the performance of any labor or the furnishing of any materials for any specific improvement, alteration, or repair of the Demised Premises, nor as giving Tenant any right, power, or authority to contract for or permit the rendering of any services or the furnishing of any materials that would give rise to the filing of any construction or other liens against the Demised Premises. If any such construction liens are filed against the Demised Premises at any time, Tenant will cause the same to be discharged of record or transferred to security within ten (10) days after the date of recordation of the lien. If Tenant fails to discharge the lien,

Landlord may bond or pay the lien or claim for the account of Tenant without inquiring into the validity of the lien. Any amount expended by Landlord to pay or bond the lien will be additional rent under this Lease and will be immediately due and payable to Landlord by Tenant. Tenant agrees that a short form of this Lease will be recorded in the Public Records of Hillsborough County, Florida for the purpose of including a provision expressly prohibiting the attachment of the aforesaid construction or other liens to Landlord's interest in the Demised Premises as stated above.

All persons and entities are hereby charged with notice of the existence of the Lease and the rights of Tenant and Landlord thereunder.

This Short Form Lease is not intended to alter, change or supersede the terms, covenants and conditions of the Lease and in the event of any conflict, between the Lease and this Short Form Lease, the terms, covenants and conditions of the Lease shall control.

IN WITNESS WHEREOF, Landlord and Tenant have caused this Short Form Lease to be duly executed as of the date and year first above written.

SIGNATURES WITNESSED BY:

**TOWN 'N COUNTRY PLAZA, a Florida general partnership**

By: _____
James H. Shimberg, Managing General Partner

Print Witness Name Below:
ALBERTO A. de ALEJO

Print Witness Name Below:
Joyce M. Jones

By: _____
Loren M. Pollack, Managing General Partner

Print Witness Name Below:
David J Sever

Print Witness Name Below:
Judith L Smith

**CONSOLIDATED STORES CORPORATION, an Ohio corporation**

By: _____
Albert J. Bell
Its: Senior Vice President

Print Witness Name Below:
JAMES HARRIS

(CORPORATE SEAL)

Print Witness Name Below:
Kristen Wachtman

- 2 -

**ACKNOWLEDGEMENTS:**

STATE OF _Florida_

COUNTY OF _Hillsborough_

    The foregoing instrument was acknowledged before me this _14_ day of September, 1994, by **JAMES H. SHIMBERG**, Managing General Partner of Town 'n Country Plaza, a Florida general partnership, on behalf of the partnership. He is either [CHECK APPLICABLE] _✓_ personally known to me or _____ has produced a valid drivers license of the State of Florida as identification.

                                    _Ruth E. Abelson_

(Affix Notarial Seal)               Notary Public
                                [Print Name]: _Ruth E. Abelson_

                                My Commission Expires:

                                       NOTARY PUBLIC, STATE OF FLORIDA AT LARGE
                                       MY COMMISSION EXPIRES JUNE 02, 1995
                                       BONDED THRU AGENT'S NOTARY BROKERAGE
                                       #CC 114853

STATE OF _Florida_

COUNTY OF _Pinellas_

    The foregoing instrument was acknowledged before me this _14_ day of September, 1994, by **LOREN M. POLLACK**, Managing General Partner of Town 'n Country Plaza, a Florida general partnership, on behalf of the partnership. He is either [CHECK APPLICABLE] _✓_ personally known to me or _____ has produced a valid drivers license of the State of Florida as identification.

                                      _Judith L. Smith_

(Affix Notarial Seal)               Notary Public
                                  [Print Name]: _JUDITH L. SMITH_
                                  Notary Public, State Of Florida At Large
                                  My Commission Expires May 2, 1998
                            My Commission Expires: Commission Number 378756

STATE OF _Ohio_

COUNTY OF _Franklin_

    The foregoing instrument was acknowledged before me this _15_ day of September, 1994, by **ALBERT J. BELL**, the Senior Vice President of Consolidated Stores Corporation, an Ohio corporation, on behalf of the corporation. He is either [CHECK APPLICABLE] _✓_ personally known to me or _____ has produced a valid drivers license of the State of _____ as identification.

