# Exhibit "A"

# COLD DRINK EQUIPMENT
# &
# MERCHANDISING AGREEMENT

This Cold Drink Equipment and Merchandising Agreement ("Agreement") is entered into this ___ day of August 2017 between Big Lots Stores, Inc. ("Big Lots") and The American Bottling Company ("ABC") (each a "Party" and collectively the "Parties").

The Parties are entering into the Agreement for the purpose of allowing ABC to place certain Cold Drink Equipment ("CDE") in Big Lots stores (each a "Store") and to secure for ABC certain merchandising opportunities in the Stores. To that end the Parties agree:

1. Term. This Agreement shall continue for three (3) years from the date the first CDE are placed in Stores. At least ninety days from the end of the initial three year term, the parties will meet and confer in a good faith attempt to negotiate an extension of this Agreement.

2. On about August 1, 2017, ABC will arrange for the delivery and loan to each Store, through its bottlers and distributors (collectively "Distributors"), a single door, five shelf, Lead end-cap cooler (the "Cooler") to be placed on the Lead or Trail end cap of the Beverage Aisle (if not an interior cap) in the Store's Food Section on the Drive Aisle. If there are multiple rows of gondolas of food, the Cooler shall be placed on the row closest to the check-out register.. The specifications of the Cooler shall be similar to those of a HABCO ESM-18 cooler.

Each Cooler shall be branded as determined mutually by the Parties and Big Lots will not permit any of the Cooler's branding to be covered, altered, or in any way obscured from shoppers' view. In the event of a material change in the availability or cost of Coolers, the Parties will confer and in good faith attempt to negotiate appropriate revisions or modifications to the Agreement; if such negotiations are unsuccessful, either Party may terminate the Agreement upon sixty (60) days written notice.

3. redacted

4. redacted

5. redacted

6. redacted



Cold Drink Equipment & Merchandising Agreement    Page 1    *DP*

7. Big Lots shall annually provide ABC a list with the address of each Store which receives a Cooler. The Cooler shall not, without ABC's prior written consent, be removed from the Store. ABC or its Distributor shall have the right to inspect the CDE at any reasonable time with three (3) days prior written notice to Big Lots.

[redacted]

Each year of the Term, ABC shall pay to Big Lots a ▮▮▮▮ Placement Fee for each Store which received and retained a Cooler during the previous year of the Term. The Placement Fee ▮▮▮ will be pro-rated based upon the Cooler placement date for each Store. The Parties shall confer quarterly to reconcile and agree upon the number of Coolers in Stores during the quarter, the number of new Stores opened during the quarter, and the payment of the ▮▮▮ for each new Store requiring installation of an electrical outlet necessary for the operation of a Cooler.

8. Big Lots shall be responsible for using the CDE in a lawful manner and for lawful purposes only as described herein. Big Lots shall not alter or add attachments to the CDE.

9. ABC or a Distributor, shall provide, at its expense, all maintenance and repair service for the CDE during ABC's normal business hours. Big Lots shall reimburse ABC for repairs or replacements caused by negligence or misuse by Big Lots, its employees, agents or contractors. All repair and maintenance services shall be made only by ABC, a Distributor, or one of its duly authorized representatives.

10. Big Lots shall bear the entire risk of loss, theft, destruction or damage of or to the CDE ("Loss or Damage") from any cause whatsoever (except normal wear and tear) from the time of the delivery of the CDE to Big Lots until returned to ABC's possession or control. In the event of Loss or Damage, Big Lots shall promptly pay ABC the amount necessary to repair or recondition the CDE, or if, in the sole opinion of ABC repair or reconditioning is not feasible, the fair market value of the CDE as determined by ABC. Loss or Damage shall not release Big Lots from any of its obligations under this Agreement.

11. [redacted]

12. Upon the termination of this Agreement, or in the event of Default, Big Lots shall, at Big Lots' expense, make the CDE immediately available for pick up and removal by ABC at the location previously reported by Big Lots.

