UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtor(s). | Chapter 11<br><br>Case No. 24-11967 (JKS)<br>Jointly Administered |

**HOMEVIEW DESIGN INC.'S MOTION FOR ALLOWANCE
AND IMMEDIATE PAYMENT OF ADMINISTRATIVE
EXPENSE CLAIMS, PURSUANT TO 11 U.S.C. §§ 503(b)(1)(A) AND 503(B)(9)**

Administrative priority creditor, HomeView Design Inc. (hereinafter, "**Creditor**"), by and through its undersigned counsel, hereby submits this motion, pursuant to sections 503(b)(1)(A) AND 503(b)(9) of title 11 of the United States Code (the "**Bankruptcy Code**") for entry of an Order allowing and directing immediate payment of its administrative expense claims in the aggregate amount of $654,599.28 (the "**Motion**"). In support of this Motion, Creditor states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein is 11 U.S.C. §§ 503(b)(1)(A) and 503(b)(9).

**PROCEDURAL AND FACTUAL BACKGROUND**

5. On September 9, 2024 (the "**Petition Date**"), the above-captioned debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

6. The Debtor(s) are operating as debtors-in-possession. No trustee or examiner has been appointed.

7. On September 10, 2024, the Court entered an order authorizing the procedural joint administration of the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 1015(b). [Bankr. D.I. 95].

8. On December 31, 2024, the Court entered an amended bar date order [D.I. 1531], which establishes January 31, 2025 as a general bar date for pre-petition claims.

9. On February 7, 2025, the Debtors filed an Admin. Claims Procedures Motion [D.I. 1962], which in paragraph 8 said: "[t]he Debtors intend to pay Post-Closing Administrative Expense Claims in the ordinary course…"

10. On February 25, 2025, the Debtor filed an *Amended Pre-Closing Administrative Expense Claims Schedule* [D.I. 2082], which lists Creditor's claim for the post-petition and pre-closing period (9/9/24 petition date through 1/3/25 closing) in an incorrect amount of $85,784.

11. On February 27, 2025, the Court entered the Admin. Claims Procedures Order D.I. 2110], which establishes April 3, 2025 as a bar date for administrative claims incurred in the post-petition and pre-closing period (9/9/24 petition date through 1/3/25 closing).

12. In the 20 days leading up to the Petition Date (8/20/24 through the 9/9/24 Petition Date), Creditor supplied, and the Debtors received goods with a value of $3,778.00. See invoice no. 48333.

13. Also, in the post-petition and pre-closing period (9/9/24 petition date through 1/3/25 closing), Creditor received purchase orders from the Debtor(s) and fulfilled those orders in the ordinary course of business – a total amount of $96,712.00 that the Debtor(s) have not paid. See invoice nos. 0048412, 0048413, 0048414, DLAX1670131484, DLAX1670131475, and DLAX1670131470 with corresponding proof of delivery.

14. Also, in the post-closing period (1/3/25 closing to date), Creditor received purchase orders from the Debtor(s) and did substantial work to fulfill those orders– a total amount of $554,109.28 that the Debtor(s) have not paid. See order nos. 95558537, 95558538, 95558539, 95643797, 95678063, 95696535, 95696536, 95696537, 95610243.

15. The ordered goods are presently located in China, in a factory warehouse ready to be shipped.

16. Creditor has requested, but the Debtors have not given confirmation that they will accept shipment and pay for the goods.

17. Creditor, *pro se*, timely filed proofs of claim for the foregoing sums. See Claim No. 1246, 3864, and 6784.

18. Between February 20, 2025 and February 27, 2025, Creditor reached out to Debtors, through counsel, several times, both via telephone and email, in a good faith attempt to: reconcile the amounts and arrange for immediate payment of Creditor's administrative claims – namely: (i) Creditor's 503(b)(9) claim in the amount of $3,778.00; (ii) Creditor's 503(b)(1)(A) claim incurred in the post-petition and pre-closing period (9/9/24 petition date through 1/3/25 closing) in the amount of $96,712.00; and (iii) Creditor's 503(b)(1)(A) claim incurred in the post-closing period (1/3/25 closing to date) in the amount of $554,109.28.

19. To date, however, Debtors' counsel has not substantively responded.

20. The Debtor(s) owe Creditor an aggregate total of $654,599.28 on account of Creditors' administrative priority claims.

## LEGAL DISCUSSION

21. By this Motion, Creditor requests the entry of an Order allowing and directing immediate payment of Creditor's administrative expense claims in the aggregate amount of $654,599.28.

22. Section 503(b)(1)(A) of the Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expense of preserving the estate . . ." 11 U.S.C. § 503(b)(1)(A).

