# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> BIG LOTS, INC., *et al.*, <br><br> Debtor(s). | Chapter 11 <br><br> Case No. 24-11967 (JKS) <br> Jointly Administered |

**DECLARATION IN SUPPORT OF HOMEVIEW DESIGN INC.'S MOTION FOR ALLOWANCE AND IMMEDIATE PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PURSUANT TO 11 U.S.C. §§ 503(b)(1)(A) AND 503(b)(9).**

Edmund Tong, of full age, hereby declares under penalty of perjury, as follows:

1. I make this declaration in support of *HomeView Design Inc.'s Motion for Allowance and Immediate Payment of Administrative Expense Claims, Pursuant to 11 U.S.C. §§ 503(b)(1)(A) and 503(b)(9)* (the "**Motion**").

2. I have personal knowledge of the factual averments set forth herein, and if called upon to do so, I could and would appear before the Court and competently testify to the truth thereof.

3. I am an owner and officer HomeView Design Inc. (the "**Creditor**").

4. As an owner and officer, I am responsible for managing customer accounts, including the customer accounts of the above-captioned Debtor(s).

5. On September 9, 2024 (the "**Petition Date**"), the above-captioned debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

6. The Debtor(s) are operating as debtors-in-possession. No trustee or examiner has been appointed.

7. On September 10, 2024, the Court entered an order authorizing the procedural joint administration of the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 1015(b). [Bankr. D.I. 95].

8. On December 31, 2024, the Court entered an amended bar date order [D.I. 1531], which establishes January 31, 2025 as a general bar date for pre-petition claims.

9. On February 7, 2025, the Debtors filed an Admin. Claims Procedures Motion [D.I. 1962], which in paragraph 8 said: "[t]he Debtors intend to pay Post-Closing Administrative Expense Claims in the ordinary course…"

10. On February 25, 2025, the Debtor filed an *Amended Pre-Closing Administrative Expense Claims Schedule* [D.I. 2082], which lists Creditor's claim for the post-petition and pre-closing period (9/9/24 petition date through 1/3/25 closing) in an incorrect amount of $85,784.

11. On February 27, 2025, the Court entered the Admin. Claims Procedures Order D.I. 2110], which establishes April 3, 2025 as a bar date for administrative claims incurred in the post-petition and pre-closing period (9/9/24 petition date through 1/3/25 closing).

12. In the 20 days leading up to the Petition Date (8/20/24 through the 9/9/24 Petition Date), Creditor supplied, and the Debtors received goods with a value of $3,778.00. See invoice no. 48333 attached hereto marked as **Exhibit A**.

13. Also, in the post-petition and pre-closing period (9/9/24 petition date through 1/3/25 closing), Creditor received purchase orders from the Debtor(s) and fulfilled those orders in the ordinary course of business – a total amount of $96,712.00 that the Debtor(s) have not paid. See invoice nos. 0048412, 0048413, 0048414, DLAX1670131484, DLAX1670131475, and DLAX1670131470 with corresponding proof of delivery attached hereto marked as **Exhibit B**.

14. Also, in the post-closing period (1/3/25 closing to date), Creditor received purchase orders from the Debtor(s) and did substantial work to fulfill those orders– a total amount of $554,109.28 that the Debtor(s) have not paid. See order nos. 95558537, 95558538, 95558539, 95643797, 95678063, 95696535, 95696536, 95696537, 95610243 attached hereto marked as **Exhibit C**.

15. The ordered goods are presently located in China, in a factory warehouse ready to be shipped.

16. Creditor has requested, but the Debtors have not given confirmation that they will accept shipment and pay for the goods.

17. Creditor *pro se* timely filed proofs of claim for these sums. See Claim No. 1246, 3864, and 6784 attached hereto marked as **Exhibit D**, **Exhibit E** and **Exhibit F**.

18. Between February 20, 2025 and February 27, 2025, Creditor reached out to Debtors, through counsel, several times, both via telephone and email, in a good faith attempt to: resolve the amounts and arrange for immediate payment of Creditor's administrative claims – namely: (i) Creditor's 503(b)(9) claim in the amount of $3,778.00; (ii) Creditor's 503(b)(1)(A) claim incurred in the post-petition and pre-closing period (9/9/24 petition date through 1/3/25 closing) in the amount of $96,712.00; and (iii) Creditor's 503(b)(1)(A) claim incurred in the post-closing period (1/3/25 closing to date) in the amount of $554,109.28. See emails between counsel attached hereto marked as **Exhibit G**.

19. To date, however, Debtors' counsel has not substantively responded.

20. The Debtor(s) owe Creditor an aggregate total of $654,599.28 on account of Creditors' administrative priority claims.

21. Creditor will suffer severe hardship if its administrative claims are not paid immediately.

22. Creditor is a furniture manufacturer with high overhead costs, including a relentless payroll.

23. If forced to wait indefinitely for payment of the administrative expense amounts, Creditor will suffer severe financial distress and disruptions in its ability to accept and fulfill future orders for the Debtor(s), any potential purchasers of the Debtors' businesses, and Creditor's other customers.

24. Delayed payment will also result in the loss of hourly positions for Creditor's manufacturing workers and is likely to also result in the loss of salaried positions as well.

25. Delay in receipt of $654,599.28 will require drastic adjustments to Creditor's labor expenses, and would cause significantly tightened cashflow.

26. Delay in payment to Creditor could also result in adverse consequences to Creditor under its existing financing arrangements, leaving it without necessary liquidity to continue operations.

27. In reliance on the Debtor(s), representations that they had the ability, authority, and intent to timely pay Creditor for administrative priority claims, Creditor therefore agreed to and did deliver $654,599.28 in goods.

28. These receivables are particularly large in proportion to the size of Creditor's business. Nonpayment or even a delay in payment presents an existential threat to Creditor's business.

5

Pursuant to 28 U.S.C. § 1746, I hereby certify, under penalty of perjury, that the foregoing statements made by me are true and correct. I am aware that if any of said statements are willfully false, I am subject to the penalties of perjury.

Dated: March 12, 2025                                     */s/ Edmund Tong*
                                                                                 EDMUND TONG