**EXHIBIT A**

# L E A S E

LANDLORD

AMERICAN PROPERTY INVESTORS VIII

and

TOYS "R" US, INC.

TENANT

DATED:

*November 13, 1978*

Demised Premises

AUBURN, MASSACHUSETTS

# Table of Contents

|  |  |  | Page |
|---|---|---|---|
| Preliminary Statement |  |  | 1 |
| Article | I. | Demise of Premises | 1 |
| Article | II. | Term | 2 |
| Article | III. | Rent | 3 |
| Article | IV. | Use | 8 |
| Article | V. | Improvements | 8 |
| Article | VI. | Alterations | 9 |
| Article | VII. | Repairs and Maintenance | 11 |
| Article | VIII. | Compliance with Law | 13 |
| Article | IX. | Utilities | 14 |
| Article | X. | Indemnity | 14 |
| Article | XI. | Insurance | 15 |
| Article | XII. | Damage or Destruction | 18 |
| Article | XIII. | Eminent Domain | 22 |
| Article | XIV. | Landlord's Covenants and Warranties | 28 |
| Article | XV. | Insolvency | 30 |
| Article | XVI. | Default | 31 |
| Article | XVII. | Waiver of Redemption | 35 |
| Article | XVIII. | Unavoidable Delays, Force Majeure | 35 |
| Article | XIX. | No Waiver | 36 |
| Article | XX. | Notices | 36 |
| Article | XXI. | Access | 37 |
| Article | XXII. | Signs | 38 |
| Article | XXIII. | Improvements and Fixtures | 38 |
| Article | XXIV. | End of Term | 39 |
| Article | XXV. | Holding Over | 39 |
| Article | XXVI. | Assignment and Subletting | 40 |
| Article | XXVII. | Fee Mortgages | 41 |
| Article | XXVIII. | Certificates | 42 |
| Article | XXIX. | Relationship of Parties | 43 |
| Article | XXX. | Limitation of Liability | 44 |
| Article | XXXI. | Recording | 44 |
| Article | XXXII. | Captions and Section Numbers | 45 |
| Article | XXXIII. | Applicable Law | 45 |
| Article | XXXIV. | Addenda | 45 |
| Article | XXXV. | Entire Agreement | 46 |
| Article | XXXVI. | Obligations Arising Prior to Date of Lease | 46 |
| Article | XXXVII. | Tenant's Option to Purchase | 46 |
| Testimonium and Signatures |  |  | 49 |
| Exhibit | A | Description of Demised Premises |  |
| Exhibit | B | Purchase Price Formula |  |

LEASE

THIS LEASE made and entered as of this _13th_ day of _November_ 1978, between AMERICAN PROPERTY INVESTORS VIII, a California Limited Partnership, having an office at 295 Madison Avenue, New York, New York ("Landlord") and TOYS "R" US, INC., a Delaware corporation having an office at 299 Market Street, Saddle Brook, New Jersey 07662 ("Tenant").

W I T N E S S E T H :

Preliminary Statement

Landlord is the owner of certain real property located in Auburn, Massachusetts, more particularly described in Exhibit A annexed hereto (the "Land"), together with a complete store unit containing approximately 43,000 square feet of floor space, plus a mezzanine (if any) and loading facilities (the "Toy Store") and related site improvements and facilities (the "Facilities"), (the Land, Toy Store and Facilities being hereinafter collectively referred to as the "Demised Premises"). Landlord desires to lease the Demised Premises to Tenant and Tenant desires to lease the Demised Premises from Landlord, on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the Demised Premises and the rents, covenants and conditions herein set forth, Landlord and Tenant do hereby covenant, promise and agree as follows:

ARTICLE I.   DEMISE OF PREMISES

Section 1.01.   Landlord does hereby demise unto Tenant, and Tenant does hereby take from Landlord, for the term hereinafter provided and any extensions thereof, the Demised Premises, for the exclusive right to the use thereof by Tenant, Tenant's employees, concessionaires, licensees, agents, customers and invitees.

1.

## ARTICLE II.   TERM

Section 2.01.   The term of this Lease shall commence on *Jan. 14*, 1978 (the "Commencement Date"), and shall end on the *31* day of *January*, *2012* subject to renewal as provided in Section 2.03 (the "Lease Term").

Section 2.02.   The term "Lease Year" is defined to mean twelve (12) consecutive calendar months; the first Lease Year to commence on the first day of February following the Commencement Date and each succeeding Lease Year to commence on the anniversary date of the first Lease Year.   Any portion of the Lease Term which is less than a Lease Year shall be deemed a "Partial Lease Year".

Section 2.03.   Tenant shall have the option to renew this Lease for four (4) consecutive five (5) year renewal periods, each commencing at the expiration of the then current Lease Term, pursuant to all of the terms, covenants and conditions of this Lease (except that Tenant shall not have the right to renew this Lease beyond the expiration of the fourth (4th) renewal term, as aforesaid).   In the event that Tenant shall desire to exercise the option or options herein granted, Tenant shall so advise Landlord by written notice no later than six (6) months prior to the expiration of the then existing Lease Term.   Landlord shall notify Tenant of the approach of the timeliness of Tenant's renewal option within the last year of the Lease Term and any renewal term and Tenant's right to notify Landlord of the exercise of its renewal option shall be extended for a period of six months from the receipt of such notice, but not later than the date of expiration of this Lease.   Any final cancellation or termination of this Lease shall terminate any right of renewal hereunder.

2.

## ARTICLE III.   RENT

Section 3.01. Rent Payment Obligation. Tenant shall pay to Landlord beginning with the Commencement Date and throughout the Lease Term, including any renewal terms provided for in Section 2.03, each of the sums denominated in this Article or elsewhere in this Lease as rent or additional rent, without prior demand therefor. As hereinafter used, the term "Rent" shall be deemed to include fixed rent and all additional sums of money payable by Tenant to Landlord as hereinafter provided in this Article ("Additional Rent"). All such Additional Rent shall constitute Rent payable hereunder with the same effect as if the same were part of the Fixed Rent defined and provided for herein and, in the event of the non-payment by Tenant of any such Additional Rent, Landlord shall have the same rights and remedies in respect thereof as Landlord has or shall or may have in respect of Fixed Rent, as hereinafter defined.

All payments of Rent shall be paid to Landlord in person or by mail at the Landlord's office indicated on the first page hereof or in person or mail to any other place designated by Landlord upon at least forty-five (45) days' prior written notice to Tenant. Rent for a partial month shall be prorated on a daily basis.

Section 3.02. Fixed Rent. Tenant shall pay to Landlord, without prior demand, fixed rent ("Fixed Rent") at an annual rate of (a) Sixty-Six Thousand Five Hundred Ninety-Six ($66,596) Dollars in equal monthly installments in arrears in the amount of Five Thousand Five Hundred Forty-Nine and 67/100 ($5,549.67) Dollars for the first year of the term and (b) at an annual rate of One Hundred Eight Thousand Eight Hundred Ninety-Eight ($108,898) Dollars in equal monthly installments in arrears in the amount of Nine Thousand Seventy-Four and 83/100 ($9,074.83) Dollars for the balance of the Lease Term and any renewal periods.

Section 3.03. Real Estate Tax Obligation. Tenant shall pay, as Additional Rent, all "Real Estate Taxes" (as hereinafter defined) affecting the Demised Premises accruing during the Lease Term which Landlord is obligated to pay ("Tax Rent").

For purposes of this Lease, the term "Real Estate Taxes" shall mean all regular taxes, special and general assessments, which are imposed by any governmental authority having jurisdiction over the Demised Premises and which are measured by the value of real property and assessed on a uniform basis against the owners of real property, including any substitution in whole or in part therefor due to a future change in the method of taxation. Nothing contained in this Lease, however, shall require the Tenant to pay any estate, inheritance, succession, capital levy, corporate franchise, transfer or income tax of Landlord, nor shall any of the same be deemed Real Estate Taxes, unless the same shall be specifically imposed in substitution for or in lieu of Real Estate Taxes, and then only to the extent the same are limited to the Demised Premises as if it were the only property owned by the Landlord. If by law any general assessment or like charge may be paid in installments, then subject to the provisions of the Institutional Fee Mortgage, such assessment shall be so paid and Tenant shall only be liable for the portion thereof that is payable within the Lease Term.

Tenant shall pay the Tax Rent directly to the taxing authorities before any fine, penalty, interest or cost may be added thereto, or become due or be imposed by operation of law for the nonpayment or late payment thereof. Tenant shall so pay the Tax Rent after either (i) receipt by Tenant of a Real Estate Tax bill which had been sent to Landlord by the taxing authority and forwarded by

4.

Landlord to Tenant or (ii) receipt by Tenant of a Real Estate Tax bill sent directly to Tenant by the taxing authority. Tenant is hereby authorized by Landlord to request from any taxing authority having jurisdiction over the Demised Premises, that any and all Real Estate Tax bills be sent directly to Tenant. Tenant's liability to pay Tax Rent shall be prorated on the basis of a 365-day year for any tax fiscal year included in the Lease Term at its commencement or expiration. Tenant shall furnish to Landlord official receipts of the appropriate taxing authority, evidencing the payment of Tax Rent on request.

