## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>**BIG LOTS, INC.,** *et al.*,<br><br>          **Debtor.** | **CHAPTER 11**<br>**CASE NO. 24-11967 (JKS)**<br>**(Jointly Administered)** |

### HERRERA PROPERTIES, LLC'S (I) OBJECTION TO NOTICE OF DESIGNATION OF DESIGNATED ASSET AND (II) MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM FOR UNPAID POST-PETITION LEASE OBLIGATIONS AND DIRECTING DEBTOR'S IMMEDIATE PAYMENT OF SUCH CLAIM

Herrera Properties, LLC ("Landlord"), by and through the undersigned counsel, submits this (i) objection (the "Objection") to the *Notice of Designation of Designated Asset* (Docket No. 2116) (the "Lease Assumption Designation") filed by Gordon Brothers Retail Partners, LLC ("Buyer") and Debtor, and (ii) motion (the "Motion to Compel" and collectively with the Objection, the "Objection/Motion") for allowance of an administrative claim for unpaid post-petition Lease obligations and directing Debtor's immediate payment of such claim.  In support of this Objection/Motion, Landlord respectfully submits as follows:

### JURISDICTION

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M).

### BACKGROUND

2.     Landlord and the Debtor are parties to a lease of nonresidential real property most recently amended by that certain *Amendment to Lease* dated October 1, 2024 (the "Lease") for certain space in the Shops at Breedlove Shopping Center located at 1209 W. Spring St, Monroe,

Georgia 30655 (the "Premises").  A true and correct copy of the Lease is attached hereto as **Exhibit A**.

3.      The Premises is located within a "shopping center" as that term is used in Section 365(b)(3) of the Bankruptcy Code.  *See In re Joshua Slocum, Ltd.*, 922 F.3d 1081, 1086-87 (3d Cir. 1990).

4.      On September 9, 2024 (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code").

5.      On January 2, 2025, the Court entered an *Order (I) Authorizing Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter Into and Perform Under the GBRP APA, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* (Docket No. 1556) (the "Sale Order"), which authorized Buyer to designate a 365 Lease (as defined in the Sale Order) or a 365 Contract (as defined in the Sale Order) for assumption or assignment.

6.      On February 27, 2025, the Lease Assumption Designation was filed, which listed the Lease with a stated cure amount of $0 (the "Proposed Cure Amount").

7.      Pursuant to Paragraph 3(a)(i) of the Lease, Debtor is obligated to pay monthly rent, "in the amount equal to 3% per month of Tenant's Gross Sales." In order to verify the amount of rent owed, Paragraph 3(a)(ii) of the Lease states, "Tenant shall furnish to Landlord a statement of Gross Sales for the previous month, and Tenant shall pay any Rent as a Percentage of Sales due with respect to each Lease Year within thirty (30) days after the end of the month for which Rent as a Percentage of Sales if payable."

8.      The Lease provides for rent to be paid only as a percentage of Gross Sales. There is no accompanying minimum rate of base rent to be paid under the Lease. Landlord and Debtor entered into the *Amendment to Lease* on October 1, 2024,[1] post-petition, and Landlord in good faith agreed to the percentage of sales model for rent in lieu of the previous monthly fixed rent of $16,666.67.

9.      Despite the clear requirements of the Lease set out above, as of the Petition Date, the Debtor has not paid post-petition rent under the terms of the Lease for September, 2024, October, 2024, November, 2024, December, 2024, January 2025, February 2025, and March 2025. Debtor has also failed to furnish Landlord with any statements of Gross Sales ("Sales Statements") for any of these months.

10.      Through the Lease Assumption Designation, it appears that Buyer intends to assign the Lease to Ollie's Bargain Outlet, Inc. ("Ollie's"). It is not disclosed how long it will take for Ollie's to begin using the Premises to make sales, nor is Landlord familiar with the historical sales performance of Ollie's locations.

## OBJECTION

### A. The Debtor Has Not Met its Burden on Adequate Assurance of Future Performance

11.      Before assuming an unexpired lease that is in default such as the Lease, a debtor must provide adequate assurance of future performance to the landlord.  11 U.S.C. § 365(b)(1).[2]

---

[1] Landlord reserves any and all claim or defense to the October 1, 2024 *Amendment to Lease*, including, but not limited to, rescission of the same for failure to provide consideration, fraud in the inducement, or for any other such reason as may be identified during discovery.

