## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BIG LOTS, INC., *et al.*,[1] | ) Case No. 24-11967 (JKS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) **Obj. Deadline: March 14, 2025 at 4:00 p.m. (ET)** |
| | ) **Re: Docket No. 2116** |

### LIMITED OBJECTION OF MILLAN ENTERPRISES, LLC TO NOTICE OF FILING FIFTEENTH POST-CLOSING DESIGNATION NOTICE

Millan Enterprises, LLC (the "Landlord"), by and through it undersigned counsel, hereby file this limited objection and reservation of rights (the "Objection") to the Debtors' *Notice of Filing of Fifteenth Post-Closing Designation Notice* [D.I. 2116] (the "Fifteenth Notice"), and respectfully state as follows:

### I.    FACTUAL AND PROCEDURAL BACKGROUND

1.    On September 9, 2024 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the District of Delaware (the "Court"), which cases have been jointly consolidated for administrative purposes only (the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

to 11 U.S.C. §§ 1107(a) and 1108.[2]  No trustee or examiner has been appointed in the Chapter 11

Cases.

2.      The Debtors lease retail space (the "Premises") from the Landlord pursuant to an

unexpired leases of nonresidential real property (the "Lease") at 2008 Memorial Blvd., Springfield,

TN (the "Center").

3.      The Lease is a lease "of real property in a shopping center" as that term is used in

Section 365(b)(3).  *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990)

4.      On January 2, 2025, the Court entered an *Order (I) Approving the Asset Purchase*

*Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and*

*Clear of Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and*

*Permitted Encumbrances (III) Authorizing and Approving the Assumption and Assignment of*

*Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* (the "Sale Order")

[D.I. 1556].  The Sale Order approved Golden Brothers Retail Partners, LLC as the buyer ("Gordon

Brothers") of designation rights to the Leases.

5.      Pursuant to paragraph 43 of the Sale Order, the Gordon Brothers notified the Debtors

on February 14, 2025 of its determination to designate the Lease for assumption and assignment to

Ollie's Bargain Outlet, Inc., as assignee ("Ollie's").

6.      On February 27, 2025, the Debtors filed the Fifteenth Notice, which identifies those

executory contracts and unexpired leases that may be assigned to Ollie's, together with the Debtors'

proposed cure amounts to be paid in connection with any assumption and assignment of such

contracts and leases, including the Lease.

---

[2]  Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

II.    **OBJECTION**

7.    While Landlord does not necessarily object to the assignment of its Lease to Ollie's, Landlord does object to any proposed assumption and assignment of the Lease unless and until the Debtors, Gordon Brothers, and/or Ollie's complies with all of the requirements of Sections 365 of the Bankruptcy Code.  Absent the ability, or willingness, of the Debtors and any proposed assignee to satisfy said requirements, the Court should deny the proposed assumption and assignment of the Lease.  In addition, the proposed cure amount set forth in the Fifteenth Notice for the Lease does not reflect all outstanding balances due and owing to Landlord under the Lease, or account for accruing or accrued, but unbilled charges or obligations under the Lease which may come due in the future.

A.    **The Debtors' Proposed Cure Amounts Do Not Provide For Payment Of All Obligations Due and Owing Under The Leases.**

8.    To assume and assign the Leases, the Debtors must comply with Section 365(b)(1) of the Bankruptcy Code which provides that:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A)    cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;. . .

11 U.S.C. § 365(b)(1).

9. The Fifteenth Notice lists a proposed cure amount for the Lease of $4,516.00. However, as of the date hereof, the actual amount due and outstanding pursuant to the Lease that must be cured is $56,442.60, as reflected on **Exhibit A** hereto.

10. In addition, the cure amount does not include amounts for accruing but unbilled charges which may come due in the future. The cure amount currently asserted is for unpaid and outstanding amounts currently in default only and, therefore, the proposed assignment order must be modified to recognize Ollie's liability for accruing charges when due under the Lease, as more fully set forth herein and in the proposed assignment agreement. Any such assumption of Landlord's Lease must comply with all the requirements of section 365 of the Bankruptcy Code, including that such assumption remain subject to all provisions of the Lease.

