## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC, *et al.*,[1] | Case No. 24-11967 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline:  March 14, 2025, 4:00 p.m. (ET)**<br>**Hearing Date: To be Scheduled if Necessary**<br>**Related to D.I. 2116** |

### OBJECTION OF GIBRALTAR MANAGEMENT CO., INC. AND GATOR DEVELOPMENT CORP. TO NOTICE OF FILING OF FIFTEENTH POST-CLOSING DESIGNATION NOTICE

Gibraltar Management Co., Inc. ("GBR") and Gator Development Corp., ("Gator" and collectively with GBR, the "Landlords"), by and through their attorneys, respectfully submit this objection (the "Objection") to the *Notice of Filing of Fifteenth Post-Closing Designation Notice* [D.I. 2116] (the "Designation Notice").  In support of this Objection, the Landlords respectfully state as follows:

### JURISDICTION

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows:  Great Basin, LLC (6158), Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings LLC (0984); Broyhill LLC (7868); Big Lots Stores – PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores – CSR, LLC (6182); CSC Distribution LLC (8785); Close out Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).  The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

<u>**BACKGROUND**</u>

2.　　On September 9, 2024 (the "<u>Petition Date</u>"), Big Lots, Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), filed voluntary bankruptcy petitions under Chapter 11 of the Bankruptcy Code in the Court.

3.　　Upon information and belief, the Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.　　The Landlords' affiliates are parties to unexpired leases of nonresidential real property (each, a "<u>Lease</u>" and collectively, the "<u>Leases</u>") of the premises (the "<u>Premises</u>") identified on **<u>Exhibit 1</u>** hereto.

5.　　GBR's Premises is located within a "shopping center" as that term is used in Section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

6.　　On September 9, 2024, the Debtors filed a motion, *inter alia*, to establish procedures governing the potential sale of substantially all of the Debtors' assets and approval of the ultimate proposed sale (the "<u>Bid Procedures/Sale Motion</u>") [D.I. 18].

7.　　On October 25, 2024, the Court entered an order granting the bidding procedures aspect of the Bid Procedures/Sale Motion (the "<u>Bidding Procedures Order</u>") [D.I. 612].

8.　　On October 30, 2024, the Debtors held an auction covering substantially all of the Debtors' assets. Also on October 30, 2024, the Debtors filed a *Notice of Successful Bidder for the Sale of the Debtors' Assets* [D.I. 661], which declared Gateway BL Acquisition, LLC ("<u>Gateway</u>"), an affiliate of Nexus Capital Management LP ("<u>Nexus</u>"), as the successful bidder.

9.      On October 31, 2024, the Debtors filed the Notice of Proposed Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Amounts [D.I. 683] (the "Cure Notice") including a list of leases and contracts that were subject to potential assumption and assignment in a Nexus sale.

10.     On November 6, 2024, the Landlords, among others, filed an objection to the Cure Notice [D.I. 945] (the "Initial Assumption and Assignment Objection").

11.     On December 19, 2024, Big Lots announced through a press release that it did not anticipate completing its previously announced asset purchase agreement with Nexus and that they were preparing to commence going out of business sales at all remaining stores in parallel with continued efforts at keeping the transaction alive.

12.     On December 19, 2024, the Debtors filed the *Notice of Status Conference* [D.I. 1398], which stated that at a status conference held that day, the Debtors announced that the contemplated transaction with Gateway "was no longer viable." Notice of Status Conference, p. 1.

13.     On December 27, 2024, the Debtors filed a *Motion of Debtors for Entry of an Order (I) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform Under the GBRP APA, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1437] ("GBRP Sale Motion"), in which the Debtors sought approval of an asset purchase agreement with Gordon Brothers Retail Partners, LLC ("GBRP").

14.     On January 2, 2025, the Court entered an order approving the GBRP Sale Motion [D.I. 1556] ("GBRP Sale Order"), which provided GBRP the right to designate any remaining unexpired lease of nonresidential real property for assumption and assignment to Variety or any

30854883.2

other designated third party.  No nonresidential real property leases were assigned under the GBRP Sale Order.

