## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Big Lots, Inc. , *et al.*, | Case No.: 24-11967 (JKS) |
| | (Jointly Administered) |
| Debtor.[1] | |
| | Hearing Date: March 25, 2025 at 9:30 a.m. |
| | Objection Deadline: March 14, 2025 at 4 p.m. (ET) |
| | **Re: D.I. 2117** |

## LIMITED OBJECTION OF NS RETAIL HOLDINGS, LLC TO NOTICE OF FILING OF FOURTEENTH POST-CLOSING DESIGNATION NOTICE

NS Retail Holdings, LLC ("Landlord"), by and through undersigned counsel, hereby files this Objection (the "Objection") to the *Notice of Filing Fourteenth Post-Closing Designation Notice* [D.I. 2117] (the "Designation Notice"), and respectfully states as follows:

### BACKGROUND

1. On September 9, 2024 (the "Petition Date"), Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court"). The cases (the "Bankruptcy Cases") are jointly administered under the above-captioned case. The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in the Bankruptcy Cases.

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

2.     The Debtors lease retail space (the "Premises") from Landlord pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at each of the locations (the "Centers") set forth below:

| Landlord | Center | Location |
|---|---|---|
| NS Retail Holdings, LLC | 1912 Sherwood Rd. | Kingsport, TN |
| NS Retail Holdings, LLC | 3000 Scottsville Rd. | Bowling Green, KY |
| NS Retail Holdings, LLC | 2821 Montgomery Hwy. | Dothan, AL |

3.     The Leases are a lease "of real property in a shopping center," as that term is used in 11 U.S.C. § 365(b)(3). *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4.     On January 2, 2025, the Court entered an *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances (III) Authorizing and Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* (the "Sale Order") [D.I. 1556]. The Sale Order approved Golden Brothers Retail Partners, LLC as the buyer (the "Gordon Brothers") of designation rights to the Leases.

5.     Pursuant to paragraph 43 of the Sale Order, the Gordon Brothers notified the Debtors on February 28, 2025 of its determination to designate the Leases for assumption and assignment to Variety Stores, LLC, as assignee ("Variety").

6.     On February 28, 2025, the Debtors filed the Designation Notice [D.I. 2117], which proposes to assume and assign certain leases, including the Lease, to Variety Stores, LLC ("Variety").

7.     The Landlord have entered into certain lease amendments with Variety as to the Kingsport, TN (Store 225) property. Landlord and Variety continued to discuss prospective Lease amendments to properties in Dothan, AL (Store 5239) and Bowling Green, KY (Store 4729), for which the parties' are working to document, the "Lease Amendments") that will be effective upon the later of the date of this Court's approval of the lease assignments and the Debtors' vacation of the Premises, pursuant to which, the Landlord have agreed to waive any cure amounts that may be due to the Landlord upon an assumption of the Leases, except for any amounts that

are the responsibility of the Debtors and Gordon Brothers under the Sale Order (i.e., any unpaid stub rent from September, 2024 or amounts arising under the Leases following the entry of the Sale Order until such time as the Leases are assumed and assigned or rejected). The Landlord also informally provided the Debtors, Gordon Brothers, and Variety with comments to the proposed assignment order to address the matters raised in this Objection of concern to the Landlord; however, as of the date of the filing of this Objection, no response has been forthcoming to those comments. Accordingly, the Landlord file this Objection to reserve all of their rights to assert cure amounts that the Landlord would otherwise be entitled to, but for the Lease Amendments, in the event that the Lease Amendments and the assignment of the Leases are not approved, and to preserve all of their objections to the assignment of the Leases until such time as an agreement is reached on the form of the proposed assignment order. Notwithstanding the filing of this Objection, however, Landlord remain willing to continue to work with the Debtors and Variety on the proposed assignment order.

## OBJECTION

**A.     The Debtors' Proposed Cure Amounts Do Not Provide For Payment Of All Obligations Due and Owing Under The Leases.**

8.     To assume and assign the Leases, the Debtors must comply with Section 365(b)(1) of the Bankruptcy Code which provides that:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> (A)     cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses

> resulting from such default shall be compensated in accordance with
> the provisions of this paragraph;. . .

