# **EXHIBIT 1**

## LEASE AGREEMENT

This Lease Agreement ("Lease"), shall be made effective the 14th day of May, 2014 (the "Effective Date"), by and between Wonderland Marketplace, Inc., a Delaware corporation ("Landlord") whose mailing address is c/o Invesco Real Estate, Three Galleria Tower, Suite 500, 13155 Noel Road, Dallas, TX 57240 and PNS Stores, Inc., a California corporation, doing business as Big Lots, of the City of Columbus, County of Franklin, and State of Ohio ("Tenant"), whose mailing address is 300 Phillipi Road, Department 10061, Columbus, Ohio 43228-5311.

**WITNESSETH:**

1. **DEFINITIONS:**

    For purposes of this Lease, these terms are defined as follows:

    A. **Common Areas:** The term "Common Areas" as used herein shall mean the improved portion of the Shopping Center not occupied by building area as shown on the site plan, including, but not limited to, the parking areas, driveways, service driveways, service areas, sidewalks, any landscaped areas, Shopping Center signs, and parking lot lighting poles and light fixtures of the Shopping Center which shall be collectively referred to as Common Areas. Expressly excluded from the definition of Common Areas are the roof and all structural portions of the Shopping Center.

    Landlord shall maintain the Common Areas and Landlord agrees not to change such Common Areas in a manner which would substantially impair the visibility of or accessibility to the Demised Premises. Tenant shall comply with the reasonable rules and regulations which are prescribed from time to time by Landlord with respect to the Common Areas, provided, such rules and regulations do not adversely affect Tenant's business operation and do not conflict with the terms of this Lease. Neither Tenant, nor any employees or agents of Tenant, shall fence, block, allow property to remain in or upon or otherwise obstruct the Common Areas; provided, however, Tenant shall be permitted to place drop/storage trailer(s) in the receiving area of the Demised Premises, in the areas identified on Exhibit A, so long as said trailer(s) do not materially interfere with the business operations of the other tenants of the Shopping Center and do not violate any local codes/ordinances. Landlord shall not alter the area crosshatched on Exhibit A ("No Change Area"); provided, however, that Landlord shall be able to make repairs, replacements and cosmetic improvements to the existing improvements in the No Change Area.

    B. **Dates:** Landlord and Tenant agree, upon the request of either party, to confirm in writing, the dates contained in this Section along with other key dates contained in this Lease following execution of this Lease.

        1) Landlord shall notify Tenant if and when construction progress and procedures shall permit any part of Tenant's work to be done simultaneously with Landlord's Work, as defined hereinbelow, and upon such notice, Tenant shall have the right to enter upon the Demised Premises for such purposes. The date of such entry shall be the "Tenant Entrance Date" and shall not be construed as an acceptance of or possession of the Demised Premises by Tenant under the provisions of this Lease or as a waiver of any of the provisions hereof. Tenant, its agents, employees, and contractors will not interfere with or delay the work to be completed by Landlord's Work pursuant to Exhibit C. Tenant hereby agrees to indemnify Landlord against any injury, and loss or damage which

3

written notice at least six (6) full calendar months prior to the expiration of the immediately preceding Original Term or the previous Option Term as applicable.

4. **USE AND OPERATION:**

   A. <u>Permitted Uses</u>: Subject to the exclusive and prohibited uses set forth in Exhibit F, attached hereto, Tenant shall have the right to use and occupy the Demised Premises for the purpose of the sale of general merchandise, furniture, furniture accessories, furnishings, mattresses, appliances, electronics, toys, seasonal merchandise, plastics, crafts, home goods, party goods, greeting cards, health and beauty products, food (including refrigerated and frozen food, beer and wine), provided that the sale of food shall in no event be the primary use of the Demised Premises, and all similar or related merchandise and for any other lawful retail purpose; provided, however, that such "other lawful retail purpose" shall not violate the use exclusives and restrictions set forth on Exhibit F. Landlord represents and warrants to Tenant, as of the effective date of this Lease, that no exclusive or prohibited use covenants granted to existing Shopping Center tenants, or any covenants or restrictions of record, shall restrict Tenant's use of the Demised Premises except as provided in Exhibit F. Landlord represents and warrants to Tenant that all exclusive use provisions granted (or to be granted, in the case of the "fast food restaurant" restriction set forth in Exhibit F) by Landlord, or any predecessor of Landlord, to tenants in the Shopping Center, and any covenants or restrictions of record affecting Tenant's use are attached hereto and incorporated herein as Exhibit F. Landlord agrees to indemnify, defend and hold harmless Tenant for any and all costs, demands, claims, causes of action, losses, liabilities, judgments, damages and expenses (including without limitation attorney fees and court costs) associated with a breach of the foregoing representations and warranties.

