# EXHIBIT 2

GSSHULMA:3135
MARREVERE - REVERE, MA LSE
(06/14/94)

LEASE

MARSHALLS OF REVERE, MA., INC.

at

WONDERLAND PLAZA

FROM THE OFFICE OF:
Goulston & Storrs
400 Atlantic Avenue
Boston, Massachusetts 02110-3333

INDENTURE OF LEASE

THIS INDENTURE OF LEASE, made as of the 3rd day of August, 1994, by and between WONDERLAND MARKETPLACE LIMITED PARTNERSHIP, a Delaware limited partnership, having a mailing address c/o National Development of New England at 199 Wells Avenue, Newton, Massachusetts 02159 (hereinafter referred to as "Landlord"), of the one part; and MARSHALLS OF REVERE, MA., INC., a Massachusetts corporation, having a mailing address at 200 Brickstone Square, P.O. Box 9030, Andover, Massachusetts 01810-0929 (hereinafter referred to as "Tenant"), of the other part.

W I T N E S S E T H:

ARTICLE I.
Premises

Section 1. Landlord hereby leases to Tenant, and Tenant hereby leases from Landlord, upon and subject to the terms and provisions of this lease, the portion of the building hereinafter more particularly described, which building is a part of the Wonderland Plaza Shopping Center located in the City of Revere, State of Massachusetts (hereinafter referred to as the "Shopping Center") together with (a) the non-exclusive easement, right and privilege for Tenant and its customers, employees and invitees and the customers, employees and invitees of any assignee, sublessee, concessionaire or licensee of Tenant, to use the common areas of the Shopping Center without charge (except as specifically provided in this lease) in common with Landlord and the other tenants and occupants within the Shopping Center and their respective customers, employees and invitees; and (b) such other easements, rights and privileges as may be granted to Tenant pursuant to the terms hereof. The boundaries of the Shopping Center are shown on the Site Plan annexed hereto and made a part hereof as Schedule "A-1" (hereinafter referred to as the "Site Plan") and a metes and bounds description thereof is annexed hereto and made a part hereof as Schedule "A-2". The premises demised pursuant to this lease (hereinafter referred to as the "demised premises") consist of approximately 31,105 square feet of ground floor area designated on the Site Plan. The demised premises is also sometimes hereinafter referred to as the "Building".

time limits set forth therein, and Landlord agrees to do all of the same in accordance with the provisions of said Schedule "B". Landlord agrees to substantially complete the construction of all common areas (meaning complete except for normal and customary punch-list items), the completion of which is not required by the Delivery Date (as defined in Schedule B) not later than the Commencement Date (except as to landscaping which may be delayed for seasonal plantings), such construction to not unreasonably interfere with Tenant's work under Section 2 of this ARTICLE VIII.

Section 2. Except for Landlord's Work as provided in Section 1 hereof, Tenant shall do any and all work which Tenant desires to adapt the demised premises to Tenant's use and, as provided in Section 2 of ARTICLE XI, Tenant shall maintain liability insurance during such period (and thereafter). Tenant shall do all of such work in a good and workmanlike manner and in a manner required by applicable codes so that, insofar as Tenant's work is concerned, Landlord will be able to secure for Tenant an Occupancy Permit (as defined in Schedule "B" hereto) from applicable authorities to enable Tenant to open and conduct business in the demised premises. If the Occupancy Permit will not issue by reason of work done, or failed to be done, by Landlord (and not because of the manner in which Tenant shall have done its work), or by reason of any condition of the Shopping Center or the building of which the demised premises are a part, then it shall be the responsibility of Landlord to remedy the situation so as to enable it to secure the Occupancy Permit for Tenant.

ARTICLE IX.

Use Clause and Restrictions

Section 1. Tenant agrees to open for business in the demised premises within eighty (80) days of the Commencement Date. The demised premises may be used for any lawful retail use (and for office and storage ancillary thereto). At present, Tenant intends to use the demised premises for the sale of clothing, shoes, giftware, jewelry, luggage and domestics; but Tenant may also use the demised premises for any other lawful retail use and may cease operating in the demised premises (once having opened) as provided in Section 6 of ARTICLE IV of this lease.

