**<u>EXHIBIT 1</u>**

Lease Sale Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administrated) |
| | **Re: Docket No. 1556 & 2261** |

**ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE
BANKRUPTCY CODE AUTHORIZING THE DEBTORS-IN-
POSSESSION TO ASSUME, ASSIGN AND SELL
<u>CERTAIN NON-RESIDENTIAL REAL PROPERTY LEASES</u>
(Store Nos. 5489, 5284, 5172, 1205, 1807, 5345, 4565, 1517 & 1874)**

Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**"), each of which is a

debtor and debtor in possession in the Chapter 11 Cases, for an order pursuant to sections 105, 363

and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006 and 9014, and Local

Rule 6004-1, having received a Notice of Designation of Designated Asset from Gordon Brothers

Retail Partners, LLC ("**GBRP**") in accordance with Section 2.05(b) of the APA[2] and Paragraph

43 of the Sale Order, with respect to those certain unexpired leases of non-residential real

properties for the premises identified in <u>**Exhibit A**</u> hereto (each, a "**Lease**" and collectively, the

"**Leases**"); and the Debtors having filed and served a Designated 365 Contract Notice (the

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used herein and not otherwise defines shall have the meanings ascribed thereto in the Court's *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1556] (the "**Sale Order**").

"**Designation Notice**") seeking, *inter alia*, (i) to assume and assign the Leases to ALDI Inc. (or a designee thereof) (hereinafter, the "**Assignee**"); and (ii) such additional and related relief as provided by the Sale Order; and the Court having determined that the legal and factual bases for the relief requested herein establish just cause for the relief granted herein; and after due deliberation and good and sufficient cause appearing therefor;

NOW, **THEREFORE**, the Court hereby finds as follows:

A.      After good and sufficient notice of the Designation Notice having been provided in accordance with the Designation Rights Procedures, and a reasonable opportunity to object or be heard regarding the proposed assumption and assignment of the Leases has been afforded to the applicable 365 Counterparties (each, a "**Landlord**" and collectively, the "**Landlords**") in accordance with the Designation Rights Procedures.

B.      The assumption, assignment and sale of the Leases to Assignee, and the transfer of the assets related thereto, including any property and furniture, fixtures and equipment (the "**Related Assets**") to the Assignee as applicable, pursuant to Sections 363 and 365 of the Bankruptcy Code is in the best interests of the Debtors, their estates and their creditors, and is consistent with the terms of the APA and Sale Order, respectively.

C.      Pursuant to Sections 365(b)(1)(C), 365(f)(2)(B) and 365(b)(3) of the Bankruptcy Code, to the extent required under the Sale Order, Assignee has provided adequate assurance of future performance under the Lease.

D.      The assumption and assignment of the Leases to Assignee is in compliance with Section 365(b)(3) of the Bankruptcy Code.

E.      The Assumption and Assignment Agreements, dated as of March 11, 2025 and attached hereto as **Exhibit B** (the "**Assignment Agreement**"), between and among the Debtors,

GBRP, and Assignee was negotiated and entered into in good faith, and from arm's length bargaining positions. Assignee is hereby found to be a good faith purchaser of the Leases and Related Assets and is found to be entitled to the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT**

1.      Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, the applicable Debtor is hereby authorized to assume, sell and assign to Assignee the Leases, pursuant to the terms and provisions of this Order, the APA, the Sale Order, and the Assignment Agreements, all of the terms of which are hereby approved.

2.      In accordance with Section 363 of the Bankruptcy Code, effective as of the occurrence of a closing of the assignment of the Leases under the Assignment Agreements (such date being hereinafter defined as the "**Closing Date**"), the Leases and the Related Assets shall be transferred free and clear of any leasehold mortgages, subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, interests, mechanics liens, bills, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances. For the avoidance of doubt, except as otherwise agreed among the Parties or as set forth herein, Assignee shall not have any responsibility or liability for any Excluded Liabilities (as defined in the APA).

3.      Upon the entry of this Order and the occurrence of the Closing Date, Assignee shall be deemed to have assumed and succeeded to the entirety of the Debtors' rights and obligations in and to the Leases which are due and owing from and after the Closing Date and shall have the rights of the tenant thereunder.

4.      Upon entry of this Order and the occurrence of the Closing Date, Assignee is a good faith purchaser and shall be entitled to the protections of Bankruptcy Code Section 363(m).

