**EXHIBIT A**

| Store No. | Address | Debtor Entity | Landlord | Assignee | Cure Costs |
|---|---|---|---|---|---|
| 5489 | 130 Covington Mall Andalusia, AL 36420 | Big Lots Stores, LLC | Covington Mall LLC Michael Jackson covingtonmall@yahoo.com | ALDI Inc. Corinne Franco corinne.franco@aldi.us | $36,599 |
| 5284 | 1538 North Morton St., Franklin, IN 46131 | Big Lots Stores, LLC | Heidner Properties, Inc. Bob Dellutri bob.dellutri@heidnerinc.com | ALDI Inc. Corinne Franco corinne.franco@aldi.us | $9,460.33 |
| 5172 | 29712 Southfield Rd., Southfield, MI 48076 | Big Lots Stores, LLC | Kimco Gordon Ashby gashby@kimcorealty.com | ALDI Inc. Corinne Franco corinne.franco@aldi.us | $70,094.03 |
| 1205 | 2000 N Locust Ave, Lawrenceburg, TN | Big Lots Stores, LLC | BC Wood Properties King Offutt king@bcwoodproperties.com | ALDI Inc. Corinne Franco corinne.franco@aldi.us | $4,112 |
| 1807 | 2418 W Main St., Durant, OK | Big Lots Stores, LLC | Fifth Generation Investments Aaron Bumgaars abomgaars@bomgaars.com | ALDI Inc. Corinne Franco corinne.franco@aldi.us | $ - |
| 5345 | 791 West Elk Ave., Elizabethton, TN | Big Lots Stores, LLC | Carrington Company Greg Cutler gabe@thecarrco.com | ALDI Inc. Corinne Franco corinne.franco@aldi.us | $66,084.02 |
| 4565 | 850 N Bell Blvd., Cedar Park, TX | Big Lots Stores-PNS, LLC | Agree Realty David Darling ddarling@agreerealty.com | ALDI Inc. Corinne Franco corinne.franco@aldi.us | $89,931.20 |

| | | | | |
|---|---|---|---|---|
| 1517 | 126 Boston St., Lynn, MA | Big Lots Stores, LLC | Allen Associates<br>Doug Allen<br>dwa@allenpropertiesinc.com<br>River Oaks Shopping Center | ALDI Inc.<br>Corinne Franco<br>corinne.franco@aldi.us | $63,151.93 |
| 1874 | 2209 W Dekalb St., Camden, SC | Big Lots Stores, LLC | Ann McGraw<br>billsmorr@yahoo.com | ALDI Inc.<br>Corinne Franco<br>corinne.franco@aldi.us | $6,074.60 |

## EXHIBIT B

**Assumption & Assignment Agreements**

(see attached)

Docusign Envelope ID: BC41836A-9779-4B33-B2A3-AC659EBC6BF5

*Execution Copy*

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement") is made as of this 11th day of March, 2025 by and between Big Lots Stores, LLC and Big Lots Stores – PNS, LLC (the "Debtors" or "Assignors"), Gordon Brothers Retail Partners, LLC ("GBRP") and Aldi Inc. ("Assignee" and together with Assignors and GBRP the "Parties" and each, a "Party").

### RECITALS

WHEREAS, Assignors, along with their affiliated debtors and debtors in possession, have filed voluntary petitions for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), jointly administered under case *In re Big Lots, Inc.*, Case No. 24-11967 (Bankr. D. Del. 2024);

WHEREAS, pursuant to Section 2.05(b) of that certain Asset Purchase Agreement (the "APA") dated as of January 3, 2025 by and between Assignors and GBRP, GBRP has the right to designate certain contracts or leases for assumption and assignment to itself or its designee(s);

WHEREAS, GBRP is conducting "store closing" or other liquidation sales at certain of Assignors' retail stores and distribution centers (each, a "GOB Sale") and has engaged Gordon Brothers Realty Services, LLC ("GBRS" and, together with GBRP, "Gordon Brothers") as its agent to assist with the disposition of Assignors' leases to be effective upon the conclusion of the applicable GOB Sale (each, a "Vacate Date");

WHEREAS, Assignors have agreed to assign and Assignee has agreed to assume the real property lease(s) listed on the attached Schedule A (referred to as the "Lease(s)") with respect to the premises set forth on Schedule A (the "Premises") pursuant to the terms of the *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests, Encumbrances and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 1556], subject to approval by the Bankruptcy Court in the Chapter 11 Cases (the "Sale Order") and to the terms of this Agreement;

WHEREAS, GBRP wishes to exercise its designation rights under the APA in respect of the APA in favor of the Assignee;

