**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*[1] | Case No. 24-11967 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 2178** |

**OBJECTION OF MADEIRA PLAZA POWER, LLC TO**
**EIGHTEENTH POST-CLOSING DESIGNATION NOTICE**

Madeira Plaza Power, LLC ("Madeira" or "Landlord"), by its undersigned counsel, hereby files this Objection (the "Objection") to the Debtors' *Notice of Filing of Eighteenth Post-Closing Designation Notice* (D.I. 2178) (the "Notice") providing notice of the Debtors' proposed assignment of the Lease (defined below) to Forman Mills, Inc. (or to any other entity affiliated therewith, or related thereto; collectively, "Forman Mills") for the operation of a Forman Mills store in the leased premises, as follows:

**INTRODUCTION**

1.  In order to assume and assign a nonresidential real property lease in a shopping center, Section 365(b)(3) of the Bankruptcy Code requires, among other things, that the landlord be provided with adequate assurance "that assumption or assignment of such lease is subject to all of the provisions thereof, including (but not limited to) provisions such as . . . *use, or exclusivity*

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. DublinGranville Road, Columbus, OH 43081.

provision, and *will not breach any such provision contained in any other lease . . . relating to such shopping center . . .* " 11 U.S.C. § 365(b)(3)(C) (emphasis added).  Here, the Debtor' proposed assignment of the Lease to Forman Mills would cause the Landlord to breach the use and exclusivity provisions in its lease with Burlington (as defined below) in the same shopping center.  Accordingly, adequate assurance cannot be provided.

2. Even assuming that the Bankruptcy Code's adequate assurance requirements could be met, the proposed $0 cure amount for the lease set forth in the Notice is inaccurate.  Currently, the Debtors' owe no less than $105,032.16 under the Lease, plus all additional amounts that may subsequently accrue or fall due.

## BACKGROUND

3. The Landlord is the lessor of Big Lots store #1754, located at 3215 N. 5th Street Highway, Reading, PA 19605 (the "Location").

4. On March 5, 2025, the Debtors served the Notice, which – among other things – advised that the Debtors proposed to assign the Lease for the Location (the "Lease") to Forman Mills, presumably to operate a Forman Mills store at the Location.

5. The Location is within a Shopping Center as that term is used in 11 U.S.C. § 365.

6. Burlington Coat Factory Warehouse Corporation, or an affiliate thereof (collectively, "Burlington") already operates a "Burlington" store[2] in the same Shopping Center as the Location under the terms of a written Lease (the "Burlington Lease").

7. A copy of the Burlington Lease is attached as **Exhibit A**.

---

[2] For the meaning of the term "Burlington Store", please see www.burlington.com; the reference is to any store of substantially similar character to those described on the website.

**ARGUMENT**

A. **AN ASSIGNMENT OF THE BIG LOTS LEASE TO FORMAN MILLS WOULD VIOLATE BURLINGTON'S EXCLUSIVES**

8.  Paragraph (A) of Article 33 of the Burlington Lease contains the following provisions ("<u>Burlington Lease Exclusives</u>"):

> "So long as Tenant [Burlington] . . . lease, use or occupy any space in the Shopping Center, Landlord covenants that . . . (i) no store shall be leased, used or occupied by an off-price retailer (defined below); and (j) no building in the Shopping Center shall be leased, used or occupied for the sale of any of the items set forth on Exhibit E.[3] An off-price retailer shall mean a retailer who engages in the sale of brand name and style apparel similar to department stores, but at everyday prices that are substantially discounted from the everyday regular prices of department stores (but Marshalls, and TJMaxx and any other concept operated by the TJX Companies are expressly permitted).

9.  Subparagraph (C) of Article 33 of the Burlington Lease provides that –

> "[n]otwithstanding the foregoing, the following uses shall be excluded from the Exclusives, and are permitted in the Shopping Center: (i) any of the TJX Brands, including, but not limited to, TJ Maxx, Marshalls, HomeGoods, Sierra Trading Post, HomeSense,

