**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>Objection Deadline: March 20, 2025 at 4:00 p.m. (ET)<br>Hearing Date: To be scheduled if necessary<br>Re: D.I. 2178 |

**OBJECTION OF 1255 SUNRISE REALTY, LLC
TO DEBTORS' PROPOSED ASSUMPTION AND ASSIGNMENT OF ITS
UNEXPIRED LEASE IN EIGHTEENTH POST-CLOSING DESIGNATION NOTICE**

1255 Sunrise Realty, LLC ("Landlord"), by its undersigned counsel, hereby submits this objection (the "Objection") to the proposed assumption and assignment of its unexpired lease as set forth in the *Notice of Filing of Eighteenth Post-Closing Designation Notice* (D.I. 2178) (the "Designation Notice"), and states as follows.

**PRELIMINARY STATEMENT**

1. The Debtors seek to assume and assign the Landlord's lease to Forman Mills, Inc. (the "Proposed Assignee"), but thus far have provided only a limited set of unaudited financials as purported adequate assurance of the Proposed Assignee's ability to comply with lease obligations going forward. Those unaudited financials (which on their face apply to a separate entity apparently affiliated with the Proposed Assignee) do not satisfy the general standard for adequate

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

assurance under section 365, let alone the far more stringent standard under section 365(b)(3)(A) of the Bankruptcy Code applicable to shopping center leases. Publicly available information with respect to the Proposed Assignee, including pending litigation and reports that it was on the verge of bankruptcy not long ago, suggests that the Debtors will be unable to satisfy those standards even with the supplemental information that the Debtors and Proposed Assignee have so far refused to provide.

2. Even if the Debtors could satisfy their adequate assurance obligations (which they cannot), the Proposed Assignee would need to provide security pursuant to section 365(l) of the Bankruptcy Code, the Debtors' proposed cure amount would need to be corrected to include all monetary defaults under the lease, and the Debtors' proposed form of order must be amended to reflect the assignee's assumption of all lease obligations.

## BACKGROUND

3. On September 9, 2024, the above-captioned debtors and debtors in possession (the "Debtors") commenced these chapter 11 cases by filing their voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

4. Landlord, as landlord, and Debtor Big Lots Stores, LLC (the "Debtor"), as tenant, are parties to that certain Store Lease dated as of December 13, 2002 for the property located at 1255 Sunrise Highway, Copiague, NY 11726 (designated by the Debtors as Store #1753 on the Designation Notice) (the "Copiague Lease").

5. The Copiague Lease is a triple net lease with monthly base rent of $29,927, plus CAM, real estate and insurance charges that bring the total monthly rent obligation to approximately $50,000. There are less than three years remaining on the term of the Copiague Lease, which runs through January 31, 2028 with no renewal options.

2

6. The Copiague Lease is a lease "of real property in a shopping center," as that term is used in 11 U.S.C. § 365(b)(3).

7. On January 2, 2025, the Court entered the Sale Order[2] which, among other things, approved Gordon Brothers Retail Partners, LLC (the "Gordon Brothers") as the buyer of designation rights with respect to certain of the Debtors' unexpired leases of real property.

8. Gordon Brothers notified the Debtors on March 5, 2025 of its determination to designate the Copiague Lease for assumption and assignment to the Proposed Assignee.[3] On March 5, 2025, the Debtors filed the Designation Notice, through which the Debtors seek entry of an order authorizing the Debtors to assume the Copiague Lease and assign it to the Proposed Assignee.

9. The Designation Notice indicates that the Proposed Assignee will provide adequate assurance of future performance information to the landlords. However, the Proposed Assignee has provided the Landlord only with unaudited 2024/2023 financial statements (the "Unaudited Financials") for Forman Mills Holdings LLC ("Forman Mills Holdings"), which presumably is affiliated in some way with the Proposed Assignee. The Unaudited Financials (even assuming they apply to the Proposed Assignee) raise serious concerns regarding the Proposed Assignee's ability to pay the rent under the Copiague Lease.

---

[2] "Sale Order" means the *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of all Claims, Liens, Rights, Interests, Encumbrances, and other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* (D.I. 1556).

[3] The Gordon Brothers notice, which is attached to the Designation Notice incorrectly identifies George Butsikaris Realty, Inc. as the landlord. George Butsikaris Realty, Inc. is the property manager for the Landlord (1255 Sunrise Realty, LLC).

10. Neither the Proposed Assignee nor the Debtor have provided any further information regarding the preparation of these Unaudited Financials or any other adequate insurance information despite Landlord's request for the same.[4]

**ARGUMENT**

I. **The Debtors Have Not and Cannot Meet Their Burden to Provide Adequate Assurance of Future Performance.**

11. Pursuant to section 365 of the Bankruptcy Code, assumption and assignment requires adequate assurance that an assignee has the ability to perform under the terms of the lease. 11 U.S.C. §§ 365(b)(1) and 365(f)(2).

