# Exhibit A

Lease Termination Agreement

# LEASE TERMINATION AGREEMENT

This Lease Termination Agreement (the "Agreement") is made as of this 13 day of March, 2025 by and between Sun Plaza Shops, LLC ("Landlord") and Big Lots Stores, LLC ("Tenant" and together with Landlord, the "Parties" and each, a "Party").

## RECITALS

WHEREAS, Landlord and Tenant are the current Parties to that certain lease dated July 20, 2012 (the "Lease"), covering the premises located in the Heart of Florida shopping center at 35884 US Hwy 27, Haines City, FL (Store #5265) (the "Premises"), on the terms and conditions set forth therein;

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession (collectively, the "Debtors"), has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which chapter 11 cases are being jointly administered under Case No. 24-11967 (JKS) entitled *In re Big Lots, Inc., et al.* (the "Bankruptcy Cases");

WHEREAS, on January 2, 2025, the Bankruptcy Court entered an *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 1556] (the "Sale Order"), authorizing the sale of substantially all of the Debtors', including Tenant's, assets to Gordon Brothers Retail Partners, LLC ("Gordon Brothers"), pursuant to the terms of that certain Asset Purchase Agreement dated as of January 3, 2025 (the "Asset Purchase Agreement");

WHEREAS, pursuant to Section 2.05(b) of the Asset Purchase Agreement Gordon Brothers has the right to designate certain contracts or leases for assumption and assignment to itself or its designee(s), including the Lease for the applicable Premises;

WHEREAS, Gordon Brothers has advised Tenant that it intends to designate the Lease as a "Post-Closing Designated Lease" pursuant to the Sale Order for purposes of a consensual termination of the Lease with Landlord;

WHEREAS, the Parties desire to enter into this Agreement, for the purpose of, among other reasons, to effectuate Gordon Brothers' exercise of its Designation Rights under the Sale Order, provide for the termination of the Lease and the restoration of possession of the Premises to Landlord as of the Termination Date (as defined below), provide for the abandonment of any remaining personal property at the Premises and the use or disposal by Landlord of such abandoned personal property in its sole and absolute discretion, and provide for mutual releases of the Parties on the terms and conditions as more fully set forth herein.

1

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, Landlord and Tenant hereby covenant and agree as follows subject only to an order of the Bankruptcy Court approving this Agreement (the "Bankruptcy Court Order"):

**AGREEMENT**

1. Recitals. The Recitals are incorporated in this Agreement as if fully set forth herein.

2. Lease Termination. Subject to Landlord's prior payment of the Termination Fee (as defined below), the Lease is terminated effective as of the later of (i) the day following the conclusion of the "store closing" or other liquidation sales at the Premises, which date shall not be later than March 31, 2025, unless otherwise agreed to in writing by Landlord (the "Vacate Date"); and (ii) the date the Bankruptcy Court enters the Bankruptcy Court Order approving this Agreement, provided, that Tenant or Gordon Brothers shall give Landlord no less than seven (7) days' advance written notice of the Vacate Date (the "Termination Date"). No later than the Termination Date, Tenant shall surrender possession of the Premises to the Landlord, *i.e.*, by written notice to the Landlord and the return, as applicable, of the keys, key codes and alarm codes for the Premises to the Landlord (or its agent) or by providing written confirmation that the Landlord is authorized to change the locks. Effective as of the Termination Date, Tenant shall: (a) surrender the Premises to Landlord and shall give, grant and surrender unto Landlord all of Tenant's right, title and interest in and to the Premises, including, without limitation, all of the Tenant's right, title and interest in, to and under the Lease, and Landlord hereby accepts such surrender; and (b) provide utility account information to the Landlord upon request. Each of the Parties hereto acknowledges performance of all obligations of the other Party under the Lease or otherwise in connection with the Premises through and including the Vacate Date, and agree that, from and after the Termination Date, the Lease, and all rights and obligations of the Parties thereunder, shall be deemed to have expired and terminated as fully and completely and with the same force and effect as if such date were the expiration date set forth in the Lease.

