## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: D.I. 2001, 2015, 2066 & 2332** |

### DEBTORS' OMNIBUS REPLY TO CERTAIN OBJECTIONS TO DEBTORS' ASSUMPTION AND ASSIGNMENT OF NON-RESIDENTIAL REAL PROPERTY LEASES

Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**" or "**Big Lots**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), file this reply (this "**Reply**") to certain objections to the Debtors' Notice of Filing of Post-Closing Designation Notices (each, a "**Notice**")[2] proposing to assume and assign certain unexpired leases of real property to various assignees, including Variety Wholesalers, Inc. ("**Variety**") and Goodwill Industries of Dallas, Inc. ("**Goodwill Dallas**"). In support of this Reply, and in further support of the Notices, the Debtors respectfully state as follows:

### INTRODUCTION

1.      On January 2, 2025, the Court entered the *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and*

---

[1]      The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277).  The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Notices or Sale Order (as defined below), as applicable. The Notices were filed at D.I.s 1923, 1964, 1994, 2084, 2116, 2117, 2159 & 2178.

*Clear of All Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1556] (the "**Sale Order**").

2.      Pursuant to the Sale Order and at GBRP's direction, the Debtors filed multiple Notices seeking to assume and assign roughly 300 leases of non-residential real property to various assignees. The Debtors, GBRP and the proposed assignees worked with the landlord counterparties in most instances to mutually resolve concerns relating to the assignments and have agreed to defer a hearing on other matters to a later date to allow more time to resolve objections consensually.

3.      The Debtors file this Reply in response to the few objections that remain outstanding and that may be heard at the omnibus hearing on March 25, 2025 (the "**Omnibus Hearing**") and address outstanding objections by assignee. For the reasons described herein, the Debtors urge this Court to overrule each objection and approve the assignments to each assignee.

## <u>REPLY</u>

### I.      REPLY TO THE OBJECTIONS CONCERNING THE VARIETY ASSIGNMENTS

4.      On February 3, 2025, pursuant to paragraph 43 of the Sale Order, the Debtors filed their *Notice of Fifth Post-Closing Designation Notice* with the Court [D.I. 1923] (the "**Fifth Notice**"). Among other things, the Fifth Notice attached a list of 200 of the Debtors' unexpired leases of nonresidential real property that had been designated for assumption by the Debtors and assignment to Variety (the "**Designated Leases**"), and identified the landlord associated with each Designated Lease.

5.      The Debtors served the Fifth Notice on the landlords as described in their claims agent's Affidavit of Service [D.I. 2032]. Variety separately served its information regarding

adequate assurance of future performance pursuant to section 365(f)(2)(B) of the Bankruptcy Code on the landlords as described in Variety's Affidavit of Service [D.I. 2049].

6.      While there are a handful objections to the Fifth Post-Closing Designation Notice that remain pending, only two of the objections that the Debtors and Variety anticipate going forward at the hearing on March 25, 2025, raise legal issues for the Court's resolution outside the typical realm of objections to the assumption and assignment of leases. The Debtors have therefore chosen to limit this Reply as to the Fifth Notice, to the two such objections.

**A.      The Objection of DGN Properties LLC to Debtors' Proposed Assumption and Assignment of Lease and Proposed Order [D.I. 2001], filed by DGN Properties LLC, should be overruled.**

7.      On February 18, 2025, DGN Properties LLC ("**DGN**") filed an objection to the assumption and assignment of the lease (the "**Fort Myers Lease**") for Big Lots Store No. 541, located at 4901 Palm Beach Blvd., Suite 230, Fort Myers, Florida.[3]  *See* D.I. 2001 (the "**DGN Objection**"). The Fort Myers Lease is attached hereto as **Exhibit 1**.

8.      The only remaining dispute between the parties relates to an unenforceable 90-day "go-dark provision" contained in the Fort Myers Lease (the "**Go-Dark Provision**").  *See* Fort Myers Lease § 4; Lease Extension and Modification Agreement dated October 25, 1999 (the "**Fort Myers LEMA**"), § 4. The Fort Myers LEMA is attached hereto as **Exhibit 2**.

9.      Section 4 of the Fort Myers LEMA provides that:

---

[3] The DGN Objection was signed and filed by Keith A. Schofner, an attorney not admitted to practice in the Supreme Court of the State of Delaware or the United States District Court for the District of Delaware. The Debtors are unaware of any motion for admission *pro hac vice* filed by Mr. Schofner, and Mr. Schofner signed the pleading personally rather than through associated Delaware counsel. The Debtors reserve all rights, including under Rule 9010-1(c) of the Local Bankruptcy Rules for the District of Delaware, with respect to Mr. Schofner's representation.

