**EXHIBIT 1**

Fort Myers Lease



## LEASE

This Lease, made effective this ____23rd____ day of ____April____, 1994, by and between ____Morse Shores Center Associates, Ltd., a Florida limited partnership by REGP, Inc. a Pennsylvania corporation its general partner____ with its business address at ____c/o Mcava Real Estate, 3612 W. Hillsboro Blvd., Deerfield Beach, FL 33442____, LANDLORD, and Consolidated Stores Corporation, an Ohio corporation, doing business as Odd Lots or Big Lots, of the City of Columbus, County of Franklin, and State of Ohio, Tenant, whose mailing address is 300 Phillipi Road, Department 907, Columbus, Ohio 43228-1310.

### WITNESSETH:

**1.    DEFINITIONS:**

For purposes of this Lease, these terms are defined as follows:

A.    <u>Common Areas</u>:  The term "Common Area" as used herein shall mean the improved portion of the shopping center not occupied by building area as shown on the site plan, including, but not limited to, the parking areas, driveways, service driveways, service areas, sidewalks, any landscaped areas, shopping center sign, and parking lot lighting poles and light fixtures of the shopping center are collectively referred to as Common Areas.

Landlord shall maintain the Common Areas which shall remain under Landlord's control and be subject to rearrangement, enlargement or diminution and to such reasonable rules and regulations as are prescribed by Landlord from time to time. Tenant, any employees or agents shall not fence, block, allow property to remain in or upon or otherwise obstruct the Common Areas.  Tenant is permitted to erect a cart corral in the parking area.

Landlord agrees not to materially decrease the number of parking spaces contained in the Common Areas, to block access to the Demised Premises or to obstruct the visibility of the Demised Premises from motorists using_____ ____Palm Beach Blvd.____ except for such reasonable blockage resulting from construction of buildings on the shopping center building reserve and any outlots reserved.

B.    <u>Dates</u>:

1)    The Tenant Entrance Date  shall be the date first appearing above or whenever Tenant or any agent, employee or contractor of Tenant commences work in the Demised Premises or stores equipment or materials therein, whichever is later.  From the Tenant Entrance Date until the Rent Commencement Date, Tenant shall have all of the duties, obligations and responsibilities under this Lease except those set forth in Sections 3, 4, and 5, and Tenant may install trade fixtures and equipment in the Demised Premises and store materials therein at Tenant's sole risk providing that such activity does not interfere with Landlord or its contractor's work in the Demised Premises.

2)    The Rent Commencement Date shall be the date Tenant opens for business in the Demised Premises or sixty (60) days after the Tenant Possession Date, whichever is earlier.  Upon the request of either Landlord or Tenant, the parties hereto shall join in the execution of a letter agreement stipulating the Tenant Possession Date.

1



INITIALS:

LL          TN

.        As of the Rent Commencement Date, all provisions of this Lease shall be applicable.

3)    The Term Commencement Date shall be the date that the term of this Lease commences which shall coincide with the Rent Commencement Date if the latter is on the first day of a month, but if not, then it shall be the first day of the month following the Rent Commencement Date.

4)    Lease Year shall mean each successive twelve (12) month period beginning with the first day of February of each year during the term hereof.

5)    The Tenant Possession Date shall be the date Landlord, after having completed all construction required of him under the Remodeling Rider, tenders possession of the Demised Premises to Tenant. Possession of the Demised Premises shall not be deemed to have been given to Tenant unless the Demised Premises are ready for the installation of Tenant's fixtures and finishing work by Tenant, and comply with all laws, ordinances, regulations and building restrictions relating to the construction upon the Demised Premises.

6)    If Landlord fails to return properly executed Leases to Tenant by_____ __April 22____, 19_94_, or if Landlord fails to tender possession of the Demised Premises to Tenant by ____August 15____, 19_94_, then Tenant shall not be required to take possession until January 1, 1995 and shall not be responsible to pay any rent until March 1, 1995. In the event that the Landlord fails to tender possession of the Demised Premises to Tenant by ~~August 15, 1994 and if Tenant elects to take possession~~ January 1, 1995, then Tenant may cancel this Lease by written notice to Landlord. Notwithstanding the foregoing, Tenant and Landlord acknowledge that Landlord's lender must approve this lease which could take a period of 6-8 weeks and Landlord must enter into a termination agreement with the existing tenant. If Landlord does not have a fully executed termination agreement or if lender has not given its approval by June 6, 1994, Tenant shall have the right to terminate this lease.



C.    <u>Exhibits</u>:  The following Exhibits are attached to and made a part of this Lease by this reference hereto:

1)    Exhibit A - Legal Description of Shopping Center

2)    Exhibit B - Rider for Remodeling

3)    Exhibit C - Sign Specifications

4)    Exhibit D - Site Plan of Shopping Center

D.    <u>Demised Premises</u>:   Being a storeroom, which storeroom shall have approximately _____26,400_____ square feet with dimensions of____ _____.

E.    <u>Shopping Center</u>:  Landlord's shopping center is known as _Morse Shores _____Shopping Center_ at the address __4901 Palm Beach Blvd., Unit #27B in the City of _Ft. Myers_, State of _____Florida__, and County of _Lee_.

2



INITIALS:

LL        TN

2.    **DEMISE:**

Landlord, in consideration of the rent to be paid by Tenant and Tenant's covenants and undertakings hereinafter provided, hereby leases to Tenant the Demised Premises during the term and for the use hereinafter provided. Landlord further grants to Tenant a non-exclusive license to use the Common Areas to be shared with the other Tenants and occupants of the shopping center and their respective employees, agents, customers, and invitees.

3.    **TERM:**

A.    <u>Original Term</u>: The original term of this Lease shall be for a period commencing on the Term Commencement Date as defined in Article 1.B(3) above and ending January 31, __1999__. The "Lease Year" shall be defined as each successive period of twelve (12) consecutive calendar months commencing on the first day of February of each year during the term hereof. If the Term Commencement Date is other than February 1st of any year, the period between the Term Commencement Date and January 31st of the following year shall be the "First Partial Lease Year." Tenant's obligations to pay rent shall commence on the Rent Commencement Date.

B.    <u>Option to Extend Term</u>: So long as the Tenant is not in default under the terms of this Lease, Landlord hereby grants to Tenant the option to extend the Term of this Lease for three (3), five (5) year option terms, consecutively referred to as "First Option Term", "Second Option Term" and "Third Option Term". The First Option Term shall commence at the end of the original Term of this Lease, the Second Option Term shall commence at the end of the First Option Term, and the Third Option Term shall commence at the end of the Second Option Term, each upon the same terms and conditions as contained in this Lease except as provided herein. If Tenant is then in possession of the Demised Premises, Tenant may elect to exercise each option by giving the Landlord written notice at least three (3) months prior to the expiration of the original term or the previous option term.

4.    **USE AND OPERATION:**

Tenant covenants and agrees that the Demised Premises shall be used and occupied for the purpose of the retail sale of general merchandise. No other discount, liquidator, or close out store or dollar store operation may be permitted in the Shopping Center during the original term of this Lease or any option terms exercised by Tenant. Notwithstanding the foregoing, all existing stores in the Shopping Center with fully executed leases as of the date of this Lease shall be excluded from the above restrictions.

Tenant agrees to, when possible, operate and open the Demised Premises for business at least between the hours of 10:00 A.M. and 6:00 P.M., Monday through Saturday, and 1:30 P.M. to 5:00 P.M. on Sunday, of each week, except for state and federally recognized holidays or religious holidays and except for days on which the conducting of business shall be prohibited by governmental authority, during the term of this Lease.

In the event Tenant (a) shall fail to take possession and open for business in the Demised Premises fully fixtured, stocked and staffed within thirty (30) days after the Rent Commencement Date, or (b) shall vacate, abandon or desert the Demised Premises, or (c) shall cease operating Tenant's business therein (except where the Demised Premises are rendered untenantable by reason of fire, casualty or other causes beyond Tenant's control not resulting from the negligent acts or omissions of Tenant or Tenant's employees, agents, contractors, licensees, concessionaires or invitees), then and in any such events (hereinafter collectively referred to as "failure to do business") Landlord shall have the right, in addition to other remedies herein provided, to collect the Guaranteed Minimum Rent.

