THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| BIG LOTS, INC., et al | : | Case No. 24-11967 (JKS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | **Re: D.I. 2159, 2199** |
| | : | **Objections due: March 24, 2025, 4:00 p.m.** |
| | : | |

**OBJECTION OF LANDLORD KAMS PARTNERS, L.P. TO PROPOSED CURE FOR STORE NO. 1742 (Brownsville, Texas) AND LIMITED OBJECTION TO PROPOSED ASSUMPTION AND ASSIGNMENT WITH RESERVATION OF RIGHTS**

TO THE HONORABLE J. KATE STICKLES, UNITED STATES BANKRUPTCY JUDGE:

Landlord **KAMS PARTNERS, L.P.** ("Landlord") objects to the Debtors' proposed cure for the lease with Landlord of 1601 E. Price, Brownsville, Texas dated October 2, 2002, as amended (the "**Lease**") by Debtor Big Lots Stores, Inc., as tenant, denominated by Debtors as Store No. 1742 (the "**Store**") and tenders this limited objection, with reservation of rights ("Objection"), to the proposed assumption and assignment of the Lease.

1. At D.I. #2159, the Debtors filed their "Notice of Filing of Seventeenth Post-Closing Designation Notice" ("**Notice**"), in which the Debtors identified, *inter alia*, the Lease for the Store among the Designated Leases to be assumed by Burlington Coat Factory of Texas, L.P. (*See* D.I. #2159.)

2. In the said Notice, the Debtors also provided, as their estimate of the sum necessary to discharge the cure obligation attendant to assumption and assignment of the Lease, the sum of $97,000. (*See Id.*)

3. On March 10, 2025, the Debtors filed the "Notice of Amended Cure Amounts for Seventeenth Post-Closing Designation Notice" ("**Amended Notice**") (*See* D.I. #2199).

4. The Amended Notice provided as their estimate of the sum necessary to discharge the cure obligation attendant to assumption and assignment of the Lease, the sum of $0.00.

5. The true cure cost for the Lease is $16,534.92 through March 11, 2025, together with post-petition attorneys' fees of $4,900.00, for a total cure cost of **$21,434.92** (the "**True Cure Cost**").

6. The True Cure Cost (excluding attorneys' fees) is further detailed in the Lease Ledger attached hereto as **Exhibit "A"**.

7. If the assumption and assignment of the Lease is delayed and if Debtors fail to pay rents, CAM, insurance, taxes, attorneys fees, or other sums due after March 11, 2025, then those sums must also be included in the True Cure Cost as of the date of assumption.

8. In order to assume and/or assign the Lease, the Debtors are required to pay the True Cure Cost through the date of assumption and assignment and to provide adequate assurance of future performance by the assignee.

9. In the event of a dispute regarding the True Cure Cost, the tenant and the buyer or assignee should be ordered to pay the undisputed portion of the True Cure Cost and to escrow the balance pending resolution of the dispute and should also be ordered to pay any attorney's fees incurred by Landlord in resolving the dispute.

10. To the extent that the Debtors wish to assume or the assignee wishes to take assignment of the Lease free of use restrictions, exclusivity provisions, competition clauses, and operating hour obligations, and perhaps free of other lease obligations, the Debtors and the assignee are not entitled to amend and modify the lease through Section 363 sales or otherwise.

11. Any assignment of the Lease must also require the assignee to assume the Lease and the Debtors' lease obligations thereunder **subject to and burdened by** all use restrictions affecting the Lease, the Store premises, and the operation of the Store, including (for example, but not limited to) indemnity obligations, insurance obligations, repair and maintenance obligations, operating hour covenants, restrictive use covenants, exclusivity provisions, and non-competition clauses.

## Authorities and Argument

12. In order to assume and assign, the Debtors are required by section 365(b)(1) of the Bankruptcy Code to provide adequate assurance (a) that the Debtors will promptly cure all defaults under the unexpired leases to be assumed and assigned and (b) of the future performance by a proposed assignee under the terms of an unexpired lease sought to be assumed and assigned. In particular, Bankruptcy Code section 365(b)(1) provides that, in the event of a default under an unexpired lease, a debtor may not assume the lease unless, at the time of the assumption of such lease, the debtor "(A) cures, or provides adequate assurance that the debtor will promptly cure, such default; (B) compensates, or provides adequate assurance that the debtor will promptly compensate, the non-debtor party to the contract for any actual pecuniary loss to such party resulting from such default; and ( C ) provides adequate assurance of future performance under such contract." 11 U.S.C. § 365(b)(1). A debtor must cure both monetary and nonmonetary defaults. *See id.*

13. The cure notice and the bidding procedures in this case do not specify any other economic and non-economic obligations of the Debtors under the Lease. Among other obligations, the Debtors are responsible for payment of monthly operating expenses and any shortfall after the annual reconciliation of actual expenses to estimated amounts paid each month. Further, the

Debtors are obligated to pay Landlord's attorneys' fees (Section 40 of the lease) incurred in connection with enforcing its contractual rights under the Lease. Finally, the Debtors remain liable for any amounts coming due prior to any assumption and assignment, as well as all noneconomic obligations thereunder.

14. Further, all other provisions of the Lease must be complied with consonant with applicable bankruptcy law, including but not limited to the permitted use clause (pursuant to Section 4 of the Lease) and the assignment clause (pursuant to Section 22 of the Lease) and the providing of adequate assurances that future obligations will be met by the assignee.

