## Exhibit 1

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: Docket No. 2116** |

### ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS-IN-POSSESSION TO ASSUME, ASSIGN AND SELL CERTAIN NON-RESIDENTIAL REAL PROPERTY LEASES TO OLLIE'S BARGAIN OUTLET, INC.
### (Store Nos. 5419, 5272, 1154, 1649, 1674, 5322, 5185, 5443, 4544, 1926, 1491, 1797, 5294, 407)

Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, for an order pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006 and 9014, and Local Rule 6004-1, having received a Notice of Designation of Designated Asset from Gordon Brothers Retail Partners, LLC ("**GBRP**") in accordance with Section 2.05(b) of the APA[2] and Paragraph 43 of the Sale Order, with respect to those certain unexpired leases of non-residential real properties for the premises identified in **Exhibit A** hereto (each, a "**Lease**" and collectively, the

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used herein and not otherwise defines shall have the meanings ascribed thereto in the Court's *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1556] (the "**Sale Order**").

"**Leases**"); and the Debtors having filed and served a Designated 365 Contract Notice (the "**Designation Notice**") seeking, *inter alia*, (i) to assume and assign the Leases to Ollie's Bargain Outlet, Inc. (or a designee thereof) (hereinafter, "**Ollie's**"); and (ii) such additional and related relief as provided by the Sale Order; and the Court having determined that the legal and factual bases for the relief requested herein establish just cause for the relief granted herein; and after due deliberation and good and sufficient cause appearing therefor;

NOW, **THEREFORE**, the Court hereby finds as follows:

A.      After good and sufficient notice of the Designation Notice having been provided in accordance with the Designation Rights Procedures, and a reasonable opportunity to object or be heard regarding the proposed assumption and assignment of the Leases has been afforded to the applicable 365 Counterparties (each, a "**Landlord**" and collectively, the "**Landlords**") in accordance with the Designation Rights Procedures.

B.      The assumption, assignment and sale of the Leases to Ollie's, pursuant to Sections 363 and 365 of the Bankruptcy Code is in the best interests of the Debtors, their estates and their creditors, and is consistent with the terms of the APA and Sale Order, respectively.

C.      Pursuant to Sections 365(b)(1)(C), 365(f)(2)(B) and 365(b)(3) of the Bankruptcy Code, to the extent required under the Sale Order, Ollie's has provided adequate assurance of future performance under the Lease.

D.      The assumption and assignment of the Leases to Ollie's is in compliance with Section 365(b)(3) of the Bankruptcy Code.

E.      The Assumption and Assignment Agreement, dated as of February 26, 2025 and attached hereto as **Exhibit B** (the "**Assignment Agreement**"), between and among the Debtors and Ollie's was negotiated and entered into in good faith, and from arm's length bargaining

positions. Ollie's is hereby found to be a good faith purchaser of the Leases and is found to be entitled to the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT**

1.      Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, the applicable Debtor is hereby authorized to assume, sell and assign to Ollie's the Leases, pursuant to the terms and provisions of this Order, the APA, the Sale Order, and the Assignment Agreement, all of the terms of which are hereby approved.

2.      In accordance with Section 363 of the Bankruptcy Code, effective as of the occurrence of a closing of the assignment of the Leases under the Assignment Agreement (such date being hereinafter defined as the "**Closing Date**"), the Leases shall be transferred free and clear of any leasehold mortgages, subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, interests, mechanics liens, bills, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances.

3.      Upon the entry of this Order and the occurrence of the Closing Date, Ollie's shall be deemed to have assumed and succeeded to the entirety of the Debtors' rights and obligations in and to the Leases which are due and owing from and after the Closing Date and shall have the rights of the tenant thereunder.

4.      Upon entry of this Order and the occurrence of the Closing Date, Ollie's is a good faith purchaser and shall be entitled to the protections of Bankruptcy Code Section 363(m).

