## EXHIBIT B

**Assumption & Assignment Agreement**

*Execution Version*

## ASSUMPTION AND ASSIGNMENT AGREEMENT

THIS **ASSUMPTION AND ASSIGNMENT AGREEMENT** (the "Agreement"), dated as of **March 27, 2025**, is by and between **BIG LOTS STORES, LLC**, an Ohio limited liability company ("Assignor") and **BURLINGTON COAT FACTORY WAREHOUSE CORPORATION**, a Florida corporation, or its designated affiliates reflected on **Schedule A** attached hereto ("Assignee"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Assignor to the Assignee.

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court"), jointly administered under case *In re Big Lots, Inc.*, Case No. 24-11967 (JKS) (Bankr. D. Del. 2024) (the "Chapter 11 Cases"); and

WHEREAS, Gordon Brothers Retail Partners, LLC ("GBRP"), as buyer, and Big Lots, Inc. and certain of its subsidiaries, as seller ("Seller"), are parties to that certain Asset Purchase Agreement dated as of January 3, 2025 (the "Purchase Agreement"), pursuant to which Buyer agreed to acquire certain assets, including designation rights with respect to executory contracts and unexpired leases;

WHEREAS, on January 2, 2025, the Court entered an order approving the transactions contemplated under the Purchase Agreement [Docket No. 1556] (the "Sale Order");

WHEREAS, in accordance with Section 2.5(b) of the Purchase Agreement and Paragraph 43 of the Sale Order, Buyer designated the Lease (as defined herein) as a "Designated Asset" for assumption and assignment to Assignee as the "Designated Buyer";

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on **Schedule A**, with the term and address of each lease being as represented in the documents provided by Assignor, on **Schedule A**, including rights under those certain Subordination, Non-Disturbance and Recognition Agreements executed in connection with such leases (collectively referred to as either as the "Assigned Assets" or the "Leases" and individually an "Assigned Asset" or "Lease") with respect to the premises set forth on **Schedule A** (the "Premises"), subject to the Court's entry of an order of record pursuant to 11 U.S.C. 363(b) and 365 approving the assumption and assignment of the Leases contemplated by this Agreement(the "Court Order").

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto (individually, "Party" or collectively, "Parties") agree as follows:

## AGREEMENT

1.    Assignment and Assumption.  On the later of the (a) date of entry of the Court Order, or (b) the day after the Vacate Date at the Premises, as reflected on **Schedule A**; provided, that Assignor or GBRP shall give Assignee no less than seven (7) days' advance written notice of the Vacate Date (the "Closing Date"):

(a)    Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset.

*Execution Version*

(b)     No later than the Closing Date, Assignor shall surrender the Premises to Assignee, deliver possession thereof to Assignee and deliver all access codes and keys (or written confirmation that Assignee is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Assignee.

(c)     Except as specifically set forth in this Agreement, Assignee hereby assumes and undertakes to pay, perform and discharge all of Assignor's obligations and duties with respect to the Assigned Asset from and after the Closing Date.

2.    <u>Payment</u>. Subject to the immediately following sentence, Assignee shall, on the Closing Date or the immediately following business day if the Court Order is entered of record after 3:00 PM ET, deliver the purchase price for the Assigned Asset in the amount of **ONE MILLION NINE HUNDRED THOUSAND AND 00/100 DOLLARS ($1,900,000.00)** (the "<u>Purchase Price</u>") net of any previously paid deposits, in immediately available funds wired to the account of GBRP set forth on **<u>Schedule B</u>** hereto. The Parties acknowledge that if the assumption and assignment of the Assigned Asset (the "<u>Closing</u>") does not occur as set forth herein, the Lease(s) may thereafter be rejected in the bankruptcy proceeding referenced above. Notwithstanding any of the foregoing, the Parties agree that the Actual Cure Cost set forth in **<u>Schedule A</u>** represent the true and correct costs to cure defaults, and Assignee has three (3) business days to tender payment of each Actual Cure Costs to effectuate the assignment contemplated herein. The Parties agree each individual Actual Cure Cost figure represented in **<u>Schedule A</u>** represents that amount that was properly noticed to each lease counterparty (each, a "<u>Landlord</u>" or "<u>Lessor</u>") or negotiated and agreed upon with each lease counterparty.

3.    <u>Assumption of Liabilities</u>. All defaults or other obligations of Assignor subject to 11 U.S.C. 365(b) shall be cured by Assignee as soon as reasonably practicable after the Closing Date (or as otherwise agreed with Lessor, and Assignor shall have no liability or obligation for such obligations or defaults (the "<u>Cure Amount</u>"). Assignee shall assume all obligations with respect to the Assigned Asset due from and after the Closing Date.

