**Exhibit A**

**Proposed Order with Resolved Lease Schedule**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administrated) |
| | **Re: Docket No. 1556, 1923** |

## ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS-IN-POSSESSION TO ASSUME, ASSIGN AND SELL CERTAIN NON-RESIDENTIAL REAL PROPERTY LEASES

Upon the Designation Notice (as defined herein) of Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, for an order pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006 and 9014, and Local Rule 6004-1, and the Debtors having received a Notice of Designation of Designated Asset from Gordon Brothers Retail Partners, LLC ("**GBRP**") in accordance with Section 2.05(b) of the APA[2] and Paragraph 43 of the Sale Order, with respect to certain unexpired leases of non-residential real property for the premises identified in **Exhibit A** hereto (the "**Leases**"); and the Debtors having filed and served a Designated 365

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used herein and not otherwise defines shall have the meanings ascribed thereto in the Court's *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1556] (the "**Sale Order**").

Contract Notice (the "**Designation Notice**") seeking, *inter alia*, (i) to assume and assign the Leases to Variety Stores, LLC (hereinafter, "**Variety**"); and (ii) such additional and related relief as provided by the Sale Order; and the Court having determined that the legal and factual bases for the relief requested herein establish just cause for the relief granted herein; and after due deliberation and good and sufficient cause appearing therefor;

      **NOW, THEREFORE**, the Court hereby finds as follows:

A.     After good and sufficient notice of the Designation Notice having been provided in accordance with the Designation Rights Procedures, and a reasonable opportunity to object or be heard regarding the proposed assumption and assignment of the Leases has been afforded to each applicable 365 Counterparty (each, a "**Landlord**") in accordance with the Designation Rights Procedures.

B.     The assumption, assignment and sale of the Leases to Variety, pursuant to Sections 363 and 365 of the Bankruptcy Code is in the best interests of the Debtors, their estates and their creditors, and is consistent with the terms of the APA and Sale Order, respectively.

C.     Pursuant to Sections 365(b)(1)(C), 365(f)(2)(B) and 365(b)(3) of the Bankruptcy Code, to the extent required under the Sale Order, Variety has provided adequate assurance of future performance under the Leases.

D.     The assumption and assignment of the Leases to Variety is in compliance with Section 365(b)(3) of the Bankruptcy Code.

E.     The Assumption and Assignment Agreement, a form of which is attached hereto as **Exhibit B** (the "**Assignment Agreement**"), between and among the Debtors and Variety was negotiated and entered into in good faith, and from arm's length bargaining positions. Variety is

hereby found to be a good faith purchaser of the Leases and is found to be entitled to the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT**

1.      Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, the applicable Debtor is hereby authorized to assume, sell and assign to Variety each Lease, pursuant to the terms and provisions of this Order, the APA, the Sale Order, and the Assignment Agreement, all of the terms of which are hereby approved.

2.      In accordance with Section 363 of the Bankruptcy Code, effective as of the occurrence of a closing of the assignment of the Leases under the Assignment Agreement (such date being hereinafter defined as the "**Closing Date**"), each Lease shall be transferred free and clear of any leasehold mortgages, subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, interests, mechanics liens, bills, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances.

3.      Upon the entry of this Order and the occurrence of the Closing Date, Variety shall be deemed to have assumed and succeeded to the entirety of the Debtors' rights and obligations in and to the Leases which are due and owing from and after the Closing Date and shall have the rights of the tenant thereunder.

4.      Upon entry of this Order and the occurrence of the Closing Date, Variety is a good faith purchaser and shall be entitled to the protections of Bankruptcy Code Section 363(m).

