**Davis Polk**

James I. McClammy
+1 212 450 4584
james.mcclammy@davispolk.com

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
davispolk.com

April 10, 2025

**Re:** *In re Big Lots, Inc.*, **No. 24-11967 (JKS)**

Honorable J. Kate Stickles
United States Bankruptcy Judge
United States Bankruptcy Court for the District of Delaware
824 North Market Street, 5th Floor
Wilmington, DE 19801

Dear Judge Stickles:

We represent the debtors and debtors in possession (collectively, the "**Debtors**")[1] in connection with the above-referenced chapter 11 cases (the "**Chapter 11 Cases**").  Pursuant to the Court's scheduling order entered on March 31, 2025 at D.I. 2429 (the "**Scheduling Order**"), the Debtors hereby submit this letter objection (this "**Objection**") to *HomeView Design Inc.'s Motion for Allowance and Immediate Payment of Administrative Expense Claims, Pursuant to 11 U.S.C. §§ 503(b)(1)(A) and 503(b)(9)* [D.I. 2207] (the "**Motion**") filed by HomeView Design Inc. ("**HomeView**").

For the reasons set forth herein, the Debtors respectfully submit that the portion of the Motion relating to the Disputed Claim (as defined below) should be denied in its entirety.  First, HomeView has failed to carry its burden under section 503(b)(1)(A) of the Bankruptcy Code to prove that the Disputed Claim provided an actual and necessary benefit to the Debtors' estates.  Second, even if HomeView had provided some benefit to the estate, the Debtors respectfully request that, if this Court were to conclude that the Disputed Claim is a claim under section 503(b)(1)(A) of the Bankruptcy Code, the Court hold that the Disputed Claim is a Pre-Closing Administrative Expense Claim (as defined in the Procedures Order (as defined below)).

**BACKGROUND**

*General Background*

On February 7, 2025, in response to a deluge of motions to compel filed by purported administrative expense claimants in these Chapter 11 Cases, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Setting a Bar Date for Filing Proofs of Pre-Closing Administrative Expense Claims Against the Debtors, (II) Establishing Pre-Closing Administrative Expense Claims Procedures, and (III) Granting Related Relief, Including Notice and Filing Procedures* [D.I. 1962] (the "**Procedures Motion**") which sought, among other things, an order establishing a fair, efficient, and transparent process for the reconciliation of administrative

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

**Davis Polk**  Honorable J. Kate Stickles

expense claims incurred prior to the January 3, 2025 closing of the Debtors' sale of substantially all of their assets (the "**GBRP Sale**") to Gordon Brothers Retail Partners, LLC ("**GBRP**").[2]

Following a contested hearing on February 26, 2025, the Court granted the Procedures Motion, reasoning that such relief was "critical to promote efficiency, cost and reduce the burden on the claimants in this case." Feb. 26, 2025 Hr'g Tr. at 56:15–16; *see Order (I) Setting a Bar Date for Filing Proofs of Pre-Closing Administrative Expense Claims Against the Debtors, (II) Establishing Pre-Closing Administrative Expense Claims Procedures, and (III) Granting Related Relief, Including Notice and Filing Procedures* [D.I. 2110] (as supplemented by D.I. 2214, the "**Procedures Order**").[3]  In addition to setting a bar date of April 3, 2025 for the filing of Pre-Closing Administrative Expense Claims (the "**Admin Bar Date**"), the Procedures Order provided:

> The Debtors are not required to respond to any of the motions, applications, or other requests for allowance and payment of Pre-Closing Administrative Expense Claims filed before **or after** the entry of this Pre-Closing Administrative Expense Claims Procedures Order, and any hearings with respect to such motions, applications, and requests that may be filed shall be adjourned sine die.

Proc. Order ¶ 7 (emphasis added).  To summarize, to the extent a claimant disagrees with the amount the Debtors included on the Pre-Closing Administrative Expense Claims Schedule, such claimant was entitled to file a Pre-Closing Administrative Expense Proof of Claim prior to the Admin Bar Date.  *Id.* at ¶ 6.  All Pre-Closing Administrative Expense Claims will not be entitled to immediate payment, but instead will go through a reconciliation process with the Debtors and their advisors and thereafter be entitled to a *pro rata* share of an interim payment the Debtors seek to make after the Admin Bar Date.  *Id.* at ¶ 23.

