<u>**Exhibit 2**</u>

**Redline**

~~EXHIBIT C~~
~~Proposed Order~~
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.~~1~~1 | (Jointly Administrated) |
| | **Re: Docket No. ~~[•]~~1556** |

**ORDER PURSUANT TO SECTIONS 363 AND 365**
**OF THE BANKRUPTCY CODE AUTHORIZING THE ~~DEBTORS-IN- POSSESSION~~**
**DEBTORS-IN-POSSESSION TO ASSUME~~,~~ AND ASSIGN ~~AND SELL~~**
**A CERTAIN NON-RESIDENTIAL REAL PROPERTY LEASE**
**[Revere, MA (Store No. 4658)]**

Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**"), each of which is a

debtor and debtor in possession in the Chapter 11 Cases, for an order pursuant to sections 105,

363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006 and 9014, and

Local Rule 6004-1, having received a Notice of Designation of Designated Asset from Gordon

Brothers Retail Partners, LLC ("**GBRP**") in accordance with Section 2.05(b) of the ~~APA²~~ APA[2]

and Paragraph 43 of the Sale Order, with respect to that certain unexpired lease~~(s)~~ of

non-residential real property for the premises identified in **Exhibit A** hereto (the

"~~Leases~~**Lease**"); and the Debtors having filed and served

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin- Granville Road, Columbus, OH 43081.

[2] Capitalized terms used herein and not otherwise defines shall have the meanings ascribed thereto in the Court's *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1556] (the "**Sale Order**").

a Designated 365 Contract Notice (the "**Designation Notice**") seeking, *inter alia*, (i) to assume

and assign the ~~Leases~~Lease to Burlington Coat Factory ~~Warehouse Corporation (or a designee~~

~~thereof)~~

of Texas, Inc. (

---

[1] ~~The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores – PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores – CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin Granville Road, Columbus, OH 43081.~~

[2] ~~Capitalized terms used herein and not otherwise defines shall have the meanings ascribed thereto in the Court's *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1556] (the "**Sale Order**").~~

(hereinafter, "**Burlington**"); and (ii) such additional and related relief as ~~provided by the Sale Order;~~the Court deems necessary; and the Court having determined that the legal and factual bases for the relief requested herein establish just cause for the relief granted herein; and after due deliberation and good and sufficient cause appearing therefor;

**NOW, THEREFORE**, the Court hereby finds as follows:

A.      ~~After good~~Good and sufficient notice of the Designation Notice ~~having~~has been provided in accordance with the Designation Rights Procedures, and a reasonable opportunity to object or be heard regarding the proposed assumption and assignment of the ~~Leases~~Lease has been afforded to the applicable 365 Counterparty (the "~~Landlords~~**Landlord**") in accordance with the Designation Rights Procedures.

B.      The assumption~~,~~ and assignment ~~and sale~~ of the ~~Leases~~Lease to Burlington, pursuant to Sections 363 and 365 of the Bankruptcy Code is in the best interests of the Debtors, their estates and their creditors, and is consistent with the terms of the APA and Sale Order, respectively.

C.      Pursuant to Sections 365(b)(1)(C), 365(f)(2)(B) and 365(b)(3) of the Bankruptcy Code, ~~to the extent required under the Sale Order,~~ Burlington has provided adequate assurance of future performance under the ~~Leases~~Lease.

D.      The assumption and assignment of the ~~Leases~~Lease to Burlington is in compliance with Section 365(b)(3) of the Bankruptcy Code.

E.      The Assumption and Assignment Agreement, dated as of February ~~17~~27, 2025 and attached hereto as **Exhibit B** (the "**Assignment Agreement**"), between and among the Debtors

and Burlington was negotiated and entered into in good faith, and from arm's length bargaining positions. Burlington is hereby found to be a good faith purchaser of the ~~Leases~~Lease and is found to be entitled to the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT**

1.      Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, the applicable Debtor is hereby authorized to assume, ~~sell~~ and assign to Burlington the ~~Leases~~Lease, pursuant to the terms and provisions of this Order and the ~~applicable~~ Assignment Agreement~~(s)~~, all of the terms of which are hereby approved, except as otherwise modified by agreement in writing by and between the Landlord and Burlington.

