**Exhibit 1**

**Revised Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administrated)<br><br>**Re: Docket No. 1964** |

**ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS-IN-POSSESSION TO ASSUME, ASSIGN AND SELL CERTAIN NON-RESIDENTIAL REAL PROPERTY LEASE**
**[2855 Ridge Road, Rockwall, TX (Store No. 4742)]**

Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, for an order pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006 and 9014, and Local Rule 6004-1, having received a Notice of Designation of Designated Asset from Gordon Brothers Retail Partners, LLC ("**GBRP**") in accordance with Section 2.05(b) of the APA[2] and Paragraph 43 of the Sale Order, with respect to that certain unexpired lease of non-residential real properties for the premises identified in **Exhibit A** hereto (the "**Lease**"); and the Debtors having filed and served a Designated 365 Contract Notice (the "**Designation Notice**") seeking, *inter alia*, (i) to

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used herein and not otherwise defines shall have the meanings ascribed thereto in the Court's *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Lease, and (IV) Granting Related Relief* [D.I. 1556] (the "**Sale Order**").

assume and assign the Lease to Goodwill Industries of Dallas, Inc. (hereinafter, "**Goodwill**"); and (ii) such additional and related relief as provided by the Sale Order; and the Court having determined that the legal and factual bases for the relief requested herein establish just cause for the relief granted herein; and after due deliberation and good and sufficient cause appearing therefor;

**NOW, THEREFORE**, the Court hereby finds as follows:

A. After good and sufficient notice of the Designation Notice having been provided in accordance with the Designation Rights Procedures, and a reasonable opportunity to object or be heard regarding the proposed assumption and assignment of the Lease has been afforded to the applicable 365 Counterparties (each, a "**Landlord**" and collectively, the "**Landlord**") in accordance with the Designation Rights Procedures: and

B. The Court having issued its Letter Ruling on the Objection of Steger Towns Crossing to the Eighth Post-Closing Designation Notice (Related D.I. 1964 and 2066), dated March 31, 2025 [D.I. 2418].

C. The assumption, assignment and sale of the Lease to Goodwill, pursuant to Sections 363 and 365 of the Bankruptcy Code, is in the best interests of the Debtors, their estates and their creditors, and is consistent with the terms of the APA and Sale Order, respectively.

D. Pursuant to Sections 365(b)(1)(C), 365(f)(2)(B) and 365(b)(3) of the Bankruptcy Code, to the extent required under the Sale Order, Goodwill has provided adequate assurance of future performance under the Lease.

E. The assumption and assignment of the Lease to Goodwill is in compliance with Section 365(b)(3) of the Bankruptcy Code.

F. The Assumption and Assignment Agreement, executed as of February 6, 2025, and attached hereto as **Exhibit B** (the "**Assignment Agreement**"), between and among the Debtors and Goodwill was negotiated and entered into in good faith, and from arm's length bargaining positions. Goodwill is hereby found to be a good faith purchaser of the Lease and is found to be entitled to the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT**

1. Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, the applicable Debtor is hereby authorized to assume, sell and assign to Goodwill the Lease, pursuant to the terms and provisions of this Order, the APA, the Sale Order, and the Assignment Agreement, all of the terms of which are hereby approved.

2. In accordance with Section 363 of the Bankruptcy Code, effective as of the occurrence of a closing of the assignment of the Lease under the Assignment Agreement (such date being hereinafter defined as the "**Closing Date**"), the Lease shall be transferred free and clear of any leasehold mortgages, sublease, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, interests, mechanics liens, bills, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances.

3. Upon the entry of this Order and the occurrence of the Closing Date, Goodwill shall be deemed to have assumed and succeeded to the entirety of the Debtors' rights and obligations in and to the Leased which are due and owing from and after the Closing Date and shall have the rights of the tenant thereunder.

4. Upon entry of this Order and the occurrence of the Closing Date, Goodwill is a good faith purchaser and shall be entitled to the protections of Bankruptcy Code Section 363(m).

