# **EXHIBIT 1**

**Surreply**

**Davis Polk**

James I. McClammy
+1 212 450 4584
james.mcclammy@davispolk.com

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
davispolk.com

May 11, 2025

Re: *In re Big Lots, Inc.*, No. 24-11967 (JKS) – Debtors' Surreply to HomeView Motion

Honorable J. Kate Stickles
United States Bankruptcy Judge
United States Bankruptcy Court for the District of Delaware
824 North Market Street, 5th Floor
Wilmington, DE 19801

Dear Judge Stickles:

We represent the debtors and debtors in possession (collectively, the "**Debtors**")[1] in connection with the above-referenced chapter 11 cases (the "**Chapter 11 Cases**").  Pursuant to paragraph 3 of the Court's scheduling order entered on March 31, 2025 at D.I. 2429 (the "**Scheduling Order**"), the Debtors respectfully submit this letter surreply (this "**Surreply**") (a) in further opposition to (i) *HomeView Design Inc.'s Motion for Allowance and Immediate Payment of Administrative Expense Claims, Pursuant to 11 U.S.C. §§ 503(b)(1)(A) and 503(b)(9)* [D.I. 2207] (the "**Motion**") filed by HomeView Design Inc. ("**HomeView**") and (ii) *HomeView Design Inc.'s Supplemental Brief in Support of the Allowance and Immediate Payment of its Post-Closing Administrative Expense Claim* [D.I. 2681] (the "**Supplemental Brief**"), and (b) in further support of the Debtors' letter objection, dated as of April 11, 2025 [D.I. 2557] (the "**Objection**").[2]

Nothing in HomeView's Supplemental Brief changes the reality that the Disputed Claim is not entitled to administrative expense status under section 503(b)(1)(A) of the Bankruptcy Code.  Further, as noted in the Objection, even if this Court were to conclude that the Disputed Claim is a claim under section 503(b)(1)(A), the only appropriate treatment of such claim, both based on the facts and equity, is that it would be a Pre-Closing Administrative Expense Claim and must therefore be subject to the Procedures Order.

<u>**ARGUMENT**</u>

***HomeView Does Not Dispute it Never Delivered the Subject Goods to the Debtors, Which is Fatal to its Claim under Section 503(b)(1)(A)***

As set forth in greater detail in the Objection, it is undisputed that HomeView never delivered the relevant goods to the Debtors for which it seeks a Post-Closing Administrative Expense Claim under section 503(b)(1)(A) and the Procedures Order.  Obj. at 3; Mot. at ¶ 15.  HomeView again admits this fact in its Supplemental Brief, but now seeks to shift blame to the Debtors, alleging that the Debtors "wrongfully repudiated the contract."  Supp. Br. at ¶ 50.  But the very same admission that HomeView did not deliver the goods—that is, did not provide any benefit to the estate—is fatal to HomeView's claim.  The Bankruptcy Code

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not otherwise defined in this Surreply shall have the meanings ascribed to such terms in the Objection.

and cases in this district have made that clear, and HomeView's novel arguments cannot overcome the crystal-clear state of the law.  See Obj. at 3 (collecting authorities).

Contrary to HomeView's assertion that the Debtors did not provide any "citation to any on point authority," Supp. Br. at ¶ 36, the Objection cited Judge Walrath's decision in *In re Bluestem Brands, Inc.*, No. 20-10566 (MFW), 2021 Bankr. LEXIS 1980 (Bankr. D. Del. July 27, 2021), which again is instructive here.  There, Judge Walrath stated: "[T]he test for an administrative claim under section 503(b)(1)(A) is whether the goods or services provided post-petition actually benefitted or preserved the estate."  *Id.* at *16.  Contrary to the facts here, "the goods sold by the [v]endors" in *Bluestem Brands* "were **physically received and sold by the Debtors** after the commencement of the case."  *Id.* at *16–17 (emphasis added).  Therefore, Judge Walrath—unlike in this case—was able to conclude that an administrative expense claim was warranted.  *Id.* at * 17.  Accordingly, as the Debtors noted in the Objection, and contrary to HomeView's assertion in its Supplemental Brief that the Debtors lack any case law support, the language of *Bluestem Brands* demonstrates that a valid claim under section 503(b)(1)(A) based on postpetition delivery of goods presupposes that such goods are actually delivered.  Because HomeView admits it has not delivered anything, the Disputed Claim must be denied in full without even reaching the issue of whether it arose pre-closing or post-closing of the GBRP Sale.[3]

