IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 2582** |

**DECLARATION OF MICHAEL F. ROBEY IN SUPPORT OF MOTION OF DEBTORS PURSUANT TO 11 U.S.C. § 105 AND FED. R. BANKR. P. 9019 AUTHORIZING AND APPROVING THE DEBTORS' ENTRY INTO A SETTLEMENT AGREEMENT BETWEEN THE DEBTORS AND THEIR PROPERTY INSURERS**

I, Michael F. Robey, hereby declare as follows:

1. I am a Vice President of Finance for Big Lots, Inc. (together with its affiliated debtors and debtors in possession, the "**Debtors**" or the "**Company**"). I first joined Big Lots in 2020 and have held several positions with the Company prior to my current position.

2. I submit this declaration in support of the *Motion of Debtors Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9019 Authorizing and Approving the Debtors' Entry into a Settlement Agreement between the Debtors and their Property Insurers* [D.I. 2582] (the "**Motion**").[2]

3. Except as otherwise indicated herein, all of the facts set forth in this Declaration are based on my personal knowledge, my review of the relevant documents, or information provided

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion

to me by professionals advising the Company. If called upon to testify, I could and would testify to the facts set herein on that basis. I am over the age of 18 years and am authorized to submit this Declaration.

I.      **The Debtors' Property Policies**

4.      Prior to the Petition Date, the Debtors obtained first party property insurance to protect the Debtors' real property and certain personal property interests insured thereunder. Specifically, the Debtors maintain several such policies with a market of insurers (collectively, the "**Market**"), each of whom cover a percentage of liability on each occurrence insured by the policies.

5.      The Market consists of the following policies (collectively, the "**Property Policies**"):

| Insurer | Policy Number |
|---|---|
| AXA XL/XL Insurance America Inc. | US00065403PR24A |
| Chubb/ACE American Insurance Co. | GPA D38115522 009 |
| Zurich American Insurance Company | ERP0171421-08 |
| AWAC/Allied World Assurance Co. | 0312-9011-1A |
| Allianz Global Risks US Ins Co. | USP00074822 |
| AIG | 62502487 |
| CNA Insurance Company | RMP703483189 |

6.      The Property Policies are occurrence policies that cover the period from June 1, 2022 through June 1, 2023 (the "**Covered Period**"). The Property Policies generally cover losses that occur to certain covered real property and personal property at an insured location during the Covered Period.

7.      I understand that the Property Policies are meant to ensure that the Debtors would be protected for the financial downside of damage that might occur to the Debtors' property, subject to the terms, conditions, and exclusions and up to the applicable limits of liability listed in the Property Policies.

## II.     The Claim and Settlement

8. I understand that, in September 2022, certain of the Debtors' store locations[3] sustained physical damage as a result of the Hurricane Ian storm. Specifically, the Debtors incurred costs related to business interruption as a result of closure of the Damaged Stores, removal of standing water in the Damaged Stores, dumpsters used to remove debris from the Damages Stored, and replacement of certain fixtures that were damaged.

9. As a result of the damage, I understand that, on or about September 27, 2022, the Debtors filed a claim (the "**Claim**") with the Market under its Property Policies in the amount of approximately $482,945 (the "**Claim Amount**").[4] After the Debtors filed the Claim with the Market, I understand that the Debtors continued to discuss the proper amount of the Claim with Sedgwick Claims Management Services, Inc., their claims adjuster (the "**Claims Adjuster**"). I understand that the Claims Adjuster advised the Debtors that the Market's calculated loss for the Damaged Stores was approximately $183,914.

10. Following these discussions with the Claims Adjuster, on or about September 25, 2024, the Debtors presented a revised offer to the Market of $268,302.79 (the "**Settlement Amount**"). It is my understanding that the Market accepted the Settlement Amount, after which the Debtors executed the Settlement Agreement.[5]

11. Upon execution of the Settlement Agreement, it is my understanding that the Market would owe the Debtors the Settlement Amount, whereas the Debtors would release the Market for the Claim and any additional claims that could be asserted by the Debtors under the

---

[3] Specifically, the Debtors sustained physical damage at stores 5389, 561, 559, 5272, and 1801 (collectively, the "**Damaged Stores**").

[4] This Claim amount is net of a $500,000 self-insured retention the Debtors maintained under the Property Policies.

[5] An executed copy of the Settlement Agreement is attached to the Motion as <u>Exhibit A</u>.

3

Property Policies on account of the Damaged Stores, as further set forth in the Settlement Agreement.

12. In my opinion, the Settlement Agreement is reasonable and in the best interests of the Debtors and their estates. Although the Settlement Amount is less than the Debtors' original Claim Amount, the Settlement Amount provides for a payment to the Debtors that is greater than the Market's calculated loss for the Damaged Stores. Moreover, absent the Settlement, the Debtors would likely have to spend more time and resources—including, potentially, litigation—negotiating with the Market on the terms of an acceptable claim amount.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Dated: May 21, 2025
      Columbus, Ohio

By:  /s/ *Michael F. Robey*
     Michael F. Robey
     Vice President, Finance
     Big Lots, Inc.