## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | CHAPTER 11 |
| | § | |
| BIG LOTS, INC, *et al.,*[1] | § | (Jointly Administered) |
| Debtors | § | |
| | § | Case No. 24-11967 (JKS) |

## RESPONSE OF CERTAIN TEXAS TAXING ENTITIES IN OPPOSITION TO DEBTORS' FIRST OMNIBUS OBJECTION (SUBSTANTIVE) TO REDUCED AMOUNT TAX CLAIMS PURSUANT TO 11 U.S.C. §§ 502 AND 505, FED. R. BANKR. P. 3007 AND DEL. L.R. 3007-1

### (Relates to Doc. No. 2633)

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The Certain Texas Taxing Entities[2] (the 'Respondents" or the "Taxing Entities") hereby oppose the *Debtors' First Omnibus Objection (Substantive) to Reduced Amount Tax Claims Pursuant to 11 U.S.C. §§ 502 AND 505, FED. R. BANKR. P. 3007 AND DEL. L.R. 3007-1* (the "Objection") for the reasons set forth herein, and request that this Court overrule Debtors' Objection. The Respondents are similarly situated *ad valorem* property taxing entities within Texas, more particularly described in **Exhibit A**.

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868; Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] The Certain Texas Taxing Entities include: Alief Independent School District, Brazoria County, et al, Brownsville Independent School District, City of Burleson, Burleson Independent School District, Carrollton-Farmers Branch Independent School District, Clear Creek Independent School District, City of Cleburne, Cleburne Independent School District, Cooke County Appraisal District, Fort Bend County Levee Improvement District #2, Fort Bend Harris County Municipal Utility District #81, Fort Bend Independent School District, Frisco Independent School District, Galena Park Independent School District, Garland Independent School District, City of Grapevine, Grapevine-Colleyville Independent School District, Harris County Municipal Utility District #102, Harris County Municipal Utility District #191, Harris County Municipal Utility District #285, City of Houston, City of Lake Worth, and City of Tomball.

## INTRODUCTION

The Taxing Entities are subdivisions of the State of Texas and, as such, are authorized to levy and assess ad valorem taxes on the value of property located within their taxing jurisdiction as of January 1 of each tax year. The Taxing Entities are the holders of secured ad valorem tax claims secured by liens on tangible business personal property located within Texas and owned by Debtors ("the Tax Claims"). By its Objection, the Debtors seek the reduction of the Taxing Entities' Tax Claims for 2024 taxes on certain tangible properties within its jurisdictions (the "Properties"). Debtors ground its Objection on the assertion that the Properties relating to the Tax Claims were overvalued.

## RESPONSE TO RELIEF REQUESTED

## Debtors Do Not Have the Property Parties Before the Court for an Action Under 11 USC §505

The Taxing Entities assert that the respective appraisal districts are at a minimum necessary, if not the exclusive, parties to any action regarding the determination of the valuation of property for *ad valorem* tax purposes. Under Section 6.01(b) of the Texas Property Tax Code appraisal districts are, "…responsible for appraising property in the district for ad valorem tax purposes of each taxing unit that imposes ad valorem taxes on property in the district."

The Respondents have no authority under Texas law to determine or establish the value of the Properties. The Texas Property Tax Code makes clear, for good reason, that there is an unassailable wedge between the appraisal district and the taxing entities regarding the appraisal process: i) "A taxing unit may not employ any person for the purposes of appraising property for taxation purposes except to the extent necessary to perform a contract under Section 6.05(b) of this code." Tex. Tax Ann. § 1.15; ii) "A taxing unit may not intervene in or in any other manner

be made a party, whether as defendant or otherwise, to an appeal of an order of the appraisal review board determining a taxpayer protest under Subchapter C, Chapter 41, if the appeal was brought by the property owner." Tex. Tax Ann. § 42.031(b); and iii) Under Section 6.01(b) of the Texas Property Tax Code an Appraisal District, is "…responsible for appraising property in the district for ad valorem tax purposes of each taxing unit that imposes ad valorem taxes on property in the district." To further illustrate, a member of the governing body or officer or employee of a taxing unit commits a Class A misdemeanor if the person directly or indirectly communicates with the chief appraiser or another employee of the appraisal district in which the taxing unit participates for the purpose of influencing the value at which property is appraised unless the person owns or leases the property that is the subject of the communication. Tex. Tax Ann. § 6.155.

