IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BIG LOTS, INC., *et al.*, | § | Case No. 24-11967 (JKS) |
| | § | |
| Debtors. | § | Jointly Administered |

**TEXAS PROPERTY TAX AUTHORITIES' RESPONSE TO DEBTORS' FIRST OMNIBUS OBJECTION (SUBSTANTIVE) TO REDUCED AMOUNT TAX CLAIMS PURSUANT TO 11 U.S.C. §§ 502 AND 505, FED. R. BANKR. P. 3007 AND DEL. L.R. 3007-1  (D.I. 2633)**

TO:  THE HONORABLE J. KATE STICKLES,
       UNITED STATES BANKRUPTCY JUDGE,

The **Texas Property Tax Authorities**,[1] by and through their counsel, hereby file this Response to Debtors' First Omnibus Objection (Substantive) to Reduced Tax Claims Pursuant to 11 U.S.C. §§ 502 and 505, Fed R. Bankr. P. 3007 and Del. L.R. 3007-1 (the "**Omnibus Objection**") and would respectfully show as follows:

**Preliminary Statement**

1.  Big Lots, Inc. and certain of its affiliates (the "**Debtors**") are requesting an order from this Court (i) determining market values to establish the basis upon which to compute taxes for tax year 2024 as to the Texas Property Tax Authorities' claims and (ii) modifying or reducing the Texas Property Tax Authorities' claims based on the determination of assessed value of the

---

[1] For purposes of this pleading, the Texas Property Tax Authorities are defined as the following Texas ad valorem tax entities represented by the Linebarger Goggan Blair & Sampson, LLP law firm: Angelina County, Cameron County, City of Frisco, City of Houston, City of Pasadena, City of Stephenville, City of Webster, Cypress-Fairbanks Independent School District, Dallas County, Fort Bend County, Gainesville Independent School District, Galveston County, Grayson County, Greenville Independent School District, and Gregg County.  And individually, the "**Texas Property Tax Authority**".

1

Debtors' property, pursuant to sections 502 and 505 of the Bankruptcy Code, Bankruptcy Rule 3007, and Delaware Local Rule 3007-1.

2.  The Texas Property Tax Authorities will show that:

    a.  the omnibus objection should be overruled since relief under 11 U.S.C. § 505 is premature for some claims and may be time-barred for other claims;

    b.  the county appraisal districts that have exclusive authority under Texas law to assess value of personal property are necessary parties to the relief sought by the Debtors and are not before this Court;

    c.  the valuation methodology relied upon by the Debtors is flawed and inconsistent with Texas law;

    d.  there is no detriment to similarly situated creditors but there is potential detriment to the estate; and

    e.  there is no basis to reduce the taxes pursuant to 11. U.S.C. § 502(b)(3).

## Factual Background

3.  On September 9, 2024 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United State Bankruptcy Court for the District of Delaware.

4.  By Order dated September 10, 2024, all of the above referenced cases were ordered to be jointly administered in Case No. 24-11967; *Big Lots, Inc.*, in the United States Bankruptcy Court for the District of Delaware. [Docket No. 95].

5.  The Texas Property Tax Authorities are tax assessor-collectors for their respective taxing jurisdictions and are holders of secured ad valorem tax claims that are secured by statutory liens on all of the Debtors' business personal property located within the respective Texas Taxing Authority's jurisdiction. The Texas Property Tax Authorities timely filed their secured proofs of

claim (the "**Tax Claims**")[2] for the 2024 property taxes owed by the Debtors and secured by the Debtors' business personal property, including the Debtors' inventory (the "**Property**"). The Debtors paid the Tax Claims in full on or before January 31, 2025.

6. On January 2, 2025, this Court entered an ordered approving the Debtors' sale of the Property.

## Texas Ad Valorem Tax System

7. Throughout the Omnibus Objection, the Debtors blur the clearly distinct statutory functions of the tax assessor-collector such as the Texas Property Tax Authorities, which only calculate and collect a tax, and the appraisal districts, which only grant property exemptions and appraise property for valuation purposes. A review of Texas property tax law is important to demonstrate the constitutionally-mandated functions of each.

