**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | § | CHAPTER 11 |
| | § | |
| BIG LOTS, INC, *et al.,*[1] | § | (Jointly Administered) |
| Debtors | § | |
| | § | Case No. 24-11967 (JKS) |

**CERTAIN TEXAS TAXING ENTITIES' OBJECTION TO MOTION OF DEBTORS TO DETERMINE TAX LIABILITY AND STAY PROCEEDINGS**

(Relates to Doc. No. 2712)

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

NOW COME the Certain Texas Taxing Entities[2] (the "Taxing Entities"), and file this Objection to the Debtors' Motion to Determine Tax Liability and Stay Proceedings (the "Motion"), and respectfully shows as follows:

**I. BACKGROUND**

1.     By their Motion, the Debtors seek the redetermination of market value by this Court,

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] The Certain Texas Taxing Entities include: Alief Independent School District, Brazoria County, et al, Brownsville Independent School District, City of Burleson, Burleson Independent School District, Carrollton-Farmers Branch Independent School District, Clear Creek Independent School District, City of Cleburne, Cleburne Independent School District, Cooke County Appraisal District, Fort Bend County Levee Improvement District #2, Fort Bend Harris County Municipal Utility District #81, Fort Bend Independent School District, Frisco Independent School District, Galena Park Independent School District, Garland Independent School District, City of Grapevine, Grapevine-Colleyville Independent School District, Harris County Municipal Utility District #102, Harris County Municipal Utility District #191, Harris County Municipal Utility District #285, City of Houston, City of Lake Worth, City of Tomball, Hunt County, et al., Johnson County, Kerrville Independent School District, Klein Independent School District, Lubbock Central Appraisal District, Midland County, Nacogdoches County, et al., Plano Independent School District, Potter County Tax Office, Randall County Tax Office, Reid Road Municipal Utility District 1, Richardson Independent School District, Titus County Appraisal District, et al., Tomball Independent School District, Tyler Independent School District, Weslaco Independent School District, Wichita County Tax Office.

pursuant to 11 U.S.C. §505, of certain tangible business personal property owned by Debtors with regard to the 2024 and 2025 tax years, and to stay all state and administrative proceedings.

2.        The Taxing Entities are political subdivisions of the State of Texas and, as such, are required by the constitution of the State of Texas to levy and assess ad valorem taxes on all real and business personal property located within their respective taxing jurisdictions as of January 1 of each tax year. Pursuant to Texas law, a lien automatically attached to Debtors' business personal property located within its' taxing jurisdictions on January 1 of each year to secure payment of all taxes, penalties, and interest ultimately imposed on the Debtors' property. *In re Winn's Stores, Inc.*, 177 B.R. 253 (Bankr. W.D. Tex. 1995); *Central Appraisal District of Taylor County v. Dixie-Rose Jewels, Inc.*, 894 S.W.2d 841 (Tex. App.-Eastland 1995).

3.        The Taxing Entities hold claims for the 2024 and 2025 ad valorem taxes against the business personal property that the Debtor's seek to revalue (the "Property"). These claims are secured by prior perfected continuing enforceable tax liens upon the Property, as provided by Sections 32.01 and 32.05(b) of the Texas Property Tax Code.

## RESPONSE TO RELIEF REQUESTED

**Debtors Must File Adversary Proceedings to Bring a Proper Action Under 11 USC §505**

4.        As the appraisal districts are not currently parties to the bankruptcy and have not consented to jurisdiction, the only way to properly obtain jurisdiction of the appraisal districts is to file an adversary proceeding under Federal Rules of Bankruptcy Procedure 7003. In order to do so, the Debtors would need to file adversary proceedings against each appraisal district as separate adversary proceedings.

5.        Federal Rules of Bankruptcy Procedure Rule 7001(2) requires that an adversary proceeding be brought to "determine the validity, priority, or extent of a lien or other interest in property…."

The Taxing Entities hold statutorily created secured liens on the Debtors' business personal property and filed secured Tax Claims. See *SLW Capital, LLC v. Mansaray-Ruffin*, 530 F.3d 230, 242 (3rd. Cir. 2008), which held that "…where the Rules require an adversary proceeding—which entails a fundamentally different, and heightened, level of procedural protections—to resolve a particular issue, a creditor has the due process right not to have that issue resolved without one."

