IN THE UNITED STATES BANKJRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al*.,[1] | Case No. 24-11967 (JKS) (Jointly Administered) |
| Debtors. | **Re: D.I. 2712** Objection Deadline: May 22, 2025 Hearing: June 26, 2025 at 1:00 p.m. |

**OBJECTION OF TAX APPRAISAL DISTRICT OF BELL COUNTY, BOWIE CENTRAL APPRAISAL DISTRICT, BROWN COUNTY APPRAISAL DISTRICT, COMAL APPRAISAL DISTRICT, FORT BEND CENTRAL APPRAISAL DISTRICT, HARRISON CENTRAL APPRAISAL DISTRICT, MCLENNAN CENTRAL APPRAISAL DISTRICT, MIDLAND CENTRAL APPRAISAL DISTRICT, TRAVIS CENTRAL APPRAISAL DISTRICT, AND CENTRAL APPRAISAL DISTRICT OF TAYLOR COUNTY IN OPPOSITION TO MOTION OF DEBTORS TO DETERMINE TAX LIABILITY AND STAY PROCEEDINGS (D.I. 2712)**

**TO THE HONORABLE J. KATE STICKLES:**

Tax Appraisal District of Bell County, Bowie Central Appraisal District, Brown County Appraisal District, Comal Appraisal District, Fort Bend Central Appraisal District, Harrison Central Appraisal District, McLennan Central Appraisal District, Midland Central Appraisal District, Travis Central Appraisal District, and Central Appraisal District of Taylor County (collectively, the "**McCreary entities**") hereby file this Objection to the *Motion of Debtors to Determine Tax Liability and Stay Proceedings,* D.I. 2712, (the "**Motion**"). In support, the McCreary entities show as follows:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

1

**CONSENT STATEMENT**

1. The McCreary entities confirm their consent to the Court entering a final order in connection with the Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**AGREED RESOLUTIONS**

2. The Motion as it pertains to the following McCreary entities' **2025** valuations has been resolved by agreement between the Debtors and the applicable appraisal district:

| Appraisal District | Account No. | Agreed Market Value |
|---|---|---|
| Bowie | 40900010315 | $229,629.00 |
| Brown | P2003-5331-01 | $227,210.00 |
| Comal | 2019967000000 | $233,240.00 |
| McLennan | 48B136680 | $265,340.00 |
| Midland | P000026278 | $330,990.00 |
| Taylor | P5399094700 | $241,599.00 |
| Travis | 432650 | $342,335.00 |

**SUMMARY OF ISSUES**

3. The Debtors are challenging the tax year 2024 and 2025 assessed market values of their business personal property in certain of their former Texas stores. This includes stores that were located within the McCreary entities' jurisdictions. Tax assessment amounts are a multiplier of the assessed market value of the property and the established tax rates. The debtors do not challenge the tax rates. The debtors' asserted bases for relief are Sections 105(a) and 505 of title 11 of the United States Code (the "**Bankruptcy Code**").

4. The McCreary entities deny the debtors' allegations that they miscalculated the assessed market values, deny that the debtors' asserted market values are correct under applicable nonbankruptcy law, and seek an order from this Court denying the relief sought by the debtors except as to the agreed resolutions set forth above. The McCreary entities have properly

established the assessed market values in accordance with the requirements of the Texas Tax Code, which governs Texas property tax law.

## THE MCCREARY ENTITIES

5. The McCreary entities are appraisal districts, political subdivisions of the State of Texas, established in the named counties and responsible for appraising taxable property for ad valorem tax purposes of each taxing unit that imposes ad valorem taxes on property therein. Tex. Tax Code § 6.01. "The appraisal district's boundaries are the same as the county's boundaries." Tex. Tax Code § 6.02(a). A chief appraiser is the chief administrator of an appraisal office. Tex. Tax Code § 6.05. The ad valorem taxes provide funding to core county services such as public schools, roads, infrastructure, public safety, parks, and libraries. Tangible personal property is taxable property. Tex. Tax Code § 11.01.

## DEBTORS MAY BE BARRED FROM DETERMINATION OF TAX LIABILITY UNDER 11 U.S.C. §505 AS TO ONE OR MORE OF THE MCCREARY ENTITITES

6. Pursuant to § 505(a)(2)(A) of the Bankruptcy Court, the Court may not determine "the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case" under Title 11 of the Bankruptcy Code. Further, pursuant to § 505(a)(2)(C), the Court may not determine "the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired."

