**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| _____ | § | |
| In re: | § | **Chapter 11** |
| | § | |
| **BIG LOTS, INC.,** *et al.*, | § | **Case No. 24-11967 (JKS)** |
| | § | |
| Debtors. | § | **Jointly Administered** |
| _____ | § | |

**TEXAS PROPERTY TAX AUTHORITIES' OBJECTION TO DEBTORS' MOTION TO
DETERMINE TAX LIABILITY AND STAY PROCEEDINGS (D.I. 2712)**

**TO:    THE HONORABLE J. KATE STICKLES,
        UNITED STATES BANKRUPTCY JUDGE,**

The **Texas Property Tax Authorities**,[1] by and through their counsel, hereby file this

Objection to Motion to Determine Tax Liability and Stay Proceedings (the "**Motion**") and would

respectfully show as follows:

**Preliminary Statement**

1.      Big Lots, Inc. and certain of its affiliates (the "**Debtors**") are requesting an order from this

Court (i) determining market values to establish the bases upon which to compute taxes for tax

years 2024 and 2025 as to the Debtors' personal property located at the Debtors' former store

---

[1] The Texas Property Tax Authorities are defined as the following Texas ad valorem tax entities represented by the Linebarger Goggan Blair & Sampson, LLP law firm: Angelina County, Bexar County, Cameron County, City of Carrollton, City of Frisco, City of Houston, City of Pasadena, City of Stephenville, City of Webster, Cypress-Fairbanks Independent School District, Dallas County, Ector CAD, City of El Paso, Fort Bend County, Gainesville Independent School District, Galveston County, Grayson County, Greenville Independent School District, Gregg County, Harris County ESD #08, Harris County ESD #9, Harris County ESD #11, Harris County ESD #12, Harris County ESD #29, Harris County ESD #48, Hidalgo County, Hood CAD, City of Houston, Houston Community College System, Houston Independent School District, Irving Independent School District, Jefferson County, Kerr County, Lamar CAD, Lewisville Independent School District, Little Elm Independent School District, Lone Star College System, City of McAllen, McLennan County, Montgomery County, Nueces County, Orange County, Parker CAD, City of Pasadena, Rockwall CAD, San Patricio County, Smith County, City of Stephenville, Stephenville Independent School District, Tarrant County, Tom Green CAD, Victoria County, and City of Webser. And individually, the "**Texas Property Tax Authority**".

locations (the "**Property**") and to stay state proceedings and (ii) staying all state and administrative proceedings.

2.     The Texas Property Tax Authorities will show that:

    a.   the Motion should be denied since relief under 11 U.S.C. § 505 is premature for some Tax Claims and may be time-barred for other Tax Claims;

    b.   there is no benefit to the bankruptcy estate (the "**Estate**") to the redetermination of values for 2024 and 2025;

    c.   the county appraisal districts that have exclusive authority under Texas law to assess value of personal property are necessary parties to the relief sought by the Debtors and are not before this Court;

    d.   the valuation methodology relied upon by the Debtors is flawed and inconsistent with Texas law;

    e.   the State administrative proceedings should not be stayed; and

    f.   abstention is appropriate.

**Factual Background**

3.     On September 9, 2024 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United State Bankruptcy Court for the District of Delaware.

4.     By Order dated September 10, 2024, all of the above referenced cases were ordered to be jointly administered in Case No. 24-11967; *Big Lots, Inc.*, in the United States Bankruptcy Court for the District of Delaware. [Docket No. 95].

5.     The Texas Property Tax Authorities are tax assessor-collectors for their respective taxing jurisdictions and are holders of secured ad valorem tax claims that are secured by statutory liens on all of the Debtors' business personal property located within the respective Texas Taxing Authority's jurisdiction.  The Texas Property Tax Authorities timely filed their secured proofs of

claim for the 2024 property taxes (the "**Tax Claims**" or "**2024 Taxes**") owed by the Debtors and secured by the Debtors' business personal property, including the Debtors' inventory (the "**Property**"). Additionally, on January 1, 2025, the Texas Property Tax Authorities' liens attached to the Property to secure payment of the 2025 taxes (the "**Post-Petition Taxes**"). The Debtors paid the Tax Claims in full on or before January 31, 2025.

