**EXHIBIT "D"**

## **Exhibit B**

**Purchase Agreement**

## PURCHASE AGREEMENT

THIS PURCHASE AGREEMENT ("Agreement") is made by and among Big Lots Stores – PNS, LLC, a California limited liability company, successor-by-conversion from PNS Stores, Inc. (the "Seller"), and 6351 Westminster Blvd, LLC, a Wyoming limited liability company ("Buyer").  The Effective Date of this Agreement shall be _____, 2024 (the "Effective Date").

RECITALS

A.   Seller and Buyer previously entered into a Purchase Agreement dated February 2, 2023 (the "Former Contract"), for the sale of the Property (defined below), which Former Contract Seller and Landlord acknowledge and agree is terminated, void, and of no further force or effect, and the parties acknowledge and agree that the Original Earnest Deposit (defined below) shall be applied as provided in this Agreement.

B.   On April 7, 2024, Seller commenced a lawsuit against Buyer related to the Former Contract in the United States District Court for the Central District of California, commencing Case No. SACV 24-757-MWF (JDEx).  On or about August 9, 2024, Judgment was entered in the Litigation in favor of Seller.  On September 4, 2024, Buyer filed a Notice of Appeal of the Judgment with the Ninth Circuit Court of Appeals, which commenced Appeal Docket No. 24-5432 (the "Appeal").

C.   On September 9, 2024, Seller and various related entities filed voluntary chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), commencing Bankruptcy Case No. 24-11970, which is being jointly administered with the other entities under Lead Case No. 24-11967 (JKS) (collectively, the "Bankruptcy Case").

D.   Seller and Buyer acknowledge and agree that the Real Property (defined below) has previously been vandalized, but, nevertheless, Buyer remains interested in purchasing the Property from Seller.

E.   Seller and Buyer acknowledge and agree that the Escrow Agent (defined below) is in possession of the Original Earnest Deposit, and hereby instruct the Escrow Agent to continue to hold and apply the Original Earnest Deposit as provided in this Agreement.

SECTION 1 - THE PROPERTY.

1.1 - Agreement.  Seller is the owner of the real property located at the address commonly known as 6351 Westminster Blvd., Westminster, CA 92683, as more particularly described on **Exhibit A** attached hereto and made a part hereof, together with all improvements located thereon (the "Real Property").  Seller is also the owner or holder of certain appurtenant easements, rights, permits, entitlements, privileges and other intangible property relating to the Real Property (the "Intangibles"; the Real Property and Intangibles are all sometimes referred to collectively as the "Property").  On the terms and conditions set forth in this Agreement, Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, the Property.

SECTION 2 - <u>PURCHASE PRICE</u>.  Buyer agrees to pay Seller, as the purchase price for the Property, the sum of Six Million One Hundred Thousand and 00/100 Dollars ($6,100,000.00) (the "<u>Purchase Price</u>").  The Purchase Price shall be paid as follows:

(a)    Seller and Buyer acknowledge and agree that the Escrow Agent (as hereinafter defined) currently holds in escrow the amount of Two Hundred Thousand and 00/100 Dollars (the "<u>Original Earnest Deposit</u>") that Buyer deposited with the Escrow Agent pursuant to the Former Contract.  Buyer acknowledges and agrees that, except as expressly provided in Section 7.3 and Section 10.1 of this Agreement, the Original Earnest Deposit is not refundable to Buyer.  Within three (3) business days following the Effective Date of this Agreement, Buyer shall deposit the additional sum of Two Hundred Fifty Thousand and 00/100 Dollars ($250,000) with the Escrow Agent in escrow as an earnest money deposit (the "<u>2024 Earnest Deposit</u>"; together the Original Earnest Deposit and the 2024 Earnest Deposit, the "<u>Earnest Deposit</u>").  Except as expressly provided in this Agreement, the 2024 Earnest Deposit shall be nonrefundable to Buyer, but the Earnest Deposit shall be applicable to the Purchase Price at Closing (as hereinafter defined).

(b)    Buyer shall deliver to the Escrow Agent (as hereinafter defined) the Purchase Price, less the Earnest Deposit and the credits authorized to Buyer, in immediately available funds, on or prior to the Closing Date (as hereinafter defined).

(c)    Concurrently with depositing the 2024 Earnest Deposit with Escrow Holder, Buyer shall deposit, for immediate release to Seller, the sum of $100.00 (the "<u>Independent Consideration</u>") as consideration for Buyer's right to purchase the Property and for Seller's execution, delivery and performance of this Agreement.  The Independent Consideration (i) is in addition to and independent of any other consideration or payment provided for in this Agreement, (ii) is non-refundable and (iii) shall be retained by Seller notwithstanding any other provision of this Agreement.

SECTION 3 - <u>ESCROW AND TITLE INSURANCE</u>.

3.1 - <u>Escrow Agent</u>.  The parties hereto designate Chicago Title Insurance Company - National Commercial Services, 12500 Reed Hartman Highway, Suite 120, Cincinnati, Ohio 45241, Attn: Jordan Cohen, Jordan.Cohen@ctt.com ("<u>Title Company</u>") and as the escrow agent ("<u>Escrow Agent</u>") in connection with this transaction.  This Agreement shall serve as escrow instructions and shall be subject to the usual conditions of acceptance of Escrow Agent, insofar as the same are not inconsistent with any of the terms hereof.  By execution of this Agreement, Title Company agrees that the Earnest Deposit shall be held as a deposit under this Agreement in an interest-bearing account and: (a) applied against the Purchase Price if Closing occurs; or (b) delivered to Seller or Buyer, in accordance with the terms of this Agreement, if Closing does not occur.  Interest on the Earnest Deposit shall be paid to the party entitled to receive the Earnest Deposit (or portion thereof) pursuant to this Agreement.

3.2 - <u>No Due Diligence or Inspection Period</u>.  Buyer acknowledges and agrees that there is no diligence period or inspection period under this Agreement.  Buyers also acknowledges and agrees that there is no financing contingency or condition under this Agreement.

(a)     Buyer shall have the right to, at its sole cost and expense, obtain an ALTA Extended Coverage Owner's Policy of Title Insurance with respect to the Real Property ("ALTA Owner's Policy") in the amount of the Purchase Price from the Title Company, subject only to the Permitted Exceptions defined below, provided that Buyer acknowledges and agrees that Buyer's ability to obtain an ALTA Owner's Policy is not a condition or contingency under this Agreement.    Buyer acknowledges receipt of that certain Amended Preliminary Report #4, amended September 3, 2024 (the "Update Date"), Order No.: 00184037-987-OC1-JS9 (the "Original Commitment"), which was initially issued by the Title Company in connection with the Former Contract, to issue an ALTA Owner's Policies of Title Insurance for the Real Property in an amount equal to the Purchase Price (the "Title Policy").

