**Exhibit 1**

**Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., *et al.*, | Case No. 24-11967 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: Docket No. 2255** |

**ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE
BANKRUPTCY CODE AUTHORIZING THE DEBTORS-IN-
POSSESSION TO ASSUME, ASSIGN AND SELL
CERTAIN NON-RESIDENTIAL REAL PROPERTY LEASE 1718**

Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**"), each of which is a debtor and debtor in possession in the Chapter 11 Cases, for an order pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006 and 9014, and Local Rule 6004-1, having received a Notice of Designation of Designated Asset from Gordon Brothers Retail Partners, LLC ("**GBRP**") in accordance with Section 2.05(b) of the APA[2] and Paragraph 43 of the Sale Order, with respect to those certain unexpired leases of non-residential real properties for the premises identified in **Exhibit A** hereto ("**Lease**"); and the Debtors having filed and served a Designated 365 Contract Notice (the "**Designation Notice**") seeking, *inter alia*, (i) to assume and assign the Lease to Home Buys, Inc. (hereinafter collectively called "**HB**"); and (ii)

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used herein and not otherwise defines shall have the meanings ascribed thereto in the Court's *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1556] (the "**Sale Order**").

such additional and related relief as provided by the Sale Order; and the Court having determined that the legal and factual bases for the relief requested herein establish just cause for the relief granted herein; and after due deliberation and good and sufficient cause appearing therefor;

**NOW, THEREFORE**, the Court hereby finds as follows:

A. After good and sufficient notice of the Designation Notice having been provided in accordance with the Designation Rights Procedures, and a reasonable opportunity to object or be heard regarding the proposed assumption and assignment of the Lease has been afforded to the applicable 365 Counterparty (the "**Landlord**") in accordance with the Designation Rights Procedures.

B. The assumption, assignment and sale of the Lease to HB, pursuant to Sections 363 and 365 of the Bankruptcy Code is in the best interests of the Debtors, their estates and their creditors, and is consistent with the terms of the APA and Sale Order, respectively.

C. Pursuant to Sections 365(b)(1)(C), 365(f)(2)(B) and 365(b)(3) of the Bankruptcy Code, to the extent required under the Sale Order, HB has provided adequate assurance of future performance under the Lease.

D. The assumption and assignment of the Lease to HB set forth on Exhibit A and on Exhibit B is in compliance with Section 365(b)(3) of the Bankruptcy Code.

E. The Assumption and Assignment Agreement, dated as of March 5, 2025 and attached hereto as **<u>Exhibit B</u>** (the "**Assignment Agreement**"), between and among the Debtors and HB was negotiated and entered into in good faith, and from arm's length bargaining positions. HB is hereby found to be a good faith purchaser of the Lease and is found to be entitled to the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT**

1. Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, the applicable Debtor is hereby authorized to assume, sell and assign to HB the applicable Lease set forth on Exhibit A, pursuant to the terms and provisions of this Order, the APA, the Sale Order, and the Assignment Agreement, all of the terms of which are hereby approved.

2. In accordance with Section 363 of the Bankruptcy Code, effective as of the occurrence of a closing of the assignment of the Lease under the Assignment Agreement (such date being hereinafter defined as the "**Closing Date**"), the Lease shall be transferred free and clear of any leasehold mortgages, subleases, licenses, holdover rights under applicable bankruptcy and non-bankruptcy law and rules, claims, liens, interests, mechanics liens, bills, any rights under Section 365(h) of the Bankruptcy Code, and other rights and encumbrances.

3. Upon the entry of this Order and the occurrence of the Closing Date, HB shall be deemed to have assumed and succeeded to the entirety of the Debtors' rights and obligations in and to the Lease which are due and owing from and after the Closing Date and shall have the rights of the tenant thereunder.

4. Upon entry of this Order and the occurrence of the Closing Date, HB is a good faith purchaser and shall be entitled to the protections of Bankruptcy Code Section 363(m).

