**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>Hearing Date: June 26, 2025 at 1:00 p.m. (ET)<br>Objection Deadline: June 13, 2025 at 4:00 p.m. (ET) |

**MOTION BY GORDON BROTHERS RETAIL PARTNERS, LLC**
**SEEKING AN ORDER (A) ENFORCING ASSET PURCHASE**
**AGREEMENT, AGENCY AGREEMENT AND SALE APPROVAL**
**ORDER AND (B) GRANTING RELATED RELIEF**

Gordon Brothers Retail Partners, LLC ("GBRP"), through its undersigned co-counsel, respectfully seeks the issuance and entry of an order of the Court, inter alia, (a) enforcing the GBRP Sale Order and GBRP APA (including the associated GBRP Agency Agreement)(each as defined below), by (i) compelling the Debtors to turn over to GBRP those funds wrongfully withheld by the Debtors (*i.e.*, (x) GBRP's allocable portion of the Corporate/HQ Facility sale proceeds (in the amount of $10,000,000), and (y) any other GBRP proceeds diverted in contravention of the governing agreements (in an amount not less than $295,095.29)), or, alternatively, (b) pending resolution of the disputed items, requiring the Debtors to escrow all disputed funds being withheld by the Debtors, in the aggregate amount of not less than $10,295,095.29, and (c) granting GBRP such other and further relief as may be just and proper.

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

{02127630;v1 }

**Jurisdiction, Venue, and Authority**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

2. This matter is a "core" proceeding within the meaning of 28 U.S.C. § 157(b). In addition, GBRP confirms its consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment in connection herewith consistent with Article III of the United States Constitution.

3. Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").

**Background**

**A.     General Background**

5. On September 9, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have been authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

6. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [D.I. 95] entered by the Court in each of the Chapter 11 Cases on September 10, 2024.

7.       On September 23, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 248].

**B.    The Asset Purchase Agreement and Sale Approval**

7.       As the Court will no doubt recall, in mid-December 2024 the Debtors learned that Nexus no longer believed it was possible to close the previously approved sale to Nexus. Following the collapse of the Nexus sale, the Debtors determined that the most value-maximizing path forward for the estates was to commence store closing sales at all of the Debtors' remaining stores while, on a parallel track, continuing to pursue alternative going-concern transactions and/or other asset sales in an effort to preserve the Debtors' businesses.

8.       Pursuant to that certain *Motion Of Debtors For Entry Of An Order (I) Approving Sale Of Debtors' Assets Free And Clear Of Liens, Claims, Interests, And Encumbrances, (II) Authorizing The Debtors To Enter Into And Perform Under The GBRP APA, (III) Authorizing Assumption And Assignment Of Executory Contracts And Unexpired Leases, And (IV) Granting Related Relief* (the "GBRP Sale Motion") [D.I. 1437], the Debtors sought approval to enter into an alternative Asset Purchase Agreement (the "GBRP APA")[2], including an associated Agency Agreement (the "GBRP Agency Agreement") with GBRP. True and correct copies of the GBRP APA and GBRP Agency Agreement are annexed hereto as Exhibits "A" and "B", respectively.

9.       As noted by the Debtors in the GBRP Sale Motion, given that the Nexus sale was no longer actionable, the GBRP transaction represented the best alternative to a complete chain-wide liquidation, in that it would: (a) provide greater certainty with respect to the Debtors' ability to satisfy administrative and other go-forward administrative expenses in the Chapter 11 Cases, (b) preserve at

---

[2]    Capitalized terms used herein unless otherwise defined shall have the meanings ascribed thereto in the GBRP APA, GBRP Agency Agreement or GBRP Sale Order, as the context makes applicable.

least some of the Debtors' stores and provide employment opportunities to certain employees, and (c) maximize the remaining value of the Debtors' estates. GBRP Sale Motion, ¶ 24.

10. Critical to the success of the GBRP sale transaction, the GBRP APA included GBRP's commitment to provide necessary funding strictly in accordance with two (2) heavily negotiated and memorialized budgets, as follows: (a) an "APA Administration Budget", pursuant to which GBRP would make weekly payments to the estates for the Debtors' estimate of go-forward administrative expenses, and (b) a "Winddown Budget" (and together with the APA Administration Budget, the "Budgets") consisting of, among other things, (a) severance for store and corporate employees, (b) certain tax liabilities, (c) workers' compensation liabilities, and (d) certain professional and U.S. Trustee fees. True and correct copies of the APA Administration Budget and Winddown Budget are annexed hereto as Exhibits "C" and "D", respectively. In addition to GBRP's agreement to fund the amounts provided for in the Budgets, the GBRP Agency Agreement provided GBRP's further agreement to pay certain post-closing "Expenses" incurred in furtherance of the conduct of the store closing sales - each as enumerated in Section 4.1 of the GBRP Agency Agreement.

