# **EXHIBIT F**

(Debtors' April 17, 2025 Letter)

**Davis Polk**

James I. McClammy
+1 212 450 4584
james.mcclammy@davispolk.com

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
davispolk.com

April 17, 2025

Re: *In re Big Lots, Inc., et al.*, Case No. 24-11967 (JKS) – Funds Owed by Gordon Brothers

Steven E. Fox
Riemer & Braunstein LLP
Times Square Tower, Suite 2506
Seven Times Square
New York, New York 10036
sfox@riemerlaw.com

Dear Mr. Fox:

We write on behalf of the Debtors in the above-captioned action concerning funds owed by Gordon Brothers Retail Partners, LLC ("**Gordon Brothers**") under the court-approved Asset Purchase Agreement dated as of January 3, 2025 (the "**APA**"). As you know, the Debtors are currently working to wind down their estate to provide maximum recovery to their administrative claimholders, many of whom will receive substantially less than full recoveries. It has come to our attention that Gordon Brothers is refusing to make approximately $11.551 million in payments that Gordon Brothers is obligated to pay the Debtors pursuant to the APA— seemingly, as to most of this amount, as part of an attempt to improperly claw back funds that Gordon Brothers actually paid to the Debtors pursuant to their agreement. Gordon Brothers' conduct is directly harming the Debtors' administrative claimholders by reducing their potential recoveries, and the Debtors have an obligation to recoup these funds for those administrative claimholders, including by an action to enforce the APA.

Specifically, Gordon Brothers is attempting to claw back, or otherwise not pay, four categories of funds:

1. **Payroll for the Week of December 29 – $7.58 million**

Before closing the APA, Gordon Brothers revised and approved a store operating expense budget that, among other things provided the dollar figures that Gordon Brothers intended to pay to cover payroll. This budget included a specific line item for payroll from the period between December 29, 2024 through January 4, 2025 ("**Week One**"). Operating in reliance on Gordon Brothers' promise to fund the Week One payroll and a "Flow of Funds" that directly funded and reflected the estimated payroll for this period, the Debtors closed the transactions contemplated by the APA on January 3, 2025. As Gordon Brothers knows, under the APA, Gordon Brothers was entitled to any cash in the Debtors' accounts and, upon closing, Gordon Brothers exercised this right. As consideration under the APA, Gordon Brothers agreed to fund expenses that were due after the closing date including the payroll for Week One, which was not payable until after the closing date. And, consistent with that duty, Gordon Brothers gave the Debtors funds to pay the Week One payroll.

Absent Gordon Brothers' agreement to cover the Week One payroll and other post-closing expenses, the Debtors could not have agreed to, or sought court approval of, the APA. If Gordon Brothers had designated the funds in the Debtors' cash accounts under the APA, without separately agreeing to fund the Week One payroll, Gordon Brothers would have left the Debtors with no way to pay their employees. And, even if the Debtors were willing to enter into an APA that left them unable to meet payroll, the Debtors highly doubt that the Court would have approved such an agreement.

# Davis Polk

Despite inducing the Debtors to enter the APA by agreeing to fund the Week One payroll and despite actually honoring its agreement, at the time, and funding that payroll, Gordon Brothers now seeks to renege on its agreement. In response to the Debtors' latest funding request for approximately $14.585 million owed under the APA, Gordon Brothers refused to pay $7,580,559 of the funds owed to the Debtors, purportedly as a credit for payroll for the first five days of payroll for Week One, which Gordon Brothers apparently now regrets agreeing to fund. However, no agreement between the Debtors and Gordon Brothers allows Gordon Brothers to unilaterally claw back funds that it decides, months later, that it would rather have not paid. Accordingly, Gordon Brothers must remit the full amount of funds owed as part of the Debtors' funding request.

## 2. Outbound Freight – $2.773 million

The APA Administrative Budget, as filed with the court, contains a line item for $2.773 million labeled "Outbound Freight." This label was a scrivener's error, which should have referred to "Inbound Freight" but, regardless of the label, this amount was part of the consideration to which the Debtors were entitled under the APA. By agreeing to cover this amount, Gordon Brothers induced the Debtors to incur expenses related to shipping goods to the Debtors in reliance on Gordon Brothers' promised funding. At that point, the Debtors had sold substantially all of their assets to Gordon Brothers so the Debtors accepted shipment of these goods solely for the benefit of Gordon Brothers. Had Gordon Brothers not agreed to cover these expenses, the Debtors never would have incurred them.

