# **EXHIBIT G**

(GBRP's May 9, 2025)

# RIEMER | BRAUNSTEIN

**Steven E. Fox**
sfox@riemerlaw.com
(212) 789-3150 direct
(212) 789-3195 fax

May 9, 2025

**VIA EMAIL**

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Attn:  Adam Shpeen, Esq.

Re:  <u>Big Lots, Inc., et al, Debtors</u>
     <u>Case No. 24-11967 (JKS), Jointly Administered</u>

Dear Adam:

As you are aware, this firm is counsel to Gordon Brothers Retail Partners, LLC ("GBRP"), in connection with its rights and interests under that certain Asset Purchase Agreement, dated January 3, 2025 (the "APA")[1], as same was approved by that certain *"Order (I) Authorizing Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter Into and Perform Under the GBRP APA, (III) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief"* [D.I. 1556] (the "Sale Order").

This letter is intended to be in furtherance of our recent discussions, as well as a response to Jim McClammy's letter of April 17, 2025. As a threshold matter, and as I made clear in our discussions, GBRP categorically disputes the position advanced by the Debtors in Jim's April 17th letter, and believes instead that it has met all of its funding and other obligations under both the APA and Sale Order, respectively. At the same time, GBRP believes that the Debtors have knowingly and intentionally breached the APA and violated the Sale Order by, among other things, withholding proceeds to which GBRP is indisputably contractually entitled to, as well as intentionally diverting other GBRP proceeds in contravention of the governing documents. These intentional breaches expose the Debtors, their officers and directors, and the Estates generally to substantial damage claims, regarding which GBRP reserves any and all rights.

Concerning the disputed items referenced in Jim's April 17th letter, none of the Debtors' assertions are supported by the express terms of the APA, Agency Agreement, or Sale Order. More specifically:

1. <u>Pre-Closing Payroll</u> – We believe there can be no colorable dispute that neither the Administrative Budget nor Winddown Budget provide for GBRP's obligation to fund any of the asserted amounts

---

[1]  Capitalized terms used herein shall have the meanings ascribed thereto in the APA, Agency Agreement or Sale Order, as the context makes applicable.

    in respect of any pre-closing payroll or benefits for Debtors' employees.[2] Additionally, Sec. 2.04 of the APA makes clear that the subject payroll amounts are expressly "Excluded Liabilities", and thus not the obligation of GBRP.[3] The Agency Agreement provides similar clarity in Sec. 4.1(b), which obligates the Agent only in respect of wages for Retained Employees used in the Sale and only for those actual hours worked during the Sale.

2. <u>Outbound Freight</u> – There can be no dispute that the Administrative Budget clearly identifies "Outbound Freight" as an obligation to be funded by GBRP under the APA. The Agency Agreement similarly provides that outbound freight is included as part of Distribution Center Expenses to be funded by the Agent under Sec. 4.01(s) thereof. In this connection, there similarly can be no dispute that GBRP met its obligation under the APA and Agency Agreement by funding all amounts in respect of Outbound Freight. At no time has GBRP agreed to amend either the APA, Agency Agreement, Administrative Budget or Winddown Budget to include "Inbound Freight", as demanded by the Debtors. Furthermore, at no time did GBRP induce the Debtors to do anything in respect of inbound freight beyond its express contractual obligations under the APA. Debtors' assertion of "scriveners error" cannot serve to modify the parties' express contractual agreements, and the APA specifically provides that "[n]otwithstanding anything herein to the contrary, Buyer and any Designated Buyers will not assume and will not be obligated to assume or be obliged to pay, perform, or otherwise discharge or in any other way be liable or responsible for any Liability of the Selling Entities (with respect to the Business, the Assets or otherwise) other than the Assumed Liabilities …." (APA, Sec. 2.04), and the subject inbound freight is in no way an Assumed Liability.

