## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BIG LOTS, INC.,[1]<br><br>          Debtors. | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>**Hearing Date**<br>**August 13, 2025, at 10:00 a.m. (ET)**<br><br>**Reply Deadline**<br>**August 5, 2025, at 11:59 p.m. (ET)** |

### DEBTORS' OBJECTION TO LIPP CDS, INC.'S PROOF OF CLAIM

**Claim No. 10731**
**Claimant: Lipp CDS, Inc.**
**Date Claim Filed: July 8, 2025[2]**
**Amount of Claim as Filed: $62,595.94**
**Status of Claim as Filed: Administrative Expense Priority (§ 507(a)(2))**

> **THIS IS AN OBJECTION TO YOUR CLAIM. THIS OBJECTION ASKS THE COURT TO REDUCE OR DISALLOW THE CLAIM THAT YOU FILED IN THIS BANKRUPTCY CASE. IF YOU DO NOT FILE A RESPONSE BY THE OBJECTION DEADLINE, YOUR CLAIM MAY BE REDUCED OR DISALLOWED WITHOUT A HEARING. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] The bar date in these Chapter 11 Cases (as defined below) was January 31, 2025. However, pursuant to the Stipulation Order (as defined below) entered by the Bankruptcy Court on June 26, 2025, Lipp CDS (as defined below) was permitted to file a proof of claim in the Chapter 11 Cases no later than fourteen (14) days following entry of the Stipulation Order.

Big Lots, Inc. and certain of its affiliates (collectively, the "**Debtors**") that are debtors and debtors in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") hereby submit this objection (this "**Objection**") in response to Proof of Claim No. 10731 (the "**Claim**") filed by Lipp CDS, Inc. ("**Lipp CDS**").  In support of this Objection, the Debtors respectfully represent as follows:

**RELIEF REQUESTED**

1.      The Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) disallowing Lipp CDS's Claim or (b) in the alternative, reclassifying Lipp CDS's Claim as a general unsecured claim.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), rules 1005 and 2002 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), and rule 9004-1 of the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order or judgment by the Court in connection with this Objection to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

### A. The Chapter 11 Cases

3.     On September 9, 2024 (the "**Petition Date**"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors remain in possession of their property and continue to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

4.     The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [D.I. 95] entered by the Court on September 10, 2024, in each of the Chapter 11 Cases.[3]

5.     On September 23, 2024, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors (the "**Committee**") pursuant to section 1102 of the Bankruptcy Code. *See Not. of Appointment of Comm. of Unsecured Creditors* [D.I. 248].

6.     Additional information about the Debtors' business and affairs, capital structure, and prepetition indebtedness, and the events leading up to the Petition Date, can be found in the *Amended Declaration of Jonathan Ramsden as Chief Financial and Administrative Officer of the Debtors in Support of the Debtors' Chapter 11 Proceedings and First Day Pleadings* [D.I. 77-1].

---

[3] *See In re Great Basin, LLC*, No. 24-11966 (JKS); *In re Big Lots, Inc.*, No. 24-11967 (JKS); *In re Big Lots Management, LLC*, No. 24-11969 (JKS); *In re Consolidated Property Holdings, LLC.*, No. 24-11968 (JKS); *In re Broyhill LLC*, No. 24-11971 (JKS); *In re Big Lots Stores – PNS, LLC*, No. 24-11970 (JKS); *In re Big Lots Stores, LLC*, No. 24-11973 (JKS); *In re BLBO Tenant, LLC*, No. 24-11972 (JKS); *In re Big Lots Stores – CSR, LLC*, No. 24-11976 (JKS); *In re CSC Distribution LLC*, No. 24-11974 (JKS); *In re Closeout Distribution, LLC*, No. 24-11978 (JKS); *In re Durant DC, LLC*, No. 24-11975 (JKS); *In re AVDC, LLC*, No. 24-11981 (JKS); *In re GAFDC LLC*, No. 24-11977 (JKS); *In re PAFDC LLC*, No. 24-11982 (JKS); *In re WAFDC, LLC*, No. 24-11979 (JKS); *In re INFDC, LLC*, No. 24-11983 (JKS); *In re Big Lots Ecommerce LLC*, No. 24-11980 (JKS); *In re Big Lots F&S, LLC*, No. 24-11984 (JKS).

