# Exhibit A

**LaPuma Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BIG LOTS, INC., et al.[1] | Case No. 24-11967 (JKS) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF ELIZABETH LAPUMA IN SUPPORT OF JOINT MOTION OF DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO APPROVE THE SETTLEMENT WITH CERTAIN OFFICERS AND DIRECTORS OF THE DEBTORS PURSUANT TO 11 U.S.C. § 105(a) AND
<u>FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019</u>**

I, Elizabeth LaPuma, declare as follows:

1. I am the independent director of Big Lots, Inc. (together with its direct and indirect subsidiaries, the "**Debtors**", "**Big Lots**" or the "**Company**"). I was appointed to the Board of Directors of Big Lots (the "**Board**") on January 15, 2025, and I currently serve as the sole member of the Board.

2. I submit this declaration (the "**Declaration**") in support of *Joint Motion of Debtors and the Official Committee of Unsecured Creditors to Approve Entry into Settlement Agreement with Certain Officers and Directors of the Debtors Pursuant to 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 9019* (the "**Motion**"), filed contemporaneously herewith.[2]

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Big Lots, Inc. (9097); Big Lots Management, LLC (7948); Consolidated Property Holdings, LLC (0984); Broyhill LLC (7868); Big Lots Stores - PNS, LLC (5262); Big Lots Stores, LLC (6811); BLBO Tenant, LLC (0552); Big Lots Stores - CSR, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Big Lots eCommerce LLC (9612); and Big Lots F&S, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion and the Settlement Agreement, as applicable.

3. Except as otherwise indicated herein, all of the facts set forth in this Declaration are based on my personal knowledge, my review of the relevant documents, or information provided to me by professionals advising the Company. If called upon to testify, I could and would testify to the facts set herein on that basis. I am over the age of 18 years and am authorized to submit this Declaration.

4. Since the beginning of these Chapter 11 cases, including following the closing of the GBRP Sale in January 2025, in which the Debtors agreed to carve out (a) all potential claims and causes of action held by the Debtors' estates against all current and former directors and officers of the Debtors (collectively, the "**Potential D&O Claims**") and (b) the proceeds from any of the Debtors' D&O insurance policies (collectively, the "**D&O Policy Proceeds**" and together with the Potential D&O Claims, the "**D&O Assets**"), the Debtors engaged with the Committee regarding the Committee's investigation into the viability of the Potential D&O Claims. As part of the Committee's investigation, the Debtors and the Settling D&Os engaged in a lengthy discovery process with the Committee, where the Debtors and their professionals turned over thousands of documents to the Committee for their review. I understand that the Debtors, the Settling D&Os, and each of their respective professionals have produced 25,970 documents (totaling 291,913 pages) to the Committee to date.

5. During the discovery process, on May 16, 2025, counsel to the Committee served a demand letter and accompanying draft complaint (together, the "**Demand Letter**") on counsel to the Settling D&Os. A copy of this letter was also provided to counsel to the Debtors. The Demand Letter set forth certain potential breach of fiduciary duty claims that the Committee believed the Debtors' estates held against the Settling D&Os. The draft complaint set forth the alleged factual bases for such claims, as well as the relief sought with respect to such claims.

6. Following the Settling D&Os' receipt of the Demand Letter, on July 25, 2025, counsel to the Settling D&Os sent a response letter to the Committee. This letter denied all allegations raised against the Settling D&Os, but noted that the Settling D&Os were open to exploring a settlement with the Committee and the insurers of the D&O insurance coverage held by the Debtors. Under the terms of this proposed settlement, Berkshire Hathaway Specialty Insurance, the primary insurer under the Debtors' D&O insurance policies ("**Berkshire**") would make a cash payment to the Debtors' estates in exchange for full releases of the Potential D&O Claims by the Debtors and the Committee.

7. While the Settling D&Os were trading settlement proposals with the Committee, the Debtors and the Settling D&Os also corresponded extensively via email and teleconference with Berkshire, as well as the Debtors' other insurers, regarding the potential insurance coverage available with respect to the Potential D&O Claims.

8. On August 5, 2025, counsel to the Committee sent a settlement counterproposal to counsel to the Settling D&Os. The Settling D&Os responded with a revised settlement proposal in a letter sent to the Committee on August 15, 2025, which was supported by Berkshire. Counsel to the Committee communicated via email to counsel to the Settling D&Os and counsel to the Debtors on August 17, 2025 that the Committee had accepted the terms of the August 15 proposal. In addition to this formal correspondence, the Parties engaged in numerous teleconferences over the summer of 2025, in which they discussed settlement terms and the availability of insurance coverage under the Berkshire D&O Policy and certain other of the Debtors' insurance policies.

9. Following the Parties' agreement in principle on settlement terms, the Parties moved expeditiously on the terms of the Settlement Agreement. The Parties executed the

Settlement Agreement on September 17, 2025. I am supportive of the terms of the Settlement Agreement, for the reasons set forth herein.

10. In my opinion, the terms of the Settlement Agreement are an excellent result for the Debtors' estates, the Committee, and the Settling D&Os. The Settlement Agreement helps avoid complex, expensive, and ultimately uncertain litigation that would ensue were the Committee to seek derivative standing to bring the Potential D&O Claims. The Settlement Agreement also helps the Debtors avoid the continued expense of engaging in discovery with the Committee.

11. Moreover, the Settlement Agreement is the product of arm's length, good-faith negotiations and represents a fair and reasonable outcome with respect to the Potential D&O Claims, as all of the Parties were represented by experienced counsel. The Parties negotiated extensively to reach the terms of the Settlement Agreement, including by formal letter and through numerous teleconferences and emails.

12. Finally, the Settlement Agreement provides for a much-needed cash payment to the Debtors' estates, which will be used to pay administrative expense creditors.

13. For the reasons set forth above, I believe that the Debtors' entry into the Settlement Agreement is in the best interests of the Debtors' estates and all parties in interest.

\*     \*     \*     \*     \*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: September 18, 2025
Greenwich, CT

By: */s/ Elizabeth LaPuma*
Elizabeth LaPuma
Director
Big Lots, Inc.