# Exhibit C

**Settlement Agreement**

EXECUTION VERSION

# RELEASE AND SETTLEMENT AGREEMENT

## PREAMBLE

This Release and Settlement Agreement (including all exhibits, annexes, schedules hereto, the "Agreement"), is made and entered into as of September 17, 2025, by and among the following parties:

a. Big Lots, Inc., Great Basin, LLC, Big Lots Management, LLC, Consolidated Property Holdings, LLC, Broyhill LLC, Big Lots Stores - PNS, LLC, Big Lots Stores, LLC, BLBO Tenant, LLC, Big Lots Stores - CSR, LLC, CSC Distribution LLC, Closeout Distribution, LLC, Durant DC, LLC, AVDC, LLC, GAFDC LLC, PAFDC LLC, WAFDC, LLC, INFDC, LLC, Big Lots eCommerce LLC, and Big Lots F&S, LLC (each a "Debtor" and collectively, the "Debtors");

b. the Official Committee of Unsecured Creditors (the "Creditors' Committee") appointed in the Chapter 11 Cases (defined below); and

c. Bruce K. Thorn, Cynthia T. Jamison, Sandra Y. Campos, James R. Chambers, Wendy L. Schoppert, Christopher J. McCormick, Sebastian J. DiGrande, Marla C. Gottschalk, Kimberly A. Newton, Nancy A. Reardon, Maureen B. Short, Jonathan E. Ramsden, Ronald A. Robins Jr., and Michael A. Schlonsky (collectively, the "D&Os").

Each of the foregoing parties is referred to herein individually as a "Party" and collectively as the "Parties".

## RECITALS

WHEREAS, on September 9, 2024 (the "Petition Date"), each of the Debtors filed for voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), thereby commencing the Debtors' Chapter 11 cases, which are being jointly administered under Case No. 24-11967 (JKS) (the "Chapter 11 Cases").

WHEREAS, on September 23, 2024, the Office of the United States Trustee (Region 3) appointed the Creditors' Committee.

WHEREAS, on May 16, 2025, the Creditors' Committee sent a demand letter and a draft complaint attached thereto (together, the "Demand Letter") to the D&Os.

WHEREAS, the Demand Letter asserts certain alleged Claims and Causes of Action (as such terms are defined herein) against some or all of the D&Os (collectively, the "Asserted Claims").

WHEREAS, the D&Os deny the Asserted Claims in all respects.

1

WHEREAS, on June 6, 2025, Berkshire Hathaway Specialty Insurance ("Berkshire") confirmed that it would treat the assertions made in the Demand Letter as a "Claim" covered by the Berkshire D&O Policy (defined below).

WHEREAS, the Parties recognize that the outcome of litigation in connection with the Asserted Claims, or otherwise, is uncertain and may cause the Parties to incur significant costs and suffer delay in resolving their disputes, and the Parties seek to avoid the uncertainty, cost, and delay of litigating such disputes and have been, therefore, engaged in good-faith, arm's-length negotiations with each other regarding settlement of such disputes;

WHEREAS, as a result of those negotiations, the Parties have each decided to enter into this Agreement in order to avoid the expense, inconvenience, uncertainty, and delay of litigation and to compromise, settle, forever resolve, and finally dispose of the D&O Claims (defined below), including, without limitation, the Asserted Claims, and other matters set forth below, without any admission of fault or liability.

WHEREAS, the Parties agree that this Agreement shall have no force and effect in any respect unless and until it is approved pursuant to a final, non-appealable order of the Bankruptcy Court.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual promises and covenants provided herein, and other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the Parties agree as follows:

1. <u>Recitals</u>.  Each of the Recitals set forth above is incorporated herein by reference. The Parties acknowledge that the "Whereas" clauses set forth above are only intended to generally summarize, and do not constitute a full recitation of all facts, positions, claims, defenses, or procedural developments relevant to the litigation or characterization of the same.

2. <u>Definitions</u>.  The following terms shall have the following definitions:

"<u>Affiliate</u>" means any Person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the Person specified.

"<u>Agreement</u>" has the meaning ascribed to it in the Preamble.

