**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FORMER BL STORES, INC., et al.[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Proposed Hearing Date:**<br>November 4, 2025 at 1:00 p.m. (ET)<br><br>**Proposed Objection Deadline:**<br>October 31, 2025 at 12:00 p.m. (ET) |

**MOTION OF DEBTORS FOR ENTRY OF ORDER (I) CONVERTING CHAPTER 11 CASES TO CASES UNDER CHAPTER 7, (II) ESTABLISHING DEADLINE FOR FILING FINAL CHAPTER 11 FEE APPLICATIONS AND SETTING A HEARING THEREON, AND (III) GRANTING RELATED RELIEF**

Former BL Stores, Inc. (formerly known as Big Lots, Inc.) and certain of its affiliates (collectively, the "**Debtors**" or "**BL Stores**"), each of which is a debtor and debtor in possession in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") hereby file this *Motion of Debtors for Entry of Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting a Hearing Thereon, and (III) Granting Related Relief* (this "**Motion**"). In further support of the Motion, the Debtors respectfully state as follows:

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Former BL Stores, Inc. (9097); Former Management Stores of Ohio, LLC (7948); Consolidated Property Holdings, LLC (0984); Former Furniture Stores of Ohio, LLC (7868); Former Savings Stores of California, LLC (5262); Former Stores of Ohio, LLC (6811); Former Tenant Stores of Ohio, LLC (0552); Former Savings Stores of Ohio, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Former eCommerce Stores of Ohio, LLC (9612); and Former Low Cost Stores of Ohio, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

**RELIEF REQUESTED**

1.      By this Motion, and pursuant to section 1112(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 1017(f) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2002-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors request entry of an Order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**"), (a) converting each of the Debtors' Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code effective upon entry of the Proposed Order (the "**Conversion Date**"), (b) establishing a deadline for filing final chapter 11 fee applications and setting a hearing thereon, and (c) granting related relief. In support of this Motion, the Debtors respectfully state as follows:

**INTRODUCTION**

2.      On December 31, 2024, the Debtors achieved what only a few days earlier seemed improbable: gaining Court approval of a sale—with the support of the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases (the "**Committee**")—that would preserve thousands of jobs and allow the BIG LOTS® brand to continue. On January 2, 2025, this Court entered an order[2] approving the sale (the "**GBRP Sale**") of the Debtors' assets to Gordon Brothers Retail Partners, LLC ("**GBRP**"), and the GBRP Sale closed on January 3, 2025.[3] Following the closing of the GBRP Sale, the Debtors remained in chapter 11 as debtors in possession to leverage their knowledge of the business to efficiently maximize and monetize the value of the estates' remaining assets and distribute as much cash as practicable, and as quickly as possible, to

---

[2] *See Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of all Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1556] (the "**GBRP Sale Order**").

[3] *See Notice of Closing of Sale of Debtors' Assets to Gordon Brothers Retail Partners, LLC* [D.I. 1588]

2

administrative expense creditors. Among other things, the Debtors' post-closing activities included: (i) assuming and assigning thousands of assets to GBRP and other Designated Buyers (as defined in the GBRP Sale Order), (ii) winding down the Debtors' estates, (iii) reconciling nearly $300 million in Pre-Closing Administrative Expense Claims[4] and making payments in the aggregate amount of $60 million to date[5] (with additional payments on notice)[6] to holders of such claims (such payments, the "**Administrative Expense Claims Payments**"), (iv) entering into a settlement with certain Interchange Defendants (as defined in the Interchange Settlement Order (as defined below)) that provided for material value to the estates (the "**Interchange Settlement**"),[7] and (v) entering into a settlement with the Committee, Berkshire and the Settling D&Os (each as defined in the Committee/D&O Settlement Order (as defined below)) to resolve all remaining estate causes of action (the "**Committee/D&O Settlement**") in exchange for a cash payment from Berkshire.[8] Having now largely completed monetizing their remaining assets and overseeing the orderly transition and wind-down of the estates, the Debtors believe it is the right

---

[4] As defined in the *Order (I) Setting a Bar Date for Filing Proofs of Claims for Pre-Closing Administrative Expense Claims Against the Debtors, (II) Establishing Pre-Closing Administrative Expense Claims Procedures, and (III) Granting Related Relief, Including Notice and Filing Procedures* [D.I. 2214] (the "**Administrative Expense Claims Procedures Order**").

