**Exhibit A**

**Percy Declaration

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FORMER BL STORES, INC., et al.[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11967 (JKS)<br><br>(Jointly Administered)<br><br>**Re: D.I. 3261** |

**DECLARATION OF KENT PERCY IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF ORDER (I) CONVERTING CHAPTER 11 CASES TO CASES UNDER CHAPTER 7, (II) ESTABLISHING DEADLINE FOR FILING FINAL CHAPTER 11 FEE APPLICATIONS AND SETTING A HEARING THEREON, AND (III) GRANTING RELATED RELIEF**

I, Kent Percy, declare as follows:

1.  I am a Partner and Managing Director at AlixPartners, LLP ("**AlixPartners**"), a turnaround consulting firm with principal offices located at 909 Third Avenue, Floor 30, New York, New York 10022. AlixPartners is the financial advisor of the debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**").[2]

2.  I submit this declaration (this "**Declaration**") in support of the (a) *Motion of Debtors for Entry of Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting a Hearing*

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Former BL Stores, Inc. (9097); Former Management Stores of Ohio, LLC (7948); Consolidated Property Holdings, LLC (0984); Former Furniture Stores of Ohio, LLC (7868); Former Savings Stores of California, LLC (5262); Former Stores of Ohio, LLC (6811); Former Tenant Stores of Ohio, LLC (0552); Former Savings Stores of Ohio, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Former eCommerce Stores of Ohio, LLC (9612); and Former Low Cost Stores of Ohio, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] On October 21, 2024, the Court entered the *Order Authorizing Debtors to Employ and Retain AlixPartners, LLP as their Financial Advisor Effective as of the Petition Date* [D.I. 572].

*Thereon, and (III) Granting Related Relief* [D.I. 3261] (the "**Motion**") and (b) *Debtors' Reply in Further Support of Motion of Debtors for Entry of Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting a Hearing Thereon, and (III) Granting Related Relief* (the "**Reply**"), filed contemporaneously herewith.[3]

3. Although AlixPartners is compensated for its work as the Debtors' proposed financial advisor in the Chapter 11 Cases, I am not compensated separately for this Declaration or testimony. Except as otherwise indicated herein, all of the facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, my review of relevant documents, the information provided to me by the members of the Debtors' management team or the Debtors' professionals in the Chapter 11 Cases, or my opinion based upon my experience. If called upon to testify, I could and would testify to the facts set forth herein on that basis. I am over the age of 18 years and am authorized to submit this Declaration.

## Qualifications

4. AlixPartners is an internationally recognized restructuring and turnaround firm with substantial experience in providing financial advisory services and has an excellent reputation for its work in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States. AlixPartners performs critical services that complement the services provided by the Debtors' other professionals.

5. AlixPartners has assisted, advised, and provided strategic advice to debtors, creditors, bondholders, investors, and other entities in numerous chapter 11 cases of similar size

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion and/or the Reply, as applicable.

and complexity to these Chapter 11 Cases. Its professionals have provided restructuring or crisis management services in numerous large cases, including recent filings in this district. *See, e.g.*, *American Tire Distributors, Inc.*, No. 24-12391 (CTG) (Bankr. D. Del. Oct. 22, 2024); *LL Flooring Holdings Inc.*, No. 24-11680 (BLS) (Bankr. D. Del. July 15, 2024); *In re DermTech Inc.*, No. 24-11378 (JTD) (Bankr. D. Del. July 15, 2024); *In re NanoString Techs., Inc.*, No. 24-10160 (CTG) (Bankr. D. Del. Mar. 13, 2024); *In re Cano Health, Inc.*, No. 24-10164 (KBO) (Bankr. D. Del. Mar. 5, 2024); *In re Mallinckrodt plc*, No. 23-11258 (JTD) (Bankr. D. Del. Oct. 2, 2023); *In re KDC Agribusiness LLC*, No. 23-10786 (CTG) (Bankr. D. Del. Jul. 18, 2023); *In re Clovis Oncology, Inc.*, No. 22-11292 (JKS) (Bankr. D. Del. Jan. 20, 2023); *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del. Jan. 20, 2023); *In re Phoenix Services Topco, LLC*, No. 22-10906 (MFW) (Bankr. D. Del. Oct. 25, 2022); *In re Kabbage Inc. d/b/a KServicing*, No. 22-10951 (CTG) (Bankr. D. Del. Oct. 21, 2022); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Oct. 7, 2022); *In re MD Helicopters, Inc.*, No. 22-10263 (KBO) (Bankr. D. Del. Apr. 25, 2022); *In re Alto Maipo Delaware LLC*, No. 21-11507 (KBO) (Bankr. D. Del. Dec. 16, 2021); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Dec. 8, 2021); *In re Alpha Latam Mgmt., LLC*, No. 21-11109 (JKS) (Bankr. D. Del. Sept. 15, 2021); *In re Nine Point Energy, LLC*, No. 21-10570 (MFW) (Bankr. D. Del. Apr. 20, 2021); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Apr. 13, 2021); *In re Mallinckrodt plc*, No. 20-12522 (JTD) (Bankr. D. Del. Nov. 19, 2020); *In re RGN-Grp. Holdings, LLC*, No. 20-11961 (BLS) (Bankr. D. Del. Sept. 15, 2020); *In re Skillsoft Corp.*, No. 20-11532 (MFW) (Bankr. D. Del. July 23, 2020); *In re Celadon Grp., Inc.*, No. 19-12606 (KBO) (Bankr. D. Del. Jan. 3, 2020).

