**Exhibit A**

**Revised Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FORMER BL STORES, INC., et al.[1] | Case No. 24-11967 (JKS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 3261** |

**ORDER (I) CONVERTING CHAPTER 11 CASES TO CASES UNDER CHAPTER 7, (II) ESTABLISHING DEADLINE FOR FILING FINAL CHAPTER 11 FEE APPLICATIONS AND SETTING A HEARING THEREON, AND (III) GRANTING RELATED RELIEF**

Upon the *Motion of Debtors for Entry of Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting a Hearing Thereon, and (III) Granting Related Relief* (this "**Motion**")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") for entry of an order (a) converting each of the Debtors' Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code effective upon the Conversion Date, (b) establishing the Final Fee Application Deadline and setting a hearing thereon, and (c) granting related relief; and this Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29,

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Former BL Stores, Inc. (9097); Former Management Stores of Ohio, LLC (7948); Consolidated Property Holdings, LLC (0984); Former Furniture Stores of Ohio, LLC (7868); Former Savings Stores of California, LLC (5262); Former Stores of Ohio, LLC (6811); Former Tenant Stores of Ohio, LLC (0552); Former Savings Stores of Ohio, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Former eCommerce Stores of Ohio, LLC (9612); and Former Low Cost Stores of Ohio, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

2012; and this Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of these Chapter 11 Cases and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bankruptcy Rules and the Local Rules, and that, except as otherwise ordered herein, no other or further notice is necessary; and objections (if any) to the Motion having been withdrawn, resolved or overruled on the merits; and this Court having found and determined that the relief set forth in this Order is in the best interests of the Debtors and their estates; and that the legal and factual bases set forth in the Motion, in the *Declaration of Kent Percy in Support of Motion of Debtors for Entry of Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting a Hearing Thereon, and (III) Granting Related Relief* [D.I. 3298-1] and at the hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED**:

1. The Motion is GRANTED as set forth herein.

2. Effective upon entry of this Order (the "**Conversion Date**"), the Chapter 11 Cases shall be converted to cases under chapter 7 of the Bankruptcy Code.

3. The following Conversion Procedures are hereby approved:

(a) *Professional Fees*.

    (i) Each applicable professional shall submit an application for final allowance of compensation for services rendered and reimbursement of expenses (the "**Final Fee Application**") incurred (x) through the Conversion Date, (y) after the Conversion Date in connection with the preparation and prosecution of such Final Fee Application, and (z) after the Conversion Date in connection with the conversion of these Chapter 11 Cases to chapter 7 of the Bankruptcy Code, by

        no later than forty-five (45) days after the Conversion Date (the "**Final Fee Application Deadline**").  For the avoidance of doubt, the amount of fees for services rendered and/or expenses incurred in connection with the foregoing clauses (y) and/or (z) may be included in the applicable professional's respective Final Fee Application as an estimate; *provided, however*, that the Debtors' chapter 7 estates shall be responsible for payment of the actual amount of fees for services rendered and/or expenses incurred in connection with the foregoing clauses (y) and/or (z).

    (ii)    Objections, if any, to the Final Fee Applications shall be filed and served by no later than fourteen (14) days after the Final Fee Application Deadline. To the extent no objections are filed to a given professional's Final Fee Application, such professional may file a Certificate of No Objection, and the Court may, in its sole discretion, enter an order approving such fees and reimbursements.

    (iii)    To the extent the Court approves a Final Fee Application, all approved amounts owed for professional fees and expenses ("**Allowed Professional Fees**") shall be paid (x) first, from each professional's retainer to the extent such retainers exist; (y) next, if and to the extent applicable, from the Professional Fee Escrow Account (as defined in the GBRP Sale Order) in accordance with the terms of the GBRP Sale Order; and (z) thereafter, from the Debtors' chapter 7 bankruptcy estates in accordance with the priorities set forth in the Bankruptcy Code. Citibank, N.A. ("**Citibank**") shall continue to hold the Professional Fee Escrow Account in trust for the applicable Professionals Persons (as defined in the GBRP Sale Order) and shall be authorized to remit such funds directly to the applicable professionals following approval of their respective Final Fee Applications.

