## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FORMER BL STORES, INC., et al., | Case No. 24-11967 (JKS) |
| Debtors.[1] | Jointly Administered |
| | **Related to D.I. 2989 and 3057** |

### MEMORANDUM OPINION[2]

Before the Court is the Debtors' Objection to Lipp CDS, Inc.'s Proof of Claim (the

"Objection").[3]  For the reasons set forth below, the Court will sustain the Objection.

### Procedural Background

On July 8, 2025,[4] Lipp CDS, Inc. ("Lipp"), a California licensed real estate broker

("Broker"), filed Proof of Claim No. 10731 (the "Claim") asserting an administrative priority

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Former BL Stores, Inc. (9097); Former Management Stores of Ohio, LLC (7948); Consolidated Property Holdings, LLC (0984); Former Furniture Stores of Ohio, LLC (7868); Former Savings Stores of California, LLC (5262); Former Stores of Ohio, LLC (6811); Former Tenant Stores of Ohio, LLC (0552); Former Savings Stores of Ohio, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Former eCommerce Stores of Ohio, LLC (9612); and Former Low Cost Stores of Ohio, LLC (3277). The address of the debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

[2] This Opinion constitutes the findings of fact and conclusions of law required by Fed. R. Bankr. P. 7052. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(B). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

[3] D.I. 2989 (Debtor's Objection to Lipp CDS, Inc.'s Proof of Claim).

[4] The general bar date for filing proofs of claim was originally December 30, 2024 (D.I. 1188) and was subsequently extended until January 31, 2024 (D.I. 1531).  On May 28, 2025, Lipp filed the Motion of Lipp CDS, Inc. for Leave to File Proof of Claim After Claims Bar Deadline (D.I. 2808).  The Debtors and Lipp consensually resolved that motion through a Joint Stipulation By and Among the Debtors and Lipp CDS, Inc. Resolving Motion of Lipp CDS, Inc. for Leave to File Proof of Claim After Claims Bar Deadline, which was approved by the Court (D.I. 2917) (the "Stipulation Order").

claim against Debtor Big Lots, Inc., in the amount of $62,595.94.[5]  On July 22, 2025, the

Debtors filed the Objection.  On August 5, 2025, Lipp filed its reply (the "Reply"),[6] including the

Declaration of Deron Conway ("Conway").

On September 8, 2025, the parties filed a joint letter consenting to the Court issuing a

ruling on the Objection without further hearing on the matter.[7]  The parties also consent to the

admission of Lipp Exhibits 1-10,[8] and of the Court taking judicial notice of the decision in *Big

Lots Stores PNS LLC v. 6351 Westminster Blvd LLC,* Case No. SACV 24-757-MWF (JDEx),

2024 WL 4103564 (C.D. Cal. Aug. 8, 2024) (the "District Court Decision").

### Facts

On February 2, 2023, Debtor Big Lots Stores – PNS, LLC ("Seller") entered into a

purchase agreement (the "Original Purchase Agreement") with 6351 Westminster Blvd, LLC

("Buyer") governing the sale to Buyer by Seller (the "Original Westminster Sale") of the land,

easements, appurtenances, and improvements located at 6351 Westminster Blvd., Westminster,

CA 92683 (the "Westminster Property").[9]

---

[5] D.I. 3143, Annex A (Joint Letter of the Debtors and Lipp CDS, Inc. Regarding Lipp CDS, Inc.'s Proof of Claim) (the "Joint Letter").

[6] D.I. 3057 (Response to Debtor's Objection to Proof of Claim of Lipp CDS, Inc.).

[7] D.I. 3143 (Joint Letter).

[8] *See* D.I. 3143 (Joint Letter).  The Court relies upon, and cites to, the following exhibits that were attached to the Joint Letter (D.I. 3143): Annex A: Lipp CDS Proof of Claim No. 10731; Exhibit 1: State of California Department of Real Estate (Lipp CDS Inc License); Exhibit 2: State of California Department of Real Estate (Conway License); Exhibit 3: Commission Agreement (as defined herein); Exhibit 4: Commission Agreement; Exhibit 5: Original Purchase Agreement, dated February 2, 2023 (executed); Exhibit 6: the Westminster Sale Motion (as defined herein); Exhibit 7: the Sale Order (as defined herein); Exhibit 8: Amended Purchase Agreement (as defined herein); Exhibit 9: Chicago Title Insurance Company Closing Statement, dated January 31, 2025; and Exhibit 10: December 19, 2024, Hearing Transcript (collectively, the "Exhibits").

