### Exhibit C

**Engagement Letters**



EY
Building a better
working world

# Statement of Work

This Statement of Work, which is effective as of January 01, 2022 (this "SOW"), is made by Ernst & Young LLP ("we" or "EY" (previously "E&Y")) and Alfred T. Giuliano, as chapter 7 trustee "Chapter 7 Trustee" appointed in the pending bankruptcy cases of Former BL Stores, Inc. (f/k/a Big Lots, Inc.), et al., Case No. 24-11967 (JKS)("Debtors" and together with Chapter 7 Trustee, "Client") pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court")., as of February 10, 2026.

Except as otherwise set forth in this SOW, this SOW incorporates by reference, and is deemed to be a part of, the Agreement.  The additional terms and conditions of this SOW shall apply only to the Services covered by this SOW and not to Services covered by any other Statement of Work pursuant to the Agreement.  Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings in the Agreement, and references in the Agreement to "you" or "Client" shall be deemed references to you.

## Scope of Services

We will provide the following tax advisory Services (the "Services") to you:

1.  ***IRC §4980H "full-time" status determinations and analytics Services:*** Assist Client in the determination of "full-time" status of employees, per the data provided to EY from Client and applicable Client third party vendors and according to the regulations set out in IRC §4980H. The determinations of "full-time" status are based on the data as of the defined period and should Client's facts and circumstances change, the determinations could become preliminary, until additional information is received and reviewed by EY.

    Our scope of Services shall include:

    1.1.  EY will define data requirements and receive Client's data to produce "full-time" determinations, using the look-back and/or monthly measurement method(s), as previously elected by Client. The data requirements will include both historical and ongoing data feeds. The specific parameters of how the measurement method(s) will be applied will be documented in the KDD during the implementation phase;

    1.2.  EY will identify employees that may be "full-time", solely for the purposes of the ACA and who have not been offered coverage, as based upon information and data provided by Client;

    1.3.  EY will deliver initial reports for Client review:

        1.3.1.  If the look-back method is elected, an Annual Ongoing Employee Evaluation report will be generated; and

        1.3.2.  If the monthly measurement method is elected, the first Monthly Determination Status report will be generated;

    1.4.  EY will utilize the ACA COMPASS$^{SM}$ system to determine the applicable affordability safe harbor code, to be placed on line 16 of the Form 1095-C for employees determined to be "full-time" for each month; and

    1.5.   EY will provide monthly "full-time" status determination reports to Client (12 report packages per year (e.g., one per month)). These reports are provided to Client solely for the Client's use to estimate

A member firm of Ernst & Young Global Limited



potential liability for excise tax under IRC § 4980H. These reports do not inform Client of which employees are eligible for coverage, as the "full-time" status determinations may not be relevant to the determination of eligibility under the terms of the Client's benefit plan(s).

2. ***IRS reporting Services***: Assist Client in complying with the annual informational tax reporting requirements under IRC §§ 6055 and 6056.

Our scope of Services shall include:

2.1. EY will prepare annually the IRS Forms 1095-C for review and approval, including an electronic file of all form data for the recipient population in either a .csv or .xls format. After Client approval, Client will receive both a pdf file of Forms 1095-C and an electronic all form data file in .xls format;

2.2. As part of the review process, EY will provide Client an interface to view the prepared Forms 1095-C via a web portal. This access enables Client the ability to search for a single employee form utilizing the applicable employee SSN or name. PDF format save and print options are available within the interface;

2.3. EY will prepare the electronic filing of the IRS transmittal for Client's review and approval prior to the statutory filing deadline for each tax year, subject to Client providing all required data by the deadlines mutually agreed upon by EY and Client. The package provided for Client's review will be in an .xls format and will include all Forms 1094-C and 1095-C information for Client's Applicable Large Employer (ALE) member(s) contracted for EY services;

2.4. Upon Client approval, EY will electronically transmit the IRS forms to the IRS, as tax preparer;

2.5. At Client's request and as mutually agreed upon, EY will prepare revised (changes made pre IRS transmittal) and/or corrected (changes made post IRS transmittal) Forms 1095-C/1094-C. EY anticipates Client may have one set of revised files in the normal course of business not exceeding five percent (5%) of the number of approved Forms and will reflect those in the original IRS transmittal to meet the employer reporting requirements to the IRS. Additional revisions and corrections will be subject to additional fees based upon the time incurred, including any additional per form fulfillment charges if revisions and/or corrections are furnished to recipients; and

2.6. Upon client Authorization, EY will transmit, on behalf of Client, the application letter(s) for automatic extension of time to transmit information returns, Forms 1094-C and associated Forms 1095-C, with the IRS. Form(s) 8809 may be electronically submitted through the IRS FIRE system.

3. ***IRS reporting fulfillment Services:*** Assist Client with electronic or hard copy print and distribution of IRS Forms 1095-C.

Our scope of Services shall include:

3.1. Distribute hard copy approved IRS Forms 1095-C via mail directly to intended recipients;

3.2. At Client's direction, distribute electronically certain approved IRS Forms 1095-C (based upon Client individuals' consent to electronic delivery of Form 1095-C);

3.3. EY will include standard language to be printed on the Forms 1095-C that is added at the time of distribution; and

3.4. At the client's direction, EY will distribute revised or corrected Forms 1095-C.

4. ***IRS reporting extension Services:*** Assist Client with preparing extensions for additional time to furnish Forms 1095-C to recipients and/or transmit Forms 1094-C/1095-C to the IRS for all ALE member firms within scope.

Our scope of Services shall include:

A member firm of Ernst & Young Global Limited



4.1. Extension to furnish Forms 1095-C: Upon Client request and approval, prepare application letter(s) to request extension of time to furnish Forms 1095-C to individuals, with sufficient cause explanations documenting the need for additional time to furnish;

4.2. Extension to transmit Forms 1094-C/1095-C to the IRS: Upon Client request and approval, prepare Form(s) 8809 for additional extension of time, beyond the automatic 30-day extension, with sufficient cause explanations documenting the need for additional time to transmit.

5. *IRS controversy/audit support Services:* Upon request, EY will assist Client with the review and analysis of the IRS potential assessments of employer shared responsibility payments (on IRS Letter 226J or otherwise), as they pertain to the reporting years under this SOW. These assessments may be issued on either an employee-by-employee or lump sum basis.

Our scope of Services shall include:

5.1. EY will review and evaluate IRS notices of potential assessments of employer shared responsibility payments, as received from Client, including, but not limited to researching COMPASS$^{SM}$ determinations and records; EY will advise Client of any assessments that EY determines may require an appeal;

5.2. At direction of the Client, EY will assist Client with the administrative appeal of the potential assessment:

5.2.1. Identify and provide supplemental data/documentation to support appeal before the IRS;

5.2.2. Meet with the IRS representative to discuss IRS potential assessment;

5.2.3. Process and transmit corrected forms, resulting from an appeal, if required and as included in IRS reporting Services section of this SOW;

5.3. At the direction of the Client, in the event the Client receives and pays an assessment, assist the Client in filing a claim for a refund and in the event the Client files a suit for refund, provide advice and assistance to Client's counsel in its prosecution of such suit; and

5.4. In the event of an IRS audit and upon Client request, EY will assist Client with matters pertaining to IRS reporting under IRC §§ 6055, 6056 and 4980H.

