**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| FORMER BL STORES, INC., *et al.*,[1] | Case No. 24-11967 (JKS) |
| Debtors. | (Jointly Administered) |

**Hearing Date: May 19, 2026 at 10:00 a.m. (ET)**
**Objection Deadline: April 7, 2026 at 10:00 a.m. (ET)**

**MOTION OF ALFRED T. GIULIANO, CHAPTER 7 TRUSTEE,**
**PURSUANT TO 11 U.S.C. § 105 AND FED. R. BANKR. P. 9019 AUTHORIZING AND**
**APPROVING ENTRY INTO A SETTLEMENT AGREEMENT REGARDING**
**HURRICANE IDA INSURANCE RECOVERY**

Alfred T. Giuliano, chapter 7 trustee (the "Trustee") to the estates of the above-captioned

debtors (the "Debtors"), hereby moves this Court (the "Motion"), for entry of an order (the

"Proposed Order") substantially in the form attached to this Motion as **Exhibit A**, pursuant to

section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing, but not

directing, the Trustee's entry into the settlement agreement (the "Settlement Agreement")

between the Trustee and a market of insurers of the Debtors' property insurance policies (the

"Market," and together with the Trustee, the "Parties").  A copy of the Settlement Agreement (in

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Former BL Stores, Inc. (9097); Former Management Stores of Ohio, LLC (7948); Consolidated Property Holdings, LLC (0984); Former Furniture Stores of Ohio, LLC (7868); Former Savings Stores of California, LLC (5262); Former Stores of Ohio, LLC (6811); Former Tenant Stores of Ohio, LLC (0552); Former Savings Stores of Ohio, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Former eCommerce Stores of Ohio, LLC (9612); and Former Low Cost Stores of Ohio, LLC (3277). The former address of the Debtors' corporate headquarters was 4900 E. Dublin-Granville Road, Columbus, OH 43081.

the form of a Policy Release) is attached to the Proposed Order as <u>Exhibit 1</u>.  In support of the

Motion, the Trustee respectfully represents as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334 and the *Amended Standing Order of Reference from the United States District Court for the*

*District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the

meaning of 28 U.S.C. § 157(b)(2).  The Trustee confirms his consent pursuant to Local Rule

9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent

that it is later determined that the Court, absent consent of the parties, cannot enter final orders or

judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue of this proceeding and this Motion is proper in this District pursuant to 28

U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are section 105(a) of the Bankruptcy

Code and Bankruptcy Rule 9019.

### Background

**A.      General Background**

4.      On September 9, 2024 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions

for relief under chapter 11 of the Bankruptcy Code in this Court, thereby commencing the

Debtors' cases (the "<u>Cases</u>").  The cases are being jointly administered pursuant to Bankruptcy

Rule 1015(b).

5.      On October 17, 2024, the Court entered the *Final Order Authorizing (I) Debtors*

*To (A) Continue and Renew Their Liability, Property, Casualty, Surety Bond, and Other*

*Insurance Programs, and Honor All Obligations in Respect Thereof, (B) Honor and Renew the*

*Terms of the Premium Financing Agreements and Pay the Financing Agreement Payments Thereunder, and (C) Enter into New Premium Financing Agreements in the Ordinary Course of Business and (II) Financial Institutions To Honor and Process Related Checks and Transfers* [Docket No. 524] (the "Final Insurance Order").

6.      At a hearing on December 31, 2024, the Debtors sought and received Court approval to consummate a sale (the "GBRP Sale") of substantially all assets to Gordon Brothers Retail Partners, LLC ("GBRP"). On January 2, 2025, the Court entered the *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of all Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 1556].  The GBRP Sale was subsequently consummated on January 3, 2025.  *See Notice of Closing of Sale of Debtors' Assets to Gordon Brothers Retail Partners, LLC* [Docket No. 1588].

