**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| FORMER BL STORES, INC., et al., | Case No. 24-11967 (JKS) |
| | (Jointly Administered) |
| Debtors.[1] | **Hearing Date**: May 19, 2026, at 10:00 a.m. (ET) |
| | **Objection Deadline**: April 10, 2026 at 4:00 p.m. (ET) |

**JOINT MOTION OF TRUSTEE AND GBRP**
**PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE**
**AND BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER (I) APPROVING**
**THE CLOSE-OUT AGREEMENT WITH ARCH; (II) WITHDRAWING PROOFS**
**OF CLAIM NOS. 7092, 7093, AND 7095; AND (III) GRANTING RELATED RELIEF**

Alfred T. Giuliano (the "Trustee"), solely in his capacity as chapter 7 trustee for the Debtors (as defined herein) and Gordon Brothers Retail Partners, LLC ("GBRP" and, together with the Trustee, the "Movants"), by and through their respective undersigned counsel, hereby file this motion (the "Motion") pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, (i) approving the Close-Out Agreement by and among the Trustee, GBRP, and Arch Insurance Company on behalf of itself and its subsidiaries Arch Indemnity Insurance Company and Arch Specialty Insurance Company (collectively, and solely in their capacities as insurers, "Arch" and, together with the Trustee and GBRP, the "Parties") attached as

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their respective employer identification numbers, are as follows: Great Basin, LLC (6158); Former BL Stores, Inc. (9097); Former Management Stores of Ohio, LLC (7948); Consolidated Property Holdings, LLC (0984); Former Furniture Stores of Ohio, LLC (7868); Former Savings Stores of California, LLC (5262); Former Stores of Ohio, LLC (6811); Former Tenant Stores of Ohio, LLC (0552); Former Savings Stores of Ohio, LLC (6182); CSC Distribution LLC (8785); Closeout Distribution, LLC (0309); Durant DC, LLC (2033); AVDC, LLC (3400); GAFDC LLC (8673); PAFDC LLC (2377); WAFDC, LLC (6163); INFDC, LLC (2820); Former eCommerce Stores of Ohio, LLC (9612); and Former Low Cost Stores of Ohio, LLC (3277). The former address of the Debtors' corporate headquarters is 4900 E. Dublin-Granville Road, Columbus, OH 43081.

**Exhibit 1** to the Proposed Order (the "Agreement"),[2] (ii) withdrawing proofs of claim numbers 7092, 7093, and 7095; and (iii) granting related relief.  In support of this Motion, the Movants respectfully state as follows:

**JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding under 28 U.S.C. § 157(b).

2.      The Movants confirm their consent, pursuant to Rule 9013-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.

**BACKGROUND**

**A.  The Bankruptcy Cases**

5.      On September 9, 2024 (the "Petition Date"), Former BL Stores, Inc. (formerly known as Big Lots, Inc.) and certain of its affiliates, each of which is a debtor in the above-captioned cases (collectively, the "Debtors"), filed a voluntary petition for relief under chapter 11

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Agreement.

of the Bankruptcy Code (the "Chapter 11 Cases").  The Chapter 11 Cases were procedurally consolidated and jointly administered pursuant to Bankruptcy Rule 1015(b).

6.     On November 7, 2024, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Establishing Certain Bar Dates for Filing Proofs of Claim Against the Debtors, and (II) Granting Related Relief, Including Notice and Filing Procedures* (the "Bar Date Motion") [D.I. 1038].  On November 20, 2024, the Court entered an order approving the Bar Date Motion [D.I. 1188] and an amended order on December 31, 2024 [D.I. 1531] establishing, among other dates, January 31, 2025 at 5 PM prevailing Eastern Time as the General Bar Date (as defined in the Bar Date Motion).

7.     On January 2, 2025, the Court entered an order approving the sale (the "GBRP Sale") of substantially all of the Debtors' assets to GBRP pursuant to that certain Asset Purchase Agreement dated as of January 2, 2025 (the "APA").  *See Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of all Claims, Liens, Rights, Interests, Encumbrances, and Other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 1556]. The GBRP Sale closed on January 3, 2025.  *See Notice of Closing of Sale of Debtors' Assets to Gordon Brothers Retail Partners, LLC* [D.I. 1588].

