**Exhibit 1**

**Agreement**

## CLOSE-OUT AGREEMENT

THIS CLOSE-OUT AGREEMENT (the "Agreement") is made and entered into as of March 19, 2026 by and among (i) Gordon Brothers Retail Partners, LLC (the "GBRP"), (ii) Alfred T. Giuliano (the "Trustee"), solely in his capacity as chapter 7 trustee for the Debtors (as defined herein), and (iii) Arch Insurance Company on behalf of itself and its subsidiaries Arch Indemnity Insurance Company and Arch Specialty Insurance Company (collectively, and solely in their capacities as insurers, "Arch"). Each of GBRP, the Trustee, and Arch is a "Party" and are collectively the "Parties."

## Recitals

**WHEREAS**, Arch issued to Big Lots, Inc. and its various affiliates and predecessors (collectively, "BIG LOTS") certain insurance policies providing coverage for Workers Compensation, Employers Liability Insurance, Excess Workers Compensation, General Liability, and Commercial Automobile Liability for annual periods commencing June 1, 2009 and expiring June 1, 2016 as identified on Schedule A hereto (together with any and all endorsements and addenda thereto, collectively the "BIG LOTS Insurance Policies"); and

**WHEREAS**, in conjunction with the BIG LOTS Insurance Policies, Arch and BIG LOTS executed certain agreements including, without limitation, that certain Loss Sensitive Program Agreement effective as of June 1, 2009 (as amended and/or modified from time to time, the "LSPA") detailing certain of the liabilities, obligations and rights of Arch and BIG LOTS, which together with any addenda, any program specifications tables and/or schedules thereto, and any other similar agreements related thereto, are hereinafter collectively incorporated herein by reference and called the "BIG LOTS Agreements"; and

**WHEREAS**, the BIG LOTS Insurance Policies and the BIG LOTS Agreements constitute the "BIG LOTS Insurance Program"; and

**WHEREAS**, the BIG LOTS Insurance Program created certain obligations, including, but not limited to, amounts for which BIG LOTS was responsible to reimburse Arch (the "BIG LOTS Reimbursement Obligations"); and

**WHEREAS**, as of October 20, 2025, Arch holds certain security as collateral for the BIG LOTS Reimbursement Obligations in an aggregate amount of Nine Million Three Hundred Fifty-One Thousand One Hundred and Nine US Dollars ($9,351,109) held in the form of the proceeds of that certain Letter of Credit (LC # 18136875-00-000) issued by PNC Bank, N.A. (the "LOC Proceeds" and together with the Letter of Credit and any credits, adjustments, return premium, interest, investment income, funds, other recoveries, as amended, confirmed, supplemented or replaced, the "BIG LOTS Collateral"); and

**WHEREAS**, on September 9, 2024, BIG LOTS and certain affiliates (collectively, the "Debtors") filed their respective voluntary petitions for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for

4924-9743-7081.1 31275.00001

the District of Delaware (the "Court") commencing bankruptcy cases which have been jointly administered at Case No. 24-11967-JKS (the "Bankruptcy Cases"); and

WHEREAS, on or about January 29, 2025, Arch timely filed three proofs of claim (collectively, the "Arch POCs") asserting claims against the Debtors; and

WHEREAS, the Arch POCs are identified on the Debtors' claims register as proof of claim nos. 7092, 7093, and 7095, respectively; and

WHEREAS, on January 2, 2025, the Court entered the *Order (I) Approving the Asset Purchase Agreement, (II) Authorizing and Approving the Sale of Certain of the Debtors' Assets Free and Clear of all Claims, Liens, Rights, Interests, Encumbrances, and other Assumed Liabilities and Permitted Encumbrances, (III) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Doc. No. 1556] (the "Order"), approving the sale of substantially all of the Debtors' assets to GBRP (the "Sale") pursuant to that certain Asset Purchase Agreement dated as of January 2, 2025 (the "APA"); and