                                      _Janet L. Blankenship_

                                  Notary Public
                                  [Print Name]: _JANET L. BLANKENSHIP_

(Affix Notarial Seal)               I am a notary public of the State of Ohio and
                                  my commission expires:

               JANET L. BLANKENSHIP
               NOTARY PUBLIC, STATE OF OHIO
               MY COMMISSION EXPIRES DEC. 7, 1998

- 3 -

EXHIBIT "A"

A parcel of land lying in the Southwest 1/4 of Section 36, Township 28 South, Range 17 East, Hillsborough County, Florida, and being more particularly described as follows:

From the Southwest corner of said Section 36 and run thence N 00°03'40" E., 20.90 feet, along the West boundary of said Section 36, to the Northerly right-of-way line of Hillsborough Avenue (State Road No. 580); thence N 89°51'17" E, 507.11 feet, along said Northerly right-of-way line to its intersection with the East right-of-way line of Ambassador Drive as recorded in O. R. Book 1601, Page 865, Public Records of Hillsborough County, Florida for a POINT OF BEGINNING; thence North, 706.18 feet along the East right-of-way line of said Ambassador Drive; thence East, 772.62 feet to a point on the West right-of-way line of Hanley Road (per County project No. 86-238-R); thence along said Westerly right-of-way line the following four (4) courses: 1) Southerly, 68.41 feet along the arc of a curve concave to the Easterly, having a radius of 7679.19 feet, and a chord bearing and distance of S 00°36'58" W, 68.41 feet to a point of tangency; 2) S 00°21'39" W, 211.95 feet; 3) S 01°11'44" W, 240.23 feet; 4) S 00°21'39" W, 33.66 feet; thence West 147.27 feet; thence South, 150.42 feet; thence S 89°51'17" W, 618.05 feet along the Northerly right-of-way line of said Hillsborough Avenue (State Road No. 580) to the POINT OF BEGINNING.

h:/re/drb/golding/biglots/legal

SEP 14 '94 11:38   FROM CONSOLIDATED STORES                    PAGE.029

EXHIBIT **B**



<u>CONSENT, NONDISTURBANCE AND ATTORNMENT AGREEMENT</u>

The undersigned, JAMES H. SHIMBERG, as trustee ("Master Landlord"), being the landlord under that certain lease between JAMES H. SHIMBERG, as Trustee, and TOWN 'N COUNTRY PLAZA OF TAMPA, INC., a Florida corporation, dated June 14, 1966 and recorded November 1,1966 in Official Record Book 1681 on Page 24; said Lease having been modified by instrument recorded April 12, 1967 in Official Record Book 1744 on Page 1; said Lease having been assigned to TOWN 'N COUNTRY PLAZA, a Florida general partnership ("Landlord"), by instrument recorded April 16, 1984 in Official Record Book 4314 on Page 1672, of the public records of Hillsborough County, Florida (collectively, the "Master Lease"), hereby consents to the execution of the foregoing lease (the "Lease") between Landlord and Consolidated Stores Corporation, an Ohio corporation d/b/a Odd Lots or Big Lots ("Tenant"), and agrees as follows with and for the benefit of Landlord and Tenant:

1.    Master Landlord will not disturb the Lease or Tenant's possession and enjoyment of the Demised Premises (as described in the Lease), provided that Tenant pays and performs its obligations under the Lease within the time periods for payment and performance set forth therein, including any notice and curative periods.

2.    Upon any default by Landlord in payment or performance of the Master Lease, Tenant will attorn to Master Landlord or any other owner of the Demised Premises, but only after Tenant has been furnished with written notice from Master Landlord (together with reasonable documentation substantiating acquisition of Master Landlord's interest in the Demised Premises if notice is given by an owner subsequent to Master Landlord) and a request for such attornment by Tenant.  Upon any attornment under this paragraph, the Lease will continue in full force and effect as a direct lease between Tenant and Master Landlord or the person or entity to whom Tenant attorns.

3.    This Agreement will inure to the benefit of and be binding upon the respective successors and assigns of Tenant, Landlord and Master Landlord.

Dated: September _15_, 1994.

WITNESSES:                                          MASTER LANDLORD:

_Alberto A. de Alejo_                               _James H Shimberg_
ALBERTO A. de ALEJO

_Joyce M. Jones_                                    JAMES H. SHIMBERG, as trustee
Joyce M. Jones
As to Master Landlord


ACCEPTED AND AGREED with respect to the provisions of Paragraph 2 above.


TENANT:

CONSOLIDATED STORES CORPORATION, an Ohio corporation

By:_____
Albert J. Bell
Senior Vice Pr...

*[handwritten yellow note:]* Commencement Date 12/1/94 Opened for business 11/13/94 Paying rent from 11/13/94 First partial lease year 12/1/94 - 1/31/95 % Rent 2½% over 4.2 mil during term 2/1/02-4.8 mil 1st OPT 2/1/07 5.4 mil 2nd OPT CAM not to exceed .50 during 1st lease year - not to increase by more than 7% per lease yr.