13. The CDE is, and shall at all times be and remain, the property of ABC notwithstanding that the CDE or any part thereof may now be, or thereafter become, in any manner affixed or attached to real property or any improvements thereon. Big Lots agrees to maintain upon the CDE property identification tags supplied or affixed by ABC, which indicate that the CDE is the property of ABC. Big Lots agrees, upon ABC's request, to execute a form UCC-1 financing statement.

14. ABC shall be responsible, as a direct-store-delivery ("DSD") vendor, for replenishing inventory. ABC shall supply Big Lots with a telephone number for store personnel to contact ABC's local district office in the event the CDE breakdown or shortages.

15. ABC and Big Lots are parties to the Confidentially Agreement dated November 1, 2016, which is incorporated herein and made a part hereof. This agreement shall constitute a "Definitive Agreement" under Section (f) of the Confidentially Agreement.

16.  redacted

17. redacted

18. Big Lots shall be in default of this Agreement if: (i) it fails to pay rent (if rent is required by the laws of the state in which the Store is located); (ii) it breaches any term or condition of this Agreement; (iii) Big Lots makes a bulk transfer, an assignment for the benefit of creditors, whether voluntary or involuntary; (iv) a bankruptcy petition is filed by or against Big Lots; or (v) if Big Lots has breached any other lease or agreement between the Parties.

In the event of (i) through (v) above, ABC shall have the right to exercise any one or more of the following remedies: (a) take possession of the CDE wherever it may be located, without demand or notice, without any court order or other process or law, and without any liability to Big Lots for damages occasioned by taking of possession; (b) demand the immediate return of the CDE, and Big Lots shall comply with such request; (c) immediately terminate all other support, funding and or CMA agreements with Big Lots; or (d) pursue any other remedy at law or in equity.

No right or remedy conferred upon or reserved to either party is intended to be exclusive of any other right or remedy. The rights and remedies provided herein are cumulative and their exercise shall be without prejudice to the enforcement of any other right or remedy authorized by law or this Agreement. Big Lots shall pay to ABC all costs and expenses, including reasonable attorney's fees, the fees of collection agencies, and other expenses incurred by ABC in enforcing any of the terms, conditions, or provisions of this Agreement.

19. Service of all notices under this Agreement shall be sufficient if given in person or if mailed to the Party to whom intended at its address set forth above, or at such other



address as a Party may provide in writing from time to time. Any mailed notice shall be effective when deposited in the United States mail, certified mail, duly addressed, and with postage prepaid.

20. Big Lots shall not (a) assign transfer, pledge or hypothecate this Agreement, the CDE or any interest herein, or (b) sublet or lend the CDE or permit it to be used by anyone other than Big Lots, its employees or its customers. However, Big Lots may assign, without ABC's prior consent, this Agreement to an entity which is an affiliate, subsidiary or parent corporation at the time of execution of this Agreement. This Agreement shall be binding upon the successors and assigns of the Parties.

21. The failure of either Party to insist in any one or more instances upon the strict performance of any of the provisions of this Agreement or to take advantage of any of its rights hereunder shall not be construed as a waiver of any such provision or the relinquishment of any such right, but the same shall continue to remain in full force and effect.

22. This Agreement constitutes the entire agreement between the Parties and no provision hereof shall be waived, modified, or abandoned except in a writing signed by each of the Parties.

23. This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio without reference to its choice of law provisions, and any action or proceeding arising out of this Agreement shall be brought in the State or Federal courts of Franklin County Ohio.

By the signature below of its authorized representative, each of the Parties acknowledges and accepts the terms of the Agreement.

Big Lots Stores, Inc.

Name: Michelle Christensen
Title: SVP/GMM
Date: 9/1/17

The American Bottling Company

Name: Dean Purcell
Title: Vice President National Accts
Date: 8/30/17