23. "In determining whether a claim is entitled to administrative status pursuant to 503(b)(1)(A), courts generally apply a two-part test: '(1) the expense must have arisen from a post-petition transaction between the creditor and the debtor, and (2) the expense must have been 'actual and necessary' to preserve the estate.'" *In re Indianapolis Downs, LLC*, 486 B.R. 286, 301 (Bankr. D. Del. 2013) (*citing In re New Century TRS Holdings, Inc.*, 446 B.R. 656, 661 (Bankr.D.Del.2011)). The Third Circuit construes the concept of "necessary costs" to include expenses incurred in the ordinary operation of the business. *Penn Dept. of Envtl. Resources v. Tri-State Clinical Labs., Inc.*, 178 F.3d 685, 689 (3d. Cir. 1999) (*citing Reading Co. v. Brown*, 391 U.S. 471, 483 (1968)).

24. Section 503(b)(9) provides that "after notice and a hearing, there shall be allowed aministrative expenses…including the value of any goods received by the debtor within 20 days before the date of the commencement of a case under this title…". 11 U.S.C. §503(b)(9).

25. Courts have discretion to order the immediate payment of administrative claims. *See In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002) (*citing Matter of Baptist Medical Center of New York, Inc.*, 52 B.R. 417, 421 (Bankr. E.D.N.Y. 1985)). Courts look to a variety of factors in determining whether to order immediate payment, including (i) bankruptcy's goal of orderly and equal distribution among creditors, (ii) the particular needs of the administrative claimant, and (iii) the length and expense of the case's administration. *Id.* Courts use their discretion as to timing to "ensure the 'orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets,' especially if there is a doubt as to the administrative

4

solvency of the debtor overall." *In re King, 392 B.R. 62*, 68 (Bankr. S.D.N.Y. 2008) (*citing In re HQ Global Holdings, Inc.*, 282 B.R. at 173).

26. Here, the requirements of §§ 503(b)(1)(A) and 503(b)(9) are plainly met.

27. Additionally, there is no prejudice to the Debtors in requiring immediate payment of these administrative expenses.

28. Paragraph 8 of the Debtors' Admin. Claims Procedures Motion [D.I. 1962] says "[t]he Debtors intend to pay Post-Closing Administrative Expense Claims in the ordinary course…"

29. Creditor will suffer severe hardship if its administrative claims are not paid immediately.

30. Creditor is a furniture manufacturer with high overhead costs, including a relentless payroll.

31. If forced to wait indefinitely for payment of the administrative expense amounts, Creditor will suffer severe financial distress and disruptions in its ability to accept and fulfill future orders for the Debtor(s), any potential purchasers of the Debtors' businesses, and Creditor's other customers.

32. Delayed payment will also result in the loss of hourly positions for Creditor's manufacturing workers and is likely to also result in the loss of salaried positions as well.

33. Delay in receipt of $654,599.28 will require drastic adjustments to Creditor's labor expenses, and would cause significantly tightened cashflow.

34. Delay in payment to Creditor could also result in adverse consequences to Creditor under its existing financing arrangements, leaving it without necessary liquidity to continue operations.

35. In reliance on the Debtor(s), representations that they had the ability, authority, and intent to timely pay Creditor for administrative priority claims, Creditor therefore agreed to and did deliver $654,599.28 in goods.

36. These receivables are particularly large in proportion to the size of Creditor's business. Nonpayment or even a delay in payment presents an existential threat to Creditor's business.

37. The totality of the circumstances supports compelling the Debtor(s) to pay Creditor's administrative priority claims immediately, as further delay in payment will only prejudice Creditor, and there is no cognizable prejudice to the Debtor(s) or to the Debtor(s)' other creditors.

23. Accordingly, Creditor is entitled to entry of an Order pursuant to 11 U.S.C. §§ 503(b)(1)(A) and 503(b)(9) allowing its administrative expense claims in the aggregate amount of $654,599.28.

## CONCLUSION

WHEREFORE, Creditor respectfully requests that the Court enter an order pursuant to 11 U.S.C. §§ 503(b)(1)(A) and 503(b)(9) allowing its administrative expense claims in the aggregate amount of $654,599.28 and directing immediate payment thereof, and granting such other and further relief as this Court deems just and proper.

Dated: March 12, 2025

Respectfully submitted,

KASEN & KASEN, P.C.
*/s/ Jenny R. Kasen*
Jenny R. Kasen, Esquire (DE Bar No. 5849)
1213 N. King Street, Suite 2
Wilmington, DE 19801
Telephone: (302) 652-3300
Facsimile: (856) 424-7565
E-Mail: jkasen@kasenlaw.com

*Counsel to Creditor*