If Landlord is required by an institutional lender (i.e., a bank, savings association, insurance company or pension fund) holding a first mortgage lien on the Demised Premises ("Institutional Fee Mortgage") to make monthly or other periodic deposits of monies for the payment of Real Estate Tax in what is commonly referred to as an escrow account for such purposes, Tenant, on notice from Landlord indicating such requirements, shall pay Tax Rent to Landlord or such mortgage holder's designee on a periodic basis in accordance with such mortgagee's reasonable requirements. Landlord shall cause copies of the receipted tax bills to be forwarded to Tenant within a reasonable period after payment thereof. If the total amount deposited by Tenant on account of Real Estate Taxes for any Lease Year during the Lease Term shall be less than the actual amount due from Tenant for such Lease Year, Tenant shall pay to Landlord or such mortgagee's designee the difference between the amount paid by Tenant and the actual amount due, exclusive of interest or penalties from Tenant for such Lease Year, such deficiency to be paid within ten (10) days after demand therefor by Landlord accompanied by the Real Estate Tax bills in question and an accurate explanation of the difference; and if the total amount so deposited by Tenant on account of Real Estate Taxes for any such Lease Year shall exceed the actual amount due from Tenant, such excess shall be promptly refunded to Tenant or credited by Tenant against the next deposits of Real Estate Taxes due from Tenant hereunder if not repaid prior to their due date.

5.

Tenant shall have the right, at its cost and expense, to contest the amount or validity, in whole or in part, of any Real Estate Taxes by appropriate proceedings diligently conducted in good faith, but no such contest shall be carried on or maintained by Tenant after the time limit for the payment of any Real Estate Taxes unless the Tenant, at its option:  (i) shall pay the amount involved under protest; or (ii) shall procure and maintain a stay of all proceedings to enforce any collection of any Real Estate Taxes, together with all penalties, interest, costs and expenses, by a deposit of a sufficient sum of money, or by such undertaking, as may be required or permitted by law to accomplish such stay; or (iii) shall deposit with Landlord or the Institutional Fee Mortgagee, as security for the performance by the Tenant of its obligations here-under with respect to such Real Estate Taxes, such security in amounts equal to such contested amount or such reasonable security as may be demanded by the Landlord or the Institutional Fee Mortga-gee to insure payment of such contested Real Estate Taxes and all penalties, interest, costs and expenses which may accrue during the period of the contest which sums shall be deposited in an interest bearing account.  Upon the termination of any such proceedings, it shall be the obligation of Tenant to pay the amount of such Real Estate Taxes or part thereof, as finally determined in such proceedings, the payment of which may have been deferred during the prosecution of such proceedings, together with any costs, fees (in-cluding counsel fees), interest, penalties or other liabilities in connection therewith, with access to said funds to be applied toward payment of said obligations.  After payment of all of the contested items plus cost, fees, interest, penalty and any liability as aforesaid if any the Landlord or the Institutional Fee Mortgagee shall return to the Tenant the balance of the security deposited, if any, which was deposited by the Tenant in accordance with the provisions hereof.

6.

Tenant shall have the right to seek a reduction in the valuation of the Demised Premises assessed for Real Estate Tax purposes. To the extent to which any Real Estate Tax refund payable as a result of any of the aforesaid proceedings which Tenant may institute, or payable by reason of compromise or settlement of any such proceeding, may be based upon a payment made by Tenant, Tenant shall be authorized to collect the same, or the proportion thereof which Tenant shall have paid, subject to Tenant's obligation to reimburse Landlord forthwith for any expenses and fees incurred by Landlord in connection therewith. In addition, Tenant shall be entitled to any refund (after deducting therefrom all expenses incurred by Landlord in connection therewith) of any Real Estate Taxes and penalties or interest thereon received by Landlord, whether or not such refund was a result of proceedings by Tenant, which have been paid by Tenant, or paid by Landlord for the benefit of Tenant and repaid to Landlord by Tenant. In the event Tenant's share of any such refund has not been paid by Landlord to Tenant within thirty (30) days after payment thereof to Landlord, Tenant may upon ten (10) days' notice in writing to Landlord deduct the amount of such refund from the next accruing payments of Rent due hereunder.

In any instance where any such action or proceeding is being undertaken by Tenant, Landlord shall cooperate with Tenant, execute any and all documents required in connection therewith and, if required by any law, rule or regulation, shall join with Tenant in the prosecution thereof.

7.

## ARTICLE IV.   USE

**Section 4.01.**   Tenant may use and occupy the Demised Premises for the retail sale of toys, juvenile furniture, pools, outdoor play equipment, wheel goods, layettes and health and beauty aids, furnishings, clothing, books, records, candy, sporting goods and any other items then customarily carried in a modern toy store, and for any other legal use.

## ARTICLE V.   IMPROVEMENTS

**Section 5.01.**   The Demised Premises consist of the Land, together with the Toy Store and "Facilities" consisting of lighting, landscaping, sidewalks, ingress and egress driveways, aisles, service driveways, streets, curbcuts, parking area and other related improvements erected thereon (the Toy Store and Facilities shall be collectively referred to herein as the "Improvements").   The described premises leased hereunder, together with all appurtenances thereto, and the Improvements thereon collectively referred to herein as the "Demised Premises", are demised and let subject to (a) the existing state of the title thereof as of the commencement of the term of this Lease, (b) any state of facts which an accurate survey or physical inspection thereof might show, (c) all zoning regulations, restrictions, rules and ordinances, building restrictions and other laws and regulations now in effect or hereafter adopted by any governmental authority having jurisdiction, and (d) with respect to the Improvements, in their condition as of the commencement of the term of this Lease, all without representation or warranty by Landlord.

8.

Section 5.02. Tenant represents to Landlord that Tenant has examined the title to and the physical condition of the Demised Premises prior to the execution and delivery of this Lease and has found the same to be satisfactory for all purposes hereof, and Tenant accepts the title and condition of the Demised Premises in their respective, present condition "as is". Landlord makes no representation or warranty with respect to the condition of the Demised Premises or its fitness or availability for any particular use and Landlord shall not be liable for any latent or patent defect therein.

## ARTICLE VI.   ALTERATIONS

Section 6.01. During the Lease Term, Tenant shall have the right to make changes, alterations, expansions or additions to the Improvements or additional structures or improvements to the real property ("Alterations"), provided that no Alterations are made which, after completion, would (a) reduce the size of the Toy Store building or (b) materially and adversely affect the structural integrity of the Toy Store or (c) reduce the market value of the Demised Premises, except to the extent required by governmental authorities, without Landlord's prior written approval. If Tenant desires to make an Alteration which requires Landlord's approval, such approval shall not be unreasonably withheld or/delayed. Any Alterations that Tenant has a right to make, and any Alterations that Landlord has approved, shall be made at Tenant's cost and expense, and in making any such Alterations Tenant shall comply with the following conditions:

9.

(a)  No Alterations shall be undertaken until Tenant or Tenant's designee shall have procured and paid for, so far as the same may be required, all necessary permits and authorizations of all municipal departments and governmental subdivisions having jurisdiction.  Landlord shall join in the application for such permits or authorizations promptly upon request wherever necessary.

(b)  Any Alterations affecting the structure of the Toy Store shall be performed under the supervision of a licensed architect and/or engineer employed or selected by Tenant.  No Alterations affecting the structure of the Toy Store shall be made except in accordance with plans and specifications prepared and approved in writing by such architect and/or engineer.

(c)  Before commencing any Alterations, Tenant at its own expense shall provide any necessary appropriate riders for fire and extended coverage, and comprehensive general public liability and property damage insurance covering the risks during the course of such work and certificates showing that necessary Workmen's Compensation and Employers' Liability Insurance has been taken out to protect all employees engaged in the work during the course of such Alterations.

(d)  Any Alterations shall be made promptly (unavoidable delays excepted), in a good and workmanlike manner and in compliance with all applicable permits, authorizations, building codes, zoning laws, and all other laws, ordinances, orders, rules, regulations and requirements of all governmental departments having jurisdiction, and of local Board of Fire Underwriters, and upon completion Tenant or its designee shall obtain and deliver to Landlord and any Institutional Fee Mortgagee an amended Certificate of Occupancy, if required.

10.

(e)   The cost of any Alterations shall be promptly paid by Tenant or its designee so that the Demised Premises at all times shall be free of liens for labor and materials supplied or claimed to have been supplied to the Demised Premises.  If any lien shall be filed with respect to the Demised Premises as a result of work performed by or on behalf of Tenant, Tenant shall cause such lien to be removed within 15 days of notice by Landlord.

Section 6.02.   All materialmen, contractors, artisans, mechanics, laborers and any other persons now or hereafter furnishing any labor, services, materials, supplies, or equipment to Tenant or its designee with respect to any portion of the Leased Premises, are hereby charged with notice that they must look exclusively to Tenant or its designee to obtain payment for same. Notice is hereby given that the Landlord shall not be liable for any labor, services, materials, supplies or equipment furnished or to be furnished to the Tenant or its designee upon credit, and that no mechanic's or other lien for any such labor, services, materials, supplies or equipment shall attach to or affect the reversion or other estate or interest of the Landlord in and to the Demised Premises.