[2] Bankruptcy Code section 365(b)(1) provides that "[i]f there has been a default in an … unexpired lease of the debtor, the trustee may not assume such … lease unless, at the time of assumption of such … lease, the trustee - (A) cures, or provides adequate assurance that the trustee will promptly cure such default … (B) compensates, or provides adequate assurance that it will promptly compensate … [the landlord] for any actual pecuniary loss … resulting from such default, and (C) provides adequate assurance of future performance under such … lease."  11 U.S.C. § 365(b)(1).

12.    Bankruptcy Code section 365(b)(3) sets forth additional, heightened requirements for adequate assurance of future performance under a shopping center lease, and states:

> (3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—
>
> (A) of the source of rent and other consideration due under such lease … ;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
>
> (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

13.    The provision of adequate assurance of future performance is an affirmative duty of the Debtor, and the Debtor bears the ultimate burden of proof as to all issues under Section 365. *See In re Rachels Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also Richmond Leasing, Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985).  The Debtor bears the burden of proving the requirements of Section 365(b) as to all issues by a preponderance of the evidence.  *See In re PRK Enterprises, Inc.*, 235 B.R. 597, 602 (Bankr. E.D. Tex. 1999); *see also In re Prestige Motorcar Gallery, Inc.*, 456 B.R. 541, 544 (Bankr. N.D. Fla. 2011) ("the threshold requirement and burden of the trustee is to produce credible evidence that his decision to assume or reject would benefit the estate or result in a successful reorganization.").

14.     Courts require a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided.  *See Matter of Haute Cuisine, Inc.*, 58 B.R. 390 (Bankr. M.D. Fla. 1986).

15.     "The law is clear that a debtor who assumes a lease or other executory contract assumes the contract *cum onere*, without any diminution in its obligations or impairment of the rights of the lessor in the present or the future."  *In re Texaco, Inc.*, 254 B.R. 536, 550 (Bankr. S.D.N.Y. 2000).

16.     "Where the leased premises are in a shopping center, [there is a] heightened definition of adequate assurance of future performance in section 365(b)(3) to ensure that [t]he essential terms of a debtor's lease in a shopping center [are] not . . . changed … ."  *In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3rd Cir. 2000), *cert. denied*, 121 S. Ct. 175 (2000) (citation omitted).

17.     The Debtor nor Buyer has provided anything, whether attached to the Lease Assumption Designation or otherwise, evidencing adequate assurance of future performance under the Lease.  The Debtor has not demonstrated the ability or desire to provide Landlord with timely Sales Statements.

18.     What's more, Landlord has no insight into how long it will take for Ollie's to begin making sales from the Premises post-assignment. Landlord receives rent as a percentage of sales. If no sales are being made, Landlord stands to receive nothing for months while having already been deprived of rent for the preceding half-year.

19.     Buyer must demonstrate that it can adequately assure Landlord of Ollie's future performance under the Lease. To be so assured, Landlord is entitled to conduct discovery, which will permit Landlord to look into the historical performance of Ollie's locations and will afford

Landlord the opportunity to determine how long the Premises will have to "go dark" for— generating nothing in Gross Sales—while it is reoutfitted to be operated as an Ollie's.

20.     Finally, the Debtor proposes to pay cure amounts to landlords. Despite this, the Lease Assumption Designation purports to list Landlord at a cure amount of $0. This is almost certainly inaccurate and is not supported by any Sales Statements whatsoever. With a patently inadequate cure, Debtor/Buyer cannot assume nor assign the Lease.

21.     Since the Debtor has failed to set forth any evidence in support of adequate assurance of future performance under a shopping center lease as required by the Bankruptcy Code, the Debtor has not met its burden and the Court must deny the Lease Assumption Motion as to the Lease.

### B. The Proposed Lease Assumption is Not a Sound Exercise of the Debtor's Business Judgment

22.     To assume a lease, a debtor must prove a sound business purpose for doing so.  *See, e.g.*, *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (finding that a court "should examine a contract and the surrounding circumstances and apply its best 'business judgment' to determine if it would be beneficial or burdensome to the estate to assume it" and to "plac[e] itself in the position of the trustee or debtor-in-possession and determin[e] whether assuming the contract would be a good business decision or a bad one."); *In re S.A. Holding Co.. LLC*, 357 B.R. 51 Bankr. D.N.J. 2006) (noting that most courts apply the business judgment test to decisions to assume or reject an executory contract or unexpired lease); *In re Filene's Basement, LLC*, No. 11-13511, 2014 Bankr. LEXIS 2000, at *10 (Bankr. D. Del. Apr. 29, 2014) (holding that "a debtor must show a sound business purpose for assuming an unexpired lease."); *In re Garden Ridge Corp.*, Case No. 04-10324 (DDS), 2005 Bankr. LEXIS 323 at *13 (Bankr. D. Del. Mar. 2, 2005) (finding that a landlord may challenge the

decision to assume a lease "by taking the position that the Debtors are not acting in the best interest of the estate and present related evidence with respect to each proposed lease assumption or rejection.").