11. Bankruptcy Code section 365(b)(1) measures defaults as of the "time of assumption." *See*, *e.g.*, *In re Rachels Industries, Inc.*, 109 B.R. 797, 811-12 (Bankr. W.D. Tenn. 1990). Therefore, accrued but not yet due, and obligations that are accruing but not yet billed under the Lease, are not "defaults" that require cure at the time of assumption, but are to be paid when due under the terms of the Lease in the ordinary course. The Debtors must timely pay all rent and other lease charges as they come due under the Lease, and the Landlord reserves the right to seek payment (and amend this Objection to the extent necessary) from the Debtors and/or Ollie's, as applicable, under the Lease for any amounts that come due under the Lease, for amounts that were either required to be paid by the Debtors, and have not yet been paid or were not paid in accordance with the Sale Order and Section 365(d)(3) of the Bankruptcy Code, as of the time of the assignment of the Lease, or to be paid by Ollie's when properly billed under the Lease in accordance with its terms.

**B.    The Debtors must demonstrate adequate assurance of future performance to assume and assign the Lease to Ollie's.**

12.    The Debtors may not assume and assign the Lease unless they demonstrate adequate assurance of future performance. 11 U.S.C. § 365(b)(1)(C); *see also* 11 U.S.C. § 365(f)(2). The provision of adequate assurance of future performance is an affirmative duty of the Debtors, and the Debtors bear the ultimate burden of persuasion as to issues under Section 365. *See In re Rachels Industries, Inc.*, 109 B.R. at 802; *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985).  The obligation to comply with Section 365(b) and Section 365(f) is unaffected by the assumption and assignment process taking place through a sale under Section 363.  Courts require a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g.*, *Matter of Haute Cuisine, Inc.*, 58 B.R. 390 (Bankr. M.D. Fla. 1986) (even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented).

13.    In this case, the Lease is a shopping center lease and, as such, the Bankruptcy Code requires more than the basic adequate assurance of future performance of the Lease under Section 365(b)(1)(C).  *In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 359 (Bankr. D. Del. 1999).  In order to assume and assign shopping center leases, the Debtors must satisfy the heightened requirements set forth in 11 U.S.C. § 365(b)(3)(A) - (D).  *See Joshua Slocum*, 922 F.2d at 1086; *see also L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.)*, 209 F.3d 291, 299 (3d Cir. 2000).  The heightened adequate assurance requirements that Debtors must satisfy under Section 365(b)(3) include the following:

- the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial

condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. *See* 11 U.S.C. § 365(b)(3)(A);

- that any percentage rent due under the lease will not decline substantially. *See* 11 U.S.C. § 365(b)(3)(B);

- that assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. *See* 11 U.S.C. § 365(b)(3)(C); and

- that assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. *See* 11 U.S.C. § 365(b)(3)(D).

14.     This heightened adequate assurance of future performance determination must be satisfied in connection with an assumption and assignment under Section 365(f)(2)(B). *Sun TV and Appliances, Inc.*, 234 B.R. at 370.   In connection with the heightened adequate assurance requirement for shopping center leases, courts also require a specific factual showing through competent evidence to determine whether the Debtors have provided adequate assurance of future performance. *Matter of Haute Cuisine, Inc.*, 58 B.R. at 394.  In connection therewith, the proposed assignment order seeks to modify certain provisions protected under Section 365(b)(3) and, therefore, the Debtor cannot meet the heightened adequate assurance requirements under the Bankruptcy unless the assignment order is modified consistent with the Landlords' comments circulated and this Objection.