15.     On January 6, 2025, the Debtors filed the *Notice of Closing of Sale of Debtors' Assets to Gordon Brothers Retail Partners, LLC* [D.I. 1588], stating that the Initial Closing (as defined in the GBRP Sale Order) occurred on January 3, 2025.

16.     On February 27, 2025, the Debtors filed the Designation Notice [D.I. 2116], which proposes to assume and assign certain leases, including the Leases, to Ollie's Bargain Outlet, Inc. ("OBO") with proposed cure amounts listed for each Lease (the "Proposed Cure Amounts").

17.     Shortly after the filing of the Designation Notice, the Landlords and Ollie's, through counsel, began discussing the proposed assignment of the Leases by OBO.  In response to a request for adequate assurance of future performance under the Leases, on March 5, 2025, counsel for Ollie's informed counsel to the Landlords that OBO is a wholly owned subsidiary of the publicly traded Ollie's Bargain Outlet Holdings, Inc. ("OBOH") and provided a link to OBOH's Fiscal Year 2023 Annual Report (SEC Form 10-K) from the Ollie's website (collectively, the "Adequate Assurance Information").

<strong><u>OBJECTION</u></strong>

*A.     The Proposed Cure Amounts Are Incorrect and Subject to Change*

18.     As a condition of any assumption and assignment of the Leases, the Landlords are entitled to have all defaults cured.  11 U.S.C. § 365(b)(1)(A).  The Debtors are currently in default under the Leases for failure to pay rent and other charges currently due and owing.

19.     The Landlords object to the Proposed Cure Amounts to the extent that they do not reflect correct cure amounts for the Leases as of the date of assumption (the "Correct Cure Amounts").  The Proposed Cure Amounts and the Correct Cure Amounts, *exclusive* of

4

(i) attorneys' fees and (ii) accrued rent and charges and indemnity obligations, are listed on **Exhibit 1** hereto.  The Correct Cure Amounts are accurate as of the dates listed in **Exhibit 1** hereto.

      B.      *The Proposed Cure Amounts Do Not Include Attorneys' Fees*

      20.      The Landlords further object to the Proposed Cure Amounts because they do not include attorneys' fees, which the Landlords are entitled to under the Leases.  Therefore, attorneys' fees must be included as part of the Landlords' cure amounts as pecuniary losses suffered as a result of the Debtors' defaults, under Section 365(b)(1)(B).  *See In re Crown Books Corp.*, 269 B.R. 12, 18 (Bankr. D. Del. 2001); *In re Williams*, 2011 Bankr. LEXIS 2463, at *3 (Bankr. D. Del. June 24, 2011); *see also In re French*, 131 B.R. 138, 141 (Bankr. E.D. Miss. 1991); *Urban Retail Props. v. Loews Cineplex Entm't Corp.*, 2002 U.S. Dist. LEXIS 6186, at *25-28 (S.D.N.Y. Apr. 8, 2002); *In re Shangra-La, Inc.*, 167 F.3d 843, 849 (4th Cir. 1999); *In re Entertainment, Inc.*, 223 B.R. 141, 152-153 (Bankr. N.D. Ill. 1998).

      21.      Attorneys' fees have been accruing and will continue to increase through any assumption and assignment of the Leases, and the Landlords may seek to supplement this Objection by the time of any proposed order for assumption and assignment with the current amount of accrued attorneys' fees.

      C.      *Any Assumption and Assignment Must Be Cum Onere, and Any Assignee Must Assume Liability for All Obligations for Accrued, but Unbilled or Not Due Rent and Charges and Indemnity Obligations*

      22.      It is well settled that a debtor seeking to assume a lease must do so *cum onere*, accepting both its benefits and burdens.  *See In re Fleming Cos.,* 499 F.3d 300, 308 (3d Cir. 2007) (quoting *In re Italian Cook Oil Corp.*, 190 F.2d 994, 997 (3d Cir. 1951)).  The requirement that lease assumptions be *cum onere* applies equally to assignments, as assumption of an unexpired

lease "is a necessary prerequisite to its assignment under § 365." *In re Sunterra Corp.*, 361 F.3d 257, 266 (4th Cir. 2004) (citing 11 U.S.C. § 365(f)(2)).