11 U.S.C. § 365(b)(1).

9.      As noted above, the Landlord anticipates that any amounts due as cure will be

addressed through the Lease Amendments and, therefore, by this Objection, simply reserve all of

their rights to assert amounts that may be different than those scheduled by the Debtors in the Fifth

Notice, as it does not reflect all outstanding balances due and owing to Landlords under the Leases

in the event the assignment of the Leases are not approved or the parties cannot reach final

agreement on the remaining Lease Amendment.

10.     In addition, the cure amounts do not include amounts for accruing but unbilled

charges which may come due in the future.  The cure amounts to be waived under the Lease

Amendments are for unpaid and outstanding amounts currently in default only and, therefore, the

proposed assignment order must be modified to recognize Variety's liability for accruing charges

when due under the Leases, as more fully set forth herein and in the proposed assignment

agreement.  Any such assumption of Landlords' Leases must comply with all the requirements of

section 365 of the Bankruptcy Code, including that such assumption remain subject to all

provisions of the Leases.

11.     Bankruptcy Code section 365(b)(1) measures defaults as of the "time of

assumption."  *See*, *e.g.*, *In re Rachels Industries, Inc.*, 109 B.R. 797, 811-12 (Bankr. W.D. Tenn.

1990).  Therefore, accrued but not yet due, and obligations that are accruing but not yet billed

under the Leases, are not "defaults" that require cure at the time of assumption, but are to be paid

when due under the terms of the Leases in the ordinary course.  The Debtors must timely pay all

rent and other lease charges as they come due under the Leases, and the Landlords reserve the right

to seek payment (and amend this Objection to the extent necessary) from the Debtors and/or

Variety, as applicable, under the Leases for any amounts that come due under the Leases, for

amounts that were either required to be paid by the Debtors, and have not yet been paid or were not paid in accordance with the Sale Order and Section 365(d)(3) of the Bankruptcy Code, as of the time of the assignment of the Leases, or to be paid by Variety when properly billed under the Leases in accordance with their terms.

**B.    The Debtors must demonstrate adequate assurance of future performance to assume and assign the Leases to Variety.**

12.    The Debtors may not assume and assign the Leases unless they demonstrate adequate assurance of future performance. 11 U.S.C. § 365(b)(1)(C); *see also* 11 U.S.C. § 365(f)(2). The provision of adequate assurance of future performance is an affirmative duty of the Debtors, and the Debtors bear the ultimate burden of persuasion as to issues under Section 365. *See In re Rachels Industries, Inc.*, 109 B.R. at 802; *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985). The obligation to comply with Section 365(b) and Section 365(f) is unaffected by the assumption and assignment process taking place through a sale under Section 363. Courts require a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided. *See e.g., Matter of Haute Cuisine, Inc.*, 58 B.R. 390 (Bankr. M.D. Fla. 1986) (even though experts presented cash flow projections, the court found that insufficient documentary evidence had been presented).

13.    In this case, the Leases are shopping center leases and, as such, the Bankruptcy Code requires more than the basic adequate assurance of future performance of the Leases under Section 365(b)(1)(C). *In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 359 (Bankr. D. Del. 1999). In order to assume and assign shopping center leases, the Debtors must satisfy the heightened requirements set forth in 11 U.S.C. § 365(b)(3)(A) - (D). *See Joshua Slocum*, 922 F.2d at 1086; *see also L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.)*, 209 F.3d 291, 299 (3d Cir. 2000). The heightened adequate assurance requirements that Debtors must satisfy under Section 365(b)(3) include the following:

- the source of rent and that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. *See* 11 U.S.C. § 365(b)(3)(A);

- that any percentage rent due under the lease will not decline substantially. *See* 11 U.S.C. § 365(b)(3)(B);

- that assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. *See* 11 U.S.C. § 365(b)(3)(C); and

- that assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. *See* 11 U.S.C. § 365(b)(3)(D).

14.     This heightened adequate assurance of future performance determination must be satisfied in connection with an assumption and assignment under Section 365(f)(2)(B). *Sun TV and Appliances, Inc.*, 234 B.R. at 370.  In connection with the heightened adequate assurance requirement for shopping center leases, courts also require a specific factual showing through competent evidence to determine whether the Debtors have provided adequate assurance of future performance. *Matter of Haute Cuisine, Inc.*, 58 B.R. at 394.  In connection therewith, the proposed assignment order seeks to modify certain provisions protected under Section 365(b)(3) and, therefore, the Debtor cannot meet the heightened adequate assurance requirements under the Bankruptcy unless the assignment order is modified consistent with the Landlords' comments circulated and this Objection.

i.    **Any assumption and assignment must comply with terms of the Leases.**

15.    Through the BAPCPA amendments, "Section 365(f)(1) is amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the code does not override Section 365(b)." Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005). In explaining the change to Section 365(f)(1), Senator Hatch stated:

> The bill helps clarify that an owner should be able to retain control over the mix of retail uses in a shopping center. When an owner enters into a use clause with a retail tenant forbidding assignments of the lease for a use different than that specified in the lease, that clause should be honored. Congress has so intended already, but bankruptcy judges have sometimes ignored the law.