   Except for the rights of tenants open and operating for business in the Shopping Center as of the date of this Lease ("Existing Tenants' Rights"), no other general merchandise store, discount store, liquidator, closeout store, furniture store or dollar store operation ("Competing Business") may be permitted in the Shopping Center during the Original Term of this Lease or any Option Terms or extensions thereof. In addition to the foregoing, a "Competing Business" shall include, without limitation the following business operations: Dollar General, Dollar General Market, Dollar Tree, Roses, Encore, Family Dollar, 99 Cent Only (and any store with the word 99 Cent in its name), Deals, Save-A-Lot, Marc's, Fred's, Super 10, Maxway, Mazel, Odd Job, Amazing Savings, Ocean State Job Lot, Grossman's Bargain Outlet, Greenbacks, Kings Discount, Building 19, National Wholesale Liquidators, Dollar Dreams, Bed Bath & Beyond, Christmas Tree Shops, Five Below, Encore and Ollie's Bargain Outlet. Except for Existing Tenants' Rights, in the event a Competing Business, as defined herein, is operated in the Shopping Center (an "Exclusive Violation"), Tenant shall so notify Landlord, in writing, and if Landlord fails to cure the Exclusive Violation within thirty (30) days of receipt of Tenant's notice, Tenant shall be entitled to any and all of the following remedies: (i) Tenant may terminate the Lease, which termination shall be effective upon the date specified in a written notice to Landlord; (ii) Tenant may pay, in lieu of Fixed Minimum Rent and other charges payable hereunder including Additional Rent, an amount equal to fifty percent (50%) of the Fixed Minimum Rent then effective under this Lease (the "Reduced Rent"); or (iii) Tenant may seek injunctive relief to enjoin or restrain such Competing Business from engaging in a competing use at Landlord's sole cost and expense. Failure to exercise (i) above shall not waive Tenant's continuing right to do so as long as said Competing Business is open and operating. All of Tenant's remedies herein are cumulative, and the exercise of one or more rights or remedies herein shall not preclude or waive the right of the Tenant to exercise any of the other remedies available to it herein. All such rights and remedies may be exercised and enforced concurrently and whenever and as often as Tenant shall deem desirable. If Tenant has not terminated the Lease as provided above, at such

7

time that the Competing Business ceases to operate in the Shopping Center, all abatements hereunder shall cease and Tenant shall resume paying all monetary charges due hereunder.

Notwithstanding the terms of this paragraph, if another tenant or occupant of the Shopping Center violates a provision of its lease or license agreement regarding the use of its premises, which said lease or license agreement prohibits the uses set forth in this paragraph (a "Rogue Tenant Violation"), Tenant may elect to pay Reduced Rent, as provided hereinabove, but shall not have the right to terminate this Lease unless and until the Rogue Tenant Violation has continued for a period of three hundred sixty-five (365) after Tenant notifies Landlord the such violation. In the event Tenant shall have paid Reduced Rent for a period of three hundred sixty-five (365) consecutive days or more due to a Rogue Tenant Violation, Tenant shall either terminate this Lease upon thirty (30) days' prior written notice to Landlord (given within thirty (30) days of the expiration of such 365 day period) or, if Tenant does not timely exercise such termination right, Tenant shall revert to paying full Fixed Minimum Rent retroactive to the first day after the expiration of such 365 day period.