Set forth on Schedule "D" hereto annexed and hereby made a part hereof, is a list of use restrictions or exclusives which affect the use which may be made of the demised premises; and Landlord warrants and represents that except for the matters set forth in said Schedule, there are no other exclusives or private use restrictions outstanding which

-14-

would in any manner derogate from Tenant's right to use the demised premises as set forth above; and Landlord agrees not to enter into any future agreements which would contain provisions which may derogate from the uses to which the demised premises may be put under this lease. For such period of time as the restrictions or exclusives set forth in said Schedule "D" shall be outstanding, and shall be valid and enforceable in accordance with applicable law, Tenant agrees that its operations in the demised premises shall not violate said restrictions or exclusives.

Section 2. Landlord specifically agrees with Tenant as follows:

A. In recognition of the fact that the following types of operations would unduly burden the parking areas serving the demised premises and would hamper the use of said parking areas by customers of Tenant, Landlord will not lease, sell, or otherwise permit (i) any structure within the Shopping Center to be used in whole or in part as a food supermarket (except as designated on the Site Plan), bar, theatre of any kind, bowling alley, skating rink, amusement park, carnival, meeting hall, "disco" or other dance hall, sporting event or other sports facility, auditorium or any other like place of public assembly; or (ii) except on outparcel locations specifically shown on the Site Plan, any restaurant within two hundred (200) feet of the demised premises.

B. Landlord agrees during the term of this lease that it will not lease, sell or otherwise permit any structure within the Shopping Center to be used in whole or in part for any manufacturing operation; as a factory; for any industrial usage; as a warehouse, processing or rendering plant; for any establishment selling cars (new or used), trailers, mobile homes; for the operation of a billiard parlor, amusement center, flea market, massage parlor or carnival; for a so-called "off-track betting" operation; or for the sale or display of pornographic materials (the foregoing collectively referred to in this lease as the "Obnoxious Uses").

C. Landlord acknowledges that Tenant is paying a rent in excess of that which Tenant would otherwise pay by reason of Landlord having agreed that Tenant is entitled to be the sole major retailer of brand-name apparel at discount prices in the Shopping Center. Accordingly, if Landlord permits any one occupant of the Shopping Center (or any affiliate of such occupant), other than Tenant or any occupant of the building(s) initially leased to Stop & Shop (but only so long as the Stop & Shop Lease is in effect), to use more than ten thousand (10,000) square feet of sales and display area for the sale or display at discount prices of brand-name apparel, then minimum rent and percentage rent payable pursuant hereto shall be reduced to fifty percent (50%) of the amount otherwise payable under this lease,

and such reduction in rent shall remain effective for so long as any such use by another tenant of the Shopping Center continues.

Section 3.

A. It is specifically understood and agreed that Tenant may keep open for business beyond the closing hours of others, and may also, if not prohibited by law, keep open for business on other than regular business days.

B. Tenant specifically agrees with Landlord that Tenant will not use and will not permit any entity occupying all or a part of the demised premises by, through or under Tenant to use, the demised premises as a food supermarket, bar, theatre of any kind, bowling alley, skating rink, amusement park, carnival, meeting hall, "disco" or other dance hall, sporting event or other sports facility, auditorium or any other like place of public assembly, or for any of the Obnoxious Uses.

Section 4. With regard to assignment and subletting:

A. Tenant shall have the right, with the prior consent of Landlord which shall not be unreasonably withheld or delayed, to assign, sublet, concession or license the whole or any portion of the demised premises, which assignment, subletting, licensing or concessioning shall be for uses permitted hereunder. No such assignment, subletting, licensing or concessioning shall release Tenant named herein from any of its obligations hereunder, and all gross sales of the assignee(s), sublessee(s), licensee(s), or concessionaire(s) shall be included within the term "gross sales" as used in this lease in the determination of percentage rent. In the event of any such assignment, sublet, concession or license, Tenant shall pay to Landlord as additional rent under this lease, annually not later than the date on which percentage rent for the prior calendar year would be due, fifty percent (50%) of the "profit", if any, with respect to such prior calendar year which is paid to Tenant under such assignment, sublease, concession or license. For purposes of the foregoing, "profit" shall mean all rent and other consideration for the portion of the demised premises with respect to which such payment is made less the sum of (i) the rent and other charges, including percentage rent, payable by Tenant under this lease (exclusive of the payment under this subsection A) with respect to the same period and attributable (proportionately, based on square footage) to such portion of the demised premises; and (ii) that portion of the cost, amortized ratably over the term of the assignment, sublease, concession or license, of brokerage fees, tenant improvement costs and the like incurred by Landlord in connection with such assignment, sublease, license or concession