5.      Pursuant to Section 365(b)(l) of the Bankruptcy Code, to the extent Cure Costs are owed to any of the Landlords, the Cure Costs shall be promptly paid by Assignee. Any objection of the Landlords to the assumption or assignment or transfer of the Leases, any Cure Cost, or seeking further adequate assurance of future performance other than that provided in the Assignment Agreement, to the extent not otherwise resolved by agreement, or by agreement contemplated to be heard after the date of any hearing to be held in connection with the Designation Notice, or disposed of by separate order of this Court, is hereby overruled. There shall be no accelerations, assignment fees, increases, or any other fees charged to GBRP, Assignee, or the Debtors as a result of the assumption and assignment of the Leases. Upon remittance of the Cure Costs by Assignee to the Landlords pursuant to the terms of this Order, the Landlords shall be barred from asserting any additional cure amounts or other claims with respect to the Leases for amounts that were due and owing or accrued as of the Closing Date. For the avoidance of doubt, the Landlords shall be forever (i) barred from objecting to the applicable Cure Costs and from asserting any additional cure or other amounts with respect to the Leases, and the Debtors and Assignee shall be entitled to rely solely upon the Cure Costs set forth above and (ii) barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, GBRP or Assignee, or their respective property that any additional amounts were due and owing or accrued or other defaults existed as of the Closing Date, that conditions to assignment must be satisfied under the Leases, or that there is any objection or defense to the assumption or assumption and assignment of the Leases. On and after the Closing Date, Assignee shall be responsible for paying

(and shall be entitled to receive any credits for) all amounts outstanding under the Leases due on or after the Closing Date.

6.      The proceeds of the Lease sales shall be payable to GBRP in accordance with the APA and Sale Order, respectively.

7.      All personal property and furniture, fixtures and equipment ("**FF&E**") and other Related Assets remaining in the stores subject to the Leases on or after the Closing Date shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as of the Closing Date. Assignee may, in its sole discretion and without further order of this Court, utilize and/or dispose of such property without notice or liability to the Debtors or any consenting third parties and, to the extent applicable, the automatic stay is modified to allow such disposition; provided, that the Debtors shall not sell or abandon any property that the Debtors know is not owned by the Debtors; provided, further, that the Debtors will either (a) provide for the return of such property to the Headquarters (as defined below) or (b) return such property to the applicable lessor, or other owner of the property; provided, however, that the Debtors may leave in place property owned by the applicable Landlord at the applicable Store.

8.      Any party which did not object within the time set forth in the notice thereof is deemed to consent to the Debtors' assumption and assignment of the Leases, and the satisfaction of the requirements of Section 365 of the Bankruptcy Code. Upon the sale and assignment of the Leases, payment of the Cure Costs and the transfer of the FF&E and other Related Assets referenced immediately above, as applicable, shall relieve the Debtors from any further liability pursuant to Section 365(k) of the Bankruptcy Code.

9.      Solely with respect to the transactions contemplated by this Order and the Assignment Agreements, and except as otherwise agreed between the applicable Landlord and

Assignee, nothing in this Order shall be deemed to annul or vary any provision of the Leases *other than* the following provisions in the Leases (the "**Unenforceable Provisions**"):

      a.      a provision prohibiting Assignee's intended use of the premises (including, for the avoidance of doubt, any restrictions on the sale of alcoholic beverages or the sale of groceries or operation of a grocery store);

      b.      a provision unreasonably prohibiting necessary alterations to the premises or signage required to convert the premises to Assignee's intended use, including structural and exterior alterations; provided such alterations are deemed necessary by Assignee to conform such store to Assignee's typical retail store consistent with the Assignee's intended use of the premises;

      c.      a provision commonly referred to as a "going dark" or "continuous operations" provision, providing in substance for a forfeiture of the Lease or an increase in rent or other penalty by reason of the Debtors', GBRP's or Assignee's cessation of retail operations before the assignment, and/or any delay by Assignee in reestablishing retail operations after the assignment, to the extent any such provision does not permit Assignee to "go dark" until the later of: (i) two hundred seventy (270) days after the Closing Date of the assignment of the Lease, or such later time, when the particular facts and circumstances of a given store warrant additional time, which circumstances shall include, without limitation, the age and condition of the shopping center, the ability to obtain any permits and documents necessary to complete construction, the location of the premises in the shopping center, the shape of the premises to be assigned, the demographics of the shopping center's location and the overall quality of the shopping center and its existing tenants or (ii) the "going dark period" listed in the applicable Assignment Agreement;