WHEREAS, Assignee intends to occupy and use the Premises for operation of the Assignee's prototypical "Aldi Food Market" retail grocery store and other uses as are incidental to the operation of a retail grocery store (including, without limitation, the sale of beer, wine, and spirits) or for any other lawful retail purposes allowed by the Leases (the "Intended Use");

Docusign Envelope ID: BC41836A-9779-4B33-B2A3-AC659EBC6BF5

*Execution Copy*

WHEREAS, the Parties intend to obtain an order of the Bankruptcy Court approving the assignment of the Leases to Assignee on terms acceptable to the Assignee (each a '<u>Lease Assignment Order</u>"), substantially in the form attached hereto as <u>Exhibit B</u> with only such changes as required by the Bankruptcy Court and acceptable to GBRP and the Assignees (such acceptance not to be unreasonably withheld); and

NOW, THEREFORE, in consideration of the premises and the mutual agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1. <u>Assignment and Assumption</u>.

    (a) Each Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of such Assignor's right, title and interest in and to all Leases and all rights under the Leases and all improvements and fixtures thereon which constitute real property under applicable law, and all rights, benefits, privileges, easements, hereditaments, tenements, covenants, common interests, rights-of-way and appurtenances appurtenant thereto, subject to the terms and conditions of the Leases (the '<u>Acquired Assets</u>") free and clear (subject to this Agreement's express terms regarding the assumption/cure of certain liabilities) of leasehold mortgages (if any), subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, mechanics liens, bills, interests, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances on the Closing Date (as defined below), subject to payment of the Purchase Price upon the Closing Date by the Assignee and entry of the Lease Assignment Order.

    (b) Except as may be agreed in writing by the Assignee and the landlord or provided in the Lease Assignment Order, subject to entry of the Lease Assignment Order and occurrence of the Closing Date, Assignee shall, at Closing, assume and undertake to pay, perform, and discharge all of Assignors' obligations and duties with respect to the Leases arising after the Closing Date; <u>provided, however</u>, the Assignee shall not be responsible for and does not assume any responsibility for any personal injury or property damage claims or any other liabilities that accrued or arose before the Transfer Date.

    (c) On the Closing Date (as defined below and which shall be no later than the Transfer Date), Assignors shall surrender the Premises to Assignee, deliver possession thereof to Assignee and deliver all access codes and keys (or written confirmation that Assignee is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Assignee, subject to payment of the Purchase Price upon the Closing Date by the Assignee and entry of the Lease Assignment Order.

*Execution Copy*

(d) GBRP agrees that it will exercise its designation rights in respect of the Leases solely in favor of Assignee, and from and after the date hereof and prior to the Closing Date, it shall not exercise any designation rights in respect of any Lease in favor of any other person.

(e) GBRP and the Assignors shall not (a) amend, supplement or modify in any fashion (or terminate or enter into) any Lease or, without the prior approval of Assignee, (b) grant or terminate any other interests in the Lease or any related Acquired Asset, without the approval of Assignee, (c) cancel or compromise any claim or waive or release any right, in each case that is related to the Lease or any related Acquired Asset, (d) seek or obtain an order approving rejection of any Lease, (e) sell, lease (as lessor), license (as licensor), transfer or otherwise dispose of (including via termination or modification of any Assigned Lease), or mortgage or pledge, or voluntarily impose or suffer to be imposed any Encumbrance on, any Lease or any premises subject to such Lease (a "Premises") or any related Acquired Assets (except to Assignee pursuant to the terms of this Agreement), or (f) enter into any agreement or negotiation related to or take any other action in furtherance of the assignment of any Lease to any person other than Assignee pursuant to the terms hereof.

(f) If Assignors cannot deliver possession of a Premises by the Transfer Date[1] (subject to Section 19 hereof), such Lease will no longer be assigned under this Agreement (in such instance, such Lease being deemed a "Removed Lease")

2. Payment of Purchase Price. On the date the assignments contemplated hereby close (the "Closing Date"), Assignee shall pay to GBRP, an amount equal to $▬ in immediately available funds (the "Purchase Price"), *provided* that if any Lease becomes a Removed Lease in accordance with the terms herewith, the Purchase Price will be reduced by the corresponding value (the "Individual Lease Value") of such Removed Lease assigned to it on Exhibit A. The Individual Lease Value includes the amount of estimated Cure Costs associated with each corresponding Assigned Lease (the "Estimated Cure Costs"). For the avoidance of doubt, to the extent that the actual Cure Costs required to be paid by Assignees in order to complete the assignment of a given Lease (the "Actual Cure Costs") exceed the Estimated Cure Costs, the Purchase Price and the Individual Lease Value shall remain unchanged and the portion of the Purchase Price payable to GBRP on the Closing Date shall be reduced by a corresponding amount. In the event that the Actual Cure Costs exceed the Individual Lease Value, the corresponding Assigned Lease shall be designated as a Removed Lease.