---

[3] Exhibit E to the Lease prohibits, subject to enumerated exceptions, using the premises for: "1. A tavern, bar, nightclub . . . 2. A billiards parlor, pool hall, arcade, video or game room. . . 3. . . A theater (for live performance only), an auditorium, a convention or exhibition hall or the like. 4. A fairground. 5. A service station, automotive repair shop, truck stop or vehicle fueling station. . . 6. A flea market or pawnshop. 7. A training or educational facility . . . 8. A car wash. . . . 9. . . A medical clinic or office . . . 10. . . An office building or any office of any kind not used principally for the purveying of products or services to walk-in consumers at retail . . . 11. . . any governmental or political operation of any kind . . . 12. A dry cleaning plant, central laundry or laundromat . . . 13. . . . an establishment for sale of automobiles, trucks, mobile homes, recreational motor vehicles. . . . 14. A piercing pagoda or tattoo parlor or similar establishment. 15. An adult type bookstore . . . 16. A massage parlor . . . 17. . . a skating rink of any type. 18. A house of worship, church, reading room, mortuary, crematorium or funeral home. 19. A mobile home or trailer court, labor camp, junkyard or stockyard. 20. A motel or hotel . . . 21. A landfill, garbage dump . . . [and] 22. A telephone call center . . . 23. A gambling establishment . . . 24. An assembling, manufacturing, industrial, distilling, refining or smelting facility . . . 25. A storage warehouse or storage facility . . . 26. The conduct of any "fire sale," going out of business sale or bankruptcy sale (except pursuant to a court order) or any auction house operation. 27. Any use which regularly emits a noxious odor, loud noises or sounds which can be heard or smelled outside of the occupant's premises in violation of code. 28. A "so called" head shop or any business selling marijuana or any type of drug rehab clinic or counseling service, including without limitation a methadone clinic. . . [and] 30. Operation of a business which performs medical procedures, consulting or activities related to abortion, birth control or euthanasia, drug or alcohol addiction."

3

TK Maxx, and Winners; (ii) electronics stores such as, but not limited to, Best Buy; (iii) craft stores such as, but not limited to A.C. Moore, Jo-Ann, Michaels, and Hobby Lobby; (iv) dollar stores such as, but not limited to, Dollar Tree, Dollar General, Deal$, Big Lots; (v) full-line furniture stores such as, but not limited to, IKEA, Ashley Furniture, Bassett, Blinds to Go, Crate and Barrel, La-Z-Boy, Pottery Barn, Thomasville, Container Store, and Restoration Hardware; (vi) supermarkets; (vii) home improvement stores such as, but not limited to, Home Depot, Lowes, Ace Hardware, True Value, Tractor Supply, Sherwin Williams, Restoration Hardware; (viii) a pet supplies store such as, but not limited to, Petco, PetSmart, and Pet Goods; (ix) sporting good stores such as, but not limited to, Dick's, Champs, Eastern Mountain Sports, Golf Galaxy, Golfsmith, Modell's, and REI; and (x) wholesale clubs such as, but not limited to BJ's Wholesale, Costco and Sam's Club."

10. Forman Mills describes itself[4] as "a chain of 'Big Box' warehouse-style stores, serving communities in Philadelphia, New Jersey, Delaware, Maryland, and now Michigan and New York.... a fast-growing major retailer in the off-price apparel sector." Forman Mills' website also utilizes the slogan: "Up to 80% off Department Store Prices Every Day!"

11. A Forman Mills store in the Location would thus violate the restrictions contained in Article 33 of the Burlington Lease, quoted above, because it is – by its own description – an "off price" retailer that sells "apparel similar to department stores, but at everyday prices that are substantially discounted from the everyday regular prices of department stores."

12. The Landlord objects to the assignment of the Big Lots Lease to Forman Mills and to the operation (by Forman Mills or anyone else) of a Forman Mills store, or a retail store substantially similar thereto, or any other store that would violate the use and exclusivity restrictions in the Burlington Lease, and would violate the Landlord's adequate assurance rights under 11 U.S.C. §365(b)(3)(C).

---

[4] *See,* www.formanmills.com/about-us.

13. If the Debtor were permitted to assume and assign the Lease over the Landlord's objection, Landlord would be substantially harmed by the resulting breach under the Burlington Lease. Subparagraph (D) of Article 33 of the Burlington Lease provides as follows—

> "If there is a violation of the covenants above . . . Tenant [Burlington] shall have the right to seek all remedies available at law or in equity, and Tenant shall have the right to pay Alternate Rent in lieu of (but not to exceed) Minimum Rent from the date of the expiration of such three (3) business day period, in addition to Tenant's right to seek other remedies available at law or in equity . . ."

14. "Alternate Rent" is defined in Article 41(b) as --

> "2% of Tenant's Gross Sales (not to exceed the Minimum Rent which would otherwise be payable under this Lease) ("Alternate Rent"), plus Tenant's share of Taxes and Operating Costs pursuant to Articles 35 and 36 of this Lease...."