12. The Debtors bear the burden of proving adequate assurance of future performance in connection with the potential assumption and assignment of the Copiague Lease. *Stanley Jacobs Prods., Ltd. v. 9472541 Canada Inc. (In re Thane Int'l, Inc*.), 586 B.R. 540, 546 (Bankr. D. Del. 2018) ("The debtor has the burden to show that a contract is assumable and that Section 365 has been met […]"*.*); *In re C.W. Min. Co*., Case No. 08-20105, 2010 WL 841395, at *9 (Bankr. D. Utah Mar. 2, 2010) ("The Trustee has the burden to prove that the statutory requirements for assumption and assignment have been met, including the burden to prove adequate assurance of future performance.").

13. Courts may look to many factors in determining what is necessary to provide adequate assurance of future performance, including, but not limited to, sufficient economic backing, economic conditions, certificates, credit reports, escrow deposits, or other similar forms of security or guarantees. *In re Tama Beef Packing, Inc*., 277 B.R. 407, 411-12 (Bankr. N.D. Iowa 2002) ("Regarding assurance of future performance, it is helpful to show sufficient financial

---

[4] On March 12, 2025, Landlord provided a number of information requests to the Debtors, Gordon Brothers, and the Proposed Assignee. Counsel for the Proposed Assignee has been in communication, but has thus far declined to supply the requested information. Landlord is serving additional requests contemporaneously with this Objection.

4

backing, escrow deposit, or similar forms of security."); *In re Alipat, Inc.*, 36 B.R. 274, 277-78 (Bankr. E.D. Mo. 1984) (finding the adequate assurance requirement satisfied where letter of credit was issued in favor of landlord in an amount equal to the remaining payments under the lease term). Courts also look to the operating experience of the proposed assignee. *In re Casual Male Corp.*, 120 B.R. 256, 265 (Bankr. D. Mass. 1990); *In re Alipat, Inc.,* 36 B.R. at 277.

14.     The primary focus of the adequate assurance of future performance requirement "centers on the assignee's ability to satisfy the financial obligations imposed by the lease." *In re Evelyn Byrnes, Inc.*, 32 B.R. 825, 829 (Bankr. S.D.N.Y. 1983).  No guarantee is required but the lessor must be "protected from having to take on the burden of a tenant who may be likely to default on his lease obligations after the assumption and assignment have occurred." *In re Bygaph, Inc.*, 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986).

15.     The Copiague Lease is a lease "of real property in a shopping center" as that term is used in section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990) (discussing the multi-factor test for determining whether a lease is a "shopping center" lease)*; In re Sun TV & Appliances, Inc.*, 234 B.R. 356, 360–70 (Bankr. D. Del. 1999) (applying the *Joshua Slocum* test to a proposed assumption and assignment of a shopping center lease).  As such, the additional landlord protections set out in section 365(b)(3) are applicable, which additional protections "give specific meaning to, and are more onerous than, what is meant by 'adequate assurance' under § 365(f)(2)(B)." *MOAC Mall Holdings, LLC v. Transform Holdco LLC (In re Sears Holdings Corp.)*, 613 B.R. 51, 60 (S.D.N.Y. 2020) ("<u>Sears</u>"), *vacated on other grounds*, 616 B.R. 615 (S.D.N.Y. 2020).

16.     Section 365(b)(3)(A) requires that (i) the source of consideration under the assigned lease and (ii) the financial condition and operating performance of the proposed assignee each be

similar to such condition and performance of the debtor as of the time the debtor became a lessee under such lease.  The purpose of this "rigorous standard" is to "assure the landlord that it would not have to endure a second bankruptcy any time soon." *Sears*, 613 B.R. at 56, 77.

17.     In *Sears*, the court engaged in an in-depth analysis of the additional protections provided under section 365(b)(3) and, in that case, determined that the purchaser's provision of draft financial statements was insufficient to satisfy the more stringent requirements of section 365(b)(3)(A).  The court reasoned that mere submissions of the assignee's net worth or current financial wherewithal are insufficient to satisfy the statutory test. *Id*. at 78. Instead, the debtors must demonstrate the proposed assignee's "similar" financial condition and operating performance to the debtor at the commencement of the applicable lease, which requires at least "proportionally comparable financial health between the assignee and/or its guarantors and the debtor as of the lease's inception." *Id*. at 75.