3. Consideration. As consideration for this Agreement, Landlord shall (a) within five (5) business days of the entry of the Bankruptcy Court Order, pay to Gordon Brothers, via the wiring instructions set forth on Exhibit "A" an amount equal to $30,000 (the "Termination Fee"), (b) waive all amounts outstanding and billed under the Leases and not paid as of the Petition Date through and including January 3, 2025, but excluding any amounts Gordon Brothers is required to pay under the Sale Order through the Vacate Date, and (c) waive any claim for damages for the rejection of the Lease under 11 U.S.C. § 502(b)(6) (the "Consideration"); *provided*, *however*, Landlord's Consideration and the waiver of prepetition and post-petition sums due and owing from Tenant, shall not include any obligations of the Tenant to indemnify the Landlord for any third party claims asserted with respect to or arising from the Tenant's use and occupancy of the Premises prior to the Termination Date for which the Tenant had a duty to indemnify Landlord pursuant to the Lease (but only to the extent that such claims are covered by Tenant's insurance policies and on the

condition that Landlord only seeks recovery from the insurer and only up to the insured amount).

4. <u>Landlord Release of Tenant</u>. Conditioned upon (i) the entry of the Bankruptcy Court Order and (ii) Tenant's return of possession of the Premises to Landlord in accordance with this Agreement on or prior to the Termination Date, for valuable consideration, and the mutual covenants and agreements contained herein, Landlord does hereby fully, forever and irrevocably release, discharge and acquit Tenant, and its respective past and present affiliates that have filed for relief under the Bankruptcy Code, and the respective past and present officers, directors, , agents, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease. Notwithstanding the above, Landlord does not waive or release Tenant from the following: (i) any obligations arising under this Termination Agreement; (ii) any Lease obligations that expressly survive the Termination Date; (iii) any indemnification obligations arising from third party claims asserted with respect to or arising from Tenant's use and occupancy of the Premises prior to the Termination Date for which Tenant had a duty to indemnify Landlord pursuant to the Lease (but only to the extent that such claims are covered by Tenant's insurance policies and on the condition that Landlord only seeks recovery from the insurer and only up to the insured amount); and (iv) Landlord's exercise of any discovery rights Landlord has against the Tenant in connection with any civil litigation or arbitration proceedings involving a third party; *provided, further,* Landlord does not waive or release Tenant from its obligations to pay when due all rent and other charges under the Lease from January 3, 2025 through the Vacate Date.

5. <u>Tenant Release of Landlord</u>. Conditioned upon (i) the entry of the Bankruptcy Court Order, and (ii) receipt of the Termination Fee, for valuable consideration, and the mutual covenants and agreements contained herein, Tenant and its affiliated Debtors do hereby fully, forever and irrevocably release, discharge and acquit Landlord, and its respective past and present affiliates, and the respective past and present officers, directors, shareholders, agents, property managers, and employees of each and all of the foregoing entities, and its and their respective successors, heirs, and assigns, and any other person or entity now, previously, or hereafter affiliated with any or all of the foregoing entities, of and from any and all rights, claims, demands, obligations liabilities, indebtedness, breaches of contract, breaches of duty or any relationship, acts, omissions, misfeasance, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses of every type, kind, nature, description or character, and irrespective of how, why, or by reason of what facts, whether heretofore or now existing, or that could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, claimed or unclaimed, whether based on contract, tort, breach of any duty, or other

legal or equitable theory of recovery, each as though fully set forth herein at length, including, without limitation, any and all claims evidenced by the Lease, including the pursuit of any avoidance actions under Sections 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code against the Landlord, relating to or arising out of the Lease, this Agreement or the Premises. Notwithstanding the above, Tenant, the bankruptcy estate, and anyone eligible to make a claim by or through the Tenant and bankruptcy estate, including the Committee, does not waive or release Landlord from the following: (i) any obligations arising under this Agreement; (ii) any indemnifications obligations arising from third party claims asserted with respect to or arising from Landlord's obligations prior to the Termination Date for which Landlord had a duty to indemnify Tenant pursuant to the Lease (but only to the extent that such claims are covered by Landlord's insurance policies and on the condition that Tenant only seeks recovery from the insurer and only up to the insured amount); and (iii) Tenant's exercise of any discovery rights Tenant has against the Landlord in connection with any civil litigation or arbitration proceedings involving a third party.

6. In connection with the releases, the parties hereby agree, represent and warrant that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and the parties further agree, represent and warrant that the mutual releases have been negotiated and agreed upon in light of that realization and that, except as expressly limited above, they nevertheless hereby intend to release, discharge, and acquit the Parties from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses.