4.     The following clause is hereby added to the Lease:

Continuous Operation   "It is expressly understood that, notwithstanding anything to the contrary contained herein, Tenant may close the Demised Premises when in Tenant's reasonable judgment the operation of the Demised Premises as provided herein cannot be economically justified or when the operation of the Demised Premises would expose Tenant's employees to any condition or event which threatens the safety of such employees; provided, however, that any such closing shall not relieve Tenant from any of its obligations hereunder.  In the event that Tenant closes the Demised Premises under this Section and fails to reopen the Demised Premises within ninety (90) days thereafter, Landlord may terminate this Lease upon thirty (30) days' notice to Tenant, in which event Tenant shall be released from all further liability hereunder."; and

LEMA, § 4.

10.     Section 365(f)(1) of the Bankruptcy Code dictates that terms or conditions in a lease that prohibit, restrict or condition the assignment of the lease are not enforceable, and cases within this district have routinely held that lease provisions are unenforceable even when they fall short of outright prohibiting assignment.  *See* 11 U.S.C. § 365(f)(1); *see also Haggen Holdings, LLC v. Antone Corp.*, 739 F. App'x 153, 156 (3d Cir. 2018); *In re Rickel Home Centers, Inc.*, 240 B.R. 826 (D. Del. 1998); *In re Joshua Slocum Ltd.*, 922 F.2d at 1090.  Likewise, Section 365(f)(3) of the Bankruptcy Code invalidates terms and provisions of a lease that allow a lease to be terminated upon assumption and assignment.  S*ee* 11 U.S.C. § 365(f)(3).

11.     Go-dark provisions have frequently been held to be unenforceable anti-assignment provisions.  *See Ramco-Gershenson Props. L.P. v. Service Merch. Co., Inc.*, 293 B.R. at 182 ("Affirming the bankruptcy court, this Court holds that, like the purchase rights, this 'going dark' clause has the intent to prevent assignment. Under 11 U.S.C. § 365(f), the provision is an unenforceable restriction upon assignment."); *In re Coldwater Creek Inc.*, 2011 WL 13502214 at *3 (Bankr. D. Del. Feb. 10, 2011) (Any "going dark" or continuous operating restrictions and/or other related restrictions in the Lease are unenforceable anti-assignment clauses under Sections 365(f)(1) and (3) of the Bankruptcy Code."); *In re The Ground Round, Inc.*, 2004 WL 1732207 at *7 (Bankr. D. Mass. July 12, 2004) ("[A]ny continuous operations provision or "going-dark"

clause, or similar clause prohibiting the cessation of operations at the leased premises is unenforceable against the assignee thereof under Section 365(f)(1) of the Bankruptcy Code."); *In re Ne. Biofuels, LP*, 2009 WL 8189397 at *8 (Bankr. N.D.N.Y. Jan. 14, 2009) ("Without limiting the foregoing, any "going dark," continuous operating restrictions, minimum purchase requires and/or other related restrictions in any Assumed Contract are unenforceable anti-assignment clauses under Sections 365(f)(1) and (3) of the Bankruptcy Code.").

12.     The Go-Dark Provision is also unenforceable because it functions as a right of recapture by allowing the landlord to terminate the lease ninety days after assignment if the tenant is unable to reopen.  Recapture provisions are routinely considered to be impermissible restraints on the assignment of a lease under Section 365(f).  *6711 Glen Burnie Retail, LLC v. Toys "R" Us, Inc.*, 2018 WL 6787942, at *2 (E.D. Va. Dec. 26, 2018) ("The Bankruptcy Court correctly held that the recapture clause in the parties' lease constitutes an unenforceable anti-assignment provision."); *see also In re Dura Auto. Sys., Inc.*, 2007 WL 77 28109 at *10 (Bankr. D. Del. Aug. 15, 2007) ("[P]rovisions . . . that . . . condition the assignment . . . to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment . . . constitute unenforceable anti-assignment provisions that are void and of no force and effect."); *see also In re Lucky Brand Dungarees, LLC, et al.*, No. 20-11768 (CSS) (Bankr. D. Del. Aug, 12, 2020) (same); *see also In re Fresh & Easy Neighborhood Mkt. Inc., et al.*, No. 13-12569 (KJC) (Bankr. D. Del. Dec. 19, 2013) (same).

13.     Variety operates commercially nationwide and is taking assignment of more than 200 leases in these bankruptcy cases. Variety will need sufficient time to renovate the store to company standards and to get the Big Lots store in Fort Myers up and running. Being subject to a 30-day Go-Dark Provision is impractical for a major retailer like Variety.