Tenant agrees to keep the Demised Premises in a clean, neat, healthful, aesthetically pleasing, well-maintained and orderly condition and to keep the Demised Premises free

3

INITIALS:



LL        TN

of debris, trash, garbage, or refuse (except that reasonable amounts may be kept temporarily in closed containers in the places directed by Landlord) from vermin, insects or pests by virtue of having regular pest extermination, excessive vibrations, loud or constant noises, dangerous materials and all other nuisances. Tenant further agrees not to burn trash or garbage in the shopping center; allow deliveries, shipments or pick-ups through the front entrance to the Demised Premises; commit waste in the Demised Premises or shopping center; cause or permit pipes, lines, conduits, fixtures or appliances in the Demised Premises to be ruined or damaged by freezing, excessive heat or lack of care, maintenance or repair; permit Tenant's agents, employees, customers or invitees to repeatedly or routinely break the law or reasonable rules and regulations adopted by Landlord; do anything to damage, injure or interfere with Landlord, other tenants or occupants of the shopping center or their customers or invitees; or engage in any conduct, activity, or omission which serves to reduce trade in the shopping center or place Landlord's family oriented shopping center in disrepute.

The Demised Premises shall not be used in any manner or occupied for any purpose constituting a fire hazard or so as to increase the cost of Landlord's hazard insurance over the normal cost of such insurance, absent that use, for the type and location of the building of which the Demised Premises are a part.

5.    **RENT:**

From the Rent Commencement Date during the term hereof, Tenant does hereby covenant and agree to pay to the Landlord in lawful money of the United States at,___ _c/o Mcava Real Estate, 3612 W. Hillsboro Blvd., Deerfield Beach, FL 33442_ , or at such other place as Landlord may from time to time direct in writing, the following which are collectively referred to hereinafter as "Rent":

A.    Guaranteed Minimum Rent:  During the original term of this Lease, the sum of _$ 92,400.00_ per annum which shall be paid in equal monthly installments in advance on the first day of each and every month, in the amount of _$7,700.00_ each. The Guaranteed Minimum Rent for any partial month shall be prorated on the basis of a thirty (30) day month.

All the terms and conditions of this Lease shall apply during the option terms except that (1) this option to extend term shall terminate when exercised; (2) the Guaranteed Minimum Rent applicable for the First Option Term shall be the sum of _$105,600.00_ per Lease Year which shall be paid in equal monthly installments, in advance of the first day of each and every month in the amount of _$8,800.00_ . The Guaranteed Minimum Rent applicable for the Second Option Term shall be the sum of _$118,800.00_ per Lease Year which shall be paid in equal monthly installments, in advance of the first day of each and every month in the amount of _$9,900.00_ . The Guaranteed Minimum Rent applicable for the Third Option Term shall be the sum of _$132,000.00_ per Lease Year which shall be paid in equal monthly installments, in advance of the first day of each and every month in the amount of _$11,000.00_ .

B.    Utilities Charge and Exterior Lighting:  Landlord shall provide Tenant with access to all utilities necessary to conduct business on the Demised Premises. Tenant shall be solely responsible for and shall promptly pay for all public utility and private services rendered or furnished to or for the benefit of Tenant and to the Demised Premises during the term hereof including heat, water, gas, electricity, and sewer rental, together with all taxes, levies, or other charges based on the use of such utilities. Landlord shall provide separate utility meters which shall accurately reflect Tenant's usage. Should any such services be furnished by Landlord, Tenant agrees to pay Landlord for same. The rates

4

INITIALS:



LL          TN

charged by Landlord shall not exceed those of a public utility company furnishing similar service in the area. All billings by Landlord for any such service shall be paid within thirty (30) days of receipt thereof, or among Landlord's other remedies, such services may be discontinued.

C.    <u>Percentage Rent</u>: In addition to the "Guaranteed Minimum Rent" hereinbefore expressly reserved, Tenant further agrees to pay to Landlord as additional rent for each Lease Year, in the manner following, a "Percentage Rent" equal to two and one-half percent (2-1/2%) of the excess of Tenant's annual gross sales and income, as hereinafter defined, which exceeds the annual base sum of $3,696,000.00 during the initial term; _$4,224,000.00_ during the First Option Term; _$4,752,000.00_ during the Second Option Term; and _$5,280,000.00_ during the Third Option Term.

Within thirty (30) days following the end of each month, Tenant shall furnish to Landlord an accurate statement of gross sales and income for the previous month. Tenant shall furnish to Landlord within thirty (30) days immediately following the end of each Lease Year, an accurate statement of the gross sales and income for such period, certified to by Tenant, in form satisfactory to Landlord, and shall therewith pay to Landlord, any percentage rental then due at the percentage above stated. If at the end of any Lease Year, the total amount of Percentage Rent so paid by Tenant exceeds the total amount of Percentage Rent required to be paid by Tenant during such Lease Year, Landlord shall have the option of either refunding the excess to Tenant or issue credit against the next ensuing installments of Guaranteed Minimum Rent. Percentage rental payments required to be made by Tenant under the terms of this Lease shall be made promptly when due. The term "gross sales and income" as used herein, shall be deemed to mean (1) the aggregate gross amount of all sales made in or from the Demised Premises even though filled elsewhere; (2) charges for all services rendered in or from the Demised Premises; (3) and all such other gross receipts including income from vending machines located in the Demised Premises excluding those used solely for the benefit of Tenant's employees. Such sales, charges, and receipts shall include those of Tenant and Tenant's sublessees, licensees and concessionaires. The following shall be deducted therefrom to the extent same are included in the above computation: (1) sales taxes, excise taxes and any similar tax specifically charged to and paid by customers and directly remitted to the taxing authority; (2) merchandise returned for cash, and (3) income from stamp machines and public telephones.

For the First Partial Lease Year, percentage rent shall be calculated using a formula with the numerator being the number of days in the partial lease year and the denominator being 365 multiplied by the annual base sum during the term in which it falls. Tenant shall pay the amount by which two and one-half percent (2-1/2%) of Tenant's gross sales exceeds the product.

Should Tenant have opened for business during the month preceding the Term Commencement Date, the gross sales and income for the fractional month shall be added to the gross sales and income for the first month of this term, and the annual base sum shall be proportionately increased and the Percentage Rent paid thereon. Should this Lease expire or be sooner terminated leaving a fractional Lease Year, for purpose of computation of Percentage Rent payable hereunder, the annual base sum shall be proportionately reduced and Percentage Rent shall be paid thereon.

Tenant agrees to keep books of account, in accordance with good accounting practice, in form satisfactory to Landlord, of the business conducted on said Demised Premises, accurately showing all gross sales and income. Landlord or its authorized agents may audit the same at any reasonable time. Should Landlord's audit of Tenant's books and records disclose gross sales and income

INITIALS:



LL          TN

5

which are five percent (5%) or more greater than that reported by Tenant, then Tenant shall promptly pay to Landlord the cost of such audit and any Percentage Rent found to be due by such audit.

Should Tenant fail to furnish such sales report within the period required, Landlord may have said sales report prepared by an accounting firm of Landlord's choice after reasonable notice to Tenant, and Tenant shall promptly pay the cost thereof and any Percentage Rent required to be paid pursuant to such sales report.

D.    <u>Common Area Charges</u>:  Throughout the term of this Lease, Landlord shall be responsible for cleaning, snow and ice removal in the parking lot. Landlord shall also be responsible for:

(i)    operating, maintaining, replacing, improving, repairing, and lighting the Common Areas and all other non-leasable areas and facilities located in the shopping center which are available for use in common by occupants of the shopping center and/or their customers and invitees;

(ii)    operating, maintaining, repairing, replacing, improving, and lighting the service areas, garbage and refuse disposal facilities, shopping center maintenance and storage room, loading area and all other areas and facilities located in the shopping center which are used in the maintenance and operation of the shopping center;

(iii)    operating, maintaining, repairing, replacing, and improving appropriate parking area entrance, exit and directional markers, shopping center signs, and other traffic control signs as are reasonably required to effect the plot plan;

(iv)    providing security and on-site and off-site traffic control; and

(v)    maintenance of paved surfaces in a level and smooth condition, free of potholes, with the type of material as originally used or a substitute equal in quality, restriping as required to keep same clearly visible and appropriately marked.