15. Further, all other provisions of subject lease must be complied with in line with applicable bankruptcy law, including but not limited to the permitted use clause (Section 4) and the assignment clause (Section 22) and the providing of adequate assurances that the tenant's other future lease obligations will be met by the assignee.

16. In addition, the Debtors remain responsible for all accrued or accruing charges under the Lease and must pay such charges when they come due under the Lease. The Debtors must assume the Lease *subject to* its terms, conditions, and covenants, and must assume all obligations owing under the Lease, including obligations that have accrued but may not yet have been billed. Any final assumption and assignment order should clearly state that the Debtors and the assignee will assume the Lease obligations and pay or perform timely, regardless of whether they relate to the period before or after assumption, and will observe and be bound by all provisions, covenants, and conditions of the Lease. Furthermore, any provision in an assumption and assignment order that purports to release the Debtors of further liability based upon a payment of cure amounts must specify that such release does not apply to obligations to pay accrued or

accruing, but unbilled, charges that come due under the Lease and does not release the assignee from the provisions, covenants, and conditions of the Lease.

17. To the extent, if any, that there exist Lease charges for which the Debtors bear responsibility under the Lease but which have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods, the assignee remains responsible for the same. Under the Lease, the Debtors pay fixed minimum rent, along with common area maintenance ("CAM"), insurance and real estate taxes and such other amounts as required under the Lease. Certain charges, such as CAM, insurance, and real estate taxes, are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred. To the extent the estimated payments exceed actual charges; the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred under the Lease, the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years may not yet be complete. In other instances, certain charges may be paid in arrears and cannot be calculated (in some cases) until a month or more after year-end. Because these accrued, but unbilled, charges are not yet due under the Lease, they do not create a current default that gives rise to a requirement to cure at this time. Nevertheless, any assignment of the Lease should require the assignee to pay any such yet-unreconciled charges and obligations.

18. The Lease also imposes indemnity obligations on the tenant, requiring the Debtors to indemnify and hold the Landlord harmless with respect to any claims resulting from injury or damages to persons or property occurring in or about the leased premises (Section 11 of the lease). Any assumption of the Lease, therefore, must be subject to the terms of the Lease, including (but not limited to) the continuation of all indemnification obligations. Nothing in any assumption and

assignment order should preclude the Landlord from pursuing the Debtors, their insurances, the assignee, its insurance, or any other party that may be liable under the Lease. Any assumption of the Lease is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the Lease. Landlord specifically reserves its right to pursue such rights irrespective of any amounts claimed herein.

19.     Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Lease upon assumption. To the extent there is a dispute over the total cure obligation, all undisputed cure amounts should be paid upon the assumption of the Lease. The correct cure amount is $21,434.92, consisting of those charges detailed above and on Exhibit "A" in the amount of $16,534.92, *plus* attorney's fees of $4,900.00, through March 11, 2025. In addition, the cure amount would include additional charges and rent accruing after March 11, 2025 through the date of any assumption and assignment of the Lease.

20.     Landlord is entitled to recover attorneys' fees incurred post-petition as cure costs to the extent such fees are recoverable under the Lease or under Chapter 38 of the Texas Civil Practice and Remedies Code. Such fees have been included in Landlord's cure amounts as actual pecuniary losses suffered by the Landlord. *See In re Williams,* 2011 Bankr. LEXIS 2463, *3 (Bankr. D. Del. June 24, 2011) (Shannon, B.J.) ("It is beyond cavil that attorneys' fees incurred because of actions taken to enforce the underlying lease or contract may be properly recoverable as part of a cure payment if such lease or contract provides for attorneys' fees."). *See In re: Trak Auto Cooperation*, 277 B.R. 655, 669-670 (Eastern District, Virginia 2002 ) ("Where the debtor's lease provides for the payment of counsel fees and late fees or interest, we will uphold the terms of the contract"); *In re: Muma Services, Inc.*, 279 B.R. 478, 488-89 (Bankr. D. Del. 2002); *In re: Valley Media,* 290

B.R. 73, 75-76 (Bankr. D. Del. 2003); *See also In re: Shangri-La Inc*., 167 F.3d 843 (4th Cir. 1999).

21. Landlord reserves the right to amend this Objection and to assert claims for damage to the Store premises; to assert claims for removal and disposal of personal property left behind or abandoned by the Debtors; to object to the form of the assumption and assignment; to enforce the rights of Landlord and obligations of the Debtors and/or the assignee; to object to the extent that consent of third parties, such as other tenants, is required but refused; and to object to non-compliance with restrictive use covenants, exclusive use provisions, and non-competition provisions affecting the lease premises.

FOR THE REASONS EXPRESSED ABOVE, Landlord KAMS Partners, L.P. respectfully prays that the Court will sustain or grant this Objection and that the Court will order the relief requested above, as well as any other relief to which Landlord may be justly entitled.

Dated: March 24, 2025.

Respectfully submitted,

LAW OFFICE OF SUSAN E. KAUFMAN, LLC

/s/Susan E. Kaufman
Susan E. Kaufman, (DSB# 3381)
919 North Market Street, Suite 460
Wilmington, DE  19801
(302) 472-7420
(302) 792-7420 Fax
skaufman@skaufmanlaw.com

--and—

**ROBERT R. FEUILLE**
*Admitted pro hac vice*
ScottHulse, PC
201 E. Main Dr., Suite 1100
El Paso, Texas 79901
(915) 533-2493
(915) 546-8333 Fax
bfeu@scotthulse.com

Counsel for KAMS PARTNERS, L.P.