5.      Pursuant to Section 365(b)(l) of the Bankruptcy Code, to the extent Cure Costs are owed to any of the Landlords, the Cure Costs shall be promptly paid by Ollie's. Any objection of the Landlords to the assumption or assignment or transfer of the Leases, any Cure Cost, or seeking further adequate assurance of future performance other than that provided in the Assignment

Agreement, to the extent not otherwise resolved by agreement, or by agreement contemplated to be heard after the date of any hearing to be held in connection with the Designation Notice, or disposed of by separate order of this Court, is hereby overruled. There shall be no accelerations, assignment fees, increases, or any other fees charged to GBRP, Ollie's, or the Debtors as a result of the assumption and assignment of the Leases. Upon remittance of the Cure Costs by Ollie's to the Landlords pursuant to the terms of this Order, the Landlords shall be barred from asserting any additional cure amounts or other claims with respect to the Leases. For the avoidance of doubt, the Landlords shall be forever (i) barred from objecting to the applicable Cure Costs and from asserting any additional cure or other amounts with respect to the Leases, and the Debtors and Ollie's shall be entitled to rely solely upon the Cure Costs set forth above and (ii) barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, GBRP or Ollie's, or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under the Leases, or that there is any objection or defense to the assumption or assumption and assignment of the Leases. On and after the Closing Date, Ollie's shall be responsible for paying (and shall be entitled to receive any credits for) all amounts outstanding under the Leases that first become due on or after the Closing Date.

6.      The proceeds of the Lease sales shall be payable to GBRP in accordance with the APA and Sale Order, respectively.

7.      All personal property and furniture, fixtures and equipment ("**FF&E**") remaining in the stores subject to the Leases on or after the Closing Date other than FF&E acquired by Ollie's pursuant to a separate agreement between Ollie's and GBRP, shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as of the Closing Date. Ollie's may, in its sole discretion and without further order of this Court, utilize and/or dispose of such property without notice or

liability to the Debtors or any consenting third parties and, to the extent applicable, the automatic stay is modified to allow such disposition; <u>provided</u>, that the Debtors shall not sell or abandon any property that the Debtors know is not owned by the Debtors; <u>provided</u>, <u>further</u>, that that the Debtors will either (a) provide for the return of such property to the Headquarters (as defined below) or (b) return such property to the applicable lessor, or other owner of the property; <u>provided</u>, <u>however</u>, that the Debtors may leave in place any property owned by the applicable Landlord at the applicable Store.

8.      Any party which did not object within the time set forth in the notice thereof is deemed to consent to the Debtors' assumption and assignment of the Leases, and the satisfaction of the requirements of Section 365 of the Bankruptcy Code. Upon the sale and assignment of the Leases, payment of the Cure Costs and the transfer of the furniture, fixtures and equipment referenced immediately above, as applicable, shall relieve the Debtors from any further liability pursuant to Section 365(k) of the Bankruptcy Code.

9.      Solely with respect to the transactions contemplated by this Order and the Assignment Agreement, and except as otherwise agreed between the applicable Landlord and Ollie's, nothing in this Order shall be deemed to annul or vary any provision of the Leases *other than* the following provisions (the "**Unenforceable Provisions**"):

   a.      a provision prohibiting Ollie's intended use of the premises;

   b.      a provision unreasonably prohibiting necessary alterations to the premises or signage required to convert the premises to Ollie's intended use; provided such alterations are deemed necessary by Ollie's to conform such store to Ollie's typical retail store consistent with the Ollie's intended use of the premises;

c.      a provision commonly referred to as a "going dark" or "continuous operations" provision, providing in substance for a forfeiture of the Lease or an increase in rent or other penalty by reason of the Debtors' cessation of retail operations before the assignment, and/or any delay by Ollie's in reestablishing retail operations after the assignment, to the extent any such provision does not permit Ollie's to "go dark" until the later of: (i) two hundred seventy (270) days after the Closing Date of the assignment of the Lease, or such later time, when the particular facts and circumstances of a given store warrant additional time, which circumstances shall include, without limitation, the age and condition of the shopping center, the ability to obtain any permits and documents necessary to complete construction, the location of the premises in the shopping center, the shape of the premises to be assigned, the demographics of the shopping center's location and the overall quality of the shopping center and its existing tenants or (ii) the "going dark period" listed in the applicable Assignment Agreement;

d.      a provision conditioning assignment on Landlord consent, or requiring payment to the Landlord as the price of assignment, or granting Landlord the right to recapture the leased premises following the assignment;

e.      a provision effecting forfeiture or a modification of any of Ollie's rights or obligations presently in effect under the Leases upon an assignment by the Debtors of the Lease;

f.      a provision conditioning the Debtors' ability to assign their leasehold rights upon any terms not otherwise required under the Bankruptcy Code;

g.      a provision restricting Ollie's ability to place reasonable signage on the premises; provided, that such signage is deemed necessary by Ollie's to conform such store to Ollie's typical retail store consistent with Ollie's intended use of the premises;

h.      a provision requiring the use of a certain tradename;

i.      a provision regarding minimum sales revenues required to be satisfied at the premises covered by the Lease; and

j.      any radius provisions set forth in the Lease to the extent applicable to any existing Ollie's stores located near the Debtors' premises (but such radius provisions shall at all times apply to any new stores which might be opened by Ollie's in the area of Debtors' premises after the Closing Date).