4.    <u>No Further Liability of Assignor</u>. From and after the Closing Date, Assignor shall have no further obligations and duties with respect to the Assigned Asset due after the Closing Date.

5.    <u>Further Assurances</u>.  At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset.

6.    "<u>As Is Where Is</u>" Transaction. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset; *provided, however*, Assignor warrants and represents that it has fully complied with any requests from Assignee to provide access to all known leases and amendments documents relating to the Assigned Asset(s).

7.    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to principles of conflicts of law.

8.    <u>Jurisdiction.</u> The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar

grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

9.    <u>No Reliance</u>. Except as specifically set forth in this Agreement, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.

10.    <u>Third Party Beneficiaries</u>. This Agreement is expressly intended to confer rights and benefits upon GBRP, and GBRP shall have the right to enforce the provisions of this Agreement.

11.    <u>Construction</u>. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

12.    <u>Execution in Counterparts</u>. This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All such counterparts, when so executed, shall be deemed to constitute one final agreement as if one document had been signed by all Parties to this Agreement. Each such counterpart, upon execution and delivery of all counterparts, shall be deemed a complete and original of this Agreement. The Parties hereby each agree that its authorized signatories may receive and review this Agreement via electronic record and may sign this Agreement via electronic digital signature (i.e., DocuSign or similar electronic signature technology), and the Parties may rely on such electronic digital signatures as if they are original signatures by each Party or duly authorized representatives of each Party, and delivery of an executed copy of this Agreement by facsimile or by other electronic means (.pdf) shall be legal and binding and shall have the same full force and effect as if an original executed copy of this Agreement had been delivered. No Party may raise the use of an image transmission device or method or the fact that any signature was transmitted as an image as a defense to the enforcement of such document.

13.    <u>Intended Use & Going Dark</u>. Assignee intends to use the Premises for the operation of a Burlington retail store. In order to facilitate such usage, Assignee may need to delay reestablishing retail operations for a period of time not to exceed **one hundred and eighty (180) days** after receipt of applicable permits, subject to events of force majeure (the "<u>Going Dark Period</u>").

*[Signatures appear on following page]*

*Execution Version*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**

**BIG LOTS STORES, LLC**

By: _____

Name: _____
Joshua H. Nurnberg, Vice President, Real Estate

Title: Vice President, Real Estate
_____

Federal I.D. No.: _____


**ASSIGNEE:**

**BURLINGTON COAT FACTORY WAREHOUSE CORPORATION**,

a Florida corporation

By: _____

Name: Jeffrey Morrow
_____

Title: Senior Vice President – Real Estate
_____

Federal I.D. No.: 22-1970303

## Schedule A to the Assumption and Assignment Agreement

### Description of Assigned Asset(s)

| Store Number | Address | Base Rent PSF | Lease Expiration Date | Options | Purchaser Entity | Vacate Date | Actual Cure Costs |
|---|---|---|---|---|---|---|---|
| 809 | 1335 W. Walnut Ave. Dalton, GA | $7.25 | 01/31/27 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $5,233.00 |
| 1012 | 6880 Garners Ferry Rd. Columbia, SC | $7.02 | 01/31/30 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $0.00 |
| 1155 | 125 Highway 332 W. Lake Jackson, TX | $8.50 | 01/31/29 | 5 | Burlington Coat Factory of Texas, L.P. | 2/28/25 | $50,944.00 |
| 1218 | 19142 Montgomery Village Ave. Montgomery Village, MD | $15.00 | 01/31/32 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 3/17/25 | $9,750.00 |
| 1595 | 1400 Merritt Blvd. Dundalk, MD | $8.18 | 01/31/31 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 3/17/25 | $50,697.00 |
| 1742 | 1601 E Price Rd. Brownsville, TX | $5.88 | 01/31/29 | 5 | Burlington Coat Factory of Texas, L.P. | 2/28/25 | 21,434.92 |
| 1890 | 5781 SW Green Oaks Blvd. Arlington, TX | $7.00 | 01/31/30 | 5 + 5 | Burlington Coat Factory of Texas, L.P. | 2/28/25 | $6,285.00 |
| 4753 | 9500 Montgomery Blvd. NE, Suite A Albuquerque, NM | $10.50 | 01/31/29 | 5 + 5 + 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $0.00 |
| 5118 | 1507 West Mason St. Green Bay, WI | $4.82 | 01/31/26 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $0.00 |
| 5144 | 380 Universal Dr. N North Haven, CT | $10.50 | 01/31/29 | 5 | Burlington Coat Factory Warehouse Corporation | 3/17/25 | $0.00 |
| 5238 | 11 McKenna Rd. Arden, NC | $10.00 | 01/31/28 | 5 + 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $10,836.00 |

A-1

## **Schedule B**

GBRP Wiring Instructions