5.      Pursuant to Section 365(b)(l) of the Bankruptcy Code, to the extent a Cure Cost is owed to any Landlord, the Cure Cost shall be promptly paid by GBRP. Any objection of any Landlord to the assumption or assignment or transfer of any Lease, any Cure Cost, or seeking further adequate assurance of future performance other than that provided in the Assignment

Agreement, to the extent not otherwise resolved by agreement, or by agreement contemplated to be heard after the date of any hearing to be held in connection with the Designation Notice, or disposed of by separate order of this Court, is hereby overruled. There shall be no accelerations, assignment fees, increases, or any other fees charged to GBRP, Variety, or the Debtors as a result of the assumption and assignment of the Leases. Upon remittance of the Cure Costs by GBRP to each Landlord pursuant to the terms of this Order, such Landlord shall be barred from asserting any additional cure amounts or other claims with respect to the applicable Lease. For the avoidance of doubt, such Landlord shall be forever (i) barred from objecting to the applicable Cure Cost and from asserting any additional cure or other amounts with respect to the applicable Lease, and the Debtors, GBRP and Variety shall be entitled to rely solely upon the Cure Cost set forth above and (ii) barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, GBRP or Variety, or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under the applicable Lease, or that there is any objection or defense to the assumption or assumption and assignment of the applicable Lease. On and after the Closing Date, Variety shall be responsible for paying (and shall be entitled to receive any credits for) all amounts outstanding under each Lease due on or after the Closing Date.

6.      The proceeds of the Lease Sale shall be payable to GBRP in accordance with the Assignment Agreement, APA and Sale Order, respectively.

7.      All personal property and furniture, fixtures and equipment ("**FF&E**") remaining in the store subject to any Lease on or after the Closing Date shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as of the Closing Date. Variety may, in its sole discretion and without further order of this Court, utilize and/or dispose of such property without notice or liability to the Debtors or any consenting third parties and, to the extent applicable, the automatic

stay is modified to allow such disposition; <u>provided</u>, that the Debtors shall not sell or abandon any property that the Debtors know is not owned by the Debtors; <u>provided</u>, <u>further</u>, that that the Debtors will either (a) provide for the return of such property to the Headquarters (as defined below) or (b) return such property to the applicable lessor, or other owner of the property; <u>provided</u>, <u>further</u>, <u>however</u>, that the Debtors may leave in place any property owned by the Landlord at the Store.

8.      Any party which did not object within the time set forth in the notice thereof is deemed to consent to the Debtors' assumption and assignment of the Leases, and the satisfaction of the requirements of Section 365 of the Bankruptcy Code. Upon the sale and assignment of the Leases, payment of the Cure Costs and the transfer of the furniture, fixtures and equipment referenced immediately above, as applicable, shall relieve the Debtors from any further liability pursuant to Section 365(k) of the Bankruptcy Code.

9.      Solely with respect to the transactions contemplated by this Order and the Assignment Agreement, and except as otherwise agreed between the Landlord and Variety, nothing in this Order shall be deemed to annul or vary any provision of the Leases *other than* the following provisions (the "**Unenforceable Provisions**"):

> a.      a provision prohibiting Variety's intended use of the premises;

> b.      a provision unreasonably prohibiting necessary alterations to the premises or signage required to convert the premises to Variety's intended use;  provided such alterations are deemed necessary by Variety to conform such store consistent with Variety's intended use of the premises;

> c.      a provision commonly referred to as a "going dark" or "continuous operations" provision, providing in substance for a forfeiture of the Leases or an increase in rent or other penalty by reason of the Debtors' cessation of retail operations before the

assignment, and/or any delay by Variety in reestablishing retail operations after the assignment, to the extent any such provision does not permit Variety to "go dark" until the later of: (i) one hundred twenty (120) days after the Closing Date of the assignment of the Leases, or (ii) such later time, when the particular facts and circumstances of a given store warrant additional time, which circumstances shall include, without limitation, the age and condition of the shopping center, the ability to obtain any permits and documents necessary to complete construction, the location of the premises in the shopping center, the shape of the premises to be assigned, the demographics of the shopping center's location and the overall quality of the shopping center and its existing tenants;

d.      a provision conditioning assignment on Landlord consent, or requiring payment to the Landlord as the price of assignment, or granting Landlord the right to recapture the leased premises following the assignment;

e.      a provision effecting forfeiture or a modification of any of Variety's rights or obligations presently in effect under the Leases upon an assignment by the Debtors of the Leases;

f.      a provision conditioning the Debtors' ability to assign their leasehold rights upon any terms not otherwise required under the Bankruptcy Code;

g.      a provision restricting Variety's ability to place reasonable signage on the premises; provided, that such signage is deemed necessary by Variety to conform such store with Variety's intended use of the premises;

h.      a provision requiring the use of a certain tradename; and

i.      a provision regarding minimum sales revenues required to be satisfied at the premises covered by the Leases.