*HomeView's Motion*

HomeView filed its Motion on March 11, 2025 (i.e., after the entry of the Procedures Order) seeking allowance and immediate payment of three distinct claims: (1) a claim under section 503(b)(9) of the Bankruptcy Code in the amount of $3,778.00 (the "**503(b)(9) Claim**"); (2) a post-petition, pre-closing claim under section 503(b)(1)(A) in the amount of $96,712.00 (the "**Pre-Closing Claim**"); and (3) an alleged post-petition, post-closing amount under section 503(b)(1)(A) in the amount of $554,109.28 (the "**Disputed Claim**" and, together with the 503(b)(9) Claim and the Pre-Closing Claim, the "**HomeView Claims**").[4]  The Court held at the March 25, 2025 omnibus hearing that the 503(b)(9) Claim and the Pre-Closing Claim are subject to the Procedures Order, and are thus no longer at issue.  *See* Mar. 25, 2025 Hr'g Tr. at 18:18–20.

In support of the Disputed Claim, HomeView argues that, although the orders of goods giving rise to the Disputed Claim were placed by the Debtors prior to the closing of the GBRP Sale on January 3, 2025, the Debtors did not notify HomeView that it had cancelled such orders until January 15, 2025.  Mot. ¶ 14; *see also* Mar. 25, 2025 Hr'g Tr. at 15:8–14; 17:2–7.  Accordingly, although HomeView admits that the goods underlying the Disputed Claim "are presently located in China" and have not yet been shipped to the Debtors, Mot. ¶ 15,[5] HomeView asserts that the post-closing cancellation of such orders gives rise to an "actual and

---

[2] *See also Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of all Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1556] (the "**GBRP Sale Order**").

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Procedures Motion and Procedures Order.

[4] As the Court recognized at the March 25, 2025 omnibus hearing, it is undisputed that the 503(b)(9) Claim and the Pre-Closing Claim are subject to the Procedures Order.  *See* Mar. 25, 2025 Hr'g Tr. at 18:18–20.  Accordingly, this Objection is limited to discussion of the Disputed Claim.

[5] Indeed, as of the March 25, 2025 omnibus hearing, counsel to HomeView admitted that the orders were never shipped.  Mar. 25, 2025 Hr'g Tr. at 17:22–18:2.

necessary" benefit to the Debtors' estates under section 503(b)(1)(A). *Id.* at ¶¶ 23, 26. While HomeView did not make this argument in its Motion, HomeView's counsel argued at the March 25, 2025 omnibus hearing, that the January 15 cancellation of the orders gave rise to a breach of contract claim by the Debtors, which HomeView claims is entitled to administrative expense priority under section 503(b)(1)(A) and to be treated as a Post-Closing Administrative Expense Claim.

**ARGUMENT**

*HomeView's Motion Fails to Establish that the Disputed Claim Is Entitled to Administrative Expense Status*

HomeView's motion fails for the simple reason that HomeView ultimately did not deliver merchandise to the Debtors and thus did not convey *any* benefit to the estate. Neither HomeView nor the Debtors dispute the standard for establishing that a claim is entitled to administrative expense priority under section 503(b)(1)(A): (1) the expense must have arisen from a post-petition transaction between the creditor and the debtor; and (2) the expense must have been "actual and necessary" to preserve the estate. *In re Indianapolis Downs, LLC*, 486 B.R. 286, 301 (Bankr. D. Del. 2013) (citing *In re New Century TRS Holdings, Inc.*, 446 B.R. 656, 661 (Bankr. D. Del. 2011)) (internal quotations omitted). As the movant, HomeView "carr[ies] a heavy burden to demonstrate that the costs and fees for which it seeks payments provided an actual benefit to the estate." *In re Bernard Techs., Inc.*, 342 B.R. 174, 177 (Bankr. D. Del. 2006) (quoting *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 532–33 (3d Cir. 1999)). "[T]he mere potential of benefit to the estate is insufficient for the claim to acquire status as an administrative expense." *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 866 (4th Cir. 1994).

Although HomeView only makes conclusory assertions that "the requirements of [§ 503(b)(1)(A)] . . . are plainly met," Mot. ¶ 26, the sole basis for HomeView's Motion appears to be its claim that the Debtors placed purchase orders in the fall of 2024 and then cancelled them in January of 2025 before any goods were shipped. *See* Mar. 25, 2025 Hr'g Tr. at 15:3–5 ("[MS. KASEN:] [T]he crux of our dispute is relating to the $550,000 of orders that were placed were placed post-petition and canceled post-closing."). Even taking these factual assertions at face value, HomeView has failed to establish that the Disputed Claim is entitled to any administrative priority status under section 503(b)(1)(A), much less a Post-Closing Administrative Expense Claim. HomeView admits that the goods underlying such claim were never shipped to the Debtors, and this is fatal to its claim. Mot. ¶ 15. As the Third Circuit has noted, the benefit to the estate "must be *actual*, not hypothetical." *In re Energy Future Holdings Corp.*, 990 F.3d 728, 742 (3d Cir. 2021) (emphasis in original). And, when measuring such benefit, bankruptcy courts may use a "hindsight-based analysis" where "as viewed through the rearview mirror, whether the expenses of [the creditor] provided an actual benefit to the estate." *Id.* at 743.