2.      In accordance with Section ~~363~~365 of the Bankruptcy Code, effective as of the occurrence of a closing ~~of~~on the assignment of the ~~Leases~~Lease under the Assignment Agreement~~(s)~~ (such date being hereinafter defined as the "**Closing Date**"), the ~~Leases~~Lease shall be assumed, assigned and transferred free and clear of ~~any leasehold mortgages, subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, interests, mechanics liens, bills, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances.~~all liens, claims, interests, and encumbrances of any kind or nature whatsoever (the "**Interests or Claims**"), other than easements, rights-of-way and restrictive covenants that the Lease is expressly subject to, as well as any reciprocal easement agreement or declaration of covenants and restrictions or other similar land use agreement in effect prior to the date of the Lease and to which the Lease is expressly subject to, except in each case to the extent otherwise expressly set forth in this Order or the Assignment Agreement, because one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied, provided that, any Interests or Claims encumbering all or any portion of the proceeds that the Debtors or GBRP are entitled to receive in respect of the sale of the Lease shall attach to the proceeds to be received by the Debtors or GBRP in the same order, priority and validity that such Interests or Claims had in such Lease or such proceeds as of the Petition Date

or pursuant to any order of the Bankruptcy Court entered in these cases; *provided*, *however*, in all respects, following the assumption and assignment of the Lease, as described by and governed by this Order and the Assignment Agreement, Burlington shall, except as set forth in this Order, assume all of the terms, conditions and covenants of the Lease as tenant under the Lease, and agrees to assume and undertake to pay, perform and discharge all of the obligations and duties thereunder that accrue and come due from and after the effective date of the Closing as such term is defined in the Assignment Agreement (the "Lease Obligations"). Those holders of Interests or Claims who did not object to the Designation Notice, or who interposed and then withdrew their objections, are deemed to have consented to the Assignment Agreement pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Interests or Claims who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

3.      Upon the entry of this Order and the occurrence of the Closing Date, Burlington shall be deemed to have assumed and succeeded to the entirety of the Debtors' rights and obligations in and to the ~~Leases~~Lease which are due and owing from and after the Closing Date and shall have the rights of the tenant thereunder.

4.      Upon entry of this Order and the occurrence of the Closing Date, Burlington is a good faith purchaser and shall be entitled to the protections of Bankruptcy Code Section 363(m).

5.      Pursuant to Section 365(b)(l) of the Bankruptcy Code, ~~to the extent a Cure Cost is owed to a Landlord,~~ the Cure ~~Cost~~Costs under the Lease shall be fixed in the amount set forth in **Exhibit A** attached hereto, and shall be promptly paid by Burlington within three (3) business days of the Closing.  Any objection of the ~~Landlords~~Landlord to the assumption ~~or~~and assignment ~~or transfer~~ of the ~~Leases~~Lease, any Cure Cost, or ~~seeking~~for further adequate

assurance of future performance other than that provided in the Assignment Agreement(s), to the extent not otherwise resolved by agreement, or by agreement contemplated to be heard after the date of any hearing to be held in connection with the Designation Notice, or

disposed of by separate order of this Court, is hereby overruled. There shall be no accelerations, assignment fees, increases, or any other fees charged to GBRP, Burlington, or the Debtors as a result of the assumption and assignment of the ~~Leases~~Lease contemplated by this Order. Upon remittance of the Cure Costs by Burlington to the ~~Landlords, the Landlords~~Landlord pursuant to the terms of this Order, the Landlord shall be barred from asserting any additional cure amounts or other ~~claims with respect to the Leases~~defaults under Lease for the period prior to the Closing Date, or any defaults arising from the assumption and assignment of the Lease that were required to be asserted as cure pursuant to Section 365(b) of the Bankruptcy Code. For the avoidance of doubt, the ~~Landlords~~Landlord shall be forever (i) barred from objecting to the applicable Cure Costs and from asserting any additional cure or other default amounts are due with respect to the ~~Leases~~Lease for the period prior to the Closing Date, and the Debtors and Burlington shall be entitled to rely solely upon the Cure Costs set forth above and (ii) barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, GBRP or Burlington, or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under the ~~Leases~~Lease, or that there is any objection or defense to the assumption or assumption and assignment of the ~~Leases~~Lease. On and after the Closing Date, Burlington shall be responsible for paying (and shall be entitled to receive any credits for) all amounts ~~outstanding~~that accrue and come due under the ~~Leases due~~Lease on or after the Closing Date.