5. Pursuant to Section 365(b)(l) of the Bankruptcy Code, the Cure Costs[3] owed to the Landlord shall be promptly paid by GBRP and by Goodwill as follows: GBRP shall pay the amount of $30,151.67 and Goodwill shall pay the amount of $69,527.41. Any objection of the Landlord to the assumption or assignment or transfer of the Lease, any Cure Cost, or seeking further adequate assurance of future performance other than that provided in the Assignment Agreement, to the extent not otherwise resolved by agreement, or by agreement contemplated to be heard after the date of any hearing to be held in connection with the Designation Notice, or disposed of by separate order of this Court, is hereby overruled. There shall be no accelerations, assignment fees, increases, or any other fees charged to GBRP, Goodwill, or the Debtors as a result of the assumption and assignment of the Lease. Upon remittance of the Cure Costs by Goodwill to the Landlord pursuant to the terms of this Order, the Landlord shall be barred from asserting any additional cure amounts or other claims with respect to the Lease. For the avoidance of doubt, the Landlord shall be forever (i) barred from objecting to the applicable Cure Costs and from asserting any additional cure or other amounts with respect to the Lease, and the Debtors and Goodwill shall be entitled to rely solely upon the Cure Costs set forth above and (ii) barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, GBRP or Goodwill, or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under the Lease, or that there is any objection or defense to the assumption or assumption and assignment of the Lease. On and after the Closing Date, Goodwill shall be responsible for paying (and shall be entitled to receive any credits for) all amounts outstanding under the Lease due on or after the Closing Date.

[3] The “Cure Costs” total $99,679.08, inclusive of base rent and other charges due under the Lease for the month of May 2025.

6. The proceeds of the Lease sales shall be payable to GBRP in accordance with the APA and Sale Order, respectively.

7. All personal property and furniture, fixtures and equipment ("**FF&E**") remaining in the stores subject to the Lease on or after the Closing Date shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as of the Closing Date. Goodwill may, in its sole discretion and without further order of this Court, utilize and/or dispose of such property without notice or liability to the Debtors or any consenting third parties and, to the extent applicable, the automatic stay is modified to allow such disposition; provided, that the Debtors shall not sell or abandon any property that the Debtors know is not owned by the Debtors; provided, further, that that the Debtors will either (a) provide for the return of such property to the Headquarters (as defined below) or (b) return such property to the applicable lessor, or other owner of the property; provided, however, that the Debtors are not aware of any other parties with interests in the FF&E; provided, further, that that the Debtors will either (a) provide for the return of such property to the Headquarters (as defined below) or (b) return such property to the applicable lessor, or other owner of the property; provided, further, however, that the Debtors may leave in place any property owned by the Landlord at the applicable Store.

8. Any party which did not object within the time set forth in the notice thereof is deemed to consent to the Debtors' assumption and assignment of the Lease, and the satisfaction of the requirements of Section 365 of the Bankruptcy Code. Upon the sale and assignment of the Lease, payment of the Cure Costs and the transfer of the furniture, fixtures and equipment referenced immediately above, as applicable, shall relieve the Debtors from any further liability pursuant to Section 365(k) of the Bankruptcy Code.

9. Solely with respect to the transactions contemplated by this Order and the Assignment Agreement, and except as otherwise agreed between the Landlord and Goodwill, nothing in this Order shall be deemed to annul or vary any provision of the Lease *other than* the following provisions (the "**Unenforceable Provisions**"):

a. a provision in the Lease prohibiting Goodwill's intended use of the premises, including, but not limited to, any covenant, easement, reciprocal easement agreements, operating or redevelopment agreements, licenses, permits, dedications, covenants, or other rights applicable to such real estate that limit or condition the permitted use of the property;