***HomeView's Interpretation of the* Reading *Doctrine Overlooks Third Circuit Precedent to the Contrary***

Citing to a hodgepodge of mostly out-of-circuit caselaw, HomeView argues in its Supplemental Brief that the *Reading* doctrine "may be applied in a variety of contexts – including breach of contract claims."  Supp. Br. at ¶ 65; *see Reading Co. v. Brown*, 391 U.S. 471 (1968).  However, HomeView overlooks the clear position of the Third Circuit and courts in this District which have held that the doctrine is a "narrow exception to § 503(b)."  *In re SuperMedia, Inc.*, No. 13-10546 (KG), 2014 Bankr. LEXIS 5170, at *63 (Bankr. D. Del. Dec. 29, 2014).  Moreover, HomeView misses the fact that virtually all cases in the Third Circuit to have considered the doctrine in recent years have limited its applicability to post-petition torts of a debtor.  *See In re Phila. Newspapers, LLC*, 690 F.3d 161, 173 (3d Cir. 2012) (collecting cases and noting "[t]he Supreme Court has held that fairness may call for the allowance of post-petition **tort** claims as administrative expenses if those claims arise from actions related to the preservation of a debtor's estate despite having no discernable benefit to the estate.") (emphasis added) (internal citations omitted); *In re Lucky's Mkt. Parent Co.*, No. 20-10166 (JTD), 2021 Bankr. LEXIS 615, at *35–36 (Bankr. D. Del. Mar. 17, 2021) ("For a claimant to be entitled to an administrative expense claim under the *Reading* Doctrine, it must demonstrate that its allegations support a **tort** cause of action.") (citing *Phila. Newspapers*, 690 F.3d at 173) (emphasis added).[4]

Further, none of the three in-circuit cases cited by HomeView[5] supports its strained interpretation of the *Reading* doctrine.

---

[3] Indeed, the proposition that lacks citation is Homeview's conclusory assertion that the subject goods—which were never delivered—somehow contributed value to the Debtors' estate and allowed them to pursue a sale of their assets—which necessarily excluded such undelivered goods—to GBRP.  Supp. Br. at ¶ 48.

[4] *See also In re Mallinckrodt PLC*, No. 20-12522 (JTD), 2021 Bankr. LEXIS 2887, at *10 (Bankr. D. Del. Oct. 19, 2021) ("Known as the *Reading* doctrine, the [Supreme] Court's holding provides that a post-petition **tort** committed by a debtor-in-possession within the course and scope of its continued operation of the estate's business may, itself, be considered a cost of doing business and is, therefore, entitled to administrative expense priority under section 503(b)(1)(A).") (emphasis added) (internal citations and quotations omitted); *In re Women First Healthcare, Inc.*, 332 B.R. 115, 123 (Bankr. D. Del. 2005) ("So long as the activity of the Debtor was in furtherance of its case, the Court concludes that a **tort** committed by it can generate an administrative claim under *Reading* if fundamental fairness requires.") (emphasis added); *In re SuperMedia, Inc.*, 2014 Bankr. LEXIS at *63 ("In *Reading*, the Supreme Court held that certain **tort** claims may be entitled to administrative expense priority if, and only if, they arise from acts committed by the debtor-in-possession after the bankruptcy filing.") (emphasis added) (internal quotations omitted); *cf. In re Summit Metals, Inc.*, 379 B.R. 40, 55 n.8 (Bankr. D. Del. 2007) (noting, in dicta, that *Reading* "stand[s] for the proposition that a tort committee by a debtor can give rise to an administrative claim," and holding that the claimant's reliance on *Reading* "is misplaced as he has not accused the Debtor of committing a tort.").

[5] *See* Supp. Br. at ¶¶ 62, 63, 65.

- In *Oil, Chem. & Atomic Workers v. Hanlin Group (In re Hanlin Group)*, the court considered whether to extend the *Reading* doctrine to WARN Act claims asserted by terminated union employees. 176 B.R. 329 (Bankr. D.N.J. 1995). Although the court noted that "the *Reading* decision is not limited to tort claims," the two examples it cited in doing so involved claims that are a far cry from the alleged breach of contract claim involved here. *See id.* at 334–35 (citing *In re Charlesbank Laundry, Inc.*, 755 F.2d 200, 203 (1st Cir. 1985) (case involving claims for post-petition legal fees incurred in enforcing an intentional violation of an injunction) and *Carter-Wallace, Inc. v. Davis-Edwards Pharm. Corp.*, 443 F.2d 867 (2d Cir. 1971) (case involving patent infringement claims)).