As the valuation of the Properties is not within the scope of Respondents' statutory duties, Debtors have not brought the proper parties before the Court. Respondents generally do not have control over or access to the renditions (the Debtor's annual report of assets held on January 1, 2024), which may have been previously submitted by Debtors, or the appraisal district valuations that Debtors dispute. Respondents are simply "responsible for collecting property taxes for a taxing unit." See Tex. Tax Code § 1.04(15). Only upon adjudication pursuant to the Texas Property Tax Code may the amounts collected by Respondents be revised. *See* Tex. Tax Code § 25.25, and Chapters 41 and 42.

The Taxing Entities assert that the appraisal districts, as the entities that appraised the Properties, have knowledge of the facts material to determinations regarding value, and are the only entities authorized under Texas law to alter the appraisal rolls and are therefore necessary and indispensable parties to the action under FED. R. CIV. P. 12(b)(7) and 19 and FED. R. BANKR. P. 7012 and 7019.

**Debtors Must File Adversary Proceedings to Bring a Proper Action Under 11 USC §505**

As the appraisal districts are not currently parties to the bankruptcy and have not consented to jurisdiction, the only way to properly obtain jurisdiction of the appraisal districts is to file an adversary proceeding under Federal Rules of Bankruptcy Procedure 7003. In order to do so, the Debtors would need to file adversary proceedings against all taxing entities included in this Objection as well as separate adversary proceedings against each individual appraisal district.

Federal Rules of Bankruptcy Procedure Rule 7001(2) requires that an adversary proceeding be brought to "determine the validity, priority, or extent of a lien or other interest in property…." The Taxing Entities hold statutorily created secured liens on the Debtors' business personal property and filed secured Tax Claims. See SLW Capital, LLC v. Mansaray-Ruffin, 530 F.3d 230(3rd. Cir. 2008) holding "…where the Rules require an adversary proceeding—which entails a fundamentally different, and heightened, level of procedural protections—to resolve a particular issue, a creditor has the due process right not to have that issue resolved without one." at 242.

**Request for More Definite Statement Pursuant to Fed.R.Civ.P. 12(e)**

The Debtors request relief under 11 U.S.C. § 505 on the grounds that Debtors believe the fair market values of the Properties to be less than that determined by the appraisal districts. Under Section 23.01(b) of the Texas Property Tax Code,

> "The market value of property shall be determined by the application of generally accepted appraisal methods and techniques. If the appraisal district determines the appraised value of a property using mass appraisal standards, the mass appraisal standards must comply with the Uniform Standards of Professional Appraisal Practice. The same or similar appraisal methods and techniques shall be used in appraising the same or similar kinds of property. However, each property shall be appraised based upon the individual characteristics that affect the property's market value, and all available evidence that is specific to the value of the property shall be taken into account in determining the property's market value."

Case 24-11967-JKS    Doc 2770    Filed 05/21/25    Page 5 of 11

In support of their request for relief, Debtors reference a third-party appraisal analysis (the "Lammert Declaration"), which Debtors used to value the Properties; however, Debtors do not specify, and the Lammert Declaration is completely void of, any information to support a decrease in the 2024 value of the Properties, such as to dates of sales, marketing efforts undertaken in conjunction with any sales, descriptions of the property sold or otherwise disposed of, and the amounts for which they were sold.

The Taxing Entities respectfully request that the Debtors be required to provide a more definite statement as provided under FED. R. CIV. PROC. R. 12(e).

**Debtors May Be Barred from Bringing Actions Under 11 USC §505(c) and §505(a)(2)(A)**

The Debtors may not have properly preserved their rights to seek a judicial review of their tax liability as the property value disputes were resolved through prior adjudication and/or the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired.  11 USC §505(c) prohibits the Court from determining "the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired." See City of Perth Amboy v. Custom Distribution Services, Inc. 224 F.3d 235 (3rd Cir. 2000). The Debtors have failed to prove, or even allege, that they have properly filed protests with each of the appraisal districts by the deadline established under state law, which has now passed.