8. The Texas Tax Code sets forth the responsibilities of <u>two separate and distinct</u> governmental entities. On one side of this process, there are the appraisal districts that determine the value of the property owner's real and personal property[3]. On the other side, are the taxing units that set the tax rates, assess the taxes <u>based upon the value set by the appraisal districts</u>, and then collect those taxes.

9. Pursuant to Texas law, on January 1 of each tax year, a tax lien attaches to the property (and is automatically perfected) to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on the property. Tex. Tax Code § 32.01 *et seq*. The calculation of a property owner's ad valorem tax liability begins with an appraisal of the value of the owner's personal

---

[2] See Schedule 1 for list of Tax Claims.
[3] Since the Tax Claims at issue do not involve real property taxes, the remainder of this response will reference just personal property taxes.

property by the appraisal district for the county in which the subject property is located. Tex. Tax Code § 6.01 *et seq*. "One of the [Texas] Legislature's primary purposes in enacting the Property Tax Code was to establish a system that yields fair and uniform valuations across the taxing units." *Jim Wells County vs. El Paso Production Oil and Gas Company,* 189 S.W.3d 861, 871 (Tex. App. Hous. [1st Dist.], 2006, pet. denied). "To accomplish this purpose, the Legislature abolished the appraisal authority of the taxing units, established a centralized appraisal district for every county, and charged the appraisal districts with the <u>exclusive responsibility</u> 'for appraising property in the district for ad valorem tax purposes of each taxing unit that imposes ad valorem taxes on property in the district.'" *Id.* (emphasis added) (quoting Tex. Tax Code § 6.01). Put simply, only the appraisal districts can assess the value of property in Texas, not the Texas Property Tax Authorities. *See* Tex. Tax Code § 1.15.

10. Under Texas law, a person is required to render for taxation all tangible personal property used for the production of income that the person owns. Tex. Tax Code § 22.01(a). To render property, a person is to provide a rendition statement (the "**Rendition**") that includes various pieces of information including a description of the property, the property's location and the property owner's good faith estimate of the market value of the property as of January 1 or the historical cost when new and the year of acquisition of the property. *Id.* The Rendition must be delivered to the appraisal district's chief appraiser after January 1 and not later than April 15. *Id.* § 22.23(a). In this case, Renditions were filed by or on behalf of the Debtors as more fully discussed below.

11. As required by the Texas Tax Code, all taxable property is appraised at its market value as of January 1. *Id.* § 23.01(a). With the exception of certain types of inventory such as motor vehicle, heavy equipment or vessel/outboard motor inventory, a property owner may elect to have their

4

inventory appraised at its market value as of September 1 of the year preceding the tax year to which the appraisal applies. *Id*. § 23.12(f). For example, for tax year 2024, if a property owner elects to have their property appraised as of September 1 pursuant to section 23.12(f) then the market value is determined as of September 1, 2023 and not January 1, 2024.[4] In determining the market value of property, the appraisal districts use methodologies prescribed by the Texas Tax Code, which requires the appraisal district to determine the value of property "by the application of generally accepted appraisal methods and techniques and "each property shall be appraised based upon the individual characteristics that affect the property's market value." *Id.* 23.01(b). With respect to personal property, by May 1, or as soon thereafter as practicable, the chief appraiser is required to deliver a clear and understandable written notice to the property owner of the appraised value of the property. *Id.* § 25.19(a). By May 15 or as soon thereafter as practicable, the chief appraiser of each appraisal district shall prepare appraisal records listing all property that is taxable in the district and stating the appraised value of each. *Id.* § 25.01(a). The chief appraiser is then required to submit the completed appraisal records to the appraisal review board (the "**ARB**") for review and determination of protests. *Id.* § 25.22(a). Under the Texas Tax Code, a property owner has remedies to protest or correct the values set by the appraisal district. One of those remedies available to the property owner is to file a motion with the ARB to change the appraisal roll to correct an error that resulted in an incorrect appraised value for the owner's property (a "**Correction Motion**"); however, the error may not be corrected unless it resulted in an appraised value that exceeds by more than one-third the correct appraised value. *Id*. § 25.25(d). If the chief appraiser and the property owner cannot agree to the correction before the 15th day after the date