**Debtors May Be Barred from Bringing Actions Under 11 USC §505(c) and §505(a)(2)(A)**

6.      The Debtors may not have properly preserved their rights to seek a judicial review of their tax liability as the property value disputes were resolved through prior adjudication and/or the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired.  11 USC §505(c) prohibits the Court from determining "the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired." See *City of Perth Amboy v. Custom Distribution Services, Inc.* 224 F.3d 235 (3rd Cir. 2000). The Debtors have failed to prove, or even allege, that they have properly filed protests with each of the appraisal districts by the deadline established under state law, which has now passed.

7.      Further, Section 505(a)(2)(A) of the Bankruptcy Code dictates that the Court may not determine the debtor's tax liability if there has been a prior adjudication by a judicial or administrative tribunal prior to the filing of the bankruptcy case. The Taxing Entities have determined that in some jurisdictions, Debtors *have* elected to pursue relief through the administrative remedies available to taxpayers per Texas state law.

8.      The Texas Property Tax Code outlines the process for property owners to dispute an appraisal district's value through the Appraisal Review Board ("ARB"), an entity independent of

the appraisal district. "The [L]egislature's intent, as may be determined from the overall tax appraisal protest scheme, is that the appraisal rolls become fixed after property owners have been given adequate time to file their protests." *Willacy Cnty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 40 (Tex. 2018). "Thus, the Legislature has provided only two direct avenues by which an appraisal roll may be changed." *Id.*; *see* Tex. Tax Code Ann. § 25.25(a) ("Except as provided by Chapters 41 [protest] and 42 [appeal from appraisal review board] of this code and by this section, the appraisal roll ***may not be changed***." (emphasis added)). Chapter 41 allows a property owner to file a protest for substantive challenges to property appraisals." *Id.*; *see* Tex. Tax Code Ann. § 41.44. "Section 25.25, on the other hand, allows for the correction of errors that do not involve the substantive re-evaluation of a property's market value." *Sebastian Cotton*, 555 S.W.3d at 40; *see* Tex. Tax Code Ann. § 25.25. Under Chapter 42 of the Tax Code, "[a] property owner may also appeal an ARB order resulting from either of those processes." *Sebastian Cotton*, 555 S.W.3d at 40; *see* Tex. Tax Code Ann. §§ 25.25(a), 42.01(a).

9.      Chapter 41 protests involving the appraised value of property, "are subject to strict time limitations." *Sebastian Cotton*, 555 S.W.3d at 40; *see* Tex Tax Code Ann. § 41.44. Generally, the property owner "must file a notice of protest within thirty days of receiving notice of the appraised value." *Sebastian Cotton*, 555 S.W.3d at 40; *see* Tex. tax Code Ann. § 41.44(a)(2) (allowing for protests before June 1 or not later than the 30th day after the property owner received notice under section 25.19, whichever is later).

10.      Section 25.25 allows for a longer period of time to seek changes to the appraisal roll. Under section 25.25(c), the ARB may order changes to the appraisal roll for the five preceding years, but "only under limited circumstances." *Sebastian Cotton*, 555 S.W.3d at 40. The changes under Section 25.25(c) "include only objective and ministerial matters such as clerical errors." *Id.* (citing

4

Tex. Tax Code Ann. § 25.25(c)). Section 25.25(d) does allow for a "substantive re-evaluation of a property's value," but it, too, is limited. *Id.* First, such a correction can be made only if the error resulted in an appraised value that exceeds the correct appraised value by more than one-third. Tex. Tax Code Ann. § 25.25(d). Second, this type of motion must be made before the date the taxes become delinquent, generally, February 1 of the year following the year the taxes were imposed. In this instance, February 1, 2025 was the delinquency date with regard to the 2024 taxes. *Id.* § 25.25(d); § 31.02(a).

11.      A property owner may appeal an appraisal review board determination of a protest under Section 41.41 or a motion for correction under Section 25.25. Tex. Tax Code Ann. § 42.01(a)(1)(a)-(b). An appeal must be filed no later than the 60th day after the property owner receives notice of the appraisal review board determination. *Id.* 42.21(a). "Failure to timely file a petition bars any appeal under this chapter." *Id.* Thus, courts have long held that the 60-day filing deadline is jurisdictional. *Houston Copperwood Apts., L.P. v. Harris County Appraisal Dist.*, No. 01-17-00934-CV, 2018 WL 4496248 (Tex. App.—Houston [1st Dist.] Sept. 20, 2018, no pet.) (mem. op.) (citing *Appraisal Review Bd. v. Int'l Church of Foursquare Gospel*, 719 S.W.2d 160 (Tex. 1986)); *see also Harris Cnty. Appraisal Dist. v. Drever Partners, Inc.*, 938 S.W.2d 196, 197 (Tex. App.—Houston [14th Dist.] 1997, no writ) ("Failure to timely file such a petition will deprive the district court of jurisdiction.").