7. A mere fourteen (14) days have elapsed since the debtors filed the Motion on May 8, 2025. Counsel for the McCreary entities remain in the process of gathering and reviewing all pertinent information and documents from said entities to assess the debtors' ability to proceed as to each

entity. To the extent that the debtors cannot proceed against one or more of the McCreary entities under § 505(a)(2), the Motion should be denied.

### APPLICABLE TEXAS STATUTUES REGARDING PROPERTY VALUATION

8. All taxable property is appraised at its market value as of January 1 of a given tax year. [2] Tex. Tax Code § 23.01(a). "The market value of property shall be determined by the application of generally accepted appraisal methods and techniques. If the appraisal district determines the appraised value of a property using mass appraisal standards, the mass appraisal standards must comply with the Uniform Standards of Professional Appraisal Practice. The same or similar appraisal methods and techniques shall be used in appraising the same or similar kinds of property. However, each property shall be appraised based upon the individual characteristics that affect the property's market value, and all available evidence that is specific to the value of the property shall be taken into account in determining the property's market value." Tex. Tax Code §23.01(b). "Market value means the price at which a property would transfer for cash or its equivalent under prevailing market conditions if: (A) exposed for sale in the open market with a reasonable time for the seller to find a purchaser; (B) both the seller and the purchaser know of all the uses and purposes to which the property is adapted and for which it is capable of being used and of the enforceable restrictions on its use; and (C) both the seller and purchaser seek to maximize their gains and neither is in a position to take advantage of the exigencies of the other." Tex. Tax Code §1.04(7). "Appraisal methods and techniques included in the most recent versions of the following are considered generally accepted appraisal methods and techniques for the purposes of" the Texas

---

[2] Except as otherwise provided by Chapter 23 of the Texas Tax Code, including as provided by Section 23.12 (f) which allows an owner of certain inventory, including the types of inventory in Big Lots Stores, to elect that said inventory be appraised at its market value as of September 1 of the year preceding the tax year to which the appraisal applies. While the undersigned is still reviewing and analyzing all documents and data, it appears that the debtors elected September 1 inventory valuation as to most if not all of the McCreary entities.

Tax Code: "(1) the Appraisal of Real Estate published by the Appraisal Institute; (2) the Dictionary of Real Estate Appraisal published by the Appraisal Institute; (3) the Uniform Standards of Professional Appraisal Practice published by The Appraisal Foundation; and (4) a publication that includes information related to mass appraisal." Tex. Tax Code § 23.01(h). "In determining the market value of property, the chief appraiser shall consider the cost, income, and market data comparison methods of appraisal and use the most appropriate method." Tex. Tax Code § 23.0101. Additional provisions regarding the cost, income and market data comparison methods of appraisal are codified in Tex. Tax Code §§ 23.011-23.013.

9. Market value of inventory, which is a component of business personal property, is typically governed by Tex. Tax Code § 23.12(a) which provides "……the market value of an inventory is the price for which it would sell as a unit to a purchaser who would continue the business…".[3] A chief appraiser is required to establish and adhere to equitable and uniform inventory appraisal procedures. Tex. Tax Code § 23.12(b).

10. "Appraised value" is also a defined term in Tex. Tax Code § 104(8) - "the value of property determined under the appraisal methods and procedures of Tax Code, Chapter 23" and the Texas Constitution, Article VIII Section 1(a) provides that "taxation shall be equal and uniform. Section (b) provides that all tangible real and personal property in the State, unless exempt as required or permitted by said Constitution, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law.

---

[3] Except as provided by §§ 23.121, 23.1241, 23.124, and 23.127, which are not applicable herein

11. The McCreary entities' assessed values are accurate as they followed the required statutory provisions for appraisal methodology. The debtors' proposed values fail to comport with the requirements of the Texas Tax Code, are therefore erroneous, and should be denied.

## RENDITIONS

12. Pursuant to Tex. Tax Code § 22.01, a taxpayer is required to render for taxation[4] to each appraisal district in which the taxpayer owns on January 1 of the tax year (or manages and controls as a fiduciary) tangible personal property used for the production of income. Tex. Tax Code Chapter 22. The Texas Comptroller of Public Accounts has proscribed a rendition form for taxpayer use, Form 50-144. A blank Form 50-144 is attached hereto as **Exhibit A**. As reflected thereon and codified in Tex. Tax Code § 22.01(a), the taxpayer must submit a description of property by type/category, as well as the taxpayer's good faith estimate of the market value of the property or the historical cost when new and year of acquisition of the property. As to inventory, a taxpayer must submit a description of each type of inventory and a general estimate of the quantity of each type. A taxpayer must also render furniture/fixtures/machinery/equipment/computers and submit the year acquired, and either the historical cost when new or the taxpayer's good faith estimate of market value. The person completing the rendition form must swear or affirm that the information provided therein is true and accurate to the best of his/her knowledge and belief, and that he/she is authorized by law to file and sign the report. A false statement on the form is punishable as a Class A misdemeanor or state jail felony under the Texas Penal Code, Section 37.10. Steve Hutkai, VP of Tax and Treasurer for the debtors at the applicable time, signed and submitted most if not all of the 2024 renditions to the McCreary entities. Presumably, the debtors' VP of Tax and Treasurer truthfully attested to

---

[4] By April 15 of the tax year unless extended.