6.    On January 2, 2025, this Court entered an ordered approving the Debtors' sale of the Property.

## Texas Ad Valorem Tax System

7.    Throughout the Motion, the Debtors blur the clearly distinct statutory functions of the tax assessor-collector such as the Texas Property Tax Authorities, which only calculate and collect a tax, and the appraisal districts, which only grant property exemptions and appraise property for valuation purposes. A review of Texas property tax law is important to demonstrate the constitutionally-mandated functions of each.

8.    The Texas Tax Code sets forth the responsibilities of <u>two separate and distinct</u> governmental entities. On one side of this process, there are the appraisal districts that determine the value of the property owner's real and personal property[2]. On the other side, are the taxing units that set the tax rates, assess the taxes <u>based upon the value set by the appraisal districts</u>, and then collect those taxes.

9.    Pursuant to Texas law, on January 1 of each tax year, a tax lien attaches to the property (and is automatically perfected) to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on the property. Tex. Tax Code § 32.01 *et seq*. The calculation of a property

---

[2] Since the Tax Claims and the Post-Petition Taxes at issue do not involve real property taxes, the remainder of this response will reference just personal property taxes.

owner's ad valorem tax liability begins with an appraisal of the value of the owner's personal property by the appraisal district for the county in which the subject property is located. Tex. Tax Code § 6.01 *et seq.* "One of the [Texas] Legislature's primary purposes in enacting the Property Tax Code was to establish a system that yields fair and uniform valuations across the taxing units." *Jim Wells County vs. El Paso Production Oil and Gas Company,* 189 S.W.3d 861, 871 (Tex. App. Hous. [1st Dist.], 2006, pet. denied). "To accomplish this purpose, the Legislature abolished the appraisal authority of the taxing units, established a centralized appraisal district for every county, and charged the appraisal districts with the <u>exclusive responsibility</u> 'for appraising property in the district for ad valorem tax purposes of each taxing unit that imposes ad valorem taxes on property in the district.'" *Id.* (emphasis added) (quoting Tex. Tax Code § 6.01). Put simply, only the appraisal districts can assess the value of property in Texas, not the Texas Property Tax Authorities. *See* Tex. Tax Code § 1.15.

10.    Under Texas law, a person is required to render for taxation all tangible personal property used for the production of income that the person owns. Tex. Tax Code § 22.01(a). To render property, a person is to provide a rendition statement (the "**Rendition**") that includes various pieces of information including a description of the property, the property's location and the property owner's good faith estimate of the market value of the property as of January 1 or the historical cost when new and the year of acquisition of the property. *Id.* The Rendition must be delivered to the appraisal district's chief appraiser after January 1 and not later than April 15. *Id.* § 22.23(a). In this case, Renditions were filed for the 2024 tax year by or on behalf of the Debtors as more fully discussed below.

11.    As required by the Texas Tax Code, all taxable property is appraised at its market value as of January 1. *Id.* § 23.01(a). With the exception of certain types of inventory such as motor vehicle,