(b)     Subject to Seller's obligations under Section 3.3 below, (i) all conditions, restrictions, reservations, easements, leaseholds, rights-of-way of record; (ii) all real estate taxes and assessments not yet due and payable; (iii) any portion of the Property situated within the confines of a publicly dedicated right-of-way or legal highway; (iv) all zoning ordinances and regulations; (v) all matters that would be disclosed by an accurate survey of the Real Property; and (iv) all matters identified in the Original Commitment are collectively referred to herein as the "Permitted Exceptions".

3.3 - Release of Mortgages.  Except for real estate taxes and assessments not yet due and payable as of the Closing and the Permitted Exceptions, it shall be a condition to Buyer's obligation to close that all mortgages, monetary liens and other encumbrances of ascertainable amounts incurred by, for, or on behalf of Seller shall be paid by Seller at or prior to Closing and removed from record by Title Company.

SECTION 4 - CONVEYANCE.  On the Closing Date, Seller shall convey title to the Real Property by grant deed (the "Deed"), in form and substance reasonably acceptable to the parties hereto, based on consultations with their respective local counsel, free and clear of all liens and encumbrances, except the Permitted Exceptions.

SECTION 5 - PRORATIONS AND CLOSING COSTS.

5.1 - Property Operating Expenses.  Operating Expenses (as hereinafter defined) for the Property shall be prorated as of 12:01 a.m. Pacific Time on the Closing Date. Seller shall pay all utility charges and other operating expenses, if any and excluding Taxes (collectively, the "Operating Expenses"), attributable to the Real Property incurred prior to, but not including, the Closing Date and Buyer shall pay all utility charges and other operating expenses attributable to the Real Property incurred on or after the Closing Date. If Seller is responsible for any public utility expenses with respect to the Real Property, meters for all public utilities (including water) being used on the Real Property shall be ordered read by Seller on the day of giving possession to Buyer and all charges to said date shall be paid by Seller. To the extent that the amount of actual consumption of any utility services is not determined prior to the Closing Date, a proration shall be made at Closing based on the last available reading and post-closing adjustments between Buyer and Seller shall be made within twenty (20) days of the date that actual consumption for such pre-

- 3 -

Closing period is determined, which obligation shall survive the Closing and shall not be merged therein.  Seller shall not assign to Buyer any deposits which Seller has with any of the utility services or companies servicing the Real Property.  Buyer shall arrange with such services and companies to have accounts opened in Buyer's name beginning at 12:01 a.m., Eastern Time, on the Closing Date.

5.2 - <u>Real Estate Taxes and Assessments</u>.  All real estate taxes and assessments, both general and special, with respect to the Real Property (collectively, "<u>Taxes</u>") for the current fiscal year of the applicable taxing authority in which the Closing Date occurs shall be prorated on a per diem basis as of 11:59 p.m. on the day prior to the Closing Date.  Seller shall pay Taxes attributable to the Property to, but not including, the Closing Date and Buyer shall pay all Taxes attributable to the Property on or after the Closing Date.  If the Closing occurs prior to the receipt by Seller of the bill for Taxes for the calendar year in which the Closing occurs, Taxes shall be prorated on the basis of the last officially certified and available tax duplicate. Seller shall be responsible for Taxes payable in respect to periods prior to the Closing and shall be entitled to any rebates and refunds for such periods. Buyer shall be responsible for Taxes on the Real Property payable in respect to all periods after the Closing and shall be entitled to any rebates and refunds for such periods. Such proration of Taxes will be final.

5.3 - <u>Costs to be Paid by Seller</u>.  Seller shall pay or be charged with the following costs and expenses in connection with this transaction:

(a)    All state (and if applicable county and city) documentary transfer, sales, stamp and similar taxes and conveyance fees on the sale and transfer of the Property;

(b)    one-half (1/2) of the escrow fee charged by Escrow Agent;

(c)    the premium for the standard coverage portion of the Title Policy, if obtained by Buyer;

(d)    Seller's share of prorations; and

(e)    the fees and expenses of Seller's attorney(s).

5.4 - <u>Costs to be Paid by Buyer</u>.  Buyer shall pay the following costs and expenses in connection with this transaction:

(a)    all state (and if applicable county and city) documentary transfer, sales, stamp and similar taxes and conveyance fees on the sale and transfer of the Property;

(b)    the escrow fee charged by Escrow Agent;

(c)    the cost of recording the Deed;

(d)    the cost of:  the title examination, the Updated Commitment, and the premium for the Title Policy, if obtained by Buyer, including the cost of any endorsements thereto;

- 4 -

(e)    Buyer's share of prorations;

(f)    all costs incurred by Buyer in connection with its due diligence or other activities related to the Property, including, without limitation, the cost of any environmental report, property condition report or zoning report ordered by Buyer; and

(g)    the fees and expenses of Buyer's attorney(s).

## SECTION 6 – SETTLEMENT AND COMPROMISE

6.1 - Release of Claims. The Parties desire to fully and completely settle all disputes, claims, demands and causes of action against one another relating to the Litigation and/or the Appeal, including all causes of action brought or that could have been brought arising from the allegations raised in the Litigation (the "Compromise").

6.2 - Buyer, on behalf of itself, and its administrators, insurance companies, predecessors, successors, assigns, agents, servants, employees, members, corporations, officers, directors, partnerships, partners, associates, attorneys, representatives, principals, joint ventures, parents, trustees, subsidiaries, shareholders, past and present, or anyone else claiming by and through them, do hereby acknowledge full and complete satisfaction of and do hereby fully and forever release and discharge Seller, as well as its administrators, predecessors, successors, assigns, agents, servants, employees, members, corporations, insurance companies, officers, directors, partnerships, partners, associates, attorneys, representatives, principals, joint ventures, parents, trustees, subsidiaries, shareholders, past and present, and each of them, from any and all claims, demands and causes of action of any kind or nature whatsoever, whether known or unknown, suspected or unsuspected, whether concealed or hidden, which Buyer now owns, holds or may hereafter have against Seller, by reason of any matter relating to the Litigation.