5. Pursuant to Section 365(b)(l) of the Bankruptcy Code, to the extent Cure Costs are owed to any of the Landlord, the Cure Costs, which are fixed as set forth on <u>Exhibit A</u>, shall be promptly paid by HB. Any unpaid percentage rent accrued or payable under the Lease prior to the Closing Date are waived and not included as Cure Costs. Any objection of the Landlord to the assumption or assignment or transfer of the Lease, any Cure Cost, or seeking further adequate assurance of future performance other than that provided in the Assignment Agreement, to the

extent not otherwise resolved by agreement, or by agreement contemplated to be heard after the date of any hearing to be held in connection with the Designation Notice, or disposed of by separate order of this Court, is hereby overruled. There shall be no accelerations, assignment fees, increases, or any other fees charged to GBRP, HB, or the Debtors as a result of the assumption and assignment of the Lease. Upon remittance of the Cure Costs by HB to the Landlords pursuant to the terms of this Order, the Landlord shall be barred from asserting any additional cure amounts or other claims with respect to the Lease. For the avoidance of doubt, the Landlord shall be forever (i) barred from objecting to the applicable Cure Costs and from asserting any additional cure or other amounts with respect to the Lease, and the Debtors and HB shall be entitled to rely solely upon the Cure Costs set forth above and (ii) barred, estopped, and permanently enjoined from asserting or claiming against the Debtors, GBRP or HB, or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under the Lease, or that there is any objection or defense to the assumption or assumption and assignment of the Lease. On and after the Closing Date, HB assuming its Lease shall be responsible for paying (and shall be entitled to receive any credits for) all amounts outstanding under the Lease due on or after the Closing Date.

6. The proceeds of the Lease sales shall be payable to GBRP in accordance with the APA and Sale Order, respectively.

7. All personal property and furniture, fixtures and equipment ("**FF&E**") remaining in the stores subject to the Lease on or after the Closing Date shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as of the Closing Date. HB purchasing the applicable Lease may, in its sole discretion and without further order of this Court, utilize and/or dispose of such property without notice or liability to the Debtors or any consenting third parties and, to the extent

applicable, the automatic stay is modified to allow such disposition; <u>provided</u>, that the Debtors shall not sell or abandon any property that the Debtors know is not owned by the Debtors; <u>provided</u>, <u>further</u>, that that the Debtors will either (a) provide for the return of such property to the Headquarters (as defined below) or (b) return such property to the applicable lessor, or other owner of the property; <u>provided</u>, <u>further</u>, <u>however</u>, that the Debtors may leave in place any property owned by the applicable Landlord at the applicable Store.

8. Any party which did not object within the time set forth in the notice thereof is deemed to consent to the Debtors' assumption and assignment of the Lease, and the satisfaction of the requirements of Section 365 of the Bankruptcy Code. Upon the sale and assignment of the Lease, payment of the Cure Costs and the transfer of the furniture, fixtures and equipment referenced immediately above, as applicable, shall relieve the Debtors from any further liability pursuant to Section 365(k) of the Bankruptcy Code.

9. Solely with respect to the transactions contemplated by this Order and the Assignment Agreement, and except as otherwise agreed between the applicable Landlord and HB, nothing in this Order shall be deemed to annul or vary any provision of the Lease *other than* the following provisions (the "**Unenforceable Provisions**"):

    a. a provision conditioning assignment on Landlord consent, or requiring payment to the Landlord as the price of assignment, or granting Landlord the right to recapture the leased premises following the assignment;

    b. a provision effecting forfeiture or a modification of HB's rights or obligations presently in effect under the Lease upon an assignment by the Debtors of the Lease; including any existing default of any Lease provision by the Debtors on the date hereof.

  c. a provision conditioning the Debtors' ability to assign their leasehold rights upon any terms not otherwise required under the Bankruptcy Code;

  d. a provision restricting HB's ability to place reasonable signage on the premises; provided, that such signage is deemed necessary by HB to conform such store to HB's typical retail store consistent with HB's intended use of the premises and is in compliance with the Lease provisions;

  e. a provision requiring the use of a certain tradename; except for "Home Buys";

10. Solely with respect to the transactions contemplated by this Order, the Sale Order, and the Assignment Agreement, none of the Unenforceable Provisions shall apply to HB in any respect and, without limiting the generality of the foregoing, no violation by the Debtors or HB of the Unenforceable Provisions shall constitute an event of default under any of the Leases.

11. Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after its entry and shall be effective immediately upon entry, and the Debtors and HB are authorized to close the sale of the Lease set forth in the Assignment Agreement immediately upon entry of this Order. Time is of the essence in closing the Lease sale transactions referenced herein, and the Debtors and HB intend to close the Lease sale transactions as soon as practicable. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry of this Order.

12. Upon entry of this Order, this Order and the findings hereunder shall be binding upon all parties to the Leases and the Assignment Agreement.

13. Upon the entry of this Order and the occurrence of the Closing Date, the Landlord shall accept and honor the assignment of the Lease to HB.