13. On December 30-31, 2024 (the "Sale Hearing"), the Court conducted two (2) days of evidentiary hearings concerning the relief requested in the GBRP Sale Motion. At the conclusion of the Sale Hearing, the Court entered its oral ruling on the record approving the GBRP sale transaction, as provided for in the GBRP APA and GBRP Agency Agreement, respectively. Following a further hearing held on January 2, 2025, the Court issued its *Order (I) Approving The Asset Purchase Agreement, (II) Authorizing And Approving The Sale Of Certain Of The Debtors' Assets Free And Clear Of All Claims, Liens, Rights, Interests, Encumbrances, And Other Assumed Liabilities And Permitted Encumbrances, (III) Authorizing And Approving The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (IV) Granting Related Relief* (the "GBRP Sale Order")[D.I. 1556]. A true and correct copy of the GBRP Sale Order is annexed hereto as Exhibit "E".

14. On January 3, 2025, among other things (a) the "Initial Closing" under the GBRP APA occurred, (b) GBRP paid the required components of the Purchase Price (per Section 3.01 of the GBRP APA), and (c) GBRP's obligation to fund the Budgets went live.

**C.  Debtors' Intentional Breaches of the GBRP APA**

15. Section 3.01(b) of the GBRP APA provides that upon the sale of the Corporate/HQ Facility (the "HQ Sale"), if any, the Net Proceeds of any such sale (after deduction of any applicable HQ Sale Deductions) shall be allocated as between GBRP and the Debtors as follows:

> a) The first $10,000,000 is payable to GBRP; and
>
> b) All remaining Net Proceeds above $10,000,000 shall be for the Debtors' account.

16. By motion dated February 5, 2025 [D.I. 1942] (the "HQ Sale Motion"), the Debtors sought authorization to sell, transfer, convey and assign all of their right, title and interest in and to the Corporate/HQ Facility to OhioHealth Corporation for an aggregate purchase price of approximately $36,000,000.

17. Pursuant to that certain *Order (I) Authorizing And Approving (A) The Debtors' Entry Into And Performance Under The Purchase Agreement, (B) The Sale Of The Purchased Assets, (C) The Assumption And Assignment Of The Leases And The City Agreement, And (D) The Debtors' Entry Into The New Lease And (II) Granting Related Relief*, entered February 26, 2025 [D.I. 2103] (the "HQ Sale Order"), the Court approved the HQ Sale Motion.

18. On April 11, 2025, the Debtors closed the sale of the Corporate/HQ Facility to OhioHealth, and in that connection received the purchase consideration therefor. Notwithstanding the explicit terms of Section 3.01(b) of the GBRP APA, the Debtors have knowingly and intentionally breached the GBRP APA and violated the GBRP Sale Order by, among other things, failing and refusing to pay over to GBRP its allocable portion of the Corporate/HQ Facility sale proceeds – *i.e.*, $10,000,000.

19. In addition to its wrongful withholding of the Corporate/HQ Facility sale proceeds, the Debtors have wrongfully withheld additional proceeds to which GBRP is entitled under the GBRP APA and GBRP Agency Agreement, as follows: (a) despite written demand, the Debtors have wrongfully refused to turn over to GBRP certain lease sale proceeds that a Designated Buyer inadvertently delivered to the Debtors instead of GBRP ($295,095.29) and (b) despite written demand, the Debtors have wrongfully refused to turn over to GBRP certain store closing sale and other asset disposition proceeds.[3] In each case, GBRP is indisputably contractually entitled to recover the subject proceeds by the express terms of the parties' governing agreements.[4]

20. When challenged about these breaches, Debtors' counsel sent an April 17, 2025 letter to GBRP contending, erroneously, that Debtors' withholding of the Corporate/HQ Facility and other sale proceeds was justified because GBRP had allegedly (a) failed to fund certain required amounts under the GBRP APA and (b) improperly attempted to claw back certain funds previously advanced to the Debtors, in all aggregating approximately $11.551 million. A copy of counsel's April 17th letter is attached hereto as Exhibit "F". More specifically, the Debtors contend GBRP owes the Debtors in respect of the following items:

---

[3] In this connection, Section 2.08 of the GBRP APA, entitled *Misallocated Assets* is instructive, wherein it provides in relevant part: "If …, following a Closing, the Selling Entities receive any payments in respect of the Assets acquired by Buyer (or a Designated Buyer) at such Closing, such Selling Entities shall promptly remit such payments to Buyer or other entity designated by Buyer…" The Debtors have breached Section 2.08 by failing and refusing to turn over to GBRP the Corporate/HQ Facility sale proceeds, as well as the proceeds of certain lease sales and other store closing sale proceeds.