However, like the Week One payroll, despite agreeing to cover this amount and inducing the Debtor to enter the APA and despite actually paying this amount, Gordon Brothers is now purporting to reduce the amount owed pursuant to the Debtors' latest funding request by this $2.773 million. Again, no provision of the APA allows Gordon Brothers to unilaterally claw back amounts that it agreed to pay and did pay as consideration for the Debtors' assets. Accordingly, Gordon Brothers must pay the full amount owed to the Debtors.

## 3. Benefits Cap Adjustment – $500,000

In addition to its attempt to claw back funds that it previously agreed to pay under the APA, Gordon Brothers is refusing to pay employee benefits which Gordon Brothers agreed to pay in the Agency Agreement entered as of January 3, 2025 (the "**Agency Agreement**"). Under Section 4.1(c) of the Agency Agreement, Gordon Brothers is "unconditionally responsible" for "amounts payable by [the Debtors] for Retained Employees (including payroll taxes, FICA, unemployment taxes, workers' compensation and health care insurance benefits) for Store-level Retained Employees used in the Sale, in an amount equal to eighteen percent (18%) of base wages for all Store-level Retained Employees." Gordon Brothers, however, has not paid the full amounts owed under this provision.

Specifically, Gordon Brothers has taken the position that the term "base wages" only refers to funds paid to employees as opposed to the full amount that the Debtors' pay for those employees, including payroll taxes, FICA, and other expenses. As a result, Gordon Brothers has underfunded the Debtors' estate by $1.0 million. Gordon Brothers offered to pay $500,000 to resolve this dispute and thus far has reserved for their proposed settlement. Please pay the full contractual amount immediately.

## 4. March Budget Corporate Payroll – $698,000

Consistent with its rights under the APA, Gordon Brothers has extended the Designation Rights Period, as defined therein. In order to facilitate the store operations in March for the sole benefit of Gordon Brothers, the Debtor and financial advisors of GBRP, drafted a mutually agreed upon budget detailing expenses necessary to run the store operations and corporate support activity. In accordance with these extensions, Gordon Brothers was responsible for payroll for both store-level employees and corporate employees through March 31, to the extent utilized. However, Gordon Brothers has again reneged on its agreement to fund Big Lots' expenses and is now refusing to pay approximately $698,000 to fund payroll for corporate employees

**Davis Polk**

for the period between March 17 and March 31 on the ground that Gordon Brothers was purportedly not "utilizing" those employees.

Gordon Brothers' claim that it has not utilized the Debtors' corporate employees for the period between March 17 and March 31 is incorrect. While Gordon Brothers may have stopped operating Big Lots stores during that period, the Debtors' corporate employees continued to work diligently during that period for Gordon Brothers' benefit, including by processing expenses and receipts in connection with Gordon Brothers' earlier operation of Big Lots stores and, in fact, have continued to do so after March 31. Accordingly, Gordon Brothers undisputably utilized the Debtors' corporate employees between March 17 and March 31. Consistent with Gordon Brothers' agreement, those employees' wages must be funded immediately.

\*       \*       \*

As stated, the Debtors owe their creditors a fiduciary duty to maximize recoveries for the estate. Accordingly, if necessary, the Debtors are dutybound to work with the Official Committee of Unsecured Creditors to collect these outstanding funds and we are prepared to take discovery and litigate this matter before the Court as needed. Moreover, as you know, the Debtors closed the sale of their corporate headquarters on April 11, 2025. The Debtors are willing to credit the $10 million designated for Gordon Brothers against the funds Gordon Brothers owes under the APA. We are available to discuss Gordon Brothers payment of the remaining $4,585,000 that it still owes.

Sincerely,

/s/ James I. McClammy
James I. McClammy

cc:
     Brian M. Resnick, Davis Polk & Wardwell LLP
     Adam L. Shpeen, Davis Polk & Wardwell LLP
     Stephen D. Piraino, Davis Polk & Wardwell LLP
     Matthew R. Brock, Davis Polk & Wardwell LLP
     Kevin L. Winiarski, Davis Polk & Wardwell LLP

**VIA EMAIL**