3. <u>Benefits Cap</u> – As we understand the Debtors' position, the Debtors believe that the calculation of the "Benefits Cap" contemplates a denominator that is a fully loaded dollar amount inclusive of payroll taxes, FICA, unemployment taxes, workers' compensation and health care insurance benefits. In contrast, the Agency Agreement makes clear that the Benefits Cap calculation is limited to "base wages", which does not include the aforementioned items.

4. <u>March Corporate Payroll</u> – We believe the record is clear that GBRP extended the Designation Rights Period through March 17th only. Under the express terms of the APA and Agency Agreement, GBRP was only obligated to fund amounts through and including that date, and not beyond. To the extent the Debtors made a determination to retain certain employees beyond that date, those obligations remain with the Debtors, and not GBRP.

---

[2]     GBRP acknowledges that following the Initial Closing it swept all available funds as permitted under the terms of the APA, and thereafter provided funding to the Debtors with which they were able to fund their accrued pre-closing payroll obligations; however, at no time did GBRP agree to amend the APA to add those pre-closing amounts as an Assumed Liability. We understand that GBRP made this point clear in communications with Debtors' representatives at the time of the subject funding in January 2025. The record of the sale approval hearing makes clear that the only pre-closing item that GBRP agreed to fund, as a concession to the Debtors and their landlords, was in respect of the rent obligations for those stores that were the subject of the store closing sales under the Agency Agreement for the period January 1-2, 2025.

[3]     Sec. 2.04 (Excluded Liabilities) provides, in relevant part: "(c) *Company Employees; Seller Benefit Plans*. All Liabilities (i) arising out of, or relating to, the employment, or the termination of employment, of any current or former Company Employees (including any severance or other termination-related payments), in each case, ***other than Liabilities to the extent arising entirely after the Initial Closing*** or (ii) arising out of, or relating to any Seller Benefit Plan, in each case, whether arising before, on or following the Initial Closing;" (emphasis added).

Davis Polk & Wardwell LLP
Attn: Adam Shpeen, Esq.
May 9, 2025
Page 3

      As the foregoing makes clear, GBRP believes that the governing documents make clear that it is not obligated to fund the additional amounts demanded by the Debtors. At the same time, the Debtors' have knowingly, intentionally, and wrongfully (a) withheld turnover of GBRP's allocable share of the Corporate/HQ Sale proceeds ($10,000,000), (b) retained proceeds inadvertently delivered to the Debtors' account rather than GBRP's account by a Designated Buyer, and (c) diverted proceeds from the Designated Deposit Accounts, in each case in direct violation of the APA, Agency Agreement and Sale Order.

      Notwithstanding the parties' seemingly diametrically opposing positions, GBRP previously verbally offered to compromise these matters with the Debtors by providing the Debtors with an additional $2.0 million in funding in full settlement of the disputed amounts. This will serve to confirm that in the spirit of good faith GBRP continues prepared to provide that supplemental funding in full settlement of these disputes conditioned on the Debtors' agreement to release the wrongfully withheld funds and provide a full and complete accounting of all funds received by the Debtors that should have been turned over to GBRP.

      As the foregoing demonstrates, GBRP remains steadfast in its interest in working with the Debtors toward arriving at a negotiated resolution of the disputed issues and in developing an amicable path forward that affords both parties the opportunity to conclude the APA transaction without resort to costly and protected litigation. At the same time, GBRP is fully prepared to seek appropriate redress before the Court to resolve these matters if the Debtors are not prepared to match GBRP's good faith. We encourage the Debtors to meet this interest with a similar commitment to this process by providing a response on or before 5:00 p.m. (ET) on May 14, 2025.

      We welcome an opportunity to discuss these matters with you at your earliest opportunity.

                                           Very truly yours,

                                           *Steven E. Fox*

                                           Steven E. Fox

SEF:
cc:    James McClammy
       Brian Resnick
       Stephen Piraino
       Rick Edwards
       Tricia Parent
       Kunal Kamlani

4341461.2