7.      On January 2, 2025, the Court entered the *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of all Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1556] (the "**Sale Order**") approving the sale of substantially all of the Debtors' assets (the "**Sale**") to Gordon Brothers Retail Partners, LLC ("**GBRP**").  The Sale subsequently closed on January 3, 2025.  *See Notice of Closing of Sale of Debtors' Assets to Gordon Brothers Retail Partners, LLC* [D.I. 1588].

**B.  The Debtors' Claims Process**

8.      On September 10, 2024, the Court entered the *Order Authorizing Retention and Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent* [D.I. 96] appointing Kroll Restructuring Administration LLC ("**Kroll**") as the claims and noticing agent for these Chapter 11 Cases.  On October 17, 2024, the Court entered the *Order Authorizing Employment and Retention of Kroll Restructuring Administration LLC as Administrative Advisor* Nunc Pro Tunc *to the Petition Date* [D.I. 521] authorizing the Debtors to employ Kroll as the administrative advisor to the Debtors in these Chapter 11 Cases.

9.      On October 31, 2024, the Debtors filed their Schedules and Statements of Financial Affairs.  On November 5, 2024, certain of the Debtors filed amended Schedules.

10.     On November 7, 2024, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Establishing Certain Bar Dates for Filing Proofs of Claim Against the Debtors, and (II) Granting Related Relief, Including Notice and Filing Procedures* [D.I. 1038] (the "**Bar Date Motion**").

11.     On November 20, 2024, the Court entered the *Order (I) Establishing Certain Bar Dates for Filing Proofs of Claim Against the Debtors, and (II) Granting Related Relief, Including Notice and Filing Procedures* [D.I. 1188] (the "**Bar Date Order**").  Pursuant to the Bar Date Order, December 30, 2024 at 11:59 p.m. (prevailing Eastern Time) (if submitted electronically on Kroll's website) or 5:00 p.m. (prevailing Eastern Time) (if submitted by hardcopy) (collectively, the "**Original Bar Date**") was established as the deadline to file a proof of claim in respect of any prepetition claim against the Debtors, unless otherwise provided in the Bar Date Order.  March 10, 2025 was established as the deadline by which a Governmental Unit (as defined in the Bar Date Motion) must file a proof of claim in respect of any prepetition claims against the Debtors.  On November 20, 2024, the Debtors filed and served the Notice of Bar Dates for Filing Proofs of Claim Against the Debtors [D.I. 1195].

12.     At the hearing on December 30, 2024 to approve the Sale, the Court ordered the Original Bar Date extended until January 31, 2025 at 11:59 p.m. (prevailing Eastern Time) (the "**Extended Bar Date**").  *See Order (I) Establishing Certain Bar Dates for Filing Proofs of Claim Against the Debtors, and (II) Granting Related Relief, Including Notice and Filing Procedures* [D.I. 1531] (the "**Amended Bar Date Order**").

13.     On February 7, 2025, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Setting a Bar Date for Filing Proof of Claims for Pre-Closing Administrative Expense Claims Against the Debtors, (II) Establishing Pre-Closing Administrative Expense Claims Procedures, and (III) Granting Related Relief, Including Notice and Filing Procedures* [D.I. 1962] (the "**Admin Bar Date Motion**").

14.     On March 5, 2025, the Court entered the *Order (I) Setting a Bar Date for Filing Proof of Claims for Pre-Closing Administrative Expense Claims Against the Debtors, (II)*

*Establishing Pre-Closing Administrative Expense Claims Procedures, and (III) Granting Related Relief, Including Notice and Filing Procedures* [D.I. 2110] (as amended by D.I. 2214, the "**Admin Bar Date Order**").  Pursuant to the Admin Bar Date Order, April 3, 2025 at 5:00 p.m. (prevailing Eastern Time) (the "**Admin Bar Date**") was establishing as the deadline to file a proof of claim in respect of any Pre-Closing Administrative Expense Claims (as defined in the Admin Bar Date Motion) against the Debtors.