"<u>Asserted Claims</u>" has the meaning ascribed to it in the Recitals.

"<u>Administrative Claim</u>" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code.

"<u>Bankruptcy Code</u>" has the meaning ascribed to it in the Recitals.

"<u>Bankruptcy Court</u>" has the meaning ascribed to it in the Recitals.

2

"Berkshire" has the meaning ascribed to it in the Recitals.

"Berkshire D&O Policy" means Executive First Directors & Officers Liability Policy No. 47-EPC-150195-11, issued by Berkshire to Big Lots, Inc., as "Parent Company," for the policy period from June 1, 2024 to June 1, 2025.

"Causes of Action" means any Claim (including, without limitations, Administrative Claims), cause of action (including, without limitation, any avoidance actions under section 5 of the Bankruptcy Code), controversy, right of setoff, cross-claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

"Chapter 11 Cases" has the meaning ascribed to it in the Recitals.

"Claim" has the meaning set forth in section 101(5) of the Bankruptcy Code.

"Creditors' Committee" has the meaning ascribed to it in the Preamble.

"Creditors' Committee Released Parties" means: (i) each member of the Creditors' Committee and the (ii) the legal, financial and other professional advisors retained by the Creditors' Committee in the Chapter 11 Cases.

"Creditors' Committee Releasing Parties" means: (i) the Creditors' Committee and its respective successors, assigns, and representatives, in each case in their respective capacities as such.

"D&Os" has the meaning ascribed to it in the Preamble.

"D&O Claim" means any Claim or Cause of Action, held by, belonging to, asserted or capable of being asserted by, any of the Debtors and their respective Estates or creditors against the Debtors' current or former directors, officers, managers, or other employees covered as insureds under the Berkshire D&O policy, in their respective capacities, including, without limitation, the Asserted Claims.

"D&O Released Parties" means: (i) each of the D&Os and/or any other current or former directors, officers, managers, or other employees covered as insureds under the Berkshire D&O policy, of the Debtors, (ii) Berkshire and (iii) the respective counsel of the D&Os and Berkshire, and (iv) for each of those Persons identified in (i) – (ii), their respective Affiliates, Related Parties, as well as its and their current and former directors, officers, agents, advisors,

3

attorneys, insurers, professionals, beneficiaries, shareholders, trustees, employees, personal representatives, independent contractors, executors, administrators, successors and assigns.

"D&O Releasing Parties" means: (i) each of the D&Os, and (ii) Berkshire, and their respective successors, assigns, and representatives, in each case in their respective capacities as such.

"Debtor" has the meaning ascribed to it in the Preamble.

"Debtor Releasing Parties" means the Debtors, the Debtors' Estates and their respective successors, assigns, and representatives (including, without limitation, a Chapter 7 trustee, if any), in each case in their respective capacities as such, provided, however, notwithstanding the foregoing, none of the D&Os shall be included within this definition.

"Enjoined Party" has the meaning ascribed to it in paragraph 6 herein

"Estate" means, as to each Debtor, the estate created for such Debtor pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

"Party" or "Parties" have the meanings ascribed to them in the Preamble.

"Person" or "Persons" means any natural or legal person, including without limitation any individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity, as well as each of their spouses, partners in a state-recognized domestic partnership, civil union, or marriage, heirs, predecessors, successors, representatives, agents, trustees, estates, administrators, executors, or assignees.

"Petition Date" has the meaning ascribed to it in the Recitals.

"Related Parties" means each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such person's or entity's respective heirs, executors, estates, and nominees.

"Settlement" means the settlement contemplated by this Agreement.

4

"Settlement Amount" has the meaning ascribed to it in paragraph 5 herein.

"Settlement Effective Date" has the meaning ascribed to it in paragraph 3 herein.

"Settlement Payment" has the meaning ascribed to it in paragraph 5 herein.

"Settlement Order" means an order of the Bankruptcy Court approving this Agreement and the compromise and Settlement memorialized herein among the Parties pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, which Settlement Order shall be consistent with this Agreement in all respects and otherwise in form and substance acceptable to the Parties, and will be binding on the Parties regardless of whether the cases proceed in Chapter 11 or in Chapter 7 (in which case they will be binding on the Chapter 7 trustee (if any)) or such cases are dismissed or otherwise disposed of.