[5] *See Notice of Commencement of Interim Payments Pursuant to the Administrative Expense Claims Procedures Order* [D.I. 2854]; *Notice of Commencement of Interim Payments Pursuant to the Administrative Expense Claims Procedures Order* [D.I. 3053]; *Notice of Commencement of Interim Payments Pursuant to the Administrative Expense Claims Procedures Order* [D.I. 3176]. It is worthy of note that, at the hearing to seek approval of the GBRP Sale, Debtors forecast that the total amount of the Administrative Expense Claims Payments would be less than $20 million. As of the filing of this Motion, the Debtors have already distributed more than three times the amount originally forecast, with a final distribution of at least $5 million (with additional amounts likely) on notice to be paid prior to the Conversion Date.

[6] *See Notice of Commencement of Interim Payments Pursuant to the Administrative Expense Claims Procedures Order* [D.I. 3245].

[7] *See Order Authorizing and Approving the Debtors' Entry into a Settlement Agreement between the Debtors and the Interchange Defendants* [D.I. 3180] (the "**Interchange Settlement Order**").

[8] *See Order Approving Joint Motion of Debtors and the Official Committee of Unsecured Creditors to Approve the Settlement with Certain Officers and Directors of the Debtors Pursuant to 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 9019* [D.I. 3225] (the "**Committee/D&O Settlement Order**").

time to finally resolve these Chapter 11 Cases in the only manner they view as realistic and in the best interests of their creditors: by converting these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

3. The Debtors may convert the Chapter 11 Cases by right under section 1112(a) of the Bankruptcy Code. Additionally, conversion is justified under the facts of these Chapter 11 Cases. Specifically, the Debtors no longer have sufficient resources to fund a continuation of the Chapter 11 Cases, and there is no reasonable likelihood that the Debtors can confirm and consummate a chapter 11 plan with the available funding. Further, a chapter 7 trustee will be able to administer and distribute the residual assets of the Debtors' bankruptcy estates.

4. Under these circumstances, described more fully herein, the Debtors request that the Court grant the Motion to convert these cases from chapter 11 to chapter 7 of the Bankruptcy Code. Additionally, to facilitate a smooth and efficient transition of the Chapter 11 Cases to chapter 7, the Debtors request that the Court approve the conversion procedures described herein (the "**Conversion Procedures**") and as further set forth in the Proposed Order.

## JURISDICTION AND VENUE

5. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b). In addition, the Debtors confirm their consent, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment in connection herewith consistent with Article III of the United States Constitution.

6.  Venue of the Chapter 11 Cases and related proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

7.  The statutory bases for the relief requested herein are section 105(a) of the Bankruptcy Code and Rule 1017(f) of the Bankruptcy Rules.

## BACKGROUND

8.  On September 9, 2024 (the "**Petition Date**"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief. The Debtors remain in possession of their property and continue to manage their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

9.  The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and the *Order Directing Joint Administration of Chapter 11 Cases* [D.I. 95] entered by the Court on September 10, 2024, in each of the Chapter 11 Cases.[9]

10. On September 23, 2024, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the Committee pursuant to section 1102 of the Bankruptcy Code. *See Not. of Appointment of Comm. of Unsecured Creditors* [D.I. 248].