6. I have over 25 years of corporate restructuring experience, including over 20 years in the AlixPartners restructuring practice and have served at AlixPartners as a Partner & Managing

3

Director since January 2018. Prior to joining AlixPartners, I was a Vice President of the venture capital firm MC Capital, where I managed the investment of early-stage capital of startup companies. Before that, I spent three years in the Business Recovery Services group at PricewaterhouseCoopers LLP.

7. Over the past 25 years, I have specialized in the retail and consumer products industries, advising senior management and directors of major companies to devise and implement turnaround and restructuring strategies in out-of-court transactions, chapter 11 restructurings, and foreign insolvency proceedings. I have been involved in numerous large and complex restructurings, including the following: Careismatic Brands, LLC, Bed Bath & Beyond; CTI Foods; Caesars Entertainment Operating Company; Borden Dairy; Eastman Kodak Company; Advantage Rent A Car; Toys "R" Us; Comverse Technology, Inc.; Dana Incorporated; Gymboree Group, Inc.; FairPoint Communications, Inc.; Milacron, Inc.; think3, Inc.; and Nebraska Book Company. I am a Certified Insolvency & Restructuring Advisor and a Certified Public Accountant. I received a Bachelor of Arts in Economics from the University of Texas at Austin and earned a Master of Business Administration from the Goizueta Business School at Emory University.

### The Debtors' Assets Upon Conversion

8. On the Conversion Date, the chapter 7 Trustee (and any permanent trustee, once appointed) will have access to various assets to fund the administration of the chapter 7 cases (collectively, the "**Estate Assets**"). Such assets can be categorized as follows:

- *First*, the Debtors' estates will be capitalized with approximately $750,000 in cash (the "**Estate Cash**") as well as an additional $300,000 for estimated Q4 U.S. Trustee fees.

- *Second*, the Debtors' estates will have the right to receive certain tax refunds that are anticipated to be paid to the estates in the coming months (the "**Tax Refunds**"). Such Tax Refunds are projected to be up to $3,000,000.

4

- *Third,* the Debtors' estates will hold the Debtors' interest in certain litigation-related assets where the Debtors are a plaintiff (the "**Litigation-Related Assets**"). Although the value of such Litigation-Related Assets is inherently uncertain and difficult to quantify, such assets, once monetized, would inure to the benefit of the Debtors' estates.

9. Prior to the Conversion Date, the Debtors will have funded the Disputed Administrative Expense Claims Reserve in a total amount of $3,078,302.82. Upon the payment by Sedgwick Claims Management Services to the Debtors of $421,697.18 pursuant to the *Order Approving Stipulation Regarding Sedgwick Claims Management Services' Motion for Allowance and Immediate Payment of Administrative Expense Claims* [D.I. 3296], such funds shall become part of the Disputed Administrative Expense Claims Reserve so that the total amount of the Disputed Administrative Expense Claims Reserve shall be $3,500,000. Upon entry of the proposed order substantially in the form attached as Exhibit A to the Motion (the "**Proposed Order**"), I understand that the funds in the Disputed Administrative Expense Claims Reserve will only be used by the Trustee (or any permanent chapter 7 trustee, once appointed) to make Administrative Expense Claims Payments to holders of such Later Reconciled Administrative Expense Claims. Upon the resolution of and payment to all Disputed Administrative Expense Claims, any residual funds remaining in the Disputed Administrative Expense Claims Reserve shall be paid *pro rata* to all holders of Pre-Closing Administrative Expense Claims and/or 503(b)(9) Claims.

10. The Debtors and their advisors have worked with the Committee and its advisors to size the Estate Assets to be sufficient for the Trustee (or any permanent trustee, once appointed) to administer the Disputed Administrative Expense Claims Reserve. It is my belief that the Estate Assets (including the Estate Cash) will be sufficient for the administration of the Disputed Administrative Expense Claims Reserve for the following reasons. *First*, the Debtors do not have any continuing business operations, and thus the Trustee (or any permanent trustee, once

appointed) will not be burdened with significant costs by virtue of the Debtors' operations. *Second*, to date, the Debtors have reconciled approximately $269 million of Pre-Closing Administrative Expense Claims and 503(b)(9) Claims. The Debtors estimate that, on the low end, there are approximately $274 million of total Pre-Closing Administrative Expense Claims and 503(b)(9) Claims and, on the high-end, there are approximately $289 million of total Pre-Closing Administrative Expense Claims and 503(b)(9) Claims. Accordingly, based on the Debtors' estimates, there are only approximately $5 million to $20 million of Pre-Closing Administrative Expense Claims and 503(b)(9) Claims left to be reconciled by the chapter 7 Trustee. *Third*, and finally, because all Administrative Expense Claim Payments are to be made out of the Disputed Administrative Expense Claim Reserve, there is no risk that the Estate Assets will be diminished by such payments. These beliefs are informed by the professional fees incurred to date in connection with resolving Administrative Expense Claims and the number of remaining claims.

\* \* \* \* \*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 3, 2025

By:   */s/ Kent Percy*<br>
Kent Percy<br>
Partner and Managing Director<br>
AlixPartners, LLP