    (iv)    To the extent any professional fees and expenses have not yet been funded to the Professional Fee Escrow Account in accordance with the GBRP Sale Order as of the date of the entry of the Proposed Order approving this Motion, the Debtors are hereby authorized and directed to transfer such funds to Citibank upon entry of such Order.

    (v)    For the avoidance of doubt, with respect to any outstanding Monthly Fee Statements[3] filed by Retained Professionals for which a CNO has not yet been filed as of the Conversion Date, such Retained Professionals may file a CNO after the Conversion Date to the extent no Objections are received by the applicable Objection Deadline, and Citibank is authorized to remit funds directly to such Retained Professionals after such CNO has been filed.

(b)    ***Books and Records***.  As soon as reasonably practicable, but in no event more than thirty (30) days after the appointment of the interim chapter 7 trustee (the

---

[3] Capitalized terms used but not otherwise defined in this paragraph shall have the meanings ascribed to such terms in the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals* [D.I. 519] (the "**Interim Compensation Procedures Order**").

"**Trustee**"), the Debtors shall turn over or provide the Trustee access to any remaining books and records of the Debtors in the Debtors' possession or control, as required by Bankruptcy Rule 1019(d); *provided* that such deadline is without prejudice to the Debtors' ability to request an extension of such deadline from the Trustee. For purposes hereof, the Debtors may provide copies (including electronic copies) of such books and records to the Trustee, or instructions for locating and accessing such books and records, and may retain copies of such books and records to the extent necessary to complete the reports required herein.

(c) *Schedule of Unpaid Debts*. Within thirty (30) days of the Conversion Date, the Debtors shall file a single, consolidated schedule of unpaid debts incurred after commencement of the Debtors' Chapter 11 Cases, including the name and address of each creditor, as required by Bankruptcy Rule 1019(e)(1)(A); *provided* that such deadline is without prejudice to the Debtors' ability to request an extension of such deadline from the Trustee.

(d) *Final Report*. Within thirty (30) days after the Conversion Date, the Debtors shall file and transmit to the Trustee a final report and account in accordance with Bankruptcy Rule 1019(e)(1)(B); *provided* that such deadline is without prejudice to the Debtors' ability to request an extension of such deadline from the Trustee.

(e) *Official Committee of Unsecured Creditors*. The Committee shall be automatically dissolved on the Conversion Date, and the Committee members and the Committee's professionals shall be released from all rights and duties from or related to the Chapter 11 Cases on such date; *provided, however*, that the Professional Persons retained by the Committee shall have standing and a right to be heard after the Conversion Date for the limited purposes of filing and prosecuting Final Fee Applications.

(f) *Claims Agent*.

  (i) Kroll Restructuring Administration LLC ("**Kroll**") shall, within fourteen (14) days of the Conversion Date, and in accordance with Local Rules 2002-1(e)(x), (A) forward to the Clerk an electronic version of all proofs of claim, (B) upload the publicly available portions of the creditor matrix into CM/ECF, (C) forward to the Clerk the sealed portions of the creditor matrix in the format requested by the Clerk, and (D) since the Chapter 11 Cases are jointly administered, docket in the lead case a combined claims register containing claims from all cases, and also docket a case-specific final claims register and creditor mailing matrix in each respective jointly administered case.

  (ii) Subject to the foregoing paragraph 3(f)(i), upon entry of this Order, Kroll shall be relieved of its responsibilities as the Debtors' claims and noticing agent and will have no further obligations to the Court, the Debtors, the Trustee (or any permanent chapter 7 trustee, once appointed), or any party in interest with respect to the Chapter 11 Cases.

(g) *Disputed Administrative Expense Claims Reserve*.