[9] D.I. 3143 (Joint Letter), Ex 5.

Seller, Lipp, and Conway (Agent/Salesperson) entered into a Client Registration and Commission Agreement (the "Commission Agreement"),[10] dated February 3, 2023, that sets forth the mutual understanding between Lipp and Seller regarding the payment of a commission to Lipp for broker services, if a sale is consummated between Client of Broker (BBIG Holdings, LLC and/or their Assignee) and Seller, for the Westminster Property.[11]

A dispute between Buyer and Seller relating to the condition of the Westminster Property at the time of the Original Westminster Sale resulted in Seller filing an action against Buyer in the United States District Court for the Central District of California (the "District Court"), Case No. 8:24-cv-757-MWF-JDE (the "Westminster Litigation").[12]

On August 8, 2024, the District Court entered the District Court Decision in the Westminster Litigation in favor of Seller finding: "Under applicable Ohio law, the Agreement [Original Purchase Agreement] is rendered void by the parties' failure to close by the Amended Closing Date and the time-is-of-the-essence clause."[13]

On September 4, 2024, Buyer filed a notice of appeal of the judgment with the Ninth Circuit Court of Appeals (the "Westminster Appeal").[14]

On September 9, 2024, the Debtors commenced the chapter 11 cases (the "Chapter 11 Cases"). Thereafter, Seller and Buyer reached an agreement to resolve the Westminster Appeal.

---

[10] The parties refer to, Exhibit 3, the Client Registration and Commission Agreement as the Commission Agreement. For clarity, Exhibit 4, is a different Commission Agreement, dated March 3, 2023, executed by Lipp, Conway and Back Bay Realty Group, that is not referenced herein.

[11] D.I. 3143 (Joint Letter), Ex.3.

[12] *Big Lots Stores PNS LLC v. 6351 Westminster Blvd LLC,* Case No. SACV 24-757-MWF (JDEx), 2024 WL 4103564, at *2 (C.D. Cal. Aug. 8, 2024).

[13] *Big Lots Stores PNS LLC,* 2024 WL 4103564, at *6.

[14] D.I. 2989 (Debtor's Objection to Lipp CDS, Inc.'s Proof of Claim) at ¶ 16. *See also Big Lots Stores – PNS, LLC v. 6351 Westminster Blvd, LLC,* No. 24-5432, 2024 WL 707323 (9th Cir. Feb. 24, 2025).

Seller and Buyer agreed for Buyer to purchase the Westminster Property from Seller at a purchase price of $6.1 million (the "Amended Purchase Agreement").[15]

On November 27, 2024, the Debtors filed the Motion of Debtors for Entry of an Order (I) Authorizing and Approving (A) the Debtors' Assumption of and Performance Under the Purchase Agreement and (B) the Sale of the Westminster Assets Free and Clear of all Liens, Claims, Encumbrances and Other Interests, (II) Approving the Settlement and (III) Granting Related Relief (the "Westminster Sale Motion"),[16] which was approved by order entered December 20, 2024 (the "Sale Order").[17]

Pursuant to stipulation of the Buyer and Seller, the Westminster Appeal was voluntarily dismissed.[18]

### The Claim

By the Claim, Lipp asserts an administrative priority claim under 11 U.S.C. § 507(a) against Big Lots, Inc., in the amount of $62,595.94 ($60,000 claim, plus $2,595.94 interest at a rate of 10% from January 31, 2025 pursuant to Cal. Civ. Code § 3289), for a "real estate broker commission."[19] Certain of the Exhibits, as well as the Conway Declaration and a copy of the Stipulation Order, are attached to the Claim.

---

[15] D.I. 2989 (Debtor's Objection to Lipp CDS, Inc.'s Proof of Claim) at ¶ 17; D.I. 1263 (Chris Macke Declaration in Support) at ¶¶ 5-6.

[16] D.I. 1262 (Motion to Authorize).

[17] D.I. 1407 (Order (I) Authorizing and Approving (A) The Debtors' Assumption of and Performance Under the Purchase Agreement and (B) the Sale of the Westminster Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (II) Approving the Settlement and (III) Granting Related Relief).

[18] *See Big Lots Stores – PNS, LLC,* 2025 WL 707323, at *1.

[19] D.I. 3143 (Joint Letter), Annex A. The Claim does not assert, nor does Lipp argue, any other theory of recovery such as quantum meruit or unjust enrichment.