6. *Marketplace Support Services:* Assist Client with certain tasks associated with notices of potential excise tax liability (e.g., premium tax credit (PTC) notices), issued by either an individual state or federal Marketplace. It should be noted that under existing law, employers will not be required to pay this tax, unless first assessed by the IRS by way of a notice and demand for payment and this service does not include the review and appeal of any such notice to the applicable state or federal Marketplace or demand by the IRS. Client acknowledges and agrees that to in order to allow EY to have the time necessary to assess a notice and prepare the potential appeal, PTC notices must be received, with supporting data received and loaded into COMPASS$^{SM}$, no less than five business days prior to the applicable notice appeal deadline. EY's Services shall not cover any notices that are received by EY (including notices for which data is loaded into COMPASS$^{SM}$) less than five business days prior to the applicable notice appeal deadline(s). Such notices will be Client's responsibility.

Our scope of Services shall include:

6.1. EY will develop  notice communication protocols with Client and Client will identify stakeholders, so Marketplace communications are received by EY as quickly as possible;

6.2. EY will review and evaluate notices for excise tax implications, as received from either the Marketplace or Client, verifying the following:



6.2.1.   The "full-time" or part-time status of the individual for the month(s) of the notice; and

6.2.2.   Whether or not Client has provided sufficient affordability safe harbor data, as it relates to the individual;

6.3.   EY will advise Client of any notices that EY determines may require additional review and/or verification of Client information;

6.4.   EY will assist Client with responding to verification requests/inquiries received from the Marketplaces that include, but are not limited to, verification of individual information on excise tax-related PTC applications;

6.5.   EY will inquire about applicable notices/appeals and respond directly to the Marketplace(s) and/or appeal entity, on behalf of Client once Client has signed a third-party authorization (TPA) allowing EY to inquire; and

6.6.   EY will provide monthly standard Marketplace activity reports to Client.

7.   ***Marketplace notice appeal support Services***: Assist Client in responding to PTC notices from a Marketplace to potentially mitigate § 4980H(a) and/or (b) excise tax. EY is not responsible for any consequences to a Client employee or worker, or for any Marketplace implications, that may result from any determination, including a final determination, by the Appeal Entity (AE), state-based Marketplace and/or federally facilitated Marketplace of an appeal package based on incomplete or inaccurate data provided by the Client. Client agrees to indemnify and hold EY harmless for any losses incurred as a result of any such determinations.  This service does not include the review and appeal of any notice or demand by IRS for employer shared responsibility payments under § 4980H(a) and/or (b).

Our scope of Services shall include:

7.1.   EY will advise Client of any notices that EY determines may require an appeal, as based on a review of Client-provided data;

7.2.   At direction of the Client, EY will initiate the appeals process with respect to such notices. EY will do the following:

7.2.1.   Analyze data as provided by Client and identify information needed for appeal support and documentation;

7.2.2.   Request that Client provide necessary additional documentation needed to defend the appeal, as defined by the AE (e.g., open enrollment materials or documentation plan meets minimum essential value);

7.3.   Prepare appeal package, with supporting documentation and submit to the appropriate AE by the designated appeal deadline(s);

7.4.   In the event an AE requires a hearing EY may represent the client upon request; and

7.5.   EY will provide a Marketplace Notice Appeals report to Client, on a monthly basis.

8.   ***ACA advisory support Services:*** Upon request, EY will assist Client by providing advisory support Services specifically focused in certain areas.

Our scope of Services shall include:

8.1.   Data advisory support: Data analysis and data remediation, when the Client-provided data does not conform to EY data file requirements.

A member firm of Ernst & Young Global Limited



8.2.   Routine advisory support: EY can provide routine tax advice and assistance, relating to supporting the above outlined ACA compliance and reporting Services, when such services are not specifically identified as in-scope or when such services are not covered by a separate SOW and do not involve any significant tax planning or projects. Such services specifically include advising the Client on the reporting and determination requirements arising in the course of any corporate transactions including the acquisition, divestiture or merger of any of the employing entities within the scope of this SOW.

9. ***State reporting filing Services:*** Assist Client in complying with the annual informational tax reporting requirements for all states (collectively, "the States") which have incorporated the reporting requirement under IRC § 6055.

9.1.   EY will utilize the records produced by Client for IRC §§ 6055 and 6056 reporting purposes;

9.2.   As the States' requirement for furnishing forms to responsible individuals is fulfilled by the furnishing of the IRS Forms 1095-B or 1095-C, EY will not separately furnish forms as a part of the State reporting filing services;

9.3.   From the records produced for the filing with IRS and based on Client's identification of the State residents for whom the State reporting will be required, EY will prepare the electronic filing of the State transmittal for Client's review and approval prior to the statutory filing deadline for each tax year, subject to Client providing all required data by the deadlines mutually agreed upon by EY and Client. The package provided for Client's review will include all Forms 1094-C and 1095-C information for Client's Applicable Large Employer (ALE) member(s) contracted for EY services that will be transmitted to State;

9.4.   Upon Client approval, EY will electronically transmit the forms to the States as per the guidance provided by each of the States with respect to the transmission to such State;

9.5.   At Client's request and as mutually agreed upon, EY will prepare corrected (changes made post transmittal) Forms 1095-C/1094-C. Unless directed otherwise, any corrections of a Form 1095-C that was filed with IRS for any of the residents of the States identified as a part of the filing process will also be filed with the applicable State. Corrections will be subject to additional fees based upon the time incurred;

9.6.   Upon Client authorization and where applicable, EY will transmit, on behalf of Client, the application letter(s) for automatic extension of time to transmit information returns.  Client acknowledges that to the extent extensions are requested for filing Forms with IRS, it will be deemed to have consented to extensions for filing with the States, and

9.7.   As of the date of this SOW, the States that have passed an individual mandate incorporating the reporting requirement under IRC § 6055 are the following:

    1.Effective Tax Year 2019
        1.District of Columbia
        2.New Jersey
    2.Effective Tax Year 2020
        1.California
        2.Rhode Island
        3.Vermont (currently no filing requirement disclosed) but your
    obligation is fulfilled by furnishing the information to be on the Form 1095-B
    or 1095-C to Vermont residents (based on the requirements in effect in



December 2017 immediately prior to the enactment of the Tax Cut and Jobs
Act of 2017)

EY reserves the right to adjust the scope and estimated fees upon receipt of additional guidance regarding the process, requirements and forms as issued by the States following the execution of this SOW for those states where a mandate has already been passed and for any states that enacts an individual mandate in the future. Additional fees will apply in the event there is a divergence in the furnishing requirements of the IRS Forms 1095-B or 1095-C and what is required to be furnished by the States.