7.      Additional information about the Debtors' business and affairs, capital structure, and prepetition indebtedness, and the events leading up to the Petition Date, can be found in the *Declaration of Jonathan Ramsden as Chief Financial and Administrative Officer of the Debtors in Support of the Debtors' Chapter 11 Proceedings and First Day Pleadings* [Docket No. 3] and the *Amended Declaration of Jonathan Ramsden as Chief Financial and Administrative Officer of the Debtors in Support of the Debtors' Chapter 11 Proceedings and First Day Pleadings* [Docket No. 77] (collectively, the "First Day Declaration").

8.      On November 10, 2025 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 (the "Conversion Order") [Docket No. 3319], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 3320].

**B.      The Property Insurance Policies and the Settlement Agreement**

9.      Prior to the Petition Date, the Debtors obtained first party property insurance to protect the Debtors' real property and certain personal property interests insured thereunder. *See generally Motion of Debtors for Entry of Interim and Final Orders Authorizing (I) Debtors To (A) Continue and Renew Their Liability, Property, Casualty, Surety Bond, and Other Insurance Programs, and Honor All Obligations in Respect Thereof, (B) Honor and Renew the Terms of the Premium Financing Agreements and Pay the Financing Agreement Payments Thereunder, and (C) Enter into New Premium Financing Agreements in the Ordinary Course of Business and (II) Financial Institutions To Honor and Process Related Checks and Transfers* [D.I. 12] (the "Insurance Motion"). Specifically, the Debtors maintained several Property Insurance Policies with a market of insurers (the "Market") who each cover a percentage of liability on each occurrence insured by the policies. *See id.* at ¶ 10. The Market is made up of: (i) AXA XL/XL Insurance America Inc. policy no. US00065403PR21A, (ii) Chubb/ACE American Insurance Co. policy no. GPA D38115522, (iii) Zurich American Insurance Company policy no. ERP0171421-007, (iv) AWAC/Allied World Assurance Co. policy no. 0312-9011-1A, (v) Allianz Global Risks US Ins Co policy no. USP00074821, (vi) Lexington Insurance Company policy no. 62502487, (vii) Guide One Insurance policy no. 99002044, and (viii) Starr Surplus Lines, policy no. SLSTPTY1147721 (collectively, the "Property Policies"). *See id.* at Schedule 1.

10.     The Property Policies are occurrence policies. The Property Policies cover the period from June 1, 2021 to June 1, 2022 (the "Covered Period") and generally covers losses that

occur to certain real property and personal property at an insured location during the Covered Period.  The Property Policies ensure that the Debtors would be protected for damage that might occur to the Debtors' property, subject to the terms, conditions, and exclusions and up to the applicable limits of liability listed in the Property Policies.

11.     The Debtors filed a claim under its Property Policies for losses occurring on or about August 29, 2021 as a result of Hurricane Ida.  Prior to the Conversion Date, the Debtors and the Market negotiated at arm's length to reach an agreement to consensually resolve the claim for $602,550.53, along with a release for the Market (such resolution, the "Settlement"), which resulted in the Settlement Agreement.  The Trustee has reviewed the Settlement Agreement and relevant documentation and has determined, in the exercise of his business judgment, to consummate the Settlement Agreement.

**Basis for Relief**

12.     Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 105(a) has been interpreted to expressly empower bankruptcy courts with broad equitable powers to "craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain." *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (en banc).  Bankruptcy Rule 9019 governs the procedural prerequisites to approve a settlement, providing that:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

13.     Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution of bankruptcy cases. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). Bankruptcy Rule 9019 provides that on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. In deciding whether to approve a settlement pursuant to Bankruptcy Rule 9019, the court should determine whether the compromise is fair, reasonable, and in the interests of the estates. *In re Marvel Entertainment Group, Inc.,* 222 B.R. 243, 249 (D. Del. 1998). The decision whether to accept or reject a compromise lies within the sound discretion of the court. *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986).