8.     On October 24, 2025, the Debtors filed a motion seeking to convert the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code [D.I. 3261], and on November 10, 2025, the Court entered the *Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting a Hearing*

*Thereon, and (III) Granting Related Relief* (the "Conversion Order") [D.I. 3319].[3]  On November 10, 2025, the Trustee was appointed as the chapter 7 trustee for the estates of the Debtors.  [D.I. 3320].

### B.  The BIG LOTS Insurance Program

9.      Arch issued to Big Lots, Inc. and its various affiliates and predecessors (collectively, "BIG LOTS") certain insurance policies providing coverage for Workers Compensation, Employers Liability Insurance, Excess Workers Compensation, General Liability, and Commercial Automobile Liability for annual periods commencing June 1, 2009 and expiring June 1, 2016 as identified on Schedule A to the Agreement (together with any and all endorsements and addenda thereto, collectively the "BIG LOTS Insurance Policies").[4]

10.      In conjunction with the BIG LOTS Insurance Policies, Arch and BIG LOTS executed certain agreements including, without limitation, that certain Loss Sensitive Program Agreement effective as of June 1, 2009 (as amended and/or modified from time to time, the "LSPA"), detailing certain of the liabilities, obligations and rights of Arch and BIG LOTS (which agreements, together with any addenda, any program specifications tables and/or schedules thereto, and any other similar agreements related thereto, collectively, the "BIG LOTS Agreements").

11.      The BIG LOTS Insurance Policies and the BIG LOTS Agreements constitute the "BIG LOTS Insurance Program."

---

[3]      The Chapter 11 Cases, following entry of the Conversion Order, are referred to herein as the "Bankruptcy Cases".

[4] For the avoidance of doubt, nothing in this Motion or the Agreement shall be deemed to waiver, alter, or release any rights or claims of the Debtors' estates or GRBP, whether under the APA or otherwise, to any other insurance policies for coverage periods not identified in this Motion or the Agreement.

12.     The BIG LOTS Insurance Program created certain obligations, including, but not limited to, amounts for which BIG LOTS was responsible to reimburse Arch (collectively, the "BIG LOTS Reimbursement Obligations").

13.     As of October 20, 2025, Arch holds certain security as collateral for the BIG LOTS Reimbursement Obligations in an aggregate amount of Nine Million Three Hundred Fifty-One Thousand One Hundred and Nine US Dollars ($9,351,109) held in the form of the proceeds of that certain Letter of Credit (LC # 18136875-00-000) issued by PNC Bank, N.A. (the "LOC Proceeds" and together with the Letter of Credit and any credits, adjustments, return premium, interest, investment income, funds, other recoveries, as amended, confirmed, supplemented or replaced, the "BIG LOTS Collateral").

14.     On or about January 29, 2025, and in accordance with the Bar Date Order, Arch timely filed three proofs of claim against the Debtors, identified on the Debtors' claims register as proofs of claim numbers 7092, 7093, and 7095 (collectively, the "Arch POCs").

15.     Pursuant to the APA, GBRP purchased certain specified rights and proceeds under the BIG LOTS Insurance Program, including all of the Debtors' rights and interest in any excess BIG LOTS Collateral under the BIG LOTS Insurance Program, as set forth more fully in the APA. The BIG LOTS Insurance Policies themselves, however, were Excluded Assets (as defined in the APA) and remained property of the Debtors' estates.

16.     It is not specified under the APA whether the LSPA was an Assigned Contract or an Excluded Contract (as each term is defined in the APA).

### C.  The Proposed Agreement

17.     GBRP, as purchaser of certain of the Debtors' assets as discussed above, and the Trustee, as successor to the Debtors, desire to extinguish all of their respective and the Debtors'

financial obligations under the BIG LOTS Insurance Program and forever settle all outstanding balances due to Arch under the BIG LOTS Insurance Program as a result thereof.  Consequently, GBRP requested a close-out of all present and future BIG LOTS Reimbursement Obligations arising from the BIG LOTS Insurance Program and a reduction, return, or release of certain of the BIG LOTS Collateral (the "Request").