WHEREAS, pursuant to the APA, GBRP purchased certain specified rights and proceeds under the BIG LOTS Insurance Program, including all of the Debtors' rights and interest in any excess BIG LOTS Collateral under the BIG LOTS Insurance Program, as set forth more fully in the APA; and

WHEREAS, pursuant to the APA, the BIG LOTS Insurance Policies themselves were Excluded Assets (as defined in the APA), and remained property of the Debtors' estates, but it is not specified under the APA whether the LSPA was an Assigned Contract or an Excluded Contract (as each term is defined in the APA); and

WHEREAS, the Sale closed on January 3, 2025 [Doc. No. 1588] (the "Sale Closing Date"); and

WHEREAS, after the Sale, the Debtors filed a motion seeking to convert the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code [Doc. No. 3261], and on November 10, 2025, the Court entered the *Order (I) Converting Chapter 11 Cases to Cases Under Chapter 7, (II) Establishing Deadline for Filing Final Chapter 11 Fee Applications and Setting a Hearing Thereon, and (III) Granting Related Relief* [Doc. No. 3319]; and

WHEREAS, on November 10, 2025, the Trustee was appointed as the chapter 7 trustee for the estates of the Debtors; and

WHEREAS, GBRP, as purchaser of certain of the Debtors' assets as discussed above, and the Trustee, as successor to the Debtors, now desire to extinguish all of their respective and the Debtors' financial obligations under the BIG LOTS Insurance Program and forever settle all

outstanding balances due to Arch under the BIG LOTS Insurance Program as a result thereof, and Arch is willing to agree to such;[1] and

WHEREAS, GBRP requested a close-out of all present and future BIG LOTS Reimbursement Obligations arising from the BIG LOTS Insurance Program and a reduction, return, or release of certain of the BIG LOTS Collateral (the "Request"); and

WHEREAS, the Parties are entering into this Agreement to settle and resolve any and all claims, disputes, and issues between the Parties related to the BIG LOTS Insurance Program, the BIG LOTS Collateral, and the Request.

NOW, THEREFORE, in consideration of the mutual premises, covenants and conditions set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the Parties enter into this Agreement and agree to be bound by its terms.

## Agreement

1.  Within ten (10) business days after the Close-Out Effective Date (as defined herein), Arch shall pay the amount of $3,639,521 (the "Close-Out Payment") to GBRP via ACH or wire transfer at Arch's sole discretion pursuant to the ACH or wire instructions and W-9 provided by GBRP to Arch. Within five (5) business days after receipt of the Close-Out Payment, GBRP shall remit $100,000.00 to the Trustee via wire transfer pursuant to wire instructions and W-9 provided by the Trustee The difference between the amount of the LOC Proceeds and the Close-Out Payment shall be referred to herein as the "Retained LOC Proceeds."

2.  The Trustee and GBRP shall file and serve a joint motion (the "Motion") seeking entry of an order (the "Approval Order") approving this Agreement as executed by the Parties pursuant to section 105 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019. The Motion shall be in form and substance reasonably acceptable to Arch and shall be served on a list of entities that is reasonably acceptable to Arch. Each of GBRP and the Trustee shall cooperate, and shall be required to cooperate, fully with Arch in responding to or defending against any challenges or objections to the Motion and, further, neither GBRP nor the Trustee shall shorten the notice period or extend any objection deadline for the Motion without Arch's express prior written (email being sufficient) consent (which consent shall not be unreasonably withheld, delayed, denied or conditioned).

3.  The Approval Order shall be in form and substance reasonably acceptable to Arch and shall provide, among other things, that: (i) the Agreement is approved; (ii) GBRP is authorized to enter into this Agreement on behalf of itself and all of the other GBRP Entities (as

---

[1] For the avoidance of doubt, nothing shall alter, modify, amend, affect, impact, and/or prejudice in any way any insurance policies and/or related agreements that are not part of the BIG LOTS Insurance Program as defined herein, any surety bonds and/or related agreements, and/or any of the terms and conditions of or the legal, equitable, or contractual rights, obligations, claims, or defenses under or with respect to any of the foregoing.