*[handwritten blue note:]* - 30,000 ☐ - Short Form Lease - 12/1/94 - 1/31/02 2 - 5 yr - OPT - Lease yr Feb - Jan - Rent 8750.⁰⁰ less 13856⁸ Rent Abatement, for original term - not options

*[business card:]* JEFF HALLEY Construction Manager 1-800-759-7243 PIN # 308-1792

CONSOLIDATED CS STORES 300 PHILLIPI ROAD • DEPARTMENT 907 COLUMBUS, OHIO 43228, U.S.A. DIRECT DIAL (614) 278-6719 • FAX (614) 278-6763

...1-278-6676

**ACKNOWLEDGEMENTS:**

STATE OF _Florida_

COUNTY OF _Hillsborough_

     The foregoing instrument was acknowledged before me this _14_ day of September, 1994, by **JAMES H. SHIMBERG**, Managing General Partner of Town 'n Country Plaza, a Florida general partnership, on behalf of the partnership. He is either [CHECK APPLICABLE] _✓_ personally known to me or _____ has produced a valid drivers license of the State of Florida as identification.

                             _Ruth E. Abelson_

(Affix Notarial Seal)         Notary Public
                              [Print Name]: _Ruth E. Abelson_

My Commission Expires:

NOTARY PUBLIC, STATE OF FLORIDA AT LARGE
MY COMMISSION EXPIRES JUNE 02, 1995
BONDED THRU AGENT'S NOTARY BROKERAGE

# CC114853

STATE OF _Ohio_

COUNTY OF _FRANKLIN_

     The foregoing instrument was acknowledged before me this _15_ day of September, 1994, by **ALBERT J. BELL**, the Senior Vice President of Consolidated Stores Corporation, an Ohio corporation, on behalf of the corporation. He is either [CHECK APPLICABLE] _____ personally known to me or _✓_ has produced a valid drivers license of the State of _____ as identification.

                      _Janet L. Blankenship_

(Affix Notarial Seal)         Notary Public
                          [Print Name]: _JANET L. BLANKENSHIP_

I am a notary public of the State of Ohio and my commission expires:

JANET L. BLANKENSHIP
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES DEC. 7, 1998



CONSOLIDATED
C
S T O R E S

REAL ESTATE
DEPARTMENT 80061
300 PHILLIPI ROAD
COLUMBUS, OHIO 43228, U.S.A.
PHONE (614) 278-6800
WRITER'S DIRECT DIAL NUMBER:
(614) 278-6625

November 17, 1994

Town 'N Country Plaza
3550 Buschwood Park Drive, Suite 145
Tampa, FL  33618-4433

Re:  Big Lots #547
     Town 'N Country Plaza
     Tampa, FL

Dear Landlord:

The purpose of this Letter Agreement is to evidence the Lease commencement/expiration dates as follows:

Store Opening:          November 13, 1994
Rent Commencement:      November 13, 1994
Term Commencement:      December 1, 1994
Lease Expiration:       January 31, 2002
Renewal Notification:   July 31, 2001

Tenant shall be entitled to a rent abatement equal to $120,000.00, apportioned equally over the initial term and deducted from Tenant's monthly rent.  Pursuant to your Transmittal dated November 15, 1994, Tenant's rent abatement is:

     $120,000.00 / 86.60 months = $1,385.68 per month

Please acknowledge your agreement with the contents of this letter by signing below and returning one (1) fully executed original in the envelope provided.  Should we not receive your signed copy within fifteen days of the date of this letter, we will then assume you are in agreement as to the commencement/expiration dates.

Thank you for your cooperation.

Very truly yours,

*Michelle A. Bisutti*
Michelle A. Bisutti
Lease Administrator

cc:  Eric VanScoter, Property Accountant


Agreed to this _21st_ day of _November_ _____ 1994.