ARTICLE VII.   REPAIRS AND MAINTENANCE

Section 7.01.   Throughout the Lease Term, Tenant at its sole cost and expense, shall maintain the Improvements in good order and condition and shall make any necessary repairs thereto, interior and exterior, structural and non-structural, foundation and roof, whether extraordinary, foreseen or unforeseen. When used in this Article VII, the term "repairs" shall include all such necessary replacements, renewals, alterations, additions and

11.

betterments necessary for Tenant to properly operate its business therein.   All repairs made by Tenant shall be generally equal in quality and class to the then condition of the original work.   The necessity for and adequacy of repairs to the Improvements pursuant to this Article VII shall be measured by the standard by which buildings and related facilities of similar construction and class are generally maintained, provided that Tenant shall at all times make any and all repairs necessary to avoid any structural damage or injury thereto.

Section 7.02.   Landlord assigns to Tenant all assignable contractors' and manufacturers' warranties relating to the construction, labor, materials and equipment performed or installed on the Demised Premises which may run to Landlord.   Landlord further hereby assigns any rights it may have involving any warranties or guarantees implied by law.   Tenant shall have full responsibility and shall bear the total cost and expense of enforcement of prosecution of said warranties or guarantees whether expressed or implied (except as otherwise set forth herein), except that Landlord shall at Tenant's request from time to time execute such instruments as may be reasonably required to enforce such warranties and guarantees.

12.

ARTICLE VIII.   COMPLIANCE WITH LAW

Section 8.01.   Tenant shall, throughout the Lease Term, at its sole cost and expense, comply with laws and regulations of federal, state, municipal and local governments, departments, commissions and boards pursuant to law, and the orders, rules and regulations of the local Board of Fire Underwriters or any similar body exercising similar functions, which shall impose any notice of violation, order or duty upon Tenant or Landlord with respect to the Demised Premises.

Section 8.02.   Tenant may contest and appeal any law, ordinance, order, rule, regulation or requirement affecting the Demised Premises, provided same is done with all reasonable promptness and provided such appeal shall not subject Landlord to imminent prosecution for criminal offense.   Tenant shall pay all costs, expenses, fines, penalties or damages which may be imposed upon Landlord by reason of Tenant's failure to comply with the provisions of this Section.

Section 8.03.   Except as provided in Section 13.02(b) of this Lease, no abatement, diminution or reduction in Fixed Rent, Additional Rent or any other charges required to be paid by Tenant pursuant hereto shall be claimed by or allowed to Tenant for any inconvenience or interruption, cessation, or loss of business caused directly or indirectly, by any present or future laws, ordinances, rules, regulations, requirements or orders of the Federal, State, county, township or municipal governments or any other lawful authority whatsoever, or by priorities, rationing or curtailment of labor or materials, or by war, civil commotion,

13.

strikes or riots, or any manner or thing resulting therefrom, or by any other cause or causes beyond the control of Landlord or Tenant, nor shall this Lease be affected by any such causes.

## ARTICLE IX.  UTILITIES

Section 9.01.  Tenant shall be solely responsible for and shall promptly pay the cost of all utilities consumed on the Demised Premises by Tenant throughout the Lease Term, including, but not limited to, charges for electricity, water, fuel, and for steam and gas service, if any.

## ARTICLE X.  INDEMNITY

Section 10.01.  Tenant covenants to indemnify Landlord and save Landlord harmless (except for loss or damage resulting from the negligence of Landlord, its agents or employees) from and against any and all claims, actions, damages, liability and expense, including reasonable attorneys' fees, in connection with loss of life, personal injury and/or damage to property arising from or out of any occurrence, in or upon the Demised Premises or any part thereof, or occasioned wholly or in part by any act or omission of Tenant, its agents, contractors, employees, servants, or licensees therein.  In case Landlord shall be made a party to any litigation commenced by or against Tenant with respect to the Demised Premises, then Tenant shall protect and hold Landlord harmless and shall pay or cause to be paid all costs, expenses and reasonable attorneys' fees incurred by Landlord in connection with such litigation.

14.

ARTICLE XI.    INSURANCE

Section 11.01. Commencing with the Tenant entering into possession of the Demised Premises and throughout the Lease Term, Tenant shall cause to be maintained:

(a) Comprehensive general public liability insurance against claims for bodily injury, death or property damage occurring on, in or about the Demised Premises, such insurance to afford minimum protection, during the Lease Term, of not less than $1,000,000 in respect of bodily injury or death to any one person, and of not less than $3,000,000 in respect of any one accident, and of not less than $100,000 for property damage;

(b) Casualty insurance against loss or damage by fire and such other risks to the Toy Store as are included in so-called "extended coverage" endorsements (with provisions for a deductible of not more than $50,000) in an amount sufficient to prevent Tenant from being a co-insurer within the terms of the policy or policies in question and in no event for less than 95% of the replacement value of the Toy Store, and a provision requiring not more than 80% co-insurance, exclusive of the cost of foundations, excavations and footings, without any deduction being made for depreciation, such replacement value shall be reevaluated from time to time, but not more frequently than once in any thirty-six (36) consecutive calendar months, at the request of Landlord or Tenant, or an Institutional Fee Mortgagee, by one of the insurers or, if not so obtainable, by an appraiser, architect or contractor selected by the parties.

15.

Section 11.02.   All insurance provided for in this Article shall be effected under policies issued by insurers which are licensed to do business in the State and are acceptably rated by national rating organizations.   Upon the Tenant taking possession of the Demised Premises, and thereafter not less than fifteen (15) days prior to the expiration dates of the expiring policies there-tofore furnished pursuant to this Article, Tenant shall on request provide to Landlord originals or true copies or certificates of the policies bearing notations evidencing the payment of premiums or accompanied by other evidence reasonably satisfactory to Landlord of such payments.

Section 11.03.   Tenant shall generally conform to the conditions or provisions of any policy provided for in Section 11.01 and shall comply with the legitimate and customary require-ments of the companies writing such policies and of the Board of Fire Underwriters pertinent to the conduct of Tenant's business in the Demised Premises.   Tenant may contest any provisions thereof and Landlord shall cooperate in Tenant's efforts in connection therewith but not in any event or manner which would result in the cancellation of such policy.

Section 11.04.   All policies of insurance provided for under this Article shall name Landlord and Tenant as an insured as their interests may appear and any Institutional Fee Mortgagee, and any other fee mortgagee of which Tenant has received notice, pur-suant to a standard mortgagee clause, subject in all respects to the terms of this Lease.   All such policies shall provide that the loss, if any thereunder, shall be adjusted by Landlord and Tenant

16.

but subject to the provisions of this Article XII be made payable to any Institutional Fee Mortgagee to be disbursed in accordance with the provisions of said Article XII.   It shall be no objection to any policy furnished by Tenant hereunder that the same shall have been obtained by and name a subtenant as an insured, provided the loss insured thereby is made payable as herein provided.

Each such policy shall contain (if obtainable) a provision that no act or omission of Tenant shall affect or limit the obligation of the insurance company to pay the amount of any loss sustained and an agreement by the insurer that such policy shall not be cancelled without at least ten (10) days' prior written notice to Landlord and to any party holding a first mortgage lien on the Demised Premises.

Section 11.05.   Upon the expiration or sooner termination of this Lease, the unearned premiums upon any transferable insurance policies, if any, lodged with Landlord or Landlord's mortgagee shall be apportioned and paid to Tenant.

Section 11.06.   Any insurance provided for in this Article may be effected by a policy or policies of insurance, or under so-called "all risk" or "multi-peril" insurance policies, provided that the amount of the total insurance covering the Demised Premises shall be such as to furnish in protection the equivalent of separate policies in the amounts herein required, and provided further that in all other respects, any such policy or policies shall comply with the other provisions of this Lease.   An increased coverage or "umbrella policy" may be provided and utilized by Tenant to increase the coverage provided by individual

17.

or blanket policies in lower amounts and the aggregate limits provided by all such policies covering the Demised Premises and Tenant's liability hereunder shall be satisfactory provided they comply with the provisions of this Article.  In any such case, it shall not be necessary to deliver the original of any such blanket policy to the Landlord, but Landlord shall be furnished with a certificate or duplicate of such policy reasonably acceptable to Landlord upon request.

Section 11.07.  As to any loss or damage which may occur upon the property of a party hereto and be collected under any insurance policy(ies), such party hereby releases the other from any and all liability for such loss or damage to the extent of such amounts collected.

ARTICLE XII.  DAMAGE OR DESTRUCTION

Section 12.01.  If, at any time during the Lease Term, the Improvements or any part thereof shall be damaged or destroyed by fire or other casualty of any kind or nature, ordinary or extra-ordinary, foreseen or unforeseen (except as provided in Section 12.03), Tenant shall proceed with reasonable diligence (subject to reasonable time allowance for the purpose of adjusting the insurance loss and for unavoidable delay) to repair, relace or re-build the Improvements as nearly as possible to its condition and character immediately prior to such damage or destruction with such variations and alterations, however, as may be permitted under Ar-ticle VI ("Restoration Work").  In the event that any insurance proceeds are insufficient to pay the cost of the Restoration Work, Tenant shall provide the deficiency without reimbursement by Land-lord.