23.    In evaluating the Debtor's proposed Lease assumption, the Court should consider the risk of harm to the Debtor's estate, including the possibility that the Lease is assumed now and subsequently rejected.  *See* Bankruptcy Code § 503(b)(7) (providing the landlord with an administrative claim for up to two (2) years' of lease obligations following the rejection date when a lease is assumed and subsequently rejected).  "[T]he business judgment rule does not provide [debtors] unfettered freedom to use the power given by [Bankruptcy] Code § 365(a) however they will." *In re Pilgrim's Pride Corp.*, 403 B.R. 413, 426 (Bankr. N.D. Tex. 2009).  Rather, a "court should consider 'the risks of the proposed transaction, the available alternatives, and the danger of prejudice to the objecting parties.'" *Id.* at 427 (quoting *Richmond Leasing, Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1312 n.11 (5th Cir. 1985)); *see also In re Prestige Motorcar Gallery, Inc.*, 456 B.R. 541, 544 (Bankr. N.D. Fla. 2011) ("the threshold requirement and burden of the trustee is to produce credible evidence that his decision to assume or reject would benefit the estate or result in a successful reorganization."); *In re Widmier*, Case No. 00-40244, 2003 Bankr. LEXIS 2220 at *8 (Bankr. D. Idaho Nov. 18, 2003) ("When the Court granted approval of Debtors' request to assume Creditor's lease under § 365(a), a determination was made by the Court that the assumption benefitted the bankruptcy estate . . . .").

24.    The Court must consider the merits of the Debtor's proposed Lease assumption at the time of assumption.  *In re Fifth Taste Concepts Las Olas, LLC*, 325 B.R. 42, 49 (Bankr. S.D. Fla. 2005) ("The policy behind Section 365(b)(1)(A) that encourages reorganization requires a debtor to cure all existing defaults under a lease at the same time as it preserves those provisions in

the lease that may benefit the debtor's reorganization."); *see also Interface Group-Nevada v. TWA (In re TWA)*, 145 F.3d 124, 137 (3d Cir. 1998) ("If the lease is assumed, i.e., the debtor and the court having agreed that the continuation of the lease is in the best interest of the debtor's reorganization and continuation, the debtor is entitled to receive the benefits under the lease but, at the same time, is responsible for performing its obligations thereunder. Should the debtor breach thereafter, all future payments due under the remainder of the lease become administrative expenses with administrative priority." (citing *In re Columbia Gas Sys.*, 50 F.3d 233, 238-39 & n.8 (3d Cir. 1995)).

25.     The Proposed Cure Amount of $0 is almost certainly inaccurate, as, in order to be accurate, it would require that the Premises generated not a penny of Gross Sales in the half-year period the amended Lease has been in effect. However, if it is accurate, that disturbing revelation would necessarily indicate that assuming the lease is not a sound exercise of Debtor's business judgment, in light of the fact that such an assumption would be for the sake of retaining and assigning a sales-less storefront.

26.     Aside from this speculation, it is entirely unclear why assuming the Lease now makes business sense for the Debtor, especially if the Debtor plans to sell its assets.

27.     Since assumption of the Lease would not be a sound exercise of the Debtor's business judgment, the Lease Assumption Motion must be denied as to the Lease.

### C.  *If the Debtor is Permitted to Assume the Lease, It Must Cure All Defaults at the Time of Assumption*

28.     As a condition of any assumption of the Lease, Landlord is entitled to have all defaults cured.  11 U.S.C. § 365(b)(1)(A).  The Debtor is currently in default under the Lease for failure to pay rent and other charges currently due and owing.

29.     Landlord objects to the Proposed Cure Amount since it could not possibly reflect the correct cure amount for the Lease, which is 3% of Gross Sales for each month.