     **i.**     **Any assumption and assignment must comply with terms of the Leases.**

15.     Through the BAPCPA amendments, "Section 365(f)(1) is amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the code does not

override Section 365(b)." Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-

62 (daily ed. March 10, 2005). In explaining the change to Section 365(f)(1), Senator Hatch stated:

> The bill helps clarify that an owner should be able to retain control over the mix of
> retail uses in a shopping center. When an owner enters into a use clause with a retail
> tenant forbidding assignments of the lease for a use different than that specified in
> the lease, that clause should be honored. Congress has so intended already, but
> bankruptcy judges have sometimes ignored the law.

151 Cong. Rec. S. 2459, 2461 (daily ed. March 10, 2005).

16.     The changes embodied in the BAPCPA specifically preserve a landlords' right to

enforce use and other lease provisions. Again, Senator Hatch's remarks in the Congressional

Record clarify the intent behind Section 365(b) and 365(f):

> A shopping center operator . . . must be given broad leeway to determine the mix of
> retail tenants it leases to. Congress decided that use or similar restrictions in a retail
> lease, which the retailer cannot evade under nonbankruptcy law, should not be
> evaded in bankruptcy. It is my understanding that some bankruptcy judges have not
> followed this mandate. Under another provisions of the Code, Section 365(f), a
> number of bankruptcy judges have misconstrued the Code and allowed the
> assignment of a lease even though terms of the lease are not being followed.
> (emphasis added).

151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

17.     BAPCPA clarified Section 365 to reflect the Congressional intent that Debtors

cannot use Section 365(f)(1) to void lease provisions, and to overrule those prior court decisions

that did not strictly enforce lease terms. The predicate to the limited ability to assign a lease over a

landlord's objection under Section 365(f) is that such assignment must be subject to the protections

of Section 365(b)(1) and (3).

18.     Section 365(f)(1) does not modify or override Section 365(b). *Trak Auto Corp. v.

West Town Ctr. LLC (In re Trak Auto Corp.)*, 367 F.3d 237, 243-44 (4th Cir. 2004) (bankruptcy

courts could not use the general anti-assignment provision of Section 365(f)(1) to trump the specific

protections granted to landlords in Section 365(b)(3)(C)). Any assignment must remain subject to

all provisions of the Leases, including those provisions concerning use, radius, exclusivity, tenant

mix and balance.  Landlord believes that Ollie's intends to operate the Premises as an Ollie's

Bargain Outlet.[3]  The assignment order contains provisions that seek to modify the terms of the

Lease as to use, radius, among other provisions.  To the extent that Ollie's does not intend to comply

with the use, radius, exclusivity or other provisions of the Lease or agreements in the shopping

center, Landlord reserves its rights to object to any such issues at the hearing on the assignment of

the Lease.

19.    The Debtors must provide adequate assurance that the assignment of the Lease to

Ollie's "will not disrupt any tenant mix or balance in [the] shopping center." 11 U.S.C.

§ 365(b)(3)(D).  The "tenant mix" issue "focus[es] on the inclusion or exclusion of a store in the

array or mix of mall stores," while the "tenant balance" issue "focus[es] on the location and

relationship of tenants in the mix of mall stores." *In re Federated Dep't Stores, Inc.*, 135 B.R. 941,

943 (Bankr. S.D. Ohio 1991).  On the importance of protecting a shopping center's tenant mix or

balance, Congress has indicated,

> A shopping center is often a carefully planned enterprise, and though
> it consists of numerous individual tenants, the center is planned as a
> single unit, often subject to a master lease or financing agreement.
> Under these agreements, the tenant mix in a shopping center may be
> as important to the lessor as the actual promised rental payments,
> because certain mixes will attract higher patronage of the stores in
> the center.