23.     Therefore, to the extent the Debtors seek to assume and assign the Leases, the Debtors are first obligated to cure all outstanding defaults under the Leases, including the payment of the Correct Cure Amounts, plus attorneys' fees that accrued at the time of assumption and assignment.

24.     Further, the Debtors have a continuing obligation to pay additional rent and charges, including, but not limited to, adjustments and reconciliations for the Debtors' proportionate share of certain common area maintenance, real property taxes, water, insurance premiums and any percentage rent which has accrued, or will accrue under the Leases through any assumption and assignment of the Leases and are not yet due ("Accrued but Unbilled or Not Yet Due Rent and Charges").

25.     Additionally, the Proposed Cure Amounts do not include contractual obligations to indemnify the Landlords for events occurring prior to any assumption and assignment of the Leases.  The Leases obligate the Debtors to indemnify and hold the Landlords harmless from and against various claims, liabilities and expenses ("Indemnity Obligations").

26.     The Debtors' responsibility for Accrued but Unbilled or Not Yet Due Rent and Charges and satisfaction of their Indemnity Obligations must be assumed by any assignee *cum onere*, as they are essential to the Landlords' entitlement pursuant to Section 365(b)(1) of the Bankruptcy Code to adequate assurance of future performance.  *See, In re Interstate Bakeries Corp.*, 167 F.3d 843, 961 (8th Cir. 2014).  This assumption must be made clear in any assumption and assignment order covering the Leases, including the proposed order included with the Designation Notice (the "Proposed Order").

30854883.2

D.    *Any Assumption and Assignment Must Be Supported by Adequate Assurance of Future Performance*

27.    The Landlords reserve their rights to object to any proposed order on the assumption and assignment of the Leases absent identification of the exact proposed assignee, strict compliance with the adequate assurance of future performance requirements of Section 365 of the Bankruptcy Code and the GBRP Sale Order, and the Landlords having sufficient notice and opportunity to be heard regarding any proposed assumption and assignment.

28.    Before assuming an unexpired lease that is in default such as the Leases, the Debtors must provide adequate assurance of future performance to the Landlords.  11 U.S.C. § 365(b)(1).

29.    Bankruptcy Code section 365(b)(3) sets forth additional, heightened requirements for adequate assurance of future performance under a shopping center lease such as the GBR Lease, and states:

> (3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—
>
> (A) of the source of rent and other consideration due under such lease … ;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
>
> (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

30.    Pursuant to Section 365 of the Bankruptcy Code, assumption and assignment requires adequate assurance that an assignee has the ability to perform under the terms of the

30854883.2

Leases and satisfies the requirements of sections 365(b)(1) and 365(l) of the Bankruptcy Code. 11 U.S.C. §§ 365(b)(1), (f)(2) and (l). Adequate assurance of future performance is determined by the existing factual conditions, and the Court may look to many factors in determining what is necessary to provide adequate assurance of future performance under § 365(b) of the Bankruptcy Code, including, but not limited to, sufficient economic backing, economic conditions, certificates, credit reports, escrow deposits, or other similar forms of security or guarantee. *In re Tama Beef Packing, Inc.*, 277 B.R. 407, 411-12 (Bankr. N.D. Iowa 2002); *In re Alipat, Inc.*, 36 B.R. 274, 277-78 (Bankr. E.D. Mo. 1984); *In re Lafayette Radio Electronics Corp.*, 9 B.R. 993, 998 (Bankr. E.D.N.Y. 1981). Courts also look to the operating experience of the proposed assignee. *In re Casual Male Corp.*, 120 B.R. 256, 265 (Bankr. D. Mass. 1990*); In re Bygaph, Inc.*, 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986); *In re Alipat, Inc.*, 36 B.R. at 277.