151 Cong. Rec. S. 2459, 2461 (daily ed. March 10, 2005).

16.    The changes embodied in the BAPCPA specifically preserve a landlords' right to enforce use and other lease provisions. Again, Senator Hatch's remarks in the Congressional Record clarify the intent behind Section 365(b) and 365(f):

> A shopping center operator . . . must be given broad leeway to determine the mix of retail tenants it leases to. Congress decided that use or similar restrictions in a retail lease, which the retailer cannot evade under nonbankruptcy law, should not be evaded in bankruptcy. It is my understanding that some bankruptcy judges have not followed this mandate. Under another provisions of the Code, Section 365(f), a number of bankruptcy judges have misconstrued the Code and allowed the assignment of a lease even though terms of the lease are not being followed. (emphasis added).

151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

17.    BAPCPA clarified Section 365 to reflect the Congressional intent that Debtors cannot use Section 365(f)(1) to void lease provisions, and to overrule those prior court decisions that did not strictly enforce lease terms. The predicate to the limited ability to assign a lease over a landlord's objection under Section 365(f) is that such assignment must be subject to the protections of Section 365(b)(1) and (3).

18.    Section 365(f)(1) does not modify or override Section 365(b). *Trak Auto Corp. v. West Town Ctr. LLC (In re Trak Auto Corp.)*, 367 F.3d 237, 243-44 (4th Cir. 2004) (bankruptcy

courts could not use the general anti-assignment provision of Section 365(f)(1) to trump the specific protections granted to landlords in Section 365(b)(3)(C)).  Any assignment must remain subject to all provisions of the Leases, including those provisions concerning use, radius, exclusivity, tenant mix and balance.  Landlords currently have no reason to believe that Variety intends to use the Premises other than to operate a Big Lots.  Nonetheless, the assignment order contains provisions that seek to modify the terms of the Leases as to use, radius, among other provisions.  To the extent that Variety does not intend to comply with the use, radius, exclusivity or other provisions of the Leases or agreements in the shopping centers, Landlords reserve their rights to object to any such issues at the hearing on the assignment of the Leases.

ii.    **Any sale must not be free and clear of obligations to pay all charges due under the Leases, including unbilled year-end adjustments and reconciliations, and any indemnification obligations.**

19.    The proposed assignment order provides that the Debtors will seek to approve the assignment of the Leases free and clear of all liens, claims and liabilities.  Any assumption and assignment of the Leases "free and clear" must exclude all obligations to satisfy unbilled taxes, reconciliations, percentage rent, or other year-end adjustments or unbilled charges that may have accrued under the Leases prior to the assignment of the Leases, or are accruing, but which have not yet been billed, and any obligations arising under the assigned Leases themselves.  Debtors and/or Variety continue to be responsible for <u>all</u> unbilled charges as they come due under the Leases, and Debtors and/or Variety must continue to satisfy all charges due under the Leases, including charges which have not yet been billed, reconciled and/or adjusted from pre-petition (or even post-petition) periods.  Any assumption and assignment of the Leases cannot cut off Landlords' rights to recover unbilled charges that have accrued, or are accruing, under the Leases.  This is impermissible in the context of the assumption and assignment of the Leases, and the

Landlords request that any final sale or assumption and assignment order ensure that their right to payment of these charges is preserved.

20.    Moreover, the Leases require the Debtors to indemnify and hold the Landlords harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or Centers by the Debtors or their agents. Any final order must provide that the assumption and assignment is pursuant to the terms of the Leases, including that any assignee continues to be responsible for all such indemnification obligations, regardless of when they arose. In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Leases for any such claims that relate to the period prior to any assumption and assignment of the Leases. These charges and obligations must survive the assumption and assignment of the Leases, and any order should be clear that the ultimate purchaser will inherit the responsibility for all unbilled charges that may come due under the Leases, as well as the indemnity obligations existing under the Leases.