Tenant agrees when possible, to operate and open the Demised Premises for business at least between the hours of 10:00 A.M. and 6:00 P.M., Monday through Saturday, and between the hours of 11:00 A.M. and 6:00 P.M. on Sunday, of each week, except for state and federally recognized holidays or religious holidays and except for days on which the conducting of business shall be prohibited by governmental authority, during the Term of this Lease.

Tenant agrees to open for business at the Demised Premises for at least one (1) day within one hundred eighty (180) days after the Rent Commencement Date. It is expressly understood that, notwithstanding anything to the contrary contained herein, Tenant may close the Demised Premises in Tenant's reasonable discretion; provided, however, that any such closing shall not relieve Tenant from any of its obligations hereunder. In the event that Tenant closes the Demised Premises under this Section and fails to reopen the Demised Premises within ninety (90) days thereafter, Landlord may terminate this Lease upon thirty (30) days' notice to Tenant, if Tenant (or a permitted assignee or subtenant of Tenant) has not reopened for business as of the date of the notice, in which event Tenant shall be released from all further liability hereunder.

Tenant agrees to keep the Demised Premises in a clean, neat, healthful, aesthetically pleasing, well-maintained and orderly condition and to keep the Demised Premises free of debris, trash, garbage, refuse (except that reasonable amounts may be kept temporarily in closed containers in places directed by Landlord), vermin, insects or pests by virtue of having regular pest extermination, loud or constant noises, and excessive vibrations. Tenant further agrees not to burn trash or garbage in the Shopping Center; commit waste in the Demised Premises or Shopping Center; cause or permit pipes, lines, conduits, fixtures or appliances in the Demised Premises to be ruined or damaged by freezing, excessive heat or lack of care, maintenance or repair. Tenant shall contract, and pay directly, for its own trash receptacle and trash removal. Tenant shall lock the doors of the Demised Premises whenever Tenant is not open for business, however, Tenant shall not be responsible for providing or maintaining security in the Common Areas of the Shopping Center.

Notwithstanding anything to the contrary contained in this Lease, Tenant shall have the right to store shopping carts and baskets in the Common Areas immediately adjacent to the Demised Premises. Subject to (i) the rights of Marshalls of MA, Inc. under its existing lease for its store at the Shopping Center (or its assignee or subtenant under such lease) (the "Marshalls Lease Tenant") to approve or deny Tenant's performance of sidewalk sales in front of the Premises ("Sidewalk Sales") (which right to so approve or deny shall only for so long as a

Marshalls Lease Tenant shall be a tenant at the Shopping Center) and (ii) Tenant's procurement of all applicable permits for the same, and subject to the provisions of the next sentence, Tenant may conduct periodic Sidewalk Sales of its merchandise on the sidewalk immediately in front of the Premises so long as there is adequate space for pedestrians to walk and pass on the sidewalk in front of the Premises. In the event, however, that any time a Marshalls Lease Tenant shall notify Landlord in writing that it objects to the performance by Tenant of such Sidewalk Sales, Tenant, upon receipt of written notice from Landlord directing it to cease the Sidewalk Sales, shall immediately (i.e., without regard to the expiration of any cure period under this Lease) cease such Sidewalk Sales and Tenant shall not thereafter conduct any more Sidewalk Sales without first receiving express written consent from the then Marshall Lease Tenant (which consent, however, shall only be required for so long as a Marshalls Lease Tenant shall be a tenant of the Shopping Center).