d.      a provision conditioning assignment on Landlord consent, or requiring payment to the Landlord as the price of assignment, or granting Landlord the right to recapture the leased premises following the assignment;

e.      a provision effecting forfeiture or a modification of any of Assignee's rights or obligations presently in effect under the Leases upon an assignment by the Debtors of the Lease;

f.      a provision conditioning the Debtors' ability to assign their leasehold rights upon any terms not otherwise required under the Bankruptcy Code;

g.      a provision restricting Assignee's ability to place reasonable signage on the premises; provided, that such signage is deemed necessary by Assignee to conform such store to Assignee's typical retail store consistent with Assignee's intended use of the premises;

h.      a provision requiring the use of a certain tradename;

i.      a provision regarding minimum sales revenues required to be satisfied at the premises covered by the Lease; and

j.      any radius provisions set forth in the Lease to the extent applicable to any existing Assignee stores located near the Debtors' premises (but such radius provisions shall at all times apply to any new stores which might be opened by Assignee in the area of Debtors' premises after the Closing Date);

provided that, for the avoidance of doubt, the Unenforceable Provisions are only unenforceable as against Assignee and its affiliates and the Unenforceable Provisions and all other provisions in the Lease shall be fully enforceable in any future assignment to an unaffiliated third-party unless expressly waived in writing by the Landlord.

7

10.     Solely with respect to the transactions contemplated by this Order, the Sale Order, and the Assignment Agreements, and except as otherwise agreed between the applicable Landlord and Assignee, none of the Unenforceable Provisions shall apply to Assignee in any respect and, without limiting the generality of the foregoing, no violation by the Debtors or Assignee of the Unenforceable Provisions shall constitute an event of default under any of the Leases.

11.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and Assignee are authorized to close the sale of the Leases set forth in the Assignment Agreements immediately upon entry of this Order. Time is of the essence in closing the Lease sale transactions referenced herein, and the Debtors and Assignee intend to close the Lease sale transactions as soon as practicable. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order.

12.     Upon entry of this Order, this Order and the findings hereunder shall be binding upon all parties to the Leases and the Assignment Agreements.

13.     Upon the entry of this Order and the occurrence of the Closing Date, the Landlords shall accept and honor the assignment of the Leases to Assignee.

14.     The Landlords shall cooperate and expeditiously execute and deliver, within ten (10) days of any reasonable requests of Assignee and at no cost to the Landlords, any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, opening and operating of the properties as contemplated under the Assignment Agreements.

15.     Notwithstanding anything to the contrary in this Order, the Assignment Agreements or any side letters, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) shall be abandoned, sold, assigned, or otherwise transferred without the express prior written consent of the Assignee and applicable insurer and/or third-party administrator.

16.     Any party which did not object to the Cure Cost and adequate assurance information provided to the Landlords within the time set forth in the notice is deemed to consent to the Debtors' assumption and assignment or termination of the Assigned Leases and the satisfaction of the requirements of Section 365 of the Bankruptcy Code.

17.     This Court shall retain jurisdiction (i) to construe and determine any disputes under this Order, (ii) to enforce and implement the terms and provisions of the Assignment Agreements, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, and (iii) to resolve any disputes arising under or related to the Lease sales (but all Landlord/tenant disputes arising after the Closing Date which do not involve the Lease sales, the Assignment Agreements, this Order or the Debtors shall not be subject to the jurisdiction of this Court).

18.     The Debtors and Assignee are hereby authorized and directed to execute and deliver any and all documents, and to do all things reasonably necessary, to effectuate the purposes of the Assignment Agreements, this Order, to transfer the Debtors' interests in and to the Leases, in accordance with the terms of the Assignment Agreements, and to carry out the terms and conditions of the Assignment Agreements.

19.     Assignee is not a successor in interest to the Debtors (other than with respect to the Debtors' rights and obligations under the Leases first accruing after Assignee takes assignment thereunder as provided for under the Assignment Agreements), or their bankruptcy estates as a result of Assignee taking title or possession of the Leases and the subject premises, and Assignee is not assuming any liabilities or obligations of the Debtors or their bankruptcy estates, except as may be specifically provided for in the Assignment Agreements.