3. Payment of Cure Costs. Subject to Section 2 above, Assignee shall pay to the applicable landlord the Cure Costs associated with such Lease. Neither Assignee nor GBRP shall

---

[1] "Transfer Date" shall mean March 15, 2025; provided, that Assignors and GBRP shall have the right to extend the applicable Transfer Date to enable GBRP to conclude ongoing GOB Sales at certain locations, subject to GBRP's agreement to pay all occupancy-related expenses on a per diem basis for each day beyond March 15, 2025 that turnover of possession is delayed; provided, further, that, (a) in no event shall the Transfer Date be extended past April 1, 2025, and (b) Assignors and GBRP shall permit reasonable access to the Premises to employees and agents of the Assignee beginning on March 15, 2025 in order that Assignee may take reasonable preliminary steps to begin preparing the Premises for its Intended Use.

3

Docusign Envelope ID: BC41836A-9779-4B33-B2A3-AC659EBC6BF5

*Execution Copy*

have any obligations in respect of any portion of any payments, including, without limitation, any year-end (or other) adjustment (including, without limitation, for royalties, rents, utilities, taxes, insurance, fees, any common area or other maintenance charges, promotional funds and percentage rent), arising under any Leases that are attributable to any period prior to the Closing Date, which amounts shall be included in the Cure Costs.

4. <u>No Further Liability of Assignors</u>. From and after the Closing Date, and subject to the occurrence of the Closing Date, except as otherwise provided herein or in the Lease Assignment Order, Assignors shall have no further obligations and duties with respect to the Lease(s).

5. <u>Further Assurances</u>. At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignors or GBRP, as applicable, shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Lease(s).

6. <u>'As Is Where Is" Transaction</u>. Assignee hereby acknowledges and agrees that Assignors make no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Lease(s). Without limiting the foregoing, Assignors hereby disclaim any warranty (express or implied) of merchantability or fitness for any premises subject to the Lease(s). Assignee further acknowledges that Assignee has conducted an independent inspection and investigation of the physical condition of premises subject to the Lease(s) and all such other matters relating to or affecting the Lease(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Lease(s), Assignee is doing so based upon such independent inspections and investigations. Accordingly, Assignee will accept the Lease(s) 'AS IS" and 'WHERE IS."

7. <u>Compliance With Law</u>. Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignors harmless for any violation or alleged violation of this section with respect to the leases being conveyed by Assignor pursuant to the terms hereof.

8. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

9. <u>Jurisdiction</u>. The Parties consent to the exclusive jurisdiction of, and entry of final orders and judgments by, the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, *forum non conveniens*, or any similar grounds and

Docusign Envelope ID: BC41836A-9779-4B33-B2A3-AC659EBC6BF5

*Execution Copy*

irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10. No Reliance. Except as expressly set forth in this Agreement, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

11. Construction. This Agreement has been drafted through a cooperative effort of each of the Parties, and no Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties

12. Entire Agreement. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement and supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the Parties respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the Parties further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto.

13. Counterparts. This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

14. Going Dark. In order to facilitate Assignee's Intended Use, Assignee shall be permitted to delay reestablishing retail operations for a period of time of no more than 270-days (the "Going Dark Period"). It is a condition precedent to the assignment of the Leases contemplated herein that the Lease Assignment Order permit the Going Dark Period.

15. Reserved.

*Execution Copy*

16. <u>Assignment Free and Clear of Alcohol Sale and Grocery Restrictions</u>. It is a condition precedent to the assignment of the Leases contemplated herein that the assignment of the Leases must be made free and clear of any restrictions on (a) the sale of alcoholic beverages or (b) the sale of groceries of operation of a grocery store contained in any of the Leases

17. <u>Termination</u>. This Agreement may be terminated prior to the Closing Date by Assignee or GBRP either (x) in the event of any breach by Assignors of any of its agreements contained herein (*provided* that the terminating party, is not in material breach of its agreements or covenants contained herein) or (y) the Closing Date does not occur on or prior to the deadline for assumption or assignment under 11 U.S.C. §365(d)(4), as such deadline may be extended with respect to each applicable Lease. This Agreement may be terminated by Assignee prior to the Closing Date if (1) Assignors or GBRP are in material breach of their obligations under the APA, which breach would impair the ability of the Assignors or GBRP to complete the transactions subject to this Agreement, (2) the Sale Order or the Lease Assignment Order shall be vacated, amended, modified, or waived without the prior consent of the Assignee, (3) GBRP or the Assignors breach any of their respective agreement contained herein (*provided* that the terminating party, is not in material breach of its agreements or covenants contained herein), (4) either Assignors or GBRP take any action in furtherance of any transaction in respect of the Leases, other than the transaction set forth in this Agreement, (5) with respect to each Lease, Assignors are unable to deliver possession of such Premise by the Transfer Date.