15. The current Minimum Rent payable under the Big Lots Lease is $18,812.50.

16. In order for Alternate Rent to equal Minimum Rent (without including CAM, Real Estate Taxes or other elements of Additional Rent payable in addition to Minimum Rent), the Gross Sales of the Burlington store would have to equal $940,625.00 each month, an amount that is likely unachievable and (if achievable) unsustainable.

17. The triggering of Alternate Rent that would occur as a result of a Forman Mills store being operated in the Shopping Center (and the violation of the restrictions in the Burlington Lease that such operation would represent) would significantly harm the Landlord, by steeply reducing the amount of rent payable by Burlington, in violation of 11 U.S.C. §365(b)(3)(C).

## B. BECAUSE FORMAN MILLS WOULD REPRESENT A CHANGE IN USE FROM THAT OF BIG LOTS, THE BIG LOTS LEASE IS NOT "GRANDFATHERED" BY THE FINAL SENTENCE OF ARTICLE 33(A) OF THE BURLINGTON LEASE

18. Article 33(A) of the Burlington Lease also provides that –

> "The restrictions in this Article 33 shall not be binding upon any tenant of the Shopping Center that has executed a lease as of the date hereof, provided that to the extent Landlord has a right of consent or approval over any such existing tenant's change in operation or use that would violate these restrictions Landlord shall not grant such consent or approval or otherwise amend or modify any such leases so as to permit a violation of these restrictions."

19. Article 4(A) of the Big Lots Lease provides that the tenant's permitted use is ("Big Lots Lease Tenant Permitted Use") –

> "Tenant shall have the right to use and occupy the Demised Premises for the purpose of the sale of general merchandise, including but not limited to, furniture, furniture accessories, appliances, toys, seasonal merchandise, furnishings, food and for the sale of any other merchandise typically sold in Tenant's stores"

20. Accordingly, the Big Lots Lease Tenant Permitted Use does not permit the operation by an "off-price retailer", which as provided in the Burlington Lease Exclusive, means "a retailer who engages in the sale of brand name and style apparel similar to department stores, but at everyday prices that are substantially discounted from the everyday regular prices of department stores."

21. Big Lots did not operate as an "off-price retailer" at any time during its occupancy of the Property.

22. The sale of off-price apparel is Forman Mills' business.

23. If Forman Mills takes over the Big Lots lease, it would represent a "change in operation or use that would violate [Burlington's] restrictions."

24. A change in use under the Big Lots Lease to an "off-price retailer" would require the consent of Landlord or an amendment to the Big Lots Lease, neither of which is permitted by the Burlington Lease.

25. The Landlord does not consent to such change in operation or use.

26. Therefore, an assignment of the Big Lots lease to Forman Mills is prohibited by 11 U.S.C. §365(b)(3)(C).

**C.  IN ORDER TO ASSUME THE BIG LOTS LEASE, THE DEBTOR MUST CURE THE EXISTING DEFAULTS; THE STATED CURE FIGURE IS INCORRECT**

27. The Notice of Possible Assumption of the Big Lots Lease (D.I. #2178) states the cure amount for the Big Lots Lease as zero.

28. The correct cure amount (as of March 17, 2025) is $105,032.16.

29. The Landlord objects to any assumption or assignment of the Big Lots Lease that does not provide for payment of at least $105,032.16 in cure costs, as shown on **Exhibit B** hereto.

30. The Landlord specifically reserves its right to object to any other relief sought by the Debtors in connection with the assumption or assignment of the Lease, including, but not limited to, claiming any additional amounts coming due under the Lease after the filing of this Objection.

31. Full electronic copies of the documents to which this Objection refers will be provided, without charge, to any interested party requesting them.

**WHEREFORE**, the Landlord objects to the assignment of the Big Lots Lease to Forman Mills as proposed in the Notice.

Dated: March 19, 2025

**BURR & FORMAN LLP**

*/s/ J. Cory Falgowski*
J. Cory Falgowski (No. 4546)
222 Delaware Avenue, Suite 1030
Wilmington, DE 19801
Telephone: (302) 830-2312
Email: jfalgowski@burr.com

- and –

William J. Levant
**KAPLIN STEWART MELOFF REITER & STEIN, P.C.**
910 Harvest Drive
Blue Bell, PA 19422
Telephone: (610) 941-2474
Email: wlevant@kaplaw.com

*Attorneys for Madeira Plaza Power, LLC*