18.     The Debtors fail to demonstrate the Proposed Assignee has similar or "proportionally comparable financial health" to the Debtors as of inception of the Copiague Lease.  The Debtors and Proposed Assignee provided only the Unaudited Financials in support of adequate assurance.  As the *Sears* court held, a mere review of the proposed assignee's financials is insufficient to sustain a finding by the Court of the requisite similarity.  Instead, the Debtors and/or the Proposed Assignee must submit evidence to carry their burden, and this Court must review and find that such evidence demonstrates a clear similarity between the Proposed Assignee now compared to the Debtors at the inception of the term under the Copiague Lease. *Id*. at 74–79.

19.     Nor will the Debtors be able to demonstrate similarity between the Proposed Assignee's financial condition and that of the Debtor upon inception of the Copiague Lease. The Debtor originally entered into the Copiague Lease on or about December 13, 2002, when the

Debtors were an established, public company with a market capitalization of approximately $1.5 billion. According to the Debtors' publicly available, audited financials, they held approximately $1.07 billion in current assets versus approximately $411 million in current liabilities, for a healthy working capital ratio of 2.60. They carried approximately $616 million in total liabilities versus approximately $1.64 billion in total assets for a total debt to total assets ratio of 0.38. In the Debtors' fiscal year 2022, they reported $76.5 million in net income, an increase of more than $96 million from the prior year.

20. The Unaudited Financials show no similarity with the Debtors' financial position at inception of the Copiague Lease. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

21. Even if the Debtors did not have to satisfy the "rigorous" section 365(b)(3)(A) standard applicable to shopping center leases (which they do), the Unaudited Financials combined with publicly available information suggest the Debtors would be unable to satisfy any standard of adequate assurance. Reports indicate that the Proposed Assignee was on the verge of bankruptcy less than two years ago before being acquired by Shoppers World.[5] According to its website, the Proposed Assignee is a major retailer in the "apparel sector,"[6] a sector that has seen numerous

---

[5] *See, e.g.,* Forbes, *The Forman Mills Tragedy* published Jun. 26, 2023, https://www.forbes.com/sites/walterloeb/2023/06/26/the-foreman-mills-tragedy/ (accessed 3-18-25); Retail Dive, *Forman Mills Fought Off Bankruptcy but Faces New Legal Battles*, published Jul. 21, 2023, https://sourcingjournal.com/topics/retail/forman-mills-lawsuit-employees-warn-notice-landlord-crown-enterprise-shoppers-world-446245/ (accessed 3-18-25).

[6] https://formanmills.com/about-us/ (accessed 3-18-25)

companies file for bankruptcy relief in the last few years. *See, e.g., F21 Opco, LLC* (Forever 21), Case No. 25-10469 (Bankr. D. Del. Mar. 16, 2025); *In re Big Lots, Inc.,* Case No. 24-11967 (Bankr. D. Del. Sept. 9, 2024); *In re Express, Inc.*, Case No. 24-10831 (Bankr. D. Del. Apr. 22, 2024); *New Rue21 Holdco, Inc.,* Case No. 24-10939 (Bankr. D. Del. May 2, 2024).

22. There are a number of pending actions against the Proposed Assignee with significant amounts at issue, which place pressure on its financial performance. *See*, e.g., *Del Rossi et al. v. Forman Mills, Inc*., Case No. 23-03136 (D.N.J. Jun. 7, 2023) (WARN Act Class Action Complaint); *Aptos, LLC v. Forman Mills, Inc.*, Index No. 651286/2024 (N.Y. Sup. Ct, NY Cty, Mar. 11, 2024) ($3 million action for alleged failure to pay for software services). The Proposed Assignee's financial condition is placed under further pressure by the fact that it intends to acquire four other leases from the Debtors, in addition to the Copiague Lease, according to the Designation Notice. Presumably those acquisitions will require significant, up-front rebranding expenses.

23. Finally, the Unaudited Financials alone are insufficient to demonstrate compliance with other section 365(b)(3) requirements applicable to assignment of shopping center leases. These include the requirement to provide adequate assurance that assignment of the Copiague Lease will not violate the use restrictions contained therein and will not disrupt the tenant mix or balance in the shopping center. 11 U.S.C. § 365(b)(3)(C) & (D).

**II.    Demand for Security Pursuant to Section 365(l) of the Bankruptcy Code.**

24. Section 365(l) of the Bankruptcy Code provides that:

> If an unexpired lease under which the debtor is the lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

25. In the ordinary course of business, Landlord requires security deposits, letters of credit, or guaranties (including without limitation so-called "bad boy" personal guaranties) when leasing (or assessing an assignment of a lease) to tenants based on their financial information and history, particularly if the proposed tenant is not a publicly traded company with a demonstrated history of financial performance. Landlord would not lease the premises to a tenant that provided such a paucity of credit information as offered here. However, in event that the Court approves assumption and assignment of the Copiague Lease to the Proposed Assignee, Landlord will require and hereby demands security in accordance with section 365(l) of the Bankruptcy Code.