7. <u>Conditions Precedent</u>. As a condition precedent to the effectiveness of this Agreement, each and all of the following shall have occurred no later than the Termination Date:

(a) Landlord has delivered the Termination Fee to the Tenant;

(b) Tenant has delivered possession of the Premises to Landlord;

(c) Tenant has delivered to Landlord the keys and access codes to the Premises (or written confirmation that Landlord is authorized to change the locks); and

(d) The Bankruptcy Court Order has been entered by the Bankruptcy Court approving the entirety of this Agreement.

8. <u>Furniture, Fixtures and Equipment</u>. Any personal property, including any furniture, fixtures and equipment (collectively the "<u>FF&E</u>") remaining at the Premises after the Termination Date is deemed abandoned by the debtor and the Landlord and their managing agents are free to dispose of the FF&E in their sole and absolute discretion, and without further notice or liability to the Debtors or any other person or entity.

9. <u>Authority to Settle</u>. Each of the Parties to this Agreement respectively represents and warrants that each such party has the absolute and unfettered power, right and authority to enter into this Agreement and settle, compromise and release fully and completely all matters and claims

4

contemplated to be resolved hereby. Each of the Parties respectively represents and warrants that each such party owns and controls each of the claims, causes of action, or other matters that are the subject matter of this Agreement and that it has not assigned or transferred to any other person any of such claims, causes of action, or other matters.

10. <u>Third Party Beneficiaries</u>. This Agreement is expressly intended to confer third party rights and benefits upon Gordon Brothers, and Gordon Brothers shall have the right to enforce the provisions of this Agreement.

11. <u>Entire Agreement</u>. This Agreement, the exhibits hereto and the other items to be delivered as a condition precedent to the effectiveness of this Agreement, contains the entire agreement and understanding concerning the subject matter of the Agreement and supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral. Each of the Parties respectively represents and warrants that no other party to this Agreement, nor any agent or attorney of any such party, has made any promise, representation or warranty, express or implied, not contained in this Agreement or the exhibits hereto to induce any party to execute this Agreement. Each of the Parties further acknowledges that such party is not executing this Agreement in reliance on any promise, representation or warranty not contained in this Agreement or the exhibits hereto. The execution of this Agreement by digital signature and/or delivery by electronic means/platform (*e.g.*, email, PDF, DocuSign®) shall be valid and binding as between the parties for all purposes hereunder and applicable law and rules of evidence with the same force and effect as if the parties had exchanged original documents executed by pen and ink.

12. <u>Advice of Counsel</u>. Each of the Parties respectively represents and warrants that each such party has (a) been adequately represented, or has had the opportunity to be represented, by independent legal counsel of its own choice, throughout all of the negotiations that preceded the execution of this Agreement, (b) executed this Agreement with the consent and upon the competent advice of such counsel, or had the opportunity to seek such consent and advice, (c) read this Agreement, and understands and assents to all the terms and conditions contained in this Agreement without any reservations; and (d) had, or had the opportunity to have, the same explained to it by its own counsel. In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

13. <u>Attorneys' Fees</u>. Each party to this Agreement agrees that in the event a dispute arises as to the validity, scope, applicability, or enforceability of this Agreement, the prevailing party shall be entitled to recover its costs and attorneys' fees.

14. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be an original, and all of which shall constitute one and the same document. Further, each of the Parties agrees that scanned signatures of each party hereto shall be deemed original signatures and shall be binding on each such party whose signature is by scan to the same extent as if it were its original signature.

15. <u>Governing Law</u>. This Agreement shall be governed by and construed under the laws of the State of Delaware, without regard to conflicts of laws principles that would require the

application of the law of another jurisdiction.

16. <u>Jurisdiction</u>. The Parties consent to the exclusive jurisdiction of, and entry of final orders and judgments by, the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the foregoing Agreement is dated as of the date and year first written above.

**LANDLORD:** Sun Plaza Shops, LLC

By: */s/ M. Castillo/*
Name: Maydelin Castillo
Title: Manager

**TENANT:**
Big Lots Stores, LLC

By: */s/ Joshua H. Nanberg/*
Name: Joshua H. Nanberg
Title: VP, Real Estate