14.    Earlier in these bankruptcy cases, this Court held that a 90-day "go-dark" provision in the lease for Big Lots Store No. 5216, located at 5702 Nolensville Road, Nashville, TN 37211 (the "<u>Nolensville Lease</u>") was an unenforceable restriction on assignment.  *See* Hr'g Tr. at 62:6-62:8 (Jan. 1, 2025) ("So the debtors' assignment of the Nolensville lease is permitted, including the going-dark provision, and I'll overrule the objection."). The order entered approving the assignment of the Lease contained a broad provision replacing the 90-day go dark provision in the Nolensville Lease with at least a 180-day provision, if not longer.  *See* D.I. 1951, at ¶ 11(c).

15.    Here, too, the Go-Dark Provision in the Fort Myers lease, which is just as restrictive as the go-dark provision in the Nolensville Lease, should likewise be determined to be an anti-assignment provision, and Variety should be able to expand the go-dark provision to at least 120 days.

16.    For these reasons, the DGN Objection should be overruled.

**B.    The Brandon, Florida Landlord's Objection to Fifth Post-Closing Designation Notice and Reservation of Rights [D.I. 2015] and Supplemental Objection [D.I. 2332], filed by B&B Kings Row Holdings, LLC, Should be Overruled.**

17.    On February 19, 2025, B&B Kings Row Holdings, LLC ("**B&B**") filed an objection [D.I. 2015] (the "**B&B Objection**") to the Fifth Post-Closing Designation Notice and the assumption and assignment of the lease (the "**Brandon Lease**") Big Lots Store No. 560, located at 843 West Bloomingdale Avenue, Brandon, Florida (the "**Brandon Store**"). The Brandon Lease is attached hereto as **<u>Exhibit 3</u>**. All elements of the B&B Objection are in the process of being resolved consensually, and do not need to go before the Court.

18.    However, in informal discussions in March 2024, commenced by Variety, and in the *Supplement to the Brandon, Florida Landlord's Objection to Fifth Post-Closing Designation Notice and Reservation of Rights* [D.I. 2332] filed on March 21, 2025, B&B raised the issue that B&B leases a separate premises in the shopping center to Family Dollar Stores of Florida, Inc.

("**Family Dollar**") pursuant to a lease dated January 9, 2009 (the "**Family Dollar Lease**"), which

provides that:

> So long as Tenant has not permanently closed its business at the Demised Premises … Landlord agrees that Landlord … will not lease (or permit the leasing or subleasing of) or sell any space in the Shopping Center … to … any store operated by Variety Wholesalers including but not limited to Maxway, Roses, Super 10, ValuMart, Pope's and Bargaintown. This Paragraph will not apply to any tenant open for business in the Shopping Center on the date of this Lease and identified on Exhibit C – Tenant Roster, so long as any such tenant continues to operate the same type of business as it is operating on the date of this Lease, or so long as any change in use by such tenant is not subject to Landlord's consent.

*See* D.I. 2332 at 2.

19.     The Debtors, Variety, and B&B (the "**Brandon Parties**") agree that the Brandon Lease, which is dated February 6, 1997, pre-dates the Family Dollar Lease. Moreover, the Brandon Parties agree that the Brandon Lease specifically prohibits the operation of a "general merchandise liquidator, closeout store, or dollar store operation larger than 3,000 square feet of leasable floor area" in the relevant shopping center as a "Competing Business" and that, in order for Family Dollar to open in the shopping center, B&B and the Debtors entered into a First Lease Modification Agreement dated January 19, 2009 and attached hereto as **Exhibit 4** (the "**First Brandon LEMA**"), which formally provided the Debtors' consent to the Landlord's request to lease a 10,100 square foot retail space to Family Dollar, with certain limitations and restrictions. *See* First Brandon Lema ¶ 1.

20.     This Court should overrule B&B's objection related to the provisions of the Family Dollar lease because this Court has already ruled that the assignment of a Big Lots lease to an assignee in the bankruptcy proceedings is not subject to exclusivity provisions contained in leases entered into after such Big Lots lease.

21.     At the hearing held on January 21, 2025, related to the Nolensville Lease, this Court ruled that the Debtors could assign the Nolensville Lease to Burlington despite an exclusivity provision in a lease with Ross that would otherwise prohibit such assignment. This Court noted that "[t]he Ross lease was entered into after the Nolensville Lease" and the Ross lease "specifically restricts Burlington." *See* Hr'g Tr. at 60:4-60:13 (Jan. 21, 2025).  However, because the Debtors were not subject to the provisions of the later Ross lease by the terms of their own lease, adequate assurance did not require compliance with the Ross exclusivity provisions.