Such expenses shall include, but not be limited to, costs of on-site management and supervision, refurbishing, repairing, maintaining, replacing, and improving (but less the amount of any insurance proceeds, or condemnation awards), lighting, line painting, landscaping, providing security, providing public liability, property damage, fire and extended coverage on the common facilities and such other insurance as Landlord deems appropriate, total compensation and benefits (including premiums for worker's compensation and other insurance) paid to or behalf of employees; personal property, supplies, fire protection, and fire hydrant charges, water and sewer charges, utility charges, licenses and permit fees, parking area surcharges or levies, reasonable depreciation of equipment used in operating, maintaining, refurbishing, repairing, replacing and improving the common areas and service areas and rent paid for the leasing of any such equipment.

Tenant agrees to pay to Landlord a proportionate share of such common area maintenance charges as set forth herein.  Tenant's prorata share shall be determined by the use of a formula, the numerator of which is the square footage of Tenant's premises and the denominator of which is the gross leasable area of the Shopping Center excluding the outlots which are to be developed on the peripheral property as marked on Exhibit D, with the resulting percentage being Tenant's proportionate share.

6

INITIALS:

LL        TN

On the first day of each calendar month during that portion of the term hereof falling within the first Lease Year, Tenant shall pay to Landlord, in advance, as an estimated payment on account of Tenant's proportionate share of such common area charges. If the Commencement Date hereof shall not be the first day of a calendar month, Tenant's payment of its proportionate share of Common Area Charges for the fractional month between the Commencement Date and the first day of the first full calendar month in the Term shall be prorated on a per diem basis (calculated on a thirty (30) day month) and shall be paid together with the first payment of Guaranteed Minimum Rent.

After the first Full Lease Year, Tenant shall continue to pay such estimated amount of Tenant's proportionate share of such Common Area Charges on the first day of each month in advance without demand and without any setoff or deduction (except as set forth herein) by the aforesaid estimated amount of Tenant's proportionate share of such Common Area Charges. Such Common Area Charges may be adjusted and revised by Landlord after the end of each accounting period during the Term hereof on the basis of the actual Common Area Charges for the immediately preceding Lease Year. Upon Landlord furnishing to Tenant a statement setting forth such revised Common Area Charges, Tenant shall pay to Landlord such revised estimated share in equal monthly installments, each such installment to be a sum equal to one-twelfth (1/12th) of such revised estimated Common Area Charges in advance on the first day of each calendar month thereafter until the next succeeding revision in such estimate.

Following the end of each Lease Year, Landlord shall furnish to Tenant a written statement in reasonable detail covering the Common Area Charges just expired showing the total Common Area Charges for such Lease Year, the amount of Tenant's proportionate share thereof and payments made by Tenant with respect thereto. In making the computations as aforesaid, Landlord's statement shall be conclusive evidence of Common Area Charges. At such time, Landlord shall, if requested by Tenant, furnish copies of actual invoices paid for such Common Area Charges as stated herein.

If Tenant's proportionate share of such Common Area Charges exceeds Tenant's payment with respect to any Lease Year, Tenant shall pay to Landlord the deficiency within twenty (20) days after the date of the furnishing of the statement from Landlord; if Tenant's payments exceed Tenant's share of the Common Area Charges, and Tenant is not in default hereunder or otherwise indebted to Landlord, Landlord shall credit such excess against the next payments due for Common Area Charges; provided, if such overpayment is for the last Lease Year, Landlord shall refund to Tenant the amount of such overpayment after Tenant has fully performed all of its obligations under this Lease, is not indebted to Landlord and has vacated in accordance with the provisions of this Lease. In the event Tenant is indebted to Landlord for any reason whatsoever, Landlord may deduct such amount owed from such overpayment.

Landlord agrees to furnish copies of actual invoices on an annual basis for such common area maintenance charges as stated herein if requested by Tenant, and Tenant agrees to pay its proportionate share for said expenses, excluding administrative charges and depreciation on machinery and equipment used in such maintenance.

Tenant's share of such expense shall not exceed .50/square foot per Lease Year during the initial term of Lease; .60/square foot per Lease Year during the First Option Term; .70/square foot per Lease Year during the Second Option Term; and .80/square foot during the Third Option Term.

E.    Taxes and Assessments: Tenant shall pay its prorata share of all real property taxes which may be levied or assessed by any lawful authority against the land

7



INITIALS:

LL          TN

and improvements in the shopping center or against Landlord in respect of the land and improvements in the shopping center. Tenant's prorata share of real estate taxes shall be the product obtained by multiplying said taxes by a fraction, the numerator of which shall be the gross leasable square foot area of the Demised Premises and the denominator of which shall be the gross leasable square foot area of the shopping center. For the purpose of this section and the computation aforesaid, each two (2) square feet of floor space above the ground level shall be counted as one (1) square foot. If the term of this Lease shall begin on and/or terminate at a time other than the beginning (or ending, as the case may be) of a tax year, a proper apportionment of said real estate taxes for the year shall be made to cover the fraction of a year included within the terms of this Lease.

Tenant shall pay its prorata share of the taxes against the land and improvements in the shopping center, or against Landlord in respect thereof, based upon the actual amount of the last taxes which have been assessed or shall be based upon an estimate, projection or other statement in writing by the taxing authority, or if unavailable then as estimated reasonably by Landlord. Tenant's prorata share of such taxes shall be determined as provided in the preceding paragraph. Landlord shall furnish Tenant with copies of actual tax bills when same are issued, and Tenant shall pay its prorata share thirty (30) days within receipt of such invoice from Landlord. If required to pay its prorata share of the estimated taxes, an adjustment shall be made as soon as the actual taxes for the period, and Tenant's prorata share thereof, can be determined; and Tenant shall promptly pay for any deficiency, and Landlord shall promptly give credit for any overage.

Interest and/or penalties for late payment shall not be included in determining tax and assessment increases.

If the assessed valuation of the improvements is increased by reason of any improvements made by Landlord or any tenant of space in the Shopping Center, the base period taxes, to the extent they do not reflect any such valuation increases, shall be appropriately increased to reflect said increase.

Tenant shall pay its proportionate share of taxes and assessments within thirty (30) days after being invoiced therefor by Landlord.

If Tenant deems any taxes, assessments, or charges payable by Tenant hereunder, or any part thereof, to be illegal or excessive, Tenant may contest the same by proper proceedings commenced at its own expense and in good faith. If such proceedings are resolved against Tenant, Tenant shall pay its prorata share of all taxes, assessments, and charges, and all penalties and interest thereon, found to be due and owing. Tenant shall indemnify Landlord against any loss or damage by reason of such contest, including all costs and expenses thereof during the pendency of any such proceeding, and shall fully protect and preserve the title and rights to Landlord, as well as Tenant's leasehold estate in and to the Demised Premises.

Tenant shall pay all taxes assessed against its trade fixtures, equipment, machinery, appliances, and other personal property, and any other license fees, occupational taxes, lease taxes, and other governmental charges arising in connection with this Lease or Tenant's use or occupancy of the Demised Premises or operation of its business.

6.    **ALTERATIONS:**

Tenant shall have the right to make changes, additions, and alterations inside the Demised Premises, provided that such work shall not affect the structural parts of the building of which they are a part; that such are done in good and workmanlike manner;

8

INITIALS:



LL          TN

that permits therefor from all public authorities, as required, are obtained and paid for; that all cost and expense arising from such undertaking as well as all damages occasioned in connection therewith shall be paid by Tenant; that all such changes shall at the end of this term remain the property of Landlord, unless Landlord otherwise agrees in writing, and that Tenant shall promptly remove any Mechanic's Lien placed on the Demised Premises resulting therefrom.