10.      Solely with respect to the transactions contemplated by this Order, the Sale Order, and the Assignment Agreement, none of the Unenforceable Provisions shall apply to Ollie's in any respect and, without limiting the generality of the foregoing, no violation by the Debtors or Ollie's of the Unenforceable Provisions shall constitute an event of default under any of the Leases.

11.      Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and Ollie's are authorized to close the sale of the Leases set forth in the Assignment Agreement immediately upon entry of this Order. Time is of the essence in closing the Lease sale transactions referenced herein, and the Debtors and Ollie's intend to close the Lease sale transactions as soon as practicable. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order.

12.      Upon entry of this Order, this Order and the findings hereunder shall be binding upon all parties to the Leases and the Assignment Agreement.

13.    Upon the entry of this Order and the occurrence of the Closing Date, the Landlords shall accept and honor the assignment of the Leases to Ollie's.

14.    The Landlords shall cooperate and expeditiously execute and deliver, within ten (10) days of any reasonable requests of Ollie's and at no cost to the Landlords, any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, opening and operating of the properties as contemplated under the Assignment Agreement.

15.    Notwithstanding anything to the contrary in this Order, the Assignment Agreement or any side letters, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) shall be abandoned, sold, assigned, or otherwise transferred without the express prior written consent of Ollie's and applicable insurer and/or third-party administrator.

16.    This Court shall retain jurisdiction (i) to construe and determine any disputes under this Order, (ii) to enforce and implement the terms and provisions of the Assignment Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, and (iii) to resolve any disputes arising under or related to the Lease sales (but all Landlord/tenant disputes arising after the Closing Date which do not involve the Lease sales, this Order or the Debtors shall not be subject to the jurisdiction of this Court).

17.    The Debtors and Ollie's are hereby authorized and directed to execute and deliver any and all documents, and to do all things reasonably necessary, to effectuate the purposes of this

Order, to transfer the Debtors' interests in and to the Leases, in accordance with the terms of the Assignment Agreement, and to carry out the terms and conditions of the Assignment Agreement.

18.    Ollie's is not a successor in interest to the Debtors (other than with respect to the Debtors' rights and obligations under the Leases first accruing after Ollie's takes assignment thereunder as provided for under the Assignment Agreement), or their bankruptcy estates as a result of Ollie's taking title or possession of the Leases and the subject premises, and Ollie's is not assuming any liabilities or obligations of the Debtors or their bankruptcy estates, except as may be specifically provided for in the Assignment Agreement.

19.    This Order shall be effective and enforceable after its entry as provided by Bankruptcy Rule 7062.

20.    Any remaining objections to the assignment of the Leases that have not been withdrawn, waived, adjourned, or settled, and all reservations of rights included in such objections, are overruled in all respects and denied.

21.    Any provision in the Leases regarding percentage rent to the extent of Debtors' sales prior to the Closing Date shall not be imputed against Ollie's, provided that Ollie's shall be liable for percentage rent for the prorated portion of calendar year 2025 remaining after the Closing Date for a partial calendar year as if the term began on the Closing Date (and Ollie's shall not be liable to pay any percentage rent based upon sales that occurred prior to the Closing Date) and no percentage rent is due and owing by Ollie's for the period prior to the Closing Date.

22.    To the extent there is any inconsistency between the terms of this Order and the terms of the Assignment Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

23.    To the extent that Ollie's and any of the Landlords enter into a side letter with

respect to one or more Leases, such side letter shall govern with respect to rights and obligations of Ollie's and the applicable Landlord. For the avoidance of doubt, no side letter shall modify the rights and obligations of any third party without such third party's consent.

24.    The failure to specifically include any particular provision of the Assignment Agreement or other related documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Assignment Agreement and all other related documents be authorized and approved in their entirety pursuant to this Order.

25.    The Assignment Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement is consistent with this Order and does not have any adverse effect on the Debtors' estates; provided, further, that the Debtors shall provide any such modification, amendment, or supplement to the applicable Landlords and the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases no less than one (1) day prior to execution of such modification, amendment, or supplement; provided, further, that after the occurrence of the Closing Date, the final versions of the Assignment Agreement and any related agreements, documents or other instruments (as modified, amended or supplemented) shall be filed with the Court.