10.     Solely with respect to the transactions contemplated by this Order, the Sale Order, and the Assignment Agreement, none of the Unenforceable Provisions shall apply to Variety in any respect and, without limiting the generality of the foregoing, no violation by the Debtors or Variety of the Unenforceable Provisions shall constitute an event of default under any of the Leases.

11.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and Variety are authorized to close the sale of the Leases set forth in the Assignment Agreement immediately upon entry of this Order. Time is of the essence in closing the Lease sale transaction referenced herein, and the Debtors and Variety intend to close the Lease sale transaction as soon as practicable. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order.

12.     Upon entry of this Order, this Order and the findings hereunder shall be binding upon all parties to the Leases and the Assignment Agreement.

13.     Upon the entry of this Order and the occurrence of the Closing Date, each Landlord shall accept and honor the assignment of the Leases to Variety.

14.     Each Landlord shall cooperate and expeditiously execute and deliver, within ten (10) days of any reasonable requests of Variety and at no cost to the Landlord, any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, opening and operating of the properties as contemplated under the Assignment Agreement.

15.     Notwithstanding anything to the contrary in this Order, the Assignment Agreement or any side letters, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) shall be abandoned, sold, assigned, or otherwise transferred without the express prior written consent of the Variety and applicable insurer and/or third-party administrator.

16.     This Court shall retain jurisdiction (i) to construe and determine any disputes under this Order, (ii) to enforce and implement the terms and provisions of the Assignment Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, and (iii) to resolve any disputes arising under or related to the Lease sales (but all Landlord/tenant disputes arising subsequent to the Closing Date which do not involve the Lease sales, this Order or the Debtors shall not be subject to the jurisdiction of this Court).

17.     The Debtors and Variety are hereby authorized and directed to execute and deliver any and all documents, and to do all things reasonably necessary, to effectuate the purposes of this Order, to transfer the Debtors' interests in and to the Leases, in accordance with the terms of the Assignment Agreement, and to carry out the terms and conditions of the Assignment Agreement.

18.     Variety is not a successor in interest to the Debtors (other than with respect to the Debtors' rights and obligations under each Lease first accruing after Variety takes assignment thereunder as provided for under the Assignment Agreement), or their bankruptcy estates as a result of Variety taking title or possession of each Lease and the subject premises, and Variety is not assuming any liabilities or obligations of the Debtors or their bankruptcy estates, except as may be specifically provided for in the Assignment Agreement.

19.     This Order shall be effective and enforceable after its entry as provided by Bankruptcy Rule 7062.

20.     Any remaining objections to the assignment of the Leases that have not been withdrawn, waived, adjourned, or settled, and all reservations of rights included in such objections, are overruled in all respects and denied.

21.     Any provision in the Leases regarding percentage rent to the extent of Debtors' sales prior to the Closing Date shall not be imputed against Variety, provided that Variety shall be liable for percentage rent for the prorated portion of calendar year 2025 remaining after the Closing Date for a partial calendar year as if the term began on the Closing Date (and Variety shall not be liable to pay any percentage rent based upon sales that occurred prior to the Closing Date) and no percentage rent is due and owing by Variety for the period prior to the Closing Date.

22.     To the extent there is any inconsistency between the terms of this Order and the terms of the Assignment Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

23.     To the extent that Variety and Landlord enter into a side letter with respect to any Lease, such side letter shall govern with respect to rights and obligations of Variety and Landlord.  For the avoidance of doubt, no side letter shall modify the rights and obligations of any third party without such third party's consent.