For the reasons set forth below, HomeView cannot show that undelivered goods provided any benefit to the Debtors' estates, much less one that is "truly 'necessary' to the estate." *Id.* at 741–42 (citing *Matter of Whistler Energy II, L.L.C.*, 931 F.3d 432, 443 (5th Cir. 2019)).

First, recent cases from this District presume that the predicate for an administrative expense claim relating to a sale of goods is that the goods must actually be delivered. *See, e.g.*, *In re Bluestem Brands, Inc.*, No. 20-10566 (MFW), 2021 WL 3174911, at *6 (Bankr. D. Del. July 27, 2011) ("Because the goods sold by the Vendors *were physically received and sold by the Debtors* after the commencement of the case, the Court concludes that they satisfy that test.") (emphasis added); *see also* 4 COLLIER ON BANKRUPTCY ¶ 503.06[a] ("Accordingly, for a claim to be allowed as an administrative expense, goods . . . must be delivered . . . pursuant to a postpetition transaction . . .").

Second, while HomeView stated, at the March 25, 2025 omnibus hearing, that it was relying on the "*Reading* Doctrine"—which it nowhere cites in its Motion—any such reliance is misplaced because HomeView is asserting a breach of contract claim rather than a tort claim. *See* Mar. 25, 2025 Hr'g Tr. at 17:2–7; 18:9–17 ("MS. KASEN: A breach of contract claim was incurred the day that the orders were cancelled."). Under the Supreme Court's decision in *Reading Co. v. Brown*, 391 U.S. 471 (1968), courts have allowed administrative expense claims under section 503(b)(1)(A) arising from post-petition *torts* committed by the debtor or trustee. *Reading*, 391 U.S. at 485 (holding that damages resulting from a fire caused by a receiver's negligence were entitled to administrative expense status); *accord In re Hayes Lemmerz Int'l Inc.*, 340 B.R. 461 (Bankr. D. Del. 2006) (holding that an equipment lessor was entitled to administrative expense status for damages arising from conversion of the lessor's property); *Ellis v. Westinghouse Electric Co.*, 11 F.4th 221 (3d Cir. 2021) (applying the *Reading* doctrine to a post-petition employment discrimination claim). Although application of the *Reading* doctrine is not limited to intentional or egregious misconduct by the debtor, the cases make clear that it is primarily reserved for either torts of the debtor or where considerations of fundamental fairness require the allowance of the claim. 4 COLLIER ON BANKRUPTCY ¶ 503.06[c][i] (collecting cases). Accordingly, to the extent HomeView is asserting a breach of contract claim related to the January 15, 2025 cancellation of the orders underlying the Disputed Claim, the *Reading* doctrine does not save the Motion's facial deficiencies.[6]

For the reasons set forth above, the Debtors respectfully submit that HomeView has not carried its "heavy" burden to show that its undelivered orders constituted an actual and necessary benefit to the Debtors' estates. *In re Bernard Techs.*, 342 B.R. at 177.

### *Even if HomeView Is Entitled to an Administrative Expense Claim—Which It Is Not—Such Claim Should Be Subject to the Procedures Order*

Even if HomeView had conveyed some benefit to the estate that could support an administrative expense claim, any such claim would have accrued pre-closing and would thus be subject to the Procedures Order. HomeView's Motion asserts that "in the post-closing period," it "received purchase orders from the Debtor(s) and did substantial work to fulfill those orders." Mot. ¶ 14. But this assertion is belied by the exhibits HomeView purportedly cites to support it, which show that each of the cited purchase orders was placed by the Debtors prior to the closing of the GBRP Sale. *See id.*, Ex. C (purchases orders dated in October, November, and December of 2024). HomeView later reversed course and asserted at the March 25, 2025 omnibus hearing that, although the orders were placed pre-closing, they were "canceled or repudiated by the [D]ebtors post-closing on January 15." Mar. 25, 2025 Hr'g Tr. at 15:8–14. But when or whether the Debtors canceled the orders is irrelevant. The relevant question is when did the Debtors enter into the subject transaction. Here, the answer is clear: each of the purchase orders attached as Exhibit C to the Motion shows that the Debtors entered these transactions before the closing the GBRP Sale. *See* Mot., Ex. C.