5

6.      The proceeds of the Lease Sale shall be payable to GBRP in accordance with the Assignment Agreement~~(s)~~, APA and Sale Order, respectively.

7.      All personal property and furniture, fixtures and equipment ("**FF&E**") remaining in the ~~stores~~<u>store</u> subject to the ~~Leases~~<u>Lease</u> on or after the Closing Date shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as of the Closing Date. Burlington may, in its sole discretion and without further order of this Court, utilize and/or dispose of such property without notice or liability to the Debtors or any consenting third parties and, to the extent applicable, the automatic stay is modified to allow such disposition; <u>provided</u>, that the Debtors shall not sell or

abandon any property that the Debtors know is not owned by the Debtors; <u>provided</u>, <u>further</u>, that that the Debtors will either (a) provide for the return of such property to ~~the Headquarters (as defined below)~~<u>its headquarters</u>  or (b) return such property to the applicable lessor, or other owner of the property; <u>provided</u>, <u>however</u>, that the Debtors are not aware of any other parties with interests in the FF&E<u>; provided, further, however, that the Debtors may leave any property owned by the Landlord at the Store.</u>

~~provided, further, however, that the Debtors may~~ ~~abandon property owned by the Landlords at the~~

<u>8.      Subject to the Closing, payment of the Cure Costs as provided for in this Order and the Assignment Agreement shall be in full satisfaction and cure of any and all defaults under the Lease that are required to be cured by Bankruptcy Code §§ 365(b)(1)(A) and (B).  Upon the payment of the Cure Costs in accordance with the Assignment Agreement, GBRP, the Debtors and their estates shall have no further liability to the Landlord to the Lease for charges that accrue and become due and payable on or after the Closing.  The Landlord shall be forever</u>

barred and estopped from asserting against GBRP, the Debtors or their estates or Burlington, their successors or assigns, or their property, any default existing as of the date of the Closing, except for as set forth in any side letter agreement entered into between Buyer and Landlord.

applicable Stores.

9. 8. Any party which did not object within the time set forth in the notice thereof is deemed to consent to the Debtors' assumption and assignment of the Leases Lease, and the satisfaction of the requirements of Section 365 of the Bankruptcy Code. Upon the sale and assignment of the Leases Lease, payment of the Cure Costs and the transfer of the furniture, fixtures and equipment referenced immediately above, as applicable, shall relieve the Debtors from any further liability pursuant to Section 365(k) of the Bankruptcy Code.; *provided, however*, nothing in this Order or the Assignment Agreement shall prevent the Landlord of the Lease from seeking indemnification from the Debtors for third party claims related to events and circumstances that occurred prior to the Closing from the Debtors' applicable insurance policies. For the avoidance of doubt and notwithstanding anything in this Order to the contrary, with respect to any claims that the Landlord or its agents have or may have in the future against the Debtors for which the Debtors maintained insurance covering such claims (for example, for personal injury claims or indemnification claims related to events occurring from the use and occupancy of the leased premises prior to the Closing), nothing in this Order shall prevent the Landlord or its agents from making claims and seeking recovery from such insurance policies and proceeds, and nothing in this Order shall be deemed to terminate such insurers' obligations under such insurance policies (regardless of whether the claims are made before or after entry of this Order or the assignment of the Lease).