b. a provision in the Lease unreasonably prohibiting necessary alterations to the premises or signage required to convert the premises to Goodwill's intended use; provided such alterations are deemed necessary by Goodwill to conform such store to Goodwill's typical retail store consistent with Goodwill's intended use of the premises;

c. a provision commonly referred to as a "going dark" or "continuous operations" provision, providing in substance for a forfeiture of the Lease or an increase in rent or other penalty by reason of the Debtors' cessation of retail operations before the assignment, and/or any delay by Goodwill in reestablishing retail operations after the assignment, to the extent any such provision does not permit Goodwill to "go dark" until the later of: (i) one hundred twenty (120) days after the Closing Date of the assignment of the Lease, or such later time, when the particular facts and circumstances of a given store warrant additional time, which circumstances shall include, without limitation, the age and condition of the shopping center, the ability to obtain any permits and documents necessary to complete construction, the location of the premises in the shopping center, the shape of

the premises to be assigned, the demographics of the shopping center's location and the overall quality of the shopping center and its existing tenants or (ii) the "going dark period" listed in the applicable Assignment Agreement;

d. a provision conditioning assignment on Landlord consent, or requiring payment to the Landlord as the price of assignment, or granting Landlord the right to recapture the leased premises following the assignment;

e. a provision effecting forfeiture or a modification of any of Goodwill's rights or obligations presently in effect under the Lease upon an assignment by the Debtors of the Lease;

f. a provision conditioning the Debtors' ability to assign their leasehold rights upon any terms not otherwise required under the Bankruptcy Code;

g. a provision in the Lease restricting Goodwill's ability to place reasonable signage on the premises; provided, that such signage is deemed necessary by Goodwill to conform such store to Goodwill's typical retail store consistent with Goodwill's intended use of the premises;

h. a provision requiring the use of a certain tradename;

i. a provision regarding minimum sales revenues required to be satisfied at the premises covered by the Lease; and

j. any radius provisions set forth in the Lease to the extent applicable to any existing Goodwill stores located near the Debtors' premises (but such radius provisions shall at all times apply to any new stores which might be opened by Goodwill in the area of Debtors' premises after the Closing Date).

10. Solely with respect to the transactions contemplated by this Order, the Sale Order,

and the Assignment Agreement, none of the Unenforceable Provisions in the Lease shall apply to Goodwill in any respect and, without limiting the generality of the foregoing, no violation by the Debtors or Goodwill of the Unenforceable Provisions shall constitute an event of default under any of the Lease.

11. Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and Goodwill are authorized to close the sale of the Lease set forth in the Assignment Agreement immediately upon entry of this Order. Time is of the essence in closing the Lease sale transactions referenced herein, and the Debtors and Goodwill intend to close the Lease sale transactions as soon as practicable. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order.

12. Upon entry of this Order, this Order and the findings hereunder shall be binding upon all parties to the Lease and the Assignment Agreement.

13. Upon the entry of this Order and the occurrence of the Closing Date, the Landlord shall accept and honor the assignment of the Lease to Goodwill.

14. The Landlord shall cooperate and expeditiously execute and deliver, within fourteen (14) days of any reasonable requests of Goodwill and at no cost to the Landlord, any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, opening and operating of the properties as contemplated under the Assignment Agreement.

15. Notwithstanding anything to the contrary in this Order, the Assignment Agreement or any side letters, none of the Debtors' insurance policies (and/or any agreements related thereto

between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) shall be abandoned, sold, assigned, or otherwise transferred without the express prior written consent of Goodwill and applicable insurer and/or third-party administrator.

16. This Court shall retain jurisdiction (i) to construe and determine any disputes under this Order, (ii) to enforce and implement the terms and provisions of the Assignment Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, and (iii) to resolve any disputes arising under or related to the Lease sales (but all Landlord/tenant disputes arising after the Closing Date which do not involve the Lease sales, this Order or the Debtors shall not be subject to the jurisdiction of this Court).