- In *Executive Sounding Board Associates v. Moshannon Valley Citizens, Inc. (In re Moshannon Valley Citizens, Inc.)*, the court noted that "the reasoning of the *Reading* line of cases has been applied in the context of a debtor's negligence, a debtor's intentional misconduct, or injury to an innocent third party with no prior relationship to the debtor." No. 06-00095 (MDF), 2012 Bankr. LEXIS 1803, at *15 (Bankr. M.D. Pa. Apr. 24, 2012) (citing *In re Old Carco LLC*, 424 B.R. 650, 660 (Bankr. S.D.N.Y. 2012)) (cleaned up). The court subsequently denied the claimant's request for an administrative expense claim based on unpaid legal fees, noting that the claimant "[was] not the kind of innocent third party with no prior relationship to [the debtor] that the *Reading* doctrine was intended to protect. *Id.* at *16. Much like the claimant in *Moshannon Valley*, HomeView here undoubtedly had a prior contractual relationship with the Debtors.

- Finally, in *Energy Future Holdings Corp.*, the Third Circuit declined to consider the appellants' invocation of the *Reading* doctrine, as it was raised for the first time on appeal, and simply mentioned the standard of the doctrine in passing. 990 F.3d 728, 737–38 (3d Cir. 2021).[6] As such, reliance on *Energy Future Holdings* gives little credence to HomeView's interpretation.

Finally, the two circuit-level cases cited by HomeView to support its claim that the *Reading* doctrine applies to breach of contract claims are misplaced.

- *In re Klein Sleep Products, Inc.* involved post-petition rent under a commercial lease, and much of the reasoning turned on the contract being a lease, not a general contract. *Nostas Assocs. v. Costich (In re Klein Sleep Prods.)*, 78 F.3d 18 (2d Cir. 1996).

- HomeView also relies on *Caradon Doors & Windows, Inc. v. Eagle-Picher Industries, Inc. (In re Eagle-Picher Industries, Inc.)*, 447 F.3d 461, 464 (6th Cir. 2006), claiming it supports the application of the *Reading* doctrine to breach of contract claims. However, the only place where *Caradon* references such an application is in its citation to *United Trucking Service v. Trailer Rental Co. (In re United Trucking Service)*, 851 F.2d 159, 162–63 (6th Cir. 1988). But even in *United Trucking*, the Sixth Circuit held that "administrative expenses under § 503 in this case, if allowable, should reflect actual value conferred on the bankrupt estate by reason of wrongful acts or breach of agreement." *Id.* Courts in this district have explicitly criticized *United Trucking*, stating: "Under *United Trucking*, virtually any breach of the rejected lease covenants would be converted to an administrative expense claim. . . . This analysis omits the 'actual, necessary' requirement of section 503(b)(1)(A)." *In re Continental Airlines, Inc.*, 146 B.R. 520, 527–28 (Bankr. D. Del. 1992) (internal citation omitted).

For the foregoing reasons, as well as those set forth in the Objection, the Debtors respectfully submit that the Court should not countenance HomeView's expansive view of the *Reading* doctrine, as doing so would be

---

[6] *Id.* at 737–38 ("Third, [appellant] argues that it is entitled to fees under the Supreme Court's fundamental fairness doctrine set forth in in *Reading Co. v. Brown*, 391 U.S. 471 (1968) (holding that tort judgments stemming from the negligent actions of the bankruptcy receiver are entitled to priority as an administrative expense, thereby creating a narrow exception to the requirement that an applicant must show a benefit to the estate in order to recover administrative fees) . . . Despite multiple opportunities to raise these arguments in the Bankruptcy and District Court, NextEra raises both for the first time on appeal. . . . We therefore decline to address these issues for the first time on appeal and find both arguments waived.") (cleaned up).

inconsistent with the mountain of Third Circuit precedent that such doctrine is a narrow one, primarily reserved for post-petition torts committed by a debtor.

### *While HomeView's Supplemental Brief Raises New Arguments for the First Time, None Satisfy Its Burden Under Section 503(b)(1)(A)*

Each time the Debtors have identified deficiencies in HomeView's arguments in support of the Disputed Claim, HomeView has shifted in a futile attempt to support its legally incorrect position. HomeView first argued in the Motion that it was entitled to a Post-Closing Administrative Expense Claim because "in the post-closing period . . . [it] received purchase orders from the Debtor(s) and did substantial work to fulfill those orders." Mot. ¶ 14. After the Debtors explained, at the March 25, 2025 omnibus hearing, that this claim was clearly incorrect because HomeView's own purported evidence[7] shows the relevant orders being placed prior to January 3, 2025, HomeView pivoted to arguing that the cancellation of the subject orders on January 15, 2025 gave rise to a post-closing breach of contract claim by the Debtors. Mar. 25, 2025 Hr'g Tr. at 15:8–14. HomeView further argued at the same hearing—for the first time—that such alleged breach of contract claim should be considered an administrative expense claim under section 503(b)(1)(A) under the *Reading* doctrine. *Id.* at 18:9–17.