Further, Section 505(a)(2)(A) of the Bankruptcy Code dictates that the Court may not determine the debtor's tax liability if there has been a prior adjudication by a judicial or administrative tribunal prior to the filing of the bankruptcy case. Respondents have determined that in some jurisdictions, Debtors *have* elected to pursue relief through the administrative

remedies available to taxpayers per Texas state law. The Texas Property Tax Code outlines the process for property owners to dispute an appraisal district's value through the Appraisal Review Board ("ARB"), an entity independent of the appraisal district. "The [L]egislature's intent, as may be determined from the overall tax appraisal protest scheme, is that the appraisal rolls become fixed after property owners have been given adequate time to file their protests." *Willacy Cnty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 40 (Tex. 2018). "Thus, the Legislature has provided only two direct avenues by which an appraisal roll may be changed." *Id.*; *see* Tex. Tax Code Ann. § 25.25(a) ("Except as provided by Chapters 41 [protest] and 42 [appeal from appraisal review board] of this code and by this section, the appraisal roll *may not be changed*." (emphasis added)). Chapter 41 allows a property owner to file a protest for substantive challenges to property appraisals." *Id.*; *see* Tex. Tax Code Ann. § 41.44. "Section 25.25, on the other hand, allows for the correction of errors that do not involve the substantive re-evaluation of a property's market value." *Sebastian Cotton*, 555 S.W.3d at 40; *see* Tex. Tax Code Ann. § 25.25. Under Chapter 42 of the Tax Code, "[a] property owner may also appeal an ARB order resulting from either of those processes." *Sebastian Cotton*, 555 S.W.3d at 40; *see* Tex. Tax Code Ann. §§ 25.25(a), 42.01(a).

Chapter 41 protests involving the appraised value of property, "are subject to strict time limitations." *Sebastian Cotton*, 555 S.W.3d at 40; *see* Tex Tax Code Ann. § 41.44. Generally, the property owner "must file a notice of protest within thirty days of receiving notice of the appraised value." *Sebastian Cotton*, 555 S.W.3d at 40; *see* Tex. tax Code Ann. § 41.44(a)(2) (allowing for protests before June 1 or not later than the 30th day after the property owner received notice under section 25.19, whichever is later).

Section 25.25 allows for a longer period of time to seek changes to the appraisal roll. Under section 25.25(c), the ARB may order changes to the appraisal roll for the five preceding years, but "only under limited circumstances." *Sebastian Cotton*, 555 S.W.3d at 40. The changes under Section 25.25(c) "include only objective and ministerial matters such as clerical errors." *Id.* (citing Tex. Tax Code Ann. § 25.25(c)). Section 25.25(d) does allow for a "substantive re-evaluation of a property's value," but it, too, is limited. *Id.* First, such a correction can be made only if the error resulted in an appraised value that exceeds the correct appraised value by more than one-third. Tex. Tax Code Ann. § 25.25(d). Second, this type of motion must be made before the date the taxes become delinquent, generally, February 1 of the year following the year the taxes were imposed, which was February 1, 2025, with regard to the 2024 taxes. *Id.* § 25.25(d); § 31.02(a).

A property owner may appeal an appraisal review board determination of a protest under Section 41.41 or a motion for correction under Section 25.25. Tex. Tax Code Ann. § 42.01(a)(1)(a)-(b). An appeal must be filed no later than the 60th day after the property owner receives notice of the appraisal review board determination. *Id.* 42.21(a). "Failure to timely file a petition bars any appeal under this chapter." *Id.* Thus, courts have long held that the 60-day filing deadline is jurisdictional. *Houston Copperwood Apts., L.P. v. Harris County Appraisal Dist.*, No. 01-17-00934-CV, 2018 WL 4496248, at *2 10 (Tex. App.—Houston [1st Dist.] Sept. 20, 2018, no pet.) (mem. op.) (citing *Appraisal Review Bd. v. Int'l Church of Foursquare Gospel*, 719 S.W.2d 160 (Tex. 1986)); *see also Harris Cnty. Appraisal Dist. v. Drever Partners, Inc.*, 938 S.W.2d 196, 197 (Tex. App.—Houston [14th Dist.] 1997, no writ) ("Failure to timely file such a petition will deprive the district court of jurisdiction.").

Upon information and belief, Debtors have, in at least some jurisdictions, filed requests with the appraisal districts to correct value under Section 25.25(c) and Section 25.25(d) of the

Texas Property Tax Code. However, in many instances, Debtors failed to appear at the scheduled hearings, resulting in final determinations of value for 2024, and no appeal of the determination is available under state law due to Debtors' non-appearance. As to the other protests filed by Debtors, it appears that Debtors were successful in some instances and unsuccessful in others.  Debtors' successful protests resulted in settlements of reduced values, and in turn, reduced the tax amounts owed.  As such, many of these claims for 2024 taxes have been previously adjudicated and, in some cases, the time to appeal the outcome of their valuation protests may have expired pursuant to Texas state law.