---

[4] The Texas Property Tax Authorities are trying to determine from the appraisal districts if the Debtors elected to value their property as of September 1, 2023 pursuant to Texas Tax Code § 23.12(f).

the motion is filed, a party bringing the Correction Motion is entitled to a hearing and a determination of the motion by the ARB. *Id*. § 25.25(e).[5]

12. The property owner is then entitled to appeal an order of the ARB determining the Correction Motion. *Id.* § 42.01(a)(1)(C). To appeal the ARB's determination, the property owner must file a petition for review with the district court within 60 days after the party received notice that a final order has been entered from which an appeal may be had. *Id.* § 42.21(a). <u>A petition for review must be brought against the appraisal district</u>. *Id.* § 42.21(b) (emphasis added). Not later than the 45th day after the date an appeal is finally determined, the chief appraiser shall correct the appraisal roll and other records to reflect the final determination of the appeal and certify the change to the tax assessor for each taxing unit. *Id.* § 42.41(a). The tax assessor for each affected taxing unit shall then correct the tax roll for which the assessor is responsible. *Id.* § 42.41(b). If the final determination of an appeal that decreases a property owner's tax liability occurs after the property owner has paid the taxes, the taxing unit shall refund to the property owner the difference between the amount of taxes paid and amount of taxes for which the property owner is liable. *Id.* § 42.43(a). A taxing unit may not send a refund made under this section before the earlier of, the 21st day after the final determination of the appeal; or the date the property owner files the prescribed form with the taxing unit. *Id.* § 42.43(b-1).

13. As shown in the preceding paragraphs, the appraisal of the Debtors' property is completely outside the statutory authority of the Texas Property Tax Authorities. The taxing units such as the Texas Property Tax Authorities are only responsible for assessing taxes, multiplying the appraised

---

[5] Prior to filing this Omnibus Objection,, the Debtors had already started this protest process with the appraisal district by filing Correction Motions with numerous appraisal districts in Texas, which, for some of these Correction Motions, resulted in hearings, an ARB determination, and a reduction of value.

value by the applicable tax rate, and issuing tax bills. *Id.* §§ 6.23, 31.01, *et seq*. The taxing units are not authorized to make the appraisals on which the property owner's tax liability is based and indeed are prohibited by law from employing an appraiser to conduct such valuations. *Id.* § 1.15. The appraisal districts and the tax units are distinct political subdivisions with unique and exclusive statutory duties and those roles may not be interchanged under Texas law. *Wilson v. Galveston County Cent. Appraisal Dist.*, 713 S.W.2d 98 (Tex. 1986).

## Response to Omnibus Objection

**A. Relief May Not be Available Under 11 U.S.C. § 505(a)(2)(B) and 505(a)(2)(C)**

14.     Before the Court can determine whether it should grant the relief requested by the Debtors it must first determine whether there is any statutory bar in doing so. 11 U.S.C. § 505 provides that the Court "may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505(a)(1).

15.     There are though some exceptions to determining tax liability under section 505 that the Texas Property Tax Authorities assert bars the Debtor from relief under section 505 of the Bankruptcy Code. First, section 505(a)(2)(B) provides that the court may not determine any right of the estate to a tax refund, before the earlier of –

   (i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

   (ii) a determination by such governmental unit of such request.

16.     The Debtors fully paid the 2024 taxes and therefore Debtors' allegations would more appropriately be regarded as a determination of a tax refund pursuant to 11 U.S.C. §505(a)(2)(B).

Since a determination by a governmental unit of a refund for inflated values has not been made, a determination of a refund under section 505 is premature. 11 U.S.C. §505(a)(2)(B) does not afford this Court jurisdiction of a refund claim until a certain time after a proper request for such refund has been presented to the governmental unit from which the refund is claimed or a determination regarding the refund has been made by the government unit. As noted earlier, in Texas, a taxing unit may not send a refund before the earlier of, the 21st day after the final determination of the appeal; or the date the property owner files the prescribed form with the taxing unit. Tex. Tax Code § 42.43(b-1). Inasmuch as no refund has been determined to be owed to the Debtor, this Court lacks jurisdiction to determine Debtor's entitlement to any such refund.