12.      Upon information and belief, Debtors have, in at least some jurisdictions, filed requests with the appraisal districts to correct value under Section 25.25(c) and Section 25.25(d) of the Texas Property Tax Code. However, in many instances, Debtors failed to appear at the scheduled hearings, resulting in final determinations of value for the 2024 tax year, and no appeal of the determination is available under state law due to Debtors' non-appearance. As to the other protests

filed by Debtors, it appears that Debtors were successful in some instances and unsuccessful in others.  Debtors' successful protests resulted in settlements of reduced values, and in turn, reduced the tax amounts owed.  As such, many of these claims for 2024 taxes have been previously adjudicated and, in some cases, the time to appeal the outcome of their valuation protests may have expired pursuant to Texas state law.

13.     Moreover, Respondents have found that in many jurisdictions, Debtors filed renditions of taxable property under Texas Tax Code Section 22.01, stating Debtors' own opinion of the property's value as of January 1, 2024. Several appraisal districts accepted the Debtors' opinion of value, and as such, the Debtors should be bound by their own admissions of value.

## LACK OF BENEFIT TO THE ESTATE

14.     Due to the complex nature of appraising property and the unique characteristics of each property included in the Motion, discovery is necessary to fully evaluate each property account individually. The Taxing Entities intend to introduce into evidence all relevant documentation, including, but not limited to, Renditions, Notices of Protest, and Orders Determining Protest. Each tax account listed in the Objection would require its own evidentiary hearing. The costs of necessary extensive discovery and individual evidentiary hearings will likely exceed any savings to the bankruptcy estate. Fee Applications filed indicate that co-counsel for Debtors are billing between $735.00 and $2,645.00 hourly. The billable hours required to litigate each tax account exceed the amount of tax savings, resulting in no net benefit to the estate.

15.     In addition to the Motion, the Debtors have filed objections to Certain Taxing Entities' tax claims but not others, despite the taxes being assessed on the same collateral. A revaluation of property taxed by multiple entities but not equally objected to creates an inequity. As the objections are grounded in the assertion that the collateral is over-valued, any reduction in value would impact

the taxes for all taxing entities. Therefore, it is unknown if Debtors are going to file additional objections or motions, causing more uncertainty to the expenses of the estate.

16.    The Debtors are also requesting value determinations for the 2025 tax year. Property is valued on January 1 of each year and thus was valued as of January 1, 2025 for the 2025 tax year. The taxes for 2025 come due when billed in October of 2025. The estate owned the Property for a matter of days in 2025 and is, at most, responsible for only that *pro rata* portion of the 2025 taxes. Additionally, the Asset Purchase Agreements provide for the purchasers to assume the 2024 taxes. A revaluation for 2025 will result, in at most, minimal savings to the estate, in some cases a few dollars. The majority, if not all, of the savings will be passed on to the purchasers. Therefore, the estate is spending considerable money prosecuting this Motion for no net benefit to the estate.

**OBJECTION TO MOTION TO STAY PROCEEDINGS**

17.    In Paragraph 25 of the Motion, Debtors allege that participation in state and administrative proceedings would result in unnecessary costs and require extensive professional time. However, Debtors fail to acknowledge the greater costs required if the Court grants the Debtors' motion to determine value and stay any pending state and administrative proceedings. Each tax account listed in the Motion requires an individual evidentiary hearing. Discovery is necessary to fully evaluate each property. The costs of necessary extensive discovery, the filing of adversary proceedings against each appraisal district, and individual evidentiary hearings for each property will likely exceed any savings to the bankruptcy estate.

18.    In many cases, the Debtors initiated administrative proceedings and have either already obtained favorable determinations or failed to appear and prosecute their protests. Granting a stay of the current proceedings only delays the process of redetermination further. In many cases, the Debtors could have already resolved their issues had they not sat on their rights. Additionally, the

administrative proceeds are much less costly to the Debtor and the estate. The estate gains no benefit from the stay of the proceedings that they initiated.

**RESPONSE AND OBJECTION TO THE LAMMERT DECLARATION**

19.     The Debtors' Motion relies solely on a third-party appraisal analysis (the "Lammert Declaration") in its contention that the appraisal districts have miscalculated market values. However, the Debtors and the Lammert Declaration fail to provide any specific information regarding the individual properties at issue or any evidence in support of Debtors' Asserted Market Values.

20.     The Taxing Entities further assert that the relief requested in the Motion is not proper and should not be the subject of motion practice. The Taxing Entities disagree with Debtors' assertions that the property valuations are erroneous. The issues raised in the Motion are significant to the Taxing Entities and should not be rushed through without proper discovery and preparation, which will be difficult to accomplish within the usual timeframes of motion practice.