6

all information on the renditions and had specific and specialized knowledge of appropriate and accurate valuations. An Assessment Technologies, Ltd. ("**ATL**") employee/representative signed and submitted most if not all of the debtors' 2025 renditions to the McCreary entities. The McCreary entities relied on the rendered data in their appraisal valuation process.

## "THE LAMMERT DECLARATION"

13. The debtors state in paragraph 15 of the Motion that they have estimated the value of the Property as of January 1, 2024 (Tax Year 2024) and January 1, 2025 (Tax Year 2025). These valuation dates are inapplicable to the debtors' inventory for the McCreary entities in which the debtors elected September 1, 2023, and September 1, 2024 inventory valuation. The debtors provide no support of any kind for September 1, 2023, or September 1, 2024 inventory values.

14. Many of the debtors' proposed values are significantly below the fair market values they themselves provided to the McCreary entities on their required rendition forms. ATL is an outside for-profit company claiming that (year 2024) values provided by the Debtors' VP of Tax and Treasurer are substantially erroneous, but offers nothing but vague allegations without proof.

15. The debtors state in the Motion that their proposed property valuations are based on sales data from the debtors' historical sales and Third Party Research Data. The debtors do not identify the applicable time period used nor the identity of the Third Party. Further, the McCreary entities question whether the sales data to which the debtors refer is the post-petition going out of business sales data and whether same is net of expenses or gross.

16. Further, the debtors fail to provide any inventories and sales data in support of their Motion and provide nothing but the "Lammert Declaration". John W. Lammert ("**Lammert**"), Executive Vice President of ATL, declares that his asserted facts are based in part upon "information gathered from review of relevant documents and information supplied to me by former employees and

members of the Debtors' management and the Debtors' advisors". Lammert fails to identify with any specificity what documents and information he has reviewed and the source of same.

17. Lammert further declares that ATL was retained for certain ad valorem tax services, including to verify the methodology used to determine the property values and identify possible over-assessment. As previously stated herein, the Texas Tax Code provides the appraisal methodology permissible by Texas law. The McCreary entities following the mandated appraisal methodologies and their valuations are not erroneous.

18. Lammert asserts that the McCreary entities failed to consider sales of property at the stores, and therefore their valuations were flawed. As set forth previously herein, the applicable valuation date for the 2024 tax year assessed values was January 1, 2024 or as to inventory September 1, **2023** if the debtors so properly elected. The debtors filed these Chapter 11 cases on September 9, 2024, more than one (1) full year after the applicable appraisal date for inventory valued as of September 1, 2023 and more than eight (8) months after the applicable appraisal date for other business personal property. The debtors were not liquidating at those times. Even if they were, liquidation value is not the appropriate valuation methodology. Lammert acknowledges same by referencing Texas Tax Code Section 23.01 which requires market value analysis to be based on a property's exposure for sale with a reasonable time (not a "fire sale") for the seller to find a purchaser with both the seller and purchaser seeking to maximize gains and not taking advantage of the exigencies of the other. Again, neither the debtors nor Lammert have provided any inventories and sales data for any period of time. Lammert states in his Declaration that ATL has estimated the value of the inventory and furniture, fixtures, and equipment as of January 1, 2024 and January 1, 2025. He makes no mention of inventory valuation as of September 1, 2023 and September 1, 2024. The McCreary entities show that the vast majority of business personal

property involved in the property valuations is, in fact, the store inventory, and therefore Lammert's declarations as to all inventory are not cogent to the debtors' purported valuations.

### TEXAS BUSINESS PERSONAL PROPERTY TAX TIMELINE AND PROSCRIBED METHODS FOR THE DEBTORS TO CHALLENGE APPRAISED VALUES PURSUANT TO THE TEXAS TAX CODE

19. Texas has a codified, non-cumbersome, administrative process through which all taxpayers may challenge an assessed property valuation. Lammert and ATL are quite familiar with same and have been utilizing it in this and other cases.

20. On January 1st of each year, a tax lien attaches to property to secure the payment of all taxes, penalties and interest ultimately imposed for the year on the property. Tex. Tax Code § 32.01. Said tax lien takes priority over most other liens. Tex. Tax Code §§ 32.04, 32.05.