heavy equipment or vessel/outboard motor inventory, a property owner may elect to have their inventory appraised at its market value as of September 1 of the year preceding the tax year to which the appraisal applies.  *Id.* § 23.12(f). For example, for tax year 2024, if a property owner elects to have their property appraised as of September 1 pursuant to section 23.12(f) then the market value is determined as of September 1, 2023 and not January 1, 2024.[3]  In determining the market value of property, the appraisal districts use methodologies prescribed by the Texas Tax Code, which requires the appraisal district to determine the value of property "by the application of generally accepted appraisal methods and techniques and "each property shall be appraised based upon the individual characteristics that affect the property's market value." *Id.* 23.01(b). With respect to personal property, by May 1, or as soon thereafter as practicable, the chief appraiser is required to deliver a clear and understandable written notice to the property owner of the appraised value of the property.  *Id.* § 25.19(a). By May 15 or as soon thereafter as practicable, the chief appraiser of each appraisal district shall prepare appraisal records listing all property that is taxable in the district and stating the appraised value of each. *Id.* § 25.01(a). The chief appraiser is then required to submit the completed appraisal records to the appraisal review board (the "**ARB**") for review and determination of protests.  *Id.* § 25.22(a).  Under the Texas Tax Code, a property owner has remedies to protest or correct the values set by the appraisal district.  One of those remedies available to the property owner is to file a motion with the ARB to change the appraisal roll to correct an error that resulted in an incorrect appraised value for the owner's property (a "**Correction Motion**"); however, the error may not be corrected unless it resulted in an appraised

---

[3] The Texas Property Tax Authorities are trying to determine from the appraisal districts if the Debtors elected to value their property as of September 1, 2023 for the 2024 taxes and September 1, 2024 for the 2025 taxes pursuant to Texas Tax Code § 23.12(f).

value that exceeds by more than one-third the correct appraised value. *Id*. § 25.25(d). If the chief appraiser and the property owner cannot agree to the correction before the 15th day after the date the motion is filed, a party bringing the Correction Motion is entitled to a hearing and a determination of the motion by the ARB. *Id*. § 25.25(e).[4]

12.    The property owner is then entitled to appeal an order of the ARB determining the Correction Motion. *Id.* § 42.01(a)(1)(C).   To appeal the ARB's determination, the property owner must file a petition for review with the district court within 60 days after the party received notice that a final order has been entered from which an appeal may be had. *Id.* § 42.21(a).  <u>A petition for review must be brought against the appraisal district</u>. *Id.* § 42.21(b) (emphasis added). Not later than the 45th day after the date an appeal is finally determined, the chief appraiser shall correct the appraisal roll and other records to reflect the final determination of the appeal and certify the change to the tax assessor for each taxing unit.  *Id.* § 42.41(a).  The tax assessor for each affected taxing unit shall then correct the tax roll for which the assessor is responsible. *Id.* § 42.41(b).  If the final determination of an appeal that decreases a property owner's tax liability occurs after the property owner has paid the taxes, the taxing unit shall refund to the property owner the difference between the amount of taxes paid and amount of taxes for which the property owner is liable. *Id.* § 42.43(a).  A taxing unit may not send a refund made under this section before the earlier of, the 21st day after the final determination of the appeal; or the date the property owner files the prescribed form with the taxing unit**.** *Id.* § 42.43(b-1).

---

[4] Prior to filing this Motion, the Debtors had already started this protest process with the appraisal district for the 2024 Taxes by filing Correction Motions with numerous appraisal districts in Texas, which, for some of these Correction Motions, resulted in hearings, an ARB determination, and a reduction of value.

13.     As shown in the preceding paragraphs, the appraisal of the Debtors' property is completely outside the statutory authority of the Texas Property Tax Authorities.  The taxing units such as the Texas Property Tax Authorities are only responsible for assessing taxes, multiplying the appraised value by the applicable tax rate, and issuing tax bills.  *Id.* §§ 6.23, 31.01, *et seq.*  The taxing units are not authorized to make the appraisals on which the property owner's tax liability is based and indeed are prohibited by law from employing an appraiser to conduct such valuations.  *Id.* § 1.15. The appraisal districts and the tax units are distinct political subdivisions with unique and exclusive statutory duties and those roles may not be interchanged under Texas law.  *Wilson v. Galveston County Cent. Appraisal Dist.*, 713 S.W.2d 98 (Tex. 1986).