6.3 - Seller on behalf itself and its administrators, insurance companies, predecessors, successors, assigns, agents, servants, employees, members, corporations, officers, directors, partnerships, partners, associates, attorneys, representatives, principals, joint ventures, parents, trustees, subsidiaries, shareholders, past and present, or anyone else claiming by and through it, does hereby acknowledge full and complete satisfaction of and does hereby fully and forever release and discharge Buyer, as well as its administrators, predecessors, successors, assigns, agents, servants, employees, members, corporations, officers, directors, partnerships, partners, associates, attorneys, representatives, principals, joint ventures, parents, trustees, subsidiaries, shareholders, past and present, and each of them, from any and all claims, demands and causes of action of any kind or nature whatsoever, whether known or unknown, suspected or unsuspected, whether concealed or hidden, which Seller now owns, holds or may hereafter have against Buyer, by reason of any matter relating to the Litigation.

6.4 - It is a condition hereof, and it is the intention of the Parties in executing this Agreement and in giving the releases set forth herein, that the same shall be effective as a bar to each and every claim, demand, and cause of action, matter or thing specified; and in furtherance of this specific intention, the Parties hereby expressly waive any and all rights and benefits conferred upon them by the provisions of Section 1542 of the California Civil Code which provides:

> **"A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her would have materially affected his or her settlement with the debtor or released party."**

6.5 - The Parties represent and warrant that they have been advised to seek advice from independent legal counsel of their own choosing regarding this Agreement and its terms and language, and understand and acknowledge the significance and consequence of these releases, and the specific waiver of Section 1542, and the Parties, and each of them, expressly consent that this Agreement and the releases set forth herein shall be given full force and effect according to each and all of their express terms and provisions, including those relating to unknown and unsuspected claims, demands and causes of action, if any, as well as those relating to any other claims, demands and causes of action herein above specified.

6.6 - The Buyer shall dismiss the Appeal within ten (10) business days of the Closing.

SECTION 7 - POSSESSION AND CLOSING; CONTINGENCIES AND CONDITIONS.

7.1 - <u>Closing</u>.  The transaction contemplated herein shall be closed at the office of Escrow Agent within five (5) business days after (i) the date on which the Bankruptcy Court has entered an order approving this Agreement and Seller's sale of the Property to Buyer free and clear of any claims, liens, restrictions, security interests or other encumbrances of any kind under 11 U.S.C. § 363(f) and (ii) such order has become final and nonappealable. The time and date of such closing is referred to herein as the "<u>Closing Date</u>" or the "<u>Closing</u>".

7.2 - As soon as practicable after the Effective Date of this Agreement, Seller shall file with the Bankruptcy Court a motion seeking authority to approve the Compromise and the sale of the Property in accordance with the terms of this Agreement (the "<u>Approval Motion</u>"). Upon the Bankruptcy Court's entry of an order in form and substance reasonably satisfactory to Seller granting the Approval Motion (the "<u>Bankruptcy Court Approval</u>"), Seller shall promptly provide Buyer and Title Company with notice thereof. Either party may terminate this Agreement by written notice to the other if: (i) the Bankruptcy Court denies the Approval Motion; or (ii) the Bankruptcy Court fails to issue the Bankruptcy Court Approval within thirty (30) days after the filing of the above referenced motion by Seller; <u>provided</u>, <u>however</u>, that if the Bankruptcy Court fails to issue the Bankruptcy Court Approval within such thirty (30) day period and Buyer and Seller are using good faith efforts to obtain the Bankruptcy Court Approval, the thirty (30) day period shall be extended for an additional thirty (30) days. In the event of such termination, Escrow Agent shall disburse the Earnest Deposit in accordance with the provisions herein to Buyer and the parties shall have no further rights, duties or obligations under this Agreement, other than those which are expressly provided in this Agreement to survive the termination of this Agreement.

7.3 - The obligations of Seller under this Agreement to sell the Property and consummate the transaction contemplated hereby shall be subject to the satisfaction of the following conditions on or before the Closing Date, except to the extent that Seller waives any of such conditions in writing at or prior to Closing:

(a)    Buyer shall have performed and complied in all material respects with all covenants and agreements required by this Agreement to be performed and complied with by Buyer on or before the Closing Date.

(b)    Seller shall have received each of the items to be delivered to it or for its benefit under this Agreement.

(c)    Between the Effective Date and the Closing Date, no written order shall have been entered and be in effect by any court of competent jurisdiction, and no law shall have been promulgated or enacted and be in effect, that restrains, enjoins or invalidates the transaction contemplated hereby.

(d)    No suit or other proceeding shall be pending against Seller by any Person before any court or authority seeking to restrain or prohibit or declare illegal the transaction contemplated by this Agreement, or seeking damages against Seller in connection with the transactions contemplated by this Agreement.

(e)    Seller shall have filed a notice of this Agreement and Approval Motion in the Bankruptcy Court and either (i) no objections to this Agreement or the Approval Motion shall have been filed in the Case during the twenty-one (21) calendar day period immediately following the filing of such notice or any other such objection period as set forth in the Bankruptcy Court Approval (the "Objection Period") as evidenced by a copy of the docket in the Case or (ii) any objections filed within the Objection Period shall have been resolved and withdrawn, and in each of (i) or (ii), the Bankruptcy Court shall have entered an order granting the Approval Motion.

If any of the foregoing conditions are not fulfilled by the Closing, save and except those caused by the occurrence of Seller's material default, then Seller shall have the right, exercisable by delivering written notice to Buyer, to terminate this Agreement, then the 2024 Earnest Deposit shall be promptly refunded to Buyer, including any interest earned thereon, and the Original Earnest Money shall be promptly refunded to Seller, including any interest earned thereon; provided, however, that in the event any failure of a condition constitutes a material default by Buyer under Section 11.2 below, then Seller shall be entitled to exercise the remedies set forth in Section 11.2.

7.4 - Buyer's Conditions to Close.  Escrow shall not close unless and until the following conditions precedent and contingencies have been satisfied or waived in writing by Buyer:

(a)    All instruments described in Section 7.4 shall have been timely delivered to Escrow Agent;

(b)    On the Closing, Seller shall not be in default in the performance of any material covenant or agreement to be performed by Seller under this Agreement;

(c)    On the Closing, all representations and warranties made by Seller in Section 10.1 hereof shall be true and correct in all material respects as if made on and as of the Closing; and,

(d)    The Bankruptcy Court shall have entered an order granting the Approval Motion in a form satisfactory to Buyer to ensure the sale if approved free and clear of all liens, claims and interests in accordance with Bankruptcy Code Section 363(f) and which includes a finding that Buyer is a good faith purchaser as provided in Bankruptcy Code Section 363(m) ("Approval Order").