14. The Landlord shall cooperate and expeditiously execute and deliver, within ten (10) days of any reasonable requests of HB and at no cost to the Landlord, any instruments, applications, consents or other documents which may be required by any public or quasi-public authority or other party or entity, for the purpose of obtaining any permits, approvals or other necessary documents required for the alteration, opening and operating of the properties as contemplated under the Assignment Agreement and a memorandum of Lease.

15. Notwithstanding anything to the contrary in this Order, the Assignment Agreement or any side letters, none of the Debtors' insurance policies (and/or any agreements related thereto between any of the Debtors, on the one hand, and the applicable insurer(s) and/or third-party administrators, on the other hand) shall be abandoned, sold, assigned, or otherwise transferred without the express prior written consent of the Debtors and applicable insurer and/or third-party administrator.

16. This Court shall retain jurisdiction (i) to construe and determine any disputes under this Order, (ii) to enforce and implement the terms and provisions of the Assignment Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith, and (iii) to resolve any disputes arising under or related to the Lease sales (but all Landlord/tenant disputes arising after the Closing Date which do not involve the Lease sales, this Order or the Debtors shall not be subject to the jurisdiction of this Court).

17. The Debtors and HB are hereby authorized and directed to execute and deliver any and all documents, and to do all things reasonably necessary, to effectuate the purposes of this Order, to transfer the Debtors' interests in and to the Lease, in accordance with the terms of the Assignment Agreement, and to carry out the terms and conditions of the Assignment Agreement.

18. HB is not a successor in interest to the Debtors (other than with respect to the Debtors' rights and obligations under the Lease first accruing after HB takes assignment thereunder as provided for under the Assignment Agreement), or their bankruptcy estates as a result of HB taking title or possession of the Lease and the subject premises, and HB is not assuming any liabilities or obligations of the Debtors or their bankruptcy estates, except as may be specifically provided for in the Assignment Agreement.

19. This Order shall be effective and enforceable after its entry as provided by Bankruptcy Rule 7062.

20. Any remaining objections to the assignment of the Lease that have not been withdrawn, waived, adjourned, or settled, and all reservations of rights included in such objections, are overruled in all respects and denied.

21. Any provision in the Lease regarding percentage rent to the extent of Debtors' sales prior to the Closing Date shall not be imputed against HB, provided that HB shall be liable for percentage rent for the prorated portion of calendar year 2025 remaining after the Closing Date for a partial calendar year as if the term began on the Closing Date (and HB shall not be liable to pay any percentage rent based upon sales that occurred prior to the Closing Date or imputed during the Go Dark period after the Closing Date) and no percentage rent is due and owing by HB for the period prior to the Closing Date.

22. To the extent there is any inconsistency between the terms of this Order and the terms of the Assignment Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

23. To the extent that HB and the applicable Landlord(s) enters into a side letter with respect to one or more Leases, such side letter shall govern with respect to rights and obligations

of HB and the applicable Landlord. For the avoidance of doubt, no side letter shall modify the rights and obligations of any third party without such third party's consent.

24. The failure to specifically include any particular provision of the Assignment Agreement or other related documents in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Assignment Agreement and all other related documents be authorized and approved in their entirety pursuant to this Order.

25. The Assignment Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement is consistent with this Order and does not have any adverse effect on the Debtors' estates; <u>provided</u>, <u>further</u>, that the Debtors shall provide any such modification, amendment, or supplement to the applicable Landlords and the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases no less than one (1) day prior to execution of such modification, amendment, or supplement; <u>provided</u>, <u>further</u>, that after the occurrence of the Closing Date, the final versions of the Assignment Agreement any related agreements, documents or other instruments (as modified, amended or supplemented) shall be filed with the Court.

26. Big Lots Stores, LLC has the authority to execute the Assignment Agreement and any related agreements, documents or other instruments with respect to the Assignment Agreement on Exhibit B on behalf of itself and the Debtors.

## EXHIBIT A

### Leases

| Store Number | Address | Cure Costs |
|---|---|---|
| 1718 | 985N Bridge Street, Chillicothe, OH 45601 | $6,052.00 |

## **EXHIBIT B**

**Assumption & Assignment Agreement**

(see attached)

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (the "Agreement") is made as of this 5th day of March, 2025 by and between Big Lots Stores, Inc. ("Assignor") and Home Buys, Inc, an Ohio corporation, whose mailing address is 3985 Groves Road, Columbus, OH 43232 ("Assignee" and together with Assignor, the "Parties" and each, a "Party").