[4] GBRP acknowledges that it is still reviewing invoices issued by the Debtors totaling $3.108 million. GBRP has made multiple requests of the Debtors that they provide documentation supporting the subject invoices. Additionally, as a result of the instant disputes, GBRP has not yet funded additional invoices totaling $2.435 million pending resolution of the instant disputes.

| Disputed Item | Disputed Amount |
|---|---|
| Pre-Closing Payroll | $7,580,000 |
| Outbound Freight | $2,773,000 |
| Benefits Cap Adjustment | $500,000[5] |
| March Corporate Payroll | $698,000 |
| **TOTAL** | **$11,551,000** |

21. By letter dated May 9, 2025, GBRP's counsel responded to counsel's April 17th letter, disputing that any of the amounts asserted as being due and owing by GBRP are in fact owed under either the GBRP APA or GBRP Agency Agreement. A copy of counsel's May 9th letter is attached hereto as Exhibit "G".

22. Regarding each of the referenced disputed items, GBRP asserts as follows:

| Disputed Item | GBRP Response |
|---|---|
| Pre-Closing Payroll | There can be no colorable dispute that neither the APA Administration Budget nor Winddown Budget provide for GBRP's obligation to fund any of the asserted amounts in respect of any pre-closing payroll or benefits for Debtors' employees.[6]<br><br>Sec. 2.04 of the APA makes clear that the subject payroll amounts are expressly "Excluded Liabilities", and thus not the obligation of GBRP.[7] |

---

[5] While Debtors' April 17th letter asserts that the amount in dispute is $500,000, GBRP believes that if the Debtors calculated the Benefits Cap correctly, it would result in $1,035,637.63 less funding by GBRP, and not the $500,000 claimed by Debtors.

[6] GBRP acknowledges that following the Initial Closing it swept all available funds as permitted under the terms of the GBRP APA, and thereafter provided interim funding to the Debtors to enable them to fund their accrued pre-closing payroll obligations; however, at no time did GBRP agree to amend the GBRP APA to add those pre-closing amounts as an Assumed Liability under Section 2.03. The record of the sale approval hearing makes clear that the only pre-closing item not expressly identified in the GBRP APA that GBRP agreed to fund – strictly as an accommodation to the Debtors and the landlords of the remaining store locations - was in respect of the rent obligations for those stores that were to be the subject of the store closing sales under the GBRP Agency Agreement for the period January1-2, 2025.

[7] In this regard, GBRP APA Sec. 2.04 (Excluded Liabilities) makes clear that Pre-Closing Liabilities, such as the disputed pre-closing payroll liabilities at issue here, constitute "Excluded Liabilities", wherein it provides in relevant part:

"(c) *Company Employees; Seller Benefit Plans*. All Liabilities (i) arising out of, or relating to, the employment, or the termination of employment, of any current or former Company Employees (including any severance or other termination-related payments), in each case, ***other than Liabilities to the extent arising entirely after the Initial Closing*** or (ii) arising out of, or relating to any Seller Benefit Plan, in each case, whether arising before, on or following the Initial Closing;" (emphasis added).

| | |
|---|---|
| | The Agency Agreement provides similar clarity in Sec. 4.1(b), which obligates the Agent only in respect of wages for Retained Employees used in the sale and only for those actual hours worked during the sale. Nothing in the Agency Agreement obligates GBRP to fund any amount for any period prior to the Initial Closing. |
| Outbound Freight | The APA Administration Budget clearly identifies "Outbound Freight" as an obligation to be funded by GBRP. Sec. 4.01(s) of the GBRP Agency Agreement similarly provides that outbound freight is included as part of Distribution Center Expenses to be funded by GBRP. GBRP has met its obligation under the GBRP APA and GBRP Agency Agreement by funding all amounts invoiced by the Debtors in respect of Outbound Freight.<br><br>Despite having invoiced and been paid by GBRP for Outbound Freight, the Debtors now contend that the APA Administration Budget suffers from a "scriveners error", in that the reference therein to "Outbound Freight" should instead have referenced "Inbound Freight", and further that GBRP owes the Debtors an additional $2.773 million.<br><br>Section 2.04 of the GBRP APA specifically provides that: "[n]otwithstanding anything herein to the contrary, Buyer and any Designated Buyers will not assume and will not be obligated to assume or be obliged to pay, perform, or otherwise discharge or in any other way be liable or responsible for any Liability of the Selling Entities (with respect to the Business, the Assets or otherwise) other than the Assumed Liabilities ….". There can be no legitimate dispute that the subject inbound freight is not identified in either Budget, and neither does it constitute an Assumed Liability under Section 2.03, and therefore must be an Excluded Liability.<br><br>Moreover, at no time has GBRP agreed to amend either the GBRP APA, GBRP Agency Agreement, APA Administration Budget or Winddown Budget to include "Inbound Freight", as demanded by the Debtors, and Debtors' contention of a scriveners error cannot serve to unilaterally effectuate any such amendment.[8] |