**C.  The Westminster Sale[4]**

15.    On February 2, 2023, Debtor Big Lots Stores – PNS, LLC ("**Seller**") entered into a purchase agreement (the "**Original Purchase Agreement**") with 6351 Westminster Blvd, LLC ("**Buyer**") governing the sale to Buyer by Seller (the "**Original Westminster Sale**") of the land, easements, appurtenances, and improvements located at 6351 Westminster Blvd., Westminster, CA 92683 (the "**Westminster Property**").  A dispute between Buyer and Seller relating to the condition of the Westminster Property at the time of the Original Westminster Sale resulted in Seller filing an action against Buyer in the United States District Court for the Central District of California (the "**California District Court**"), Case No. 8:24-cv-757-MWF-JDE (the "**Westminster Litigation**").

16.    On or about August 9, 2024, judgment was entered in the Westminster Litigation in favor of Seller.[5]  On September 4, 2024, Buyer filed a notice of appeal of the judgment with the Ninth Circuit Court of Appeals, which commenced Appeal Docket No. 24-5432 (the "**Westminster Appeal**").

---

[4] The Debtors hereby incorporate by reference in this section the information contained in the Westminster Sale Motion and the Macke Westminster Sale Declaration (each as defined below).

[5] A copy of the *Order Granting Plaintiff's Motion for Judgment on the Pleadings*, Case No. 24-cv-757-MWF-JDE (C.D. Cal. Aug. 8, 2024) [D.I. 31] is attached hereto as **Exhibit B**.

17.     Following the Petition Date, Seller and Buyer reached an agreement, consistent with the California District Court's order, to resolve the Westminster Appeal.  In doing so, Seller and Buyer agreed to settle and release all disputes, claims, demands, and causes of action against one another relating to the Westminster Litigation, including all causes of action brought or that could have been brought arising from the allegations raised in the Westminster Litigation.

18.     Seller and Buyer likewise agreed for Buyer to purchase the Westminster Property from Seller at a purchase price of $6.1 million (the "**Amended Westminster Sale**").  On November 27, 2024, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Authorizing and Approving (A) the Debtors' Assumption of and Performance Under the Purchase Agreement and (B) the Sale of the Westminster Assets Free and Clear of all Liens, Claims, Encumbrances and Other Interests, (II) Approving the Settlement and (III) Granting Related Relief* [D.I. 1262] (the "**Westminster Sale Motion**").[6]

19.     On December 20, 2024, the Court entered the *Order (I) Authorizing and Approving (A) the Debtors' Assumption of and Performance Under the Purchase Agreement and (B) the Sale of the Westminster Assets Free and Clear of all Liens, Claims, Encumbrances and Other Interests, (II) Approving the Settlement and (III) Granting Related Relief* [D.I. 1407] (the "**Westminster Sale Order**").  The Westminster Sale Order provided, among other things, that "[t]he Debtors may sell the [Westminster] Property free and clear of all claims against or interest in the Debtors, their estates, or any of the [Westminster] Property" because the Debtors had satisfied section 363(f) of the Bankruptcy Code.  Westminster Sale Order at ¶ F.  The Westminster Sale Order also held that:

---

[6] The Westminster Sale Motion was supported by the *Declaration of Chris Macke, Vice President, Legal – Real Estate of Big Lots, Inc. in Support of Motion of Debtors for Entry of an Order (I) Authorizing and Approving (A) the Debtors' Assumption of and Performance Under the Purchase Agreement and (B) the Sale of the Westminster Assets Free and Clear of all Liens, Claims, Encumbrances and Other Interests, (II) Approving the Settlement and (III) Granting Related Relief* [D.I. 1263] (the "**Macke Westminster Sale Declaration**").

> Except for any of the Debtors' post-closing obligations to Buyer set forth in the Purchase Agreement, after the closing of the sale, the ***Debtors shall have no further liability with respect to the [Westminster] Property***, and any claims, whether administrative or otherwise, relating to arising from such [Westminster] Property after the closing of the sale asserted against the Debtors shall be deemed disallowed.

*Id.* at ¶ 9 (emphasis added).

**D. The Claim**

    (i)   <u>Procedural History</u>

20.    On or about April 18, 2025, counsel to Lipp CDS sent a letter to counsel to the Debtors (the "**Letter**") asserting, among other things, that, in connection with the Original Westminster Sale, Seller had executed a written commission agreement in favor of Lipp CDS (the "**Commission Agreement**") that would entitle Lipp CDS to a brokers' fee of $180,000.00 in the event that a sale of the Westminster Property from Seller to Buyer closed at any time. The Letter also asserted that, although Seller and Buyer had settled the Westminster Litigation, such settlement had no impact on the Commission Agreement.