"Unknown Claims" means any Claim or Cause of Action which the Debtors or the Creditors' Committee does not know or suspect to exist in its or their favor at the time of the release of such Claims, which, if known by it or them, might have affected its or their decision(s) with respect to this Settlement. The Parties agree that, upon the Settlement Effective Date, each of the Debtor Releasing Parties and Creditors' Committee Releasing Parties shall have expressly waived, shall be deemed to have waived, with respect to the released D&O Claims, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Parties acknowledge that the foregoing waiver was separately bargained for and a key element of the Settlement and Agreement of which this release is a part.

3. **Interpretations.** For the purposes of this Agreement:

   a. in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender;

   b. capitalized terms defined only in the plural or singular form shall nonetheless have their defined meanings when used in the opposite form;

   c. unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such

      document shall be substantially in such form or substantially on such terms and conditions;

d.     unless otherwise specified, any reference herein to an existing document, schedule, or exhibit shall mean such document, schedule, or exhibit, as it may have been or may be amended, restated, supplemented, or otherwise modified from time to time; provided that any capitalized terms herein which are defined with reference to another agreement, are defined with reference to such other agreement as of the date of this Agreement, without giving effect to any termination of such other agreement or amendments to such capitalized terms in any such other agreement following the date hereof;

e.     unless otherwise specified, all references herein to "Sections" are references to Sections of this Agreement;

f.     the words "herein," "hereof," "hereunder" and "hereto" refer to this Agreement in its entirety rather than to any particular portion of this Agreement;

g.     captions and headings to Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation or construction of this Agreement;

h.     references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable laws and in proper context; and

i.     the use of "include" or "including" is without limitation, whether stated or not;

j.     when calculating the period of time before which, within which, or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded and, if the last day of such period is a non-Business Day, the period in question shall end on the next succeeding Business Day;

k.     all exhibits attached hereto or referred to herein are hereby incorporated in and made part of this Agreement as if set forth in full herein; and

l.     unless otherwise specified herein, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.

    4.     <u>Settlement Effective Date</u>. Notwithstanding anything contained herein, this Agreement and the terms contained herein shall not be effective and binding on the Parties until the first date on which the following conditions precedent have been satisfied (such date, the "<u>Settlement Effective Date</u>"): (i) each of the Parties, or their respective representatives, shall have executed and delivered counterparty signature pages of this Agreement to counsel to each of the

Parties; (ii) the Bankruptcy Court shall have entered the Settlement Order; and (iii) the Settlement Order shall have become a final, non-appealable order. The Debtors and the Creditors' Committee shall use their reasonable best efforts to obtain Bankruptcy Court approval of this Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, and each of the Parties agrees to support and take all actions reasonably necessary to facilitate the approval of the Agreement by the Bankruptcy Court. Without limiting the generality of the foregoing, each of the Parties agrees that it will not directly or indirectly object to, delay, impede, or take any other action to interfere with the approval of the Agreement by the Bankruptcy Court and implementing the terms contained therein; provided, however, that the obligations set forth in this Section 4 shall be effective (i) as to the Creditors' Committee and the D&Os commencing on the date first set forth in the Preamble, and (ii) as to the Debtors, on the Settlement Effective Date.

5. Settlement Terms. In full and final satisfaction of all of the D&O Claims, the Parties agree as follows:

    a. Consistent with the terms and conditions of the Berkshire D&O Policy, the D&Os will cause Berkshire to pay $6,500,000 (the "Settlement Amount") to the Debtors (the "Settlement Payment") by no later than one (1) business day following the Settlement Effective Date.

    b. The Settlement Payment shall be paid by ACH, wire transfer or check using the instructions to be provided by the Debtors to Berkshire no later than one (1) business day following the execution of this Agreement.