11. At a hearing on December 31, 2024, the Debtors received Court approval to consummate the GBRP Sale. On January 2, 2025, the Court entered the GBRP Sale Order. The

---

[9] *See In re Great Basin, LLC*, No. 24-11966 (JKS); *In re Former BL Stores, Inc.*, No. 24-11967 (JKS); *In re Former Management Stores of Ohio, LLC*, No. 24-11969 (JKS); *In re Consolidated Property Holdings, LLC*, No. 24-11968 (JKS); *In re Former Furniture Stores of Ohio, LLC*, No. 24-11971 (JKS); *In re Former Savings Stores of California, LLC*, No. 24-11970 (JKS); *In re Former Stores of Ohio, LLC*, No. 24-11973 (JKS); *In re Former Tenant Stores of Ohio, LLC*, No. 24-11972 (JKS); *In re Former Savings Stores of Ohio, LLC*, No. 24-11976 (JKS); *In re CSC Distribution LLC*, No. 24-11974 (JKS); *In re Closeout Distribution, LLC*, No. 24-11978 (JKS); *In re Durant DC, LLC*, No. 24-11975 (JKS); *In re AVDC, LLC*, No. 24-11981 (JKS); *In re GAFDC LLC*, No. 24-11977 (JKS); *In re PAFDC LLC*, No. 24-11982 (JKS); *In re WAFDC, LLC*, No. 24-11979 (JKS); *In re INFDC, LLC*, No. 24-11983 (JKS); *In re Former eCommerce Stores of Ohio LLC*, No. 24-11980 (JKS); *In re Former Low Cost Stores of Ohio, LLC*, No. 24-11984 (JKS).

5

GBRP Sale was subsequently consummated on January 3, 2025. *See Notice of Closing of Sale of Debtors' Assets to Gordon Brothers Retail Partners, LLC* [D.I. 1588].

12. On February 7, 2025, the Debtors filed the *Motion for Entry of an Order (I) Setting a Bar Date for Filing Proofs of Claims for Pre-Closing Administrative Expense Claims Against the Debtors, (II) Establishing Pre-Closing Administrative Expense Claims Procedures, and (III) Granting Related Relief, Including Notice and Filing Procedures* [D.I. 1962]. On March 12, 2025, the Court entered the Administrative Expense Claims Procedures Order, which authorized the Debtors to, among other things, make periodic interim payments to holders of reconciled Pre-Closing Administrative Expense Claims (*i.e.*, administrative expense claims that accrued prior to January 3, 2025). *See* D.I. 2214. The Administrative Expense Claims Procedures Order also authorized the Debtors to "set aside a reserve for any disputed Pre-Closing Administrative Expense Claims and/or 503(b)(9) Claims." *Id.* at ¶ 23.

13. On or about June 9, 2025, August 8, 2025, and October 3, 2025, pursuant to the Administrative Expense Claims Procedures Order, the Debtors made interim payments of $10 million, $10 million, and $40 million, respectively, to holders of reconciled Pre-Closing Administrative Expense Claims. *See* D.I. 2854; D.I. 3053; D.I. 3176. In connection with such payments, the Debtors also established, in accordance with the Administrative Expense Claims Procedures Order, a reserve for disputed Pre-Closing Administrative Expense Claims and 503(b)(9) Claims (the "**Disputed Administrative Expense Claims Reserve**"). Additionally, on October 17, 2025, the Debtors noticed a final interim payment of at least $5 million to holders of Pre-Closing Administrative Expense Claims using proceeds from the Interchange Settlement and the Committee/D&O Settlement, as well as other available estate funds. *See* D.I. 3245.

14.     On September 12, 2025, the Debtors filed the *Motion of Debtors Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9019 Authorizing and Approving the Debtors' Entry into a Settlement Agreement between the Debtors and the Interchange Defendants* [D.I. 3158]. The Court entered the Interchange Settlement Order on September 30, 2025. *See* D.I. 3180.

15.     On September 18, 2025, the Debtors and Committee jointly filed the *Joint Motion of Debtors and the Official Committee of Unsecured Creditors to Approve Entry into Settlement Agreement with Certain Officers and Directors of the Debtors Pursuant to 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 9019* [D.I. 3166]. On October 8, 2025, the Court entered the Committee/D&O Settlement Order. *See* D.I. 3225.