    (i) After the Conversion Date, the Trustee (or any permanent chapter 7 trustee, once appointed) shall continue to maintain the Disputed Administrative Expense Claims Reserve in accordance with the Administrative Expense Claims Procedures Order for the benefit of holders of disputed Pre-Closing Administrative Expense Claims and/or 503(b)(9) Claims, as applicable. The Disputed Administrative Expense Claims Reserve shall be funded in the amount of $3,078,302.82 prior to the Conversion Date. Upon the payment by Sedgwick Claims Management Services to the Debtors of $421,697.18 pursuant to the *Order Approving Stipulation Regarding Sedgwick Claims Management Services' Motion for Allowance and Immediate Payment of Administrative Expense Claims* [D.I. 3296], such funds shall become part of the Disputed Administrative Expense Claims Reserve so that the total amount of the Disputed Administrative Expense Claims Reserve shall be $3,500,000. The Disputed Administrative Expense Claims Reserve shall be held in a segregated account maintained by Kroll in its capacity as disbursing agent (in such capacity, the "**Disbursing Agent**").

    (ii) When Pre-Closing Administrative Expense Claims and/or 503(b)(9) Claims that are disputed as of the Conversion Date (collectively, "**Disputed Administrative Expense Claims**") are reconciled, either consensually or nonconsensually (once reconciled, the "**Later Reconciled Administrative Expense Claims**"), the Trustee (or any permanent chapter 7 trustee, once appointed) shall use the funds in the Disputed Administrative Expense Claims Reserve to make Administrative Expense Claims Payments to holders of such Later Reconciled Administrative Expense Claims. Upon the resolution of and payment to all Disputed Administrative Expense Claims, any residual funds remaining in the Disputed Administrative Expense Claims Reserve shall be paid *pro rata* to all holders of Pre-Closing Administrative Expense Claims and/or 503(b)(9) Claims.

    (iii) The Disbursing Agent shall be entitled to rely on the instruction of the Trustee (or any permanent chapter 7 trustee, once appointed) with respect to distributions from the Disputed Administrative Expense Claims Reserve without any liability to any party for following such instruction. In addition, the Debtors are authorized to pay any fees of the Disbursing Agent with respect to the Disputed Administrative Expense Claims Reserves. To the extent the Disbursing Agent resigns or is terminated pursuant to the terms of the agreement governing the Disbursing Agent's services, the Trustee (or any permanent chapter 7 trustee, once appointed) shall select a successor disbursing agent to administer the Disputed Administrative Expense Claims Reserve within thirty (30) days after such resignation or termination.

4. As set forth in the GBRP Sale Order, all Professional Persons[4] shall continue to have a first-priority claim over the funds held in the Professional Fee Escrow Account, with priority over all administrative expense claims and unsecured claims against the Debtors and their estates of any kind or nature whatsoever, including, without limitation, (x) any remaining obligations of the DIP Credit Parties or the Prepetition Secured Parties that survive termination of the DIP Obligations, including any contingent indemnification claims, (y) administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, and 1114 of the Bankruptcy Code, and (z) any DIP Liens or Adequate Protection Liens (each as defined in the Final DIP Order). If the funds in the Professional Fee Escrow Account are insufficient to pay all Allowed Professional Fee claims (the "**Professional Fee Shortfall**"), then the Professional Persons shall continue to have a superpriority administrative expense claim, senior to all other claims, against, and a superpriority lien, senior to all other liens on, all remaining assets in the Debtors' estates for such Professional Fee Shortfall.

5. If any payments made pursuant to the Administrative Expense Claims Procedures Order were returned, the Trustee (or any permanent trustee, once appointed) are authorized, but not directed, to reissue such payments to complete payment.

6. Nothing in this Order or the conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code shall affect or modify any order of this Court (or documents

---

[4] Capitalized terms used but not otherwise defined in this paragraph shall have the meanings ascribed to such terms in the GBRP Sale Order and/or the *Final Order Under Bankruptcy Code Sections 105, 105, 361, 362, 363, 364, 503, 506, 507, and 552, and Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014 (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting (A) Liens and Providing Superpriority Administrative Expense Status and (B) Adequate Protection to Prepetition Secured Creditors, (III) Modifying Automatic Stay, and (IV) Granting Related Relief* [D.I. 584] (the "**Final DIP Order**"), as applicable.

related thereto) entered during the Chapter 11 Cases, and all such orders entered by the Court in the Chapter 11 Cases shall remain in full force and effect in the Chapter 7 Cases.

7. This Court shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this Order.