**Legal Standard**

Section 502 of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."[20]

When asserting a proof of claim against a bankrupt estate, the claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant.[21] A claim that alleges facts sufficient to support a legal liability is entitled to *prima facie* validity.[22] A party disputing a claim's validity must produce evidence sufficient to negate the *prima facie* validity of the claim.[23] Once an objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion with respect to the claim is always on the claimant.[24]

Section 502(b)(1) of the Bankruptcy Code provides that the court "shall determine the amount of such claim…as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—such claim is unenforceable against the debtor and property of the debtor, … ."[25]

**Discussion**

**A.  Lipp is Not Entitled to Administrative Expense Claim**

The Debtors dispute that Lipp is entitled to an administrative claim under section 507(a)(2) or 503(b)(1)(A).  First, the Debtors argue that the alleged administrative claim fails because the Commission Agreement is not a post-petition transaction with the Debtors.  Second,

---

[20]  11 U.S.C. § 502(a).

[21]  *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).

[22]  *In re Hercules Offshore, Inc.*, 571 B.R. 633, 638 (Bankr. D. Del. 2017).

[23]  *In re Allegheny*, 954 F.2d at 173-74; *In re Hercules*, 571 B.R. at 638.

[24]  *In re Allegheny*, 954 F.2d at 174.

[25]  11 U.S.C. § 502(b)(1).

the Debtors argue that Lipp has not provided any evidence or argument as to the benefit it provided to the estate. The Debtors contend that if Lipp has a valid claim, such claim is a general unsecured claim.

Lipp asserts it procured the Buyer that resulted in a $6.1 million benefit to the estate.

Section 507(a)(2) of the Bankruptcy Code affords priority to "administrative expenses allowed under section 503(b)."[26] "Section 503 governs the allowance of administrative expenses in a bankruptcy case,"[27] and provides, in part, that "[a]fter notice and a hearing, there shall be allowed administrative expenses, ... including—(1)(A) the actual, necessary costs and expenses of preserving the estate ... ."[28] Courts apply a two-prong test to determine whether a claim is entitled to administrative expense priority under section 503(b)(1)(A): (1) the expense must have arisen from a post-petition transaction between the creditor and the debtor; and (2) the expense must have been "actual and necessary" to preserve the estate.[29] The two-prong test is conjunctive; both requirements must be met. "In order to hold administrative expenses to a minimum and to maximize the value of the bankruptcy estate, section 503(b) is narrowly construed."[30] Lipp "carr[ies] a heavy burden" to demonstrate that the expense for which it seeks payment provided an actual benefit to the estate.[31]

---

[26] 11 U.S.C. § 507(a)(2).  *See also In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 314 (3d Cir. 2011).

[27] *In re New Century TRS Holdings, Inc.*, 446 B.R. 656, 661 (Bankr. D. Del. 2011).

[28] 11 U.S.C. § 503(b)(1)(A).

[29] *See In re Energy Future Holdings Corp.*, 990 F.3d 728 (3d Cir. 2021); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 301 (Bankr. D. Del. 2013); *In re New Century TRS Holdings.*, 446 B.R. at 661; *In re DBSI*, 407 B.R. 159, 165 (Bankr. D. Del. 2009); *In re Bernard Techs., Inc.*, 342 B.R. 174, 177 (Bankr. D. Del. 2006) (citing *Calpine Corp. v. O'Brien Env't Energy, Inc. (In re O'Brien Env't Energy, Inc.)*, 181 F.3d 527, 532–33 (3d Cir. 1999) ("For a claim in its entirety to be entitled to ... priority under § 503(b)(1)(A)[i], the debt must arise from a transaction with the debtor-in-possession and the consideration supporting the claimant's right to payment must be beneficial to the debtor-in-possession in the operation of the business.").

[30] *In re Bernard Techs.*, 342 B.R. at 177.

[31] *Id.* at 177.

Lipp has failed to meet its burden. Lipp's claim is alleged to have arisen from the Commission Agreement. The Commission Agreement, which is dated February 2023, is a prepetition agreement.[32] Contract-based bankruptcy claims arise at the time the contract is executed even if that claim is contingent or unmatured.[33] To the extent that there is a valid claim under that prepetition agreement, such a claim would be a general unsecured claim.[34]

In addition, Lipp has not presented any evidence that the post-petition Amended Purchase Agreement and sale arose from a post-petition transaction between Lipp and Debtor. At most, when the Commission Agreement was executed, Lipp had a contingent right to future payment which was extinguished by the voided Original Purchase Agreement. As discussed below, no evidence has been presented of any post-petition transaction or agreement between Lipp and the Debtor to support an administrative claim.