10. *Out-of-scope Services (OOS):*

10.1. Client agrees that the IRS, the Department of Health and Human Services (HHS), or state and local governments (e.g., State Exchanges) may issue future regulations or procedures that may impact our scope. If, during the term of this SOW, EY determines that additional work is necessary, whether at Client's request or because the complexity of the project increases, EY will promptly contact Client to discuss any adjustments to the scope of work and EY's ability to perform additional related services and EY's fees. Any services not included in the scope of Services described herein are considered out-of-scope ("Out-of-Scope Services"). Out-of-Scope Services will be discussed with you, as circumstances dictate, and we will secure your prior written approval before commencing such out-of-scope work. If out-of-scope Services entail significant work, the scope and fees for such services may be contained in a separate SOW.

10.2. Client's consent to and acceptance of this SOW is considered approval for out-of-scope activity relating to the provision of data to support a number of determinations or the preparation of IRS forms in excess of the estimated number provided herein.

## Terms of the engagement

EY will provide the Services beginning on January 30, 2022 and ending on June 30, 2027. Both EY and Client may terminate this SOW, or any Service within this SOW, upon sixty (60) days prior written notice. In the event of termination, all forms delivered by EY to Client up to the termination date will constitute the full and complete provision of agreed upon services by EY.

Corrections requested post termination or outside of the effective termination date of this SOW will require an amendment to this SOW or a separate Statement of Work to document the additional fees. The cost of the corrections will be borne by the party responsible.

In the event Client terminates this SOW early (prior to the term of the engagement described above), Client shall pay all fees incurred up through the early termination date.

## Your Obligation

11. Client responsibilities as they pertain to the tax advisory Services under this SOW:

11.1. Client will make its own decisions about whether to offer coverage to its employees determined to be "full-time" for purposes of IRC § 4980H;

11.2. Client will review EY's results and make its own independent judgments. The scope of this SOW does not involve EY making policy recommendations;

A member firm of Ernst & Young Global Limited



11.3.  Client will ensure a single point of contact is made available to the engagement/account manager during implementation and for on-going service;

11.4.  Client will make its own evaluation, judgment, and conclusions about EY's analysis of any tax risk identified under IRC § 4980H. Furthermore, Client will conduct its own internal control and process analysis to determine its excise tax risk. Such controls and analysis may include:

11.4.1.  Working with its actuary or health coverage advisor/broker to ensure its offer of coverage meets the "minimum essential coverage" requirements in the ACA law;

11.4.2.  Doing its own "minimum value" coverage calculations;

11.4.3.  Ensuring its timekeeping systems are tracking actual hours of service properly;

11.4.4.  Ensuring its policies around contingent worker versus employees are properly being executed by operations;

11.4.5.  Ensuring that hiring and location managers are correctly classifying workers as part-time, variable or "full-time";

11.5.  Client agrees that EY will be relying on the data provided by the Client to provide these Services and EY is not responsible for faulty or inaccurate data, including accurate data provided in a faulty format. Furthermore, should EY determine and demonstrate the data quality has significant errors, Client agrees to review EY's determination and remedy any recurring data quality within a reasonable amount of time, as mutually agreed between Client and EY;

With respect to factual representations such as Client's coverage meeting "minimum value" standards under the ACA, Client agrees to provide EY with confirmation that confirms that the Client meets this standard;

Client acknowledges that EY has no control over whether the "full-time" status determinations submitted to Client result in actual timely offers of coverage to the employees. Consequently, Client acknowledges that EY will utilize the offer of coverage reported by Client to EY on the applicable data file for IRC 6055 and IRC 6056 purposes. Client is responsible for the ultimate execution of timely offer of coverage to its "full-time" employees;

11.6.  Client acknowledges that it is not EY's responsibility in this engagement to advise any employee on taking a particular course of action or to provide any tax, accounting, legal, or professional advice. Rather, EY is being engaged only to convey predetermined Client provided factual information to an employee and/or the Exchange. Additionally, Client acknowledges that EY will not provide assurances with respect to the outcome of any actual employee benefit eligibility determination. Only the relevant governmental agency has the authority to confirm eligibility; and

11.7.  We draw your attention to the "Your responsibilities" clause set out in paragraphs 6 through 10 of the General Terms and Conditions of the Agreement. Client acknowledges that a failure to comply with any such obligations may result in the imposition of penalties for failure to timely and accurately submit IRS Forms 1095-C and 1094-C, and that such penalties will be the responsibility of Client. Client also understands that third party vendors may be requested to supply data and any related delays will be the Client's responsibility under the aforementioned referenced clause and paragraphs.

11.8.  We draw your attention to paragraph 15 of our General Terms and Conditions which provides, in pertinent part, that you may not rely on any draft Report. Accordingly, any draft Reports provided during the provision of the Services, should not be relied upon for any purpose, including, but not limited to, complying with the provisions of applicable tax laws or for purposes of avoiding penalties



imposed thereunder. In that regard, any results or Reports that Client may access through a web browser or web portal should be considered draft. This includes representations of Forms 1095-C and 1094-C unless such form is specifically indicated as furnished or filed or the like. EY assumes no responsibility for any decision (or lack of action or omission) by Client made based on draft Reports. Such decisions are appropriately the judgment of Client in consultation with its management.

11.9.   You will not, and you will not permit others to, quote or refer to any Reports, any portion, summary or abstract thereof, or to EY or any other EY Firm, in any document filed or distributed in connection with (i) a purchase or sale of securities to which the United States or state securities laws ("Securities Laws") are applicable, or (ii) periodic reporting obligations under Securities Laws. You will not contend that any provisions of Securities Laws could invalidate any provision of this SOW.

## Scope Specific Provisions

The Services are advisory in nature. EY will not render an assurance report or assurance opinion under the Agreement, nor will the Services constitute an audit, review, examination, or other form of attestation as those terms are defined by the American Institute of Certified Public Accountants. We will not conduct a review to detect fraud or illegal acts.

If any Client information is protected health information under the Health Insurance Portability and Accountability Act, as amended, this Statement of Work is deemed to incorporate all of the terms otherwise required to be included in a business associate agreement relating to such information.

We may subcontract a portion of the Services to one or more EY Firms and to subcontractors, including retired EY tax partners, working under our direction who may communicate directly with you. EY, however, will remain solely responsible to Client for the performance of the Services. If EY has prepared or reviewed (or will prepare or review) Client's U.S. income tax returns, Client authorizes the EY Firms, including those located outside the United States, and our subcontractors to disclose information received or generated in connection with the preparation of any such U.S. income tax returns of the Client to and among each other for the purpose of rendering the Services and discussing and providing other services to you. You have the ability to request a more limited disclosure of tax return information than that described above. If, at any time, you would like us to narrow the scope of the information to be disclosed, please contact us in writing and we will limit any disclosures that have not yet occurred. You acknowledge that this consent will be valid for three years from the date this SOW is signed by you below.