14.     In making this determination, the United States Court of Appeals for the Third Circuit has provided four criteria that a bankruptcy court should consider: (a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors. *Martin*, 91 F.3d at 393. Courts generally defer to a trustee's business judgment when there is a legitimate business justification for the trustee's decision. *Id.* at 395.

15.     When applying the *Martin* factors to a particular motion, "the court is not supposed to have a 'mini-trial' on the merits, but should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *Aetna Casualty & Surety Co. v. Jasmine, Ltd (In re Jasmine, Ltd)*, 258 B.R. 119, 123 (D.N.J. 2000) (internal quotations omitted); *see also In re TSIC, Inc.*, 393 B.R. 71, 79 (Bankr. D. Del. 2008); *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). Although approval of a compromise

is within the "sound discretion" of the bankruptcy court (*World Health*, 344 B.R. at 296), the court should not substitute its judgment for that of a trustee or debtor in possession. *In re Parkview Hosp.-Osteopathic Med. Ctr.*, 211 B.R. 603, 610 (Bankr. N.D. Ohio 1996). The ultimate inquiry is whether the compromise is "fair, reasonable, and in the interests of the estate." *TSIC*, 393 B.R. at 78. A court need not be convinced that a proposed settlement is the best possible settlement, but "must conclude that it is within the reasonable range of litigation possibilities." *World Health*, 344 B.R. at 296 (internal citations omitted).

16. The Trustee submits that entry into the Settlement Agreement satisfies each of the *Martin* factors and falls well above the lowest point in the range of reasonableness. The Court should therefore approve the Settlement Agreement.

17. The terms of the Settlement Agreement are within the range of reasonableness. First, the Settlement Agreement resolves the Debtors' estates' claim without the need for costly and time-consuming litigation. Any such litigation would increase the costs of obtaining a recovery without a material increase in the amount of recovery. Given the small likelihood that success in litigation would substantially increase the recovery, creditors benefit from a quicker resolution that avoids additional attorneys' fees and costs associated with litigation. Therefore, the paramount interest of creditors favors the Settlement Agreement.

18. Aside from the standards under Rule 9019, a settlement of claims and causes of action by a trustee constitutes a use of property of the estate. *See e.g. Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999). If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code. *See id.*; *see also Martin*, 91 F.3d at 395 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy

Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy."). Courts normally defer to the trustee's business judgment so long as there is a legitimate business justification. *See id.*; *see also Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (trustee need only have a "sound business purpose" to justify use of estate property pursuant to section 363(b)).

19.     Here, the Trustee submits that approval under section 363(b) of the Bankruptcy Court is required. The Settlement Agreement provides for, among other terms, a release and waiver of potential claims by the Trustee against the Market. *See Northview Motors*, 186 F.3d at 350 (settling a claim against a third party constitutes a sale of the claim under section 363 and subject to court approval).

20.     For all the reasons set forth above, the Trustee, in an exercise of his sound business judgment, submits that the Settlement Agreement is fair, reasonable, and appropriate and should be approved by this Court.

## Notice

21.     Notice of this Motion has been given to the following parties, or their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) Zelle LLP and Fox Swibel Levin & Carroll LLP, as counsel to the Market; and (c) those persons who have requested notice pursuant to Bankruptcy Rule 2002. The Trustee submits that no other or further notice is necessary or required.

WHEREFORE, the Trustee respectfully requests that this Court (a) enter the Proposed

Order attached to this Motion as **Exhibit A**, and (b) grant such other and further relief as this

Court deems just and proper.

Dated:  March 24, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Peter J. Keane*
Bradford J. Sandler (DE Bar No. 4142)
Peter J. Keane (DE Bar No. 5503)
Edward A. Corma (DE Bar No. 6718)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:     bsandler@pszjlaw.com
           pkeane@pszjlaw.com
           ecorma@pszjlaw.com

*Counsel to Alfred T. Giuliano, Chapter 7 Trustee*