18.     The Movants and Arch engaged in discussions and negotiations regarding this Request and, following these discussions and negotiations, entered into the Agreement, including the terms described below.

19.     The Agreement requires, among other things, that Movants file and serve a joint motion seeking entry of an order in the form of the Proposed Order attached hereto as **Exhibit A** approving the Agreement.

### RELIEF REQUESTED

20.     By this Motion, the Movants seek entry of an order in an abundance of caution, substantially in the form of the Proposed Order, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019, approving the settlement by and among the Movants and Arch on the terms contained in the Agreement.

21.     A summary of pertinent terms of the Agreement include:[5]

a)      Within ten (10) business days after the Close-Out Effective Date (as defined in the Agreement), Arch shall pay the amount of $3,639,521 (the "Close-Out Payment") to GBRP via ACH or wire transfer at Arch's sole discretion pursuant to the ACH or wire instructions and W-9 provided by GBRP to Arch. Within five (5) business days after receipt of the Close-Out Payment, GBRP shall remit $100,000.00 to the Trustee via wire transfer pursuant to wire instructions and W-9 provided by the Trustee.  The difference between

---

[5]      Description of the terms of the Agreement contained in this Motion are meant for informative purposes only and, in the event that there is any conflict between this Motion and the terms of the Agreement, the terms of the Agreement shall control.

the amount of the LOC Proceeds and the Close-Out Payment shall be referred to in the Agreement as the "Retained LOC Proceeds."

b)   On and after the Close-Out Effective Date, Arch shall (i) indefeasibly retain the Retained LOC Proceeds and any and all other amounts previously paid or provided to, or deposited with, Arch by or on behalf of BIG LOTS and in connection with the BIG LOTS Insurance Program or otherwise related to the BIG LOTS Insurance Program including, without limitation, any and all credits, adjustments, return premium, interest, investment income, funds, and any other amounts of any kind held or received by or paid to Arch, or any third party administrator in connection with the BIG LOTS Insurance Program at any time that may otherwise be due at any time from Arch to GBRP in connection with the BIG LOTS Insurance Program, if any (all of the foregoing together with the Retained LOC Proceeds, collectively, the "Retained BIG LOTS Collateral"); and (ii) have all right, title, and interest in the Retained BIG LOTS Collateral including, without limitation, the right to hold, use and/or apply the Retained BIG LOTS Collateral and the proceeds thereof for any purpose and take any other actions in Arch's sole discretion without further notice to GBRP, any of the other GBRP Entities, the Trustee, or any of the other Trustee Entities, or order of the Court.  As provided in Paragraph 3, above, the Approval Order shall provide that the automatic stay imposed by section 362(a) of the Bankruptcy Code and any injunction or release provision in the APA, any order of the Court or any other document (collectively, the "Stay/Injunction"), if and to the extent applicable, shall be lifted without further order of the Court.

c)   On and after the Close-Out Effective Date, GBRP, on behalf of itself and on behalf of all of the other GBRP Entities and any party claiming by or through it or them (i) shall forever waive and release, and shall hereby be deemed to forever waive and release, all of GBRP's and the other GBRP Entities' rights, title and interest, if any, in and to the Retained BIG LOTS Collateral; and (ii) agrees that (a) none of GBRP nor any of the other GBRP Entities shall have any right, title or interest whatsoever in the Retained BIG LOTS Collateral, and (b) except as expressly set forth in the Agreement, no collateral and/or security shall be reduced, released, paid, or returned to GBRP or any of the other GBRP Entities and Arch shall not make any payments to GBRP, any of the other GBRP Entities, or any other person or entity in connection with the BIG LOTS Insurance Program.

d)   The Trustee acknowledges, accepts and agrees that pursuant to the Sale, the Debtors sold all of their rights and interests in the BIG LOTS Collateral to GBRP, and that as of and after the Sale Closing Date, the Debtors' estates retained no rights or interests in the BIG LOTS Collateral, despite the fact that the BIG LOTS Insurance Policies remained property of the Debtors' estates and the treatment of the LPSA as either an Assigned Contract or an Excluded Contract (as such terms are defined in the APA) is not clear.