defined herein) and to take any and all actions necessary and appropriate to consummate and perform all of the terms and conditions of this Agreement; (iii) the Trustee is authorized to enter into this Agreement on behalf of itself and all of the other Trustee Entities (as defined herein) and to take any and all actions necessary and appropriate to consummate and perform all of the terms and conditions of this Agreement; (iv) Arch is authorized to enter into this Agreement and to take any and all actions necessary and appropriate to consummate and perform the terms and conditions of this Agreement, including, but not limited to, drawing on, applying, releasing, and/or returning BIG LOTS Collateral, as applicable; (v) on and after the Close-Out Effective Date, none of GBRP, any of the other GBRP Entities, the Trustee, any of the other Trustee Entities, or any person or entity claiming by and/or through any of them shall have any rights, title, or interests in the Retained BIG LOTS Collateral (as defined herein) or the proceeds thereof; (vi) on and after the Close-Out Effective Date, Arch shall have all right, title, and interest in the Retained BIG LOTS Collateral and is authorized to draw upon the Retained BIG LOTS Collateral, hold and use the proceeds and take other actions related to the Retained BIG LOTS Collateral, in each case in Arch's sole discretion and without further order of the Court; (vii) the Stay/Injunction (as defined herein), to the extent applicable, is lifted to permit Arch to conduct the Claims Handling (as defined herein); and (viii) the releases set forth herein, which releases shall be restated in the Approval Order in full, are approved. To the extent of any inconsistency between (a) this Agreement and the Approval Order on the one hand, and (b) any other document, agreement, or order (including, but not limited to, the APA or the Sale Order) on the other hand, the terms of this Agreement and the Approval Order shall control. To the extent of any inconsistency between (x) this Agreement and (y) the Approval Order, the terms of this Agreement shall control.

4.      Notwithstanding any provision in the Approval Order or any other order of the Court to the contrary, the effective date of this Agreement (the "Close-Out Effective Date") shall be, and shall occur on, the first business day after the Approval Order has been entered by the Court and has become a final, non-appealable order that has not been modified, has not been appealed or challenged, and has no appeals or challenges pending with respect thereto.

5.      On and after the Close-Out Effective Date, Arch shall (i) indefeasibly retain the Retained LOC Proceeds and any and all other amounts previously paid or provided to, or deposited with, Arch by or on behalf of BIG LOTS and in connection with the BIG LOTS Insurance Program or otherwise related to the BIG LOTS Insurance Program including, without limitation, any and all credits, adjustments, return premium, interest, investment income, funds, and any other amounts of any kind held or received by or paid to Arch, or any third party administrator in connection with the BIG LOTS Insurance Program at any time that may otherwise be due at any time from Arch to GBRP in connection with the BIG LOTS Insurance Program, if any (all of the foregoing together with the Retained LOC Proceeds, collectively, the "Retained BIG LOTS Collateral"); and (ii) have all right, title, and interest in the Retained BIG LOTS Collateral including, without limitation, the right to hold, use and/or apply the Retained BIG LOTS Collateral and the proceeds thereof for any purpose and take any other actions in Arch's sole discretion without further notice to GBRP, any of the other GBRP Entities, the Trustee, or any of the other Trustee Entities, or order of the Court. As provided in Paragraph 3, above, the Approval Order shall provide that the

automatic stay imposed by section 362(a) of the Bankruptcy Code and any injunction or release provision in the APA, any order of the Court or any other document (collectively, the "Stay/Injunction"), if and to the extent applicable, shall be lifted without further order of the Court.

6. On and after the Close-Out Effective Date, GBRP, on behalf of itself and on behalf of all of the other GBRP Entities and any party claiming by or through it or them (i) shall forever waive and release, and shall hereby be deemed to forever waive and release, all of GBRP's and the other GBRP Entities' rights, title and interest, if any, in and to the Retained BIG LOTS Collateral; and (ii) agrees that (a) none of GBRP nor any of the other GBRP Entities shall have any right, title or interest whatsoever in the Retained BIG LOTS Collateral, and (b) except as expressly set forth herein, no collateral and/or security shall be reduced, released, paid, or returned to GBRP or any of the other GBRP Entities and Arch shall not make any payments to GBRP, any of the other GBRP Entities, or any other person or entity in connection with the BIG LOTS Insurance Program.