TOWN 'N COUNTRY PLAZA

By: _____
        *MANAGING PARTNER*



CONSOLIDATED

**CS**

S T O R E S

REAL ESTATE
DEPARTMENT 10061
300 PHILLIPI ROAD
P.O. BOX 28512
COLUMBUS, OHIO 43228-0512, U.S.A.
PHONE (614) 278-6714
FAX (614) 278-6546
WRITER'S DIRECT DIAL NUMBER:

_____

April 9, 2001

**VIA AIRBORNE EXPRESS**

UIRT - Town 'N Country, L.P.
Stuart S. Golding Company
27001 U.S. Highway 19 North, Suite 2095
Clearwater, FL  33761

          Re:     Big Lots #547
                  Tampa, FL

*on computer*

Dear Landlord:

Pursuant to the Lease dated September 15, 1994, by and between UIRT - Town 'N Country, L.P., as successor, ("Landlord") and Consolidated Stores Corporation ("Tenant"), we hereby exercise our option to renew the Lease for an additional five (5) years through January 31, 2007 ("Renewal Term"). Our Guaranteed Minimum Rent will increase to One Hundred Twenty and No/100 Dollars ($120,000.00) payable in equal monthly installments of Ten Thousand and No/100 Dollars ($10,000.00) per month. During said Renewal Term, the Percentage Rent annual base sum as referenced in Section 5.D. of the Lease shall be $4,800,000.00.  Thank you.

Sincerely

Kathleen Hupper
Vice President

KH/dap

N 'N COUNTRY PLAZA, L.P.

Tenant Notice Letter


September 21, 2001

Consolidated Stores Corp
Big Lots #547
300 Phillipi Road
Columbus, Ohio 43228-1310

RE:  Town 'N Country Plaza, L.P.
     Tampa, Florida

Dear Tenant:

This is to notify you that the property in which you are a tenant has
been acquired by Town 'N Country Plaza, L.P., a Florida limited
partnership (the "Buyer"). Town 'N Country Plaza, L.P. is not
affiliated with United Investors Realty Trust or UIRT Management
Services, Inc., their related management and leasing firm.

Town 'N Country Plaza, L.P. will continue to be managed and leased by
Stuart S. Golding Company.

Rents and other payments should be made payable to Town 'N Country
Plaza, L.P. and directed to the following new address:

        C/o Stuart S Golding Company
            27001 US Hwy 19 N, Suite 2095
            Clearwater, Fl  33761
            Phone 727-796-1077

We look forward to seeing you.

                         Town 'N Country Plaza, L.P.
                         a Florida Limited Partnership
                         By:   Stuart S. Golding Company,
                               Its manager

                         By:   _____
                               David Scher, Partner

                         Notice of Sale Confirmed by Seller:

                         UIRT Town 'N Country Plaza, L.P.
                         a Texas Limited Partnership

                         By:   _____
                               R Stephen Hamner, C.F.O.

## FIRST LEASE EXTENSION AND MODIFICATION AGREEMENT

THIS FIRST LEASE EXTENSION AND MODIFICATION AGREEMENT, made and entered into this 24 day of April , 2006 by and between Town 'N Country Plaza, L.P., a Florida limited partnership, having its principal offices at c/o Stuart S. Golding Company, 27001 US Highway 19 N, Suite 2095, Clearwater, FL 33761 (hereinafter referred to as "Landlord"), and Big Lots Stores, Inc., an Ohio corporation, formerly known as Consolidated Stores Corporation, doing business as Big Lots, of the City Columbus, County of Franklin and State of Ohio, whose mailing address is 300 Phillipi Road, Department 10051, Columbus, OH 43228-0512 (hereinafter referred to as "Tenant").

## WITNESSETH

WHEREAS, in consideration of the mutual promises herein contained the parties hereto agree to amend the Lease between Landlord and Tenant dated September 15, 1994, as amended (collectively, the "Lease").

NOW, THEREFORE, for and in consideration of the mutual promises and covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Lease is hereby amended as follows:

1. Tenant hereby exercises its option to extend the Term of the Lease from February 1, 2007 through January 31, 2012 (the "Second Option Term"). Guaranteed Minimum Rent during the Second Option Term shall be in the amount of ONE HUNDRED THIRTY-FIVE THOUSAND AND $^{00}/_{100}$ DOLLARS ($135,000.00) per annum, payable in equal monthly installments of ELEVEN THOUSAND TWO HUNDRED FIFTY AND $^{00}/_{100}$ DOLLARS ($11,250.00); and

2. So long as the Tenant is not in default under the terms of the Lease beyond applicable notice and cure periods at the time of exercise, Landlord hereby grants to Tenant, the option to extend the Term of the Lease for one (1), additional five (5) year term, referred to as the "Third Option Term." The Third Option Term shall commence at the end of the Second Option Term, upon the same terms and conditions as contained in the Lease except as provided herein. If tenant is then in possession of the Demised Premises, Tenant may elect to exercise the Third Option Term by giving the Landlord written notice at least six (6) months prior to the expiration of the Second Option Term.