18.

Section 12.02. All proceeds payable and received at any time, or from time to time, as a result of casualty to the Improvements shall be payable in trust for the repair, restoration and rebuilding of the Improvements, except as may be otherwise expressly provided herein.

In the event of a casualty to the Improvements in which the proceeds of the insurance award do not exceed $50,000, such proceeds shall be payable directly to Tenant, in trust, to be applied for the Restoration Work. Such funds shall be used only for such purposes until the Restoration Work is completed and any excess proceeds shall be retained by Tenant.

In the event that the insurance proceeds of any casualty exceed the sum of $50,000, such proceeds shall be deposited in a bank or banks designated by the Institutional Fee Mortgagee, if any, otherwise by Landlord and Tenant, in trust, for the purpose of paying the cost of the Restoration Work. The proceeds of insurance shall be disbursed from such account from time to time in progress payments proportionate to the percentage of completion of the Restoration Work and on terms as may be customary for advances under institutionally financed mortgage building loans, without retainage provisions. Any excess proceeds, subject to the rights of any Institutional Fee Mortgagee, shall be retained by the Tenant. Notwithstanding the foregoing, no proceeds may be used for any other purpose unless and until the Restoration Work has been completed and paid in full.

19.

Landlord shall cooperate fully with Tenant in order to obtain the largest possible recovery and execute any and all consents and other instruemtns and take all other actions necessary or desirable in order to effectuate the same and to cause such proceeds to be paid as hereinbefore provided and Landlord shall not carry any insurance concurrent in coverage and contributing in the by Tenant hereunder if the effect of such separate insurance would be to reduce the protection or the payment to be made under Tenant's insurance.

Section 12.03.    If  the  Improvements  shall  be substantially damaged or destroyed in whole or in part (in excess of 33-1/3% of the replacement cost thereof) by fire or other casualty at any time during the last three years of the Lease Term or any renewal term:

(a) Tenant may elect to terminate this Lease by serving upon Landlord at any time within 120 days after the date on which such damage or destruction occurred, written notice of Tenant's election to so terminate effective at the end of the calendar month next following the month in which such notice shall have been so given. Tenant shall pay to Landlord, concurrently with the service of such notice, $25,000 plus an amount equal to the Fixed Rent and the then ascertainable Additional Rent (including, but not limited to, Taxes) payable under this Lease to the date of such termination.

(b) With respect to any items of Additional Rent which are payable to Landlord in the event of such termination but which

20.

are not then capable of ascertainment, Tenant covenants and agrees to pay to Landlord an amount equal to such Additional Rent as and when the same becomes determined, or in case any such item of Additional Rent shall relate to Real Estate Taxes, Tenant covenants and agrees to pay Landlord the amount or amounts thereof as and when the same become due and payable. If, as a result of any action or proceeding to obtain a reduction of Real Estate Taxes, Tenant shall be entitled to a refund, the amount of such refund (less the cost and expense of collection including reasonable attorneys' fees) when collected by Landlord shall be paid by Landlord to Tenant. The covenants and agreements with respect to the adjustment and payment of these items of Additional Rent shall survive the then termination of this Lease.

(c) In the event this Lease shall be terminated pursuant to the provisions of this Section, the proceeds collected under any policy or policies of casualty insurance referred to in Article XI shall, to the extent required under any Institutional Fee Mortgage, be first paid to the holder of such mortgage, then Landlord shall receive the balance of the insurance proceeds payable with respect to the damage to the Toy Store and Facilities located on the premises.

21.

**Section 12.04.** Tenant shall not take out separate insurance concurrent in form or contributing in the event of loss with that required to be furnished by Tenant under Articles XI and III of this Lease, which would cause a reduction in proceeds payable under Section XII by the insurers, unless Landlord, and with respect to insurance described in Section XII, any mortgagees designated by Landlord, are included therein as named insureds, with loss payable as in said Articles provided. Tenant shall immediately notify Landlord whenever any such separate insurance is taken out and shall deliver to Landlord duplicate original(s) thereof, or original certificate(s) evidencing the same with true copies thereof, as provided in this Lease.

**Section 12.05.** The obligation to pay the Rent provided for herein and to otherwise perform Tenant's obligations hereunder shall continue unabated by reason of such damage or destruction; that is, there shall be no abatement or diminution of rent or release from any of Tenant's obligations hereunder by reason of such damage or destruction regardless of the period of time, if any, during which the Demised Premises, or any part thereof remain untenantable, any laws to the contrary notwithstanding.

## ARTICLE XIII.    EMINENT DOMAIN

**Section 13.01.** If the whole of the Demised Premises shall be taken for any public or quasi-public use under any statute or by right of eminent domain or by private purchase in lieu thereof, then this Lease shall automatically terminate as of the date that possession has been taken.

22.

Section 13.02.    (a)    In the event that title to less than substantially all of the Demised Premises shall be so taken, Tenant may elect to terminate this Lease, subject to the provisions of this Article if,

(i) by reason of the taking, the ground, floor area of the Toy Store shall be reduced to less than 85% of the gross square footage contained within said Store prior to said taking;

(ii) by reason of the taking of so much of the Demised Premises which consists of parking areas thereof as would reduce the available useable parking spaces in the parking area to less than 85% of that existing prior to the taking;

(iii) by reason of the taking reasonable means of ingress to and/or egress from the Demised Premises or Tenant's ability to use the Premises are eliminated.

(b)    In the event that Tenant elects by reason of the events set forth in (a) to terminate the Lease, Tenant shall give written notice of such election within ninety (90) days after the date of such taking, and, upon the date given in such notice of election to terminate (which date shall not be less than 120 days from said notice), subject to the provisions of Section 13.03 hereof, the term of this Lease shall expire as indicated with the same force and effect as if the date herein set forth for its expiration had been the date originally fixed in this Lease as the expiration date of the term of this Lease.  Upon such termination, the rental shall be adjusted to the date of termination and neither party shall have any further rights or liabilities hereunder.

23.

<u>Section 13.03</u>.    (a)    In the event that Tenant elects to terminate the Lease by reason of the events set forth in Section 13.01 or 13.02 by such complete taking or by the giving of notice pursuant to (b) thereof, Tenant shall thereby be deemed to have made an irrevocable offer (the "Offer") to purchase the Landlord's interest in the Demised Premises and the Award on the termination date provided for in such notice, at a price determined in accordance with Exhibit B hereof (the "Purchase Price").

Notwithstanding the foregoing, in the event that the Lease shall terminate pursuant to this Article 13 during any renewal term provided for in Article 2 hereof, the provisions of this subsection shall be inapplicable and of no force and effect.

(b) If Landlord shall reject the Offer by notice given to Tenant not later than the 10th day prior to the date the Lease would terminate as a result of Tenant's notice of its election to terminate the Lease (which rejection shall be accompanied by the written consent of the holder of any fee, mortgages or deeds of trust affecting the Premises), except with respect to obligations and liabilities of Tenant under the Lease which have arisen on or prior to such termination date, this Lease shall terminate on such termination date upon payment by Tenant of all installments of Rent and all other sums then due and payable under the Lease up to and including such termination date.

(c) If Landlord shall not have rejected the Offer as provided in subsection (b) above, or if Landlord makes such rejection without the consent (if required) of any Mortgagees, then Tenant shall forthwith give notice thereof to Landlord, and if such

24.

rejection is not made and/or such consent is not given, as the case may be, within 120 days after Landlord's receipt of such notice from Tenant, then Landlord shall be conclusively presumed to have accepted the Offer, and on such termination date (the "Closing Date") Landlord shall transfer and convey the remaining portion of the Demised Premises, if any, to Tenant or its designee and Landlord shall assign to Tenant or its designee all its right, title and interest in and to the aggregate net award, after deducting all expenses and costs including attorneys' fees theretofore incurred in connection therewith (the "Net Award") (whether or not such Net Award or any part thereof shall have been received by Landlord), against payment by Tenant of the Purchase Price therefor with all installments of Rent and all other sums then due and payable under the Lease up to and including such Closing Date.  In the event of the termination of the Lease pursuant to Section 13.02 and, if Tenant shall have purchased the Demised Premises pursuant to this Section 13.03 (c), Tenant or its designee shall be entitled to the Net Award payable in connection with such taking.

Section 13.04.  In the event of a taking and termination of the Lease pursuant to Section 13.01 or 13.02 and Landlord rejects Tenant's offer to purchase the Landlord's interest in the Demised Premises then the Award shall be paid to Landlord and distributed as follows:

(a) The Award shall be paid to an Institutional Fee Mortgagee to the extent of the then unpaid principal amount of such mortgage, plus accrued interest.

25.

(b)   Then, the portion of the Award, if any, remaining after such payments to the holders of any Institutional Fee Mortgages pursuant to subparagraph (a) of this Section 13.03, shall be payable to Landlord to the extent that the Purchase Price as defined in Section 13.03 exceeds the amount paid to the Institutional Fee Mortgagee under subparagraph (a) of this Section 13.03.