30.     It is well settled that a debtor seeking to assume a lease must do so *cum onere*, accepting both its benefits and burdens.  *See In re Fleming Cos.,* 499 F.3d 300, 308 (3d Cir. 2007) (quoting *In re Italian Cook Oil Corp.*, 190 F.2d 994, 997 (3d Cir. 1951)).

31.     The Debtor is therefore first obligated to cure all outstanding defaults under the Lease, including the payment of rent and the provision of Sales Statements for each month of the Lease, through the time of assumption.

32.     The Debtor's obligations to pay rent and furnish up-to-date Sales Statements are essential to Landlord's entitlement pursuant to Section 365(b)(1) of the Bankruptcy Code to adequate assurance of future performance, and are assumed *cum onere*.  *See In re Interstate Bakeries Corp.*, 167 F.3d 843, 961 (8th Cir. 2014).

33.     Therefore, if the Lease is assumed, the Debtor and Buyer must confirm continuing liability for, and assume these obligations, in order for the Landlord to receive adequate assurance of future performance under the Lease.

34.     Landlord objects to any payment of the cure amount to be made over any significant period.  "Prompt" cure is required under Bankruptcy Code section 365(b)(1). To the extent Debtor or Buyer will pay the outstanding rent owed and produce the missing Sales Statements, such a cure should be made immediately.

35.     If the Court grants the Lease Assumption Designation as to the Lease, the Debtor must pay the outstanding rent owed to Landlord.   The Debtor must also generate and produce to Landlord the missing Sales Statements from October, 2024, to present.

### D.    *Buyer and Debtor are Proceeding in Bad Faith*

36.    "[I]n bankruptcy proceedings, the trustee, and ultimately the court, must exercise their discretion fairly in the interest of all who have had the misfortune of dealing with the debtor." *In re Minges*, 602 F.2d 38, 43 (2d Cir. 1979). Stated otherwise, a Debtor's decision to assume or reject a lease should be subject to a good faith review by the Court.

37.    Landlord and Debtor originally entered into the Lease on September 24, 1999. Well over two decades later, Debtor entered into bankruptcy. Landlord and Debtor, at that juncture, agreed to amend the Lease to help Debtor weather the financial difficulty it was seemingly attempting to emerge from.

38.    To be clear, when the Lease was amended on October 1, 2024, Debtor had already filed for bankruptcy protection. Rather than have the Premises shuttered, and in light of its multi-decade preexisting relationship, Landlord negotiated with Debtor in good faith to create a tenant friendly lease, whereby Landlord stood to receive rent as a percentage of sales, rather than the pre-amendment fixed rent amount of $16,666.67.

39.    So that Landlord could know how much rent it was owed, the Lease required Debtor to provide Landlord with monthly Sales Statements that disclosed how much in Gross Sales the Premises had generated month-to-month.

40.    Despite the good faith cooperation of Landlord, Debtor, and now Buyer, have wholly failed to fulfill their obligations under the Lease. Landlord has received no Sales Statements whatsoever to determine how much rent it is owed. Debtor, and now Buyer, have paid no rent for half a year to Landlord.

41.    Landlord's good faith attempt to cooperate with Debtor while it navigated its bankruptcy has been met with a half year of no rent, no information, and no ability to re-lease the

Premises to a paying tenant. Now, after taking advantage of Landlord for half a year, Buyer is attempting to assume and assign the Lease for a cure price of zero dollars and zero cents.

42.     What's more, as discussed *supra*, Landlord has no insight at all into how long the Premises will remain closed while its being converted into an Ollie's. Landlord has no idea what the average sales performance of an Ollie's location is, despite the fact that the Lease provides for rent to be paid as a percentage of sales.

43.     Now, Buyer seeks to take advantage of Landlord by assigning the Lease and Ollie's seeks to benefit from the protections brokered between Landlord and Debtor, at no cost to Buyer or Ollie's. This assumption and assignment is an obviously bad faith attempt to capitalize on the charity of Landlord and to get a windfall in the process.

44.     Debtor, nor Buyer, nor Ollie's has proposed the assignment and assumption of the Lease in good faith. The assumption and assignment of the Lease should be denied.

## <u>MOTION</u>

45.     Section 365 of the Bankruptcy Code requires the debtor or trustee to "timely perform all the obligations of the debtor … arising from and after the order for relief under any unexpired lease of nonresidential real property … notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3).