H.R. Rep. No. 95-595, at 348 (1977), reprinted in 1977 U.S.C.C.A.N. 5963, 6305.  Accordingly,

Section 365(b)(3)(D) "guarantees to the landlord and remaining tenants that the tenant mix will not

be . . . disrupted." *Joshua Slocum*, 922 F.2d at 1088.  And on this issue, "[t]he level of competition

between stores in a shopping center must be considered, especially in connection with the fact that

---

[3] Landlord received certain evidence of adequate assurance of future performance from Ollie's in
connection with the Fifteenth Notice, including the identity of the assignee entity, the public
financial reports of the assignee entity's parent, and the intended use of the space as an Ollie's
Bargain Outlet.

the success or failure of individual tenants may affect the landlord and the other tenants in the center." *Rockland Ctr. Assocs. v. TSW Stores of Nanuet, Inc. (In re TSW Stores of Nanuet, Inc.)*, 34 B.R. 299, 307 (Bankr. S.D.N.Y. 1983).

20.     Here, the Debtors are unable to provide adequate assurance that the assignment of the Lease to Ollie's will not disrupt the Center's existing tenant mix or balance.  Ollie's business model and pricing is very different from the other retailers in the center (Belk).  Belk is not a discount operator and Ollie's may sell competing categories of merchandise at discount prices.  Hence, Belk's presence in the Shopping Center may pose a direct threat to Belk's success and disrupt the tenant mix.

21.     The Center's leases governing the exclusive and prohibited uses of the premises exemplify the need for a balanced and diversified mix of tenants.  Cf. Trak Auto, 367 F.3d at 242 ("To maintain proper tenant mix, that is, store variety, shopping center landlords have routinely placed use restrictions in leases."); TSW Stores of Nanuet, 34 B.R. at 307 (rejecting debtor's proposed modification of restrictive-use clause in lease in connection with proposed assumption and assignment to assignee who directly competed with another tenant after finding that "the landlord has inserted restrictive use clauses in the tenants' leases to avoid a head to head confrontation between two stores selling the exact same categories of merchandise").

**ii.     Any sale must not be free and clear of obligations to pay all charges due under the Leases, including unbilled year-end adjustments and reconciliations, and any indemnification obligations.**

22.     The proposed assignment order provides that the Debtors will seek to approve the assignment of the Lease free and clear of all liens, claims and liabilities.  Any assumption and assignment of the Lease "free and clear" must exclude all obligations to satisfy unbilled taxes, reconciliations, percentage rent, or other year-end adjustments or unbilled charges that may have accrued under the Lease prior to the assignment of the Lease, or are accruing, but which have not

yet been billed, and any obligations arising under the assigned Lease themselves. Debtors and/or Ollie's continue to be responsible for all unbilled charges as they come due under the Lease, and Debtors and/or Ollie's must continue to satisfy all charges due under the Lease, including charges which have not yet been billed, reconciled and/or adjusted from pre-petition (or even post-petition) periods. Any assumption and assignment of the Lease cannot cut off Landlord's rights to recover unbilled charges that have accrued, or are accruing, under the Lease. This is impermissible in the context of the assumption and assignment of the Lease, and the Landlord requests that any sale or assumption and assignment order ensure that their right to payment of these charges is preserved.

23.     More specifically, the Debtors and/or Ollie's bear responsibility for accruing but not yet due charges under the Lease that either have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods, or will not be known by the Landlord until after the assumption and assignment of the Lease. By way of example, as is typical in modern commercial leases, the Debtors pay fixed minimum rent, along with their pro-rata share of certain "Operating Expenses" such as utilities, real property taxes, insurance, common area maintenance expenses, ("CAM") HVAC maintenance expenses, and the like. Certain of these charges are estimated prospectively based on budgeted amounts compared to a base year, billed to and paid by the tenant on a monthly basis during the year, and subject to later reconciliation based on actual expenses incurred, typically after year-end. To the extent the estimated payments exceed actual charges, the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred under the Lease, the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e., year-end reconciliations and adjustments that accrued in 2024 may not yet have been billed, and such charges that are accruing for 2025 will not be billed until 2026).

In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end.