31.     The provision of adequate assurance of future performance is an affirmative duty of the Debtors, and the Debtors bear the ultimate burden of proof as to all issues under Section 365. *See In re Rachels Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also Richmond Leasing, Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985). The Debtors bear the burden of proving the requirements of Section 365(b) as to all issues by a preponderance of the evidence. *See In re PRK Enterprises, Inc.*, 235 B.R. 597, 602 (Bankr. E.D. Tex. 1999); *see also In re Prestige Motorcar Gallery, Inc.*, 456 B.R. 541, 544 (Bankr. N.D. Fla. 2011) ("the threshold requirement and burden of the trustee is to produce credible evidence that his decision to assume or reject would benefit the estate or result in a successful reorganization."); *In re Widmier*, Case No. 00-40244, 2003 Bankr. LEXIS 2220, at *8 (Bankr. D. Idaho Nov. 18, 2003) ("When the Court granted approval of Debtors' request to assume Creditor's lease under § 365(a), a determination was made by the Court that the assumption benefitted the bankruptcy estate … .").

8

32.     Courts require a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided. *See Matter of Haute Cuisine, Inc.*, 58 B.R. 390 (Bankr. M.D. Fla. 1986).

33.     Further, section 365(l) of the Bankruptcy Code provides:

> If an unexpired lease under which the debtor is the lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

34.     GBR is still evaluating the Adequate Assurance Information and plans to continue conferring with Ollie's through counsel. As a condition to any assignment of the Lease, GBR may require a deposit or other form of appropriate security.  GBR is still in discussions with OBO and reserves its right to object to any proposed assumption or assumption and assignment of the Leases.

E.     *The Landlords Object to the Proposed Sale Order*

35.     GBR objects to the Proposed Sale Order relating to the proposed assumption and assignment of the GBR Lease, including with respect to Accrued but Unbilled or Not Yet Due Rent and Charges and Indemnity Obligations, "go-dark" provisions, and certain other of the Unenforceable Provisions[2] (as defined in the Proposed Sale Order).

---

[2] By way of example, GBR does not have any evidence to indicate the need for a "going dark" period of up to the later of 270 days (which may be extended if the "particular facts and circumstances of a given store warrant additional time") and "the period listed in the applicable Assignment Agreement."  It is also unclear what "reasonable signage" Ollie's is looking to put on the GBR Premises but provisions in the GBR Lease and applicable law governing such signage must be followed. To the extent other GBR Lease assignment issues are resolved, GBR plans to work with Ollie's to determine the necessary "go-dark" period and signage parameters.

Any Unenforceable Provisions that are acceptable must be considered unenforceable solely to facilitate the assignment of the applicable Leases and cannot modify the Leases going forward.

9

36.    Gator objects to the Proposed Sale Order relating to the proposed assumption and assignment of the Gator Lease, including with respect to Accrued but Unbilled or Not Yet Due Rent and Charges and Indemnity Obligations.

## RESERVATION OF RIGHTS AND JOINDER

37.    The Landlords reserve their rights to supplement this Objection and make such other and further objections as they deem necessary or appropriate, including with respect to any (i) amended Proposed Cure Amounts, (ii) proposed assumption and assignment order covering the Leases including the Proposed Sale Order, and (iii) modifications or additions to the Adequate Assurance Information.

38.    The Landlords hereby join any other objections filed by the Debtors' landlords to the extent such objections are not inconsistent with the relief sought herein.

**WHEREFORE**, the Landlords respectfully request that the Court enter an order consistent with this Objection and grant the Landlords such other and further relief as this Court deems just and proper.

Dated:    March 14, 2025
          Wilmington, Delaware

**BALLARD SPAHR LLP**

By:  */s/ Laurel D. Roglen*
Leslie C. Heilman, Esq. (DE No. 4716)
Laurel D. Roglen, Esq. (DE No. 5759)
919 North Market Street, 11th Floor
Wilmington, DE 19801
Telephone:  (302) 252-4465
Facsimile:  (302) 252-4466
E-mail:  heilmanl@ballardspahr.com
         roglenl@ballardspahr.com

-and-

**BARCLAY DAMON LLP**

Scott L. Fleischer, Esq.
1270 Avenue of the Americas, Suite 501
New York, NY 10020
Telephone:  (212) 784-5810
Email:  sfleischer@barclaydamon.com

Kevin M. Newman, Esq.
Barclay Damon Tower
125 East Jefferson Street
Syracuse, NY 13202-2020
Telephone:  (315) 425-2700
Email:  knewman@barclaydamon.com

*Attorneys for Gibraltar Management Co., Inc. and*
*Gator Development Corp.*