21.    More specifically, the Debtors and/or Variety bear responsibility for accruing but not yet due charges under the Leases that either have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods, or will not be known by the Landlords until after the assumption and assignment of the Leases. By way of example, as is typical in modern commercial leases, the Debtors pay fixed minimum rent, along with their pro-rata share of certain "Operating Expenses" such as utilities, real property taxes, insurance, common area maintenance expenses, ("CAM") HVAC maintenance expenses, and the like. Certain of these charges are estimated prospectively based on budgeted amounts compared to a base year, billed to and paid by the tenant on a monthly basis during the year, and subject to later reconciliation based on actual expenses

incurred, typically after year-end. To the extent the estimated payments exceed actual charges, the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred under the Leases, the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (*i.e.*, year-end reconciliations and adjustments that accrued in 2024 may not yet have been billed, and such charges that are accruing for 2025 will not be billed until 2026). In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end.

22.     Since Section 365(b) only requires debtors to cure defaults under their leases, and since there can be no default for failure to pay an amount that has not as yet been billed, these accrued, but unbilled, charges are not yet due under the Leases and, therefore, they do not create a current default that gives rise to a requirement of cure by the Debtors at this time. Nevertheless, Debtors, or Variety, remain responsible for all accrued or accruing charges under the Leases, and must pay such charges when they come due in the ordinary course under the Leases in accordance with their terms. Therefore, in order to satisfy the adequate assurance requirements of Bankruptcy Code section 365(b)(1)(C), Debtors or Variety must provide Landlords with adequate assurance that such accrued, but unbilled, obligations will be satisfied when billed in the future, irrespective of the period in which they relate, and Landlords' rights and remedies with respect thereto are reserved.

23.     The Debtors (or any successor) assume and assign the Leases subject to their terms, and Variety must assume all obligations owing under the Leases, including obligations that have accrued but may not yet have been billed under the Leases.[2]  Any assignment order should clearly

---

[2]  Any ability to assume and assign the Leases is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the Leases.

NG-58S8J20W #4898-1128-4777 v1                    10

state that Variety will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of any assignment. In addition, any provision in the assignment order that purports to release the Debtors (or assignee) of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Leases.

24.     Similarly, the Leases require the Debtors to indemnify and hold the Landlords harmless with respect to any existing claims, which may not become known until after the assumption and assignment of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises by the Debtors or their agents. Again, any assumption and assignment of the Leases must be subject to the terms of the Leases, including the continuation of all indemnification obligations, regardless of when they arose. In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Leases for any claims that relate to the period prior to assumption and assignment of the Leases. Nothing in the asssignment order should preclude the Landlords from pursuing the Debtors, their insurance, or any other party that may be liable under the Leases, and the Landlords request that any order specifically preserve their right to pursue such rights irrespective of any resolution of cure amounts herein.

## RESERVATION OF RIGHTS

25.     The Landlord reserves its right to supplement this Objection and make such other and further objections as it deems necessary or appropriate, including with respect to any (i) amended Proposed Cure Amount, (ii) proposed assumption and assignment order covering the Lease including the Proposed Sale Order, and (iii) modifications to the Adequate Assurance Resolution. The Landlord hereby joins any other objections filed by the Debtors' Landlord to the extent such objections are not inconsistent with the relief sought herein.

WHEREFORE, the Landlord respectfully requests that the Court enter an order consistent with this Objection and grant the Landlord such other and further relief as this Court deems just and property.

Dated:  March 14, 2025
Wilmington, Delaware

/s/ Leslie C. Heilman
Leslie C. Heilman, Esq. (DE No. 4716
Laurel D. Roglen, Esq. (DE No. 5759)
Margaret A. Vesper, Esq. (DE No. 6995)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-3034
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail:  heilmanl@ballardspahr.com
         roglenl@ballardspahr.com
         vesperm@ballardspahr.com

and

Craig Solomon Ganz, Esq.
Michael S. Myers, Esq.
Joel F. Newell, Esq.
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
Telephone: (602) 798-5427
Facsimile: (602) 798-5595
E-mail: ganzc@ballardspahr.com
        myersm@ballardspahr.com
        newellj@ballardspahr.com

*Attorneys for NS Retail Holdings, LLC*