B. **Prohibited Uses:** Except for Existing Tenants' Rights (including those of their successors and assigns), Landlord shall not lease any space, or permit any use in the Shopping Center, and Tenant shall not use (or permit the use of) the Demised Premises: (i) to conduct or advertise any auction, bankruptcy, fire, distress, liquidation, sheriff's or receiver's sale on or from the Demised Premises; (ii) to operate a so-called "Army and Navy" surplus store, as that term is generally used at this time and from time to time hereafter, or a store selling used apparel; (iii) for an auditorium, activity facility, meeting hall, church or other place of worship; (iv) for any self storage facilities; (v) for any medical or health-oriented facilities or offices; (vi) for any industrial type use (e.g., manufacturing, warehousing, processing, assembly, plating); (vii) to conduct any activity which may make void or voidable or increase the premium on any insurance coverage on the Shopping Center or parts thereof; (viii) for any automotive, tire, gasoline, or oil service centers; (ix) for any governmental use or office or any social service functions or facilities (other than for the existing U. S. post office store location); (x) for the operation of a massage parlor or bath house, adult book or adult video store, or for the sale, rental or exhibition of pornographic material and/or display in storefront windows or in areas within the Demised Premises which are visible from outside of the Demised Premises, any sign, product or advertising material which is or is for pornographic or "adult" material; (xi) in a manner which is a public or private nuisance including any which creates undue noise, sound, vibration, litter or odor; (xii) for a night club or discotheque, tavern, bar, cocktail lounge or similar establishment, or any establishment which features any form of "adult entertainment" or any form of regularly scheduled live entertainment, or any establishment (other than a liquor store) which permits the sale of alcoholic beverages (excluding any incidental beer or wine sales by Tenant or other tenants and sales of beer, wine and liquor in a full-service restaurant; provided, however, that any restaurant must be located at least 150 linear feet away from the Demised Premises); (xiii) for a roller or skating rink, skateboard or other rink or area, billiard parlor, amusement center, arcade, including use of any video or mechanical game machines, bowling alley, health spa, health club, exercise club, gymnasium or other similar operations; provided, however, that a fitness club, health spa or similar operation may be permitted in the Shopping Center so long as such use is not located immediately adjacent to the Demised Premises; (xiv) for lodging, including a hotel, motor inn, apartments or condominiums; (xv) for vehicle, including automobile, truck, trailer, R.V. or boat dealer (or other similar enterprise), sales, leasing, display or repair (other than for office functions relating to such operations); (xvi) for a funeral parlor or mortuary; (xvii) for a mobile home or trailer court; (xviii) for any dumping, disposing, recycling, incineration or reduction on a large-scale commercial basis of refuse and recyclables (exclusive of collection in appropriately screened areas of refuse and recyclables resulting from normal day to day operations in the locations designated by Landlord from time to time); (xix) for any commercial laundry or dry cleaning plant or coin operated laundromat; (xx) for any day care center or school (other than in conjunction with a retail or, in the case of day care, office operation); (xxi) for any

9

veterinary hospital, animal boarding, training or raising facilities or pet shop; (xxii) for any separately demised newsstand; (xxiii) for an off-track betting business, bingo, lottery or similar "games of chance" sales (excluding incidental sales of lottery tickets) or facility; (xxiv) for the placement of any aerial or antenna on the roof or exterior walls of the Demised Premises, other than an aerial, satellite dish or antenna for Tenant's own use (which Tenant may install on the Demised Premises); (xxv) for the display of billboards or large advertisements whether free-standing, painted upon or affixed to the exterior of any structure; (xxvi) for any astrology, palm reading, tarot card or other like service or facility; (xxvii) for the use of a "call center" or (xxviii) for the use as a "head shop" selling drug paraphernalia. All of the foregoing uses are sometimes collectively referred to herein as the "Prohibited Uses".

5. **RENT:**

From the Rent Commencement Date during the Term hereof, Tenant does hereby covenant and agree to pay to the Landlord in lawful money of the United States at the address of Landlord first listed above, or at such other place as Landlord may from time to time direct in writing, Fixed Minimum Rent (sometimes referred to as "Rent") along with all other charges due from Tenant to Landlord under this Lease ("Additional Rent"). The Rent and Additional Rent for any partial month shall be pro rated based on the actual number of days in such month.

   A.   Fixed Minimum Rent: During the Original Term of this Lease, the sum of $279,000.00 per annum (subject to the provisions of Section 1.D.) which shall be paid in equal monthly installments in advance on the first day of each and every month, in the amount of $23,250.00.