20.     This Order shall be effective and enforceable after its entry as provided by Bankruptcy Rule 7062.

21.     Any remaining objections to the assignment of the Leases that have not been withdrawn, waived, adjourned, or settled, and all reservations of rights included in such objections, are overruled in all respects and denied.

22.     Notwithstanding anything to the contrary set forth in the APA, the Assignment Agreement, or this Order, Assignee shall not have any obligations in respect of any portion of any payments, including, without limitation, any year-end (or other) adjustment (including, without limitation, for royalties, rents, utilities, taxes, insurance, fees, any common area or other maintenance charges, promotional funds and percentage rent), arising under any Lease or any related agreements that are attributable to any period prior to the Closing Date, and any such amounts are expressly included in the Cure Costs and shall be deemed satisfied in full upon payment of the Cure Costs. Any provision in the Leases regarding percentage rent to the extent of Debtors' sales prior to the Closing Date shall not be imputed against Assignee, provided that Assignee shall be liable for percentage rent for the prorated portion of calendar year 2025 remaining after the Closing Date for a partial calendar year as if the term began on the Closing Date (and Assignee shall not be liable to pay any percentage rent based upon sales that occurred

prior to the Closing Date) and no percentage rent is due and owing by Assignee for the period prior to the Closing Date.

23.    To the extent there is any inconsistency between the terms of this Order and the terms of the Assignment Agreements (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

24.    To the extent that Assignee and any of the Landlords enter into a side letter with respect to one or more Leases, such side letter shall govern with respect to rights and obligations of Assignee and the applicable Landlord.  For the avoidance of doubt, no side letter shall modify the rights and obligations of any third party without such third party's consent.

25.    The failure to specifically include any particular provision of the Assignment Agreements or other related documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Assignment Agreements and all other related documents be authorized and approved in their entirety pursuant to this Order.

26.    The Assignment Agreements and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement is consistent with this Order and does not have any adverse effect on the Debtors' estates; provided, further, that the Debtors shall provide any such modification, amendment, or supplement of the Assignment Agreement to the applicable Landlords and the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases no less than one (1) day prior to execution of such modification, amendment, or supplement; provided, further, that after the occurrence of the Closing Date, the final versions of the Assignment Agreements any

related agreements, documents or other instruments (as modified, amended or supplemented) shall be filed with the Court.

**EXHIBIT A**

| Store No. | Address | Debtor Entity | Landlord | Assignee | Cure Costs |
|---|---|---|---|---|---|
| 5489 | 130 Covington Mall Andalusia, AL 36420 | Big Lots Stores, LLC | Covington Mall LLC<br><br>Michael Jackson covingtonmall@yahoo.com | ALDI Inc.<br><br>Corinne Franco corinne.franco@aldi.us | $36,599 |
| 5284 | 1538 North Morton St., Franklin, IN 46131 | Big Lots Stores, LLC | Heidner Properties, Inc.<br><br>Bob Dellutri bob.dellutri@heidnerinc.com | ALDI Inc.<br><br>Corinne Franco corinne.franco@aldi.us | $9,460.33 |
| 5172 | 29712 Southfield Rd., Southfield, MI 48076 | Big Lots Stores, LLC | Kimco<br><br>Gordon Ashby gashby@kimcorealty.com | ALDI Inc.<br><br>Corinne Franco corinne.franco@aldi.us | $70,094.03 |
| 1205 | 2000 N Locust Ave, Lawrenceburg, TN | Big Lots Stores, LLC | BC Wood Properties<br><br>King Offutt king@bcwoodproperties.com | ALDI Inc.<br><br>Corinne Franco corinne.franco@aldi.us | $4,112 |
| 1807 | 2418 W Main St., Durant, OK | Big Lots Stores, LLC | Fifth Generation Investments<br><br>Aaron Bumgaars abomgaars@bomgaars.com | ALDI Inc.<br><br>Corinne Franco corinne.franco@aldi.us | $ - |
| 5345 | 791 West Elk Ave., Elizabethton, TN | Big Lots Stores, LLC | Carrington Company<br><br>Greg Cutler gabe@thecarrco.com | ALDI Inc.<br><br>Corinne Franco corinne.franco@aldi.us | $66,084.02 |
| 4565 | 850 N Bell Blvd., Cedar Park, TX | Big Lots Stores-PNS, LLC | Agree Realty<br><br>David Darling ddarling@agreerealty.com | ALDI Inc.<br><br>Corinne Franco corinne.franco@aldi.us | $89,931.20 |