18. <u>Conditions to Assignee's Obligations</u>. Assignee's obligations to consummate the assignment contemplated hereby and to assume any liabilities or pay any amounts contemplated hereby, including the Assignment, under this Agreement are further subject to, and expressly conditioned upon, (i) GBRP's compliance with the terms of the APA and the APA remaining in full force and effect at the time of the Closing Date, such that any non-compliance with the Asset Purchase Agreement does not result in a termination of GBRP's designation rights or impair the ability of the Assignors or GBRP to complete the transactions subject to this Agreement, (ii) all of the agreements in this Agreement to be complied with or performed by GBRP on or before the Closing Date having been complied with and performed by Assignors in all material respects, (iii) all GOB Sales and other liquidation sales proposed to be conducted at any of the Premises having concluded; (iv) the Lease Assignment Order shall have been entered and the period to appeal the Lease Assignment Order shall have expired without an appeal of the Lease Assignment Order having been filed; and (vi) Assignors delivery of possession of the Premises to Assignee by Transfer Date.

19. <u>Termination Fee</u>. In the event that, prior to the Closing Date, GBRP shall either (a) exercise its designation rights in respect of any Lease to any party other than the Assignee, (b) determine to retain any Lease or not exercise their designation rights in favor of the Assignee in respect of any Lease, or (c) reserved, then GBRP shall pay to Assignee an amount equal to $■■■■ on the Transfer Date for each store to which this Section 19 is applicable. This Section 19 shall survive termination of this Agreement by any Party, except as otherwise agreed by Assignee.

Docusign Envelope ID: BC41836A-9779-4B33-B2A3-AC659EBC6BF5

IN WITNESS WHEREOF, the foregoing Agreement is dated effective as of the date and year first written above.

**BIG LOTS STORES, LLC**

By: _/s/ Joshua H. Nanberg_
Name: Joshua H. Nanberg
Title: VP, Real Estate

**BIG LOTS STORES ☐PNS, LLC**

By: _/s/ Joshua H. Nanberg_
Name: Joshua H. Nanberg
Title: VP, Real Estate

**ALDI INC.**

By: _____
Name:
Title:

**GORDON BROTHERS RETAIL PARTNERS, LLC**

By: _/s/ Richard Edwards_
Name: Richard Edwards
Title: Head of NA Retail

*[Signature Page to A&A Agreement]*

IN WITNESS WHEREOF, the foregoing Agreement is dated effective as of the date and year first written above.

**BIG LOTS STORES INC**, on behalf of itself and each other Assignor

By: _____
Name:
Title:

**ALDI INC.**

By: _____
Name: Robert Sitter
Title: Group Director Finance and Administration

**GORDON BROTHERS RETAIL PARTNERS, LLC**

By: _____
Name:
Title:

*[Signature Page to A&A Agreement]*

Exhibit A – Schedule of Leases

| Store No. | Address | Landlord | Actual Cure Costs |
|---|---|---|---|
| 5489 | 130 Covington Mall Andalusia, AL 36420 | COVINGTON MALL LLC | $36,599 |
| 5284 | 1538 North Morton St., Franklin, IN 46131 | WMT FRANKLIN, L.L.C. | $9,460.33 |
| 5172 | 29712 Southfield Rd., Southfield, MI 48076 | RPT REALTY LP | $70,094.03 |
| 1205 | 2000 N Locust Ave., Lawrenceburg, TN | WOOD LAWRENCEBURG CENTER, LLC | $4,112 |
| 1807 | 2418 W Main St., Durant, OK | FIFTH GENERATION INVESTMENTS LLC | $ - |
| 5345 | 791 West Elk Ave., Elizabethton, TN | FRANCIS CARRINGTON | $66,084.02 |
| 4565 | 850 N Bell Blvd., Cedar Park, TX | AGREE CEDAR PARK TX, LLC | $89,931.20 |
| 1517 | 126 Boston St., Lynn, MA | LYNNGATE, LLC | $63,151.93 |
| 1874 | 2209 W Dekalb St., Camden, SC | RIVER OAKS SHOPPING CENTER LLC | $6,074.60 |
| Total | | | $345,507.11 |