### III. The Proposed Cure Amount Is Insufficient and Subject to Change.

26. In order to assume and assign an unexpired lease, a debtor must first satisfy section 365(b)(1)(A) of the Bankruptcy Code, which requires that a debtor either cure all defaults existing under a lease, or provide the landlord with adequate assurance that it will promptly cure such defaults. 11 U.S.C. § 365(b)(1)(A).

27. The Debtors identify a proposed cure amount of $12,728 with respect to the Copiague Lease, which is the prepetition portion of the rent due from September 2024. However, in addition to that prepetition portion of September 2024 rent, the Debtors currently owe $4,021.07, representing the annual CAM reconciliation balance under the Copiague Lease as of the end of 2024. Therefore, the correct cure amount as of the date hereof is no less than $16,749.07.

28. The cure amount identified herein does not include cure amounts that may become due and owing after the date hereof, or any amounts that are currently unknown or undetermined by the Landlord. The Landlord reserves the right to amend or supplement this Objection and any statement of cure amount as necessary or appropriate under the circumstances, including without limitation to account for further property inspections, reconciliations or adjustments which have

not yet been billed or have not yet become due under the terms of the Copiague Lease, amounts that become due and owing after the date hereof, or amounts that the Landlord becomes aware of after the date hereof.

### IV. The Copiague Lease Must be Assumed and Assigned *Cum Onere*.

29. It is well settled that a debtor seeking to assume a lease must do so "*cum onere*," accepting both its benefits and burdens. *In re Fleming Cos.,* 499 F.3d 300, 308 (3d Cir. 2007). The requirement that lease assumptions be *cum onere* applies equally to assignments, as assumption of an unexpired lease "is a necessary prerequisite to its assignment under § 365." *In re Sunterra Corp.*, 361 F.3d 257, 266 (4th Cir. 2004) (citing 11 U.S.C. § 365(f)(2)). Therefore, to the extent the Debtors seek to assume and assign the Copiague Lease, the Debtors have a continuing obligation to pay additional rent and charges, including, but not limited to, adjustments and reconciliations for the Debtor's proportionate share of certain common area maintenance, real property taxes, water, insurance premiums and any percentage rent which has accrued, or will accrue under the Copiague Lease through any assumption and assignment of the Copiague Lease and are not yet due ("Accrued but Unbilled or Not Yet Due Rent and Charges").

30. Additionally, the identified cure amounts do not include contractual obligations to indemnify the Landlord for events occurring prior to any assumption and assignment of the Copiague Lease. The Copiague Lease obligates the Debtor to indemnify and hold the Landlord harmless from and against various claims, liabilities, and expenses ("Indemnity Obligations"). The Debtor's responsibility for Accrued but Unbilled or Not Yet Due Rent and Charges and satisfaction of their Indemnity Obligations must be assumed by any assignee *cum onere*, as they are essential to the Landlord's entitlement pursuant to Section 365(b)(1) of the Bankruptcy Code to adequate assurance of future performance. This assumption must be made clear in any assumption and

assignment order covering the Copiague Lease, in the event the Court approves assumption and assignment.

## **RESERVATION OF RIGHTS AND JOINDER**

31.     Landlord reserves its rights to supplement this Objection and make such other and further objections as they deem necessary or appropriate, including with respect to any (i) amended proposed cure amounts, (ii) proposed form of assumption and assignment order covering the Copiague Lease, and (iii) modifications or additions to the adequate assurance information provided by the Debtors and/or Proposed Assignee.

32.     The Landlord hereby joins any other objections filed by the Debtors' other landlords to the extent such objections are not inconsistent with the relief sought herein.

**WHEREFORE,** Landlord respectfully requests that the Court (i) deny the Debtors' proposed assumption and assignment of the Copiague Lease to the Proposed Assignee and (ii) grant such other and further relief in favor of the Landlord as the Court may deem just or proper.

Dated: March 19, 2025
Wilmington, Delaware

GELLERT SEITZ BUSENKELL & BROWN, LLC

 */s/  Michael Busenkell*
Michael Busenkell (DE 3933)
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Telephone: 302-425-5812
Facsimile: 302-425-5814
Email: mbusenkell@gsbblaw.com

-and-

HUNTON ANDREWS KURTH LLP
Gregory G. Hesse (DE 005710)
Fountain Place
1445 Ross Avenue, Suite 3700
Dallas, TX 75202
Telephone: (214) 979-3000
Email: ghesse@hunton.com

Robert A. Rich (application *pro hac vice* to be filed)
200 Park Avenue
New York, NY 10166
Telephone: 212-309-1132
Email: rrich@hunton.com

*Counsel to 1255 Sunrise Realty, LLC*