22.     A similar situation exists here: the Family Dollar lease came into existence after the Brandon Lease, and the Family Dollar Lease has an exclusive provision that does not allow an assignment of the Brandon Lease to Variety Wholesalers, Inc., the parent company of Variety. Moreover, as B&B has provided a copy of the Family Dollar Lease to Variety and the Debtors for review and consideration, the Debtors can confirm that the exclusive provision in the Family Dollar lease that does not permit B&B to enter into a lease with Variety Wholesalers, Inc., also adds that:

> This paragraph will not apply to any tenant open for business in the Shopping Center on the date of this Lease and identified on Exhibit C – Tenant Roster, so long as such tenant continues to operate the same type of business as it is operating on the date of this Lease, or so long as any change in use by such tenant is not subject to the Landlord's consent."

Big Lots is listed as a tenant in the shopping center in the exhibits attached to the Family Dollar Lease. B&B has represented in meet and confers that it agrees with and does not contest these representations and understandings regarding the Family Dollar Lease.  Moreover, the assignment provision in the Brandon Lease is substantially the same as the one at issue in the Nolensville Lease. *See* Brandon Lease ¶ 22.

23.     As this Court has already held in these Cases, Variety must adequately assure future performance *of the Debtors' lease*. Because the Debtors' lease does not require compliance with the Family Dollar exclusive, this assignment should be approved.

24.     For these reasons, this Court should overrule the B&B Objection, and the supplement thereto.

## II.     REPLY TO THE OBJECTION CONCERNING THE GOODWILL DALLAS ASSIGNMENT

25.     Goodwill Dallas is the proposed assignee pursuant to the eighth Notice [D.I. 1964] to assume the Debtors' lease agreement pertaining to the property located at 2855 Ridge Road, Rockwall, TX 75032 (the "**Rockwall Premises**"). Goodwill Dallas seeks to operate a typical Goodwill store at the Rockwall Premises.

26.     Steger Towne Crossing, LP (the "**Rockwall Landlord**") filed the *Objection of Steger Towne Crossing, LP to Notice of Filing of Eighth Post-Closing Designation Notice with Respect to Adequate Assurance of Future Performance and Proposed Cure* [D.I. 2066] (the "**Rockwall Objection**") principally arguing that a certain Operation and Easement Agreement ("**OEA**") restricts "second hand" stores from operating at the Rockwall Premises.

27.     The Rockwall Objection focuses heavily on the restrictions contained in the OEA, the applicability of those restrictions under the bankruptcy code and the Sale Order and distinctions between this scenario and previous disputes in these cases. However, the Rockwall Objection (and apparently the Rockwall Landlord) takes for granted that the OEA applies to the Rockwall Premises. Although the applicability of the OEA to the Rockwall Premises is the necessary foundation of the Rockwall Objection, the Rockwall Objection never bothers to establish this critical fact.

28.      Worse yet, the OEA actually undermines the entire Rockwall Objection. A simple examination of the OEA's exhibits and the Debtors' lease (both attached as exhibits to the Rockwall Objection) establish that the Rockwall Premises falls *outside* the scope of the OEA. The Debtors' lease, in <u>Exhibit A</u> and attached to the Rockwall Objection, contains the following image identifying      where      the      Rockwall      Premises      was      to      be      located:

**EXHIBIT A**

**SITE PLAN OF SHOPPING CENTER**



D.I. 2066-2 at 71. Upon information and belief, the road highlighted in yellow to the left of the proposed Big Lots location is Steger Towne Drive. Upon information and belief (and readily verifiable using publicly available mapping services such as Google Maps), the Rockwall Premises Big Lots store still currently sits in the same location identified in <u>Exhibit A</u> to the Debtors' lease alongside Steger Towne Drive.

29.      The OEA, per its terms, applies only to a specific "Shopping Center." D.I. 2066-1 at 5. Under the OEA, this Shopping Center only includes ten specific tracts of land: eight developer

tracts then owned by the landlord (each, a "**Developer Tract**"), a tract then owned by Dayton Hudson Corporation ("**Target**") and a tract owned by Albertson's, Inc. ("**Albertson's**") each identified on Exhibit X to the OEA (the "**Site Plan**"). *Id*.

30.     In the image below from Exhibit X to the OEA (*id*. at 69), Steger Towne Drive is marked in yellow and can be easily compared to the image from Exhibit A to the Debtors' lease. In comparing the two images, is readily apparent that the Rockwall Premises sits to the right of Steger Towne Drive in the below image.