## 7.   MAINTENANCE AND REPAIRS:

Tenant agrees to maintain and replace all plate glass and other glass which is part of the Demised Premises, promptly replacing any such damaged or broken glass with tempered or safety plate glass (as required) and to save Landlord harmless from any loss, cost, damage or claim resulting from such breakage or the replacement thereof unless such damage is due to the willful or wanton act or negligence of Landlord.

Tenant acknowledges that the Demised Premises, including marquee lights, rear or side floodlight, heating system, electrical system, fixtures, equipment, air conditioning, if any, plumbing, hot water tank, floor covering, doors, windows, and the interior of the Demised Premises, will be, as of the date of possession under the possession and control of Tenant and Tenant agrees to keep same in good order, repair, maintenance, and operation. Should the HVAC system require repair and/or replacement during the first two (2) lease years, which the cost thereof exceeds Two Thousand Five Hundred Dollars ($2,500.00) in the aggregate in any one (1) Lease Year, Landlord shall be solely responsible for such costs over and above Two Thousand Five Hundred Dollars ($2,500.00), unless the need for such repair or replacement is occasioned by the negligent or willful act of Tenant.

Landlord acknowledges that it is the responsibility of the Landlord to place the HVAC system in good working condition and provide Tenant with written notification that the HVAC system is in good working condition <u>prior</u> to the Tenant Possession Date. If the HVAC system is not in good working condition by the Tenant Possession Date or at the latest two (2) weeks prior to Tenant's scheduled opening date, Tenant shall make all repairs necessary to place the HVAC system in good working condition at <u>Landlord's expense</u>.

Notwithstanding the foregoing, Landlord hereby expressly warrants to Tenant that all items required to be kept by Tenant in good order/repair, maintenance, and operation will be in good operating condition as of the Tenant possession. Landlord further agrees that Tenant shall have no obligation to repair or maintain any such item as is not in operating condition until put in operating condition by Landlord at its expense. Tenant shall notify Landlord of any defects within thirty (30) days after Tenant possession by providing Landlord with a "punch list" of such items not in operating condition. Landlord shall promptly put such inoperative items listed on the punch list in operating condition, and, thereupon, Landlord's obligation under this warranty shall terminate. Notwithstanding the foregoing, if Tenant possession date occurs during the months of October through May, Tenant shall be granted until June 15th to test the air conditioning system. The Tenant also agrees to keep the area adjoining the entrance to the Demised Premises in a clean and safe condition by removing snow and ice from the doorways and sidewalks.

Tenant further agrees to free all stopped or clogged interior waste or interior sewer lines and to exterminate pests when necessary.

Landlord agrees to keep and maintain the roof, roof drains, exterior walls, exclusive of doors and windows and exterior utility lines, during the term and will make required structural repairs to the building of which the Demised Premises are a part. However, Tenant agrees to make and pay for all repairs of damage to the same caused through the fault or negligence of Tenant, his or its agents, employees, invitees, and customers. Landlord, its agents and employees, may freely enter the Demised Premises at all

9

INITIALS:

LL        TN

reasonable times to inspect or display them or to make repairs to common facilities or those facilities required to be maintained by Landlord.

As a condition precedent to all obligations of Landlord to perform repairs or the Demised Premises and shopping center, Tenant will notify Landlord in writing of the need for such repair. If Landlord fails to commence the making of repairs within thirty (30) days after such notice, Tenant shall have the right to perform such repairs and to charge Landlord the reasonable cost thereof. If the repair is necessary to end or avert an emergency and if Landlord after receiving notice from Tenant of such necessity fails to commence repair as soon as reasonably possible, Tenant may do so at Landlord's cost, without waiting thirty (30) days. Should Landlord refuse to reimburse Tenant the reasonable cost of any such repair work, Tenant shall have the right to deduct such cost from the next monthly rent payment(s) owing.

## 8.    SIGNS:

Tenant shall have the right subject to local code, to place a suitable road sign upon the existing pylons, if there are pylons existing. Absent an existing pylon, Tenant shall have the right to erect pylons for its road signs. Tenant shall, at its own expense, obtain the necessary permits and comply with applicable local codes and ordinances. Once the pylon signs are installed Tenant shall not be required to remove, replace change, or alter it and Landlord shall not remove, replace or diminish the size of Tenant's pylon sign. Should Tenant be prohibited by Landlord from erecting a pylon sign there shall be a twenty percent (20%) reduction in guaranteed minimum rent.

Tenant shall also have the right to place, subject to local code, suffer or erect signs, awnings, canopies or decorations on the exterior walls of the Demised Premises. Such signs shall only contain the name and business of Tenant and Tenant agrees to maintain such sign in good condition and repair, save and defend Landlord free of all cost, expense, loss, or damage which may result from the erection, maintenance, and existence of the same.

## 9.    FIXTURES:

Tenant agrees to furnish and install, at Tenant's expense, all trade fixtures or equipment required by Tenant. At all times while Tenant is not in default under the terms and conditions of this Lease, Tenant may replace such trade fixtures or equipment. At the end of the term, provided that all rents have been paid to Landlord, Tenant may remove such trade fixtures or equipment, but shall repair any damage to the Demised Premises caused by or resulting from such removal, except that should Tenant have installed lighting fixtures, and/or air conditioning equipment, the parties agree that they are not trade fixtures or equipment and they may not be removed since they became the property of the Landlord when affixed.

## 10.    GOVERNMENTAL REGULATIONS:

Landlord agrees Demised Premises conform to all requirements by authority having jurisdiction; if said Demised Premises do not conform, Landlord will promptly have them conform at all times unless such is necessitated by changes, alterations or additions made by Tenant. Landlord agrees to make all repairs, alterations, additions, or replacements to the Demised Premises required by any law, statute, ordinance, order or regulation of any governmental authority; to keep the Demised Premises equipped with all fire and safety appliances, devices, equipment and applications so required, including, but not limited to, smoke and fire alarms, sprinkler system and approved fire extinguishers of the type and number recommended, to procure any licenses and permits required; and to comply with the orders and regulations of all governmental authorities, including all requirements as set forth in the Americans with Disabilities Act as said Act now exists or may be amended in the future. Landlord shall also be responsible for monitoring the sprinkler system if it is required to be monitored locally. If the sprinkler system can be

10



INITIALS:

LL          TN

monitored outside of the State Tenant shall be responsible for installing its monitoring equipment and monitoring the sprinkler system.

11.    **PERSONAL PROPERTY:**

Tenant assumes all risk of damage to or destruction, loss or pilferage of fixtures or personal property within the Demised Premises or loss suffered by Tenant's business resulting from any cause whatsoever and shall save and hold Landlord harmless from all claims resulting therefrom, except those resulting from the intentional act or omission or the willful negligence of Landlord.

12.    **INDEMNIFICATION:**

Landlord, its heirs, executors, administrators, successors and assigns, agrees to indemnify and hold harmless Tenant with respect to any and all fire or extended coverage losses, however caused to the Demised Premises unless caused by the willful conduct or negligence of Tenant. Tenant, its successors and assigns, agrees to indemnify and hold harmless Landlord with respect to Tenant's property located in or about the Demised Premises. Landlord and Tenant agree to notify their respective fire and extended coverage insurance carrier of the indemnity and hold harmless agreement contained in this paragraph. Tenant, its successors and assigns, agrees to indemnify and hold harmless Landlord from any liability for injury to or death of any person or damage to personal property of every kind and nature arising from or in connection with the use and occupancy of the Demised Premises caused by the negligent acts or omissions to act of Tenant or Tenant's servants and agents. Landlord, its heirs, executors, administrators, successors and assigns, agrees to indemnify and hold harmless Tenant, from any liability for injury to or death of any person or damage to personal property of every kind and nature arising from or in connection with the use and occupancy of the Demised Premises caused by defects in the Demised Premises, the negligent acts or omissions to act of Landlord, or Landlord's servants and agents, or by failure of Landlord, or Landlord's servants and agents, to fulfill Landlord's obligations hereunder.