26.    Notwithstanding anything to the contrary in the Assignment Agreement, the APA, the Sale Order, or this Order, the Landlords do not release, and are not releasing, the Debtors from any claims for indemnification under the Leases arising from any third party claims that may be asserted against the Landlords for occurrences taking place prior to the Closing Date. Nothing in this Order or the applicable Lease shall impair or prejudice each Landlord's rights with respect to

the Debtors' available insurance coverage with respect to third-party claims asserted in connection with the Debtors' use and occupancy of the applicable premises subject to the Leases with regard to events that occurred prior to the Closing Date.

## EXHIBIT A

| Store Number | Address | Purchaser Entity | Landlord Name | Cure |
|---|---|---|---|---|
| 5419 | 1077 E Stuart Dr, Suite 100 Galax, VA 24333-2638 | Ollie's Bargain Outlet, Inc. | Regency Properties (Regency CSP IV LLC) | $22,489.70 |
| 5272 | 1998 State Road 44 New Smyrna Beach, FL 32168-8349 | Ollie's Bargain Outlet, Inc. | G3 DEVELOPMENT | $100,000.00 |
| 1154 | 139 S Interstate 35 New Braunfels, TX 78130-4824 | Ollie's Bargain Outlet, Inc. | RPI Courtyard, Ltd. | $8,549.36 |
| 1649 | 2414 Land O Lakes Blvd Land O Lakes, FL 34639-4907 | Ollie's Bargain Outlet, Inc. | B&B GROCERY | $0[3] |
| 1674 | 303 E Battlefield St Ste J, Springfield, MO 65807-4903 | Ollie's Bargain Outlet, Inc. | 301-321 E Battlefield LLC (notice incorrectly lists Jared Enterprises) | $6,990.40 |
| 5322 | 3161 South Mckenzie St Foley, AL 36535-3701 | Ollie's Bargain Outlet, Inc. | Realty Income Corp | $6,311.00 |
| 5185 | 759 Hwy 62 E Ste 311 Mountain Home, AR 72653-3251 | Ollie's Bargain Outlet, Inc. | DLC Properties, LLC | $4,692.43 |
| 5443 | 1707 Southdale Ave, Lebanon, MO 65536-0000 | Ollie's Bargain Outlet, Inc. | Lebanon Marketplace Center LLC (notice incorrectly lists Jared Enterprises) | $10,878.63[4] |
| 4544 | 6516 N 73rd Plz Omaha, NE 68122-1747 | Ollie's Bargain Outlet, Inc. | Big Score Investors | $4,461.00 |

[3] The Debtors also agreed to pay Landlord $45,750.28 on account of outstanding post-petition, pre-assignment amounts, which resolves the Landlord's cure objection. The Debtors' payment may have been made ahead of the entry of this Order.

[4] The Debtors also agreed to pay Landlord $38,312 on account of outstanding post-petition, pre-assignment amounts. The Debtors' payment may have been made ahead of the entry of this Order. Taken together with Ollie's cure payment, this provides a total recovery to Landlord of $49,190.63, which resolves the Landlord's cure objection.

| Store Number | Address | Purchaser Entity | Landlord Name | Cure |
|---|---|---|---|---|
| 1926 | 1590 George Dieter Dr El Paso, TX 79936-7614 | Ollie's Bargain Outlet, Inc. | AP GROWTH PROPERTIES, LP (notice incorrectly lists MIMCO) | $7,538.33[5] |
| 1491 | 1209 W Spring St., Monroe, GA 30655-1756 | Ollie's Bargain Outlet | Hererra Properties, LLC (notice incorrectly lists Dinnerman Group) | $12,710.88[6] |
| 1797 | 2008 Memorial Blvd., Springfield TN 37172-3914 | Ollie's Bargain Outlet | Millan Enterprises | $56,442.60 |
| 5294 | 98 Victory Hwy, Painted Post NY, 14870-1007 | Ollie's Bargain Outlet | Gibraltar Management Co, Inc. | $11,079.99 |
| 407 | 20 N. Gilbert St., Danville, IL 61832-8502 | Ollie's Bargain Outlet | Gator Development Corp. | $5,915.87 |

[5] The Debtors agreed to pay Landlord $5,251.72 on account of outstanding post-petition, pre-assignment amounts. The Debtors' payment may have been made ahead of the entry of this Order. Gordon Brothers Retail Partners (GBRP) agreed to pay Landlord $1,951.95 on account of obligations owed by GBRP. Taken together with Ollie's cure payment, this provides a total recovery to Landlord of $14,742.