24.     The failure to specifically include any particular provision of the Assignment Agreement or other related documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Assignment Agreement and all other related documents be authorized and approved in their entirety pursuant to this Order.

25.    The Assignment Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement is consistent with this Order and does not have any adverse effect on the Debtors' estates; provided, further, that the Debtors shall provide any such modification, amendment, or supplement to the Landlord and the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases no less than one (1) day prior to execution of such modification, amendment, or supplement; provided, further, that after the occurrence of the Closing Date, the final versions of the Assignment Agreement any related agreements, documents or other instruments (as modified, amended or supplemented) shall be filed with the Court.

26.    This Order shall be deemed to constitute a separate order with respect to each Lease. Any stay of this Order pending appeal by any party objecting to any of the relief granted in this Order shall stay this Order only with respect to the particular Lease(s) that are the subject of such objection(s) and/or such appeal, and shall not stay this Order with respect to any other Leases, and/or any other relief granted in this Order.

**EXHIBIT A**

**Designated Leases**

| Store # | Store Address | Debtor Entity | Landlord Entity | Landlord Address | Landlord Counsel Email Address(es) | Cure |
|---|---|---|---|---|---|---|
| 1185 | 1803 KNIGHT AVE STE A2 WAYCROSS, GA | Big Lots Stores, LLC | Satilla Square Mall LLC | 10158 WINDWARD WAY N , JACKSONVILLE, FL , 32256 | Kim Dwoskin, kdwoskin@ackermanco .net | $0 |
| 1366 | 9119 MERRILL RD STE 50 JACKSONVILLE, FL | Big Lots Stores, LLC | Midgard Self Storage Jacksonville Fl, LLC | ATTN: PAUL RAGAINI, 1146 CANTON STREET, ROSWELL, GA, 30075 | | $0 |
| 1849 | 500 LINCOLN HWY STE 4 FAIRLESS HILLS, PA | Big Lots Stores, LLC | K4 At Fairless LP | C/O THE KLEIN GROUP, LLC, 25A HANOVER ROAD, SUITE 350, FLORHAM PARK, NJ, 07932-1425 | | $27,570.67 |

**EXHIBIT B**

**Form Assumption & Assignment Agreement**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSUMPTION AND ASSIGNMENT AGREEMENT (the "Agreement"), dated as of _____, 2025, is by and between [Applicable Big Lots Entity] ("Assignor") and **VARIETY STORES, LLC**, an Ohio limited liability company ("Assignee"). For the avoidance of doubt, all provisions of the applicable assigned lease, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such lease by the Assignor to the Assignee.

## RECITALS

WHEREAS, Assignor, on September 9, 2024, along with its affiliated debtors Great Basin, LLC, Big Lots, Inc., Big Lots Management, LLC, Consolidated Property Holdings, LLC, Broyhill LLC, Big Lots Stores – PNS, LLC, Big Lots Stores, LLC, BLBO Tenant, LLC, Big Lots Stores – CSR, LLC, CSC Distribution Distribution, LLC, Closeout Distribution, LLC, Durant DC, LLC, AVDC, LLC, GAFDC LLC, PAFDC LLC, WAFDC, LLC, INFDC, LLC, Big Lots eCommerce LLC, Big Lots F&S, LLC (collectively, the "Debtors") has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et se* . (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in the jointly administered chapter 11 cases captioned *In re   ig Lots, Inc.*, Case No. 24-11967 (JKS) (the "Chapter 11 Cases");

WHEREAS, Gordon Brothers Retail Partners, LLC ("Gordon Brothers") is conducting "store closing" or other liquidation sales at certain of Assignor's retail stores and distribution centers (each, a "GOB Sale") and the assignment of leases for such stores are intended to occur after the conclusion of the GOB Sale at such stores (the "Vacate Date");