There are also strong prudential and common-sense reasons why the Disputed Claim should not be deemed to be a Post-Closing Administrative Expense Claim. The Debtors publicly announced well before January 15, 2025 that it was ceasing normal business operations and pivoting towards a chain-wide liquidation. *See* Dec. 19, 2024 Hr'g Tr. at 25:8–18 ("[S]tarting tomorrow [December 20, 2024], the debtors are commencing a process to sell all of the inventory that's currently in their stores. They're not expecting other . . . vendors to ship new items. . . . [T]he debtors are not out there expecting . . . new product to be shipped or anything like

---

[6] Indeed, cases in which parties argued for an application of the *Reading* doctrine relating to a breach of contract claim all relate to situations in which a chapter 11 debtor breached a *prepetition* contract in a manner where it would be grossly inequitable to deny an administrative expense claim. *See, e.g., In re Old Carco LLC*, 424 B.R. 650 (Bankr. S.D.N.Y. 2010), *aff'd* No. 09-50002 (AJG), 2010 WL 4455648 (S.D.N.Y.) (denying administrative expense claim based on postpetition repurchase obligations with General Motors that arose from postpetition contracts); *In re Abercrombie*, 139 F.3d 755 (9th Cir. 1998) (denying administrative expense to a postpetition award of attorney's fees based on litigation relating to a prepetition contract). No such situation is present here.

**Davis Polk**  Honorable J. Kate Stickles

that."); *see also Notice of Status Conference* [D.I. 1398] (same).  And as the Debtors have made clear on the record, given the circumstances of these Chapter 11 Cases, it is unlikely that Pre-Closing Administrative Expense Claims will receive payment in full.  As such, it would be wholly inequitable for HomeView—who never shipped anything to the Debtors—to receive a windfall of 100 cents on the dollar at the expense of holders of Pre-Closing Administrative Expense Claims—many of whom *did* supply the Debtors with goods—simply because the Debtors allegedly happened to cancel HomeView's pre-closing purchase orders on January 15, instead of at an earlier date.  *Cf. Energy Future Holdings*, 990 F.3d at 742 ("The question is not whether [the creditor] deserves to get paid, but whether [it] deserves to get paid at the expense of [the debtor's] existing unsecured creditors.") (internal citations and quotations omitted).

In summary, even taking HomeView's Motion at face value and accepting all allegations therein as true, nothing in the Motion establishes that liability against the Debtors accrued post-closing of the GBRP Sale.

**CONCLUSION**

For the reasons set forth herein, the Debtors respectfully request that the Court sustain this Objection and find (a) that the Disputed Claim is not entitled to administrative expense status under section 503(b)(1)(A) or (b) in the alternative, that the Disputed Claim is a Pre-Closing Administrative Expense Claim and subject to the Procedures Order.

**RESERVATION OF RIGHTS**

Notwithstanding anything to the contrary herein, the Debtors reserve their rights to contest the allegations raised in the Motion on any other grounds.  Nothing contained herein should be deemed to constitute an admission regarding the validity or allowability of Alleged Administrative Expense Claims or any other administrative expense claims asserted in these Chapter 11 Cases.  As set forth in the Scheduling Order, the Debtors reserve the right to file a surreply to any reply in support of the Motion.

Respectfully yours,

 */s/ James I. McClammy*

James I. McClammy

cc:
    Jenny R. Kasen, Kasen & Kasen, P.C.
    Robert J. Dehney, Sr., Morris, Nichols, Arsht & Tunnell LLP
    Andrew R. Remming, Morris, Nichols, Arsht & Tunnell LLP
    Daniel B. Butz, Morris, Nichols, Arsht & Tunnell LLP
    Sophie Rogers Churchill, Morris, Nichols, Arsht & Tunnell LLP
    Casey B. Sawyer, Morris, Nichols, Arsht & Tunnell LLP
    Brian M. Resnick, Davis Polk & Wardwell LLP
    Adam L. Shpeen, Davis Polk & Wardwell LLP
    Stephen D. Piraino, Davis Polk & Wardwell LLP
    Ethan Stern, Davis Polk & Wardwell LLP
    Kevin L. Winiarski, Davis Polk & Wardwell LLP

**VIA CM/ECF**