10.    ~~9.~~ Solely with respect to the transactions contemplated by this Order and the Assignment Agreement~~(s)~~, and except as otherwise agreed between ~~a~~the Landlord and Burlington, nothing in this Order shall be deemed to annul or vary any provision of the ~~Leases~~Lease *other than* the following provisions (the "**Unenforceable Provisions**")~~:~~ and, without limiting the generality of the foregoing, no violation by the Debtors or Burlington of the Unenforceable Provisions shall constitute an event of default under the Lease in connection with the assignment of the Lease pursuant to this Order:

    a.    a provision prohibiting Burlington's intended use of the premises;

    b.    a provision unreasonably prohibiting necessary alterations to the premises ~~or~~, including the installation of any signage required to convert the premises to Burlington's intended use~~;~~, provided such alterations are ~~deemed~~ necessary ~~by Burlington to conform such store to~~to operate at the premises under Burlington's ~~typical retail store~~trade name and consistent with its business operations and are done in a matter that is consistent with the ~~Burlington's intended use~~terms of the ~~premises~~Lease;

        c.    a provision commonly referred to as a "going dark" or "continuous operations" provision, providing in substance for a forfeiture of the ~~Leases~~Lease or an increase in rent or other penalty by reason of the Debtors' cessation of retail operations before the

        assignment, and/or any delay by Burlington in reestablishing retail operations after the assignment, to the extent any such provision does not permit Burlington to "go dark" until the later of: (i) one hundred twenty (120) days after the Closing Date ~~(as defined in the Assignment Agreement(s))~~ of the assignment of the ~~Leases~~Lease, or such later time, when the particular facts and circumstances ~~of a given store~~may warrant

additional time, which circumstances shall include, without limitation, the age and condition of the shopping center, the ability to obtain any permits and documents necessary to complete construction, the location of the premises in the shopping center, the shape of the premises to be assigned, the demographics of the shopping center's location and the overall quality of the shopping center and its existing tenants or (ii) the Going Dark Period (as defined in the Assignment Agreement) listed in the ~~applicable~~ Assignment Agreement;

       d.     a provision conditioning assignment on Landlord consent, or requiring payment to the ~~Landlords~~Landlord as the price of assignment, or granting ~~Landlords~~Landlord the right to recapture the leased premises following the assignment;

       e.     a provision effecting forfeiture or a modification of any of Burlington's rights or obligations presently in effect under the ~~Leases~~Lease upon an assignment by the Debtors of the ~~Leases~~Lease;

       f.     a provision conditioning the Debtors' ability to assign their leasehold rights upon any terms not otherwise required under the Bankruptcy Code;

       g.     a provision restricting Burlington's ability to place reasonable signage on the premises; *provided*, that such signage is ~~deemed~~ necessary by Burlington to conform

such store to Burlington's typical retail store consistent with Burlington's intended use of the premises and such placement is done in a matter consistent with the terms of the Lease;

       h.     a provision requiring the use of a certain tradename;

i.        a provision regarding minimum sales revenues, if any, required to be satisfied at the premises covered by the Leases; and

j.        any radius provisions set forth in the ~~Leases~~Lease to the extent applicable to any existing Burlington stores located near the Debtors' premises (but such radius provisions shall at all times apply to any new stores which might be opened by Burlington in the area of Debtors' premises after the Closing Date).

~~10. Solely with respect to the transactions contemplated by this Order, the Sale Order, and the Assignment Agreement, none of the Unenforceable Provisions shall apply to Burlington in any respect and, without limiting the generality of the foregoing, no violation by the Debtors or Burlington of the Unenforceable Provisions shall constitute an event of default under any of the Leases.~~

11.      Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and Burlington are authorized to close the sale of the ~~Leases~~Lease set forth in the Assignment Agreement~~(s)~~ immediately upon entry of this Order.  Time is of the essence in closing the Lease sale ~~transactions~~transaction referenced herein, and the Debtors and Burlington intend to close the Lease sale ~~transactions~~transaction as soon as practicable. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order.

12.      Upon entry of this Order, this Order and the findings hereunder shall be binding upon all parties to the ~~Leases~~Lease and the Assignment Agreement~~(s)~~.

13.     Upon the entry of this Order and the occurrence of the Closing Date, the ~~Landlords~~Landlord shall accept and honor the assignment of the ~~Leases~~Lease to Burlington.