17. The Debtors and Goodwill are hereby authorized and directed to execute and deliver any and all documents, and to do all things reasonably necessary, to effectuate the purposes of this Order, to transfer the Debtors' interests in and to the Lease, in accordance with the terms of the Assignment Agreement, and to carry out the terms and conditions of the Assignment Agreement.

18. Goodwill is not a successor in interest to the Debtors (other than with respect to the Debtors' rights and obligations under the Lease first accruing after Goodwill takes assignment thereunder as provided for under the Assignment Agreement), or their bankruptcy estates as a result of Goodwill taking title or possession of the Lease and the subject premises, and Goodwill is not assuming any liabilities or obligations of the Debtors or their bankruptcy estates, except as may be specifically provided for in the Assignment Agreement.

19. This Order shall be effective and enforceable after its entry as provided by Bankruptcy Rule 7062.

20. Any remaining objections to the assignment of the Lease that have not been withdrawn, waived, adjourned, or settled, and all reservations of rights included in such objections, are overruled in all respects and denied.

21. Any provision in the Lease regarding percentage rent to the extent of Debtors' sales prior to the Closing Date shall not be imputed against Goodwill, provided that Goodwill shall be liable for percentage rent for the prorated portion of calendar year 2025 remaining after the Closing Date for a partial calendar year as if the term began on the Closing Date (and Goodwill shall not be liable to pay any percentage rent based upon sales that occurred prior to the Closing Date) and no percentage rent is due and owing by Goodwill for the period prior to the Closing Date.

22. To the extent there is any inconsistency between the terms of this Order and the terms of the Assignment Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

23. To the extent that Goodwill and the Landlord enter into a side letter with respect to the Lease, such side letter shall govern with respect to rights and obligations of Goodwill and the Landlord. For the avoidance of doubt, no side letter shall modify the rights and obligations of any third party without such third party's consent.

24. The failure to specifically include any particular provision of the Assignment Agreement or other related documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Assignment Agreement and all other related documents be authorized and approved in their entirety pursuant to this Order.

25. The Assignment Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification,

amendment, or supplement is consistent with this Order and does not have any adverse effect on the Debtors' estates; provided, further, that the Debtors shall provide any such modification, amendment, or supplement to the Landlord and the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases no less than one (1) day prior to execution of such modification, amendment, or supplement; provided, further, that after the occurrence of the Closing Date, the final versions of the Assignment Agreement any related agreements, documents or other instruments (as modified, amended or supplemented) shall be filed with the Court.

# EXHIBIT A

| Store Number | Address | Base Rent PSF | Lease Expiration Date | Options | Purchaser Entity |
|---|---|---|---|---|---|
| 4742 | 2855 Ridge Road Rockwall, TX 75032 | $8.50 | 1/31/2032 | 4-5 Year | Goodwill Industries of Dallas, Inc. |

# **EXHIBIT B**

## **Assumption & Assignment Agreement**

(see attached)

[Rockwall]

**ASSIGNMENT AND ASSUMPTION AGREEMENT**

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement") is made as of this ___ day of February, 2025 by and between Big Lots Stores – PNS, LLC ("Assignor"), and Goodwill Industries of Dallas, Inc. ("Assignee" and together with Assignor, the "Parties" and each, a "Party").

**RECITALS**

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), jointly administered under case *In re Big Lots, Inc.*, Case No. 24-11967 (Bankr. D. Del. 2024) (the "Chapter 11 Cases");

WHEREAS, Gordon Brothers Retail Partners, LLC ("GBRP"), as buyer, and Big Lots, Inc. and certain of its subsidiaries, as seller (collectively, "Seller"), are parties to that certain Asset Purchase Agreement dated as of January 2, 2025 (the "Purchase Agreement"), pursuant to which Buyer agreed to acquire certain assets, including designation rights with respect to executory contracts and unexpired leases;