Now, after the Debtors noted the deficiencies in these new arguments in the Objection, HomeView attempts a third bite at the apple in its Supplemental Brief and argues—again for the first time—that a cornucopia of equitable doctrines (unclean hands, equitable estoppel, and waiver) prevents the Debtors from arguing that HomeView did not provide an "actual and necessary" benefit to the Debtors' estate. Supp. Br. at ¶¶ 49–61. Specifically, HomeView argues that these equitable doctrines "bar the Debtors from denying that HomeView provided value," as "the *only* reason that the goods were never delivered to the Debtors is because the Debtors wrongfully repudiated the contract." *Id.* at ¶¶ 49–50 (emphasis in original). Like HomeView's previous arguments, this not only fails, but is also completely irrelevant. HomeView's argument boils down to the suggestion that, because the Debtors promised to pay for the subject goods, they should have to pay for them, and, by having failed to pay for them, the Debtors have committed a "wrongful[]" act preventing the Debtors from raising a defense to HomeView's arguments. This is a strained circular argument that this Court should reject out of hand,[8] and furthermore, it ignores this Court's prior orders and rulings.[9]

HomeView's arguments regarding the law of the case doctrine suffer from similar logical defects and factual misunderstandings. HomeView asserts—incorrectly—that the Debtors' Objection argued that the Debtors are not required to pay Post-Closing Administrative Claims in full. Supp. Br. at ¶¶ 69–70. The Debtors are not arguing for "only" the Disputed Claim to not be paid. Indeed, the Debtors agree with HomeView that the "pre-closing/post-closing demarcation" is the law of the case and that valid Post-Closing Administrative Expense Claims should be paid in full. And the Debtors have repeatedly affirmed this position, which is also set forth in the Procedures Order. *See* Proc. Order ¶ 22; Dec. 30, 2024 Hr'g Tr. at 13:10–14; Dec. 31, 2024 Hr'g Tr. at 18:4–7, 26:4–7. Rather, the Debtors are arguing that the Disputed Claim is not a Post-Closing Administrative Expense Claim because (i) HomeView does not have an administrative claim *at all* because there is not conceivable benefit to the estates, and (ii) even assuming it does (and to the extent it does—

---

[7] For the avoidance of doubt, the Debtors do not stipulate to, or waive any arguments with respect to , the admission of the purchase orders as evidence.

[8] It may actually be a form of the logical fallacy called "begging the question" or "petītiō principiī" in that the argument's premises assumes the conclusion—HomeView seems to be claiming that because the Debtors' actions giving rise to the claim were inequitable, the Debtors are equitably barred from raising a defense to such claim. This is not reasonable.

[9] *See, e.g.*, Dec. 31, 2024 Hr'g Tr. at 230:17–231:1 ("Several objectors argue that all vendor claims should share -- all vendor and administrative claims should share pari passu. That argument fails to capture the superpriority claim of the DIP lenders and their right to payment out of the sale proceeds. Similarly, the landlords' settlement entitled them to stub rent payment under the DIP order was exchanged for certain concessions, including the negotiated 503(c) waiver. And professional fees, which are subject to objection and Court approval, are likewise, entitled to a superpriority claim under the DIP order."); Feb. 26, 2025 Hr'g Tr. at 56:19–21 ("I am going to overrule the objection of the vendors [to entry of the Procedures Order]. The vendors are re-litigating the sale order, the DIP order, and other orders of this Court.").

**Davis Polk**   Honorable J. Kate Stickles

which clearly cannot be the entire stated amount), such claim, at most, accrued as a Pre-Closing Administrative Expense Claim.

*   *   *   *   *

For the reasons set forth in this Surreply and in the Objection, the Debtors respectfully request that the Court deny the portion of HomeView's Motion pertaining to the Disputed Claim. Notwithstanding anything to the contrary herein, the Debtors reserve their rights to contest the allegations raised in the Motion on any other grounds, including at the May 13, 2025 omnibus hearing.

Respectfully yours,

*/s/ James I. McClammy*

James I. McClammy

cc:   Jenny R. Kasen, Kasen Law Group, P.C.
      Robert J. Dehney, Sr., Morris, Nichols, Arsht & Tunnell LLP
      Andrew R. Remming, Morris, Nichols, Arsht & Tunnell LLP
      Daniel B. Butz, Morris, Nichols, Arsht & Tunnell LLP
      Sophie Rogers Churchill, Morris, Nichols, Arsht & Tunnell LLP
      Casey B. Sawyer, Morris, Nichols, Arsht & Tunnell LLP
      Brian M. Resnick, Davis Polk & Wardwell LLP
      Adam L. Shpeen, Davis Polk & Wardwell LLP
      Stephen D. Piraino, Davis Polk & Wardwell LLP
      Ethan Stern, Davis Polk & Wardwell LLP
      Kevin L. Winiarski, Davis Polk & Wardwell LLP

**VIA CM/ECF**