Moreover, Respondents have found that in many jurisdictions, Debtors filed renditions of taxable property under Texas Tax Code Section 22.01, stating Debtors' own opinion of the property's value as of January 1, 2024. Several appraisal districts accepted the Debtors' opinion of value, and as such, the Debtors should be bound by their own admissions of value.

### **RESPONSE AND OBJECTION TO THE LAMMERT DECLARATION**

The proper parties are not before this Court to address the valuation issues raised in the Lammert Declaration. The appraisal districts, not the taxing entities, valued the Properties using the methods established under the Texas Property Tax Code, therefore, the values of the Properties are best determined under the Texas statutory process by the appraisal districts. The valuation suggested by Debtors is incorrect and contrary to Texas state law and any data provided by PTRS, a third party whose employment has not been authorized by this Court, should not be admissible in this case[3].

---

[3] The Respondents note that while Assessment Technologies, Ltd was employed by the estate, the Motion and Objection along with the Lammert Declaration rely on data from third-party Property Tax Research Services, a professional not hired by the estate.

Additionally, the Lammert Declaration is flawed in that it relies on valuation data from the incorrect valuation date. The Texas Tax Code specifies the valuation date as January 1st of the taxable year. Here, the valuation date for the 2024 taxes on the Properties was January 1, 2024. Tex. Tax Code §23.01. In Paragraph 15 of the Lammert Declaration, John Lammert states that Assessment Technologies, Ltd. estimated 2024 values of the properties as of January 1, 2023. Further, §23.1 (b) requires that "each property shall be appraised based upon the individual characteristics that affect the property's market value…" The Lammert Declaration fails to provide an analysis based on each individual store, located in different markets, assessed separately, as of January 1, 2024, using pre-bankruptcy market data.

## LACK OF BENEFIT TO THE ESTATE

Due to the complex nature of appraising property and the unique characteristics of each property included in the Objection, discovery is necessary to fully evaluate each claim objection. The Taxing Entities intend to introduce into evidence all relevant documentation, including, but not limited to, Renditions, Notices of Protest, and Orders Determining Protest. Each tax account listed in the Objection would require its own evidentiary hearing. The costs of necessary extensive discovery and individual evidentiary hearings will likely exceed any savings to the bankruptcy estate. Fee applications filed indicate that co-counsel for Debtors are billing between $735.00 and $2,645.00 hourly. The billable hours required to litigate each tax account exceeds the amount of tax savings, resulting in no net benefit to the estate.

Debtors have filed objections to certain taxing entities' tax claims but not others, despite the taxes being assessed on the same collateral. As the objections are grounded in the assertion that the collateral is over-valued, any reduction in value would affect the taxes for all taxing entities. Therefore, it is unknown if Debtors are going to file additional objections or motions,

causing more uncertainty to the expenses of the estate.

## RESERVATION OF RIGHTS

Respondents reserve their rights to present supplemental information and arguments as might become available after the filing of this Response, including joining and adopting arguments raised by other respondents, to Debtors' Objection.

## PRAYER

WHEREFORE, The Certain Texas Taxing Entities respectfully request this Court overrule the Debtors' Objection and grant them any other such relief as appropriate.

Respectfully submitted,

**CIARDI CIARDI & ASTIN.**

Dated: **21 May 2025**            */s/ John D. McLaughlin, Jr.*
                        _____
                        John D. McLaughlin, Jr. (No. 4123)
                        1204 North King Street
                        Wilmington, Delaware 19801
                        Tel:  (484) 437-2676
                        Fax:  (302) 300-4253
                        jmclaughlin@ciardilaw.com

                        **-and –**

                        **PERDUE, BRANDON, FIELDER,**
                        **COLLINS & MOTT, L.L.P.**

                        */s/ Melissa Valdez*
                        Melissa Valdez
                        Texas State Bar No. 24051463
                        1235 North Loop West, Suite 600
                        Houston, TX 77008
                        mvaldez@pbfcm.com
                        Phone: (713) 862-1860
                        Fax: (713) 862-1429

Mollie Lerew
mlerew@pbfcm.com
Texas State Bar No. 24086631
P.O. Box 8188
Wichita Falls, TX 76307
Phone: (940) 723-4323
Fax: (940) 723-8553

Linda Reece
lreece@pbfcm.com
Texas State Bar No. 24065471
1919 S. Shiloh Rd., Ste 310, LB 40
Garland, TX  75042
Phone: (972) 278-8282

*Attorneys for The Certain Texas Taxing Entities*