17. Second, 11 U.S.C. 505(a)(2)(C) provides that the court may not determine the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankrptcy law has expired. Because the Texas Property Tax Authorities are not party to any of the Correction Motions as those are functions of the appraisal district, they stipulate that they do not know if any time periods have expired but raise this here to reserve and preserve any affirmative defenses they may have under section 505(a)(2)(C) of the Bankruptcy Code. It is possible that if a Correction Motion was filed and a determination made by the ARB, some deadlines to appeal the ARB's determination could have expired prior to filing the Omnibus Objection.[6]

---

[6] The Texas Property Tax Authorities do not have access to the appraisal records but have requested information regarding Correction Motions, hearing dates and disposition of any hearings before the various ARBs.

**B. Appraisal Districts are Necessary Parties and Not Before the Court**

18.     Throughout the Omnibus Objection, the Debtors attack the appraised values of the Property, which is beyond the control of the Texas Property Tax Authorities, but allege nothing with respect to the Tax Claims as it relates to tax rates or any tax calculation errors.  The Debtors allege that the fair market value of the Property on which the Tax Claims are based is inflated; however, the Texas Property Tax Authorities are not the entity to determine appraised value and in fact are prohibited from doing so.  It would be grossly unfair and highly prejudicial to force the Texas Property Tax Authorities to defend a value for which they are not the proper parties to perform such a function. *See In re Psychiatric Hosp.*, 217 B.R. 645, 648 (Bankr.M.D.Fla. 1997) ("There is no question that this Court lacks the power to order the Tax Collector to peform a task which he has no statutory authority to perform," granting the Tax Collector's motion for summary judgement); *See also In re Airport Office Complex, Inc.*, 2012 WL 5955009 at *2 (Bankr.M.D.Pa Nov. 28, 2012) (bankruptcy court acknowledged that the taxing unit's only role is to collect taxes based on the tax rates and the value assessment set by a different government agency and therefore overruled debtor's objection to taxing unit's proofs of claim without prejudice to filing a new claim objection should the value of the property in question be reassessed).

19.     Prior to the filing of the Omnibus Objection, the Debtors had already filed Correction Motions with the various ARBs on the accounts included in the Tax Claims.  Some of those Correction Motions have already been determined and ARB orders issued prior to the filing of the Omnibus Objection, with others either having been determined during the pendency of the Omnibus Objection or set to be heard in the coming days or weeks.  Importantly, there are some accounts where the ARB reduced the value and the Texas Property Tax Entities have already

issued refunds to the Debtors.[7] For those accounts where the value was not reduced, the next step for the Debtors under Texas law would be to file an appeal of the ARB orders by filing their petition for review. Instead of filing their petition for review against the appraisal districts in the applicable Texas state district court, the Debtors filed this Omnibus Objection without providing any notice to the appraisal districts. Final relief under state law cannot be afforded to a taxpayer who disputes value without joining the appraisal district as a party to the cause of action. The Debtors do not get to pick and choose which parts of the Texas Tax Code they want to abide by and wholly ignore other Texas Tax Code sections, specifically, the provision that mandates that the process for seeking value redetermination requires the appraisal district to be present as a party.[8][9] This is an important procedural requirement since the Debtors have already paid the Tax Claims. To the extent any values are lowered, the Texas Property Tax Authorities have to wait for the appraisal districts to update their appraisal rolls and transmit that information to the Texas Property Tax Authorities before any refunds can be issued.