**REQUEST FOR ABSTENTION OF COURT'S DISCRETIONARY AUTHORITY TO
DETERMINE TAX LIABILITY**

21.     Even though Bankruptcy Court jurisdiction typically encompasses jurisdiction to hear and determine the amount of tax liabilities of a debtor, a Court can abstain from considering the matter pursuant to 28 U.S.C. §1334(c), or otherwise decline to exercise discretion to hear the matter.  The Taxing Entities believe that abstention is in the best interest of all parties.

22.     The Debtors' Motion perhaps alludes to the inclusion of the appraisal districts as parties to the action; however, the Motion does not directly implicate the appraisal authorities and instead, allocates the burden of defending the value to the Taxing Entities. The Taxing Entities stand to face significantly reduced ad valorem property tax claims, despite lacking authority to make changes to the appraisal roll.

23.     The Texas Tax Code is a classic example of a "pervasive regulatory scheme" evidencing a legislative intent to vest the appraisal district with exclusive jurisdiction. *Jim Wells County vs. El Paso Production Oil and Gas Company*, 189 S.W.3d 861, 871 (Tex. App. Hous. [1st Dist.], 2006, pet. denied). One of the Legislature's primary purposes in enacting the Property Tax Code was to establish a system that yields fair and uniform valuations across the taxing units. *Id.*

24.     To accomplish this purpose, the Texas Legislature established a centralized appraisal district for every county and charged the appraisal districts with the exclusive responsibility for appraising property in the district for ad valorem tax purposes for each taxing unit that imposed ad valorem taxes. *Id.*; Tex. Tax Code § 6.01.  In contrast, taxing units only levy taxes, collect taxes, or issue refunds - they do not value property for tax purposes.  Tex. Tax Code §6.23; 42.43.  The taxing units have nothing to do with setting the tax value and indeed are prohibited by law from even employing an appraiser to conduct such valuations. *Id.* §1.15.

25.     Given the limitations on the Taxing Entities' ability to defend the appraisal districts' valuation of the Property, the Taxing Entities would be severely prejudiced if the Court were to exercise its jurisdiction over this matter. This potential prejudice to the appraisal districts' and the Taxing Entities' interests weighs in favor of abstention.

26.     Additionally, upon information and belief, pursuant to the information available to the Taxing Entities at this time, the Debtors have previously filed, and in some instances settled, valuation protests regarding their 2024 and/or 2025 values within many of the Taxing Entities' jurisdictions with the appropriate appraisal districts pursuant to administrative remedies available to taxpayers per Texas state law. As such many of these values have been previously adjudicated or the period for contesting the value has expired pursuant to nonbankruptcy law, and the Debtors are barred in these instances from requesting relief under Section 505(a)(2)(A) and (C).

**RESERVATION OF RIGHTS**

27.      The Taxing Entities have exercised their best efforts to utilize the information that is

currently available to them in order to file an adequate formal response to the Motion and the

Taxing Entities hereby reserve their right to amend and/or supplement this formal response to

include any further relevant information that may become available to them.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, the Taxing Entities request this Honorable

Court to deny the relief requested in the Motion, uphold the 2024 and 2025 appraised values, and

for further relief as is just and proper.

**Dated:** *22 May 2025*

Respectfully submitted,

**CIARDI CIARDI & ASTIN**

*/s/ John D. McLaughlin, Jr.*

———————————————————
John D. McLaughlin, Jr. (No. 4123)
1204 North King Street
Wilmington, Delaware 19801
Tel: (484) 437-2676
Fax: (302) 300-4253
jmclaughlin@ciardilaw.com

-and –

**PERDUE, BRANDON, FIELDER,
COLLINS & MOTT, L.L.P.**

*/s/ Melissa Valdez*
Melissa Valdez
Texas State Bar No. 24051463
1235 North Loop West, Suite 600
Houston, TX 77008
mvaldez@pbfcm.com
Phone: (713) 862-1860

10

Fax: (713) 862-1429
Mollie Lerew
mlerew@pbfcm.com
Texas State Bar No. 24086631
P.O. Box 8188
Wichita Falls, TX 76307
Phone: (940) 723-4323
Fax: (940) 723-8553

Linda Reece
lreece@pbfcm.com
Texas State Bar No. 24065471
1919 S. Shiloh Rd., Ste 310, LB 40
Garland, TX 75042
Phone: (972) 278-8282

**Attorneys for The Certain Texas Taxing Entities**