21. The chief appraiser is to mail notices of appraised value for properties (other than single-family homesteads) by May 1st or as soon as practicable thereafter. Tex. Tax Code §25.19. For tax year 2025, some of the McCreary entities have mailed the notice; others remain in the process of doing so because the debtors obtained extensions of time to file their required renditions.

22. Each appraisal district has an established appraisal review board. Tex. Tax Code § 6.41. A taxpayer may protest a notice of appraised value with the established Appraisal Review Board (ARB) by May 15 or by the 30th day after notice of appraised value is delivered, whichever is later. Tex. Tax Code § 41.44. The matter then goes before an Appraisal Review Board (ARB), which is a group of citizens that hears taxpayer protests. A taxpayer can appear in person, offer evidence by affidavit, or appear telephonically or by video. A taxpayer can appoint an agent to act in its place. If the Debtors oppose the ruling of an ARB, they have the option to seek arbitration or to file a lawsuit with the district court within 60 days of the ARB Order. Tex. Tax Code §§ 41A.03, 42.21. Information regarding this is clearly available on each CAD's website and is required to be

prominently displayed to taxpayers. Counsel for the McCreary entities continue to gather and review documents pertinent to steps taken by the debtors prior to their filing of the Motion.

23. The tax assessor mails tax bills on October 1, or as soon after as practical. Texas Tax Code § 31.01. The taxes become delinquent if not paid prior to February 1 of the following year. Tex. Tax Code § 31.02. The debtors timely paid their 2024 tax bills relating to the McCreary entity appraisal districts.

## **THE MOTION WILL NOT PROMOTE PROMPT OR BENEFICIAL ESTATE ADMINISTRATION**

24. The debtors assert that Congress provided bankruptcy courts with the broad power under section 505 of the Bankruptcy Code to promote prompt and centralized estate administration. The McCreary entities deny that this § 505 action will result in prompt estate administration. Discovery as well as a separate evidentiary hearing for each appraisal district will be necessary, placing a significant burden on the Court and unnecessary and excessive professional fees. The McCreary entities will be severely prejudiced, especially financially, if these matters are heard in the Delaware Bankruptcy Court.

25. The maximum "savings" that the estate could achieve through the Motion is inconsequential when compared to the professional fees required to pursue same. Morris, Nichols, Arst, and Tunnell, LLP ("**MNAT**"), bankruptcy co-counsel for the debtors and debtors in possession, as reflected in its Second Interim Fee Application filed May 15, 2025 at D.I. 2745 for the period of January 1, 2025 through and including March 31, 2025 states that its attorney billing rates range from $625 per hour to $1,895 per hour and that staff billing rates range from $385 per hour to $435 per hour. The debtors' pursuit of the Motion will negatively affect the estate which may already be administratively insolvent. The McCreary entities will supplement this objection with a chart labeled **Exhibit B** setting forth the tax amounts at the established appraised values

10

versus the estimated tax amounts if the debtors prevail on their asserted valuations to reflect the negative effect. It is likely that the cost of professional fees has already exceeded any potential value to the estate as MNAT has prepared and filed the Motion as well as two corresponding claims objections.

## RESERVATION OF RIGHTS

26. The McCreary entities reserve their rights to supplement and amend this Objection and hereby incorporate any and all additional arguments asserted by the other Texas Taxing Authorities in their objections/responses to the Motion and related pleadings.

## PRAYER

WHEREFORE, the McCreary entities respectfully request that the Court deny the Debtors' Motion in its entirety except as to the 2025 valuations on the resolved accounts. The McCreary entities further request that the Court order such other and further relief to which they demonstrate themselves entitled herein.

Dated:  May 22, 2025

Respectfully submitted,

**CIARDI CIARDI & ASTIN.**

*/s/ John D. McLaughlin, Jr.*

John D. McLaughlin, Jr. (No. 4123)
1204 North King Street
Wilmington, Delaware 19801
Tel: (484) 437-2676
Fax: (302) 300-4253
jmclaughlin@ciardilaw.com

**-and-**

**McCREARY, VESELKA, BRAGG & ALLEN, P.C.**

<u>*/s/ Julie Anne Parsons*</u>
Julie Anne Parsons
Texas State Bar No. 00790358
McCREARY, VESELKA, BRAGG & ALLEN, P.C.
P. O. Box 1269
Round Rock, TX 78680-1269
Telephone: (512) 323-3200
Fax: (512) 323-3205
Email:  jparsons@mvbalaw.com

*Attorneys for The McCreary Entities*