## Objection

14.     The Debtors filed their *First and Second Omnibus Objection (Substantive) to Reduced Amount Tax Claims Pursuant to 11 U.S.C. §§ 502 and 505, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1* (the "**Omnibus Objections**") on April 23, 2025.  [Docket nos. 2633 and 2634].  The Texas Property Tax Authorities filed their responses to the Omnibus Objections (the "**Responses**") on May 21, 2025. [Docket nos. 2772 and 2773].  The Texas Property Tax Authorities expressly adopt and incorporate all arguments and defenses asserted in their responses to the Omnibus Objections and incorporate them as if they were fully set forth herein.

### A.  Relief May Not be Available Under 11 U.S.C. § 505(a)(2)(B) and 505(a)(2)(C)

15.     Before the Court can determine whether it should grant the relief requested by the Debtors it must first determine whether there is any statutory bar in doing so.  11 U.S.C. § 505 provides that the Court "may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether

7

or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505(a)(1).

16.    There are though some exceptions to determing tax liability under section 505 that the Texas Property Tax Authorities assert bars the Debtor from seeking such relief for the 2024 Taxes. First, section 505(a)(2)(B) provides that the court may not determine any right of the estate to a tax refund, before the earlier of –

> (i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

> (ii) a determination by such governmental unit of such request.

17.    The Debtors fully paid the 2024 Taxes and therefore Debtors' allegations would more appropriately be regarded as a determination of a tax refund pursuant to 11 U.S.C. §505(a)(2)(B). Since a determination by a governmental unit of a refund for inflated values has not been made, a determination of a refund under section 505 is premature.  11 U.S.C. §505(a)(2)(B) does not afford this Court jurisdiction of a refund claim until a certain time after a proper request for such refund has been presented to the governmental unit from which the refund is claimed or a determination regarding the refund has been made by the government unit.  As noted earlier, in Texas, a taxing unit may not send a refund before the earlier of, the 21st day after the final determination of the appeal; or the date the property owner files the prescribed form with the taxing unit.  Tex. Tax Code § 42.43(b-1).  Inasmuch as no refund has been determined to be owed to the Debtor, this Court lacks jurisdiction to determine Debtor's entitlement to any such refund.

18.    Second, 11 U.S.C. 505(a)(2)(C) provides that the court may not determine the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable

8

nonbankrptcy law has expired.  Because the Texas Property Tax Authorities are not party to any of the Correction Motions as those are functions of the appraisal district, they stipulate that they do not know if any time periods have expired but raise this here to reserve and preserve any affirmative defenses they may have under section 505(a)(2)(C) of the Bankruptcy Code with respect to the 2024 Taxes.  It is possible that if a Correction Motion was filed and a determination made by the ARB, some deadlines to appeal the ARB's determination could have expired prior to filing the Motion.[5]  For a few of the Texas Property Tax Authorities, namely Bexar County, City of El Paso (El Paso County) and Montgomery County, the tax agents – presumably ATL – failed to appear at the ARB hearing.  A property owner or the owner's agent "who fails to appear at the hearing is entitled to a new hearing if the property owner or the owner's agent files, not later than the fourth day after the date the hearing occurred, a written statement with the ARB showing good cause for the failure  to appear and requesting a new hearing." Texas Tax Code § 41.45(e-1).  Not to belabor the point but since the Texas Property Tax Authorities do not appraise property nor have access to appraisal district records, they do not know if a written statement was filed.  A "no show" at the hearing could potentially be a jurisdictional bar under 11 U.S.C. § 505(a)(2)(C).

**B.  There is No Benefit to the Estate to Redetermine the 2024 and 2025 Values**

19.    As the Texas Property Tax Authorities' explained in their Responses to the Omnibus Objections, pursuing a reduction of some of these Tax Claims will be detrimental to the estate as it will cost more money than what will be recovered and, in some instances, the tax savings most likely have already been wiped out by the professional fees that have accrued to prepare and file this Motion.

---

[5] The Texas Property Tax Authorities do not have access to the appraisal records but have requested information regarding Correction Motions, hearing dates and disposition of any hearings before the various ARBs.