If any of the foregoing conditions are not fulfilled by the Closing, Buyer may elect to terminate this Agreement, in which event the Earnest Deposit shall be refunded to Buyer, including any interest earned thereon.

7.5 - Closing Deliveries.

(a)    Seller's Closing Deliveries. Not later than 12:00 p.m. Eastern Time on the Closing Date, Seller shall deliver to Escrow Agent:

(i)     the Deed;

(ii)    signed counterparts of an Assignment of Intangible Property, if any;

(iii)   a certificate and affidavit of non-foreign status;

(iv)    a completed 1099-S request for taxpayer identification number and certification and acknowledgment for Seller;

(v)     a title affidavit from Seller reasonably required by Escrow Agent to aid Buyer to obtain the Title Policies free of any general exception, excluding coverage for zoning and mechanic's liens;

(vi)    resolutions of Seller authorizing the sale of the applicable Property pursuant to this Agreement and the authority of the officer executing the closing documents on behalf of Seller;

(vii)   a settlement statement with respect to the Closing;

(viii)  exclusive possession of the Property to Buyer;

(ix)    a certified copy of the Approval Order; and

(x)     such other closing documents as may be reasonably necessary to consummate the transaction contemplated herein

(b)    Buyer's Closing Deliveries. Not later than 12:00 p.m. Eastern Time on the Closing Date, Buyer shall deliver to Escrow Agent:

(i)     a settlement statement with respect to the Closing;

(ii)    such other closing documents as may be reasonably necessary to consummate the transactions contemplated herein; and

        (iii)    the Purchase Price less the Earnest Deposit and any credits to which Buyer is expressly entitled hereunder.

(c)    <u>Title Company and Escrow Agent Obligations</u>.  At Closing, Title Company or Escrow Agent (as the case may be) shall:

        (i)    pay to Seller the Purchase Price less any credits to which Buyer is entitled;

        (ii)    deliver the Deed to Buyer by filing the Deed for record in the public records for the jurisdiction in which the Real Property is located;

        (iii)    if obtained by buyer, issue the Title Policy or Title Policies; and

        (iv)    charge Seller and Buyer for the closing costs as set forth in Section 5 above.

7.6 - <u>Covenants of Seller Pending Closing</u>.

(a)    From and after the Effective Date through the Closing Date, Seller shall not modify, cancel, extend or otherwise change in any manner, the terms, covenants or conditions of any insurance policy insuring the Real Property, nor enter into any contracts for services or otherwise that may be binding upon the Property or upon Buyer, nor shall any easements be created or any licenses given on the Property (in each case, other than in connection with the discharge of its fiduciary duties, including considering higher or better bids for the Property), without the express prior written consent of Buyer, which consent shall not be unreasonably withheld, conditioned or delayed, subject to any requirements of the Bankruptcy Court or otherwise by virtue of Seller being a debtor in bankruptcy. Notwithstanding anything in this Agreement to the contrary, Buyer acknowledges and agrees that Seller has ceased all operations of the Big Lots Store formerly operated at the Real Property.

(b)    From the Effective Date through and including the Closing Date, Seller will not, without the prior written consent of Buyer, convey any interest in any license or permit or entitlement affecting any of the Property (other than in connection with the discharge of its fiduciary duties, including considering higher or better bids for the Property), and Seller will not subject any Property to any additional liens, encumbrances, covenants, conditions, easements, rights of way or similar matters which will not be eliminated prior to the Close of Escrow.

SECTION 8 - CONDITION OF PROPERTY.

8.1 - "<u>As-Is</u>" Condition.  BUYER HEREBY EXPRESSLY ACKNOWLEDGES AND AGREES THAT BUYER WILL HAVE, AS OF THE CLOSING, THOROUGHLY INSPECTED AND EXAMINED THE STATUS OF TITLE TO THE PROPERTY AND THE PHYSICAL CONDITION OF THE PROPERTY TO THE EXTENT DEEMED NECESSARY BY BUYER IN ORDER TO ENABLE BUYER TO EVALUATE THE PURCHASE OF THE PROPERTY. BUYER HEREBY FURTHER ACKNOWLEDGES AND AGREES THAT BUYER IS RELYING SOLELY UPON THE INSPECTION, EXAMINATION, AND EVALUATION OF THE PHYSICAL CONDITION OF THE PROPERTY BY BUYER AND THAT BUYER IS PURCHASING, AND AT CLOSING WILL ACCEPT, THE PROPERTY ON AN "AS IS," "WHERE IS" AND "WITH ALL FAULTS" BASIS, WITHOUT REPRESENTATIONS,

WARRANTIES AND/OR COVENANTS, EXPRESS OR IMPLIED, OF ANY KIND OR NATURE. BUYER ACKNOWLEDGES THAT SELLER HAS MADE NO AGREEMENT TO ALTER, REPAIR OR IMPROVE THE PROPERTY. WITHOUT LIMITING THE FOREGOING, BUYER FURTHER ACKNOWLEDGES THAT SELLER HAS NOT MADE AND WILL NOT MAKE, NOR SHALL SELLER BE DEEMED TO HAVE MADE, ANY WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO (I) THE FITNESS, DESIGN OR CONDITION OF THE PROPERTY FOR ANY PARTICULAR USE OR PURPOSE, (II) THE QUALITY OF THE MATERIAL OR WORKMANSHIP THEREIN, (III) THE EXISTENCE OF ANY DEFECT, LATENT OR PATENT, (IV) SELLER'S TITLE THERETO WHICH IS BEING CONVEYED AS IS, WITH ALL DEFECTS AND OBJECTIONS, (V) VALUE, (VI) COMPLIANCE WITH SPECIFICATIONS, (VII) LOCATION, (VIII) USE, (IX) CONDITION, (X) MERCHANTABILITY, (XI) QUALITY, (XII) DESCRIPTION, (XIII) DURABILITY, (XIV) OPERATION, OR (XV) THE EXISTENCE OF ANY HAZARDOUS SUBSTANCE AND ALL RISKS INCIDENT THERETO WHICH ARE TO BE BORNE BY BUYER.  BUYER FURTHER ACKNOWLEDGES THAT THE PROPERTY HAS BEEN (OR WILL BE, SUBJECT TO THE TERMS OF THIS AGREEMENT) INSPECTED BY BUYER AND IS (OR WILL BE, SUBJECT TO THE TERMS OF THIS AGREEMENT) SATISFACTORY TO IT.  IN THE EVENT OF ANY DEFECT OR DEFICIENCY IN ANY PORTION OF THE PROPERTY OF ANY NATURE, WHETHER LATENT OR PATENT, SELLER SHALL NOT HAVE ANY RESPONSIBILITY OR LIABILITY WITH RESPECT THERETO OR FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING STRICT LIABILITY IN TORT). THE PROVISIONS OF THIS SECTION 8.1 HAVE BEEN NEGOTIATED WITH THE ADVICE OF COUNSEL AND ARE INTENDED TO BE A COMPLETE EXCLUSION AND NEGATION OF ANY WARRANTIES BY SELLER, EXPRESS OR IMPLIED, WITH RESPECT TO THE PROPERTY, ARISING PURSUANT TO THE UNIFORM COMMERCIAL CODE OR ANY OTHER LAW NOW OR HEREAFTER IN EFFECT OR ARISING OTHERWISE. THE PROVISIONS OF THIS SECTION SHALL SURVIVE THE CLOSING OR THE TERMINATION OF THIS AGREEMENT.