## RECITALS

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), jointly administered under case *In re Big Lots, Inc.*, Case No. 24-11967 (Bankr. D. Del. 2024) (the "Chapter 11 Cases");

WHEREAS, Gordon Brothers Retail Partners, LLC ("GBRP"), as buyer, and Big Lots, Inc. and certain of its subsidiaries, as seller ("Seller"), are parties to that certain Asset Purchase Agreement dated as of January 3, 2025 (the "Purchase Agreement"), pursuant to which Buyer agreed to acquire certain assets, including designation rights with respect to executory contracts and unexpired leases;

WHEREAS, on January 2, 2025, the Court entered an order approving the transactions contemplated under the Purchase Agreement [Docket No. 1556] (the "Sale Order");

WHEREAS, pursuant to Section 2.05(b) of that certain Asset Purchase Agreement dated as of January 3, 2025 by and between Assignor and Gordon Brothers Retail Partners, LLC ("GBRP"), GBRP has the right to designate certain contracts or leases for assumption and assignment to itself or its designee(s);

WHEREAS, the Assignor has succeeded to all the right, title and interest of Big Lots Stores, LLC in and to the Leases listed on Schedule A and has the authority to sign this Agreement; WHEREAS, GBRP is conducting "store closing" or other liquidation sales at certain of Assignor's retail stores and distribution centers (each, a "GOB Sale") and intends to designate certain of Assignor's leases for assumption and assignment effective on or after the conclusion of the applicable GOB Sale (each, a "Vacate Date"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the real property Leases listed on the attached Schedule A (each, a "Lease" and, collectively, the "Leases") with respect to the premises set forth on Schedule A (the "Premises") pursuant to the terms of the Sale Order, subject to approval by the Bankruptcy Court in the Chapter 11 Cases (the "Bankruptcy Court Approval").

WHEREAS, the Assignor has succeeded to all the right, title and interest of Big Lots Stores LLC in and to the Leases listed on Schedule A and has authority to execute this Agreement.

1

NOW, THEREFORE, in consideration of the premises and the mutual agreements contained herein, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## AGREEMENT

1. <u>Assignment and Assumption</u>. Subject to Assignee's prior payment of the Purchase Price as set forth below and receipt of Bankruptcy Court Approval, on the earlier of (i) March 18, 2025; and (ii) the day after the Vacate Date at the Premises; (such earlier date, the "<u>Closing Date</u>"); <u>provided</u>, that Assignor or Gordon Brothers shall give Assignee no less than seven (7) days' advance written notice of the Vacate Date:

    (a) Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee, its successors and assigns, all of Assignor's right, title, and interest in and to the Leases.

    (b) Assignee hereby assumes and undertakes to pay, perform, and discharge all of Assignor's obligations and duties with respect to the Leases on and after the earlier of March 1, 2025 or the Vacate Date and as modified by the Bankruptcy Court Approval.

2. <u>Payment of Purchase Price</u>. Assignee shall, on the date hereof, deliver to GBRP the purchase price for the Leases in the amounts set forth on <u>Schedule A</u> hereto (the "<u>Purchase Price</u>"). If the assumption and assignment of the Leases do(es) not occur by March 18, 2025, Assignee will additionally reimburse GBRP for all amounts that came due, were required to be paid, and were in fact paid in connection with the Leases on and after March 18, 2025.

3. <u>Assumption of Liabilities</u>. In addition to assuming all remaining obligations that exist with respect to the Leases, including, but not limited to, accrued but unbilled adjustments for common area maintenance, real estate taxes, and insurance, Assignee shall assume and cure all outstanding liabilities with respect to the Leases. To the best of Assignor's knowledge, the rent arrearage including all Cure Costs owed to the Landlord as of the date hereof is set forth on Schedule B attached hereto.

4. <u>No Further Liability of Assignor</u>. From and after the date hereof, Assignor shall have no further obligations and duties with respect to the Leases.

5. <u>Further Assurances</u>. At any time and from time to time after the date hereof, at the request of Assignee, and without further consideration, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey, and assign to Assignee Assignor's rights to the Leases.

6. <u>"As Is Where Is" Transaction</u>. Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Leases. Without limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any premises subject to the Leases. Assignee further acknowledges that Assignee has conducted an independent inspection and

investigation of the physical condition of premises subject to the Leases and all such other matters relating to or affecting the Leases as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Leases, Assignee is doing so based upon such independent inspections and investigations. Accordingly, Assignee will accept the Leases "AS IS" and "WHERE IS."

7. Compliance With Law. Assignee hereby agrees to comply with all applicable laws. Assignee agrees to indemnify and hold Assignor harmless for any violation or alleged violation of this section.

8. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to conflicts of laws principles that would require the application of the law of another jurisdiction.