---

[8] Section 13.04 of the GBRP APA, entitled *Entire Agreement; Amendment*, provides: "This Agreement (including the Schedules, Disclosure Schedules and the Exhibits), the other Transaction Documents, and the Confidentiality Agreement supersede all prior agreements between Buyer and the Selling Entities with respect to its subject matter and constitute a complete and exclusive statement of the terms of the agreements between Buyer and the Selling Entities with respect to the subject matter hereof and thereof. Except as permitted under Section 2.05(c), this Agreement, including all exhibits hereto, ***may not be amended, modified or supplemented, or the terms hereof waived, except by a written agreement executed by both Buyer and Seller***." Emphasis added. As noted above, no

| | |
|---|---|
| Benefits Cap Adjustment | The Debtors erroneously contend that the calculation of the "Benefits Cap" under Sec. 4.1(c) of the GBRP Agency Agreement contemplates a denominator that is a fully loaded dollar amount inclusive of payroll taxes, FICA, unemployment taxes, workers' compensation and health care insurance benefits. The Debtors therefore assert that GBRP underfunded employee benefits by approximately $500,000.<br><br>While Sec. 4.1(c) of the GBRP Agency Agreement references items such as payroll taxes, FICA, unemployment taxes, workers' compensation and health care insurance benefits in defining the universe of items encompassed by the Benefits Cap, that same provision makes clear that the mathematical calculation of the Benefits Cap is determined instead by reference solely to each Retained Employee's "base wages", which does not include the aforementioned items. |
| | |
| March Corporate Payroll | The Debtors contend that notwithstanding that the store closing sales concluded on March 17th, Debtors' corporate employees continued to work between March 18-31 for the benefit of GBRP by, among other things, processing expenses and receipts. The Debtors therefore assert that GBRP is obligated to fund store-level and corporate payroll through and including March 31st.<br><br>The GBRP APA provided that the "Designation Rights Period" expired effective as of February 28, 2025; provided, that same agreement afforded GBRP the unilateral right to extend the Designation Rights Period to a date not later than March 31, 2025.[9] Pursuant to a notice dated February 28, 2025, GBRP exercised its right to extend the Designation Rights Period through March 17, 2025 with respect to those locations identified in Exhibit A to the notice.[10] In connection with the foregoing extension, GBRP and the Debtors negotiated an updated APA Administration Budget and Winddown Budget to cover those |

---

such written agreement exists between GBRP and the Debtors providing for an amendment to either the GBRP APA, GBRP Agency Agreement, Administrative Budget or Wind-Down Budget.

[9]    Sec. 1.01 of the GBRP APA defines "Designation Rights Period" as follows: "the period commencing on the Initial Closing Date and ending at 11:59 pm Eastern time on February 28, 2025, or such earlier date as Buyer may determine, in its sole discretion; provided that such period may be extended until March 31, 2025 at the election of Buyer so long as Buyer agrees in writing to bear all Liabilities, costs and expenses to be incurred by the Selling Entities during such extension set forth in an updated APA Administration Budget and Winddown Budget prepared in good faith by Seller."

[10]   Pursuant to a supplemental notice dated March 17, 2025, GBRP exercised its right to further extend the Designation Rights Period to a date not later than March 31, 2025, solely with respect to those locations identified in Exhibit A to the notice.