21.    On May 28, 2025, Lipp CDS filed the *Motion of Lipp CDS, Inc. for Leave to File Proof of Claim After Claims Bar Deadline* [D.I. 2808] (the "**Late Claim Motion**"). The Late Claim Motion requested an extension of thirty (30) days after entry of an order of the Court for Lipp CDS to file a proof of claim relating to the Debtors' purported breach of the Commission Agreement. The Debtors and Lipp CDS consensually resolved the Late Claim Motion through a stipulation executed on June 24, 2025 (the "**Late Claim Stipulation**"), which was approved by the Court pursuant to the *Order Approving the Joint Stipulation by and Among the Debtors and*

*Lipp CDS, Inc. Resolving Motion of Lipp CDS, Inc. for Leave to File Proof of Claim After Claims Bar Deadline* [D.I. 2917] (the "**Stipulation Order**").[7]

22.    The Late Claim Stipulation and Stipulation Order provided that Lipp CDS may file a proof of claim in the Chapter 11 Cases no later than fourteen (14) days following entry of the Stipulation Order.  Stipulation Order ¶ 4.

    (ii)    Substance of the Claim

23.    On July 8, 2025, Lipp CDS filed the Claim against Debtor Big Lots, Inc. in the amount of $62,595.94.  The Claim asserts a principal amount of $60,000 plus $2,595.64 in interest accrued after January 31, 2025 pursuant to section 3289 of the California Civil Code.  Without any support, the Claim asserts administrative expense priority under section 507(a)(2) of the Bankruptcy Code.

24.    Annexed to the Claim are (a) a copy of a closing statement from Chicago Title Insurance Company relating to the Amended Westminster Sale, (b) the *Declaration of Deron Conway* of Lipp CDS in support of the Claim, (c) a copy of the Commission Agreement, (d) a copy of the purchase agreement governing the Original Westminster Sale, (e) a copy of the Westminster Sale Motion, and (f) a copy of the Stipulation Order.

25.    Based on a review of the Claim, the Debtors determined that Lipp CDS has failed to establish as a matter of law that it is entitled to receive a brokers' fee under the Commission Agreement, given that (a) the Westminster Sale Order extinguished such Claim, (b) the Commission Agreement expired by its own terms on February 1, 2024, and (c) the Original Westminster Sale was invalidated by the Westminster Litigation.  Accordingly, the Debtors respectfully request that the Court disallow the Claim in full.  In the alternative, the Debtors

---

[7] A true and correct copy of the Late Claim Stipulation was attached to the Stipulation Order as Exhibit 1.

respectfully request that the Court hold that the Claim is a general unsecured claim and not entitled to administrative expense priority under section 507(a)(2).

<u>**OBJECTION**</u>

**A.  Lipp CDS's Claim Should be Disallowed as a Matter of Law**

26.     Section 502 of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof of which is filed under section 501 of [the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  Pursuant to Bankruptcy Rule 3007(a), a party in interest may object to the allowance of a claim in a writing filed with the Bankruptcy Court.  Fed. R. Bankr. P. 3007(a).  Further, section 502(b)(1) of the Bankruptcy Code provides that the court "shall determine the amount of such claim…as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—such claim is unenforceable against the debtor and property of the debtor…". 11 U.S.C. § 502(b)(1).

27.     When asserting a proof of claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant.  *See In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992); *Matter of Int'l Match Corp.*, 69 F.2d 73, 76 (2d Cir. 1934); *In re Stock Bldg. Supply, LLC*, 433 B.R. 460, 463 (Bankr. D. Del. 2010).  Where the claimant alleges sufficient facts to support its claim, its claim is afforded *prima facie* validity. *See Allegheny*, 954 F.2d at 173; *In re Hercules Offshore, Inc.*, 571 B.R. 633, 638 (Bankr. D. Del. 2017).  A party wishing to dispute a claim's validity must produce evidence sufficient to negate the claim's *prima facie* validity.  *Allegheny*, 954 F.2d at 173–74.  Once an objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence.  *Id.* at 174.  Ultimately, the burden of persuasion is *always* on the claimant.  *Id.*

28.     Lipp CDS's Claim, which presumably consists of (a) one-third of the $180,000.00 brokers' fee asserted to be owed under the Commission Agreement and (b) interest accrued at 10% following the closing of the Amended Westminster Sale, fails for multiple reasons as set forth below.