6. Releases.

    a. Releases by Debtors. For good and valuable consideration, the adequacy of which is hereby confirmed, effective immediately upon the receipt by the Debtors of the Settlement Payment, each of the Debtor Releasing Parties, their respective successors and assigns (including, without limitation, a Chapter 7 trustee, if any) hereby forever releases and discharges: each of the Creditors' Committee Released Parties and each of the D&O Released Parties from any and all Claims, Causes of Action, suits, charges, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, appraisal rights, interest, torts, controversies, agreements, promises, variances, trespasses, obligations, liabilities, proceedings, orders, damages, rights, executions, judgments, liens, costs, attorneys' fees, losses, expenses, demands and remedies of any nature, whether known or unknown, existing or potential, foreseeable or unforeseeable, liquidated or unliquidated, insured or uninsured, or at law or equity, that any of the Debtor Releasing Parties had or have ever had or may hereafter have against any of the Creditors' Committee Released Parties or the D&O Released Parties, as applicable, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world through and including the Settlement Effective Date, including, without limitation: (a) any D&O Claims; (b) the Asserted Claims; (c) any Unknown Claims, and

7

        (d) any and all other Claims and Causes of Action arising out of or relating to: (1) the Debtors, the Estates and the Chapter 11 Cases; (2) any action, inaction (whether contemplated or not), or decision whatsoever made by the D&Os in their capacity as directors and officers of the Debtors (including, for the avoidance of doubt, with respect to and during the Chapter 11 Cases); and (3) the negotiation or execution of this Agreement; provided, none of the foregoing releases set forth in this Section 6(a), and nothing otherwise set forth in this Agreement, shall release the Parties from any obligations they may have under this Agreement, nor foreclose the right of any Party to enforce the terms of this Agreement.

b.    Acknowledgment by Creditors' Committee. The Creditors' Committee acknowledges and agrees to the Debtors' release of Claims against the D&O Released Parties hereunder and further agrees not to pursue, or seek standing to pursue, such Claims.

c.    Releases by Creditors' Committee. For good and valuable consideration, the adequacy of which is hereby confirmed, effective immediately upon the receipt by the Debtors of the Settlement Payment, each of the Creditors' Committee Releasing Parties hereby forever releases and discharges: each of the D&O Released Parties from any and all Claims, Causes of Action, suits, charges, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, appraisal rights, interest, torts, controversies, agreements, promises, variances, trespasses, obligations, liabilities, proceedings, orders, damages, rights, executions, judgments, liens, costs, attorneys' fees, losses, expenses, demands and remedies of any nature, whether known or unknown, existing or potential, foreseeable or unforeseeable, liquidated or unliquidated, insured or uninsured, or at law or equity, that any of the Creditors' Committee Releasing Parties had or have ever had or may hereafter have, whether direct or derivatively on behalf of the Debtors or their Estates, against any of the D&O Released Parties, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world through and including the Settlement Effective Date, including, without limitation: (a) any D&O Claims; (b) the Asserted Claims; (c) any Unknown Claims, and (d) any and all other Claims and Causes of Action arising out of or relating to: (1) the Debtors, the Estates and the Chapter 11 Cases; (2) any action, inaction (whether contemplated or not), or decision whatsoever made by the D&Os in their capacity as directors and officers of the Debtors (including, for the avoidance of doubt, with respect to and during the Chapter 11 Cases); and (3) the negotiation or execution of this Agreement; provided, none of the foregoing releases set forth in this Section 6(c), and nothing otherwise set forth in this Agreement, shall release the Parties from any obligations they may have under this Agreement, nor foreclose the right of any Party to enforce the terms of this Agreement.

d.  <u>Releases by D&Os</u>. For good and valuable consideration, the adequacy of which is hereby confirmed, effective immediately upon the receipt by the Debtors of the Settlement Payment, each of the D&O Releasing Parties hereby forever releases and discharges each of the Creditors' Committee Released Parties from any and all Claims, Causes of Action, suits, charges, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, appraisal rights, interest, torts, controversies, agreements, promises, variances, trespasses, obligations, liabilities, proceedings, orders, damages, rights, executions, judgments, liens, costs, attorneys' fees, losses, expenses, demands and remedies of any nature, whether known or unknown, existing or potential, foreseeable or unforeseeable, liquidated or unliquidated, insured or uninsured, or at law or equity, that any of the D&O Releasing Parties had or have ever had or may hereafter have against any of the Creditors' Committee Released Parties, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world through and including the Settlement Effective Date, including, without limitation: (a) any Unknown Claims, and (b) any and all other Claims and Causes of Action arising out of or relating to (1) the Debtors, the Estates and the Chapter 11 Cases; and (2) the negotiation or execution of this Agreement; <u>provided</u>, none of the foregoing releases set forth in this Section 6(d), and nothing otherwise set forth in this Agreement, shall release the Parties from any obligations they may have under this Agreement, nor foreclose the right of any Party to enforce the terms of this Agreement.