## RELIEF REQUESTED

16.     By this Motion, the Debtors request entry of the Proposed Order, pursuant to section 1112(a) of the Bankruptcy Code and Bankruptcy Rule 1017(f), (a) converting the Debtors' Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code effective as of the Conversion Date, (b) establishing a deadline for filing final chapter 11 professional fee applications and setting a date for a hearing thereon, and (c) granting related relief.

17.     In furtherance thereof, the Debtors request that the Court approve the following Conversion Procedures in connection with the conversion of these Chapter 11 Cases to chapter 7 of the Bankruptcy Code:

(a)     *Professional Fees*.

   (i)    Each applicable professional shall submit an application for final allowance of compensation for services rendered and reimbursement of expenses (the "**Final Fee Application**") incurred (x) through the Conversion Date, (y) after the Conversion Date in connection with the preparation and prosecution of such Final Fee Application, and (z) after the Conversion Date in connection with the conversion of these Chapter 11 Cases to chapter 7 of the Bankruptcy Code, by no later than forty-five (45) days after the appointment of a permanent chapter 7 trustee (the "**Final Fee Application Deadline**"). For the avoidance of doubt,

7

        the amount of fees for services rendered and/or expenses incurred in connection with the foregoing clauses (y) and/or (z) may be included in the applicable professional's respective Final Fee Application as an estimate; *provided, however*, that the Debtors' chapter 7 estates shall be responsible for payment of the actual amount of fees for services rendered and/or expenses incurred in connection with the foregoing clauses (y) and/or (z).

    (ii)    Objections, if any, to the Final Fee Applications shall be filed and served by no later than fourteen (14) days after the Final Fee Application Deadline. To the extent no objections are filed to a given professional's Final Fee Application, such professional may file a Certificate of No Objection, and the Court may, in its sole discretion, enter an order approving such fees and reimbursements.

    (iii)    To the extent the Court approves a Final Fee Application, all approved amounts owed for professional fees and expenses ("**Allowed Professional Fees**") shall be paid (x) first, from each professional's retainer to the extent such retainers exist; (y) next, if and to the extent applicable, from the Professional Fee Escrow Account (as defined in the GBRP Sale Order) in accordance with the terms of the GBRP Sale Order; and (z) thereafter, from the Debtors' chapter 7 bankruptcy estates in accordance with the priorities set forth in the Bankruptcy Code. Citibank, N.A. ("**Citibank**") shall continue to hold the Professional Fee Escrow Account in trust for the applicable Professionals Persons (as defined in the GBRP Sale Order) and shall be authorized to remit such funds directly to the applicable professionals following approval of their respective Final Fee Applications.

    (iv)    To the extent any professional fees and expenses have not yet been funded to the Professional Fee Escrow Account in accordance with the GBRP Sale Order as of the date of the entry of the Proposed Order approving this Motion, the Debtors are hereby authorized and directed to transfer such funds to Citibank upon entry of such Order.

    (v)    For the avoidance of doubt, with respect to any outstanding Monthly Fee Statements[10] filed by Retained Professionals for which a CNO has not yet been filed as of the Conversion Date, such Retained Professionals may file a CNO after the Conversion Date to the extent no Objections are received by the applicable Objection Deadline, and Citibank is authorized to remit funds directly to such Retained Professionals after such CNO has been filed.

(b)    ***Books and Records***. As soon as reasonably practicable, but in no event more than thirty (30) days after the appointment of the interim chapter 7 trustee (the "**Trustee**"), the Debtors shall turn over or provide the Trustee access to any remaining books and records of the Debtors in the Debtors' possession or control,

---

[10] Capitalized terms used but not otherwise defined in this paragraph shall have the meanings ascribed to such terms in the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals* [D.I. 519] (the "**Interim Compensation Procedures Order**").

as required by Bankruptcy Rule 1019(d); *provided* that such deadline is without prejudice to the Debtors' ability to request an extension of such deadline from the Trustee. For purposes hereof, the Debtors may provide copies (including electronic copies) of such books and records to the Trustee, or instructions for locating and accessing such books and records, and may retain copies of such books and records to the extent necessary to complete the reports required herein.