Having failed to satisfy the first requirement of the two-prong test – a post-petition transaction with the Debtors – the Court need not address the second prong. Lipp's asserted administrative expense claim fails.

### B. Lipp Is Not Entitled to Commission Under the Commission Agreement

The Debtors next argue that the Claim should be denied because the Commission Agreement, which serves as the basis for the Claim, expired by its own terms on February 1,

---

[32] D.I. 3143 (Joint Letter), Ex 3.

[33] *Mesabi Metallics Co. LLC v. B. Riley FBR, Inc. (In re Essar Steel Minnesota, LLC)*, 652 B.R. 709, 719 (Bankr. D. Del. 2023) (holding that "a contract-based claim arises at the time the parties enter into the contractual agreement" even if that claim is contingent or unmatured).

[34] *See Mesabi Metallics Co. LLC*, 652 B.R. at 719.

2024 – before the Debtors filed bankruptcy and a year before the Amended Westminster Sale closed on January 31, 2025.

Lipp argues that, under California law, the expiration of the Commission Agreement is not relevant to the payment of a commission.[35] Lipp maintains that the key date is when the property was listed, and the Commission Agreement signed. Relying on *Baker v. Curtis*[36] and *Matthews v. Starritt,*[37] it contends that the closing of the sale after the expiration of the Commission Agreement has no effect on the payment of the commission under California law, as the sale was procured while the Commission Agreement was in effect. Notably, the parties do not discuss California cases addressing broker commissions other than *Baker* and *Matthews* as discussed below.

At issue is the Debtors legal obligation, if any, arising under the Commission Agreement. In *R. J. Kuhl Corp. v. Sullivan,* the California Court of Appeal, Third District, explained the following rules apply concerning the payment of a commission unless the parties specify a contrary rule:

> In [California] it is well established, in the *absence of any specific agreement to the contrary*, that a broker employed to sell real or personal property has earned his commission when, within the life of his contract, or any extension thereof, he has produced a person who is ready, willing, and able to purchase the property on terms satisfactory to the seller, and has obtained a binding and valid contract for a sale on the terms proposed by the seller, or has brought the seller and buyer together and thus enabled them to enter into a contract of sale, or has produced such a purchaser who has verbally accepted the seller's terms and offered to enter into a written contract embodying the said terms and binding upon both parties. In such cases the broker's right to commission accrues when the contract of sale is executed, or when opportunity to make such

---

[35] D.I. 3057 (Response to Debtor's Objection to Proof of Claim of Lipp CDS, Inc.) (Lipp asserts, and the Debtors do not dispute, that California is the applicable state law regarding the Commission Agreement).

[36] *Baker v. Curtis,* 234 P.2d 153 (Cal. Dist. Ct. App. 1951).

[37] *Matthew v. Starritt,* 60 Cal. Rptr. 857 (Ct. App. 1967).

contract is given the seller, and the broker becomes entitled to his commission even though the seller is unable or unwilling to complete the sale. ... The broker has performed his duty and has earned his commission regardless of ... whether the sale is ever consummated by the delivery of the property and the payment of the purchase price."[38]

Thus, unless the contract provides otherwise, "the broker earns his commission upon the principal's entry into a binding contract for a purchase subject to the brokerage contract regardless of whether the sale is consummated."[39] In this case, the right to a commission, therefore, depends on the document which sets forth the commission agreement between the parties—the Commission Agreement.[40]

Under California law, any right to compensation asserted by a real estate broker must arise from the four corners of employment contract, which is strictly enforced according to its lawful terms.[41] "The parties to a brokerage contract are at liberty to adopt provisions making compensation depend upon any lawful condition stated."[42] "When interpreting a contract, the plain language within the four corners of the contract must first be examined to determine the mutual intent of the contracting parties."[43] "In cases of contracts, language is to be given, if

---

[38] *R. J. Kuhl Corp. v. Sullivan*, 17 Cal. Rptr. 2d 425, 431 (Ct. App. 1993) (emphasis added) (citing *Twogood v. Monnette*, 215 P. 542, 543 (Cal. 1923)).

[39] *R. J. Kuhl Corp.*, 17 Cal. Rptr. 2d at 432; *see also, Allen v. Gindling*, 288 P.2d 130, 134-35(Cal. Dist. Ct. App. 1955); *cf., e.g., Donnellan v. Rocks*, 99 Cal. Rptr. 692, 694-95 (Ct. App. 1972).