EY, the other EY Firms and our respective service providers may Process Client Information obtained in connection with Services performed for you, for benchmarking, research, thought leadership and related purposes, and to enhance the services we provide to you and other clients, provided that we do not identify you or any individuals related to you, or otherwise make reference to you, in connection with these matters. In all such matters, we will comply with applicable law and professional obligations.

## Fees

The Chapter 7 Trustee understands, acknowledges, and agrees that the fees for the services described in this Statement of Work have been paid in full during the Chapter 11 cases and that EY is entitled to keep those fees in satisfaction of the services being provided hereunder.

The General Terms and Conditions of the Agreement address our fees and expenses generally.



You shall pay fees for the Services based upon the pricing outlined below. If the Services to be provided in the SOW appear to be surpassing these fees, we will promptly notify you and address any changes in our scope or fees accordingly. Any fees for the Services under this SOW assume that Client will provide timely, or cause to be provided timely to EY, all appropriate information and assistance, and that the scope and complexity of such Services are consistent with our prior discussions, as well as the description thereof.

In addition, a charge will be added to our fees reflecting an estimated technology cost incurred equal to 3% of the professional fees for this engagement.

You shall also pay any potential value-added taxes (VAT), sales taxes, and other indirect taxes incurred in connection with the delivery of the Services, including any such taxes and related administrative costs that result from billing arrangements specifically requested by you.

**Fee Table**

| ACA COMPASS[SM] Services | Tax Years 2022 – 2026 Annual Fee |
|---|---|
| IRC § 4980H "full-time" determinations and analytics | $10,237 per month ($122,850 annualized) |
| IRS reporting (based on the estimate of 13,000 total Forms 1095-C and 10 Forms 1094-C to be prepared for the reporting year) | $6,002 per month ($72,030 annualized) |
| Forms 1095-C fulfillment (includes per form fees for originals/reprints/corrected forms) | $1.50 per original hard copy print and mail |
| IRS reporting extension services (additional fees apply if over 50 FEINs) | $0 – EY to waive this fee for Big Lots |
| Marketplace support | $12.75 per notice |
| Marketplace notice appeal support, IRS reporting extensions, IRS controversy/audit support, and ACA advisory support | Time incurred at $300 per hour |
| State reporting filling services | Time incurred at $300 per hour |

We will bill you for our ACA COMPASS[SM] fees, expenses and applicable taxes or other charges, if any, on the following basis and payment is due upon receipt of our invoice:

- Full-time determination and IRS reporting services will be billed on a monthly basis throughout the duration of the engagement beginning in the month implementation completes based on the original



implementation schedule. The initial invoice will include the fee for the current month, as well as any prior months' fees related to the first reporting year of service.

- Form 1095-C fulfillment Services will be billed following delivery to recipients each reporting year, with any additional fulfillment Services for furnishing revisions/corrections and/or requested reprints billed monthly, as incurred.

- Professional fees for any Marketplace notice appeal support and appeal hearing support, IRS reporting extensions, IRS audit/controversy support and ACA advisory support services will be billed monthly based upon the time that our professionals spend performing them.

- We will bill you for all other fees, expenses, and applicable taxes or other charges, if any, as the work is performed (or as the time is incurred). Payment is due upon receipt of our invoice.

- You shall pay fees for the State reporting Services outlined in this SOW based on the time that our professionals spend performing them at a blended rate of $300 per hour based on the estimated number of State residents, shown below. Fees will be invoiced upon the transmission of the records to each of the States. Your obligation to pay our fees and expenses is not contingent upon the results of the Services or the consummation of any transaction.

Estimated annual form counts:
- California
  - Up to 3,000 forms
- Washington DC
  - Up to 100 forms
- New Jersey
  - Up to 300 forms
- Rhode Island
  - Up to 100 forms
- Vermont
  - Up to 100 forms

A member firm of Ernst & Young Global Limited



**Building a better working world**

**IN WITNESS WHEREOF,** EY and Client have each caused this Agreement to be signed and delivered by its duly authorized representative/s.

**ERNST & YOUNG LLP**

ALFRED T. GIULIANO, SOLELY IN HIS CAPACITY AS CHAPTER 7 TRUSTEE OF THE ESTATES OF FORMER BL STORES, INC. (F/K/A BIG LOTS, INC.), ET AL.

Signed:

*Ernst & Young LLP*

Signed:

Name: _Alfred T. Giuliano_

Title: _Bankruptcy Trustee_



# MASTER SERVICES AGREEMENT

This Master Services Agreement (this "Agreement") is entered into between Ernst & Young LLP, a Delaware limited liability partnership ("EY") and Alfred T. Giuliano, as chapter 7 trustee "Chapter 7 Trustee") appointed in the pending bankruptcy cases of Former BL Stores, Inc. (f/k/a Big Lots, Inc.), et al., Case No. 24-11967 (JKS) ("Debtors" and together with Chapter 7 Trustee, "Client"), as of February 10, 2026.

## **Structure**

1.  This Agreement sets out the contractual structure for the provision of services ("Services") by EY to Client following the commencement of the above referenced bankruptcy proceeding under Chapter 11, which bankruptcy proceeding was converted to chapter 7 ("Chapter 7") of the United States Bankruptcy Code ("Bankruptcy Code") on November 10, 2025 with the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court").  EY's performance of Services is contingent upon the Bankruptcy Court's approval of EY's retention in accordance with the terms and conditions that are set forth in this Agreement. This Agreement shall be effective as of February 10, 2026 (the "Effective Date"). EY will perform the Services described in separate Statements of Work entered into between the parties that incorporate the terms of this Agreement as well as the terms of any applicable Module(s) to form a separate and independent contract ("Contract"), which shall be subject to approval of the Bankruptcy Court. The Chapter 7 Trustee and Debtors' obligations under this Agreement will be joint and several.

2.  For the purposes of any Contract, (a) "Client" in such Contract (including in this Agreement and the applicable Module(s) as incorporated into such Contract) means the Client Entity that executes the applicable Statement of Work, and (b) "party" means either EY or such Client Entity.

3.  If there is any inconsistency between provisions in different parts of a Contract, those parts shall have precedence as follows (unless expressly agreed otherwise): (a) the applicable Statement of Work and any annexes thereto, (b) any applicable Module, (c) this Agreement, and (d) other annexes to a Contract.

## **Definitions**

4.  The following terms are defined as specified below:

    (a) "AICPA" means the American Institute of Certified Public Accountants.

    (b) "Client Affiliate" means an entity that controls, is controlled by, or is under common control with, Client.

    (c) "Client Entity" means Client or a Client Affiliate.

    (d) "Client Information" means information obtained by EY from Client or from a third party on Client's behalf.

    (e) "Deliverables" means any advice, communications, information, technology or other content that EY provides under this Agreement.



(f) "EY Firm" means a member of the EY network and any entity operating under a common branding arrangement with a member of the EY network.

(g) "EY Persons" means EY's or any other EY Firm's subcontractors, members, shareholders, directors, officers, partners, principals or employees.

(h) "Internal Support Services" means internal support services utilized by EY, including but not limited to: (a) administrative support, (b) accounting and finance support, (c) network coordination, (d) IT functions including business applications, system management, and data security, storage and recovery, and (e) conflict checking, risk management and quality reviews.