e)      In consideration of the promises contained in the Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, on and after the Close-Out Effective Date, the GBRP Entities and the Trustee Entities hereby fully and irrevocably release waive, acquit, and forever discharge the Arch Entities of and from any and all claims, counterclaims, rights, actions, demands, causes of action, liabilities, obligations, damages, losses, liabilities, costs (including, without limitation, attorneys' fees) and expenses, of any kind or nature whatsoever involving, related to, or arising under any federal, state, or local statute, regulation, ordinance, or common law (including, but not limited to, any and all such pursuant to §§ 362, 363, 542, 544, 547, 548, 549, and 550 of the Bankruptcy Code), whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which each of the GBRP Entities and the Trustee Entities, respectively, had or claim to have or may have against any or all of the Arch Entities from the beginning of time through the Close-Out Effective Date arising out of or under or related to the BIG LOTS Insurance Program, the BIG LOTS Collateral, the Retained BIG LOTS Collateral, the Claims Handling (as defined in the Agreement), and/or the Request; provided, however, the release set forth in this paragraph shall not include (a) any obligations expressly set forth in the Agreement and (b) any rights, claims, or obligations under or with respect to any policies of insurance and/or related agreements that are not part of the BIG LOTS Insurance Program and/or with respect to any surety bonds and/or any agreements related thereto; provided, further, that except as expressly set forth in the Agreement, nothing shall serve to modify or amend any of the terms or provisions of the APA and/or Sale Order, and each of the Arch Entities, GBRP Entities and the Trustee Entities hereby reserve all rights and remedies thereunder.

f)      In consideration of the promises contained in the Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, on and after the Close-Out Effective Date, the Arch Entities and the Trustee Entities hereby fully and irrevocably release, waive, acquit, and forever discharge each of the GBRP Entities of and from any and all claims, counterclaims, rights, actions, demands, causes of action, liabilities, obligations, damages, losses, liabilities, costs (including, without limitation, attorneys' fees) and expenses, of any kind or nature whatsoever involving, related to, or arising under any federal, state, or local statute, regulation, ordinance, or common law, whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which the Arch Entities and the Trustee Entities, respectively, had or claim to have or may have against any or all of the GBRP Entities from the beginning of time through the Close-Out Effective Date arising out of or under or related to the BIG LOTS Insurance Program, the BIG LOTS Collateral, the Retained BIG LOTS Collateral, the Claims Handling, and/or

the Request; provided, however, the release set forth in this paragraph shall not include (a) any obligations expressly set forth in the Agreement and (b) any rights, claims, or obligations under or with respect to any policies of insurance and/or related agreements that are not part of the BIG LOTS Insurance Program and/or with respect to any surety bonds and/or any agreements related thereto; provided, further, that except as expressly set forth in the Agreement, nothing shall serve to modify or amend any of the terms or provisions of the APA and/or Sale Order, and each of the Arch Entities, GBRP Entities and the Trustee Entities hereby reserve all rights and remedies thereunder.

g) In consideration of the promises contained in the Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, on and after the Close-Out Effective Date, the Arch Entities and the GBRP Entities hereby fully and irrevocably release, waive, acquit, and forever discharge each of the Trustee Entities of and from any and all claims, counterclaims, rights, actions, demands, causes of action, liabilities, obligations, damages, losses, liabilities, costs (including, without limitation, attorneys' fees) and expenses, of any kind or nature whatsoever involving, related to, or arising under any federal, state, or local statute, regulation, ordinance, or common law, whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which the Arch Entities and the GBRP Entities respectively,  had or claim to have or may have against any or all of the Trustee Entities from the beginning of time through the Close-Out Effective Date arising out of or under or related to the BIG LOTS Insurance Program, the BIG LOTS Collateral, the Retained BIG LOTS Collateral, the Claims Handling, and/or the Request; provided, however, the release set forth in this paragraph shall not include (a) any obligations expressly set forth in the Agreement and (b) any rights, claims, or obligations under or with respect to any policies of insurance and/or related agreements that are not part of the BIG LOTS Insurance Program and/or with respect to any surety bonds and/or any agreements related thereto; provided, further, that except as expressly set forth in the Agreement, nothing shall serve to modify or amend any of the terms or provisions of the APA and/or Sale Order, and each of the Arch Entities, GBRP Entities and the Trustee Entities hereby reserve all rights and remedies thereunder.