7. The Trustee acknowledges, accepts and agrees that pursuant to the Sale, the Debtors sold all of their rights and interests in the BIG LOTS Collateral to GBRP, and that as of and after the Sale Closing Date, the Debtors' estates retained no rights or interests in the BIG LOTS Collateral, despite the fact that the BIG LOTS Insurance Policies remained property of the Debtors' estates and the treatment of the LPSA as either an Assigned Contract or an Excluded Contract (as such terms are defined in the APA) is not clear.

8. Releases.

   a. Defined Terms.

      i. "GBRP Entities" shall mean GBRP and all parties claiming by, through or under it, and each of its respective successors and affiliates, and the present, past, and future parents, subsidiaries, and affiliated corporations, divisions, affiliates, predecessors, principals, partners, representatives, successors, agents, assigns, owners, directors, officers, employees, stockholders, attorneys, experts, trustees, oversight committee members, and advisory board members of each of the foregoing.

      ii. "Arch Entities" shall mean Arch and all parties claiming by, through or under it, and each of its respective successors and affiliates, and the present, past, and future parents, subsidiaries, and affiliated corporations, divisions, affiliates, predecessors, principals, partners, representatives, successors, agents, assigns, owners, directors, officers, employees, stockholders, attorneys, experts, and trustees of each of the foregoing.

      iii. "Trustee Entities" shall mean the Trustee and all parties claiming by, through or under it, including each of the Debtors, and each of their respective successors and affiliates, and the present, past, and

future parents, subsidiaries, and affiliated corporations, divisions, affiliates, predecessors, principals, partners, representatives, successors, agents, assigns, owners, directors, officers, employees, stockholders, attorneys, experts, trustees, oversight committee members, and advisory board members of each of the foregoing.

b. <u>Release of the Arch Entities</u>. In consideration of the promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, on and after the Close-Out Effective Date, the GBRP Entities and the Trustee Entities hereby fully and irrevocably release waive, acquit, and forever discharge the Arch Entities of and from any and all claims, counterclaims, rights, actions, demands, causes of action, liabilities, obligations, damages, losses, liabilities, costs (including, without limitation, attorneys' fees) and expenses, of any kind or nature whatsoever involving, related to, or arising under any federal, state, or local statute, regulation, ordinance, or common law (including, but not limited to, any and all such pursuant to §§ 362, 363, 542, 544, 547, 548, 549, and 550 of the Bankruptcy Code), whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which each of the GBRP Entities and the Trustee Entities, respectively, had or claim to have or may have against any or all of the Arch Entities from the beginning of time through the Close-Out Effective Date arising out of or under or related to the BIG LOTS Insurance Program, the BIG LOTS Collateral, the Retained BIG LOTS Collateral, the Claims Handling (as defined herein), and/or the Request; provided, however, the release set forth in this paragraph shall not include (a) any obligations expressly set forth in this Agreement and (b) any rights, claims, or obligations under or with respect to any policies of insurance and/or related agreements that are not part of the BIG LOTS Insurance Program and/or with respect to any surety bonds and/or any agreements related thereto; provided, further, that except as expressly set forth herein, nothing shall serve to modify or amend any of the terms or provisions of the APA and/or Sale Order, and each of the Arch Entities, GBRP Entities and the Trustee Entities hereby reserve all rights and remedies thereunder.