3. The Guaranteed Minimum Rent during the Third Option Term shall be the sum of $150,000.00 per Lease Year which shall be paid in equal monthly installments in advance on the first day of each and every month in the amount of $12,500.00; and

   Percentage Rent shall be paid in an amount equal to two and one-half percent (2 ½%) of the excess of Tenant's annual gross sales and income which exceeds the annual base sum of $6,000,000.00 during the Third Option Term.

   Except as herein modified, all other terms, conditions, covenants, agreements, and capitalized terms of the Lease are hereby incorporated herein by reference and shall control and govern.

   Unless defined herein, all capitalized terms shall have the same meaning as defined in the Lease.

   In the event there is a conflict between the terms and provisions of this First Lease Extension and Modification Agreement and the original Lease or any subsequent extension and/or modification agreement prior to the date of this First Lease Extension and Modification Agreement, the terms and provisions of this First Lease Extension and Modification Agreement shall control.

This First Lease Extension and Modification Agreement shall bind and inure to the benefit of the successors and assigns of Landlord and the successors and assigns of Tenant.

This First Lease Extension and Modification Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original.

The submission by Tenant to Landlord of this agreement shall have no binding force or effect, shall not constitute an option for leasing, nor confer any rights or impose any obligations upon either party until the execution thereof by Landlord and Tenant and the delivery of a fully executed original counterpart thereof to Tenant.

If a party returns this agreement by facsimile machine, the signing party intends the copy of this authorized signature printed by the receiving facsimile machine to be its original signature.

**IN WITNESS WHEREOF**, Landlord and Tenant have caused this First Lease Extension and Modification Agreement to be executed as of the date first written above.

TENANT:    **BIG LOTS STORES, INC.,**
an Ohio corporation

BY: _____

Kevin Day
ITS:    Vice President

WITNESS: _____

LANDLORD:    **TOWN 'N COUNTRY PLAZA, L.P.,**
a Florida Limited Partnership

By:    Stuart S. Golding Company,
Its manager

BY: _____

ITS: _____Partner_____

WITNESS: _____Connie Kilgo_____

(Tenant's Acknowledgement)

STATE OF OHIO　　　　)
　　　　　　　　　　　)
County of  Franklin　　)

Before me, a Notary Public, in and for said State and County, personally appeared the above named Landlord **Big Lots Stores, Inc., an Ohio corporation fka Consolidated Stores Corporation**, by Kevin Day, its **Vice President**, who acknowledged that he did sign the foregoing instrument and that the same is the free act and deed of said corporation, and the free act and deed of him personally and of said officer.

**IN WITNESS WHEREOF,** I hereunto set my hand and the official seal, at Columbus, Ohio, this _24th_ day of _April_, 2006.

Notary Public

ANDREA E. SULLIVAN
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES 4/24/2010

(Landlord's Acknowledgement)

STATE OF _Florida_

County of _Pinellas_

Before me, a Notary Public, in and for said State and County, personally appeared the above named Tenant, _Town 'n Country Plaza LP_, by _Loren M Pollack_, its _Partner_, who acknowledged that he/she did sign the foregoing instrument and that the same is the free act and deed of said corporation, and the free act and deed of him/her personally and of said officer. _partnership_

**IN WITNESS WHEREOF,** I hereunto set my hand and the official seal, at _Clearwater, Florida_, this _12th_ day of _April_, 2006.

Notary Public

Lynn L Ward
My Commission DD265585
Expires January 18, 2008

BL #547

## SECOND LEASE EXTENSION AND MODIFICATION AGREEMENT

THIS SECOND LEASE EXTENSION AND MODIFICATION AGREEMENT, made and entered into this 29th day of July , 2011 (this "Agreement") by and between Town 'N Country Plaza, L.P., a Florida limited partnership, having its principal offices at c/o Stuart S. Golding Company, 2535 Landmark Drive, Suite 106, Clearwater, FL 33761 (hereinafter referred to as "Landlord"), and Big Lots Stores, Inc., an Ohio corporation, formerly known as Consolidated Stores Corporation, doing business as Big Lots, of the City Columbus, County of Franklin and State of Ohio, whose mailing address is 300 Phillipi Road, Department 10051, Columbus, OH 43228-5311 (hereinafter referred to as "Tenant").