(c)   Then a portion of the Award, if any, shall be paid to Landlord in an amount equal to the cost of restoration of the Toy Store and Facilities on the Demised Premises.

(d)   Then a portion of the balance of the Award, if any, equal to the amortized cost of any additional improvements made by the Tenant to the Premises shall be paid to the Tenant.

(e)   Then the balance of the Award, if any, shall be shared by Landlord and Tenant, equally.

Section 13.05.   In the event of a partial taking (or purchase in lieu thereof) not resulting in the termination of this Lease:

(a)   Tenant shall, at its own cost and expense, with full recourse to the proceeds of any award for such purposes as hereinafter provided (notwithstanding however any deficiency in the amount of such proceeds), make all repairs to the Improvements affected by such taking (or purchase in lieu thereof) to the extent necessary to restore the Toy Store to a complete architectural unit (to the extent permitted, however, taking into consideration the amount of land remaining after such taking (or purchase in lieu thereof) and with such variations permitted in Article VI).

26.

(b)   All compensation available or paid to Landlord and Tenant upon such a partial taking (or purchase in lieu thereof) shall be paid to Tenant for application towards the cost of such restoration, or, in the event that the parties hereto agree that only a portion thereof is sufficient to so restore, then only such portion as agreed upon, shall be paid to Tenant for such purpose and the balance shall be distributed pursuant to Section 13.04.

(c)   All compensation for any temporary taking shall be distributed to Tenant without participation by Landlord.

(d)   In the event of a partial taking which shall not result in the termination of this Lease, the Rent payable hereunder shall, from and after the date of physical taking, be reduced by an amount equal to 9.9% of the amount of the Net Award retained by Landlord or its mortgagee, if any.

(e)   Tenant shall be entitled to claim, prove and receive in any condemnation proceeding such awards as may be allowed for trade fixtures or for loss of business, "good will", depreciation or injury to and cost of removal of stock in trade.   Tenant shall not, however, be entitled to any part of the Award as compensation for the loss of its leasehold interest in the Demised Premises except as expressly provided herein.

(f)   In the event that the proceeds of any Award are insufficient to pay the cost of Restoration Work, Tenant shall provide the deficiency without reimbursement by Landlord.

27.

ARTICLE XIV.   LANDLORD'S COVENANTS
AND WARRANTIES

Section 14.01.   Landlord represents to Tenant that Landlord has the right and lawful authority to enter into this Lease and perform any of Landlord's obligations hereunder.  Tenant shall have and enjoy, during the term hereof, the quiet and un- disturbed possession and use of the Demised Premises and all appur- tenances appertaining thereto, as contemplated in this Lease, pro- vided Tenant pays the rent it is obligated hereunder to pay within any notice and grace provisions, if any, and observes all other terms, covenants and conditions hereof, subject however, to all the terms of this Lease.   No failure by Landlord to comply with the foregoing covenant shall give Tenant any right to cancel or terminate this Lease or to abate, reduce or make any deduction from or offset against any rent or any other sum payable under this Lease, or to fail to perform any other obligations of Tenant hereunder prior to a final adjudication that there has been such a breach of this covenant.

Section 14.02.   This is an absolute net lease, and, except as otherwise specifically provided in Articles XII and XIII hereof (a) this Lease shall not terminate nor shall Tenant have any right to terminate this Lease;  (b) Tenant shall not be entitled to any abatement, deduction, deferment, suspension or reduction of, or set-off, defense or counterclaim against, any rentals, charges, or other sums payable by Tenant under this Lease except as may herein be set forth in Section 14.01;  (c) the respective obligations of Landlord and Tenant shall not be otherwise affected by (i) reason of damage to or destruction of the Demised Premises from whatever

28.

cause, (ii) any taking by condemnation, eminent domain or by agreement between Landlord and those authorized to exercise such rights, or (iii) the lawful or unlawful prohibition of Tenant's use of the Demised Premises or, (iv) the interference with Tenant's use of the Demised Premises by any persons, corporations or other entities other than Landlord, or (v) any eviction by paramount title, or (vi) Tenant's acquisition of ownership of the Demised Premises otherwise than pursuant to an express provision of this Lease, or (vii) any default by Landlord under this Lease or any other agreement between Landlord and Tenant, or to which Landlord and Tenant are parties, or (viii) any other cause whether similar or dissimilar to the foregoing, any present or future law to the contrary notwithstanding; it being the intention that the obligations of Landlord and Tenant hereunder shall be separate and independent covenants and agreements and that the Fixed Rent, Additional Rent and all other charges and sums payable by Tenant hereunder shall continue to be payable in all events unless the obligations to pay the same shall be terminated pursuant to the express provisions of this Lease; and Tenant covenants and agrees that it will remain obligated under this Lease in accordance with its terms, and that it will not take any action to terminate, cancel, rescind or avoid this Lease, notwithstanding the bankruptcy, insolvency, reorganization, composition, readjustment, liquidation, dissolution, winding up or other proceedings affecting Landlord or any assignee of, or successor to, Landlord, and notwithstanding any action with respect to this Lease that may be taken by a trustee or receiver of Landlord or any assignee of, or successor to, Landlord or by any court in any such proceeding.

29.

ARTICLE XV.   INSOLVENCY

Section 15.01.   If at any time during the Lease Term, proceedings in bankruptcy shall be instituted by, or against, Tenant, and result in an adjudication of bankruptcy, or if Tenant shall file, or any creditor or other person shall file, any Petition in Bankruptcy under the Bankruptcy Act of the United States of America which shall be judicially approved, or if a Receiver of the business or assets of Tenant shall be appointed and if such filing or appointment be not withdrawn, discharged or vacated within sixty (60) days thereafter, or if a general assignment is made by Tenant for the benefit of creditors, or any sheriff, marshall, constable or other duly constituted public official takes possession of the Demised Premises by authority of any attachment or execution proceedings, and offers the same for sale publicly, Landlord may, at its option in either or any of such events, on thirty (30) days' written notice to Tenant, immediately recapture and take possession of the Demised Premises and terminate this Lease pursuant to process of law. On any such termination, all installments of Rent, owing for the then unexpired term of the Lease less the then market value rental of the Demised Premises and discounted for present value at a rate of 7% per annum shall become at once due and payable.

Notwithstanding the foregoing, for so long as Tenant or its assignee or sublessee shall continue to pay Rent and perform any and all of its obligations hereunder, Tenant shall not be deemed in default hereunder as a result thereof and this Lease shall not be then terminated, and all Tenant's rights and obligations hereunder shall remain undisturbed unless Tenant or its assignee or sublessee otherwise defaults hereunder.

30.

Landlord acknowledges that Tenant is presently in re-organization proceedings pursuant to Chapter X of the Bankruptcy Act and the parties agree that the foregoing provisions shall not be applicable to such proceedings or any subsequent reorganization plan or arrangement arising therefrom, and unless there is an adjudication of Tenant as a bankrupt, shall not provide Landlord the option of terminating this Lease if Tenant is otherwise complying with its obligation hereunder.

## ARTICLE XVI.    DEFAULT

Section 16.01. If Tenant shall fail to pay any part of the Fixed Rent or any Additional Rent herein provided for or any other fixed charges required by it to be paid to Landlord, for a period of five business days after written notice thereof by Land-lord to Tenant, or if default should be made in any of the other covenants or conditions on Tenant's part herein contained and such default is not cured within twenty-five (25) days after written notice by Landlord to Tenant thereof (or if said default cannot be cured within twenty-five (25) days, then, if Tenant does not commence within said twenty-five (25) day period to attempt to cure said default and thereafter proceed with due diligence toward the cure of the same), Landlord may, at its option send a written notice to Tenant cancelling the term of this Lease five (5) days after the date of such notice and (a) Landlord, its agents or representatives, may thereafter re-enter the Demised Premises or Landlord may relet the Demised Premises in whole or in part, altering, changing or subdividing the same as in its reasonable judgment may accomplish the best results at such rental and upon such terms and for such length of time whether lesser or greater than the unexpired portion of the Lease Term, as Landlord may see

31.

it, and Tenant shall be liable unto Landlord for the period of said reletting, not to exceed, however, the balance of the Lease Term, after deducting therefrom the cost of such reletting, including legal fees in a reasonable amount, and the rental herein reserved for a period or periods identical with the term of said reletting and Landlord may monthly, or at such greater intervals as it may see fit, institute action to exact payment of said deficiency unto Landlord from time to time; or (b) Landlord may, at its option, be entitled to recover from Tenant the worth at the time of any such termination of this Lease the excess, if any, of the amount of Fixed Rent and Additional Rent reserved in this Lease for the balance of the Lease Term over the then rental value of the Demised Premises for the unexpired portion of the term of the Lease discounted for present value at a rate of 7% per annum.  For the purpose of this Article, the rent reserved in this Lease shall be deemed to be a monthly rent arrived at by adding the Fixed Rent, Tax Rent and insurance and any other items of Additional Rent hereunder received by and or paid to Landlord in the manner and to the extent in this Lease required.