46.     Section 503(b)(1)(A) of the Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—the actual, necessary costs and expenses of preserving the estate…." 11 U.S.C. § 503(b)(1)(A).

47.     Despite the Lease provisions and section 365(d)(3) of the Bankruptcy Code, the Debtor has not paid Landlord rent for September, 2024, October, 2024, November, 2024,

December, 2024, January 2025, February 2025, and March 2025.[3] Debtor has additionally not provided Landlord with any contractually required Sales Statements for those same months, which would substantiate the amount of outstanding rent owed.

48.    "Section 503 gives priority to creditors who incur costs in the preservation of a bankrupt business, such as rent or compensation for ongoing, post-petition operations." *Tippins Bank & Trust v. Jarriel (In re Jarriel)*, 518 B.R. 140, 145 (Bankr. S.D. Ga. 2014), quoting *Park Nat'l Bank v. Univ. Ctr. Hotel, Inc.*, 2007 U.S. Dist. LEXIS 12237, at *13 (Bankr. N.D. Fla. Feb. 22, 2007).  Here, an administrative claim for post-petition rent has arisen due to the Debtor's post-petition use and occupancy of the Premises, which enhanced the Debtor's ability to conduct business and function as a going concern.  The amount of the administrative claim should match the amount of post-petition rent owed at the time an order on this Motion to Compel is entered because the amount of the administrative expense is presumptively the contract rate of rent as a percentage as set forth in the Lease.  *See In re Stuart*, 2003 Bankr. LEXIS 2402, at *5-6 (Bankr. S.D. Ga. Nov. 25, 2003) (absent evidence to the contrary, the rental rate is the presumed measure for the landlord's administrative claim).  The claim amount should certainly not be any less than provided for in the Lease.

49.    Hence, the Landlord is entitled to an administrative claim for all outstanding post-petition rent under both sections 365(d)(3) and 503(b)(1)(A) of the Bankruptcy Code.

50.    The Debtor should be directed to immediately pay the administrative claim to Landlord because of the Debtor's disregard of section 365(d)(3), which has forced Landlord to be

---

[3] The Lease provided for the abatement of three (3) months of rent payments, which here would be October, November, and December of 2024. Despite the extremely Tenant-friendly terms of the Lease, Debtor is nevertheless in default of its post-petition obligations arising thereunder and has remained in default as of the date of this Motion.

12

an involuntary lender to the Debtor while the Debtor is operating its business at the Premises and apparently attempting to assign the Lease for the Premises as a going concern.

51.    Landlord (i) seeks an administrative claim in the amount to be reflected in to-be-produced Sales Statements any additional amounts which come due or accrue under the Lease through and including the later of entry of an order on this Motion to Compel and the Debtor's assumption or rejection of the Lease, and (ii) asks that the Court direct the Debtor to immediately pay Landlord all unpaid post-petition Lease obligations and to produce all delinquent Sales Statements.

## RESERVATION OF RIGHTS AND JOINDER

52.    Landlord reserves its right to (i) amend or supplement this Objection/Motion, and (ii) make such other and further objections as it may deem necessary or appropriate.

53.    To the extent not inconsistent herewith, Landlord hereby joins in the objections filed by other landlords to the Lease Assumption Motion.

**WHEREFORE**, Landlord respectfully requests that the Court enter an order (i) (a) denying the proposed assumption of the Lease or (b) if the Court approves the assumption of the Lease, requiring the Debtor to pay a corrected cure amount at the time of assumption and provide up-to-date Sales Statements, (ii) allowing an administrative claim for unpaid post-petition Lease obligations as set forth herein and directing the Debtor's immediate payment of such claim, and (iii) granting Landlord such other and further relief as the Court deems just and proper.

Dated:    March 13, 2025                **HOGAN♦MCDANIEL**

By: */s/ Garvan F. McDaniel*
Garvan F. McDaniel, Esq. (#4167)
1311 Delaware Avenue
Wilmington, DE 19806
Telephone:  302-656-7540
Facsimile:  302-656-7599

Email: gmcdaniel@dkhogan.com

-and-

**JONES & WALDEN, LLC**

Leslie Pineyro
Georgia Bar No. 969800
*Pro Hac Vice Forthcoming*
699 Piedmont Ave. NE
Atlanta, Georgia 30309
(404) 564-9300 Telephone
(404) 564-9301 Facsimile
lpineyro@joneswalden.com

*Counsel to Herrera Properties, LLC*

14