24.    Since Section 365(b) only requires debtors to cure defaults under their leases, and since there can be no default for failure to pay an amount that has not as yet been billed, these accrued, but unbilled, charges are not yet due under the Lease and, therefore, they do not create a current default that gives rise to a requirement of cure by the Debtors at this time.  Nevertheless, Debtors, or Ollie's, remain responsible for all accrued or accruing charges under the Lease, and must pay such charges when they come due in the ordinary course under the Lease in accordance with its terms.  Therefore, in order to satisfy the adequate assurance requirements of Bankruptcy Code section 365(b)(1)(C), Debtors or Ollie's must provide Landlord with adequate assurance that such accrued, but unbilled, obligations will be satisfied when billed in the future, irrespective of the period in which they relate, and Landlord's rights and remedies with respect thereto are reserved.

25.    The Debtors (or any successor) assume and assign the Lease subject to their terms, and Ollie's must assume all obligations owing under the Lease, including obligations that have accrued but may not yet have been billed under the Lease.[4]  Any assignment order should clearly state that Ollie's will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of any assignment.  In addition, any provision in the assignment order that purports to release the Debtors (or assignee) of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Lease.

---

[4]  Any ability to assume and assign the Leases is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the Leases.

26.     Similarly, the Lease requires the Debtors to indemnify and hold the Landlord harmless with respect to any existing claims, which may not become known until after the assumption and assignment of the Lease, examples of which may include such claims as personal injuries at the Premises and damage to the Premises by the Debtors or their agents.  Again, any assumption and assignment of the Lease must be subject to the terms of the Lease, including the continuation of all indemnification obligations, regardless of when they arose.  In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Lease for any claims that relate to the period prior to assumption and assignment of the Lease.  Nothing in the assignment order should preclude the Landlord from pursuing the Debtors, their insurance, or any other party that may be liable under the Lease, and the Landlord requests that any order specifically preserve their right to pursue such rights irrespective of any resolution of cure amounts herein.

**C.      The Proposed Order Contains Overbroad and Impermissible Invalidations of Lease Terms.**

27.     The Proposed Order filed in connection with the Fifteenth Notice seeks invalidation of ten (10) categories of Lease provisions it summarily defines as "Unenforceable Provisions."  *See* Proposed Order at ¶ 9.  Such provisions include any provision prohibiting Ollie's intended use of the premises, any provision unreasonably prohibiting any signage or alterations Ollie's (apparently in its sole discretion and without reference to the reasonable restrictions and processes contained in the Lease) deems necessary, any lease provision preventing Ollie's from "going dark" for two hundred seventy (270) days or longer if Ollie's thinks the facts and circumstances warrant a longer time, and any applicable radius provisions in the Lease.  The Fifteenth Notice provides no legal support for the conclusion that such provisions are indeed "unenforceable" under the Bankruptcy Code.  Any sale or assignment order entered by this Court should maintain the Lease provisions as

they exist in the Lease to the maximum possible extent, consistent with a *cum onere* assumption, and narrowly tailor any relief from Lease provisions to those that actually constitute unenforceable anti-assignment provisions pursuant to Section 365(f)(3).

## III.   JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS

28.    To the extent consistent with the objections expressed herein, Landlord also joins in the objections of other shopping center lessors to the Debtors' proposed relief.

## IV.   CONCLUSION

WHEREFORE, Landlord respectfully requests that the Court enter an order consistent with the foregoing Objection and for such other and further relief as may be just and proper under all of the circumstances.

Dated:  March 14, 2025
Wilmington, Delaware

/s/ Laurel D. Roglen
Leslie C. Heilman (DE No. 4716)
Laurel D. Roglen (DE No. 5759)
Margaret A. Vesper (DE No. 6995)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-3034
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: heilmanl@ballardspahr.com
        roglenl@ballardspahr.com
        vesperm@ballardspahr.com

*Counsel for Millan Enterprises, LLC*