   All the terms and conditions of this Lease shall apply during the Option Terms except that (1) each option to extend the Term shall terminate when exercised; and (2) the Fixed Minimum Rent applicable for the First Option Term shall be the sum of $310,000.00 per Lease Year (subject to the provisions of Section 1.D.) which shall be paid in equal monthly installments in advance on the first day of each and every month in the amount of $25,833.33. The Fixed Minimum Rent applicable for the Second Option Term shall be the sum of $325,500.00 per Lease Year (subject to the provisions of Section 1.D.) which shall be paid in equal monthly installments in advance on the first day of each and every month in the amount of $27,125.00. The Fixed Minimum Rent applicable for the Third Option Term shall be the sum of $341,000.00 per Lease Year (subject to the provisions of Section 1.D.) which shall be paid in equal monthly installments in advance on the first day of each and every month in the amount of $28,416.67.

   B.   Utilities Charges: Landlord shall provide Tenant with access to all utilities necessary to conduct business in the Demised Premises. Landlord shall provide separate utility meters from local distribution companies, which shall accurately reflect Tenant's usage. Tenant shall be solely responsible for and shall promptly pay for all public utility and private services rendered or furnished directly to the Demised Premises during the Term hereof including water, sewer, gas, electricity, telephone, and trash, based on the use of such utilities. Tenant shall at all times have the right, in its sole discretion, to select the particular utility providers for the Demised Premises so long as said utility is available to the Demised Premises.

   If Landlord is providing water and/or sewer under a master meter account in Landlord's name, Landlord shall provide and maintain separate utility submeters for any such water/sewer, which submeters shall accurately reflect Tenant's usage. All such submeters shall be a type that is utility billing grade, with ANSI standard, and the water submeter type shall comply with ANSI/AWWA Standard C700, latest revision. Each submeter shall be tested on a minimum five (5) year frequency, unless otherwise reasonably requested by Tenant. If no problems are found during requested test, Tenant shall reimburse Landlord for the reasonable

The provisions of this Section 21 will survive termination of this Lease.

## 22. ASSIGNMENT AND SUBLETTING:

Tenant shall have the right at any time to sublet the Demised Premises or any part thereof or to assign this Lease without Landlord's consent; provided, that no such subletting or assignment shall relieve Tenant of any of its obligations hereunder and the assignee/subtenant shall not use the Demised Premises for any of the uses set forth in Section 4.B. or Exhibit F. Each sublease or assignment shall be subject and subordinate to the rights of Landlord under this Lease and to any renewal, amendment or modification thereof, to the rights of any first mortgage to which this Lease is subject or subordinate and to all renewals, modifications, consolidations and extensions thereof. The provisions for such subordination shall be self-operative so that no further instrument of subordination need be required by a mortgagee.

## 23. SURRENDER AND HOLDOVER:

When the tenancy herein created terminates, Tenant agrees to surrender the Demised Premises to Landlord in broom clean condition (with existing floor tile, if any, as-is), ordinary wear and tear and damage by fire and other casualty excepted. Tenant may remove all of its trade fixtures with the exception of lighting fixtures and HVAC equipment whether or not attached to the Demised Premises. Thirty (30) days prior to the expiration or termination of this Lease, Landlord and Tenant shall schedule an inspection of the Demised Premises to determine the condition, and Landlord will have ten (10) days after the date of such inspection to notify Tenant, in writing, of any damage for which repair is sought by Landlord.

If Tenant shall remain in possession of the Demised Premises after expiration of the Original Term or any Option Term, such occupancy shall be a tenancy from month to month at a Fixed Minimum Rent equal to one hundred twenty-five percent (125%) of the Fixed Minimum Rent in effect immediately preceding the Term's expiration, plus Additional Rent and otherwise subject to all the terms and provisions hereof.