| 1517 | 126 Boston St., Lynn, MA | Big Lots Stores, LLC | Allen Associates<br><br>Doug Allen<br>dwa@allenpropertiesinc.com | ALDI Inc.<br><br>Corinne Franco<br>corinne.franco@aldi.us | $63,151.93 |
|---|---|---|---|---|---|
| 1874 | 2209 W Dekalb St., Camden, SC | Big Lots Stores, LLC | River Oaks Shopping Center<br><br>Ann McGraw<br>billsmorr@yahoo.com | ALDI Inc.<br><br>Corinne Franco<br>corinne.franco@aldi.us | $6,074.60 |

## __EXHIBIT B__

**Assumption & Assignment Agreements**

(see attached)

Docusign Envelope ID: BC41836A-9779-4B33-B2A3-AC659EBC6BF5

*Execution Copy*

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the '_Agreement_") is made as of this 11th day of March, 2025 by and between Big Lots Stores, LLC and Big Lots Stores □ PNS, LLC (the '_Debtors_" or '_Assignors_"), Gordon Brothers Retail Partners, LLC ('_GBRP_") and Aldi Inc. ('_Assignee_" and together with Assignors and GBRP the '_Parties_" and each, a '_Party_").

## RECITALS

WHEREAS, Assignors, along with their affiliated debtors and debtors in possession, have filed voluntary petitions for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. □□101, et seq. (as amended, the '_Bankruptcy Code_"), in the United States Bankruptcy Court for the District of Delaware (the '_Bankruptcy Court_"), jointly administered under case_In re Big Lots, Inc._, Case No. 24-11967 (Bankr. D. Del. 2024);

WHEREAS, pursuant to Section 2.05(b) of that certain Asset Purchase Agreement (the '_APA_") dated as of January 3, 2025 by and between Assignors and GBRP, GBRP has the right to designate certain contracts or leases for assumption and assignment to itself or its designee(s);

WHEREAS, GBRP is conducting '_store closing_" or other liquidation sales at certain of Assignors□retail stores and distribution centers (each, a '_GOB Sale_") and has engaged Gordon Brothers Realty Services, LLC ('_GBRS_" and, together with GBRP, '_Gordon Brothers_") as its agent to assist with the disposition of Assignors□leases to be effective upon the conclusion of the applicable GOB Sale (each, a '_Vacate Date_");

WHEREAS, Assignors have agreed to assign and Assignee has agreed to assume the real property lease(s) listed on the attached Schedule A (referred to as the '_Lease(s)_") with respect to the premises set forth on Schedule A (the '_Premises_") pursuant to the terms of the *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors*□ *Assets Free and Clear of All Claims, Liens, Rights, Interests, Encumbrances and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 1556], subject to approval by the Bankruptcy Court in the Chapter 11 Cases (the '_Sale Order_") and to the terms of this Agreement;

WHEREAS, GBRP wishes to exercise its designation rights under the APA in respect of the APA in favor of the Assignee;

WHEREAS, Assignee intends to occupy and use the Premises for operation of the Assignee's prototypical '_Aldi Food Market_" retail grocery store and other uses as are incidental to the operation of a retail grocery store (including, without limitation, the sale of beer, wine, and spirits) or for any other lawful retail purposes allowed by the Leases (the '_Intended Use_");

Docusign Envelope ID: BC41836A-9779-4B33-B2A3-AC659EBC6BF5

*Execution Copy*

WHEREAS, the Parties intend to obtain an order of the Bankruptcy Court approving the assignment of the Leases to Assignee on terms acceptable to the Assignee (each a '_Lease Assignment Order_'), substantially in the form attached hereto as _Exhibit B_ with only such changes as required by the Bankruptcy Court and acceptable to GBRP and the Assignees (such acceptance not to be unreasonably withheld); and

NOW, THEREFORE, in consideration of the premises and the mutual agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1.    Assignment and Assumption.