*Id.*

31.     The Target tract is visible in the above image to the left of Steger Towne Drive and is highlighted in green below:



*Id.*

32.    The Albertson's tract sits to the immediate left of the Target tract as indicated in a further image from Exhibit X to the OEA. The below image shows the Albertson's tract abutting the Target tract to the left and Developer Tracts 3, 4 and 5 are visible as orienting land points and can also be seen below the Target tract in the image above in paragraph 13. *Id*. All of these locations are clearly across Steger Towne Drive from the Rockwall Premises:



*Id*. at 71.

33.     The images from the OEA itself clearly show that the Rockwall Premises does not sit in either the Target or the Albertson's tract. It also clearly shows that the Rockwall Premises does not sit in any of the eight named Developer tracts. The image below (which is the same image as in paragraph 14 above) shows Developer tracts 1-5 as being on the Target/Albertson's side of Steger Towne Drive:



*Id*.

34. Developer tract 8 can be identified in the below image from Exhibit X to the OEA as sitting above the Target tract – also across Steger Towne Drive from the Rockwall Premises:



*Id.* at 70.

35.    Finally, Developer Tracts 6 & 7 can be seen as sitting next to the Rockwall Premises in the below image from Exhibit X to the OEA. Developer Tracts 6 & 7 are outlined in yellow in the image below whereas the locations marked in green are where the Rockwall Premises sits per Exhibit A to the Debtors' lease:



*Id*. at 69.



D.I. 2066-2 at 32.

36.     The Rockwall Landlord's objection, at a minimum, fails to make any case that the Rockwall Premises falls within the "Shopping Center," as defined in the OEA, and is therefore subject to the OEA's terms. It does not identify which, if any, of the specific tracts listed in the OEA the Rockwall Premises falls in. Counsel to the Debtors have asked the Rockwall Landlord to identify which Developer Tract the Rockwall Premises sits on and as of now, have not received an answer. To the extent the Rockwall Landlord seeks to rely on the Declaration of S. Susan Self to support this fact, that objection is plainly deficient.  D.I. 2288.  While Ms. Self avers, in conclusory fashion and without providing support, that "[i]t is [her] belief that an assignment of the Lease to Goodwill would violate the Use Restriction in the OEA," *id.* at 2288 ¶ 14, the OEA is a fully integrated contract, and the Rockwall Landlord nowhere argues that the OEA contains any ambiguity meriting the introduction of parol evidence.  D.I. 2066-1 § 6.8(A); *In re Epic Capital Corp.*, 307 B.R. 767, 775 (D. Del. 2004) (affirming Bankruptcy Court's decision to preclude parol evidence); *David J. Sacks, P.C. v Haden*, 266 SW3d 447, 450 (Tex. 2008) ("An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports."). And the OEA, which the Rockwall Landlord appended to its objection and on which its entire argument is premised, unambiguously states that it *does not* apply to the Rockwall Premises.

37.     For these reasons, the Debtors submit that the OEA is not applicable to the Rockwall Premises, and the Rockwall Objection should be overruled.

### CONCLUSION

38.     For the reasons set forth herein, the Debtors respectfully request that the Court overrule the objections and approve the assignments set forth in the Notices and any such other and further relief as the Court may deem just and proper.

Dated:    March 24, 2025
          Wilmington, Delaware

                                        MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                                        /s/ *Sophie Rogers Churchill*
                                        Robert J. Dehney, Sr. (No. 3578)
                                        Andrew R. Remming (No. 5120)
                                        Daniel B. Butz (No. 4277)
                                        Tamara K. Mann (No. 5643)
                                        Sophie Rogers Churchill (No. 6905)
                                        1201 N. Market Street, 16th Floor
                                        Wilmington, DE 19801
                                        Tel: (302) 658-9200
                                        rdehney@morrisnichols.com
                                        aremming@morrisnichols.com
                                        dbutz@morrisnichols.com
                                        tmann@morrisnichols.com
                                        srchurchill@morrisnichols.com

                                        -and-

                                        DAVIS POLK & WARDWELL LLP

                                        Brian M. Resnick (admitted *pro hac vice*)
                                        Adam L. Shpeen (admitted *pro hac vice*)
                                        Stephen D. Piraino (admitted *pro hac vice*)
                                        Ethan Stern (admitted *pro hac vice*)
                                        450 Lexington Avenue
                                        New York, NY 10017
                                        Tel.: (212) 450-4000
                                        brian.resnick@davispolk.com
                                        adam.shpeen@davispolk.com
                                        stephen.piraino@davispolk.com
                                        ethan.stern@davispolk.com

                                        *Counsel to the Debtors and Debtors in Possession*