13.    **INSURANCE:**

A.    <u>Liability</u>: Tenant agrees to carry at its own expense, throughout this Lease, public liability insurance covering the Demised Premises and Tenant's use thereof, which insurance, shall include Landlord as an additional insured, in companies and in a form satisfactory to Landlord, with minimums of the following: (i) Five Hundred Thousand Dollars ($500,000.00) on account of bodily injuries to, or death of one person; (ii) One Million Dollars ($1,000,000.00) on account of bodily injuries to or death of more than one person as a result of any one accident or disaster; and (iii) with Two Hundred Thousand Dollars ($200,000.00) coverage for property damaged in an accident, and to deposit said certificates of coverage thereof with Landlord prior to the date of occupancy by Tenant. Such liability insurance coverage and the certificate shall bear endorsements to the effect that the insurer agrees to notify Landlord not less than ten (10) days in advance of modification or cancellation thereof.

B.    <u>Insurance Premium Increases</u>: Landlord has insured the Demised Premises against loss or damage by fire and such other risks as are normally insurable under the standard form of fire insurance with broad form extended coverage endorsement, including malicious mischief and vandalism, in an amount not less than eighty percent (80%) of the full insurable value of all the buildings in the shopping center.

During the term of this Lease, Tenant will pay to Landlord, within thirty (30) days after the termination of each Lease Year, Tenant's prorata share of any premiums for such insurance paid during the Lease Year.

11

INITIALS:

| | |
|---|---|
| ↲ | AB |
| LL | TN |

In the event the policy or policies of such insurance cover other buildings and/or other parts of the building, Tenant will pay to Landlord, at the times and in the manner provided above, that portion of any such increase in insurance premiums that the floor area of the Demised Premises bears to the total rentable floor area of all buildings and parts of buildings covered by such policies of insurance.

## 14.   FIRE REBUILDING AND ALTERING:

A.   Landlord shall at all times during the term of this Lease, carry fire, casualty, and extended coverage insurance on all the buildings and permanent improvements on the building.

B.   If the Demised Premises or any permanent additions or leasehold improvements thereto shall be damaged, destroyed, or rendered untenantable, in whole or in part, by or as the result or consequence of fire or other casualty during the term hereof, Landlord shall repair and restore the same to a good tenantable condition within a reasonable time.  During such period of repair, the rent herein provided for in this Lease shall abate entirely in case the whole premises are untenantable, or if Tenant determines in good faith it cannot economically conduct business from the undamaged portion of the Demised Premises.  Said abatement shall cease when the Demised Premises are restored to tenantable condition.

C.   In the event the Demised Premises, because of such damage or destruction, are not repaired and restored to tenantable condition within one hundred eighty (180) days from the date of receipt of insurance proceeds for such damage or destruction, Tenant or Landlord may, at its option, terminate this Lease by giving sixty (60) days prior written notice to the other party and thereupon Landlord and Tenant shall be released from all future liability and obligations under this Lease.

D.   If the Demised Premises are damaged or destroyed during the last six (6) months of the original or any extended term of this Lease, to the extent of more than one-third (1/3) of the ground floor area thereof, Landlord shall have the right to terminate this Lease by written notice to Tenant within sixty (60) days following such damage or destruction, unless Tenant shall, within thirty (30) days following receipt of such notice, offer to extend the term of this Lease for an additional period of five (5) years from the date such damage or destruction is repaired and restored.  If the Tenant makes said offer to extend, Landlord and Tenant shall determine the terms and conditions of said extension within thirty (30) days thereafter or Tenant's offer shall not be deemed to stop Landlord from cancelling this Lease.  If the terms and conditions have been mutually agreed to by the parties, then Landlord shall accept Tenant's offer and shall repair and restore the premises within the time and in the manner set forth above.

## 15.   FORCE MAJEURE:

Whenever a period of time is provided in this Lease for Landlord or Tenant to do or perform any act or thing, Landlord or Tenant shall not be liable or responsible for any delays due to strikes, lockouts, casualties, acts of God, war, governmental regulation or control, or other causes beyond the reasonable control of Landlord or Tenant, and in any such event said time period shall be extended for the amount of time Landlord or Tenant is so delayed.  This provision shall not apply to the payment of money.

## 16.   INJUNCTION:

In addition to all other remedies, Tenant or Landlord is entitled to obtain a restraining order and/or injunction against all violations, actual, attempted or threatened of any covenant, condition, or provision of this Lease.

INITIALS:



LL        TN

## 17.  WARRANTY OF TITLE BY LANDLORD:

Landlord hereby warrants, represents, and covenants to Tenant that at the time of execution by Landlord of this Lease, Landlord is: (a) the Owner of the improvements of which the Demised Premises are a part, (b) the Tenant, and Morse Shores Land Associates ("Associates") is Landlord, under a Ground Lease for the land upon which the improvements and the Demised Premises are situate ("Ground Lease"), (c) said Ground Lease is for a term in excess of the term contained herein, (d) Landlord is not in default under the Ground Lease and agrees to continue to fulfill all of the terms and conditions of said Ground Lease, (e) at the time of execution by Landlord of this Lease, Landlord's interest in the Demised Premises is free and clear of all liens and encumbrances except (i) taxes not yet due and payable, (ii) the lien of any institutional mortgages (iii) the aforesaid Ground Lease and (iv) rights of Byron's/Eckerd's under existing leasehold interest for the Demised Premises which interest will be terminated within 6 to 8 weeks of execution hereof, or Tenant may void and terminate this Lease, and (f) Landlord does not warrant and will defend the leasehold estate hereby demised to Tenant and will indemnify Tenant against any damage and expense which Tenant may suffer by reason of any defect in title to the leasehold estate herein granted and (g) Landlord has the right and power to execute this Lease and to lease the Demised Premises for the term provided herein.  In the event Landlord does not have the title and rights aforesaid, and such adversely affects the Tenant's use, possession or operation of the Demised Premises, then in such event, in addition to any other rights of Tenant, this Lease shall, at the option of Tenant, become null and void and no rent for the remainder of the term shall become due to the Landlord, its legal representative or assigns, and all advance rents and other payments shall be returned by Landlord to Tenant, or Tenant may withhold rent thereafter accruing until Tenant is furnished proof satisfactory to the Tenant as to the parties entitled to receive rent, and landlord will defend, indemnify and protect the Tenant in any dispute made by any party claiming that Landlord does not have the full right and power to execute this Lease and grant the estate herein demised to Tenant.

Tenant may obtain, at its own expense, a title insurance policy issued by a title insurance company acceptable to Tenant insuring the Tenant's leasehold interest in the Demised Premises as herein provided by this Lease.  Landlord agrees to cooperate with Tenant in obtaining said policy by delivering, within thirty (30) days after notification by Tenant or its agent of the name and address of the title insurance company which Tenant has asked to furnish said policy, to said title insurance company at such address as directed, all title information in Landlord's possession relating to the Demised Premises and thereafter any additional documents as may be required by the title insurance company to issue its policy of title insurance.  Said title insurance policy must insure Tenant, in whatever amount Tenant shall so chose, that the Title granted by this Lease to the Demised Premises is vested in Tenant, without exception for any matters including matters which would be disclosed by a survey and an inspection.  In the event said title insurance policy is not obtainable or if such title insurance shows, or if issued would show, any liens, encumbrances or exceptions to title, other than those specified within this Lease, that adversely affect the leasehold interest granted to Tenant herein, then Tenant, in its sole option, may (a) at Landlord's expense, take all reasonable steps necessary to cure such defect or (b) by notice to Landlord, terminate this Lease, if after thirty (30) days from such notice Landlord has not cured the defect of which Tenant complains, in which event this Lease shall be null and voice and of no further force and effect without further liability to either party.

## 18.  QUIET ENJOYMENT:

Landlord hereby covenants, warrants, and agrees that if Tenant shall not be in default beyond any period for the cure thereof, Tenant shall, at all times during the original term of this Lease and any renewal term, have peaceable and quiet enjoyment and possession of the Demised Premises without any manner of let or hindrance from the Landlord or any other person, firm, or corporation.