[6] As set forth on the record at the hearing, this amount is being paid by the Debtors, not Ollie's. The Debtors' payment may have been made ahead of the entry of this Order.

## **EXHIBIT B**

**Assumption & Assignment Agreement**

(see attached)

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement") is made as of this 26 day of February, 2025 by and between Big Lots Stores, LLC, an Ohio limited liability company ("Big Lots"), Big Lots Stores-CSR, LLC, an Ohio limited liability company, Big Lots Stores-PNS, LLC, a California limited liability company (together with Big Lots, collectively, "Assignor") and Ollie's Bargain Outlet, Inc., a Pennsylvania corporation or its designated affiliate, ("Assignee" and together with Assignor, the "Parties" and each, a "Party").

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), jointly administered under case *In re Big Lots, Inc.*, Case No. 24-11967 (JKS) (Bankr. D. Del. 2024) (the "Chapter 11 Cases");

WHEREAS, Gordon Brothers Retail Partners, LLC ("GBRP"), as buyer, and Big Lots, Inc. and certain of its subsidiaries, as seller ("Seller"), are parties to that certain Asset Purchase Agreement dated as of January 3, 2025 (the "Purchase Agreement"), pursuant to which Buyer agreed to acquire certain assets, including designation rights with respect to executory contracts and unexpired leases;

WHEREAS, on January 2, 2025, the Bankruptcy Court entered an order approving the transactions contemplated under the Purchase Agreement [Docket No. 1556] (the "Sale Order");

WHEREAS, pursuant to Section 2.05(b) of the Purchase Agreement and Paragraph 43 of the Sale Order, GBRP has the right to designate certain contracts or leases for assumption and assignment to itself or its designee(s);

WHEREAS, GBRP is conducting "store closing" or other liquidation sales at certain of Assignor's retail stores and distribution centers (each, a "GOB Sale") and has designated Assignor's Leases (defined below) as "Designated Assets" (as defined in the Purchase Agreement) for assumption and assignment to Assignee as a "Designated Buyer" (as defined in the Purchase Agreement) effective as of March 31, 2025 (the "Closing Date"), which shall occur after the date on which Assignor vacates each Premises (defined below) subject to such Leases on or after the conclusion of the applicable GOB Sale (each, a "Vacate Date");

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the real property Leases listed on the attached Schedule A with the term and address of each lease being as represented in the documents provided by Assignor, on Schedule A, including rights under any amendments, subordination, non-disturbance and recognition agreements executed in connection with such leases (each, a "Lease" and, collectively, the "Leases") with respect to the premises set forth on Schedule A (the "Premises") pursuant to the terms of the Sale Order, subject to approval by the Bankruptcy Court (the "Bankruptcy Court Approval") in the Chapter 11 Cases pursuant to 11 U.S.C. §§ 363(b) and 365 approving the assumption and assignment contemplated by this Agreement,

*Execution Version*

substantially in the form of that certain *Order Pursuant to Sections 363 and 365 of the Bankruptcy Code Authorizing the Debtors-In-Possession to Assume, Assign and Sell Certain Non-Residential Real Property Leases* attached hereto as **Exhibit 1** (the "Order"); and

WHEREAS, Assignor has filed or will file with the Bankruptcy Court that certain *Notice Of Filing Of Post-Closing Designation Notice* (the "Designation Notice"), which, *inter alia*, disclosed the proposed costs, if any, necessary to cure any defaults under the Leases, as contemplated by Section 365(b)(1)(A) of the Bankruptcy Code (collectively "Cure Costs") in connection with this Agreement.

NOW, THEREFORE, in consideration of the promises and the mutual agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## **AGREEMENT**

1.    <u>Assignment and Assumption</u>.  Subject to Assignee's prior payment of the Purchase Price for each Premises as set forth below and receipt of Bankruptcy Court Approval, on the Closing Date; <u>provided</u>, that Assignor or GBRP shall give Assignee no less than seven (7) days' advance written notice of the Vacate Date for each Premises; <u>provided</u>, <u>further</u>, that prior to the Closing Date and the applicable Vacate Date for each Premises, GBRP and Assignor shall provide Assignee and its agents with access to the Premises of each Lease for the purpose of allowing Assignee to conduct property inspections, surveys and take measurements; <u>provided</u>, <u>further</u>, that time is of the essence with respect to the Closing Date:

(a) Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to each such Lease free and clear (subject to this Agreement's express terms regarding the assumption and cure of certain liabilities) of leasehold mortgages (if any), subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, mechanics liens, bills, interests, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances.