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on Schedule A attached hereto (referred to as the "Lease(s)") with respect to the premises set forth on Schedule A (the "Premises"), pursuant to the terms and conditions of the *Order (I) Approving Sale of Debtors Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform Under the G  RP APA, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1556] (the "Sale Order"); and

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties ("Parties") hereto agree as follows:

## AGREEMENT

1.    Assumption and Assignment. Effective as of the later of (the "Closing Date") (i) the date the Bankruptcy Court enters an order of record pursuant to 11 U.S.C. 363(b) and 365 approving the assumption and assignment contemplated by this Agreement and (ii) the day after the Vacate Date at the applicable Premises, and upon payment of the Purchase Price as set forth below:

(a)    Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Lease(s).

(b)    Assignee hereby assumes and undertakes as of the Closing Date to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Lease(s).

2.    Payment of Purchase Price. Assignee shall, on or before five (5) business days following the Closing Date, deliver the purchase price for the Lease(s) in the amount of $_____ (the "Purchase Price") in immediately available funds wired to the account specified by Assignor. Together with the

Purchase Price, Assignee shall also pay to Assignor the sum of _____TBD_____ and NO/100 Dollars ($_____ .00) representing rent and other charges paid by Assignor under the Lease(s) for the month in which the Closing Date occurs. The Parties acknowledge that if the assumption and assignment of the Lease(s) does not occur before thirty (30) days following the Closing Date, the Lease(s) may thereafter be rejected in the Bankruptcy Court proceedings referenced above.

      3.    <u>Assumption of Liabilities</u>.  In addition to assuming all remaining obligations that exist with respect to the Lease(s) as of the Closing Date, including, but not limited to, accrued but unbilled adjustments for common area maintenance ("CAM"), real estate taxes, and insurance (if any), Assignee also agrees to assume and cure all outstanding liabilities with respect to the Lease(s) as listed on **Schedule B**.

      4.    <u>No Further Liability of Assignor</u>.  From and after the Closing Date, Assignor shall have no further obligations and duties with respect to the Lease(s).

      5.    <u>Further Assurances</u>.  At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Lease(s).

      6.    <u>"As Is Where Is" Transaction</u>.  Except as expressly provided in this Agreement, Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Lease(s). Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any premises subject to the Lease(s). Assignee further acknowledges that the Assignee has conducted an independent inspection and investigation of the physical condition of the premises subject to the Lease(s) and all such other matters relating to or affecting the Lease(s) as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Lease(s), Assignee is doing so based upon such independent inspections and investigations. Accordingly, Assignee will accept the Lease(s) "AS IS" and "WHERE IS."

      7.    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to principles of conflicts of law.

      8.    <u>Jurisdiction</u>.  The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement, including the entry of final orders and judgment.  The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, lack of Constitutional authority, or any similar grounds and irrevocably consent to service of process by first class U.S. mail or in any other manner permitted by applicable law.  The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

      9.    <u>No Reliance</u>.  Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.  In entering into this Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

      10.    <u>Construction</u>.  This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document.  All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud,

duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other.  The execution and delivery of this Agreement is the free and voluntary act of the Parties.

      11.    <u>Execution in Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the Parties to this Agreement may be transmitted by facsimile or by electronic mail, and such transmission will, for all purposes, be deemed to be the original signature of such Party whose signature it reproduces, and will be binding upon such Party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR: [Applicable Big Lots Entity]**

By_____
Name_____
Its_____

**ASSIGNEE:**
**Variety Stores, LLC**
**a North Carolina limited liability company**

By_____
Name_____
Its_____

**Schedule A**

**Lease(s)**

| Store # | Address | City | State |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**<u>Schedule B</u>**

**[If No Amendment to Lease(s) and Landlord Consent Required Add]**
**LANDLORD'S CONSENT TO**
**ASSUMPTION AND ASSIGNMENT AGREEMENT**

Landlord joins in the execution of this Agreement for the purpose of consenting to this Agreement and the assignment of Assignor's rights under the Lease(s) as set forth herein.

**LANDLORD:**

By:_____

Name:_____

Title: _____

Date:_____