~~14. The Landlords shall cooperate and expeditiously execute and deliver, within ten~~

14.     ~~(10) days of any reasonable requests~~The Landlord shall reasonably cooperate and execute and deliver, without undue delay and upon the request of Burlington, and at no cost to the ~~Landlords~~Landlord, any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, opening and operating of the ~~properties~~premises as contemplated under the Assignment Agreement~~(s)~~.

15.     Notwithstanding anything to the contrary in this Order, the Assignment Agreement~~(s)~~ or any side letters, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) shall be abandoned, sold, assigned, or otherwise transferred without the express prior written consent of the Burlington and applicable insurer and/or third-party administrator.

16.     This Court shall retain jurisdiction (i) to construe and determine any disputes under this Order, (ii) to enforce and implement the terms and provisions of the Assignment Agreement~~(s)~~, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, and (iii) to resolve any disputes arising under or related to the Lease ~~sales~~sale (but all Landlord/tenant disputes arising subsequent to the Closing Date which do not involve the Lease ~~sales~~sale, this Order or the Debtors shall not be subject to the jurisdiction of this Court).

17.     The Debtors and Burlington are hereby authorized and directed to execute and deliver any and all documents, and to do all things reasonably necessary, to effectuate the purposes of this Order, to transfer the Debtors' interests in and to the ~~Leases~~Lease, in accordance with the terms of the Assignment Agreement~~(s)~~, and to carry out the terms and conditions of the Assignment Agreement~~(s)~~.

18.     Burlington is not a successor in interest to the Debtors (other than with respect to the Debtors' rights and obligations under the ~~Leases~~Lease first accruing after Burlington takes assignment thereunder as provided for under the Assignment Agreement~~(s)~~), or their bankruptcy estates as a result of Burlington taking title or possession of the ~~Leases~~Lease and the subject premises, and Burlington is not assuming any liabilities or obligations of the Debtors or their bankruptcy estates, except as may be specifically provided for in the Assignment Agreement~~(s)~~ and any side letter that may be entered into by and between Buyer and Landlord.

19.     This Order shall be effective and enforceable after its entry as provided by Bankruptcy Rule 7062.

20.     Any remaining objections to the assignment of the ~~Leases~~Lease that have not been withdrawn, waived, adjourned, or settled, and all reservations of rights included in such objections, are overruled in all respects and denied.

21.     Any provision in the Leases regarding percentage rent to the extent of Debtors' sales prior to the Closing Date shall not be imputed against Burlington, provided that Burlington shall be liable for percentage rent for the prorated portion of calendar year 2025 remaining after the Closing Date for a partial calendar year as if the term began on the Closing Date (and Burlington shall not be liable to pay any percentage rent based upon sales that occurred prior to

the Closing Date) and no percentage rent is due and owing by Burlington for the period prior to the Closing Date.

22.    To the extent there is any inconsistency between the terms of this Order and the terms of the Assignment Agreement (s) (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

23.    To the extent that Burlington and a Landlord enter into a side letter with respect to a the Lease, such side letter shall govern with respect to rights and obligations of Burlington and that Landlord.  For the avoidance of doubt, no side letters letter shall modify the rights and obligations of any third party without such third party's consent.

24.    The failure to specifically include any particular provision of the Assignment Agreement(s) or other related documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Assignment Agreement(s) and all other related documents be authorized and approved in their entirety pursuant to this Order.

25.    The Assignment Agreement(s) and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement is consistent with this Order and does not have any adverse effect on the Debtors' estates; provided, further, that the Debtors shall provide any such modification, amendment, or supplement to the Landlords Landlord and the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases no less than one (1) day prior to execution of such modification, amendment, or

13

supplement; <u>provided</u>, <u>further</u>, that after the occurrence of the Closing Date, the final versions of the Assignment Agreement~~(s)~~ any related agreements, documents or other instruments (as modified, amended or supplemented) shall be filed with the Court.