WHEREAS, on January 2, 2025, the Court entered an order approving the transactions contemplated under the Purchase Agreement [Docket No. 1556] (the "Sale Order");

WHEREAS, pursuant to Section 2.05(b) of the Purchase Agreement, GBRP has the right to designate certain contracts or leases for assumption and assignment to itself or its designee(s);

WHEREAS, GBRP is conducting "store closing" or other liquidation sales at certain of Seller's retail stores and distribution centers (each, a "GOB Sale") and intends to designate certain of Seller's leases for assumption and assignment effective on or after the conclusion of the applicable GOB Sale (each, a "Vacate Date"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the real property lease listed on the attached Schedule A (referred to as the "Lease") with respect to the premises set forth on Schedule A (the "Premises") pursuant to the terms of the Sale Order, subject to approval by the Bankruptcy Court in the Chapter 11 Cases (the "Bankruptcy Court Approval").

NOW, THEREFORE, in consideration of the premises and the mutual agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

**AGREEMENT**

1. Assignment and Assumption. (a) Upon the latest of the following to occur (the "Assignment Date") (i) the date of the Bankruptcy Court Approval, (ii) the date on which GBRP receives the Purchase Price as set forth below, (iii) the day after the Vacate Date at the Premises; provided, that Assignor or GBRP shall give Assignee no less than seven (7) days' advance written

notice of the Vacate Date, Assignor shall sell, transfer, convey, assign and set over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Lease, and Assignee shall assume and undertake to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Lease.

(b) No later than on the Assignment Date, Assignor shall surrender the premises subject to the Lease (the "Premises") to Assignee, deliver possession thereof to Assignee and deliver all access codes and keys (or written confirmation that Assignee is authorized to change the locks), key codes and alarm codes for the Premises (if practically available) to Assignee.

2. Deposit. Upon the execution of this Agreement by all Parties hereto, Assignee shall deposit the amount of $243,750.00 (the "Good Faith Deposit") in immediately available funds wired to GBRP via the instructions set forth on Exhibit A hereto. Such Good Faith Deposit shall be applied to the Purchase Price (as defined in Section 3 below) at the time such Purchase Price is due and payable hereunder and shall be refundable in accordance with Section 15 hereof.

3. Payment of Purchase Price. Assignee shall, on the business day after the date of the Bankruptcy Court Approval, deliver the purchase price for the Lease set forth on Schedule A attached hereto (the "Purchase Price") in immediately available funds wired to GBRP via the instructions set forth on Exhibit A hereto.

4. Assumption of Liabilities. In addition to assuming all remaining obligations that exist with respect to the Lease, including, but not limited to, accrued but unbilled adjustments for common area maintenance, real estate taxes, and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Lease (such obligations and liabilities, collectively, the "Outstanding Obligations"). Assignor hereby represents to Assignee that (i) to the best of Assignor's knowledge the amount of the Outstanding Obligations are $0.00 as of the date hereof, and (ii) Assignor will timely pay all rent due and payable under the Lease for February 2025.

5. No Further Liability of Assignor. From and after the date hereof, Assignor shall have no further obligations and duties with respect to the Lease.

6. Further Assurances. At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Lease.

7. "As Is Where Is" Transaction. Assignee hereby acknowledges and agrees that except as expressly set forth herein, Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Lease. Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any premises subject to the Lease. Assignee further acknowledges that Assignee has conducted an independent inspection and investigation of the physical condition of premises subject to the Lease and all such other matters relating to or affecting the Lease as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Lease, Assignee is doing so based

upon such independent inspections and investigations. Accordingly, Assignee will accept the Lease "AS IS" and "WHERE IS."

8. Compliance With Law. Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

9. Abandonment. Any personal property remaining at the premises is deemed abandoned and Assignee is free to dispose of or utilize any personal property without further notice or liability to the Debtor or any third parties.

10. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

11. Jurisdiction. The Parties consent to the exclusive jurisdiction of, and entry of final orders and judgments by, the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

12. No Reliance. Except as otherwise provided herein, each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.

13. Construction. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

14. Execution in Counterparts. This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All such counterparts, when so executed, shall be deemed to constitute one final agreement as if one document had been signed by all Parties to this Agreement. Each such counterpart, upon execution and delivery of all counterparts, shall be deemed a complete and original of this Agreement. The Parties hereby each agree that its authorized signatories may receive and review this Agreement via electronic record and may sign this Agreement via electronic digital signature (i.e., DocuSign or similar electronic signature technology), and the Parties may rely on such electronic digital signatures as if they are original signatures by each Party or duly authorized representatives of each Party, and delivery of an executed copy of this Agreement by facsimile or by other electronic means (.pdf) shall be legal and binding and shall have the same full force and effect as if an original executed copy of this Agreement had been delivered. No Party may raise the use of an image transmission device or method or the fact that any signature was

transmitted as an image as a defense to the enforcement of such document.

15. Termination.

(a) Assignee shall have the right, in its sole and absolute discretion, to terminate this Agreement upon the occurrence of any of the following:

(i) The Bankruptcy Court Approval is not provided on or before July 1, 2025 (such date, the "Approval Deadline"); or

(ii) The Bankruptcy Court Approval is not based on or does not incorporate the order agreed to by GBRP and Assignee and filed by GBRP in connection with the approval of the transaction contemplated hereunder; or

(iii) If the Outstanding Obligations are materially greater than as represented by Assignor in Section 4(i), as reasonably determined by Assignee.

(b) In order to exercise its termination right under Section 15(a), Assignee shall, provide written notice to Assignor and GBRP, and GBRP shall within three (3) business days of receipt of Assignee's notice return the Good Faith Deposit in accordance with the wire instructions set forth on Exhibit B attached hereto. Upon a termination of this Agreement in accordance with this Section 15, the Parties shall have no further rights or obligations to each other hereunder.

16. Purchase Price Refund. If after the payment of the Purchase Price Assignor fails to surrender the Premises in accordance with the terms of this Agreement or otherwise fails to comply with its obligations hereunder, Assignee shall provide written notice thereof to GBRP, and GBRP shall be required to return the Purchase Price to Assignee within three (3) business days after the date of Assignee's notice in accordance with the wire instructions set forth on Exhibit B attached hereto, in which event all obligations of Assignee under this Agreement shall terminate upon Assignee's receipt of the Purchase Price and the Parties shall have no further rights or obligations to each other hereunder.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the foregoing Agreement is dated effective as of the date and year first written above.

**BIG LOTS STORES – PNS, LLC**

Signed by:

By: Joshua H. Nanberg

AB5634E80C07429...

Name: Joshua H. Nanberg

Title: VP, Real Estate

**GOODWILL INDUSTRIES OF DALLAS, INC.**

By: [signature]

Name: Timothy R. Heis

Title: President & CEO

With respect to Section 16 only:

**GORDON BROTHERS RETAIL PARTNERS, LLC**

DocuSigned by:

By: Richard P Edwards

8DBA48849AC540D...

Name: Richard P. Edwards

Title: Head of NA Retail

*[Signature page to Assignment and Assumption Agreement (Rockwall)]*

**Schedule A**

Leases, Premises and Purchase Price

| Store Number | Store Name | Tenant/ Assignor | Lease | Address | Premises | Allocated Purchase Price |
|---|---|---|---|---|---|---|
| 4742 | Rockwall Big Lots | Big Lots Stores – PNS, LLC | Lease Agreement made effective as of June 3, 2021, by and between Steger Towne Crossing II, LP, as landlord, and PNS Stores, Inc., (as predecessor-in-interest to Assignor), as tenant, (the "Rockwall Lease") | Steger Towne Crossing, 2855 Ridge Road, Rockwall, TX 75032 | The "Demised Premises" as described in the Rockwall Lease | $975,000.00 |