20. In deciding whether the Debtors' requested relief is warranted, this Court must apply Texas law. *See Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 24-25 (2000*)* ("The basic federal rule in bankruptcy is that state law governs the substance of claims"); *See also In re Oxford Management, Inc.,* 4 F.3d 1329, 1334 (5th Cir. 1993) (providing that in the absence of controlling bankruptcy law, the substantive nature of property rights is defined by state law). The Omnibus Objection

---

[7] Galveston County, Parker CAD and two accounts for Tarrant County have been refunded as a result of lowered values. Parker CAD and Tarrant County are not included in this Omnibus Objection but are included in Debtors' Second Omnibus Objection that was filed at docket number 2634.
[8] Tex. Tax Code § 42.21 (a)-(b).
[9] On May 8, 2025, the Debtors filed a Motion to Determine Tax Liability and Stay Proceedings and have listed the appraisal districts on Exhibit 1. [Docket no. 2712]. The Texas Property Tax Authorities contend that a motion that lists the appraisal districts does not confer jurisdiction over them as an adversary would, which is required under the Texas Tax Code.

should be overruled and denied on that basis that the proper and necessary parties to any dispute regarding the assessed fair market value of the Property are not before this Court.

**C. Debtors' Valuation Methodology is Flawed**

21.     If the Texas Property Tax Authorities are forced to defend the assessed values set by the various appraisal districts, the Texas Property Tax Authorities would point out that the Debtors' valuation methodology is flawed and inconsistent with Texas law. Under Texas law, all taxable property is to be appraised at its fair market value as of January 1 by applying generally accepted appraisal methods and techniques and "each property shall be appraised based upon the individual characteristics that affect the property's market value."[10] In this case, the Property is to be valued as of January 1, 2024.

22.     The valuation methodology proposed by ATL is flawed for the following reasons:

a. First, in paragraph 15 of Lammert's Declaration,[11] John Lammert, vice-president for Assessment Technologies, Ltd. ("**ATL**"), stated that ATL estimated the value of the Debtors' property as of January 1, 2023. This valuation is off by a year of when properties are to be assessed under Texas law.

b. Next, ATL admits that it used data from a third-party firm to approximate the market value of the Property. This is problematic for a few reasons. First, any opinion made by a representative of the third-party firm was made without providing the individual's qualifications to form such an opinion. There has been no disclosure of background, training, education and knowledge of Texas property tax appraisals to form any opinion of the Property's market value. Second, ATL admits that some of the data from the third-party firm consists of questionnaires with

---

[10] *Id*. § 23.01(a)-(b).
[11] Any capitalized term not defined herein shall have the meaning originally ascribed it in the Omnibus Objection.

companies in the industry, sales and financial information from various companies, and other resources, all of which is just opinion layered with more opinion and most likely hearsay. ATL has not shown that use of this type of data is a generally accepted appraisal method and technique utilized by the appraisal districts in assessing value.

 c. Third, upon information and belief, ATL was retained by the Debtors in January 2025, after all of the Debtors' property was sold and at least twelve months after the market value of the Property was determined by the appraisal districts. It appears that ATL may be using bankruptcy liquidation values to determine the value of the Property, which is not the proper appraisal methodology under Texas law.  Bankruptcy courts must apply the state substantive law when determining value. *Raleigh*, 530 U.S. at 24-5 ("Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditor's entitlements, but are limited to what the Bankruptcy Code itself provides"); *See also See In re Cable & Wireless USA, Inc*., 331 B.R. 568, 579-80 (Bankr.D.Del. 2005) (using bankruptcy sales as a method to determine a property's fair market value is "fundamentally flawed" and more weight is given to the appraisal methods utilized by the local and state tax assessors)*; In re Quality Beverage Co*., 170 B.R. 310, 313 (Bankr.S.D.Tex. 1994) (Conditions arising after January 1 may not be considered in establishing the market value of property in Texas) (citing *Kirby v. Transcontinental Oil Co*., 33 S.W.2d 472 (Tex.Civ.App. – Waco 1930, writ ref'd).

23. Further evidence that the Debtors are relying on bankruptcy sale values to determine what they believe is the fair market value of the Property can be found in the Renditions they submitted. Notably, in these filings, the Debtors reported higher values to the appraisal districts than the figures the Debtors are now asserting—a year later and after the bankruptcy sale.