20.     For the Post-Petition taxes, it makes no sense whatsoever to redetermine the 2025 values when the Property sold the first week of January 2025.  Given the three or four days the Debtors owned the property for 2025, the Debtors' pre-closing 2025 tax liability will be a fraction of the 2024 taxes.  What possible benefit to the Estate is there by spending professional fees to determine the value of property the Debtors owned for less than a week?  The only party to substantially benefit is the Purchaser yet the Debtors for some inexplicable reason chose to bring this Motion. The information gleaned from reviewing the Debtors' fee applications that have been filed in this emphasizes the drain on the Estate's resources.  The hourly billable rates of Debtors' counsel completely eclipses any refunds and reductions of  the Debtors' tax liability and for some accounts, will most likely end up costing the Estate to pursue this Motion.  Further, the Texas Property Tax Authorities do not know what fees Assessment Technologies, Limited ("**ATL**"), the professionals whom the Debtors retained to challenge the values, is charging the estate but any compensation paid to ATL will further erode any savings to the Estate and other creditors.  Notably, a Landlord has filed an objection to several fee applications recently filed by various professionals in this case pointing out the stark reality that this case may be admnistraitvely insolvent.[6]

21.     The Debtors will continue to accrue professional fees in this matter since the Debtors are seeking to reduce the tax liability for numerous accounts listed.  The Texas Property Tax Entities will require discovery for each account to determine how ATL arrived at the values.  Each account then will require a separate evidentiary hearing regading the appraisal methodology used for that particular account/store location.

---

[6] Omnibus Limited Objection and Reservation of Rights of Tropicana Palm Plaza LLC With Respect to Interim Fee Applications Filed on and After May 15, 2025. [Docket no. 2767].

**C.  Appraisal Districts are Necessary Parties and Not Before the Court**

22.     Throughout the Motion, the Debtors attack the appraised values of the Property, which is beyond the control of the Texas Property Tax Authorities, but allege nothing with respect to the Tax Claims as it relates to tax rates or any tax calculation errors.  The Debtors allege that the fair market value of the Property for the 2024 and 2025 taxes is inflated; however, the Texas Property Tax Authorities are not the entity to determine appraised value and in fact are prohibited from doing so.  It would be grossly unfair and highly prejudicial to force the Texas Property Tax Authorities to defend a value for which they are not the proper parties to perform such a function. *See In re Psychiatric Hosp*., 217 B.R. 645, 648 (Bankr.M.D.Fla. 1997) ("There is no question that this Court lacks the power to order the Tax Collector to peform a task which he has no statutory authority to perform," granting the Tax Collector's motion for summary judgement); *See also In re Airport Office Complex, Inc*., 2012 WL 5955009 at *2 (Bankr.M.D.Pa  Nov. 28, 2012) (bankruptcy court acknowledged that the taxing unit's only role is to collect taxes based on the tax rates and the value assessment set by a different government agency and therefore overruled debtor's objection to taxing unit's proofs of claim without prejudice to filing a new claim objection should the value of the property in question be reassessed).

23.     Prior to the filing of the Motion, the Debtors had already filed Correction Motions with the various ARBs for the 2024 taxes.  Some of those Correction Motions have already been determined and ARB orders issued prior to the filing of the Motion, with others either having been determined during the pendency of the Motion or set to be heard in the coming days or weeks.  Importantly, there are some accounts where the ARB reduced the value and the Texas Property Tax Entities have already issued refunds to the Debtors.  For those accounts where the value was not reduced, the next step for the Debtors under Texas law would be to file an appeal of the ARB orders by

filing their petition for review.  Instead of filing their petition for review against the appraisal districts in the applicable Texas state district court, the Debtors filed this Motion.  Final relief under state law cannot be afforded to a taxpayer who disputes value without joining the appraisal district as a party to the cause of action.  The Debtors do not get to pick and choose which parts of the Texas Tax Code they want to abide by and wholly ignore other Texas Tax Code sections, specifically, the provision that mandates that the process for seeking value redetermination requires the appraisal district to be present as a party.[7]  This is an important procedural requirement since the Debtors have already paid the Tax Claims.  To the extent any values are lowered, the Texas Property Tax Authorities have to wait for the appraisal districts to update their appraisal rolls and transmit that information to the Texas Property Tax Authorities before any refunds can be issued.