Buyer acknowledges and agrees that it has not (and shall not) rely upon any statement and/or information from whomsoever made or given (including, but not limited to, any broker, attorney, agent, employee or other person representing or purporting to represent Seller) directly or indirectly, verbally or in writing, and Seller is not and shall not be liable or bound by any such statement and/or information.

Seller specifically disclaims any representation, warranty or guaranty with respect to the Property, express or implied, including, but not limited to, any representation or warranty as to the Property's compliance with zoning or other legal requirements or as to the availability or existence of any utility or other governmental or private services or as to the amount of taxes assessed to the Property.

8.2 - Release of Claims Under Environmental Laws.  Buyer, on behalf of itself and all future owners and occupants of the Real Property, hereby waives and releases Seller from, including, but not limited to, any claims for recovery of costs associated with conduct of any voluntary action or any remedial responses, corrective action or closure under any applicable federal, state or local environmental laws ("Environmental Laws"), including, but not limited to,

the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq. and the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq., as amended from time to time; and any similar federal, state and local laws and ordinances and the regulations and rules implementing such statutes, laws and ordinances. The foregoing waiver and release of Seller under this Section 8.2 shall be set forth in the Deed and shall be binding upon all future owners and occupants of the Real Property. Notwithstanding the foregoing, the foregoing waiver and release under this Section 8.2 shall not modify, limit or otherwise affect Seller's representations and warranties set forth in Section 10.1 hereof or Seller's liability hereunder for any breach thereof; nor shall Seller be released from, and Buyer shall not waive its claims against Seller with respect to: (a) any breach of Seller's representations, warranties, covenants or other obligations under this Agreement or any documents executed pursuant to this Agreement, (b) any third-party personal injury which arises during Seller's period of ownership, or (c) Seller's fraud or willful misconduct.

SECTION 9 – CONFIDENTIALITY.

9.1 - Confidentiality. Buyer agrees that it shall treat all the information provided by seller concerning the Property (collectively, "Background Material") as confidential and proprietary to Seller. Notwithstanding any other provision to the contrary contained herein, Buyer shall not disclose, summarize or otherwise provide any or all of the Background Material to third parties except: (a) to the extent necessary in connection with its evaluation of the Property; (b) to the extent required by law; (c) to Buyer's mortgage lender(s) or investors, if any, involved in the transaction contemplated by this Agreement; or (d) with the express written consent of Seller. Prior to disclosing or providing access to any Background Material to any of Buyer's agents or representatives, Buyer shall (i) advise such parties of this Section and Buyer's obligations hereunder and (ii) require that such parties treat the Background Material in accordance herewith. If this Agreement terminates in accordance with the terms hereof, Buyer shall promptly return to Seller or destroy all Background Material it received and shall not retain any copies of the Background Material; provided, however, that Buyer has the ability to keep a copy of the Background Material for compliance purposes or for the purpose of defending or maintaining litigation or threatened litigation. Notwithstanding any provision in this Agreement to the contrary, and except to the extent required by Law, neither Buyer nor Buyer's agents shall contact any governmental authority regarding Buyer's discovery of any Hazardous Substances (as hereinafter defined) on, or any environmental conditions at, a Real Property without Seller's prior written consent thereto. In addition, if Seller's consent is obtained by Buyer, Seller shall be entitled to receive at least five (5) business days prior written notice of the intended contact and to have a representative present when Buyer has any such contact with any governmental official or representative. For the purposes of this Agreement, the term "Hazardous Substances" shall have the same definition as is set forth in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. Sections 9601 et seq. (the "Superfund Act"); provided, however, that the definition of the term "Hazardous Substances" shall also include (if not included within the definition contained in the Superfund Act) petroleum and related byproducts, hydrocarbons, radon, asbestos, urea formaldehyde and polychlorinated biphenyl compounds. Buyer agrees that Seller may seek injunctive relief to prevent or limit an unauthorized disclosure of the Background Material and may also pursue any other remedies available under law or equity as a result of a breach or anticipated breach of this Section. All of the obligations of Buyer under this Section 9.1 shall survive the termination of this Agreement.

SECTION 10 - <u>REPRESENTATIONS AND WARRANTIES</u>.

10.1 - <u>By Seller</u>.  Seller represents and warrants to Buyer that:

(a)     Big Lots Stores – PNS, LLC is a limited liability company duly organized and validly existing under the laws of the State of California.

(b)     Seller has the capacity and authority to execute this Agreement and perform the obligations of Seller under this Agreement, subject to Seller obtaining Bankruptcy Court Approval as described in Section 7.2 above.  All actions necessary to authorize the execution, delivery and performance of this Agreement by Seller have been taken and such action has not been rescinded or modified.

(c)     To the best knowledge of Seller, the execution and delivery of this Agreement and performance by Seller will not conflict with or result in a violation of, or breach of, or constitute a default under, any law or administrative regulation or any of the terms, conditions or provisions of any judgment, decree, loan agreement, bond, note, resolution, indenture, mortgage, deed of trust or other agreement or instrument to which it is a party and which affects the Property, subject to Seller obtaining Bankruptcy Court Approval as described in Section 7.2 above.

(d)     Seller is not a "foreign Person" within the meaning of Section 1445 of the Internal Revenue Code.

10.2 - <u>By Buyer</u>.  Buyer represents and warrants to Seller as of the Effective Date that:

(a)     Buyer is duly created and validly existing pursuant to the laws of the jurisdiction of its organization and is duly qualified to do business in the jurisdiction in which the Real Property is situated if and to the extent that such qualification is required.