9. Jurisdiction. The Parties consent to the exclusive jurisdiction of, and entry of final orders and judgments by, the United States Bankruptcy Court for the District of Delaware with respect to all matters arising under or relating to this Agreement. The Parties hereby irrevocably waive any objection on the grounds of venue, forum non conveniens, or any similar grounds and irrevocably consent to service of process by mail or in any other manner permitted by applicable law. The Parties further hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising or relating to this Agreement.

10. No Reliance. Each Party represents and warrants that in entering into this Agreement it is relying on its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter.

11. Third Party Beneficiaries. This Agreement is expressly intended to confer rights and benefits upon GBRP, and GBRP shall have the right to enforce the provisions of this Agreement.

12. Construction. This Agreement has been drafted through a cooperative effort of both Parties, and neither Party shall be considered the drafter of this Agreement so as to give rise to any presumption of convention regarding construction of this document. All terms of this Agreement were negotiated in good faith and at arm's-length, and this Agreement was prepared and executed without fraud, duress, undue influence, or coercion of any kind exerted by any of the Parties upon the other. The execution and delivery of this Agreement is the free and voluntary act of the Parties.

13. Execution in Counterparts. This Agreement may be executed electronically and delivered in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All such counterparts, when so executed, shall be deemed to constitute one final agreement as if one document had been signed by all Parties to this Agreement. Each such counterpart, upon execution and delivery of all counterparts, shall be deemed a complete and original of this Agreement. The Parties hereby each agree that its authorized signatories may receive and review this Agreement via electronic record and may sign this Agreement via electronic digital signature (i.e., DocuSign or similar electronic signature technology), and the

Parties may rely on such electronic digital signatures as if they are original signatures by each Party or duly authorized representatives of each Party, and delivery of an executed copy of this Agreement by facsimile or by other electronic means (.pdf) shall be legal and binding and shall have the same full force and effect as if an original executed copy of this Agreement had been delivered. No Party may raise the use of an image transmission device or method or the fact that any signature was transmitted as an image as a defense to the enforcement of such document.

*[Signature Pages Follow]*

IN WITNESS WHEREOF, the foregoing Agreement is dated effective as of the date and year first written above.

**BIG LOTS STORES, INC.**

By: _____*Joshua H. Nanberg*_____
Name:  Joshua H. Nanberg
Title:  VP, Real Estate

**HOME BUYS, INC.**

By: _____*Karen Waldmann*_____
Name:  Karen Waldmann
Title:  President

*[Signature Page to A&A Agreement]*

## Schedule A

Leases

Big Lots Store No. 1718

| | |
|---|---|
| Purchase Price: | $100,000 |
| Store Location: | 985N Bridge Street, Chillicothe, OH 45601 |
| Landlord: | RCG-Chillicothe, LLC<br>3060 Peachtree Road<br>Suite 400<br>Atlanta, GA 30355 |

Lease:

Lease date June 6, 2002 between Big Lots Stores, Inc and Glimcher Properties Limited Partnership
Option exercised by letter dated June 1, 2012
Second Lease Modification Agreement dated May 21, 2015 between Big Lots Stores Inc. and Chillicothe Center I, LLC
Third Lease Modification Agreement dated April 13, 2017 between Big Lots Stores, Inc and RCG-Chillicothe, LLC extending lease term from February 1, 2018 to January 31, 2023
Fourt Lease Modification Agreement dated July 17, 2019 between Big Lots Stores, Inc. and RCG-Chillicothe, LLC extending lease term from February 1, 2023 to January 31, 2029

Big Lots Store No. 5176

| | |
|---|---|
| Purchase Price: | $100,000 |
| Store Location: | 1171 Hill Road N, Pickerington, OH 43147 |
| Landlord: | 1111 Hill Rd., L.P.<br>2600 Corporate Exchange Dr<br>Suite 175<br>Columbus, OH 43231 |

Lease:

Lease dated March 31, 2011 between Big Lots Stores, Inc and CB Richard Ellis as Receiver for Hill Road Plaza, LLC

        First Lease Extension and Modification Agreement between Big Lots Stores, Inc. and 1111 Hill Rd., LLC extending Lease term from February 1, 2022 to January 31, 2032.

        Amendment to Lease effective October 1, 2024 between Big Lots Stores, LLC and 1111 Hill Rd., L.P.

SCHEDULE B
RENT ARREARAGE

Big Lots Store No. 1718:  985 N Bridge St., Chillicothe, OH 45601     $6,052.00

Big Lots Store No. 5176: 1171 Hill Rd. N., Pickerington, OH 43147     None

8