{02127630;v1 }                              9

| | additional Liabilities to be incurred between March 1-17, 2025 (*i.e.*, the extended Designation Rights Period). |
|---|---|
| | Under the express terms of the GBRP APA and GBRP Agency Agreement, GBRP only obligated itself to fund amounts through and including March 17th (*i.e.*, the conclusion of the Designation Rights Period), in each case as reflected in the updated APA Administration Budget and Winddown Budget, and not beyond. To the extent the Debtors made a determination to retain certain employees beyond that date, any obligations in respect of payroll and benefits for those employees remain with the Debtors, and not GBRP. |

**Relief Requested**

**The Court Should Enforce The GBRP APA,
GBRP Agency Agreement And GBRP Sale Order**

23. As noted above, notwithstanding the explicit terms of Section 3.01(b) of the GBRP APA, the Debtors have knowingly and intentionally breached the GBRP APA and violated the GBRP Sale Order by, among other things, failing and refusing to pay over to GBRP its allocable portion of the Corporate/HQ Facility sale proceeds (*i.e.*, $10,000,000). In addition, GBRP believes the Debtors have withheld store closing sale and other lease disposition proceeds to which GBRP is indisputably contractually entitled to under both the GBRP APA and GBRP Agency Agreement, respectively, and further have intentionally diverted these other GBRP proceeds in contravention of the governing agreements.

24. The Debtors have withheld the referenced funds in furtherance of an intentional, thinly veiled scheme the design of which is to create a unilateral offset right as a means to leverage GBRP to pay amounts that it is not contractually responsible for under either the GBRP APA or GBRP Agency Agreement. By withholding the funds in question, the Debtors have breached the GBRP APA and violated the GBRP Sale Order and has caused harm to GBRP, as to which GBRP continues to be harmed.

25. What is crystal clear from a review of the Budgets, none of the disputed items are

covered by either the APA Administration Budget or Winddown Budget; similarly, none of the disputed items constitute Expenses under Section 4.1 of the GBRP Agency Agreement, which represent the sole source of GBRP's funding obligations under the GBRP APA. Sections 2.03 and 2.04 are equally clear that none of the disputed items constitute Assumed Liabilities, and instead are explicitly Excluded Liabilities, and thus do not give rise to any obligation on GBRP's part to provide supplemental funding for any of the disputed items. The Debtors' unilateral effort at creating a self-help remedy cannot change the inescapable fact that GBRP is not obligated to pay the amounts sought by the Debtors.

26. Accordingly, GBRP seeks an order of the Court compelling the Debtors to immediately turn over to GBRP (a) its allocable portion of the Corporate/HQ Facility sale proceeds in the amount of $10,000,000, and (b) any other GBRP lease disposition and store closing sale proceeds diverted in contravention of the governing agreements.

27. In addition to the foregoing relief, pending resolution of the disputed items GBRP further seeks an order of the Court, requiring the Debtors to escrow (a) GBRP's allocable portion of the Corporate/HQ Facility sale proceeds (in the amount of $10,000,000), and (b) any other GBRP proceeds diverted in contravention of the governing agreements.

**Reservation of Rights**

28. GBRP reserves its rights to supplement this Motion to (a) assert such other or additional amounts that it may discover are due and owing to it, (b) assert claims for damages suffered by it as a result of Debtors' breach of the GBRP APA, GBRP Agency Agreement and GBRP Sale Order, and (c) enforce any other rights arising under the GBRP APA, GBRP Agency Agreement and GBRP Sale Order.

WHEREFORE, for the reasons set forth above, GBRP respectfully requests the Court enter an order providing substantially in the form of Exhibit "H" hereto, among other things, (a) enforcing the GBRP Sale Order and GBRP APA (including the associated GBRP Agency Agreement), (b) compelling the Debtors to turn over to GBRP those funds wrongfully withheld by the Debtors (*i.e.*, (i) GBRP's allocable portion of the Corporate/HQ Facility sale proceeds (in the amount of $10,000,000) and (ii) any other GBRP proceeds diverted in contravention of the governing agreements ($295,095.29)), and (c) pending resolution of the disputed items, requiring the Debtors to escrow all disputed funds being withheld by the Debtors, in the aggregate amount of not less than $10,295,095.29, and (d) granting GBRP such other and further relief as may be just and proper.

Dated: May 30, 2025
Wilmington, Delaware

**ASHBY & GEDDES, P.A.**

*/s/ Gregory A. Taylor*
Gregory A. Taylor (No. 4008)
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801
Phone: (302) 654-1888
Email: gtaylor@ashbygeddes.com

-and-

**RIEMER & BRAUNSTEIN LLP**
Steven E. Fox (pro hac vice)
Times Square Tower
Seven Times Square, Suite 2506
New York, New York 10036
Tel: 212-789-3150
Email: sfox@riemerlaw.com

*Attorneys for Gordon Brothers Retail Partners, LLC*