(i)    <u>Lipp CDS's Claim Was Extinguished by the Westminster Sale Order</u>

29.     The Westminster Sale Order—which Lipp CDS did not appeal nor seek reconsideration of—expressly provides that, except for certain post-closing obligations not relevant here, "the ***Debtors shall have no further liability with respect to the [Westminster] Property***, and any claims, whether administrative or otherwise, relating to arising from such [Westminster] Property after the closing of the sale asserted against the Debtors shall be deemed disallowed."  Westminster Sale Order at ¶ 7 (emphasis added).  The Westminster Sale Order likewise provides that:

> All persons or entities holding liens or interest in the [Westminster] Property arising under or out of, in connection with, or in any way relating to the Debtors or the transfer of such [Westminster] Property to Buyer hereby are forever barred, estopped, and permanently enjoined from asserting against Buyer or its successor or assigns, its property, or such persons' or entities' liens or interests in and to the [Westminster] Property.

*Id.* at ¶ 8.

30.     The Debtors respectfully submit that the language of the Westminster Sale Order is clear:  all claims or interests with respect to the Westminster Property were released and forever barred from being asserted against the Debtors or their estates.  Accordingly, to the extent the Lipp CDS Claim is an "interest" or liability of the Debtors regarding the Westminster Property, the Westminster Sale Order forever extinguished such liability.  Lipp CDS cannot now attempt to relitigate this Court's prior order.

(ii)   <u>The Commission Agreement Expired on February 1, 2024</u>

31.    Lipp CDS's Claim overlooks a crucial fact regarding the Commission Agreement: the agreement expired by its own terms on February 1, 2024, *i.e.*, well before the Debtors filed these Chapter 11 Cases and before the Amended Westminster Sale closed.  *See* Commission Agreement, Proof of Claim No. 10731 at 11.  Because it is undisputed that the Amended Westminster Sale closed on January 31, 2025, *see* Proof of Claim No. 10731 at 2, almost one year after expiration of the Commission Agreement, Lipp CDS's Claim for payment under the Commission Agreement fails by its own terms.  Lipp CDS's Claim should be disallowed for this reason alone.

(iii)  <u>The Commission Agreement Was Not Independent of the Original Westminster Sale Invalidated in the Westminster Litigation</u>

32.    The California District Court's decision in the Westminster Litigation invalidated the Original Purchase Agreement governing the Westminster Sale.  *See generally* Ex. B. Specifically, the California District Court held, among other things, that the Original Purchase Agreement was rendered void by a time-is-of-the-essence clause and Buyer's failure to close by the applicable closing date.  *See id.* at 4–9.  The California District Court likewise rejected Buyer's counterclaim for specific performance.  *Id*. at 9–11.

33.    Once the California District Court invalidated the Original Purchase Agreement, there was no sale for which Lipp CDS could seek a brokers' fee under the Commission Agreement. Following the filing of the Westminster Appeal, when Buyer and Seller reached a commercial agreement to consummate the Amended Westminster Sale and release any claims against each other with respect to the Original Westminster Sale, the parties did not employ Lipp CDS as a broker.  *See* Macke Westminster Sale Decl. at ¶ 5.  Lipp CDS is simply not entitled to a brokers' fee for a sale that never closed.  *See* Commission Agreement, Proof of Claim No. 10731 at 10 ("In

the event that escrow closes between [Buyer] . . . and Seller, Seller agrees to pay a fee for service to Broker in an amount equal to [$180,000.00].  Said fee shall be due and payable to Broker upon close of escrow and paid by the title company from the proceeds of the sale.").