e.  <u>Injunction</u>. The Parties agree to include an injunction provision in the proposed form of Settlement Order attached to the motion requesting approval of this Agreement that shall provide that, upon entry of the Settlement Order, all parties (such parties, each an "<u>Enjoined Party</u>") are and shall be permanently enjoined from taking any actions to interfere with the implementation of the Agreement, including, directly or indirectly: (i) commencing, conducting, or continuing in any <u>manner</u> any D&O Claim, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, enforcing, or attempting to recover or enforce, by any manner or means, any judgment, award, decree, or order in connection with any D&O Claim, (iii) creating, perfecting, or otherwise enforcing in any manner, any security interest, lien, or encumbrance of any kind in connection with any D&O Claim, and (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Agreement and Settlement Order. For the avoidance of doubt, such injunction shall extend and apply to any successors of the Debtors and the Creditors' Committee, including, but not limited to, a chapter 7 trustee appointed in the event of conversion of the Chapter 11 Cases to chapter 7 cases.

9

      f.      <u>Gatekeeper Provision</u>. The Parties agree to include a "gatekeeper" provision in the proposed form of Settlement Order attached to the motion requesting approval of this Agreement that shall provide that, upon entry of the Settlement Order, no Enjoined Party may commence or pursue a D&O Claim without the Bankruptcy Court (i) first determining, after notice and a hearing, that such D&O Claim represents a Claim of any kind that is not released pursuant to paragraph 6(a) or 6(c), and (ii) specifically authorizing such Enjoined Party to bring such Claim or Cause of Action against one or more of the D&O Released Parties.

7.      <u>No Admission of Liability</u>. The Parties agree and acknowledge that this Agreement is entered into for the sole purposes of resolving potential Claims and Causes of Action as well as avoiding the expense, inconvenience and uncertainty associated with such Claims and Causes of Action. It is also expressly agreed and acknowledged that neither this Agreement, its execution, the performance of any of its terms nor any of its contents shall constitute or be construed or offered as evidence in any proceeding as an admission on the part of the D&Os or Debtors of any wrongdoing or liability or of any fact. No Party will file any pleading or make any written public statement, even in redacted form, disclosing information related to this Settlement Agreement, including without limitation, any Party's analysis, investigations, and deliberations regarding the D&O Claims absent agreement in writing by each of, counsel to the Debtors, counsel to the Creditors' Committee and counsel to the D&Os. The existence, terms and negotiations of this Agreement shall be inadmissible in any litigation as evidence of any Party's respective rights, duties, or obligations, or for any other purpose; <u>provided</u>, the foregoing shall not release any Party from any obligation it may have under this Agreement, nor foreclose the right of any Party to enforce the terms of this Agreement.

8.      <u>No Personal Liability</u>. For the avoidance of doubt, the Settlement Payment shall be paid solely and exclusively by Berkshire, and the D&O Released Parties shall not be obligated or held liable for any portion of the Settlement Payment under any circumstances.

9.      <u>Binding on Successor-in-Interests, Including Chapter 7 Trustee</u>. This Agreement is intended to bind and inure to the benefit of each of the Parties and each of their respective successors, assigns, heirs, executors, administrators, and representatives (including a Chapter 7 Trustee, if any). For the avoidance of doubt, following the entry of the Settlement Order, the released D&O Claims are no longer property of the Debtors' Estates and, in the event the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, the applicable Chapter 7 estate and Chapter 7 trustee shall not obtain any right to any released D&O Claims, nor pursue (by demand, litigation, seeking to vacate or otherwise modify the Settlement Order, or otherwise) any of the released D&O Claims, or any other Claims, whatsoever. Each Party further agrees, solely with respect to itself, that it shall not sell, assign, convey, transfer, hypothecate, or otherwise dispose of, in whole or in part, any Claims or Causes of Action that are the subject of this Agreement.