(c) ***Schedule of Unpaid Debts***. Within thirty (30) days of the Conversion Date, the Debtors shall file a single, consolidated schedule of unpaid debts incurred after commencement of the Debtors' Chapter 11 Cases, including the name and address of each creditor, as required by Bankruptcy Rule 1019(e)(1)(A); *provided* that such deadline is without prejudice to the Debtors' ability to request an extension of such deadline from the Trustee.

(d) ***Final Report***. Within thirty (30) days after the Conversion Date, the Debtors shall file and transmit to the Trustee a final report and account in accordance with Bankruptcy Rule 1019(e)(1)(B); *provided* that such deadline is without prejudice to the Debtors' ability to request an extension of such deadline from the Trustee.

(e) ***Official Committee of Unsecured Creditors***. To the extent permitted by law, the Committee shall not be automatically disbanded on the Conversion Date and the Committee shall remain in existence with its full statutory rights and duties until the appointment of a permanent chapter 7 trustee. Notwithstanding the foregoing, and for the avoidance of doubt, the Committee shall dissolve on the date a permanent chapter 7 trustee is appointed, and the Committee members and the Committee's professionals shall be released from all rights and duties from or related to the Chapter 11 Cases on such date; *provided, however*, that the Committee shall continue in existence and have standing and a right to be heard after the date a permanent chapter 7 trustee is appointed for the limited purposes of filing and prosecuting Final Fee Applications.

(f) ***Claims Agent***. Kroll Restructuring Administration LLC ("**Kroll**") shall:

(i) Within thirty (30) days of the Conversion Date, and in accordance with Local Rules 2002-1(e)(x), (A) forward to the Clerk an electronic version of all proofs of claim, (B) upload the publicly available portions of the creditor matrix into CM/ECF, (C) forward to the Clerk the sealed portions of the creditor matrix in the format requested by the Clerk, and (D) since the Chapter 11 Cases are jointly administered, docket in the lead case a combined claims register containing claims from all cases, and also docket a case-specific final claims register and creditor mailing matrix in each respective jointly administered case; and

(ii) Within thirty (30) days after completing the obligations set forth in paragraph 17(f)(i) above, submit a proposed order to the Court terminating Kroll's services in accordance with Local Rules 2002-1(e)(x).

    (g)    *Disputed Administrative Expense Claims Reserve*.

        (i)    After the Conversion Date, the Trustee (or any permanent chapter 7 trustee, once appointed) shall continue to maintain the Disputed Administrative Expense Claims Reserve in accordance with the Administrative Expense Claims Procedures Order for the benefit of holders of disputed Pre-Closing Administrative Expense Claims and/or 503(b)(9) Claims, as applicable. The Disputed Administrative Expense Claims Reserve shall be funded in the amount of $3,500,000 prior to the Conversion Date. The Disputed Administrative Expense Claims Reserve shall be held in a segregated account maintained by Kroll.

        (ii)    When Pre-Closing Administrative Expense Claims and/or 503(b)(9) Claims that are disputed as of the Conversion Date (collectively, "**Disputed Administrative Expense Claims**") are reconciled, either consensually or nonconsensually (once reconciled, the "**Later Reconciled Administrative Expense Claims**"), the Trustee (or any permanent chapter 7 trustee, once appointed) shall use the funds in the Disputed Administrative Expense Claims Reserve to make Administrative Expense Claims Payments to holders of such Later Reconciled Administrative Expense Claims. Upon the resolution of and payment to all Disputed Administrative Expense Claims, any residual funds remaining in the Disputed Administrative Expense Claims Reserve shall be paid *pro rata* to all holders of Pre-Closing Administrative Expense Claims and/or 503(b)(9) Claims.