[40] *Torelli v. J. P. Enters., Inc.*, 61 Cal. Rptr. 2d 76, 78 (Ct. App. 1997) ("Where the broker does not have a listing contract, he must rely upon the promise to pay a commission contained in the contract between the parties, and where this agreement is the only written document providing for the payment of the commission, he is subject to the terms and conditions of payment contained in the agreement.").

[41] *Enea v. Coldwell Banker/Del Monte Realty*, 225 B.R. 715 (N.D. Cal. 1998).

[42] *R. J. Kuhl Corp.*, 17 Cal. Rptr. 2d at 431 (Ct. App. 1993); *see also Steve Schmidt & Co. v. Berry*, 228 Cal. Rptr. 689 (Ct. App. 1986) (Under California law, parties are entitled to make a broker's employment and right to compensation depend upon any lawful condition that they agree to insert in agreement, and listing agreement is strictly construed according to its terms.).

[43] *United States v. Westlands Water Dist.*, 134 F.Supp.2d 1111, 1134 (E.D. Cal. 2001) (citing *United States v. Clark*, 218 F.3d 1092, 1096 (9th Cir. 2000)).

possible, its usual and ordinary meaning.  The object is to find out from the words used what the parties intended to do."[44]

With this backdrop, the Court analyzes the Commission Agreement.  The stated purpose of the Commission Agreement,[45] which is dated the same date Seller executed the Original Purchase Agreement, ". . . is to set forth a mutual understanding between [Lipp] and [Seller] . . . with regards to the payment of a commission to Broker for broker services rendered, *if a sale is consummated between the below listed client of Broker [BBIG Holdings, LLC] and Seller, for [the Westminster Property]. . . .*[46]  The agreement also provides:

> *In the event that escrow closes between Client [] and Seller [],* Seller agrees to pay a fee for service to Broker in an amount equal to One Hundred Eighty Thousand Dollars ($180,000.00).  Said fee *shall be due and payable to Broker upon close of escrow* and paid by the title company from the proceeds of sale."[47]

The Commission Agreement states it "shall expire on February 1, 2024."[48]  The Commission Agreement does not specifically reference the Original Sale Agreement, the date by which a sale must be consummated or the escrow close, nor does it address a sale after the expiration date.  The Commission Agreement expressly provides an expiration date and conditions payment upon

---

[44] *Westlands,* 134 F.Supp.2d at 1134 (internal quotation marks and citation omitted).

[45] D.I. 3143 (Joint Letter), Ex 3.

[46] D.I. 3143 (Joint Letter), Ex 3 (emphasis added).

[47] D.I. 3143 (Joint Letter), Ex 3 (emphasis added).

[48] D.I. 3143 (Joint Letter).

(1) "consummation" of a sale,[49] and (2) escrow closing.[50]  Although the general standard for earning a commission is a broker producing a ready willing and able buyer, "[a] broker can make [a] special agreement whereby his compensation is contingent upon happening of event."[51]  Here, the parties contracted for when the commission was to be earned.  The plain language of the Commission Agreement states that payment of a commission is contingent on consummation of a sale and close of escrow.

Support for parties choosing to contract beyond the 'ready willing and able' standard for earning a commission can be found throughout California case law.  In *Matthews*, the California court affirmed a trial court's holding that a broker was not entitled to a commission under an exclusive listing agreement and deposit receipt because both agreements "expressly provide an expiration date" and the sale was "subject to" an option to purchase.  The Court reasoned that "[a]cceptance of a conditional deal procured and presented by the broker does not give him a right to commission *unless and until the condition is performed*."[52]  The *Matthews* court counseled that a "broker's right to commission is dependent on performance of the contract

---

[49]  In *Cochran v. Ellsworth*, 272 P.2d 904 (Cal. Dist. Ct. App. 1954), the California District Court of Appeal, Second District, addressed whether a sale that ultimately fell through still constituted a "consummation" as required by a brokerage contract. In that case, the broker managed to procure a willing and able buyer who entered a binding contract of purchase with the seller. Certain monies and documents were then deposited in escrow, but escrow never closed and amid litigation for specific performance, the buyer and seller mutually rescinded the transaction. The *Cochran* Court stated the "consummation of a sale' has a well-defined meaning of 'complet[ing] the transaction', which when real property is involved, requires "payment of the purchase price and conveyance of title."