(i) "Module" means a module, supplemental to this Agreement, entered into by the parties and containing further terms applicable to a particular type of Services.

(j) "Personal Data" means Client Information relating to identified or identifiable natural persons or that is otherwise considered to be "personal data," "personal information" or similar term under applicable data protection laws.

(k) "Report" means a Deliverable (or any portion of a Deliverable) issued on EY letterhead or under the EY brand or otherwise identifiable as being prepared by or in association with EY, any other EY Firm or EY Person.

(l) "Statement of Work" means a document, incorporating this Agreement and any applicable Module, entered into by the parties describing particular Services that EY will perform.

(m) "Support Providers" means external service providers of EY and other EY Firms and their respective subcontractors.

(n) "Tax Advice" means tax matters, including tax advice, tax opinions, tax returns or the tax treatment or tax structure of any transaction to which the Services relate.

## Provision of the Services

5. EY will provide the Services using reasonable skill and care in accordance with applicable professional standards, including those established by the AICPA.

6. Subject to Bankruptcy Court approval, EY may subcontract a portion of the Services to one or more EY Firms, as well as to other third parties, who may deal with Client directly. EY will remain solely responsible to Client for the performance of the Services. From time to time, non-CPA personnel may perform the Services.

7. EY will act as an independent contractor and not as Client's employee, agent or partner. Client will remain solely responsible for management decisions relating to the Services and for determining whether the Services are appropriate for its purposes. Client shall assign qualified personnel to oversee the Services, as well as the use and implementation of the Services and Deliverables.

8. Client agrees to promptly provide to EY (or cause others to so provide) Client Information, resources and assistance (including access to records, systems, premises and people) that EY reasonably requires to perform the Services.



9. Client Information will be accurate and complete in all material respects. EY will rely on Client Information and, unless EY expressly agrees otherwise in writing, EY will have no responsibility to verify it. The provision of Client Information (including Personal Data), resources and assistance to EY will be in accordance with applicable law and will not infringe any copyright or other third-party rights.

## **Deliverables**

10. All Deliverables are intended for Client's use in accordance with the Contract under which they are provided.

11. Client may not rely on any draft Deliverable. EY shall not be required to update any final Deliverable as a result of circumstances of which EY becomes aware, or events occurring, after its delivery.

12. Unless otherwise provided for in a Contract, Client may not disclose a Report (or any portion or summary of a Report), or refer to EY or to any other EY Firm or EY Person in connection with the Services, except:

    (a) to a Client Affiliate (subject to these disclosure restrictions);

    (b) to Client's lawyers (subject to these disclosure restrictions), who may review it only in connection with advice relating to the Services;

    (c) to Client's independent auditors (subject to these disclosure restrictions) who may review it only in connection with their audit;

    (d) to the extent, and for the purposes, required by applicable law (and Client will promptly notify EY of such legal requirement to the extent Client is permitted to do so);

    (e) to other persons (with EY's prior written consent), who may use it only as specified in such consent; or

    (f) to the extent it contains Tax Advice.

    If Client discloses a Report (or a portion thereof), Client shall not alter, edit or modify it from the form provided by EY. Client shall inform those to whom it discloses a Report (other than disclosure of Tax Advice to tax authorities) that they may not rely on it for any purpose without EY's prior written consent. Subject to the foregoing, Client is not prohibited by this Section 12 from using Deliverables that do not qualify as Reports in communication with third parties provided that: (i) there is no reference to, or communication of, EY's or any other EY Firm's involvement in the development of such Deliverables, and (ii) Client assumes sole responsibility for such use and communication.

## **Limitations**

13. As part of the parties' arrangements, the parties have mutually agreed the following limitations of liability (which also apply to others for whom Services are provided under any Contract):

    (a) No party will be responsible, in contract or tort, under statute or otherwise, for any amount with respect to loss of profit, data or goodwill, or any other consequential, incidental, indirect, punitive



or special damages in connection with claims arising out of a Contract or otherwise relating to the Services, whether or not the likelihood of such loss or damage was contemplated.

(b) Client (and any others for whom Services are provided) may not recover from EY, in contract or tort, under statute or otherwise, aggregate damages in excess of the fees actually paid for the Services that directly caused the loss under the respective Contract during the twelve (12) months preceding the date of the event giving rise to the loss. This cap is an aggregate cap across all claims under such Contract prior to such date. This cap applies to the Client collectively, whether or not claims are brought by the Chapter 7 Trustee or Debtors.

(c) Client shall make any claim relating to the Services or otherwise under a Contract no later than one (1) year after either the Chapter 7 Trustee or Debtors became aware (or ought reasonably to have become aware) of the facts giving rise to any alleged such claim and in any event, no later than two (2) years after the completion of the particular Services.

14. The limitations set out in Sections 13(b) and (c) above will not apply to losses or damages caused by EY's fraud or willful misconduct or to the extent prohibited by applicable law or professional regulations.

15. Client (and any others for whom Services are provided under a Contract) may not make a claim or bring proceedings relating to the Services or otherwise under a Contract against any other EY Firm or EY Person. Client shall make any claim or bring proceedings only against EY.

## No Responsibility to Third Parties

16. Unless specifically otherwise agreed with Client in writing, EY's responsibility for performance of the Services is to Client and Client alone. Should any Deliverable be disclosed, or otherwise made available, by or through Client (or at Client's request) to a third party (including but not limited to permitted disclosures to third parties under Section 12), Client agrees to indemnify EY, as well as the other EY Firms and the EY Persons, against all claims by third parties, and resulting liabilities, losses, damages, costs and expenses (including reasonable external and internal legal costs) arising out of such disclosure.

## Intellectual Property Rights

17. Each party retains its rights in its pre-existing intellectual property. Except as set out in the applicable Contract, any intellectual property developed by EY, and any working papers compiled in connection with the Services (but not Client Information contained in them), shall be the property of EY.

18. Client's right to use Deliverables under a Contract arises following payment for the Services.

## Confidentiality, Data Protection & Security

19. Except as otherwise permitted by a Contract, no party may disclose to third parties any information (other than Tax Advice) provided by or on behalf of the other that ought reasonably to be treated as confidential (including, in the case of EY, Client Information). Any party may, however, disclose such information to the extent that it:

(a) is or becomes public other than through a breach of a Contract;

(b) is subsequently received by the recipient from a third party who, to the recipient's knowledge, owes no obligation of confidentiality to the disclosing party with respect to that information;

(c) was known to the recipient at the time of disclosure or is thereafter created independently;



(d) is disclosed as necessary to enforce the recipient's rights under this Agreement; or

(e) must be disclosed under applicable law, legal process or professional regulations.

20. EY uses other EY Firms, EY Persons and Support Providers who may have access to Client Information in connection with delivery of Services as well as to provide Internal Support Services. EY shall be responsible for any use or disclosure of Client Information by other EY Firms, EY Persons or Support Providers to the same extent as if EY had engaged in the conduct itself.