h) On the Close-Out Effective Date, the Arch POCs shall be deemed withdrawn without any further notice or action required by the Parties, and the Trustee may make any appropriate adjustments to the claims register as appropriate, without further Court order.  For the avoidance of doubt, nothing withdraws, releases, waives, discharges, alters, modifies, or impacts any other proofs of claim filed in the Bankruptcy Cases by Arch and/or any of Arch's affiliates.

i)      Nothing in the Agreement shall serve to relieve Arch of any of its obligations as the insurer under the BIG LOTS Insurance Program. On and after the Close-Out Effective Date, and subject to the Reservation of Rights (as defined in the Agreement), (i) Arch shall, in its discretion, (a) continue to handle, administer, adjust, settle, and/or pay any claim asserted against any of the Debtors under the BIG LOTS Insurance Policies (each, an "Covered Claim") to the extent required under the terms of the BIG LOTS Insurance Policies, (b) have the right, to the extent not already possessed, to select any third party administrator and defense counsel, and (c) pay the defense costs and other costs associated with the administration and handling of any such Covered Claim (all of the foregoing, collectively, the "Claims Handling"); (ii) the Stay/Injunction, to the extent applicable, shall be lifted as provided in the Approval Order to permit Arch to perform the Claims Handling; and (iii) the GBRP Entities and the Trustee, on behalf of himself and the Trustee Entities, hereby waive any right to perform any Claims Handling or to participate therein.  For the avoidance of doubt, (i) nothing in the Agreement or the Approval Order grants, or should be deemed to grant, any claimant relief from the Stay/Injunction to proceed with their claims without first obtaining relief therefrom from the Court, if and to the extent applicable, and (ii) except as specifically set forth in the Agreement, nothing alters, amends, or otherwise modifies the terms and conditions of (and any coverage provided by) the BIG LOTS Insurance Program; provided, that, for the avoidance of doubt, nothing requires or obligates Arch to pay any amounts within any self-insured retention and, on and after the Close-Out Effective Date, neither GBRP nor the Trustee shall not be required to pay any self-insured retention under the BIG LOTS Insurance Policies.

## BASIS FOR RELIEF REQUESTED

22.     Bankruptcy Rule 9019 provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. Bankr. R. 9019(a).

23.     Bankruptcy Rule 9019(a) "empowers the Bankruptcy Court to approve compromises and settlements if they are in the best interests of the estate." *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  Under this authority, the United States Court of Appeals for the Third Circuit has emphasized that, "[t]o minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *Martin v. Myers (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶

9019.03[1] (15th ed. 1993)) (alterations in original); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (settlement and compromise are "a normal part of the process of reorganization"); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010) (stating that there is a "strong presumption in favor of voluntary Arch Agreements"); *In re Petersburg Regency LLC*, 540 B.R. 508, 535 (Bankr. D.N.J. 2015) ("Settlements are favored in bankruptcy as they minimize litigation and expedite the administration of the bankruptcy estate." (internal quotations omitted)); *In re Culmtech, Ltd.*, 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990) (observing that "compromises are favored in bankruptcy and . . . much of litigation in bankruptcy estates results in settlements").

24.     Moreover, section 105(a) of the Bankruptcy Code provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  Thus, taken together, Bankruptcy Rule 9019(a) and section 105(a) grant bankruptcy courts the power to approve a proposed compromise and settlement when it is in the best interests of the debtor's estate and its creditors.  *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998).