c. <u>Release of the GBRP Entities</u>. In consideration of the promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, on and after the Close-Out Effective Date, the Arch Entities and the Trustee Entities hereby fully and irrevocably release, waive, acquit, and forever discharge each of the GBRP Entities of and from any and all claims, counterclaims, rights, actions, demands, causes of action, liabilities, obligations, damages, losses, liabilities, costs (including, without limitation, attorneys' fees) and expenses, of any kind or nature whatsoever involving, related to, or arising under any federal, state, or local statute, regulation, ordinance, or common

law, whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which the Arch Entities and the Trustee Entities, respectively, had or claim to have or may have against any or all of the GBRP Entities from the beginning of time through the Close-Out Effective Date arising out of or under or related to the BIG LOTS Insurance Program, the BIG LOTS Collateral, the Retained BIG LOTS Collateral, the Claims Handling, and/or the Request; provided, however, the release set forth in this paragraph shall not include (a) any obligations expressly set forth in this Agreement and (b) any rights, claims, or obligations under or with respect to any policies of insurance and/or related agreements that are not part of the BIG LOTS Insurance Program and/or with respect to any surety bonds and/or any agreements related thereto; provided, further, that except as expressly set forth herein, nothing shall serve to modify or amend any of the terms or provisions of the APA and/or Sale Order, and each of the Arch Entities, GBRP Entities and the Trustee Entities hereby reserve all rights and remedies thereunder.

d. Release of the Trustee Entities. In consideration of the promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, on and after the Close-Out Effective Date, the Arch Entities and the GBRP Entities hereby fully and irrevocably release, waive, acquit, and forever discharge each of the Trustee Entities of and from any and all claims, counterclaims, rights, actions, demands, causes of action, liabilities, obligations, damages, losses, liabilities, costs (including, without limitation, attorneys' fees) and expenses, of any kind or nature whatsoever involving, related to, or arising under any federal, state, or local statute, regulation, ordinance, or common law, whether asserted or unasserted, known or unknown, fixed or contingent, liquidated or unliquidated, matured or unmatured, foreseen or unforeseen, actually or potentially existing, which the Arch Entities and the GBRP Entities respectively, had or claim to have or may have against any or all of the Trustee Entities from the beginning of time through the Close-Out Effective Date arising out of or under or related to the BIG LOTS Insurance Program, the BIG LOTS Collateral, the Retained BIG LOTS Collateral, the Claims Handling, and/or the Request; provided, however, the release set forth in this paragraph shall not include (a) any obligations expressly set forth in this Agreement and (b) any rights, claims, or obligations under or with respect to any policies of insurance and/or related agreements that are not part of the BIG LOTS Insurance Program and/or with respect to any surety bonds and/or any agreements related thereto; provided, further, that except as expressly set forth herein, nothing shall serve to modify or amend any of the terms or provisions of the APA and/or Sale Order, and each of the Arch Entities, GBRP Entities and the Trustee Entities hereby reserve all rights and remedies thereunder.

9.      With respect to the matters released herein, the Arch Entities, the GBRP Entities, and the Trustee Entities expressly waive any and all rights under § 1542 of the Civil Code of the State of California, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

10.     On the Close-Out Effective Date, the Arch POCs shall be deemed withdrawn without any further notice or action required by the Parties, and the Trustee may make any appropriate adjustments to the claims register as appropriate, without further Court order. For the avoidance of doubt, nothing withdraws, releases, waives, discharges, alters, modifies, or impacts any other proofs of claim filed in the Bankruptcy Cases by Arch and/or any of Arch's affiliates.