### WITNESSETH

WHEREAS, in consideration of the mutual promises herein contained the parties hereto agree to amend the Lease between Landlord and Tenant dated September 15, 1994, as amended (collectively, the "Lease");

WHEREAS, Tenant now desires to exercise its Third Option Term under the Lease as provided herein below; and

NOW, THEREFORE, for and in consideration of the mutual promises and covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Lease is hereby amended as follows:

1. Tenant hereby exercises its option to extend the Term of the Lease commencing February 1, 2012, and expiring on January 31, 2017 (the "Third Option Term") pursuant to the terms herein.

2. Commencing February 1, 2012 through January 31, 2014, Guaranteed Minimum Rent shall be in the amount of ONE HUNDRED THIRTY-FIVE THOUSAND AND $^{00}/_{100}$ DOLLARS ($135,000.00) per annum, payable in equal monthly installments of ELEVEN THOUSAND FIVE HUNDRED AND $^{00}/_{100}$ DOLLARS ($11,500.00); and commencing February 1, 2014 through January 31, 2017, Guaranteed Minimum Rent shall be in the amount of ONE HUNDRED FIFTY THOUSAND AND $^{00}/_{100}$ DOLLARS ($150,000.00) per annum, payable in equal monthly installments of TWELVE THOUSAND FIVE HUNDRED AND $^{00}/_{100}$ DOLLARS ($12,500.00).   KD SG ($11,250.00)

3. Commencing February 1, 2012 through January 31, 2014, Percentage Rent shall be paid in an amount equal to two and one-half percent (2½%) of the excess of Tenant's annual gross sales and income which exceeds the annual base sum of $5,400,000.00; and commencing February 1, 2014 through January 31, 2017, Percentage Rent shall be paid in an amount equal to two and one-half percent (2½%) of the excess of Tenant's annual gross sales and income which exceeds the annual base sum of $6,000,000.00.



SIGN HERE

4. Tenant shall continue to pay its pro rata share of such Common Area Charges pursuant to Section 5.E. of the Lease during the Third Option Term.

5. Tenant shall continue to pay its pro rata share of Taxes and Assessments pursuant to Section 5.F. of the Lease during the Third Option Term.

6. Tenant shall continue to pay its pro rata share of Insurance Premiums pursuant to Section 13.B. of the Lease during the Third Option Term.

Except as herein modified, all other terms, conditions, covenants, agreements, and capitalized terms of the Lease are hereby incorporated herein by reference and shall control and govern.

Unless defined herein, all capitalized terms shall have the same meaning as defined in the Lease.

In the event there is a conflict between the terms and provisions of this Agreement and the original Lease or any subsequent extension and/or modification agreement prior to the date of this Agreement, the terms and provisions of this Agreement shall control.

This Agreement shall bind and inure to the benefit of the successors and assigns of Landlord and the successors and assigns of Tenant.

This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original.

The submission by Tenant to Landlord of this agreement shall have no binding force or effect, shall not constitute an option for leasing, nor confer any rights or impose any obligations upon either party until the execution thereof by Landlord and Tenant and the delivery of a fully executed original counterpart thereof to Tenant.

If a party returns this agreement by facsimile machine, the signing party intends the copy of this authorized signature printed by the receiving facsimile machine to be its original signature.

(the remainder of this page is intentionally left blank)

**IN WITNESS WHEREOF**, Landlord and Tenant have caused this Agreement to be executed as of the date first written above.

TENANT:        **BIG LOTS STORES, INC.,**
                an Ohio corporation

                BY: _____
                     Kevin Day
                ITS:   Vice President

                WITNESS: _____

LANDLORD:    **TOWN 'N COUNTRY PLAZA, L.P.,**
                a Florida Limited Partnership

                By:   Stuart S. Golding Company,
                     Its manager

                BY: _____

                ITS:   _____Partner_____

                WITNESS: _____

(Tenant's Acknowledgement)

STATE OF OHIO        )
                        )
County of  Franklin    )

      Before me, a Notary Public, in and for said State and County, personally appeared the above named Landlord, **Big Lots Stores, Inc., an Ohio corporation formerly known as Consolidated Stores Corporation**, by Kevin Day, its **Vice President**, who acknowledged that he did sign the foregoing instrument and that the same is the free act and deed of said corporation, and the free act and deed of him personally and of said officer.

      **IN WITNESS WHEREOF**, I hereunto set my hand and the official seal, at Columbus, Ohio, this _29th_ day of _July_ 2011.

                                          ANDREA L. TURNER
                                  NOTARY PUBLIC, STATE OF OHIO
        _____   MY COMMISSION EXPIRES  5/12/15
        Notary Public

(Landlord's Acknowledgement)

STATE OF _Florida_

County of _Pinella_

      Before me, a Notary Public, in and for said State and County, personally appeared the above named Tenant, _Town 'N Country Plaza LP_ , by _Loren M Pollack_ , its _Partner_ who acknowledged that he/she did sign the foregoing instrument and that the same is the free act and deed of said corporation, and the free act and deed of him/her personally and of said officer.