Section 16.02.  Landlord shall not be deemed to be in default in the performance of any of its obligations under this Lease until Landlord shall have failed to perform any obligations (except in the event of any emergency or material interference with Tenant's business) within thirty (30) days, or such additional time as is reasonably required to correct such default, after notice in writing by Tenant to Landlord particularly specifying the nature of the default, provided, however, that if on account of any breach by Landlord of any of the provisions hereof, Tenant   is   physically ejected from all or part of the Demised Premises, or is restricted from the use of all or any material part of the Demised Premises,

32.

Landlord shall not in any event have more than ten (10) days within which to cause Tenant to be restored to possession of the Demised Premises.   If Landlord's default remains uncured after notice thereof for the period hereinbefore provided, upon thirty (30) days' prior written notice to the Institutional Fee Mortgagee, Tenant shall have the right to attempt to cure said default and Landlord shall be obligated to reimburse Tenant for all expenses reasonably incurred by Tenant in so doing.

Section 16.03.   Landlord and Tenant do hereby waive trial by jury in any action, proceeding or counterclaim brought by either against the other upon any matters whatsoever arising out of or in any way connected with this Lease, Tenant's use or occupancy of the Demised Premises, and/or any claim of injury or damage.   In addition thereto Tenant hereby waives the right to counterclaim in any summary proceeding or other action brought by Landlord solely for the nonpayment of Rent or Additional Rent hereunder.

Section 16.04.   In the event the Tenant does not comply with its obligations under this Lease, Landlord shall also have the right to appropriate injunctive relief.

Section 16.05.   The rights and remedies whether herein or anywhere else in this Lease provided shall be cumulative and the exercise of any one right or remedy shall not preclude the exercise of or act as a waiver of any other right or remedy of Landlord hereunder, or which may be existing at law, or in equity or by statute.

33.

Section 16.06.   In the event of a bona fide dispute between Tenant and Landlord, other than any dispute relating to the payment of the Fixed Rent, Tax Rent or Additional Rent hereunder, Tenant shall have the right, within ten (10) business days of receipt by Tenant of notice of claimed default or non-performance, to notify Landlord, in the manner herein provided for the giving of notices, of Tenant's desire to dispute the propriety of the Landlord's claim of default.   In the event that such bona fide dispute relates to anything involving the payment of money, the notice of dispute, to be valid, shall be accompanied by payment of that portion of the sum due as to which Tenant does not take issue, limiting the notice of dispute to only the net amount actually disputed.   If the notice of default relates to a matter which would subject Landlord's estate to fine, penalty or forfeiture, the notice of dispute shall be accompanied by payment of a sum sufficient to indemnify Landlord against the loss which would be sustained  by Landlord as a result of the non-payment or non-performance by Tenant to which the notice relates.   As to all bona fide disputes, the dispute notice shall be accompanied by a detailed statement as to the basis for Tenant's dispute.   Either party may, at such party's option, upon notice to the other, demand that the dispute be resolved under the provisions of any simplified procedure for court determination of disputes applicable under the laws of the state in which the Demised Premises are located.   In such circumstances, the time within which to cure any claimed default (or commence to cure if it cannot be cured within such period) as to which a bona fide dispute has been raised will be extended to the date which is ten (10) days following the final determination of the court or other forum or, in the event that the dispute is resolved before any such final determination, within ten (10) days of the judgment, settlement or other resolution of the dispute.

34.

## ARTICLE XVII.   WAIVER OF REDEMPTION

Section 17.01.   Tenant hereby expressly waives any and rights of redemption granted by or under any present or future s in the event of termination of the Lease or Tenant being possessed or removed from the Demised Premises because of ault by Tenant hereunder.

## ARTICLE XVIII.   UNAVOIDABLE DELAYS, FORCE MAJEURE

Section 18.01.   If either party shall be prevented or delayed from punctually performing any obligation or satisfying any condition under this Lease by any strike, lockout, labor dispute, inability to obtain labor materials or reasonable substitutes therefor, Act of God, present or future governmental restrictions, regulation or control, insurrection, sabotage, fire or other casualty, or any other condition beyond the control of the party, then the time to perform such obligation or satisfy such condition shall be extended by the delay caused by such event.   If either party shall, as a result of any such event, be unable to exercise any right or option within any time limit provided therefor in this Lease, such time limit shall be deemed extended for a period equal to the duration of the delay caused by such event.   The provisions of this Section shall not include the financial inability to perform and shall in no event operate to excuse Tenant from the prompt payment of any Fixed Rent or Additional Rent or other payments due from Tenant under the terms of this Lease.

ARTICLE XIX.   NO WAIVER

Section 19.01.   The failure of Landlord or Tenant to insist upon a strict performance of any of the agreements, terms, covenants or conditions hereof shall not be deemed a waiver of any rights or remedies that either Landlord or Tenant may have and shall not be deemed a waiver of any subsequent breach or default in any of such agreements, terms, covenants and conditions.

ARTICLE XX.   NOTICES

Section 20.01.   Whenever it is provided herein that notice, demand, request or other communication shall or may be given to, or served upon, either of the parties by the other, and whenever either of the parties shall desire to give or serve upon the other any notice, demand, request or other communication, it shall be in writing and, any law or statute to the contrary notwithstanding, shall not be effective for any purpose unless the same shall be given or served as follows:

(a) if given or served by Landlord, by mailing the same to Tenant by registered or certified mail, postage prepaid, return receipt requested, addressed to President of Toys "R" Us, Inc., 299 Market Street, Saddle Brook, New Jersey 07662 or at such other address as Tenant may from time to time designate by notice given to Landlord as herein provided, with a copy to Robert W. Claeson, Esq., Shea Gould Climenko & Casey, 330 Madison Avenue, New York, New York 10017;

(b) if given or secured by Tenant, by mailing the same to Landlord by registered or certified mail, postage prepaid, return

· 36 ·

receipt requested, addressed to Landlord at the address indicated in the preamble to this Lease, or at such other address as Landlord may from time to time designate by notice given to Tenant as herein provided, with a copy to Dreyer and Traub, 90 Park Avenue, New York, New York 10016, Attention:  George H. Ross, Esq.

All notices, demands, requests or other communications hereunder shall be deemed to have been given or served on the second business day following the time that the same shall be deposited in the United States mails, postage prepaid, in the manner aforesaid, except notices of change of address, which, when given in accordance with the terms hereof, shall be deemed given when actually received.

## ARTICLE XXI.   ACCESS

Section 21.01.    Landlord, any Institutional Fee Mortgagee, and their designees shall have the right, on reasonable prior written notice, to enter upon the Demised Premises at reason-able hours accompanied by an employee of Tenant (and in emergencies at any time with or without an employee of Tenant):

(a)  to inspect the Demised Premises; and

(b)  to make necessary repairs to the Demised Premises as required or permitted hereunder after any required notice hereunder is given, and provided that, in performing any of such activities, Landlord or any Institutional Fee Mortgagee shall use their reasonable efforts to minimize interference with the conduct of Tenant's business to the extent possible under the circumstances and to use their reasonable efforts to avoid any loss or damage to merchandise, fixtures and equipment in the performance of any such activities.  Due to the nature of Tenant's business, no such repairs shall be made during the months of October, November and December except in the event of conditions of an emergency nature.

37.

Section 21.02. For a period commencing two hundred and seventy (270) days prior to the end of the Lease Term, unless a period of renewal has been exercised, Landlord may have reasonable access to the Demised Premises for the purpose of exhibiting the same to prospective Tenants at reasonable hours accompanied by an employee of Tenant.

ARTICLE XXII.  SIGNS

Section 22.01. Tenant may place or install signs on the Demised Premises at its own cost and expense if permitted by government authorities on due application to be made therefor.

Section 22.02. Tenant agrees that no sign shall be installed on the Demised Premises until all governmental approvals and permits required therefor are first obtained, together with payment of all fees pertaining thereto. Tenant shall comply with all laws and ordinances of the applicable governmental authorities with respect to the installation and maintenance of all signs.

ARTICLE XXIII.  IMPROVEMENTS AND FIXTURES

Section 23.01. All signs and trade fixtures furnished or installed by Tenant or its subtenants or licensees on the Demised Premises, regardless of the manner or mode of attachment, including, but not limited to, display cases, counters, shelves, racks, and general store fixtures, shall be and remain the property of Tenant or its subtenants or licensees, and may be removed by Tenant or its subtenants or licensees, at any time during the Lease Term (including any renewal terms) or within the period of ten (10) days after the expiration date (or sooner expiration or termination).

38.

Tenant shall promptly repair all damage to the Demised Premises caused by removal of any such trade fixtures by Tenant or its subtenants or licensees. Any such trade fixtures remaining on the Demised Premises after the expiration of such 10-day period shall be deemed abandoned by Tenant or its subtenants or licensees and shall become the property of Landlord without payment therefor, unless Landlord shall have required Tenant by notice not less than sixty (60) days prior to the expiration date that Landlord requires the removal of Tenant's trade fixtures. If after receiving said Landlord's notice, the Tenant fails to remove its fixtures, Landlord may remove same and Tenant shall be liable for all reasonable costs and expenses in connection therewith.