## 24. NOTICES:

Whenever any demand, request, approval, consent or notice ("notice") shall or may be given by one party to the other, notice shall be addressed to the parties at their respective addresses as specified in the opening paragraph of this Lease and delivered by (i) a nationally recognized overnight express courier, or (ii) registered or certified mail return receipt requested, or (iii) via facsimile, provided a copy of said notice is sent in accordance with (i) or (ii), within two (2) business days following facsimile transmission. The date of actual receipt shall be deemed the date of service of notice. In the event an addressee refuses to accept delivery, however, then notice shall be deemed to have been served on the date of said refusal of delivery. Either party may, at any time, change its notice address by giving the other party notice, in accordance with the above, stating the change and setting forth the new address.

## 25. LEGALITY:

Should any one or more of the clauses of this Lease be declared void or in violation of the law, this Lease shall remain in effect, exclusive of such clause or clauses, to the fullest extent of the law. The terms of this Lease shall be interpreted under the substantive laws of the State where the Demised Premises is located, without regard to choice of law rules of that state.

Landlord represents it is a corporation duly organized, validly existing and in good standing under the laws of Delaware. Tenant represents it is a corporation duly organized, validly existing and in good standing under the laws of California. Landlord and Tenant each represent and warrant to the other that the individual executing this Lease on their behalf are each duly authorized to so execute and deliver this Lease.

## EXHIBIT F

### EXCLUSIVE AND PROHIBITED USE PROVISIONS

No exclusive or prohibited uses granted to existing tenants or restrictions or covenants of record in the Shopping Center affect Tenant's use except as set forth below:

### Stop & Shop:

A.  No portion of the Premises and no other portion of or premises in the Shopping Center shall be used, leased, occupied, licensed or permitted or suffered to be operated as a so-called "traditional" or "conventional" supermarket or full-service grocery store, or as a so-called "super center" operation that includes a supermarket or full-service grocery store, or as a so-called "wholesale club". As used herein, the terms "supermarket" and "full service grocery store" are intended to refer to food store operations similar to that formerly conducted in the Premises by Tenant, in each such case providing multiple departments offering for sale foods such as meats, poultry, seafood, bakery products, produce, dairy products, prepared and unprepared frozen foods and a deli department offering prepared foods and counter service. The foregoing is referred to herein as the "Supermarket Restriction". Notwithstanding the foregoing, it is agreed that the Supermarket Restriction shall not prohibit the operation of (i) close out, discount or liquidation retail stores such as National Wholesale Liquidators, Big Lots, Dollar Tree, Ocean State Job Lots and Building 19, or (ii) any so-called ethnic grocery store ("ethnic grocery store") offering for sale foods and products such as, but not by way of limitation, Asian, Hispanic, or Middle Eastern foods and products as well as non-ethnic food products and non-food items.

### 99 Restaurant:

The Premises are to be used by the Tenant for a restaurant serving alcoholic beverages. In addition, provided (i) this Lease is in full force and effect, and (ii) Tenant is in occupancy of the entire Premises and is actively conducting such a restaurant business within the entire Premises, and (iii) Tenant is not in default of any of its obligations under this Lease, Landlord agrees that neither Landlord, nor an affiliate of Landlord, will lease any other premises within the Shopping Center for the operation of a casual dining restaurant serving alcoholic beverages. Notwithstanding the foregoing, it is understood and agreed that the preceding sentence shall not apply to the spaces currently leased to The Stop & Shop Supermarket Company, Marshall's of Revere, MA, Inc, and Staples, Inc., but the preceding sentence shall apply to the spaces leased to Marshall's of Revere, MA, Inc. and Staples, Inc. after the termination of the current leases of such spaces (unless re-leased to either such entity or any affiliate thereof).

### Marshalls:

A.  In recognition of the fact that the following types of operations would unduly burden the parking areas serving the demised premises and would hamper the use of said parking areas by customers of Tenant, Landlord will not lease, sell, or otherwise permit (i) any structure within the Shopping Center to be used in whole or in part as a food supermarket (except as designated on the Site Plan), bar, theatre of any kind, bowling alley, skating rink, amusement park, carnival, meeting hall, "disco" or other dance hall, sporting event or other sports facility, auditorium or any other like place of public assembly; or (ii) except on outparcel locations specifically shown on the Site Plan, any restaurant within two hundred (200) feet of the demised premises.