(a)    Each Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of such Assignor's right, title and interest in and to all Leases and all rights under the Leases and all improvements and fixtures thereon which constitute real property under applicable law, and all rights, benefits, privileges, easements, hereditaments, tenements, covenants, common interests, rights-of-way and appurtenances appurtenant thereto, subject to the terms and conditions of the Leases (the '_Acquired Assets_') free and clear (subject to this Agreement's express terms regarding the assumption/cure of certain liabilities) of leasehold mortgages (if any), subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, mechanics liens, bills, interests, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances on the Closing Date (as defined below), subject to payment of the Purchase Price upon the Closing Date by the Assignee and entry of the Lease Assignment Order.

(b)    Except as may be agreed in writing by the Assignee and the landlord or provided in the Lease Assignment Order, subject to entry of the Lease Assignment Order and occurrence of the Closing Date, Assignee shall, at Closing, assume and undertake to pay, perform, and discharge all of Assignors'obligations and duties with respect to the Leases arising after the Closing Date; _provided, however,_ the Assignee shall not be responsible for and does not assume any responsibility for any personal injury or property damage claims or any other liabilities that accrued or arose before the Transfer Date.

(c)    On the Closing Date (as defined below and which shall be no later than the Transfer Date), Assignors shall surrender the Premises to Assignee, deliver possession thereof to Assignee and deliver all access codes and keys (or written confirmation that Assignee is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Assignee, subject to payment of the Purchase Price upon the Closing Date by the Assignee and entry of the Lease Assignment Order.

2

*Execution Copy*

(d)    GBRP agrees that it will exercise its designation rights in respect of the Leases solely in favor of Assignee, and from and after the date hereof and prior to the Closing Date, it shall not exercise any designation rights in respect of any Lease in favor of any other person.

(e)    GBRP and the Assignors shall not (a) amend, supplement or modify in any fashion (or terminate or enter into) any Lease or, without the prior approval of Assignee, (b) grant or terminate any other interests in the Lease or any related Acquired Asset, without the approval of Assignee, (c) cancel or compromise any claim or waive or release any right, in each case that is related to the Lease or any related Acquired Asset, (d) seek or obtain an order approving rejection of any Lease, (e) sell, lease (as lessor), license (as licensor), transfer or otherwise dispose of (including via termination or modification of any Assigned Lease), or mortgage or pledge, or voluntarily impose or suffer to be imposed any Encumbrance on, any Lease or any premises subject to such Lease (a "Premises") or any related Acquired Assets (except to Assignee pursuant to the terms of this Agreement), or (f) enter into any agreement or negotiation related to or take any other action in furtherance of the assignment of any Lease to any person other than Assignee pursuant to the terms hereof.

(f)    If Assignors cannot deliver possession of a Premises by the Transfer Date[1] (subject to Section 19 hereof), such Lease will no longer be assigned under this Agreement (in such instance, such Lease being deemed a "Removed Lease")

2.    Payment of Purchase Price.  On the date the assignments contemplated hereby close (the "Closing Date"), Assignee shall pay to GBRP, an amount equal to $███████ in immediately available funds (the "Purchase Price"), *provided* that if any Lease becomes a Removed Lease in accordance with the terms herewith, the Purchase Price will be reduced by the corresponding value (the "Individual Lease Value") of such Removed Lease assigned to it on Exhibit A. The Individual Lease Value includes the amount of estimated Cure Costs associated with each corresponding Assigned Lease (the "Estimated Cure Costs"). For the avoidance of doubt, to the extent that the actual Cure Costs required to be paid by Assignees in order to complete the assignment of a given Lease (the "Actual Cure Costs") exceed the Estimated Cure Costs, the Purchase Price and the Individual Lease Value shall remain unchanged and the portion of the Purchase Price payable to GBRP on the Closing Date shall be reduced by a corresponding amount. In the event that the Actual Cure Costs exceed the Individual Lease Value, the corresponding Assigned Lease shall be designated as a Removed Lease.