INITIALS:



LL          TN

## 19.  MORTGAGE AND ESTOPPEL CERTIFICATES:

Tenant accepts this Lease subject and subordinate to any recorded mortgage lien presently existing or hereafter created upon the Demised Premises or shopping center; provided that as a condition to Tenant's obligations under this Lease, Tenant and the holder of any mortgage lien which shall be placed on the Demised Premises prior to the Tenant possession date shall enter into a subordination, non-disturbance and attornment agreement on terms mutually satisfactory within fifteen (15) days of the date of the execution of the mortgage by Landlord, which agreement shall provide, inter alia, that the mortgage shall not disturb the tenancy of Tenant, so long as Tenant is not in default of its obligations under this Lease beyond any applicable notice and cure periods. Landlord shall request any such mortgagee to agree that insurance proceeds and condemnation awards shall be used for the repair and restoration of the Demised Premises when so provided in this Lease.  Tenant agrees to subordinate Tenant's interest under this Lease to any mortgage lien placed on the Demised Premises after the Tenant possession date, provided that as a condition to such subordination Tenant and such mortgagee shall enter into a mutually satisfactory non-disturbance, subordination and attornment agreement which shall include a covenant by the mortgagee not to disturb the tenancy of Tenant, so long as Tenant is not in default of its obligations under this Lease beyond any applicable notice and cure periods.  Landlord shall request any such mortgagee to agree that insurance proceeds and condemnation awards shall be used for the repair and restoration of the Demised Premises when so provided in this Lease.  If the interests of Landlord under this Lease shall be transferred by reason of foreclosure or other proceedings for enforcement of any first mortgage on the Demised Premises, Tenant shall be bound to the transferee, under the terms, covenants and conditions of this Lease for the balance of the term remaining, including any extensions or renewals, with the same force and effect as if the transferee were Landlord under this Lease, and Tenant agrees to attorn to the transferee, including the first mortgagee under any such mortgage if it be the transferee, as its Landlord.

Upon request in writing from Landlord, Tenant agrees to execute, acknowledge, and deliver to Landlord, or to the holder of the mortgage lien on the Demised Premises, a statement in writing satisfactory to Landlord or the holder of the mortgage, certifying the facts stated therein which may include, but shall not be limited to, all or any part of the following information: (i) this Lease constitutes the entire agreement between Landlord and Tenant, is unmodified (or if there has been a modification, that the Lease, as modified, is in full force and effect), and is in full force and effect; (ii) the dates to which the guaranteed minimum rent, common area charge and other charges hereunder have been paid; (iii) the date that the Demised Premises were ready for occupancy and all conditions precedent to the Lease taking effect were satisfied or waived by Tenant; (iv) the dates on which Tenant accepted possession and Tenant's store will be open for business; (v) the Tenant is occupying the Demised Premises; and (vi) Tenant knows of no default under the Lease by the Landlord and there is no offset which Tenant has against Landlord; provided that such facts are true and ascertainable.

## 20.  DEFAULT:

A.  If the Demised Premises shall be deserted for a period of over thirty (30) days, or if Tenant shall be adjudicated a bankrupt, or if a trustee or receiver of Tenant's property be appointed, or if Tenant shall make an assignment for the benefit of creditors, or if default shall at any time be made by Tenant in the payment of the rent reserved herein, or any installment thereof for more than ten (10) days after written notice of such default by the Landlord, or if there shall be default in the performance of any other covenant, agreement, condition, rule or regulation herein contained or hereafter established on the part of the Tenant for thirty (30) days after written notice of such default by the Landlord, this Lease, if the Landlord so elects, shall thereupon become null and void, and the Landlord shall have the right to reenter or repossess the leased property, either by force, summary proceedings, surrender or otherwise, and dispossess and remove therefrom the Tenant or other occupants thereof and their effects, without being

14

INITIALS:



LL          TN

liable to any prosecution therefor. Neither bankruptcy, insolvency, an assignment for the benefit of creditors, nor the appointment of a receiver shall affect this Lease or permit its termination so long as the covenants on the part of the Tenant to be performed shall be performed by Tenant or some party claiming under Tenant. In such case, the Landlord may, as its option, relet the Demised Premises or any part thereof, as the agent of the Tenant, and the Tenant shall pay the Landlord the amount by which the rent and charges equivalent to rent reserved herein for the balance of the term shall exceed the reasonable rental value of the Demised Premises for the same period. Tenant agrees, irrespective of other provisions of this lease, that in the event any monthly installment of rent is not paid by the tenth (10th) of the month, additional rent of ten percent (10%) of the monthly rental shall be paid for each such month. Notwithstanding the foregoing, Landlord shall have all remedies available to it in law or equity and choosing one remedy shall not preclude Landlord from other remedies.

B.    If Landlord shall fail to pay any taxes, assessments, insurance premiums, mortgage interest or amortization or any other charges accruing against the Demised Premises, or the shopping center of which the Demised Premises may be a part, or fail to perform any of the conditions or covenants hereof on its part to be performed, Tenant may give written notice of such default to Landlord and if Landlord shall not within thirty (30) days thereafter cure such default (or if the default cannot be cured within thirty (30) days, if Landlord shall not within such period commence such cure and thereafter diligently complete the same), then Tenant shall have the right, at its option, to cure such default and the amount expended by it therefor, with interest at the rate of ten percent (10%) annually, may be deducted by Tenant from the rents thereafter to become due. Tenant shall, upon request, submit to Landlord receipted bills showing payment of all the aforesaid items. It is further provided, however, that in the event of urgent situations which shall include, but not be limited to, defects and failures in the heating, air conditioning or sprinkler systems, the Tenant shall immediately notify the Landlord, or its duly appointed agent, orally or by facsimile, and upon the failure of the Landlord to promptly correct, or take necessary steps to correct such urgency then Tenant shall have the right to correct the same and be reimbursed as hereinabove provided. In the event the Demised Premises shall be rendered untenantable by reason of Landlord's failure to perform any obligation described herein, including without limitation Landlord's failure to make repair, all rental due hereunder shall wholly abate until Landlord shall have satisfactorily performed such obligation; in addition, Tenant shall have the right to perform such obligations at the expense of Landlord as hereinabove provided.

## 21.    CONDEMNATION:

In the event the Demised Premises hereby leased, or any part thereof, are taken in condemnation proceedings, Tenant may cancel this Lease. In the event any part of the buildings of the shopping center, or common area, or rights-of-way adjoining, or approaches to the shopping center are taken in condemnation proceedings so that in the judgement of Tenant the Demised Premises remaining would be unsatisfactory for Tenant's business operation, Tenant may cancel this Lease, or at its option, retain the Demised Premises, in which event Landlord will restore the entire remaining shopping center to proper tenantable condition forthwith. Until the shopping center is restored to proper tenantable condition, rental shall abate. Thereafter, rental shall be reduced in proportion to the amount of land and/or building area lost, or if Tenant shall elect, in proportion to the effect of the loss of such are on Tenant's business, which shall be calculated by the percentage by which gross sales made by Lessee at the Demised Premises during the one year following the date on which the condemning authority takes possession of part of the Demised Premises are less than gross sales during the one (1) year immediately preceding the date of possession by the condemning authority. For the purpose of this paragraph, the term "condemnation proceedings" shall include conveyances and grants made in anticipation or in lieu of condemnation proceedings.

15



INITIALS:

LL          TN

Nothing herein contained shall constitute a waiver of Tenant's rights to compensation for damages.

## 22. WAIVER OF SUBROGATION:

Landlord shall not be liable for any insurable damage to fixtures, merchandise or property of Tenant and Tenant hereby releases Landlord from the same, unless caused by Landlord's negligence. Tenant shall not be liable for any insurable damage to the Demised Premises or building of which it is a part regardless of cause and Landlord hereby releases Tenant from the same, unless caused by Tenant's negligence.