(b) On the Closing Date, Assignor shall surrender each Premises to Assignee, deliver possession thereof to Assignee and deliver all access codes and keys (or written confirmation that Assignee is authorized to change the locks), key codes and alarm codes for each applicable Premises (if practically available) to Assignee.

(c) Except as specifically set forth in this Agreement, Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to each Lease that first becomes due after the Closing Date.

2.    <u>Payment of Purchase Price</u>.  Subject to the immediately following sentence, Assignee shall, on the Closing Date, deliver to GBRP the purchase price for the Leases in the amount of $1.00 (the "Purchase Price").  Notwithstanding anything to the contrary in this Agreement, in the event that any party objects to the proposed assumption and assignment of any Leases in the Chapter 11 Cases (an "Objection"), including, without limitation an objection asserting that the Cure Costs for any lease is higher than the amount set forth on the Designation Notice, and in the event that

any such Objection cannot be resolved to the satisfaction of Assignee, Assignee may, in its sole and exclusive discretion, terminate this Agreement solely with respect to such Lease(s) subject to such Objection by providing written notice to GBRP and Assignor, which notice may be provided by email to GBRP and Assignor's counsel (each a "<u>Partial Termination</u>") and, upon such Partial Termination, the Parties will have no further rights or obligations to each other relating to the Lease(s) subject to such Partial Termination and such Lease(s) may be rejected in the Chapter 11 Cases.

3.     <u>Assumption of Certain Liabilities</u>. Assignee hereby agrees to pay all Cure Costs, if any, necessary to cure any defaults under the Leases on or after the Closing Date. For the avoidance of doubt, Assignee shall have no obligation for any tenant indemnification or liability claims that could arise against Assignor after the Closing Date, which claims remain the obligations of the Assignor.

4.     <u>No Further Liability of Assignor</u>.  From and after the Closing Date, Assignor shall have no further obligations and duties with respect to the Leases.

5.     <u>Further Assurances</u>.  At any time and from time to time after the Closing Date, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Leases.

6.     "<u>As Is Where Is</u>" Transaction.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Leases; *provided, however*, Assignor warrants and represents that it has fully complied with any requests from Assignee to provide access to all known lease and amendment documents relating to each Lease.  Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any premises subject to the Leases.  Assignee further acknowledges that Assignee has conducted an independent inspection and investigation of the physical condition of premises subject to the Leases and all such other matters relating to or affecting the Leases as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Leases, Assignee is doing so based upon such independent inspections and investigations. Accordingly, Assignee will accept the Leases "AS IS" and "WHERE IS."

7.     <u>Compliance With Law</u>.  Assignee hereby agrees to comply with all applicable laws applicable to this Agreement and Assignee's use and occupancy of the Premises.  Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section that arises or relates to any Premises for the time period on and after the Closing Date.

8.     <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

Docusign Envelope ID: 63C2B660-E039-4DB7-B6BA-A362E4570B26

*Execution Version*

9.      Jurisdiction.  The Parties consent to the exclusive jurisdiction of, the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10.      No Reliance. Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.

11.      Third Party Beneficiaries.  This Agreement is expressly intended to confer rights and benefits upon GBRP, and GBRP shall have the right to enforce the provisions of this Agreement.

12.      Construction. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

13.      Execution in Counterparts. This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All such counterparts, when so executed, shall be deemed to constitute one final agreement as if one document had been signed by all Parties to this Agreement. Each such counterpart, upon execution and delivery of all counterparts, shall be deemed a complete and original of this Agreement. The Parties hereby each agree that its authorized signatories may receive and review this Agreement via electronic record and may sign this Agreement via electronic digital signature (i.e., DocuSign or similar electronic signature technology), and the Parties may rely on such electronic digital signatures as if they are original signatures by each Party or duly authorized representatives of each Party, and delivery of an executed copy of this Agreement by facsimile or by other electronic means (.pdf) shall be legal and binding and shall have the same full force and effect as if an original executed copy of this Agreement had been delivered.  No Party may raise the use of an image transmission device or method or the fact that any signature was transmitted as an image as a defense to the enforcement of such document.

14.      Intended Use & Going Dark. Assignee intends to use each Premises for the operation of an Ollie's Bargain Outlet retail store (the "Intended Use"), and the Order shall so provide for such Intended Use. In order to facilitate such usage, Assignee may need to delay reestablishing retail operations at each Premises for a period of time not to exceed **two hundred seventy (270) days** after receipt of applicable permits, subject to events of force majeure (the "Going Dark Period"), and the Order shall so provide for such Going Dark Period.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the foregoing Agreement is dated effective as of the date and year first written above.