Docusign Envelope ID: 42D1FD01-4C9E-4BD3-92D9-0B3A1C2D33F7

## EXHIBIT A

| Store Number | Address | Base Rent PSF | Lease Expiration Date | Options | Purchaser Entity | Vacate Date | Estimated Cure Amount |
|---|---|---|---|---|---|---|---|
| 809 | 1335 W. Walnut Ave.  Dalton, GA | $7.25 | 01/31/27 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $0.00 |
| 1012 | 6880 Garners Ferry Rd.  Columbia, SC | $7.02 | 01/31/30 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $0.00 |
| 1155 | 125 Highway 332 W.  Lake Jackson, TX | $8.50 | 01/31/29 | 5 | Burlington Coat Factory of  Texas, L.P. | 2/28/25 | $61,000.00 |
| 1218 | 19142 Montgomery Village Ave.  Montgomery Village, MD | $15.00 | 01/31/32 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 3/17/25 | $10,000.00 |
| 1595 | 1400 Merritt Blvd.  Dundalk, MD | $8.18 | 01/31/31 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 3/17/25 | $51,000.00 |
| 1742 | 1601 E Price Rd.  Brownsville, TX | $5.88 | 01/31/29 | 5 | Burlington Coat Factory of  Texas, L.P. | 2/28/25 | $97,000.00 |
| 1805 | 5781 SW Green Oaks Blvd.  Arlington, TX | $7.00 | 01/31/30 | 5 + 5 | Burlington Coat Factory of  Texas, L.P. | 2/28/25 | $89,000.00 |
| 1809 4658 | 151 VFW Parkway Revere, MA | $9.00 | 01/31/27 | 5 + 5 | Burlington Coat Factory of Texas, Inc. | 3/17/25 | $8,000.00 113,995.56 |
| 4753 | 9500 Montgomery Blvd. NE, Suite A Albuquerque, NM | $10.50 | 01/31/29 | 5 + 5 + 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $0.00 |
| 5118 | 1507 West Mason St.  Green Bay, WI | $4.82 | 01/31/26 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $0.00 |
| 5238 | 11 McKenna Rd.  Arden, NC | $10.00 | 01/31/28 | 5 + 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $79,000.00 |
| 5144 | 380 Universal Dr. N  North Haven, CT | $10.50 | 01/31/29 | 5 | Burlington Coat Factory Warehouse Corporation | 3/17/25 | $0.00 |

# EXHIBIT B

**Assumption & Assignment Agreement~~(s)~~**

(see attached)

*Execution Version*

## ASSUMPTION AND ASSIGNMENT AGREEMENT

**THIS ASSUMPTION AND ASSIGNMENT AGREEMENT** (the "Agreement"), dated as of **February 27, 2025**, is by and between **BIG LOTS STORES, LLC**, an Ohio limited liability company ("Assignor") and **BURLINGTON COAT FACTORY WAREHOUSE CORPORATION**, a Florida corporation, or its designated affiliates reflected on **Schedule A** attached hereto ("Assignee"). For the avoidance of doubt, all provisions of the applicable assigned contract, including any provision limiting future assignment, shall be binding on the applicable Assignee after consummation of the assignment of such contract by the Assignor to the Assignee.

### RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court"), jointly administered under case *In re Big Lots, Inc.*, Case No. 24-11967 (JKS) (Bankr. D. Del. 2024) (the "Chapter 11 Cases"); and

WHEREAS, Gordon Brothers Retail Partners, LLC ("GBRP"), as buyer, and Big Lots, Inc. and certain of its subsidiaries, as seller ("Seller"), are parties to that certain Asset Purchase Agreement dated as of January 3, 2025 (the "Purchase Agreement"), pursuant to which Buyer agreed to acquire certain assets, including designation rights with respect to executory contracts and unexpired leases;

WHEREAS, on January 2, 2025, the Court entered an order approving the transactions contemplated under the Purchase Agreement [Docket No. 1556] (the "Sale Order");

WHEREAS, in accordance with Section 2.5(b) of the Purchase Agreement and Paragraph 43 of the Sale Order, Buyer designated the Lease (as defined herein) as a "Designated Asset" for assumption and assignment to Assignee as the "Designated Buyer";

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the unexpired lease(s) listed on **Schedule A**, with the term and address of each lease being as represented in the documents provided by Assignor, on **Schedule A**, including rights under those certain Subordination, Non-Disturbance and Recognition Agreements executed in connection with such leases (collectively referred to as either as the "Assigned Assets" or the "Leases" and individually an "Assigned Asset" or "Lease") with respect to the premises set forth on **Schedule A** (the "Premises), subject to the Court's entry of an order of record pursuant to 11 U.S.C. 363(b) and 365 approving the assumption and assignment of the Leases contemplated by this Agreement(the "Court Order").