**D. There is No Detriment to Other Similarly Situated Creditors**

24.     In paragraph 22 of the Objection, the Debtors assert that if the Tax Claims are not reduced then the Texas Property Tax Authorities will obtain improper recoveries on account of these claims to the detriment of other similarly situated creditors. In actuality, pursuing a reduction of some of these Tax Claims will be detrimental to the estate as it will cost more money than what will be recovered and, in some instances, the tax savings most likely have already been wiped out due to the accrual of billing hours by the professionals in this case.[12] Further, the Texas Property Tax Authorities do not know what ATL is charging the estate, whether it be hourly fees or a contingent fee, but any compensation paid to ATL will further erode any savings to the estate and other similarly situated creditors. To demonstrate this point, column G of Schedule 1 lists the proposed savings for each account. As shown, there are some accounts where the proposed savings to the estate is less than $1,000, several more where the potential savings is less than $2,000, and one account where the Debtors propose to pay more tax than what was due. Numerous Tax Claims are listed in the Omnibus Objection and for some of those Tax Claims, there are more than one account. The Texas Property Tax Entities will require discovery for each account to determine how ATL arrived at the values. Each account then will require a separate evidentiary hearing regading the appraisal methodology used for that particular account/store location.

25.     Further, the Texas Property Tax Authorities have already refunded the Debtors for some accounts where the value was reduced as a result of the Correction Motions but the Debtors have

---

[12] The information gleaned from reviewing fee applications that have been filed by Debtors' counsel in this case emphasizes this point.

13

not removed these accounts from the Omnibus Objection.[13] Unless, of course, the Debtors are asserting that even more reductions should occur on these accounts.

**E. The Tax Claims Do Not Exceed the Value**

26. In paragraph 16 of the Omnibus Objection, the Debtors misquote the latter part of 11 U.S.C. § 502(b)(3) wherein they state that a claim may be disallowed "if such claim is for a tax assessed against property of the estate, such claim exceeds the *reasonable value of such services*." (emphasis added). Section 502(b)(3) actually provides that a claim can be disallowed "if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property." The Tax Claims should not be reduced on the basis of section 502(b)(3) of the Bankruptcy Code since the Tax Claims do not exceed the value of the Property that came into the estate.

## Conclusion

27. Based upon the preceding paragraphs, it is clear the Debtors have not overcome the prima facie validity of the Tax Claims nor have they provided any evidence to rebut the presumption that the Tax Claims are correct. *See In re Cable & Wirelss USA, Inc*., 331 B.R. at 579 ("property assessments made by the proper tax authority are presumed correct") (citing *In re A WB Assocs., G.P*., 144 B.R. 270, 278-79 (Bankr.E.D.Pa. 1992)   For the various reasons articulated herein, the Omnibus Objection should be overruled and all relief denied.

## Reservation of Rights

28. The Texas Property Tax Authorities are aware of other taxing units that are the subject of a pending Omnibus Objection and are similarly situated to the Texas Property Tax Authorities.

---

[13] The accounts where refunds have been issued are noted in Schedule 1 attached to this response.

The Texas Property Tax Authorities expressly join and incorporate any and all arguments and defenses asserted by the other taxing units or affected parties. The Texas Property Tax Authorities further reserve the right to supplement their response, including any affirmative defenses, to the Omnibus Objection should additional information become available to the Texas Property Tax Authorities.

WHEREFORE, PREMISES CONSIDERED, the Texas Property Tax Authorities respectfully request this Court enter an order overruling the Omnibus Objection, deny all the Debtors' requested relief, and for such other and further relief, at law or in equity, as is just.

Dated: **May 21, 2025**

Respectfully submitted,

**CIARDI CIARDI & ASTIN**

*/s/ John D. McLaughlin, Jr.*
_____
John D. McLaughlin, Jr. (No. 4123)
1204 North King Street
Wilmington, Delaware 19801
Tel: (484) 437-2676
Fax: (302) 300-4253
jmclaughlin@ciardilaw.com

- and -

**LINEBARGER GOGGAN BLAIR & SAMPSON, LLP**

*/s/ Tara L. Grundemeier*
Tara L. Grundemeier
Texas State Bar No. 24036691
4828 Loop Central Drive; Suite 600
Houston, Texas 77081
(713) 844-3478- *Telephone*
(713) 844-3503 – *Telecopier*
tara.grundemeier@lgbs.com