24.     In deciding whether the Debtors' requested relief is warranted, this Court must apply Texas law.  *See Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 24-25 (2000*)* ("The basic federal rule in bankruptcy is that state law governs the substance of claims"); *See also In re Oxford Management, Inc.,* 4 F.3d 1329, 1334 (5th Cir. 1993) (providing that in the absence of controlling bankruptcy law, the substantive nature of property rights is defined by state law).  The Motion should be overruled and denied on that basis that the proper and necessary parties to any dispute regarding the assessed fair market value of the Property are not before this Court.

**D.  Debtors' Valuation Methodology is Flawed and Inconsistent with Texas Law**

25.     The Debtors assert that the Texas Property Tax Authorities would not be prejudiced for this court to determine the 2024 and 2025 values.  Contrary to the Debtors' assertion, having this

---

[7] Tex. Tax Code § 42.21 (a)-(b).

court determine the 2024 and 2025 values would be highly prejudicial to the Texas Property Tax Authorities since the appropriate parties under Texas law are not subject to the jurisdiction of this Court.  Further, the Texas Property Tax Authorities are prejudiced if the Property is valued using a different methodology inconsistent with Texas law, which could set precedent for valuing such property into the future.

26.     If the Texas Property Tax Authorities are forced to defend the assessed values set by the various appraisal districts, the Texas Property Tax Authorities would point out that the Debtors' valuation methodology is flawed and inconsistent with Texas law.  Under Texas law, all taxable property is to be appraised at its fair market value as of January 1 by applying generally accepted appraisal methods and techniques and "each property shall be appraised based upon the individual characteristics that affect the property's market value."[8]  In this case, the Property is to be valued as of January 1, 2024 for the 2024 taxes and January 1, 2025 for the 2025 taxes.

27.     The valuation methodology proposed by ATL is flawed for the following reasons:

a.     ATL admits that it used data from a third-party firm to approximate the market value of the Property.  This is problematic for a few reasons.  First, any opinion made by a representative of the third-party firm was made without providing the individual's qualifications to form such an opinion.  There has been no disclosure of background, training, education and knowledge of Texas property tax appraisals to form any opinion of the Property's market value. Second, ATL admits that some of the data from the third-party firm consists of questionnaires with companies in the industry, sales and financial information from various companies, and other resources, all of which is just opinion layered with more opinion and most likely hearsay. ATL has

---

[8] *Id*. § 23.01(a)-(b).

13

not shown that use of this type of data is a generally accepted appraisal method and technique utilized by the appraisal districts in assessing value.

b.      Upon information and belief, ATL was retained by the Debtors in January 2025, after all of the Debtors' property was sold and at least twelve months after the market value of the Property was determined by the appraisal districts for the 2024 tax year. It appears that ATL may be using bankruptcy liquidation values to determine the value of the Property, which is not the proper appraisal methodology under Texas law.   Bankruptcy courts must apply the state substantive law when determining value. *Raleigh*, 530 U.S. at 24-5 ("Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditor's entitlements, but are limited to what the Bankruptcy Code itself provides"); *See also In re Cable & Wireless USA, Inc*., 331 B.R. 568, 579-80 (Bankr.D.Del. 2005) (using bankruptcy sales as a method to determine a property's fair market value is "fundamentally flawed" and more weight is given to the appraisal methods utilized by the local and state tax assessors)*; In re Quality Beverage Co*., 170 B.R. 310, 313 (Bankr.S.D.Tex. 1994) (Conditions arising after January 1 may not be considered in establishing the market value of property in Texas) (citing *Kirby v. Transcontinental Oil Co*., 33 S.W.2d 472 (Tex.Civ.App. – Waco 1930, writ ref'd).