(b)     Buyer has the capacity and authority to execute this Agreement and perform the obligations of Buyer under this Agreement.  All action necessary to authorize the execution, delivery and performance of this Agreement by Buyer has been taken, and such action has not been rescinded or modified.  Upon the execution of this Agreement, this Agreement will be legally binding upon Buyer and enforceable against Buyer in accordance with all of its provisions.  The person signing this Agreement on behalf of Buyer has been duly authorized to sign and deliver this Agreement on behalf of Buyer.

(c)     Buyer is not subject to any judgment or decree of a court of competent jurisdiction or governmental agency that would limit or restrict Buyer's right to enter into and carry out this Agreement.

(d)     Neither the execution of this Agreement nor the consummation of the transactions contemplated herein by Buyer will constitute a breach under any contract or agreement to which Buyer is a party or by which Buyer is bound or affected.

(e) No consent or approval of any third party (including, without limitation any governmental authority) is or was required in connection with Buyer's execution and delivery of this Agreement or its consummation of the transaction contemplated herein.

(f) None of the funds to be used for payment by Buyer of the Purchase Price will be subject to 18 U.S.C. §§ 1956-1957 (Laundering of Money Instruments), 18 U.S.C. §§ 981-986 (Federal Asset Forfeiture), 18 U.S.C. §§ 881 (Drug Property Seizure), Executive Order Number 13224 on Terrorism Financing, effective September 24, 2001, or the United and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, H.R. 3162, Public Law 107-56 (the "USA Patriot Act").

(g) Buyer is not, and will not become, a person or entity with whom U.S. persons are restricted from doing business with under the regulations of the Office of Foreign Asset Control ("OFAC") of the Department of Treasury (including those named on OFAC's Specially Designated and Blocked Persons list) or under any statute, executive order (including the September 24, 2001 Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism), the USA Patriot Act, or other governmental action.

Buyer shall fully disclose to Seller, immediately upon Buyer's becoming aware of its occurrence, any change in facts or circumstances of which Buyer becomes aware prior to the Closing Date that may affect the representations and warranties set forth above.

SECTION 11 - DEFAULT.

11.1 - Seller Default. Notwithstanding any provision in this Agreement to the contrary, if Closing does not occur by reason of a material default by Seller which continues for five (5) days after written notice from Buyer, then Buyer shall have the right, as its sole and exclusive remedy, to either (a) terminate this Agreement, in which event Buyer shall receive the Earnest Deposit and neither of the parties hereto shall have any further rights or obligations hereunder, except for obligations that specifically survive the termination, or (b) sue Seller for specific performance. Other than the remedies set forth in the foregoing (a) and (b), no other remedy or relief shall be available to Buyer, and Buyer hereby waives any and all other remedies, including the right to sue Seller for damages. In the event that Buyer's right to sue for specific performance is unavailable as a remedy to Buyer because of Seller's affirmative acts, Buyer shall be entitled to pursue all rights and remedies available at law or in equity, provided, however, any recovery by Buyer shall not exceed the sum of Fifty Thousand and 00/100 Dollars ($50,000.00) and shall be limited to Buyer's actual and verifiable, out-of-pocket expenses incurred in connection with the transaction contemplated by this Agreement. Notwithstanding any provision in this Agreement to the contrary, Buyer's right to sue Seller for specific performance is contingent upon Buyer filing suit against Seller for specific performance within ninety (90) days after the occurrence of Seller's material default delaying Closing and, in the event that Buyer does not file suit for specific performance within such ninety (90) day period, Buyer shall be deemed to have waived its right to sue Seller for specific performance, and the remedy set forth in Section 11.1(a) above to terminate this Agreement shall be Buyer's sole and exclusive remedy. The failure or refusal of

the Bankruptcy Court to approve this Agreement and/or the Closing shall entitle Buyer to the sole and exclusive remedy of terminating this Agreement, in which event the Earnest Deposit shall be promptly refunded to Buyer in accordance with the provisions herein and Seller and Buyer shall have no further rights and obligations hereunder except those which expressly survive termination of this Agreement.

11.2 - <u>Buyer Default</u>. Notwithstanding any provisions of this Agreement to the contrary, if the sale of the Property to Buyer is not consummated solely because of Buyer's material default under the express terms of this Agreement or if any representation or warranty by Buyer is not accurate as of the Closing Date, in addition to Seller's remedies under that certain Settlement Agreement dated as of even date herewith by and between Seller and Buyer, Seller shall be entitled to terminate this Agreement, and the Earnest Deposit, including any interest earned thereon, shall be delivered to Seller as agreed-upon liquidated damages as Seller's sole remedies. Seller and Buyer acknowledge that: (a) it would be impossible to accurately determine Seller's damages in the event of Buyer's default; (b) the Earnest Deposit is fair and equitable; and (c) Seller expressly waives the right to exercise any and all other rights available at law or in equity. The limitation of damages set forth herein shall not apply to any indemnities, covenants or obligations of Buyer which expressly survive either the termination of this Agreement or Closing, for which Seller shall be entitled to all rights and remedies available at law or in equity. Buyer shall not be deemed to be in default under this Agreement unless Seller shall have given written notice to Buyer and Buyer shall not have cured such default within five (5) business days after receipt of Seller's notice. The Closing Date shall be extended, as necessary, to accommodate the notice and cure period, provided that notice is delivered prior to the expiration of this Agreement.

11.3 - <u>BROKERS</u>. Seller and Buyer each represent and warrant that they have not been represented by any broker in connection with the sale of the Property and no commissions or fees are due to any other broker or finder by reason of either party's actions in this matter. Buyer and Seller shall each be responsible for all liability, if any, for any broker or finder fees payable with respect to the sale of the Property that are attributable to its actions. Seller and Buyer shall and do each hereby indemnify, defend and hold harmless the other from and against the claims, demands, actions and judgments of any and all brokers, agents and other persons or entities alleging a commission, fee or other payment to be owing by reason of their respective dealings, negotiations or communications in connection with this Agreement or the purchase and sale of the Property. The indemnity obligations in this Section shall survive the termination of this Agreement or the Closing.