**B.  Lipp CDS's Alleged Claim is not Entitled to Administrative Expense Priority**

34.     The standard for establishing that a claim is entitled to administrative expense priority under section 503(b)(1)(A) is well-established:  (1) the expense must have arisen from a post-petition transaction between the creditor and the debtor; and (2) the expense must have been "actual and necessary" to preserve the estate. *In re Indianapolis Downs, LLC*, 486 B.R. 286, 301 (Bankr. D. Del. 2013) (citing *In re New Century TRS Holdings, Inc.*, 446 B.R. 656, 661 (Bankr. D. Del. 2011)) (internal quotations omitted).  As the party seeking to establish that its purported claim is entitled to administrative expense status, Lipp CDS "carr[ies] a heavy burden to demonstrate that the costs and fees for which it seeks payments provided an actual benefit to the estate."  *In re Bernard Techs., Inc.*, 342 B.R. 174, 177 (Bankr. D. Del. 2006) (quoting *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 532–33 (3d Cir. 1999)).  "[T]he mere potential of benefit to the estate is insufficient for the claim to acquire status as an administrative expense." *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 866 (4th Cir. 1994).

35.     Here, Lipp CDS has asserted that its Claim is entitled to administrative expense status under the Bankruptcy Code.  *See* Proof of Claim No. 10731 at 3.[8]  Lipp CDS fails on both prongs of the test under Third Circuit law.  *First*, Lipp CDS has not proven (nor can it) that the

---

[8] Lipp CDS's Claim form noted that it asserted administrative expense priority under section 507(a)(2) of the Bankruptcy Code.  Accordingly, for the reasons set forth in this section, the Debtors respectfully assert that Lipp CDS does not have a priority claim under section 507(a)(2), in addition to not being entitled to administrative expense priority under section 503(b)(1)(A).

Commission Agreement constituted a post-petition transaction with the Debtors, as the Commission Agreement was executed on February 3, 2023.  Lipp CDS's assertion of administrative expense status fails for this reason alone.  *Second*, nowhere has Lipp CDS provided any evidence or argument as to what benefit it provided to the Debtors' estates in these Chapter 11 Cases.  As set forth above, Lipp CDS was not involved in the negotiation nor consummation of the Amended Westminster Sale.  As such, Lipp CDS cannot (and has not even attempted) to show that it provided *any* benefit to the Debtors' estates, much less one that is "truly 'necessary' to the estate."  *In re Energy Future Holdings Corp.*, 990 F.3d 728, 741–42 (3d Cir. 2021) (citing *Matter of Whistler Energy II, L.L.C.*, 931 F.3d 432, 443 (5th Cir. 2019)).

36.    Accordingly, to the extent the Court finds that Lipp CDS has a valid claim under section 101(5) of the Bankruptcy Code, it should hold that any such claim is a general unsecured claim not entitled to administrative expense priority.

## RESERVATION OF RIGHTS

37.    The Debtors hereby reserve their rights to object to, and seek further reduction of, disallowance or expungement of Lipp CDS's Claim on any other grounds the Debtors may identify. The Debtors expressly reserve the right to amend, modify, or supplement this Objection and to file additional objections to Lipp CDS's Claim or any other claims (filed or not) which may be asserted against the Debtors.

*[Remainder of page intentionally left blank]*

14

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, and grant such other relief as is just and proper under the circumstances.

Dated: July 22, 2025
       Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

/s/ *Casey B. Sawyer*
Robert J. Dehney, Sr. (No. 3578)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Sophie Rogers Churchill (No. 6905)
Casey B. Sawyer (No. 7260)
1201 N. Market Street, 16th Floor
Wilmington, Delaware 19801
Tel: (302) 658-9200
rdehney@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
srchurchill@morrisnichols.com
csawyer@morrisnichols.com

-and-

**DAVIS POLK & WARDWELL LLP**
Brian M. Resnick (admitted *pro hac vice*)
Adam L. Shpeen (admitted *pro hac vice*)
Stephen D. Piraino (admitted *pro hac vice*)
Ethan Stern (admitted *pro hac vice*)
Kevin L. Winiarski (admitted *pro hac vice*)
450 Lexington Avenue
New York, New York 10017
Tel.: (212) 450-4000
brian.resnick@davispolk.com
adam.shpeen@davispolk.com
stephen.piraino@davispolk.com
ethan.stern@davispolk.com
kevin.winiarski@davispolk.com

*Counsel to the Debtors and Debtors in Possession*