10.      <u>Effect on Berkshire D&O Policy</u>. The Berkshire D&O Policy (and the obligations to provide coverage to the D&Os thereunder) shall not be terminated, modified, abridged, or otherwise altered in anyway by this Agreement (except with respect to the remaining available

10

limits of liability, which will be reduced by the amount of the Settlement Payment in accordance with the terms of the Berkshire D&O Policy).

11. <u>Fees</u>.  Each Party shall bear its own expenses, costs, and fees in connection with this Agreement, including any expenses, costs, or fees incurred by its attorneys, experts, agents, advisors, or representatives; <u>provided</u>, however that the D&Os' expenses, costs and fees (including outstanding Defense Costs, as defined in the Berkshire D&O Insurance Policy) shall be paid solely and exclusively by Berkshire; <u>provided</u>, <u>further</u>, that the Creditors' Committee expenses, costs and fees shall be paid pursuant to and in accordance with the Bankruptcy Code and any applicable order(s) of the Bankruptcy Court.

12. <u>No Assignment</u>.  The Parties represent and warrant that they have not assigned, nor in any way conveyed, transferred, or encumbered, all or any portion of the Claims or rights covered by this Agreement.

13. <u>Entire Agreement</u>.  This Agreement, including any exhibits, annexes, and/or schedules hereto and the exhibits, annexes, and/or schedules thereto, constitutes the entire agreement between the Parties concerning the subject matter of this Agreement and supersedes all prior negotiations, agreements, and understandings, whether written or oral, between and among the Parties concerning the subject matter of this Agreement. Each of the Parties hereto acknowledges that it or they has/have carefully read this Agreement and execute(s) this Agreement of its or their own free will, without reliance on any representations, warranties, or commitments other than those representations, warranties, and commitments expressly set forth in this Agreement.

14. <u>Modification or Amendment</u>.  This Agreement cannot be modified, supplemented, or amended unless agreed in advance, in writing, and signed by all the Parties.

15. <u>Headings</u>.  The headings contained in this Agreement are for convenience of reference only and will have no effect on the interpretation or operation hereof.

16. <u>Interpretation</u>.  The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any Party.  No Party shall be deemed the drafter of this Agreement.  The Parties acknowledge that the terms of the Agreement are contractual and are the product of arms-length negotiations among the Parties.  The Parties cooperated in the drafting and preparation of the Agreement.   In any construction to be made of the Agreement, the Agreement shall not be construed against any Party.

17. <u>Choice of Law and Forum Selection</u>.

   a. The laws of the State of New York, without giving effect to its conflict of law provisions, shall govern any dispute, Claim, Cause of Action, or proceeding relating to or arising out of this Agreement.  The Parties agree that any action arising out of or relating to this Agreement, including, without limitation, any action to enforce the terms of this Agreement, shall exclusively be brought before the Bankruptcy Court.  Moreover, solely in

connection with Claims arising under this Agreement, the Parties: (i) irrevocably submit to the exclusive jurisdiction and the constitutional authority of the Bankruptcy Court; (ii) waive any objection to laying venue in any such action or proceeding in the Bankruptcy Court; and (iii) waive any objection that the Bankruptcy Court is an inconvenient forum, does not have jurisdiction over any Party hereto, or lacks the constitutional authority to enter final orders in connection with such action or proceeding.

b.  Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding arising out of, or relating to, this Agreement or the transactions contemplated hereby (whether based on contract, tort, or any other theory). Each Party: (i) certifies that no representative, agent, or attorney of any other Party has represented, expressly or otherwise, that such other Party would not, in the event of litigation, seek to enforce the foregoing waiver; and (ii) acknowledges that it and the other Parties have been induced to enter into this Agreement by, among other things, the mutual waivers and certifications in this Section.

18.  <u>Further Assurances</u>.  Each of the Parties shall do and perform, or cause to be done and performed, all such further acts and things, and shall execute and deliver all such other arrangements and documents, as any of the other Parties may reasonably request in order to carry out the intent and accomplish the purposes of this Agreement and the consummation of the transactions contemplated hereby.