        (iii)    Kroll shall be entitled to rely on the instruction of the Trustee (or any permanent chapter 7 trustee, once appointed) with respect to distributions from the Disputed Administrative Expense Claims Reserve without any liability to any party for following such instruction. In addition, the Debtors are authorized to pay any fees of Kroll with respect to the Disputed Administrative Expense Claims Reserves.

## BASIS FOR RELIEF

### A. Conversion Should Be Granted

18.    The requested conversion should be granted based on the Debtors' exercise of its absolute right to convert the Chapter 11 Cases to chapter 7 under Section 1112(a) of the Bankruptcy Code.

19.    Section 1112(a) provides that a debtor may convert a case to chapter 7 as a matter of right. *See* 11 U.S.C. § 1112(a) ("[t]he debtor may convert a case under [] chapter [11] to a case

under chapter"); *see also* H.R. Rep. No. 95-595, 1st Sess. 405 (1977) ("Subdivision (a) gives the debtor an absolute right to convert a voluntarily commenced chapter 11 case in which the debtor remains in possession to a liquidation case"); *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 971 (Bankr. E.D. Pa. 1987) (section 1112(a) of the Bankruptcy Code, "by its terms, gives the debtor an absolute right to convert, unless the case is governed by one of the enumerated exceptions").

20. There are only three circumstances under which a chapter 11 debtor is precluded from exercising this right to convert: (a) "the debtor is not a debtor in possession;" (b) "the case was originally commenced as an involuntary case under" chapter 11; or (c) "the case was converted to a case under [] chapter [11] other than at the debtor's request." 11 U.S.C. § 1112(a). None of these exceptions apply in the Chapter 11 Cases. The Debtors each remain debtors-in-possession, and the Debtors originally and voluntarily commenced the Chapter 11 Cases under chapter 11 of the Bankruptcy Code. Therefore, the Debtors are entitled, as an absolute right, to convert the Chapter 11 Cases to cases under chapter 7.

21. In addition to the Debtors' absolute legal right to convert these Chapter 11 Cases to chapter 7, the Debtors assert that converting the Chapter 11 Cases is in the best interests of the Debtors' bankruptcy estates and creditors.

22. In filing the Chapter 11 Cases, the Debtors sought to conduct a value-maximizing sale of the Debtors' assets as a going concern. Notwithstanding that the Debtors' initially planned sale did not ultimately close, the eventual GBRP Sale represented the best possible outcome given the circumstances. Substantially all of the Debtors' assets were sold, and the GRBP Sale resulted in the preservation of hundreds of the Debtors' stores as well as thousands of jobs. All of this inured to the benefit of the Debtors' bankruptcy estates, creditors, and parties in interest. In the

further best interests of these constituencies, as both a practical and legal matter, the Chapter 11 Cases should be converted to chapter 7 so that the assets remaining with the Debtors' estates can be administered by a chapter 7 trustee.  Importantly, the Debtors have no other material revenues to fund the continued operation of the Chapter 11 Cases.  The Debtors believe that there is no reasonable likelihood that the Debtors could confirm and consummate a chapter 11 plan (either of reorganization or liquidation) given this lack of resources, and respectfully submit that a chapter 7 Trustee will be able to more efficiently and effectively administer the residual, post-sale assets of the Debtors' bankruptcy estates.

23. Accordingly, the Debtors respectfully request that the Court enter an order converting the Debtors' Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, effective as of the Conversion Date.

**B. The Conversion Procedures and Other Related Relief Should Be Approved**

24. The Debtors assert that the Conversion Procedures are appropriate under the facts and circumstances of this case and should be approved.