[50]  The Commission Agreement contains two escrow contingencies: "in the event that escrow closes ..., Seller agrees to pay a fee for service to Broker ..." and "upon close of escrow" the fee "shall be due and payable to Broker." Although not defined in the Commission Agreement, "close of escrow" generally means when the legal and financial conditions are satisfied and the third party holding the documents and funds can move forward with the property transfer from seller to buyer.  In *Lohman v. Ephraim*, No. B207755, 2010 WL 6901, at *5 (Cal. Ct. App. Dec. 30, 2009), *as modified* (Jan. 28, 2010), the California Court of Appeal, Second District, defined escrow as follows: "'Escrow' is a transaction in which one person delivers 'any written instrument, money, evidence of title to real or personal property, or other thing of value to a third person to be held by that third person until the happening of a specified event or the performance of a prescribed condition, when it is then to be delivered by that third person to' another person for the purpose of effecting a sale or transfer."

[51]  *In re Tully*, 202 B.R. 481 (B.A.P. 9th Cir. 1996); *see also Estate of Lopez*, 10 Cal. Rptr. 2d 67 (Ct. App. 1992).

[52]  *Matthews v. Starritt*, 60 Cal. Rptr. 857, 860 (Ct. App. 1967) (emphasis added).

11

between his principal and party produced by him."[53]  The Court cautioned, "if [broker] had wished to protect his right to a commission in this situation, he should have expressly inserted an appropriate statement in both agreements that he was entitled to a commission even though [] exercised its option."[54]

Here, the Commission Agreement expressly provides an expiration date <u>and</u> conditions to payment of the commission.  Like *Matthews,* the Broker is not entitled to a commission unless and until the conditions are satisfied.

The evidence establishes that, as of February 1, 2024, a sale of the Westminster Property had not been consummated, the escrow on the Original Purchase Agreement for the Westminster Property had not closed, and the definitive February 1, 2024, expiration date set forth in the Commission Agreement expired.  No condition precedent to payment of a commission set forth in the Commission Agreement had occurred and the agreement expired.[55]  Based on the plain language of the contract between the parties, no commission was due prior to, or upon, expiration of the Commission Agreement because a sale had not been consummated, and escrow had not closed.

Moreover, on August 8, 2024, the District Court rendered the Original Purchase Agreement void.  As a result, even if the Commission Agreement had not expired seven months earlier, the conditions precedent to payment of a commission under the Commission

---

[53] *Matthews,* 60 Cal. Rptr. at 860 ("'Subject to' means subordinate to, and is generally interpreted as a condition precedent.") (internal citations omitted).

[54] *Id.* at 860.

[55] Even if the Court were to construe, and discount, the phrase "Said fee *shall be due and payable to Broker upon close of escrow*" as describing the timing of payment, rather than a condition to earning a commission, the other provision requiring the closing escrow ("*In the event that escrow closes between Client [] and Seller [],* Seller agrees to pay a fee for service to Broker ... .") is a condition to payment.  It specifically requires the occurrence of the "closing of escrow" for payment.  *See the following definitions of "in the event of":* https://dictionary.cambridge.org/us/dictionary/english/in-the-event-of ("if something happens" "if something should happen"); https://www.merriam-webster.com/dictionary/in%20the%20event%20of (if (something) happens).

Agreement— "consummation" of a sale and "close of escrow"— could not occur because the Original Purchase Agreement was held void. Notably, the Original Purchase Agreement was of no legal effect,[56] could not be enforced, and, consequently, the sale could not be consummated, and escrow could not close.

The Court next considers whether there is evidence to establish a waiver or extension of time under the Commission Agreement for Lipp's performance. Lipp argues, *inter alia*, it procured the Buyer that ultimately purchased the Westminster Property that closed January 31, 2025. Lipp relies on *Baker* for the proposition that a Broker is entitled to a commission even though the Commission Agreement expired. In *Baker*, the listing contract within which the broker was to sell a property expired, and the property owner urged and encouraged the broker to continue his efforts to find a purchaser, which he did. As a result, a purchaser was produced to whom the owner sold the property. Under those circumstances, the California court found that the time limit in the listing contract was waived, and the broker was entitled to his commission. *Baker* is factually distinguishable, and Lipp's reliance on that case is misplaced. In determining whether a broker was the procuring cause is a question of fact. Here, there is no evidence that Lipp put into motion a chain of events that resulted in the Amended Purchase Agreement.