21. Client agrees that Client Information, including Personal Data, may be processed by EY, other EY Firms, EY Persons and their Support Providers in various jurisdictions in which they operate (EY office locations are listed at www.ey.com). Client Information, including any Personal Data, will be processed in accordance with laws and professional regulations applicable to EY, and appropriate technical and organizational security measures designed to protect such information will be implemented. EY will also require any Support Provider that processes Personal Data on its behalf to provide at least the same level of protection for such Personal Data as is required by such legal and regulatory requirements. If Personal Data relating to a data subject in the UK, European Union or Switzerland (collectively, "European Personal Data") is required for EY to perform the Services, the parties agree to negotiate in good faith a data transfer addendum intended to validate the transfer of such European Personal Data by Client to EY prior to such transfer. Transfer of Personal Data among members of the EY network is subject to the EY Binding Corporate Rules Program available at www.ey.com/bcr. Further information about EY's processing of Personal Data is available at www.ey.com/privacy.

22. To the extent permitted by applicable law, regulation or governmental directive, EY will notify Client without undue delay in the event of loss, unauthorized disclosure or unauthorized or unlawful processing of Personal Data and provide Client with relevant information about the nature and extent of the event.

23. In certain circumstances, individuals may have the right under applicable data protection law to access, correct, erase, port, restrict or object to the processing of their personal data. Such requests may be sent to privacy.office@ey.com. To the extent permitted by law, regulation or governmental directive, EY will notify Client without undue delay upon receipt of any verifiable request from a data subject or supervisory authority relating to a Personal Data right. If EY is required to provide Personal Data in response to such verifiable request, or to a request from Client, providing that data will be part of the Services and, to the extent permitted by applicable law, Client will be responsible for EY's reasonable charges incurred in doing so.

24. As a professional services firm, EY is required to exercise its own judgment in determining the purposes and means of processing any Personal Data when providing the Services. Accordingly, unless otherwise specified in a Contract, when processing Personal Data subject to the General Data Protection Regulation or other applicable data protection law (including, without limitation, state data protection (e.g., the California Consumer Privacy Act)), EY acts as an independent controller (or similar status that determines the purposes and means of processing), and not as a processor under Client's control (or similar status acting on behalf of Client) or as a joint controller with Client. For Services where EY acts as a processor processing Personal Data on Client's behalf, the parties will agree appropriate data processing terms in the applicable Statement of Work.

25. EY and other EY Firms may retain and use Client Information for benchmarking, analytics, research and development, thought leadership and related purposes, and to enhance their services, provided



that any use does not externally identify, or make reference to, Client. In all such matters, EY and other EY Firms will comply with applicable law and professional obligations.

26. If Client requires EY to access or use Client or third-party systems or devices, EY shall have no responsibility for the confidentiality, security or data protection controls of such systems or devices, or for their performance or compliance with Client requirements or applicable law.

27. EY may provide Client access to use certain data, software, designs, utilities, tools, models, systems and other methodologies and know-how that EY owns or licenses for the purpose of Client's receipt of the Services or as otherwise expressly agreed in writing by EY ("EY Tools"). Client shall be responsible for compliance by all Client personnel and third parties acting on Client's behalf with the terms applicable to the use of such EY Tools. As between EY and Client, EY (or another EY Firm) owns all right, title, interest, and all intellectual property rights in and to the EY Tools, including any enhancements, modifications, and derivative work thereof.

*License to EY Tools During the Statement of Work Term:* To the extent that EY provides Client access to any EY Tools during the term of an applicable Statement of Work, EY hereby grants to Client a nonexclusive, paid-up, internal license, during the term of the applicable Statement of Work, to use, execute, and display the EY Tools, for the sole purpose of Client's receipt of the Services from EY under the applicable Statement of Work.

*License to EY Tools After the Statement of Work Term:* EY may allow Client to use certain EY Tools, after the term of an applicable Statement of Work, for the sole purpose of Client's use and receipt of the benefit of the Services provided by EY under such Statement of Work. Any EY Tools that EY allows Client to use after the term of such Statement of Work will be identified in the Statement of Work as a "Leave Behind EY Tool." With respect to such an identified Leave Behind EY Tool, to the extent permitted by applicable law and professional regulations, EY hereby grants to Client a nonexclusive, paid-up, internal license,  to use, execute, and display the Leave Behind EY Tool, after the term of the Statement of Work,  for the sole purpose of Client's use and receipt of the benefit of the Services provided by EY under the Statement of Work.

*EY Tools Disclaimers and Acknowledgments:* Client's use of any EY Tools may be subject to additional terms, which EY will provide to Client in writing. Client acknowledges that EY may at any time, modify, replace, or direct Client to discontinue use of any EY Tools, or otherwise revoke, limit or condition Client's access and right to use any EY Tools. ALL EY TOOLS ARE PROVIDED "AS IS" AND WITHOUT ANY WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF TITLE, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE, OR ANY WARRANTY THAT THE OPERATION OF EY TOOLS WILL BE  UNINTERRUPTED, ERROR FREE OR THAT EY TOOLS WILL BE OR REMAIN COMPATIBLE WITH ANY OF CLIENT'S HARDWARE OR SOFTWARE. IN NO EVENT SHALL EY BE LIABLE FOR LOSS OF OR DAMAGE TO CLIENT'S DATA RESULTING FROM THE CLIENT'S USE OF THE EY TOOLS. Client shall not decompile, dissemble or otherwise reverse engineer the EY Tools, unless authorized by law or the relevant regulatory agency. Client shall not sell, lease, assign or otherwise transfer any portion of the EY Tools.

## Compliance

28. In connection with their respective rights and obligations under a Contract, EY and Client each will comply with all laws, rules, and regulations of any jurisdiction applicable to it from time to time