25.     The decision to approve a settlement "lies within the sound discretion of the Bankruptcy Court." *Petersburg Regency*, 540 B.R. at 535.  In determining whether a settlement should be approved under Bankruptcy Rule 9019, the Court must assess whether the settlement is "fair and reasonable" and in the "best interests of the estate." *Id.*  The Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *In re Martin*, 91 F.3d at 393.

26.     In striking this balance, the Court should consider "(i) the probability of success in the litigation; (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved,

and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors." *Id.*  The Court should not conduct a "mini-trial" on the merits but "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Petersburg Regency*, 540 B.R. at 353 (quoting *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. den.*, 464 U.S. 822 (1983)).  Courts generally defer to a plaintiff or trustee's business judgment when there is a legitimate business justification for the decision.  *See In re Martin*, 91 F.3d at 395.

27.     A review of the four factors from *In re Martin* demonstrates that the Agreement is in the best interests of the estates and of all creditors, and a reasonable exercise of the Trustee's business judgment.

28.     *Probability of Success*.  The Movants' probability of success on the issues resolved by the Agreement is uncertain.  The BIG LOTS Insurance Program entitles Arch to retain the BIG LOTS Collateral to secure, among other things, the BIG LOTS Reimbursement Obligations.  Estimating and liquidating Arch's claims would be costly and time-consuming, and the outcome of any such endeavor is inherently uncertain.  Accordingly, the Movants' likelihood of success on the merits is unclear, at best,

29.     *Difficulties of Collection*.  After Court approval of the Agreement, Arch will pay the Close-Out Payment to GBRP in accordance with the terms of the Agreement.  As the payment of the Close-Out Payment without the Agreement would have likely required extensive efforts (and resulting costs) on the part of the Movants and their professionals, and as it may have taken a great

deal of time to secure such release, it is clear that this factor weighs heavily in favor of approving the Agreement.

30.     *Complexity of Litigation.*  Although there is no current litigation, insurance claims and contracts are often complex to litigate, typically involving extensive fact discovery. Accordingly, this factor also weighs in favor of approving the Agreement.

31.     *Paramount Interests of Creditors.*  Finally, the Agreement is in the paramount interest of creditors.  Pursuant to the Agreement, Arch is waiving certain of its claims against the Debtors' estates.  This relieves a substantial burden on the Trustee in addressing Arch's claims and streamlines the claims resolution process.  Further, the Agreement arises out of an arm's-length bargaining between the Trustee, Arch and GBRP.

32.     For all these reasons, the Trustee submits that his entry into the Agreement is a sound exercise of his business judgment and that the compromises reached with Arch and GBRP reflected in the Agreement are fair, reasonable, and in the best interest of the Debtors' estates and creditors.  Movants respectfully request that the Court approve and authorize entry into the Agreement.

## NO PRIOR REQUEST

33.     No prior request for the relief sought in this Motion has been made to this Court or any other Court.

## NOTICE

34.     Movants have provided notice of this Motion to the following: (a) the United States Trustee for the District of Delaware; (b) counsel to Arch; and (c) all parties who have requested notice under Bankruptcy Rule 2002.  In light of the relief requested in this Motion, the Movants submit that no other or further notice is necessary.

## CONCLUSION

**WHEREFORE,** the Movants respectfully request that this Court enter an order substantially in the same form as the Proposed Order attached hereto as **Exhibit A**: (i) granting the Motion, (ii) approving the Agreement attached as **Exhibit 1** to the Proposed Order, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: March 27, 2026

*/s/ Peter J. Keane*
PACHULSKI STANG ZIEHL & JONES LLP
Bradford J. Sandler (DE Bar No. 4142)
Peter J. Keane (DE Bar No. 5503)
Edward A. Corma (DE Bar No. 6718)
919 N Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tel: 302-652-4100
Email:
bsandler@pszjlaw.com
pkeane@pszjlaw.com
ecorma@pszjlaw.com

*Counsel to the Trustee*

*/s/ Steven E. Fox*
RIEMER & BRAUNSTEIN LLP
Steven E. Fox
Times Square Tower
Seven Times Square, Suite 2506
New York, NY 10036
Email: sfox@riemerlaw.com

*Counsel to GBRP*