11.     Nothing herein shall serve to relieve Arch of any of its obligations as the insurer under the BIG LOTS Insurance Program. On and after the Close-Out Effective Date, and subject to the Reservation of Rights (as defined herein), (i) Arch shall, in its discretion, (a) continue to handle, administer, adjust, settle, and/or pay any claim asserted against any of the Debtors under the BIG LOTS Insurance Policies (each, an "Covered Claim") to the extent required under the terms of the BIG LOTS Insurance Policies, (b) have the right, to the extent not already possessed, to select any third party administrator and defense counsel, and (c) pay the defense costs and other costs associated with the administration and handling of any such Covered Claim (all of the foregoing, collectively, the "Claims Handling"); (ii) the Stay/Injunction, to the extent applicable, shall be lifted as provided in the Approval Order to permit Arch to perform the Claims Handling; and (iii) the GBRP Entities and the Trustee, on behalf of himself and the Trustee Entities, hereby waive any right to perform any Claims Handling or to participate therein. For the avoidance of doubt, (i) nothing in this Agreement or the Approval Order grants, or should be deemed to grant, any claimant relief from the Stay/Injunction to proceed with their claims without first obtaining relief therefrom from the Court, if and to the extent applicable, and (ii) except as specifically set forth in this Agreement, nothing alters, amends, or otherwise modifies the terms and conditions of (and any coverage provided by) the BIG LOTS Insurance Program; provided, that, for the avoidance of doubt, nothing requires or obligates Arch to pay any amounts within any self-insured retention and, on and after the Close-Out Effective Date, neither GBRP nor the Trustee shall not be required to pay any self-insured retention under the BIG LOTS Insurance Policies.

12.     GBRP, on behalf of itself and all of the other GBRP Entities, covenant and agree not to commence or prosecute any action, arbitration or proceeding against any of the Arch Entities or the Trustee Entities arising out of or relating to the matters released hereby. Arch, on behalf of itself and all of the other Arch Entities covenant and agree not to commence or prosecute any action or proceeding against any of the GBRP Entities or the Trustee Entities arising out of or relating to the matters released hereby. The Trustee, on behalf of himself and the other Trustee Entities covenant and agree not to commence or

prosecute any action or proceeding against any of the GBRP Entities or the Arch Entities arising out of or relating to the matters released hereby.

13. Nothing in this Agreement or the Approval Order (i) expands, contracts or otherwise alters the insurance coverage provided by the BIG LOTS Insurance Program or the terms and conditions of the BIG LOTS Insurance Program; (ii) permits any holder of a Covered Claim to recover the same amounts from Arch and again from any other person or entity, including the GBRP Entities and/or the Trustee Entities, (iii) creates or permits a direct right of action by any holder of a Covered Claim against Arch; (iv) precludes or limits, in any way, the rights of Arch to contest and/or litigate with any person or entity the existence, primacy, and/or scope of available insurance coverage under any allegedly applicable policy; (v) is a determination as to insurance coverage under the BIG LOTS Insurance Program; (vi) relieves any holder of a Covered Claim from any obligation to have filed a proof of claim in the Bankruptcy Cases; or (vii) alters, modifies, amends, affects, impacts, or prejudices in any way or respect any of the terms and conditions of and/or any of the legal, equitable, or contractual rights, obligations, claims, or defenses under any insurance policy and/or any related agreement that is not part of the BIG LOTS Insurance Program and/or any surety bond and/or any agreement related thereto. This paragraph shall be referred to as the "Reservation of Rights."

14. Except as expressly set forth in this Agreement, nothing amends, alters, or modifies the terms and conditions of the APA.

15. This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective administrators, heirs, executors, legal representatives, successors and permitted assigns, including, without limitation, any successor to GBRP; provided, however, except as expressly stated herein, nothing herein is intended to benefit any third party.

16. This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York, without giving effect to any conflict of laws principles that would cause the application of the laws of any other jurisdiction. Any disputes concerning this Agreement shall be subject to arbitration in accordance with the terms contained in the BIG LOTS Agreements.

17. This Agreement has been negotiated at arm's length by parties represented by legal counsel of their choosing, constitutes the entire agreement of the Parties, and supersedes all previous agreements and/or contracts, whether oral or written, between them with respect to the subject matter hereof. The recitals included in this Agreement are specifically incorporated herein and made a part of this Agreement.

18. For purposes of construction, this Agreement shall be deemed to have been jointly drafted by the respective Parties and their counsel, and any rule of construction of contracts that would otherwise provide ambiguities are to be construed against the drafting party shall not be applied against any person.

19. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, together which shall for all purposes constitute on agreement binding

4924-9743-7081.1 31275.00001                                    9

DM3\22136376.1

upon each of the Parties.    Exchange of executed signature pages via electronic means (including Portable Document Format (.pdf) signatures and digital signatures using digital signature software that electronically captures, or otherwise allows a signatory to adopt, an identifying mark as such person's signature to this Agreement (*e.g.*, Docusign®)) shall be sufficient to effectuate this Agreement.

20.    The Parties agree to perform all further acts and to execute and deliver or cause to be executed and delivered all documents, instruments, agreements, which may be reasonably necessary to carry out the intents and purposes of this Agreement or to enable the other Party to enforce any of its rights under this Agreement.

21.    Each Party acknowledges, represents, warrants that it has the authority to enter into this Agreement; it has carefully read this Agreement in its entirety; it has had an opportunity to consult with its respective attorneys concerning the meaning, import and legal significance hereto; it understands all of this Agreement's terms; its undersigned representative is duly authorized to enter into this Agreement on its behalf; it voluntarily assents to all the terms and conditions contained herein; by signing this Agreement it is bound by the terms and conditions contained in this Agreement; and it is voluntarily executing this Agreement of its own free will.

22.    The Parties agree to be responsible for and to bear their own costs, expenses and attorneys' fees incurred in connection with this Agreement and the negotiations related to and the preparation and performance of this Agreement, and not to seek reimbursement of any such costs, expenses and attorneys' fees from any other Party.

23.    All notices, requests, waivers, consents and other communications hereunder shall be in writing and shall be mailed first class certified mail or by nationally recognized overnight courier service, or by personal delivery, with postage or other applicable delivery fees prepaid and addressed as follows:

 If to Arch:

Arch Insurance Group Inc.
Harborside 3
210 Hudson Street, Suite 600
Jersey City, NJ 07311-1107
Attention: Regan Shulman
Telephone: (201) 743- 4224
Email: rshulman@archinsurance.com

With a copy, which shall not constitute notice, to:

Stephen Schwab
DLA Piper LLP (US)
444 West Lake Street
Suite 900
Chicago, IL 60606

If to GBRP:

Gordon Brothers Retail Partners, LLC
101 Huntington Avenue, 11th Floor
Boston, MA 02199
Attn: Richard Edwards
E-mail: redwards@gordonbrothers.com

with a copy (which will not constitute notice) to:

Riemer & Braunstein LLP
Times Square Tower
Seven Times Square, Suite 2506
New York, NY 10036
Attn: Steven E. Fox
Email: sfox@riemerlaw.com

If to the Trustee:

Alfred T. Giuliano
c/o Giuliano Miller & Co., LLC
2301 E. Evesham Road
Pavillion 800, Suite 210
Voorhees, NJ 08043

Tel: 856-767-3000
Email: atgiuliano@giulianomiller.com

With a copy, which shall not constitute notice, to:

Bradford J. Sandler
Peter J. Keane
Pachulski Stang Ziehl & Jones LLP
919 N Market Street, 17th Floor
Wilmington, DE 19801
Tel: 302-652-4100
Email: bsandler@pszjlaw.com
pkeane@pszjlaw.com

24. The Parties acknowledge and agree that this Agreement is being entered into for the purpose of avoiding the expense, delay and uncertainty of litigation and nothing contained herein shall constitute, be introduced, treated, deemed or otherwise interpreted or construed as (a) an admission, waiver, evidence or concession by any of the Parties hereto of any fact, liability or wrongdoing, or (b) evidence in any judicial or arbitration proceeding, except to enforce or defend the terms herein.

25. No failure or delay by any Party in exercising any right, power or privilege hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder.

26. No amendment, modification or alteration of this Agreement shall be valid unless it shall be in writing and signed by each of the Parties. Additionally, no course of conduct or method of doing business shall modify or amend the terms of this Agreement.

27. Neither this Agreement, nor any of the rights, interests and obligations hereunder, may be assigned by any Party without the prior written consent of the other Parties.

28. The representations, warranties, covenants and other provisions set forth herein shall survive the execution of this Agreement and the effectiveness of the releases granted hereunder.

TO SIGNIFY AGREEMENT, the Parties have caused this Agreement to be executed by their duly authorized officers.