      **IN WITNESS WHEREOF**, I hereunto set my hand and the official seal, at _Clearwater, Fl_ , this _28th_ day of _July_ , 2011.

        Notary Public State of Florida
        Lynn L Ward
        My Commission DD734910  _____
        Expires 01/18/2012       Notary Public

BL#547

### THIRD LEASE EXTENSION AND MODIFICATION AGREEMENT

THIS THIRD LEASE EXTENSION AND MODIFICATION AGREEMENT, made and entered into this 13ᵗʰ day of _May_____, 2016 (this "Agreement") by and between Town 'N Country Plaza, L.P., a Florida limited partnership, having its principal offices at c/o Stuart S. Golding Company, 2535 Landmark Drive, Suite 106, Clearwater, FL  33761 (hereinafter referred to as "Landlord"), and Big Lots Stores, Inc., an Ohio corporation, formerly known as Consolidated Stores Corporation, doing business as Big Lots, of the City Columbus, County of Franklin and State of Ohio, whose mailing address is 300 Phillipi Road, Department 10051, Columbus, OH 43228-5311 (hereinafter referred to as "Tenant").

### RECITALS:

**WHEREAS,** Landlord and Tenant entered into a Lease dated September 15, 1994, as amended (collectively, the "Lease") for approximately 30,000 square feet of retail space located in Town and Country Shopping Center, 7565 W Hillsborough Avenue, Tampa, Florida as more particularly described in the Lease.

**WHEREAS,** Landlord and Tenant now desire for Tenant to extend it's current Term for a five (5) year period and for Landlord to grant to Tenant two (2) additional five (5) year option terms as provided for herein.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1.  The Term of the Lease is hereby extended for five (5) years commencing on February 1, 2017 through January 31, 2022 (the "**Extended Term**"). Guaranteed Minimum Rent applicable during the Fourth Option Term shall be in the amount of One Hundred Seventy Two Thousand Five Hundred and 00/100 Dollars ($172,500.00) per annum, payable in equal monthly installments of Fourteen Thousand Three Hundred Seventy Five and 00/100 Dollars ($14,375.00) in advance on the first day of each month. During the Fourth Option Term, Tenant shall pay Percentage Rent in an amount equal to two and one-half percent (2-1/2%) of the excess of Tenant's annual Gross Sales which exceed the annual base sum of ($6,900,000.00).

2.  Landlord hereby grants to Tenant two (2) additional, five (5) year options to extend the term of the Lease, defined as "Fourth Option Term" and "Fifth Option Term", each upon the same terms and conditions as contained in the Lease except as provided herein.  The Fourth Option Term shall commence, if exercised, at the end of the Extended Term, and the Fifth Option Term shall commence, if exercised, at the end of the Fourth Option Term. If Tenant is then in possession of the Demised Premises, Tenant may elect to exercise each option by giving the Landlord written notice at least six (6) full calendar months prior to the expiration of the immediately preceding Term.

    The Guaranteed Minimum Rent applicable during the Fourth Option Term shall be in the amount of One Hundred Eighty Seven Thousand Five Hundred and 00/100 Dollars ($187,500.00) per annum, payable in equal monthly installments of Fifteen Thousand Six Hundred Twenty Five and 00/100 Dollars ($15,625.00) in advance on the first day of each month.  During the Fourth Option Term, Tenant shall pay Percentage Rent in an amount equal to two and one-half percent (2-1/2%) of the excess of Tenant's annual Gross Sales which exceed the annual base sum of ($7,500,000.00).

    The Guaranteed Minimum Rent applicable during the Fifth Option Term shall be in the amount of Two Hundred Two Thousand Five Hundred and 00/100 Dollars ($202,500.00) per annum, payable in equal monthly installments of Sixteen Thousand Eight Hundred Seventy Five and 00/100 Dollars ($16,875.00) in advance on the first day of each month.  During the Fifth Option Term, Tenant shall pay Percentage Rent in an amount equal to two and one-half percent (2-1/2%) of the excess of Tenant's annual Gross Sales which exceed the annual base sum of ($8,100,000.00).

3.  Tenant shall continue to pay its pro rata share of such Common Area Charges pursuant to Section 5.E of the Lease during the Extended Term, Fourth Option Term, and Fifth Option Term.