## ARTICLE XXIV.   END OF TERM

Section 24.01. Upon the expiration or other termination of the term of this Lease, Tenant shall peaceably and quietly quit and surrender the Demised Premises, broom-clean, in good order and condition, reasonable wear and tear and, to the extent provided in Section 12.03, damage by fire or other casualty excepted, together with all alterations which are then a part of the realty.

## ARTICLE XXV.   HOLDING OVER

Section 25.01. Should Tenant hold over in possession after the expiration date, such holding over shall not be deemed to extend the term or renew this Lease; but the tenancy thereafter shall continue as a tenancy from month to month at the sufferance of Landlord upon the terms and conditions herein contained and at the Fixed Rent and Additional Rent in effect immediately preceding the expiration date.

39.

ARTICLE XXVI.    ASSIGNMENT AND SUBLETTING

Section 26.01.    Tenant may assign this Lease or sublet, license or grant concessions or use of all or any part or parts of the Demised Premises, subject, however, in all respects, to the following conditions:

(a)    The Tenant shall not thereby be relieved of any liability hereunder;

(b)    Any assignee of the entire Demised Premises shall assume the obligations of the Tenant under the Lease;

(c)    A copy of the effective instrument is delivered to the Landlord either prior to or immediately subsequent to the date of the subject action; and

(d)    The Tenant shall not be in default in any material provision hereof beyond the applicable notice and grace periods, at the time of any such assignment or subleasing.

If Landlord does not notify the Tenant of its objection to the subject action in writing within fifteen (15) days of such submission stating its specific objection, Landlord shall be deemed to have waived any objections it may have held that Tenant has not complied with the provisions of this section.

Section 26.02.    Upon obtaining an assignee or subtenant on acceptable terms, Tenant shall submit to Landlord in writing:

(1)    the name of the proposed assignee or subtenant; and

(2)    the proposed assignment or sublease documents.

40.

Section 26.03.  The Tenant hereby assigns to the Landlord all Tenant's right, title and interest in and to all subleases and subtenancies now or hereafter to be made of the Demised Premises or any parts thereof, as well as all rents or other sums of money which may hereafter become due and payable thereunder to the Tenant, together with all security at any time deposited for the payment of rent and the performance of any other terms of such subleases. Notwithstanding such assignment, unless Tenant is in default hereunder beyond any applicable notice and curative periods Tenant may continue to collect all sums due from any subtenant and may modify, amend, cancel and terminate any such sublease and may enter into any net sublease for the Demised Premises or any part thereof without consent of the Landlord, Tenant may continue to collect all sums due from any subtenant.  Upon default of Tenant hereunder beyond any applicable notice and grace period, Landlord shall have the right to notify all then subtenants of this assignment and to collect all rents due thereunder.

ARTICLE XXVII.   FEE MORTGAGES

Section 27.01.  Landlord shall have the right at any time and from time to time, during the term of this Lease, to subject the fee interest of Landlord in the Demised Premises, or any part or parts thereof, including all rights and easements appurtenant thereto, but not Tenant trade fixtures or removable improvements at any time and from time to time, to any one or more fee mortgages and to renew, modify, consolidate, replace, extend and/or refinance (any and all of the foregoing being hereinafter included in the term "Refinance" or "Refinancing" as used herein and such terms shall also include the replacement of any fee mortgage which shall

41.

satisfied when due or by prepayment) any one or more such fee mortgages. Landlord alone shall be entitled to all of the proceeds from any such fee mortgage at any time and from time to time effected pursuant thereto. All such fee mortgages affecting the Premised Premises hereunder shall recognize this Lease and any and all of the rights of Tenant hereunder, provided that Tenant hereunder is not in default with respect to any of the obligations on the part of Tenant hereunder to be performed beyond notice and curative periods provided for herein. Tenant shall not be required to subordinate Tenant's leasehold interest to the lien of any such fee mortgage, nor shall Tenant's estate be subject to defeasance as a result of the foreclosure of any such fee mortgage.

Section 27.02. Tenant shall not have any right of any kind or nature to encumber Landlord's fee title interest in the Premised Premises or in any manner, act or conduct itself or suffer anything to be done whereby the Landlord's fee title interest in the said property is jeopardized, diminished, encumbered or subjected to any lien, encumbrance or charge of any kind or nature. Nothing contained in this Lease shall be interpreted or deemed to authorize or empower Tenant to suffer anything or cause anything to be done which would derogate from or diminish Landlord's fee estate.

ARTICLE XXVIII.  CERTIFICATES

Section 28.01. Tenant shall, without charge, at any time and from time to time, within ten (10) days after request by Landlord, deliver a written instrument to Landlord or any other person, firm or corporation specified by Landlord, duly executed and acknowledged, certifying:

42.

(a)   that this Lease is unmodified and in full force and effect, or, if there has been any modification, that the same is in full force and effect as modified and, stating any such modification;

(b)   whether or not there are then existing any set-offs or defenses against the enforcement of any of the agreements, terms, covenants or conditions of this Lease and any modification thereof upon the part of Tenant to be performed or complied with, and, if so, specifying the same; and

(c)   the dates to which the Fixed Rent, Additional Rent and other charges hereunder have been paid.

Section 28.02.   Landlord shall, without charge, at any time and from time to time, within ten (10) days after request by Tenant, deliver to Tenant a written instrument, certifying whether or not this Lease is in full force and effect, whether Tenant has or has not, as the case may be, fully made all payments then and theretofore due to Landlord, and whether Landlord knows or does not know, as the case may be, of any default by Tenant in the performance by Tenant of all agreements, terms, covenants and conditions on Tenant's part to be performed and if it does know of any default, specifying same.

ARTICLE XXIX.   RELATIONSHIP OF PARTIES

Section 29.01.   Nothing contained in this Lease shall be construed to create the relationship of principal and agent, partnership, joint venture or any other relationship between the parties hereto other than the relationship of Landlord and Tenant. Nothing contained herein shall in any way impose any liability upon the stockholders, officers or directors of Landlord or stockholders, officers, directors or trustees of Tenant should such parties be corporate entities.

43.

ARTICLE XXX.   LIMITATION OF LIABILITY

Section 30.01.   The term "Landlord" as used in this Lease means only the owner of the Demised Premises, or the mortgagee in possession of the Demised Premises, for the time being, so that in the event of any sale or other transfer of the Demised Premises, Landlord shall be and hereby is entirely freed and relieved of all liabilities and obligations of Landlord hereunder and it shall be deemed without further agreement between the parties and any successor of Landlord, that such successor has assumed and agreed to perform and observe all liabilities and obligations of Landlord hereunder.

Section 30.02.   It is specifically understood and agreed that there shall be no personal liability on the Landlord or any disclosed or undisclosed principal, stockholder or partner of Landlord in respect to any of the terms, covenants, conditions or provisions of this Lease, and in the event of a breach or default by Landlord of any of its liabilities and obligations under this Lease, Tenant and any persons claiming by, through or under Tenant shall look solely to the equity of the Landlord in the Demised Premises for the satisfaction of Tenant's and such persons' remedies and claims for damages.

ARTICLE XXXI.   RECORDING

Section 31.01.   Neither Landlord nor Tenant shall record this Lease; however, upon the request of either party hereto, the other party shall join in the execution of a memorandum or so-- called "short form" of lease for the purposes of recordation.   Said

44.

memorandum or short form of lease shall describe the parties, the Demised Premises, the term of this Lease, any subordination, any special provisions other than those pertaining to rent and shall incorporate this Lease by reference.

ARTICLE XXXII.   CAPTIONS AND SECTION NUMBERS

Section 32.01.   The captions, section numbers, and index appearing in this Lease are inserted only as a matter of convenience and in no way define, limit, construe, or describe the scope or intent of such sections or articles nor in any way affect this Lease.

ARTICLE XXXIII.   APPLICABLE LAW

Section 33.01.   This Lease shall be governed by, and construed in accordance with the laws of the state in which the Demised Premises are located.   If any provision of this Lease or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease shall not be affected thereby and each provision of this Lease shall be valid and enforceable to the fullest extent permitted by the law.

ARTICLE XXXIV.   ADDENDA

Section 34.01.   The following exhibits have been agreed to by the parties and annexed hereto or initialled by the parties prior to the execution hereof, it being the intention of the parties that they shall become a binding part of this Lease as if fully set forth herein.

Exhibit A - Description of Land

Exhibit B - Purchase Price Formula

45.

ARTICLE XXXV.   ENTIRE AGREEMENT

Section 35.01.   This Lease, and the Exhibits, and Rider, if any, attached hereto and forming a part hereof, sets forth all the covenants, promises, agreements, conditions and understandings between Landlord and Tenant concerning the Demised Premises, and there are no covenants, promises, agreements, conditions or understandings heretofore made, either oral or written, between them other than as herein set forth.   No modification, amendment, change or addition to this Lease shall be binding upon Landlord and Tenant unless reduced to writing and signed by each party.