B.  Landlord agrees during the term of this lease that it will not lease, sell or otherwise permit any structure within the Shopping Center to be used in whole or in part for any manufacturing operations as a factory; for any industrial usage; as a warehouse, processing or rendering plant; for any establishment selling cars (new or used), trailers, mobile homes; for the operation of a billiard parlor, amusement center, flea market, massage parlor or carnival; for a so-called "off-track betting" operation; or for the sale or display of pornographic materials (the foregoing collectively referred to in this lease as the "Obnoxious Uses").

EXHIBIT F, Cont.

EXCLUSIVE AND PROHIBITED USE PROVISIONS

C. Landlord acknowledges that Tenant is paying a rent in excess of that which Tenant would otherwise pay by reason of Landlord having agreed that Tenant is entitled to be the sole major retailer of brand-name apparel at discount prices in the Shopping Center. Accordingly, if Landlord permits any one occupant of the Shopping Center (or any affiliate of such occupant), other than Tenant or any occupant of the building(s) initially leased to Stop & Shop (but only so long as the Stop & Shop Lease is in effect), to use more than ten thousand (10,000) square feet of sales and display area for the sale or display at discount prices of brand-name apparel, then minimum rent and percentage rent payable pursuant hereto shall be reduced to fifty percent (50%) of the amount otherwise payable under this Lease.

Section 1. Landlord agrees not to permit, and Tenant agrees not to engage in, any outdoor selling of merchandise in the Shopping Center, except that Stop & Shop may, on the sidewalk immediately in front of premises demised to Stop & Shop, conduct outdoor selling of merchandise and/or maintain a parcel pick-up area, as long as there is adequate space for pedestrians to walk in front of the Stop & Shop premises.

Staples:

Section 5.2.1. *Exclusive Use.* No part of the Center shall be used for the sale or leasing of office equipment (including computers), office furniture or office supplies, or the provision of any office services then provided by Tenant, nor shall any property within one mile of the Center owned by Landlord or by an entity under common control with Landlord be used for an office supply superstore; and

Section 5.2.2. *Prohibited Uses.* No part of the Center shall be used for any of the following: (i) tanning, health, exercise or racquet club or spa, gymnasium, bowling alley, skating rink or other sports or recreational facility; (ii) school, library, reading room, or house of worship; (iii) movie theatre, gallery, auditorium, meeting hall, hotel or motor inn; (iv) massage parlor, adult bookstore, a so-called "head" shop, off-track betting or check cashing facility; (v) car wash, automobile repair work or automotive service, automobile body shop, automobile, boat, trailer or truck leasing or sales, or laundromat; (vi) amusement park, carnival, banquet facility, dance hall, disco, nightclub, or other entertainment facility including video game room, pool hall, arcade or other amusement center; (vii) any manufacturing, warehouse or office use (except incidental to a retail operation); (viii) funeral parlor, animal raising or storage, pawn shop, flea market or swap meet, junk yard; (ix) drilling for and/or removal of subsurface substances, dumping, disposal, incineration or reduction of garbage or refuse, other than in enclosed receptacles intended for such purposes; or (x) any use which constitutes a public or private nuisance or produces objectionable noise or vibration; and

Section 5.3. *Covenants in General.* The covenants set forth in Section 5.2 shall run with the land comprising the Center. In the event of a breach of any such covenants, Tenant shall be entitled to injunctive relief and any other appropriate remedy. Notwithstanding the foregoing, Section 5.2 shall not prohibit (i) any tenant under a lease existing on the date of this Lease (i.e., Stop and Shop and Marshall's) from using space occupied by it for its present permitted uses, (ii) any tenant operating a card and gift shop from using space occupied by it for such use, nor (iii) any future tenant from selling office equipment, office furniture or office supplies or providing office services incidental to such tenant's primary business in no more than the lesser of 7,500 square feet or five percent of such tenant's selling space.