3.    Payment of Cure Costs. Subject to Section 2 above, Assignee shall pay to the applicable landlord the Cure Costs associated with such Lease. Neither Assignee nor GBRP shall

---

[1]    "Transfer Date" shall mean March 15, 2025; provided, that Assignors and GBRP shall have the right to extend the applicable Transfer Date to enable GBRP to conclude ongoing GOB Sales at certain locations, subject to GBRP's agreement to pay all occupancy-related expenses on a per diem basis for each day beyond March 15, 2025 that turnover of possession is delayed; provided, further, that, (a) in no event shall the Transfer Date be extended past April 1, 2025, and (b) Assignors and GBRP shall permit reasonable access to the Premises to employees and agents of the Assignee beginning on March 15, 2025 in order that Assignee may take reasonable preliminary steps to begin preparing the Premises for its Intended Use.

Docusign Envelope ID: BC41836A-9779-4B33-B2A3-AC859EBC6BF5

*Execution Copy*

have any obligations in respect of any portion of any payments, including, without limitation, any year-end (or other) adjustment (including, without limitation, for royalties, rents, utilities, taxes, insurance, fees, any common area or other maintenance charges, promotional funds and percentage rent), arising under any Leases that are attributable to any period prior to the Closing Date, which amounts shall be included in the Cure Costs.

4.    No Further Liability of Assignors.  From and after the Closing Date, and subject to the occurrence of the Closing Date, except as otherwise provided herein or in the Lease Assignment Order, Assignors shall have no further obligations and duties with respect to the Lease(s).

5.    Further Assurances.  At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignors or GBRP, as applicable, shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Lease(s).

6.    'As Is Where Is" Transaction.  Assignee hereby acknowledges and agrees that Assignors make no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Lease(s). Without limiting the foregoing, Assignors hereby disclaim any warranty (express or implied) of merchantability or fitness for any premises subject to the Lease(s). Assignee further acknowledges that Assignee has conducted an independent inspection and investigation of the physical condition of premises subject to the Lease(s) and all such other matters relating to or affecting the Lease(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Lease(s), Assignee is doing so based upon such independent inspections and investigations. Accordingly, Assignee will accept the Lease(s) 'AS IS" and 'WHERE IS."

7.    Compliance With Law.  Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignors harmless for any violation or alleged violation of this section with respect to the leases being conveyed by Assignor pursuant to the terms hereof.

8.    Governing Law.   This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

9.    Jurisdiction.  The Parties consent to the exclusive jurisdiction of, and entry of final orders and judgments by, the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, *forum non conveniens,* or any similar grounds and

Docusign Envelope ID: BC41836A-9779-4B33-B2A3-AC659EBC6BF5

*Execution Copy*

irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10.    No Reliance. Except as expressly set forth in this Agreement, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

11.    Construction. This Agreement has been drafted through a cooperative effort of each of the Parties, and no Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties

12.    Entire Agreement. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement and supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the Parties respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the Parties further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

13.    Counterparts. This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

14.    Going Dark. In order to facilitate Assignee's Intended Use, Assignee shall be permitted to delay reestablishing retail operations for a period of time of no more than 270-days (the 'Going Dark Period"). It is a condition precedent to the assignment of the Leases contemplated herein that the Lease Assignment Order permit the Going Dark Period.

15.    Reserved.

5

16.    <u>Assignment Free and Clear of Alcohol Sale and Grocery Restrictions</u>. It is a condition precedent to the assignment of the Leases contemplated herein that the assignment of the Leases must be made free and clear of any restrictions on (a) the sale of alcoholic beverages or (b) the sale of groceries of operation of a grocery store contained in any of the Leases

17.    <u>Termination</u>. This Agreement may be terminated prior to the Closing Date by Assignee or GBRP either (x) in the event of any breach by Assignors of any of its agreements contained herein (*provided* that the terminating party, is not in material breach of its agreements or covenants contained herein) or (y) the Closing Date does not occur on or prior to the deadline for assumption or assignment under 11 U.S.C. §365(d)(4), as such deadline may be extended with respect to each applicable Lease. This Agreement may be terminated by Assignee prior to the Closing Date if (1) Assignors or GBRP are in material breach of their obligations under the APA, which breach would impair the ability of the Assignors or GBRP to complete the transactions subject to this Agreement, (2) the Sale Order or the Lease Assignment Order shall be vacated, amended, modified, or waived without the prior consent of the Assignee, (3) GBRP or the Assignors breach any of their respective agreement contained herein (*provided* that the terminating party, is not in material breach of its agreements or covenants contained herein), (4) either Assignors or GBRP take any action in furtherance of any transaction in respect of the Leases, other than the transaction set forth in this Agreement, (5) with respect to each Lease, Assignors are unable to deliver possession of such Premise by the Transfer Date.