## 23. ASSIGNMENT AND SUBLETTING:

Tenant shall have the right at any time to sublet the Demised Premises or any part thereof or to assign this Lease; provided, that no such subletting or assignment shall relieve Tenant of any of its obligations hereunder, and no such Assignment or Subletting shall violate any exclusives of the existing tenants. Each sublease or assignment shall provide that it is subject and subordinate to the rights of Landlord under this Lease and to any renewal, amendment or modification thereof, to the rights of any first mortgage to which this Lease is subject or subordinate and to all renewals, modifications, consolidations and extensions thereof. The provisions for such subordination shall be self-operative so that no further instrument of subordination need to required by a mortgagee.

## 24. SURRENDER AND HOLDOVER:

When the tenancy herein created terminates, Tenant agrees to surrender the Demised Premises to Landlord in the same or better condition than existed when Tenant entered possession, loss by fire, wind and ordinary wear and tear excepted. Tenant agrees to remove all of its trade fixtures with the exception of lighting fixtures and air conditioning whether or not attached to the Demised Premises and to repair all damage done by the removal of said fixtures. Should Tenant thereafter remain in possession or occupancy of any part of the Demised Premises or hold the keys, a tenancy shall be deemed to continue from month to month only at the guaranteed minimum rent rate above provided and on the terms herein expressed, where applicable, but should the same occur without Landlord's consent, no tenancy of any duration shall be created and Tenant's use and occupancy fee while in possession of the Demised Premises shall be the guaranteed minimum rent, plus all other charges due under this Lease, and percentage rent based on the twelve (12) months (or fraction thereof, if less than twelve (12) months of the lease term has elapsed) prior to the breach.

## 25. NOTICES:

Whenever any demand, request, approval, consent or notice ("Notice") shall or may be given by one party to the other, Notice shall be addressed to the parties at their respective addresses and delivered by (i) hand, (ii) a nationally recognized overnight express courier, or (iii) registered or certified mail return receipt requested. The date of actual receipt shall be deemed the date of service of Notice. In the event an addressee refuses to accept delivery, however, then Notice shall be deemed to have been served on either (i) the date hand delivered is refused, (ii) the next business day in the case of delivery by overnight courier, or (iii) three (3) business days after mailing the Notice in the case of registered or certified mail. Either party may, at any time, change its Notice address by giving the other party Notice, in accordance with the above, stating the change and setting forth the new address.

## 26. LEGALITY:

Should any one or more of the clauses of this Lease be declared void or in violation of law, this Lease shall remain in effect, exclusive of such clause or clauses, to the fullest

16



INITIALS:

LL          TN

extent of the law. The terms of this Lease shall be interpreted under the laws of the State of Florida.

**27.   BINDING OBLIGATIONS:**

This Lease and all rights and duties hereunder shall insure to the benefit of and shall be binding upon Landlord and Tenant and their respective personal representatives, administrators, executors, heirs, successors and assigns.

**28.   NO RECORDATION:**

If requested by the Tenant, Landlord will execute a recordable memorandum of lease which Tenant may record at its expense. Tenant shall provide Landlord with a copy of such recorded memorandum of lease.

Neither party shall record this Lease.

**29.   REAL ESTATE BROKER'S COMMISSION:**

It is agreed that Tenant shall pay no commissions or broker's fees. Tenant and Landlord covenant and represent to each other that except for __Mcava Real Estate__ (to whom Landlord is obligated to pay certain commissions in accordance with a separate agreement between Landlord and __Mcava Real Estate__ ) no parties are entitled be paid a fee or commission in connection with the transaction contemplated by this Lease. If any individual or entity shall assert a claim to a finder's fee or commission as a broker or a finder, then the party who is alleged to have retained such individual or entity shall defend, indemnify and hold harmless the other party from and against any such claim and all costs, expenses, liabilities and damages incurred in connection with such claim or any action or proceeding brought thereon.

**30.   NO WAIVER, LACHES OR ACCORD AND SATISFACTION:**

The waiver of any covenant or condition or the acquiesced breach thereof shall not be taken to constitute a waiver of any subsequent breach of such covenant or condition nor to justify or authorize the non-observance of the same or of any other covenant or condition hereof. No payment by Tenant or receipt by Landlord of a lesser amount than the rental herein stipulated shall be deemed to be other than on account of the earliest stipulated rent nor shall any endorsement or statement on any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction or waiver, and Landlord may accept such check or payment without waiver of the default or prejudice to Landlord's right to recover the balance of such rent or pursue any remedy provided for in this Lease or available at law or in equity.

**31.   HAZARDOUS MATERIAL:**

Throughout the term of this Lease, Tenant shall prevent the presence, use, generation, release discharge, storage, disposal, or transportation of any Hazardous Materials (as hereinafter defined) on, under, in, above, to, or from the Demised Premises other than in strict compliance with all applicable federal, state, and local laws, rules regulations and orders. For purposes of this provision, the term "Hazardous Materials" shall mean and refer to any wastes, materials, or other substances of any kind or character that are or become regulated as hazardous or toxic waste or substances, or which require special handling or treatment, under any applicable local, state, or federal law, rule, regulation, or order. Tenant shall indemnify, defend, and hold harmless from and against (a) any loss, cost, expense, claim, or liability arising our of any investigation, monitoring, clean-up, containment, removal, storage, or restoration work (herein referred to as "Remedial Work") required by, or incurred by Landlord or any other person or party in a reasonable belief that such Remedial Work is required by any applicable federal, state of local law, rule, regulation or order, or by an governmental agency, authority, political

INITIALS:



17

subdivision having jurisdiction over the Demised Premises, and (b) any claims of third parties for loss, injury, expense, or damage arising out of the presence, release or discharge of any Hazardous Materials on, under, in above, to, or from the Demised Premises. In the event any Remedial Work is so required promptly perform or cause to be performed such Remedial Work to completion, such failure shall constitute an event of default on the part of Tenant under the terms of this Lease, and Landlord, in addition to any other rights or remedies afforded it hereunder, may, but shall not be obligated to, cause the Remedial Work to be performed, and Tenant shall promptly reimburse Landlord for the cost and expense thereof upon demand. Notwithstanding the foregoing, Tenant shall not be responsible for pre-existing (prior to Tenant Possession Date) Hazardous Waste and Landlord shall indemnify, defend and hold harmless from and against (a) any loss, cost, expense, claim, or liability arising our of any investigation, monitoring, clean-up, containment, removal, storage, or restoration work (herein referred to as "Remedial Work") required by, or incurred by Landlord or any other person or party in a reasonable belief that such Remedial Work is required by any applicable federal, state of local law, rule, regulation or order, or by an governmental agency, authority, political subdivision having jurisdiction over the Demised Premises, and (b) any claims of third parties for loss, injury, expense, or damage arising out of the presence, release or discharge of any Hazardous Materials on, under, in above, to, or from the Demised Premises.

32.    **TITLES AND ENTIRE AGREEMENT:**

All marginal titles are for reference and convenience only and do not form a part of this Lease. This Lease and Exhibits, and Rider, if any, attached hereto and forming a part hereof, set forth all the covenants, promises, agreements, conditions, and understandings between Landlord and Tenant concerning the Demised Premises. No subsequent alteration, amendment, change or addition to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by them. This Lease is not binding upon Landlord until it has been signed by its authorized officers and delivered to the Tenant.

**IN TESTIMONY WHEREOF,** the Landlord and Tenant have caused this Lease to be signed in triplicate as of the respective acknowledgement dates:

Signed and acknowledged in the presence of:

Witnesses As To Landlord:               **LANDLORD:MORSE SHORES CENTER ASSOCIATES, LTD.,**
                                        a Florida partnership

                                        By: **REGP, Inc., a Pennsylvania corporation**
                                        as General Partner

_____               By:_____
                                                Edward D. Ging

_____               Title:___Vice President_____


                                        By: **MORSE SHORES LAND ASSOCIATES, LTD.,**
                                        a Pennsylvania partnership

                                        By: **REGP, INC., a Pennsylvania corporation**
                                        as General Partner

_____               By:_____
                                                Edward D. Ging

_____               Title:___Vice President_____

INITIALS:

| LL | TN |
|----|----|

Witnesses As To Tenant:

**TENANT: CONSOLIDATED STORES CORPORATION**

By: _Albert J. Bell_
Albert J. Bell

Title: _____
Senior Vice President

## STATE OF PENNSYLVANIA

## COUNTY OF ALLEGHENY

Before me, a Notary Public, in and for said State and County, personally appeared Edward D. Ging, Vice President of REGP, Inc., who acknowledged that he did sign the foregoing instrument and that the same is the free act an deed of said corporation, and the free act and deed of him personally as said officer.