**ASSIGNOR:**

**BIG LOTS STORES, LLC**

By: _____ *Joshua H. Nanberg* _____
Name: Joshua H. Nanberg
Title: VP, Real
      Estate

**ASSIGNOR:**

**BIG LOTS STORES-CSR, LLC**

By: _____ *Joshua H. Nanberg* _____
Name: Joshua H. Nanberg
Title: VP, Real
      Estate

**ASSIGNOR:**

**BIG LOTS STORES-PNS, LLC**

By: _____ *Joshua H. Nanberg* _____
Name: Joshua H. Nanberg
Title: VP, Real
      Estate

**ASSIGNEE:**

**OLLIE'S BARGAIN OUTLET, INC.**

By: _____
Name: Robert Helm
Title: Executive Vice President and Chief Financial Officer

*[Signature Page to A&A Agreement]*

IN WITNESS WHEREOF, the foregoing Agreement is dated effective as of the date and year first written above.

**ASSIGNOR:**

**BIG LOTS STORES, LLC**

By: _____
Name:
Title:

**ASSIGNOR:**

**BIG LOTS STORES-CSR, LLC**

By: _____
Name:
Title:

**ASSIGNOR:**

**BIG LOTS STORES-PNS, LLC**

By: _____
Name:
Title:

**ASSIGNEE:**

**OLLIE'S BARGAIN OUTLET, INC.**

By: _____
Name: Robert Helm
Title: Executive Vice President and Chief Financial Officer

*[Signature Page to A&A Agreement]*

## Schedule A

### Leases

| Store Number | Address | Purchaser Entity | Landlord Name |
|---|---|---|---|
| 30 | 818 S MAIN ST., Bowling Green, OH 43402-4601 | Ollie's Bargain Outlet, Inc. | TOLSON INVESTMENTS |
| 380 | 1535 S WESTERN AVE, Marion, IN 46953-1543 | Ollie's Bargain Outlet, Inc. | Lone Star Equities JRB Mgt |
| 407 | 20 N GILBERT ST, Danville, IL 61832-8502 | Ollie's Bargain Outlet, Inc. | Gator Investments |
| 493 | 5121 SW 29TH ST, Topeka, KS 66614-2350 | Ollie's Bargain Outlet, Inc. | BOB BASSEL |
| 1076 | 704 WEST AYRE ST, Shawnee, OK 74801-4707 | Ollie's Bargain Outlet, Inc. | Claremore Blue Starr Investments |
| 1154 | 139 S INTERSTATE 35, New Braunfels, TX 78130-4824 | Ollie's Bargain Outlet, Inc. | Retail Plazas, Inc. |
| 1187 | 1925 TIFFIN AVE, Findlay, OH 45840-6752 | Ollie's Bargain Outlet, Inc. | ISAAC PROPERTY |
| 1189 | 3118 ANDREWS HWY, Odessa, TX 79762-7521 | Ollie's Bargain Outlet, Inc. | Routh Properties |
| 1238 | 353 JOHN FITCH HWY, Fitchburg, MA 01420-4501 | Ollie's Bargain Outlet, Inc. | PEACE AND GRACE REALTY, LLC |
| 1266 | 2804 N BROADWAY ST, Pittsburg, KS 66762-2627 | Ollie's Bargain Outlet, Inc. | Kayton Development |
| 1286 | 1615 W HENDERSON ST STE C, Cleburne, TX 76033-4176 | Ollie's Bargain Outlet, Inc. | Klement |
| 1370 | 1060 WASHINGTON SQUARE SC, Washington, MO 63090-5302 | Ollie's Bargain Outlet, Inc. | Super Gas & Food Mart Inc. |
| 1375 | 20050 CORTEZ BLVD, Brooksville, FL 34601-3834 | Ollie's Bargain Outlet, Inc. | South Square Shopping Center, LLC |