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto (individually, "Party" or collectively, "Parties") agree as follows:

### AGREEMENT

1. Assignment and Assumption. On the later of the (a) date of entry of the Court Order, or (b) the day after the Vacate Date at the Premises, as reflected on **Schedule A**; provided, that Assignor or GBRP shall give Assignee no less than seven (7) days' advance written notice of the Vacate Date (the "Closing Date"):

(a) Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Assigned Asset.

*Execution Version*

(b) No later than the Closing Date, Assignor shall surrender the Premises to Assignee, deliver possession thereof to Assignee and deliver all access codes and keys (or written confirmation that Assignee is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Assignee.

(c) Except as specifically set forth in this Agreement, Assignee hereby assumes and undertakes to pay, perform and discharge all of Assignor's obligations and duties with respect to the Assigned Asset from and after the Closing Date.

2. Payment. Subject to the immediately following sentence, Assignee shall, on the Closing Date or the immediately following business day if the Court Order is entered of record after 3:00 PM ET, deliver the purchase price for the Assigned Asset in the amount of **$2,400,000.00** (the "Purchase Price") net of any previously paid deposits, in immediately available funds wired to the account of GBRP set forth on **Schedule B** hereto. The Parties acknowledge that if the assumption and assignment of the Assigned Asset (the "Closing") does not occur as set forth herein, the Lease(s) may thereafter be rejected in the bankruptcy proceeding referenced above.

3. Assumption of Liabilities. All defaults or other obligations of Assignor subject to 11 U.S.C. 365(b) shall be cured by Assignee as soon as reasonably practicable after the Closing Date (or as otherwise agreed with Lessor, and Assignor shall have no liability or obligation for such obligations or defaults (the "Cure Amount"). Assignee shall assume all obligations with respect to the Assigned Asset due from and after the Closing Date. Notwithstanding any of the foregoing, the Parties agree that if the cure amount timely asserted by the counterparty to the Assigned Asset (the "Lessor"), in accordance with the Designation Rights Procedures (as such term is defined in the Sale Order) (the "Asserted Cure Amount"), is higher than GBRP's estimated Cure Amount reflected in **Schedule A**, Assignee may, in its sole determination and discretion, withdraw its offer for such Lease(s), and the Lease(s) may thereafter be rejected in the bankruptcy proceeding referenced above; *provided further*, in the event of this election, the Purchase Price shall be adjusted accordingly, as agreed between GB and Assignee.

4. No Further Liability of Assignor. From and after the Closing Date, Assignor shall have no further obligations and duties with respect to the Assigned Asset due after the Closing Date.

5. Further Assurances. At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Assigned Asset.

6. "As Is Where Is" Transaction. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assigned Asset; *provided, however*, Assignor warrants and represents that it has fully complied with any requests from Assignee to provide access to all known leases and amendments documents relating to the Assigned Asset(s).

7. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to principles of conflicts of law.

8. Jurisdiction. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar

Docusign Envelope ID: 42D1FD01-4C9E-4BD3-92D9-0B3A1C2D33F7

*Execution Version*

grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

9. No Reliance. Except as specifically set forth in this Agreement, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.

10. Third Party Beneficiaries. This Agreement is expressly intended to confer rights and benefits upon GBRP, and GBRP shall have the right to enforce the provisions of this Agreement.