28.    Further evidence that the Debtors are relying on bankruptcy sale values to determine what they believe is the fair market value of the Property for the 2024 tax year can be found in the Renditions they submitted. Notably, in these filings, the Debtors reported higher values to the appraisal districts than the figures the Debtors are now asserting—a year later and after the bankruptcy sale.   The Texas Property Tax Authorities do not know if the Debtors filed their Renditions for the 2025 tax year and therefore reserve any arguments and defenses regarding this issue.

14

**E.  State Administrative Proceedings Should Not be Stayed**

29.     It would be far more expeditious and less expensive for the Debtors to continue with the state administrative procedures for the 2024 taxes with the appraisal districts and/or district courts then it would be in this bankruptcy case.

30.     11 U.S.C. § 505 was enacted to serve two primary purposes.  The first purpose "is to protect the creditors from the dissipation of the estate assets occurring from the failure of the debtor to protest the tax.  The second is to afford an alternative forum, the bankruptcy court, to allow prompt administration of the estate which would be otherwise threatened if the estate had to litigate the tax or assessment in several state jurisdictions."  *In re Cable & Wireless U.S.A., Inc.*, 331 B.R. at 575; *see also In re Altegrity, Inc*., 544 B.R. 772, 778 (Bankr.D.Del. 2016) (two primary purposes of the enactment of section 505 are "to help a debtor obtain a prompt resolution of a tax claim…" and to protect "creditors from dissipation of the estate's assets which could result if the creditors were bound by a tax judgment which the debtor, due to his ailing financial condition, did not contest")

31.     In regards to the first purpose, the creditors in the instant case are protected by the Debtors' pending Correction Motions filed with the ARB, the ability to file a petition for review for those accounts where the ARB has issued its order, and any other relief provided under the Texas Tax Code.  The Debtors have filed their Correction Motions and are participating in the state administrative process.  These are not the actions of an inept or financially constrained debtor whose other creditors need the relief offered under section 505.  Further, with respect to the 2025 tax year, the Debtors are actually dissipating estate assets by filing this Motion for Property it owned for less than a week.

32.     In regards to the second purpose, there has been no evidence presented by the Debtors that the state process would not provide a prompt resolution of the value disputes.  Rather, the Texas state process would be more efficient given that the Debtors filed their Correction Motions earlier this year, ARB hearings have already commenced, and the proper parties – the appraisal districts – would be able to participate in the judicial process.  In contrast, if the value disputes were litigated in the Bankruptcy Court, the Texas Property Tax Authorities will have to seek discovery for each account.  The Court then has to conduct an evidentiary hearing for each account in order to determine the appropriate fair market value.  This is the antithesis of a prompt administration of the value disputes.

## F.  Court Should Abstain From Deciding the Merits of the Motion

33.     The Texas Property Tax Authorities move this Court to exercise its power of discretionary abstention.  Bankruptcy courts routinely abstain from deciding the merits of a motion to redetermine tax and value liability, recognizing that the processes for contesting valuation through state administrative procedures and the local courts are better positioned to resolve the disputes.  Discretionary abstention in bankruptcy cases is governed by 28 U.S.C. §1334(c)(1), which provides, in pertinent part, the following:

> "…nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title."

Even where mandatory abstention under 28 U.S.C. §1334(c)(2) is inapplicable, the bankruptcy court may abstain from both core and non-core matters when abstention best serves the interests of justice, judicial economy or comity with the state courts.  *See In re Republic Reader's Service, Inc.*, 81 B.R. 422, 425 (Bankr.S.D.Tex. 1987) ("The intent of Congress is that abstention must play

a far more significant role in limiting those matters, which although properly brought within the reach of jurisdiction under Title 11, are nonetheless best left for resolution to a state or other nonbankruptcy forum").