<u>SECTION 12</u> - <u>EMINENT DOMAIN</u>. In the event of a taking of any portion of the Real Property by eminent domain for any public or quasi-public use which is reasonably estimated by Seller to be valued at five percent (5%) of the Purchase Price allocated to such Real Property or more, or if notice of intent of a taking or a sale in lieu of taking, which is reasonably estimated by Seller to be valued at five percent (5%) of the Purchase Price or more, is received by Seller or Buyer, at or prior to Closing, then Buyer shall have the right, to be exercised within thirty (30) days after notice of such taking or intended taking by written notice to Seller, to notify Seller whether it elects to proceed with the transactions contemplated by this Agreement or to terminate this Agreement. Failure to deliver notice is deemed Buyer's election to terminate this Agreement. If Buyer elects (or is deemed to have elected) to terminate this Agreement, Buyer shall receive the 2024 Earnest Deposit, including any interest earned thereon, and Seller shall receive the Original Earnest

Deposit, including any interest earned thereon, and neither of the parties hereto shall have any further rights or obligations hereunder except for obligations that specifically survive the termination. In the event this Agreement is not terminated or Buyer is not entitled to terminate this Agreement pursuant to this Section, Buyer shall consummate this transaction on Closing Date (with no reductions in the Purchase Price), and Buyer shall be entitled to participate in any such condemnation or eminent domain proceedings and to receive all of the proceeds attributable to any portion of the Real Property to be conveyed to Buyer.

SECTION 13– [INTENTIONALLY OMITTED].

SECTION 14 - MISCELLANEOUS.

14.1 - Governing Law. THE PARTIES AGREE THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO (I) THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT OR ANY ANCILLARY DOCUMENT EXECUTED PURSUANT HERETO AND/OR (II) THE PROPERTY. THE PARTIES EXPRESSLY CONSENT TO AND AGREE NOT TO CONTEST SUCH EXCLUSIVE JURISDICTION. The provisions of this Section shall survive the Closing or termination of this Agreement.

14.2 - Counterparts; Electronic Signatures. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document. Execution and delivery of this Agreement by electronic exchange bearing the copies of a party's signature shall constitute a valid and binding execution and delivery of this Agreement by such party. Such electronic copies shall constitute enforceable original documents.

14.3 - Entire Agreement. This Agreement, together with the attached exhibit(s), contains all of the terms and conditions of the agreement between the parties hereto, and any and all prior and contemporaneous oral and written agreements are merged herein.

14.4 - Modifications and Waivers. This Agreement cannot be changed nor can any provision of this Agreement, or any right or remedy of any party, be waived orally. Changes and waivers can be made only in writing, and the change or waiver must be signed by the party against whom the change or waiver is sought to be enforced. Any waiver of any provision of this Agreement, or any right or remedy, given on any one or more occasions shall not be deemed a waiver with respect to any other occasion.

14.5 - Parties Bound. This Agreement shall be binding upon and inure to the benefit of the heirs, executors, successors, and assigns of the parties hereto.

14.6 - Assignment. Buyer may not assign its rights and obligations under this Agreement without Seller's prior written consent; provided, however, at and concurrently with a Closing hereunder, Buyer may, subject to any requirements imposed by the Bankruptcy Court or otherwise by virtue of Seller being a debtor in bankruptcy, assign its rights and obligations under this Agreement, in whole or in part, to one or more entities without the consent of Seller, provided and on the condition that: (a) Buyer shall have given Seller written notice of the assignment and the identity of the assignee(s) at least seven (7) days prior to Closing; (b) Buyer is an affiliate of each

assignee; and (c) such assignee(s) shall have assumed Buyer's obligations hereunder by a written instrument of assumption in form and substance reasonably satisfactory to Seller. Notwithstanding any such assignment, Buyer shall nevertheless remain liable for all of Buyer's obligations hereunder.

14.7 - <u>Notices</u>. All notices, requests and other communications under this Agreement shall be in writing and shall be deemed given when made by personal delivery, sent by registered or certified mail, postage prepaid, return receipt requested, next or second business day by delivery by a nationally recognized overnight courier, addressed as follows, or email followed by another permitted means of delivery. Notice shall be deemed given on the date on which the notice is received or refused by a party in the case of personal delivery or email, the date on which it is deposited in the U.S. Mail, in the case of registered or certified mail, or on the next or second (whichever is applicable) business day immediately following receipt by the courier, in the case of an overnight courier:

<table>
<tr><td>If to Seller:</td><td>Big Lots Stores – PNS, LLC<br>4900 East Dublin Granville Road<br>Columbus, Ohio 43081<br>Attn: Chris Macke<br>Vice President, Legal – Real Estate<br>Email: cmacke@biglots.com</td></tr>
<tr><td>and</td><td>Big Lots Stores – PNS, LLC and Big Lots Stores, LLC<br>4900 East Dublin Granville Road<br>Columbus, Ohio 43081<br>Attn: Ronald A. Robins, Jr. (Rocky)<br>EVP, Chief Legal and Governance Officer<br>Email: rrobins@biglots.com</td></tr>
<tr><td>With a copy to:</td><td>Jacinto A. Nunez<br>Vorys, Sater, Seymour and Pease LLP<br>50 S. Main Street<br>Suite 1200<br>Akron, Ohio 44308<br>Email: janunez@vorys.com</td></tr>
<tr><td>If to Buyer:</td><td>6351 WESTMINSTER BLVD, LLC<br>Att: Andrew Fieler<br>Email: andrew.fielder@backbayig.com<br>3857 Birch St #195<br>Newport Beach, CA 92660</td></tr>
<tr><td>With a copy to:</td><td>James C. Bastian, Jr.<br>SHULMAN BASTIAN FRIEDMAN & BU LLP</td></tr>
</table>

- 16 -

100 Spectrum Center Drive, Suite 600
Irvine, CA 92618
jbastian@shulmanbastian.com

AND

Michael J. Steponovich, Jr
STEPONOVICH & ASSOCIATES
A Professional Law Corporation
Email: mike@stepolaw.com
120 Vantis Drive, Suite 300
Aliso Viejo, California 92656-2677
mike@stepolaw.com

14.8 - <u>Section Headings</u>.  The captions in this Agreement are for convenience only and shall not be considered a part of or affect the construction or interpretation of any provision of this Agreement.

14.9 - <u>Severability</u>.  If one or more of the provisions of this Agreement or the application thereof shall be invoked, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions or any other application thereof shall in no way be affected or impaired.

14.10 - <u>Time of the Essence</u>.  The parties agree that time is of the essence and that the failure of a party hereto to perform any act on or before the date specified herein for performance thereof shall be deemed cause for the termination hereof by the other party, without prejudice to other remedies available for default hereunder.