19.  <u>Waiver</u>.  No waiver of any provision of this Agreement shall constitute a waiver of any other provision, nor shall such waiver constitute a continuing waiver.

20.  <u>Severability</u>.  If any provision of this Agreement is determined by the Bankruptcy Court or other tribunal of competent jurisdiction to be invalid, illegal, or unenforceable, such determination shall not affect or impair the validity, legality, or enforceability of the remaining provisions, which shall remain in full force and effect, to the extent that enforcement of the remaining provisions would be consistent with the Parties' intent, as contained in the Recitals to this Agreement.

21.  <u>No Reliance</u>.  The Parties represent and warrant that it or they: (i) is a sophisticated party with respect to the matters that are the subject of this Agreement; (ii) has had the opportunity to be represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon any other Party hereto, or any of their Affiliates, or any officer, employee, agent, or representative thereof, and based on such information as it has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that it has relied upon each other Party's express representations, warranties, and covenants in this Agreement, which it enters, or as to which it acknowledges and agrees, voluntarily and of its own choice and not under coercion or duress.

22.     <u>Acknowledgment of Counsel</u>.  Each Party acknowledges that it was represented by counsel.  Accordingly, any rule of law or any legal decision that would provide any Party with a defense to the enforcement of the terms of this Agreement against such Party based upon lack of legal counsel shall have no application and is expressly waived.

23.     <u>Third-Party Beneficiaries</u>.  Except as otherwise explicitly set forth herein, nothing in this Agreement is intended to benefit or create any right or Cause of Action in or on behalf of any person other than the Parties hereto (and their affiliated persons and entities who are intended to be beneficiaries of the releases and Settlements set forth herein).

24.     <u>Specific Performance</u>. It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Agreement by any Party, and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief (without the posting of any bond and without proof of actual damages) as a remedy of any such breach, including an order of the Bankruptcy Court or other court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder. All rights, powers, and remedies provided under this Agreement or otherwise available in respect hereof at law or in equity shall be cumulative and not alternative, and the exercise of any right, power, or remedy thereof by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party or any other Party.

25.     <u>Notices</u>.  Any notice given by one Party to any other Party under this Agreement shall be given in writing and shall be sent by: (i) overnight mail next day delivery (signature required); and (ii) email.  All notices shall be directed to the addresses and to the attention of <u>each</u> of the persons set forth below.  Any such notice shall be effective: (a) in the case of overnight mail, at the time of first service (pursuant to an executed receipt signature), or (b) in the case of email, at the time of transmission or on the next business day if the time of transmission was outside normal business hours at the place of receipt.

| **If to Debtors, to**: | **If to the D&Os, to**: |
|---|---|
| c/o Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>Attn: Elizabeth A. LaPuma<br>Email: claritasadvisors@gmail.com | Ronald A. Robins, Jr.<br>4900 E. Dublin-Granville Road<br>Columbus, OH 43081<br>Email: rrobins@biglots.com |
| with a simultaneous copy (which shall not constitute notice) to: | with a simultaneous copy (which shall not constitute notice) to: |
| Davis Polk & Wardwell LLP<br>450 Lexington Avenue<br>New York, NY 10017<br>Attn: Brian Resnick, Adam Shpeen and Stephen D. Piriano<br>brian.resnick@davispolk.com | Katten Muchin Rosenman LLP<br>50 Rockefeller Plaza<br>New York, NY 10020<br>Attn: Steven J. Reisman, Julia Winters, and Shaya Rochester<br>sreisman@katten.com |

adam.shpeen@davispolk.com  jwinters@katten.com
stephen.piriano@davispolk.com  srochester@katten.com

**If to the Creditors' Committee, to**:

Cole Schotz P.C.
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Attn: Justin R. Alberto and Stacy L. Newman
jalberto@coleschotz.com
snewman@coleschotz.com

and

McDermott Will & Schulte LLP
One Vanderbilt Avenue
New York, NY 10017
Attn: Darren Azman, Joel Haims and Stacy A. Lutkus
dazman@mwe.com
jhaims@mwe.com
salutkus@mwe.com