25. The Conversion Procedures include, among other relief: (a) establishing deadlines related to Final Fee Applications; (b) establishing the deadline for the Debtors to turn over their remaining books and records to the Trustee; (c) establishing (and extending as applicable) the deadlines for the Debtors to (i) file a single, consolidated schedule of unpaid debts incurred after commencement of the Debtors' Chapter 11 Cases, including the name and address of each creditor, as required by Bankruptcy Rule 1019(e)(1)(A) and (ii) file and transmit to the Trustee a final report and account in accordance with Bankruptcy Rule 1019(e)(1)(B); and (d) fixing the schedule for Kroll to satisfy its obligations under Local Rule 2002-1(e)(x) and terminate Kroll's services in accordance with Local Rule 2002-1(e)(xi).

26. The Debtors assert that the Conversion Procedures comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, or, to the extent that an extension of time is requested, the extension sought is brief and justified in the Chapter 11 Cases. The Court has authority to grant the requested extensions under Bankruptcy Rules 1007(c)(7) and 9006(b) and Local Rule 1007-1(b). Bankruptcy Rule 9006(b), together with Bankruptcy Rule 1007(c)(7), allows the Court to extend the foregoing filing deadlines "for cause shown." Here, cause exists due to the size, nature, and complexity of the Chapter 11 Cases combined with the fact that the majority of the Debtors' former employees who previously assisted with the Debtors' financial reporting were terminated in the months following the closing of the GBRP Sale. The Debtors believe that the requested extensions of time will be necessary for the Debtors' professionals to compile the required information and prepare the necessary filings. The brief extensions sought herein are warranted and have been approved in connection with the conversion of other large chapter 11 cases to cases under chapter 7 in this district. *See, e.g.*, *In re Benson Hill, Inc.*, No. 25-10539 (TMH) (Bankr. D. Del. Sept. 23, 2025) [D.I. 591]; *In re CTN Holdings, Inc.*, No. 25-10603 (TMH) (Bankr. D. Del. Aug. 7, 2025) [D.I. 351]; *In re Coach USA, Inc.*, No. 24-11258 (MFW) (Bankr. D. Del. Dec. 18, 2024) [D.I. 1050].

## NOTICE

27. The Debtors have provided notice of this Motion to the following: (a) the United States Trustee for the District of Delaware; (b) Riemer & Braunstein LLP, counsel to GBRP; (c) Cole Schotz P.C. and McDermott Will & Schulte LLP, counsel to the Committee; (d) all scheduled creditors or those who have filed proofs of claim prior to the applicable bar date; and (e) all known registered holders of equity interests in the Debtors as of the Petition Date. In light of the relief requested in this Motion, the Debtors submit that no other or further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Debtors and Committee respectfully request entry of the Proposed Order, substantially in the form attached as **Exhibit A**, (a) converting each of the Debtors' Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code effective upon the Conversion Date, (b) establishing the Final Fee Application Deadline and setting a hearing thereon, and (c) granting related relief.

*[Remainder of page intentionally left blank]*

Dated: October 24, 2025

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Casey B. Sawyer*
Robert J. Dehney, Sr. (No. 3578)
Andrew R. Remming (No. 5120)
Daniel B. Butz (No. 4227)
Sophie Rogers Churchill (No. 6905)
Casey B. Sawyer (No. 7260)
1201 N. Market Street, 16th Floor
Wilmington, Delaware 19801
Tel: (302) 658-9200
rdehney@morrisnichols.com
aremming@morrisnichols.com
dbutz@morrisnichols.com
srchurchill@morrisnichols.com
csawyer@morrisnichols.com

**DAVIS POLK & WARDWELL LLP**

Brian M. Resnick (admitted *pro hac vice*)
Adam L. Shpeen (admitted *pro hac vice*)
Stephen D. Piraino (admitted *pro hac vice*)
Ethan Stern (admitted *pro hac vice*)
Kevin L. Winiarski (admitted *pro hac vice*)
450 Lexington Avenue
New York, New York 10017
Tel: (212) 450-4000
brian.resnick@davispolk.com
adam.shpeen@davispolk.com
stephen.piraino@davispolk.com
ethan.stern@davispolk.com
kevin.winiarski@davispolk.com

*Counsel to the Debtors and Debtors in Possession*