In *Starboard Commercial Brokerage v. Yates*, the Bankruptcy Court for the Northern District of California addressed whether a commission was due when a sale was negotiated and documented after the Property Listing Agreement had expired. The bankruptcy court explained that under California law, "[i]f a commission becomes due after expiration of the term of a

---

[56] Black's Law Dictionary defines a "void contract" as "A contract that is of no legal effect, so that there is really no contract in existence at all." *Void Contract*, Black's Law Dictionary (12th ed. 2024). *See also Rainy Day Rentals, Inc. v. Next Gen. Props., Inc.,* 2022-Ohio-3530, ¶ 26, 198 N.E.3d 163, 168; *Guthman v. Moss,* 198 Cal. Rptr. 54 (Ct. App. 1984) ("Void contract is no contract at all; it binds no one, is a mere nullity and cannot be enforced."); *Barrionuevo v. Chase Bank, N.A.,* 885 F. Supp. 2d 964, 970 (N.D. Cal. 2012) ("A sale that is deemed 'void' means, "in its strictest sense [ ] that [it] has no force and effect, … .") (citation and internal quotation marks omitted).

broker's agreement, then upon sufficient factual showing, courts have held that the term limit is considered to have been waived, entitling the broker to payment of a commission."[57]  The *Yates* Court identified three factors to determine whether a waiver or extension of the term occurred: (i) whether, after the term expired, the property owner urged and encouraged the broker to continue its efforts to sell the property; (ii) whether the broker continued to act as an agent with the knowledge, approval, and encouragement of the property owner; and (iii) whether, as a result of the broker's efforts, a purchaser produced and a sale closed.[58]  "Whether a waiver or extension of time occurred is a question of fact."[59]

Lipp has not presented any evidence establishing that the term of the Commission Agreement was extended or waived.  First, no evidence has been presented that the Seller urged and encouraged Lipp to continue its efforts to sell the Westminster Property after the expiration of the Commission Agreement or after the Original Sale Agreement was voided.  Second, there is no evidence that Lipp continued to act as broker with the knowledge, approval, and encouragement of the Seller to re-negotiate or secure the Amended Purchase Agreement.  The record is devoid of any communications, interactions or other activity between the Seller, Buyer, and Lipp after the expiration of the Commission Agreement.  Lipp has not provided any evidence of any brokerage services or efforts to secure the Amended Purchase Agreement.  Third, the record lacks any evidence demonstrating that Lipp's efforts resulted in the execution of the Amended Purchase Agreement or the ultimate closing on the sale of the Westminster Property.  In fact, unlike the Original Purchase Agreement, the Amended Purchase Agreement contains a

---

[57] *Starboard Commercial Brokerage, Inc. v. Yates (In re Yates)*, Case No. 15-52585 MEH, 2016 WL 3582125, at *3 (Bankr. N.D. Cal. June 24, 2016) (citations omitted).

[58] *Yates*, 2016 WL 3582125, at *3 (citing *Kraemer v. Smith*, 3 Cal. Rptr. 471, 472 (Dist. Ct. App. 1960)) (further citations omitted).

[59] *Yates*, 2016 WL 3582125, at *3 (citation omitted).

different purchase price and explicitly states: "Seller and Buyer each represent and warrant that they have not been represented by any broker in connection with the sale of the Property and no commissions or fees are due to any other broker or finder by reason of either party's actions in this matter."[60]  On this record, the Court cannot conclude that the term of the Commission Agreement was extended or waived or that Lipp continued to act as an agent to secure the Amended Purchase Agreement.

The Court next considers whether Lipp was the procuring cause for the Amended Purchase Agreement that resulted in the Westminster Sale, even though the Commission Agreement expired.  Again, the record lacks evidence upon which this Court can conclude that Lipp was the procuring cause of the Amended Purchase Agreement and resulting Westminster Sale entitling it to a commission.  No evidence has been presented regarding the negotiation and execution of the Amended Purchase Agreement; Lipp's involvement or efforts to procure the Amended Purchase Agreement with Buyer that resulted in the Westminster Sale; or Lipp's continued brokerage efforts after the District Court Decision voiding the Original Purchase Agreement.

Moreover, if Lipp had assisted in the procurement of the Buyer during the pendency of the Chapter 11 Cases, then Lipp should have been retained as a real estate broker under section 327 of the Bankruptcy Code, otherwise, Lipp would be precluded from recovering any commission or fee.[61]  Lipp was never retained as a broker.

---

[60] D.I. 1262 at 11.3 (Amended Purchase Agreement).