concerning or relating to: (i) bribery or corruption, including, without limitation, the U.S. Foreign Corrupt Practices Act ("FCPA"); (ii) anti-money laundering, including, without limitation the Bank Secrecy Act of 1970 and the USA PATRIOT Act of 2001, and (iii) economic or financial sanctions, export controls, trade embargoes or other similar prohibitions or restrictions on activity imposed by a government authority having jurisdiction over such party, including without limitation the U.S. Office of Foreign Assets Control ("OFAC") sanctions and the U.S. Export Administration Regulations ("EAR") (collectively, "Sanctions Laws"). Client represents that it is not, nor is it 50% or more owned or otherwise controlled by a person or persons, subject to Trade Restrictions. The term "subject to Trade Restrictions," as applied to a person, means that such person falls into one or more of the following categories: (i) an individual located or ordinarily resident in, or an entity legally organized in a country listed on, any embargoed country list maintained by an applicable jurisdiction; (ii) an individual or entity listed on or covered by, or an entity 50% or more owned or otherwise controlled by a person or persons listed on or covered by, any sanctions asset blocking list, export denial list or other prohibited transactions list, directive, rule or regulation maintained or issued by an applicable jurisdiction; or (iii) an individual or entity engaged in activities prohibited by the export controls or sanctions laws and regulations of an applicable jurisdiction. If Client, or any agent, owner, investor, manager, partner, director, or other officer of Client or any beneficiary of the Services (including, without limitation, any affiliate of Client), is or becomes subject to Trade Restrictions or if any of Client's representations in this Section otherwise cease to be true at any time, then Client shall notify EY immediately in writing. If Client is an investment fund or fund manager, Client represents that no limited partner or other partner, manager or investor within the fund is subject to Trade Restrictions (unless disclosed to EY in writing) and that the Services are not being used for the specific benefit of any party subject to Trade Restrictions. Client further represents that Client is not aware of any facts or circumstances that would cause EY, which is a U.S. person, to be in violation of any Sanctions Laws (including, without limitation, OFAC sanctions) in its performance of the Services. Client shall not use the Services to circumvent, or facilitate any violation of, export controls or Sanctions Laws, or to facilitate any transaction with any person subject to Trade Restrictions. Notwithstanding anything to the contrary in a Contract, in the event that (1) any of Client's representations in this Section cease to be true at any time for any reason (including, without limitation, any change in applicable law), (2) Client otherwise breaches any of the provisions of this Section, or (3) EY determines any Services can no longer be performed as contemplated by a Contract due to the effects of Sanctions Laws or other applicable legal or regulatory restrictions on trade, then in each such case EY may immediately terminate a Contract, or any particular Services, in whole or in part.  EY shall use commercially reasonable efforts to notify Client of any Services that will no longer be provided as a result of any termination pursuant to this Section; provided that any failure to give any such notice shall not limit or otherwise affect the effectiveness of any such termination.

## Fees and Expenses Generally

29.  Client shall pay EY's professional fees and specific expenses in connection with the Services as detailed in the applicable Contract. Client shall also reimburse EY for other reasonable expenses incurred in performing the Services.  EY's fees are exclusive of taxes or similar charges, as well as customs, duties or tariffs imposed in respect of the Services, all of which Client shall pay (other than taxes imposed on EY's income generally).



EY
Building a better
working world

30. Subject to Bankruptcy Court approval, if necessary, EY may charge additional professional fees if events beyond its control (including Client's acts or omissions) affect EY's ability to perform the Services as agreed in the applicable Contract, or if Client asks EY to perform additional tasks.

31. If EY is required by applicable law, legal process or government action to produce information or personnel as witnesses with respect to the Services or a Contract, Client shall reimburse EY for any professional time and expenses (including reasonable external and internal legal costs) incurred to respond to the request, unless EY is a party to the proceeding or the subject of the investigation.

## Force Majeure

32. No party shall be liable for breach of a Contract (other than payment obligations) caused by circumstances beyond such party's reasonable control.

## Term and Termination

33. A Contract applies to all Services associated with such Contract whenever performed after the date of Client's filling of a Chapter 11 petition (including before the date of the applicable Contract).

34. A Contract shall terminate on the completion of the Services associated with such Contract. This Agreement and/or any or all Contracts may be terminated at any time by Client or EY, but in any event this Agreement including all Statements of Work will expire upon the liquidation of Debtors' assets under Chapter 7 of the Bankruptcy Code, termination or completion of Debtors' chapter 7 bankruptcy proceeding, or otherwise.

35. Client shall pay EY for all work-in-progress, Services already performed, and expenses incurred by EY up to and including the effective date of the termination or expiration of a Contract, as well as any applicable termination fees set forth in the applicable Contract. Payment is due within thirty (30) days following the date of the invoice for these amounts or as quickly as the Bankruptcy Code, Bankruptcy Rules, Local Rules and any relevant orders of the Bankruptcy Court allow.

36. The term of this Agreement will expire five (5) years following the Effective Date (the "Term"), unless the parties mutually agree to renew or extend it, provided Client continues to operate under Chapter 7 bankruptcy protection. For clarity, this Agreement shall survive with respect to any Contract entered into during the Term, even if such Contract remains in effect beyond the Term.

37. The provisions of this Agreement, including Section 12 and Section 38 otherwise with respect to Deliverables and Reports, that give any party rights or obligations beyond its termination shall continue indefinitely following the termination of this Agreement or applicable Contract and shall survive completion of the Debtors'  Chapter 7 bankruptcy proceeding, liquidation of the Debtors' assets under Chapter 7 of the Bankruptcy Code, or otherwise.

## Governing Law and Dispute Resolution

38. This Agreement, any Contract under this Agreement, and any non-contractual matters or obligations arising out of a Contract or the Services, shall be governed by, and construed in accordance with, the laws of the state of New York applicable to agreements made, and fully to be performed, therein by residents thereof. Any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Agreement or the services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of Client or its subsidiaries or of EY) shall be brought in the Bankruptcy Court or the applicable district court (if such district



court withdraws the reference) and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, causes of action or lawsuits. The parties to this Agreement, and any and all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made.  If the Bankruptcy Court, or the district court upon withdrawal of the reference, does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to nonbinding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures as set forth in Appendix 1 to these Terms and Conditions.  Judgment on any arbitration award may be entered in any court having proper jurisdiction.  The foregoing is binding upon Client, EY and any all successors and assigns thereof.

## United States Specific Terms

39.  The U.S. Department of Labor (DOL) regulations, at 20 CFR § 655.734(a)(1)(ii)(A), require the posting of notice of a Labor Condition Application (LCA) in instances where individuals holding certain visas (e.g., H-1B) will be working onsite. Where applicable, EY and the Client will work together to develop an appropriate notice to enable compliance with this requirement.

## Miscellaneous

40.  A Contract constitutes the entire agreement between the parties as to the Services and the other matters it covers, and supersedes all prior agreements, understandings and representations with respect thereto, including any previously agreed confidentiality agreements. Except as expressly provided otherwise herein, this Agreement does not modify the terms or provisions for other professional services executed prior to Client's filing of a Chapter 11 petition in the Bankruptcy Court.

41.  Each of the parties may execute this Agreement or a Contract, as well as any modifications to them, by electronic means, and each party may sign a different copy of the same document. All parties must agree in writing to modify this Agreement or a Contract, subject to Bankruptcy approval, if necessary.

42.  Client agrees that EY and the other EY Firms may, subject to professional obligations, act for other clients, including Client's competitors.

43.  No party shall assign any of its rights or obligations under this Agreement or a Contract in whole or in part without the prior written consent of the other parties; provided, however, that EY may assign or novate any of its rights and obligations under this Agreement or a Contract in whole or in part to (i) any other EY Firm and/or (ii) any entity resulting from, or established as part of, a restructuring, sale or transfer of an EY Firm, in whole or in part, provided further that any such assignment or novation does not materially affect continuity of the Services.  EY shall provide Client with notice of any such assignment or novation.

44.  If any provision of this Agreement or a Contract (in whole or part) is held to be illegal, invalid or otherwise unenforceable, the other provisions shall remain in full force and effect.