GORDON BROTHERS RETAIL PARTNERS, LLC,

By: *Patricia Parent*
— DocuSigned by: —
— 2244CED5009B483... —

Printed Name:   Patricia Parent

Title:   Senior Managing Director/Vice President

Date:   3/19/2026


ARCH INSURANCE COMPANY, on behalf of itself and Arch Indemnity Insurance Company and Arch Specialty Insurance Company

By:

Printed Name:

Title:

Date:


ALFRED T. GIULIANO, solely in his capacity as the chapter 7 trustee for the estates of the Debtors

By:

Printed Name:

Title:

Date:

TO SIGNIFY AGREEMENT, the Parties have caused this Agreement to be executed by their duly authorized officers.

**GORDON BROTHERS RETAIL PARTNERS, LLC,**

By:

Printed Name:

Title:

Date:


**ARCH INSURANCE COMPANY**, on behalf of itself and Arch Indemnity Insurance Company and Arch Specialty Insurance Company

By:    *Richard Stock*
<span style="font-size:small">Richard Stock (Mar 27, 2026 09:15:47 CDT)</span>

Printed Name:   Richard Stock

Title:   Division President - Casualt

Date:   27/03/26


**ALFRED T. GIULIANO**, solely in his capacity as the chapter 7 trustee for the estates of the Debtors

By:

Printed Name:

Title:

Date:

4924-9743-7081.1 31275.00001

TO SIGNIFY AGREEMENT, the Parties have caused this Agreement to be executed by their duly authorized officers.

**GORDON BROTHERS RETAIL PARTNERS, LLC,**

By:

Printed Name:

Title:

Date:


**ARCH INSURANCE COMPANY**, on behalf of itself and Arch Indemnity Insurance Company and Arch Specialty Insurance Company

By:

Printed Name:

Title:

Date:


**ALFRED T. GIULIANO**, solely in his capacity as the chapter 7 trustee for the estates of the Debtors

By: _[signature]_

Printed Name: Alfred T. Giuliano

Title: Trustee

Date: 3/26/26

4924-9743-7081.1 31275.00001

## CLOSE-OUT AGREEMENT

### Schedule A[2]

### BIG LOTS Insurance Policies

| Policy No. | Policy Period Inception Date |
| --- | --- |
| 41WCI4959500 | 6/1/2009 |
| 41WCI4959600 | 6/1/2009 |
| 41WCI4959700 | 6/1/2009 |
| 41CAB4959300 | 6/1/2009 |
| 41CAB4959400 | 6/1/2009 |
| 41WCI4959501 | 6/1/2010 |
| 41WCI4959601 | 6/1/2010 |
| 41WCI4959701 | 6/1/2010 |
| 41CAB4959301 | 6/1/2010 |
| 41CAB4959401 | 6/1/2010 |
| 41WCI4959502 | 6/1/2011 |
| 41WCI4959602 | 6/1/2011 |
| 41CAB4959302 | 6/1/2011 |
| 41CAB4959402 | 6/1/2011 |
| 41WCI4959503 | 6/1/2012 |
| 41CAB4959303 | 6/1/2012 |
| 41CAB4959403 | 6/1/2012 |
| 41WCI4959504 | 6/1/2013 |

---

[2] NOTE TO DRAFT: This schedule is under review/subject to change.

| | |
|---|---|
| 41CAB4959304 | 6/1/2013 |
| 41CAB4959404 | 6/1/2013 |
| 41WCI4959505 | 6/1/2014 |
| 41WCI4997100 | 6/1/2014 |
| 41CAB4959305 | 6/1/2014 |
| 41CAB4959405 | 6/1/2014 |
| 41WCI4959506 | 6/1/2015 |
| 41WCI4997101 | 6/1/2015 |
| 41CAB4959306 | 6/1/2015 |
| 41CAB4959406 | 6/1/2015 |

DM3\22145928.1
4578711.1

4924-9743-7081.1 31275.00001

DM3\22136376.1