BL#547

4.  Tenant shall continue to pay its pro rata share of Taxes and Assessments pursuant to Section 5.F. of the Lease during the Extended Term, Fourth Option Term and Fifth Option Term.

5.  Tenant shall continue to pay its pro rata share of Insurance Premiums pursuant to Section 13.B. of the Lease during the Extended Term, Fourth Option Term, and Fifth Option Term.

Except as herein amended and modified, all other terms, conditions, covenants, agreements, and capitalized terms of the Lease are hereby incorporated herein by reference and shall control and govern.

Unless defined herein, all capitalized terms shall have the same meaning as defined in the Lease.

In the event there is a conflict between the terms and provisions of this Agreement and the original Lease or any subsequent extension and/or modification agreement prior to the date of this Agreement, the terms and provisions of this Agreement shall control.

This Agreement shall bind and inure to the benefit of the successors and assigns of Landlord and the successors and assigns of Tenant.

This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original.

(the remainder of this page is intentionally left blank)

BL#547

**IN WITNESS WHEREOF**, Landlord and Tenant have caused this Agreement to be executed as of the date first written above.

Witnesses as to Tenant              TENANT:    BIG LOTS STORES, INC., an Ohio
                                               corporation

BY: _~~Timothy Johnson~~_

Timothy A. Johnson

ITS:    Executive Vice President,
        Chief Administrative Officer &
        Chief Financial Officer



Witnesses as to Landlord           LANDLORD:   Town 'N Country Plaza, L.P., a Florida
                                               limited partnership

By: _~~Loren M. Pollack~~_
PRINT: LOREN M. Pollack
TITLE: _Partner_

(Tenant's Acknowledgement)

STATE OF OHIO          )
                       )
County of   Franklin   )

Before me, a Notary Public, in and for said State and County, personally appeared the above named Tenant, **Big Lots Stores, Inc., an Ohio corporation**, by Timothy A. Johnson, its Executive Vice President, Chief Administrative Officer, Chief Financial Officer, who acknowledged that he did sign the foregoing instrument and that the same is the free act and deed of said corporation, and the free act and deed of him personally and of said officer.

**IN WITNESS WHEREOF,** I hereunto set my hand and the official seal, at Columbus, Ohio, this 13ᵗʰ day of ___May___, 2016.

Courteney Robertson
Notary Public, State of Ohio
My Commission Expires 08/22/2016

_~~Courteney Robertson~~_
Notary Public

(Landlord's Acknowledgement)

STATE OF  _Florida_

COUNTY OF  _Pinella_

Before me, a Notary Public, in and for said State and County, personally appeared the above named Landlord, **Town 'N Country Plaza, L.P.**, a Florida limited partnership, by _Loren M Pollack_, its _Partner_ who acknowledged that he did sign the foregoing instrument and that the same is the free act and deed of said corporation, and the free act and deed of him personally and of said officer.

**IN WITNESS WHEREOF,** I hereunto set my hand and the official seal, at _Clearwater, Florida_, this _11ᵗʰ_ day of _February_, 2016.



_~~Lynn L Ward~~_
Notary Public

DocuSign Envelope ID: D5337B0D-2A1E-45B6-B███-17A69BB2857E



4900 EAST DUBLIN GRANVILLE ROAD
COLUMBUS, OHIO  43081-7651

July 8, 2021

**VIA FEDEX**

Town 'N' Country Plaza, LP
c/o Stuart S. Golding Company
204 N. Howard Ave.
Tampa, FL 33606

Re:  **BIG LOTS #547– Tampa, FL**
Lease Agreement by and between Town 'N' Country Plaza, LP (Landlord), and Big Lots Stores, Inc., an Ohio corporation ("Tenant") dated September 15, 1994 as amended (collectively, the "Lease").

Dear Landlord:

Pursuant to the Lease Agreement, Tenant hereby exercises its option to extend the term of the Lease commencing February 1, 2022 and expiring on January 31, 2027 ("Fourth Option Term"). Guaranteed Minimum Rent will be One Hundred Eighty-Seven Thousand Five Hundred and 00/100 Dollars ($187,500.00) per annum, payable in equal monthly installments of Fifteen Thousand Six Hundred Twenty-Five and 00/100 Dollars ($15,625.00).

Thank you.

**Big Lots Stores, Inc., an Ohio corporation**

DocuSigned by:

*Jonathan Ramsden*

FF2E51629539412...
Jonathan Ramsden
Executive Vice President
Chief Financial & Administrative Officer

JR/smm