ARTICLE XXXVI.   OBLIGATIONS ARISING PRIOR TO DATE OF LEASE

Section 36.01.   In addition to the other obligations of Tenant hereunder, Tenant shall, at its cost and expense: (a) cure any violations of law or ordinance, (b) comply with the provisions and pay any charges due under any easements or restrictions, and (c) hold Landlord harmless for any claims for work, labor, or services or materials furnished with respect to the Demised Premises, notwithstanding that any of the foregoing may have arisen or existed prior to the date of this Lease.

ARTICLE XXXVII.   TENANT'S OPTION TO PURCHASE

Section 37.01.   Tenant shall have the option (the "Option to Purchase") to elect to purchase the Demised Premises from Landlord effective (end of 24th year or 31st year of Lease term) (the "Effective Date") upon the terms and conditions of this Article 37 by giving Landlord written notice of such election (the "Exercise Notice") not more than twenty-four (24) nor less than twelve (12) months prior to the Effective Date provided, however, that the Option to Purchase hereunder shall cease to exist upon a termination or cancellation of this Lease.

46.

Section 37.02. In the event Tenant exercises the Option to Purchase, the purchase price payable by Tenant for the Demised Premises shall be the appraised "value" (hereinafter defined) of the Demised Premises on the Effective Date as determined by appraisal as hereinafter provided. The "value" of the Demised Premises (a) shall include, without limitation, the "value" of the land thereof, the Toy Store and Facilities located thereon, and all appurtenances thereto, less the cost of demolition and/or renovation or rehabilitation if appropriate (b) shall be determined as if same were encumbered by this Lease and any subleases, licenses, and concessions thereunder, and (c) shall be determined for the highest and best use or uses thereof by whichever applicable valuation method (generally acceptable for M.A.I. appraisals) shall reflect the greatest "value" (including, but not limited to, market value, replacement cost and capitalization of income methods). The appraised "value" shall be determined by an independent and non-affiliated M.A.I. appraiser selected by the Tenant. Subject to the limitations of Section 37.04 hereof, the appraisal, in writing, as to such "value" shall be deemed final and conclusive upon Landlord and Tenant with respect to the provisions hereof. All costs and expenses in connection with the appraisal and the determination of "value" shall be paid by Tenant.

47.

Section 37.03.    If Tenant shall exercise the Option to Purchase as provided in Section 37.01, the closing of title shall take place on the Effective Date (or the next business day thereafter if the Effective Date is a Saturday, Sunday or holiday) at Landlord's office in New York City at 10:00 a.m.  If title to the Demised Premises does not close by reason of Tenant's default, then Landlord shall retain the Deposit as fixed and liquidated damages and the Option to Purchase shall be deemed null and void and no longer exercisable by Tenant.

Section 37.04.    Anything in Section 37.02 to the contrary notwithstanding, the purchase price payable by Tenant to Landlord (excluding costs and expenses which shall be borne by Tenant) shall be not less than One Million One Hundred Twenty-One Thousand ($1,121,000) Dollars nor more than One Million Two Hundred Ten Thousand ($1,210,000) Dollars.

Section 37.05.    The purchase price payable by Tenant to Landlord under this Article 37 shall be net of all out of pocket expenses involved or connected with the conveyance or the determination of value, it being agreed that Tenant shall pay all such expenses including but not limited to appraisal fees, recording fees, transfer taxes, documentary stamps, title charges and reasonable legal fees.

Section 37.06.    If Tenant exercises the Option to Purchase, Landlord agrees to convey and Tenant agrees to accept title to the Demised Premises in the then existing condition except for any defects in title, liens or encumbrances created by Landlord not at the direction of or with the consent of the Tenant or existing as of the date hereof.

48.

IN WITNESS WHEREOF, the parties have this day set their
hands and seals.

LANDLORD:

AMERICAN PROPERTY INVESTORS VIII,
a California limited partnership
By:  EIGHTH PROPERTIES MANAGEMENT
     CORP., General Partner

By: _____
                    Vice President

TENANT:

TOYS "R" US, INC.

By: _____

49.

## EXHIBIT A

The land in AUBURN, situated on Southbridge Street, bounded and described as follows:

| | |
|---|---|
| BEGINNING | at a point on the northerly sideline of Southbridge Street at the most south-westerly corner of the parcel to be described as land now or formerly of Larson; |
| THENCE | N 21° 57' 40" W along land now or formerly of Larson a distance of Two Hundred Nine and 23/100 (209.23) feet to a point; |
| THENCE | N 79° 49' 16" W along land now or formerly of Larson a distance of Forty-three and 69/100 (43.69) feet to a point; |
| THENCE | along the southeasterly sideline of I-290 in a northeasterly direction by a curve to the left having a radius of 4730.00 feet, a distance of Sixty-three and 04/100 (63.04) feet to a Massachusetts Highway Bound point; |
| THENCE | N 59° 43' 04" E along land now or formerly of B & M Industries, Inc., a distance of Eleven and 82/100 (11.82) feet to a point; |
| THENCE | N 16° 48' 31" W along land now or formerly of B & M Industries, Inc., a distance of Six and 62/100 (6.62) feet to a point; |
| THENCE | along the southeasterly sideline of I-290 in a northeasterly direction by a curve to the left having a radius of 4730.00 feet, a distance of Two Hundred Fifty-three and 64/100 (253.64) feet to a Massachusetts Highway Bound point; |
| THENCE | N 27° 46' 55" E along said sideline, a distance of Two Hundred Seventy and 66/100 (270.66) feet to a point; |
| THENCE | S 09° 19' 48" E along land now or formerly of Driscoll, a distance of One Hundred Fifty-five and 45/100 (155.45) feet to a point; |
| THENCE | S 40° 23' 58" E along land now or formerly of Driscoll, a distance of One Hundred Ninety-three and 73/100 (193.73) feet to a point; |
| THENCE | S 63° 04' 45" W along land now or formerly of Gino's Inc., a distance of Thirty (30) feet to a point; |
| THENCE | S 38° 45' 06" E along land now or formerly of Gino's Inc., a distance of One Hundred Ninety-Five and 86/100 (195.86) feet to a point on the northerly side-line of Southbridge Street; |
| THENCE | S 51° 14' 54" W along the northerly sideline of Southbridge Street a distance of Twenty-four and 10/100 (24.10) feet to a Massachusetts Highway Bound; |
| THENCE | S 55° 16' 36" W along the northerly sideline of Southbridge Street for a distance of One Hundred Seventy-Eight and 60/100 (178.60) feet to a Massachusetts Highway Bound; |
| THENCE | S 57° 46' 46" W along said sideline, a distance of One Hundred Three and 56/100 (103.56) feet to a point in said sideline; |
| THENCE | S 64° 07' 36" W along said sideline a distance of One Hundred Eight and 29/100 (108.29) feet to a Massachusetts Highway Bound point; |
| THENCE | S 67° 39' 36" W along said sideline, a distance of Eighty Seven and 19/100 (87.19) feet to a point being the point of beginning. |

The above described parcel Containing 4.1146 acres, more or less, as shown on a plan of property of Toys "R" Us, prepared by Cullinan Engineering Co., Inc., Auburn, Mass., C.E. & L.S., dated October 25, 1978, not of record.

EXHIBIT B

Upon the purchase of the Demised Premises, on any monthly payment date, pursuant to Article 13 of this Lease, the Purchase Price payable shall be an amount equal to (a) Five Hundred Fourteen Thousand Two Hundred Sixty ($514,260) Dollars plus (b) an amount representing the unpaid balance of a mortgage originally in the amount of Six Hundred Sixty Thousand ($660,000) Dollars, self-liquidating (payments monthly in advance) over a thirty-one year period with interest at the rate of 9.55% per annum, as if payments commenced on the date the rent under Section 3.02(b) commenced.

STATE OF NEW YORK          )

                           )    SS.:

COUNTY OF NEW YORK         )

On the 13th day of *November* 1978, before me came MARVIN D. KENIGSBERG to me known, who being by me duly sworn, did depose and say that he resides at 10 St. Lawrence Place, Jericho, New York, that he is a Senior Vice President of EIGHTH PROPERTIES MANAGEMENT CORP., a General Partner of AMERICAN PROPERTY INVESTORS VIII, a limited partnership, and that he executed the foregoing instrument as the Senior Vice President of said corporation as the General Partner therein named and that he had authority to sign the same, and he did duly acknowledge to me that he executed the same as such officer in the name and on behalf of said corporation as the General Partner of said firm for the uses and purposes mentioned therein.

*Julia F. Grant*
                                    Notary Public

JULIA F. GRANT
Notary Public State of New York
No. 4648943
Qualified in New York County
Commission Expires March 30, 1979

STATE OF ~~NEW YORK~~ N.J.      )

                           )    SS.:

COUNTY OF Bergen           )


On the 13th day of November, 1978, before me personally came Norman Ricken , to me known, who, being by me duly sworn, did depose and say that he resides at 299 Market St, Saddle Brook, N.J. 07662 that he is the Vice President of Toys "R" Us, Inc., the New Jersey corporation described in, and which executed the foregoing instrument and that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation, and that he signed his name thereto by like order.

*Andrea R. Pattap*
                                    Notary Public

ANDREA R. PATTAP
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires May 4, 1983