18.    <u>Conditions to Assignee's Obligations</u>. Assignee's obligations to consummate the assignment contemplated hereby and to assume any liabilities or pay any amounts contemplated hereby, including the Assignment, under this Agreement are further subject to, and expressly conditioned upon, (i) GBRP's compliance with the terms of the APA and the APA remaining in full force and effect at the time of the Closing Date, such that any non-compliance with the Asset Purchase Agreement does not result in a termination of GBRP's designation rights or impair the ability of the Assignors or GBRP to complete the transactions subject to this Agreement, (ii) all of the agreements in this Agreement to be complied with or performed by GBRP on or before the Closing Date having been complied with and performed by Assignors in all material respects, (iii) all GOB Sales and other liquidation sales proposed to be conducted at any of the Premises having concluded; (iv) the Lease Assignment Order shall have been entered and the period to appeal the Lease Assignment Order shall have expired without an appeal of the Lease Assignment Order having been filed; and (vi) Assignors delivery of possession of the Premises to Assignee by Transfer Date.

19.    <u>Termination Fee</u>. In the event that, prior to the Closing Date, GBRP shall either (a) exercise its designation rights in respect of any Lease to any party other than the Assignee, (b) determine to retain any Lease or not exercise their designation rights in favor of the Assignee in respect of any Lease, or (c) reserved, then GBRP shall pay to Assignee an amount equal to $▮▮▮▮▮ on the Transfer Date for each store to which this Section 19 is applicable. This Section 19 shall survive termination of this Agreement by any Party, except as otherwise agreed by Assignee.

6

Docusign Envelope ID: BC41836A-9779-4B33-B2A3-AC659EBC6BF5

IN WITNESS WHEREOF, the foregoing Agreement is dated effective as of the date and year first written above.

**BIG LOTS STORES, LLC**

By: _____
Name: Joshua H. Nanberg
Title:
      VP, Real Estate

**BIG LOTS STORES ☐PNS, LLC**

By: _____
Name:   Joshua H. Nanberg
Title:
      VP, Real Estate

**ALDI INC.**

By: _____
Name:
Title:

**GORDON BROTHERS RETAIL PARTNERS, LLC**

By: _____
Name: Richard Edwards
Title:  Head of NA Retail

*[Signature Page to A&A Agreement]*

IN WITNESS WHEREOF, the foregoing Agreement is dated effective as of the date and year first written above.


**BIG LOTS STORES INC,** on behalf of itself
and each other Assignor


By: _____
Name:
Title:

**ALDI INC.**


By: _____
Name: Robert Sitter
Title: Group Director Finance and Administration


**GORDON      BROTHERS      RETAIL
PARTNERS, LLC**


By: _____
Name:
Title:

*[Signature Page to A&A Agreement]*

Exhibit A – Schedule of Leases

| Store No. | Address | Landlord | | Actual Cure Costs |
|---|---|---|---|---|
| 5489 | 130 Covington Mall Andalusia, AL 36420 | COVINGTON MALL LLC | | $36,599 |
| 5284 | 1538 North Morton St., Franklin, IN 46131 | WMT FRANKLIN, L.L.C. | | $9,460.33 |
| 5172 | 29712 Southfield Rd., Southfield, MI 48076 | RPT REALTY LP | | $70,094.03 |
| 1205 | 2000 N Locust Ave, Lawrenceburg, TN | WOOD LAWRENCEBURG CENTER, LLC | | $4,112 |
| 1807 | 2418 W Main St., Durant, OK | FIFTH GENERATION INVESTMENTS LLC | | $ - |
| 5345 | 791 West Elk Ave., Elizabethton, TN | FRANCIS CARRINGTON | | $66,084.02 |
| 4565 | 850 N Bell Blvd., Cedar Park, TX | AGREE CEDAR PARK TX, LLC | | $89,931.20 |
| 1517 | 126 Boston St., Lynn, MA | LYNNGATE, LLC | | $63,151.93 |
| 1874 | 2209 W Dekalb St., Camden, SC | RIVER OAKS SHOPPING CENTER LLC | | $6,074.60 |
| Total | | | | $345,507.11 |