IN WITNESS WHEREOF, I have hereunto set my hand and the official seal, at _Pittsburgh PA_____, this _15th_ day of _____April_____, 19_94_.

_____
Notary Public

Notarial Seal
A. Glynn Slatton, Notary Public
Pittsburgh, Allegheny County
My Commission Expires Nov. 25, 1996
Member, Pennsylvania Association of Notaries

## STATE OF OHIO

## COUNTY OF FRANKLIN

Before me, a Notary Public, in for the said State and County, personally appeared the above named Tenant, **Consolidated Stores Corporation**, by **Albert J. Bell**, its **Senior Vice President** who acknowledged that he did sign the foregoing instrument and that the same is the free act and deed of said corporation, and the free act and deed of him/her personally and as said officer.

IN WITNESS WHEREOF, I have hereunto set my hand and the official seal, at _April Columbus, Ohio_____, this _25th_ day of _____, 19_94_.

_____
Notary Public

JODI L. (HARBERT) ROBINSON
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES DEC. 15, 1998

19

INITIALS:

| | |
|---|---|
| ✓ | AJB |
| LL | TN |

EXHIBIT A

## LEGAL DESCRIPTION OF SHOPPING CENTER

A parcel heron described is situated in part of Block A in Kingston Manor Subdivision as recorded in P.B. 7, Page 5, and part of Lots 42, 43, 8, 36-Block 3 in Terry, Tice & Vandawalker's Subdivision as recorded in P.B. 1, Page 46, in the Public Records of Lee County, Fl. more particularly described as follows:

Commencing at the PRM shown as the NE corner of Lot 1, Block B of said Kingston Manor Subdivision; thence N 89 07'59" E, 190.02' to the NE corner of Lot 1, Block A of said Kingston Manor and the P.O.B. of lands herein described; from said P.O.B. run S 0 17'15" E, along the East line of Block A, Kingston Manor 102.41; to the SE corner of lot 2, Block A said Kingston Manor; thence S 89 42'45" W; along S line lot 2, Block A, said Kingston Manor, 140.00' to SW corner said lot 2, Block A; thence S 0 17'15" E along Easterly R/W Alameda Ave. 30.0' thence N 89 42'45" E parallel to said S line, lot 2, Block A, 155.00'; thence S 0 17'15" E, parallel to said Ely R/W Alameda Ave. 195.00'; thence S 89 42'45" W. parallel to said S line lot 2, Block A, 10.0'; thence S 0 17'15" E, parallel to said Easterly R/W Alameda Avenue, 75.0 feet; thence run S. 89 42'45" W., parallel to said South line of lot 2, Block "A" 5.0 feet to the N.E. corner of lot 9, Block "A", said Kingston Manor: thence S. 0 17'15" E., along the East line of said Block "A", Kingston Manor, 150.00 feet to the intersection with the Easterly extension of the Southerly line of lot 11, said Block "A", Kingston Manor; thence N. 89 42'45" E., along said Easterly extension, 43.89 feet; thence S. 31 58'52" E., at right angles to Highway 80, 200.62 feet to a point on the Northwesterly Right of Way of Highway 80, said point lies N. 58 01'08" E. 340.0' of the intersection of the Ely R/W of Alameda Avenue, (being 50' in width) and the NWly Right of Way of Hwy 80, (being 150' in width); thence N. 58 01'08" E., along said NWly R/W, 830.11' to a point 150.00' S 58 01'08" W of the SW corner described in OR 708 Pg 479; thence run N 31 58'52" W, at right angles to said Highway 80, 145.0'; thence N 58 01'08" E, parallel to said NWly R/W line of Highway 80. 237.50' more or less to intersection with the fence line as described in aforementioned OR 703, Pg 479; thence N 0 52'14" W along said fence line 48.76' more or less to intersection with the S line of Tract B, Morse Shores Subdivision, PB 9, Pg 158A, Lee County, Florida; thence S 89 07'59" W, along S line said Tract B, 981.06' to the P.O.B.

Less parcels "E" & "F".

Parcel contains 9.382 plus or minus acres.

Bearings based on S line Tract "B" Morse Shores Subdivision, PB 9, Pg 158A, as being N 89 07'59" E.

INITIALS:

LL    TN

# RIDER FOR REMODELING

This Rider is prepared to be attached to and become part of the foregoing Lease as the Tenant's Demised Premises therein described is to be repaired and remodeled by Landlord prior to commencement of the term.

**Landlord covenants and agrees to deliver the premises to Tenant as follows:**

1.  HVAC to be in good working condition and adequate for Tenant's intended use (a minimum of 1 ton per 400 square feet). If Tenant Entrance Date occurs during the months of October through May, Tenant shall be granted until June 15th to have the HVAC system inspected to determine the needed repairs by the Landlord. If any HVAC unit or units are fifteen (15) years old or older Landlord is responsible for all major repairs to such unit or units for the first two (2) years of this Lease.

2.  All plumbing, electrical and mechanical equipment to be in good working condition, including sprinkler system. Landlord to provide Tenant with sprinkler certification.

3.  All lighting inside and out to be in good working condition. Additional lighting required in the stockroom and salesfloor area. Lighting should be 80 foot candles on the sales floor and 60 foot candles in the stockroom.

4.  Remove existing floor covering throughout the salesfloor area and replace with new commercial grade vinyl tile to Tenant's specifications.

5.  All damaged or missing ceiling and floor tiles to be replaced with similar tile.

6.  All doors and door systems to be sound and secure and in good working condition, and in compliance with A.D.A. requirements.

7.  Roof to be in good condition and free of leaks. Canopy and building facia to be repaired and painted.

8.  Landlord to separate utilities and provide separate meters.

9.  Landlord to erect demising wall, to roof deck, separating Tenants.

10. Landlord to erect demising wall, to roof deck, separating sales area from stockroom. Landlord to install stockroom doors to Tenant's specifications.

11. Landlord to provide Tenant with offices, lounge, and restrooms (up to code and A.D.A. regulations). Cash office to have a solid plywood ceiling (minimum of ½").

12. Replace all broken glass.

13. Premises to be professionally inspected for pestilents and termites, and Tenant to be provided with a certified report that the Demised Premises is pest free, and if not, Landlord will make pest free.

14. Tenant must approve all drawings prior to commencement of work by Landlord. All above work to be completed before Tenant Possession Date.

15. Landlord agrees Demised Premises conform to all requirements by authority having jurisdiction; if said Demised Premises do not conform, Landlord will promptly have them conform at all times unless such is necessitated by changes, alterations or additions made by Tenant.

**Tenant covenants and agrees to do and perform the following:**

Any work, installation or equipment not called for in the Landlord's covenants above shall be furnished and performed by and at the expense of Tenant.

Landlord shall complete such work on or before the 15th day of August, 1994.

_____
LANDLORD

_____
CONSOLIDATED STORES CORPORATION
Albert J. Bell
Senior Vice President and General Counsel

**EXHIBIT C**

## SIGN SPECIFICATIONS



-Each letter is 4 foot high
-The Words "The Closeout Store" are on a box sign and are 18 inches high
-The scale of the drawing is 1/2" = 1 foot
-The individual letters are neon illuminated channeled letters with 7 inch deep returns
-#2119 Orange flex faces, 2 foot subtrim type (bronze)
-neon or fluorescent type lighting 110 volt 60 cycle
-Flushwall mounted, no exposed clips

The bottom information is the wiring information for our sign installers.



INITIALS:

| LL | TN |

**EXHIBIT D**

## PLOT PLAN OF SHOPPING CENTER





INITIALS:

LL          TN