*Execution Version*

| Store Number | Address | Purchaser Entity | Landlord Name |
|---|---|---|---|
| 1433 | 4715 BILLINGSLEY BLVD STE C, Midland, TX 79705-2508 | Ollie's Bargain Outlet, Inc. | Pilchers |
| 1491 | 1209 W SPRING ST, Monroe, GA 30655-1756 | Ollie's Bargain Outlet, Inc. | Dinnerman Group |
| 1562 | 8402 N NAVARRO ST, Victoria, TX 77904-2604 | Ollie's Bargain Outlet, Inc. | VSC ASSOCIATES LLC |
| 1586 | 12 NORTHWEST BLVD, Nashua, NH 03063-4066 | Ollie's Bargain Outlet, Inc. | Demoulas Market Basket |
| 1649 | 2414 LAND O LAKES BLVD, Land O Lakes, FL 34639-4907 | Ollie's Bargain Outlet, Inc. | B&B GROCERY |
| 1664 | 315 E COMMERCE ST UNIT B, Brownwood, TX 76801-1800 | Ollie's Bargain Outlet, Inc. | Darby Yard LLC |
| 1674 | 303 E BATTLEFIELD ST STE J, Springfield, MO 65807-4903 | Ollie's Bargain Outlet, Inc. | Jared Enterprises |
| 1797 | 2008 MEMORIAL BLVD, Springfield, TN 37172-3914 | Ollie's Bargain Outlet, Inc. | Millan Enterprises |
| 1836 | 1200 BUSINESS 190 STE 2, Covington, LA 70433-3279 | Ollie's Bargain Outlet, Inc. | Petite Esplande Covington |
| 1864 | 1305 SIDNEY BAKER ST STE J, Kerrville, TX 78028-2737 | Ollie's Bargain Outlet, Inc. | Dorado Development Co., LLC |
| 1926 | 1590 GEORGE DIETER DR, El Paso, TX 79936-7614 | Ollie's Bargain Outlet, Inc. | MIMCO |
| 1959 | 809 S TIMBERLAND DR, Lufkin, TX 75901-4880 | Ollie's Bargain Outlet, Inc. | Ella Plaza LP |
| 1977 | 3125 W BROADWAY BLVD, Sedalia, MO 65301-2116 | Ollie's Bargain Outlet, Inc. | THOMPSON HILLS INVESTMENT CORP |
| 4488 | 96 DANIEL WEBSTER HWY, Belmont, NH 03220-3045 | Ollie's Bargain Outlet, Inc. | Vernet Properties |

| Store Number | Address | Purchaser Entity | Landlord Name |
|---|---|---|---|
| 4544 | 6516 N 73RD PLZ, Omaha, NE 68122-1747 | Ollie's Bargain Outlet, Inc. | Big Score Investors |
| 4651 | 3925 BROADWAY ST, Mount Vernon, IL 62864-2205 | Ollie's Bargain Outlet, Inc. | Namdar Realty Group |
| 4740 | 457 DALTON AVE, Pittsfield, MA 01201-2978 | Ollie's Bargain Outlet, Inc. | Edward Hoe |
| 5161 | 540 WATER ST., Chardon, OH 44024-1167 | Ollie's Bargain Outlet, Inc. | JDS Properties |
| 5185 | 759 HWY 62 E STE 311, Mountain Home, AR, 72653-3251 | Ollie's Bargain Outlet, Inc. | DLC |
| 5248 | 38 DUTCH TOWN PLZ, Palatine Bridge, NY 13428-0000 | Ollie's Bargain Outlet, Inc. | Kamin Realty |
| 5272 | 1998 STATE ROAD 44, New Smyrna Beach, FL 32168-8349 | Ollie's Bargain Outlet, Inc. | G3 DEVELOPMENT |
| 5294 | 98 VICTORY HWY, Painted Post, NY 14870-1007 | Ollie's Bargain Outlet, Inc. | GBR ERWIN ONE LIMITED LIABILITY COMPANY C/O GIBRALTAR MANAGEMENT COMPANY, INC |
| 5318 | 4633 ROOSEVELT BLVD, Middletown, OH 45044-6223 | Ollie's Bargain Outlet, Inc. | Kamin Realty |
| 5322 | 3161 SOUTH MCKENZIE ST, Foley, AL 36535-3701 | Ollie's Bargain Outlet, Inc. | Realty Income Corp |
| 5419 | 1077 E STUART DR, SUITE 100, Galax, VA 24333-2638 | Ollie's Bargain Outlet, Inc. | REGENCY PROPERTIES |
| 5443 | 1707 SOUTHDALE AVE, Lebanon, MO 65536-0000 | Ollie's Bargain Outlet, Inc. | Jared Enterprises |
| 5465 | 1200 N HILLS CENTER, Ada, OK 74820-1886 | Ollie's Bargain Outlet, Inc. | Eagle North Hills Shopping Center LP |