11. Construction. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

12. Execution in Counterparts. This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All such counterparts, when so executed, shall be deemed to constitute one final agreement as if one document had been signed by all Parties to this Agreement. Each such counterpart, upon execution and delivery of all counterparts, shall be deemed a complete and original of this Agreement. The Parties hereby each agree that its authorized signatories may receive and review this Agreement via electronic record and may sign this Agreement via electronic digital signature (i.e., DocuSign or similar electronic signature technology), and the Parties may rely on such electronic digital signatures as if they are original signatures by each Party or duly authorized representatives of each Party, and delivery of an executed copy of this Agreement by facsimile or by other electronic means (.pdf) shall be legal and binding and shall have the same full force and effect as if an original executed copy of this Agreement had been delivered. No Party may raise the use of an image transmission device or method or the fact that any signature was transmitted as an image as a defense to the enforcement of such document.

13. Intended Use & Going Dark. Assignee intends to use the Premises for the operation of a Burlington retail store. In order to facilitate such usage, Assignee may need to delay reestablishing retail operations for a period of time not to exceed **one hundred and eighty (180) days** after receipt of applicable permits, subject to events of force majeure (the "Going Dark Period").

*[Signatures appear on following page]*

Docusign Envelope ID: 42D1FD01-4C9E-4BD3-92D9-0B3A1C2D33F7

*Execution Version*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**ASSIGNOR:**
**BIG LOTS STORES, LLC**
By: _____ Name: ___ Title: __

Federal I.D. No.: _____
**ASSIGNEE:**
**BURLINGTON COAT FACTORY WAREHOUSE CORPORATION,**
a Florida corporation
By: _____ Name: Jeffrey Morrow
        (Del) DocuSigned by:

        *Jeff Morrow*
Federal I.D. No.: 22-2970303 _____
        89CD8F75CF53462...

Docusign Envelope ID: 42D1FD01-4C9E-4BD3-92D9-0B3A1C2D33F7

**Schedule A to the Assumption and Assignment Agreement**
**Description of Assigned Asset(s)**

| Store Number | Address | Base | Lease | Options | Purchaser Entity | Vacate | Estimated Cure |
|---|---|---|---|---|---|---|---|

| | | Rent PSF | Expiration Date | Option | | Date | Cure |
|---|---|---|---|---|---|---|---|
| 809 | 1335 W. Walnut Ave. Dalton, GA | $7.25 | 01/31/27 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $0.00 |
| 1012 | 6880 Garners Ferry Rd. Columbia, SC | $7.02 | 01/31/30 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $0.00 |
| 1155 | 125 Highway 332 W. Lake Jackson, TX | $8.50 | 01/31/29 | 5 | Burlington Coat Factory of Texas, L.P. | 2/28/25 | $61,000.00 |
| 1218 | 19142 Montgomery Village Ave. Montgomery Village, MD | $15.00 | 01/31/32 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 3/17/25 | $10,000.00 |
| 1595 | 1400 Merritt Blvd. Dundalk, MD | $8.18 | 01/31/31 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 3/17/25 | $51,000.00 |
| 1742 | 1601 E Price Rd. Brownsville, TX | $5.88 | 01/31/29 | 5 | Burlington Coat Factory of Texas, L.P. | 2/28/25 | $97,000.00 |
| 1805 | 5781 SW Green Oaks Blvd. Arlington, TX | $7.00 | 01/31/30 | 5 + 5 | Burlington Coat Factory of Texas, L.P. | 2/28/25 | $89,000.00 |
| 1809 | 151 VFW Parkway Revere, MA | $9.00 | 01/31/27 | 5 + 5 | Burlington Coat Factory of Texas, Inc. | 3/17/25 | $8,000.00 |
| 4753 | 9500 Montgomery Blvd. NE, Suite A Albuquerque, NM | $10.50 | 01/31/29 | 5 + 5 + 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $0.00 |
| 5118 | 1507 West Mason St. Green Bay, WI | $4.82 | 01/31/26 | 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $0.00 |
| 5238 | 11 McKenna Rd. Arden, NC | $10.00 | 01/31/28 | 5 + 5 + 5 | Burlington Coat Factory Warehouse Corporation | 2/28/25 | $79,000.00 |
| 5144 | 380 Universal Dr. N North Haven, CT | $10.50 | 01/31/29 | 5 | Burlington Coat Factory Warehouse Corporation | 3/17/25 | $0.00 |

A-1

**Schedule B**

GBRP Wiring Instructions