34.    "The bankruptcy court's ability to abstain is premised on Congress' use of the word 'may' in § 505." *In re Luongo* 259 F.3d 323, 330 (5th Cir. 2001); *See also In re Altegrity, Inc*., 544 B.R. at 777 ("While section 505(a)(1) provides the jurisdictional nexus to decide the Tax Dispute, it also vests the Court with discretion to abstain from determining a tax liability").  In the case of *In re CM Reed Almeda 1-3062, LLC,* the court abstained from determining a debtor's tax liability owed to Harris County, stating that "[s]ection 505(a)(1) permits, but does not require, the bankruptcy court to determine a debtor's tax liability.  It provides that the 'court *may* determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to a tax,' whether or not such tax has been previously assessed or paid." 2016 WL 3563148, at *3 (Bankr.D.Nev. May 31, 2016), *aff'd*, 2017 WL 1505215 (9th Cir. BAP April 26, 2017) (emphasis in the original).  As the bankruptcy court pointed out, the discretionary aspect of this statute has been noted by several courts. *Id*. at FN 71,  (citing *Central Valley AG Enterprises v. United States*, 531 F.3d 750, 764 (9th Cir. 2008) (§ 505(a)(1) "is a permissive empowerment" rather than a "mandatory directive."); *In re New Haven Projects Ltd. Liability Co*., 225 F.3d at 288 ("we interpret the verb 'may' in 11 U.S.C. § 505(a)(1) as vesting the bankruptcy court with discretionary authority to redetermine a debtor's taxes."); *In re Breakwater Shores Partners, L.P*., No. 10-61254, 2012 WL 1155773, at *2 ("the exercise of jurisdiction under § 505 is discretionary with this Court."); *In re Gordon*, No. 09-16230-AJG, 2011 WL 3878356, at *5 (Bankr.S.D.N.Y. Aug. 30, 2011) ("As the verb 'may' indicates, the Court's ability to determine a debtor's tax liability is

discretionary."); *In re Galvano*, 116 B.R. 367, 372 (Bankr.E.D.N.Y. 1990) ( §505 is discretionary, and "the Court may decline to review a debtor's tax liability").

35.     Abstention is appropriate here to ensure that the proper parties responsible for assessing value are involved in the process and to promote a consistent and uniform application of the valuation methodology under Texas law.

### Reservation of Rights

36.     The Texas Property Tax Authorities are aware of other taxing units that are the subject of this Motion and are similarly situated to the Texas Property Tax Authorities. The Texas Property Tax Authorities expressly join and incorporate any and all arguments and defenses asserted by the other taxing units or affected parties.  The Texas Property Tax Authorities further reserve the right to supplement their objection to the Motion, including any affirmative defenses, should additional information become available to the Texas Property Tax Authorities.

WHEREFORE, PREMISES CONSIDERED, the Texas Property Tax Authorities respectfully request this Court enter an order denying the Motion and for such other and further relief, at law or in equity, as is just.

Dated: May 22, 2025

Respectfully submitted,

**CIARDI CIARDI & ASTIN**

**Dated:** *22 May 2025*                    */s/ John D. McLaughlin, Jr.*

_____
John D. McLaughlin, Jr. (No. 4123)
1204 North King Street
Wilmington, Delaware 19801
Tel:  (484) 437-2676
Fax:  (302) 300-4253
jmclaughlin@ciardilaw.com

-and –

**PERDUE, BRANDON, FIELDER,
COLLINS & MOTT, L.L.P.**

*/s/ Melissa Valdez*
Melissa Valdez
Texas State Bar No. 24051463
1235 North Loop West, Suite 600
Houston, TX 77008
mvaldez@pbfcm.com
Phone: (713) 862-1860
Fax: (713) 862-1429

Mollie Lerew
mlerew@pbfcm.com
Texas State Bar No. 24086631
P.O. Box 8188
Wichita Falls, TX 76307
Phone: (940) 723-4323
Fax: (940) 723-8553

Linda Reece
lreece@pbfcm.com
Texas State Bar No. 24065471
1919 S. Shiloh Rd., Ste 310, LB 40
Garland, TX  75042
Phone: (972) 278-8282

*Attorneys for The Certain Texas Taxing Entities*