14.11 - <u>Confidentiality</u>.  Without the prior written consent of the other party, neither Seller nor Buyer will disclose to any person, other than their legal counsel, auditors, accountants, investors or a proposed lender, either the fact that this Agreement has been entered into or any of the terms, conditions or other facts with respect thereto, including the status thereof; <u>provided</u>, that either party hereto may make such disclosure if compelled by court order or to comply with the requirements of any law, governmental order or regulation.  Notwithstanding anything provided in this Agreement to the contrary, nothing herein shall prohibit Seller from taking any action that is required or appropriate in order to pursue or fulfill the requirements of the Bankruptcy Court Approval.

14.12 - <u>Further Action</u>.  The parties hereto shall at any time, and from time to time on and after the Closing Date, upon the request of either, to, execute, acknowledge and deliver all such further acts, deeds, assignments and other instruments as may be reasonably required for the consummation of this transaction.

14.13 - <u>Construction</u>.  This Agreement shall not be construed more strictly against one party than against the other merely by virtue of the fact that it may have been prepared by counsel for one of the parties hereto, it being recognized that both Seller and Buyer have contributed substantially and materially to the preparation of this Agreement.

14.14 - <u>No Recording</u>.  Neither this Agreement nor any memorandum or short form thereof may be recorded by Buyer.

14.15 - <u>Third-Party Beneficiary</u>.  The provisions of this Agreement are not intended to benefit any parties other than Seller and Buyer.

14.16 - <u>Attorneys' Fees and Costs</u>.  Notwithstanding anything to the contrary contained herein, in any action between the parties hereto seeking the enforcement of any of the terms and provisions of this Agreement, or in connection with the Property, the prevailing party in such action shall be awarded, in addition to damages, injunctive or other relief, its reasonable costs and expenses, and reasonable attorneys' fees.

14.17 - <u>Force Majeure</u>.  Notwithstanding anything to the contrary contained in this Agreement, any prevention, delay or stoppage due to strikes, lockouts, labor disputes, acts of God, inability to obtain services, labor, or materials or reasonable substitutes therefor, governmental actions, judicial actions, civil commotions, fire or other casualty, epidemic, pandemic, disease, quarantine, or any other causes beyond the reasonable control of the party obligated to perform (collectively, "<u>Force Majeure</u>"), shall excuse the performance of any such party for a period equal to any such Force Majeure and, therefore, if this Agreement specifies a time period for performance of an obligation of either party, that time period shall be extended by the period of any delay in such party's performance caused by a Force Majeure, provided nothing in this Section shall excuse Buyer from the prompt payment of money or other charges required of Buyer in this Agreement.

14.18 - <u>Exclusivity; Encumbrance</u>.  From the Effective Date through the Closing or earlier termination of this Agreement, Seller shall not voluntarily encumber or otherwise transfer the Property or enter into an agreement to transfer the Property or any of Seller's interest therein without the prior written consent of Buyer (in Buyer's sole and absolute discretion).

14.19 - <u>Jury Trial</u>.  THE PARTIES KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THEIR RIGHT TO A JURY TRIAL IN CONNECTION WITH THIS AGREEMENT, THE TRANSACTION CONTEMPLATED UNDER THE AGREEMENT OR ANY COURSE OF DEALINGS OR ACTIONS BY THE PARTIES RELATING TO THIS AGREEMENT. THIS WAIVER IS A MATERIAL INDUCEMENT FOR SELLER TO EXECUTE THIS AGREEMENT AND SURVIVES CLOSING UNDER OR TERMINATION OF THIS AGREEMENT. The provisions of this Section shall survive the Closing or termination of this Agreement.

14.20 - <u>Business Day</u>.  As used herein, a business day shall mean any day other than Saturday, Sunday or other day that commercial banks in the State of Ohio are authorized or required to close under applicable law.  In the event that the expiration of any time period hereunder shall expire on a Saturday, Sunday or legal holiday, then such time period shall be extended until the close of business on the next following business day.

[remainder of page intentionally left blank]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed on the respective dates specified below.

**SELLER**:

**Big Lots Stores – PNS, LLC**, a California limited liability company

By: _____
    Jonathan Ramsden, EVP, CFO & CAO


Date:    _____, 2024

**BUYER**:

**6351 Westminster Blvd, LLC**, a Wyoming limited liability company

By: _____
    Andrew Fielder, Manager

Date: _____, 2024


By: _____
    David Lipp, Manager

Date: _____, 2024

## ESCROW CONSENT AND ACKNOWLEDGMENT

The undersigned agrees to act as Title Company and Escrow Agent for the transaction described in the above Agreement as provided herein. Receipt of the Earnest Deposit is hereby acknowledged. The undersigned agrees to hold and deliver the Earnest Deposit in accordance with the terms of this Agreement.

**Chicago Title Insurance Company**

Escrow No. _____          By: _____

_____ (Print Name)
Authorized Representative

Date: _____

## EXHIBIT A

The Real Property

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF WESTMINSTER, IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL A: APN: 203-562-14

THAT PORTION OF THE SOUTHEAST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 3, TOWNSHIP 5 SOUTH, RANGE 11 WEST, IN THE RANCHO LAS BOLSAS, AS SHOWN ON A MAP RECORDED IN BOOK 51, PAGE 13 OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:
BEGINNING AT THE INTERSECTION OF THE CENTERLINE OF WESTMINSTER AVENUE AND WILLOW LANE, AS SHOWN ON A MAP OF TRACT NO. 2108, RECORDED IN BOOK 109, PAGES 3, 4 AND 5 OF MISCELLANEOUS MAPS, RECORDS OF ORANGE COUNTY, CALIFORNIA; THENCE NORTH 89°25'00" EAST 280.00 FEET; THENCE NORTH 0°35'45" WEST 500.00 FEET TO THE SOUTH LINE OF SAID TRACT NO. 2108; THENCE ALONG SAID SOUTH LINE AND ITS WESTERLY PROLONGATION SOUTH 89°25'00" WEST 280.00 FEET TO SAID CENTERLINE OF WILLOW LANE; THENCE SOUTH 0°35'45" EAST 500.00 FEET TO THE POINT OF BEGINNING. EXCEPT THAT PORTION THEREOF, INCLUDED WITHIN WILLOW LANE, AS SHOWN ON THE MAP OF SAID

TRACT NO. 2108.


PARCEL B:
NON-EXCLUSIVE EASEMENT FOR PARKING AS DESCRIBED IN THE AGREEMENT RECORDED JANUARY 17, 1961 IN BOOK 5632, PAGE 739 OF OFFICIAL RECORDS.