26. <u>Counterparts</u>.  This <u>Agreement</u> may be executed in multiple counterparts by the Parties hereto.  All counterparts so executed shall constitute one agreement binding upon all Parties, notwithstanding that all Parties are not signatories to the original or the same counterpart.  Each counterpart shall be deemed an original Agreement, all of which shall constitute one Agreement to be valid as of the date of this Agreement.  Email, executed documents scanned and transmitted electronically, and electronic signatures shall be deemed original signatures for purposes of this Agreement and all matters related thereto, with such Email, scanned, and electronic signatures having the same legal effect as original signatures.

27. <u>Legal Capacity</u>.  Each Party represents and warrants to each other Party that: (i) such Party has the legal capacity and authority to enter into this Agreement; (ii) such Party has the legal capacity and authority to enter into and perform all of the terms of this Agreement that constitute the voluntary, legal, valid, and binding obligation of said Party; (iii) the signatory on behalf of such Party has the legal capacity and authority to execute and deliver this Agreement on behalf of such Party and to bind such Party to adhere to the terms of this Agreement; and (iv) such Party is the sole owner of any Claims and matters subject to respective releases hereunder.

**IN WITNESS WHEREOF**, the Parties hereby execute this Agreement.

| | |
|---|---|
| **BIG LOTS, INC. AND ITS DEBTOR AFFILIATES** | **OFFICIAL COMMITTEE OF UNSECURED CREDITORS** |
| By: */s/ Elizabeth LaPuma* <br> Elizabeth LaPuma <br> Director | By: _____ <br> Darren Azman <br> McDermott Will & Schulte LLP <br> Co-Counsel to the Official Committee of Unsecured Creditors of Big Lots, Inc., *et al.* |

[*Signatures Continued on Next Page*]

*Signature page to Settlement Agreement*

**IN WITNESS WHEREOF**, the Parties hereby execute this Agreement.

| | |
|---|---|
| **BIG LOTS, INC. AND ITS DEBTOR AFFILIATES** | **OFFICIAL COMMITTEE OF UNSECURED CREDITORS** |
| By:_____<br>Elizabeth LaPuma<br>Director | By:_____ *(signed)*<br>Darren Azman<br>McDermott Will & Schulte LLP<br>Co-Counsel to the Official Committee of Unsecured Creditors of Big Lots, Inc., *et al.* |

[*Signatures Continued on Next Page*]

*Signature page to Settlement Agreement*

**THE D&Os:**

JAMES R. CHAMBERS
*Signed by:* [signature]
F50A7B4B140A477...

JONATHAN RAMSDEN
*DocuSigned by:* Jonathan Ramsden
2812C7FB91D9434...

SANDRA Y. CAMPOS
*DocuSigned by:* Sandra Campos
92F037547AD94BA...

NANCY A. REARDON
*Signed by:* Nancy A. Reardon
DD70DD71113745E...

SEBASTIAN J. DIGRANDE
*DocuSigned by:* Sebastian J. DiGrande
57E82F10E69D4D9...

RONALD A. ROBINS, JR.
*Signed by:* Ronald A. Robins, Jr.
5B83E3C75AE1490...

MARLA GOTTSCHALK
*Signed by:* Marla Gottschalk
B717CF2D640345F...

MICHAEL A. SCHLONSKY
*Signed by:* [signature]
1B5325B515BF40D...

CYNTHIA T. JAMISON
*DocuSigned by:* Cynthia T. Jamison
2DCC9C3BFC4647B...

WENDY L. SCHOPPERT
*DocuSigned by:* Wendy L. Schoppert
12BFD12BED39486...

KIM A. NEWTON
*Signed by:* [signature]
6CDA2407AA344AF...

MAUREEN B. SHORT
*Signed by:* Maureen B. Short
32D8CBD568904B1...

CHRISTOPHER J. MCCORMICK
*DocuSigned by:* Christopher J. McCormick
078752E72FFE4DB...

BRUCE K. THORN
*DocuSigned by:* BRUCE K. THORN
20B9C4829B354FA...

*Signature page to Settlement Agreement*