[61] *Enea v. Coldwell Banker/Del Monte Realty*, 225 B.R. 715, 719 (N.D. Cal. 1998) (citations omitted) (Affirming bankruptcy court decision that debtor's failure to obtain prior bankruptcy court approval to serve as real estate broker precluded him from recovering compensation); *In re Haley*, 950 F.2d 588 (9th Cir. 1991) (Holding that under 11 U.S.C. § 327(a), a real estate broker is entitled to compensation for the sale of a property in the bankruptcy estate only if the broker employment is approved by the bankruptcy court).

### C.  The Impact of the District Court Decision on the Commission Agreement

Debtors argue that the District Court Decision invalidated the Original Purchase Agreement governing the Westminster Sale, and, as a result, there was no sale for which Lipp could seek a broker's commission.

Lipp argues it was not a party to the Westminster Litigation and that such litigation has no effect on the Commission Agreement.

While Lipp may not have been a party to the Westminster Litigation the outcome of that litigation negated payment of a commission under the Commission Agreement.  As discussed above, the District Court Decision voided the Original Purchase Agreement.  Consummation of a sale and closing of escrow was a condition precedent to payment of a commission to the Broker under the Commission Agreement.[62]  Absent "consummation" of a sale and "close of escrow," Lipp was not entitled to a commission under the Original Purchase Agreement.  As the Court explained in *Matthews*, the broker does not have a right to a commission "unless and until the condition is performed."[63]

### D.  The Lipp Claim was Extinguished by the Sale Order

The Debtors maintain that because all claims and interests with respect to the Westminster Property were released and forever barred from being asserted against the Debtors and the estate, the Claim should be disallowed.  They contend Lipp's Claim, if any, was extinguished by the Sale Order which expressly states: "[t]he Debtors may sell the [Westminster] Property *free and clear of all claims against or interest in the Debtors*, their estates, or any of the [Westminster] Property"[64] and "after the closing of the sale, *the Debtors shall have no further*

---

[62] D.I. 3143 (Joint Letter), Ex 3.

[63] *Matthews v. Starritt*, 60 Cal. Rptr. 857, 860 (Ct. App. 1967).

[64] D.I. 1407 (Sale Order) at ¶ F (emphasis added).

*liability with respect to the [Westminster] Property*, and any claims, whether administrative or otherwise, relating to arising from such [Westminster] Property after the closing of the sale asserted against the Debtors shall be deemed disallowed."[65]

Lipp counters that the Debtors failed to provide it with notice of the Westminster Sale Motion and deprived it of the right to object to, and appeal, the Sale Order.  Lipp further asserts that the Westminster Sale Motion makes materially false representations, and that paragraph 10.3 of the Amended Purchase Agreement falsely states that neither the Seller, nor Buyer were aware of the existence of any broker.

The Debtors do not dispute Lipp's contention that it was not served with notice of the Westminster Sale Motion.

Bankruptcy Rule 2002(a)(2) requires service of a motion to sell property of the estate on, among others, "all creditors."[66]  In addition, Local Rule 2002-1(b) states that a motion to sell property under Bankruptcy Rule 2002(a)(2) must be served on, among others, "all parties whose rights are affected by the motion or application."[67]  Under the facts as presented, Lipp does not have a claim against the Debtors, nor rights affected by the Westminster Sale Motion.  For the reasons discussed above, any contingent claim was extinguished when the Original Purchase Agreement was voided and Lipp has not established a claim under Amended Purchase

---

[65] D.I. 1407 (Sale Order) at ¶ 9 (emphasis added).  The Sale Order further provides that:

> All persons or entities holding liens or interest in the [Westminster] Property arising under or out of, in connection, with, or in any way relating to the Debtors or the transfer of such [Westminster] Property to Buyer are forever barred, estopped, and permanently enjoined from asserting against Buyer or its successor or assigns, its property, or such persons' or entities' liens or interests in the [Westminster] Property.

D.I. 1407 (Sale Order) at ¶ 8.

[66] Fed. R. Bankr. P. 2002(a)(2).

[67] Del. Bankr. L.R. 2002-1(b).

Agreement.  Consequently, the Debtors were not required to provide Lipp notice of the

Westminster Sale Motion and the Sale Order is enforceable against Lipp.

### Conclusion

For the foregoing reasons, the Debtors' Objection is sustained, and the Claim is denied.

An appropriate order follows.


Dated: November 4, 2025

Kate Stickles
United States Bankruptcy Judge