45.  Client acknowledges that the U.S. Securities and Exchange Commission regulations indicate that, where auditor independence is required, certain confidentiality restrictions related to tax structure



may render the auditor to be deemed to be non-independent or may require specific tax disclosures. Accordingly, if and only to the extent that U.S. Securities and Exchange Commission auditor independence regulations apply to the relationship between Client or any of Client's associated entities and any EY Firm, with respect to the tax treatment or tax structure of any transaction to which the Services relate, Client represents, to the best of its knowledge, as of the date of a Contract, that neither Client nor any Client Affiliate has agreed, either orally or in writing, with any other advisor to restrict Client's ability to disclose to anyone such tax treatment or tax structure. Client agrees that the impact of any such agreement is its responsibility.

46. EY and Client acknowledge that Client or a Client Affiliate (the "Local Client") may seek to enter into an agreement with another EY Firm (the "Local EY Firm") for the provision of services in another country (the "Local Services").  The parties agree that the Local Client and the Local EY Firm may enter into a local country agreement (the "Local Agreement") for Local Services that incorporates the terms and conditions of this Agreement, subject to any modifications they deem appropriate under local law, regulation, professional standard, or local custom and practice.  For clarity, in such event, (i) the Local Agreement shall govern all Local Services; and (ii) neither the Local Client nor the Local EY Firm will be deemed to be parties to this Agreement in connection with the Local Services.

47. Client represents that Client Affiliates for whom Services are performed by EY in connection with a Contract shall be bound by the terms of such Contract.

48. No party may use or reference any other's name, logos or trademarks without its prior written consent, provided that EY may use Client's name publicly to identify Client as a client in connection with specific Services or otherwise.

49. The limitations in Sections 13 and 15 and the provisions of Sections 16, 21, 25 and 42 are intended to benefit the other EY Firms and all EY Persons, who shall be entitled to enforce them.

50. By agreement to the provision of the Services, EY is not providing a guarantee to Client that EY's performance of those services pursuant to the terms and conditions set forth in this Agreement will guarantee Debtors' successful Chapter 7 bankruptcy or any related transaction(s).


**Additional Provisions**

51. EY will provide the Services as described in the applicable Statement of Work to Client, contingent upon the Bankruptcy Court's approval of EY's retention in accordance with the terms of this Agreement.

52. The Services may be modified from time to time by the parties mutual written agreement and approval of the Bankruptcy Court, if required.

53. Client acknowledges and agrees that, whether or not the Statement of Work has been approved by the Bankruptcy Court at the time any Deliverable is rendered, any such Deliverable rendered by EY prior to the delivery of its final Deliverable is preliminary in nature and cannot be relied upon for any purpose, including penalty protection.

54. Any activities not described in the applicable Statement of Work are not covered by the fees stated therein.  These services will be considered outside the scope of such Statement of Work and are the responsibility of Client to perform on a timely basis unless otherwise agreed by the parties in writing (in an amendment or a separate Statement of Work) and approved by the Bankruptcy Court.



55. Each Statement of Work will identify the individuals who will lead the EY engagement team in providing the Services.  If any of these individuals ceases to provide the Services to the Client pursuant to such Statement of Work, EY will so advise the Client and, if that person is replaced, provide the Client with the name of the professional's replacement.  Other staff, not identified therein, may be utilized as required to conduct EY's work in an efficient manner.

56. EY will submit an itemized and detailed billing statement for each applicable Statement of Work, and EY will request payment of EY's fees and expenses, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules for the Bankruptcy Court and any relevant administrative orders.  EY will submit EY's invoices as the work progresses and payment of them will be made upon receipt, or as quickly as the Bankruptcy Code, the Bankruptcy Rules, Local Rules and any relevant administrative orders allow.

57. EY acknowledges that payment of EY's fees and expenses is subject to (i) the jurisdiction and approval of the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code, any order of the Bankruptcy Court approving the retention of EY and the U.S. Trustee Guidelines, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications.



**EY**

**Building a better
working world**

**IN WITNESS WHEREOF,** EY and Client have each caused this Agreement to be signed and delivered by its duly authorized representative/s.

**ERNST & YOUNG LLP**

ALFRED T. GIULIANO, [SOLELY IN HIS CAPACITY AS CHAPTER 7 TRUSTEE OF THE ESTATES OF FORMER BL STORES, INC. (F/K/A BIG LOTS, INC.), ET AL.

Signed:

*Ernst & Young LLP*

Signed:

Name: *Alfred T. Giuliano*

Title: *Bankruptcy Trustee*



# APPENDIX 1

# Dispute Resolution Procedures

**Mediation**

A party shall submit a dispute to mediation by written notice to the other party or parties. The mediator shall be selected by the parties. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR") shall designate a mediator at the request of a party. Any mediator must be acceptable to all parties and must confirm in writing that the mediator is not, and will not become during the term of the mediation, an employee, partner, executive officer, director, of or beneficial owner with significant influence over any EY Firm audit client.

The mediator shall conduct the mediation as the mediator determines, with the agreement of the parties. The parties shall discuss their differences in good faith and attempt, with the mediator's assistance, to reach an amicable resolution of the dispute. The mediation shall be treated as a settlement discussion and shall therefore be confidential. The mediator may not testify for any party in any later proceeding relating to the dispute. The mediation proceedings shall not be recorded or transcribed.

Each party shall bear its own costs in the mediation. The parties shall share equally the fees and expenses of the mediator.

If the parties have not resolved a dispute within 90 days after written notice beginning mediation (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration. In addition, if a party initiates litigation, arbitration, or other binding dispute resolution process without initiating mediation, or before the mediation process has terminated, an opposing party may deem the mediation requirement to have been waived and may proceed with arbitration.

**Arbitration**

The arbitration will be conducted in accordance with the procedures in this document and the CPR Rules for Non-Administered Arbitration ("Rules") as in effect on the date of the Agreement, or such other rules and procedures as the parties may agree. In the event of a conflict, the provisions of this document will control.

The arbitration will be conducted before a panel of three arbitrators, to be selected in accordance with the screened selection process provided in the Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of these procedures, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator may be appointed unless the arbitrator has agreed in writing to these procedures and has confirmed in writing that the arbitrator is not, and will not become during the term of the arbitration,



an employee, partner, executive officer, director, of or beneficial owner with significant influence over any EY Firm audit client.

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort or to make an award or impose a remedy that (i) is inconsistent with the agreement to which these procedures are attached or any other agreement relevant to the dispute, or (ii) could not be made or imposed by a court deciding the matter in the same jurisdiction.  In deciding the dispute, the arbitration panel shall apply the limitations period that would be applied by a court deciding the matter in the same jurisdiction, and shall have no power to decide the dispute in any manner not consistent with such limitations period.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only in accordance with the Rules or applicable professional standards. Before making any such disclosure, a party shall give written notice to all other parties and shall afford them a reasonable opportunity to protect their interests, except to the extent such disclosure is necessary to comply with applicable law, regulatory requirements or professional standards.

The result of the arbitration shall be binding on the parties, and judgment on the arbitration award may be entered in any court having jurisdiction.

Confidential